IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff American Airlines, Inc. ("American") brings this action against Defendant Skiplagged, Inc. ("Skiplagged"), and respectfully alleges as follows:

### I.     NATURE OF THE CASE

1.      Only an authorized agent of American can act for American and issue tickets to passengers on American's behalf.

2.      Skiplagged is ***not, and never has been,**** an authorized agent of American. It is a middle-man improperly inserting itself between American and flight consumers. It employs unauthorized and deceptive ticketing practices, entices consumers to participate in those deceptive practices by promising savings, and then doesn't deliver. Instead, Skiplagged often charges consumers *more* than if they had booked a ticket directly with American or through an authorized agent of American.

3.      Skiplagged has never had an agency agreement with American and has never had any authority, whatsoever, to sell tickets for American flights. Indeed, Skiplagged developed methods to illegally obtain access to tickets and offer them to consumers – tickets which are at risk

1

for immediate invalidation – because only an agent of American has the legal authority to form a valid contract between a consumer and American.

4.    Skiplagged deceives the public into believing that, even though it has no authority to form and issue a contract on American's behalf, somehow it can still issue a completely valid ticket. It cannot. Every "ticket" issued by Skiplagged is at risk of being invalidated.

5.    Skiplagged also deceives the public into believing that the American fares it displays will give the consumer access to some kind of secret "loophole." But many of the fares displayed on Skiplagged's website are *higher* than what the consumer would pay if they simply booked a ticket on American's website or through an actual authorized agent of American. It is the classic bait and switch: draw consumers in with the promise of secret fares, and instead sell the consumer a ticket at a higher price.

6.    Skiplagged knows any ticket it issues is at risk for invalidation, and that American could simply cancel the ticket if detected, so Skiplagged hides its activity. It also tells its customers to hide it from American. Skiplagged does this by purchasing tickets on the AA.com website while pretending to be a consumer, in violation of the AA.com terms of use; by inducing agents of American to breach their agency agreements with American; and by misusing American's trademarks to falsely imply that it is American's authorized agent. On information and belief, Skiplagged employs other methods of hiding its activity that American is currently investigating.

7.    Skiplagged's actions constitute tortious interference, breach of the AA.com terms of use, trademark infringement, copyright infringement and other violations as set forth herein.

## II.    THE PARTIES

8.    American Airlines, inc. is a Delaware corporation with its worldwide headquarters located in this District, at 1 Skyview Drive, Fort Worth, Texas 76155.

9.      Defendant Skiplagged, Inc. is a Delaware corporation organized under Delaware law. Its principal place of business is located at 41 E. 11th St., 9th Floor, New York, New York, 10003. Despite doing business in Texas, Skiplagged has not designated a registered agent for service of process in Texas. Skiplagged may be served with process through either (a) its Delaware registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801; or (b) its New York registered agent, Aktarer Zaman, 525 W. 28th St., Apt. 1158, New York, New York 10001. Alternatively, Summons and Complaint may be served upon the Texas Secretary of State at 1019 Brazos Street, Austin, Texas 78701, as its agent for service pursuant to Tex. Civ. Prac. & Rem. Code § 17.044. The Texas Secretary of State may serve Skiplagged, Inc. at 41 E. 11th St., 9th Floor, New York, New York, 10003, or via the registered agent for service of process it has designated for Delaware and/or New York.

### III.      JURISDICTION AND VENUE

10.      The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 and 1338, given American's trademark and copyright claims. The Court has supplemental and pendent jurisdiction over the related state law claims under 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Skiplagged. By accessing and booking tickets through AA.com, Skiplagged agreed to AA.com's terms of use ("Use Agreement"), which includes an acknowledgement that the terms of the site constitute an agreement made and entered into in Tarrant County, Texas, and which provides that "Texas law governs this Agreement's interpretation and/or any dispute arising from your access to, dealings with, or use of the Site." Skiplagged's use of the American website to access and obtain American's flight and fare data, and also to communicate passenger information to American on any ticket sold and booked by Skiplagged on AA.com, is subject to AA.com's Use Agreement.

12.     Skiplagged systematically conducts business in Texas and in this District. Skiplagged has purposefully availed itself of this forum by booking American tickets for Texas-based customers, soliciting business from Texas residents, selling flights to Texas residents, and offering and selling flights to, from, and within Texas.

13.     The Court also has personal jurisdiction over Skiplagged because it has committed torts in this District, breached a contract entered into in this District which is governed by the laws of Texas, and violated Texas statutory law in this District. Based on the foregoing, Skiplagged could reasonably anticipate being brought into court in Texas.

14.     Venue is proper in this District under 28 U.S.C § 1391 because the claims asserted in this action also arose in this District, and a substantial part of the activities, conduct, and damages giving rise to American's claims occurred in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     American's Operations and Content.

15.     With its global name recognition and goodwill, American has become a leading household brand for over 90 years. American has used and continues to use the trade name and trademark "American Airlines," and iconic trademarks and service marks, for decades. American's brands, trade names, and other intellectual property are the result of significant investment and worth billions of dollars.

16.     American launched its website, AA.com, in 1995. AA.com offers end-user customers flights, ticket data, reservation details, booking options, and other travel services. The site provides fare, schedule and inventory data to actual and potential end-user customers in an interactive format. American has long controlled access to its fare, schedule and inventory content and to AA.com and, in doing so, prohibits travel agencies or other businesses from the unauthorized sale of American flights through that portal. Among other things, the terms of use

for AA.com prohibit the use of AA.com for any commercial purpose without American's express authorization.

17.     American has invested significant resources to develop, maintain, and distribute to authorized users its fare, schedule and inventory content. The combined content is generated dynamically. American carefully protects its valuable fare, schedule and inventory content and takes commercially reasonable measures to limit access to authorized agents. American selectively provides this information only to authorized agents and certain other authorized recipients under strict terms and conditions, including prohibitions against sharing the data with unauthorized entities. The development and maintenance of the content relating to American's products and services has required extensive investment of time, money, and specialized resources.

18.     Only American can fulfill the ticket for the passenger; the agent bears no inventory risks.  As a result, only authorized agents of American are legally permitted to use such content and information, and even such authorized agents are limited in the purposes and manner of their permitted use. Unauthorized access and use of American's data and content causes disruption and harm to American's systems, business, and customers, and is a major safety and security threat.

**B.     Contractual Terms and Conditions Relating to AA.com.**

19.     To protect its valuable content, American requires visitors to AA.com to agree to terms governing use of the site, the AA.com Use Agreement. The Use Agreement confirms many things, but mainly that the information displayed on AA.com is owned by American.

20.     The Use Agreement sets forth the terms and conditions under which users may access and use AA.com.[1] Access or use of AA.com constitutes acceptance of the Use Agreement

---

[1] The AA.com Use Agreement states: "In return for gaining access to the Site and using it, you agree to be bound by the following Agreement without limitation or qualification, so please carefully review this Agreement before proceeding. *If you do not intend to be legally bound by these terms and conditions, do not access and use the Site.*"

which is a valid and enforceable contract between American and those who access and use AA.com. When Skiplagged accesses and uses AA.com to book flights or extract American's content, Skiplagged is bound by the terms of the Use Agreement.

21.    The Use Agreement provides that it is "made and entered into in Tarrant County, Texas," and users agree "that Texas law governs this Agreement's interpretation and/or any dispute arising from your access to, dealings with, or use of the Site."

22.    The Use Agreement provides that all information, data, and content displayed on AA.com are owned by and "are the exclusive property of American," and that users may not use any such information for their own commercial gain. Among other things, the Use Agreement specifically provides that:

    a.  All content appearing on the website is the exclusive property of American and users may not use the content of the site for public or commercial purposes;

    b.  American provides the site solely to permit the user to determine the availability of goods and services offered on the website and to make legitimate reservations, and for no commercial or other purposes;

    c.  AA.com users of the website agree that they will not misuse the website to:

        1.  engage in any commercial purpose including but not limited to advertising or offering to sell any goods or services;

        2.  post, send, or disclose protected proprietary American data;

        3.  copy, display, distribute, publish, recreate, reproduce, sell, transfer, or transmit any information, products, services, or software obtained by, from, or through the website;

        4.  monitor or copy any website content by using any manual or automatic device, without first obtaining American Airlines' prior written consent;

        5.  act as an agent for any person who is not a member of your immediate household; or your direct supervisor at your place of employment; and

        6.  misrepresent or omit the origin or source of any file uploaded or downloaded to the website.

      d.  American also specifically denies the user permission to hyperlink or provide references to the Site or to use any trademarked or copyrighted material to provide such hyperlinks or references, unless authorized by American Airlines.

23.    The Use Agreement also incorporates American's Conditions of Carriage, also linked on AA.com. The Conditions of Carriage is a contract that governs all transportation of passengers and bags provided by American. The Conditions of Carriage (a) provide that a ticket is valid only when travel is to/from the cities on your ticket and in your trip record; and (b) prohibit reservations that exploit or circumvent fare and ticket rules, including purchasing a ticket without intending to fly all flights to gain lower fares (i.e., hidden city ticketing).

24.    By accessing and/or using the content and information made available on AA.com, Skiplagged accepted and agreed to the Use Agreement and Conditions of Carriage.

**C.   American's Valuable Trademarks and Copyrights.**

25.    For decades, American has used the trade name and trademark "American Airlines" and many trademarks, service marks, and copyrights, including on AA.com. American also has used registered designs such as its "Flight Symbol" to promote its products and services throughout the world:



26.    American uses the "American Airlines" mark and ("Flight Symbol") design (together, "American Marks"), alone and in combination with other words and designs, in connection with loyalty programs, discount programs, incentive award programs, transportation services, and travel-related goods and services, in interstate commerce. Indeed, American devotes

significant time, money, and effort to advertising, promoting, and protecting its products and services using its trademarks throughout the world.

27.     To protect its investment in its intellectual property, American registers the American Marks in the U.S. Patent and Trademark Office ("USPTO") on the Principal Register. American also registers the American Marks in many other countries.

28.     The registered American Marks include, but are not limited to, the following:

| Mark/Name | Reg. No. | Reg. Date | Services |
|---|---|---|---|
| **AMERICAN AIRLINES** | 4939082 | April 19, 2016 | (Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing information in the field of travel by means of a global computer network; etc. |
| **AMERICAN AIRLINES** | 5279167 | Sep. 5, 2017 | (Int'l Class: 09)<br>computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award programs; computer application software for mobile devices; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status |
| Design Only | 4449061 | Dec.10, 2013 | (Int'l Class: 39)<br>air transportation of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, etc. by means of a global computer network; providing information in the field of travel by means of a global computer network |
| Design Only | 5559145 | Sep.11, 2018 | (Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to |

| | | | aircraft; airline services, etc. |
|---|---|---|---|
| AMERICAN and Design<br><br>American | 5288639 | Sep. 19, 2017 | (Int'l Class: 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, air transportation reservation services for others, and vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network |

29.     The American Marks give American the exclusive right to use its registered marks in connection with air transportation and other travel services, as well as the right to exclude third parties from engaging in the unauthorized use of the American Marks.

30.     American also has protected its investment in its brand by registering designs with the U.S. Copyright Office. It owns U.S. Copyright Registration No. VA00002130520 for its Flight Symbol design ("American Copyright").

31.     In addition to its registered rights, American has strong common-law rights in the American Marks and American Copyright by virtue of extensive use and promotion in commerce.

32.     The American Marks and American Copyright serve as unique and famous source identifiers for American and various travel services. American has invested millions of dollars in worldwide advertising and marketing to build the fame, reputation, and goodwill of the American Marks and American Copyright. It advertises through a variety of media, including television, the internet, radio, newspapers, magazines, and direct mail, across the country and the world.

33.     The American Marks and American Copyright are distinctive designations of the source of origin of American's services. They are uniquely associated with it and its high-quality goods and services and are assets of incalculable value as symbols of American, its quality goods and services, and its goodwill.

34.     As a result of American's extensive and continuous advertising, promotional, and use of the American Marks and American Copyright, they are famous, distinctive, and widely recognized by the general consuming public of the United States as a designation of the source of the involved goods and services.

**D.     Skiplagged's Unauthorized and Abusive Practices, Breaches of Contract, and Other Wrongful and Misleading Conduct.**

35.     Skiplagged's conduct is deceptive and abusive. To be clear, Skiplagged (a) is not – and has never been - an agent of American; (b) breaches the AA.com Use Agreement and Conditions of Carriage by marketing and selling tickets for American flights; (c) coaches American passengers to assist in their breaches of the Conditions of Carriage agreement with American; (d) violates federal statutory and DOT regulations; and (e) infringes the American Marks.

        *a.   Skiplagged is not an Agent of American.*

36.     Skiplagged is not, and has never been, an agent for American. Skiplagged has never had authorized access to American's valuable real-time fare, schedule and inventory content, nor has it ever had the right to sell American tickets or related flight services as American's agent.

37.     Yet Skiplagged holds itself out as an agent of American's by misappropriating, using, and displaying American data and using American Marks in order to sell tickets for American flights. To do this, Skiplagged uses electronic mechanisms to access and interact with AA.com, allowing it to obtain American's fare, schedule and inventory content and then modifies and republishes the data on Skiplagged.com.

38.     The proprietary American content misappropriated by Skiplagged is not static but instead changes and updates in real time. Skiplagged uses this dynamic content on its website so

that its customers can run up to date searches for American flights, as if it Skiplagged was authorized to do so by American.

39.    Skiplagged also pretends American is its "partner" and provides links from Skiplagged.com to American's website to deceive the public that it is an American agent.

40.    For example, when a customer searches for a ticket on Skiplagged's website, he or she is routinely given an "Alternate Booking" option which links to American. This alternate booking page expressly represents to the consumer that "***These direct links [e.g., the "Book Now" link to AA.com discussed below] are provided by our partners***." (emphasis added).



41.    In the above screenshot, Skiplagged's website deliberately gives its customers a link to AA.com and instructs them to "Open a New Tab and Go to This Link." When a customer

clicks the "Book Now" link in that section, they can get many random outcomes, such as an error page on AA.com, the AA.com homepage, or a booking page on AA.com for the flights/itinerary that Skiplagged had generated. This direct linking creates a false association or affiliation between Skiplagged and American, and further misleads the public into believing Skiplagged is an authorized agent of American.

42.     When a customer books a ticket on Skiplagged.com, Skiplagged then books the ticket through the AA.com website, and provides the customer's name, personal information and payment information for the customer to American on the customer's behalf. After the ticket is booked, Skiplagged sends an email to the customer with the American itinerary and American's assigned record locator for the reservation, as if it is an authorized agent.

43.     By its actions, Skiplagged has unlawfully held itself out as and acted as American's agent without authorization to do so and has made contracts of carriage between American and passengers that only an authorized American agent has authority to make.

### b. Skiplagged's Breaches of the AA.com Use Agreement and Conditions of Carriage.

44.     The AA.com website has contractual terms of use that are necessarily accepted and agreed to by anyone who accesses and uses American's website ("Use Agreement"). Skiplagged is well aware that they are bound by these terms because in order to complete each of its bookings through AA.com, Skiplagged has to affirmatively check a box confirming its acceptance of American's Conditions of Carriage.

45.     AA.com's Use Agreement explicitly states that AA.com is solely for personal, non-commercial use. Users of AA.com agree that they will not misuse the website to, among other things:

> 1. engage in any commercial purpose including but not limited to advertising or offering to sell any goods or services;

2. post, send, or disclose protected proprietary American data;

3. copy, display, distribute, publish, recreate, reproduce, sell, transfer, or transmit any information, products, services, or software obtained by, from, or through the website;

4. monitor or copy any website content by using any manual or automatic device, without first obtaining American Airlines' prior written consent;

5. act as an agent for any person who is not a member of your immediate household; or your direct supervisor at your place of employment; and

6. misrepresent or omit the origin or source of any file uploaded or downloaded to the website.

Skiplagged violates all of these terms, and more.

### i. *Skiplagged's Business of Selling and Featuring American's Content Breaches the Use Agreement (Nos. 1-5 Above).*

46. Skiplagged clearly uses AA.com to engage in the commercial purpose of advertising and offering to sell goods and services, i.e., selling American tickets to people accessing the Skiplagged website. Undeniably, this is the heart of the Skiplagged's business and a clear breach of the Use Agreement (see #1 above).

47. In order to sell these American tickets, Skiplagged posts, sends and discloses American content on its website and in emails to its customers. Skiplagged also emails the American record locator assigned with the ticket to its customers and even references the record locator in the credit card billing line item when it bills its customers for Skiplagged's fees. These comprise additional breaches of the Use Agreement (see #2 and #3 above).

48. For customers to shop and book fares through Skiplagged, they must review the real time American fare, schedule and inventory content as displayed on Skiplagged.com. Skiplagged, without any authorization whatsoever, employs an automatic electronic means to monitor, copy the dynamic and ever-changing AA.com website content in order to have real time

fare, schedule and inventory information available to  customers – thus breaching the Use Agreement (see #4 above).

49.     Skiplagged sells American flights to customers by having them book and pay for their tickets on Skiplagged.com, and then taking the customer's personal and credit card information and completing the booking on AA.com. In doing so, Skiplagged masquerades as an American agent for its customers, which is a breach of the Use Agreement (see #5 above).

### ii. Skiplagged's Claims of Saving its Customers Money is Fraudulent – and a Breach of the Use Agreement (No. 6 above).

50.     Skiplagged's business is based on the appearance of saving customers money by advertising that it provides cheaper fares than customers would get by booking directly with AA.com. *In doing so, Skiplagged misrepresents fare, schedule and inventory information from AA.com as higher than those offered by Skiplagged, yet consistently ends up charging the customer more than they would pay on AA.com.* These instances are misrepresentations or omissions of the origin or source of the American content obtained and offered by Skiplagged, and a breach of the Use Agreement (see # 6 above). Just a few of these many bait and switch examples are given below for color.

> **EXAMPLE 1 – SKIPLAGGED OFFERS THE SAME FARE AS AMERICAN BUT ADDS A SKIPLAGGED FEE, MAKING THE FARE MORE EXPENSIVE THAN AA.COM**

51.     Every time Skiplagged books a ticket for a customer, it charges a Skiplagged fee in addition to the base fare. Usually, this fee is $10 per one way ticket booked on Skiplagged but at times this fee is 10% of the base fare of the advertised price.

52.     In this actual example of a roundtrip flight from Ontario, CA to Reno, NV, Skiplagged offer users the same exact flight fare that customers can also find on AA.com. But when the customer actually goes to book the ticket on Skiplagged, the ticket ends up costing the customer more than the AA.com fare due to Skiplagged's added fee.

53.     In this case, the American flight is offered on Skiplagged.com for $441:



54.     The user could find the *same* flight on AA.com as listed for $455:



55.     If the user only looks at the advertised flight on Skiplagged, she believes she is saving $14 by booking with Skiplagged.[2] But since the advertised Skiplagged fare *does not include*

---

[2] Skiplagged achieves this "discounted" rate by mixing cabin fares for the departing and returning flight, a practice that American does not permit. This method requires the consumer to book two one-way tickets through two separate transactions.

Skiplagged's fees, when she goes to book the flight on Skiplagged, the actual final cost with Skiplagged's $20 tacked on fee ends up costing her $459.40—*not* $441 as Skiplagged advertised.[3] The customer would have actually saved more by booking on AA.com in the first place.



| EXAMPLE 2 – SKIPLAGGED ADVERTISES LOWER FARES THAN AA.COM BUT THEN SENDS THE CUSTOMER TO BOOK ON A THIRD PARTY WEBSITE THAT CHARGES MORE THAN AA.COM |
|---|

56.  Skiplagged also misrepresents American fares by directing users to the websites of other unauthorized companies to book the same flight displayed on Skiplagged.com which ends up priced out at a much higher cost. Here, users are paying more than they would on American and not even actually booking with Skiplagged.

57.  In this real example, when a user selects flights and attempts to book on Skiplagged.com, Skiplagged instead provides the user a "Book Now" link that automatically opens

---

[3] $281.20 for the departing flight and $178.20 for the return flight which together comprise the total.

16

a corresponding booking page on "Kiwi.com" for the selected flights/itinerary.[4] Here again, Skiplagged misrepresents the total cost to the consumer.

58.    Here, a user wants to buy a one-way flight from Washington, D.C. to Bellingham, WA.  Skiplagged automatically populates a list of options along with their respective total cost. As shown below, Skiplagged lists the ticket price as $751.



59.    However, a real time search on American shows that AA.com offers the same flight at the exact same price.

[4] In February 2022, American publicly announced to the airline and travel agency industry that Kiwi did not have authority from American to sell American tickets. Yet Skiplagged continues to knowingly facilitate, participate in, and, on information and belief, financially benefit from Kiwi's unauthorized and unlawful activities.



60.     When the user in this example proceeds to book the flight on Skiplagged.com, she believes she will book it for $751 and is given a link to do so.



61.     However, when she clicks "Book Now," she is redirected to Kiwi.com to book this flight for $826 – NOT the $751 represented by Skiplagged. This is due to a 10% service fee upcharge of $75 using Kiwi.com to book the same flight American offers for $751:



62. Again, Skiplagged failed to save the customer money and ended up costing the customer significantly more. In doing so, Skiplagged also directly facilitates and causes other unauthorized travel sites to engage in the unlawful sale of American flights, infringe the American Marks, misuse American's valuable, proprietary, and protected information and content, and breach the AA.com Use Agreement and Conditions of Carriage.

**EXAMPLE 3 – SKIPLAGGED PROMISES SECRET HIDDEN CITY FARES TO ITS CONSUMERS THAT END UP COSTING MORE THAN THEY WOULD ON AA.COM**

63. A big marketing ploy for Skiplagged is that they can book tickets for consumers through "hidden city" fares advertised as "Skiplagged Rates." When a customer books a "hidden city" fare, it is buying a ticket to a destination it does not intend to go to with a stop or layover that

is the real destination the customer wishes to reach – so that the customer simply gets off at the stop and does not complete the remaining leg(s) of the ticketed flight.

64.    In this real example, a customer searches for a flight from Charlotte, NC to Cincinnati, OH. Skiplagged populates a list of options which include a hidden city fare offering the user a "Skiplagged Rate $7 off," resulting in a $169 ticket. The flight departs from Charlotte, connects in Cincinnati, then continues to Chicago, but the second leg (Cincinnati to Chicago) is crossed out (the "skipped" portion of the itinerary) since the user will not fly it:



65.    When the user continues to the booking page, Skiplagged actually tacks on a 10% service fee ($16.87) for a total cost of $185.57. This amount is *more expensive* than the $169 Skiplagged advertised as a $7 savings.



66.     If the user were to look at AA.com for the direct flight without having to engage in the prohibited practice of "hidden City" ticketing, she would have paid $176.



67.     As a result, not only does the customer lose the purported $7 savings gained by "skiplagging," she actually owes ***an additional $9.57*** due to Skiplagged's improperly disclosed fees. <u>The very basis on which Skiplagged touts its market disruption ends up being a complete lie.</u>

### iii.   *Additional Breaches of the Use Agreement.*

68.     Skiplagged's direct linking and seamless transition to AA.com, suggesting a false association between Skiplagged and American, as mentioned in Section D(a) above, is also a

violation of the AA.com Use Agreement, which "specifically denies [Skiplagged] permission to hyperlink or provide references to the Site" or "to use any trademarked or copyrighted material to provide such hyperlinks or references, unless you are allowed to do so under a separate written agreement with American Airlines." Again, Skiplagged is not authorized by American to do so.

69.     Through all its actions, Skiplagged violates numerous terms of AA.com's Conditions of Carriage (incorporated through the Use Agreement), which includes, among other things: (1) not using AA.com for commercial, and not personal, purposes; (2) not copying and republishing American's content; (3) not actively encouraging and booking hidden city tickets; and (4) not booking tickets for others outside of the limited exceptions provided for household members or supervisors.

### c.   *Skiplagged Boldly Asks its Customers to Agree to Breach American's Use Agreement and Conditions of Carriage.*

70.     Skiplagged and its founder and CEO, Aktarar Zaman, openly acknowledge that Skiplagged's ticketing practices violate airlines' rules and knowingly encourage customers to breach their contracts of carriage with airlines. Indeed, in 2015, Zaman made a public statement acknowledging that customers **may be "breaking an agreement with the airlines known as a contract of carriage**, where it might say you can't miss flights on purpose."[5]

71.     In what is likely the most egregious communication on its website, Skiplagged *tells the passenger to lie to American about their final destination* and participate in Skiplagged's deceptive practices in order to book the ticket*.* Skiplagged even provides personalized, scripted guidance that is unique to the consumer's specific booking:

---

[5]     United     Airlines     sued     me     last     year     for     creating     Skiplagged, https://www.reddit.com/r/IAmA/comments/3ux82r/united_airlines_sued_me_last_year_for_creating/     (posted November 30, 2015) (emphasis added).



72.     This practice is expressly prohibited by American and many other airlines.[6] Because Skiplagged knows this, it even expressly advises customers on what steps to take to avoid getting caught.



---

[6] These violations harm not only American but also consumers. With respect to hidden city bookings, when a passenger skips the final leg of her flight, American might delay the flight unnecessarily to track down the passenger. If the passenger still does not show, American has to determine whether she has checked luggage through to the final destination, because the luggage would need to be removed from the plane as a serious security matter, causing a flight delay. Additionally, when the passenger does not show up for the second leg of her flight, the rest of her itinerary is automatically cancelled and she and will not have a valid ticket on her way home.

- **Don't associate a frequent flyer account** — If you do, the airline might invalidate any miles you've accrued with them.

- **Some airlines may require proof of a return ticket** during check-in. If this happens to you, just buy a refundable return ticket directly from the airline and cancel it ASAP after boarding.

- **Do not overuse** hidden-city itineraries. Do not fly hidden-city on the same route with the same airline dozens of times within a short time frame.

- You might upset the airline, so don't do this often.[7]

73.      Skiplagged.com is intentionally designed to facilitate and enable travelers to engage in expressly prohibited activities that violate American's (and other airlines') Conditions of Carriage. By actively promoting prohibited forms of travel, Skiplagged induces passengers to breach American's Use Agreement and/or Conditions of Carriage.

### d. Skiplagged's Consumer Fraud and Deceptive Tactics Violate Federal and Department of Transportation Regulations.

74.      In addition to the harm Skiplagged causes American by its unauthorized activities, Skiplagged also engages in various misleading and deceptive practices that the U.S. Department of Transportation ("DOT") has specifically prohibited and declared to be unfair and deceptive practices. This includes misleading consumers regarding ticket costs.

75.      The DOT specifically put in place regulations to declare certain practices unfair or deceptive to consumers. In particular, the "Full Fare Advertising Rule"—set forth in 49 U.S.C. § 41712 and implemented by 14 CFR 399.84—is a federal consumer protection law to prevent deceptive airfare advertising practices and requires that a fare quoted be the entire price to be paid by the customer – not a base fare which later tacks on taxes and fees.

---

[7]  https://support.skiplagged.com/hc/en-us/articles/115003286687-What-is-Skiplagging-or-hidden-city-flying-  (last accessed August 3, 2023).

76.     The DOT created these regulations to avoid the confusion and potentially deceptive practice of presenting a price to attract consumers that does not reflect the total cost to travel, which could be significantly higher than the initially advertised price. Skiplagged does just that, and continues to engage in the very price advertising tactic that the DOT has prohibited due to its deceptive and misleading effects.

77.     Additionally, 14 CFR 399.80—which establishes "Unfair and deceptive practices of ticket agents"—provides that the following constitutes "an unfair or deceptive practice or unfair method of competition . . . by a ticket agent that sells air transportation online":

"(f) Misrepresentations[8] as to fares and charges for air transportation or services in connection therewith"; and

"(k) Selling or issuing tickets or other documents to passengers to be exchanged or used for air transportation knowing or having reason to know or believe that such tickets or other documents will not be or cannot be legally honored by air carriers for air transportation."

78.     Skiplagged violates 399.80(f) in multiple ways, including by displaying false and misleading "Total Cost(s)" for tickets on the initial search results page, which end up adding on undisclosed fees, misrepresenting the fares, and cost the consumer more than advertised.

79.     And Skiplagged's sale of hidden city tickets constitutes a deceptive practice under 399.80(k) because, based on the express terms regarding "Ticket validity" and "Prohibited booking practices" in the Conditions of Carriage that Skiplagged is required to acknowledge when booking tickets, Skiplagged knows or has reason to know American will not honor such tickets.

### *e.   Skiplagged Infringes American's Marks and the American Copyright.*

80.     Skiplagged has and continues to infringe the American Marks and American Copyright on Skiplagged.com, through its communications, and more by prominently displaying

---

[8] As used in this section, the term "misrepresentation" includes "any statement or representation made in advertising . . . to members of the public which is false, fraudulent, deceptive or misleading, or which has the tendency or capacity to deceive or mislead." 14 CFR 399.80, n.1.

the marks "American Airlines" and using American's "Flight Symbol" design as shown below on thousands of search page permutations.



\*          \*          \*

81.     Skiplagged's business model involves unauthorized sales practices that harm American and risks confusing American's customers into believing that they are dealing with an authorized agent of American.

82.     Skiplagged's improper actions have caused American considerable harm. When things go wrong with tickets booked through Skiplagged, American gets blamed, even though those problems are the direct result of unnecessary complications caused by Skiplagged's improper practices. Further, Skiplagged's liberal and unauthorized use of American's protected intellectual property suggests falsely that American is working with Skiplagged, authorizing its activities, and will assist customers when Skiplagged's practices harm customers. American then loses more revenue when it tries to help solve its customers' problems that Skiplagged created. American has spent decades building trust with its customers and investing countless resources to become one the premier airline brands in the world. Skiplagged's unlawful, unauthorized activity threatens and erodes that investment, potentially irreparably and is a safety and security threat.

83.     American has expended significant employee time and resources investigating and trying to address the problems caused by Skiplagged's and its unauthorized referral partners' abusive practices.

84.     Skiplagged takes measures to hide its tracks and elude American's efforts to stop its abusive practices. Therefore, at this point, relief from this Court is necessary to stop Skiplagged's misconduct. Southwest Airlines previously secured preliminary and permanent injunctive relief in this District against similar abusive practices by an unauthorized entity selling airline tickets. *See Southwest Airlines Co. v. Kiwi.com, Inc.*, 3:21-cv-98, 2021 WL 4476799 (N.D. Tex. Sept. 30, 2021) (preliminary injunction); *id.* at Dkt. No. 126 (permanent injunction). By this action, American seeks similar permanent injunctive relief, as well as monetary damages, including disgorgement of Skiplagged's ill-gotten profits.

## V.     CAUSES OF ACTION

### COUNT I
**Breach of AA.com Use Agreement and Conditions of Carriage**

85.     American realleges and incorporates by reference all material allegations in the preceding paragraphs as if fully set forth herein.

86.     Use of AA.com is governed by and subject to the Use Agreement.

87.     At all relevant times, legal, privacy and copyright provisions, including the Use Agreement and American's Conditions of Carriage, have been accessible by links starting from AA.com's main homepage. Skiplagged's own website, skiplagged.com, likewise has Terms of Use, accessible by links, which purport to create a contract between Skiplagged and its customers.

88.     AA.com's Use Agreement states, "In return for gaining access to the Site and using it, you agree to be bound by the following Agreement …. If you do not intend to be legally bound

by these terms and conditions, do not access and use the Site." Thus, by accessing and using, and booking tickets through, AA.com, the Use Agreement is a valid agreement binding on Skiplagged.

89.     As a party to the Use Agreement, American is entitled to sue for a breach of the agreement. American has met all conditions precedent to and otherwise complied with the contract.

90.     Among other things, the Use Agreement prohibits use of the site to "engag[e] in any commercial purpose," including to "copy, display, distribute, download, . . . publish, . . .reuse, sell, transmit, . . . or otherwise use the content of the site for public or commercial purposes."

91.     The Use Agreement also prohibits use of AA.com to make "any fictitious, fraudulent, or abusive reservation," defined in the Conditions of Carriage to include "[p]urchasing a ticket without intending to fly all flights to gain lower fares (hidden city ticketing)."

92.     The Use Agreement also prohibits use of the site to "[a]ct as an agent . . . for any person who is not a member of your immediate household; or your direct supervisor at your place of employment."

93.     The Use Agreement also prohibits use of the site to misrepresent or omit the origin or source of any file uploaded or downloaded to the website.

94.     The Use Agreement also prohibits monitoring or copying any website content by using any manual or automatic device, without first obtaining American Airlines' prior written consent.

95.     The Use Agreement also provides that a user of the site does not have "permission to hyperlink or provide references to the Site" or "to use any trademarked or copyrighted material to provide such hyperlinks or references, unless you are allowed to do so under a separate written agreement with American Airlines."

96.     In violation of Use Agreement and Conditions of Carriage, Skiplagged accesses AA.com to, among other things, engage in a commercial purpose by selling American tickets to Skiplagged's customers, sell hidden city tickets, display and republish American's protected content, data, and intellectual property, hyperlink to AA.com, and act on behalf of passengers who are not members of the immediate household of the individual using the site or for that person's direct work supervisor. Skiplagged's misconduct is ongoing and continues today.

97.     Skiplagged's actions have damaged, and will continue to damage, American. The Use Agreement provides that the user agrees to indemnify American for "any and all claims, demands, proceedings, suits and actions, including any related liabilities, . . . losses, damages, . . . expenses (including legal . . . fees []) and costs . . . based on, arising out of or resulting from your use of the Site, including without limitation any Claims alleging facts that if true would constitute your breach of this Agreement." The Conditions of Carriage provide that "You may also be liable for any loss, damage or expense resulting from your conduct."  As such, American is entitled to its actual damages suffered as a result of Skiplagged's breaches, in an amount to be proven at trial.

98.     Skiplagged's acts also have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great and irreparable injury to American for which American has no adequate remedy at law.

### COUNT II
### Tortious Interference with American's Conditions of Carriage Contract

99.     American realleges and incorporates by reference all material allegations in the preceding paragraphs as if fully set forth herein.

100.    American's Conditions of Carriage constitute a valid contract between American and any passengers who purchase a ticket on an American flight. The Conditions of Carriage state

"All transportation of passengers and bags provided by American Airlines is subject to the terms of these Conditions of Carriage."

101.    American's Conditions of Carriage, under the provision regarding "Prohibited booking practices," provide that "Reservations made to exploit or circumvent fare and ticket rules are prohibited," including "[p]urchasing a ticket without intending to fly all flights to gain lower fares (hidden city ticketing)."

102.    As alleged above, Skiplagged is specifically designed to identify "hidden city" ticketing opportunities that directly violate the "Prohibited booking practices" set forth in the Conditions of Carriage and, thus, necessarily require travelers to breach their Conditions of Carriage with American.

103.    By promoting prohibited forms of travel, and asking its customers to lie about it to American, Skiplagged knowingly encourages and induces American passengers to breach the Conditions of Carriage.

104.    In fact, Skiplagged's founder and CEO has publicly acknowledged that by using Skiplagged's services, "you may be breaking an agreement with the airlines known as a contract of carriage, where it might say you can't miss flights on purpose."[9]

105.    As a result of Skiplagged's actions, American has sustained injury, damage, and financial losses due to the interference which include lost profits and damages related to efforts used to mitigate the interference.

---

[9]    United Airlines sued me last year for creating Skiplagged, https://www.reddit.com/r/IAmA/comments/3ux82r/united_airlines_sued_me_last_year_for_creating/ (posted November 30, 2015) (emphasis added).

COUNT III
**Trademark Infringement under 15 U.S.C. § 1114**

106.    American realleges and incorporates by reference all material allegations in the preceding paragraphs as if fully set forth herein.

107.    The American Marks are inherently distinctive and continue to acquire distinctiveness and goodwill in the marketplace through American's use of those marks in commerce. As a result of its widespread and continuous use, American Marks have become associated in the minds of travelers and travel loyalty program users with American. The reputation and goodwill that it has built up in American Marks is of great value to American.

108.    The types of services for which Skiplagged uses American Marks are identical or substantially similar to services offered by American.

109.    Skiplagged's conduct—including its prominent use of American Marks in conjunction with promoting and selling American flights—has caused and is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Skiplagged with American, or as to the origin, sponsorship, or approval of Skiplagged's goods and services by American.

110.    Skiplagged's acts constitute infringement of one or more American Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

111.    American has sustained injury, damage, and loss as a result of Skiplagged's infringement.

112.    American is entitled to monetary damages for Skiplagged's infringement.

113.    Skiplagged has acted with knowledge of American's ownership of the American Marks and with a deliberate intent or willful blindness to unfairly benefit from the goodwill

symbolized by the marks. Skiplagged willfully infringed one or more of the American Marks, and the intentional nature of its actions makes this case exceptional under 15 U.S.C. § 1117(a).

114.    American also has suffered and will continue to suffer irreparable harm as a result of Skiplagged's infringement of the American Marks. Unless enjoined by this Court pursuant to 15 U.S.C. § 1116, Skiplagged will continue to infringe the American Marks. American has no adequate remedy at law for Skiplagged's infringement.

**COUNT IV**
**False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a)**

115.    American realleges and incorporates by reference all material allegations in the preceding paragraphs as if fully set forth herein.

116.    American has federal trademark rights in the American Marks.

117.    Skiplagged is displaying and using the American Marks in interstate commerce purporting to act as an online travel agency for American but with no authorization to sell and re-sell American flights on Skiplagged's website.

118.    Skiplagged's conduct did and is likely to cause confusion, mistake, or deception as to its affiliation, connection, or association with American, or as to the origin, sponsorship, or approval of Skiplagged's goods and services by American.

119.    Skiplagged's acts constitute false designation of origin, which is likely to cause, and have caused, confusion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

120.    The intentional nature of Skiplagged's actions entitles American to recover profits, damages, and attorney fees under 15 U.S.C. § 1117(a).

121.    Skiplagged's actions have caused and will continue to cause irreparable injury to American for which it has no adequate remedy at law, as well as monetary harm. Skiplagged's acts damage American by undermining consumers' association of the American Marks with

American. Unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Skiplagged will continue to misrepresent and mislead the public that its services are in some manner connected with, sponsored by, affiliated with, related to, or approved by American. Accordingly, American is entitled to injunctive relief.

122.    American has sustained injury, damage, and loss based on Skiplagged's actions which include financial losses suffered as a result of the false association, corrective costs to rectify misleading information and the damage to American's reputation.

## COUNT V
## Copyright Infringement under 17 U.S.C. § 101

123.    American realleges and incorporates by reference all material allegations in the preceding paragraphs as if fully set forth herein.

124.    American has a copyright registration for the American Copyright, Reg. No. VA0002130520 / 2016-06-03. The copyright is valid and enforceable.

125.    Skiplagged had access to the American Copyright because it is published on AA.com and on other places on the Internet. Skiplagged copied the American Copyright and displays it on its website.

126.    In copying the American Copyright, Skiplagged violated U.S. copyright laws, specifically 17 U.S.C. § 101, *et seq.* Skiplagged willfully infringed upon the American Copyright.

127.    American has been, is now, and will be irreparably harmed by Skiplagged's copyright infringement and, unless enjoined by the Court pursuant to 17 U.S.C. § 502, will continue to infringe the American Copyright and cause harm and irreparable injury to American for which American has no adequate remedy at law.

128.     American has sustained injury, damage, and loss based on Skiplagged's infringement. American is entitled to statutory damages, including for Skiplagged's willful infringement.

## VI.     ATTORNEYS FEES

129.     American realleges the material factual allegations in the preceding paragraphs.

130.     American was required to retain legal services to pursue its prosecution of the claims asserted herein. Pursuant to at least Tex. Civ. Prac. & Rem. Code §§ 38.001 and 143.002, American seeks its reasonable and necessary attorneys' fees.

## VII.     CONDITIONS PRECEDENT

131.     All conditions precedent to these claims have been performed by American, been waived, or occurred.

## VIII.   APPLICATION FOR INJUNCTIVE RELIEF

132.     Skiplagged's ongoing actions in violation of its contracts, the Lanham Act, and the Copyright Act, have caused, and are continuing to cause, substantial and irreparable damage to American for which there is no adequate remedy at law. Skiplagged has used and will continue to improperly use the American Marks and American Copyright unless this Court prevents Skiplagged from doing so. American will continue to lose control over its own reputation and goodwill, and the public and consumers likely will continue to be confused, misled, and deceived by the fact that Skiplagged offers services under the American Marks and American Copyright without authorization.

133.     American requests that Skiplagged, all companies owned or controlled by Skiplagged directly or indirectly, their employees, representatives, agents, members, and others acting in concert with them, be permanently enjoined from publishing American flight/fare content on any website, including Skiplagged.com, through Skiplagged's mobile applications, or

34

elsewhere; selling or re-selling American flights, fares, or other products through any channel including but through AA.com or authorized American agents; accessing or using AA.com or its content for any commercial purpose; otherwise accessing or using American's proprietary flight, fare and/or inventory content from any source or for any purpose; holding itself out or continuing to act in an agency capacity for American; or displaying or otherwise using the American Marks or American Copyright, in violation of U.S. law.

134.    American also requests, pursuant to Fed. R. Civ. P. 65(d)(2)(C), that all persons who are in active concert or participation with Skiplagged be permanently enjoined from providing Skiplagged with American flight, fare and/or inventory content, from selling American tickets to or for the benefit of Skiplagged or Skiplagged's customers, from executing or clearing sales of American tickets for Skiplagged, from transacting payment transactions with or for the benefit of Skiplagged in relation to any purchases or sales of American tickets, or otherwise assisting Skiplagged in relation to access to American flight, fare and/or inventory content, or purchases or sales of American tickets.

## IX.    PRAYER FOR RELIEF

Therefore, American respectfully requests that the Court enter an order and/or judgment awarding American:

a.    a permanent injunction requiring Skiplagged, and others assisting, or acting for or in concert with Skiplagged, to comply with the restrictions set forth above in Section VIII;

b.    an accounting of all sales of American flights made by Skiplagged, whether directly or indirectly;

c.    an accounting of all sales of American flights made by Skiplagged through any other travel agencies;

d.  disgorgement of all ill-gotten or unjust revenues, profits, and benefits that Skiplagged derived as a result of its trademark infringement, copyright infringement, and other misconduct alleged herein, pursuant to the Lanham Act (15 U.S.C. § 1117(a)) and Copyright Act (17 U.S.C. § 504(b));

e.  statutory damages, including pursuant to 15 U.S.C. § 1117(c) and (d), and 17 U.S.C. § 504(c);

f.  all actual damages that American has incurred due to Skiplagged's actions, including compensatory and consequential damages, as well as exemplary damages due to Skiplagged's willful conduct;

g.  prejudgment and post-judgment interest at the highest rates allowed by law;

h.  costs and attorney fees, including for any appeal; and

i.  all other relief to which American is justly entitled at law or in equity.

Dated: August 17, 2023                      Respectfully submitted,

/s/
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
(*pro hac vice application forthcoming*)
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**
**AMERICAN AIRLINES, INC.**