IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION FOR EXTENSION
OF TIME TO RESPOND TO DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT AND
REQUEST FOR EXPEDITED CONSIDERATION**

Plaintiff American Airlines, Inc. ("American") files this Motion for Extension of Time to Respond to Defendant Skiplagged, Inc.'s ("Skiplagged") Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support (the "Motion to Dismiss") [Dkt. No. 21] and request for expedited consideration, and requests an extension of its deadline to respond to the Motion to Dismiss so that it can obtain Skiplagged's responses to American's already-pending discovery, which includes requests that will provide the jurisdictional information necessary to enable American to respond to the factual assertions in the evidence supporting Skiplagged's Motion to Dismiss.

American requests expedited consideration because its response to the Motion to Dismiss is otherwise due on October 23, 2023, and without expedited consideration of American's current motion, American would not be able to support its response with the evidence it seeks through discovery.

1

## I.     BACKGROUND

American filed this lawsuit on August 27, 2023. [Dkt. Nos. 1, 8]. American's allegations

supporting jurisdiction and venue included the following:

> 11. This Court has personal jurisdiction over Skiplagged. By accessing and booking tickets through AA.com, Skiplagged agreed to AA.com's terms of use ("Use Agreement"), which includes an acknowledgement that the terms of the site constitute an agreement made and entered into in Tarrant County, Texas, and which provides that "Texas law governs this Agreement's interpretation and/or any dispute arising from your access to, dealings with, or use of the Site." Skiplagged's use of the American website to access and obtain American's flight and fare data, and also to communicate passenger information to American on any ticket sold and booked by Skiplagged on AA.com, is subject to AA.com's Use Agreement.

> 12. Skiplagged systematically conducts business in Texas and in this District. Skiplagged has purposefully availed itself of this forum by booking American tickets for Texas-based customers, soliciting business from Texas residents, selling flights to Texas residents, and offering and selling flights to, from, and within Texas.

> 13. The Court also has personal jurisdiction over Skiplagged because it has committed torts in this District, breached a contract entered into in this District which is governed by the laws of Texas, and violated Texas statutory law in this District. Based on the foregoing, Skiplagged could reasonably anticipate being brought into court in Texas.

> 14. Venue is proper in this District under 28 U.S.C § 1391 because the claims asserted in this action also arose in this District, and a substantial part of the activities, conduct, and damages giving rise to American's claims occurred in this District.

[Dkt. No. 8 ¶¶ 11–14].

On September 25, 2023, the parties participated in an in-person Rule 26(f) conference, and

the following day, on September 26, 2023, submitted their Joint Report pursuant to Rule 26 and

the Court's September 5 Order. [Dkt. No. 19]. In the Joint Report, the parties agreed that "[t]he

parties do not believe that discovery should be conducted in phases or limited to or focused on

particular issues." [*Id.* at 5].

On September 27, 2023, this Court entered its Scheduling Order. [Dkt. No. 20].

On October 2, 2023, Skiplagged filed its Motion to Dismiss challenging this Court's

personal jurisdiction [Dkt. No. 21], and attaching a declaration of its CEO and founder, Aktarer

Zaman ("Zaman Declaration") [Dkt. No. 22]. In its Motion to Dismiss and the Zaman Declaration, Skiplagged raised various fact issues concerning the nature and extent of its contacts with Texas and the factual bases for American's jurisdictional allegations.

On October 9, 2023, American served its First Set of Requests for Production ("RFPs") and First Set of Interrogatories on Skiplagged, and Skiplagged's responses thereto are due on November 8, 2023. *See* App'x 002–18 (Ex. A, RFPs); App'x 020–30 (Ex. B, Interrogatories).

American's response to Skiplagged's Motion to Dismiss is currently due on October 23, 2023.

## II.    ARGUMENT AND AUTHORITIES

### A.    Legal Standards

When responding to a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of establishing jurisdiction over a nonresident defendant. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc*., 754 F.2d 542, 545 (5th Cir. 1985). In determining whether personal jurisdiction exists, "the court can look beyond the pleadings 'by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Abramov v. Otis Elevator Co*., No. 3:11-CV-0440-D, 2011 WL 2550845, at *1 (N.D. Tex. June 27, 2011) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). Thus, courts customarily permit discovery on matters of personal jurisdiction "[w]hen a defendant disputes the factual bases for jurisdiction and discovery could reveal information relevant to determining whether personal jurisdiction exists." *Huynh v. Zurno, Inc*., No. 4:18-CV-01756, 2019 WL 486993, at *6 (S.D. Tex. Jan. 18, 2019) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co*., 517 F.3d 235, 241 (5th Cir. 2008)). And when ruling on a motion to dismiss (without an evidentiary hearing), although only uncontroverted allegations in

the complaint must be taken as true, the court must resolve all factual conflicts in plaintiff's favor. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

To demonstrate the need for discovery, a plaintiff need only make a "preliminary showing" of jurisdiction by raising "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts," in which case "plaintiff's right to conduct jurisdictional discovery should be sustained." *CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, No. 3:15-CV-2854-B, 2016 WL 3418974, at *3 (N.D. Tex. June 22, 2016) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)). Jurisdictional discovery is appropriate when "the motion to dismiss raises issues of fact." *Abromov*, 2011 WL 2550845, at *1 (quoting *Kelly v. Syria Shell Petrol. Dev. BV*, 213 F.3d 841, 855 (5th Cir. 2000)). In fact, "[w]hen a district court makes factual determinations decisive of a motion to dismiss for lack of jurisdiction, it must give plaintiffs an opportunity for discovery." *Id.* (quoting *McAllister v. FDIC*, 87 F.3d 762, 766 (5th Cir. 1996)). As the Supreme Court has recognized, "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). In seeking such discovery, a "plaintiff should 'identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction.'" *Fiduciary Network, LLC v. Buehler*, No. 3:15-CV-0808, 2015 WL 2165953, at *4 (N.D. Tex. May 8, 2015) (citation omitted). And, when "the jurisdictional question intertwines with the merits of the case, some discovery on the merits may be necessary, and general discovery may be permitted." *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).

Federal Rules of Civil Procedure 6(b) and 26(b) give district courts discretion to extend deadlines for good cause. FED. R. CIV. P. 6(b), 26(b).

**B.    An Extension is Appropriate to Allow American to Obtain Skiplagged's Responses to American's Pending Discovery Requests, Which Seek the Information Necessary for American to Respond to the Motion to Dismiss and Establish Personal Jurisdiction.**

As permitted under Rule 26(d)(1), given the parties' completion of a Rule 26(f) conference, American has already served its first RFPs and interrogatories on Skiplagged. American's pending discovery includes requests that will provide evidence regarding personal jurisdiction in response to the factual bases alleged in Skiplagged's Motion to Dismiss. American served its requests on October 9, 2023, which means Skiplagged's responses are currently due on November 8, 2023. As such, American is not seeking leave to conduct jurisdictional discovery or a full stay of the Motion to Dismiss, but is instead asking the Court to extend American's October 23 response deadline until 60 days after the Court's entry of an order granting such extension (which will provide 30 days for Skiplagged to respond to the timely-served discovery that American is already entitled to, and 30 days for American to review such discovery and file its response). For similar reasons as those underlying courts' allowance of jurisdictional discovery, there is good cause for the requested extension.[1]

In its Motion to Dismiss, Skiplagged—through the declaration of its CEO, Aktarer Zaman—disputes American's factual bases for personal jurisdiction and raises various fact issues surrounding Skiplagged's claim that it "has no meaningful or purposefully directed contacts with Texas." [Dkt. No. 21 at 10]. The interests of fairness support granting an extension of American's response so that it can receive Skiplagged's discovery responses on those fact issues and establish that Skiplagged has sufficient contacts to support jurisdiction. In particular, Skiplagged's following allegations in its Motion to Dismiss raise fact issues that necessitate discovery:

---

[1] Although American is not seeking leave to conduct jurisdictional discovery given its already-served discovery, American has made the preliminary showing of jurisdiction as would otherwise be required for jurisdictional discovery (*see infra* Sec. I; [Dkt. No. 8 ¶¶ 11–14]).

- "Skiplagged does not specifically solicit Texans to visit its website, does not advertise or market its services specifically to Texas residents, does not specifically direct its website to Texas, and does nothing to drive Texans to its website." [Dkt. No. 21 at 10–11];

- "Skiplagged engages in no advertising or marketing focused on Texas." Zaman Decl. ¶ 13;

- "Skiplagged does not target its services to Texas-based consumers, . . . and does not sell or ship any products into Texas." [Dkt. No. 21 at 3];

- Skiplagged "exchanges a limited amount of data with unidentified Texas visitors." [*Id.* at 11];

- "Skiplagged has not directed letters or phone calls to Texas, has not sold or shipped any products to Texas," and "does not market its services specifically in Texas." [*Id.* at 17 n.2];

- "Skiplagged has not obtained any of American's flight and fare information directly from American's website or servers," but rather "from publicly available sources such as online travel agencies, global distribution systems, and other travel metasearch engines." [*Id.* at 13 (citing Zaman Decl. ¶¶ 10 and 11)];

- "Skiplagged has likewise not obtained any of the 'American Marks' from American's website." [*Id.* (citing Zaman Decl. ¶ 10)];

- "Skiplagged merely refers customers to online travel agents or facilitates a consumer's purchasing of a ticket with an airline." [*Id.* at 14 (citing Zaman Decl. ¶¶ 10-12)];

- "Skiplagged has never agreed to American's [AA.com Use Agreement] or contract of carriage on the AA.com website" and "never read American's user agreement or contract of carriage or gained access thereto." Zaman Decl. ¶ 14; [Dkt. No. 21 at 16]; and

- "Skiplagged's allegedly tortious acts . . . are not specifically and purposefully directed to Texas," and it "does not 'expressly aim' any aspects of its website or services specifically at Texas." [Dkt. No. 21 at 20].

As set forth below, many of American's already-pending discovery requests seek the information necessary to discover and present specific evidence to respond to Skiplagged's above averments.

Based on the information and solicitations on Skiplagged.com (as well as standard industry practices of online travel agents), Skiplagged cannot dispute that it regularly and systematically sends promotional emails to either or both subscribers to such emails and/or customers who previously made a booking on Skiplagged.com. For example, as to the former category, one of Skiplagged's webpages solicits consumers to sign up for its newsletter to "Get Skiplagged deals

delivered to your inbox" which "We [Skiplagged] curate[s]," and in order to subscribe, Skiplagged also requires the user to answer the question "Where's home for you?" by inputting their "home airport" (presumably to personalize the particular flight routes that it advertises directly to each subscriber). App'x 035–36 (Ex. C-1, Screenshots of https://skiplagged.com/signup). Moreover, to preview the types of "deals" Skiplagged delivers to subscribers, the same webpage lists some "Top Deals Right Now," which often includes flights not only to and from Texas, but entirely within Texas. *Id.* Therefore, American's pending discovery seeks information about the extent of *emails*[2] Skiplagged has directed to past or potential Texas customers—including the number of customers that it *knows* are Texas residents to whom it has directly sent targeted marketing/advertising—as well as whether and to what extent those emails specifically advertise offerings/services for flights to, from, and *within* Texas. *See* App'x 028 (Ex. B, Interrog. No. 17); App'x 012–14, 016 (Ex. A-1, RFP Nos. 11, 20, 28–29, 47–48). American believes this discovery will refute Skiplagged's above allegations and support personal jurisdiction over it. *See, e.g.*, *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 900–02 (N.D. Tex. 2000); *Tempur-Pedic Intern., Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 373–74 (N.D. Tex. 2010); *Glob. 360, Inc. v. Spittin' Image Software, Inc.*, No. 3:04-CV-1857-L, 2005 WL 625493, at *5 (N.D. Tex. Mar. 17, 2005); *Mieczkowski v. Masco Corp.*, 997 F. Supp. 782, 787 (E.D. Tex. 1998) (exercising jurisdiction based on, *inter alia*, website's direct mailings to former customers residing in Texas).

American's pending discovery seeks information about the total amount and frequency of bookings purchased either or both by Texas residents and/or for flight services within Texas via Skiplagged.com, as well as the total revenues Skiplagged has received from its wrongful conduct tied to Texas. *See* App'x 011, 016 (Ex. A-1, RFP Nos. 6, 49–50); App'x 027–28 (Ex. B, Interrog.

---

[2] Skiplagged's assertion that it "has not directed letters or phone calls to Texas" is nothing more than a red herring; in this predominantly digital age, the vast majority of company communications are sent via email.

Nos. 8, 12–13, 15–16, 18); *see, e.g.*, *Am. Eyewear*, 106 F. Supp. 2d at 904 ("[Defendant] has knowingly made sales to Texas residents and was fully aware that [his] services would reach this forum."); *Tempur-Pedic*, 758 F. Supp. 2d at 376 (exercising jurisdiction based on, *inter alia*, online sales to Texas residents, noting "had [defendant] wanted to exclude certain jurisdictions, it was able to refuse to deal with certain customers or to turn down any orders after checking customer addresses"); *Glob. 360*, 2005 WL 625493, at *4–5; *Shippitsa Ltd. v. Slack*, No. 3:18-CV-1036-D, 2019 WL 3304890, at *6 (N.D. Tex. July 23, 2019) (exercising jurisdiction in trademark case based on evidence and allegations that "Texas residents accessed [defendant]'s allegedly-infringing websites, viewed allegedly-infringing content, and were thereby induced to submit orders [on the website]"); *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673–74 (E.D. Tex. 2006) (finding personal jurisdiction on basis of sales to Texas customers, potential for sales to Texas, and drop-down menu that allowed potential customer to identify Texas as its state); *Dagel v. Resident News, LLC*, No. 3:11-CV-00663-L, 2011 WL 3518281, at *6 (N.D. Tex. Aug. 10, 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 483 (1985)) ("[P]arties who . . . create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.").

Relatedly, in determining whether jurisdiction exists based on a nonresident defendant's website, the Fifth Circuit has adopted the *Zippo* analysis, which requires courts to examine "the nature and quality of commercial activity that an entity conducts over the Internet." *Am. Eyewear*, 106 F. Supp. 2d at 900 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Under *Zippo*, "where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper"; where a website falls somewhere in between "passive" and the foregoing, "the exercise

of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Tempur-Pedic*, 758 F. Supp. 2d at 372. With this in mind, American's pending discovery includes many requests that will reveal the true nature, extent, and quality of the commercial activity, transmission of files, and level of interactivity on Skiplagged.com, which is central to the jurisdiction inquiry in this case.

American's pending discovery also seeks information that will reveal (1) the nature and extent of Skiplagged's dealings and communications with other online travel agencies, metasearch engines, or other companies based in Texas with whom Skiplagged has an agreement or business relationship relating to or facilitating its tortious and unlawful activities underlying American's claims; (2) the amount of commissions, fees, or other financial compensation Skiplagged has received from or paid to these Texas companies in connection with same; and (3) the extent to which Skiplagged's method and process of obtaining American's protected information from those sources involves contacts with Texas. *See* App'x 010, 014, 016 (Ex. A-1, RFP Nos. 2, 31–34, 51–55); App'x 027–28 (Ex. B, Interrog. Nos. 4, 6–7, 14, 19). In other words, this discovery will reveal the agreements or partnerships Skiplagged has entered into with Texas companies for the purposes of obtaining and using American's protected information, facilitating or helping such Texas companies sell American flights (including to Texas residents), and profiting from those Texas companies' sales of American flights to consumers (including Texas residents) that Skiplagged directly referred to those Texas companies. These facts will support jurisdiction over Skiplagged. *See, e.g.*, *Am. Eyewear*, 106 F. Supp. 2d at 901 (regarding website, holding personal jurisdiction is proper where defendant "knowingly enters into contracts with Texas residents for commercial gain," including in connection with "mak[ing] sales to Texas residents," or "enter[s] into contracts with residents . . . which 'involve the knowing and repeated transmission of computer files over

the Internet'"); *Mieczkowski*, 997 F. Supp. at 787 (identifying defendant website's dealings with Texas supplier as part of the bases supporting jurisdiction).

American's pending discovery also seeks information that it expects will controvert Skiplagged's allegation that it never read or accessed American's AA.com Use Agreement (which includes an acknowledgement that the terms constitute an agreement made and entered into in Texas). *See* App'x 012 (Ex. A-1, RFP No. 13).

Lastly, in addition to the harm to American that Skiplagged knew would occur in Texas, American's pending requests also seeks discovery into the extent of harm that Skiplagged's conduct has caused either to Texas residents or in connection with flights/services in Texas sold by Skiplagged. *See* App'x 013 (Ex. A-1, RFP Nos. 24–25).

As Skiplagged explained in its Motion, the "proper jurisdictional inquiry is whether the defendant 'purposefully directed' or 'expressly aimed'" relevant conduct at Texas, or, stated differently, "whether the defendant's conduct connects him to the forum in a meaningful way." [Dkt. No. 21 at 19, 21 (citations omitted)]. However, the facts and information necessary to provide evidence thereof are exclusively in the possession of Skiplagged, and without discovery, American is not able to test or controvert the allegations in Skiplagged's Motion to Dismiss.

### III.    CONCLUSION

For the foregoing reasons, American respectfully requests that the Court extend American's deadline to respond to Skiplagged's Motion to Dismiss until sixty (60) days after the Court's entry of an order granting such extension, or thirty (30) days after American receives Skiplagged's responses to American's discovery served on October 9, 2023, whichever is later.[3]

---

[3] American proposes this later alternative response deadline solely to account for any potential delays or requested extensions by Skiplagged in providing its responses to American's discovery requests.

Dated: October 16, 2023

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Tyson Lies
State Bar No. 24087927
tyson.lies@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
Zachary B. Tobolowsky
State Bar No. 24106512
zachary.tobolowsky@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that Skiplagged's counsel, Bill Kirkman, and I, as counsel for American, conferred via both a series of emails and then a phone call that occurred on October 16, and Skiplagged opposes the motion.

*/s/ Lars L. Berg*
Lars L. Berg


## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2023, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.