IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**APPENDIX TO PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION FOR EXTENSION OF TIME TO RESPOND TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT AND REQUEST FOR EXPEDITED CONSIDERATION**

---

Plaintiff American Airlines, Inc. ("American") files this Appendix to its Motion for Extension of Time to Respond to Defendant Skiplagged, Inc.'s ("Skiplagged") Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support and Request for Expedited Consideration:

| Ex. | DOCUMENT DESCRIPTION | PAGE NOS. |
|---|---|---|
| A | American's First Set of Requests for Production to Skiplagged | App'x 001 – 018 |
| B | American's First Set of Interrogatories to Skiplagged | App'x 019 – 030 |
| C | Declaration of Zachary B. Tobolowsky | App'x 031 – 033 |
| C-1 | Screenshots captured from https://skiplagged.com/signup | App'x 034 – 036 |

Dated: October 16, 2023                    Respectfully submitted,

                                           */s/ Lars L. Berg*
                                           Dee J. Kelly, Jr.
                                           State Bar No. 11217250
                                           dee.kelly@kellyhart.com
                                           Lars L. Berg
                                           State Bar No. 00787072
                                           lars.berg@kellyhart.com
                                           Tyson Lies
                                           State Bar No. 24087927
                                           tyson.lies@kellyhart.com
                                           Julia G. Wisenberg
                                           State Bar No. 24099146
                                           julia.wisenberg@kellyhart.com
                                           KELLY HART & HALLMAN LLP
                                           201 Main Street, Suite 2500
                                           Fort Worth, Texas 76102
                                           (817) 332-2500

                                           Bina Palnitkar
                                           State Bar No. 24070378
                                           palnitkarb@gtlaw.com
                                           Zachary B. Tobolowsky
                                           State Bar No. 24106512
                                           zachary.tobolowsky@gtlaw.com
                                           GREENBERG TRAURIG LLP
                                           2200 Ross Avenue, Suite 5200
                                           Dallas, TX 75201
                                           Telephone: (214) 665-3600

                                           Nathan J. Muyskens
                                           nathan.muyskens@gtlaw.com
                                           GREENBERG TRAURIG, LLP
                                           2101 L Street, N.W., Suite 1000
                                           Washington, DC 20037
                                           Telephone: (202) 331-3100

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **AMERICAN AIRLINES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2023, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.


*/s/ Lars L. Berg*
Lars L. Berg

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

### PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.

---

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff American Airlines, Inc. ("American") hereby serves its First Set of Requests for Production to Defendant Skiplagged, Inc. ("Skiplagged"), as follows.

### INSTRUCTIONS

1.     Skiplagged is instructed to produce for inspection and copying the documents and things within its possession, custody, or control as described in the requests set forth herein within thirty (30) days after service hereof, in accordance with Rule 34.

2.     These requests shall apply to all items (e.g., documents or things) in your possession, custody, or control at the present time, as well as all items that come into your possession, custody, or control. If you know of the existence, past or present, of any items requested below, but are unable to produce such items because they are not presently in your possession, custody or control, you shall so state and shall provide a written statement setting forth:

      a.   the identity of the item;
      b.   the nature of the item (e.g., letter, memorandum, or chart);

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**          **PAGE 1**
3818255_1.DOCX

App'x 002

    c.  the identity of the person(s) who created (e.g., authored) the item;
    d.  the identity of any person who received a copy of the item;
    e.  the date of the item;
    f.  a brief description of the subject matter of the item; and
    g.  the identity of any person who has possession, custody, or control of the item.

3.      If you have no documents that are responsive to a particular request, state that no responsive documents exist.

4.      For any responsive items that have been lost, destroyed, withheld from production, or redacted, for any reason, you shall provide a written statement setting forth:

    a.  the identity of the item;
    b.  the nature of the item (e.g., letter, memorandum, or chart);
    c.  the identity of the person(s) who created (e.g., authored) the item;
    d.  the identity of any person who received a copy of the item;
    e.  the date of the item;
    f.  a brief description of the subject matter of the item; and
    g.  the circumstances of the loss or destruction of the item or any fact, statute, rule, or decision upon which you rely in withholding or redacting the item.

5.      If you decline to produce any document or part thereof based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient to (a) disclose the facts upon which you rely in asserting your claim; (b) permit the grounds and reasons for withholding the information to be unambiguously identified; and (c) permit the information withheld to be unambiguously identified.

6.      All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as in the original.

7.      You shall keep and produce a record of the source of each document produced, which shall include the name and location of the file where each document was located and the name of the person, group, or department having possession, custody, or control of each document.

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**           **PAGE 2**
3818255_1.DOCX

**App'x 003**

8.      It is requested that all information, documents, and things, including, without limitation, electronically-stored information, that might relate to or have an impact on the subject matter of this litigation, including information, documents, and things responsive to these discovery requests, be preserved and that you immediately cease any ongoing process of removal, discarding, and/or destruction of such information and documents.

9.      For purposes of interpreting or construing the scope of these discovery requests, all terms shall be given their most inclusive interpretation unless otherwise specifically limited by the language of an individual request.  This includes, without limitation, the following:

    a.    construing "and" and "or" in the disjunctive or conjunctive, as necessary to make the request more inclusive and to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope;

    b.    construing "any" and "all" to mean "any and all," as necessary, to make the request more inclusive

    c.    construing the singular form of the word to include the plural, and the plural form to include the singular;

    d.    construing the past tense of a verb to include the present tense and the present tense to include the past tense;

    e.    construing the masculine to include the feminine and, *vice versa;* and

    f.    construing the term "including" to mean "including but not limited to."

10.     These discovery requests are intended to include all documents, things, and/or information in your possession, custody, or control, whether directly or indirectly.  A document or information is deemed to be within your possession, custody, or control if:

    g.    it is within your actual knowledge or possession;

    h.    it is in your physical control or ownership;

    i.    it is within the knowledge, custody, or control of any other person or entity and you could obtain it upon conducting a reasonable inquiry; or

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 3
3818255_1.DOCX

App'x 004

      j.    it is in the physical control of any other person, and you:

          i.    own the document in whole or in part;

          ii.    have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; or

          iii.    have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so.

11.    These discovery requests are continuing under Fed. R. Civ. P. 26(e).  If any document, information, and/or other material responsive to any request comes to the attention, possession, custody, or control of you, your associates, or your attorneys subsequent to serving your response(s), you are required promptly to furnish said additional documents or information.

12.    Unless otherwise specified in a particular request below, the relevant time period for purposes of these Requests is **from August 1, 2018 to the present**.

<div align="center">**DEFINITIONS**</div>

1.    "**American**" means and refers to Plaintiff American Airlines, Inc.

2.    "**Skiplagged**" means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

3.    "**You**," "**your**," or "**Defendant**" means and refers to Skiplagged.

4.    "**American's Content**" means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.          **PAGE 4**
3818255_1.DOCX

App'x 005

or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

5.    **"American Bookings"** means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

6.    **"American-Skiplagged Customer"** means and refers to any person who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether such person completed the booking on Skiplagged.com, through another agency or on another website or platform to which Skiplagged provided a direct link, transferred, referred, or redirected the person.

7.    **"AA.com Use Agreement"** means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

8.    **"American's Conditions of Carriage"** means and refers to the Conditions of Carriage    agreement    between    American    and    its    passengers,    available    at

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 5
3818255_1.DOCX

App'x 006

https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

9.    "**API**" or "**American's API**" refers to the application programming interface of AA.com.

10.    "**AA.com**" refers to American's public-facing front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

11.    "**Travel carrier(s)**" refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

12.    "**Travel Agency**" means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

13.    "**Person**" or "**persons**" mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.    "**PNR Data**" refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    **PAGE 6**
3818255_1.DOCX

**App'x 007**

information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

15. **"Communication"** or **"communications"** shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in nay nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

16. **"Document"** and **"documents"** are used herein in the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any written, recorded or tangible graphic matter, or any other means of preserving data, expression, facts, opinions, thought, images, or other information of any kind, including without limitation all

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 7
3818255_1.DOCX

App'x 008

non-identical copies, drafts, outtakes, subsequent versions, worksheets and proofs, however created or recorded, including without limitation audio tapes, annotations, calendars, correspondence, data or information of any kind recorded on compact disks, digital video diskettes, or any other type or form of diskettes for use with computers or other electronic devices, or any hard drive, diary entries, electronic recordings of any kind, e-mail, memoranda, notes, photographs, reports, telephone slips and logs, video cartridges and videotapes, and sites, databases, or other means of information storage or retrieval on the Internet or World Wide Web.

These terms are to be interpreted broadly to include documents stored in any medium and specifically include electronically stored information ("ESI") such as e-mail and documents maintained in electronic form on Delta's websites, servers, and stand-alone computers and hard drives. ESI includes, but is not be limited to, text files (including word processing documents), spreadsheets, e-mail files and information concerning e-mail (including all metadata fields, logs of e-mail history and usage, header information and "deleted" files including all potentially relevant data contained in free or slack space), Internet history files and preferences, graphical image format ("GIF"), tagged image file format ("TIFF"), portable document format ("PDF") files, databases, contacts, tasks, calendar and scheduling information, computer system activity logs, all file fragments, and backup files containing Electronic Data.

17.    "**Relating to**," "**related to**," "**concerning**," or "**referencing**" mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the request.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 8
3818255_1.DOCX

App'x 009

18.     **"This lawsuit"** refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas, Fort Worth Division.

19.     **"Skiplagged's Motion to Dismiss"** refers to *Skiplagged's Motion to Dismiss American's First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. 21].

20.     **"Zaman's Declaration"** refers to the *Declaration of Aktarer Zaman Submitted in Support of Skiplagged's Motion to Dismiss*, filed on October 2, 2023 [Dkt. 22].

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**     Documents relating to or evidencing Skiplagged's corporate structure, locations, organization, formation, management, ownership, shareholders, and investors.

**REQUEST FOR PRODUCTION NO. 2:**     All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**REQUEST FOR PRODUCTION NO. 3:**     All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**REQUEST FOR PRODUCTION NO. 4:**     All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 5:**     All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    **PAGE 9**
3818255_1.DOCX

App'x 010

customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**REQUEST FOR PRODUCTION NO. 6:**   Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, including all PNR Data for all such passengers.

**REQUEST FOR PRODUCTION NO. 7:**   All communications between AA.com and Skiplagged relating to any purchases or sales of American flights or services by Skiplagged.

**REQUEST FOR PRODUCTION NO. 8:**   All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

    (a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

    (b) interact with or access AA.com, American's API, or American's computer systems;

    (c) search for or identify American flights, itineraries, and fares to present to customers on Skiplagged.com (including to identify the best prices and/or to generate "hidden city" tickets);

    (d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

    (e) republish, display, distribute, provide access to, or otherwise use American's Content, including but not limited to American's flight and fare data, on Skiplagged.com;

    (f) book or purchase American flights on AA.com for Skiplagged users/customers;

    (g) charge users/customers fees for the purchase of American flights

    (h) sell American flights;

    (i) communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

    (j) circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

**REQUEST FOR PRODUCTION NO. 9:**   Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 10
3818255_1.DOCX

App'x 011

**REQUEST FOR PRODUCTION NO. 10:** Documents and communications evidencing all research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Request No. 8 and its subparts.

**REQUEST FOR PRODUCTION NO. 11:** Documents and communications relating to Skiplagged's advertisement, promotion, or sale of American products or services.

**REQUEST FOR PRODUCTION NO. 12:** Documents and communications relating to Skiplagged obtaining, or attempting to obtain, American's Content, including but not limited to American fare, schedule or inventory data.

**REQUEST FOR PRODUCTION NO. 13:** Documents and communications relating to, discussing, or referencing American, AA.com, the AA.com Use Agreement, American's Conditions of Carriage, any other rules or policies of American, Skiplagged's use of American's Content, or Skiplagged's sale of tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 14:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or understanding that Skiplagged is not authorized by American to access, distribute, display or use American's content on Skiplagged.com or to book, ticket or sell tickets for American-marketed flights.

**REQUEST FOR PRODUCTION NO. 15:** Documents and communications relating to or discussing the sale of tickets on American-marketed flights or services by any Travel Agencies or travel metasearch engines other than Skiplagged.

**REQUEST FOR PRODUCTION NO. 16:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness of other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or websites having authorization from, or agreements with, American to access or distribute American's fare, schedule and inventory content, to market or advertise American-marketed flights or to book, ticket or sell tickets on American-marketed flights, use American's Content, or otherwise act as an agent of American.

**REQUEST FOR PRODUCTION NO. 17:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness that American revoked Kiwi.com's right and authorization to access or distribute American fare, schedule and inventory content, or to book, ticket or sell tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 18:** All communications between Skiplagged and any other third party discussing, mentioning, or relating in any way to American, the booking, ticketing or sale of tickets on American-marketed flights, or the distribution, publication, access, or use of American's Content.

**REQUEST FOR PRODUCTION NO. 19:** Documents and communications relating to any meetings or discussions involving any Skiplagged employees, directors, board members, officers, investors, or shareholders where American or AA.com was discussed, addressed, mentioned.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 11
3818255_1.DOCX

App'x 012

**REQUEST FOR PRODUCTION NO. 20:** Documents and communications relating to Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its marketing and sale of tickets on American-marketed flights and/or its use of American's Content, including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of tickets on American-marketed flights or services; (ii) the benefits of or reasons for marketing, offering, booking, ticketing, purchasing, and/or selling tickets on American-marketed flights or services; and (iii) consumer demand or preferences for booking travel with American.

**REQUEST FOR PRODUCTION NO. 21:** Presentations, slide decks, handouts, or other presentation materials concerning Skiplagged's business plans, strategies, technology, or platform—both final and draft versions—for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

**REQUEST FOR PRODUCTION NO. 22:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on or through Skiplagged.com since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 23:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on any other travel websites by any customers who were transferred, referred or redirected to such travel websites by or through Skiplagged.com since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 24:** Documents and communications relating to or reflecting any complaints by any customers or passengers who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether booked directly on Skiplagged.com or on another website to which Skiplagged transferred, referred or redirected the customer to complete the booking.

**REQUEST FOR PRODUCTION NO. 25:** Communications with any American-Skiplagged Customers regarding flight changes, delays, cancellations, refunds, customer service issues, baggage fees, service fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

**REQUEST FOR PRODUCTION NO. 26:** All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

**REQUEST FOR PRODUCTION NO. 27:** All documents and financials identifying or reflecting Skiplagged's total revenues, gross margins, and net profits relating to or resulting from Skiplagged's sale of American flights, including taking into account any/all additional fees of any kind charged to customers in connection with the sales of American flights (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 28:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to American.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 12
3818255_1.DOCX

App'x 013

**REQUEST FOR PRODUCTION NO. 29:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 30:** Communications between Skiplagged and any third-party regarding American, AA.com, Skiplagged's marketing or sale of tickets on American-marketed flights or services, Skiplagged's use of American's Content on Skiplagged.com, Skiplagged's efforts to obtain data or information from AA.com, or American's claims or allegations in this lawsuit.

**REQUEST FOR PRODUCTION NO. 31:** All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

**REQUEST FOR PRODUCTION NO. 32:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has received from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of American flights.

**REQUEST FOR PRODUCTION NO. 33:** All documents, communications, and agreements concerning Skiplagged's payment of or obligation to pay commissions, fees, or other financial compensation to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems) in connection with the sale of commercial flights to consumers.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has made to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies) in connection with the sale of tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 35:** Any settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any carriers' flights or services or use of carriers' flight and fare information, trademarks, or data/content.

**REQUEST FOR PRODUCTION NO. 36:** All complaints, legal notices, demand letters, cease and desist letters, and any other similar correspondence that Skiplagged has received from any other person or entity, including any airline, travel carrier, travel service provider, Travel Agency, travel metasearch engine, or governmental, regulatory, or administrative agency, relating to Skiplagged's operations or the operation of Skiplagged.com.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 13
3818255_1.DOCX

App'x 014

**REQUEST FOR PRODUCTION NO. 37:** Communications with any American-Skiplagged Customers regarding any issues, problems, or troubles that the passenger encountered during her travel with American, and any documents relating thereto.

**REQUEST FOR PRODUCTION NO. 38:** Documents and communications with customers and any internal documents or communications relating to, or concerning issues arising from, Skiplagged's warnings and/or instructions to purchasers of "hidden-city" tickets, including about what the passengers should do to avoid problems or what they should say to airline staff.

**REQUEST FOR PRODUCTION NO. 39:** Any press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other travel carriers.

**REQUEST FOR PRODUCTION NO. 40:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 41:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 42:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 43:** Documents and communications relating to or supporting Skiplagged's statements on its website regarding "Why are we doing this?", including the specific reasons described therein.

**REQUEST FOR PRODUCTION NO. 44:** All documents, communications, and agreements relating to Skiplagged's terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, the collection, protection, and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

**REQUEST FOR PRODUCTION NO. 45:** Documents and communications referring or relating to the Airlines Reporting Corporation ("ARC") or the International Air Transport Association ("IATA"), including but not limited to documents concerning Skiplagged's consideration, evaluation, decision, or reasons for deciding whether or not to apply to become an accredited ARC/IATA travel agency.

**REQUEST FOR PRODUCTION NO. 46:** Any documents or communications relating to or evidencing any confusion or misunderstanding by American-Skiplagged Customers, after the time of their purchase of a ticket on an American-marketed flight, regarding Skiplagged's authority/ability or lack thereof to address or resolve any matters relating to their travel or booking.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 14
3818255_1.DOCX

App'x 015

**REQUEST FOR PRODUCTION NO. 47:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers who previously purchased travel or lodging on Skiplagged.com with a Texas address.

**REQUEST FOR PRODUCTION NO. 48:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers specifically identifying or offering "deals" or promotions on hotels in Texas or flights to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 49:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**REQUEST FOR PRODUCTION NO. 50:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**REQUEST FOR PRODUCTION NO. 51:** Documents relating to the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and the means or processes by which Skiplagged obtains such information.

**REQUEST FOR PRODUCTION NO. 52:** All communications between Skiplagged and any of the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration).

**REQUEST FOR PRODUCTION NO. 53:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases made by consumers that Skiplagged.com redirected to such other Travel Agency or metasearch engine.

**REQUEST FOR PRODUCTION NO. 54:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency or travel metasearch engine.

**REQUEST FOR PRODUCTION NO. 55:** Documents and communications relating to or supporting Skiplagged's statement that it "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                     PAGE 15
3818255_1.DOCX

App'x 016

**REQUEST FOR PRODUCTION NO. 56:**  All documents that you referred to or relied upon in answering any Interrogatory or Request for Admission served by American.


Dated: October 12, 2023                              Respectfully submitted,

                                                     */s/ Lars L. Berg*
                                                     Dee J. Kelly, Jr.
                                                     State Bar No. 11217250
                                                     dee.kelly@kellyhart.com
                                                     Lars L. Berg
                                                     State Bar No. 00787072
                                                     lars.berg@kellyhart.com
                                                     Tyson Lies
                                                     State Bar No. 24087927
                                                     tyson.lies@kellyhart.com
                                                     Julia G. Wisenberg
                                                     State Bar No. 24099146
                                                     julia.wisenberg@kellyhart.com
                                                     KELLY HART & HALLMAN LLP
                                                     201 Main Street, Suite 2500
                                                     Fort Worth, Texas 76102
                                                     (817) 332-2500

                                                     Bina Palnitkar
                                                     State Bar No. 24070378
                                                     palnitkarb@gtlaw.com
                                                     GREENBERG TRAURIG LLP
                                                     2200 Ross Avenue, Suite 5200
                                                     Dallas, TX 75201
                                                     Telephone: (214) 665-3600

                                                     Nathan J. Muyskens
                                                     nathan.muyskens@gtlaw.com
                                                     GREENBERG TRAURIG, LLP
                                                     2101 L Street, N.W., Suite 1000
                                                     Washington, DC 20037
                                                     Telephone: (202) 331-3100

                                                     **ATTORNEYS FOR PLAINTIFF**
                                                     **AMERICAN AIRLINES, INC.**

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**                              **PAGE 16**
3818255_1.DOCX

App'x 017

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I served the foregoing document *via hand delivery* to opposing counsel below in accordance with the Federal Rules of Civil Procedure:

> William L. Kirkman
> Kirkman Law Firm, PLLC
> 201 Main Street, Suite 1160
> Fort Worth, Texas 76102

*/s/ Lars L. Berg*
Lars L. Berg

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

## PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT SKIPLAGGED, INC.

---

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff American Airlines, Inc. ("American") hereby serves its First Set of Interrogatories to Defendant Skiplagged, Inc. ("Skiplagged"), as follows.

## INSTRUCTIONS

1.      Skiplagged is instructed to answer each of the below interrogatories separately and in writing, and under oath, within thirty (30) days after service hereof, in accordance with Rule 33.

2.      To the extent Skiplagged objects to any of the Interrogatories herein, the reasons for Skiplagged's objection(s) shall be stated and described with specificity. Notwithstanding any objection(s) to, you should respond to each Interrogatory to the extent you are able.

3.      Skiplagged shall be under a continuing obligation to supplement its answers to these Interrogatories to the extent provided in Rule 26(e)(1) of the Federal Rules of Civil Procedure. If any information and/or other information responsive to any interrogatory comes to the attention, possession, custody, or control of you, your associates, or your attorneys subsequent

to serving your response(s), you are required promptly to supplement your answers with said additional information.

4.      Each Interrogatory calls for not only Skiplagged's knowledge, but also all information that is available to Skiplagged by reasonable inquiry and due diligence, including through inquiry of its directors, officers, shareholders, managing agents, and representatives, including but not limited to any of its affiliates and/or attorneys.

5.      No Interrogatory shall be read as limiting any other Interrogatory.

6.      If, in responding to these Interrogatories, you claim any ambiguity in interpreting an Interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond but, instead, you shall set forth as part of your response the language deemed to be ambiguous and the interpretation that you used in responding to the Interrogatory.

7.      Whenever in these Interrogatories there is a request to "identify" a communication, you shall: (1) state the date and place of such communication; (2) identify each person who was present at, involved in, connected with, or who participated in such communication; (3) identify the type of communication (e.g., letter, telegram, conference, meeting, telephone conversation); (4) state the substance of such communication; and (5) identify each document reflecting or comprising such communication.

8.      Whenever in these Interrogatories there is a request to "identify" an individual, you shall state with respect to such individual: (1) his or her name; (2) his or her present or last-known business or home address; (3) his or her present or last-known business or home telephone number; (4) his or her present or last-known employer and present or last-known position; and (5) all positions he or she has held with the answering party (including the dates that each such

period of employment commenced and terminated, and a brief description of the responsibility of such position).

9.      Whenever in these Interrogatories there is a request to "identify" a document, you shall set forth: (1) the individual(s) who prepared the document; (2) the individual(s) who drafted the document; (3) the individual(s) who received or approved the document; (4) the type of document (e.g., letter, memorandum, tape recording, or other form of document); and (5) a description of it with the specificity required on a subpoena. Further, whenever in these Interrogatories there is a request to "identify" a document, you may produce the document to American in lieu of specifically identifying the document as required by this instruction if: (1) the document contains the information required by this instruction; (2) you describe the document specifically enough for American to locate the document in your document production; and (3) you clearly state in your response to the Interrogatory that you will produce the identified document.

10.      Unless otherwise specified in a particular Interrogatory below, the relevant time period for purposes of these Interrogatories is **from August 1, 2018 to the present**.

## DEFINITIONS

1.      "**American**" means and refers to Plaintiff American Airlines, Inc.

2.      "**Skiplagged**" means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other

person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

3.    "**You**," "**your**," or "**Defendant**" means and refers to Skiplagged.

4.    "**American's Content**" means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

5.    "**American Bookings**" means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

6.    "**American-Skiplagged Customer**" means and refers to any person who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether such person completed the booking on Skiplagged.com, through another agency or on another website or platform to which Skiplagged provided a direct link, transferred, referred, or redirected the person.

7.      "**AA.com Use Agreement**" means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

8.      "**American's Conditions of Carriage**" means and refers to the Conditions of Carriage agreement between American and its passengers, available at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

9.      "**API**" or "**American's API**" refers to the application programming interface of AA.com.

10.     "**AA.com**" refers to American's public-facing front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

11.     "**Travel carrier(s)**" refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

12.     "**Travel Agency**" means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

13.     "**Person**" or "**persons**" mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.     "**PNR Data**" refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

15.     "**Communication**" or "**communications**" shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in nay nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
INTERROGATORIES TO DEFENDANT SKIPLAGGED, INC.**                                              **PAGE 6**
3818285_1.DOCX

**App'x 025**

calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

16.    **"Relating to,"** **"related to,"** **"concerning,"** or **"referencing"** mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the Interrogatory.

17.    **"This lawsuit"** refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas, Fort Worth Division.

18.    **"Skiplagged's Motion to Dismiss"** refers to *Skiplagged's Motion to Dismiss American's First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. 21].

19.    **"Zaman's Declaration"** refers to the *Declaration of Aktarer Zaman Submitted in Support of Skiplagged's Motion to Dismiss*, filed on October 2, 2023 [Dkt. 22].

## INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**INTERROGATORY NO. 2:**   Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**INTERROGATORY NO. 3:**   Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**INTERROGATORY NO. 4:**   Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your response should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

**INTERROGATORY NO. 5:**   Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**INTERROGATORY NO. 6:**   Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**INTERROGATORY NO. 7:**   Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**INTERROGATORY NO. 8:**   Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**INTERROGATORY NO. 9:**   Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

**INTERROGATORY NO. 10:**   Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**INTERROGATORY NO. 12:** Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**INTERROGATORY NO. 13:** Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**INTERROGATORY NO. 14:** Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration), and describe the technical means and process by which Skiplagged obtains such information.

**INTERROGATORY NO. 15:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**INTERROGATORY NO. 16:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**INTERROGATORY NO. 17:** Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.

**INTERROGATORY NO. 18:** Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**INTERROGATORY NO. 19:** Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

Dated: October 12, 2023

Respectfully submitted,

*/s/ Lars L. Berg*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Tyson Lies
State Bar No. 24087927
tyson.lies@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I served the foregoing document *via hand delivery* to opposing counsel below in accordance with the Federal Rules of Civil Procedure:

William L. Kirkman
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas  76102

*/s/ Lars L. Berg*
Lars L. Berg

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

## DECLARATION OF ZACHARY B. TOBOLOWSKY

---

I, Zachary B. Tobolowsky, declare as follows:

1.      I am an attorney at Greenberg Traurig, LLP licensed to practice law in the State of Texas and admitted to practice in the Federal District Court for the Northern District of Texas. I am over the age of 21, have never been convicted of a crime of moral turpitude, and am competent to make this Declaration on the matters set forth herein. I have personal knowledge of the facts stated below, and I could and would competently testify thereto from my own personal knowledge. My business address is 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201.

2.      I make this Declaration in support of Plaintiff American Airlines, Inc.'s ("American") Motion for Extension of Time to Respond to Defendant Skiplagged, Inc.'s ("Skiplagged") Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support.

3.      On October 7, 2023, I personally visited the https://skiplagged.com/ website on my web browser.  While on the Skiplagged.com homepage, I clicked the link titled "Deals" at the top of the homepage, which took me to the URL https://skiplagged.com/signup. On the https://skiplagged.com/signup webpage, it prompts the user to "Enter your email" next to a

"Subscribe" button, and states "Sign up for our newsletter . . . Deals delivered straight to you" and "Get Skiplagged deals delivered to your inbox."  After I entered a fictitious email address of abcd@yahoo.com and clicked "Subscribe," a pop-up message appeared that asked "Where's home for you" and that required me to "Select your home airport" in order to click on the final "Subscribe" button in the pop-up window. The https://skiplagged.com/signup webpage also included (1) a section titled "How it works", which stated, among other things, "Get notified as frequently as you want. We curate the top deals so you never have to worry"; and (2) a section titled "Top Deals Right Now", which listed various flight routes to and from specific cities and the percentage of savings as to each "deal" being displayed, and this included a deal on a flight from San Antonio to Houston, among others. Attached as **Exhibit C-1** to this Declaration are true and correct copies of screenshots that I captured of the foregoing from the webpage https://skiplagged.com/signup on October 7, 2023 at 2:10 pm, using the "Snip" tool on my Windows computer.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 16, 2023, in Dallas County, Texas.

Zachary B. Tobolowsky

# Exhibit C-1

*Screenshots of [https://skiplagged.com/signup](https://skiplagged.com/signup), captured on October 7, 2023, at 2:10 pm.*





***Screenshots of https://skiplagged.com/signup, captured on October 7, 2023, at 2:10 pm.***

1

## Sign Up. Free forever.

No memberships. No premium tiers. No gimmicks. Just an email and your home airport.

s to Copenhagen
AL $885.31
TOTAL $416.09

New York City to Paris
ORIGINAL TOTAL $704.66
SKIPLAGGED TOTAL $408.70

2

## Let the deals roll in

Get notified as frequently as you want. We curate the top deals so you never have to worry.

## Top Deals Right Now

Los Angeles to Minneapo...
ORIGINAL TOTAL $142
SKIPLAGGED TOTAL $114

Anchorage to Detroit
ORIGINAL TOTAL $215
SKIPLAGGED TOTAL $183

New York to Washington
ORIGINAL TOTAL $159
SKIPLAGGED TOTAL $134

Washington to Lisbon
ORIGINAL TOTAL $383
SKIPLAGGED TOTAL $335

Chicago to Dallas-Fort W...
ORIGINAL TOTAL $65
SKIPLAGGED TOTAL $45

San José del Cabo to Den...
ORIGINAL TOTAL $226
SKIPLAGGED TOTAL $160

Seattle to Salt Lake City
ORIGINAL TOTAL $149
SKIPLAGGED TOTAL $119

Atlanta to New York
ORIGINAL TOTAL $179
SKIPLAGGED TOTAL $144

Tampa to Washington, DC
ORIGINAL TOTAL $239
SKIPLAGGED TOTAL $102

San Antonio to Houston
ORIGINAL TOTAL $135
SKIPLAGGED TOTAL $99

