**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**APPENDIX IN SUPPORT OF DEFENDANT SKIPLAGGED, INC.'S**</u>
<u>**MOTION FOR PROTECTIVE ORDER AS TO DISCOVERY FROM**</u>
<u>**PLAINTIFF AND TO STAY MERITS-BASED DISCOVERY PENDING**</u>
<u>**THE COURT'S RULING ON SKIPLAGGED'S MOTION TO DISMISS FOR**</u>
<u>**LACK OF PERSONAL JURISDICTION AND ALTERNATIVE REQUEST TO**</u>
<u>**TRANSFER VENUE AND BRIEF IN SUPPORT**</u>

William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone:     (817) 336-2800
Facsimile:     (817) 877-1863

ATTORNEYS FOR DEFENDANT,
SKIPLAGGED, INC.

1

# INDEX

Page

**SECTION I:**            **Exhibits**

1    *Plaintiff American Airlines, Inc.'s First Set of Interrogatories*    APP 005
     *to Defendant Skiplagged, Inc.*

2    *Plaintiff American Airlines, Inc.'s First Set of Requests for*    APP 017
     *Production to Defendant Skiplagged, Inc.*

3    E-mail dated October 27, 2023, from Bill Kirkman to Lars Berg    APP 035

4    E-mail dated October 30, 2023, from  Lars Berg to Bill Kirkman    APP 038

5    E-mail dated October 31, 2023, at 12:47 p.m. from Lars Berg    APP 042
     to Bill Kirkman

6    E-mail dated October 31, 2023, at 3:21 p.m. from Lars Berg    APP 044
     to Bill Kirkman

7    E-mail dated November 3, 2023, from Bill Kirkman to Lars Berg    APP 047

8    *Defendant Skiplagged, Inc.'s Objections and Responses to Plaintiff*    APP 051
     *American Airlines, Inc.'s First Set of Interrogatories*

9    *Defendant Skiplagged, Inc.'s Objections and Responses to Plaintiff*    APP 086
     *American Airlines, Inc.'s First Set of Requests for Production to*
     *Defendant Skiplagged, Inc.*

**SECTION II:**            **Non-Published Cases Cited in *Motion*:**

1    *Beach Aviation v. Horizon*, No. 5:07-CV-170-C, 2007 U.S. Dist.    APP 125
     LEXIS 111725 (N.D. Tex. Dec. 21, 2007)

2    *Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*,    APP 128
     No. 3:14-cv-1824-BN, 2014 U.S. Dist. LEXIS 152195
     (N.D. Tex. Oct. 27, 2014)

3    *BNSF Ry. Co. v. Float Alaska IP, LLC*, No. 4:22-cv-0950-P,    APP 135
     2023 U.S. Dist. LEXIS 88750 (N.D. Tex. May 22, 2023, M. Pittman)

4    *Brother of the Leaf, LLC v. Plastic Prods. Co.*,    APP 139
     No. SA-14-CV-479-XR, 2014 U.S. Dist. LEXIS 106127
     (W.D. Tex. Aug. 1, 2014)

2

5       *Di Piazza v. Weather Grp. TV, Ltd. Liab. Co.*, No. 5:19-CV-060-C,     APP 144
        2019 U.S. Dist. LEXIS 228319 (N.D. Tex. Sep. 9, 2019)

6       *Dykes v. Maverick Motion Picture Grp., L.L.C.*,     APP 149
        No. 08-536-RET-DLD, 2009 U.S. Dist. LEXIS 85737
        (M.D. La. Sept. 18, 2009)

7       *Eleva CityU.S. v. McLean*, No. 4:22-CV-047-SDJ, 2022 U.S. Dist.     APP 152
        LEXIS 138071 (E.D. Tex. Aug. 3, 2022)

8       *Gearbox Software, LLC v. Apogee Software, Ltd.*,     APP 155
        No. 3:14-cv-710-L, 2014 U.S. Dist. LEXIS 92620
        (N.D. Tex. July 8, 2014)

9       *Giddy Holdings, Inc. v. Ideas, Inc.*, No. 1:22-CV-00904-LY,     APP 158
        2023 U.S. Dist. LEXIS 68965 (W.D. Tex. Apr. 20, 2023)

10      *Hartsfield v. New Bern Transp. Corp.*, No. 2:19-CV-00379-JRG,     APP 163
        2020 U.S. Dist. LEXIS 204246 (E.D. Tex. Sept. 15, 2020)

11      *Kuykendall v. Amazon Studios LLC*, No. 5:20-CV-219, 2022 U.S. Dist.     APP 165
        LEXIS 240966 (S.D. Tex. March 18, 2022)

12      *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co.*,     APP 177
        No. 17-1114, 2018 U.S. Dist. LEXIS 138205 (W.D. La. Aug. 15, 2018)

13      *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 4:11-CV-629-A,     APP 181
        2012 U.S. Dist. LEXIS 4192 (N.D. Tex. Jan. 11, 2012)

14      *Stone Metals Am. v. Eubank*, No. 3:20-cv-253-K, 2020 U.S. Dist.     APP 187
        LEXIS 220143 (N.D. Tex. Nov. 5, 2020)

15      *Tailift USA, Inc. v. Tailift Co., Ltd.*, No. 3:03-CV-0196-M,     APP 193
        2004 U.S. Dist. LEXIS 28648 (N.D. Tex. March 26, 2004)

16      *Viahart, LLC v. Arkview LLC*, No. 6:19-cv-00406, 2020 U.S.     APP 199
        Dist. LEXIS 151205 (E.D. Tex. Aug. 20, 2020)

Respectfully submitted,

By:   /s/*William L. Kirkman*
  William L. Kirkman
  State Bar No. 11518700
  billk@kirkmanlawfirm.com
  Preston B. Sawyer
  State Bar No. 24102465
  prestons@kirkmanlawfirm.com
  KIRKMAN LAW FIRM, PLLC
  201 Main Street, Suite 1160
  Fort Worth, Texas 76102
  Telephone: (817) 336-2800
  Facsimile: (817) 877-1863

ATTORNEYS FOR DEFENDANT,
SKIPLAGGED, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2023, a true and correct copy of the foregoing was served via the Court's ECF system upon all counsel of record as indicated:

  Messrs. Dee J. Kelly, Jr. and Lars L. Berg
   and Ms. Julia G. Wisenberg
  Kelly Hart & Hallman LLP
  201 Main Street, Suite 2500
  Fort Worth, Texas 76102

  Ms. Bina Palnitkar
  Greenberg Traurig LLP
  2200 Ross Avenue, Suite 5200
  Dallas, Texas 75201

  Mr. Nathan J. Muyskens
  Greenberg Traurig, LLP
  2101 L Street, N.W., Suite 1000
  Washington, D.C. 20037

     /s/*William L. Kirkman*
     William L. Kirkman

4

APP 004

# APP. EX. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT SKIPLAGGED, INC.

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff American Airlines, Inc. ("American") hereby serves its First Set of Interrogatories to Defendant Skiplagged, Inc. ("Skiplagged"), as follows.

### INSTRUCTIONS

1.      Skiplagged is instructed to answer each of the below interrogatories separately and in writing, and under oath, within thirty (30) days after service hereof, in accordance with Rule 33.

2.      To the extent Skiplagged objects to any of the Interrogatories herein, the reasons for Skiplagged's objection(s) shall be stated and described with specificity. Notwithstanding any objection(s) to, you should respond to each Interrogatory to the extent you are able.

3.      Skiplagged shall be under a continuing obligation to supplement its answers to these Interrogatories to the extent provided in Rule 26(e)(1) of the Federal Rules of Civil Procedure. If any information and/or other information responsive to any interrogatory comes to the attention, possession, custody, or control of you, your associates, or your attorneys subsequent

to serving your response(s), you are required promptly to supplement your answers with said additional information.

4.    Each Interrogatory calls for not only Skiplagged's knowledge, but also all information that is available to Skiplagged by reasonable inquiry and due diligence, including through inquiry of its directors, officers, shareholders, managing agents, and representatives, including but not limited to any of its affiliates and/or attorneys.

5.    No Interrogatory shall be read as limiting any other Interrogatory.

6.    If, in responding to these Interrogatories, you claim any ambiguity in interpreting an Interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond but, instead, you shall set forth as part of your response the language deemed to be ambiguous and the interpretation that you used in responding to the Interrogatory.

7.    Whenever in these Interrogatories there is a request to "identify" a communication, you shall: (1) state the date and place of such communication; (2) identify each person who was present at, involved in, connected with, or who participated in such communication; (3) identify the type of communication (e.g., letter, telegram, conference, meeting, telephone conversation); (4) state the substance of such communication; and (5) identify each document reflecting or comprising such communication.

8.    Whenever in these Interrogatories there is a request to "identify" an individual, you shall state with respect to such individual: (1) his or her name; (2) his or her present or last-known business or home address; (3) his or her present or last-known business or home telephone number; (4) his or her present or last-known employer and present or last-known position; and (5) all positions he or she has held with the answering party (including the dates that each such

period of employment commenced and terminated, and a brief description of the responsibility of such position).

9.     Whenever in these Interrogatories there is a request to "identify" a document, you shall set forth: (1) the individual(s) who prepared the document; (2) the individual(s) who drafted the document; (3) the individual(s) who received or approved the document; (4) the type of document (e.g., letter, memorandum, tape recording, or other form of document); and (5) a description of it with the specificity required on a subpoena. Further, whenever in these Interrogatories there is a request to "identify" a document, you may produce the document to American in lieu of specifically identifying the document as required by this instruction if: (1) the document contains the information required by this instruction; (2) you describe the document specifically enough for American to locate the document in your document production; and (3) you clearly state in your response to the Interrogatory that you will produce the identified document.

10.     Unless otherwise specified in a particular Interrogatory below, the relevant time period for purposes of these Interrogatories is **from August 1, 2018 to the present**.

**DEFINITIONS**

1.     **"American"** means and refers to Plaintiff American Airlines, Inc.

2.     **"Skiplagged"** means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other

person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

     3.    **"You," "your,"** or **"Defendant"** means and refers to Skiplagged.

     4.    **"American's Content"** means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

     5.    **"American Bookings"** means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

     6.    **"American-Skiplagged Customer"** means and refers to any person who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether such person completed the booking on Skiplagged.com, through another agency or on another website or platform to which Skiplagged provided a direct link, transferred, referred, or redirected the person.

7.      **"AA.com Use Agreement"** means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

8.      **"American's Conditions of Carriage"** means and refers to the Conditions of Carriage agreement between American and its passengers, available at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

9.      **"API"** or **"American's API"** refers to the application programming interface of AA.com.

10.     **"AA.com"** refers to American's public-facing front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

11.     **"Travel carrier(s)"** refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

12.     **"Travel Agency"** means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

13.     **"Person"** or **"persons"** mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.     **"PNR Data"** refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

15.     **"Communication"** or **"communications"** shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in nay nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone

calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

16.    **"Relating to," "related to," "concerning,"** or **"referencing"** mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the Interrogatory.

17.    **"This lawsuit"** refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas, Fort Worth Division.

18.    **"Skiplagged's Motion to Dismiss"** refers to *Skiplagged's Motion to Dismiss American's First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. 21].

19.    **"Zaman's Declaration"** refers to the *Declaration of Aktarer Zaman Submitted in Support of Skiplagged's Motion to Dismiss*, filed on October 2, 2023 [Dkt. 22].

## INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**INTERROGATORY NO. 2:**   Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**INTERROGATORY NO. 3:**   Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**INTERROGATORY NO. 4:** Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your response should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

**INTERROGATORY NO. 5:** Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**INTERROGATORY NO. 6:** Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**INTERROGATORY NO. 7:** Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**INTERROGATORY NO. 8:** Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**INTERROGATORY NO. 9:** Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

**INTERROGATORY NO. 10:** Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**INTERROGATORY NO. 12:** Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**INTERROGATORY NO. 13:** Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**INTERROGATORY NO. 14:** Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration), and describe the technical means and process by which Skiplagged obtains such information.

**INTERROGATORY NO. 15:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**INTERROGATORY NO. 16:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**INTERROGATORY NO. 17:** Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.

**INTERROGATORY NO. 18:** Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**INTERROGATORY NO. 19:** Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

Dated: October 12, 2023

Respectfully submitted,

*/s/ Lars L. Berg*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Tyson Lies
State Bar No. 24087927
tyson.lies@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I served the foregoing document *via hand delivery* to opposing counsel below in accordance with the Federal Rules of Civil Procedure:

William L. Kirkman
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102

*/s/ Lars L. Berg*
Lars L. Berg

# APP. EX. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff American Airlines, Inc. ("American") hereby serves its First Set of Requests for Production to Defendant Skiplagged, Inc. ("Skiplagged"), as follows.

## INSTRUCTIONS

1.      Skiplagged is instructed to produce for inspection and copying the documents and things within its possession, custody, or control as described in the requests set forth herein within thirty (30) days after service hereof, in accordance with Rule 34.

2.      These requests shall apply to all items (e.g., documents or things) in your possession, custody, or control at the present time, as well as all items that come into your possession, custody, or control. If you know of the existence, past or present, of any items requested below, but are unable to produce such items because they are not presently in your possession, custody or control, you shall so state and shall provide a written statement setting forth:

      a.  the identity of the item;
      b.  the nature of the item (e.g., letter, memorandum, or chart);

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**          **PAGE 1**
3818255_1.DOCX

APP 018

     c.  the identity of the person(s) who created (e.g., authored) the item;
     d.  the identity of any person who received a copy of the item;
     e.  the date of the item;
     f.  a brief description of the subject matter of the item; and
     g.  the identity of any person who has possession, custody, or control of the item.

3.     If you have no documents that are responsive to a particular request, state that no responsive documents exist.

4.     For any responsive items that have been lost, destroyed, withheld from production, or redacted, for any reason, you shall provide a written statement setting forth:

     a.  the identity of the item;
     b.  the nature of the item (e.g., letter, memorandum, or chart);
     c.  the identity of the person(s) who created (e.g., authored) the item;
     d.  the identity of any person who received a copy of the item;
     e.  the date of the item;
     f.  a brief description of the subject matter of the item; and
     g.  the circumstances of the loss or destruction of the item or any fact, statute, rule, or decision upon which you rely in withholding or redacting the item.

5.     If you decline to produce any document or part thereof based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient to (a) disclose the facts upon which you rely in asserting your claim; (b) permit the grounds and reasons for withholding the information to be unambiguously identified; and (c) permit the information withheld to be unambiguously identified.

6.     All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as in the original.

7.     You shall keep and produce a record of the source of each document produced, which shall include the name and location of the file where each document was located and the name of the person, group, or department having possession, custody, or control of each document.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                PAGE 2
3818255_1.DOCX

APP 019

8.     It is requested that all information, documents, and things, including, without limitation, electronically-stored information, that might relate to or have an impact on the subject matter of this litigation, including information, documents, and things responsive to these discovery requests, be preserved and that you immediately cease any ongoing process of removal, discarding, and/or destruction of such information and documents.

9.     For purposes of interpreting or construing the scope of these discovery requests, all terms shall be given their most inclusive interpretation unless otherwise specifically limited by the language of an individual request. This includes, without limitation, the following:

     a.     construing "and" and "or" in the disjunctive or conjunctive, as necessary to make the request more inclusive and to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope;

     b.     construing "any" and "all" to mean "any and all," as necessary, to make the request more inclusive

     c.     construing the singular form of the word to include the plural, and the plural form to include the singular;

     d.     construing the past tense of a verb to include the present tense and the present tense to include the past tense;

     e.     construing the masculine to include the feminine and, *vice versa;* and

     f.     construing the term "including" to mean "including but not limited to."

10.     These discovery requests are intended to include all documents, things, and/or information in your possession, custody, or control, whether directly or indirectly. A document or information is deemed to be within your possession, custody, or control if:

     g.     it is within your actual knowledge or possession;

     h.     it is in your physical control or ownership;

     i.     it is within the knowledge, custody, or control of any other person or entity and you could obtain it upon conducting a reasonable inquiry; or

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                        PAGE 3
3818255_1.DOCX

APP 020

      j.    it is in the physical control of any other person, and you:

            i.    own the document in whole or in part;

            ii.    have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; or

            iii.    have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so.

11.     These discovery requests are continuing under Fed. R. Civ. P. 26(e).  If any document, information, and/or other material responsive to any request comes to the attention, possession, custody, or control of you, your associates, or your attorneys subsequent to serving your response(s), you are required promptly to furnish said additional documents or information.

12.     Unless otherwise specified in a particular request below, the relevant time period for purposes of these Requests is **from August 1, 2018 to the present.**

## DEFINITIONS

1.     **"American"** means and refers to Plaintiff American Airlines, Inc.

2.     **"Skiplagged"** means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

3.     **"You," "your,"** or **"Defendant"** means and refers to Skiplagged.

4.     **"American's Content"** means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.          PAGE 4
3818255_1.DOCX

APP 021

or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—
including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics,
icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations,
photographs, advertising, URLs, technology, software, interactive features, audio or video clips,
digital downloads, data compilations, customer information, AAdvantage® information, the "look
and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com,
all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade
identities, and any other forms of intellectual property associated with American, and any
information relating to American flights, products, fees, offerings, or services.

5.  **"American Bookings"** means and refers to the booking, ticketing or purchase of a
ticket on any American Airlines-marketed flight whether directly or through any other agency or
platform.

6.  **"American-Skiplagged Customer"** means and refers to any person who booked,
ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether
such person completed the booking on Skiplagged.com, through another agency or on another
website or platform to which Skiplagged provided a direct link, transferred, referred, or redirected
the person.

7.  **"AA.com Use Agreement"** means and refers to the AA.com Site Usage agreement,
available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined
and described in American's Original Complaint.

8.  **"American's Conditions of Carriage"** means and refers to the Conditions of
Carriage   agreement   between   American   and   its   passengers,   available   at

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                                        PAGE 5
3818255_1.DOCX

APP 022

https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

9.      **"API"** or **"American's API"** refers to the application programming interface of AA.com.

10.     **"AA.com"** refers to American's public-facing front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

11.     **"Travel carrier(s)"** refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

12.     **"Travel Agency"** means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC-or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

13.     **"Person"** or **"persons"** mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.     **"PNR Data"** refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 6
3818255_1.DOCX

APP 023

information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

15.   **"Communication"** or **"communications"** shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in nay nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

16.   **"Document"** and **"documents"** are used herein in the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any written, recorded or tangible graphic matter, or any other means of preserving data, expression, facts, opinions, thought, images, or other information of any kind, including without limitation all

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 7
3818255_1.DOCX

APP 024

non-identical copies, drafts, outtakes, subsequent versions, worksheets and proofs, however created or recorded, including without limitation audio tapes, annotations, calendars, correspondence, data or information of any kind recorded on compact disks, digital video diskettes, or any other type or form of diskettes for use with computers or other electronic devices, or any hard drive, diary entries, electronic recordings of any kind, e-mail, memoranda, notes, photographs, reports, telephone slips and logs, video cartridges and videotapes, and sites, databases, or other means of information storage or retrieval on the Internet or World Wide Web.

These terms are to be interpreted broadly to include documents stored in any medium and specifically include electronically stored information ("ESI") such as e-mail and documents maintained in electronic form on Delta's websites, servers, and stand-alone computers and hard drives. ESI includes, but is not limited to, text files (including word processing documents), spreadsheets, e-mail files and information concerning e-mail (including all metadata fields, logs of e-mail history and usage, header information and "deleted" files including all potentially relevant data contained in free or slack space), Internet history files and preferences, graphical image format ("GIF"), tagged image file format ("TIFF"), portable document format ("PDF") files, databases, contacts, tasks, calendar and scheduling information, computer system activity logs, all file fragments, and backup files containing Electronic Data.

17. **"Relating to," "related to," "concerning," or "referencing"** mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the request.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                PAGE 8
3818255_1.DOCX

APP 025

18.    **"This lawsuit"** refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas, Fort Worth Division.

19.    **"Skiplagged's Motion to Dismiss"** refers to *Skiplagged's Motion to Dismiss American's First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. 21].

20.    **"Zaman's Declaration"** refers to the *Declaration of Aktarer Zaman Submitted in Support of Skiplagged's Motion to Dismiss*, filed on October 2, 2023 [Dkt. 22].

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**    Documents relating to or evidencing Skiplagged's corporate structure, locations, organization, formation, management, ownership, shareholders, and investors.

**REQUEST FOR PRODUCTION NO. 2:**    All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**REQUEST FOR PRODUCTION NO. 3:**    All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**REQUEST FOR PRODUCTION NO. 4:**    All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 5:**    All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                                    **PAGE 9**
3818255_1.DOCX

APP 026

customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**REQUEST FOR PRODUCTION NO. 6:**   Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, including all PNR Data for all such passengers.

**REQUEST FOR PRODUCTION NO. 7:**   All communications between AA.com and Skiplagged relating to any purchases or sales of American flights or services by Skiplagged.

**REQUEST FOR PRODUCTION NO. 8:**   All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

(a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

(b) interact with or access AA.com, American's API, or American's computer systems;

(c) search for or identify American flights, itineraries, and fares to present to customers on Skiplagged.com (including to identify the best prices and/or to generate "hidden city" tickets);

(d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

(e) republish, display, distribute, provide access to, or otherwise use American's Content, including but not limited to American's flight and fare data, on Skiplagged.com;

(f) book or purchase American flights on AA.com for Skiplagged users/customers;

(g) charge users/customers fees for the purchase of American flights

(h) sell American flights;

(i) communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

(j) circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

**REQUEST FOR PRODUCTION NO. 9:**   Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**                    **PAGE 10**
3818255_1.DOCX

APP 027

**REQUEST FOR PRODUCTION NO. 10:** Documents and communications evidencing all research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Request No. 8 and its subparts.

**REQUEST FOR PRODUCTION NO. 11:** Documents and communications relating to Skiplagged's advertisement, promotion, or sale of American products or services.

**REQUEST FOR PRODUCTION NO. 12:** Documents and communications relating to Skiplagged obtaining, or attempting to obtain, American's Content, including but not limited to American fare, schedule or inventory data.

**REQUEST FOR PRODUCTION NO. 13:** Documents and communications relating to, discussing, or referencing American, AA.com, the AA.com Use Agreement, American's Conditions of Carriage, any other rules or policies of American, Skiplagged's use of American's Content, or Skiplagged's sale of tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 14:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or understanding that Skiplagged is not authorized by American to access, distribute, display or use American's content on Skiplagged.com or to book, ticket or sell tickets for American-marketed flights.

**REQUEST FOR PRODUCTION NO. 15:** Documents and communications relating to or discussing the sale of tickets on American-marketed flights or services by any Travel Agencies or travel metasearch engines other than Skiplagged.

**REQUEST FOR PRODUCTION NO. 16:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness of other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or websites having authorization from, or agreements with, American to access or distribute American's fare, schedule and inventory content, to market or advertise American-marketed flights or to book, ticket or sell tickets on American-marketed flights, use American's Content, or otherwise act as an agent of American.

**REQUEST FOR PRODUCTION NO. 17:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness that American revoked Kiwi.com's right and authorization to access or distribute American fare, schedule and inventory content, or to book, ticket or sell tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 18:** All communications between Skiplagged and any other third party discussing, mentioning, or relating in any way to American, the booking, ticketing or sale of tickets on American-marketed flights, or the distribution, publication, access, or use of American's Content.

**REQUEST FOR PRODUCTION NO. 19:** Documents and communications relating to any meetings or discussions involving any Skiplagged employees, directors, board members, officers, investors, or shareholders where American or AA.com was discussed, addressed, mentioned.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 11
3818255_1.DOCX

APP 028

**REQUEST FOR PRODUCTION NO. 20:** Documents and communications relating to Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its marketing and sale of tickets on American-marketed flights and/or its use of American's Content, including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of tickets on American-marketed flights or services; (ii) the benefits of or reasons for marketing, offering, booking, ticketing, purchasing, and/or selling tickets on American-marketed flights or services; and (iii) consumer demand or preferences for booking travel with American.

**REQUEST FOR PRODUCTION NO. 21:** Presentations, slide decks, handouts, or other presentation materials concerning Skiplagged's business plans, strategies, technology, or platform—both final and draft versions—for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

**REQUEST FOR PRODUCTION NO. 22:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on or through Skiplagged.com since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 23:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on any other travel websites by any customers who were transferred, referred or re-directed to such travel websites by or through Skiplagged.com since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 24:** Documents and communications relating to or reflecting any complaints by any customers or passengers who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether booked directly on Skiplagged.com or on another website to which Skiplagged transferred, referred or redirected the customer to complete the booking.

**REQUEST FOR PRODUCTION NO. 25:** Communications with any American-Skiplagged Customers regarding flight changes, delays, cancellations, refunds, customer service issues, baggage fees, service fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

**REQUEST FOR PRODUCTION NO. 26:** All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

**REQUEST FOR PRODUCTION NO. 27:** All documents and financials identifying or reflecting Skiplagged's total revenues, gross margins, and net profits relating to or resulting from Skiplagged's sale of American flights, including taking into account any/all additional fees of any kind charged to customers in connection with the sales of American flights (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 28:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to American.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 12
3818255_1.DOCX

APP 029

**REQUEST FOR PRODUCTION NO. 29:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 30:** Communications between Skiplagged and any third-party regarding American, AA.com, Skiplagged's marketing or sale of tickets on American-marketed flights or services, Skiplagged's use of American's Content on Skiplagged.com, Skiplagged's efforts to obtain data or information from AA.com, or American's claims or allegations in this lawsuit.

**REQUEST FOR PRODUCTION NO. 31:** All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

**REQUEST FOR PRODUCTION NO. 32:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has received from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of American flights.

**REQUEST FOR PRODUCTION NO. 33:** All documents, communications, and agreements concerning Skiplagged's payment of or obligation to pay commissions, fees, or other financial compensation to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems) in connection with the sale of commercial flights to consumers.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has made to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies) in connection with the sale of tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 35:** Any settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any carriers' flights or services or use of carriers' flight and fare information, trademarks, or data/content.

**REQUEST FOR PRODUCTION NO. 36:** All complaints, legal notices, demand letters, cease and desist letters, and any other similar correspondence that Skiplagged has received from any other person or entity, including any airline, travel carrier, travel service provider, Travel Agency, travel metasearch engine, or governmental, regulatory, or administrative agency, relating to Skiplagged's operations or the operation of Skiplagged.com.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 13
3818255_1.DOCX

APP 030

**REQUEST FOR PRODUCTION NO. 37:** Communications with any American-Skiplagged Customers regarding any issues, problems, or troubles that the passenger encountered during her travel with American, and any documents relating thereto.

**REQUEST FOR PRODUCTION NO. 38:** Documents and communications with customers and any internal documents or communications relating to, or concerning issues arising from, Skiplagged's warnings and/or instructions to purchasers of "hidden-city" tickets, including about what the passengers should do to avoid problems or what they should say to airline staff.

**REQUEST FOR PRODUCTION NO. 39:** Any press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other travel carriers.

**REQUEST FOR PRODUCTION NO. 40:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 41:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 42:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 43:** Documents and communications relating to or supporting Skiplagged's statements on its website regarding "Why are we doing this?", including the specific reasons described therein.

**REQUEST FOR PRODUCTION NO. 44:** All documents, communications, and agreements relating to Skiplagged's terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, the collection, protection, and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

**REQUEST FOR PRODUCTION NO. 45:** Documents and communications referring or relating to the Airlines Reporting Corporation ("ARC") or the International Air Transport Association ("IATA"), including but not limited to documents concerning Skiplagged's consideration, evaluation, decision, or reasons for deciding whether or not to apply to become an accredited ARC/IATA travel agency.

**REQUEST FOR PRODUCTION NO. 46:** Any documents or communications relating to or evidencing any confusion or misunderstanding by American-Skiplagged Customers, after the time of their purchase of a ticket on an American-marketed flight, regarding Skiplagged's authority/ability or lack thereof to address or resolve any matters relating to their travel or booking.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 14
3818255_1.DOCX

APP 031

**REQUEST FOR PRODUCTION NO. 47:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers who previously purchased travel or lodging on Skiplagged.com with a Texas address.

**REQUEST FOR PRODUCTION NO. 48:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers specifically identifying or offering "deals" or promotions on hotels in Texas or flights to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 49:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**REQUEST FOR PRODUCTION NO. 50:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**REQUEST FOR PRODUCTION NO. 51:** Documents relating to the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and the means or processes by which Skiplagged obtains such information.

**REQUEST FOR PRODUCTION NO. 52:** All communications between Skiplagged and any of the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration).

**REQUEST FOR PRODUCTION NO. 53:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases made by consumers that Skiplagged.com redirected to such other Travel Agency or metasearch engine.

**REQUEST FOR PRODUCTION NO. 54:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency or travel metasearch engine.

**REQUEST FOR PRODUCTION NO. 55:** Documents and communications relating to or supporting Skiplagged's statement that it "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 15
3818255_1.DOCX

APP 032

**REQUEST FOR PRODUCTION NO. 56:**  All documents that you referred to or relied upon in answering any Interrogatory or Request for Admission served by American.


Dated: October 12, 2023                                    Respectfully submitted,

                                                           */s/ Lars L. Berg*
                                                           Dee J. Kelly, Jr.
                                                           State Bar No. 11217250
                                                           dee.kelly@kellyhart.com
                                                           Lars L. Berg
                                                           State Bar No. 00787072
                                                           lars.berg@kellyhart.com
                                                           Tyson Lies
                                                           State Bar No. 24087927
                                                           tyson.lies@kellyhart.com
                                                           Julia G. Wisenberg
                                                           State Bar No. 24099146
                                                           julia.wisenberg@kellyhart.com
                                                           KELLY HART & HALLMAN LLP
                                                           201 Main Street, Suite 2500
                                                           Fort Worth, Texas 76102
                                                           (817) 332-2500

                                                           Bina Palnitkar
                                                           State Bar No. 24070378
                                                           palnitkarb@gtlaw.com
                                                           GREENBERG TRAURIG LLP
                                                           2200 Ross Avenue, Suite 5200
                                                           Dallas, TX 75201
                                                           Telephone: (214) 665-3600

                                                           Nathan J. Muyskens
                                                           nathan.muyskens@gtlaw.com
                                                           GREENBERG TRAURIG, LLP
                                                           2101 L Street, N.W., Suite 1000
                                                           Washington, DC 20037
                                                           Telephone: (202) 331-3100

                                                           **ATTORNEYS FOR PLAINTIFF**
                                                           **AMERICAN AIRLINES, INC.**

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**                    **PAGE 16**
3818255_1.DOCX

APP 033

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I served the foregoing document *via hand delivery* to opposing counsel below in accordance with the Federal Rules of Civil Procedure:

> William L. Kirkman
> Kirkman Law Firm, PLLC
> 201 Main Street, Suite 1160
> Fort Worth, Texas  76102

*/s/ Lars L. Berg*
Lars L. Berg

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 17
3818255_1.DOCX

APP 034

# APP. EX. 3

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Friday, October 27, 2023 2:01 PM |
| **To:** | 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | AA v. Skiplagged, Inc. |

Lars:

As promised, here is a proposal for American to consider in connection with its outstanding discovery requests to Skiplagged and our pending *Motion to Dismiss for Lack of Personal Jurisdiction*.

In lieu of our filing and prosecuting a *Motion for Protective Order* as to your written discovery requests, and subject to an acceptable agreement and proposed order protecting the confidentiality of any information Skiplagged provides pursuant to this agreement, Skiplagged proposes that:

1.  Skiplagged will respond by November 8, 2023, to the following discovery requests you propounded to Skiplagged on October 12, 2023, in the manner indicated below, without asserting objections to any of such requests that they are improper because they: (1) seek merits discovery; (2) are not properly focused to yield specific facts that are necessary to support American's efforts to withstand dismissal of this case; or (3) fail to demonstrate how responsive information would support jurisdiction in this case:

    (a)  Interrogatories 12–13, and provide a percentage of such bookings relative to the total number of bookings made for or on behalf of all customers who used Skiplagged's BookNow feature;

    (b)  Interrogatories 15–16;

    (c)  Interrogatory 17, and provide a percentage of such persons relative to all those who have signed up for the Skiplagged.com newsletter or e-mail subscriber service by entering a "home airport" anywhere, as prompted on https://Skiplagged.com/signup;

1

    (d)    Interrogatory 18, with the understanding that we read this Interrogatory to be asking for the number of users that Skiplagged.com has redirected to an online travel agency to complete a booking for a flight to, from, or within Texas;

    (e)    Interrogatory 19; and

    (f)    Requests for Production 29, 47, and 48, provided that such materials were sent exclusively to Texas residents.

Please be advised that Skiplagged's proposal  should not be construed as an indication that it necessarily has responsive information or documents to each question.

2.    Skiplagged will not  respond to the balance of your discovery requests unless the Court denies our *Motion to Dismiss for Lack of Jurisdiction* and then, within thirty days of the *Order* denying the *Motion*, subject to other potential objections.

    If this is agreeable, please let me know and I will prepare a *Stipulation* to this effect.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

# APP. EX. 4

**Bill Kirkman**

| | |
|---|---|
| **From:** | Lars Berg <lars.berg@kellyhart.com> |
| **Sent:** | Monday, October 30, 2023 9:43 AM |
| **To:** | Bill Kirkman |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | RE: AA v. Skiplagged, Inc. |

Bill:

American respectfully declines Skiplagged's proposal to engage in only jurisdiction discovery at this time. You made clear to the Court in sections 2.B. and 13. of the Joint Report Regarding Contents of Scheduling Order your client's position that it would be "inappropriate to engage in substantive discovery in this case . . . prior to the Motion to Dismiss having been determined . . .." The Court considered Skiplagged's position, but did not relieve Skiplagged of its obligation to make the Initial Disclosures. Moreover, the Court then entered the Scheduling Order over Skiplagged's asserted concerns. Accordingly, American believes that the Court has already rejected Skiplagged's position.

The Scheduling Order sets November 27, 2023, as the deadline for both motions to join parties and to amend the pleadings. Because of that upcoming deadline, not to mention others, American must have Skiplagged's discovery responses and document production when due so that it can use the information to decide how to proceed in light of that deadline.

Finally, American will continue to honor its agreement it will not take the position that Skiplagged's participation in the case while the motion to dismiss is pending constitutes a waiver of that motion. To be clear, that applies not only to participation in the court-ordered face-to-face conference held on Sept. 25, but also to Skiplagged's participation in discovery.

Regards,

**Lars L. Berg**
*Partner*

**KELLY 🄚 HART**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Bergt@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Friday, October 27, 2023 2:01 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** AA v. Skiplagged, Inc.

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars:

As promised, here is a proposal for American to consider in connection with its outstanding discovery requests to Skiplagged and our pending *Motion to Dismiss for Lack of Personal Jurisdiction*.

In lieu of our filing and prosecuting a *Motion for Protective Order* as to your written discovery requests, and subject to an acceptable agreement and proposed order protecting the confidentiality of any information Skiplagged provides pursuant to this agreement, Skiplagged proposes that:

1.   Skiplagged will respond by November 8, 2023, to the following discovery requests you propounded to Skiplagged on October 12, 2023, in the manner indicated below, without asserting objections to any of such requests that they are improper because they: (1) seek merits discovery; (2) are not properly focused to yield specific facts that are necessary to support American's efforts to withstand dismissal of this case; or (3) fail to demonstrate how responsive information would support jurisdiction in this case:

      (a)   Interrogatories 12–13, and provide a percentage of such bookings relative to the total number of bookings made for or on behalf of all customers who used Skiplagged's BookNow feature;

      (b)   Interrogatories 15–16;

      (c)   Interrogatory 17, and provide a percentage of such persons relative to all those who have signed up for the Skiplagged.com newsletter or e-mail subscriber service by entering a "home airport" anywhere, as prompted on https://Skiplagged.com/signup;

2

      (d)    Interrogatory 18, with the understanding that we read this Interrogatory to be asking for the number of users that Skiplagged.com has redirected to an online travel agency to complete a booking for a flight to, from, or within Texas;

      (e)    Interrogatory 19; and

      (f)    Requests for Production 29, 47, and 48, provided that such materials were sent exclusively to Texas residents.

Please be advised that Skiplagged's proposal should not be construed as an indication that it necessarily has responsive information or documents to each question.

2.    Skiplagged will not respond to the balance of your discovery requests unless the Court denies our *Motion to Dismiss for Lack of Jurisdiction* and then, within thirty days of the *Order* denying the *Motion*, subject to other potential objections.

    If this is agreeable, please let me know and I will prepare a *Stipulation* to this effect.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 041

# APP. EX. 5

**Bill Kirkman**

| | |
|---|---|
| **From:** | Lars Berg <lars.berg@kellyhart.com> |
| **Sent:** | Tuesday, October 31, 2023 12:47 PM |
| **To:** | Bill Kirkman |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | American v. Skiplagged |

Bill:

Please provide by 12:00 noon on Friday, Nov. 3 dates for the oral deposition of Skiplagged's COO, Daniel Gellert, to occur before Nov. 15, 2023. We are happy to host the deposition, but your office would be fine, too.

Regards,

**Lars L. Berg**
*Partner*

KELLY ⓀⒽ HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Bergt@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

# APP. EX. 6

**Bill Kirkman**

| | |
|---|---|
| **From:** | Lars Berg <lars.berg@kellyhart.com> |
| **Sent:** | Tuesday, October 31, 2023 3:21 PM |
| **To:** | Bill Kirkman |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | RE: American v. Skiplagged |

Bill,

As indicated in my email responding to Skiplagged's proposal about conducting discovery, American believes that the Court has already considered and rejected Skiplagged's position that discovery should be limited to jurisdictional issues until Skiplagged's motion to dismiss is decided. Moreover, the Court's scheduling order contains upcoming deadlines that require American to move forward with full discovery now. Accordingly, American does not intend to limit Gellert's deposition to jurisdictional issues.

Regards,

Lars

**Lars L. Berg**
*Partner*

KELLY ⓚ HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Bergt@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Tuesday, October 31, 2023 3:09 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: American v. Skiplagged

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

1

Lars,

Before I respond to your request, please advise whether you intend to limit this proposed deposition to jurisdictional issues?

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

**From:** Lars Berg <lars.berg@kellyhart.com>
**Sent:** Tuesday, October 31, 2023 12:47 PM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** American v. Skiplagged

Bill:

Please provide by 12:00 noon on Friday, Nov. 3 dates for the oral deposition of Skiplagged's COO, Daniel Gellert, to occur before Nov. 15, 2023. We are happy to host the deposition, but your office would be fine, too.

Regards,

**Lars L. Berg**
*Partner*

KELLY ⓚ HART
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Berg@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

APP 046

# APP. EX. 7

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Friday, November 03, 2023 11:46 AM |
| **To:** | Lars Berg |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | RE: American v. Skiplagged |

Lars,

We respectfully decline your proposal in your 10-31-23 e-mail from 12:47 for all the reasons we have discussed and as were referenced in our earlier and subsequent e-mail exchanges and telephone calls. We are prepared however, to offer American the opportunity to depose an organizational witness from Skiplagged for a deposition pursuant to Rule 30(b)(6), for testimony concerning the jurisdictional issues associated with our pending motion, in New York, where Skiplagged is located, in the near future so such testimony could be used by American, if it so chooses, in responding to our motion. Given your e-amil below however, I am assuming American will decline our proposal. If my assumption is incorrect, please advise so we can work out the particulars.

Two other matters.

One, we are willing to extend the time for the filing of motions for leave to join parties and to amend pleadings from its current date of 11-27-23 so as to allow our motion to dismiss to be ruled upon in conformity with Judge Pittman's order extending the time for American to respond to our motion. See Rule 12(a)(4)(a). Let me know if you wish to join in such and we can request permission for such from Judge Pittman.

Two, we are prepared to provide American some information responsive to certain of your discovery requests that we believe is confidential and private to Skiplagged. So, we propose to do so pursuant to a confidentiality Order or agreement that protects the confidentiality of such information and allows its use in this case only. I am certain you are familiar with and have experience with such orders and agreements and are willing to work with Skiplagged to accomplish such. I also presume American would want the same type of protection should the need arise. We will work to provide you something along those lines soon, but I wanted to alert you to such now in advance.

Thanks.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 048

**From:** Lars Berg <lars.berg@kellyhart.com>
**Sent:** Tuesday, October 31, 2023 3:21 PM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: American v. Skiplagged

Bill,

As indicated in my email responding to Skiplagged's proposal about conducting discovery, American believes that the Court has already considered and rejected Skiplagged's position that discovery should be limited to jurisdictional issues until Skiplagged's motion to dismiss is decided. Moreover, the Court's scheduling order contains upcoming deadlines that require American to move forward with full discovery now. Accordingly, American does not intend to limit Gellert's deposition to jurisdictional issues.

Regards,

Lars

**Lars L. Berg**
*Partner*

## KELLY ⊕ HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Bergt@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Tuesday, October 31, 2023 3:09 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: American v. Skiplagged

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars,

APP 049

Before I respond to your request, please advise whether you intend to limit this proposed deposition to jurisdictional issues?

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

**From:** Lars Berg <lars.berg@kellyhart.com>
**Sent:** Tuesday, October 31, 2023 12:47 PM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** American v. Skiplagged

Bill:

Please provide by 12:00 noon on Friday, Nov. 3 dates for the oral deposition of Skiplagged's COO, Daniel Gellert, to occur before Nov. 15, 2023. We are happy to host the deposition, but your office would be fine, too.

Regards,

**Lars L. Berg**
*Partner*

**KELLY ⓚ HART**

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
Lars.Berg@kellyhart.com
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

# APP. EX. 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT SKIPLAGGED, INC.'S OBJECTIONS AND
RESPONSES TO PLAINTIFF AMERICAN AIRLINES, INC.'S
FIRST SET OF INTERROGATORIES**

TO:   Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr. and Lars L. Berg and Ms. Julia G. Wisenberg, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J. Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.

   **NOW COMES** Defendant, Skiplagged, Inc. ("Skiplagged"), and hereby makes these

*Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Interrogatories*.

**I.**

**GENERAL OBJECTIONS TO ALL INTERROGATORIES**

   1.      Skiplagged objects to the Instructions and Definitions preceding the Interrogatories

to the extent that they impose duties and obligations beyond the requirements of the FEDERAL

RULES OF CIVIL PROCEDURE. In particular, without waiving any other appropriate objections,

Skiplagged objects to the Instructions and Definitions of (1) "identify" with regard to a

communication, document, or person, in that same are overly broad, onerous, and cumbersome;

(2) American's Content, American-Skiplagged Customer, Travel carrier(s), Travel Agency and

PNR Data, as same are unnecessarily overly broad, vague, and in part ambiguous.

1

2.      Skiplagged also objects to all of the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, the work-product privilege, the party communication privilege, the witness statement privilege, the consulting expert privilege, the investigative privilege, or any other legally recognized privilege, immunity, or doctrine. Skiplagged's agreement herein to produce certain information or documents is subject to this objection and does not constitute an agreement to produce any information or documents protected by such privilege, immunity, or doctrine. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice Skiplagged's right to object to the use of any such information during this or any subsequent proceeding.

3.      Skiplagged also objects to each Interrogatory posed herein because in varying degrees, each such Interrogatory seeks information as to the merits of American's claims, which is inappropriate at this early stage of the litigation while Skiplagged has a *Motion to Dismiss* pending before this Court. Information as to the merits would be appropriate only after the Court has ruled on Skiplagged's pending *Motion* and denied such.

4.      Skiplagged also objects to each of these Interrogatories, as they are not properly limited to jurisdictional discovery. Each such Interrogatory is not focused to yield specific facts that are necessary to support any effort by American to withstand dismissal of this case for lack of personal jurisdiction and fails to demonstrate how responsive information could support personal jurisdiction in this case. Also, see Skiplagged's *Motion for Protective Order* to be filed in this case on November 8, 2023, the substance of which is incorporated herein by reference to the extent necessary. To the extent relevant, Skiplagged has attempted to further delineate these objections

2

with regard to the specific Interrogatory posed. Finally, even though Interrogatories Nos. 12, 13, and 15–18 purport to be limited to Texas, Texas addresses, and "home airports" in Texas, these Interrogatories still seek merits discovery and are not appropriately limited to jurisdictional discovery, as stated above. Nevertheless, subject to its objections, Skiplagged has responded to these six Interrogatories or provided relevant information concerning these questions and has responded to No. 19 (bringing the total to seven), all in order to provide information that might possibly be related to Skiplagged's pending *Motion to Dismiss for Lack of Personal Jurisdiction*.

## II.

### SPECIFIC RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**ANSWER:**

Objection.

In additional to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 2:**   Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

**INTERROGATORY NO. 3:**  Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 4:**  Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your ANSWER should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

4

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 5:**    Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 6:**   Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 7:**   Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

**INTERROGATORY NO. 8:**   Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 9:**   Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 10:** Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

APP 059

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory, in part, also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is obligated to produce same, Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

**INTERROGATORY NO. 12:** Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case. Additionally, although it purports to be

limited to persons with a Texas address, it is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. That paragraph 12 of the Zaman Declaration is referenced in this Interrogatory does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

Subject to these objections and the General Objections set forth above and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**<u>INTERROGATORY NO. 13:</u>** Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**<u>ANSWER:</u>**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case. It is also not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to flights to or from Texas.

That paragraph 12 of the Zaman Declaration is referenced in this Interrogatory also does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans.

10

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

Subject to these objections and the General Objections set forth above and not waiving same, Skiplagged states it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 14:** Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration), and describe the technical means and process by which Skiplagged obtains such information.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

That paragraphs 10 and 11 of the Zaman Declaration are referenced in this Interrogatory also does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

11

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

**INTERROGATORY NO. 15:**  Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency so use of the term "other Travel Agencies" is incorrect.

This Interrogatory is also premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to persons with Texas addresses. Skiplagged has no practice that directs or targets persons with a Texas address. The only responsive information would be comingled with all persons' addresses, regardless of where the addresses are or where the persons list their addresses to be. Therefore, this Interrogatory is also overly burdensome and oppressive and places an unreasonable burden on Skiplagged to search out and respond to such.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 16:**  Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency, so use of the term "other Travel Agencies" is incorrect.

This Interrogatory is also premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to flights to and from Texas. Skiplagged has no practice that directs or targets persons who fly to, from, or within Texas. The only responsive information would be comingled with all persons' similar information, regardless of where the flights come from, went to, or were within or without Texas. Therefore, this Interrogatory is also overly burdensome and oppressive and places an unreasonable burden on Skiplagged to search out and respond to such.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 17:** Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to "home airports" in Texas. Skiplagged has no practice that directs or targets persons with a Texas address. The only responsive information would be comingled with all persons' similar "home airport" information, regardless of where such are.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and the General Objections set forth above, and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest*

13

*Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 18:** Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency, so the use of the term "another Travel Agency" is incorrect. This Interrogatory is also premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and fails to demonstrate how responsive information would support jurisdiction in this case, despite that it purports to be limited to flights to and from Texas. Skiplagged has no practice that directs or targets persons who fly to, from, or within Texas. The only responsive information would be comingled with all persons' similar information, regardless of where it is.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and the General Objections set forth above and without waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 19:** Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

**ANSWER:**

Objection.

Paragraph 10 of the Zaman Declaration does not reference American Marks and  page 13 of Skiplagged's *Motion to Dismiss* erroneously cites Zaman Declaration paragraph 10 instead of paragraph 11 for this proposition. However, paragraph 11 of the Zaman Declaration does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally

14

appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans. Accordingly, subject to this correction, and in addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections, and without waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

Dated: November 8, 2023

Respectfully submitted,

By:  /s/*William L. Kirkman*
William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone:    (817) 336-2800
Facsimile:    (817) 877-1863

ATTORNEYS FOR DEFENDANT,
SKIPLAGGED, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2023, a true and correct copy of the foregoing

was served via e-mail upon all counsel of record as indicated:

Messrs. Dee J. Kelly, Jr. and Lars L. Berg
 and Ms. Julia G. Wisenberg
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102

15

Ms. Bina Palnitkar
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Mr. Nathan J. Muyskens
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

*/s/William L. Kirkman*
William L. Kirkman

16

# EXHIBIT "1"

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Tuesday, November 07, 2023 11:01 AM |
| **To:** | 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | AA v. Skiplagged, Inc. |
| **Attachments:** | SW v. KIWI PROTECTIVE ORDER.pdf |

Lars:

As I indicated in my e-mail from last week, we intend to provide certain information responsive to certain of your discovery requests. However, we believe that information is confidential and private and want to protect such prior to providing that information to American.

I had the opportunity to review a *Protective Order* that was entered in the *Southwest Airlines Co. v. Kiwi* case in the Dallas Division of the Northern District of Texas, No. 3:21-cv-00098-E. With the exception of some non-material changes that need to be made to ¶ 6 therein, my client believes this *Protective Order* would generally satisfy my client's confidentiality concerns. Having worked with protective orders very similar to this in the past, I also believe this will protect your client's confidentiality-related concerns and interests in the event information will need to be produced by your client to mine in the discovery process should our *Motion to Dismiss for Lack of Personal Jurisdiction* be denied. I am attaching a copy of that *Protective Order* which, as you will see, was signed by Judge Brown on June 30, 2021, and was approved by counsel for the parties prior thereto.

Will this work for American? If so, let's talk about how to get this extrapolated to our case and then have the information we intend to produce, produced pursuant to such a protective order. I know you are anxious to receive whatever information we provide. So, I would appreciate your and your client's expeditious review of this *Protective Order* and the suggestions provided in this e-mail. We stand ready, willing, and able to do the same.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

1

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 070

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM** | § | |
| **S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

### PROTECTIVE ORDER

<u>**Proceedings and Information Governed.**</u>

1.      This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other documents or things produced, given, or filed in this action that are designated by a party as "Confidential Information" or "Confidential Attorney Eyes Only Information" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

<u>**Designation and Maintenance of Information.**</u>

2.      For purposes of this Protective Order, (a) the "Confidential Information" designation means that the document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G), or other information required by law or agreement to be kept confidential, and (b) the "Confidential Attorney Eyes Only" designation means that

the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade-secret information, or information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter. Confidential Information and Confidential Attorney Eyes Only Information does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

     3.    Documents and things produced during the course of this litigation within the scope of paragraph 2(a) above, may be designated by the producing party as containing Confidential Information by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

     Documents and things produced during the course of this litigation within the scope of paragraph 2(b) above may be designated by the producing party as containing Confidential Attorney Eyes Only Information by placing on each page and each thing a legend substantially as follows:

2

## CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
## SUBJECT TO PROTECTIVE ORDER

A party may designate information disclosed at a deposition as Confidential Information or Confidential Attorney Eyes Only Information by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is made at the time of the deposition, any party will have fourteen (14) calendar days after the date of the deposition to designate, in writing to the other parties and to the court reporter, whether any portion of the transcript is to be designated as Confidential Information or Confidential Attorneys Eyes Only Information. If no such designation is made at the deposition or within this fourteen (14) calendar day period (during which period, the transcript must be treated as Confidential Attorneys Eyes Only Information, unless the disclosing party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Information or Confidential Attorneys Eyes Only Information. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. It is the responsibility of counsel for each party to maintain materials containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

**Inadvertent Failure to Designate.**

4.       The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as confidential at a later date in

3

writing and with particularity. The information must be treated by the receiving party as confidential from the time the receiving party is notified in writing of the change in the designation.

**Challenge to Designations.**

5.      A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time frame, and after the conference required under Local Rule 7.1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

**Disclosure and Use of Confidential Information.**

6.      Information designated as Confidential Information or Confidential Attorney Eyes Only Information may only be used for purposes of preparation, trial, and appeal of this action. Confidential Information or Confidential Attorney Eyes Only Information may not be used under any circumstances for prosecuting any patent application, for patent licensing, or for any other purpose.

7.      Subject to paragraph 9 below, Confidential Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

4

(a)     two (2) employees of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions, and who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(b)     two (2) in-house counsel for the receiving party who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(c)     outside counsel for the receiving party;

(d)     supporting personnel employed by (b) and (c), such as paralegals, legal secretaries, data-entry clerks, legal clerks, and private photocopying and litigation support services;

(e)     experts or consultants; and

(f)     any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court-reporting services, demonstrative-exhibit preparation, or the creation of any computer database from documents.

8.     Subject to paragraph 9 below, Confidential Attorney Eyes Only Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a)     outside counsel for the receiving party;

(b)     supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data-entry clerks, legal clerks, private photocopying and litigation support services;

(c)     experts or consultants; and

(d)     those individuals designated in paragraph 11(c).

5

9. Further, prior to disclosing Confidential Information or Confidential Attorney Eyes Only Information to a receiving party's proposed expert, consultant, or employees, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A, the resume or curriculum vitae of the proposed expert or consultant, the expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and in writing, stating with particularity the reasons for the objection. Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

10. Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order. Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

11. Confidential Information or Confidential Attorney Eyes Only Information may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

(a) the information was previously received or authored by the person or was authored or received by a director, officer, employee, or agent of the company for which the person is testifying as a designee under Fed. R. Civ. P. 30(b)(6);

6

(b)    the person is the designating party, or is a director, officer, employee, consultant, or agent of the designating party; or

(c)    counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this paragraph, only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure may otherwise be made under and who are bound by this Protective Order, may be present during the disclosure or discussion of the Confidential Information or Confidential Attorney Eyes Only Information. Disclosure of material pursuant to this paragraph does not constitute a waiver of the confidential status of the material so disclosed.

**Nonparty Information.**

12.    The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**Filing Documents With the Court.**

13.    If any party wishes to submit Confidential Information or Confidential Attorney Eyes Only Information to the Court, the submission must be filed using the *Sealed* and/or *Ex Parte Motion* event. The word *"Sealed"* must appear in the title or caption of any document intended for filing under seal (and any proposed order you believe should be filed under seal if entered by the judge).

14.    Producing or receiving Confidential Information or Confidential Attorney Eyes Only Information, or otherwise complying with the terms of this Protective Order, will not

7

(a) operate as an admission by any party that any particular Confidential Information or Confidential Attorney Eyes Only Information contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**Conclusion of Litigation.**

15.    Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Confidential Attorney Eyes Only Information, and to certify to the producing party that this destruction or return has been done. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

**Other Proceedings.**

16.    By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party

8

subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential Information or Confidential Attorney Eyes Only Information pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**Remedies.**

17.     It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

18.     Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

IT IS SO ORDERED.

SIGNED this 30th day of June, 2021

_____
Honorable Ada Brown
United States District Judge

9

**BENTON WILLIAMS PLLC**

**Benton Williams II**
Texas Bar No. 24070854
bw@bentonwilliamspllc.com
100 Crescent Court, Suite 700
Dallas, TX 75201
(214) 785-6205
(214) 785-6485 fax

**BATES PLLC**

**Ryan P. Bates**
Texas Bar No. 24055152
rbates@batespllc.com
919 Congress Ave., Suite 1305
Austin, TX 78701
(512) 694-5268

**MCCARTHY GARBER LAW, LLC**

**Asa C. Garber**
Colorado Bar No. 48256
asa@mccarthygarberlaw.com
(720) 504-5294
**Kieran McCarthy**
Colorado Bar No. 37933
(720) 432-9769
501 S. Cherry St., Suite 1100
Denver, CO 80246

**Alexander Kerr**
320 E. Broadway Suite 2A
Jackson, WY 83001
(970) 270-4718

**COUNSEL FOR DEFENDANT
KIWI.COM, INC. and KIWI.COM S.R.O.**

**MUNCK WILSON MANDALA, LLP**

**Michael C. Wilson**
Texas State Bar No. 21704590
mwilson@munckwilson.com
**S. Wallace Dunwoody, IV**
Texas State Bar No. 24040838
wdunwoody@munckwilson.com
**Amanda k. Greenspoon**
Florida Bar No. 1014584
agreenspon@munckwilson.com
**Julie m. Christensen**
Texas State Bar No. 24105601
jchristensen@munckwilson.com
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
(972) 628-3600
(972) 628-3616 fax

**COUNSEL FOR PLAINTIFF
SOUTHWEST AIRLINES CO.**

_/s/ Michael C. Wilson_          June 29, 2021
Counsel for Plaintiff             Date


_/s/ Asa C. Garber_             June 29, 2021
Counsel for Defendant          Date

10

11

**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM** | § | |
| **S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

## CONFIDENTIALITY AGREEMENT FOR EXPERT,
## CONSULTANT OR EMPLOYEES OF ANY PARTY

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party

who designated the information as confidential or by order of the presiding judge.  I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Confidential Information or Confidential Attorney Eyes Only Information are to be returned to counsel who provided me with such documents and materials.

_____
Signed


_____
Printed Name


_____
Date

2

APP 083

**Exhibit B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-00098-E |
| | § | |
| KIWI.COM, INC. and KIWI.COM | § | |
| S.R.O., | § | |
| | § | |
| Defendants. | § | |

## CONFIDENTIALITY AGREEMENT FOR THIRD-PARTY VENDORS

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

1

_____
Signed


_____
Printed Name


_____
Date

2

APP 085

# APP. EX. 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT SKIPLAGGED, INC.'S OBJECTIONS AND**
**RESPONSES TO PLAINTIFF AMERICAN AIRLINES, INC.'S**
**FIRST SET OF REQUESTS FOR PRODUCTION**

TO:   Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr. and Lars L. Berg and Ms. Julia G. Wisenberg, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J. Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.

**NOW COMES** Defendant, Skiplagged, Inc. ("Skiplagged"), and hereby makes these

*Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Requests for*

*Production.*

Subject to the objections below and without waiving same, Skiplagged will produce the

originals or copies of the documents it agrees or is ordered to produce herein at the offices of

Kirkman Law Firm, PLLC, at a mutually agreeable day and time, or electronically pursuant to an

acceptable confidentiality order and protocol for electronic discovery.

**I.**

**GENERAL OBJECTIONS TO ALL REQUESTS**

1.     Skiplagged objects to the Instructions and Definitions preceding the Requests for

Production to the extent that they impose duties and obligations beyond the requirements of the

1

FEDERAL RULES OF CIVIL PROCEDURE. In particular, without waiving any other appropriate objections, Skiplagged objects to the Instructions and Definitions of (1) "identify" with regard to a communication, document, or person, in that same are overly broad, onerous, and cumbersome; (2) American's Content, American-Skiplagged Customer, Travel carrier(s), Travel Agency, and PNR Data, as same are unnecessarily overly broad, vague, and in part ambiguous. The Instructions set out in No. 9 on p. 3 are also inappropriate and beyond the RULES OF CIVIL PROCEDURE.

2.    Skiplagged also objects to all of the Requests for Production to the extent they seek documents or information protected by the attorney-client privilege, the work-product privilege, the party communication privilege, the witness statement privilege, the consulting expert privilege, the investigative privilege, or any other legally recognized privilege, immunity, or doctrine. Skiplagged's agreement herein to produce certain information or documents is subject to this objection and does not constitute an agreement to produce any information or documents protected by such privilege, immunity, or doctrine. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice Skiplagged's right to object to the use of any such information during this or any subsequent proceeding.

3.    Skiplagged also objects to each Request for Production posed herein because in varying degrees, each such Request seeks information as to the merits of American's claims, which is inappropriate at this early stage of the litigation while Skiplagged has a *Motion to Dismiss* pending before this Court. Information as to the merits would be appropriate only after the Court has ruled on Skiplagged's pending *Motion* and denied such.

4.      Skiplagged also objects to each of these Requests for Production, as they are not properly limited to jurisdictional discovery. Each such Request is not focused to yield specific facts that are necessary to support any effort by American to withstand dismissal of this case for lack of personal jurisdiction and fails to demonstrate how responsive information could support personal jurisdiction in this case. Also, see Skiplagged's *Motion for Protective Order* to be filed in this case on November 8, 2023, the substance of which is incorporated herein by reference to the extent necessary. To the extent relevant, Skiplagged has attempted to further delineate these objections with regard to the specific Request posed. Finally, even though Requests Nos. 29, 47, and 48 purport to be limited to Texas, Texas addresses, and "home airports" in Texas, these Requests still seek merits discovery and are not appropriately limited to jurisdictional discovery, as stated above. Nevertheless, subject to its objections, Skiplagged has responded to these three Requests in an attempt to provide jurisdiction information related to Skiplagged's pending *Motion to Dismiss for Lack of Personal Jurisdiction*.

## II.

### SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   Documents relating to or evidencing Skiplagged's corporate structure, locations, organization, formation, management, ownership, shareholders, and investors.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case and seeks information that is neither relevant nor is reasonably

3

calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case as to requests for shareholders and investors.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce only certain responsive documents pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 2:**   All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case, and is repetitive of Interrogatories Nos. 6 and 7.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce only certain responsive documents pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 3:**   All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and

4

Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case, and is repetitive of Interrogatories Nos. 6 and 7.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce only certain responsive documents pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 4:**   All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 5:**   All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by

any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data  and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. It is also confusing and vague.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 6:**   Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, including all PNR Data for all such passengers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the Request to relevant jurisdiction, even though it purports to be limited to departure or arrival cities in Texas. Such does not properly narrow or direct the inquiry to proper jurisdictional information, but is simply based on a fortuitous arrival or departure from Texas.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is also duplicative of Interrogatory No. 13.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 7:**   All communications between AA.com and Skiplagged relating to any purchases or sales of American flights or services by Skiplagged.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence, given its breadth, and is therefore not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 8:**   All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

(a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

(b) interact with or access AA.com, American's API, or American's computer systems;

(c) search for or identify American flights, itineraries, and fares to present to customers on Skiplagged.com (including to identify the best prices and/or to generate "hidden city" tickets);

(d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

(e) republish, display, distribute, provide access to, or otherwise use American's Content, including but not limited to American's flight and fare data, on Skiplagged.com;

(f) book or purchase American flights on AA.com for Skiplagged users/customers;

(g) charge users/customers fees for the purchase of American flights

(h) sell American flights;

(i) communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

(j) circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague and confusing in its description of documents American wants. Skiplagged does not have any of the documents purportedly described.

This Request also, in part, seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 9:**   Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 10:** Documents and communications evidencing all research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Request No. 8 and its subparts.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague and confusing as to "research and development costs."

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 11:** Documents and communications relating to Skiplagged's advertisement, promotion, or sale of American products or services.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is not limited to such issues.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 12:** Documents and communications relating to Skiplagged obtaining, or attempting to obtain, American's Content, including but not limited to American fare, schedule or inventory data.

**RESPONSE:**

Objection.

10

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 13:** Documents and communications relating to, discussing, or referencing American, AA.com, the AA.com Use Agreement, American's Conditions of Carriage, any other rules or policies of American, Skiplagged's use of American's Content, or Skiplagged's sale of tickets on American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such

or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 14:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or understanding that Skiplagged is not authorized by American to access, distribute, display or use American's content on Skiplagged.com or to book, ticket or sell tickets for American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 15:** Documents and communications relating to or discussing the sale of tickets on American-marketed flights or services by any Travel Agencies or travel metasearch engines other than Skiplagged.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 16:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness of other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or websites having authorization from, or agreements with, American to access or distribute American's fare, schedule and inventory content, to market or advertise American-marketed flights or to book, ticket or sell tickets on American-marketed flights, use American's Content, or otherwise act as an agent of American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Skiplagged is also not a Travel Agency.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 17:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness that American revoked

Kiwi.com's right and authorization to access or distribute American fare, schedule and inventory content, or to book, ticket or sell tickets on American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

**REQUEST FOR PRODUCTION NO. 18:** All communications between Skiplagged and any other third party discussing, mentioning, or relating in any way to American, the booking, ticketing or sale of tickets on American-marketed flights, or the distribution, publication, access, or use of American's Content.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 19:** Documents and communications relating to any meetings or discussions involving any Skiplagged employees, directors, board members, officers, investors, or shareholders where American or AA.com was discussed, addressed, mentioned.

14

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request may also seek information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 20:** Documents and communications relating to Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its marketing and sale of tickets on American-marketed flights and/or its use of American's Content, including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of tickets on American-marketed flights or services; (ii) the benefits of or reasons for marketing, offering, booking, ticketing, purchasing, and/or selling tickets on American-marketed flights or services; and (iii) consumer demand or preferences for booking travel with American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

15

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 21:** Presentations, slide decks, handouts, or other presentation materials concerning Skiplagged's business plans, strategies, technology, or platform—both final and draft versions—for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 22:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on or through Skiplagged.com since August 1, 2018.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary

to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague as to the use of the term "internal processing."

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 23:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on any other travel websites by any customers who were transferred, referred or re-directed to such travel websites by or through Skiplagged.com since August 1, 2018.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 24:** Documents and communications relating to or reflecting any complaints by any customers or passengers who booked, ticketed or purchased a

17

ticket on an American-marketed flight through Skiplagged.com—whether booked directly on Skiplagged.com or on another website to which Skiplagged transferred, referred or redirected the customer to complete the booking.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague as to use of the term "redirected customers."

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 25:** Communications with any American-Skiplagged Customers regarding flight changes, delays, cancellations, refunds, customer service issues, baggage fees, service fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

18

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 26:** All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 27:** All documents and financials identifying or reflecting Skiplagged's total revenues, gross margins, and net profits relating to or resulting from Skiplagged's sale of American flights, including taking into account any/all additional fees of any kind charged to customers in connection with the sales of American flights (e.g., service fees, baggage fees, or other fees).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

19

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 28:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad by requesting "communications," considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 29:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to travel to, from, or within Texas.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary

to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in the Request does not properly limit the request to relevant jurisdiction.

Subject to these objections, and without waiver thereof, Skiplagged believes it has no such documents, as it has not marketed these kinds of flights. Nevertheless, Skiplagged has conducted a reasonable and diligent search for documents in its possession, custody, and control, and has found no non-privileged documents or communications containing or reflecting any such activity targeted to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 30:** Communications between Skiplagged and any third-party regarding American, AA.com, Skiplagged's marketing or sale of tickets on American-marketed flights or services, Skiplagged's use of American's Content on Skiplagged.com, Skiplagged's efforts to obtain data or information from AA.com, or American's claims or allegations in this lawsuit.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 31:** All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

21

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 32:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has received from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of American flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 33:** All documents, communications, and agreements concerning Skiplagged's payment of or obligation to pay commissions, fees, or other financial compensation to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems) in connection with the sale of commercial flights to consumers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has made to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies) in connection with the sale of tickets on American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and

23

Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 35:** Any settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any carriers' flights or services or use of carriers' flight and fare information, trademarks, or data/content.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 36:** All complaints, legal notices, demand letters, cease and desist letters, and any other similar correspondence that Skiplagged has received from any other person or entity, including any airline, travel carrier, travel service provider, Travel Agency,

travel metasearch engine, or governmental, regulatory, or administrative agency, relating to Skiplagged's operations or the operation of Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 37:** Communications with any American-Skiplagged Customers regarding any issues, problems, or troubles that the passenger encountered during her travel with American, and any documents relating thereto.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 38:** Documents and communications with customers and any internal documents or communications relating to, or concerning issues arising from, Skiplagged's warnings and/or instructions to purchasers of "hidden-city" tickets, including about what the passengers should do to avoid problems or what they should say to airline staff.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 39:** Any press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other travel carriers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

**REQUEST FOR PRODUCTION NO. 40:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money," as stated on Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 41:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere," as stated on Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 42:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else," as stated on Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 43:** Documents and communications relating to or supporting Skiplagged's statements on its website regarding "Why are we doing this?", including the specific reasons described therein.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and

28

Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 44:**  All documents, communications, and agreements relating to Skiplagged's terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, the collection, protection, and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 45:** Documents and communications referring or relating to the Airlines Reporting Corporation ("ARC") or the International Air Transport Association ("IATA"), including but not limited to documents concerning Skiplagged's consideration, evaluation, decision, or reasons for deciding whether or not to apply to become an accredited ARC/IATA travel agency.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 46:** Any documents or communications relating to or evidencing any confusion or misunderstanding by American-Skiplagged Customers, after the time of their purchase of a ticket on an American-marketed flight, regarding Skiplagged's authority/ability or lack thereof to address or resolve any matters relating to their travel or booking.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

30

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 47:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers who previously purchased travel or lodging on Skiplagged.com with a Texas address.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request is also overly burdensome to the extent it is duplicative of Interrogatory No. 17.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

Subject to these objections, and without waiver thereof, Skiplagged believes it has no such documents, as it has not marketed these kinds of flights. Nevertheless, Skiplagged has conducted a reasonable and diligent search for documents in its possession, custody, and control, and has found no non-privileged documents or communications containing or reflecting any such activity targeted to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 48:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent

to customers specifically identifying or offering "deals" or promotions on hotels in Texas or flights to, from, or within Texas.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request is also overly burdensome to the extent it is duplicative of Interrogatory No. 17.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

Subject to these objections, and without waiver thereof, Skiplagged believes it has no such documents, as it has not marketed these kinds of flights. Nevertheless, Skiplagged has conducted a reasonable and diligent search for documents in its possession, custody, and control, and has found no non-privileged documents or communications containing or reflecting any such activity targeted to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 49:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

32

This Request is unduly burdensome to the extent it is duplicative of Interrogatory No. 12.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 50:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request is also unduly burdensome to the extent it is duplicative of Interrogatory Nos. 12 and 13 (which Skiplagged is responding to subject to confidentiality concerns) and Request No. 49 above.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 51:** Documents relating to the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and the means or processes by which Skiplagged obtains such information.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

33

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 52:**  All communications between Skiplagged and any of the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 53:**  Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases made by consumers that Skiplagged.com redirected to such other Travel Agency or metasearch engine.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 54:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency or travel metasearch engine.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 55:** Documents and communications relating to or supporting Skiplagged's statement that it "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PROPDUCTION NO. 56:** All documents that you referred to or relied upon in answering any Interrogatory or Request for Admission served by American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

Dated: November 8, 2023

Respectfully submitted,

By:    /s/*William L. Kirkman*
William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone:    (817) 336-2800
Facsimile:    (817) 877-1863

ATTORNEYS FOR DEFENDANT,
SKIPLAGGED, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2023, a true and correct copy of the foregoing

was served via e-mail upon all counsel of record as indicated:

Messrs. Dee J. Kelly, Jr. and Lars L. Berg
  and Ms. Julia G. Wisenberg
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102

Ms. Bina Palnitkar
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Mr. Nathan J. Muyskens
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

*/s/William L. Kirkman*
William L. Kirkman

# Non-Published Cases Cited in *Motion*

 Neutral

As of: November 8, 2023 2:53 PM Z

## *Beach Aviation v. Horizon*

United States District Court for the Northern District of Texas, Lubbock Division

December 21, 2007, Decided; December 21, 2007, Filed

Civil Action No. 5:07-CV-170-C

**Reporter**

2007 U.S. Dist. LEXIS 111725 *

BEACH AVIATION, INC., Plaintiff, v. S.L. HORIZON, LLC; DAN GILDNER and RICK EAGER, Individually and d/b/a S.L. HORIZON, LLC; and SUNLAND DEVELOPMENT, LLC, Defendants.

**Prior History:** *Beach Aviation v. Horizon, 2007 U.S. Dist. LEXIS 111726 (N.D. Tex., Sept. 28, 2007)*

## Core Terms

deposition, airport, aircraft, deposed

**Counsel:** **[*1]** For Beach Aviation Inc, Plaintiff, Counter Defendant: James L Killion, LEAD ATTORNEY, Killion Law Firm, Lubbock, TX USA.

For S L Horizon Llc, Dan Gildner, Rick Eager, Sunland Development Llc, Defendants, Counter Claimants: H Grady Terrill, Craig Terrill Hale & Grantham, Lubbock, TX USA; Ronnie L Agnew, The Agnew Law Firm, Lubbock, TX USA.

For Sunland Development Llc, S L Horizon Llc, Dan Gildner, Rick Eager, Counter Claimants: H Grady Terrill, Craig Terrill Hale & Grantham, Lubbock, TX USA.

**Judges:** SAM R. CUMMINGS, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SAM R. CUMMINGS

## Opinion

ECF

**ORDER**

Came on this day for consideration Defendant Rick Eager's ("Defendant") Motion to Modify Subpoena [#21], filed on November 16, 2007. The Court also considered Plaintiff Beach Aviation, Inc.'s ("Plaintiff") Response [#23], filed on December 7, 2007. The Court, after considering Defendant's Motion, is of the opinion that such Motion should be **GRANTED**. Further, Defendant is hereby granted a Protective Order requiring that Plaintiff conduct its deposition of Defendant at Defendant's place of business in the state of Wisconsin. Finally, the parties' requests for attorney's fees are hereby **DENIED**.

I.

**BACKGROUND**

Plaintiff's Complaint alleges **[*2]** that Defendants purchased the Town and Country Airport ("the airport") in the spring of 2007. Plaintiff claims that soon thereafter, it and Defendants entered into a contract under which Plaintiff was to "provide exclusive aviation maintenance and flight school training and services at the [a]irport." (Pl.'s First Am. Compl. 3.) Further, Defendants hired Plaintiff's president, Paul Beach, to be the airport's manager. Plaintiff claims that he relied on the contract that arose from these agreements by cancelling his lease on a hangar at an airport in a neighboring city, transferring his business operations to the airport, and hiring a full-time employee.

From the beginning, Plaintiff was displeased with the new arrangement. Plaintiff claims that in April following Plaintiff's alleged agreement, Defendants breached the contract by failing to pay the electricity bill. Further, Plaintiff claims that Defendants breached the contract by allowing third parties to perform aircraft maintenance and conduct flight training at the airport. Finally, Plaintiff alleges that Defendants breached the contract by terminating him as airport manager on May 22, 2007.

After Plaintiff originally filed this action **[*3]** in the 237th Judicial District Court in Lubbock County, Texas,

Plaintiff "performed maintenance on one of Defendants' aircraft." (*Id.* at 4.) Plaintiff perfected his mechanic's lien on the aircraft by retaining possession of the aircraft until Defendants paid him. Plaintiff released the aircraft to Defendants in exchange for Defendants' check which purported to pay the maintenance charges in full. However, Plaintiff claims that Defendants ordered their bank to stop payment on the check after they regained possession of the aircraft. Plaintiff filed the present action in state court alleging causes of action for breach of contract, fraud, theft of services by check, and conspiracy. Defendants then removed the case to this Court based on diversity jurisdiction.

Plaintiff noticed Defendant Eager for a deposition which requires him to be deposed in Lubbock, Texas, on January 9, 2008. Defendant, who lives in Wisconsin, then filed the present Motion. Both parties have requested that this Court reimburse them for attorney's fees they have incurred in preparing, filing, and serving the present Motion and Response.

## II.

### STANDARD

The examining party may set a deposition at the time and place of his choosing. **[*4]** 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice & Procedure: Civil, § 2112, p. 73 (2d ed. 1994). However, the examining party's ability to dictate the time and place of deposition is not absolute. *Federal Rule of Civil Procedure 26(c)* allows courts to enter protective orders which prevent parties from unduly burdening potential deponents. *Rule 26(c)* provides in relevant part:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

*Fed. R. Civ. P. 26(c).*

"On a motion [for a protective order] the court has a wide discretion in selecting the place of examination and in attaching conditions concerning the payment of

expenses. The particular facts of each case will determine the selection of a place for examination." 8A Wright, Miller, & Marcus, *supra*, § 2112.

Finally, "[i]t is well[-]settled that the deposition of a corporation by its agents and officers should **[*5]** ordinarily be taken at its principal place of business, especially when, as in the present case, the corporation is the defendant." *Satler v. The Upjohn Co., 1979 U.S. App. LEXIS 15218, 593 F.2d 649, 651 (5th Cir. 1979)* (quoting former 8 Wright & Miller, § 2112 (1st ed. 1970)) (internal quotation marks and parentheses omitted). "This presumption is based on the concept that it is the plaintiff who brings the lawsuit and who exercises the first choice as to the forum." *Tailiftusa, Inc. v. Tailift Co., Ltd., No. 3:03-CV-0196-M, 2004 U.S. Dist. LEXIS 28648, 2004 WL 722244, at *1 (N.D. Tex. March 26, 2004).*

## III.

### DISCUSSION

In the present case, it is not entirely clear whether Plaintiff seeks to depose Defendant in his individual capacity or in his capacity as a representative of the various corporate Defendants. Most likely, Plaintiff will seek to discover information in the deposition relating to both of Defendant's capacities. Further, the parties' pleadings and filings do not show otherwise. Since Plaintiff will probably seek to gain information about Defendant's role as a director of the corporate Defendants, the Court may apply the rule stated in *Satler, supra.* Therefore, Plaintiff should be deposed at his principal place of business in Wisconsin.

However, even if Plaintiff plans to depose Defendant in his individual capacity only, the deposition should still take place **[*6]** in Defendant's home state. Indeed, the facts weigh in favor of Defendant being deposed in Wisconsin. First, Plaintiff had the opportunity to choose the forum in which to bring the present action. Second, the pleadings suggest that Defendant's potential liability in his individual capacity totals less than $2,500. However, Defendant's expenses for traveling to Texas would exceed $1,000, and he would be required to take at least one day away from work. Such a costly deposition could potentially cause discovery costs to balloon far in excess of the value of the case. Additionally, Defendant has averred that he has only traveled to Texas on four occasions and that his affairs

2007 U.S. Dist. LEXIS 111725, *6

will not bring him to Texas in the foreseeable future. Finally, Plaintiff filed the present action with knowledge of Defendant's location and Defendant's very limited contacts with the State of Texas. Plaintiff was in a position to anticipate and prepare for the difficulties and expenses of bringing a lawsuit against a Defendant who is remotely located.

**IV**.

**CONCLUSION**

For the reasons stated herein, Defendant's Motion is hereby **GRANTED**. The Court hereby enters a Protective Order. Defendant may remain in Wisconsin for **[*7]** his deposition. Finally, the parties' requests for attorney's fees are hereby **DENIED**.

All relief not specifically granted herein is hereby denied.

SO ORDERED.

Dated December 21, 2007.

/s/ Sam R. Cummings

SAM R. CUMMINGS

UNITED STATES DISTRICT COURT

---

**End of Document**

 Cited
As of: November 8, 2023 2:28 PM Z

# *Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*

United States District Court for the Northern District of Texas, Dallas Division

October 27, 2014, Decided; October 27, 2014, Filed

No. 3:14-cv-1824-BN

**Reporter**
2014 U.S. Dist. LEXIS 152195 *; 2014 WL 5431630

BEST LITTLE PROMOHOUSE IN TEXAS LLC, Plaintiff, v. YANKEE PENNYSAVER, INC., ET AL., Defendants.

## Core Terms

personal jurisdiction, website, discovery, forum state, Defendants', contacts, non-resident, general jurisdiction, customers, interactive, trademark, advertising, allegations, internet, motion to dismiss, minimum contact, products, conducting business, domain, lack of personal jurisdiction, bestlittlepromohouse, infringement, passive

**Counsel:** **[*1]** For Best Little Promohouse in Texas LLC, Plaintiff: Kenneth P Kula, LEAD ATTORNEY, McDole & Williams PC, Dallas, TX.

For Yankee Pennysaver Inc, Steven Silver, doing business as, Bestlittlepromohouse.com, Defendants: Christopher J Schwegmann, LEAD ATTORNEY, Lynn Tillotson Pinker & Cox LLP, Dallas, TX.

**Judges:** DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DAVID L. HORAN

## Opinion

### MEMORANDUM OPINION AND ORDER

This is a civil action arising from the alleged trademark infringement, unfair competition, and cybersquatting of Defendant Yankee Pennysaver, Inc. and its vice president, co-publisher, and 49% shareholder Steven Silver (together, "Defendants") through their use of internet domains including bestlittlepromohouse.com and bestlittlepromohouseinbrookfield.com. Defendants have filed a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(2)* or, in the alternative, to transfer

venue to the United States District Court for the District of Connecticut under *28 U.S.C. § 1404(a)*. *See* Dkt. No. 11. Plaintiff Best Little Promohouse in Texas, LLC ("Plaintiff") filed its response, *see* Dkt. No. 13, and Defendants filed a reply, *see* Dkt. No. 19.

For the reasons explained below, Defendants' *Rule 12(b)(2)* motion [Dkt. No. 11] is granted, and this action is dismissed without prejudice. **[*2]** The Court therefore need not reach Plaintiff's alternative request for transfer under *28 U.S.C. § 1404(a)*.

### Background

Plaintiff alleges that Defendant Steven Silver, acting through Defendant Yankee Pennysaver, acquired confusingly similar domain names, including the internet domain names bestlittlepromohouse.com, bestlittlepromohousect.com, and bestlittlepromohouseinbrookfield.com, in order to "piggyback on the cleverness of [Plaintiff's] trademark in a hope to take a shortcut to similar success ... [and] an attempt to reach as many potential customers as possible, both within Texas and back in the defendants' home state of Connecticut." Dkt. No. 13 at 2; *see also* Dkt. No. 1 (asserting claims for trademark infringement, unfair competition, and cybersquatting).

Defendants seek dismissal for lack of personal jurisdiction or, in the alternative, transfer to the District of Connecticut. *See* Dkt. No. 11. They contend, based on Steven Silver's declaration, that the Court lacks both specific and general jurisdiction over Defendants because they lack sufficient minimum contacts with the State of Texas. *See id.* at 2-4; Dkt. No. 11-1 at 1-3. That is, Defendants argue that the complaint does not sufficiently establish personal **[*3]** jurisdiction because it alleges only "upon information and belief" that they do business in Texas, *see* Dkt. No. 11 at 3 (citing Dkt. No. 1 at 2), and Defendants further urge that the allegedly-infringing website is not interactive, only one sale has

been made to a customer in Texas, Defendants have not otherwise conducted business in Texas, and Defendants have not purposely established minimum contacts in this state, *see* Dkt. No. 11-1.

**Legal Standards**

Personal Jurisdiction

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that this Court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 2014 U.S. App. LEXIS 18480, 2014 WL 4799716, at *2 (5th Cir. Sept. 26, 2014)*; *Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)*. If the Court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *See Gardemal v. Westin Hotel Co., 186 F.3d 588, 592 (5th Cir. 1999)*; *Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994)*.

A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc., 564 F.3d 386, 398 (5th Cir. 2009)*. Due process requires the satisfaction **[*4]** of two elements to exercise personal jurisdiction over a non-resident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident could anticipate being haled into the courts of the forum state and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*; *Johnston, 523 F.3d at 609*. The *Due Process Clause* ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King, 471 U.S. at 472* (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)*.

To establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King, 471 U.S. at 474-75* (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id. at 474*; *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*. In determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence **[*5]** in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota, 504 U.S. 298, 307, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992)*.

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 871 (5th Cir. 2000)*. "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 777 (5th Cir. 1986)* (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014)*. "'First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.'" *Id. at 1122* (emphasis in original) (quoting *Burger King, 471 U.S. at 475*). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts **[*6]** with persons who reside there." *Id.* (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd., 582 Fed. Appx. 338, 2014 U.S. App. LEXIS 17802, 2014 WL 4562853, at *4 (5th Cir. Sept. 16, 2014)* (quoting *Seiferth v. Helicopteros Atuneros, Inc. 472 F.3d 266, 274 (5th Cir. 2006))*.

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales,*

*466 U.S. at 415-16*. The Supreme Court recently observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman, 134 S.Ct. 746, 761, 187 L. Ed. 2d 624 (2014)* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011))* (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id. at 760*. It is, therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs., 2014 U.S. App. LEXIS 18480, 2014 WL 4799716, at *2*. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in **[*7]** the state. *See Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999)*; *see also Johnston, 523 F.3d at 614* (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King, 471 U.S. at 474* (quoting *International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945))*. The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Id. at 475* (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1068 n.9 (5th Cir. 1992)*.

The maintenance of a passive website that does nothing more than advertise on the internet cannot, without additional contacts with the forum state, support personal jurisdiction over a non-resident. *See Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002)*; *Mink v. AAAA Dev., LLC, 190 F.3d 333, 336 (5th Cir. 1999)*. Even an interactive website, in itself, is insufficient to establish general jurisdiction where the website shows, at most, that a defendant conducts business with the forum

State, not in the forum state. *See Monkton Ins. Servs., 2014 U.S. App. LEXIS 18480, 2014 WL 4799716, at *3*. When the underlying cause of **[*8]** action is based on an intentional tort, a single act by the defendant can be sufficient to establish personal jurisdiction if that act gives rise to the claim being asserted. *See Lewis v. Fresne, 252 F.3d 352, 358-59 (5th Cir. 2001)*; *see also FCA Inv. v. Baycorp Holdings, 48 F. App'x 480 (table), 2002 WL 31049442, at *2 (5th Cir. 2002)* (finding that in a claim for the intentional tort of fraud, a single phone call into the forum state was sufficient to establish personal jurisdiction where the content of that phone call was the subject matter of the fraud claim). But the existence of a contract alone is insufficient to confer personal jurisdiction over a nonresident defendant. *See Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007)*. Similarly, "the exchange of communications ... in the course of developing and carrying out the contract [is] ... insufficient to constitute purposeful availment of the benefits and protections of Texas law." *Holt Oil & Gas Corp., 801 F.2d at 778*.

Jurisdictional Discovery

When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)*. The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, **[*9]** discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000)* (citation omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC, No. 4:11-cv-629-A, 2012 U.S. Dist. LEXIS 4192, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012)* (citing *Kelly, 213 F.3d at 855*). A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.*; *see also King v. Hawgwild Air, LLC, No. 3:08-cv-153-L, 2008 U.S. Dist. LEXIS 49887, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008)*. A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to

jurisdiction and where the plaintiff is waging a "fishing expedition" into jurisdictional facts. *Combat Zone Corp. v. John/Jane Does 1-13, No. 3:12-cv-3927-B, 2013 U.S. Dist. LEXIS 8522, 2013 WL 230382, at *2 (N.D. Tex. Jan. 22, 2013)* (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir. 2003))*.

## Analysis

### Personal Jurisdiction

The Court finds that Plaintiff has failed to establish a *prima facie* case that specific jurisdiction exists over nonresidents Steven Silver and Yankee Pennysaver, Inc. in this lawsuit. Plaintiff has failed to establish that Defendants' suit-related conduct **[*10]** creates a substantial connection with Texas for purposes of specific jurisdiction. *See Walden, 134 S. Ct. at 1121*. Moreover, Plaintiff has neither pled nor established the "continuous and systematic" contacts needed to support general jurisdiction. *See Helicopteros Nacionales, 466 U.S. at 415-16*.

Specific jurisdiction exists when a plaintiff's injuries arise out of the nonresident defendant's contacts with the forum state. *See Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 324 (5th Cir. 1996)*. That is, the defendant's suit-related conduct must create a substantial connection with the forum State. *See Walden, 134 S. Ct. at 1121-22*. A defendant does not have minimum contacts with a state to establish specific jurisdiction when the defendant does not have a physical presence in the state, it did not conduct business in the state, and the activities at issue in the lawsuit did not occur in Texas. *See Seiferth, 472 F.3d at 272*.

Accepting the allegations in Plaintiff's complaint as true and construing all factual conflicts in favor of the Plaintiff, as the Court must do, *see Wilson, 20 F.3d at 648*, the Court concludes that the trademark infringement, unfair competition, and cybersquatting alleged in Plaintiff's complaint did not arise from Defendants' contacts with Texas. Plaintiff alleges that it has been using the trademark of Best Little Promohouse in Texas, LLC in commerce in connection with **[*11]** the advertising and sale of promotional products and online retail store services featuring promotional products since at least February 1998. *See* Dkt. No. 1 at 3. Plaintiff has also submitted evidence that, in 2004,

Silver, on behalf of Yankee Pennysaver, reached out to Plaintiff and began to acquire products. *See* Dkt. No. 13 at 1-2; Dkt. No. 13-2. Long after Plaintiff adopted, used, and applied to federally register its trademark, Defendants acquired various internet domains, such as bestlittlepromohouse.com and bestlittlepromohouseinbrookfield.com, in connection with their competing online retail store, BestLittlePromohouse, which also features promotional products and other speciality merchandising services. *See id.* at 4. By doing so, Defendants allegedly sought to appropriate and trade on the goodwill and reputation of Plaintiff and its trademark and cause confusion, mistake, or deception and generally profit from "the vision of [Plaintiff's] originator, the dedication of its staff, the quality of its products, the distinctiveness of its logo, the effectiveness of its marketing and advertising, and — in no small part — the creativity and strength of its trademark." *Id.* at 4-5; Dkt. No. 13 at 1. **[*12]** In sum, Plaintiff contends that Defendants took affirmative steps by conducting business with Plaintiff in the State of Texas, thereby obtaining knowledge about Plaintiff's products and practices, and used that knowledge to establish a deceptively similar, competing websites. Through these websites, Defendants allegedly conduct business in Texas and seek to poach Plaintiff's Texas customers.

Defendants respond by asserting that Plaintiff's claims do not arise from this 2004 transaction since the complaint does not mention the purchase, the transaction has "no bearing" on whether Defendants' website infringes upon Plaintiff's trademark, and the unverified appendix exhibits do not contradict Silver's testimony that the websites in question have resulted in just one sale to a Texas customer and serves as a passive advertisement only. *See* Dkt. No. 19.

Even accepting Plaintiff's appendix exhibits as competent evidence, Plaintiff's construction of specific jurisdiction is too broad. Plaintiff does not contend — and its allegations do not suggest — that the trademark infringement, unfair competition, and cybersquatting evidenced by the creation and use of internet domains bestlittlepromohouse.com, **[*13]** bestlittlepromohousect.com, and bestlittlepromohouseinbrookfield.com arose out of the 2004 interaction or any contact with Texas. That is, the suit-related conduct at issue here is the acquisition of confusingly similar domain names in order to "piggyback on the cleverness of [Plaintiff's] trademark in a hope to take a shortcut to similar success ... [and] an attempt to reach as many potential customers as possible, both

within Texas and back in the defendants' home state of Connecticut." Dkt. No. 13 at 2; *see also* Dkt. No. 1. None of this conduct implicates the 2004 interaction between Plaintiff and Silver, nor does it arise out of contacts that Defendants themselves created with Texas. *See Walden, 134 S. Ct. at 1121*.

Defendants' alleged solicitations of Texas customers through its websites, too, do not establish specific jurisdiction. When specific jurisdiction is based on online interactions via an Internet website, the Fifth Circuit follows the sliding scale adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)*. *See Mink, 190 F.3d at 336*. *Zippo* requires the Court to assess the level of interactivity of the defendant's website and prescribes a separate course of action for each of the three categories of websites: where a website is nothing more than a passive advertisement, **[*14]** the court must decline to exercise personal jurisdiction; where a website facilitates contractual relationships and the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper; and where a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Mink, 190 F.3d at 336* (interpreting *Zippo*).

Here, Plaintiff asserts that Defendants "purposefully solicited customers from Texas by providing multiple interactive websites accessible by Texas residents and targeted those same residents through advertising in Texas via various electronic media, including but not necessarily limited to multiple websites on the Internet, Facebook, and Twitter." Dkt. No. 13 at 4; Dkt. Nos. 13-3 & 13-14. The Court must look primarily to the interactivity of Defendants' websites to determine whether they have sufficient contacts with Texas. *See Mink, 190 F.3d at 336-37*. Here, Defendants provide evidence though Silver's affidavit that indicates that they maintain a website that posts information about its products and services but a prospective customer cannot complete a transaction **[*15]** online. *See* Dkt. No. 11-1 at 3-4. This does not classify the website as anything more than passive advertisement, which is not grounds for the exercise of personal jurisdiction. *See Mink, 190 F.3d at 337*; *see also Zippo, 952 F. Supp. at 1124*.

Even accepting Plaintiff's contention that the "How to Place an Order" section on Defendants' websites makes them interactive and place them in the middle of the *Zippo* spectrum, the nature and quality of the interaction between Defendants and Texas weighs heavily against finding specific jurisdiction. *See M3Girl Designs LLC v. Purple Mountain Sweaters, No. 3:09-cv-2334-G, 2010 U.S. Dist. LEXIS 95615, 2010 WL 3699983, at *7 (N.D. Tex. Sept. 13, 2010)* (citing *Revell, 317 F.3d at 470*). At most, Plaintiff has established that the allegedly-infringing websites make possible the sale of products to Texas consumers and permit the targeting of Plaintiff's customers — not that any such sales have been made or targeting has occurred. The sole evidence regarding sales from the allegedly-infringing websites is that there was one sale to a Texas resident, for $471.97, which was placed over the phone and processed entirely in Connecticut. *See* Dkt. No. 11-1 at 2. The lack of evidence of extensive sales to the forum state suggests that Defendants have not purposefully availed themselves of the benefits of conducting **[*16]** business in Texas. This attenuated contact with Texas is not sufficient or substantial enough for this Court to exercise personal jurisdiction in this case. *See M3Girl Designs LLC, 2010 U.S. Dist. LEXIS 95615, 2010 WL 3699983, at *7* (finding that evidence of interactive website's sale to one Texas customer, for approximately $600, did not confer specific jurisdiction).

The Court concludes that the conduct in 2004 by Defendants and their maintenance of websites accessible to Texas customers do not prove that Defendants purposely established the minimum contacts with Texas or that this Court's exercise of jurisdiction over the resulting lawsuit would be consistent with "fair play and substantial justice."

It does not appear that Plaintiff contends that general jurisdiction exists. That is, Plaintiff has not alleged any facts that, if true, would establish that Defendants were "at home" in the State of Texas or had a lasting physical presence here. *Goodyear Dunlop Tires, 131 S.Ct. at 2854*. There is no evidence before the Court that Defendants' contacts with Texas are continuous and systematic such that the Court may exercise general jurisdiction over an action against Defendants regardless of whether the action is related to Defendants' contact with the forum. *See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414-15*. Accordingly, general jurisdiction **[*17]** has not been established.

Jurisdictional Discovery

In a footnote contained in its response to Defendants'

Rule 12(b)(2) motion, Plaintiff states that,

[a]t a minimum, if this Court is at all inclined to grant the defendants' motion to dismiss, it should first allow for limited discovery to explore the jurisdictional issue, including but not limited to the production of all of defendants' sales orders or invoices, a forensic examination of the computers operated by Mr. Silver and Yankee Pennysaver, and the deposition of Mr. Silver and employees of Yankee Pennysaver.

Dkt. No. 13 at 7 n.2. Defendants object to this request, contending that Plaintiff "has made only the most bare allegations of jurisdiction" and has failed to explain how such allegations could be supported by further discovery. Dkt. No. 19 at 4.

The Court concludes that Plaintiff has failed to establish its entitlement to jurisdictional discovery. Plaintiff does not in any way identify the facts expected to be obtained through discovery and how such information would support personal jurisdiction. Instead, Plaintiff simply contends that it seeks information "to explore the jurisdictional issue." Dkt. No. 13 at 7 n.2. While it is true that a **[*18]** plaintiff does not have a heavy burden to obtain jurisdictional discovery, see *Fielding, 415 F.3d at 429*, jurisdictional discovery need not be permitted unless the motion to dismiss raises issues of fact, see *Kelly, 213 F.3d at 855*. Here, Defendants contend that they have no contacts with Texas aside from the maintenance of passive websites and the sale of $471.97 in merchandise to a Texas customer through a telephone transaction manually processed through Yankee Pennysaver's PayPal account. *See* Dkt. No. 11-1 at 2-3. Plaintiff does not dispute this claim. Instead, it requests broad discovery in order to determine whether any other evidence exists that personal jurisdiction is proper in Texas. *See* Dkt. No. 13 at 7 n.2. Such a request appears to be based on speculation that additional facts establishing jurisdiction may exist, if Plaintiff is provided the wide-ranging, extensive, and (in some respects) invasive discovery consisting of "production of all of defendants' sales orders or invoices, a forensic examination of the computers operated by Mr. Silver and Yankee Pennysaver, and the deposition of Mr. Silver and employees of Yankee Pennysaver." *Id.*

Plaintiff's demonstration of the specific facts that it expects to be revealed through **[*19]** jurisdictional discovery "is especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations." *Bell Helicopter Textron, Inc. v. American Eurocopter, LLC, 729 F. Supp. 2d 789, 797-98 (N.D. Tex. 2010)* (citation omitted). The Court need not allow a plaintiff to conduct a jurisdictional "fishing expedition" seeking facts to support a claim of personal jurisdiction. *Id.*

Plaintiff here identifies no specific facts that are in dispute and fails to explain how any information obtained would support personal jurisdiction. Plaintiff has therefore failed to adequately support its request for jurisdictional discovery. *See Northview Christian Church, Inc. v. Monolithic Constructors, Inc., No. 3:09-cv-655-M, 2010 U.S. Dist. LEXIS 70568, 2010 WL 2812849, at *3 (N.D. Tex. July 13, 2010)* (denying request for jurisdictional discovery where a plaintiff "does not describe the specific discovery it requests, what facts it hopes to obtain from such discovery, or how it would produce information that would support personal jurisdiction over the" defendants). Accordingly, Plaintiff's request is denied.

Transfer Under *28 U.S.C. § 1404(a)*

Because the Court has found that Plaintiff has not established personal jurisdiction in Texas, this lawsuit will be dismissed without prejudice. Accordingly, the Court need not address Defendants' **[*20]** alternative request for transfer of the case to the District of Connecticut under *28 U.S.C. § 1404(a)*.

Conclusion

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 11] is GRANTED. This case will be dismissed without prejudice by a separately filed judgment.

SO ORDERED.

DATED: October 27, 2014

/s/ David L. Horan

DAVID L. HORAN

UNITED STATES MAGISTRATE JUDGE

**JUDGMENT**

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered,

Case 4:23-cv-00860-P   Document 30   Filed 11/08/23   Page 134 of 205   PageID 4445

Page 7 of 7
2014 U.S. Dist. LEXIS 152195, *20

It is ORDERED, ADJUDGED, and DECREED that:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 11] is GRANTED.

2. This case is DISMISSED without prejudice.

3. The Clerk shall transmit a true copy of this Judgment and the October 27, 2014 Memorandum Opinion and Order to Plaintiff's counsel.

DATED: October 27, 2014

/s/ David L. Horan

DAVID L. HORAN

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

No *Shepard's* Signal™
As of: November 8, 2023 2:28 PM Z

## *BNSF Ry. Co. v. Float Alaska IP, LLC*

United States District Court for the Northern District of Texas, Fort Worth Division

May 22, 2023, Decided; May 22, 2023, Filed

No. 4:22-cv-0950-P

**Reporter**
2023 U.S. Dist. LEXIS 88750 *; 2023 U.S.P.Q.2D (BNA) 622; 2023 WL 3591683

BNSF RAILWAY COMPANY, Plaintiff, v. FLOAT ALASKA IP, LLC, Defendant.

## Core Terms

personal jurisdiction, contacts, marks, general jurisdiction, trademark, factors, public-interest, TRANSFERS, possesses, witnesses

**Counsel: [*1]** For BNSF Railway Company, Plaintiff: Richard L Schwartz, LEAD ATTORNEY, Enrique Sanchez, Jr, Thomas F Harkins, Jr, Whitaker Chalk Swindle & Schwartz PLLC, Fort Worth, TX.

For Float Alaska IP, LLC, Defendant: Kenneth T Emanuelson, II, LEAD ATTORNEY, The Emanuelson Firm, Dallas, TX; Christina Loza, Eryn Truong, Marie Richmond, PRO HAC VICE, Loza & Loza LLP, Upland, CA.

**Judges:** Mark T. Pittman, UNITED STATES DISTRICT JUDGE.

**Opinion by:** Mark T. Pittman

## Opinion

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under *Federal Rule of Civil Procedure 12(b)(2)* ("Motion"). ECF No. 13. For the reasons stated below, the Court **DENIES** the Motion. However, in the interest of justice, the Court **TRANSFERS** this case to the United States District Court for the Central District of California.

### FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of the Parties' competing uses of the "Northern Pacific" trademarks in their respective industries. Plaintiff BNSF Railway Company ("BNSF") is one of the largest railroads in North America and covers an extensive portion of the western United States. ECF No. 1 at 2-3. In providing its railway-transportation services, BNSF and its predecessors have been associated with the **[*2]** Northern Pacific marks as early as 1893. *Id.* at 4.[1] Defendant Float Alaska IP, LLC ("Float Alaska") provides chartered airline-transportation services in the Pacific Northwest. ECF No. 14 at 1-2.

In 2021, Float Alaska filed five trademark applications with the United States Patent and Trademark Office ("USPTO") to facilitate its providing airline-transportation services under the name "Northern Pacific Airlines." ECF No. 14 at 6-7. Around September 2021, the USPTO denied Float Alaska's attempt to register the marks on the grounds that they may be confused with BNSF's use of the Northern Pacific marks in the railway-transportation industry. *Id.* at 7. Then, in early 2022, Float Alaska challenged the USPTO's denial of its use of the Northern Pacific marks, to which the USPTO maintained its prior decision. *Id.* at 7-8. In September 2022, Float Alaska petitioned to cancel BNSF's marks with the United States Trademark Trial and Appeal Board, arguing that BNSF abandoned and no longer used its Northern Pacific marks in providing its railway-transportation services. *Id.* at 8.

Following Float Alaska's attempt to cancel BNSF's marks, BNSF initiated this action, alleging, *inter alia*, trademark **[*3]** infringement against Float Alaska. ECF No. 1 at 7-9. Float Alaska moves to dismiss BNSF's claims under *Federal Rule of Civil Procedure 12(b)(2)*.

---

[1] In 1970, the Northern Pacific Railway merged with other major railways to form the Burlington Northern Railroad. *Id.* Then, in 1995, Burlington Northern Railroad merged with Santa Fe to create the Burlington and Santa Fe Railway. *Id.* In 2005, the company assumed its current name—BNSF. *Id.*

2023 U.S. Dist. LEXIS 88750, *3

ECF No. 13. BNSF has responded, ECF No. 16, and Float Alaska replied, ECF No. 18. The Motion is, therefore, ripe for the Court's consideration.

## LEGAL STANDARD

"When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006)*. To fulfill this burden, the party seeking jurisdiction must establish a prima facie case that personal jurisdiction is proper. *Jones v. Artists Rts. Enf't Corp., 789 F. App'x 423, 425 (5th Cir. 2019)*. A court may consider "the contents of the record before [it] at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery'" in making its determination as to whether it possesses the requisite jurisdiction to hear a case. *Quick Techs., Inc. v. Sage Grp. PLC, 313 F.3d 338, 343 (5th Cir. 2002)* (quoting *Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)*).

## ANALYSIS

Float Alaska moves to dismiss BNSF's claims, contending that the Court lacks personal jurisdiction over it as a nonresident defendant. ECF No. 13. In the alternative, Float Alaska requests that the Court transfer this action to the United States District Court for the Central District of California. ECF No. 14 at **[*4]** 23-24.[2] The Court discusses each request below.

## A. Personal Jurisdiction

BNSF contends that the Court possesses personal jurisdiction over Float Alaska based on its "numerous and systemic contacts with Texas." ECF No. 1 at 2.[3] In

_____

[2] BNSF also supports Float Alaska's request in the alternative to transfer this action to the Central District of California as opposed to dismissing its claims if the Court determines that it does not possess jurisdiction over Float Alaska. *See* ECF No. 16 at 7-8. In fact, BNSF argues extensively that, given the stay of the trademark-cancellation proceedings brought by Float Alaska until the resolution of this matter, the interest of justice "would be *particularly* served by transfer." *Id.* at 7 (emphasis in original).

[3] The Court notes that BNSF does not specifically allege that

response, Float Alaska avers that BNSF's jurisdictional allegations are demonstrably false and insufficient to establish a prima facie case of personal jurisdiction over it. ECF No. 14 at 6.

As interpreted by the Supreme Court, the *Due Process Clause of the Fourteenth Amendment* requires satisfaction of a two-prong test for a federal court to properly exercise personal jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024, 209 L. Ed. 2d 225 (2021)* (citing *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*). The minimum-contacts prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 343 (5th Cir. 2004)*.

Float Alaska contends that both grounds are lacking. The Court agrees that it lacks general jurisdiction over Float Alaska and specific jurisdiction is, at best, tenuous.

### 1. General Jurisdiction

*First*, BNSF argues that the Court possesses jurisdiction **[*5]** over Float Alaska based on its numerous and systemic contacts with Texas, including operating a website that is accessible in Texas, recruiting pilots from the Dallas-Fort Worth metroplex, securing aircraft formerly operated by American Airlines, seeking crowd funding in Texas, planning scheduled flights to Texas, communicating with BNSF, and preparing to enter into contracts to provide transportation services in this district. ECF No. 1 at 2. The Court disagrees.

General jurisdiction exists when a defendant's contacts are so continuous and systemic to render them essentially at home in the forum state. *Helicopteros Nacionales de Colom. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*. As the tone of the Supreme Court suggests, the threshold for proving that general jurisdiction exists is higher "because the state has no direct interest in the cause of action." *Bearry v.*

_____

the Court possesses either general or specific jurisdiction over Float Alaska. *See* ECF No. 1 at 2. Instead, it generally states that "this Court has personal jurisdiction over [Float Alaska]." *Id.* To be safe, the Court addresses both.

*Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447-48, 72 S. Ct. 413, 96 L. Ed. 485, 63 Ohio Law Abs. 146 (1952)*).

Here, Float Alaska is a limited liability company organized under the laws of the state of Delaware with offices in Anchorage, Alaska, and maintains its principal place of business in Pomona, California. ECF No. 13-1 at 9. It can hardly be said that such a business entity would be "at home" in Texas unless it possesses significant business contacts with the state. *See Hall, 466 U.S. at 414*.

Even resolving all conflicts **[*6]** in favor of BNSF's jurisdictional allegations regarding Float Alaska's business relationship with Texas, they depict an infrequent one. In *Hall*, the defendant helicopter-transportation company was found to not be "at home" in Texas despite its negotiating contracts in the state, purchasing helicopters, equipment, and training services in substantial sums in the state, and sending personnel to the state for training. *Id. at 416*. The contacts with Texas by the helicopter company in *Hall* were much more extensive than Float Alaska's in this case, and the Supreme Court nonetheless held that the company was not subject to the general jurisdiction of the court. The Court here reaches the same result—BNSF fails to prove that Float Alaska is subject to the Court's general jurisdiction.

2. Specific Jurisdiction

*Second*, BNSF asserts that Float Alaska is subject to the specific jurisdiction of the Court because Float Alaska directed its allegedly infringing conduct towards Texas. In support of its assertion, BNSF cites the same seven grounds mentioned above as evidence that Float Alaska's contacts with the state directly flow from BNSF's claims against it.

Because Float Alaska and BNSF both view the transfer of this **[*7]** action as an adequate remedy, the Court chooses not to make a conclusive determination as to whether it possesses specific jurisdiction over Float Alaska. *See* ECF No. 14 at 23-24; *see also* ECF No. 16 at 7-8. But the Court expresses that its ability to exercise jurisdiction over Float Alaska is, at best, questionable.[4] The Court therefore considers whether

transferring this action to the Central District of California is a more appropriate means of ensuring the efficient administration of justice.

**B. *Section 1404(a)* Transfer**

Federal venue rules states that "a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. Decisions to transfer venue are "committed to the sound discretion" of the Court. *Jarvis Christian Coll. v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988)*. While a plaintiff's choice of forum should be respected, clear convenience in a transferee venue can overcome the deference afforded to a plaintiff's forum choice. *See In re Volkswagen of Am., Inc., 545 F.3d 304, 314-15 (5th Cir. 2008)* (en banc).

To determine whether a *§ 1404(a)* transfer is appropriate, a court must analyze four private and four public-interest factors—none of which are given dispositive weight. *Id. at 315*. Based on the Parties' requests in the alternative that this case be transferred to the Central District **[*8]** of California, the Court assesses whether a transfer of venue to that court would be more appropriate considering the convenience of the Parties and the interest of justice.

1. Private-Interest Factors

The private-interest factors are: (1) the accessibility of sources of proof; (2) the ability of the court to secure the attendance of witnesses; (3) the cost of attendance for witnesses; and (4) all other factors that make a trial expeditious and inexpensive. *In re Volkswagen of Am., Inc., 545 F.3d at 315*. The Court addresses each in turn.

*First*, the Central District of California will have better access to sources of proof as most discovery in this case will flow from representatives of Float Alaska and documents produced regarding its prospective business plans. Given that Float Alaska's principal place of business is in Pomona, California, *see* ECF No. 13-1 at 9, the sources of proof available to the court will be easily accessible. *Second*, the court will have the best access to witnesses due to the proximity of Float Alaska. *Third*, the cost of travel for the witnesses will also be lower due to its proximity. *Fourth*, the trial will be more expeditious because witnesses and parties will be privy to that court's local rules and procedures, **[*9]** as

---

[4] In addition, the Court **DENIES** BNSF's request for jurisdictional discovery as it has failed to make a preliminary showing that discovery would yield the facts necessary to

withstand dismissal. *See Johnson v. TheHuffingtonPost.com, Inc., 21 F.4th 314, 326 (5th Cir. 2021)*.

Float Alaska is a local company with California counsel, and BNSF is a nationwide company with extensive experience being a litigant in that district.

Accordingly, the private-interest factors weigh in favor of transfer.

2. Public-Interest Factors

The public-interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of problems regarding conflict of laws or the application of foreign law. *In re Volkswagen of Am., Inc., 545 F.3d at 315*. The Court again discusses each in turn.

*First*, the evidence shows that the median time to disposition of a civil case is fifty-six months in the Northern District of Texas compared to almost five months in the Central District of California. *See* CIVIL JUDICIAL BUSINESS OF THE UNITED STATES COURTS, ADMIN. OFFICE OF THE U.S. COURTS, 2021-2022 Report, Table C-5 (2022), *available at: https://www.us-courts.gov/statistics/table/c-5/judicial-business/202-2/09/30*.[5] Given the busyness of the docket of this Court, this factor weighs heavily in favor of transfer. *Second*, Texas and California both have localized interests **[*10]** based on the Parties' statuses as resident businesses. This factor is, therefore, neutral. *Third*, while BNSF's current complaint contains a pendent claim of unfair competition under Texas law, the gravamen of its complaint against Float Alaska is objecting to Float Alaska's allegedly infringing conduct relating to the Northern Pacific marks. *See* ECF No. 1 at 7-13 (depicting that four out of the five causes of action alleged against Float Alaska pertain to federal trademark law). Both courts can equally apply federal trademark law, which makes this factor neutral. *Fourth*, there do not appear to be problems associated with a conflict of laws or the application of foreign law. This final factor is neutral.

---

[5] This fact is likely due to the number of district judge positions versus the total number of civil cases in the respective districts. The Northern District of Texas has eighteen district judge positions, including the chief judge, senior status judges, and vacancies. In comparison, the Central District of California has thirty-eight district judge positions, including the same. From 2021 to 2022, the Northern District of Texas had 8,698 total civil cases reported and the Central District of California had 12,887. *See* CIVIL JUDICIAL BUSINESS OF THE UNITED STATES COURTS, Table C-5.

The public-interest factors weigh slightly in favor of transfer.

* * *

Cumulatively, the private and public-interest factors—along with the statutory considerations under *§ 1404(a)* of convenience of all those involved and the interest of justice—weigh in favor of transferring this case.

**CONCLUSION**

For these reasons, the Court **DENIES** the Motion but **TRANSFERS** this case to the United States District Court for the Central District of California.[6]

**SO ORDERED** on this **22nd day of May 2023**.

/s/ Mark T. Pittman

Mark T. Pittman

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[6] Because the Court is transferring this case, BNSF's motion to strike the appendix supporting Float Alaska's reply brief (ECF No. 20) should be, and it is hereby, rendered **MOOT [*11]** .


Positive

As of: November 8, 2023 2:32 PM Z

## *Brother of the Leaf, LLC v. Plastic Prods. Co.*

United States District Court for the Western District of Texas, San Antonio Division

August 1, 2014, Decided; August 1, 2014, Filed

Civil Action No. SA-14-CV-479-XR

**Reporter**

2014 U.S. Dist. LEXIS 106127 *; 2014 WL 3824209

BROTHER OF THE LEAF, LLC, Plaintiffs, v. PLASTIC PRODUCTS COMPANY, INC., d/b/a SMITH METAL PRODUCTS, INC., Defendant.

## Core Terms

general jurisdiction, nonresident, contacts, personal jurisdiction, advertising, discovery, forum state, cutter, cigar, alleged contract, minimum contact, communications, confer

**Counsel:** **[*1]** For Brother of the Leaf, LLC, Plaintiff: Mark H. Miller, Jackson Walker, L.L.P., San Antonio, TX.

For Plastic Products Co., Inc., doing business as Smith Metal Products, Inc., Defendant: Michael Debs Bernard, LEAD ATTORNEY, Bracewell & Giuliani, San Antonio, TX; Samuel J.H. Sigelman, LEAD ATTORNEY, Lindquist & Vennum, LLP, Minneapolis, MN.

**Judges:** XAVIER RODRIGUEZ, UNITED STATES DISTRICT JUDGE.

**Opinion by:** XAVIER RODRIGUEZ

## Opinion

### ORDER

On this date, the Court considered Defendant's motion to dismiss under *Rule 12(b)(2)* for lack of personal jurisdiction. Doc. No. 6. After careful consideration, the motion is GRANTED.

### BACKGROUND

This case arises out of a prospective business relationship gone awry. Plaintiff Brother of the Leaf LLC

("BOTL") is a Texas-based designer and manufacturer of premium cigar cutters. Defendant Plastic Products Company, Inc. ("Plastic") is a Minnesota corporation engaged in the business of creating metal and ceramic parts. Sometime in 2012, BOTL decided to design and market an all-metal cigar cutter. Compl. ¶ 22. After seeing Plastic's advertisements, BOTL contacted Plastic to see if it would be interested in potentially designing and producing a new cigar cutter. *Id.* at ¶ 27. Although apparently **[*2]** no agreement was ever reduced to writing, BOTL alleges that over the course of several years Plastic manifested its intent to manufacture a metal cigar cutter for BOTL to sell. Eventually, Plastic informed BOTL in March of 2013 that it did not have the resources to devote to the cigar cutter project. *Id.* at ¶ 47. This lawsuit ensued.

On May 23, 2014, BOTL filed an original complaint in this Court asserting causes of action for: (1) breach of agreement / promissory estoppel and; (2) false advertising / misrepresentation in violation of *15 U.S.C. §1125*. *Id.* ¶¶ at 53-54. On July 9, 2014, Plastic filed this motion to dismiss under *Rule 12(b)(2)* for lack of personal jurisdiction. Doc. No. 6.

### LEGAL STANDARD

Personal jurisdiction over Defendants exists if: (1) the Texas long-arm statute confers such jurisdiction; and (2) the exercise of that jurisdiction comports with the *Due Process Clause*. *Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006)* (quoting *Allred v. Moore & Peterson, 117 F.3d 278 (5th Cir. 1997))*. The Texas long-arm statute authorizes courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. *Tex. Civ. Prac. & Rem.Code Ann. § 17.042* **[*3]** (Vernon 2008). Texas courts have interpreted this provision broadly to permit jurisdiction over nonresidents as far as the U.S. Constitution permits. *See Blair Communications, Inc. v. SES Survey*

APP 139

2014 U.S. Dist. LEXIS 106127, *3

*Equip. Services, Inc., 80 S.W.3d 723, 727 (Tex. App.—Houston [1st Dist.] 2002, no pet.).* As a result, the only inquiry is whether jurisdiction over the nonresident Defendants would violate the U.S. Constitution. *Religious Tech. Center v. Liebreich, 339 F.3d 369, 373 (5th Cir. 2003)* ("Because the Texas Long Arm Statute is coextensive with the confines of Due Process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process.").

Well established Supreme Court jurisprudence dictates personal jurisdiction over a nonresident defendant is constitutional when: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).* There are sufficient minimum contacts when the nonresident defendant purposefully avails him or herself of the privilege **[*4]** of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Id.*

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994).* Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (internal citations omitted). The nonresident's purposeful and deliberate activities in the forum must be such that he could reasonably anticipate being haled into court in that state. *Id. at 474.* Specific jurisdiction also requires a sufficient nexus between the nonresident's contacts with the forum and the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).* In contrast, general jurisdiction exists when the defendant's contacts with the forum state are "continuous and systematic." *Id.*

## DISCUSSION

### 1. Specific Jurisdiction

First, the Court turns to whether Plaintiff has established a *prima facie* case of specific jurisdiction. Since **[*5]** specific jurisdiction is claim specific, the Court must assesses whether Plastic has sufficient minimum contacts with Texas with respect to each cause of action that BOTL asserts. *See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006)* (discussing claim-specific nature of specific jurisdiction). BOTL has pled causes of action for: (1) breach of contract based on promissory estoppel; and (2) false advertising in violation of the Lanham Act. Compl. ¶¶ 53-54.

With respect to BOTL's contract claim, it is well settled that the existence of a contract alone is insufficient to confer personal jurisdiction over a nonresident defendant. *Burger King, 471 U.S. at 478-79; Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999); Blair Communications, Inc. 80 S.W.3d at 727.* BOTL alleges that Plastic breached their agreement by failing to deliver the cigar cutters to BOTL in Texas. Compl. ¶ 53. In addition, BOTL contends that communications pertaining to the negotiation and performance of the alleged contract were directed to it in Texas. *Id.* These are insufficient contacts to confer personal jurisdiction over Plastic in Texas. Assuming, for the sake of argument, **[*6]** that an enforceable oral agreement existed between the parties, that agreement was largely to be performed in Minnesota, not Texas. The alleged contract contained neither a Texas forum selection clause, nor did it select Texas law to govern any dispute. *See Burger King, 471 U.S. at 481* (discussing impact of choice of law provisions on specific jurisdiction analysis). In addition, the alleged contract does not envision a lasting relationship between the parties. *See id.* (noting that although the contract in question contemplated a twenty-year relationship, that was still insufficient to confer specific jurisdiction). BOTL concedes that no representative from Plastic ever traveled to Texas in conjunction with the alleged contract. *See id.* (discussing relevance of physical presence in forum state).

BOTL argues that Plastic purposefully availed itself of Texas by participating in meetings by telephone or video conference with BOTL in Texas. Compl. ¶ 29. In *Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986),* the Fifth Circuit held that "the exchange of communications ... in the course of developing and carrying out the contract was ... insufficient to constitute purposeful availment of the benefits **[*7]** and protections of Texas law." Likewise, the communications in this case pertain to the formation and performance of the alleged contract and therefore are insufficient minimum contacts. *Id; see also Smirch v. Allied Shipyard, Inc., 164 F. Supp. 2d 903, 908 (S.D. Tex.*

2014 U.S. Dist. LEXIS 106127, *7

2001) (declining to exercise jurisdiction over a nonresident defendant in a contract case when "nothing in the record... indicates that these communications occurred other than in the course of developing and carrying out the contract").[1] As a result, the court lacks specific personal jurisdiction over Plastic with respect to BOTL's breach of contract claim.

Next, the Court turns to BOTL's Lanham Act claim under 15 U.S.C. § 1125.[2] To prevail on this claim, BOTL will need to show:

> (1) that the defendant made a false statement of fact about its product in a commercial advertisement; (2) that the statement actually deceived or has a tendency to deceive a substantial segment **[*8]** of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff[ ] ha[s] been or [is] likely to be injured as a result.

Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 462 (5th Cir. 2001) (citing Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1042 (8th Cir. 1999)). In this case, BOTL claims that Plastic holds itself out to the public as a reliable designer and manufacturer of metal and ceramic parts. Compl. ¶¶ 23-26. These advertisements are apparently directed at a nation-wide audience and BOTL does not allege that Plastic deliberately targeted Texas with an advertising campaign. In general, personal jurisdiction exists over a nonresident defendant in a misrepresentation case only when specific communications are directly targeted at the forum state. See Delta Brands Inc. v. Danieli Corp., 99 F. App'x. 1, 6 (5th Cir. 2004); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999).

_____

[1] Inasmuch as most all contracts are the product of some negotiation, it would permit the exception to swallow the rule if negotiations relating to contract formation could give rise to specific jurisdiction whereas the existence of a contract could not.

[2] It is not entirely clear from the complaint whether BOTL is also asserting state law causes of action with respect to its allegations of false advertising **[*9]** and misrepresentation. The Complaint reads "In addition to other actions, this comprises a breach of 15 U.S.C. § 1125. Since the pleading does not specify which "other actions" BOTL is referring to, the Court will assess its personal jurisdiction over Plastic with respect to a § 1125 claim.

However, BOTL also alleges specific statements directed at Texas made by Mike Brown, Plastic's Director of Sales and Marketing. For example, BOTL alleges that Mr. Brown made assurances such as "[w]e will get it done for you" during the course of contract negotiations. Compl. ¶ 34. While these kinds of statements may have been intentionally directed at Texas, by their terms they are not "commercial advertisements." Instead, these are private representations directed at BOTL as a potential consumer and, as such, do not fall under the purview of the Lanham Act. See Lexmark Intern., Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1390, 188 L. Ed. 2d 392 (2014) ("A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act—a conclusion reached by every Circuit to consider the question."). **[*10]** As a result, Plaintiff has not established facts to support a prima facie case of specific jurisdiction over its Lanham Act claim.[3]

## 2. General Jurisdiction

BOTL argues that Plastic is subject to general jurisdiction in Texas. Doc. No. 8 at 8. As evidence of BOTL's continuous presence in the forum, BOTL notes that Plastic grosses $3.5 million in sales in Texas. Id. In addition, Plastic representatives attend trade shows in Texas. Id. at Ex. A. Plastic advertises here. Id. These minimal contacts are insufficient for general jurisdiction, which requires that the nonresident be "essentially at home in the forum state." Daimler AG v. Bauman, 134 S.Ct. 746, 758, n.11, 187 L. Ed. 2d 624 (2014) (internal citations omitted). The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts **[*11]** between a defendant and a forum." Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 609 (5th Cir. 2008) (citing Submersible Sys., Inc. v. Perforadora Cent., S.A., 249 F.3d 413, 419 (5th Cir. 2001)).

In Helicopteros, perhaps the seminal general jurisdiction

_____

[3] Notably, BOTL's claim fares no better if liberally construed as asserting a state law cause of action for negligent misrepresentation. BOTL does not allege that Mr. Brown's statements fell below a reasonable standard of care. See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 792 (Tex. 1999)(outlining elements of negligent misrepresentation claim under Texas law).

case, the nonresident defendant purchased $4 million worth of helicopters and spare parts from a Texas company. _466 U.S. at 411_. The nonresident also sent its pilots to Texas for training, engaged in business meetings in Texas, and drew a check for over $5 million from a Texas bank. _Id._ In spite of these business contacts, the Supreme Court ruled that a court in Texas lacked general jurisdiction over the defendant. _Id._ In applying _Helicopteros_ and other Supreme Court decisions concerning general personal jurisdiction, the Fifth Circuit has drawn a distinction between contacts which constitute doing business _with_ Texas and contacts that constitute doing business _in_ Texas. _See Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999)_ (emphasis added).

A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting **[*12]** physical presence in the state. _Id._ As a result, the fact that Plastic sells its products in Texas is insufficient to confer general jurisdiction. _Johnston, 523 F.3d at 609_ (finding no general jurisdiction over nonresident whose sales in the forum constituted 3% of its business); _Access Telecom, 197 F.3d at 717-18_ (finding no general jurisdiction where the defendant derived millions of dollars a month in revenue from Texas residents); _Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 181-84 (5th Cir. 1992)_; Dalton v. R&W Marine, Inc., 897 F.2d 1359, 1362 (5th Cir. 1990).

In addition, Fifth Circuit law is clear that Plastic's presence in Texas is not "continuous and systemic" simply because it advertises here. _Johnston, 523 F.3d at 609_; _Bearry v. Beech Aircraft Corp., 818 F.2d 370, 376 (5th Cir. 1987)_ (finding that nation-wide advertising program that also included the forum did not support general jurisdiction); _Oreck Corp. v. U.S. Floor Systems, Inc., 803 F.2d 166, 169 (5th Cir. 1986)_.[4] Finally, the fact that Plastic's representatives traveled to Texas to attend trade shows does not mean that Plastic has a "continuous and systemic" presence in the State. It is

settled that "mere travel, **[*13]** even at regular intervals into a state, does not create general jurisdiction." _Johnston, 523 F.3d at 614_ (citing _Helicopteros, 466 U.S. at 418_). Consequently, the sum of Plastic's contacts with Texas are insufficient to establish general jurisdiction.[5]

### 3. Jurisdictional Discovery

Perhaps anticipating that the Court lacks general jurisdiction, BOTL seeks jurisdictional discovery. Doc. No. 8. A court may grant jurisdictional discovery when the plaintiff makes a preliminary showing of jurisdiction.[6] _See Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)_ **[*14]** (citing _Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003))_. However, when the lack of personal jurisdiction is clear, discovery is also unnecessary. _Kelly v. Syria Petroleum Dev. B. V., 213 F.3d 841, 855 (5th Cir. 2000)_ (internal quotation marks omitted).

In assessing BOTL's entitlement to further discovery, it is important to consider what BOTL has demonstrated that it already knows regarding Plastic's presence in Texas. BOTL is aware of Plastic's sales volume here, its participation in trade shows here, and its advertising here. Moreover, BOTL does not identify in its motion what kind of facts it reasonably expects to discover that would further establish Plastic's presence in the state. Instead, BOTL argues that it is entitled to jurisdictional discovery to "further elucidate and quantify jurisdictional facts." Doc. No. 8 at 9. The Court's conclusion that it lacks general jurisdiction over Plastic is not grounded in any failure on BOTL's part to describe Plastic's contacts with Texas in sufficient **[*15]** detail. Instead, the Court lacks general jurisdiction because the contacts themselves are insufficient as a matter of law to establish that Plastic has a "continuous and systemic" presence in Texas. Stated differently, BOTL appears in possession of all of the facts it needs to make its jurisdictional argument.[7] That the Court ultimately

_____

[4] BOTL alleges that Plastic advertises on the internet. Although websites can sometimes confer general jurisdiction, there has been no showing that Plastic's web presence is sufficiently targeted at Texas to confer jurisdiction here. _See Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002)_ (discussing "sliding-scale" for whether a web presence in the forum can confer general jurisdiction based upon how interactive the website is).

_____

[5] There being no _prima facie_ case of either specific or general jurisdiction, there is no need for the Court to analyze whether an assertion of personal jurisdiction over Plastic would violate fundamental fairness. _Int'l Shoe, 326 U.S. at 316_.

[6] A preliminary showing is necessarily less than a _prima facie_ showing because if the plaintiff made a _prima facie_ showing, jurisdictional discovery would be unnecessary.

[7] BOTL does not allege, nor could it reasonably expect, that further discovery will enable it to uncover hidden Plastic

2014 U.S. Dist. LEXIS 106127, *15

disagrees does not automatically imply that BOTL is entitled to further discovery. Since BOTL has neither made a preliminary showing of jurisdiction nor alleged that it expects to find more contacts between the nonresident and the forum, BOTL is not entitled to jurisdictional discovery.[8]

## CONCLUSION

In light of the foregoing analysis, Defendant's motion to dismiss is GRANTED. Doc. No. 6. The Clerk is directed to CLOSE  [*16] the case.

SIGNED this 1st day of August, 2014.

/s/ Xavier Rodriguez

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE

---

End of Document

---

operations in Texas that would make it essentially at home here. Further elaboration on the contacts BOTL has already uncovered will not change the analysis, making further discovery pointless.

[8] BOTL itself acknowledges that jurisdictional discovery can often bleed into the merits and is thus a disfavored remedy. Doc. No. 8.

 Neutral
As of: November 8, 2023 2:26 PM Z

# *Di Piazza v. Weather Grp. TV, LLC*

United States District Court for the Northern District of Texas, Lubbock Division

September 9, 2019, Decided; September 9, 2019, Filed

Civil Action No. 5:19-CV-060-C

**Reporter**
2019 U.S. Dist. LEXIS 228319 *; 2019 WL 8107917

KAREN DI PIAZZA, Individually and as Mother to CORBIN JAEGER and as Personal Representative of the Estate of CORBIN LEE JAEGER, Deceased, Plaintiff, v. WEATHER GROUP TELEVISION, LLC dba The Weather Channel, a Georgia limited liability company, et al., Defendants.

**Prior History:** *Di Piazza v. Weather Grp. TV, 2019 U.S. Dist. LEXIS 228337 (N.D. Tex., June 3, 2019)*

## Core Terms

nonresident, personal jurisdiction, motion to dismiss, discovery, forum state, lack of personal jurisdiction, general jurisdiction, allegations, subsidiary, minimum contact, contacts, fails

**Counsel:** **[\*1]** For Karen Di Piazza, Individually and As Mother to Corbin Jaeger and As Personal Representative, of the Estate of Corbin Lee Jaeger, Deceased, Plaintiff: Benjamin H Davidson, II, LEAD ATTORNEY, McCleskey Harriger Brazill & Graf LLP, Lubbock, TX; Bar Status: Admitted/In Good Standing, Bar Status: Not Admitted, Bar Status: Admitted/In Good Standing, Bar Status: Not Admitted; John Mathew Donnelly, PRO HAC VICE, Law Offices of Robert A Ball, San Diego, CA; Mary Kathleen Davidson, McCleskey Harriger Brazill & Graf LLP, Lubbock, TX; Robert A. Ball, PRO HAC VICE, Law Offices of Robert A. Ball, San Diego, CA.

For Weather Group Television, LLC, a Georgia limited liability company, doing business as, The Weather Channel, Defendant: Douglas D Fletcher, LEAD ATTORNEY, Fletcher Farley Shipman & Salinas LLP, Dallas, TX; Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing; David C Colley, Fletcher Farley Shipman & Salinas LLP, Dallas, TX; Gerardo E. Alcantara, Fletcher Farley Shipman & Salinas, Dallas,

TX; Richard G Miller, Fletcher Farley Shipman & Salinas LLP, Dallas, TX.

For Weather Group, LLC, **[\*2]** a Delaware limited liability company, Defendant: Douglas D Fletcher, LEAD ATTORNEY, Fletcher Farley Shipman & Salinas LLP, Dallas, TX; Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing, doing business as, Entertainment Studios, Bar Status: Admitted/In Good Standing; David C Colley, Fletcher Farley Shipman & Salinas LLP, Dallas, TX; Gerardo E. Alcantara, Fletcher Farley Shipman & Salinas, Dallas, TX; Richard G Miller, Fletcher Farley Shipman & Salinas LLP, Dallas, TX.

For CF Entertainment, Inc., a California corporation, Defendant: Douglas D Fletcher, Fletcher Farley Shipman & Salinas LLP, Dallas, TX.

For Entertainment Studios Networks, Inc., a California corporation, Entertainment Studios Media, Inc., a California corporation, Entertainment Studios Media Holdings, Inc., a Delaware corporation, Bain Capital Investors, LLC, a Delaware limited liability company, The Blackstone Group, Inc., a Delaware corporation, TV Holdings 1, LLC, a Delaware limited liability company, TV Holdings 2, LLC, a Delaware limited liability company, Defendants: Douglas D Fletcher, Fletcher Farley Shipman & **[\*3]** Salinas LLP, Dallas, TX; Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing; Gerardo E. Alcantara, Fletcher Farley Shipman & Salinas, Dallas, TX; Richard G Miller, Fletcher Farley Shipman & Salinas LLP, Dallas, TX.

For NBCUniversal Media, LLC, a Delaware limited liability company, Defendant: Catherine L Hanna, LEAD ATTORNEY, Hanna & Plaut LLP, Austin, TX; Bar Status: Admitted/In Good Standing, Bar Status: Admitted/In Good Standing; Lauren Leigh Burgess, Hanna & Plaut LLP, Austin, TX.

For Sheena Bittle, as Personal Representative of the

Estate of Kelley Gene Williamson, Defendant: Mark Whitney McBrayer, LEAD ATTORNEY, Crenshaw Dupree & Milam, Lubbock, TX; Bar Status: Admitted/In Good Standing.

For Keith Daniels, as Personal Representative of the Estate of Randall D. Yarnall, Defendant: Robert B Wagstaff, LEAD ATTORNEY, McMahon Surovik Suttle PC, Abilene, TX; Bar Status: Admitted/In Good Standing.

**Judges:** SAM R CUMMINGS, SENIOR UNITED STATES DISTRICT JUDGE.

**Opinion by:** SAM R CUMMINGS

# Opinion

## ORDER

On this day, the Court considered:

(1) The Out-of-State Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction and For Failure to State a Claim, **[*4]** filed July 1, 2019;
(2) Plaintiff's Response to the Out-of-State Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction and For Failure to State a Claim, filed July 22, 2019; and
(3) The Out-of-State Defendants' Reply to Plaintiff's Response to the Out-of-State Defendants' Renewed Motion to Dismiss for Lack of Personal Jurisdiction and For Failure to State a Claim, filed July 31, 2019.

Having considered the foregoing, the Court is of the opinion that the Out-of-State Defendants' Motion to Dismiss should be **GRANTED** pursuant to *Federal Rule of Civil Procedure 12(b)(2)*.

## I. BACKGROUND

On March 26, 2019, Karen Di Piazza, Individually and as Mother to Corbin Jaeger and as Personal Representative of the Estate of Corbin Lee Jaeger, Deceased ("Plaintiff"), filed the above-styled and-numbered civil action against a total of 17 named Defendants. To provide insight, on March 28, 2017, Corbin Lee Jaeger was killed in a two-vehicle collision occurring outside the town of Spur, Texas. Specifically, a Chevrolet Suburban, driven by Randall Yarnall and

occupied by Kelley Gene Williamson, ran a stop sign and, as a result, collided with Jaeger's 2012 Jeep Patriot. Sadly, all three individuals were pronounced deceased. Plaintiff **[*5]** alleges that Yarnall and Williamson were acting in the course and scope of their employment as storm chasers and television personalities employed by the Weather Channel at the time of the incident.

Plaintiff asserts claims for negligence, gross negligence, wrongful death, and survival. Plaintiff seeks actual damages in an amount of no less than $125,000,000.00, damages for loss of affection, consortium, comfort, protection and care, pain and suffering, mental anguish, loss of quality of life, funeral and burial expenses, loss of service, as well as exemplary and punitive damages. Defendants CF Entertainment, Inc. d/b/a Entertainment Studios, Entertainment Studios Networks, Inc., Entertainment Studios Media, Inc., Entertainment Studios Media Holdings, Inc., NBCUniversal Media, LLC, Bain Capital Investors, LLC, The Blackstone Group, Inc., TV Holdings 1, LLC, and TV Holdings 2, LLC ("Out-of-State Defendants") now seek the dismissal of Plaintiffs claims pursuant to *Federal Rule of Civil Procedure 12(b)(2)* or, in the alternative, for failing to state a claim under *Federal Rule of Civil Procedure 12(b)(6)*.

## II. STANDARDS

### *Rule 12(b) (2)—Personal Jurisdiction*

Motions filed under *Rule 12(b)(2) of the Federal Rules of Civil Procedure* seek to dismiss a complaint or a counterclaim for lack of personal jurisdiction. *FED. R. Civ. P. 12(b)(2)*. A *Rule 12(b)(2)* motion to dismiss must **[*6]** be asserted in a motion to dismiss or in an answer; otherwise, the motion is waived. *FED. R. Civ. P. 12(h)*. When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that *in personam* jurisdiction exists. *Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1996)*. The plaintiff need not, however, establish personal jurisdiction by a preponderance of the evidence; *prima facie* evidence of personal jurisdiction is sufficient. *WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)*. The court may resolve a jurisdictional issue by reviewing pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof. *Command-Aire Corp. v. Ontario Mech. Sales &*

*Serv., Inc., 963 F.2d 90, 95 (5th Cir. 1992)*. Conflicts in the facts alleged by the parties must be resolved in the plaintiff's favor. *Jones v. Petty-Ray Geophysical, Geosource, Inc., 954 F.2d 1061, 1067 (5th Cir. 1992)*.

In a diversity action, personal jurisdiction over a nonresident may be exercised if (1) the nonresident defendant is amenable to service of process under the law of the forum state; and (2) the exercise of jurisdiction under state law comports with the *due process clause of the Fourteenth Amendment*. *Wilson, 20 F.3d at 646-47*. Because the Texas long-arm statute has been interpreted as extending to the limits of due process, the only inquiry, therefore, is whether the exercise of jurisdiction over a nonresident defendant would be constitutionally permissible. **[\*7]** *Bullion v. Gillespie, 895 F.2d 213, 216 (5th Cir. 1990)*.

For due process to be satisfied, (1) the nonresident defendant must have "minimum contacts" with the forum state resulting from an affirmative act on the defendant's part, and (2) the contacts must be such that the exercise of jurisdiction over the person of the defendant does not offend "traditional notions of fair play and substantial justice." *int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)* (citation omitted). *See also Allred v. Moore & Peterson*, *117 F.3d 278, 285 (5th Cir. 1997)*.

Minimum contacts with a forum state occur when the nonresident defendant "purposefully avails] himself of the benefits and protections of the forum state." *Felch v. Transportes Lar-Mex SA DE CV, 92 F.3d 320, 323 (5th Cir. 1996)*. The minimum contacts prong of the due process requirement can be satisfied by a finding of either "specific" or "general" jurisdiction over the nonresident defendant. *Bullion, 895 F.2d at 216*. For specific jurisdiction to exist, the foreign defendant must purposefully do some act or consummate some transaction in the forum state and the cause of action must arise from or he connected with such act or transaction. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*.

Even if the controversy does not arise out of or relate to the nonresident defendant's purposeful contacts with the forum, general jurisdiction may be exercised when the nonresident defendant's contacts are sufficiently continuous and systematic as to support **[\*8]** the reasonable exercise of jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*; *Wilson, 20 F.3d at 647*. When general jurisdiction is asserted,

the minimum contacts analysis is more demanding and requires a showing of substantial activities within the forum state. *Jones, 954 F.2d at 1068*. Only if the nonresident defendant's related or unrelated minimum contacts with the forum state are sufficient does the court consider whether the "fairness prong" is satisfied. *Felch, 92 F.3d at 324* (citation omitted). The following factors are to be considered in conducting the fairness inquiry: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interests in securing relief; (4) the interstate judicial system's interests in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies. *Id. at 324 n.9* (quotations and citations omitted).

### *Rule 12(b)(6)*—*Plausibility*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *FED. R. Civ. P. 8(a)*. The court must accept all factual allegations in a complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009)*. In reviewing a motion to dismiss under *Rule 12(b)(6)*, a district court must generally **[\*9]** examine only the complaint and any attachments to the complaint. *Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000)*. But a court may consider extrinsic documentary evidence if (1) the document is attached to a defendant's motion to dismiss, (2) the document is referred to in the plaintiff's complaint, and (3) the document is "central" to the plaintiffs claim. *Id. at 498-99*. To survive a *12(b)(6)* Motion to Dismiss, a complaint must contain enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. This determination is context-specific and requires the court to draw upon its own experience and common sense. *Id.*

### III. DISCUSSION

### *Jurisdictional Assessment*

"Personal jurisdiction, [like subject matter jurisdiction], is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 231-32 (5th Cir. 2012)* (citations omitted). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception . . . because [j]urisdiction is power to declare the law, and [w]ithout jurisdiction the court cannot **[*10]** proceed at all in any cause." *Id.* (internal citations omitted). Therefore, "subject matter jurisdiction and personal jurisdiction claims are threshold grounds for denying audience to a case on the merits[] and require that the courts reach the threshold claims before reaching claims on the merits." *Id.* Accordingly, the Court shall first consider the Out-of-State Defendants' Motion arising under *Federal Rule of Civil Procedure 12(b)(2)*.

### i. General Jurisdiction

The Out-of-State Defendants assert that Plaintiff's Second Amended Complaint fails to plead sufficient facts for the Court's exercise of general jurisdiction. Specifically, the Out-of-State Defendants aver that they do not maintain the necessary "continuous and systematic" contacts with Texas that would render them "essentially at home." Plaintiff, on the other hand, fails to contest the Out-of-State Defendants' assertions concerning general jurisdiction.[1] Thus, Plaintiff fails to establish *a prima facie* case in support of general jurisdiction. The Court shall now turn to address the arguments presented relating to specific jurisdiction.

### ii. Specific Jurisdiction

The Out-of-State Defendants further contend that Plaintiff's Second Amended Complaint fails to assert facts **[*11]** so as to support the Court's exercise of specific jurisdiction. In this light, the Out-of-State Defendants—who are alleged parent companies and investors of the Weather Channel—argue that Plaintiff fails to plead any plausible "plus factor," or something beyond the subsidiaries' mere presence, as required under Texas law, to support an extension of specific jurisdiction. Conversely, Plaintiff avers that the Second

Amended Complaint sufficiently pleads factual allegations so as to support a theory that the Out-of-State Defendants, the Weather Channel and the Weather Group, were engaged in a joint enterprise or joint venture, and were each other's agent, principle, employee and/or alter ego. [2]

"In Texas, a subsidiary corporation's contacts can be imputed to its parent corporation when the subsidiary 'is organized and operated as a mere tool or business conduit' of the parent." *Lloyd's Syndicate 457 v. Am. Glob. Mar. Inc., 346 F. Supp. 3d 908, 928 (S.D. Tex. 2018)* (quoting *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd., 260 S.W.3d 67, 85 (Tex. App.—Houston [1st. Dist.] 2008, no pet.))*. To succeed under an alter ego theory, "the plaintiff seeking to establish personal jurisdiction must show that the 'parent controls the internal business operations and affairs of the subsidiary.'' *Id,* (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 175 (Tex. 2007))*. Specifically, "[t]he evidence must show that 'the two entities cease to be separate so that **[*12]** the corporate fiction should be disregarded to prevent fraud or injustice.'" *Id.* (quoting *BMC Software Belg., N. V.. v. Marchand, 83 S.W.3d 789, 799 (Tex. 2002)*.[3] Accordingly, there must be a "plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family." *Id.* (quoting *PHC-Minden, 235 S.W.3d at 176*.).

Having reviewed Plaintiff's Second Amended Complaint and the arguments asserted, the Court is guided to conclude that Plaintiff has failed to plead factual allegations to support the Court's exercise of specific jurisdiction over the Out-of-State Defendants. Other than alleging that the Out-of-State Defendants allegedly hold a financial interest in the Weather Channel and provide certain managerial services to said Defendant, Plaintiff has failed to allege the existence of a plus factor, or something beyond the subsidiaries mere

---

[1] Plaintiff's Response solely addresses the Out-of-State Defendants' arguments relating to specific jurisdiction. *See* Doc. 102.

[2] Essentially, Plaintiff contends that the Out-of-State Defendants' corporate veil should be pierced so as to expose said Defendants to the Court's exercise of specific jurisdiction.

[3] *See Knight Corp. v. Knight, 367 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2012, no pet.)* ("[T]he parent and subsidiary can be merged for jurisdictional purposes only if the subsidiary is not maintained as a distinct corporate entity such that the separation between the parent and subsidiary is `pure fiction.' (quoting *Cannon Mfg. Co v. Cudahy Packing Co., 267 U.S. 333, 335, 45 S. Ct. 250, 69 L. Ed. 634 (1925)))*.

presence within the corporate infrastructure.[4] In addition, Plaintiff fails to plead specific factual allegations to plausibly suggest that the Out-of-State Defendants were directly or indirectly involved in any aspect of the vehicular accident forming the basis of this proceeding. Accordingly, the Court is of opinion that it lacks the authority to exercise specific jurisdiction over the Out-of-State Defendants and hereby **[*13]** ORDERS that the Out-of-State Defendants' Motion to Dismiss be **GRANTED**. [5]

### Jurisdictional Discovery

"For this [C]ourt to grant jurisdictional discovery, a plaintiff must make a preliminary showing of jurisdiction." *Monkey Boy Graphix, Inc. v. Anton Sport, Inc., 2008 U.S. Dist. LEXIS 129647, 2008 WL 11349966, at *7 (N.D. Tex. Aug. 20, 2008)*, *report and recommendation adopted*, *2008 U.S. Dist. LEXIS 129646, 2008 WL 11349845 (N.D. Tex. Sept. 17, 2008)* (citing *Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005))*. "The party seeking discovery must state what facts they believe discovery would uncover and how those facts would support personal jurisdiction." *Id.* (citing *Kelly v. Syria Shell Petroleum Dev. B. V.., 213 F.3d 841, 855 (5th Cir. 2000)*. "Discovery on matters of personal jurisdiction . need not be permitted unless the motion to dismiss raises issues of fact. When lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.* (citing *Wyatt v. Kaplan, 686 F.2d 276, 284 (5th Cir. 1982))*.

As the Out-of-State Defendants aver, Plaintiff's request to conduct jurisdictional discovery is lacking a basis in law. Specifically, the Court would agree with the Out-of-State Defendants' assertion that Plaintiff has failed to

articulate any nexus between said Defendants and the allegations of tortious conduct at issue. Furthermore, Plaintiff fails to identify any specific issue facts in dispute to warrant the relief requested. Rather, Plaintiff requests that she be permitted to conduct jurisdictional discovery concerning: (1) **[*14]** the production of documents related to the CF Defendants' acquisition of the Weather Channel, Weather Group, TV1 and TV2; and (2) to conduct depositions of individuals most knowledgeable relating to Bain, Blackstone and NBC's alleged role in the management and direction of the day-to-day operations of the Weather Channel. Based on the foregoing and having determined that personal jurisdiction is lacking, the Court hereby **ORDERS** that Plaintiff's request to conduct jurisdictional discovery be **DENIED**.

### IV. CONCLUSION

For the reasons set forth herein, the Court **ORDERS** that the Out-of-State Defendants' Motion to Dismiss be **GRANTED** pursuant to *Federal Rule of Civil Procedure 12(b)(2)*.[6] Accordingly, all claims asserted against the Out-of-State Defendants are hereby **DISMISSED** without prejudice.

SO ORDERED this 9th day of September, 2019.

/s/ Sam R Cummings

SAM R CUMMINGS

SENIOR UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[4] Simply stated, there are no allegations that the Out-of-State Defendants share a common headquarters with the subsidiary, share common directors with the subsidiary, pay the subsidiary's executives, provide the subsidiary insurance coverage, establish the subsidiary's financial budget, or establish the subsidiary's internal policies and procedures. *See PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 175-76 (Tex. 2007)*.

[5] Flaying determined that the Court lacks the authority to exercise both general and specific jurisdiction, the Court need not address the second prong of *Rule 12(b)(2)*'s framework— would the exercise of jurisdiction offend traditional notions of fair play and substantial justice?

[6] The Court need not reach a determination as to the arguments asserted pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.

APP 148

 Neutral
As of: November 8, 2023 2:31 PM Z

## *Dykes v. Maverick Motion Picture Group, L.L.C.*

United States District Court for the Middle District of Louisiana

September 17, 2009, Decided

AL CIVIL ACTION NO. 08-536-RET-DLD

**Reporter**
2009 U.S. Dist. LEXIS 85737 *; 2009 WL 3053738

JAY DYKES, JR., ET VERSUS MAVERICK MOTION PICTURE GROUP, L.L.C., ET AL

**Subsequent History:** Magistrate's recommendation at *Dykes v. Maverick Motion Picture Group, L.L.C., 2010 U.S. Dist. LEXIS 75436 (M.D. La., May 10, 2010)*

Motion granted by *Dykes v. Maverick Motion Picture Group, 2010 U.S. Dist. LEXIS 157933 (M.D. La., Sept. 8, 2010)*

## Core Terms

discovery, contacts, motion to dismiss, rec, questions, plaintiffs', discovery request, supplemental, memorandum, lack of personal jurisdiction, motion for a protective order, jurisdictional issue, seek information, defendants', format, personal jurisdiction, prima facie case, leave of court, motion picture, file a motion, briefing, narrowly, depose, refile

**Counsel:** [*1] For Jay Dykes, Jr., Dykes and Dykes, L.L.C., Plaintiffs: Joseph F. Lavigne, Jones, Walker-NO, New Orleans, LA; Robert L. Walsh, Thomas P. Hubert, Jones, Walker, New Orleans, LA.

For Guy Oseary, Defendant: Verne Thomas Clark, Jr., LEAD ATTORNEY, Adams and Reese, L.L.P. (Baton Rouge), Baton Rouge, LA; Allen B. Grodsky, PRO HAC VICE, Grodsky & Okecki, LLP, Santa Monica, CA; William David Shea, Adams & Reese - BR, Baton Rouge, LA.

For Madonna Louise Ciccone, also known as Madonna, Defendant: William David Shea, Adams & Reese - BR, Baton Rouge, LA.

**Judges:** MAGISTRATE JUDGE DOCIA L. DALBY.

**Opinion by:** DOCIA L. DALBY

## Opinion

### ORDER

This action arises out of a contractual dispute over money loaned by plaintiffs to defendants for the production and development of certain motion pictures. Plaintiffs filed suit for damages against Maverick Motion Picture Group, L.L.C. (MMPG), Maverick Films, L.L.C. (Maverick Films), Ironstar, L.L.C., Mark Morgan, Tara Pirnia, Austen Tayler, Guy Oseary, and Madonna Louise Ciccone. Oseary and Madonna filed motions to dismiss for lack of personal jurisdiction (rec. docs. 21 and 40). Additionally, in response to plaintiffs' discovery requests seeking primarily information concerning Madonna's and  [*2] Oseary's relationship with Maverick Films and MMPG, Madonna and Oseary filed motions for protective orders staying all discovery pending the outcome of the motions to dismiss (rec. doc. 39 and 41).

On March 12, 2009, the court held a telephone status conference to discuss the discovery sought by plaintiffs and whether the discovery was necessary pending the motions to dismiss (rec. doc. 47). The court ordered the plaintiffs to file briefs, describing with particularity the discovery they contend should be allowed, what facts they hope to obtain from that discovery, and how the discovery would produce information supporting either general or specific jurisdiction over either Madonna or Oseary. In plaintiffs' supplemental memorandum, they identify several questions that they believe would assist them in establishing a *prima facie* case of jurisdiction over Madonna and Oseary and in defending against the pending motions to dismiss. Madonna and Oseary's motions to dismiss and motions for protective orders are now before the court for review.

### Discussion

When a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction **[*3]** exists. *Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982)*. Plaintiffs may establish personal jurisdiction over the defendants by establishing a *prima facie* case of general or specific jurisdiction. Id. Where a defendant has "continuous and systematic general business contacts" with the forum state, the court may exercise "general" jurisdiction over any action brought against that defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)*. "Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id. at 414*. Specific jurisdiction requires the defendant to have purposefully directed his activities at the resident of the forum, and the litigation must result from the alleged injuries that arise out of or relate to these activities. *Coats v. Penrod Drilling Corp., 5 F.3d 877 (5th Cir.1993)* (citing *Burger King, 471 U.S. at 474*; *Aviles v. Kunkle, 978 F.2d 201 (5th Cir.1992)*.

The court has broad discretion in all discovery matters, and the decision not to permit discovery on a motion to dismiss for lack of personal jurisdiction **[*4]** is specifically one for the trial court's discretion. *Wyatt, 686 F.2d at 283*; see also *Fed. R. Civ. P. 26(b)(1)*.

Plaintiffs' discovery requests attached to defendants' motions for protective orders seek information about the merits of this case and are not specifically geared towards Madonna's or Oseary's contacts with Louisiana (rec. docs. 39-3 and 41-3). The discovery requests identified in plaintiffs' supplemental memorandum, however, are more narrowly tailored to seek information concerning Madonna's and Oseary's contacts with Louisiana. Since plaintiffs generally are allowed limited jurisdictional discovery to assist in their defense of a motion to dismiss based on lack of personal jurisdiction and the questions posed, are, for the most part, narrowly drawn, the court will allow plaintiffs to conduct limited discovery on jurisdictional issue as outlined in plaintiffs' supplemental memorandum, subject to those questions being further limited to Madonna's and Oseary's contacts with **Louisiana** (rec. doc. 50, pp. 7-9).

Specifically, with respect to questions 1-3 directed to both Madonna and Oseary, plaintiffs may seek information concerning Madonna's or Oseary's relationship with **Louisiana [*5]** companies, limited liability companies, partnerships, joint ventures, or any

other business enterprise and **Louisiana** tax returns. Question 9 directed to Madonna and question 4 directed to Oseary concerning the revenue or earnings they received from MMPG, Maverick Films, Maverick Records, L.L.C., and Maverick Television, L.L.C., are stricken. Questions 6 and 7 directed to Oseary are limited to **Louisiana** clients that Oseary may have represented from 1999 to present.

In asking these questions, plaintiffs may propound written discovery only, including requests for admissions, requests for production of documents, and interrogatories. At this time, plaintiffs have made no showing that depositions of Madonna or Oseary are necessary for purposes of jurisdiction. [1] Once the written discovery is complete, plaintiffs may seek leave of court to depose Madonna or Oseary on jurisdictional issues only upon a showing that the discovery sought could not be obtained in a written format and may reveal Madonna or Oseary's general or specific contacts with Louisiana.

Because plaintiffs have not had the opportunity to conduct limited written jurisdictional discovery and because discovery responses in these situations typically result in the necessity for supplemental briefing that either overlaps or contradicts earlier briefing, defendants' motions to dismiss are dismissed, without prejudice to defendants to refile once jurisdictional discovery is complete. Accordingly,

**IT IS ORDERED** that the motions for protective order (rec. docs. 39 and 41) are **GRANTED IN PART** and **DENIED IN PART** in that plaintiffs have **60 days or until November 18, 2009**, to conduct the jurisdictional discovery outlined in their supplemental memorandum and as further limited above. All discovery requests shall be in written format, after which, plaintiffs may seek leave of court to depose Madonna or Oseary on jurisdictional issues upon a showing that the discovery sought **[*7]** could not be obtained in a written format and may reveal Madonna or Oseary's general or specific contacts with Louisiana.

---

[1] Insofar as the merits are concerned, plaintiffs have a motion for default pending against the remaining, served defendants, so there is no **[*6]** need for merits' discovery relating to those defendants; and defendants Madonna and Oseary will be dismissed should they prevail on their jurisdictional arguments, so there is no need for merits' discovery relating to them (or by them about others) until and unless they actually lose their jurisdictional arguments.

2009 U.S. Dist. LEXIS 85737, *6

**IT IS FURTHER ORDERED** that the motions to dismiss (rec. docs. 21 and 40) are **DISMISSED**, without prejudice to defendants to refile after the completion of the limited jurisdictional discovery discussed above.

Signed in Baton Rouge, Louisiana, on September 17, 2009.

/s/ Docia L. Dalby

**MAGISTRATE JUDGE DOCIA L. DALBY**

---

**End of Document**


Cited
As of: November 8, 2023 2:30 PM Z

## *Eleva CityU.S. v. McLean*

United States District Court for the Eastern District of Texas, Sherman Division

August 3, 2022, Decided; August 3, 2022, Filed

CIVIL NO. 4:22-CV-047-SDJ

**Reporter**
2022 U.S. Dist. LEXIS 138071 *; 2022 WL 3107891

ELEVACITY U.S., LLC d/b/a THE HAPPY CO. f/k/a ELEPRENEURS U.S., LLC d/b/a ELEPRENEURS, LLC v. KIMBERLY MCLEAN

## Core Terms

discovery, distributors, personal jurisdiction, allegations, contacts, marketing, products, tortious

**Counsel:** **[*1]** For Elevacity U.S., LLC, doing business as The Happy Co., formerly known as Elepreneurs U.S., LLC, doing business as Elepreneurs, LLC, Plaintiff: Blake Thomas Dietrich, Jackson Walker LLP - Dallas, Dallas, TX; Michael Curtis Roberts, Jackson Walker LLP - Austin, Austin, TX; Janet Douvas Chafin, Jackson Walker LLP - Houston, Houston, TX.

For Kimberley McLean, Defendant: Chris Wellman, Scott W Wellman, Wellman and Warren, LLP, Laguna Hills, CA; Kristin Anne Regel, Regel PLLC, Dallas, TX.

**Judges:** SEAN D. JORDAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** SEAN D. JORDAN

## Opinion

### MEMORANDUM OPINION AND ORDER

Defendant Kimberly McLean has moved to dismiss this action for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*. (Dkt. #11). In its response, (Dkt. #14), Plaintiff Elevacity U.S., LLC d/b/a The Happy Co., f/k/a Elepreneurs U.S., LLC d/b/a Elepreneurs, LLC ("Elevacity") requests jurisdictional discovery if any doubt exists as to the Court's jurisdiction over McLean. Having considered the motion, the responsive briefing, and the relevant pleadings, the Court finds that Elevacity's request for jurisdictional

discovery should be **GRANTED**.

### I. BACKGROUND

This case arises out of the business relationship between Elevacity and McLean. Elevacity **[*2]** is a Texas-based company that sells and markets health and wellness products and services through a network of independent contractors, or distributors. The distributors also recruit additional individuals to market and sell the products.

McLean is a Florida resident who is a former Elevacity distributor. One of the contracts that allegedly governed McLean's work for Elevacity provides that distributors are prohibited, while they are distributors for Elevacity and for twelve months afterward, from recruiting any other Elevacity distributor for any other direct selling or network marketing business. "Recruit" includes posting or messaging information about such a company on a social media site that the distributor has also used to promote their Elevacity business and tagging other Elevacity distributors in such posts, among other acts. (Dkt. #4-6 ¶ 12). During the same term, distributors may not use such social media accounts in any way that may "reasonably be foreseen" to draw inquiries from other Elevacity distributors about other direct selling or network marketing businesses or products. (Dkt. #4-7 ¶ 15). Elevacity's lawsuit against McLean is premised on these contractual terms.

 **[*3]** McLean used her Facebook page to conduct her business as an Elevacity distributor, including marketing its products and recruiting additional distributors. After resigning from Elevacity in December 2021, McLean allegedly took to Facebook to market and promote different, non-Elevacity products and to interact with former Elevacity distributors about the new products. As a result of these actions, Elevacity brings claims against McLean for breach of contract and tortious interference with existing contracts. Both causes of action arise from

the same alleged fact: McLean allegedly posted impermissible content on Facebook.

In its complaint, Elevacity asserts that this Court has personal jurisdiction over McLean because: (1) McLean entered into contracts with Elevacity, a Texas company, and interfered with Elevacity's business contacts in Texas and (2) McLean's allegedly tortious conduct was specifically directed towards Texas. McLean disagrees and moves to dismiss the action for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*. (Dkt. #11). Elevacity responded in opposition, requesting jurisdictional discovery in the event there is any doubt as to the Court's jurisdiction over McLean. (Dkt. #14). The **[*4]** Court will grant Elevacity's request for jurisdictional discovery and orders further briefing on the question of personal jurisdiction.

## II. Legal Standard

District courts have broad discretion regarding whether to permit a party to conduct jurisdictional discovery. *See Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982)* (citations omitted). To merit jurisdictional discovery, Elevacity "must show that it is likely to produce the facts needed to withstand dismissal," and it must identify the "specific facts" it expects discovery to find. *Johnson v. TheHuffingtonPost.com, Inc., 21 F.4th 314, 326 (5th Cir. 2021)* (quotation omitted); *see also Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC, No. 4:11-CV-629-A, 2012 U.S. Dist. LEXIS 4192, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012)* (explaining that, when seeking jurisdictional discovery, a plaintiff "is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction" (citing *Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000)*)).

## III. Discussion

Elevacity argues that it has made a preliminary showing of jurisdiction and that the discovery it seeks will produce information that is relevant to the personal jurisdiction issue. (Dkt. #14 at 17-18). In response, McLean argues that Elevacity's request for jurisdictional discovery should be denied because Elevacity cannot establish a tortious-interference claim, **[*5]** which she notes is further detailed in her pending *Rule 12(b)(6)* motion to dismiss the tortious-interference claim for failure to state a claim. (Dkt. #16 at 10). She further

explains that "[i]n the event the claim is dismissed, jurisdictional discovery relating to its merits are irrelevant to this action." (Dkt. #16 at 10).

McLean's argument misses the mark. Whether the Court has personal jurisdiction is a threshold question and requires that the Court "reach the [jurisdictional] claims before reaching claims on the merits." *Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 232 (5th Cir. 2012)* (citing *Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)*). The Court must therefore determine whether it has personal jurisdiction before addressing the question whether Elevacity has stated a claim for tortious interference, regardless of whether some of the discovery produced at this stage later becomes irrelevant through dismissal. Further, because claim-specific jurisdiction is at issue, jurisdictional discovery may yield information that is relevant to the merits of the case. *Morris Bart, LLC v. Slocumb L. Firm, LLC, No. CV 21-1771, 2022 U.S. Dist. LEXIS 122513, 2022 WL 2704463, at *3-4 (E.D. La. July 12, 2022)* (allowing jurisdictional discovery that "may include discovery touching on the merits").[1]

After reviewing the pleadings and briefing, the Court determines that Elevacity is entitled to jurisdictional discovery. Elevacity alleges that McLean **[*6]** has sufficient contacts with Texas because McLean "knew or should have known that the contracts with which [she] interfered have substantial connections to Texas, the damage caused in Texas was significant, and that [McLean] has thus purposefully directed tortious conduct towards Texas." (Dkt. #14 at 17). Elevacity further points to McLean's Facebook postings as evidence of activity directed toward Texas. (Dkt. #14 at 18). Considering the allegations above, Elevacity's assertion that McLean has sufficient contacts with the State of Texas is a "preliminary showing of jurisdiction," such that its jurisdictional allegations can be supplemented through and resolved following discovery. *See Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)* (citing *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)*, for the

---

[1] McLean further argues that jurisdictional discovery is improper because Elevacity did not specify that it seeks discovery to determine whether McLean met with distributors in Texas to induce them to breach their respective agreements with Elevacity. (Dkt. #16 at 10). Elevacity, however, would not necessarily have to show that McLean met with distributors in Texas to establish personal jurisdiction for its tortious-interference claim.

proposition that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained").

To establish specific jurisdiction, Elevacity must show, among other conditions, that its claim arises out of or relates to McLean's ties to Texas that McLean herself forged. *See Johnson, 21 F.4th at 317-18* (citations omitted). Therefore, Elevacity must establish that McLean's **[*7]** Texas ties connect to Elevacity's claims—otherwise, "they cannot sustain [the Court's] power to hear [them]." *Id. at 318-19* (explaining the standard for claim-specific jurisdiction and discussing the Fifth Circuit's approach to specific jurisdiction in "cases in which a defendant's website is the claimed basis for specific jurisdiction").

Elevacity has shown that its requested discovery is likely to produce facts that are needed to withstand McLean's dismissal motion by demonstrating the requisite contacts with the State of Texas. Elevacity represents that it is seeking facts that will include:

> (i) communications between Defendant and other Distributors, whether current or former, regarding recruitment, business opportunities, marketing of said opportunities, and any non-solicitation obligations between such employees and Plaintiff; (ii) Defendant's knowledge of the locations of Plaintiff's Distributors; (iii) Defendant's knowledge of the extent she knew Texas-based Distributors had access to her Facebook; and (iv) Defendant's plans or attempts to expand her reach by partnering with individuals in Texas, including Texas-based Distributors and those Distributors' adherence to their non-solicitation **[*8]** obligations.

(Dkt. #14 at 18). According to Elevacity, "[t]his discovery would support Plaintiff's contention that Defendant knew that Plaintiff, a Texas-based company, and its distributor relationship, as well as any resulting harm, were substantially connected to Texas; and thus, whether Defendant purposefully directed tortious conduct at Texas by improperly interfering with those relationships." (Dkt. #14 at 18). Considering the allegations in this case, the Court concludes that this information is relevant to resolving McLean's motion to dismiss. *See Elevacity U.S., LLC v. Schweda, No. 4:22-CV-042, 2022 U.S. Dist. LEXIS 115187, 2022 WL 2345741, at *2 (E.D. Tex. June 29, 2022)* (granting jurisdictional discovery in a legally and factually similar case with similar jurisdictional pleadings to those in the case at bar).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Elevacity's request for jurisdictional discovery is **GRANTED**.

Accordingly, it is **ORDERED** that Elevacity may conduct jurisdictional discovery regarding McLean's contacts with Texas from today's date until **September 14, 2022**. Elevacity shall file a supplemental brief regarding the Court's personal jurisdiction over McLean by **October 5, 2022**. McLean shall file a supplemental brief to respond **[*9]** to Elevacity's jurisdictional allegations by **October 19, 2022**.

It is further **ORDERED** that all discovery except for initial disclosures and jurisdictional discovery is **STAYED** pending further order of the Court. The Court will enter a scheduling order as needed once the question of personal jurisdiction is resolved.

**So ORDERED and SIGNED this 3rd day of August, 2022.**

/s/ Sean D. Jordan

SEAN D. JORDAN

UNITED STATES DISTRICT JUDGE

---

**End of Document**



Cited
As of: November 8, 2023 2:52 PM Z

## *Gearbox Software, LLC v. Apogee Software, Ltd.*

United States District Court for the Northern District of Texas, Dallas Division

July 8, 2014, Decided; July 8, 2014, Filed

No. 3:14-cv-710-L

**Reporter**
2014 U.S. Dist. LEXIS 92620 *; 2014 WL 3109868

GEARBOX SOFTWARE, LLC, Plaintiff, v. APOGEE SOFTWARE, LTD. and INTERCEPTOR ENTERTAINMENT, ApS, Defendants.

## Core Terms

deposition, discovery, corporate representative, principal place of business, deposed, overcome a presumption, protective order

**Counsel:** **[*1]** For Gearbox Software LLC, Plaintiff, Counter Defendant: Michael E Schonberg, LEAD ATTORNEY, Megan Dredla Hoyt, William Mayer Katz , Jr, Thompson & Knight LLP, Dallas, TX.

For Apogee Software Ltd, doing business as 3D Realms Entertainment, Interceptor Entertainment ApS, Defendants: George R Schultz, LEAD ATTORNEY, Nicole Risher Marsh, Schultz & Associates, Dallas, TX.

For Apogee Software Ltd, Counter Claimant: George R Schultz, LEAD ATTORNEY, Nicole Risher Marsh, Schultz & Associates, Dallas, TX.

**Judges:** DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DAVID L. HORAN

## Opinion

### MEMORANDUM OPINION AND ORDER

Defendant Interceptor Entertainment, ApS ("Interceptor") filed a Motion For Protective Order requesting the Court quash the deposition notices of Interceptor and its president, Frederik Schreiber, and enter a protective order requiring that the depositions take place in Aalborg, Denmark. *See* Dkt. No. 26. United States District Judge Sam A. Lindsay referred the motion to the undersigned magistrate judge for hearing, if necessary, and determination. Dkt. No. 27. Plaintiff Gearbox Software, LLC ("Gearbox") filed a response on July 7, 2014 [Dkt. No. 29], and Interceptor filed a reply brief on July 8, 2014 [Dkt. **[*2]** No. 30]. For the reasons explained below, Interceptor's motion for protective order [Dkt. No. 26] is GRANTED.

### Background

On May 6, 2014, Interceptor filed a motion to dismiss for lack of personal jurisdiction. *See* Dkt. No. 14. Plaintiff filed an unopposed motion seeking limited discovery of jurisdictional issues, which Judge Lindsay granted on May 15, 2014. *See* Dkt. Nos. 17 & 18.

Gearbox then served deposition notices for Schreiber and Interceptor for July 10 and July 11, 2014 at the offices of Gearbox's counsel in Dallas, Texas. *See* Dkt. No. 26-1 at 7-14. In response, Interceptor filed this request for a *Federal Rule of Civil Procedure 26(c)* protective order to require that the depositions take place in person or by Skype from Aalborg, Denmark, Interceptor's principal place of business.

### Legal Standards

Under *Rule 26(c)*, the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c)(1). The Court has broad discretion to determine the appropriate place for examination. *See Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp., 147 F.R.D. 125, 127 (N.D. Tex. 1992)*. "The deposition of **[*3]** a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when ... the corporation is the defendant." *Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)* (citation and internal quotation marks omitted); *see also Resolution Trust Corp., 147 F.R.D. at*

127. This presumption is based on the concept that it is the plaintiff who brings the lawsuit and who exercises the first choice as to the forum. *See Tailift USA, Inc. v. Tailift Co., Ltd., No. 3:03-cv-196-M, 2004 U.S. Dist. LEXIS 28648, 2004 WL 722244, at \*1 (N.D. Tex. Mar. 26, 2004)*. Courts have determined that this presumption satisfies the *Rule 26(c)* requirement of good cause. *See id.* (citing cases).

"A party may overcome the presumption, however, by showing that peculiar circumstances justify conducting the deposition at a location other than the corporation's principal place of business." *2004 U.S. Dist. LEXIS 28648, [WL] at \*2* (citing *Salter, 593 F.2d at 652*). In *Resolution Trust Corp.*, the Court enumerated five factors for the Court to consider when determining whether sufficient circumstances are shown to overcome the presumption: "1. counsel for the parties being located in the forum district; 2. plaintiff seeking to depose only **[\*4]** one corporate representative; 3. defendant choosing a corporate representative that resides outside the location of the principal place of business and the forum district; 4. significant discovery disputes that may arise and the anticipated necessity of the resolution by the forum court; and 5. the claim's nature and the parties' relationship such that 'an appropriate adjustment of the equities favors a deposition site in the forum district.'" *Resolution Trust Corp., 147 F.R.D. at 127* (quoting *Turner v. Prudential Ins. Co., 119 F.R.D. 381, 383-84 (M.D.N.C. 1988))*. The Court concluded that it "must ultimately consider each case on its own facts and the equities of the particular situation." *Id.*

**Analysis**

The Court determines that Gearbox has failed to overcome the presumption that Interceptor's corporate representatives, including Frederik Schreiber, should be deposed at its principal place of business in, or by Skype from, Aalborg, Denmark. Although all counsel of record are located in Dallas, "'the convenience of counsel is less compelling than any hardship to the witnesses.'" *Tailift, 2004 U.S. Dist. LEXIS 28648, 2004 WL 722244, at \*2* (quoting *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 108 (S.D.N.Y. 2001))*. **[\*5]** Plaintiff seeks to depose more than one corporate representative, *see* Dkt. No. 26-1 at 7-14, and each of Interceptor's five employees — including all corporate representatives — reside in Denmark, *id.* at 24-25. Although Gearbox urges that significant discovery disputes "may arise," Dkt. No. 29 at

9-10, there have been no previous discovery disputes presented to the Court in this case, and "'the mere possibility of such disputes does not necessarily weigh in favor of conducting the deposition here.'" *Tailift, 2004 U.S. Dist. LEXIS 28648, 2004 WL 722244, at \*3* (citing *Rapoca Energy Co. v. Amci Export Corp., 199 F.R.D. 191, 193 (W.D. Va. 2001))*. Moreover, the nature of the discovery sought — which involves personal jurisdiction over Interceptor — suggests that Denmark is an appropriate forum for the deposition to take place.

Gearbox contends that peculiar circumstances justify deposing the witnesses in Dallas, since Interceptor and its president have significant contacts with Dallas and Danish law may impede the taking of depositions in Denmark and impose "hurdles ... foreclos[ing] cheaper alternatives that may exist." Dkt. No. 29 at 5-7, 12. The Court does not agree that Schreiber's contacts to Dallas, as set forth **[\*6]** by Gearbox and Interceptor, constitute peculiar or special circumstances that justify departure from the normal rule that the party seeking discovery must go where the desired witnesses are located. Even accepting Gearbox's contentions as true, the fact that a corporate representative has traveled to Dallas once per year since 2011 and has "contracted with companies or individuals in the State of Texas at least four times in the past two years," *Id.* at 6, does not establish a special circumstance that justifies conducting the deposition at a location other than the corporation's principal place of business. *See Tailift, 2004 U.S. Dist. LEXIS 28648, 2004 WL 722244, at \*3* ("[T]he fact that [the deponent] has traveled to the United States only seven times since 1998, and only for a few days each time, hardly presents a frequency of presence in the United States that weighs in favor of overcoming the presumption.")

The Court also does not believe that Gearbox's concerns about the effect of Danish law justify subjecting Interceptor and its president to the expense and disruption of traveling to Dallas for a deposition. The State Department Advisory provided by Gearbox, which reports that "[v]oluntary witnesses deposed **[\*7]** outside Danish courtrooms cannot be prosecuted under Danish law for perjury" and "[t]elephone depositions are not permitted" under Danish law, *see* Dkt. No. 29-1 at 12, does not establish that Danish law will hamper these depositions from taking place in Denmark or by Skype. Interceptor has represented that the deposition may indeed occur in Denmark or by Skype from Denmark, that Schreiber and another corporate representative will appear voluntarily, and that depositions by phone are legal and binding in Denmark.

2014 U.S. Dist. LEXIS 92620, *7

*See* Dkt. No. 30 at 2-3; Dkt. 30-1 at 29-35. If Interceptor changes its position on this point, or the Danish laws present impediments to obtaining discovery under *Federal Rule of Civil Procedure 28(b)*, Gearbox may return to this Court for redress. *See United States v. One Gulfstream G-V Jet Aircraft Displaying Tail Number VPCES, Its Tools & Appurtenances, No. 11-01874(RC), ___ F.R.D. ___, 2014 U.S. Dist. LEXIS 64158, 2014 WL 1871342, at * 6 (D.D.C. May 9, 2014)*.

And this Court, not Danish law, determines whether evidence taken in discovery is admissible, and this Court retains the power to order a litigant from whom discovery is sought, and who is subject to *in personam* jurisdiction, to produce evidence **[*8]** on pain of sanctions. *See Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct., 482 U.S. 522, 539-40, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987)* (holding the Hague Convention did not deprive the district court of the jurisdiction that it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation).

The Court therefore finds that Gearbox has failed to overcome the presumption that Interceptor's corporate representatives should be deposed at its principal place of business in Aalborg, Denmark or by Skype from Denmark. The Court finds that the notices of deposition in Dallas subject Interceptor to "annoyance, embarrassment, oppression, or undue burden or expense" under *Rule 26(c)(1)* and should be quashed.

**Conclusion**

The Court GRANTS Interceptor's Motions For Protective Order [Dkt. No. 26] and QUASHES the deposition notices of Interceptor and its president, Frederik Schreiber.

SO ORDERED.

DATED: July 8, 2014

/s/ David L. Horan

DAVID L. HORAN

UNITED STATES MAGISTRATE JUDGE

 Positive
As of: November 8, 2023 2:27 PM Z

## *Giddy Holdings, Inc. v. Ideas, Inc.*

United States District Court for the Western District of Texas, Austin Division

April 20, 2023, Decided; April 20, 2023, Filed

CIVIL NO. 1:22-CV-00904-LY

**Reporter**
2023 U.S. Dist. LEXIS 68965 *; 2023 WL 3029270

GIDDY HOLDINGS, INC., Plaintiff v. IDEAS, INC. f/k/a INTEGRATED DESIGN ENGINEERING AND ANALYSIS SERVICES, INC., Defendant

**Subsequent History:** Adopted by *Giddy Holdings, Inc. v. Ideas, Inc., 2023 U.S. Dist. LEXIS 107820 (W.D. Tex., June 22, 2023)*

## Core Terms

personal jurisdiction, Molds, forum state, minimum contact, district court, Recommendation, nonresident, parties, Manufacturer, resident, lack of personal jurisdiction, conversion, Packs

**Counsel:** **[*1]** For Giddy Holdings, Inc., Plaintiff: Justin Douglas Stevenson, Bower Stevenson LLC, Cleveland, OH.

For IDEAS, Inc. f/k/a Integrated Design Engineering and Analysis Services, Inc., Defendant: Manasi Rodgers, LEAD ATTORNEY, Ryan M. Pierce, Reeves & Brightwell LLP, Austin, TX.

For IDEAS, Inc. f/k/a Integrated Design Engineering and Analysis Services, Inc., Counter Plaintiff: Manasi Rodgers, LEAD ATTORNEY, Ryan M. Pierce, Reeves & Brightwell LLP, Austin, TX.

**Judges:** SUSAN HIGHTOWER, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** SUSAN HIGHTOWER

## Opinion

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**

**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* or, Alternatively, Motion to Transfer, filed October 31, 2022 (Dkt. 15); Plaintiff's Brief in Opposition to Defendant's Motion to Transfer Venue, filed November 14, 2022 (Dkt. 16); and Defendant's Reply in Support of Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* or, Alternatively, Motion to Transfer, filed November 21, 2022 (Dkt. 17). The District Court referred the motion to this Magistrate Judge for Report and Recommendation, **[*2]** pursuant to *28 U.S.C. § 636(b)(1)(B)*, *Federal Rule of Civil Procedure 72*, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Dkt. 18.

### I. Background

Plaintiff Giddy Holdings, Inc. develops and sells medical devices used to treat erectile dysfunction. Dkt. 1-1 (Plaintiff's Original Petition) ¶¶ 2, 6. Defendant IDEAS, Inc., formerly known as Integrated Design Engineering and Analysis Services, Inc., designs and sells plastics. Dkt. 1-1 ¶ 3.

Giddy hired IDEAS in June 2019 to make one of its erectile dysfunction devices ("Giddy Device"). IDEAS designed and made a series of molds ("Molds") to create the Giddy Device, which would be sold in packs called "Giddy Packs." *Id.* ¶ 7. IDEAS then hired a subcontractor in China to manufacture the Molds. Dkt. 1-1 ¶ 8. The Molds "are complicated pieces of the manufacturing process, and are comprised of approximately 20 steel plates and 400 total components," each weighing about a thousand pounds. *Id.* ¶ 9. Giddy alleges that it is "the lawful owner of all right, title, and interest in and to the molds." *Id.* ¶ 10.

After a few months, a dispute arose between the parties "regarding the production of the Giddy Packs and the required payment from Giddy." *Id.* ¶ 11. IDEAS contends that it stopped shipping the Giddy Packs because Giddy failed to complete all payments **[*3]** under the parties' contract. The parties then entered into an "Inventory Purchase and Settlement Agreement" in which Giddy agreed to purchase 154,272 Giddy Packs from IDEAS for $468,868.77. Dkt. 15-1 at 6. The Agreement provides, in relevant part:

> **8.9. Applicable Law**. All disputes arising under this Agreement shall be governed by and interpreted in accordance with the laws of Ohio, without regard to principles of conflict of laws. The Parties to this Agreement will submit all disputes arising under this Agreement to court in Stark County, Ohio. No Party to this Agreement will challenge the jurisdiction or venue provisions as provided in this section.
> * * *
>
> **8.12. Molds**. The Parties Acknowledge that the molds in the possession of Contract Manufacture's factory in China, which consists of a 4 cavity family mold for the Giddy erectile dysfunction devise with one cavity of each of 4 sizes, is the property of Giddy, so long as Giddy's account is in good standing with all invoices paid in full, and Contract Manufacturer has no rights and/or claims to the aforementioned molds. Contract Manufacturer claims an artisan lien on the molds until all of Giddy's account with Contract Manufacturer is **[*4]** paid in full and current.

*Id.* at 10-11.

IDEAS contends that Giddy breached the Agreement within weeks by failing to fully fund its purchase orders. Dkt. 15 at 3. IDEAS sued in Ohio state court, alleging that Giddy breached the Agreement. *Id.* Giddy removed the action to the Northern District of Ohio and counterclaimed for breach of contract and conversion. *Integrated Design Eng'g & Analysis Servs. Inc. v. Giddy Holdings, Inc., No. 5:20-cv-00563-JG, 2020 U.S. Dist. LEXIS 159003*, Dkt. 15.[1] The parties filed cross-motions for summary judgment.

The District Court for the Northern District of Ohio granted summary judgment in part. *Id.* at Dkt. 70. The

court held that (1) Giddy breached the Agreement without legal excuse, (2) IDEAS did not breach the Agreement, and (3) IDEAS was not liable for conversion because it had a valid lien on the Molds. *Id.* A trial was held to determine the remaining damages, and the jury awarded IDEAS $85,600. *Id.* at Dkt. 109. The district court entered final judgment awarding IDEAS $125,600 in damages on April 14, 2021. *Id.* at Dkt. 111. Giddy appealed to the Sixth Circuit, which affirmed on March 24, 2022. *Id.* at Dkt. 112.

On July 11, 2022, Giddy filed this lawsuit in Texas state court, asserting claims for replevin and detinue, as well as conversion. *Giddy Holdings, Inc. v. IDEAS, Inc.*, No. D-1-GN-22-003136 (419th Dist. Ct., Travis Cnty. Tex., July 11, 2022), Dkt. 1-1. Giddy alleges that "Defendant **[*5]** has and continues to unlawfully exercise dominion and control over the molds by failing to return them to Giddy after the expiration of Defendant's lien over the molds, to the unlawful exclusion of Giddy's rights as the owner of the molds." *Id.* ¶ 26.

IDEAS removed to this Court on September 8, 2022 and filed an Answer and Counterclaim on September 15, 2022. Dkt. 1, 7. IDEAS asserts affirmative defenses of res judicata, lack of personal jurisdiction, improper venue, and material breach by Giddy, and a counterclaim under *Ohio Revised Code 2323.51(B)(1)* that Giddy engaged in "frivolous conduct" by filing this suit because it already litigated these claims in Ohio.

IDEAS now moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. In the alternative, IDEAS argues that the case should be (1) dismissed for *forum non conveniens* because a forum selection clause in the Agreement requires the case to be litigated in Ohio state court, or (2) transferred to the Northern District of Ohio under *28 U.S.C. § 1404(a)*.

## II. Legal Standards

A court must resolve threshold jurisdictional issues before determining the merits of a case. *Pervasive Software Inc. v. Lexware GmbH & Co., 688 F.3d 214, 231-32 (5th Cir. 2012)*. "Personal jurisdiction, like subject matter jurisdiction, is an essential element of the jurisdiction of a district court, **[*6]** without which the court is powerless to proceed to an adjudication." *Id. at 231* (quoting *Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999)*) (cleaned up).

---

[1] The Court may take judicial notice of the case docket as a matter of public record. *In re Deepwater Horizon, 934 F.3d 434, 440 (5th Cir. 2019)*.

Under Rule 12(b)(2), a court must dismiss a claim if it lacks personal jurisdiction over the defendant. The plaintiff has the burden to establish specific jurisdiction for each claim asserted. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C., 24 F.4th 491, 495 (5th Cir. 2022)*; *Patterson v. Aker Sols. Inc., 826 F.3d 231, 233 (5th Cir. 2016)*. If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Id.*

> The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion. Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for personal jurisdiction has been presented.

*Sangha v. Navig8 ShipManagement Priv. Ltd., 882 F.3d 96, 101 (5th Cir. 2018)* (cleaned up).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the *Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. Sangha, 882 F.3d at 101.* Because **[*7]** the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Id.* For personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)*.

A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha, 882 F.3d at 101.* A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)* (quoting *Int'l Shoe, 326 U.S. at 317*). Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise **[*8]** out of or relate to those activities." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co., 921 F.3d 522, 539 (5th Cir. 2019)* (citation omitted).

Here, the Court's analysis begins and ends with the determination that it lacks personal jurisdiction over Defendants.

### III. Analysis

Giddy, a Delaware corporation with its principal place of business in Travis County, Texas, filed this suit in Travis County against IDEAS, an Ohio corporation with its principal place of business in North Canton, Ohio. While Giddy concedes that general jurisdiction does not exist, the parties dispute whether the Court may exercise specific personal jurisdiction over IDEAS.

Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014).* For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Id.* The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

> 1. whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;
>
> 2. whether the plaintiff's cause of action arises out **[*9]** of or results from the defendant's forum-related contacts; and
>
> 3. whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc., 924 F.3d 190, 193 (5th Cir. 2019).* If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

The first factor requires Giddy to show that IDEAS had sufficient minimum contacts with the State of Texas. For

there to be minimum contacts to confer specific jurisdiction,

a defendant must have "purposefully availed himself of the benefits and protections of the forum state" "such that he should reasonably anticipate being haled into court there." That requirement is the "constitutional touchstone" of personal jurisdiction, and ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.

Id. (footnotes omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), and Moncrief Oil Int'l Inc. v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007)).

It is well-established that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." Freudensprung v. Offshore Tech. Servs., Inc., 379 F.3d 327, 344 (5th Cir. 2004) (quoting Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986)). The Fifth Circuit has

repeatedly held that the combination of mailing payments to the forum state, engaging in communications [*10] related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

Id.

The parties' contract centered around IDEAS' operations outside Texas. It is undisputed that IDEAS, an Ohio corporation, has no offices, bank accounts, or employees in Texas. Giddy admits that it is the one that sought out the contractual relationship with IDEAS. See Dkt. 16 at 2; see also Jacobson Aff. ¶¶ 7-8, Dkt. 16 at 22 (stating that another company referred IDEAS to Giddy). IDEAS designed the Molds outside Texas, and the Molds were manufactured by a subcontractor in China. Giddy argues that IDEAS "quickly began regular and continuous contact with Giddy in Texas" and sent physical samples to its offices in Texas, Dkt. 16 at 7-8, but the communications between the parties all relate to performance of the contract and connect IDEAS to Texas only by the "mere fortuity" that Giddy is a Texas resident.[2] See McFadin v. Gerber, 587 F.3d 753, 760-

61 (5th Cir. 2009) (holding that sustained contractual relationship between Texas resident plaintiff [*11] and nonresident defendant did not establish minimum contacts where Texas was not the "hub" of the parties' activities); Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986) (finding that exchange of communications between Texas and Oklahoma could not constitute purposeful availment of Texas law where communications to Texas rested only on the "mere fortuity" that plaintiff was a resident of the forum). The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a "mere fortuity." Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir. 1985).

Giddy also argues that when a nonresident defendant commits "an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts." Dkt. 16 at 7 (quoting McFadin, 587 F.3d at 761). The "effects theory" is inapplicable because "the wrongful exercise of dominion and control over another's property must occur in the forum state." Libersat v. Sundance Energy, Inc., 978 F.3d 315, 323 (5th Cir. 2020); see also PervasiveSoftware, 688 F.3d at 229 (holding that defendant was not subject to personal jurisdiction where tort of conversion did not occur "in whole or in part" in Texas). In its claims for replevin and detinue and conversion, Giddy asserts that IDEAS is unlawfully detaining its Molds. Because neither IDEAS nor the Molds have ever been located [*12] in Texas, the alleged unlawful detention did not occur in whole or in part in Texas. See Pervasive Software, 688 F.3d at 229. That Giddy, a Texas resident, was injured here "cannot add anything" to the minimum contact analysis. Libersat, 978 F.3d at 323.

The Court finds that Giddy has not shown that IDEAS has sufficient minimum contacts with Texas to confer personal jurisdiction. Given this finding, the Court need not consider the remaining specific jurisdiction factors. Moncrief Oil, 481 F.3d at 315.

---

[2] Giddy's CEO, Brett Jacobson, avers that "IDEAS, through

and with Giddy, also collaborated on several occasions with a Texas law firm to ensure that the [Giddy device] complied with necessary laws, as well as several mold designers based in Texas to design the molds." Jacobson Aff. ¶¶ 11-12, Dkt. 16 at 22. But there is no suggestion that these contacts were initiated by IDEAS such that IDEAS can be said to have purposefully availed itself of the forum state.

2023 U.S. Dist. LEXIS 68965, *12

**IV. Recommendation**

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens* or, Alternatively, Motion to Transfer (Dkt. 15).

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

**V. Warnings**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987)*. A party's failure to file written objections to the proposed findings and recommendations contained in this Report **[\*13]** within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 150-53, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996)* (en banc).

**SIGNED** on April 20, 2023.

/s/ Susan Hightower

SUSAN HIGHTOWER

UNITED STATES MAGISTRATE JUDGE

**End of Document**

 Neutral

As of: November 8, 2023 2:30 PM Z

## *Hartsfield v. New Bern Transp. Corp.*

United States District Court for the Eastern District of Texas, Marshall Division

September 15, 2020, Decided; September 15, 2020, Filed

CIVIL ACTION NO. 2:19-CV-00379-JRG

**Reporter**

2020 U.S. Dist. LEXIS 204246 *

CRYSTAL HARTSFIELD; DAVID HARTSFIELD; CADIE HARTSFIELD; AND KEVON HARTSFIELD, INDVIDUALLY AND AS HEIR OF THE ESTATE OF KENDRICK HARTSFIELD, DECEASED; Plaintiffs, v. NEW BERN TRANSPORT CORPORATION, LEGGETT & PLATT, INC., MORGAN OLSON, DAIMLER AG, MERCEDES-BENZ VANS, LLC, DAIMLER VANS USA LLC, GRAYHAWK LEASING, LLC, MASTERACK, LLC, Defendants.

**Prior History:** *Hartsfield v. New Bern Transp. Corp., 2020 U.S. Dist. LEXIS 203425 (E.D. Tex., May 7, 2020)*

## Core Terms

Van, discovery, reconsideration motion, parties, lack of personal jurisdiction, personal jurisdiction, jurisdictional issue, dealer, supplemental briefing, pending resolution, further order, reconsider, targeted, VACATED

**Counsel:** **[*1]** For Crystal Hartsfield, Individually and as Heir of the Estate of Kendrick Hartsfield, Deceased, David Hartsfield, Individually and as Heir of the Estate of Kendrick Hartsfield, Deceased, Cadie Hartsfield, Individually and as Heir of the Estate of Kendrick Hartsfield, Deceased, Kevon Hartsfield, Individually and as Heir of the Estate of Kendrick Hartsfield, Deceased, Plaintiffs: Christopher Patrick Peirce, Margaret Claire Pennell, Matthew Lynn Montgomery, Jeffrey Todd Embry, Hossley & Embry LLP - Tyler, Tyler, TX USA.

For New Bern Transport Corporation, Grayhawk Leasing, Llc, Defendants, Cross Claimants, Cross Defendants: Dennis S Dresden, LEAD ATTORNEY, Benckenstein, Norvell & Nathan, LLP - Houston, Houston, TX USA.

For Leggett & Platt, Inc., Defendant, Cross Defendant: Mark Steven Scudder, LEAD ATTORNEY, Quilling Selander Lownds Winslett & Moser, Dallas, TX USA.

For Morgan Olson, Masterack, Llc, Defendants, Cross

Defendants, Cross Claimants: Deron R Dacus, Shannon Marie Dacus, The Dacus Firm, PC, Tyler, TX USA; Jason J. Sweet, Reger Rizzo & Darnall LLP, Philadelphia, PA USA.

For Mercedes-Benz Vans, Llc, Daimler Vans USA Llc, Defendants, Cross Defendants: David McDonald Prichard, LEAD ATTORNEY, **[*2]** Prichard Hawkins & Young - San Antonio, San Antonio, TX USA.

**Judges:** RODNEY GILSTRAP, UNITED STATES DISTRICT JUDGE.

**Opinion by:** RODNEY GILSTRAP

## Opinion

### ORDER

Before the Court is Plaintiffs' Motion to Reconsider Order Granting Daimler Vans USA, LLC's and Mercedes-Benz Vans LLC's *Rule 12(b)(2)* Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion to Reconsider"). (Dkt. No. 129). In the Motion to Reconsider, Plaintiffs ask the Court to reconsider its Order dated May 8, 2020 (the "May Order"), which dismissed without prejudice Defendants Daimler Vans USA, LLC ("DVUSA") and Mercedes-Benz Vans LLC ("MBV") (collectively, the "Daimler Defendants") for lack of personal jurisdiction under *Federal Rule of Civil Procedure 12(b)(2)*. (Dkt. No. 123). The Court has considered the parties' submissions on the Motion to Reconsider (Dkt. Nos. 129, 130), as well as the supplemental briefing ordered by the Court (Dkt. No. 135) and submitted by the parties (Dkt. Nos. 138, 139, 140, 144, 151, 159), as well as the oral arguments of the parties presented at the hearing held on September 9, 2020.

This is a products liability case concerning a certain

2013 Freightliner Sprinter van (the "Subject Van"). The Subject Van originated in Ladson, South Carolina at the Daimler Defendants' plant. **[*3]** The Subject Van was wholesaled to an independent dealer in Kansas City, Missouri, who retailed it to Defendant New Bern Transport Corporation ("New Bern") in Tyler, Texas. When the Court issued its May Order, the parties and the Court assumed that the Subject Van was first delivered to the dealer in Missouri, and then delivered from the Missouri dealer to New Bern in Texas. (Dkt. No. 123, at 11-12). However, subsequent to the May Order, new evidence has come to light establishing that the Subject Van was delivered direct from the Daimler Defendants' facility in South Carolina to New Bern in the Eastern District of Texas. (Dkt. No. 140-1).

A timely filed motion for reconsideration is construed as a motion to alter or amend a judgment under *Rule 59(e)*. *Bass v. U.S. Dep't Agric., 211 F.3d 959, 961 (5th Cir. 2000)*. Such a motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence. *Rosenzweig v. Azurix Corp., 332 F. 3d 854, 863 (5th Cir. 2003)*. In deciding a motion for reconsideration, the Court must balance the interests of finality and the need to render just decisions on the basis of all the facts. *Templet v. HydroChem, Inc., 367 F.3d 473, 478-79 (5th Cir. 2004)*.

It is clear is that the facts now before the Court are materially different from the facts which were before the Court when it issued its May Order. In view of the **[*4]** need to resolve critical jurisdictional issues based on all of the facts, the Court is persuaded that it should reconsider its May Order. The Court concludes the best way to accomplish this is to vacate its May Order and for the parties to conduct targeted discovery limited to the personal jurisdiction issue. In light of such action, the Court views the Daimler Defendants' original *Rule 12(b)(2)* Motions to Dismiss for Lack of Personal Jurisdiction (the "Motions to Dismiss") (Dkt. Nos. 89, 90) as still live before the Court. Additionally, given the foundational nature of jurisdictional issues, the Court is of the opinion that all other action in this case should be stayed pending resolution of the jurisdictional issue.

The Motion to Reconsider is therefore **GRANTED**. Accordingly, it is **ORDERED** that the Court's May Order (Dkt. No. 123) is **VACATED** and **SET ASIDE**. The parties are **ORDERED** to meet and confer within **fourteen (14) days** from the issuance of this Order and to thereafter submit a proposed Jurisdictional Discovery Order. The proposed Jurisdictional Discovery Order shall specify the scope of additional, targeted discovery limited to the personal jurisdiction issue, and a proposed schedule for **[*5]** such discovery and supplemental briefing on the Motions to Dismiss. The proposed Jurisdictional Discovery Order shall indicate any unresolved disputes between the parties as to such discovery, setting forth clearly each party's position (and the basis therefor) as part of their submission. It is further **ORDERED** that all action in the above-captioned matter unrelated to the Motions to Dismiss is **STAYED** pending resolution of the personal jurisdiction issue and further order of the Court lifting such stay.

**So ORDERED and SIGNED this 15th day of September, 2020**.

/s/ Rodney Gilstrap

RODNEY GILSTRAP

UNITED STATES DISTRICT JUDGE

---

*End of Document*


Cited
As of: November 8, 2023 2:32 PM Z

## *Kuykendall v. Amazon Studios LLC*

United States District Court for the Southern District of Texas, Laredo Division

March 18, 2022, Decided; March 18, 2022, Filed, Entered

CIVIL ACTION NO. 5:20-CV-219

**Reporter**
2022 U.S. Dist. LEXIS 240966 *

JAMES KUYKENDALL, Plaintiff, vs. AMAZON STUDIOS LLC et al., Defendants.

## Core Terms

personal jurisdiction, interview, contacts, residents, prong, podcast, forum state, Studios, allegations, defamatory, targeted, exploit, Defendants', distributed, fulfilled, audience, film, minimum contact, deliberately, distributor, publisher, lack personal jurisdiction, focal point, circulation, appearance, defamation, nationwide, promotion, effects

**Counsel:  [*1]** For James Kuykendall, Plaintiff: Farzin Franklin Amanat, LEAD ATTORNEY, Dicello Levitt Gutzler LLC, New York, NY; Bruce D Bernstein, Dicello Levitt Gutzler, Washington, DC; Carmel T. Kappus, PRO HAC VICE, DiCello Levitt Gutzler, LLC, New York, NY; F. Franklin Amanat, Dicello Levin Gutzler, New York, NY; Greg G Gutzler, Dicello Levitt Gutzler, New York, NY; Saul Cohen, DiCello Levitt Gutzler LLC, Washington, DC; Alex J Brown, The Lanier Law Firm, PC, Houston, TX.

For Amazon Studios LLC, Defendant: Laura Lee Prather, LEAD ATTORNEY, Haynes and Boone LLP, Austin, TX; Alonzo Wickers , IV, Cydney Swofford Freeman, Diana Palacios, Davis Wright et al, Los Angeles, CA; Cristina M Salvato, Joel Richert, PRO HAC VICE, Davis Wright Tremaine LLP, Los Angeles, CA; Gilberto Hinojosa, Law Office of Gilberto Hinojosa & Associates P.C., Brownsville, TX.

For Hector Berrellez, Good Pixel Productions, Defendants: Cameron Stracher, Attorney at Law, New York, NY; Gilberto Hinojosa, Law Office of Gilberto Hinojosa & Associates P.C., Brownsville, TX; Sara C. Tesoriero, Cameron Stracher PLLC, New York, NY.

For John Massaria, Defendant: Cameron Stracher, Attorney at Law, New York, NY; Sara C. Tesoriero, Cameron **[*2]**  Stracher PLLC, New York, NY.

For Intellectual Property Corporation, Defendant: Laura Lee Prather, LEAD ATTORNEY, Haynes and Boone LLP, Austin, TX; Alexander Bjorn Lutzky, Haynes and Boone LLP, San Antonio, TX; Gilberto Hinojosa, Law Office of Gilberto Hinojosa & Associates P.C., Brownsville, TX.

**Judges:** Marina Garcia Marmolejo, United States District Judge.

**Opinion by:** Marina Garcia Marmolejo

## Opinion

### ORDER

Defendants IPC Television, Tiller Russell, and Hector Berrellez (the "Moving Defendants'")[1] have filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue (Dkt. No. 38). Having considered the relevant filings and applicable law, the motion (Dkt. No. 38) is **GRANTED IN PART** and **DENIED IN PART**. While the Court lacks personal jurisdiction over the Moving Defendants, it declines to dismiss the case under Rule 12(b)(2). Instead, the Court will transfer the claims against the Moving Defendants to the Central District of California, Los Angeles Division.

### I. BACKGROUND

Plaintiff James Kuykendall is a Texas resident and former agent for the Drug Enforcement Administration

---

[1] Originally, there were two other Moving Defendants: John Massaria and Good Pixel Productions (*see* Dkt. No. 38). However, they have since been terminated from this lawsuit (Dkt. No. 102).

("DEA") (Dkt. No. 1 at 8).[2] His lawsuit concerns a streaming television documentary series called *The Last Narc* ("the Show"), **[*3]** which explores the kidnapping and murder of DEA Agent Enrique Camarena (*id.* at 2). The Show is available on Amazon.com, Inc.'s digital streaming service, Prime Video (*id.* at 7).

Essentially, Plaintiff takes issue with his portrayal in the Show. According to Plaintiff, only the Guadalajara Cartel ("the Cartel") kidnapped and killed Agent Camarena (*id.* at 1). But according to the Show, Plaintiff, other American officials, and the Cartel coordinated Agent Camarena's murder, and Plaintiff "deliberately sabotaged" the criminal trial that ensued (*id.* at 2-3). The Show claims Agent Camarena threatened to expose a secret, transnational, deep-state conspiracy (*id.* at 2). Supposedly, the federal government and the Cartel formed a pact to traffic drugs into the United States and use some of the proceeds to fund Nicaraguan Contras (*id.*). To thwart Agent Camarena's potential revelation, the Show avers Plaintiff and the Cartel planned Agent Camarena's abduction, Plaintiff aided and abetted the execution of the plan, and Plaintiff lied during the subsequent murder trial (*id.* at 3). The Show also claims that Plaintiff received bribes from the Cartel (*id.*). In response to his portrayal in the Show, **[*4]** Plaintiff filed this lawsuit (*id.*).

At this juncture, only four defendants remain: IPC Television, LLC ("IPC"), Tiller Russell, Hector Berrellez, and Amazon Studios, LLC ("Amazon Studios") (*id.* at 1). Of the four defendants, the first three—the Moving Defendants—contest personal jurisdiction (Dkt. No. 38). IPC is a production studio and media company, which has its principal place of business in California and is incorporated in Delaware (Dkt. No. 38-1 at 11). IPC co-produced the Show (Dkt. No. 1 at 8). Russell is a New Mexico resident who developed, co-executive produced, and directed the Show (*id.*). Berrellez is a California resident and former DEA agent who was interviewed extensively for, and appears in, the Show (*id.* at 7; Dkt. No. 104 at 40). Amazon Studios is a TV production and distribution company with its principal place of business in California (Dkt. No. 1 at 7). It is a subsidiary of Amazon.com, Inc., and it produced, published, and distributed the Show through Prime Video (*id.*).

Plaintiff asserts four claims in this diversity action: defamation per se, defamation *per quod*, intentional infliction of emotional distress, and violation of Plaintiff's right of publicity (Dkt. **[*5]** No. 1 at 36-41). The Moving

Defendants believe this Court lacks personal jurisdiction over them and move for dismissal on this basis (Dkt. No. 38). In the alternative, the Moving Defendants request that this matter be transferred to the Central District of California, Los Angeles Division, pursuant to *28 U.S.C. § 1404(a)* (*id.*). Plaintiff counters that this Court has specific personal jurisdiction over the Moving Defendants and a transfer is not warranted (Dkt. No. 53).

## II. LEGAL STANDARD

When personal jurisdiction is challenged, the burden of establishing jurisdiction falls on the plaintiff. *Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002)*. However, the plaintiff need only present *prima facie* evidence to meet this burden. *Id.* "We must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.* (cleaned up) (quoting *Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000)*). However, a court need not credit conclusory allegations. *Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001)*. "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Revell, 317 F.3d at 469* (quoting *Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985)*).

In a diversity action, a district **[*6]** court may exercise personal jurisdiction over a non-forum defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Id.* Because Texas' long-arm statute allows for jurisdiction up to the constitutional limit, a court's analysis merges into a single due process inquiry. *Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010)*.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over a non-forum defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Id.* Minimum contacts can give rise to either general or

---

[2] All pincites to docket entries refer to CM/ECF's pagination.

specific jurisdiction. *Id.*

"General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic." *Revell, 317 F.3d at 470* (cleaned up) (quoting *Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999)*). "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." **[*7]** *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021)* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)*). Paradigmatically, an individual is "at home" in his or her place of domicile, and a corporation is "at home" in its place of incorporation and principal place of business. *Id.*

The minimum contacts needed for specific jurisdiction exist when a defendant "purposefully avail[s] itself of the privilege of conducting activities in the forum State" and when the plaintiff's claim relates to or arises out of those purposeful contacts. *Johnson v. TheHuffingtonPost.com, Inc., 21 F.4th 314, 317 (5th Cir. 2021)* (quoting *Ford Motor Co., 141 S. Ct. at 1024*). Thus, to determine whether specific jurisdiction exists, a court looks only to "the contact out of which the cause of action arises." *Revell, 317 F.3d at 472.* Further, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones, 465 U.S. 783, 790 (1984).* Due process limits on specific jurisdiction "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore, 571 U.S. 277, 284 (2014).* It is therefore "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. . . . A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id. at 286* (quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)*).

If a court **[*8]** finds it lacks personal jurisdiction, it may either dismiss the action pursuant to *Federal Rule of Civil Procedure 12(b)(2)* or transfer the action. *28 U.S.C. §§ 1406(a)*, 1631; *Herman v. Cataphora, Inc., 730 F.3d 460, 466 (5th Cir. 2013); Franco v. Mabe Trucking Co., Inc., 3 F.4th 788, 795 (5th Cir. 2021).* In such a case, a court shall transfer the action to any court "in which the action or appeal could have been brought at the time it was filed or noticed," so long as the court finds it is within the interest of justice to do so. *28 U.S.C. § 1631.*

## III. ANALYSIS

### A. Minimum Contacts: General Personal Jurisdiction

Plaintiff has not asserted the Moving Defendants are subject to general personal jurisdiction in this Court (*see* Dkt. Nos. 53, 104). Because Plaintiff bears the burden of making a *prima facie* case for personal jurisdiction, the general jurisdiction issue is waived. Nonetheless, even if the issue had not been waived, general jurisdiction is lacking. The Moving Defendants have shown they are not "at home" in Texas, do not own property or assets in Texas, and do not conduct any regular business in Texas (Dkt. No. 38-1 at 13-16).

### B. Minimum Contacts: Specific Personal Jurisdiction

Typically, for a defamation or libel claim, courts analyze specific personal jurisdiction using the tests articulated by the Supreme Court in *Calder v. Jones, 465 U.S. 783 (1984)* and *Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984).* The *Calder* test assesses whether an author or publisher of **[*9]** defamatory content has aimed the offending content towards a state, knowing that its tortious effects will be felt there. *Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 425 (5th Cir. 2005).* The *Keeton* test assesses whether a publisher or distributor of defamatory content has adequate circulation of the content in the forum state for jurisdictional purposes. *See id.* Here, Plaintiff claims the Court may exercise specific personal jurisdiction over Russell and IPC—two of the three Moving Defendants—under the *Calder* test (Dkt. No. 53 at 20-22; Dkt. No. 104 at 9-25, 33-35). Plaintiff also asserts the Court may exercise personal jurisdiction over all three Moving Defendants under the *Keeton* test, as interpreted by the Supreme Court of Texas in *TV Azteca v. Ruiz, 490 S.W.3d 29, 36 (Tex. 2016) (Dkt. No. 104 at 25-32, 35-42)*.

#### 1. *Calder*

In *Calder*, Shirley Jones, a television entertainer and California resident, brought a libel suit in California based on a *National Enquirer* article about her activities there. *Calder, 465 U.S. at 784-85, 788.* The Supreme Court concluded the California court had specific

personal jurisdiction over the article's writer and its editor. *Id. at 785, 789*. Although both defendants resided in Florida and produced the article there, they relied on California sources for its development. *Id. at 785, 788-89*. After assessing the relationships among the defendants, forum, and litigation, the **[*10]** Supreme Court concluded the defendants were subject to the California court's personal jurisdiction because they "expressly aimed" intentional tortious actions toward California, which was the focal point of the article and the harm it caused. *Id. at 789-90*. In a subsequent case, the Supreme Court clarified that to find specific jurisdiction under *Calder*, a defendant must purposefully reach into the forum state to create contacts with the forum itself. *Walden, 571 U.S. at 284-85*. Thus, the mere fact that a plaintiff lives in, or was harmed in, the forum is insufficient to confer jurisdiction over a defendant. *Id. at 284-86*.

The Fifth Circuit has also elaborated upon the *Calder* test. It has repeatedly held that jurisdiction under *Calder* can be established only when an author or publisher "aims" an allegedly defamatory story at a forum state, knowing the "effects" will be felt there. *Fielding, 415 F.3d at 425*. Thus, a showing of "effects" in a forum, without more, is insufficient—a showing of "aim" is also required. *Revell, 317 F.3d at 473*; *Clemens, 615 F.3d at 380*.

A plaintiff demonstrates a defendant "aimed" defamatory statements at the forum state by "showing that (1) the subject matter of and (2) the sources relied upon for the [defamatory content] were in the forum state." *Fielding, 415 F.3d at 426*. This "aim" test formulation **[*11]** is often called the "subject-and-sources" test, and the Fifth Circuit requires that both prongs be satisfied to establish personal jurisdiction under *Calder*. *See Revell, 317 F.3d at 474*; *Fielding, 415 F.3d at 425-26*; *Clemens, 615 F.3d at 380*. The subject prong is only fulfilled when the forum is the focal point of the story: Fleeting mentions of the forum that only serve as collateral or background information do not suffice. *Fielding, 415 F.3d at 426-27*. Similarly, the use of forum sources must be more than "marginal" or "fleeting" and should relate to the forum as the focal point of the story. *Id. at 426*.

Here, Plaintiff invokes *Calder* to assert personal jurisdiction over Russell and IPC,[3] but not Berrellez (*see*

Dkt. No. 104 at 41). The Court will assess the "effects" test and the "aim" subject-and-sources-test in turn.

### Effects

Plaintiff's *Calder* arguments focus on the fact he is a Texas resident, and the brunt of his alleged harm was experienced here (*see, e.g.*, Dkt. No. 53 at 19). According to Plaintiff, because (1) the Moving Defendants knew he lived in Texas, and (2) because he and his counsel informed the Moving Defendants that the Show's statements about Plaintiff were defamatory, there is personal jurisdiction under *Calder* (*id.; see also* Dkt. No. 104 at 22-25). The Moving **[*12]** Defendants do not contest that they knew Plaintiff lived in Texas or that they "knew the brunt of [his] injury would be felt" in Texas. *See Calder, 465 U.S. at 789-90*. "Knowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test." *Revell, 317 F.3d at 475*. Thus, Plaintiff has made a *prima facie* showing that *Calder*'s effects test has been satisfied. However, as the Supreme Court and Fifth Circuit have emphasized, effects alone are insufficient—the aim test must also be fulfilled. *See, e.g.*, *Walden, 571 U.S. at 289-90*; *Revell, 317 F.3d at 473*; *Clemens, 615 F.3d at 380*.

### Aim: Subject and Sources

As to the subject prong of the "aim" test, Plaintiff asserts it is fulfilled because the Show references Texas at least three times. First, the Show explores Plaintiff's testimony during a murder trial in California, which described Plaintiff's Texas meeting with Zuno-Arce, a Cartel member on trial for Agent Camarena's murder (Dkt. No. 1 at 14-15; Dkt. No. 53 at 12). According to Plaintiff, the Show references his testimony to demonstrate Plaintiff lied for the Cartel (Dkt. No. 53 at 8-9, 12-13). Second, in one episode, Berrellez—under Russell's direction—describes Berrellez's involvement in an incident in El Paso (Dkt. No. 53 at 13; Dkt. **[*13]** No. 104 at 12-13). Plaintiff believes Berrellez's narrative relates to the defamation claim because, although the El Paso incident has nothing to do with Plaintiff, it bolsters the reputation of Berrellez "to induce the audience to be more likely to believe Berrellez's accusations against

---

[3] Plaintiff asserts that Russell's contacts and conduct can be "equally and vicariously" attributed to IPC through a series of

contractual and business arrangements (Dkt. No. 104 at 32). Assuming this is true, it is of no moment. The Court cannot exercise personal jurisdiction over Russell or IPC under *Calder. See infra* Section III.B.2.b.

2022 U.S. Dist. LEXIS 240966, *13

Plaintiff" (Dkt. No. 104 at 13). Finally, the Show discusses Zuno-Arce's arrest in San Antonio (Dkt. No. 53 at 13).

The Moving Defendants respond that Plaintiff's testimony occurred in California, and the Show's references to the testimony do not mention a meeting with Zuno-Arce at all, let alone the fact that the meeting happened in Texas (Dkt. No. 60 at 4; Dkt. No. 108 at 7).[4] The Moving Defendants also note the Show's depiction of Berrellez's incident in El Paso and Zuno-Arce's arrest in San Antonio have nothing to do with Plaintiff's defamation claims (Dkt. No. 60 at 4).

Plaintiff has not satisfied the subject prong. As the Fifth Circuit has reiterated many times, to find personal jurisdiction under the Calder subject-and-sources analysis, Texas must be the "focal point" of the defamatory story. *Fielding, 415 F.3d at 426-27*; *Clemens, 615 F.3d at 379-80*; *Herman, 730 F.3d at 465-66*. Plainly, it is not. The focal points of the Show and its allegations about Plaintiff are events [*14] that occurred in Mexico and California. As detailed in the complaint, Plaintiff's alleged bribes and meetings with the Cartel occurred in Mexico, the kidnapping and murder of Agent Camarena occurred in Mexico, and the trial at which Plaintiff allegedly perjured himself occurred in California (see generally Dkt. No. 1). At best, the sporadic references to Texas are "collateral to the focus" of the Show. See *Fielding, 415 F.3d at 426-27* (holding the focus of a defamatory article was a European affair and references to the plaintiff's past in Texas were "collateral" and "served merely to supply background, biographical information" about the plaintiff); see also *Clemens, 615 F.3d at 379-80* (determining Texas was not the "focal point of the story," in part because the story primarily "concerned non-Texas activities—the delivery of performance-enhancing drugs to [Plaintiff] in New York and Canada"); *Herman, 730 F.3d at 465-66* (holding defamatory statements focused on the litigation history of a contract dispute in California, despite the fact the contract governed services in Louisiana). Thus, Calder's subject prong is unfulfilled. Since the subject prong is required by Fifth Circuit precedent, Plaintiff's arguments under Calder must fail, and the Court need

not analyze [*15] the sources prong.

Regardless, it is doubtful that the sources prong would be satisfied. In this inquiry, the Fifth Circuit has emphasized a "defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum." *Revell, 317 F.3d at 475*; see also *Johnson, 21 F.4th at 318* (holding a defendant must target the forum "specifically and knowingly"). Additionally, the Supreme Court has cautioned that to assert personal jurisdiction over a non-forum defendant, it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts'. . . . A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden, 571 U.S. at 286*. In light of this precedent, three reasons suggest the sources prong has not been satisfied.

First, although Russell contacted two Texas residents while developing the Show, he did not know they were Texas residents. To be sure, Plaintiff provided Russell the names and email addresses of "sources" who would refute the Show's accusations about Plaintiff, and Russell contacted some of the listed individuals, [*16] including two Texas residents (Dkt. No. 53 at 16; Dkt. No. 62 at 2-3). And admittedly, the two Texas individuals emailed Russell back, refuting or casting doubt on Russell's negative allegations about Plaintiff (*id.* at 2-5). But Russell claims he was wholly unaware these two sources were Texas residents, and Plaintiff does not contest this (see Dkt. No. 75 at 2; Dkt. No. 78 at 2; Dkt. No. 104 at 16; Dkt. No. 108 at 10). Because Plaintiff has not shown that Russell had the necessary knowledge that he was making a contact in Texas, and because email communications do not automatically convey locational data,[5] Russell's contact with these individuals falls short of fulfilling the sources prong.

Second, the parties agree Russell did not use any information from these Texas individuals to create the Show (Dkt. No. 75 at 3; Dkt. No. 104 at 17). This bolsters a finding that these two Texas sources cannot

---

[4] Plaintiff agrees the Show does not mention the meeting took place in Texas but asserts the testimony references the meeting generally (Dkt. No. 104 at 12). Because the Court must resolve factual disputes in Plaintiff's favor, the Court credits his interpretation: the Show references Plaintiff's testimony about his meeting with Zuno-Arce but does not discuss the meeting's location.

[5] See *Rare & Fine Vintage Watches AG v. Maron, No. 5:20-cv-249, 2020 WL 3051436, at *3 (W.D. Tex. June 7, 2020)* (recognizing that because communications such as email can be made from "anywhere in the world," "reliance on these communications, without more, is 'obsolete as proof of purposeful availment'") (internal quotation omitted).

satisfy the sources prong. After all, the Supreme Court and Fifth Circuit have suggested that a source must *actually* be "relied upon" to fulfill this prong. *See Calder, 465 U.S. at 788-89* (noting the article was "drawn from [forum] sources"); *Fielding, 415 F.3d at 426* (noting the sources prong could be fulfilled where "the sources relied **[\*17]** upon for the article were in the forum state" but likely not where contact with the sources "led to no new substantial disclosures"); *Clemens, 615 F.3d at 380*. Here, the Show used no information from the two Texas sources (Dkt. No. 75 at 3; Dkt. No. 104 at 17).[6]

Finally, Plaintiff's argument that the Show relied on another Texas source—former DEA agent Phil Jordan, who appears in every episode—is likely unavailing (Dkt. No. 53 at 14). Plaintiff argues Jordan served as a "main source[] [upon] which the Show relies to make the patently false accusation that [Plaintiff's] testimony at the first trial of Zuno-Arce was perjured to benefit the Cartel" (id.). Plaintiff further notes that IPC and Russell financed Jordan's trip from Texas to California to be interviewed for the Show (Dkt. No. 104 at 14). However, the Court is skeptical of whether this single Texas source can fulfill the sources prong, especially because the information he provided was not linked to Texas. There is no indication that Jordan's Texas residence at all influenced or contributed to his interview statements. To the contrary, Jordan's interview explored events that occurred in California and Mexico. *See Fielding, 415 F.3d at 426* (indicating a source's information should **[\*18]** relate to the forum as the focal point of the story). In other words, Jordan's residence in Texas is a mere fortuity, and the Moving Defendants' contacts with Texas through him are likely too attenuated to support an exercise of personal jurisdiction. *See Walden, 571 U.S. at 285-86* (explaining contacts between a

defendant and a third party are insufficient, on their own, to confer jurisdiction when there is no connection between defendant and the forum itself). In sum, because the "aim" prong is unfulfilled, the Court lacks personal jurisdiction over the Moving Defendants under *Calder*.

## 2. *Keeton* and "Additional Conduct"

Next, the Court addresses whether personal jurisdiction is available under the traditional Keeton "adequate circulation" test and an interpretation of the Keeton test articulated in TV Azteca, referred to by Plaintiff has the "additional conduct" test. The Court concludes no personal jurisdiction exists under either test.

### *Keeton*

In *Keeton*, a New York plaintiff sued Ohio and California-based Hustler Magazine, Inc. ("Hustler") in New Hampshire for libel. *465 U.S. at 772*. Hustler's only contact with New Hampshire consisted of the 10,000 to 15,000 magazine copies it sold there per month. *Id.* The Supreme Court examined the **[\*19]** magazine's circulation to determine whether personal jurisdiction existed over Hustler. *See id. at 773-74*. The Court held the regular, monthly magazine circulation in the forum state could not be categorized as "random, isolated, or fortuitous." *Id. at 774*. Instead, the circulation showed that Hustler "continuously and deliberately" exploited the forum's market and could have reasonably anticipated being sued there. *Id. at 781*.

Initially, Plaintiff relied on the *Keeton* test only in the alternative to *Calder*, arguing the circulation test was satisfied because the Show is available to stream in Texas through Prime Video (Dkt. No. 53 at 24-26). Plaintiff asserted that when the Moving Defendants negotiated to sell the Show to Amazon Studios for distribution, the Moving Defendants expected Amazon Studios to target the "widest audience possible" (*id.* at 25). However, in his first response, Plaintiff also admitted that he needed more information about the Moving Defendants' actions to tie them to the Show's distribution and fulfill the *Keeton* test (*id.* at 26). Interestingly, once Plaintiff received jurisdictional discovery, his arguments shifted from the traditional *Keeton* analysis and emphasized only his "additional conduct" arguments (*see* **[\*20]** *generally* Dkt. No. 104 (second response, which makes only one passing reference to *Keeton*)). Thus, the Court considers the

---

[6] Plaintiff also contends he and his lawyers served as "sources" when they responded to an email from Russell and, therein, denied the Show's allegations about Plaintiff (Dkt. No. 53 at 15-17; Dkt No. 104 at 18-22). However, Plaintiff and the Moving Defendants agree that this email exchange did not result in any information that was used in the Show (Dkt. No. 53 at 17; Dkt. No. 38-1 at 19; Dkt. No. 104 at 21). Because, as described above, a source must be "relied upon" to fulfill the sources prong, Plaintiff's allegations that he and his lawyers served as sources must fail. Additionally, these contacts cannot confer personal jurisdiction over the Moving Defendants because "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden, 571 U.S. at 285*.

traditional *Keeton* argument waived.

However, even if Plaintiff has not forfeited his traditional *Keeton* argument, the Court cannot assert personal jurisdiction over the Moving Defendants thereunder. As stated before, the *Keeton* test is typically used for the publishers, or distributors, of defamatory materials. *See Fielding, 415 F.3d at 425*; *Johnson, 21 F.4th at 325*. But the Moving Defendants cannot reasonably be categorized as publishers or distributors. Russell and IPC simply developed and produced the Show (Dkt. No. 1 at 8; Dkt. No. 38-1 at 10-11). Berrellez participated as an interviewee (Dkt. No. 1 at 7; Dkt. No. 104 at 40). On this record, Amazon Studios' status as a publisher and distributor cannot be imputed to the Moving Defendants since "the forum-targeting actions of distributors are not generally imputed to the people that created the distributed product." *John E. Reid & Assocs., Inc. v. Netflix, Inc.*, No. 19 CV 6781, 2020 WL 1330657, at *5 (N.D. Ill. Mar. 23, 2020) (citing *Calder, 465 U.S. at 790*), *appeal dismissed*, No. 20-1602, 2020 WL 6039144 (7th Cir. Aug. 28, 2020); *see also Keeton, 465 U.S. at 781 n.13* (holding jurisdiction over Hustler for its magazine circulation did not lead to an automatic finding of jurisdiction over individual defendant who was the magazine's publisher, editor, and owner); *Butowsky v. Gottlieb*, No. 4:19-cv-180, 2020 WL 5757223, at *5 (E.D. Tex. Sept. 28, 2020) (finding no personal jurisdiction **[*21]** under *Keeton* over producer of television show, even though producer had a "vested financial interest in expanding the reach of [the show] into all fifty states, including Texas"); *Davidson v. Time Warner, Inc.*, No. 6:94-cv-6, 1997 WL 405907, at *7-8 (S.D. Tex. Mar. 31, 1997) (finding no personal jurisdiction over recording artist based on album distribution: "Only after [the distributors] distributed the album could it be said to have 'entered the stream of commerce,' and [the recording artist] had no control over how the recording would be distributed.").

Here, Plaintiff has merely lodged conclusory allegations that the Moving Defendants participated in, or controlled, the Show's distribution (*see, e.g.*, Dkt. No. 53 at 25-26; Dkt. No. 104 at 25-32, 35-40 (making conclusory statement that "IPC was actively involved in the . . . distribution of the Show," but admitting that Amazon Studios was the Show's distributor and only specifically alleging Russell and IPC's involvement with the Show's promotion)). Thus, the Court cannot maintain personal jurisdiction over the Moving Defendants through *Keeton*'s traditional formulation.

## "Additional Conduct" Test

In his most recent filings, Plaintiff relies on the so-called "additional conduct" test, as elucidated by the Supreme Court of Texas in *TV Azteca* **[*22]**,[7] to assert the Court has personal jurisdiction over the Moving Defendants (Dkt No. 104 at 25).[8] In *TV Azteca*, the Supreme Court of Texas applied *Keeton* in a defamation case against Mexican media defendants associated with certain television broadcasts. *See 490 S.W.3d at 35, 47*. Specifically, the plaintiff sued two Mexican broadcast companies and a Mexican news anchor and producer, Patricia Chapoy, who worked for one of the broadcast companies. *Id.* at 35. The *TV Azteca* court held that it had personal jurisdiction over all defendants under *Keeton*, including Chapoy, who promoted the broadcasts in Texas but did not publish or distribute them. *See id.* at 48-52. The Court determined the defendants were subject to personal jurisdiction in Texas because they engaged in "additional conduct" through which they "continuously and deliberately exploited" the Texas market. *Id.* at 47-52 (quoting *Keeton, 465 U.S. at 781*). It looked to the defendants' efforts to promote, distribute, and profit from their broadcasts in Texas as evidence that the defendants "made substantial and successful efforts to benefit from" broadcasts in Texas. *Id.* at 49.

The Court first notes its personal jurisdiction rulings must comport with relevant federal precedent, and *TV Azteca* **[*23]** is merely persuasive authority. Federal

---

[7] *TV Azteca v. Ruiz, 490 S.W.3d 29 (Tex. 2016)*. The Court has referenced *TV Azteca* to explain that *Calder* may not be the exclusive test for personal jurisdiction in this case (*see* Dkt. No. 80). But the Court is not bound by the outcome or analytical framework of *TV Azteca* because, of course, "federal courts are not bound by state court determinations of what the Constitution requires." *Southwest Offset, Inc. v. Hudco Publ'g Co. Inc., 622 F.2d 149, 152 (5th Cir. 1980)*.

[8] Plaintiff also asserts "this Court ruled that Plaintiff's evidence of personal jurisdiction over these defendants, while sufficient in general terms to defeat the pending motion, insufficiently distinguished among the different defendants and therefore did not provide the Court with a basis to assess its jurisdiction against each of them separately and individually" and the Court "intimated . . . that Plaintiff had already adduced sufficient evidence of Russell's contacts with and conduct in Texas to support personal jurisdiction against him" (Dkt. No. 104 at 6, 8). This Court has made no such rulings or "intimations" (*see* Dkt. No. 80). Plaintiff's assertions are therefore either intentionally disingenuous or demonstrate a grave misreading of a straightforward order.

precedent requires Plaintiff to show the Moving Defendants knowingly and specifically targeted Texas and purposefully availed themselves of jurisdiction here, with the reasonable expectation of being haled to Texas court. *Johnson, 21 F.4th at 318, 325*; *Clemens, 615 F.3d at 378*; *Revell, 317 F.3d at 475*. Therefore, even under the "additional conduct" variation of the *Keeton* test, Plaintiff must show the Moving Defendants' contacts with Texas were more than "random, isolated, or fortuitous" and instead evince an intent to "continuously and deliberately" exploit the Texas market. *Keeton, 465 U.S. at 774, 781*. Explained below, each instance of "additional conduct" by the Moving Defendants cannot fairly be said to be more than random, isolated, or fortuitous. Consequently, Plaintiff has not marshalled sufficient allegations or evidence to establish the minimum contacts required by federal precedent.

### a. Tiller Russell

First, Plaintiff asserts Russell exploited the Texas market when he chose Amazon Studios as the Show's distributor because he wanted the Show to reach the "widest audience possible" (Dkt. No. 104 at 26). Plaintiff also argues Russell's compensation was "directly tied to Amazon's distribution of the Show" (*id.*). He points to Russell's contractual **[*24]** entitlement to "contingent compensation" in connection with "the worldwide exploitation of the Series in perpetuity" and the possibility of a "backend premium" if the Show was distributed outside of the United States and other "core countries" (*id.* at 26-27).

But none of these actions indicate Russell specifically or deliberately targeted the Texas market. Taking steps to ensure a "wide audience" does not, without more, indicate purposeful availment of a certain forum. *See Johnson, 21 F.4th at 320* (noting "universal accessibility" is not the equivalent of "purposeful availment"); *Clemens, 615 F.3d at 380* (finding no personal jurisdiction where plaintiff failed to show defamatory statements were "made in Texas or directed to Texas residents any more than residents of any state"); *Revell, 317 F.3d at 475* (holding the Texas court lacked jurisdiction in part because the defamatory article was posted on the Internet and thus was not aimed specifically at Texas but was "presumably directed at the entire world, or perhaps just concerned U.S. citizens"). Further, as described by Plaintiff, Russell's compensation scheme does not evince specific targeting of Texas. The record shows Russell was paid

only "a flat front-end payment per episode deriving from distribution **[*25]** of the Show throughout the 'Amazon Core Territories' (which includes the entire U.S. and about three dozen other countries)" with a back-end premium if the distribution expanded beyond those core territories (Dkt. No. 104 at 26-27). Thus, Russell was paid a flat fee for all distribution within the United States and received no special compensation for specific distribution in Texas.

As to Russell's possible "contingent compensation," Plaintiff admits such compensation has not yet materialized (*id.* at 27). Further, Plaintiff marshals no argument to tie this potential compensation to the exploitation of the Texas market (*id.*). Overall, none of Russell's contractual entitlements indicate he controlled or benefitted specially from distribution in Texas. Therefore, they cannot serve as the basis for exercising personal jurisdiction. *Cf. Davidson*, 1997 WL 405907, at *8 (finding no personal jurisdiction over recording artist after he granted rights to his album to a record company that subsequently distributed it without artist's control, despite the artist's limited promotion in Texas and his "hope" it would be distributed there).

Second, Plaintiff alleges Russell's contractual obligations required him to "actively participate **[*26]** in the promotion of and publicity for the Show, so as to ensure a wide audience" (Dkt. No. 104 at 27). Specifically, Plaintiff points to Russell's media training from Amazon Public Relations, his involvement in creating promotional trailers and billboards, his unsuccessful attempt to have the film screened at Austin's South by Southwest (SXSW) film festival, and his national and local media appearances to promote the Show (*id.* at 27-31). However, Plaintiff fails to show that Russell had any decision-making power in fulfilling his contractually obligated promotional activities. Further, with limited exceptions, Plaintiff again fails to point to any activities demonstrating Russell specifically targeted the Texas market, as opposed to engaging in general, nationwide promotion. Participation in nationwide promotion, without more, cannot create sufficient minimum contacts with Texas because it does not demonstrate Texas was targeted "specifically" or that the Show was directed to "Texas residents any more than residents of any state." *Johnson, 21 F.4th at 318, 321* ("To target every user everywhere . . . is to target no place at all."); *Clemens, 615 F.3d at 380*.

Russell's only potential contacts with Texas include his interest in the SXSW **[*27]** film festival and two podcast tapings (*see* Dkt. No. 104 at 29, 31). As to SXSW,

Plaintiff claims Russell "unsuccessfully attempted to have the Show premiere at the SXSW film festival" (*id.* at 29). Plaintiff points to an email between Amazon Studios employees, in which the author states "[Russell] feels very strongly that [the Show] should premiere at SXSW," and Russell's deposition, in which Russell testified he did not recall communicating this feeling to Amazon Studios, but that it would have been reasonable had he done so (Dkt. No. 104 at 29; Dkt No. 104-14 at 2; Dkt. No. 104-27 at 1). But the bottom line is this: Russell did not reach into Texas at all. He expressed a wish that someone else do so, and ultimately, the other party did not execute this wish. If this desire can even be considered a contact with Texas, it is far too attenuated to confer personal jurisdiction over Russell.

As to the podcast interviews, Plaintiff references two instances: Russell's travel to Texas to tape an episode of the "Joe Rogan Podcast" and Russell's appearance on a Texas-based podcast called the "Ef N' Sonny Show" (Dkt. No. 104 at 31). Plaintiff concedes Russell taped his Joe Rogan interview in **[*28]** March 2021—months after the instant lawsuit was filed—and that the interview's main purpose was to promote one of Russell's other films (*id.*). Assuming post-filing activities can create personal jurisdiction, this Joe Rogan interview is insufficient. As Plaintiff admits, the Show was an ancillary topic during this interview. Further, the Court notes the Joe Rogan Podcast, like most podcasts, is accessible nationwide via the Internet. Plaintiff has not shown how the Joe Rogan Podcast specifically targeted the Texas market. *Cf. Nunes v. NBCUniversal Media, LLC, No. 4:21-cv-608, 2022 WL 269101, at *7 (E.D. Tex. Jan. 28, 2022)* ("[Plaintiff] has presented no facts that [Defendant's] website [and YouTube channel] specifically targeted Texas viewers" . . . rather than being "accessible to anyone in the world with an Internet connection.") (cleaned up). For example, he does not allege the Joe Rogan Podcast has disproportionate Texas listenership or how the taping in Texas was more than fortuitous.

As to the "Ef N' Sonny Show," Plaintiff believes Russell's appearance thereon confers personal jurisdiction because Russell:

> [A]ppeared for over half an hour on the "Ef N' Sonny Show," a legal podcast filmed in Edinburg, Hidalgo County, Texas, whose audience is entirely located in the Rio Grande **[*29]** Valley and whose subject matters almost exclusively relate to South Texas and border issues. . . . Russell . . . was

aware that the podcasters were from Texas when he agreed to participate.

(Dkt. No. 104 at 31). This argument is unavailing. First, there is no indication that Russell entered Texas to tape the interview (*see id.*). Further, Plaintiff does not point to any specific defamatory statements from the Show that were repeated in this interview (*see id.*).[9]

In response, the Moving Defendants do not contest that this appearance on the Ef N' Sonny Show was "directed at Texas," but they do note that the episode was viewed by less than 5,000 people (Dkt. No. 108 at 17-18). Based on the record, Russell's podcast appearance does not confer personal jurisdiction. The interview does not show Russell made continuous efforts to exploit the Texas market—rather, it was an "isolated" contact that was received by a relatively small audience. *See Keeton, 465 U.S. at 774, 781*.

In sum, Plaintiff has failed to show the Court can exercise personal jurisdiction over Russell under the "additional conduct" theory. None of the additional contacts cited show Russell made "substantial and successful efforts" to "continuously and **[*30]** deliberately exploit[]" the Texas market. *TV Azteca, 490 S.W.3d at 49-52* (in part quoting *Keeton, 465 U.S. at 781*).

**b. IPC**

So too with IPC. First, Plaintiff asserts that Russell's contacts and conduct, detailed herein, can be "equally and vicariously" attributed to IPC (Dkt. No. 104 at 32). Plaintiff also asserts that IPC's contractual compensation scheme, which is substantially similar to Russell's, shows it benefitted from exploiting the Texas market (*id.* at 36-37). For the reasons stated above, these arguments are unpersuasive, even if Russell's contacts can be attributed to IPC.

Second, Plaintiff argues IPC helped market the Show,

---

[9] Although Plaintiff supplied a URL linking the Court to this interview, which spans 27 minutes (*see* Dkt. No. 104 at 31), Plaintiff did not quote any relevant statements uttered in this interview or supply timestamps for such relevant statements. The Court declines to scour the video and marshal evidence on Plaintiff's behalf. *Cf. Garcia v. United States, No. 5:19-cv-16, Dkt. No. 70 at 7 (S.D. Tex. Dec. 10, 2021)* (noting judges "are not like pigs, hunting for truffles buried in briefs") (quoting *Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003)*).

and Amazon Studios' promotion efforts were "nationwide, including Texas" (Dkt. No. 104 at 38-40). But again, as discussed above, "nationwide" marketing is not sufficient to show purposeful availment of the Texas market. And Plaintiff did not make any other Texas-specific allegations with respect to IPC, nor did he offer any non-conclusory allegations that IPC was involved with the Show's distribution. Accordingly, the Court cannot exercise personal jurisdiction over IPC under the "additional conduct" theory.

#### c. Hector Berrellez

With respect to Hector Berrellez, Plaintiff first argues that, because Berrellez **[*31]** received payment for his participation in the Show and simultaneously released a book with similar subject matter, he "financially benefited from the distribution of the Show throughout the United States, including in Texas" (Dkt. No. 104 at 41). As discussed above, these allegations—tied to nationwide distribution—fail to show Berrellez made efforts to deliberately exploit the Texas market.

As with Russell and IPC, Plaintiff also alleges Berrellez helped promote the Show (*id.* at 41-42). But Plaintiff only alleges that one of Berrellez's media engagements "related directly to Texas":

> Specifically, on November 18, 2020 (about three months after the release of the Show and his book) he participated in an hour-long on-camera interview for a company called Valuetainment, which at the time was based in Dallas, for a podcast with an audience of 1.5 million people hosted by the company's CEO, Patrick Bet-David, who interviewed Berrellez from Dallas.

(*Id.* at 42). This allegation fails to confer personal jurisdiction for similar reasons that Plaintiff's Joe Rogan Podcast allegations failed. Although this podcast has a wide listenership, Plaintiff has not shown the audience is comprised of a disproportionately **[*32]** large number of Texans. Moreover, Plaintiff does not allege that Berrellez physically entered Texas for the taping. Nor does Plaintiff allege Berrellez repeated his allegedly defamatory statements during the interview.[10] As with Russell and IPC, Plaintiff has not sufficiently alleged Berrellez was involved in the Show's distribution or that he engaged in additional conduct to "continuously and deliberately" exploit the market in Texas.

#### C. Traditional Notions of Fair Play and Substantial Justice

Because Plaintiff has failed to carry his burden to make a *prima facie* case of personal jurisdiction over IPC, Russell, and Berrellez, the Court need not decide whether the exercise of such jurisdiction would offend the traditional notions of fair play and substantial justice. *See Clemens, 615 F.3d at 378*. Nevertheless, the Court notes that exercising personal jurisdiction over Moving Defendants would violate these principles.

Plaintiff primarily relies on Plaintiff's injuries in Texas and the Moving Defendants' nationwide promotional activities to establish personal jurisdiction (*see generally* Dkt. Nos. 53, 104). Indeed, he can only point to one or two instances of promotional activities focused more heavily on **[*33]** the Texas market (Dkt. No. 104 at 31, 42). But "[f]orcing Defendants, all non-residents of Texas who have no meaningful contacts with Texas, to defend a lawsuit in Texas . . . would impose an unjustified and unconstitutional burden on each Defendant." *Butowsky, No. 4:19-cv-180, 2020 WL 5797713, at *13 (E.D. Tex. July 16, 2020)*, R. & R. adopted sub nom. Butowsky v. Gottlieb, 2020 WL 5757223 (E.D. Tex. Sept. 28, 2020). Constitutional due process limits on specific jurisdiction "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden, 571 U.S. at 284*. Here, where the Moving Defendants' contacts with Texas are "attenuated at best," the Court concludes the exercise of personal jurisdiction over them would be "inconsistent with notions of 'fair play and substantial justice.'" *TimeGate Studios, Inc. v. TimeFly Studios, Inc.*, No. 4:08-cv-1058, 2008 WL 11407329, at *5 (S.D. Tex. Oct. 9, 2008).

Further, as discussed below, the Central District of California, Los Angeles Division, is the appropriate forum for this action. Because this forum is the proper location for this lawsuit, federalism concerns weigh against a finding of personal jurisdiction, as that could "prevent [a] sister State[] from exercising [its] legitimate authority," particularly because the sister State has "a greater interest in the dispute." *Johnson, 21 F.4th at 323* (quoting *Ford Motor Co., 141 S. Ct. at 1025*). This federalism interest "carries enormous weight." *Id.*

#### D. Transfer

If a court finds it lacks personal **[*34]** jurisdiction, it may

---

[10] *See infra* Section III.B.2.a, n.9.

either dismiss the action pursuant to Rule 12(b)(2) or transfer the action, if the court finds it is within the interest of justice to do so. _28 U.S.C. §§ 1406(a)_, 1631; _see also_ _Herman, 730 F.3d at 466_; _Franco, 3 F.4th at 795_. The action may be transferred to any court "in which the action or appeal could have been brought at the time it was filed or noticed." _28 U.S.C. § 1631_. Because the Court lacks personal jurisdiction over the Moving Defendants, it may order a transfer pursuant to _28 U.S.C. § 1406(a)_ and § 1631, even though the Moving Defendants' alternative motion requested a transfer pursuant to § 1404(a). _See_ _Romero v. Cajun Stabilizing Boats, Inc., No. 3:05-cv-483, 2006 WL 367871, at *1, 5 (S.D. Tex. Feb. 14, 2006)_ (finding no personal jurisdiction and transferring the case under _28 U.S.C. § 1406(a)_ and § 1631 where defendant's alternative motion requested a § 1404(a) transfer).

### 1. Interest of Justice

The Court finds it is in the interest of justice to transfer the claims against the Moving Defendants as opposed to dismissing them. A transfer will eliminate the need for Plaintiff to refile his claims, which would further delay his quest to obtain redress for his alleged injuries, as well as avoid any potential prejudice caused by the statute of limitations. _See_ _Scoggins v. Dubrow, No. 4:20-cv-3487, 2021 WL 4228609, at *5 (S.D. Tex. May 28, 2021)_; _Romero, 2006 WL 367871, at *5_. Additionally, all the Moving Defendants have consented to a transfer through their alternative motion.

### 2. Court in Which the Action Could Have Been Brought

The Court **[*35]** finds this action could have been brought in the Central District of California. First, diversity jurisdiction would exist as it does in this Court. _See_ _28 U.S.C. § 1332(a)_. Further, venue there is proper under _28 U.S.C. § 1391(b)(2)_ because "a substantial part of the events or omissions giving rise to the claim occurred" there. As the Moving Defendants state, and Plaintiff does not contest:

> The [Show] was developed, produced, and edited in the Central District of California. A majority of participant interviews, including on camera interviews with Berrellez and the three cartel informants, took place in Los Angeles. In addition, the trial of Cartel members accused of Camarena's murder, at which the Plaintiff testified, took place in Los Angeles. Moreover, the [Show] was primarily created, filmed, and produced in California, and a majority of interviews with participants in the [Show] were conducted there.

(Dkt. No. 38-1 at 24) (internal citations omitted).

As to personal jurisdiction, Berrellez is a California resident, and IPC's and Amazon Studios' principal places of business are in California (Dkt. No. 1 at 7; Dkt. No. 38-1 at 10-11). Thus, these defendants are "at home" in California and subject to its general jurisdiction. **[*36]** _See_ _Ford Motor Co., 141 S. Ct. at 1024_. Although Russell is not a California resident, he has consented to the California court's exercise of personal jurisdiction over him (Dkt. No. 38-1 at 24). However, Russell's consent is not enough to show the action could have been brought in California: The "transfer [of] an action to another district is made to depend _not upon the wish or waiver of the defendant_ but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." _Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960)_ (emphasis added).

While Russell's consent is insufficient, the Court finds the California court would have personal jurisdiction over Russell through his minimum contacts in that state. Like Texas, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." _Daimler AG v. Bauman, 571 U.S. 117, 125 (2014)_. Russell was the film's director and co-producer, and it is uncontested that the Show was "developed, produced, and edited" in California, with most of its interviews filmed there. Russell has thus reached into California and purposefully availed himself of the privilege of conducting activities there.

Finally, no party has alleged this suit would not have been timely **[*37]** had it been initially brought in California. California has a one-year statute of limitations for defamation claims, _see_ _Cal. Civ. Proc. Code § 340(c)_, which begins to accrue "when the defendant publishes a defamatory statement by communicating it to a third person who 'understands its defamatory meaning as applied to the plaintiff.'" _Penrose Hill, Ltd. v. Mabray, No. 20-cv-1169, 2020 WL 4804965, at *6 (N.D. Cal. Aug. 18, 2020)_ (quoting _Shively v. Bozanich, 80 P.3d 676, 683 (Cal. 2003)_). Here, the Show premiered on July 31, 2020, and the lawsuit was filed on December 21, 2020, well within the one-year limitations period (_see_ Dkt. No. 1 at 1-2).

**IV. CONCLUSION**

For the foregoing reasons, the Moving Defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue is **GRANTED IN PART** and **DENIED IN PART**. While the Court lacks personal jurisdiction over the Moving Defendants, it declines to dismiss Plaintiff's claims against the Moving Defendants. Instead, the Court will transfer Plaintiff's claims against them to the Central District of California, Los Angeles Division pursuant to *28 U.S.C. § 1406(a)* and § 1631. Finally, the Court recognizes that this Order draws from evidence and arguments submitted under seal (*see* Dkt. Nos. 103-104; 107-108). Therefore, the Court has chosen to docket this Order under seal for the time being. However, the public **[*38]** has a presumptive right to access court records. *See United States v. Holy Land Found., 624 F.3d 685, 690 (5th Cir. 2010)*. Thus, the parties are **NOTICED** that **after thirty (30) days**, this Order will be unsealed in its entirety for the public's access. If the parties oppose this course of action, they must file an advisory no later than **April 13, 2022, at 12:00 p.m.** The advisory must identify *specific excerpts* of the Order that require the seal to be maintained, in whole or in part. The parties must cite specific legal reasons to support their requests— conclusory statements will not be accepted.

It is so **ORDERED**.

**SIGNED** March 18, 2022.

/s/ Marina Garcia Marmolejo

Marina Garcia Marmolejo

United States District Judge

---

End of Document

 Neutral

As of: November 8, 2023 2:31 PM Z

# *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co.*

United States District Court for the Western District of Louisiana, Lake Charles Division

August 15, 2018, Decided; August 15, 2018, Filed

CIVIL ACTION NO. 17-1114

**Reporter**

2018 U.S. Dist. LEXIS 138205 *; 2018 WL 3911362

LAKE CHARLES HARBOR & TERMINAL DISTRICT VERSUS REYNOLDS METAL COMPANY

**Subsequent History:** Magistrate's recommendation at *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co., 2019 U.S. Dist. LEXIS 25403 (W.D. La., Jan. 23, 2019)*

Motion denied by, Motion granted by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co. Llc, 2019 U.S. Dist. LEXIS 229825, 2019 WL 8323597 (W.D. La., Aug. 28, 2019)*

Summary judgment granted by, Judgment entered by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co. LLC, 2019 U.S. Dist. LEXIS 241111 (W.D. La., Oct. 1, 2019)*

Summary judgment denied by, Motion denied by, Motion granted by, Judgment entered by *Lake Charles Harbor v. Reynolds Metal Co, 2020 U.S. Dist. LEXIS 260862 (W.D. La., Feb. 3, 2020)*

Motion denied by, Judgment entered by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2021 U.S. Dist. LEXIS 109104, 2021 WL 2383918 (W.D. La., June 9, 2021)*

Motion denied by *Lake v. Reynolds Metal Co, 2021 U.S. Dist. LEXIS 237099 (W.D. La., July 20, 2021)*

Summary judgment granted by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2021 U.S. Dist. LEXIS 145325, 2021 WL 3378499 (W.D. La., Aug. 3, 2021)*

Motion denied by, Stay denied by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2021 U.S. Dist. LEXIS 167376 (W.D. La., Sept. 2, 2021)*

Summary judgment denied by, Judgment entered by *Lake Charles Harbor & Terminal Dist. v. Reynolds*

*Metals Co, 2022 U.S. Dist. LEXIS 38321, 2022 WL 627203 (W.D. La., Mar. 3, 2022)*

Summary judgment denied by, Judgment entered by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co., 2022 U.S. Dist. LEXIS 42305 (W.D. La., Mar. 9, 2022)*

Partial summary judgment granted by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 42298 (W.D. La., Mar. 9, 2022)*

Summary judgment denied by, Judgment entered by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 42700 (W.D. La., Mar. 9, 2022)*

Summary judgment denied by, Judgment entered by *Lake v. Lake Charles Harbor & Terminal Dist., 2022 U.S. Dist. LEXIS 42504 (W.D. La., Mar. 9, 2022)*

Summary judgment denied by, Judgment entered by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 42697 (W.D. La., Mar. 9, 2022)*

Motion granted by, in part, Motion denied by, in part *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 50411 (W.D. La., Mar. 21, 2022)*

Motion denied by *Lake v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 50412 (W.D. La., Mar. 21, 2022)*

Motion denied by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 50955 (W.D. La., Mar. 21, 2022)*

Motion denied by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co., 2022 U.S. Dist. LEXIS 50968 (W.D. La., Mar. 21, 2022)*

2018 U.S. Dist. LEXIS 138205, *138205

Motion denied by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 50978 (W.D. La., Mar. 21, 2022)*

Motion granted by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 50945 (W.D. La., Mar. 21, 2022)*

Motion denied by *Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co, 2022 U.S. Dist. LEXIS 56820, 2022 WL 941094 (W.D. La., Mar. 28, 2022)*

Motion granted by, in part, Motion denied by, in part *Harbor v. Reynolds Metal Co., 2022 U.S. Dist. LEXIS 65656 (W.D. La., Apr. 7, 2022)*

Motion denied by *Harbor v. Reynolds Metal Co., 2022 U.S. Dist. LEXIS 67455 (W.D. La., Apr. 11, 2022)*

**Prior History:** *Consol. Aluminum Corp. v. Alcoa, Inc., 244 F.R.D. 335, 2006 U.S. Dist. LEXIS 66642 (M.D. La., July 19, 2006)*

## Core Terms

motion to dismiss, discovery, motion to stay, magistrate judge, lack of personal jurisdiction, deny a motion

**Counsel: [*1]** For Lake Charles Harbor & Terminal District, Plaintiff: Jimmy R Faircloth, Jr, LEAD ATTORNEY, Faircloth Melton & Sobel, Alexandria, LA; Brook Landry Villa, Franklin A Hoffmann, Faircloth Melton & Sobel (BR), Baton Rouge, LA.

For Reynolds Metals Co L L C, Defendant, Third Party Plaintiff: Kerry J Miller, LEAD ATTORNEY, Daniel J Dysart, Baker Donelson et al (NO), New Orleans, LA.

For Lonza Group Ltd, Defendant: Georgia Noble Ainsworth, LEAD ATTORNEY, Forrest Ren Wilkes, Cosmich Simmons & Brown (NO), New Orleans, LA.

For Lonza Group Ltd, Lonza America Inc, Third Party Defendants: Georgia Noble Ainsworth, LEAD ATTORNEY, Forrest Ren Wilkes, Cosmich Simmons & Brown (NO), New Orleans, LA.

**Judges:** S. MAURICE HICKS JR., CHIEF UNITED STATES DISTRICT JUDGE. MAGISTRATE JUDGE KAY.

**Opinion by:** S. MAURICE HICKS JR.

## Opinion

### MEMORANDUM RULING

Before the court is an "Appeal to District Court Judge From Magistrate Judge's Order Denying Motion to Stay" (R. #59) wherein Defendants, Lonza Group Ltd. and Lonza America, Inc. (hereinafter collectively referred to as "Lonza") seek to reverse the order of the Magistrate Judge which denied Lonza's Motion to Stay.[1]

### PROCEDURAL HISTORY

The instant land contamination lawsuit was filed on September 5, **[*2]** 2017. On November 20, 2017, Defendant, Reynolds Metals Co., LLC ("Reynolds") filed a third-party complaint against Lonza pursuant to Federal Rules of Civil Procedure to assert demands and damages as a result of a Settlement Agreement and Release allegedly entered into between Lonza[2] and Reynolds.[3] Plaintiff, Lake Charles Harbor & Terminal District (the "Harbor"), amended its complaint to add Lonza Group Ltd. as a defendant.[4]

On May 4, 2018, Lonza filed a motion to dismiss for lack of personal jurisdiction[5] which is currently pending before the court.[6] Also before the court is a motion filed by Lonza to strike the Harbor's opposition to the motion to dismiss.[7] On June 22, 2018, Lonza filed a "Motion to Stay All Activity Pending an Appointment of District

---

[1] R. #52.

[2] Lonza Group, Ltd. is a foreign company with a mailing address of Meunchensteinerstrasse 38, CH-4002, Basel, Switzerland; Lonza America, Inc. is a Delaware Domestic Business Corporation with a mailing address of 1200 Bluegrass Lakes Parkway, Alpharetta, GA 30004. R. #10, ¶ ¶ 6 and 7.

[3] R. #10.

[4] R. #12; Lonza Group Ltd. is the successor in interest of Swiss Aluminum Ltd. a/k/a Alusuisse a/k/a Alusuisse Lonza Holding Ltd. ("Alusuisse").

[5] R. #42.

[6] In its motion to dismiss, Lonza contends that it does not have the requisite contacts with Louisiana to establish personal jurisdiction, and it is not the successor-in-interest to Alusuisse, an alleged parent corporation of Consolidated, which held the lease to the Leased Premises that is the subject matter of this litigation, prior to Defendant, Reynolds Metal Company.

[7] R. #47.

Court Judge and Decisions of Lonza Group LTD.'s Motion to Dismiss for Lack of Personal Jurisdiction" (R. #50). In that motion, Lonza moved to stay all activity in the matter, including, but not limited to discovery and the filing of initial disclosures, pending the appointment of a District Court Judge and subsequent to a hearing and decision on Lonza's motion to dismiss for lack of personal jurisdiction.[8]

The Harbor opposes Lonza's motion to **[*3]** stay and alternatively, requests jurisdictional discovery. The bases for Lonza's motion to stay are that there is no District Court Judge appointed to preside over the case, and the motion to dismiss for lack of jurisdiction has not been decided. Thus, Lonza contends it would be an unnecessary burden to conduct discovery and file initial disclosures. By order dated June 25, 2018, the Magistrate Judge, without reason, denied Lonza's motion to stay and further noted that the motion to dismiss had been referred to her for a Report and Recommendation.

On June 28, 2018, the Harbor filed a motion for jurisdictional discovery and by electronic order, the Magistrate Judge set briefing deadlines.[9] Shortly thereafter, Lonza filed the instant appeal.

## LAW AND ANALYSIS

The Harbor argues that the Magistrate Judge's order denying the motion to stay is not clearly erroneous or contrary to law.[10] Lonza argues that the order denying the motion to stay effectively denies Lonza the relief it seeks in its motion to dismiss for lack of jurisdiction. Lonza suggests that instead of denying the motion to stay, the Magistrate Judge should have issued a report and recommendation for review by the undersigned. Lonza **[*4]** seeks reversal of the order pursuant to *28 U.S.C.A. § 636(b)(1)(A).*[11]

---

[8] R. #50.

[9] R. #57.

[10] ***Fed. Rule Civ. Proc. 72(a)***.

[11] *28 U.S.C. § 636 (b)(1)(A)* allows a magistrate judge to determine non-dispositive matters, while *subsection (1)(B)* requires a magistrate judge to submit proposed findings and recommendations for the district court's review of a dispositive matter. ***Local Rule 72(a)*** sets the standard for review of a magistrate judge's non-dispositive ruling; an order can be set aside if it is "clearly erroneous or is contrary to law."[11] For dispositive motions, under ***Local Rule 72(b)***, the Magistrate

*28 U.S.C. § 636* governs a magistrate judge's responsibility and authority in civil matters. Under *subdivision (b)(1)* of that section, a magistrate judge may hear and determine any pre-trial matter pending before the Court, except those matters that are dispositive. On its face, a motion to stay would appear to be a continuance and not of a dispositive nature. There are instances where denying a motion to stay has the attributes of an injunction or disposition on the merits. In such instances, the magistrate judge must submit findings and recommendations to the District Court for disposition of the motion.[12] Lonza maintains that the Magistrate Judge's order effectively subjects it to the jurisdiction of the court, and therefore is dispositive of the relief sought by Lonza in its motion to dismiss.

More Specifically, Lonza contends that the Magistrate Judge did not have the authority to rule on the motion to stay because Lonza's motion to dismiss for lack of personal jurisdiction has not been determined. Furthermore, by denying the motion to stay, the court subjected Lonza to the jurisdiction of the court which is in effect, a denial of its motion to dismiss for lack of jurisdiction. **[*5]** Thus, Lonza maintains it was procedural error for the Magistrate Judge to have ruled on the motion.

The Harbor cites several cases that held that a motion to stay is a non-dispositive pre-trial matter which is reviewed on a clearly erroneous or contrary to law standard.[13] However, the Fifth Circuit has held that it is appropriate to stay discovery until preliminary questions that may dispose of the case are determined.[14] A stay of discovery is not appropriate when it could prevent a party from "having a sufficient opportunity to develop a

---

judge may only issue a recommended decision and if there is a timely objection, the district judge must engage in a *de novo* review.

[12] *Livingston v. Metro. Life Ins. Co., 2000 U.S. Dist. LEXIS 23456, 2000 WL 422242, at *4 (N.D. Tex. Mar 6, 2000).*

[13] *Parm v. Shumate, 2006 U.S. Dist. LEXIS 58552, 2006 WL 2331037, at *1 (W.D. La. Aug. 7, 2006); Wilson v. Warden Louisiana State Penitentiary, 2011 U.S. Dist. LEXIS 103092, 2011 WL 4069177, at *1 (W.D. La. Sept. 13, 2011)*(magistrate judge's decision relating to a stay is not dispositive under *§ 636(b)(1)(A); Parish of Jefferson v. S. Recovery Mgmt., Inc., 1996 U.S. Dist. LEXIS 3894, 1996 WL 144400, at *1 (E.D. La. Mar. 27, 1996).*

[14] *Petrus v. Bowen, 833 F.2d 581, 582 (5th Cir. 1987).*

2018 U.S. Dist. LEXIS 138205, *5

factual base for defending against a dispositive motion."[15]

The court agrees with Lonza that permitting discovery at this point is premature; however, the court feels that the parties should be allowed to proceed with discovery only as to the jurisdictional issues raised in Lonza's motion to dismiss for lack of personal jurisdiction.

As to Lonza's argument that the matter be stayed pending the appointment of a District Court Judge, the undersigned finds this argument lacks merit; the Western District of Louisiana has a group of Article III judges who are available to ultimately preside over this matter, and furthermore, there are specific procedures in place **[*6]** for pending cases such as this, including the pending motion to dismiss.

## CONCLUSION

Based on the foregoing, the Court will sustain Lonza's appeal in part and deny it in part. The Court will stay the proceeding against Lonza as to any discovery unrelated to the jurisdictional issues raised in Lonza's motion to dismiss for lack of personal jurisdiction. Accordingly, it is

**ORDERED** that the Order issued on June 25, 2018 (R. #52) is **VACATED**.

**IT IS FURTHER ORDERED** that the motion to stay (R. #50) is hereby **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** as to the issue that there is not an Article III District Judge assigned to the case; the motion is **GRANTED** to the extent that discovery, other than discovery related to the jurisdictional issues raised in the pending motion to dismiss for lack of personal jurisdiction, is hereby **STAYED**, pending further order.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 15th day of August, 2018.

/s/ S. Maurice Hicks Jr.

S. MAURICE HICKS JR., CHIEF JUDGE

UNITED STATES DISTRICT COURT

---

**End of Document**

---

[15] See e.g. Kutilek v. Gannon, 132 F.R. 296, 298 (D. Kan. 1990).

✚ Positive
As of: November 8, 2023 2:29 PM Z

## *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*

United States District Court for the Northern District of Texas, Fort Worth Division

January 11, 2012, Decided; January 11, 2012, Filed

NO. 4:11-CV-629-A

**Reporter**
2012 U.S. Dist. LEXIS 4192 *; 2012 WL 104980

MELLO HIELO ICE, LTD., ET AL., Plaintiffs, vs. ICE COLD VENDING LLC, ET AL., Defendants.

## Core Terms

witnesses, personal jurisdiction, venue, motion to dismiss, plaintiffs', discovery, forum state, ice machine, cause of action, minimum contact, defendants', factors, representations, convenience, contacts, machines, warranty, exercise of jurisdiction, improper venue, declarations, travel

**Counsel:**  **[\*1]** For Mello Heilo Ice, Ltd., Spirit Ice LLC, Plaintiffs: Todd C Donohue, LEAD ATTORNEY, Jeffrey Jack Wolf, The Wolf Law Firm, PC, Southlake, TX.

For Ice Cold Vending LLC, G. M. F. Industries Inc., Vincent L. Norman, Defendants: David Luther Woodward, LEAD ATTORNEY, Law Offices of David Luther Woodward PA, Pensacola, FL.

**Judges:** JOHN McBRYDE, United States District Judge.

**Opinion by:** JOHN McBRYDE

## Opinion

MEMORANDUM OPINION and ORDER

Now before the court for consideration are the motions of defendants, Ice Cold Vending LLC ("Ice Cold Vending"), G. M. F. Industries, Inc. ("GMF"), and Vincent L. Norman ("Norman"), to dismiss for want of personal jurisdiction, to dismiss for improper venue, to transfer venue, and to dismiss claims against Norman for failure to state a cause of action, and a supporting memorandum of law ("Mem. of Law"), as well as a separate motion to depose witnesses on issue of

jurisdictional facts. [1] Plaintiffs, Mello Hielo Ice, Ltd. ("Mello Hielo") and Spirit Ice, LLC ("Spirit Ice"), filed responses to the motions. Having now considered all of the parties' filings, plaintiffs' pleadings, and applicable legal authorities, the court concludes that the motion to dismiss for want of personal jurisdiction **[\*2]** should be granted as to GMF, and that the motions should in all other respects be denied.

I.

Background

Plaintiffs initiated this removed action by the filing on January 31, 2011, of their original petition in the District Court of Wise County, Texas, 271st Judicial District. Defendants removed the case to this court following the filing by plaintiffs of their second amended petition on July 25, 2011. Defendants are all citizens of the State of Florida.

In the second amended petition, plaintiffs make the following allegations:

Plaintiffs contracted with Ice Cold Vending for the purchase of commercial ice machines, to be built by GMF at its facility in Florida. During the parties' negotiations, Norman represented to plaintiffs that Ice Cold Vending would stand behind its product, make any necessary repairs, and satisfy its warranty obligations even though the machines were intended for use in Texas. Norman also assured plaintiffs that **[\*3]** the ice machines would be of sound quality, would function properly despite the Texas heat, and that the warranty work would be performed to plaintiffs' satisfaction.

---

[1] Defendants previously sought leave to proceed without local counsel or to designate local counsel, if necessary, following the court's resolution of defendants' motions. The could now concludes that the motion to proceed without local counsel should be denied.

Case 4:23-cv-00860-P   Document 30   Filed 11/08/23   Page 182 of 205   PageID 4493

Page 2 of 6
2012 U.S. Dist. LEXIS 4192, *3

Based on Norman's representations, each plaintiff purchased a commercial ice machine. Norman traveled to Texas to oversee the installation of the ice machines. Almost immediately-following installation, the machines began to malfunction. Although defendants initially attempted to repair the machines, they were never properly repaired or functional, despite defendants' representations that such repairs would be made. Spirit Ice eventually took its machine out of service.

Each plaintiff alleged claims and causes of action against Ice Cold Vending for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade Practices Act, and against all three defendants for fraud in the inducement.

II.

Grounds of the Motion

A. Motion to Dismiss for Want of Personal Jurisdiction[2]

Defendants argue that the court lacks in personam jurisdiction over them because they have insufficient contacts with Texas: they have no offices in Texas, and "on occasion may sell product to customers in states other than Florida, including Texas." Mem. of Law at 7. Defendants further argue that signing the contract in Florida does not constitute a "contact" because the agreements contemplated shipping a product to Texas, and "[m]erely by accepting an offer sent from Texas" defendants could not have reasonably anticipated being haled into court in Texas. [3] Id.

In response to the motion to dismiss for want of

_____

[2] Defendants argue that Florida law controls the court's determination of in personam jurisdiction due to the Florida choice-of-law [*4] provision in the parties' contracts. The personal jurisdiction analysis, however, concerns whether the defendant is amenable to service of process under the law of the forum state—Texas—and whether the assertion of jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment, an issue controlled by federal law. Brown v. Flowers Indus., Inc., 688 F.2d 328, 331-32 (5th Cir. 1982). Florida law thus comes into play only if and when the court reaches issues pertaining to interpretation of the parties' contracts.

[3] In the Memorandum of Law defendants state the motions are supported by the affidavit [*5] of Vincent Norman. The court was unable to locate any such affidavit.

personal jurisdiction, plaintiffs provided the declarations of Douglas Dunlap ("Dunlap"), Scott Murray ("Murray"), and Steve Chapman ("Chapman"), describing the parties' course of dealing leading to the contracts for purchase of the ice machines and the representations of Ice Cold Vending and Norman on which plaintiffs claim they relied in entering the contract.

B. Motion to Dismiss for Improper Venue

Defendants contend that plaintiffs have failed to allege any facts as would support venue in this court, and thus venue is improper pursuant to 28 U.S.C. § 1391(a).

C. Motion to Transfer Venue

In the event venue is found to be proper, defendants ask the court to transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). The basis of this argument is that defendants have their offices, residences, or principal places of business in the Middle District of Florida, all of the alleged wrongful acts occurred in that district, and defendants' employees, who may be key witnesses, are all located in Florida. Further, defendants argue that it would be inconvenient [*6] and expensive for defendants and their witnesses to travel to the Northern District of Texas, and the contract issues are to be governed by Florida law, thus making Florida a better choice of forum than Texas.

D. Motion to Dismiss Claims Against Norman

Norman contends that plaintiffs have failed to state a cause of action against him because plaintiffs' claims are barred by the two-year statute of limitations in § 16.003 of the Texas Civil Practice & Remedies Code, and because plaintiffs failed to allege any contractual relationship between him and plaintiffs or to allege any representations Norman may have made.

E. Defendants' Motion for Jurisdictional Discovery

Defendants seek leave to depose Dunlap, Murray, and Chapman to obtain jurisdictional facts. The basis of the motion for discovery is that the declarations are generally non-specific about the facts supporting plaintiffs' jurisdictional allegations. Defendants also seek to depose anyone else plaintiffs might identify with knowledge of such jurisdictional facts.

III.

Analysis

A. Personal Jurisdiction

2012 U.S. Dist. LEXIS 4192, *6

1. Law Applicable to Personal Jurisdiction

When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden **[*7]** of proving that jurisdiction exists. *Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006)*. The plaintiff need not, however, prove jurisdiction by a preponderance of the evidence; a prima facie showing is sufficient. Id. In resolving the jurisdictional issue, the court may consider anything on file in the record, including the pleadings, "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002)*.

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the nonresident defendant is amenable to service of process under the long-arm statute of the forum state, and (2) the exercise of personal jurisdiction is consistent with the *Due Process Clause of the Fourteenth Amendment*. *Id*. The Texas long-arm statute has been interpreted to reach as far as the federal Constitution permits. See, e.g., *Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 200 (Tex. 1985)* (per curiam). Accordingly, the court need only decide whether exercising jurisdiction over defendants in Texas is consistent with the *Due Process Clause*. *Revell, 317 F.3d at 469-70*.

The **[*8]** exercise of jurisdiction over a nonresident defendant comports with the *Due Process Clause* if (1) the defendant has "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)*. To establish minimum contacts with the forum state, a defendant must do some act by which it "'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Growden v. Ed Bowlin & Assocs., Inc., 733 F.2d 1149, 1151 (5th Cir. 1984)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958))*. "The defendant's conduct and connection with the forum state must be such that [it] should reasonably anticipate being haled into court in the forum state." Id. (citing *World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))*.

Minimum contacts may give rise to either specific or general jurisdiction. *Luv N' Care, 438 F.3d at 469*.

Specific jurisdiction exists when a defendant "has 'purposefully directed' [its] activities at residents of the forum, and the litigation results **[*9]** from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)* (citations omitted). Even if the controversy does not arise out of or relate to the defendant's purposeful contacts with the forum, general jurisdiction may be exercised if the defendant's contacts with the forum are sufficiently continuous and systematic to support the reasonable exercise of jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 & n.9 (1984)*.

In some cases a single act by a defendant may be sufficient to confer personal jurisdiction if the act gives rise to the plaintiff's claims, particularly when the act or communication involves an intentional tort. *Lewis v. Fresne, 252 F.3d 352, 358-59 (5th Cir. 2001)*; *Brown v. Flowers Indus., 688 F.2d 328, 332-34 (5th Cir. 1982)*. "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Lewis, 252 F.3d at 359* (brackets omitted) (quoting *Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999))*.

Once the plaintiff proves that defendant has sufficient minimum contacts with the **[*10]** forum to support jurisdiction, the burden shifts to defendant to show that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Int'l Shoe Co., 326 U.S. at 316*. In determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, the court looks to the following factors: (1) the burden on the defendant of litigating in the forum state, (2) the interests of the forum state in adjudicating the case, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)*.

2. Application of Law to Facts

Plaintiffs do not contend that the court has general jurisdiction over the defendants. As a result, the court will analyze only whether defendants have sufficient minimum contacts with Texas to support the exercise of specific jurisdiction.

The court is satisfied that Ice Cold Vending and Norman

have "minimum contacts" with Texas. Through **[*11]** the declarations of Dunlap, Murray, and Chapman, plaintiffs have alleged communications and negotiations by Norman and Ice Cold Vending with plaintiffs in Texas, the nature of which should have alerted Norman and Ice Cold Vending that they might be sued in Texas in connection with those communications. In particular, plaintiffs allege that Ice Cold Vending and Norman made fraudulent misrepresentations concerning the quality of the ice machines and the warranty work that was available and would be performed on the machines, and they allege that Norman made these representations during contract negotiations and while supervising the installation of the machines in Texas. Defendants filed nothing to controvert plaintiffs' declarations.

The alleged misrepresentations form the basis of at least one of plaintiffs' causes of action. These alleged contacts, directed at the forum state and from which a portion of the claims and causes of action arises, are sufficient to demonstrate purposeful availment and satisfy the minimum contacts necessary for the court to exercise specific jurisdiction over Norman and Ice Cold Vending. See, e.g., *Lewis, 252 F.3d at 358-59*; *Wien Air Alaska, 195 F.3d at 213*. **[*12]** [4]

In contrast, the court concludes that plaintiffs have failed to allege sufficient contacts between GMF and Texas to support a finding of in personam jurisdiction over GMF. The only allegations against GMF are that plaintiffs toured its manufacturing facilities upon invitation of Norman on behalf of Ice Cold Vending. Based on this tour, plaintiffs were led to believe the commercial ice machines were to be manufactured at GMF's facilities. These **[*13]** facts fail to allege contacts by which GMF would have reasonably anticipated being haled into court in Texas.

_____

[4] Plaintiffs allege that Norman is president of Ice Cold Vending. Defendants did not argue for application of the fiduciary shield doctrine, which holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over the individual even though the state has in personam jurisdiction over the corporation. *Stuart v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985)*. One exception to the fiduciary shield doctrine exists where the individual commits an intentional tort expressly aimed at the forum state. *Calder v. Jones, 465 U.S. 783, 789-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)*. Plaintiffs have sufficiently alleged that Norman committed an intentional tort, thus rendering the fiduciary shield doctrine inapplicable.

Because plaintiffs have established Norman's and Ice Cold Vending's minimum contacts with Texas, the burden shifts to defendants to show that assertion of jurisdiction over them would be unfair. *Wien Air Alaska, 195 F.3d at 215*. Defendants failed to address any of the fairness factors in their motion. The court concludes that the exercise of jurisdiction over Norman and Ice Cold Vending is consistent with "traditional notions of fair play and substantial justice." Id. (citations omitted).

B. Improper Venue

Defendants rely on the general venue statue, *28 U.S.C. § 1391*, and argue that jurisdiction is proper in the Middle District of Florida, rather than the Northern District of Texas.

As the United States Supreme Court has explained, however, *§ 1391* has no application to a removed action. *Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665, 73 S. Ct. 900, 97 L. Ed. 1331 (1953)*. Venue of removed actions is governed by *28 U.S.C. § 1441(a)*. Id. Accordingly, venue is proper in the Fort Worth Division of the United States District Court for the Northern District of Texas, which is the district and division embracing **[*14]** the place where the action was pending at the time of removal. *28 U.S.C. § 1441(a)*. The motion to dismiss for improper venue is denied.

C. Transfer Venue

*Section 1404(a)* provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the language of the statute suggests, the threshold determination under *§ 1404(a)* is whether the action might have been brought in the proposed destination venue. *In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004)* (per curiam). If so, the court must then determine whether "convenience" and "the interest of justice" warrant the requested transfer. As the Fifth Circuit explained:

The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. **[*15]** The public concerns include: (1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [and] the application of foreign law.

Id. (citations omitted).

The party moving for transfer bears the burden of showing that transfer is appropriate. *In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008)* (en banc). It must demonstrate based on the factors enumerated above that the transferee venue is "clearly more convenient" than the plaintiff's choice of venue. Id.

Plaintiffs do not deny that this action might have been brought in the Middle District of Florida. Thus, the dispositive issue is whether the convenience of the parties and witnesses and the interest of justice would be served if this action were tried in the Middle District of Florida rather than the Northern District of Texas.

Turning to the relevant private-interest factors, the court finds that they weigh heavily in favor of neither Florida nor Texas. While defendants argue that their offices and principal places [*16] of business, and presumably their sources of proof, are in Florida, Spirit Ice's principal place of business is in Texas, Mello Hielo's principal office is in Mississippi, and those are likely also the locations of their sources of proof. The commercial ice machines that are the subject of the litigation are also located in Texas, and one is in the Northern District of Texas.

Defendants claim it will be inconvenient and expensive for them and their witnesses, who are employees, to travel to Texas to defend this suit. The reverse is true as well, however: plaintiffs' witnesses and employees are located primarily in Texas, and they would face similar expense and inconvenience in traveling to Florida to prosecute this action.

Defendants contend it would be "impossible" for them to require their key witnesses to travel to Texas. However, because defendants' witnesses are also their employees, the court is not persuaded that defendants would be unable to secure their attendance at a trial in Texas. [5] Further, to the extent plaintiffs intend to call

end-users of the commercial ice machines to testify, as they contend, the burden on these non-party witnesses would be greater than that imposed [*17] on any of the parties to the action, nor would those witnesses be subject to compulsory process in Florida.

At most, the private-interest factors appear fairly equally divided. The possibility of non-party witnesses tips the scale against transfer. Additionally, although the plaintiffs' choice of forum is neither conclusive nor determinative, *In re Horseshoe Entertainment, 337 F.3d 429, 434 (5th Cir. 2003)* (per curiam), it is an additional factor to consider, and it too weighs against transfer.

As to the public-interest factors, defendants argue only that because of the Florida choice-of-law provision in the contracts, a Florida judge would be more familiar with interpretation and application of applicable law. As plaintiffs point out, however, they have also asserted a claim under the Texas DTPA, with which a Florida judge is less likely to be familiar.

Considering all of the factors, the court finds that defendants have failed to carry their burden to persuade the court [*18] that maintenance of this action in the Middle District of Florida is "clearly more convenient" than in the Northern District of Texas. The motion to transfer venue is denied.

D. Failure to State A Claim Against Norman

Norman's reliance on *§ 16.003 of the Texas Civil Practice & Remedies Code* in support of his motion is misplaced. The only claim and cause of action alleged against Norman is fraudulent inducement. *Section 16.003* does not apply to such claims. Rather, claims of fraud are governed by the four-year limitations period imposed by *section 16.004*.

Additionally, contrary to defendants' assertions, the second amended petition contains a number of representations allegedly made by Norman to plaintiffs, which plaintiffs contend were false, that form the basis of plaintiffs' fraudulent inducement claim against Norman. Accordingly, the motion to dismiss claims against Norman is denied.

E. Motion for Discovery

A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction.

---

[5] Defendants did not address the fourth private-interest factor, the "practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG, 371 F.3d*

201, 203 (5th Cir. 2004)* (per curiam).

*Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000).* **[*19]** Defendants have directed the court to no authority where a defendant sought or was allowed jurisdictional discovery, but the court can see no reason why a lesser burden should not be imposed in such a case.

Defendants here have alleged no facts they anticipate obtaining by deposing plaintiffs' witnesses, nor do they attempt to explain why they are unable to controvert the pertinent portions of plaintiffs' declarations without the depositions. Whatever defendants expected to obtain from the requested discovery, they have failed to explain how it would assist the court in its jurisdictional determination. The motion for discovery is denied.

IV.

Order

Therefore,

The court ORDERS that defendants' motion to dismiss for lack of personal jurisdiction be, and is hereby, granted as to GMF, and that all claims and causes of action asserted by plaintiffs against GMF be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissal.

The court further ORDERS that defendants' motion to dismiss for lack of personal jurisdiction, motion to dismiss for improper venue, motion to transfer venue, motion to dismiss for **[*20]** failure to state a claim for relief against Norman, and motion for discovery be, and are hereby, denied.

The court further ORDERS that defendants' motion for leave to proceed without local counsel be, and is hereby, denied, and that by January 25, 2012, defendants file a written designation of local counsel, consistent with the requirements of LR 83.10 of the Local Civil Rules of the United States District Court for the Northern District of Texas.

SIGNED January 11, 2012.

/s/ John McBryde

JOHN McBRYDE

United States District Judge

**End of Document**

 Positive
As of: November 8, 2023 2:29 PM Z

## *Stone Metals Am. v. Eubank*

United States District Court for the Northern District of Texas, Dallas Division

November 5, 2020, Decided; November 5, 2020, Filed

No. 3:20-cv-253-K

**Reporter**
2020 U.S. Dist. LEXIS 220143 *; 2020 WL 6877704

STONE METALS AMERICA, LLC, Plaintiff, v. MALCOLM B. EUBANK, III and ZETWERK PVT. LTD, Defendants.

**Subsequent History:** Adopted by *Stone Metals Am. v. Eubank, 2020 U.S. Dist. LEXIS 218699 (N.D. Tex., Nov. 23, 2020)*

**Prior History:** *Stone Metals Am., LLC v. Eubank, 2020 U.S. Dist. LEXIS 18639, 2020 WL 570906 (N.D. Tex., Feb. 5, 2020)*

## Core Terms

contacts, personal jurisdiction, non-resident, discovery, forum state, general jurisdiction, motion to dismiss, Manufacturing, customers, business development, recommendation, alleges, email, fails, confidential information, magistrate judge, minimum contact, due process, proprietary, undersigned, imputed, files, sales

**Counsel:** [*1] For Stone Metals America LLC, Plaintiff: Justin W R Renshaw, LEAD ATTORNEY, Renshaw PC, Houston, TX; James Craig Erdle, Joseph D Zopolsky, Glast Phillips & Murray PC, Dallas, TX.

**Judges:** DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DAVID L. HORAN

## Opinion

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Defendant Zetwerk Manufacturing Businesses Pvt. Ltd. has filed a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(2)*, *see* Dkt. No. 12, which United States District Judge Ed Kinkeade has referred to the undersigned United States magistrate judge for findings, conclusions, and recommendation, *see* Dkt. No. 18.

Zetwerk was sued as Zetwerk Pvt. Ltd. *See* Dkt. No. 1. In its *Rule 12(b)(2)* motion, it states that its proper name is Zetwerk Manufacturing Businesses Pvt. Ltd.

Plaintiff Stone Metals America, LLC has filed a response, *see* Dkt. No. 16, and Zetwerk has filed a reply, *see* Dkt. No. 17.

For the following reasons, and as explained below, the undersigned concludes that the motion to dismiss should be granted because the Court lacks personal jurisdiction over non-resident defendant Zetwerk.

### Background

Stone Metals, a Texas limited liability company with its principal place of business in Richardson, Texas, employed Defendant [*2] Michael B. Eubank, a Florida resident, as a Regional Sales Manager, *see* Dkt. No. 16-1 at 2. As a requirement of his employment, Eubank executed a Confidential Information and Proprietary Rights Agreement, which strictly limits the disclosure and use of Stone Metals's information. *See* Dkt. No. 4-1; Dkt. No. 6-1 at 2-3.

Zetwerk is a foreign company located in the Republic of India. It posted a job listing on ZipRecruiter for a Business Development Manager "Texas, NY." Dkt. No. 16-2at 3-4.

Zetwerk communicated with Eubank via email about the position. *See* Dkt. No. 4-2. During negotiations, Zetwerk received emails from Eubank disclosing contacts by "six more companies" and "two additional companies" that sought connections to Indian manufacturers, either because they sought alternatives to Chinese manufacturers or because the Chinese manufacturers

had disclaimed an interest in those companies. *See id.* at 8-9.

Eubank accepted the business development manager position and gave notice of his resignation from Stone Metals on November 4, 2019. *See* Dkt. No. 16-1 at 3.

On November 15, 2019, Eubank's last date of employment with Stone Metals, Eubank deleted files consisting of Stone Metals's sales and projects **[*3]** in the company's Dropbox storage. *See id.*; Dkt. No. 16-4. On November 20, 2019, Eubank again logged into Stone Metals's company Dropbox and deleted additional files. *See* Dkt. No. 16-1 at 3; Dkt. No. 16-4. Stone Metals blocked Eubank's access to the company Dropbox the next day. *See* Dkt. No. 16-4 at 4.

On November 25, 2019, Eubank contacted one of Stone Metals's customers using a Zetwerk email address and requested that the customer send him information so he could provide a quote. *See* Dkt. No. 4-4; Dkt. No. 16-1 at 4. The customer replied to Eubank's email address with Stone Metals. *See* Dkt. No. 4-4; Dkt. No. 16-1 at 4.

Stone Metals sued Eubank and Zetwerk for claims arising from Eubank's alleged violations of the Confidential Information and Proprietary Rights Agreement. Stone Metals sued Eubank for breach of contract, conversion, harmful access to computer, and violation of the Computer Fraud and Abuse Act. Stone Metals sued both Eubank and Zetwerk for tortious interference with existing and prospective relations and conspiracy. *See* Dkt. No. 4.

Stone Metals alleges that Zetwerk interfered with its agreement with Eubank by hiring Eubank, accepting Stone Metals's proprietary and confidential **[*4]** information from Eubank, and profiting from it through sales that it would have not obtained otherwise. Stone Metals alleges that Zetwerk conspired with Eubank to steal Stone Metals's proprietary and confidential information with the goal to use that information for their own benefit and profit in direct unlawful competition with Stone Metals. *See id.* at 11-13.

Stone Metals also alleges that Eubank and Zetwerk are jointly and severally liable because "the tortious acts of the Defendants have created an indivisible injury." *Id.* at 16.

Zetwerk contends that Texas courts lacks personal jurisdiction over it. It asserts that Stone Metals fails to establish general jurisdiction because Zetwerk has no contacts with Texas. And Zetwerk argues that Stone

Metals fails to establish specific jurisdiction because it has not performed a single act that demonstrates either purposeful availment of the benefits of the forum or conduct purposely directed at Texas. "Instead, [it asserts that] Stone Metals's contentions regarding Zetwerk's connections to Texas hinge solely on its bare allegations regarding" Eubank's conduct. Dkt. No. 13 at 3.

Stone Metals contends that the Court may exercise personal jurisdiction over Zetwerk **[*5]** because Zetwerk allegedly committed intentional torts in Texas by soliciting a business development manager for territory including Texas, hiring Eubank to fill that position, and, through Eubank, accessing Stone Metals's files and contacting Stone Metals's customers. Stone Metals argues that personal jurisdiction may be established by imputing Eubank's conduct to Zetwerk under an agency theory. Stone Metals also requests that the Court defer ruling on the motion and allow limited jurisdictional discovery "if the Court is inclined" to grant the motion to dismiss. Dkt. No. 16 at 12.

The undersigned now concludes that the Court should grant the motion to dismiss and deny Stone Metals's request for jurisdictional discovery.

**Legal Standards**

I. Personal Jurisdiction

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 431 (5th Cir. 2014)*; *Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)*. If the court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *See Gardemal v. Westin Hotel Co., 186 F.3d 588, 592 (5th Cir. 1999)*; *Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994)*.

A federal district court may exercise personal jurisdiction over a non-resident **[*6]** defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc., 564 F.3d 386, 398 (5th Cir. 2009)*. "As the Texas long-arm statute extends as far as constitutional due process allows, we only

consider the second step of the inquiry." *McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009)*.

The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)*. The Due Process Clause ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King, 471 U.S. at 472* (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)*.

First, to establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits **[\*7]** and protections of its laws." *Burger King, 471 U.S. at 474-75* (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id. at 474; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)*.

Second, in determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's purposeful contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota, 504 U.S. 298, 307, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992)*. Thus, "[i]n determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.'" *McFadin, 587 F.3d at 759-60* (quoting *Wien Air Alaska, Inc., v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999) )*.

Five factors guide a court's analysis of whether exercising personal jurisdiction is fair and reasonable: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states **[\*8]** in furthering fundamental social policies." *Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 473 (5th Cir. 2006)*.

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 871 (5th Cir. 2000)*. "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 777 (5th Cir. 1986)* (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)*. "First, the relationship must arise out of contacts that the 'defendant *himself* creates with the forum State." *Id.* (emphasis in original) (quoting *Burger King, 471 U.S. at 475*). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id. at 285* (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific jurisdiction for each **[\*9]** claim asserted. *Dontos v. Vendomation NZ Ltd., 582 F. App'x 338, 343 (5th Cir. 2014)* (quoting *Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006))*.

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 41-16. The Supreme Court has observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman, 571 U.S. 117, 134 S. Ct. 746, 761, 187 L. Ed. 2d 624 (2014)* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) )* (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id. at 760*. It is, therefore, "incredibly difficult" to establish general

jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs., 768 F.3d 429, 2014 WL 4799716, at *2*. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717 (5th Cir. 1999)*; *see also Johnston, 523 F.3d at 614* (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general **[*10]** jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King, 471 U.S. at 474* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) )*. The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' " *Id. at 475* (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1068 n.9 (5th Cir. 1992)*.

II. Jurisdictional Discovery

When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)*. The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000)* (citation omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify **[*11]** the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC, No. 4:11-cv-629-A, 2012 U.S. Dist. LEXIS 4192, 2012 WL 104980, at *7 (N.D. Tex. Jan.11, 2012)* (citing *Kelly, 213 F.3d at 855*). A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery

would uncover and how those facts would support personal jurisdiction. *See id.; see also King v. Hawgwild Air, LLC, No. 3:08-cv-153-L, 2008 U.S. Dist. LEXIS 49887, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008)*. A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction and where the plaintiff is waging a "fishing expedition" into jurisdictional facts. *Combat Zone Corp. v. John/Jane Does 1-13, No. 3:12-cv-3927-B, 2013 U.S. Dist. LEXIS 8522, 2013 WL 230382, at *2 (N.D. Tex. Jan. 22, 2013)* (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir.2003))*.

**Analysis**

I. Stone Metals fails to establish personal jurisdiction.

The undersigned finds that Stone Metals has failed to establish a *prima facie* case that either general or specific jurisdiction exists over non-resident defendant Zetwerk.

A. Stone Metals fails to establish general jurisdiction.

Although Stone Metals contends that it "appears" that there is general jurisdiction, Dkt. No. 16 at 10, Stone Metals fails to establish that Zetwerk was "at home" in the **[*12]** State of Texas or had a lasting physical presence here, *Goodyear Dunlop Tires, 131 S. Ct. at 2854*. There is no evidence before the Court that Zetwerk has any contacts with Texas, much less that any contacts are continuous and systematic such that the Court may exercise general jurisdiction over an action against Zetwerk regardless of whether the action is related to Zetwerk's contact with the forum. *See Helicopetros Nacionales de Colombia, S.A., 466 U.S. at 414-15*.

Zetwerk is a foreign company incorporated in the Republic of India with its principal place of business in Bengaluru, India. Its goal is "to provide reliable and predictable supply of high-quality manufactured products to our customers across the world," Dkt. No. 16-3 at 3, and its "long-term vision is to build an Amazon of Manufacturing, catering to global demand through a global supply footprint," Dkt. No. 16-2 at 4.

Zetwerk maintains no offices, neither owns nor leases property, and has no bank accounts, employees, suppliers, or vendors in Texas. It has never been a Texas corporation, applied for or held a certificate to do business in Texas, or appointed an agent for service of

process in Texas. *See* Dkt. No. 14-1. It has "customers across the world," including in North America. Dkt. No. 16-3 at 3. But, at the time that **[*13]** Zetwerk filed its motion to dismiss, it did not and had never had any Texas clients and had not profited from sales to a Texas company." Dkt. No. 13-1 at 1.

Zetwerk's job posting on an internet website for a Business Development Manager "Texas, NY" does not support a finding of general jurisdiction. *See CDx Holdings, Inc. v. Goldenson, No. 3:12-cv-394-N-BH, 2012 U.S. Dist. LEXIS 201052, 2012 WL 1308985, at *4 (N.D. Tex. Oct. 26, 2012)* (citing *Bearry v. Beech Aircraft Corp., 818 F.2d 370, 376 (5th Cir. 1987))*.

In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another but must examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 779 (5th Cir. 1986)*. Here, they do not.

B. Stone Metals fails to establish specific jurisdiction.

Stone Metals contends that the Court has specific jurisdiction because Zetwerk committed intentional torts in Texas. Stone Metals alleges that Zetwerk conspired with Eubank to steal Stone Metals's proprietary and confidential information and used that information to tortiously interfere with Stone Metals's relationships with current and prospective clients.

Stone Metals argues that personal jurisdiction can be based on imputing Eubank's Texas contacts **[*14]** to Zetwerk under an agency theory. *See Alliantgroup, L.P. v. Feingold, CIV. A. H-09-0479, 2009 U.S. Dist. LEXIS 70730, 2009 WL 2498551, at *6 (S.D. Tex. Aug. 12, 2009)* (citing cases holding that an agent's jurisdiction contacts may be imputed to the principal).

Zetwerk argues that Eubank's actions cannot be imputed to it because Eubank is an independent contractor. *See O'Quinn v. World Indus. Constructors, Inc., 874 F. Supp. 143, 145 (E.D. Tex. 1995)* (citing *Smith v. Piper Aircraft Corp., 425 F.2d 823, 826 (5th Cir. 1970))*. Zetwerk asserts that, contrary to Stone Metals's allegations, Eubank is not and has never been a Zetwerk employee. Zetwerk explains that it engaged Safeguard International Limited, who in turn engaged Precision Global Consulting to hire Eubank as an independent contractor. *See* Dkt. No. 13-1. Construing this disputed fact in Stone Metals's favor, as the Court

must do for purposes of this motion to dismiss, the undersigned will consider Eubank to be a Zetwerk employee.

The inquiry whether this Court may assert specific jurisdiction over nonresident defendant Zetwerk focuses on the relationship among Zetwerk, Texas, and the litigation, and it is Zetwerk's suit-related conduct that must create the connection with Texas. *See Walden, 571 U.S. at 283-84*. And the minimum contacts analysis looks to Zetwerk's contacts with Texas, not Zetwerk's contacts with someone who has contacts with Texas. *See id. at 284*.

Zetwerk's contacts with Texas are too tenuous to establish specific jurisdiction. **[*15]** Zetwerk solicited a business development manager for a region including but not limited to Texas. The person hired to fill the position was a Florida resident whose only Texas connection was the location of his former employer.

And, even if specific jurisdiction could be established through an agency relationship, Stone Metals does not indicate what Texas contacts may be imputed to Zetwerk as Eubank's employer. Zetwerk and Eubank exchanged emails about the job while Eubank was in Florida. There was no contact between Zetwerk and Eubank in Texas. During negotiations, Zetwerk received two emails from Eubank stating that he had been contacted by eight unnamed companies seeking products from India. Stone Metals does not allege that any of those companies was in Texas. Eubank deleted some of Stone Metals's sales and projects files on his last day of employment with Stone Metals and after he went to work for Zetwerk. But Stone Metals does not allege that those files were for sales and projects in Texas. Eubank also solicited one of Stone Metals's clients in his capacity as Business Development Manager of Zetwerk, but that customer was not located in Texas. *See* Dkt. No. 4-4.

Stone Metals has **[*16]** failed to make a prima facie case of specific jurisdiction.

II. The Court should deny the request for jurisdictional discovery.

Stone Metals requests limited jurisdictional discovery "if the Court is inclined to grant" the motion to dismiss. It seeks an opportunity to discover additional jurisdictional "facts surrounding Zetwerk's business development and expansion generally in Texas, and specifically with Eubank." Dkt. No. 16 at 12.

Case 4:23-cv-00860-P  Document 30  Filed 11/08/23  Page 192 of 205  PageID 303

Page 6 of 6
2020 U.S. Dist. LEXIS 220143, *16

Zetwerk objects to this request because it "appears to be based on speculation that additional facts establishing jurisdiction may exist if Stone Metals is provided the broad and potentially invasive" discovery sought. Dkt. No. 17 at 7. It also objects because Stone Metals does not dispute the facts showing that Zetwerk has no contacts with Texas "but instead vaguely suggest there *may be* some fact that would support jurisdiction." *Id.* (emphasis in original).

Stone Metals is not entitled to jurisdictional discovery because it has not made a preliminary showing of personal jurisdiction. *See Fielding, 415 F.3d at 429*. And the Court need not allow a plaintiff to conduct a jurisdictional "fishing expedition" seeking facts to support a claim of personal jurisdiction. *See Best Little Promohouse [*17] in Tex. LLC v. Yankee Pennysaver, Inc., 3:14-cv-1824-BN, 2014 U.S. Dist. LEXIS 152195, 2014 WL 5431630, at *8 (N.D. Tex. Oct. 27, 2014)*.

**Recommendation**

The Court should grant Properly Named Defendant Zetwerk Manufacturing Businesses Pvt. Ltd.'s Motion to Dismiss Pursuant to *Fed. R. Civ. P. 12(b)(2)* [Dkt. No. 12] and should dismiss with prejudice Stone Metals's claims against Zetwerk.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See 28 U.S.C. ɪ/ʃ 636(b)(1)*; FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon **[*18]** grounds of plain error. *See Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

DATED: November 5, 2020

/s/ David L. Horan

DAVID L. HORAN

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**


Positive
As of: November 8, 2023 2:53 PM Z

# *Tailift USA, Inc. v. Tailift Co., Ltd.*

United States District Court for the Northern District of Texas, Dallas Division

March 26, 2004, Decided ; March 26, 2004, Filed

Civil Action No. 3:03-CV-0196-M

**Reporter**
2004 U.S. Dist. LEXIS 28648 *; 2004 WL 722244

TAILIFT USA, INC., Plaintiff, v. TAILIFT CO., LTD., Defendant and Counter-Plaintiff, v. TAILIFT USA, INC., ROWAN CORNIL, INC., d/b/a SUNBELT INDUSTRIAL TRUCKS, and WARREN CORNIL, Counter-Defendants.

## Core Terms

deposition, principal place of business, deposed, travel, corporate representative, overcome a presumption, protective order, circumstances, counterclaims, notice, third-party, discovery, disputes, hardship

## Case Summary

### Procedural Posture

In a declaratory judgment case, plaintiff distributor, a Texas corporation, sued defendant company, headquartered in Taiwan, Republic of China, claiming that it anticipatorily breached an agreement to maintain the distributor as the exclusive distributor of forklifts in the United States, Mexico, and Canada. The distributor served a notice to depose the company's corporate representative in Dallas, Texas. The company moved for a protective order.

### Overview

The distributor failed to overcome the presumption that the deposition should take place at the company's principal place of business. The distributor's argument that all counsel of record were located in the present district assumed that the company did not have at its principal place of business in Taiwan, and that its local counsel would also have to travel to Taiwan for the deposition. The distributor also alleged that it sought to depose only one witness, but there had not been any showing that only one witness will be designated for deposition on all 33 topics. The mere possibility of discovery disputes did not necessarily weigh in favor of conducting the deposition in the present district. The distributor did not allege that it would suffer financial

hardship if its counsel traveled to Taiwan. The fact that the one presumed deponent, the sole owner and chief executive officer, had traveled to the United States only seven times since 1998 was insufficient to overcome the presumption. The fact that the company had filed permissive counterclaims also did not overcome the presumption. The company's third-party complaint did not weigh in favor of overcoming the presumption.

### Outcome

The company's motion for a protective order was granted. The deposition of the company's corporate representative would be conducted at the company's principal place of business in Taiwan on a mutually agreeable date and time within 30 days from the date of the order, unless otherwise agreed by the parties.

## LexisNexis® Headnotes

Business & Corporate Law > Agency Relationships > Types > General Overview

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

Business & Corporate Law > ... > Corporate Formation > Place of Incorporation > Principal Office

**HN1**[ ] **Agency Relationships, Types**

*Fed. R. Civ. P. 26(c)* requires that the movant establish good cause to obtain a protective order. A court has broad discretion to determine the appropriate place for examination. That discretion is guided by the presumption that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when the

corporation is the defendant. That presumption is based on the concept that it is the plaintiff who brings the lawsuit and who exercises the first choice as to the forum. Courts have determined that the presumption satisfies the *Rule 26(c)* requirement of good cause.

Business & Corporate Law > Agency Relationships > Types > General Overview

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Business & Corporate Law > Agency Relationships > General Overview

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

*HN2*[↓]  **Agency Relationships, Types**

A party may overcome the presumption in *Fed. R. Civ. P. 26(c)* that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business by showing that peculiar circumstances justify conducting the deposition at a location other than the corporation's principal place of business. A court in the United States District Court for the Northern District of Texas has enumerated five factors for consideration when determining whether sufficient circumstances had been shown to overcome the presumption: (1) counsel for the parties are located in the forum district, (2) the deposing party is seeking to depose only one corporate representative, (3) the corporation chose a corporate representative that resides outside the location of the principal place of business and the forum district, (4) significant discovery disputes may arise and there is an anticipated necessity of the resolution by the forum court, and (5) the claim's nature and the parties' relationship is such that an appropriate adjustment of the equities favors a deposition site in the forum district. A court must ultimately consider each case on its own facts and the equities of the particular situation.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

*HN3*[↓]  **Depositions, Oral Depositions**

In attempting to overcome the presumption in *Fed. R. Civ. P. 26(c)* that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, the convenience of counsel is less compelling than any hardship to the witnesses.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

*HN4*[↓]  **Depositions, Oral Depositions**

Whether the persons sought to be deposed often engage in travel for business purposes is a factor that some courts have considered in determining whether the presumption in *Fed. R. Civ. P. 26(c)* that the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business has been overcome.

Civil Procedure > ... > Pleadings > Counterclaims > Compulsory Counterclaims

Civil Procedure > ... > Pleadings > Counterclaims > General Overview

Civil Procedure > ... > Pleadings > Counterclaims > Permissive Counterclaims

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

*HN5*[↓]  **Counterclaims, Compulsory Counterclaims**

Courts have considered the filing of counterclaims, including whether the counterclaims are permissive or compulsory, when determining the location of a defendant's deposition.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

*HN6*[⬇] **Depositions, Oral Depositions**

The fact that the defendants filed a third-party action does not require deviation from the general rule favoring the corporation's place of business where requested deposition was noticed by plaintiff and did not pertain to third-party complaint.

**Counsel: [*1]** For Tailift USA Inc, Plaintiff: Robert B Cousins, Jr, Lawrence S Fischman, Glast Phillips & Murray, Dallas, TX.

For Tailift Co Ltd, Defendant: Randal C Shaffer, Jeffrey C Mateer, Mateer & Shaffer -- Dallas, Dallas, TX.

For Earl F Hale, Jr, Arbitrator: Pro se, Dallas, TX.

For Warren Cornil, ThirdParty Defendant: Robert B Cousins, Jr, Lawrence S Fischman, Glast Phillips & Murray, Dallas, TX.

For Rowan Cornil Inc, d/b/a Sunbelt Industrial Trucks, ThirdParty Defendant: Robert B Cousins, Jr, Lawrence S Fischman, Glast Phillips & Murray, Dallas, TX.

For Tailift Co Ltd, Counter Claimant: Randal C Shaffer, Mateer & Shaffer -- Dallas, Dallas, TX.

**Judges:** IRMA CARRILLO RAMIREZ, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** IRMA CARRILLO RAMIREZ

# Opinion

**ORDER**

Before the Court are *Defendant and Counter-Plaintiff's Motion for Protective Order and Brief in Support*, filed January 20, 2004, and *Tailift USA, Inc., Rowan Cornil, Inc., and Warren Cornil's Response to Tailift Co., Ltd.'s Motion for Protective Order and Brief in Support*, filed January 27, 2004. The preceding filings were referred to the undersigned United States Magistrate Judge for hearing, if necessary, and for **[*2]** determination pursuant to the District Court's Order Referring Motion,

filed January 22, 2004. Based on the motion, the response, the evidence submitted therewith, and the applicable law, the Court is of the opinion that the motion should be **GRANTED**.

**I.**

This is a declaratory judgment action filed by Tailift USA, Inc. ("Plaintiff") against Tailift Co., Ltd. ("Defendant") to clarify the parties' duties and obligations under an agreement to distribute forklifts throughout the United States, Mexico, and Canada. Plaintiff is a Texas corporation, with its principal place of business in Dallas, Texas. (Compl. at 1.) Defendant is an entity created and existing under the laws of the Republic of China, and its principal place of business is located in Ta Ya Hsiang, Taichung Hsien, Taiwan, R.O.C. *See id.* Plaintiff claims that Defendant anticipatorily breached an agreement to maintain Plaintiff as the exclusive distributor of forklifts in the United States, Mexico, and Canada. *See id.* On March 14, 2003, Defendant filed its Original Answer, Counterclaim and Third-Party Complaint seeking relief through several causes of action against Plaintiff's president, Rowan Cornil, Inc. **[*3]** , d/b/a Sunbelt Industrial Trucks and Warren Cornil. (Resp. at 3.)

On January 13, 2004, Plaintiff served a Notice of Deposition to depose Defendant in Dallas, Texas, on January 21, 2004. (Resp. at Ex. A.) Counsel for Defendant had previously informed Plaintiff's counsel that a deposition of Defendant's corporate representative "must occur in Taiwan, at their place of business" via letter dated January 7, 2004. (Mot. at Ex. B.) Defendant objects to the time and location of the deposition and filed the instant motion to quash the deposition notice and obtain a protective order requiring that the deposition occur only at Defendant's principal place of business in Taiwan, R.O.C.

**II.**

Defendant moves for a protective order under *FED. R. CIV. P. 26(c)* on the grounds that its corporate representative should be deposed at the location of its principal place of business in Taiwan, R.O.C. *HN1*[⬆] *Rule 26(c)* requires that the movant establish "good cause" to obtain a protective order. This court has broad discretion to determine the appropriate place for examination. *See Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp., 147 F.R.D. 125, 127 (N.D. Tex.*

Case 4:23-cv-00860-P   Document 30   Filed 11/08/23   Page 196 of 205   PageID 5507

Page 4 of 6
2004 U.S. Dist. LEXIS 28648, *3

*1992).* **[*4]** This discretion is guided by the presumption that "'the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when . . . the corporation is the defendant." *Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)*; *see also Resolution Trust Corp., 147 F.R.D. at 127* (citing *Turner v. Prudential Ins. Co., 119 F.R.D. 381, 383 (M.D.N.C. 1988)*; *Moore v. Pyrotech Corp., 137 F.R.D. 356, 357 (D. Kan. 1991)*; *Farquhar v. Shelden, 116 F.R.D. 70 (E.D. Mich. 1987))*. This presumption is based on the concept that it is the plaintiff who brings the lawsuit and who exercises the first choice as to the forum. *See Payton v. Sears, Roebuck & Co., 148 F.R.D. 667, 669 (N.D. Ga. 1993)* (citing *Farquhar, 116 F.R.D. at 72*). Courts have determined that this presumption satisfies the *Rule 26(c)* requirement of good cause. *See, e.g., Chris-Craft Indus. Prods., Inc. v. Kuraray Co., 184 F.R.D. 605, 607 (N.D. Ill. 1999)* ("the purposes underlying the general rule that the depositions should proceed at the **[*5]** corporation's principal place of business create a presumption that the corporation has good cause for a protective order.") (quoting *Sears v. American Entm't Group, Inc., 1995 U.S. Dist. LEXIS 1754, 1995 WL 66411, at *1 (N.D. Ill. Feb. 13, 1995))*.

*HN2*[↑] A party may overcome the presumption, however, by showing that peculiar circumstances justify conducting the deposition at a location other than the corporation's principal place of business. *See Salter, 593 F.2d at 652* (noting that the deposing party failed to show "peculiar circumstances" to rebut the presumption); *see also Chris-Craft Indus. Prods., Inc., 184 F.R.D. at 607* (noting that the corporation's objection to a deposition elsewhere should be sustained unless there are "unusual circumstances"); *accord Zuckert v. Berkliff Corp., 96 F.R.D. 161, 162 (N.D. Ill. 1982)* (same) (citing *Salter, 593 F.2d at 652*). In *Resolution Trust Corp.*, a court in this District enumerated five factors for consideration when determining whether sufficient circumstances had been shown to overcome the presumption:

1. Counsel for the parties are located in the forum district;

2. The **[*6]** deposing party is seeking to depose only one corporate representative;

3. The corporation chose a corporate representative that resides outside the location of the principal place of business and the forum district;

4. Significant discovery disputes may arise and there is an anticipated necessity of the resolution by the forum court; and

5. The claim's nature and the parties' relationship is such that "an appropriate adjustment of the equities favors a deposition site in the forum district."

*Resolution Trust Corp., 147 F.R.D. at 127* (quoting *Turner, 119 F.R.D. at 383-84*). The court concluded that it "must ultimately consider each case on its own facts and the equities of the particular situation." *Id.*

In this case, Plaintiff alleges that Defendant's motion "sets forth no facts that favor taking its deposition in Taiwan." However, the burden to show sufficient circumstances to overcome the presumption that Defendant's corporate representative should be deposed at its principal place of business is on Plaintiff. *See Salter, 593 F.2d at 652* (finding that *plaintiff* did not show peculiar circumstances to **[*7]** overcome the presumption); *see also Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 107 (S.D.N.Y. 2001)* (same); *Payton, 148 F.R.D. at 669* (finding that *plaintiffs* produced no compelling reason to depart from the general rule).

In support of its position that the deposition should take place in this District, Plaintiff notes that all counsel of record are located here, which is the first factor cited in *Resolution Trust Corp.* This assertion assumes that Defendant does not have counsel at its principal place of business in Taiwan, and that its local counsel in this District would also have to travel to Taiwan for the deposition. Even if this assumption is correct, *HN3*[↑] "the convenience of counsel is less compelling than any hardship to the witnesses." *Six West Retail Acquisition, Inc., 203 F.R.D. at 108* (quoting *Devlin v. Transportation Communs. Int'l Union, 2000 U.S. Dist. LEXIS 264, 2000 WL 28173, at *4 (S.D.N.Y. Jan. 14, 2000))*. Plaintiff has not presented evidence that its counsel would incur hardship by traveling to Taiwan. Courts have held that plaintiffs normally cannot complain if they must take discovery **[*8]** at great distances from the forum. *See Payton, 148 F.R.D. at 669* (citing *Farquhar, 116 F.R.D. at 72*).

Plaintiff also alleges that it seeks to depose only one witness, which is the second factor considered in *Resolution Trust Corp.* However, Plaintiff's deposition notice was issued pursuant to *FED. R. CIV. P. 30(b)(6)* and seeks the deposition of "one or more officers, directors, or managing agents, or other persons" regarding thirty-three different topics. There has been

no showing that only one witness will be designated for deposition on all thirty-three topics. Having the deposition at the Defendant's principal place of business will be more efficient to the extent that additional witnesses are needed for some of the listed topics.

As to the fourth factor, although Plaintiff argues that the deposition should be conducted in this forum in order to have ready resort to the Court to resolve discovery disputes, there have been no previous discovery disputes in this case. The mere possibility of such disputes does not necessarily weigh in favor of conducting the deposition here. *See Rapoca Energy Co., L.P. v. AMCI Exp. Corp., 199 F.R.D. 191, 193 (W.D. Va. 2001)* **[*9]** (finding that this factor did not weigh against the presumption because the court had "no reason to anticipate the likelihood of additional discovery disputes which would necessitate the court's intervention.").

Regarding the fifth factor, both parties in this case are corporations, and Plaintiff has not alleged that it would suffer financial hardship if its counsel traveled to Taiwan. *See Turner, 119 F.R.D. at 384* (finding that financial hardship favored the plaintiff who was "a small employer" and the defendant was "a large company whose officers may be expected to travel with minimal inconvenience."); *see also Rapoca Energy Co., 199 F.R.D. at 193* (noting that the case involved two corporate parties, and the deposing party showed no evidence that paying for its counsel's travel would be a hardship). Although Plaintiff generally alleges that it would be more efficient and inexpensive to secure a deposition location and court reporter in this District, Plaintiff fails to provide any evidence that it would be inefficient or costly to secure these matters in Taiwan. In this case, both corporations appear equally "well-equipped to bear the costs associated **[*10]** with the deposition" *See Six West Retail Acquisition, Inc., 203 F.R.D. at 107*.

In addition to the foregoing *Resolution Trust Corp.* factors, Plaintiff alleges that the one presumed deponent, the sole owner and chief executive officer who resides in Taiwan, has traveled to Dallas on a number of occasions in furtherance of his company's business. (Resp. at Ex. C.) **HN4[↑]** Whether the persons sought to be deposed often engage in travel for business purposes is another factor that some courts have considered. *See Rapoca Energy Co., 199 F.R.D. at 193; Armsey v. Medshares Mgmt. Servs., Inc., 184 F.R.D. 569, 571 (W.D. Va. 1998)*. Even assuming *arguendo* that the owner will be the lone witness, the

fact that he has traveled to the United States only seven times since 1998, and only for a few days each time, hardly presents a frequency of presence in the United States that weighs in favor of overcoming the presumption. *See Six West Retail Acquisition, Inc., 203 F.R.D. at 108* (rejecting the plaintiff's argument that the witness regularly traveled to forum district on business and that scheduling deposition on one of the trips would lessen **[*11]** disruption to the witness's schedule and the defendant's business).

Plaintiff further contends that Defendant should be treated as a plaintiff in this action because it asserts permissive counterclaims. (Mot. at 4-5.) **HN5[↑]** Courts in other districts have considered the filing of counterclaims, including whether the counterclaims are permissive or compulsory, when determining the location of a defendant's deposition. *See Rapoca Energy Co., 199 F.R.D. at 193; Chris-Craft Indus. Prods., Inc., 184 F.R.D. at 607-08; Armsey, 184 F.R.D. at 571; Zuckert, 96 F.R.D. at 162-63*. This Court find the reasoning in *Rapoca Energy Co.* persuasive. Whether or not Defendant's counterclaims are permissive or compulsory, it would be unfair to require Defendant's corporate representatives to travel here "simply because it made the determination that economy would be served by the same court hearing" its counterclaims, in light of the above factors. *See Rapoca Energy Co., 199 F.R.D. at 194*. "Clearly the parties' dispute can be resolved far more easily, more expeditiously, less expensively and with far more efficient use of **[*12]** judicial resources if all aspects of the dispute are consolidated before the same court." *Id.* (citing *Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, 1999 U.S. Dist. LEXIS 12137, 1999 WL 592399 (E.D. Pa. Aug. 5, 1999))*.

Finally, Plaintiff also contends that Defendant should be treated as a plaintiff in this action based on its filing of a third party action. (Mot. at 4-5.) This factor was considered by the court in *Chris-Craft Indus. Prods., Inc., 184 F.R.D. at 608*. As in *Chris-Craft Industrial Products, Inc.*, the Court notes that this deposition was noticed by Plaintiff, not the third-party defendant. Further, a review of the thirty-three topics listed in the deposition notice reveals issues that appear to be primarily related to Plaintiff's complaint and the answer thereto. Under these circumstances, and for the same reasons as the counterclaims, the third-party complaint does not weigh in favor of overcoming the presumption. *See id.* (finding that **HN6[↑]** the fact that the defendants filed a third-party action did not require deviation from the general rule favoring the corporation's place of

2004 U.S. Dist. LEXIS 28648, *12

business where requested deposition was noticed by plaintiff and did **[*13]** not pertain to third-party complaint).

**III.**

After considering all of the foregoing factors, the Court finds that Plaintiff has failed to overcome the presumption that Defendant's corporate representative should be deposed at its principal place of business in Taiwan, R.O.C. Consequently, *Defendant and Counter-Plaintiff's Motion for Protective Order and Brief in Support* is hereby **GRANTED**. It is therefore

**ORDERED** that the deposition of Defendant's corporate representative shall be conducted at Defendant's principal place of business in Taiwan, R.O.C. on a mutually agreeable date and time within 30 days from the date of this Order, unless otherwise agreed by the parties.

**SO ORDERED** on this 26th day of March 2004.

IRMA CARRILLO RAMIREZ

UNITED STATES MAGISTRATE JUDGE

---

End of Document


Cited
As of: November 8, 2023 2:33 PM Z

## *Viahart, LLC v. Arkview LLC*

United States District Court for the Eastern District of Texas

August 20, 2020, Decided; August 20, 2020, Filed

No. 6:19-cv-00406

**Reporter**

2020 U.S. Dist. LEXIS 151205 *; 2020 WL 4905542

Viahart, LLC, Plaintiff, v. Arkview LLC et al., Defendants.

## Core Terms

contacts, personal jurisdiction, fulfillment, e-commerce, platform, Online, argues, internet, website, sales, residents, forum state, entities, products, motion to dismiss, no contact, discovery, marketing, cases, declaration, interactive, targeted

**Counsel:** **[*1]** For Viahart, LLC, Plaintiff: Wendy B Mills, WB Mills, PLLC, Dallas, TX.

For Best Choice Products, Inc. a/k/a BCP, f/k/a Sky Billiards, Inc., Defendant: Gregory David Yoder, LEAD ATTORNEY, Best Choice Products, Inc., Tustin, CA.

For Comfortscape, LLC, Jesus Diaz Maso, Defendants: Alton L. Hare, LEAD ATTORNEY, Pillsbury Winthrop Shaw Pittman LLP - Washington, Washington, DC; Brian Christopher Nash, Pillsbury Winthrop Shaw Pittman LLP - Austin, Austin, TX; David Jeanchung Tsai, Pillsbury Winthop Shaw Pittman, LLP - San Francisco, San Francisco, CA.

For Creative Kids Far East, Inc., Defendant: Benjamin Charkow, Amster, Rothstein & Ebenstein LLP, New York, NY; Debra Elaine Gunter, Eric Hugh Findlay, Findlay Craft PC, Tyler, TX.

For PlayLearn USA, Inc., Defendant: Debra Elaine Gunter, Eric Hugh Findlay, Findlay Craft PC, Tyler, TX; Mark Berkowitz, Amster Rothstein & Ebenstein, LLP, New York, NY.

For Playshire, LLC, Defendant, Counter Claimant, Counter Defendant: Brandon James Leavitt, Eldredge Law Firm, Mansfield, TX.

**Judges:** J. CAMPBELL BARKER, United States District Judge.

**Opinion by:** J. CAMPBELL BARKER

## Opinion

**ORDER**

This case arises from a dispute between manufacturers of certain engineering-type children's toys. Plaintiff **[*2]** alleges that defendants have infringed on its non-Patent intellectual property related to the "Brainflakes" interlocking-disk toy.

Before the court are the following motions:

• Defendant PlayLearn USA, Inc.'s motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(2)* (for lack of personal jurisdiction) and *12(b)(6)* (for failure to state a claim upon which relief may be granted) (Doc. 11), which was briefed through the reply (Docs. 18 & 19).

• Defendant Comfortscape LLC's motion to dismiss pursuant to *Rule 12(b)(2)* (Doc. 39), which was briefed through the sur-reply (Docs. 59, 65, & 69).

• Defendant Jesus Diaz Maso's motion to dismiss pursuant to *Rule 12(b)(2)* and *12(b)(6)* (Doc. 40), which was briefed through the sur-reply (Docs. 60, 66, & 70).

• Finally, defendant Creative Kids Far East, Inc.'s motion to dismiss pursuant to *Rule 12(b)(2)* and *12(b)(6)* (Doc. 58), which was briefed through the sur-reply (Docs. 62, 67, & 71).

For the reasons set forth below, the court **grants** the motions to dismiss on *Rule 12(b)(2)* personal-jurisdiction grounds. Accordingly, the court will not address the alternative failure-to-state-a-claim argument in those motions to dismiss. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 231-32 (5th*

Cir. 2012).

## Background

Defendant PlayLearn is a New York corporation that does not maintain "any employees, office locations, or other **[*3]** presence in Texas" and does not engage in any advertising targeted specifically toward Texas residents, "by geographically-focused online marketing or otherwise." Doc. 11 at 6. It does operate its own e-commerce website and sell through Amazon.com Inc.'s e-commerce platform. Doc. 11-2. PlayLearn's sales through Amazon are "fulfilled by Amazon," meaning that Amazon stores the products in its facilities and "pick[s], pack[s], ship[s], and provide[s] customer service for [those] products." *Id.* It is unknown whether Amazon stored any of PlayLearn's products in Texas or performed any other fulfillment services in Texas. PlayLearn's only sales to Texas residents have been through Amazon. *Id.* PlayLearn argues that it cannot be automatically subject to the jurisdiction of this court simply because it operates an e-commerce site accessible in Texas and made some sales to Texas residents that were fulfilled by Amazon. Doc. 11 at 5-7.

Defendant Comfortscape is organized in Delaware. Doc. 65-1. Defendant Maso is a Florida resident and the president of Comfortscape. *Id.* Comfortscape, like PlayLearn, has no contacts with Texas other than presence on Amazon's platform and sales through Amazon's **[*4]** fulfillment services. Doc. 39 at 4. Maso's only contacts with Texas are two personal trips and a layover in an airport. Doc. 40-1. Comfortscape argues that it cannot automatically be subject to the jurisdiction of this court simply because it uses Amazon's platform and fulfillment services. Doc. 39 at 4-5. Maso argues that he cannot be subject to the jurisdiction of this court because of actions attributable to Comfortscape, even if those actions would subject Comfortscape to the jurisdiction of the court. Doc. 40 at 6-8.

Defendant Creative Kids is a New York corporation. Doc. 58 at 7. Creative Kids sells the product in question to another entity, "Creative Kids Online LLC," also based in New York, which sells the product to consumers and other businesses. *Id.* at 2-3. Creative Kids does no marketing, except through Amazon, and that marketing is not targeted to any particular state. *Id.* at 7. Creative Kids argues that it has no contacts with Texas that could subject it to the jurisdiction of this court.

With respect to PlayLearn, Comfortscape, and Maso,

plaintiff argues that their presence on Amazon's platform and their sales to Texas residents through Amazon is sufficient to establish personal jurisdiction. **[*5]** Docs. 18 at 7-11; 59 at 5-10; & 60 at 5-9. Plaintiff makes the same argument as to Creative Kids but also attempts to argue, without citing authority, that Creative Kids' relationship with Creative Kids Online LLC subjects it to jurisdiction here. Doc. 62 at 5-6, 8-12.

## Legal Standard

Federal courts follow the law of the forum state in determining the bounds of *in personam* jurisdiction. *Daimler AG v. Bauman, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)*. The Texas long-arm statute grants personal jurisdiction to the full extent allowed by federal due-process limits and, therefore, this inquiry becomes one of federal constitutional limits. *Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007)*; *Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)*. Due-process limitations dictate that a defendant is subject to personal jurisdiction only if it "has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG, 571 U.S. at 126* (cleaned up). This inquiry has two parts.

In the first part of the inquiry, the court must determine whether the defendant has purposefully availed itself of the privilege of conducting business in the forum state and of "the benefits and protections" of the forum's laws. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*. If so, it is "presumptively not unreasonable to require [it] to submit to the burdens **[*6]** of litigation in that forum as well." *Id.* Specific jurisdiction, as opposed to general jurisdiction, exists where "the suit arises out of or relates to" the foreign defendant's "minimum contacts" with the forum. *Daimler AG, 571 U.S. at 127*. Thus, the focus of the analysis is on the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore, 571 U.S. 277, 284, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)*. And this analysis involves three principles. First, the contacts must be those of the defendant itself, rather than the unilateral act of some third party, and those contacts must be with the forum state, rather than with persons in the forum state. *Id. at 284-86*. Second, the contacts must be purposeful, rather than random or fortuitous. *Id. at 286* (citing *Burger King, 471 U.S. at 475*). Third, the defendant must seek some benefit or advantage by its contacts with the forum. *See Burger King, 471 U.S. at*

Case 4:23-cv-00860-P   Document 30   Filed 11/08/23   Page 201 of 205   PageID 512

Page 3 of 7
2020 U.S. Dist. LEXIS 151205, *6

_473-76_.

In the second part of the inquiry, maintenance of the suit in the selected forum must comply with traditional notions of fair play and substantial justice. _Id. at 476-78_. The court need not analyze the second inquiry where the first inquiry fails.

The touchstone of the personal-jurisdiction analysis is whether the defendant "should reasonably anticipate being haled into court" in the forum, given its relevant conduct. _Id. at 474_. But foreseeability is not the ultimate [*7] concern and is constrained by the above framework and by the principle that jurisdiction is primarily a question of authority rather than fairness. _See J. McIntyre Mach., Ltd v. Nicastro, 564 U.S. 873, 881-84, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)_. Thus, jurisdiction may only rest on the defendant's purposeful contacts that manifest its intention to submit to jurisdiction. _Id._; _Wilson v. Belin, 20 F.3d 644, 648-49 (5th Cir. 1994)_.

The internet presents unique challenges in conducting a personal-jurisdiction analysis. But the same framework and rules apply, and each case must be analyzed independently for compliance with due process, taking into account all internet and non-internet contacts. _Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 226-27 (5th Cir. 2012)_. The Fifth Circuit has adopted the _Zippo_ analysis to aid in evaluating internet-based contacts. _Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999)_ (citing _Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))_. _Zippo_ created a sliding scale of internet contacts, starting at one end where a hypothetical defendant enters into contracts which "involve the knowing and repeated transmission of computer files over the internet." _Id._ This kind of defendant would be subject to specific jurisdiction for cases arising from those contacts. At the other end of the spectrum is a hypothetical defendant who maintains a "passive website that does nothing more than advertise." _Id._ Such a defendant would not be subject to specific jurisdiction in the forum. [*8] For cases in the middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." _Id._

Technological advances and the internet have "alter[ed] the landscape of personal jurisdiction." But "technology cannot eviscerate the constitutional limits" of a court's power to exercise jurisdiction over a defendant. _J-L Chieftan, Inc. v. W. Skyways, Inc., 351 F. Supp. 2d 587, 593 (E.D. Tex. 2004)_ (citing _ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002))_. Thus, "even in the strange realm of internet-related contacts, the standard for personal jurisdiction remains that a non-resident defendant must have purposefully availed itself of the benefits and protections of the forum's laws." _Applied Food Scis., Inc. v. New Star 21, Inc., No. W-07-CA-359, 2009 U.S. Dist. LEXIS 132722, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009)_ (citing _Burger King Corp., 471 U.S. at 474_). As a result, courts have held that _Zippo_ is not a replacement for the traditional analysis, but rather a supplement. _Vitamins Online v. Dynamic Indus., No. 2:13-cv-665, 2014 U.S. Dist. LEXIS 17258, 2014 WL 545864, at *2 (D. Utah Feb. 10, 2014)_ (citing _Shrader v. Biddinger, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011))_; _see also Pervasive Software Inc., 688 F.3d at 227 n.7_.

The court is therefore conscious that in applying the traditional analysis, supplemented by _Zippo_, it must "ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" [*9] _be2 LLC v. Ivanov, 642 F.3d 555, 558 (7th Cir. 2011)_. The defendant must somehow purposefully target the forum state. _Id._ (collecting cases); _Pervasive Software Inc., 688 F.3d at 227-28_; _Guidecraft, Inc. v. OJCommerce, LLC, No. 2:18-cv-1247, 2019 U.S. Dist. LEXIS 84471, 2019 WL 2373440, at *5 (W.D. Pa. May 20, 2019)_ (citing _Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003))_.

Where, as here, the court does not hold an evidentiary hearing, the plaintiff bears the burden of establishing a _prima facie_ case of personal jurisdiction. _Sangha v. Navig8 Shipmanagement Private Ltd., 882 F.3d 96, 101 (5th Cir. 2018)_. The court need not constrain its inquiry to the pleadings and may consider the record. _Id._ Plaintiff's jurisdictional allegations must be taken as true, and conflicts of facts in the record must be resolved in favor of plaintiff, but that does not mean that a prima facie case has automatically been presented. _Id._; _Wilson, 20 F.3d at 648_. Furthermore, the court need not credit conclusory allegations, even when uncontroverted. _Applied Food Scis., 2009 U.S. Dist. LEXIS 132722, 2009 WL 9120113, at *2_ (citing _Panda Brandywine Corp. v. Potomac Elec. Power, 253 F.3d 865, 868 (5th Cir. 2001))_.

## Discussion

Plaintiff's jurisdictional statement, as to personal

jurisdiction, is as follows:

This Court may properly exercise personal jurisdiction over Defendants, as each of the Defendants direct business activities toward and conduct business with consumers throughout the United States, including Texas residents through their respective websites and/or their respective online marketplace accounts, including without limitation, their **[\*10]** Amazon accounts identified in Schedule A attached hereto (collectively, "Defendants' Internet Stores"). Further, Defendants operate or have operated interactive Internet Stores through which, Texas residents can purchase products bearing counterfeit versions of Viahart's trademarks.

Doc. 1 at 4-5.

Having reviewed the briefing and exhibits, the court has identified the following potential contacts: (1) the maintenance of e-commerce platforms, including use of Amazon's platform (as to PlayLearn and Comfortscape); (2) the use of Amazon's fulfillment services (as to PlayLearn and Comfortscape); (3) serving as the owner or officer of an entity potentially subject to jurisdiction (as to Maso); and (4) sales to a related, but distinct, entity that, in turn, has contacts with Texas (as to Creative Kids). The court examines each in turn.

## A. Defendants PlayLearn and Comfortscape

PlayLearn argues that plaintiff attempts to establish jurisdiction over every defendant in every state merely by virtue of each defendant's e-commerce sites, which are equally accessible and usable from anywhere in the country. *See generally* Doc. 11. In support of its motion, PlayLearn provided the declaration of its director **[\*11]** of operations, Gabriel Newhouse. Doc. 11-2. That declaration states, in relevant part, that the product in question was available for sale on PlayLearn's own e-commerce website and on Amazon's e-commerce platform. *Id.* at 2. Importantly, sales to Texas residents were only made through Amazon and were "fulfilled by Amazon," meaning that Amazon stored the product in Amazon's facilities and "picked, packed, shipped, and provided customer service for th[ose] products." *Id.* at 2-3. As noted above, it is unknown whether Amazon performed any of those functions in Texas.

Comfortscape argues that it has no contacts with Texas other than its presence on Amazon's e-commerce platform and sales fulfilled by Amazon, and that those contacts are insufficient to establish personal

jurisdiction. Doc. 39 at 4.

Plaintiff argues that PlayLearn and Comfortscape cannot hide behind Amazon because Amazon is merely an agent acting on their behalf. Docs. 18 at 7-10 & 59 at 6-9. Plaintiff argues, without pointing to any specific evidence, that the product must have been stored in an Amazon warehouse located in Texas and that the fulfillment services were performed in Texas. Plaintiff attempts to distinguish PlayLearn and Comfortscape's **[\*12]** cited authorities but spends less time explaining why using Amazon's platform and fulfillment services constitutes an intentional contact with Texas. Plaintiff cites almost no authority to support its own arguments, and its arguments are unclear and unhelpful in relation to the legal framework at play and in relation to PlayLearn and Comfortscape's arguments and authorities.

The Fifth Circuit places particular emphasis on the intentionality of contacts made over the internet. *Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 227-28 (5th Cir. 2012)* ("In many cases where specific jurisdiction is unconstitutional, it is not because the defendant's contacts with the forum are 'insufficient;' after all one may be enough. Often the difficulty is not the lack of contacts but rather that such contacts that exist do not count because they have not been established purposefully by the defendant."). Therefore, "website interactivity is important only insofar as it reflects commercial activity, and then only insofar as that commercial activity demonstrates purposeful targeting of residents of the forum state or purposeful availment of the benefits or privileges of the forum state." *Id. at 228* (quoting *Shamsuddin v. Vitamin Research Prods., 346 F. Supp. 2d 804, 813 (D. Md. 2004))*.

The court is persuaded that "the mere operation of a commercially interactive **[\*13]** web site should not subject the operator to jurisdiction anywhere in the world." *Guidecraft, Inc. v. OJCommerce, LLC, No. 2:18-cv-1247, 2019 U.S. Dist. LEXIS 84471, 2019 WL 2373440, at \*5 (W.D. Pa. May 20, 2019)* (quoting *Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003))*. That was the rationale and holding in *Pervasive Software*, though less clearly stated. *688 F.3d at 226-28*. The *Guidecraft* case, like the instant case, dealt with a defendant that maintained its own e-commerce website and also sold products through Amazon. *2019 U.S. Dist. LEXIS 84471, 2019 WL 2373440, at \*1*. The court finds the analysis in that case persuasive. Here, plaintiff fails to identify any intentional

contacts with the forum that go beyond use of the generally accessible Amazon e-commerce platform.

Plaintiff attempts to distinguish *Guidecraft* by arguing that that case did not involve the use of Amazon's fulfilment services. The court is unpersuaded. The Fifth Circuit has held that it "is unreasonable to expect that, merely by utilizing servers owned by a [Texas]-based company, [a foreign defendant] should have foreseen that it could be haled into a [Texas] court and held to account for the contents of its website." *GreatFence.com, Inc. v Bailey, 726 Fed. App'x 260, 261 (5th Cir. 2018)* (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003))*. In *GreatFence*, the defendant did not have any role in selecting the location of the servers, and the "administration, maintenance, and upkeep" of the website had occurred outside **[\*14]** Texas. *Id.*

In this case, PlayLearn and Comfortscape similarly cannot control where Amazon stores their products or location where any of the other fulfillment services are performed. Clearly, PlayLearn and Comfortscape chose to list their products on Amazon's e-commerce platform simply to "profit from the wide geographic reach of the internet," which is not enough to subject them to personal jurisdiction in any state where the internet may reach. *Guidecraft, 2019 U.S. Dist. LEXIS 84471, 2019 WL 2373440, at \*5*. Furthermore, the fact that Amazon possesses capacity to fulfil and ship orders to any of the 50 states further undermines the idea that PlayLearn and Comfortscape's use of Amazon's platform and services is focused in a meaningful sense on Texas. So PlayLearn and Comfortscape's use of Amazon's services cannot establish jurisdiction.

Neither can Amazon's actions be attributed to them to establish jurisdiction. The actions of an agent, but not the actions of an independent contractor, may subject the principal to personal jurisdiction. *O'Quinn v. World Indus. Constructors, No. 95-40258, 1995 U.S. App. LEXIS 42237, 1995 WL 581830, at \*2 (5th Cir. Sep. 19, 1995)*. It is established in Texas that "in order for a principal-agent relationship to be established, the principal must have the right to control both the means and the details of the process by which the agent accomplishes **[\*15]** the actions at issue." *Id.* Here, the use of Amazon's fulfillment services establishes, at best, independent-contractor relationships. So Amazon's actions cannot subject PlayLearn or Comfortscape to jurisdiction in this forum.

Plaintiff cited *Milo & Gabby LLC v. Amazon.com, Inc.,*

*693 Fed. App'x 879 (Fed. Cir. 2017)*, for part of its argument. That case had nothing to do with personal jurisdiction and is therefore inapplicable and unpersuasive. That portion of plaintiff's argument, like much of plaintiff's response, simply muddied the waters and conflated issues. Plaintiff also cited to *PetEdge, Inc. v. Fortress Secure Sols., LLC, 144 F. Supp. 3d 249 (D. Mass. 2015)*. But that case was a patent infringement case, subject to the Federal Circuit's standard for personal jurisdiction arising from patent infringement. *Id. at 252*. The court finds the reasoning there distinct from the applicable law of the Fifth Circuit in this non-patent case. Similarly, plaintiff cited *Otter Prods. v. Cloudseller, LLC, No. 19-cv-630, 2019 U.S. Dist. LEXIS 224515 (D. Colo. Dec. 3, 2019)*. Again, the court finds the reasoning and holding in that case to be unpersuasive under the applicable Fifth Circuit case law.

The court is not persuaded that use of Amazon's fulfillment services is a sufficiently intentional contact with Texas. Furthermore, the court is not persuaded that the sale of product to Texas residents through Amazon's **[\*16]** platform is anything more than the fortuitous result of that platform's global presence. Finally, PlayLearn and Comfortscape's maintenance of their own presences on the Amazon e-commerce platform, which took place outside Texas and was not targeted intentionally toward Texas, is also insufficient to confer jurisdiction in Texas. Plaintiff has pointed to no other potential contacts in support of jurisdiction. Therefore, the court finds that it lacks personal jurisdiction over PlayLearn and Comfortscape.

**B. Defendant Maso**.

Defendant Maso argues that he has no contacts with Texas that could subject him to personal jurisdiction in this court. Doc. 40 at 6. He further argues that he cannot be subjected to jurisdiction here simply because of the actions of his co-defendant Comfortscape. *Id.* at 6-7. He states that there is no reason to attribute Comfortscape's actions to him, even though he is president of the company, and that even if those actions could be attributed to him, they are insufficient to subject either Comfortscape or himself to jurisdiction. *Id.*

Plaintiff repeats its argument made as to PlayLearn and Comfortscape. Doc. 60 at 5-9. Plaintiff also disputes Maso's arguments regarding difference **[\*17]** between his liability for Comfortscape's actions and his liability for his own actions, and about the possible need for an amendment to the complaint to clarify the allegations

against Maso. *Id.* at 12-13.

The court need not analyze Maso's possible liability under any theory. Maso has no contacts of his own with this forum state that would subject him to jurisdiction here. And, regardless of whether Comfortscape's actions could be attributed to him, those contacts are insufficient to subject either Comfortscape or Maso to jurisdiction here, as discussed above. Therefore, the court finds that it lacks personal jurisdiction over Maso.

**C. Defendant Creative Kids**.

Creative Kids argues that it has no contacts with Texas that could support an exercise of jurisdiction. Doc. 58 at 5-8. In support of its argument, Creative Kids provided the declaration of Yisroel Schriber, its "director of e-commerce." Doc. 58-1. According to that declaration, Creative Kids does no marketing except on Amazon, and that marketing is not directed to any particular state. *Id.* at 2. Its only sales of the relevant product are to a related but distinct entity, Creative Kids Online LLC ("CK Online"), which is organized and located in New **[*18]** York. *Id.* at 2-3. Plaintiff's own evidence shows that both of these entities are properly registered in New York and are distinct. Docs. 62-8 & 62-9. CK Online operates its own e-commerce website and "makes sales to other online entities" such as Amazon and Ebay. Doc. 58-1 at 2-3.

Plaintiff again repeats its argument about e-commerce and Amazon's fulfillment services, despite Creative Kids' evidence that it does not make any sales online or use Amazon's fulfillment services. Doc. 62 at 8-12. Plaintiff also makes vague, confusing, and irrelevant arguments about the trade-name under which CK Online markets and sells the product in question and about the internet domain name used by CK Online. *Id.* at 5-6. Plaintiff also consistently treats the two entities as being the same. It may be that this is an attempt to argue that Creative Kids and CK Online should be treated as alter-egos. But plaintiff provided no authority for this argument in its response and did not provide a clear statement of how the entities are allegedly acting as alter egos. Nor did it provide any authority to show that an alter-ego theory can establish personal jurisdiction. Moreover, a defendant "may permissibly structure his primary conduct **[*19]** so as to avoid being haled into court in a particular state." *Stuart v. Spademan, 772 F.2d 1185, 1190 (5th Cir. 1985)* (citing *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980))*.

Plaintiff submitted a number of exhibits with its response, only one of which actually has to do with this defendant's contacts with Texas. That was a bill of lading, showing that Creative Kids shipped "toys and craft kits" to a buyer in Texas. Doc. 68-4. However, this document does not contradict Creative Kids' declaration, as it does not show or even indicate that the product in question in this case was actually part of that shipment. Accordingly, this exhibit cannot support an exercise of specific jurisdiction because it does not create a connection between the defendant, the forum, and the litigation.

Plaintiff did cite two authorities on its "alter-ego" argument in its sur-reply. Doc. 71 at 5. But neither of those cases had anything to do with personal jurisdiction. Instead they are cases regarding liability under Texas law. *See Bell Oil & Gas Co. v. Allied Chem. Corp., 431 S.W.2d 336 (Tex. 1968)*; *SSP Partners v. Gladstrong Invs. (USA) Corp., 275 S.W.3d 444 (Tex. 2008)*. Therefore, plaintiff's argument is not persuasive.

In sum, the court cannot accept attorney argument as evidence and attorney argument cannot create a conflict of facts to be resolved in the plaintiff's favor. Plaintiff has not made a *prima facie* showing of jurisdiction, and the **[*20]** court finds that it lacks personal jurisdiction over Creative Kids.

**Conclusion**

Plaintiff made an identical request for jurisdictional discovery in each of its responses. Docs. 18 at 13, 59 at 11-12, 60 at 11, & 62 at 14-15. But to be entitled to that kind of discovery, a plaintiff must make a preliminary showing of jurisdiction that "suggest[s] with reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005)* (quoting *Toys "R" Us, Inc., 318 F.3d at 456*). Here, plaintiff has not made such a *prima facie* showing of jurisdiction and has not made the kind of preliminary showing required to obtain discovery. None of plaintiff's assertions or exhibits show "with reasonable particularity" the possible existence of any contacts other than those discussed and rejected in this order. Moreover, parties seeking jurisdictional discovery must "identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC, No. 4:11-cv-629, 2012 U.S. Dist. LEXIS 4192, 2012 WL 104980, at *7 (N.D. Tex Jan. 11,*

2020 U.S. Dist. LEXIS 151205, *20

*2012)* (citing *Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000))*. Plaintiff did not provide that key information, and so the court will not exercise its discretion to grant discovery. *Id.*

The motions to dismiss made by defendants **[*21]** PlayLearn USA, Inc.; Comfortscape LLC; Jesus Diaz Maso; and Creative Kids Far East, Inc. (Docs. 11, 39, 40, & 58) are **granted**. All claims against those defendants are **dismissed without prejudice**, and those defendants shall be **terminated**.

*So ordered by the court on August 20, 2020.*

/s/ J. Campbell Barker

J. CAMPBELL BARKER

United States District Judge

---