**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**APPENDIX IN SUPPORT OF DEFENDANT SKIPLAGGED, INC.'S**
**MOTION TO ENTER PROTECTIVE ORDER ADDRESSING**
**CONFIDENTIALITY OF CERTAIN DOCUMENTS AND BRIEF IN SUPPORT**

William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone:     (817) 336-2800
Facsimile:     (817) 877-1863

Aaron Z. Tobin
State Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
State Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
State Bar No. 24098959
acampbell@condontobin.com
CONDON TOBIN SLADEK THORNTON
  NERENBERG PLLC
Telephone:     (214) 265-3800
Facsimile:     (214) 691-6311

ATTORNEYS FOR DEFENDANT,
SKIPLAGGED, INC.

1

# INDEX

Page

**SECTION 1:**          **Exhibits:**

1      Bill Kirkman e-mail to American's Counsel dated 12/15/23
       which sends proposed *Protective Order*                    APP 005

2      Proposed *Protective Order*                                APP 007


**SECTION II:**          **Non-Published Lexis Cases Cited in *Motion*:**     APP 021

1      *BNSF Ry. Co. v. Panhandle N. R.R., LLC*, No. 4:16-cv-01061-O,     APP 022
       2017 U.S. Dist. LEXIS 222564 (N.D. Tex. May 25, 2017)

2      *MBA Eng'g Inc. v. Matrix Tr. Co*., No. 3:20-CV-01915-E, 2023      APP 025
       U.S. Dist. LEXIS 49638 (N.D. Tex. March 23, 2023)

3      *Nra of Am. v. Ackerman McQueen*, No. 3:19-CV-2074-G-BK,          APP 031
       2020 U.S. Dist. LEXIS 259195 (N.D. Tex. June 22, 2020)

4      *StoneEagle Servs. v. Gillman*, No. 3:11-cv-2408-P, 2013 U.S. Dist.   APP 034
       LEXIS 161509 (N.D. Tex. Nov. 13, 2013)

5      *United States ex rel. Long v. GSD&M Idea City LLC*,             APP 038
       No. 3:11-cv-1154-O, 2014 U.S. Dist. LEXIS 198453
       (N.D. Tex. Jan. 3, 2014)

Respectfully submitted,

By:    /s/ *William L. Kirkman*
        William L. Kirkman
        State Bar No. 11518700
        billk@kirkmanlawfirm.com
        Preston B. Sawyer
        State Bar No. 24102465
        prestons@kirkmanlawfirm.com
        KIRKMAN LAW FIRM, PLLC
        201 Main Street, Suite 1160
        Fort Worth, Texas 76102
        Telephone:    (817) 336-2800
        Facsimile:    (817) 877-1863

        Aaron Z. Tobin
        State Bar No. 24028045
        atobin@condontobin.com
        Kendal B. Reed
        State Bar No. 24048755
        kreed@condontobin.com
        Abigail R.S. Campbell
        State Bar No. 24098959
        acampbell@condontobin.com
        CONDON TOBIN SLADEK THORNTON
         NERENBERG PLLC
        8080 Park Lane, Suite 700
        Dallas, Texas 75231
        Telephone:    (214) 265-3800
        Facsimile:    (214) 691-6311

        ATTORNEYS FOR DEFENDANT,
        SKIPLAGGED, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 15, 2023, a true and correct copy of the

foregoing was served via the Court's ECF system upon all counsel of record as indicated:

        Messrs. Dee J. Kelly, Jr. and Lars L. Berg
         and Ms. Julia G. Wisenberg
        Kelly Hart & Hallman LLP
        201 Main Street, Suite 2500
        Fort Worth, Texas 76102

Ms. Bina Palnitkar
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Mr. Nathan J. Muyskens
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

Messrs. Aaron Z. Tobin and Kendal B. Reed
  and Ms. Abigail R.S. Campbell
Condon Tobin Sladek Thornton Nerenberg PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231

*/s/William L. Kirkman*
William L. Kirkman

# APP EX 1

**Preston Sawyer**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Friday, December 15, 2023 10:59 AM |
| **To:** | Dee Kelly; lars.berg@kellyhart.com; julia.wisenberg@kellyhart.com; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com |
| **Cc:** | Aaron Z. Tobin; Kendal B. Reed; Abigail Campbell; Preston Sawyer |
| **Subject:** | American Airlines v. Skiplagged - Proposed Protective Order |
| **Attachments:** | Proposed Protective Order - American Airlines v. Skiplagged - 12.15.23.docx |

Dear AA Counsel,

Attached is the Proposed Protective Order that we intend to request the Court enter in connection with our Motion to Enter Protective Order which we are filing today.

This is what we sent you earlier. However, please be advised that we have revised Paragraph 13 regarding filing documents with the Court and associated matters regarding sealing. We have also removed the language referencing patents and made a minor revision to Paragraph 11(a).

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 006

# APP EX 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## [PROPOSED] PROTECTIVE ORDER

**Proceedings and Information Governed.**

1.      This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other documents or things produced, given, or filed in this action that are designated by a party as "Confidential Information" or "Confidential Attorney Eyes Only Information" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

**Designation and Maintenance of Information.**

2.      For purposes of this Protective Order, (a) the "Confidential Information" designation means that the document is comprised of trade secrets or commercial information that

1

is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(l )(G), or other information required by law or agreement to be kept confidential, and (b) the "Confidential Attorney Eyes Only" designation means that the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade-secret information. Confidential Information and Confidential Attorney Eyes Only Information does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

3.     Documents and things produced during the course of this litigation within the scope of paragraph 2(a) above, may be designated by the producing party as containing Confidential Information by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER**

Documents and things produced during the course of this litigation within the scope of paragraph 2(b) above may be designated by the producing party as containing Confidential Attorney Eyes Only Information by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION SUBJECT TO PROTECTIVE ORDER**

A party may designate information disclosed at a deposition as Confidential Information or Confidential Attorney Eyes Only Information by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is

2

made at the time of the deposition, any party will have fourteen (14) calendar days after the date of the deposition to designate, in writing to the other parties and to the court reporter, whether any portion of the transcript is to be designated as Confidential Information or Confidential Attorneys Eyes Only Information. If no such designation is made at the deposition or within this fourteen (14) calendar day period (during which period, the transcript must be treated as Confidential Attorneys Eyes Only Information, unless the disclosing party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Information or Confidential Attorneys Eyes Only Information. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. It is the responsibility of counsel for each party to maintain materials containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

**Inadvertent Failure to Designate.**

4.      The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as confidential at a later date in writing and with particularity. The information must be treated by the rece1vmg party as confidential from the time the receiving party is notified in writing of the change in the designation.

3

**Challenge to Designations.**

5.     A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time frame, and after the conference required under Local Rule 7.l(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

**Disclosure and Use of Confidential Information.**

6.     Information designated as Confidential Information or Confidential Attorney Eyes Only Information may only be used for purposes of preparation, trial, and appeal of this action. Confidential Information or Confidential Attorney Eyes Only Information may not be used under any circumstances  for any other purpose.

7.     Subject to paragraph 9 below, Confidential Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a)     two (2) employees of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions, and who are identified as such in writing to counsel for the designating party in advance of the disclosure;

4

(b)     two (2) in-house counsel for the receiving party who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(c)     outside counsel for the receiving party;

(d)     supporting personnel employed by (b) and (c), such as paralegals, legal secretaries, data-entry clerks, legal clerks, and private photocopying and litigation support services;

(e)     experts or consultants; and

(f) any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court-reporting services, demonstrative-exhibit preparation, or the creation of any computer database from documents.

8.      Subject to paragraph 9 below, Confidential Attorney Eyes Only Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a)     outside counsel for the receiving party;

(b)     supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data-entry clerks, legal clerks, private photocopying and litigation support services;

(c)     experts or consultants; and

(d)     those individuals designated in paragraph 11 (c).

9.      Further, prior to disclosing Confidential Information or Confidential Attorney Eyes Only Information to a receiving party's proposed expert, consultant, or employees, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A, the resume or curriculum vitae of the proposed expert or consultant, the

5

expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and in writing, stating with particularity the reasons for the objection. Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

10.     Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order. Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

11.     Confidential Information or Confidential Attorney Eyes Only Information may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

(a)     the information was authored by the person or was authored by a director, officer, employee, or agent of the company for which the person is testifying as a designee under Fed. R. Civ. P. 30(b)(6);

(b)     the person is the designating party, or is a director, officer, employee, consultant, or agent of the designating party; or

(c)     counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this paragraph, only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure may otherwise be made under and who are bound by this Protective Order, may be present during the disclosure or discussion of the Confidential Information or Confidential Attorney Eyes Only Information. Disclosure of material pursuant to this paragraph does not constitute a waiver of the confidential status of the material so disclosed.

**Nonparty Information.**

12.     The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**Filing Documents With the Court.**

13.     In the event that counsel for any party determines to file with, or submit to, the Court any documents or testimony that contains materials or information designated as Confidential Information or Confidential Attorneys' Eyes Only Information, the parties and their counsel shall give written notice to the producing party's counsel at least five (5) business days, excluding legal holidays, before such filing or submission so as to give the other party's counsel time to seek a temporary or permanent sealing order under Local Rules 79.3—79.4, if desired, from the Court.  In the event a temporary or permanent sealing order is sought, the party that seeks to file the pleading or other paper shall not file the same unless either (a) the Confidential Information and/or Confidential Attorneys' Eyes Only Information is redacted, or (b) the Court has ruled on the motion for a temporary or permanent sealing order.

14.     Producing or receiving Confidential Information or Confidential Attorney Eyes Only Information, or otherwise complying with the terms of this Protective Order, will not (a) operate as an admission by any party that any particular Confidential Information or Confidential Attorney Eyes Only Information contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**<u>Conclusion of Litigation.</u>**

15.     Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Confidential Attorney Eyes Only Information, and to certify to the producing party that this destruction or return has been done. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

**Other Proceedings.**

16.     By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential Information or Confidential Attorney Eyes Only Information pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**Remedies.**

17.     It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

18.     Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

IT IS SO ORDERED,

Signed this ___ day of December, 2023

_____
Honorable Mark Pittman
United States District Judge

9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## CONFIDENTIALITY AGREEMENT FOR EXPERT,
## CONSULTANT OR EMPLOYEES OF ANY PARTY

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge. I also agree to

1

Exhibit A

notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

 I understand that I am to retain all documents or materials designated as or containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Confidential Information or Confidential Attorney Eyes Only Information are to be returned to counsel who provided me with such documents and materials.

_____
Signed

_____
Printed Name

_____
Date

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## **CONFIDENTIALITY AGREEMENT FOR THIRD-PARTY VENDORS**

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

1

Exhibit B

_____

Signed

_____

Printed Name

_____

Date

2

# SECTION II

## Non-Published Lexis Cases Cited in *Motion*

 Neutral

As of: December 15, 2023 5:58 PM Z

## *BNSF Ry. Co. v. Panhandle N. R.R., LLC*

United States District Court for the Northern District of Texas, Fort Worth Division

May 25, 2017, Decided; May 25, 2017, Filed

Civil Action No. 4:16-cv-01061-O

**Reporter**

2017 U.S. Dist. LEXIS 222564 *; 2017 WL 9934884

BNSF RAILWAY COMPANY, Plaintiff, v. PANHANDLE NORTHERN RAILROAD, LLC, Defendant.

**Prior History:** *BNSF Ry. Co. v. Panhandle Northern R.R. LLC, 2016 U.S. Dist. LEXIS 194354, 2016 WL 10827703 (N.D. Tex., Dec. 30, 2016)*

## Core Terms

protective order, designation, disclosure, trade secret, confidential, contracts, discovery, carriers, terms and conditions, good cause, contends, handling, competitive disadvantage, confidential information, additional protection, sensitive information, private contract, future contract, opposing party, cause harm, competitor, disclosing, documents, negotiate, pleadings, parties, argues

**Counsel: [*1]** For Bnsf Railway Company, Plaintiff: David J Drez, III, LEAD ATTORNEY, Charles C Keeble, Jr, Jacob Thomas Fain, Wick Phillips Gould & Martin LLP, Fort Worth, TX; Zachary Curtis Farrar, WICK PHILLIPS GOULD & MARTIN LLP, Fort Worth, TX.

For Panhandle Northern Railroad Llc, Defendant: Michael C Wright, LEAD ATTORNEY, Steven L Russell, Russell & Wright PLLC, Dallas, TX; Michael Barron, Jr, Peter C. McLeod, Robert Alton Wimbish, Fletcher & Sippel LLC, Chicago, IL.

For Panhandle Northern Railroad Llc, Counter Claimant: Michael C Wright, LEAD ATTORNEY, Steven L Russell, Russell & Wright PLLC, Dallas, TX; Michael Barron, Jr, Peter C. McLeod, Robert Alton Wimbish, Fletcher & Sippel LLC, Chicago, IL.

For Bnsf Railway Company, Counter Defendant: David J Drez, III, LEAD ATTORNEY, Charles C Keeble, Jr, Wick Phillips Gould & Martin LLP, Fort Worth, TX; Zachary Curtis Farrar, WICK PHILLIPS GOULD & MARTIN LLP, Fort Worth, TX.

**Judges:** Hal R. Ray, Jr., UNITED STATES

MAGISTRATE JUDGE.

**Opinion by:** Hal R. Ray, Jr.

## Opinion

**ORDER**

Before the Court are Plaintiff's Motion for Entry of Protective Order and Brief in Support (ECF No. 29), filed on May 3, 2017; Defendant's Response to Plaintiff's Motion for Protective Order (ECF No. 38), filed on **[*2]** May 19, 2017; and Plaintiff's Reply Brief in Support of its Motion for Entry of a Protective Order (ECF No. 40), filed on May 22, 2017.

Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned finds that Plaintiff's Motion for Entry of Protective Order and Brief in Support (ECF No. 29) should be and is hereby **GRANTED**.

**I. BACKGROUND**

This action arises from a dispute over Defendant Panhandle Northern Railway, LLC's ("PNR") attempt to terminate its contractual obligation to act as BNSF's handling carrier on a rail line known as the "Borger Line." ECF No. 1. While conducting discovery, the parties have both agreed that the entry of a protective order in this action is necessary to limit the disclosure of protected information. ECF No. 29 at 4. Though the parties agree that a protective order is necessary, they disagree on whether a greater level of protection specified as "Confidential Attorney Eyes Only" ("AEO") should be included in the Court's protective order. *Id.* BNSF brings this Motion before the Court seeking to include the AEO designation in order to protect commercially sensitive information that could potentially

cause harm to **[*3]** BNSF. *Id.* at 6. PNR opposes this Motion, contending that BNSF fails to support its claim of potential harm and does not demonstrate a clearly defined and serious injury that would occur without the AEO designation. ECF No. 28 at 2.

## II. LEGAL STANDARD

A court may, for good cause, issue an order to protect a trade secret or other confidential research, development, or commercial information to be revealed only in a specified way. *Fed. R. Civ. P. 26(c)(1)(G).* A party seeking protection under *Rule 26* must first establish that the information sought is confidential, and then that its disclosure would cause an identifiable, significant harm. *Sanchez v. Property & Cas., Ins. Co., No. CIV.A.H-09-1736, 2010 U.S. Dist. LEXIS 1006, 2010 WL 107606, at *1 (S.D. Tex. Jan. 7, 2010)*; *see also Stone Connection, Inc. v. Simpson, No. 4:07-CV-431, 2008 U.S. Dist. LEXIS 34489, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008)*; 8 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2043 (2010) ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its disclosure."). "The burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998)* (quoting *United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978))*. Upon a showing of good cause, the court may restrict what use can be made **[*4]** of the information or materials. *Harris v. Amoco Production Co., 768 F.2d 669, 684 (5th Cir. 1985)*, *cert. denied*, *475 U.S. 1011, 106 S. Ct. 1186, 89 L. Ed. 2d 302 (1986)*. The determination of whether to enter a protective order is a matter within to the Court's broad discretion. *Id.*

## III. ANALYSIS

BNSF contends that the additional protection of AEO designation is necessary in the protective order to protect the terms and conditions of BNSF's contracts with its handling carriers. ECF No. 29 at 7-9. BNSF argues that disclosing the terms and conditions of its contracts without the AEO protection would place it at a competitive disadvantage when negotiating future contracts. *Id.* In response to BNSF's Motion, PNR

argues that the additional protection that an AEO designation provides is less common in non-patent cases and asserts that because BNSF and PNR are not competitors, an AEO designation is not necessary. ECF No. 38 at 3-7.

A party seeking to protect the disclosure of sensitive information must first establish the confidential nature of the requested discovery. *See In re Subpoena of AmeriCredit Fin. Servs., Inc., No. 3-08-MC-072-L, 2008 U.S. Dist. LEXIS 49770, 2008 WL 2594767, at *1 (N.D. Tex. June 30, 2008)* (citation omitted) (the party opposing discovery has the initial burden of establishing that the information sought is a trade secret and that its disclosure might be harmful); **[*5]** *Freeport McMoran Sulpher, LLC v. Mike Mullen Energy Equip. Res., Inc., No. CIV.A.03-1496, 2004 U.S. Dist. LEXIS 4833, 2004 WL 595236, at *1 (E.D. La. Mar. 23, 2004)*. A significant factor that courts commonly use in determining who should have access to such documents is whether the individual is involved in "competitive decision making" for the opposing party. *See Microsoft Corp. v. Commonwealth Sci. and Indus. Research Org., No. 6:06 CV 324, 2009 U.S. Dist. LEXIS 13675, 2009 WL 440608, at *2 (E.D. Tex. Feb. 23, 2009)*. Even so, "there is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 362, 99 S. Ct. 2800, 61 L. Ed. 2d 587 (1979)* (citation omitted).

Applying the foregoing principles to the case at bar, the Court finds that BNSF has a significant interest in protecting the confidentiality of its contracts as trade secrets. After review of the pleadings, the Court finds that the documents likely to be exchanged during the course of discovery include but are not limited to: agreements between BNSF and switch carriers, private contracts between BNSF and transportation services, and contracts between BNSF and its customers. ECF No. 29 at 8. While PNR contends that BNSF is not a competitor, the Court finds that the disclosure of such confidential information other than to PNR's retained and in-house counsel could create a competitive disadvantage for BNSF. Though the two companies may currently cooperate with one another, because both participate **[*6]** in the same business, disclosing BNSF's private contracts, which include its pricing, would likely cause harm to BNSF's ability to negotiate future contracts. ECF No. 40 at 6-9. BNSF has sufficiently established that inclusion of an AEO designation in the protective order is required to protect the terms and conditions of its contracts with its handling carriers as trade secrets, and to prevent

creating a competitive advantage.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Entry of Protective Order and Brief in Support (ECF No. 29) is **GRANTED**. The Court will enter a protective order accordingly.

It is so **ORDERED** on May 25, 2017.

/s/ Hal R. Ray, Jr.

Hal R. Ray, Jr.

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

APP 024

 Cited
As of: December 15, 2023 6:02 PM Z

## *MBA Eng'g Inc. v. Matrix Trust Co.*

United States District Court for the Northern District of Texas, Dallas Division

March 23, 2023, Decided; March 23, 2023, Filed

Civil Action No. 3:20-CV-01915-E

**Reporter**
2023 U.S. Dist. LEXIS 49638 *; 2023 WL 2619172

MBA ENGINEERING INC et al., Plaintiffs, v. MATRIX TRUST COMPANY et al., Defendants.

## Core Terms

protective order, confidential, modify, parties, good cause, de-designation, modification, designation, discovery, documents, disclosure, seal, producing, courts, blanket, weighs

**Counsel:** **[*1]** For MBA Engineering Inc, As Sponsor and Administrator of the MBA Engineering Inc Employees 401(K) Plan, MBA Engineering Inc Cash Balance Plan, Craig Meidinger, as Trustee of the MBA Engineering Inc Employees 401(k) Plan and the MBA Engineering, Inc. Cash Balance Plan, Individually and as representative of all others similarly situated, Plaintiffs: Hossain Arnold Shokouhi, LEAD ATTORNEY, McCathern Mooty LLP, Dallas, TX; Alexandra Hunt, Daniel Kevin Hagood, Daniel K Hagood PC, Dallas, TX; David A Dekle, Justin Neal Bryan, McCathern PLLC, Dallas, TX; Evan Selik, PRO HAC VICE, McCathern LLP, Los Angeles, CA.

For Matrix Trust Company, Matrix Settlement & Clearance Services LLC, Defendants: Robert A Lewis, LEAD ATTORNEY, PRO HAC VICE, Morgan Lewis & Bockius LLP, San Francisco, CA; Abbey M Glenn, PRO HAC VICE, Morgan Lewis & Bockius LLP, Washington, DC; David I Monteiro, Morgan, Lewis & Bockius, Dallas, TX; Melissa D Hill, PRO HAC VICE, Morgan Lewis & Bockius LLP, New York, NY.

For MSCS Financial Services Division of Broadridge Business Process Outsourcing LLC, Defendant: David I Monteiro, LEAD ATTORNEY, Morgan, Lewis & Bockius, Dallas, TX; Robert A Lewis, LEAD ATTORNEY, Morgan Lewis & Bockius **[*2]** LLP, San Francisco, CA; Melissa D Hill, Morgan Lewis & Bockius LLP, New York, NY.

**Judges:** ADA BROWN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ADA BROWN

## Opinion

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to De-Designate Exemplar Fee Disclosures Containing Admissions (Plaintiffs' Motion). (Doc. 93). After considering Plaintiffs' Motion, Defendants' response, Plaintiffs' reply, and the corresponding arguments and attachments, the Court DENIES Plaintiffs' Motion. The Court enumerates its reasoning below.

### I. BACKGROUND

This case involves claims for liability under the *Employee Retirement Income Security Act of 1974 (ERISA)*. However, Plaintiffs' Motion does not seek relief related to the merits of their claims. Plaintiffs' Motion seeks relief related to discovery and the Parties' Stipulated Protective Order (Protective Order). (Doc. 69) Thus, the Court limits its discussion of the facts, accordingly.

On January 20, 2022, the Parties entered the Protective Order in accordance with *Federal Rule of Civil Procedure 26(c)*, which provides, in pertinent part:

> For purposes of this Protective Order . . . . the "Confidential Attorney Eyes Only" designation means that the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited **[*3]** to, non-public trade secrets or other current or prospective confidential research and development, commercial, strategic, or financial information, or other highly sensitive data, the

Case 4:23-cv-00860-P   Document 45   Filed 12/15/23   Page 26 of 41   PageID 712

Page 2 of 6
2023 U.S. Dist. LEXIS 49638, *3

disclosure of which to another party or non-party could cause a competitive disadvantage to a producing party or could create a substantial risk of serious harm, including, for example, strategic planning information, pricing and cost data, and similar types of internal analyses.

. . . .

Documents and things produced during the course of this litigation . . . above may be designated by the producing party as containing Confidential Attorney Eyes Only Information by placing on each page and each thing a legend substantially as follows: "CONFIDENTIAL - ATTORNEY EYES ONLY INFORMATION SUBJECT TO PROTECTIVE ORDER."

. . . .

Challenge to Designations

[] A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. To avoid ambiguity as to whether a challenge has been made, the written notice must state that the challenge is being made in accordance with this paragraph of the Protective [*4] Order. The producing party will then have 10 business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this 10-business day time-frame, and after the conference required under LR 7.1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information.

(Doc. 69 at 2-4). During this case, Defendants produced documents marked "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," which included piecemeal documents related to Matrix's fee schedule and disclosures (Disputed Materials). First, Plaintiffs' Motion asks the Court to de-designate these Disputed Materials, which Plaintiffs have (i) partially redacted and (ii) submitted under seal. Second, Plaintiffs' Motion directs the Court to a different litigation between the Parties before Honorable Judge Starr—*MBA Eng'g, Inc., v. Matrix Trust Co.*, No. 3:17-cv-03300-X, ECF No. 14 (N.D. Tex., filed March 23, 2018). *Inter alia*, Plaintiffs' Motion seeks use of the Disputed Materials in the litigation before Judge Starr:

Plaintiffs pray the Court modify the Stipulated Protective Order to allow the Disputed Materials to be used as summary judgment evidence in the case between [*5] Plaintiffs and Matrix currently pending before Judge Starr in the United States District Court for the Northern District of Texas.

(Doc. 93 at 5).[1] Defendants opposed both de-designation of the Disputed Materials and the corresponding request to modify the Protective Order. Nevertheless, Plaintiffs' reply provides:

The purpose of the Motion was to permit the truth to be heard and de-designate the Disputed Materials that amount to admissions of material facts for the use in judicial proceedings including in any proceedings in this matter without the need to seal or hide this information from the public.

(Doc. 105 at 2). The Court next addresses the corresponding legal standard(s).

## II. LEGAL STANDARD

*Federal Rule of Civil Procedure 26(c)* states that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Fed. R. Civ. P. 26(c).* "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998)* (citation omitted). "To protect confidential commercial information, [*6] courts may also issue protective orders requiring documents in the judicial record to be filed under seal." *United States ex rel. Long v. GSD&M Idea City LLC, No. 3:11-CV-1154-O, 2014 U.S. Dist. LEXIS 198453, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014)* (citing *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008)*).

Generally, there are three types of protective orders. First, "specific" protective orders are the narrowest type and cover specifically identified information, which the

---

[1] The Court takes judicial notice that Judge Starr has entered an opinion on the discussed motion for summary judgment, which raises a concern of mootness. (*See MBA Eng'g, Inc., v. Matrix Trust Co.*, No. 3:17-cv-03300-X, ECF No. 150). Nevertheless, the Court enters this opinion as Plaintiffs' Motion's requested relief is broader than the "alternative" requested relief—for use in the proceeding before Judge Starr. (*See* Doc. 93 at 5).

court has reviewed and has determined that "good cause" exists for such an order. *Raytheon Co. v. Indigo Sys. Corp., No. 4:07-CV-109, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008); In re Enron Corp. Sec., Derivative & ERISA Litig., No. CIV.A. H-01-3624, 2009 U.S. Dist. LEXIS 93299, 2009 WL 3247432, at *2 (S.D. Tex. Sept. 29, 2009)*. Second, "umbrella" protective orders—which are generally disfavored—designate all discovery as protected, without review or determination of "good cause" by the parties or the court. *Raytheon, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at *2; In re Enron, 2009 U.S. Dist. LEXIS 93299, 2009 WL 3247432, at *2*. Third, "blanket" protective orders fall in between the "specific" and "umbrella" protective orders; blanket protective orders typically permit "parties to protect those documents which they in good faith believe contain trade secrets or other confidential commercial information and which are usually agreed to by the parties and approved of by the courts." *In re Enron, 2009 U.S. Dist. LEXIS 93299, 2009 WL 3247432, at *2* (internal citation omitted); *see Raytheon, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at *2*. "An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order." *Orthoflex, Inc. v. ThermoTek, Inc., No. 3:10-CV-2618-D, 2013 U.S. Dist. LEXIS 86462, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013)* (internal quotation omitted).

### III. ANALYSIS

### A. [*7]  Whether to Permit De-Designation of the Disputed Materials

Plaintiffs assert two grounds in their request for de-designation. First, Plaintiffs assert the Disputed Materials "do not arise to the level of Confidential Information and . . . do not meet the heightened standards of Attorney Eyes Only." (Doc. 93 at 4). Plaintiffs assert that the Disputed Materials do not constitute confidential information because Defendants disclosed the Disputed Materials in accordance with the Department of Labor's disclosure requirements. *See 29 C.F.R. § 2550.408b-2* (enumerating initial disclosure requirements that "[t]he covered service provider must disclose the following information to a responsible plan fiduciary, in writing[.]"). Plaintiffs liken the disclosure of the Disputed Materials to filings before the Securities and Exchange Commission. (Doc. 93 at 4-5) (citing *U.S.*

*Bank Nat'l Ass'n v. Lamell, No. CV H-19-2402, 2021 U.S. Dist. LEXIS 192094, 2021 WL 4440178, at *2 (S.D. Tex. May 20, 2021)*) ("SEC filings are public record[.]"); *see 17 C.F.R. § 230.406* (enumerating confidential treatment of information filed with the SEC). Second, Plaintiffs assert that the Disputed Materials were shared with third-parties—that Matrix shared the Disputed Materials with "roughly 120,000 accountholders . . . . with no internal expectation that this information would not be provided **[*8]** to additional parties." (Doc. 93 at 3, 5). Indeed, Plaintiffs' reply alleges Defendants have sought to "hide the truth" from the public. (Doc. 105 at 2).

Defendants respond that the Disputed Materials "contain[] highly proprietary pricing information that, if publicly disclosed, could cause significant competitive harm to Matrix." (Doc. 101 at 10). Correspondingly, Defendants argue that the Disputed Materials are subject to confidential, attorney eyes only designation. Defendants further assert Matrix's pricing information are provided individually and are "heavily negotiated." (Doc. 101 at 11). Defendants' attachments to their response indicate that the recipient of information Matrix provided will be kept as "strictly confidential." (*See, e.g.* Doc 103-2 at 9-10). Defendants further assert the Disputed Materials are unlike SEC filings because neither ERISA nor *29 C.F.R. § 2550.408b-2* require public disclosure of the Disputed Materials.

Here, the Disputed Materials contain Matrix's pricing information. On this record and in light of the Protective Order, the Court must find and conclude that Defendants properly designated the Disputed Materials discovery as confidential, attorney eyes only information. (*See* **[*9]** Doc. 69).[2] The record does not demonstrate the Disputed Materials were shared in a manner that would destroy the confidentiality of the materials. The record does not demonstrate that the Disputed Materials were disclosed to the public such that those documents became a filing within the public record. *See generally U.S. Bank, 2021 U.S. Dist. LEXIS 192094, 2021 WL 4440178, at *2* (discussing SEC filings as public record).

As filed with the Court, Plaintiffs have unilaterally redacted pricing information in the Disputed Materials. (Doc. 93 at 4). Plaintiffs appear to seek de-designation of the Disputed Materials, as redacted. (Doc. 93 at 4).

---

[2] Nevertheless, the Court offers no finding, conclusion, or opinion as to whether the Disputed Materials constitute trade secret or any other such determination.

However, the Protective Order does not provide for de-designation for such redacted material. (*See* Doc. 69).

Lastly, Plaintiffs appear to suggest their requested de-designation would consequently permit viewing for the public. Throughout Plaintiffs' reply, Plaintiffs characterize the Disputed Materials as being "withheld from the public." (*See, e.g.,* Doc. 105 at 2-3). However, no part of the Protective Order anticipates such disclosure. (*See* Doc. 69). Furthermore, as another Court in the Northern District has explained:

> [T]he public is not entitled to have access to discovery. *See* . . . *United States v. $9,041,598.68, 976 F. Supp. 654, 659 (S.D. Tex. 1997)* ("[T]h[e] right to inspect [*10] and copy public documents does not extend to discovery which is not a matter of public record." (citing *In re Alexander, Grant & Co. Litig., 820 F.2d 352, 355 (11th Cir. 1987)*; *Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986)* ) ); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001)* ("[D]iscovery material [. . .] are neither public documents nor judicial records." (citation omitted).

*ZeniMax Media, Inc. v. Oculus VR, LLC, No. 3:14-CV-1849-K (BF), 2016 U.S. Dist. LEXIS 202385, 2016 WL 11430477, at *2 (N.D. Tex. June 2, 2016)*. Plaintiffs' briefing as to this issue refers the Court to Defendants' burden in the context of cases involving sealed documents. *See, e.g., Carter v. Sw. Airlines Co., No. 3:17-CV-02278-X, 2022 U.S. Dist. LEXIS 16559, 2022 WL 283025, at *1 (N.D. Tex. Jan. 31, 2022)*; *Trans Tool, LLC v. All State Gear Inc., No. SA-19-CV-1304-JKP, 2022 U.S. Dist. LEXIS 35390, 2022 WL 608945, at *6 (W.D. Tex. Mar. 1, 2022)*; *June Med. Servs., L.L.C. v. Phillips, 22 F.4th 512, 517 (5th Cir. 2022)*; *Binh Hoa Le v. Exeter Fin. Corp., 990 F.3d 410, 417 (5th Cir. 2021)*; *BNSF Ry. Co. v. Panhandle N. R.R. LLC, No. 4:16-CV-01061-O, 2018 U.S. Dist. LEXIS 243193, 2018 WL 9662595, at *1 (N.D. Tex. Oct. 19, 2018)*. But, Plaintiffs' Motion does not seek relief regarding sealing or unsealing of records. And, the Court has found no such support for equating the de-designation of discovery under a protective order with the sealing of documents. *BNSF, 2018 U.S. Dist. LEXIS 243193, 2018 WL 9662595, at *1* (explaining "there is a stark difference between so-called 'protective orders' entered pursuant to the discovery provisions of *Federal Rule of Civil Procedure 26*, on the one hand, and orders to seal court records, on the other."); *see generally June Med. Servs., 22 F.4th at 521* ("That a document qualifies for a

protective order under *Rule 26(c)* for discovery says nothing about whether it should be sealed once it is placed in the judicial record.").

For those reasons, the Court DENIES Plaintiffs' Motion to de-designate the Disputed Materials. To the extent Plaintiffs requested relief for public disclosure of the Disputed Materials, such relief is also denied.

## B. Whether to Modify [*11] the Protective Order

Regarding whether the Court has the authority to modify a protective order, another Court in the Northern District of Texas has explained:

> "It is well established that a district court retains the power to modify or lift confidentiality orders that it has entered." *See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 784 (3d Cir. 1994)*; *see also United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990)* (discussing right of district court to modify a protective order); *In re United States Motion to Modify Sealing Orders, 2004 U.S. Dist. LEXIS 30963, 2004 WL 5584146, at *2 (E.D. Tex. June 8, 2004)* (same).

*Patrick v. Martin, No. 2:16-CV-216-D, 2019 U.S. Dist. LEXIS 110766, 2019 WL 2772115, at *1 (N.D. Tex. July 2, 2019)*. In deciding whether to modify a protective order, the Court applies the four-factor test followed by courts in the Northern District of Texas:

> Courts applying this analysis evaluate "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *See Raytheon Co. v. Indigo Sys. Corp., No. 4:07-CV-109, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at *2-3 (E.D. Tex. Sept. 18, 2008)* (Schell, J.) (internal quotation marks and citation omitted).

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig., No. 3:11-MD-2244-K, 2016 U.S. Dist. LEXIS 199928, 2016 WL 10719394, at *3 (N.D. Tex. July 8, 2016)*.

As to the first factor, the Court must determine the nature of the Protective Order. In light of the three types of protective orders described hereabove, the Court finds and concludes the Protective Order is a stipulated blanket protective order. (Doc. 69); *see In re Enron,*

*2009 U.S. Dist. LEXIS 93299, 2009 WL 3247432, at \*2*; *see Raytheon, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at \*2*. "Though blanket orders are moderately susceptible to **[\*12]** modification, the parties stipulated to the protective order, and that factor weighs against modification." *Raytheon, 2008 U.S. Dist. LEXIS 70934, 2008 WL 4371679, at \*2* (discussing a blanket protective order); *see, e.g., In re DePuy Orthopaedics, 2016 U.S. Dist. LEXIS 199928, 2016 WL 10719394, at \*3*.

As to the second factor of foreseeability, the Court finds and concludes that the requested modification of the Protective Order—to permit use of the Disputed Materials in the *MBA Eng'g, Inc., v. Matrix Trust Co.*, No. 3:17-cv-03300-X, litigation before Judge Starr—was foreseeable because (i) that suit between these Parties began years before this case began and (ii) the discovery period had begun in that suit over ten months before the parties entered into the Protective Order.[3] Indeed, the Protective Order appears to expressly prohibit use of protected information, such as the Disputed Materials, in other lawsuits:

> Protected Information may only be used for purposes of prosecuting, defending, or attempting to settle this Action. Protected Information may not be used under any circumstances for prosecuting any patent application, for patent licensing, or for any other purpose.

(Doc. 69 at 5). Correspondingly, the second factor weighs against modification of the Protective Order.

As to the **[\*13]** third factor of reliance, the Court should consider "the extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Dean v. Tex. Tech Univ. Health Scis. Ctr., No. 3:16-CV-2635-M, 2017 U.S. Dist. LEXIS 162178, 2017 WL 9901155, at \*7 (N.D. Tex. Sept. 25, 2017)* (internal citation omitted). Here, it is undisputed that the Parties each relied on the Protective Order. As the *Dean* court explained: "[i]t is presumptively unfair ... to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *Dean, 2017 U.S. Dist. LEXIS 162178, 2017 WL 9901155, at \*7* (citing *AT&T Corp. v. Sprint Corp., 407 F.3d 560, 562 (2d Cir. 2005)* (internal quotation omitted)). On this record, the Court agrees

with the reasoning in *Dean. 2017 U.S. Dist. LEXIS 162178, 2017 WL 9901155, at \*7*. Correspondingly, the third factor weighs against modification of the Protective Order.

As to the fourth factor of good cause, the Court finds and concludes no good cause exists to modify the Protective Order. The Parties have each sought to burden the other with the requirement to show good cause for modification. Indeed, as the *Dean* court recognized:

> Courts have held that "a party seeking to modify an agreed protective order bears the burden of demonstrating good cause exists to modify the order." *United States ex rel. Long v. GSD&M Idea City LLC, No. 3:11-cv-1154-O, 2014 U.S. Dist. LEXIS 198453, 2014 WL 12648520, at \*2 (N.D. Tex. Jan. 3, 2014)* (citing *Orthoflex, 2013 U.S. Dist. LEXIS 86462, 2013 WL 3095106, at \*3*). On the other hand, courts have also held that, "[i]f good cause was not shown for the original protective order, the burden of **[\*14]** showing good cause is on the party seeking continued confidentiality protection." *Diamond Consortium, Inc. v. Manookian, No. 4:16-cv-94, 2017 U.S. Dist. LEXIS 82692, 2017 WL 2364040, at \*1 (E.D. Tex. May 31, 2017)* (citing *United States v. Homeward Residential, Inc., No. 4:12-cv-461, 2016 U.S. Dist. LEXIS 7482, 2016 WL 279543, at \*4 (E.D. Tex. Jan. 22, 2016)*; *In re Enron Corp. Sec., Derivative, & ERISA Litig., No. MDL-1446, Civ. A. No. H-01-3624, 2009 U.S. Dist. LEXIS 93299, 2009 WL 3247432, at \*2 (S.D. Tex. Sept. 29, 2009)* ).

*Dean, 2017 U.S. Dist. LEXIS 162178, 2017 WL 9901155, at \*7*; *see e.g., Patrick, 2019 U.S. Dist. LEXIS 110766, 2019 WL 2772115, at \*1.*[4] On this record, the Court agrees with the *Dean* and *Patrick* opinions—that the party seeking a modification bears the burden of demonstrating good cause to modify an agreed protective order. *See Dean, 2017 U.S. Dist. LEXIS 162178, 2017 WL 9901155, at \*7*; *Patrick, 2019 U.S.*

---

[3] The Court takes judicial notice of (i) the order requiring attorney conference and (ii) first scheduling order in the suit before Judge Starr. (*See MBA Eng'g, Inc., v. Matrix Trust Co.*, No. 3:17-cv-03300-X, ECF Nos. 81, 84).

[4] "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Patrick v. Martin, No. 2:16-CV-216-D, 2019 U.S. Dist. LEXIS 110766, 2019 WL 2772115, at \*1 (N.D. Tex. July 2, 2019)* (internal citation omitted).

*Dist. LEXIS 110766, 2019 WL 2772115, at *1*.[5]

Here, Plaintiffs' reason for modifying the Protective Order is to permit use of the Disputed Materials as summary judgment evidence in a different proceeding. (Doc. 93). However, Plaintiffs have failed to demonstrate good cause for the requested modification. Plaintiffs direct the Court to no authority that permits such use of discovery—subject to a protective order—in a different proceeding, and the Court has found none. Assuming *arguendo* the Court permitted de-designation, Plaintiffs direct the Court to no authority that permits the order of one Federal District Court to serve as an order on a different Federal District Court's summary judgment proceeding, and the Court has found none. For those reasons, the fourth factor weighs against modification of the protective order. Having determined that none of the four factors weigh in favor of modifying the protective **[*15]** order, the Court DENIES Plaintiffs' Motion to modify the Protective Order.

### IV. CONCLUSION

For the reasons enumerated above, the Court DENIES Plaintiffs' Motion in its entirety. **SO ORDERED**.

23rd day of March, 2023.

/s/ Ada Brown

ADA BROWN

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[5] The Court notes without deciding that the language of **Rule 26** suggests protective orders—entered subject to **Rule 26**—are inherently issued "for good cause" shown. *See Fed. R. Civ. P. 26(c)(1)* ("The court may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.") (emphasis added); *see also June Med. Servs., L.L.C. v. Phillips, 22 F.4th 512, 521 (5th Cir. 2022)* ("Protective orders require a finding of "good cause" by the district court and apply to documents produced in discovery.").

 Neutral
As of: December 15, 2023 6:06 PM Z

## *Nra of Am. v. Ackerman McQueen*

United States District Court for the Northern District of Texas, Dallas Division

June 22, 2020, Decided; June 22, 2020, Filed

CASE NO. 3:19-CV-2074-G-BK

**Reporter**
2020 U.S. Dist. LEXIS 259195 *

NATIONAL RIFLE ASSOCIATION OF AMERICA, PLAINTIFF AND COUNTER-DEFENDANT, AND WAYNE LAPIERRE, THIRD-PARTY DEFENDANT, v. ACKERMAN MCQUEEN, INC., DEFENDANT AND COUNTER-PLAINTIFF, AND MERCURY GROUP, INC. ET AL., DEFENDANTS.

**Prior History:** *Nra of Am. v. Ackerman McQueen, 2020 U.S. Dist. LEXIS 259197 (N.D. Tex., June 22, 2020)*

## Core Terms

protective order, Confidential, designated, good cause, lawsuit, parties, public relations, tier, clearly defined, serious injury, Non-Parties, level of protection, discovery material, competitors, circumvent, discovery, inclusion, customer, purposes, adopts, agrees, terms

**Counsel:** **[*1]** For Ackerman McQueen Inc, Henry Martin, Mercury Group Inc, Counter Claimants, Defendants, ThirdParty Plaintiffs: Brian E Mason, LEAD ATTORNEY, Christina M Carroll, Douglas Steward Lang, G Michael Gruber, J Brian Vanderwoude, Kelsey Mullens Taylor, Jay J Madrid, Dorsey & Whitney LLP, Dallas, TX.

For Brewer Attorneys & Counselors, William A Brewer III, Interested Partys: Matthew Eric Last, William D Cobb Jr, Daniel D Tostrud, Cobb Martinez Woodward PLLC, Dallas, TX.

For DJ Investments LLC, Objector: Karen K Fitzgerald, Fitzgerald Law PLLC, Dallas, TX; C Randal Johnston, LEAD ATTORNEY, Johnston Tobey Baruch PC, Dallas, TX.

For Jesse Greenberg, Counter Claimants, Defendants, ThirdParty Plaintiffs: Brian E Mason, LEAD ATTORNEY, Christina M Carroll, Douglas Steward Lang, J Brian Vanderwoude, Jay J Madrid, G Michael Gruber, Dorsey & Whitney LLP, Dallas, TX.

For Melanie Montgomery, William Winkler, Counter Claimants, Defendants, ThirdParty Plaintiffs: Brian E Mason, LEAD ATTORNEY, G Michael Gruber, Kelsey Mullens Taylor, Jay J Madrid, J Brian Vanderwoude, Dorsey & Whitney LLP, Dallas, TX.

For National Rifle Association of America, Plaintiff, Counter Defendant: Philip J Furia, PRO HAC VICE, Brewer **[*2]** Attorneys and Counselors, New York, NY; Efrain Vera, Michael J Collins, Alessandra Pia Allegretto, Konstantin N Parkhomenko, Stewart G Milch, Jordan Andrew Welch, Brewer Attorneys & Counselors, Dallas, TX; Jason Frederick Clouser, Brewer Attorney & Counselors, Dallas, TX; William A Brewer III, Brewer Storefront PLLC, Dallas, TX; Svetlana Malahova Eisenberg, PRO HAC VICE, Brewer Attorneys & Counselors, New York, NY; Cecelia Fanelli, LEAD ATTORNEY, PRO HAC VICE, Claudia Victoria Colon Garcia-Moliner, Sarah Brooke Rogers, Brewer Attorneys & Counselors, New York, NY.

For The NRA Foundation Inc, ThirdParty Defendant: Crystal Jamison Woods, DLA Piper LLP (US), Dallas, TX; Elizabeth Wolstein, Richard Henry Dolan, Thomas A Kissane, LEAD ATTORNEYS, PRO HAC VICE, Schlam Stone & Dolan LLP, New York, NY.

For Wayne Lapierre, ThirdParty Defendant: Michael J Collins, Brewer Attorneys & Counselors, Dallas, TX; Philip Kent Correll, LEAD ATTORNEY, Correll Law Group, New York, NY.

For ADR Provider, Mediator: Jeffrey H Abrams, LEAD ATTORNEY, Abrams Mediation & Arbitration Inc, Dallas, TX.

**Judges:** RENÉE HARRIS TOLIVER, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** RENÉE HARRIS TOLIVER

## Opinion

**ORDER**

Pursuant to the District Judge's *Order*, **[*3]** Doc. 99, the National Rifle Association of America's ("NRA") *Motion to Enter Proposed Protective Order for Non-Parties*, Doc. 50, is before the Court for determination. For the reasons stated below, the Court adopts Defendants' proposed protective order and **DENIES** the NRA's motion, Doc. 50.


**I. BACKGROUND**

The NRA and its CEO, Wayne LaPierre ("LaPierre"), bring this civil action asserting claims based on the termination of a long time business relationship between the NRA and Defendant Ackerman McQueen, Inc. ("Ackerman"), a public relations agency, and Mercury Group, Inc. (collectively, "AMc"), a wholly-owned subsidiary of Ackerman that specializes in public communications strategy. Doc. 18 at 1, 6, 9. The NRA also brings claims against three Ackerman executives (collectively, with AMc, "Defendants"). Doc. 18 at 7.

As of the date of this Order, the NRA has initiated three additional lawsuits against Defendants, which have been consolidated and are pending in Virginia. Doc. 31 at 105 n.40; Doc. 53 at 2 (the "Virginia lawsuit"). In the Virginia lawsuit, the parties agreed to a protective order with two tiers of confidentiality. Doc. 56 at 119-20 (permitting parties to designate discovery as **[*4]** Confidential Information or Highly Confidential Information). In this action, the parties agree on the need for a protective order, but disagree on its terms. In short, the NRA and LaPierre propose a protective order with one tier of confidentiality ("Confidential Information") while Defendants propose a protective order with two tiers ("Confidential Information" and "Highly Confidential Information").


**II. APPLICABLE LAW**

A court may issue a protective order, upon a showing of good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *FED. R. CIV. P. 26(c)(1)*. When parties to an action agree on the entry of a protective order, but differ on the order's terms, the party seeking to limit discovery bears the burden of demonstrating that "good cause" exists for the level of protection sought. *Document Gen. Corp. v. Allscripts, LLC, Case No. 6:08-*

*CV-479, 2009 U.S. Dist. LEXIS 52874, 2009 WL 1766096, *2 (E.D. Tex. June 23, 2009)*. "The party attempting to establish good cause must demonstrate 'a clearly defined and serious injury to the party seeking closure.'" *Id.* (quoting *Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)*).


**III. PARTIES' ARGUMENTS**

The NRA's requested protective order proposes a one-tier level of confidentiality, granting "non-parties the ability to designate discovery materials confidential, if appropriate." Doc. 50 at 2; Doc. **[*5]** 51 at 270 (defining "Confidential Information" as "things that qualify for protection under the Federal Rules of Civil Procedure and applicable precedent"). In response, Defendants propose two tier levels of confidentiality, allowing discovery materials to be designated Confidential Information[1] and Highly Confidential Information. Doc. 51 at 33. Defendants propose that Highly Confidential Information "may not be disclosed or disseminated to William A. Brewer, III ["Brewer"] or to personnel within Brewer, Attorneys and Counselors who are members of the Public Relations Unit of the firm . . . ." Doc. 51 at 43. The Brewer Firm is the NRA's counsel as well as a public relations provider. Doc. 51 at 86-87. Defendants aver that their proposed protective order is substantially identical to the protective ordered entered in the related Virginia lawsuit, which the NRA itself had proposed. Doc. 53 at 2. Defendant's argue that if this Court's order is less restrictive, "Brewer and his firm will use this case to circumvent the Virginia protective order to obtain highly confidential, competitive information to severely prejudice AMc—especially true of customer and financial information." Doc. 51 **[*6]** at 5. Meanwhile, the NRA and LaPierre contend that Brewer and AMc are not direct competitors as their size and services significantly vary. Doc. 61 at 7-10; Doc. 103 at 6. The Court agrees with Defendants.


**IV. ANALYSIS**

Because Defendants' proposed version of the protective order is more restrictive than the NRA's, the burden of establishing good cause for the level of protection sought falls on them. *See Document Gen. Corp., 2009 U.S. Dist. LEXIS 52874, 2009 WL 1766096, *2*. The

---

[1] Defendants' definition of Confidential Information is identical to the NRA's definition. 51 at 33, 270.

2020 U.S. Dist. LEXIS 259195, *6

Court has reviewed (1) the NRA's proposed protective order, Doc. 51 at 268-86; (2) Defendants' proposed protective order, Doc. 51 at 31-48; (3) the protective order the parties agreed to in the Virginia lawsuit, Doc. 56 at 118-35; and (4) the parties' briefing. Upon consideration, the undersigned finds that Defendants have established good cause and demonstrated "a clearly defined and serious injury" to warrant the additional protection they seek—namely, the inclusion of the Highly Confidential Information designation. *Document Gen. Corp., 2009 U.S. Dist. LEXIS 52874, 2009 WL 1766096, *2.*

The Court finds Defendants' argument that the NRA is attempting to circumvent the Virginia protective order highly persuasive. The NRA all but concedes this point in its proposed protective order, which states "[d]ocuments designated 'Highly Confidential' for purposes **[*7]** of the Virginia Action shall be treated as 'Confidential' for purposes of this Action.'" Doc. 51 at 270.

Even though the NRA and LaPierre insist that Brewer and AMc are not competitors, the Court notes that Brewer and AMc both provide public relation services. *See* Doc. 31 at 96 ("Brewer entered the scene offering the NRA legal services while vying for the public relations work then being handled by AMc."). In fact, the Parties argued this very issue in the Virginia lawsuit. Doc. 51 at 79-110 (Tr. of Hr'g on protective order). Upon review of the transcript, this Court agrees with Judge Dawkins' conclusion that Brewer and its PR unit should be walled off from information designated as Highly Confidential Information. Doc. 51 at 110. Indeed, if Brewer had access to AMc's Highly Confidential Information—which includes non-public financial statements, profit and loss data, and sales information relating to specific customers—then Brewer could use that competitive information to severely prejudice AMc. Doc. 51 at 33.

Accordingly, Defendants have established good cause and demonstrated "a clearly defined and serious injury" to warrant the inclusion of the Highly Confidential Information designation **[*8]** in the parties' protective order. *Document Gen. Corp., 2009 U.S. Dist. LEXIS 52874, 2009 WL 1766096, *2.*

## V. CONCLUSION

For the foregoing reasons, the NRA's *Motion to Enter Proposed Protective Order for Non-Parties*, Doc. 50, is

**DENIED**. The Court adopts Defendants' proposed protective order, Doc. 51 at 31-48, which will be issued separately.

**SO ORDERED** on June 22, 2020.

/s/ RenéE Harris Toliver

RENÉE HARRIS TOLIVER

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

 Neutral

As of: December 15, 2023 6:01 PM Z

## *StoneEagle Servs. v. Gillman*

United States District Court for the Northern District of Texas, Dallas Division

November 13, 2013, Decided; November 13, 2013, Filed

No. 3:11-cv-2408-P

**Reporter**

2013 U.S. Dist. LEXIS 161509 *; 2013 WL 6008209

STONEEAGLE SERVICES, INC., Plaintiff, v. DAVID GILLMAN, ET AL., Defendants.

**Prior History:** *Stoneeagle Servs. v. Gillman, 2013 U.S. Dist. LEXIS 23904 (N.D. Tex., Feb. 19, 2013)*

## Core Terms

protective order, Confidential, documents, designation, discovery, parties, state court, financial information, undersigned

**Counsel:** **[*1]** For StoneEagle Services Inc, Plaintiff: Beverly A Whitley, LEAD ATTORNEY, Craig Joseph Cox, Bell Nunnally & Martin, Dallas, TX; Christopher B Trowbridge, Donnie Wilson Wisenbaker, Jr, R Heath Cheek, Ross Angus Williams, Bell Nunnally & Martin LLP, Dallas, TX.

For NexPay Inc, Consol Plaintiff: Sean T Hamada, LEAD ATTORNEY, Carter Stafford Arnett Hamada & Mockler, PLLC., Dallas, TX; E Leon Carter, Carter Stafford Arnett Hamada & Mockler PLLC, Dallas, TX; J Robert Arnett, II, Joshua J Bennett, Carter Stafford Arnett Hamada & Mockler, PLLC, Dallas, TX.

For David Gillman, Defendant: E Leon Carter, LEAD ATTORNEY, Carter Stafford Arnett Hamada & Mockler PLLC, Dallas, TX; Brooks W Taylor, Carter Stafford Arnett Hamada Mockler PLLC, Dallas, TX; J Robert Arnett, II, Joshua J Bennett, Carter Stafford Arnett Hamada & Mockler, PLLC, Dallas, TX; Bar Status: Admitted/In Good Standing; Sean T Hamada, Carter Stafford Arnett Hamada & Mockler, PLLC., Dallas, TX.

For Talon Transaction Technologies Inc, a Texas Corporation, Talon Transaction Technologies Inc, an Oklahoma Corporation, Defendants: E Leon Carter, LEAD ATTORNEY, Carter Stafford Arnett Hamada & Mockler PLLC, Dallas, TX; Brooks W Taylor, Carter **[*2]** Stafford Arnett Hamada Mockler PLLC, Dallas, TX; J Robert Arnett, II, Joshua J Bennett, Carter Stafford

Arnett Hamada & Mockler, PLLC, Dallas, TX; Sean T Hamada, Carter Stafford Arnett Hamada & Mockler, PLLC., Dallas, TX.

For NexPay Inc, Defendant: Brooks W Taylor, Carter Stafford Arnett Hamada Mockler PLLC, Dallas, TX; Joshua J Bennett, Carter Stafford Arnett Hamada & Mockler, PLLC, Dallas, TX.

For StoneEagle Services Inc, Consol Defendant: Beverly A Whitley, LEAD ATTORNEY, Bell Nunnally & Martin, Dallas, TX; Christopher B Trowbridge, R Heath Cheek, Ross Angus Williams, Bell Nunnally & Martin LLP, Dallas, TX.

For Comdata Network, Inc., Movant: Retta A Miller, LEAD ATTORNEY, Jackson Walker, Dallas, TX; Amanda Jean Thompson, Jackson Walker LLP, Dallas, TX.

For Talon Transaction Technologies Inc, a Texas Corporation, Talon Transaction Technologies Inc, an Oklahoma Corporation, David Gillman, Counter Claimants: Joshua J Bennett, Carter Stafford Arnett Hamada & Mockler, PLLC, Dallas, TX.

For StoneEagle Services Inc, Counter Defendant: Beverly A Whitley, LEAD ATTORNEY, Craig Joseph Cox, Bell Nunnally & Martin, Dallas, TX; Christopher B Trowbridge, Donnie Wilson Wisenbaker, Jr, Ross Angus Williams, **[*3]** Bell Nunnally & Martin LLP, Dallas, TX.

**Judges:** DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DAVID L. HORAN

## Opinion

### MEMORANDUM OPINION AND ORDER

Defendant Talon Transaction Technologies, Inc. of

Texas ("Talon") has filed a Motion for Protective Order, *see* Dkt. No. 342, which Judge Solis has referred to the undersigned magistrate judge, *see* Dkt. No. 346. Plaintiff StoneEagle Services, Inc. ("Plaintiff") filed its Response to Talon's Motion, *see* Dkt. No. 357, and Talon filed its reply, *see* Dkt. No. 361. The Motion is now ripe, and, having considered the briefing and applicable law, the Court determines that Talon's Motion should be granted.

## Background

Plaintiff brought the instant action on September 16, 2011, alleging, among other things, that the defendants misappropriated Plaintiff's trade secrets and confidential information. The parties were involved in a business arrangement wherein certain confidential information was disclosed by Plaintiff to various defendants under a non-disclosure agreement.

During the course of discovery, the Court entered a Protective Order to govern the disclosure of trade secrets and other confidential information, including financial information. *See* Dkt. No. 56 at 1. The **[*4]** Protective Order protects information that is "Confidential" and information that is "Confidential Attorneys' Eyes Only." *Id.* Pursuant to the Protective Order,

the Parties may designate as "Confidential," or "Confidential Attorneys' Eyes Only," any document, testimony, answers to interrogatories or other information or discovery material that they believe contains or discloses trade secrets, internal policies, procedures and operations, non-public customer, client or investor information, forecasts or strategies, analyses, appraisals, valuations or other non-public sensitive commercial, financial, private, and/or proprietary business or personal information.

*Id.* Under the Protective Order's terms, the discovering party can object to the producing party's designation. *See id.* at 3. If a party objects to the designation, the producing party must file a motion for protective order within fourteen days or the party loses the designation. *See id.* at 4.

Talon produced several private financial documents to Plaintiff in response to its discovery requests and designated the documents "Attorneys' Eyes Only." *See* Dkt. No. 342 at 3-4; Dkt. No. 343 at 4-9. The information includes "statements of **[*5]** Talon's income, costs, expenses, and other proprietary financial information for the years 2011 and 2012." *See* Dkt. No. 342 at 3-4; *see*

*also* Dkt. No. 343 at 4-9.

Several months after Talon produced the documents, Plaintiff challenged the designation. *See* Dkt. No. 342 at 4. Talon offered to downgrade the designation of the documents to "Confidential." *See* Dkt. No. 342 at 4. While Plaintiff agreed to the downgraded designation, Plaintiff also requests that it be permitted to use the documents in a related state court case between the parties. *See* Dkt. No. 357 at 1.[1]

Talon therefore filed its Motion with the Court, seeking an order to prevent Plaintiff from placing Talon's claimed confidential and private financial information into the public domain. *See* Dkt. No. 342. Plaintiff merely responded that "no harm" **[*6]** would result to Talon if Plaintiff used the documents in the state court action because Plaintiff "agrees to maintain the documents as 'Confidential' in the related action and to take all steps to make sure that the document is not publicly disclosed to anyone other than the state court." Dkt. No. 357 at 2.

## Legal Standards and Analysis

While Talon frames the issue in its Motion as a question of whether the financial information at issue was properly designated as "Confidential," the undersigned sees it as whether it is proper to alter the Protective Order so that Plaintiff may use the information in a manner not provided for in the Protective Order. Indeed, the parties seem to agree that the documents at issue be designated as "Confidential." *See* Dkt. No. 342 at 1; Dkt. No. 357 at 1.

Assuming *arguendo* that a dispute does exist regarding the Confidential designation, courts generally agree that financial information constitutes confidential information that falls under the protection of a protective order. *See Homevestors of Am., Inc. v. LeGate, No. 3:12-cv-1850-P, 2013 U.S. Dist. LEXIS 93391, 2013 WL 3348948, at *5 (N.D. Tex. July 3, 2013)* ("The Court is mindful that sensitive information may be contained in HBN's **[*7]** balance sheets and profit and loss statements. Therefore, the Court orders that all financial documents

---

[1] Plaintiff states in its Response that the related case is styled *SWG Investments, Ltd. v. Regions Bank v. Talon Transaction Technologies, Inc.,* and Plaintiff is the assignee of SWG Investment Ltd.'s judgment against Talon. *See* Dkt. No. 357 at 1 n.1. Neither party provided any additional proof as to how the instant case and the state court case, or the parties to each, are related.

produced by HBN shall be treated as confidential and governed by the Protective Order...."). A review of the documents at issue reveals that they contain information related to Talon's profits and losses, cash flow, and balance sheets. *See* Dkt. No. 343 at 5-9. In light of the content of the documents and the fact that Plaintiff does not contest that the information is Confidential and protected under the Protective Order, it appears that the information is properly designated as "Confidential" under the Protective Order.

But Plaintiff suggests that, even if the information is Confidential under the Protective Order, this Court "can set conditions on the usage of the documents in the related case." *See* Dkt. No. 357 at 2. Plaintiff provides no support for this contention, however, and the undersigned can find none. And, as Talon points out, the process by which documents are deemed confidential in state court proceedings differs greatly from the process in federal court. *Compare* Tex. R. Civ. P. 76a, *with* FED. R. CIV. P. 26(c). Thus, the undersigned now evaluates whether the Protective **[*8]** Order may be altered under the circumstances.

"'An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order.'" *Orthoflex, Inc. v. ThermoTek, Inc., Nos. 3:11-cv-870-D & 3:10-cv-2618-D, 2013 U.S. Dist. LEXIS 86462, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013)* (quoting *Paine v. City of Chicago, No. 06 C 3173, 2006 U.S. Dist. LEXIS 78182, 2006 WL 3065515, at *2 (N.D. Ill. Oct. 26, 2006))*. "As with all contracts, the ultimate question is what was the parties' mutual intent. The answer to that question is to be found within [the protective order's] four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id.*

The Protective Order states that "Confidential Discovery Material received through discovery in this action shall be used solely by the discovering party and solely for the purposes of this action." Dkt. No. 56 at 2. Thus, the plain language of the Protective Order demonstrates that the parties' mutual intent, as reflected within the Protective Order's four corners, does not include an exception for the parties to use the documents in related litigation.[2] *See* Orthoflex, 2013 U.S. Dist. LEXIS 86462,

2013 WL 3095106, at *4; **[*9]** *see also* U.S. Philips Corp. v. Iwasaki Elec. Co., 142 Fed. Appx. 516, 518 (2d Cir. 2005) (permitting use of confidential materials in a related case where the "plain language" of the protective order "affords broad discretion" to the district court to permit such disclosure). Plaintiff does not dispute this fact but, in essence, asks the Court to alter the terms of the Protective Order, after Talon produced documents with the assurance that they would be afforded the protection offered under the Protective Order. This the Court will not do, especially in light of the Protective Order's plain language.

Moreover, **[*10]** Plaintiff has provided no good cause as to why the Protective Order should be modified, including providing no indication or explanation as to why it cannot use the discovery process in its state court proceedings to try to obtain the information it desires. In fact, the United States Court of Appeals for the Fifth Circuit has recognized that it may do so and that "questions of discoverability in the state litigation of materials discovered in the federal litigation are, of course, for the state courts ... before whom the litigation ... is pending." *See* Superior Oil Co. V. Am. Petrofina Co. of Tex., 785 F.2d 130, 130 (5th Cir. 1986). Thus, the undersigned concludes that it is not proper to alter the Protective Order, especially where Talon produced information with the assurance of the protection of the Protective Order and where no showing has been made that the information would be relevant or not obtainable through the state court discovery process.

**Conclusion**

For the foregoing reasons, Defendant Talon Transaction Technologies, Inc. of Texas Motion for Protective Order [Dkt. No. 342] is GRANTED.

SO ORDERED.

DATED: November 13, 2013

/s/ David L. Horan

---

[2] The undersigned acknowledges that the Protective Order was not completely agreed to by both parties. *See* Dkt. Nos. 39, 45, & 49. However, the only provisions upon which the

parties failed to agree related to the consulting expert disclosure provision and the snap-back provision, and as such, the relevant provisions were agreed to by the parties. *See* Dkt. No. 45 at 2. Moreover, the protective order at issue in *Orthoflex* also was not completely agreed to, as, much as in the instant case, the court there made modifications before entering it. *See* Dkt. No. 56; Orthoflex, 2013 U.S. Dist. LEXIS 86462, 2013 WL 3095106, at *3.

2013 U.S. Dist. LEXIS 161509, *10

DAVID L. HORAN

UNITED STATES MAGISTRATE  **[*11]** JUDGE

---

**End of Document**

APP 037

 Neutral
As of: December 15, 2023 6:04 PM Z

## United States ex rel. Long v. GSD&M Idea City LLC

United States District Court for the Northern District of Texas, Dallas Division

January 3, 2014, Decided; January 3, 2014, Filed

Civil Action No. 3:11-cv-1154-O

**Reporter**
2014 U.S. Dist. LEXIS 198453 *; 2014 WL 12648520

UNITED STATES OF AMERICA ex rel. JOHNNY RAY ("J.R.") LONG, Plaintiff, v. GSD&M IDEA CITY LLC, Defendants.

**Prior History:** *United States ex rel. Long v. GSD&M Idea City LLC, 2013 U.S. Dist. LEXIS 8002 (N.D. Tex., Jan. 18, 2013)*

## Core Terms

confidential, protective order, disclosure, commercial information, designated, business information, parties, documents, disclose, rates, judicial record, outweigh, costs, seal

**Counsel:** **[*1]** For United States of America, Plaintiff: J Scott Hogan, LEAD ATTORNEY, US Attorney's Office, Fort Worth, TX.

For Johnny Ray (J.R.) Long, Ex rel, Plaintiff: Samuel L Boyd, LEAD ATTORNEY, Catherine C Jobe, Boyd & Associates, Dallas, TX.

For GSD&M Idea City LLC, a Delaware Limited Liability Company, Defendant: Paul Edward Coggins, LEAD ATTORNEY, Locke Lord LLP, Dallas, TX; Anne Wylde Robinson, Christopher J Fawal, David R Hazelton, Roger Steven Goldman, PRO HAC VICE, Latham & Watkins LLP, Washington, DC; David J Schindler, PRO HAC VICE, Latham & Watkins LLP, Los Angeles, CA; George E Bowles, Locke Lord Bissell & Liddell LLP, Dallas, TX.

For ADR Provider, Mediator: Alfred W Ellis, Sommerman McCaffity & Quesada LLP, Dallas, TX.

For Chapter 13 Trustee, Trustee: Deborah B Langehennig, LEAD ATTORNEY, Austin, TX.

**Judges:** Reed O'Connor, UNITED STATES DISTRICT JUDGE.

**Opinion by:** Reed O'Connor

## Opinion

### ORDER

Before the Court are Relator Johnny Ray Long's Objection to Defendant's "Confidential" Designation and Motion to Strike (ECF Nos. 85-86), filed September 5, 2013; and Defendant GSD&M's Memorandum in Opposition to Relator's Objection to "Confidential" Designation and Appendix in Support (ECF Nos. 108-10), filed September 25, 2013. **[*2]** Having reviewed the motion and the contested transcripts, the Court finds that Relator's objections should be and are hereby **OVERRULED** and Relator's Motion to Strike should be and is hereby **DENIED**.

### I. BACKGROUND

The parties entered an Agreed Protective Order ("Protective Order") that governs the use and protection of information disclosed during the course of this litigation. *See* Order ¶ 1, Oct. 4, 2012, ECF No. 54. The Protective Order governs "Protected Information" that is designated in good faith as confidential, including documents obtained from the other party outside of formal discovery. *Id.* ¶ 1, 4. "Protected Information" includes "a trade secret or other confidential research, development, or commercial information within the meaning of that phrase in *Federal Rule of Civil Procedure 26(c)(1)(G)*." *Id.* ¶ 7 (internal quotation marks omitted). Materials obtained by a party from the other party outside of production under the Federal Rules of Civil Procedure are to be designated confidential unless the receiving party obtains the written consent of the other party or a court order permitting disclosure. *Id.* ¶¶ 4, 16.

On August 2, 2013, Relator Johnny Ray Long's

("Relator") counsel delivered three hard copy transcripts of audio [*3] recordings to Defendant GSD&M ("GSD&M"). Mot. 2, ECF No. 86. The transcripts reflect conversations between Relator and United States Air Force Contracting Officer Greg Vistuba and GSD&M accountant Jeff Surber. Mot. 2, ECF No. 86; Def.'s Mem. Opp'n 2, ECF No. 108. The transcripts contain information regarding GSD&M's overhead rate, profit and fees, costs, and other business information. GSD&M requested the transcripts be designated as confidential under the Protective Order, Def.'s Mem. Opp'n 2-3, ECF No. 108, but Relator asserts that the transcripts are not subject to the Protective Order and moves to strike their confidential designation. *See* Mot. 6-8, ECF No. 86. Relator argues that the Protective Order does not allow the parties "to conceal documents that reveal bad acts as opposed to bona fide confidential business information." *Id.* at 6. Relator acknowledges, however, that the transcripts contain information concerning GSD&M's cost and pricing data, profits, and other business information. *See id.* at 6-8.

## II. LEGAL STANDARD

The public has a common law right to access judicial records, but this right of access is not absolute. *S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir. 1993)* (internal citations omitted); *see also In re Pratt, 511 F.3d 483, 485 (5th Cir. 2007)*. A court has "supervisory power [*4] over its own records and files" and may seal or disclose a judicial record. *Van Waeyenberghe, 990 F.2d at 848* (quoting *Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978)*) (internal quotation marks omitted). In exercising its discretion, a court must balance the interests in the common law right of access against the interests favoring non-disclosure. *Id.* A court may deny a party's right to access judicial records if disclosure is used for improper purposes, such as disclosing information that might harm a litigant's competitive standing. *See Belo Broad. Corp. v. Clark, 654 F.2d 423, 434 n.29 (5th Cir. 1981 Unit A)* (quoting *Nixon, 435 U.S. at 598*).

To protect confidential commercial information, courts may also issue protective orders requiring documents in the judicial record to be filed under seal. *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders, 562 F. Supp. 2d 876, 890 (S.D. Tex. 2008)* (citing *Fed. R. Civ. P. 26(c)*). A district court retains authority to modify a protective order it has entered, *SEC v. Merrill Scott & Assocs., Ltd., 600 F.3d 1262, 1271 (10th Cir. 2010)*;

*Newby v. Enron Corp., 443 F.3d 416, 424 (5th Cir. 2006)*, and a party seeking to modify an agreed protective order bears the burden of demonstrating good cause exists to modify the order. *See Orthoflex, Inc. v. ThermoTek, Inc., Nos. 3:11-cv-0870-D, 3:10-cv-2618-D, 2013 U.S. Dist. LEXIS 86462, 2013 WL 3095106, at *3 (N.D. Tex. June 20, 2013)* ("An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound by its terms, absent good cause to modify or vacate the protective order.") (internal quotation [*5] marks and citations omitted); *see also In re Se. Milk Antitrust Litig., 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009)*; *Smithkline Beecham Corp. v. Synthon Pharms., Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002)*; *Bell ex rel. Bell v. Chrysler Corp., No. 3:99-cv-0139-M, 2002 U.S. Dist. LEXIS 1651, 2002 WL 172643, at *2 (N.D. Tex. Feb. 1, 2002)*. To determine whether good cause exists, courts balance the prejudice to the party seeking the protection of the order against the moving party's need for the information and the public interest served by the disclosure. *See In re U.S. Motion to Modify Sealing Orders, No. 5:03-mc-2, 2004 U.S. Dist. LEXIS 30963, 2004 WL 5584146, at *3-4 (E.D. Tex. June 8, 2004)* (noting Fifth Circuit employs "flexible approach" towards modification of protective orders) (citing *Superior Oil Co. v. Am. Petrofina Co. of Tex., 785 F.2d 130 (5th Cir. 1986)*; *Wilk v. Am. Med. Ass'n, 635 F.2d 1295, 1299 (7th Cir. 1980))*; *see also Van Waeyenberghe, 990 F.2d at 848* ("In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure.") (internal citations omitted); *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc., 251 F.R.D. 238, 246 (E.D. Tex. 2008)* (ordering party to disclose confidential information subject to protective order after balancing party's need to prosecute its case against other party's interest in keeping business information confidential); *CMedia, LLC v. LifeKey Healthcare, LLC, 216 F.R.D. 387, 390-91 (N.D. Tex. 2003)* (ordering production of confidential information under protective order after balancing need to protect confidential business information and need to defend against counterclaim).

## III. ANALYSIS

### A. "Protected Information" Under the Protective Order

The Court must first determine [*6] whether the

2014 U.S. Dist. LEXIS 198453, *6

information contained in the transcripts is "Protected Information" governed by the Protective Order. The Protective Order defines "Protected Information" as "a trade secret or other confidential . . . commercial information." Id. ¶¶ 1, 7. The Protective Order governs the use of "Protected Information" obtained during the course of the litigation, including information obtained outside of formal discovery. Order ¶¶ 1, 4, Oct. 4, 2012, ECF No. 54. Additionally, any material obtained outside of production under the Federal Rules of Civil Procedure is treated as confidential, unless the producing party consents to the disclosure of the information or the Court orders disclosure. Id. ¶¶ 4, 16.

Business information is confidential commercial information if its disclosure would cause substantial competitive harm to the person from whom it was obtained.[1] Flightsafety Servs. Corp. v. Dep't of Labor, 326 F.3d 607, 611 (5th Cir. 2003); Cmedia, LLC, 216 F.R.D. at 390-91; see also Nixon, 435 U.S. at 598 ("[C]ourts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing.") (internal citations omitted); In re Violation of Rule 28(D), 635 F.3d 1352, 1360 (Fed. Cir. 2011) ("Rule 26(c)(1)(G) is limited to commercial information that has competitive significance."); In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991) ("Confidential business

information has long [*7] been recognized as property [and to be protected by Rule 26(c)(1)(G)] . . . the party opposing discovery must show that the information is . . . confidential . . . commercial information, and that its disclosure would be harmful to the party's interest in the property.") (internal quotation marks and citations omitted). Accordingly, information in which the producing party has a commercial interest, such as overhead operating costs, research data, and pricing and profit information, has been found to constitute confidential commercial information. See, e.g., Canadian Commercial Corp. v. Dep't of Air Force, 514 F.3d 37, 40-43, 379 U.S. App. D.C. 354 (D.C. Cir. 2008); Jackson v. W. Telemarketing Corp. Outbound, 245 F.3d 518, 525 n.21 (5th Cir. 2001); Shermco Indus., Inc. v. Sec'y of Air Force, 613 F.2d 1314, 1317 (5th Cir. 1980); Corcel Corp. v. Ferguson Enters., Inc., 291 F.R.D. 680, 681 (S.D. Fla. 2013); COMPTEL v. F.C.C., 910 F. Supp. 2d 100, 115 (D.D.C. 2012); Layne Christensen Co. v. Purolite Co., 271 F.R.D. 240, 250 (D. Kan. 2010); see also 48 C.F.R. § 15.503(b)(1)(v) ("[A]n offeror's cost breakdown, profit, overhead rates, . . . or other confidential business information [shall not] be disclosed . . . ."); Id. § 15.506(e) ("The [postaward] debriefing . . . shall not reveal . . . [c]ommercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information . . . .").

After reviewing the transcripts and the portions designated as confidential, the Court finds that the information constitutes "confidential . . . commercial information" subject to the Protective Order.[2] See Order ¶ 7, Oct. 4, 2012, ECF No. 54. The transcripts [*8] contain information about GSD&M's overhead rates and profit and fee calculations, and GSD&M asserts that disclosure of the information could cause it competitive injury. Def.'s Mem. Opp'n 5, ECF No. 108. Relator acknowledges that the transcripts contain information concerning GSD&M's business data, and fails to show how the designated portions of the transcript are not subject to the Protective Order, other than noting that his counsel "found none of the . . . designated excerpts to be subject to the [Protective Order]." See Mot. 6-7,

---

[1] GSD&M, relying on case law interpreting Exemption 4 of the Freedom of Information Act ("FOIA"), asserts commercial information is confidential "if the contractor does not publicize it and there is (1) competition in the market and (2) a likelihood of competitive injury." Def.'s Mem. Opp'n 5, ECF No. 108 (citing Gulf & W. Indus. v. U.S., 615 F.2d 527, 530, 199 U.S. App. D.C. 1 (D.C. Cir. 1979); Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 28-29 (D.D.C. 2000)); see also 5 U.S.C. § 552(b)(4) (excluding "trade secrets and commercial or financial information obtained from a person and privileged or confidential" from disclosure under FOIA). Relator does not define confidential commercial information and did not reply to GSD&M's opposition.

The Fifth Circuit has held that "information is confidential under [Exemption 4] if its disclosure would likely (1) impair the government's ability to obtain necessary information in the future, or (2) cause substantial competitive harm to the person from whom it was obtained." Flightsafety Servs. Corp., 326 F.3d at 611 (citing Calhoun v. Lyng, 864 F.2d 34, 36 (5th Cir. 1988)); see also National Western Life Ins. Co. v. United States, 512 F. Supp. 454, 461 (N.D. Tex. 1980) (noting Exemption 4 was designed "to protect the privacy and competitive position" of parties that offer confidential information to the government).

---

[2] The transcripts reflect telephone conversations between Relator and the United States Air Force contracting officer and GSD&M's accountant. See Mot.2, ECF No. 86; Def.'s Mem. Opp'n 2, ECF No. 108. These transcripts were obtained outside of formal discovery, and thus, should be treated as confidential, until GSD&M consents to their disclosure or the Court finds that they are not subject to the Protective Order. See Order ¶¶ 1, 4, 8, Oct. 4, 2012, ECF No. 54.

2014 U.S. Dist. LEXIS 198453, *8

ECF No. 86. Furthermore, information regarding GDS&M's profit, rates, and costs has been treated as confidential throughout this litigation by both parties. The Court previously granted two of GSD&M's unopposed motions to seal exhibits that included information concerning GSD&M's profit, rates, and costs. *See* Order, Sept. 5, 2013, ECF No. 87; Order, Aug. 21, 2012, ECF No. 50. The Protective Order also designated certain exhibits attached to Relator's Second Amended Complaint that concerned GSD&M's profit, rates, and costs as confidential. *See* Def.'s Mem. Opp'n 6, ECF No. 108; Order ¶ 2, Oct. 4, 2012, ECF No. 54. Accordingly, the Court finds the information **[*9]** contained in the transcripts to be confidential commercial information subject to the terms of the Protective Order.

## B. Balancing the Interests of the Parties

Finding the transcripts contain confidential commercial information, the Court must determine whether Relator's interest in disclosure outweighs GSD&M's interest in non-disclosure. Relator does not address the interests that weigh in favor of disclosing GSD&M's commercial information; rather, he focuses on his assertion that the information in the transcripts is not protected by the Protective Order. Relator does not identify his interest, or the public's interest, in disclosure and fails to explain how any interests favoring disclosure outweigh GSD&M's economic interest in maintaining the confidentiality of the information. *See U.S. v. Holy Land Foundation For Relief & Dev., 624 F.3d 685, 689-91 (5th Cir. 2010)* (finding party's interest in mitigating its reputational injuries favored public disclosure of sealed opinion and order); *In re High Sulfur Content Gasoline Prods. Liability Litig., 517 F.3d 220, 230 (5th Cir. 2008)* (finding limiting fee sharing disputes among lawyers was not legitimate privacy interest to overcome public's right to be informed of attorneys' fee determination); *Carnaby v. City of Hous., No. 4:08-cv-1366, 2008 U.S. Dist. LEXIS 80356, 2008 WL 4546606, at *2 (S.D. Tex. Oct. 10, 2008)* (finding public's interest in case involving use deadly force by local **[*10]** police department outweighed privacy interest).

Furthermore, under the terms of the Protective Order, Relator and Relator's counsel may use Protected Information for purposes of this litigation. *See* Order ¶ 9, Oct. 4, 2012, ECF No. 54; *see also Fed. R. Civ. P. 26(c)(1)(G)* (stating protective orders may require confidential commercial information "be revealed only in a specific way"); *M-I LLC v. Stelly, 733 F. Supp. 2d 759, 804 (S.D. Tex. 2010)* (noting courts commonly enter protective orders restricting disclosure to counsel or the parties). Accordingly, Relator does not assert that public disclosure of the documents is necessary to effectively prosecute this action. *See Farouk Sys., Inc. v. Costco Wholesale Corp., 700 F. Supp. 2d 780, 788 (S.D. Tex. 2010)* (finding receiving party demonstrated it needed disclosing party's confidential information to effectively adjudicate its claims and defenses); *In re Sealing & Non-Disclosure, 562 F. Supp. 2d at 890* (noting documents filed under protective order must be revealed if they are "vital to claims made in litigation"); *Reedhycalog UK, Ltd., 251 F.R.D. at 246* (denying motion to withdraw confidentiality designation, but allowing party's expert to access documents that were probative on a major issue in the case); *CMedia, LLC, 216 F.R.D. at 391* (requiring party to disclose trade secret where moving party established information was relevant to its defense and ordering parties to enter protective order restricting disclosure of information **[*11]** to attorneys and experts). Therefore, the Court finds Relator failed to establish how the interests in disclosure outweigh GSD&M's interest in maintaining the confidentiality of its commercial information.

## IV. CONCLUSION

Relator argues that GSD&M is using the Protective Order in "an abusive manner . . . to restrict publication of material admissions," but Relator fails to address the interests implicated by the non-disclosure of GSD&M's confidential commercial information. *See* Mot. 7-8, ECF No. 86. Accordingly, Relator failed to make the required showing that his interest in disclosing the transcripts outweighs GSD&M's interest in keeping the information confidential. Therefore, Relator's Objections are **OVERRULED** and Realtor's Motion to Strike (ECF Nos. 85-86) is **DENIED**.

**SO ORDERED** on this **3rd day** of **January, 2014**.

/s/ Reed O'Connor

**Reed O'Connor**

**UNITED STATES DISTRICT JUDGE**