IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

## DEFENDANT SKIPLAGGED, INC.'S RESPONSE
## IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON
NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*Attorneys for Defendant, Skiplagged, Inc.*

28171258v2 99460.002.00

# **TABLE OF CONTENTS**

Preliminary Statement .................................................................................................... 1

Relevant Background Facts ............................................................................................ 2

Arguments and Authorities ............................................................................................ 6

    I.    Plaintiff's Motion to Compel is Deficient ................................................... 6

    II.   Skiplagged's Confidentiality Objection is Proper and Plaintiff's Refusal to Agree to a Protective Order Stalls Discovery ................................................. 7

    III.   Plaintiff's Requests are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of this Case ............................................... 13

          a.   Customer data ................................................................................... 14

          b.   Agreements and communications with third parties ........................... 17

    IV.   Skiplagged Responded to Multiple Interrogatories and Requests ........................... 19

    V.   Skiplagged is Not Required to Comply with Plaintiff's Proposed ESI Protocol ...... 20

Conclusion .................................................................................................................. 21

28171258v2 99460.002.00

# TABLE OF AUTHORITIES

**Cases**

*Binh Hoa Le v. Exeter Fin. Corp.*,
   990 F.3d 410 (5th Cir. 2021) ................................................... 8

*BNSF Ry. Co. v. Panhandle N. R.R. LLC*,
   No. 4:16-CV-01061-O, 2018 WL 4076487 (N.D. Tex. Jan. 11, 2018) ............................ 16, 18

*Brown v. Bridges*,
   No. 12-CV-4947-P, 2015 WL 410062 (N.D. Tex. Jan. 30, 2015)............................................ 8

*Chilly Dil Consulting, Inc. v. Jetpay ISO Servs., LLC*,
   No. 3:14-CV-2749-P-BK, 2015 WL 13118078 (N.D. Tex. Aug. 5, 2015) .............................. 8

*Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*,
   903 F.3d 493 (5th Cir. 2018) ................................................. 13

*Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*,
   No. 16-cv-0153, 2018 WL 2317696 (N.D. Tex. May 22, 2018) ........................................ 6, 7

*Gen. Universal Sys., Inc. v. Lee*,
   379 F.3d 131 (5th Cir. 2004) ................................................. 14

*Gordon v. Greenville Indep. Sch. Dist.*,
   No. 3:13-cv-178-P, 2014 WL 6603420 (N.D. Tex. Nov. 20, 2014)........................................ 20

*Harrison v. Wells Fargo Bank, N.A.*,
   2016 WL 1392332 (N.D. Tex. Apr. 8, 2016) ............................................................. 6

*iLife Techs., Inc v. OnAsset Intel., Inc.*,
   No. 3:12-CV-05155-M-BK, 2013 WL 12126265 (N.D. Tex. Oct. 22, 2013) ........................ 11

*In re Apache Corp. Sec. Litig.*,
   No. 4:21-CV-00575, 2023 WL 5322444 (S.D. Tex. Apr. 10, 2023) ...................................... 21

*Mauldin v. Fiesta Mart*,
   114 F.3d 1184 (5th Cir. 1997) ........................................................ 13, 14

*McElwee v. Wallantas*,
   No. Civ. A. L-03-CV-172, 2005 WL 2346945 (S.D. Tex. Sept. 26, 2005)............................ 20

*MIECO LLC v. Pioneer Nat. Res., USA, Inc.*,
   No. 3:21-CV-1781-B, 2022 WL 18034481 (N.D. Tex. Oct. 28, 2022) ................................. 16

*Mir v. L-3 Communications Integrated Systems, L. P.*,
   315 F.R.D. 460 (N.D. Tex. 2016) .................................................... 13

*Moore v. Alberto-Culver Co.*,
   No. 3-07-CV-1216-P, 2009 WL 10704329 (N.D. Tex. Feb. 9, 2009).................................. 21

*Nix v. Major League Baseball*,
   62 F.4th 920 (5th Cir. 2023), cert. denied, No. 22-7810,
   2023 WL 6378365 (U.S. Oct. 2, 2023)................................................... 14

28171258v2 99460.002.00

*ORIX USA Corp. v. Armentrout*,
   No. 3:16-MC-63-N-BN, 2016 WL 4095603 (N.D. Tex. Aug. 1, 2016) .................................. 20

*Samsung Elecs. Am. Inc. v. Chung*,
   325 F.R.D. 578 (N.D. Tex. 2017) ............................................................................... 6, 7

*Southwest Airlines Co. v. Kiwi.com, Inc. et al*,
   Case No. 21-cv-00098, N.D. Tex. ................................................................................ 2

*Transparent Energy LLC v. Premiere Mktg. LLC*,
   No. 3:19-CV-03022-L, 2020 WL 4678438, (N.D. Tex. July 28, 2020) ................................ 14

*Transparent Energy, LLC, v. Premier Marketing, LLC*,
   No. 3:19-CV-3022-L, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020) .................................. 14

*United* States *ex rel. Long v. GSD&M Idea City LLC*,
   No. 3:11-CV-1154-O, 2014 WL 12648520, (N.D. Tex. Jan. 3, 2014) ............................... 8, 11

*ZeniMax Media, Inc. v. Oculus VR, LLC*,
   No. 3:14-CV-1849-K (BF), 2016 WL 11809176 (N.D. Tex. June 2, 2016) ........................... 7

**Statutes**

15 U.S.C. § 1114 ........................................................................................................ 13, 14

15 U.S.C. § 1125(a) ................................................................................................... 13, 14

17 U.S.C. § 101 .......................................................................................................... 13, 14

**Rules**

FED. R. CIV. P. 26(b)(1) ................................................................................................. 13

FED. R. CIV. P. 26(c)(1)(G) ............................................................................................. 8

FED. R. CIV. P. 34(b)(1)(C) ......................................................................................... 2, 20

Fed. R. Civ. P. 34(b)(2)(E)(ii) ........................................................................................ 21

Fed. R. Civ. P. 56(f) ..................................................................................................... 14

FED. R. CIV. P.37(a)(3)(B)(iii) ......................................................................................... 6

Fed. R. Civ. P.37(a)(3)(B)(iv) ......................................................................................... 6

28171258v2 99460.002.00

## PRELIMINARY STATEMENT

The fundamental premise of Plaintiff's Motion to Compel is that Defendant Skiplagged Inc. ("Skiplagged") is not entitled to confidentiality protection of its proprietary computer code, personally identifiable customer information, and sensitive business information because this Court already rejected such protections. Plaintiff is wrong that this Court decided that issue and the Motion to Compel is premature and improper because Plaintiff has refused good faith negotiations for the entry of a protective/confidentiality order. As Skiplagged repeatedly informed Plaintiff, it will produce relevant, responsive information upon the parties' agreement to submit a protective order to the court that protects *both* parties' confidential information.[1] The entry of such a protective order and subsequent production and responses, without motion practice, would have saved the parties and the Court significant time and resources.

Further, Skiplagged's objections are proper because Plaintiff's requests go far beyond the scope of discovery permitted under the Federal Rules of Civil Procedure by admittedly attempting to use this litigation as a fishing expedition for Plaintiff's own commercial purposes. Indeed, Plaintiff seeks discovery into every aspect of Skiplagged's business, regardless of whether the information relates to the claims and defenses at stake in this matter and intends to use that information for its "day to day commercial activities."

Finally, despite Plaintiff's vague allegation that Skiplagged's responses to *every* discovery request (56 requests for production and 19 interrogatories) are incomplete and the unsupported blanket request that this Court overrule *every* objection lodged and order Skiplagged to amend *every* response, Skiplagged provided responses to Plaintiff's discovery requests and has already amended its responses to remove many objections based on its good faith attempts to

---

[1] In an attempt to work with Plaintiff, Skiplagged offered to produce information upon the mere agreement to submit a protective order to the Court rather than waiting on the entry of the protective order, but Plaintiff preferred filing this vague and unsupported Motion, insisting that confidential information be produced without protection.

meet and confer with Plaintiff.

For these reasons, Plaintiff's Motion to Compel should be denied in total.

### RELEVANT BACKGROUND FACTS

Plaintiff's claim that Skiplagged is "evading" discovery is controverted by Skiplagged's *multiple* efforts to move discovery forward.

1.     On October 12, 2023, Plaintiff served Requests for Production and Interrogatories on Skiplagged. Dkt. 40, pp. 4-15, 59-79. Contrary to Plaintiff's assertion that Skiplagged failed to object to an ESI protocol offered under FED. R. CIV. P. 34(b)(1)(C), the production requests did not specify any form of ESI production. Dkt. 40, pp. 60-63.

2.     In a separate email on October 12, 2023, Plaintiff sent a copy of its *proposed* ESI protocol, requesting Skiplagged's agreement or proposed changes. App'x, Ex. 1-A, pp. 5-16.[2]

3.     On November 3, 2023, prior to Skiplagged's deadline to respond to Plaintiff's discovery, Skiplagged emailed Plaintiff that it would produce relevant, responsive information but because such information was confidential, proposed to do so pursuant to an agreed protective order. App'x. Ex. 1-B, p. 18.

4.     On November 7, 2023, still prior to Skiplagged's response deadline, Skiplagged emailed Plaintiff a proposed protective order regarding the production of confidential information in this matter and requested feedback from Plaintiff. App'x. Ex. 1-C, pp. 22-38. Skiplagged's proposed protective order was patterned after a Northern District model form for patent litigation and was almost identical to a protective ordered entered by this Court (Brown, J.) in a similar case by Southwest Airlines against Kiwi.com. *See Southwest Airlines Co. v. Kiwi.com, Inc. et al*, Case No. 21-cv-00098, N.D. Tex.

---

[2] Pursuant to L.R. 7.1(i), Skiplagged concurrently files its Appendix in Support of its Opposition to Plaintiff's Motion to Compel.

28171258v2 99460.002.00

5.      On November 8, 2023, Skiplagged served its Objections and Responses to Plaintiff's interrogatories and production requests, again offering a proposed protective order and negotiations for same. App'x. Ex. 1-D, pp. 40. Skiplagged's responses to Plaintiff's interrogatories likewise attached the proposed protective order [Dkt. 40, pp. 17-50] and stated:

> same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

Dkt. 40, p. 26.

6.      The next day, Plaintiff rejected Skiplagged's proposed protective order, without explanation, instead proposing its own "Agreement Governing the Use and Disclosure of Confidential Information," and requested Skiplagged's agreement. App'x. Ex. 1-E, pp. 113. Plaintiff's proposal did not actually propose an agreement to confidentiality of Skiplagged or third-party documents:

> 14.     **Confidential Material to be Used Only for the Action.** Unless otherwise agreed to in writing by the Parties, Documents produced in this Action, including Confidential Material, may be used only in this Action, and may not be used in any other action, proceeding, or arbitration or for any purpose unconnected to the Action; however, any Documents, data, or information produced by Defendant or any non-party in this Action relating to American's fare, schedule, and inventory content, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights, and communications with American's passengers by Defendant acting as American's agent may be used by American in its day-to-day commercial activities and American may retain pursuant to American's retention policies.

28171258v2 99460.002.00

15.    **Redaction.** If Confidential Material contains information of a particularly sensitive, personal nature relating to a Party's customers or employees, the producing Party may make limited redactions of that material. Information appropriate for redaction includes, without limitation: social security numbers, home or mobile phone numbers, secure traveler ID numbers, frequent flier numbers (except AAdvantage numbers), credit card numbers, and driver's license, passport, or similar identification numbers, or any other information required to be protected under applicable law; however, this does not apply to Defendant's production of Documents, data, or information relating to American's passengers, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights and communications with American's passengers by Defendant acting as American's agent.

*Id.* at p. 122.  In other words, Plaintiff proposed to obtain Skiplagged confidential information through discovery and then use that confidential information purposes other than this litigation such as  "its day-to-day commercial activities," but maintin full protection of Plaintiff's own confidential information.[3]

7.    On November 17, 2023, the parties participated in a meet and confer conference. During this conference, Skiplagged proposed that the parties' agree to search terms to assist with the collection of electronically stored information and requested that Plaintiff provide terms based on its discovery requests, which Plaintiff later advised it would agree to "work on." Despite at least three subsequent requests by Skiplagged, Plaintiff never provided such terms, it never did.[4]

8.    In an effort to continue working with Plaintiff, Skiplagged reviewed Plaintiff's proposed confidentiality agreement and sent its edits to Plaintiff on December 1, 2023. App'x Ex. 1-F, p. 131. Skiplagged reiterated to Plaintiff that its proposed ESI order is overly broad,

---

[3] Indeed, Plaintiff confirmed during the parties' December 13, 2023 meet and confer, that it "intends to" use Skiplagged's confidential information obtained through discovery outside of this litigation.
[4] Plaintiff confirmed on December 13, 2023, during the parties' meet-and-confer, that it would not be providing search terms nor negotiating same.

28171258v2 99460.002.00

complicated, and prohibitively expensive to Skiplagged, but in an effort to find compromise, Skiplagged said it would review the Plaintiff's ESI order and propose edits. *Id.* at pp. 131-32.

9.      On December 5, 2023, Skiplagged sent additional redline suggestions to the proposed ESI order, reexplained that Plaintiff's proposed order was onerous and expensive for Skiplagged to follow, and offered to discuss further. App'x. Ex. 1-G, p. 173.

10.      On December 6, 2023, Plaintiff sent correspondence to Skiplagged, asserting for the first time, that this Court ruled there would be no protective order in this litigation. App'x Ex. 1-H, p. 183. On that incorrect basis, Plaintiff outright rejected all of Skiplagged's proposed revisions and insisted Skiplagged produce without any confidentiality protection. *Id.* Further, Plaintiff detailed that its issues with Skiplagged's proposed ESI order were (1) no explicit requirement of production with searchable text; (2) conditions that must be met prior to email production requests; and (3) a limit of seven search terms per custodian per party. *Id.* Plaintiff thus rejected Skiplagged's proposed ESI procedures and insisted Skiplagged adhere to American's originally proposed ESI order. *Id.* at p. 184. In total, Plaintiff indicated it was not going to agree to any compromise as to anything.

11.      Despite Plaintiff's refusal to negotiate, on December 7, 2023, Skiplagged replied, reasserting the need for a confidentiality order, and explaining that this Court had not denied any attempt to treat certain discovery materials as confidential. App'x. Ex. 1-I, p. 187. Skiplagged again reiterated the prohibitively expensive nature of Plaintiff's proposed ESI order and, in a good faith attempt to agree, (1) informed Plaintiff that Skiplagged agreed to produce documents with searchable texts; (2) requested how many search terms Plaintiff wanted; and (3) offered to consider any other reasonable additions or changes. *Id.* at pp. 188-89.

12.     Rather than respond to Skiplagged's agreements, Plaintiff filed its Motion to Compel. As shown by the parties' correspondence, Skiplagged made extensive efforts to move discovery forward in this matter by offering and then negotiating a protective order and negotiating a reasonable ESI order, all of which Plaintiff thwarted.  The fact that Plaintiff refused to engage in ordinary course negotiations over confidentiality terms and ESI protocols is no basis to compel Skiplagged to waive confidentiality protections.

<u>**ARGUMENTS AND AUTHORITIES**</u>

## I.      Plaintiff's Motion to Compel is Deficient

A party may move to compel a discovery response when the responding party "fails to answer an interrogatory submitted under Rule 33" and/or "fails to produce documents . . . requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(iii), (iv). In doing so, a movant must meet certain "threshold requirements" for filing a proper Rule 37(a) motion to compel. *Samsung Elecs. Am. Inc. v. Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017).  Specifically, in addition to certifying that the movant made a good faith effort to meet and confer, a motion to compel *must*:

(a) "specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute, including, for example, explaining . . . how a response or answer is deficient or incomplete, and ask the Court for specific relief as to each request;" and,

(b) "must include a concise discussion of the facts and authority that support the motion as to each discovery request in dispute."

*Id.*, at 594-95 (quoting *Harrison v. Wells Fargo Bank, N.A.*, 2016 WL 1392332, at *7 (N.D. Tex. Apr. 8, 2016)). In sum, "a movant must provide necessary identifying information to resolve the dispute presented for judicial resolution." *Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 16-cv-0153, 2018 WL 2317696, at *17 (N.D. Tex. May 22, 2018). "Relying on examples of improper objections does not comply with the specificity requirements." *Id.*

28171258v2 99460.002.00

Here, Plaintiff's Motion to Compel fails to specifically and individually identify the discovery requests in dispute, identify the particular objection or response in the discovery request that it contends is insufficient and why, and ask the Court for specific relief as to each request. *See Chung*, 325 F.R.D. at 594-95. Plaintiff's Motion to Compel is, instead, a vague hodge-podge of various accusations and conclusory statements that fails to identify exactly what Plaintiff seeks to compel. This is not sufficient or conducive to resolving discovery disputes. *See Eagle Railcar*, 2018 WL 2317696 at *17.

Plaintiff's Motion fails to identify with any specificity, the exact requests or interrogatory at issue, the allegedly insufficient objection in response to a specific request, or what specifically Plaintiff contends Skiplagged must produce. It is impossible for Skiplagged to respond to Plaintiff's sweeping contentions concerning the impropriety of certain alleged objections when Plaintiff ignores amended responses, multiple offers to produce upon the agreement to a confidentiality order, and reasoning beyond a mere "it is relevant." *See id.* Never the less, Skiplagged has attempted to narrow the issues in dispute by providing amended objections and responses to Plaintiff's requests.

Accordingly, because Plaintiff's Motion to Compel is deficiently briefed and fails to provide the Court or Skiplagged with the necessary identifying information to respond to or resolve the purported issues, the Court should deny Plaintiff's Motion to Compel.

## II. Skiplagged's Confidentiality Objection is Proper and Plaintiff's Refusal to Agree to a Protective Order Stalls Discovery

The public is not entitled to have access to discovery materials. *ZeniMax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-1849-K (BF), 2016 WL 11809176, at *2 (N.D. Tex. June 2, 2016). It is not uncommon, and in fact is expected, that a protective order dictating protections over the disclosure of confidential material be agreed to between the parties and entered by the

Page 7

court pursuant to FED. R. CIV. P. 26(c)(1)(G) especially in business litigation involving financials and commercially sensitive material. *Chilly Dil Consulting, Inc. v. Jetpay ISO Servs., LLC,* No. 3:14-CV-2749-P-BK, 2015 WL 13118078, at *2 (N.D. Tex. Aug. 5, 2015) ("protective orders that limit access to certain documents to counsel and experts are common in ligation involving confidential research, development, or commercial information); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 420 (5th Cir. 2021) ("At the discovery stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper. Party-agreed secrecy has its place—for example, honoring legitimate privacy interests and facilitating the efficient exchange of information.").

Though "discovery is intended to be an effort of cooperation between parties," Plaintiff, which is no stranger to litigation, refuses to agree to keep the sensitive information requested (of both Skiplagged and third-parties), confidential. *See Brown v. Bridges*, No. 12-CV-4947-P, 2015 WL 410062, at *6 (N.D. Tex. Jan. 30, 2015) (admonishing a party's "hard-line stance" with respect to discovery). Moreover, Plaintiff has made no showing of why it cannot adjudicate its claims without revealing Skiplagged's confidential information to the public. *See United States ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 12648520, at *3 (N.D. Tex. Jan. 3, 2014). Instead, Plaintiff's own proposed "agreement"—specifically excepting only Skiplagged's and third-party's information from confidentiality requirements—reveals its hard-line stance against a protective order is so that Plaintiff can use Skiplagged's and third-party confidential information outside this litigation for "day-to-day commercial activities," which Plaintiff confirmed it intends to do. App'x. Ex. 1-E, p. 122; *see Chilly Dil Consulting,* 2015 WL 13118078 at *2 ("A significant factor that courts commonly use in determining who should have access to such documents is whether the individual is involved in "competitive decision making"

Page 8

for the opposing party.").

Skiplagged properly asserted an objection to producing invasive, confidential, and proprietary information without the protection of a protective/confidentiality order, to which Plaintiff unreasonably refused to agree. Consequently, Skiplagged is filing a Motion for Entry of Protective Order, asking this Court to enter a protective order substantially similar to the form protective order offered by the Northern District of Texas, that will resolve the unnecessary issues raised in Plaintiff's Motion to Compel.

Plaintiff's only argument that Skiplagged is not entitled to any confidentiality protections is that the Court's November 8, 2023 denial of Plaintiff's Motion to Stay Merits-Based Discovery ruled there would be no protective order in this litigation, ever. Plaintiff is wrong and the fundamental premise of its Motion to Compel is belied. The Court has in no way addressed the protection of confidential information in this case, let alone said anything about confidentiality in denying Skiplagged's request for protection against merits discovery during the pendency of its Motion to Dismiss for lack of jurisdiction. Dkt. 31.

To be clear, Skiplagged's confidentiality objection has never served to refuse production but instead, requests there be a protective order in place to protect against the disclosure or improper use of the confidential information requested.

Plaintiff's requests seek a significant amount of confidential business information from Skiplagged. For example, Plaintiff seeks extensive:

- design documents, source codes, and operations of Skiplagged's business:

**REQUEST FOR PRODUCTION NO. 8:** All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

> **REQUEST FOR PRODUCTION NO. 9:**   Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

Dkt. 40, p. 69.

> **REQUEST FOR PRODUCTION NO. 2:**   All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

> **REQUEST FOR PRODUCTION NO. 3:**   All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

- third-party contracts, agreements, and related communications:

*Id.* at pp. 68, 72;

- financial documents since Skiplagged's inception:

> **REQUEST FOR PRODUCTION NO. 31:**   All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

> **REQUEST FOR PRODUCTION NO. 26:**   All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

*Id.* at p. 71; and

- customer information (including invasive personal identifying information):

> **REQUEST FOR PRODUCTION NO. 4:**   All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

*Id.* at pp. 68, 65-66 (defining PNR Data as 19 separate data points).

These are just examples of some of the requests for Skiplagged's highly sensitive confidential information that, if produced, let alone used in American Airlines "day-to-day

Page 10

commercial activities" would cause substantial competitive harm to Skiplagged. This is especially true because Plaintiff has publicly threatened the use of Skiplagged's operations by invalidating customer tickets and admitted its intention to use this information in its "day-to-day commercial activities" outside of litigation. *United States ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014 ("information in which the producing party has a commercial interest, such as overhead operating costs, research data, and pricing and profit information, has been found to constitute confidential commercial information"); *iLife Techs., Inc v. OnAsset Intel., Inc*., No. 3:12-CV-05155-M-BK, 2013 WL 12126265, at *1 (N.D. Tex. Oct. 22, 2013) ("Courts may enter protective orders limiting the disclosure of confidential technical information, trade secrets, and source code, the disclosure of which could injure or damage the party producing the information.").

Skiplagged takes the protection of its confidential information and trade secrets seriously and treats all its internal business documents and information as confidential. App'x, Ex. 2, p. 204-05 at ¶ 3. To protect its confidential business information, as well as the sensitive information of third parties, Skiplagged requires employees to execute a non-disclosure agreement. *Id.* Further, Skiplagged limits its own employees' access to confidential information to a need-to-know basis, including Skiplagged's customer database, which is limited to select customer service employees responding to particular customer inquiries. *Id.* at ¶ 4.

These protections are necessary because, for example, Skiplagged's core business model is to provide users of Skiplagged.com comparative information about airline routing and pricing by aggregating information from multiple sources, including online travel agents, metasearch engines and other publicly available sources. *Id.* at p. 206, ¶ 6. To do this, Skiplagged developed proprietary software and applications that run on Skiplagged.com. *Id.* Interested users benefit

Page 11

from Skiplagged's publication of comparative route and fare information that is not available directly from carriers. *Id.* If Skiplagged's computer software and applications were made public, it would allow competitors to benefit from Skiplagged's innovation and could be used to disrupt Skiplagged's information sources to diminish the value of Skiplagged's business proposition. *Id.* For example, Plaintiff has threatened customers against the use of Skiplagged's services by cancelling customer tickets and barring them from further travel.[5] And, as evidenced by Plaintiff's proposed confidentiality "agreement," Plaintiff intends to use Skiplagged's confidential information for target marketing against Skiplagged. *Id.* at p. 207, ¶ 7.[6]

Further, Skiplagged's financials, revenues, and relationships with vendors are confidential. Skiplagged is a privately held company and none of its financial information is public. App'x, Ex. 2, p. 207 at ¶ 8. Skiplagged has competitors in the business of providing travel information to internet users and facilitating ticketing and disclosure of Skiplagged's confidential financial and vendor information would likely cause Skiplagged competitive harm to the extent it could attract additional competitors or help existing competitors refine their offerings and pricing. *Id.*

Because Skiplagged's confidentiality objection is proper and it has consistently sought an agreement on the entry of a confidentiality order but been unreasonably refuted by Plaintiff, Plaintiff's Motion to Compel responses to *every* discovery request without protection should be denied.

---

[5] *See* "American Airlines barred a 17-year-old from flying with the airline for 3 years because he tried to use a 'skiplagging' tick, the teen's father says," https://www.insider.com/skiplagging-american-airlines-banned-teenager-hidden-city-ticket-canceled-2023-7.

[6] Given Plaintiff's admission that it intends to use Skiplagged's confidential information outside this litigation, Skiplagged requests that if the Court orders the production of this confidential information, that it be limited to attorney eye's only under Skiplagged's proposed protective order.

### III.     Plaintiff's Requests are Overbroad, Unduly Burdensome, and Disproportionate to the Needs of this Case

The scope of discovery is not unlimited. Discovery is only permitted as to "any nonprivileged matter that is relevant to any party's claim or defense" and "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Importantly, the federal discovery rules do not allow a party to engage in speculative "fishing expeditions." *Mauldin v. Fiesta Mart*, 114 F.3d 1184 (5th Cir. 1997). Moreover, "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit…." *Mir v. L-3 Communications Integrated Systems, L. P.*, 315 F.R.D. 460, 464 (N.D. Tex. 2016).

Plaintiff's requests seek invasive encyclopedic information that is not relevant to the claims and defenses at stake in this litigation and would subject Skiplagged to a substantial burden to search for and produce that outweighs any theoretical benefit to Plaintiff.

Plaintiff has brought five claims against Skiplagged: (1) breach of contract; (2) tortious inference with contract; (3) trademark infringement under 15 U.S.C. § 1114; (4) false designation of origin and unfair competition under 15 U.S.C. § 1125(a); (5) and copyright infringement under 17 U.S.C. § 101. Dkt. 8. In response, Skiplagged filed a Motion to Dismiss based on lack of personal jurisdiction. Dkt. 21.

The required elements for Plaintiff's claims are:

1.  Breach of contract: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499 (5th Cir. 2018).

2. Tortious interference with contract: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Nix v. Major League Baseball,* 62 F.4th 920, 934 (5th Cir. 2023), cert. denied, No. 22-7810, 2023 WL 6378365 (U.S. Oct. 2, 2023).

3. Trademark infringement under 15 U.S.C. § 1114 & False designation of origin and unfair competition under 15 U.S.C. § 1125(a): (1) plaintiff has a protectable interest in the mark; and (2) there is a likelihood of confusion between its mark and the defendant's mark. *Transparent Energy LLC v. Premiere Mktg. LLC*, No. 3:19-CV-03022-L, 2020 WL 4678438, at *5-6 (N.D. Tex. July 28, 2020), *report and recommendation adopted sub nom. TRANSPARENT ENERGY, LLC, v. PREMIER MARKETING, LLC,* No. 3:19-CV-3022-L, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020).

4. Copyright infringement under 17 U.S.C. § 101: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

Plaintiff's discovery requests go far beyond evidence and information related to the elements of Plaintiff's claims.

### a. Customer data
### RFPs 4-6, Interrogatory 8

Unsupported speculation that documents sought to be compelled might contain something relevant is not enough to support an order compelling production. *Mauldin,* 114 F.3d at 1184 (affirming denial of motion to compel and a Rule 56(f) motion for continuance on the grounds that the additional discovery requested was a speculative fishing expedition unlikely to uncover relevant evidence).

Nevertheless, Plaintiff's Motion makes the conclusory argument that uncited deposition testimony confirms the existence of unidentified documents and that "these documents" are "highly relevant to the issues of this case, including the jurisdictional issues." Dkt 39, p. 5. Plaintiff offers no further explanation as to exactly what "documents" are at issue or how they go to the elements above. *Id.* That is no grounds to compel Skiplagged to produce unidentified

Page 14

documents for unidentified reasons.

Indeed, Plaintiff's entire Motion only refers to four separate requests seeking "PNR Data," in addition to (1) "any other personal identifying information for each passenger;" (2) "all reservations and itinerary details;" (3) "the amount charged to the customer for the American ticket;" and (4) the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g. service fees, baggage fees, or other fees)." Dkt. 39, p. 5. These requests not only seek an exorbitant number of data points but request the disclosure of highly sensitive third-party information.

Plaintiff defines "PNR Data" as:

> 14.    **"PNR Data"** refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

Dkt. 40, pp. 10, 65. These 19 data points, plus the four other sub-parts of the requests, have no bearing on the elements Plaintiff must prove in this litigation. For example, a customer's travel dates, frequent flier and benefits information, payment/billing information, code share information, ticket number, baggage and seat information, and further personal identifying information in no way relate to the contract and infringement claims alleged.

Nor is this information necessary for Plaintiff to respond to jurisdictional issues raised in Skiplagged's Motion to Dismiss. Skiplagged has twice provided responses to Plaintiff's interrogatories seeking the number of bookings it facilitated on behalf of customers with a Texas address and for flights to, from, or within Texas. Dkt. 40, pp. 52-53, 118; App'x. Ex. 1-J, pp 193-94, 198-99. Plaintiff's Motion to Compel gives the Court no reason why Plaintiff needs every Skiplagged customer's sensitive billing information and seat number to address whether this Court has personal jurisdiction over Skiplagged given Skiplagged targets no services into Texas.

Moreover, Plaintiff's discovery requests would imperil an unknown number of customers that have not involved themselves in this litigation, but nevertheless find their confidential information turned over and used in Plaintiff's "day-to-day commercial activities." Third parties with absolutely no involvement in this litigation, should not be subject to the disclosure of their sensitive, private information, especially when it has no bearing on the litigation. *MIECO LLC v. Pioneer Nat. Res., USA, Inc.*, No. 3:21-CV-1781-B, 2022 WL 18034481, at *2 (N.D. Tex. Oct. 28, 2022) ("protecting the confidential information of third parties, outweighs the public's common law right of access"); *see BNSF Ry. Co. v. Panhandle N. R.R. LLC*, No. 4:16-CV-01061-O, 2018 WL 4076487, at *3 (N.D. Tex. Jan. 11, 2018). Plaintiff's PNR Data definition includes, for example, "(5) [a]vailable frequent flier and benefit information (i.e., free tickets, upgrades, etc.; (6) other names on PNR, including number of travelers on PNR; (7)  All available

contact information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number)." This is undoubtedly sensitive third-party information.

In all, the burden and expense on Skiplagged to search for and produce the 19 data points in the definition of "PNR Data" alone, for each and every millions of bookings it facilitated since August 1, 2018 that included an American Airlines ticket, a customer with a Texas address, or flights to from or within Texas, far outweighs any benefit to Plaintiff in this litigation. Specifically, since August 1, 2018, Skiplagged has facilitated approximately 1,376,897 bookings for American flights. Dkt. 40, p. 118. Since August 2018, Skiplagged has facilitated 434,534 bookings reflecting Texas addresses, and 854,317 books for flights to, from, or within Texas. *Id.* at pp. 52-53. Thus, not only is Plaintiff seeking production of 2,665,748 bookings, but Skiplagged would be required to search for, review, redact, and produce approximately 50,649,212 data points (bookings x data requested).

Only one Skiplagged employee has access to pull the information requested by Plaintiff. App'x, Ex. 2, p. 205 at ¶ 4. Thus, Plaintiff's requests require that one employee to search Skiplagged's Google Workspace, Slack platform, and database for all 2,665,748 bookings, compile each of the 19 data points requested per booking and get them in a form appropriate for production. *Id.* at ¶¶ 2, 10. Additionally, if any of the information is limited (as it should be for privacy concerns), Skiplagged would then be required to go through each piece of data and redact such information. This would be a burdensome task on any business, but especially on Skiplagged, a small company of only seven employees. *Id.* The production Plaintiff's seek, aside from being irrelevant, simply isn't feasible and far outweighs any theoretical benefit to Plaintiff.

### b. Agreements and communications with third parties
   RFPs 2-3, 15-17, 31-36, 44, 52-54; Interrogatory 6, 14

"Requests for agreements and communications with companies that are not party to the

underlying litigation are highly likely to be irrelevant and overbroad." *BNSF,* 2018 WL 4076487 at *2. Further, "the value of non-party documents to the present litigation is unlikely to outweigh the harm to non-parties who have done nothing to involve themselves in this case but find their confidential business dealings unwillingly given over to competitors or made public record." *Id.* at *3.

Nevertheless, Plaintiff's requests seek Skiplagged's agreements and communications with third parties. Dkt. 40, p. 68 (RFP No. 2-3), p. 70 (RFP 15-17) p. 72 (RFP 31- 36), p. 73 (RFP 44), p. 74 (RFP 52-54). However, even if Skiplagged's agreements and communications with third parties were relevant to this litigation, Plaintiff's requests for such extensive information creates a burden on Skiplagged that outweighs any benefit to Plaintiff. For example, Request for Production Nos. 2 and 3 seek:

> **REQUEST FOR PRODUCTION NO. 2:** All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.
>
> **REQUEST FOR PRODUCTION NO. 3:** All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

Dkt. 40, p. 68. Because these related requests are so broad, Skiplagged would be required to search it's entire realm of documents and communications for terms such as "contract," "agreement," "supplement," and "draft" simply to then comb through the undoubtedly outrageous amount of results to determine if they relate to the laundry list of third-party documents requested. App'x, Ex. 2, ¶ 9. Since inception, Skiplagged has sent over 500,000 messages and 27,000 documents on the Slack platform alone, not accounting for email, other document storage, and a database of customer information that contains tens of millions of data fields. *Id.* Given that there is no probative value to this information in relation to the claims

Page 18

brought by Plaintiff, the burden and expense on Skiplagged to undertake the exhaustive search and production warrants denial of Plaintiff's Motion to Compel. *Id.*

## IV. Skiplagged Responded to Multiple Interrogatories and Requests

Despite Plaintiff's sweeping claim that *all* of Skiplagged's discovery responses are insufficient, Skiplagged provided responsive information prior to Plaintiff's Motion to Compel and has now served amended responses making that information more clear. *See* App'x. Ex. 1-J, pp. 192-202 (Second Amended Responses to Interrogatories).

For example, prior to Plaintiff's Motion, Skiplagged identified the total amount of American Airlines flights Skiplagged facilitated since August 1, 2018 [Dkt. 40, p. 118], explained that Skiplagged obtains American Airlines flight information through API's (*Id.*); explained that Skiplagged does not purchase or sell American Airlines tickets to anyone (*Id.* at pp. 119-20); uses a proprietary algorithm to enable customers to identify affordable rates for airline and hotel accommodations and then refers the user to online travel agents to complete bookings (*Id.*); and utilizes Google's Puppeteer software to populate a user's booking information. *Id.*

Skiplagged further informed Plaintiff that it has no practice that directs, targets, or keeps separate, persons with a Texas address but that  from August 1, 2018 to August 8, 2023, Skiplagged facilitated 1,376,897 bookings on American Airlines flights [Dkt. 40, p. 118]; 434,534 bookings reflecting a user with a Texas address booked through the "Book Now" feature (approximately 00.207% of all Skiplagged sessions using Google Analytics) (*Id.* at pp. 52-53); and 854,317 bookings for flights that originated and/or terminated in Texas (approximately 00.408% of all Skiplagged sessions using Google Analytics). *Id.* at p. 53. These responses provide exactly what Plaintiff's request seek. *See e.g.,* Dkt. 40 at p. 52 ("Interrogatory

Page 19

No. 12: Identify the number of bookings Skiplagged has made for or on behalf of customers with a Texas address through Skiplagged.com's "Book Now" feature…").

Further, Plaintiff will commence its rolling production of non-confidential documents and identified where the documents requested by Plaintiff are not available because they do not exist. Because Skiplagged cannot produce what it does not have, the Court cannot compel it to produce non-existent documents. *ORIX USA Corp. v. Armentrout*, No. 3:16-MC-63-N-BN, 2016 WL 4095603, at *5 (N.D. Tex. Aug. 1, 2016); *Gordon v. Greenville Indep. Sch. Dist.*, No. 3:13-cv-178-P, 2014 WL 6603420, at *2 (N.D. Tex. Nov. 20, 2014) ("Although Plaintiff is not satisfied with this response, he fails to point to anything that suggests such reports actually exist. The Court cannot compel GISD to produce documents that do not exist."); *McElwee v. Wallantas*, No. Civ. A. L-03-CV-172, 2005 WL 2346945, at *3 (S.D. Tex. Sept. 26, 2005) ("[T]he Court cannot order the Defendants to produce documentation that does not exist. Therefore, unless the Plaintiff can provide proof that the documents exist, rather than mere speculation, the Court will not entertain motions to compel the Defendants to produce documentation whose existence is nothing more than theoretical.").

In the absence of a protective/confidentiality order, Skiplagged has provided sufficient responses to appropriate discovery requests and Plaintiff fails to point to which specific requests are at issue, let alone information it needs to prove its claims, but does not have. Thus, Plaintiff's Motion to Compel should be dismissed.

## V.      Skiplagged is Not Required to Comply with Plaintiff's Proposed ESI Protocol

Plaintiff's Motion to Compel seems to imply that Skiplagged waived an objection to producing documents in compliance with the ESI protocol that it proposed for negotiation on October 12, 2023. This is incorrect and Plaintiff's reliance on FED. R. CIV. P. 34(b)(1)(C) is

Page 20

misplaced.

      Fed. R. Civ. P. 34(b)(1)(C) states:

    (1) Contents of the Request. The request: (C) may specify the form or forms in which electronically stored information is to be produced.

Fed. R. Civ. P. 34(b)(1)(C).

      First, Plaintiff's requests for production did not specify any form or forms in which ESI was to be produced. Dkt. 40, pp. 60-63 Serving a proposed ESI protocol in a separate email, asking for input and opening negotiations for an agreement, does not equate to including requested ESI forms in Plaintiff's actual production requests. Moreover, when metadata is not sought in the initial document request, Court's generally conclude that the metadata is not relevant. *Moore v. Alberto-Culver Co.*, No. 3-07-CV-1216-P, 2009 WL 10704329, at *2 (N.D. Tex. Feb. 9, 2009). Indeed, it is the responding parties that are best situated "to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI." *In re Apache Corp. Sec. Litig.*, No. 4:21-CV-00575, 2023 WL 5322444, at *1 (S.D. Tex. Apr. 10, 2023) (internal quotation omitted).

      Skiplagged made multiple good faith attempts to agree on an ESI protocol with Plaintiff. Skiplagged relied on those negotiations to facilitate reasonable search terms it could use to conduct orderly discovery in this matter. Though Plaintiff initially promised search terms, it now refuses to, as Plaintiff put it "play that game." Now that Skiplagged is no longer waiting on the promised search terms, it will proceed with gathering and producing documents as it is required "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E)(ii).

<u>**CONCLUSION**</u>

      Therefore, for the reasons set forth above, the Court should deny Plaintiff's Motion to

Page 21

Compel and grant Skiplagged such further relief, in law or in equity, to which the Court finds Skiplagged entitled.

28171258v2 99460.002.00

Dated: December 15, 2023.

Respectfully submitted,

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

***Attorneys for Defendant, Skiplagged, Inc.***

Page 23

28171258v2 99460.002.00

## <u>CERTIFICATE OF SERVICE</u>

On December 15, 2023, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Abigail R.S. Campbell*
Abigail R.S. Campbell

28171258v2 99460.002.00