# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT OF WILLIAM L. KIRKMAN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

BEFORE ME, the undersigned authority, personally appeared William L. Kirkman, who, being by me duly sworn, deposed as follows:

My name is William L. Kirkman. I am over the age of 18 and have never been convicted of a felony or crime of moral turpitude. I am fully competent to make this Affidavit and have personal knowledge of the facts stated herein and they are true and correct.

1.      I am a licensed attorney with the law firm Kirkman Law Firm, PPLC, 201 Main Street, Suite 1160 Fort Worth, Texas 76102.

2.      I am counsel of record in the above captioned matter for Defendant Skiplagged, Inc.

3.      Attached hereto are true and correct copies of correspondence exchanged between myself and Plaintiff's counsel during the pendency of this litigation:

| Exhibit 1-A | October 12, 2023 Email from Plaintiff re: American Airlines v. Skiplagged—Initial |
|---|---|

1

|  | Disclosures |
|---|---|
| Exhibit 1-B | November 3, 2023 Email to Plaintiff re: American v. Skiplagged |
| Exhibit 1-C | November 7, 2023 Email to Plaintiff re: AA v. Skiplagged, Inc. with attachment |
| Exhibit 1-D | November 8, 2023 Email to Plaintiff re: AA v. Skiplagged, Inc. with attachment |
| Exhibit 1-E | November 9, 2023 Email from Plaintiff re: AA v. Skiplagged, Inc. with attachment |
| Exhibit 1-F | December 5, 2023 Email to Plaintiff re: AA v. Skiplagged, Inc. with attachment |
| Exhibit 1-G | December 5, 2023 Email to Plaintiff re: AA v. Skiplagged, Inc. with attachment |
| Exhibit 1-H | December 6, 2023 Letter from Plaintiff |
| Exhibit 1-I | December 7, 2023 Letter to Plaintiff |

4.   Attached hereto as Exhibit 1-J is a true and correct copy of Defendant's Second Amended Responses to Plaintiff's First Set of Interrogatories, served on December 13, 2023.

FURTHER, AFFIANT SAYETH NOT.

SIGNED this ___ day December 2023.

William C. Kirkman

SUBSCRIBED AND SWORN TO BEFORE ME this 15 day of December 2023, to which I certify my hand and official seal.



CHRISTY NEWMAN
ID #129989574
My Commission Expires
October 10, 2026

Notary Public
Print Name: Christy Newman
My Commission Expires: 10/10/26

2

28169923v2 99460.002.00
**APP 0003**

# EXHIBIT 1-A

APP 0004

**Bill Kirkman**

| | |
|---|---|
| **From:** | Lars Berg <lars.berg@kellyhart.com> |
| **Sent:** | Thursday, October 12, 2023 10:59 AM |
| **To:** | Bill Kirkman; Dee Kelly; Tyson M. Lies; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com |
| **Cc:** | Preston Sawyer |
| **Subject:** | RE: American Airlines v. Skiplagged—Initial Disclosures |
| **Attachments:** | AA v. Skiplagged ESI Protocol (Final Draft for Review 2023-10-10).docx |

Bill,

Attached is a copy of American's proposed ESI protocol. Please let me know whether or not you will agree to it, and if not, what changes you would propose.

Regards,
Lars

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Wednesday, October 4, 2023 3:06 PM
**To:** Dee Kelly <dee.kelly@kellyhart.com>; Lars Berg <lars.berg@kellyhart.com>; Tyson M. Lies <Tyson.Lies@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com
**Cc:** Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** American Airlines v. Skiplagged—Initial Disclosures

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Counsel:

As I read the Rules, *Initial Disclosures* are required to be made within fourteen days after our conference, which I calculate to be October 9. I think you suggested October 10 in the *Report*. These are due then unless a party makes an objection at the conference to providing such and confirms it in the *Joint Report*. I believe I made such an objection at the conference and confirmed that was our position in the *Report*. And, I did not see a reference to when *Disclosures* should be made in Judge Pittman's September 27th *Scheduling Order*.

Would American be agreeable to putting off the *Disclosures* until within ten days of the Court deciding our *Motion to Dismiss*, assuming, of course, the Judge denies it, as I proposed in the *Report*? If he grants it, there would be no *Disclosures* to make.

APP 0005

I am not sure how productive it would be to provide these *Initial Disclosures* at this early juncture anyway. Witnesses may or may not be necessary now, depending upon whether the Court grants the *Motion to Dismiss*. If it is denied, it seems like my proposal would be sufficient for both of us on that subject. I know we are awaiting American's proposal as to how to handle electronically stored information. We are willing to put off your disclosure of the damages you claim, which would be your obligation. For what it's worth, I have asked Skiplagged about its insurance coverage and will provide that to you without regard to delaying the other information.

Anyway, please let me know whether what I propose is agreeable to American.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 0006

I.   **PROTOCOL FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

The Parties hereby agree to the following protocol related to electronically stored information ("ESI") and paper ("hard copy") documents. This protocol governs all productions in the matter.

**A. Definitions**

1.   "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes ESI existing in any medium from which information can be translated into reasonably usable form, including but not limited to email and attachments, word processing documents, spreadsheets, graphics, presentations, images, text files, databases, instant messages, transaction logs, audio and video files, voicemail, internet data, computer logs, text messages, and backup materials. The term "Document(s)" shall include Hard Copy Documents, Electronic Documents, and Electronically Stored Information (ESI) as defined herein.

2.   "Electronic Document(s) or Data" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

3.   "Electronically stored information" or "ESI," is information that is stored electronically as files, documents, or other data on computers, servers, mobile devices, online repositories, disks, USB drives, tape or other real or virtualized devices or digital media.

4.   "Hard Copy Document(s)" means Documents existing in paper form at the time of collection.

5.   "Hash Value" is a numerical identifier that can be determined from a file, a group of files, or a portion of a file, based on a standard mathematical algorithm that calculates a value for a given set of data, serving as a digital fingerprint, and representing the binary content of the data to assist in subsequently ensuring that data has not been modified and to facilitate duplicate identification. Unless otherwise specified, hash values shall be calculated using the MD5 hash algorithm or latest SHA-I algorithm.

6.   "Instant message" is any real-time message, post or other communication transmitted over the internet or another computer network via a social messenger, messaging application or chat application (e.g. Discord, Teams, Slack, WhatsApp).

7.   "Load File(s)" are electronic files containing information identifying a set of paper scanned (static) images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. Load Files also contain data relevant to individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text. A load file linking corresponding images is used for productions of static images (e.g., TIFFs).

8. "Metadata" is the term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file.

9. "Native Format" means the file format associated with the original creating application and as collected from custodians. For example, the native format of an Excel workbook is an .xls or .xlsx file.

10. "Optical Character Recognition" or "OCR" means a technology process that captures text from an image for the purpose of creating an ancillary text file that can be associated with the image and searched in a database. OCR software evaluates scanned data for shapes it recognizes as letters or numerals.

11. "Searchable Text" means the native text extracted from an Electronic Document or, when extraction is infeasible, by Optical Character Recognition text ("OCR text") generated from a Hard Copy Document or electronic image.

## B. eDiscovery Liaison

The Parties agree to designate one or more competent persons to serve as liaisons for purposes of meeting, conferring and attending court hearings regarding discovery of ESI.

## C. Production of ESI:

1. Search methodology.  Parties shall try to reach agreement on appropriate search terms before any query is performed. A Producing Party shall disclose what search terms, if any, were used to locate ESI likely to contain discoverable information.  If search terms were not used, a party shall disclose the search methodology used to locate ESI likely to contain discoverable information.

2. Processing.

   a. The Parties will use reasonable efforts and standard industry practices to address and resolve exception issues for items that present processing, imaging or form of production problems (including encrypted, corrupt and/or protected files identified during the processing of ESI).

   b. Parties shall normalize times and dates to conform to United States Central Time (CT).

   c. For archive files (zip, jar, rar, gzip, TAR, etc.), all contents should be extracted from the archive with source pathing and family relationships preserved and produced. The fully unpacked archive container file does not need to be included in the production.

3. Production Format.

   a. Delivery.  The Parties agree that all documents produced in this matter shall be exchanged electronically via secure FTP or on CD, DVD, flash drive, or hard drive sent by FedEx overnight delivery. The production volumes shall be

password encrypted.

b. <u>Load Files</u>

    i. Productions will, as applicable, include image load files in Opticon or IPRO format as well as Concordance format data (.dat) files with the applicable metadata fields identified under C(6). All metadata will be produced in UTF-16LE or UTF-8 with Byte Order Mark format.

    ii. All native format files shall be produced in a folder named "NATIVE."

    iii. All TIFF images shall be produced in a folder named "IMAGE," which shall contain sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 10,000 images. Images from a single document shall not span multiple sub-folders.

    iv. All extracted Text and OCR files shall be produced in a folder named "TEXT."

    v. All load files shall be produced in a folder named "DATA" or at the root directory of the production media.

c. <u>Branding.</u>

    i. The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number without obscuring any part of the Document image.

    ii. The Producing Party will brand all TIFF images in the lower left-hand corner with its corresponding Confidentiality designation without obscuring any part of the Document image.

d. <u>Images.</u>

    i. The Parties will produce Electronic Documents, Data and ESI as single page Group IV TIFF images, 300 dpi quality or better, and Letter or Legal page size, unless identified for Native production only in C(3)(f).

    ii. Each TIFF image should have a unique file name corresponding to the Bates number of that page with a ".tif" file extension. The file name should not contain any blank spaces and should be zero-padded (e.g., DEF-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents produced.

    iii. All images of documents which contain tracked changes such as comments, deletions and revision marks (including the identity of the person making the deletion or revision and the date and time thereof),

speaker notes, or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the image.

    iv.  Where .TIFF images are illegible due to color content (such as colored text on a colored background) or where color is material to the interpretation of a document, color JPG image files shall be provided upon reasonable request.

    v.  Presentations with speaker notes will be processed such that the presentation slide and the speaker notes are on separate consecutive pages.

e.  <u>Slipsheets</u>. The Parties will provide TIFF image slipsheets with Bates number and Confidentiality designation for the following documents with the following slipsheet language:

    i.  Documents withheld as privileged within a produced family should be indicated on the slipsheet as "THIS DOCUMENT WITHHELD AS PRIVILEGED"

    ii.  Documents produced in Native format should be indicated on the slipsheet as "THIS DOCUMENT PRODUCED NATIVELY."

    iii.  Documents that cannot be produced due to processing, imaging or form of production problems as described in 2(a) should be indicated on the slipsheet as "EXCEPTION DOCUMENT."

f.  <u>Natives.</u>

    i.  The Parties will produce the following forms of ESI in native formats.

        1.  Spreadsheets.

        2.  PowerPoint presentations.

        3.  Access databases.

        4.  Delimited text files.

        5.  Photographs.

        6.  Audio and video files.

        7.  Documents of a type which cannot be reasonably converted to useful TIFF images.

    ii.  PowerPoint presentations shall be produced in Native format as well as image, as defined in C(3)(d).

    iii.  For all other forms produced in Native format, the Parties will provide a corresponding slipsheet, text file, and all metadata as identified in C(6)(a).

iv. Each Native file should have a unique file name corresponding to the Bates number of the slipsheet or first TIFF image page for that document, appended with the Confidentiality designation. The file name should not contain any blank spaces and should be zero-padded (e.g., DEF-000001), taking into consideration the estimated number of pages to be produced.

g. <u>Text.</u> For each document, a single Unicode text file containing extracted text shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file to the extent reasonably feasible unless the document is an image file or contains redactions, in which case, a text file created using OCR should be produced in lieu of extracted text.

h. <u>Redactions.</u> Any redacted material must be clearly labeled on the face of the document as having been redacted and shall be identified as such in the load file provided with the production. Each redacted document shall be produced with an OCR *.txt file containing unredacted text.

i. <u>Document Families.</u>

i. The Parties agree that if any part of a Document or its attachments or of an instant message conversation or thread is responsive, the entire Document and attachments, thread or conversation will be produced or a slipsheet provided consistent with the instructions in the Protocol. Document and attachments include instant message conversations and threads to the extent reasonably practicable.

ii. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document or between instant message conversations or instant message threads) are preserved. The child or conversation/thread document(s) shall be consecutively produced immediately after the parent or initial document.

j. <u>Deduplication.</u>

i. The Producing Party shall de-duplicate documents based on MD5 or SHA-I hash values at the family level or by Message ID and other standard methodology for email within the collection of a custodian or a data source. Attachments to parent documents may not be deduplicated against a duplicate standalone version of the attachment exists, and standalone versions of documents may not be suppressed if a duplicate version exists as an attachment.

ii. The Producing Party will track all deduplicated files and provide the name of each custodian of these duplicate files in the load file.

k. <u>Email Threading.</u> To reduce the volume of entirely duplicative content within

email threads, the Parties may, but are not required to, use email threading. A party may use industry standard message threading technology to remove email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread; provided, however, that the use of threading must not serve to obscure whether a recipient received an attachment.

4. <u>Structured Data</u>. If ESI in commercial or proprietary database formats can be produced in an existing and reasonably usable, delimited report format (e.g., Excel or CSV), the Parties will produce the information in such format. If an existing report format is not reasonably available or usable, the Parties will meet and confer to attempt to identify a mutually agreeable form of production based on the specific needs and the content and format of data within such structured data source.

5. <u>Hard Copy Documents</u>.

   a. Hard copy documents shall be scanned to single page Group IV TIFF format, 300 dpi quality or better with corresponding searchable OCR text. Production format of these documents shall be the same as electronic documents and data.

   b. The Parties shall use reasonable efforts to ensure distinct documents are not merged into a single record and single documents are not split into multiple records (i.e., paper documents should be logically unitized). For example, Hard Copy Documents stored in a binder, folder, or similar container should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The Parties will undertake reasonable efforts to, or have their vendors, logically unitize documents correctly, and will commit to address situations of improperly unitized documents.

   c. The Parties shall use reasonable efforts to index documents in order to provide Custodian and Source data as well as Filename or Title for each unitized document.

6. <u>Metadata fields</u>.

   a. <u>Electronic Documents and Data</u>. The Parties agree to provide the following metadata fields for Electronic Documents and Data when reasonably available:

| Field Name | Description |
|---|---|
| BEGBATES | First Bates number of native document/emails |
| ENDBATES | Last Bates number of native file document/email |
| BEGATTACH | First Bates number of attachment range, including range of instant message conversation |
| ENDATTACH | Last Bates number of attachment range, including range of instant message conversation |
| ATTACHCOUNT | Number of attachments to an e-mail |

| Field Name | Description |
|---|---|
| CUSTODIAN | Individual from whom the document originated/was collected |
| DUPLICATE CUSTODIAN | Custodians whose file/message has been de-duplicated including the original Custodian; separated by semicolons |
| CONFIDENTIAL | Export as field the coded designation for each document |
| REDACTED | Export as field for all documents, whether redacted or not |
| FAMILY DATE TIME | Date and time parent document was sent or last modified |
| SENT DATE TIME | Date and time email or instant message was sent |
| CREATE DATE TIME | Date and time document, including instant message, was created |
| LAST MOD DATE TIME | Date and time document, including instant message, was last modified or edited |
| LAST MOD BY | Last individual to modify the document, including instant message |
| AUTHOR | Author of the document |
| FROM | Email or instant message Sender |
| TO | Email or instant message "To" recipient(s) or Recipient(s) of an instant message, separated by semi-colons |
| CC | Email or instant message "Carbon Copy" recipient(s), separated by semi-colons |
| BCC | Email or instant message "Blind Carbon Copy" recipient(s), separated by semi-colons |
| PARTICIPANTS | User name(s) or ID(s) for participants in an instant message thread |
| SUBJECT | Subject line of the email |
| FILENAME | Original name of file as appeared in location where collected |
| CONVERSATION TOPIC | Topic or subject of an instant message conversation |
| THREAD ID | Thread identifier for an instant message |
| CONVERSATION ID | Identifier for an instant message conversation |
| FILE EXTENSION | The file type extension of the document |
| FILEPATH | Path where native file document, including email, was stored when collected, including original file name |
| GROUP NAME | Name of channel, group or meeting of an instant message |
| WORKSPACE NAME | Name of workspace or community of an instant message |
| DEDUPED FILEPATH | Full filepath of deduplicated instances, separated by semicolons |
| FILESIZE | Size of native file document/email in KB |
| PAGE COUNT | Number of pages |
| HIDDEN CONTENT | Denotes presence of Tracked Changes / Hidden Content / Embedded Objects in item(s) (Y/N) |
| NATIVELINK | Relative path and filename for native file on production media |
| TEXTLINK | Relative path and filename for text file on production media |

| Field Name | Description |
|---|---|
| MSGID | E-mail or instant message Unique Message ID |
| HASH | MD5 or SHA-# Hash value of the item |

     b. <u>Hard Copy Documents</u>.  The Parties agree to provide the following metadata fields for Hard Copy Documents when reasonably available:

| Field Name | Description |
|---|---|
| BEGBATES | First Bates number of native document/emails |
| ENDBATES | Last Bates number of native file document/email |
| BEGATTACH | First Bates number of attachment range |
| ENDATTACH | Last Bates number of attachment range |
| CUSTODIAN | Individual from whom the document originated/was collected |
| CONFIDENTIAL | Export as field the coded designation for each document |
| REDACTED | Export as field for all documents, whether redacted or not |
| AUTHOR | Author indexed from the face of the document, if reasonably available |
| TITLE | Title indexed from the face of the document, if reasonably available |
| PAGE COUNT | Number of pages |
| TEXTLINK | Relative path and filename for text file on production media |

## D.  Privilege

   1. <u>Rule 502 Agreement.</u>

     a. For purposes of this Agreement, an "Inadvertently Produced Document" is a document produced to a Party in this litigation that could have been withheld, in whole or in part, based on a legitimate claim of attorney-client privilege, work-product protection, or other applicable privilege.

     b. Inclusion of any Inadvertently Produced Document in a production shall not result in the waiver of any privilege or protection associated with such document, nor result in a subject matter waiver of any kind.

     c. A Producing Party may demand the return of any Inadvertently Produced Document, which demand shall be made to the Receiving Party's counsel in writing and shall contain information sufficient to identify the Inadvertently Produced Document.

     d. Within five (5) business days of the demand for the Inadvertently Produced Document, the Producing Party shall provide the Receiving Party with a Privilege Log as described in D(2). The Producing Party shall also provide (i) a redacted copy of the Inadvertently Produced Document that omits the information that the Producing Party believes is subject to a claim of privilege or (ii) a slipsheet

containing the original Bates range of the Inadvertently Produced Document that the Producing Party believes is subject to a claim of privilege.

    e.   Upon receipt of a written demand for return of an Inadvertently Produced Document, the Receiving Party shall immediately return the Inadvertently Produced Document (and any copies thereof) to the Producing Party and shall immediately delete all electronic versions of the document.

    f.   The Receiving Party may object to the Producing Party's designation of an Inadvertently Produced Document by providing written notice of such objection within five (5) business days of its receipt of a written demand for the return of an Inadvertently Produced Document. Any such objection shall be resolved by the Court after an in-camera review of the Inadvertently Produced Document. Pending resolution of the matter by the Court, the Parties shall not use any documents that are claimed to be Inadvertently Produced Documents in this litigation.

2.   <u>Privilege Log.</u>

    a.   The Producing Party shall supply a log ("Privilege Log") of the documents withheld or redacted for Attorney-Client Privilege and/or Work Product Protection with sufficient information to allow the Receiving Party to evaluate each claim,

    b.   The Privilege Log shall be produced no later than fifteen (15) days after production.

    c.   Each Privilege Log shall include the following metadata:

| Field Name | Description |
|---|---|
| PRIVILEGE LOG ID | Unique identifying number for each document entered on the Privilege Log |
| BEGBATES | First Bates number of a redacted document or a document with a produced slipsheet, if applicable |
| ENDBATES | Last Bates number of a redacted document or a document with a produced slipsheet, if applicable |
| BEGATTACH | First Bates number of attachment range for a redacted document or a document with a produced slipsheet, if applicable |
| PRIVILEGE LOG FAMILY ID | First Privilege Log number of the attachment range for each document |
| CONFIDENTIAL | Export as field the coded designation for each document |
| FAMILY DATE TIME | Date and time parent document was sent or last modified |
| FROM/AUTHOR | Email Sender and/or Author of the document |
| RECIPIENTS | Email To, Carbon Copy, and Blind Carbon Copy recipient(s), separated by semi-colons |

     d.  Each Privilege Log shall include the type of privilege being asserted and a description of the document and claim of privilege.

3.  <u>Exclusions.</u>  The Parties are not required to disclose the following documents withheld or redacted for Attorney-Client Privilege or Work Product Protection:

     a.  Communications with outside counsel and/or in-house litigation counsel related to the present litigation after the filing of the Complaint.

     b.  Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

# EXHIBIT 1-B

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Friday, November 03, 2023 11:46 AM |
| **To:** | Lars Berg |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | RE: American v. Skiplagged |

Lars,

We respectfully decline your proposal in your 10-31-23 e-mail from 12:47 for all the reasons we have discussed and as were referenced in our earlier and subsequent e-mail exchanges and telephone calls. We are prepared however, to offer American the opportunity to depose an organizational witness from Skiplagged for a deposition pursuant to Rule 30(b)(6), for testimony concerning the jurisdictional issues associated with our pending motion, in New York, where Skiplagged is located, in the near future so such testimony could be used by American, if it so chooses, in responding to our motion. Given your e-amil below however, I am assuming American will decline our proposal. If my assumption is incorrect, please advise so we can work out the particulars.

Two other matters.

One, we are willing to extend the time for the filing of motions for leave to join parties and to amend pleadings from its current date of 11-27-23 so as to allow our motion to dismiss to be ruled upon in conformity with Judge Pittman's order extending the time for American to respond to our motion. See Rule 12(a)(4)(a). Let me know if you wish to join in such and we can request permission for such from Judge Pittman.

Two, we are prepared to provide American some information responsive to certain of your discovery requests that we believe is confidential and private to Skiplagged. So, we propose to do so pursuant to a confidentiality Order or agreement that protects the confidentiality of such information and allows its use in this case only. I am certain you are familiar with and have experience with such orders and agreements and are willing to work with Skiplagged to accomplish such. I also presume American would want the same type of protection should the need arise. We will work to provide you something along those lines soon, but I wanted to alert you to such now in advance.

Thanks.

> William L. Kirkman
> Kirkman Law Firm, PLLC
> 201 Main Street, Suite 1160
> Fort Worth, Texas 76102
> (817) 336-2800, ext. 107
> (817) 877-1863 (Fax)
> billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 0018

**From:** Lars Berg <lars.berg@kellyhart.com>
**Sent:** Tuesday, October 31, 2023 3:21 PM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: American v. Skiplagged

Bill,

As indicated in my email responding to Skiplagged's proposal about conducting discovery, American believes that the Court has already considered and rejected Skiplagged's position that discovery should be limited to jurisdictional issues until Skiplagged's motion to dismiss is decided. Moreover, the Court's scheduling order contains upcoming deadlines that require American to move forward with full discovery now. Accordingly, American does not intend to limit Gellert's deposition to jurisdictional issues.

Regards,

Lars

**Lars L. Berg**
*Partner*

KELLY ⓚ HART
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Bergt@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Tuesday, October 31, 2023 3:09 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: American v. Skiplagged

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars,

2

Before I respond to your request, please advise whether you intend to limit this proposed deposition to jurisdictional issues?

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

---

**From:** Lars Berg <lars.berg@kellyhart.com>
**Sent:** Tuesday, October 31, 2023 12:47 PM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** American v. Skiplagged

Bill:

Please provide by 12:00 noon on Friday, Nov. 3 dates for the oral deposition of Skiplagged's COO, Daniel Gellert, to occur before Nov. 15, 2023.  We are happy to host the deposition, but your office would be fine, too.

Regards,

**Lars L. Berg**
*Partner*

KELLY ⓚ HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3524
FAX (817) 878-9280
*Lars.Berg@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged.  If you have received this communication in error, do not read it.  Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error.  Then delete it.  Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

APP 0020

# EXHIBIT 1-C

APP 0021

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Tuesday, November 07, 2023 11:01 AM |
| **To:** | 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | AA v. Skiplagged, Inc. |
| **Attachments:** | SW v. KIWI PROTECTIVE ORDER.pdf |

Lars:

As I indicated in my e-mail from last week, we intend to provide certain information responsive to certain of your discovery requests. However, we believe that information is confidential and private and want to protect such prior to providing that information to American.

I had the opportunity to review a *Protective Order* that was entered in the *Southwest Airlines Co. v. Kiwi* case in the Dallas Division of the Northern District of Texas, No. 3:21-cv-00098-E. With the exception of some non-material changes that need to be made to ¶ 6 therein, my client believes this *Protective Order* would generally satisfy my client's confidentiality concerns. Having worked with protective orders very similar to this in the past, I also believe this will protect your client's confidentiality-related concerns and interests in the event information will need to be produced by your client to mine in the discovery process should our *Motion to Dismiss for Lack of Personal Jurisdiction* be denied. I am attaching a copy of that *Protective Order* which, as you will see, was signed by Judge Brown on June 30, 2021, and was approved by counsel for the parties prior thereto.

Will this work for American? If so, let's talk about how to get this extrapolated to our case and then have the information we intend to produce, produced pursuant to such a protective order. I know you are anxious to receive whatever information we provide. So, I would appreciate your and your client's expeditious review of this *Protective Order* and the suggestions provided in this e-mail. We stand ready, willing, and able to do the same.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

APP 0022

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 0023

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-00098-E |
| | § | |
| KIWI.COM, INC. and KIWI.COM | § | |
| S.R.O., | § | |
| | § | |
| Defendants. | § | |

## PROTECTIVE ORDER

### Proceedings and Information Governed.

1.　　This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other documents or things produced, given, or filed in this action that are designated by a party as "Confidential Information" or "Confidential Attorney Eyes Only Information" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

### Designation and Maintenance of Information.

2.　　For purposes of this Protective Order, (a) the "Confidential Information" designation means that the document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G), or other information required by law or agreement to be kept confidential, and (b) the "Confidential Attorney Eyes Only" designation means that

the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade-secret information, or information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter. Confidential Information and Confidential Attorney Eyes Only Information does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

   3. Documents and things produced during the course of this litigation within the scope of paragraph 2(a) above, may be designated by the producing party as containing Confidential Information by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

   Documents and things produced during the course of this litigation within the scope of paragraph 2(b) above may be designated by the producing party as containing Confidential Attorney Eyes Only Information by placing on each page and each thing a legend substantially as follows:

2

**CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER**

A party may designate information disclosed at a deposition as Confidential Information or Confidential Attorney Eyes Only Information by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is made at the time of the deposition, any party will have fourteen (14) calendar days after the date of the deposition to designate, in writing to the other parties and to the court reporter, whether any portion of the transcript is to be designated as Confidential Information or Confidential Attorneys Eyes Only Information. If no such designation is made at the deposition or within this fourteen (14) calendar day period (during which period, the transcript must be treated as Confidential Attorneys Eyes Only Information, unless the disclosing party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Information or Confidential Attorneys Eyes Only Information. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. It is the responsibility of counsel for each party to maintain materials containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

**Inadvertent Failure to Designate.**

4.      The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as confidential at a later date in

APP 0026

writing and with particularity. The information must be treated by the receiving party as confidential from the time the receiving party is notified in writing of the change in the designation.

**Challenge to Designations.**

      5.     A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time frame, and after the conference required under Local Rule 7.1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

**Disclosure and Use of Confidential Information.**

      6.     Information designated as Confidential Information or Confidential Attorney Eyes Only Information may only be used for purposes of preparation, trial, and appeal of this action. Confidential Information or Confidential Attorney Eyes Only Information may not be used under any circumstances for prosecuting any patent application, for patent licensing, or for any other purpose.

      7.     Subject to paragraph 9 below, Confidential Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

4

APP 0027

(a)     two (2) employees of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions, and who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(b)     two (2) in-house counsel for the receiving party who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(c)     outside counsel for the receiving party;

(d)     supporting personnel employed by (b) and (c), such as paralegals, legal secretaries, data-entry clerks, legal clerks, and private photocopying and litigation support services;

(e)     experts or consultants; and

(f)     any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court-reporting services, demonstrative-exhibit preparation, or the creation of any computer database from documents.

8.     Subject to paragraph 9 below, Confidential Attorney Eyes Only Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a)     outside counsel for the receiving party;

(b)     supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data-entry clerks, legal clerks, private photocopying and litigation support services;

(c)     experts or consultants; and

(d)     those individuals designated in paragraph 11(c).

5

9.     Further, prior to disclosing Confidential Information or Confidential Attorney Eyes Only Information to a receiving party's proposed expert, consultant, or employees, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A, the resume or curriculum vitae of the proposed expert or consultant, the expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and in writing, stating with particularity the reasons for the objection. Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

10.     Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order. Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

11.     Confidential Information or Confidential Attorney Eyes Only Information may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

(a)     the information was previously received or authored by the person or was authored or received by a director, officer, employee, or agent of the company for which the person is testifying as a designee under Fed. R. Civ. P. 30(b)(6);

6

APP 0029

(b)    the person is the designating party, or is a director, officer, employee, consultant, or agent of the designating party; or

(c)    counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this paragraph, only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure may otherwise be made under and who are bound by this Protective Order, may be present during the disclosure or discussion of the Confidential Information or Confidential Attorney Eyes Only Information. Disclosure of material pursuant to this paragraph does not constitute a waiver of the confidential status of the material so disclosed.

**Nonparty Information.**

12.    The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**Filing Documents With the Court.**

13.    If any party wishes to submit Confidential Information or Confidential Attorney Eyes Only Information to the Court, the submission must be filed using the *Sealed* and/or *Ex Parte Motion* event. The word *"Sealed"* must appear in the title or caption of any document intended for filing under seal (and any proposed order you believe should be filed under seal if entered by the judge).

14.    Producing or receiving Confidential Information or Confidential Attorney Eyes Only Information, or otherwise complying with the terms of this Protective Order, will not

7

APP 0030

(a) operate as an admission by any party that any particular Confidential Information or Confidential Attorney Eyes Only Information contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**Conclusion of Litigation.**

15.     Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Confidential Attorney Eyes Only Information, and to certify to the producing party that this destruction or return has been done. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

**Other Proceedings.**

16.     By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party

APP 0031

subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential Information or Confidential Attorney Eyes Only Information pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**Remedies.**

17.     It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

18.     Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

IT IS SO ORDERED.

SIGNED this 30th day of June, 2021

Honorable Ada Brown
United States District Judge

9

**BENTON WILLIAMS PLLC**

**Benton Williams II**
Texas Bar No. 24070854
bw@bentonwilliamspllc.com
100 Crescent Court, Suite 700
Dallas, TX 75201
(214) 785-6205
(214) 785-6485 fax

**BATES PLLC**

**Ryan P. Bates**
Texas Bar No. 24055152
rbates@batespllc.com
919 Congress Ave., Suite 1305
Austin, TX 78701
(512) 694-5268

**MCCARTHY GARBER LAW, LLC**

**Asa C. Garber**
Colorado Bar No. 48256
asa@mccarthygarberlaw.com
(720) 504-5294
**Kieran McCarthy**
Colorado Bar No. 37933
(720) 432-9769
501 S. Cherry St., Suite 1100
Denver, CO 80246

**Alexander Kerr**
320 E. Broadway Suite 2A
Jackson, WY 83001
(970) 270-4718

**COUNSEL FOR DEFENDANT
KIWI.COM, INC. and KIWI.COM S.R.O.**

**MUNCK WILSON MANDALA, LLP**

**Michael C. Wilson**
Texas State Bar No. 21704590
mwilson@munckwilson.com
**S. Wallace Dunwoody, IV**
Texas State Bar No. 24040838
wdunwoody@munckwilson.com
**Amanda k. Greenspoon**
Florida Bar No. 1014584
agreenspon@munckwilson.com
**Julie m. Christensen**
Texas State Bar No. 24105601
jchristensen@munckwilson.com
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
(972) 628-3600
(972) 628-3616 fax

**COUNSEL FOR PLAINTIFF
SOUTHWEST AIRLINES CO.**

/s/ Michael C. Wilson
Counsel for Plaintiff

June 29, 2021
Date

/s/ Asa C. Garber
Counsel for Defendant

June 29, 2021
Date

10

APP 0033

11

APP 0034

**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM** | § | |
| **S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

## CONFIDENTIALITY AGREEMENT FOR EXPERT,
## <u>CONSULTANT OR EMPLOYEES OF ANY PARTY</u>

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party

1

APP 0035

who designated the information as confidential or by order of the presiding judge. I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

     I understand that I am to retain all documents or materials designated as or containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Confidential Information or Confidential Attorney Eyes Only Information are to be returned to counsel who provided me with such documents and materials.

_____

Signed

_____

Printed Name

_____

Date

2

APP 0036

**Exhibit B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM** | § | |
| **S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

### CONFIDENTIALITY AGREEMENT FOR THIRD-PARTY VENDORS

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

1

_____

Signed

_____

Printed Name

_____

Date

2

APP 0038

# EXHIBIT 1-D

APP 0039

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Wednesday, November 08, 2023 2:33 PM |
| **To:** | 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | AA v. Skiplagged, Inc. |
| **Attachments:** | ANSWERS TO AA'S INTERROGATORIES.pdf; RESPONSES TO AA'S RFP.pdf |

Lars:

I have attached our *Objections and Responses* to your *Interrogatories* and *Requests for Production* propounded to Skiplagged, Inc. These are in accordance with our prior conversations and e-mail exchanges.

As indicated in my e-mail from yesterday, my client is satisfied that the *Protective Order* entered in the *Southwest v. Kiwi* case is acceptable with regard to the information we have agreed to provide, as set forth in these *Answers to Interrogatories*. However, I have had no indication from you that this *Protective Order* is agreeable to American. Nevertheless, I will take the liberty of redrafting the proposed *Protective Order* to fit our case and will send same to you later this week in hopes that we can at least work out the confidentiality issue and avoid court involvement over that and our clients' rights to protect their confidential information.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 0040

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

### DEFENDANT SKIPLAGGED, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF INTERROGATORIES

TO:   Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr. and Lars L. Berg and Ms. Julia G. Wisenberg, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J. Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.

**NOW COMES** Defendant, Skiplagged, Inc. ("Skiplagged"), and hereby makes these *Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Interrogatories.*

### I.

### GENERAL OBJECTIONS TO ALL INTERROGATORIES

1.      Skiplagged objects to the Instructions and Definitions preceding the Interrogatories to the extent that they impose duties and obligations beyond the requirements of the FEDERAL RULES OF CIVIL PROCEDURE. In particular, without waiving any other appropriate objections, Skiplagged objects to the Instructions and Definitions of (1) "identify" with regard to a communication, document, or person, in that same are overly broad, onerous, and cumbersome; (2) American's Content, American-Skiplagged Customer, Travel carrier(s), Travel Agency and PNR Data, as same are unnecessarily overly broad, vague, and in part ambiguous.

1

2.      Skiplagged also objects to all of the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, the work-product privilege, the party communication privilege, the witness statement privilege, the consulting expert privilege, the investigative privilege, or any other legally recognized privilege, immunity, or doctrine. Skiplagged's agreement herein to produce certain information or documents is subject to this objection and does not constitute an agreement to produce any information or documents protected by such privilege, immunity, or doctrine. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice Skiplagged's right to object to the use of any such information during this or any subsequent proceeding.

3.      Skiplagged also objects to each Interrogatory posed herein because in varying degrees, each such Interrogatory seeks information as to the merits of American's claims, which is inappropriate at this early stage of the litigation while Skiplagged has a *Motion to Dismiss* pending before this Court. Information as to the merits would be appropriate only after the Court has ruled on Skiplagged's pending *Motion* and denied such.

4.      Skiplagged also objects to each of these Interrogatories, as they are not properly limited to jurisdictional discovery. Each such Interrogatory is not focused to yield specific facts that are necessary to support any effort by American to withstand dismissal of this case for lack of personal jurisdiction and fails to demonstrate how responsive information could support personal jurisdiction in this case. Also, see Skiplagged's *Motion for Protective Order* to be filed in this case on November 8, 2023, the substance of which is incorporated herein by reference to the extent necessary. To the extent relevant, Skiplagged has attempted to further delineate these objections

2

with regard to the specific Interrogatory posed. Finally, even though Interrogatories Nos. 12, 13, and 15–18 purport to be limited to Texas, Texas addresses, and "home airports" in Texas, these Interrogatories still seek merits discovery and are not appropriately limited to jurisdictional discovery, as stated above. Nevertheless, subject to its objections, Skiplagged has responded to these six Interrogatories or provided relevant information concerning these questions and has responded to No. 19 (bringing the total to seven), all in order to provide information that might possibly be related to Skiplagged's pending *Motion to Dismiss for Lack of Personal Jurisdiction*.

## II.

### SPECIFIC RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**ANSWER:**

Objection.

In additional to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 2:**   Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**ANSWER:**

Objection.

3

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

**INTERROGATORY NO. 3:**    Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 4:**    Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your ANSWER should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

4

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 5:**   Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

5

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 6:**   Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 7:**   Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**ANSWER:**

Objection.

6

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

**INTERROGATORY NO. 8:**   Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 9:**   Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

7

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 10:** Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

8

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is otherwise obligated to provide this information, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory, in part, also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is obligated to produce same, Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

**INTERROGATORY NO. 12:** Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case. Additionally, although it purports to be

APP 0049

limited to persons with a Texas address, it is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. That paragraph 12 of the Zaman Declaration is referenced in this Interrogatory does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

Subject to these objections and the General Objections set forth above and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 13:** Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case. It is also not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to flights to or from Texas.

That paragraph 12 of the Zaman Declaration is referenced in this Interrogatory also does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans.

10

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

Subject to these objections and the General Objections set forth above and not waiving same, Skiplagged states it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 14:** Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration), and describe the technical means and process by which Skiplagged obtains such information.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

That paragraphs 10 and 11 of the Zaman Declaration are referenced in this Interrogatory also does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

APP 0051

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality agreement and order that protects the private nature of the information requested.

**INTERROGATORY NO. 15:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency so use of the term "other Travel Agencies" is incorrect.

This Interrogatory is also premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to persons with Texas addresses. Skiplagged has no practice that directs or targets persons with a Texas address. The only responsive information would be comingled with all persons' addresses, regardless of where the addresses are or where the persons list their addresses to be. Therefore, this Interrogatory is also overly burdensome and oppressive and places an unreasonable burden on Skiplagged to search out and respond to such.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 16:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency, so use of the term "other Travel Agencies" is incorrect.

12

This Interrogatory is also premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to flights to and from Texas. Skiplagged has no practice that directs or targets persons who fly to, from, or within Texas. The only responsive information would be comingled with all persons' similar information, regardless of where the flights come from, went to, or were within or without Texas. Therefore, this Interrogatory is also overly burdensome and oppressive and places an unreasonable burden on Skiplagged to search out and respond to such.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 17:** Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case, despite that it purports to be limited to "home airports" in Texas. Skiplagged has no practice that directs or targets persons with a Texas address. The only responsive information would be comingled with all persons' similar "home airport" information, regardless of where such are.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and the General Objections set forth above, and not waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest*

*Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 18:** Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**ANSWER:**

Objection.

In addition to the General Objections set forth above, Skiplagged is not a Travel Agency, so the use of the term "another Travel Agency" is incorrect. This Interrogatory is also premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and fails to demonstrate how responsive information would support jurisdiction in this case, despite that it purports to be limited to flights to and from Texas. Skiplagged has no practice that directs or targets persons who fly to, from, or within Texas. The only responsive information would be comingled with all persons' similar information, regardless of where it is.

This Interrogatory is also unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Interrogatory also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections and the General Objections set forth above and without waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

**INTERROGATORY NO. 19:** Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

**ANSWER:**

Objection.

Paragraph 10 of the Zaman Declaration does not reference American Marks and page 13 of Skiplagged's *Motion to Dismiss* erroneously cites Zaman Declaration paragraph 10 instead of paragraph 11 for this proposition. However, paragraph 11 of the Zaman Declaration does not change the merits-based nature of this Interrogatory or otherwise make it jurisdictionally

14

appropriate. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans. Accordingly, subject to this correction, and in addition to the General Objections set forth above, this Interrogatory is premature and improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Interrogatory also seeks information that is confidential, private, and not subject to public disclosure. Subject to these objections, and without waiving same, Skiplagged states that it has prepared a substantive response to this Interrogatory and is ready to provide such to American's counsel once an acceptable Confidentiality Agreement or Protective Order is put in place that will protect the answer as confidential. To that end, Skiplagged's counsel wrote American's counsel on November 7, 2023, and made such a proposal by suggesting the use of the Protective Order entered in C.A. No. 3:21-cv-00098-E, *Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com S.R.O.*, by the Honorable Judge Ada Brown. *See* the attached Exhibit "1."

Dated: November 8, 2023                    Respectfully submitted,

                                           By:    /s/*William L. Kirkman*
                                                  William L. Kirkman
                                                  State Bar No. 11518700
                                                  billk@kirkmanlawfirm.com
                                                  Preston B. Sawyer
                                                  State Bar No. 24102465
                                                  prestons@kirkmanlawfirm.com
                                                  KIRKMAN LAW FIRM, PLLC
                                                  201 Main Street, Suite 1160
                                                  Fort Worth, Texas 76102
                                                  Telephone:    (817) 336-2800
                                                  Facsimile:    (817) 877-1863

                                           ATTORNEYS FOR DEFENDANT,
                                           SKIPLAGGED, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2023, a true and correct copy of the foregoing

was served via e-mail upon all counsel of record as indicated:

                    Messrs. Dee J. Kelly, Jr. and Lars L. Berg
                     and Ms. Julia G. Wisenberg
                    Kelly Hart & Hallman LLP
                    201 Main Street, Suite 2500
                    Fort Worth, Texas 76102

15

Ms. Bina Palnitkar
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Mr. Nathan J. Muyskens
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

*/s/William L. Kirkman*
William L. Kirkman

16

APP 0056

# EXHIBIT "1"

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Tuesday, November 07, 2023 11:01 AM |
| **To:** | 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | AA v. Skiplagged, Inc. |
| **Attachments:** | SW v. KIWI PROTECTIVE ORDER.pdf |

Lars:

As I indicated in my e-mail from last week, we intend to provide certain information responsive to certain of your discovery requests. However, we believe that information is confidential and private and want to protect such prior to providing that information to American.

I had the opportunity to review a *Protective Order* that was entered in the *Southwest Airlines Co. v. Kiwi* case in the Dallas Division of the Northern District of Texas, No. 3:21-cv-00098-E. With the exception of some non-material changes that need to be made to ¶ 6 therein, my client believes this *Protective Order* would generally satisfy my client's confidentiality concerns. Having worked with protective orders very similar to this in the past, I also believe this will protect your client's confidentiality-related concerns and interests in the event information will need to be produced by your client to mine in the discovery process should our *Motion to Dismiss for Lack of Personal Jurisdiction* be denied. I am attaching a copy of that *Protective Order* which, as you will see, was signed by Judge Brown on June 30, 2021, and was approved by counsel for the parties prior thereto.

Will this work for American? If so, let's talk about how to get this extrapolated to our case and then have the information we intend to produce, produced pursuant to such a protective order. I know you are anxious to receive whatever information we provide. So, I would appreciate your and your client's expeditious review of this *Protective Order* and the suggestions provided in this e-mail. We stand ready, willing, and able to do the same.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 0059

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM** | § | |
| **S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

## PROTECTIVE ORDER

**Proceedings and Information Governed.**

1.      This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other documents or things produced, given, or filed in this action that are designated by a party as "Confidential Information" or "Confidential Attorney Eyes Only Information" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

**Designation and Maintenance of Information.**

2.      For purposes of this Protective Order, (a) the "Confidential Information" designation means that the document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G), or other information required by law or agreement to be kept confidential, and (b) the "Confidential Attorney Eyes Only" designation means that

the document is comprised of information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive trade-secret information, or information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter. Confidential Information and Confidential Attorney Eyes Only Information does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

      3.    Documents and things produced during the course of this litigation within the scope of paragraph 2(a) above, may be designated by the producing party as containing Confidential Information by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL INFORMATION
SUBJECT TO PROTECTIVE ORDER**

      Documents and things produced during the course of this litigation within the scope of paragraph 2(b) above may be designated by the producing party as containing Confidential Attorney Eyes Only Information by placing on each page and each thing a legend substantially as follows:

2

**APP 0061**

## CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
## SUBJECT TO PROTECTIVE ORDER

A party may designate information disclosed at a deposition as Confidential Information or Confidential Attorney Eyes Only Information by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is made at the time of the deposition, any party will have fourteen (14) calendar days after the date of the deposition to designate, in writing to the other parties and to the court reporter, whether any portion of the transcript is to be designated as Confidential Information or Confidential Attorneys Eyes Only Information. If no such designation is made at the deposition or within this fourteen (14) calendar day period (during which period, the transcript must be treated as Confidential Attorneys Eyes Only Information, unless the disclosing party consents to less confidential treatment of the information), the entire deposition will be considered devoid of Confidential Information or Confidential Attorneys Eyes Only Information. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. It is the responsibility of counsel for each party to maintain materials containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

**Inadvertent Failure to Designate.**

      4.     The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as confidential at a later date in

3

writing and with particularity. The information must be treated by the receiving party as confidential from the time the receiving party is notified in writing of the change in the designation.

**Challenge to Designations.**

5.      A receiving party may challenge a producing party's designation at any time. Any receiving party disagreeing with a designation may request in writing that the producing party change the designation. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time frame, and after the conference required under Local Rule 7.1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order.

**Disclosure and Use of Confidential Information.**

6.      Information designated as Confidential Information or Confidential Attorney Eyes Only Information may only be used for purposes of preparation, trial, and appeal of this action. Confidential Information or Confidential Attorney Eyes Only Information may not be used under any circumstances for prosecuting any patent application, for patent licensing, or for any other purpose.

7.      Subject to paragraph 9 below, Confidential Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

APP 0063

(a)    two (2) employees of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions, and who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(b)    two (2) in-house counsel for the receiving party who are identified as such in writing to counsel for the designating party in advance of the disclosure;

(c)    outside counsel for the receiving party;

(d)    supporting personnel employed by (b) and (c), such as paralegals, legal secretaries, data-entry clerks, legal clerks, and private photocopying and litigation support services;

(e)    experts or consultants; and

(f)    any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court-reporting services, demonstrative-exhibit preparation, or the creation of any computer database from documents.

8.    Subject to paragraph 9 below, Confidential Attorney Eyes Only Information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a)    outside counsel for the receiving party;

(b)    supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data-entry clerks, legal clerks, private photocopying and litigation support services;

(c)    experts or consultants; and

(d)    those individuals designated in paragraph 11(c).

5

APP 0064

9.     Further, prior to disclosing Confidential Information or Confidential Attorney Eyes Only Information to a receiving party's proposed expert, consultant, or employees, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A, the resume or curriculum vitae of the proposed expert or consultant, the expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have ten (10) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and in writing, stating with particularity the reasons for the objection. Failure to object within ten (10) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the ten (10) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

10.     Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order. Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

11.     Confidential Information or Confidential Attorney Eyes Only Information may be disclosed to a person who is not already allowed access to such information under this Protective Order if:

(a)     the information was previously received or authored by the person or was authored or received by a director, officer, employee, or agent of the company for which the person is testifying as a designee under Fed. R. Civ. P. 30(b)(6);

6

(b)     the person is the designating party, or is a director, officer, employee, consultant, or agent of the designating party; or

(c)     counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this paragraph, only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure may otherwise be made under and who are bound by this Protective Order, may be present during the disclosure or discussion of the Confidential Information or Confidential Attorney Eyes Only Information. Disclosure of material pursuant to this paragraph does not constitute a waiver of the confidential status of the material so disclosed.

**Nonparty Information.**

12.     The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**Filing Documents With the Court.**

13.     If any party wishes to submit Confidential Information or Confidential Attorney Eyes Only Information to the Court, the submission must be filed using the *Sealed* and/or *Ex Parte Motion* event. The word *"Sealed"* must appear in the title or caption of any document intended for filing under seal (and any proposed order you believe should be filed under seal if entered by the judge).

14.     Producing or receiving Confidential Information or Confidential Attorney Eyes Only Information, or otherwise complying with the terms of this Protective Order, will not

7

(a) operate as an admission by any party that any particular Confidential Information or Confidential Attorney Eyes Only Information contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**Conclusion of Litigation.**

15.     Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to destroy or return to the producing party all materials and documents containing Confidential Information or Confidential Attorney Eyes Only Information, and to certify to the producing party that this destruction or return has been done. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

**Other Proceedings.**

16.     By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party

8

subject to this Protective Order who may be subject to a motion to disclose another party's information designated Confidential Information or Confidential Attorney Eyes Only Information pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**Remedies.**

17.    It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

18.    Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

IT IS SO ORDERED.

SIGNED this 30th day of June, 2021

Honorable Ada Brown
United States District Judge

9

APP 0068

**BENTON WILLIAMS PLLC**

**Benton Williams II**
Texas Bar No. 24070854
bw@bentonwilliamspllc.com
100 Crescent Court, Suite 700
Dallas, TX 75201
(214) 785-6205
(214) 785-6485 fax

**BATES PLLC**

**Ryan P. Bates**
Texas Bar No. 24055152
rbates@batespllc.com
919 Congress Ave., Suite 1305
Austin, TX  78701
(512) 694-5268

**MCCARTHY GARBER LAW, LLC**

**Asa C. Garber**
Colorado Bar No. 48256
asa@mccarthygarberlaw.com
(720) 504-5294
**Kieran McCarthy**
Colorado Bar No. 37933
(720) 432-9769
501 S. Cherry St., Suite 1100
Denver, CO  80246

**Alexander Kerr**
320 E. Broadway Suite 2A
Jackson, WY 83001
(970) 270-4718

**COUNSEL FOR DEFENDANT
KIWI.COM, INC. and KIWI.COM S.R.O.**

**MUNCK WILSON MANDALA, LLP**

**Michael C. Wilson**
Texas State Bar No. 21704590
mwilson@munckwilson.com
**S. Wallace Dunwoody, IV**
Texas State Bar No. 24040838
wdunwoody@munckwilson.com
**Amanda k. Greenspoon**
Florida Bar No. 1014584
agreenspon@munckwilson.com
**Julie m. Christensen**
Texas State Bar No. 24105601
jchristensen@munckwilson.com
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
(972) 628-3600
(972) 628-3616 fax

**COUNSEL FOR PLAINTIFF
SOUTHWEST AIRLINES CO.**

/s/ Michael C. Wilson
Counsel for Plaintiff

June 29, 2021
Date

/s/ Asa C. Garber
Counsel for Defendant

June 29, 2021
Date

10

**APP 0069**

11

Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-00098-E |
| | § | |
| KIWI.COM, INC. and KIWI.COM | § | |
| S.R.O., | § | |
| | § | |
| Defendants. | § | |

## CONFIDENTIALITY AGREEMENT FOR EXPERT,
## CONSULTANT OR EMPLOYEES OF ANY PARTY

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party

1

APP 0071

who designated the information as confidential or by order of the presiding judge. I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing Confidential Information or Confidential Attorney Eyes Only Information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Confidential Information or Confidential Attorney Eyes Only Information are to be returned to counsel who provided me with such documents and materials.

_____
Signed

_____
Printed Name

_____
Date

2

**Exhibit B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM** | § | |
| **S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

### CONFIDENTIALITY AGREEMENT FOR THIRD-PARTY VENDORS

I hereby affirm that:

Information, including documents and things, designated as "Confidential Information," or "Confidential Attorney Eyes Only Information," as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any Confidential Information or Confidential Attorney Eyes Only Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

1

Signed _____

Printed Name _____

Date _____

2

APP 0074

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

### DEFENDANT SKIPLAGGED, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION

TO:   Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr. and Lars L. Berg and Ms. Julia G. Wisenberg, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J. Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.

**NOW COMES** Defendant, Skiplagged, Inc. ("Skiplagged"), and hereby makes these *Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Requests for Production.*

Subject to the objections below and without waiving same, Skiplagged will produce the originals or copies of the documents it agrees or is ordered to produce herein at the offices of Kirkman Law Firm, PLLC, at a mutually agreeable day and time, or electronically pursuant to an acceptable confidentiality order and protocol for electronic discovery.

### I.

### GENERAL OBJECTIONS TO ALL REQUESTS

1.     Skiplagged objects to the Instructions and Definitions preceding the Requests for Production to the extent that they impose duties and obligations beyond the requirements of the

1

FEDERAL RULES OF CIVIL PROCEDURE. In particular, without waiving any other appropriate objections, Skiplagged objects to the Instructions and Definitions of (1) "identify" with regard to a communication, document, or person, in that same are overly broad, onerous, and cumbersome; (2) American's Content, American-Skiplagged Customer, Travel carrier(s), Travel Agency, and PNR Data, as same are unnecessarily overly broad, vague, and in part ambiguous. The Instructions set out in No. 9 on p. 3 are also inappropriate and beyond the RULES OF CIVIL PROCEDURE.

2.      Skiplagged also objects to all of the Requests for Production to the extent they seek documents or information protected by the attorney-client privilege, the work-product privilege, the party communication privilege, the witness statement privilege, the consulting expert privilege, the investigative privilege, or any other legally recognized privilege, immunity, or doctrine. Skiplagged's agreement herein to produce certain information or documents is subject to this objection and does not constitute an agreement to produce any information or documents protected by such privilege, immunity, or doctrine. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice Skiplagged's right to object to the use of any such information during this or any subsequent proceeding.

3.      Skiplagged also objects to each Request for Production posed herein because in varying degrees, each such Request seeks information as to the merits of American's claims, which is inappropriate at this early stage of the litigation while Skiplagged has a *Motion to Dismiss* pending before this Court. Information as to the merits would be appropriate only after the Court has ruled on Skiplagged's pending *Motion* and denied such.

2

4.      Skiplagged also objects to each of these Requests for Production, as they are not properly limited to jurisdictional discovery. Each such Request is not focused to yield specific facts that are necessary to support any effort by American to withstand dismissal of this case for lack of personal jurisdiction and fails to demonstrate how responsive information could support personal jurisdiction in this case. Also, see Skiplagged's *Motion for Protective Order* to be filed in this case on November 8, 2023, the substance of which is incorporated herein by reference to the extent necessary. To the extent relevant, Skiplagged has attempted to further delineate these objections with regard to the specific Request posed. Finally, even though Requests Nos. 29, 47, and 48 purport to be limited to Texas, Texas addresses, and "home airports" in Texas, these Requests still seek merits discovery and are not appropriately limited to jurisdictional discovery, as stated above. Nevertheless, subject to its objections, Skiplagged has responded to these three Requests in an attempt to provide jurisdiction information related to Skiplagged's pending *Motion to Dismiss for Lack of Personal Jurisdiction*.

## II.

### SPECIFIC RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   Documents relating to or evidencing Skiplagged's corporate structure, locations, organization, formation, management, ownership, shareholders, and investors.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case and seeks information that is neither relevant nor is reasonably

3

calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case as to requests for shareholders and investors.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce only certain responsive documents pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 2:**    All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case, and is repetitive of Interrogatories Nos. 6 and 7.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce only certain responsive documents pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 3:**    All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and

4

Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case, and is repetitive of Interrogatories Nos. 6 and 7.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce only certain responsive documents pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 4:**   All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 5:**   All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by

any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data  and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. It is also confusing and vague.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 6:**   Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, including all PNR Data for all such passengers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the Request to relevant jurisdiction, even though it purports to be limited to departure or arrival cities in Texas. Such does not properly narrow or direct the inquiry to proper jurisdictional information, but is simply based on a fortuitous arrival or departure from Texas.

6

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is also duplicative of Interrogatory No. 13.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 7:** All communications between AA.com and Skiplagged relating to any purchases or sales of American flights or services by Skiplagged.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence, given its breadth, and is therefore not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 8:** All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

    (a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

    (b) interact with or access AA.com, American's API, or American's computer systems;

    (c) search for or identify American flights, itineraries, and fares to present to customers on Skiplagged.com (including to identify the best prices and/or to generate "hidden city" tickets);

    (d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

    (e) republish, display, distribute, provide access to, or otherwise use American's Content, including but not limited to American's flight and fare data, on Skiplagged.com;

    (f) book or purchase American flights on AA.com for Skiplagged users/customers;

    (g) charge users/customers fees for the purchase of American flights

    (h) sell American flights;

    (i) communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

    (j) circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague and confusing in its description of documents American wants. Skiplagged does not have any of the documents purportedly described.

This Request also, in part, seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

8

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 9:**    Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 10:** Documents and communications evidencing all research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Request No. 8 and its subparts.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

9

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague and confusing as to "research and development costs."

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 11:** Documents and communications relating to Skiplagged's advertisement, promotion, or sale of American products or services.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is not limited to such issues.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 12:** Documents and communications relating to Skiplagged obtaining, or attempting to obtain, American's Content, including but not limited to American fare, schedule or inventory data.

**RESPONSE:**

Objection.

10

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 13:** Documents and communications relating to, discussing, or referencing American, AA.com, the AA.com Use Agreement, American's Conditions of Carriage, any other rules or policies of American, Skiplagged's use of American's Content, or Skiplagged's sale of tickets on American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such

11

or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 14:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or understanding that Skiplagged is not authorized by American to access, distribute, display or use American's content on Skiplagged.com or to book, ticket or sell tickets for American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 15:** Documents and communications relating to or discussing the sale of tickets on American-marketed flights or services by any Travel Agencies or travel metasearch engines other than Skiplagged.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

12

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 16:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness of other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or websites having authorization from, or agreements with, American to access or distribute American's fare, schedule and inventory content, to market or advertise American-marketed flights or to book, ticket or sell tickets on American-marketed flights, use American's Content, or otherwise act as an agent of American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Skiplagged is also not a Travel Agency.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 17:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness that American revoked

13

Kiwi.com's right and authorization to access or distribute American fare, schedule and inventory content, or to book, ticket or sell tickets on American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

**REQUEST FOR PRODUCTION NO. 18:** All communications between Skiplagged and any other third party discussing, mentioning, or relating in any way to American, the booking, ticketing or sale of tickets on American-marketed flights, or the distribution, publication, access, or use of American's Content.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 19:** Documents and communications relating to any meetings or discussions involving any Skiplagged employees, directors, board members, officers, investors, or shareholders where American or AA.com was discussed, addressed, mentioned.

14

APP 0088

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request may also seek information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 20:** Documents and communications relating to Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its marketing and sale of tickets on American-marketed flights and/or its use of American's Content, including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of tickets on American-marketed flights or services; (ii) the benefits of or reasons for marketing, offering, booking, ticketing, purchasing, and/or selling tickets on American-marketed flights or services; and (iii) consumer demand or preferences for booking travel with American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

15

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 21:** Presentations, slide decks, handouts, or other presentation materials concerning Skiplagged's business plans, strategies, technology, or platform—both final and draft versions—for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 22:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on or through Skiplagged.com since August 1, 2018.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary

16

to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague as to the use of the term "internal processing."

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 23:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on any other travel websites by any customers who were transferred, referred or re-directed to such travel websites by or through Skiplagged.com since August 1, 2018.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 24:** Documents and communications relating to or reflecting any complaints by any customers or passengers who booked, ticketed or purchased a

ticket on an American-marketed flight through Skiplagged.com—whether booked directly on Skiplagged.com or on another website to which Skiplagged transferred, referred or redirected the customer to complete the booking.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and is vague as to use of the term "redirected customers."

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 25:** Communications with any American-Skiplagged Customers regarding flight changes, delays, cancellations, refunds, customer service issues, baggage fees, service fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

18

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 26:** All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 27:** All documents and financials identifying or reflecting Skiplagged's total revenues, gross margins, and net profits relating to or resulting from Skiplagged's sale of American flights, including taking into account any/all additional fees of any kind charged to customers in connection with the sales of American flights (e.g., service fees, baggage fees, or other fees).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

19

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 28:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad by requesting "communications," considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 29:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to travel to, from, or within Texas.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary

APP 0094

to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in the Request does not properly limit the request to relevant jurisdiction.

Subject to these objections, and without waiver thereof, Skiplagged believes it has no such documents, as it has not marketed these kinds of flights. Nevertheless, Skiplagged has conducted a reasonable and diligent search for documents in its possession, custody, and control, and has found no non-privileged documents or communications containing or reflecting any such activity targeted to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 30:** Communications between Skiplagged and any third-party regarding American, AA.com, Skiplagged's marketing or sale of tickets on American-marketed flights or services, Skiplagged's use of American's Content on Skiplagged.com, Skiplagged's efforts to obtain data or information from AA.com, or American's claims or allegations in this lawsuit.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 31:** All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 32:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has received from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of American flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

22

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 33:** All documents, communications, and agreements concerning Skiplagged's payment of or obligation to pay commissions, fees, or other financial compensation to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems) in connection with the sale of commercial flights to consumers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has made to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies) in connection with the sale of tickets on American-marketed flights.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and

Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 35:** Any settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any carriers' flights or services or use of carriers' flight and fare information, trademarks, or data/content.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 36:** All complaints, legal notices, demand letters, cease and desist letters, and any other similar correspondence that Skiplagged has received from any other person or entity, including any airline, travel carrier, travel service provider, Travel Agency,

travel metasearch engine, or governmental, regulatory, or administrative agency, relating to Skiplagged's operations or the operation of Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 37:** Communications with any American-Skiplagged Customers regarding any issues, problems, or troubles that the passenger encountered during her travel with American, and any documents relating thereto.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

25

**REQUEST FOR PRODUCTION NO. 38:** Documents and communications with customers and any internal documents or communications relating to, or concerning issues arising from, Skiplagged's warnings and/or instructions to purchasers of "hidden-city" tickets, including about what the passengers should do to avoid problems or what they should say to airline staff.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 39:** Any press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other travel carriers.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

26

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

**REQUEST FOR PRODUCTION NO. 40:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money," as stated on Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 41:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere," as stated on Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

APP 0101

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 42:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else," as stated on Skiplagged.com.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 43:** Documents and communications relating to or supporting Skiplagged's statements on its website regarding "Why are we doing this?", including the specific reasons described therein.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and

28

Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 44:** All documents, communications, and agreements relating to Skiplagged's terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, the collection, protection, and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 45:** Documents and communications referring or relating to the Airlines Reporting Corporation ("ARC") or the International Air Transport Association ("IATA"), including but not limited to documents concerning Skiplagged's consideration, evaluation, decision, or reasons for deciding whether or not to apply to become an accredited ARC/IATA travel agency.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 46:** Any documents or communications relating to or evidencing any confusion or misunderstanding by American-Skiplagged Customers, after the time of their purchase of a ticket on an American-marketed flight, regarding Skiplagged's authority/ability or lack thereof to address or resolve any matters relating to their travel or booking.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

30

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 47:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers who previously purchased travel or lodging on Skiplagged.com with a Texas address.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request is also overly burdensome to the extent it is duplicative of Interrogatory No. 17.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

Subject to these objections, and without waiver thereof, Skiplagged believes it has no such documents, as it has not marketed these kinds of flights. Nevertheless, Skiplagged has conducted a reasonable and diligent search for documents in its possession, custody, and control, and has found no non-privileged documents or communications containing or reflecting any such activity targeted to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 48:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent

APP 0105

to customers specifically identifying or offering "deals" or promotions on hotels in Texas or flights to, from, or within Texas.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request is also overly burdensome to the extent it is duplicative of Interrogatory No. 17.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

Subject to these objections, and without waiver thereof, Skiplagged believes it has no such documents, as it has not marketed these kinds of flights. Nevertheless, Skiplagged has conducted a reasonable and diligent search for documents in its possession, custody, and control, and has found no non-privileged documents or communications containing or reflecting any such activity targeted to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 49:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

32

This Request is unduly burdensome to the extent it is duplicative of Interrogatory No. 12.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 50:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request is also unduly burdensome to the extent it is duplicative of Interrogatory Nos. 12 and 13 (which Skiplagged is responding to subject to confidentiality concerns) and Request No. 49 above.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 51:** Documents relating to the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and the means or processes by which Skiplagged obtains such information.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 52:** All communications between Skiplagged and any of the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration).

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 53:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases made by consumers that Skiplagged.com redirected to such other Travel Agency or metasearch engine.

**RESPONSE:**

Objection.

34

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PRODUCTION NO. 54:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency or travel metasearch engine.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case. Inclusion of Texas in this Request does not properly limit the request to relevant jurisdiction.

This Request also is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

APP 0109

**REQUEST FOR PRODUCTION NO. 55:** Documents and communications relating to or supporting Skiplagged's statement that it "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

**REQUEST FOR PROPDUCTION NO. 56:** All documents that you referred to or relied upon in answering any Interrogatory or Request for Admission served by American.

**RESPONSE:**

Objection.

In addition to the General Objections set forth above, this Request improperly seeks discovery on the merits of the case, is not properly focused to yield specific facts that are necessary to support any effort to withstand dismissal of this case for lack of personal jurisdiction, and Skiplagged does not believe that, nor does it see how responsive information would support jurisdiction in this case.

This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case.

This Request also seeks information that is confidential, private, and not subject to public disclosure. To the extent such information is available and Skiplagged is required to produce such or otherwise agrees to produce such, Skiplagged will produce same only pursuant to an acceptable confidentiality order that protects the private nature of the information requested.

36

Dated: November 8, 2023        Respectfully submitted,

By:   */s/William L. Kirkman*
      William L. Kirkman
      State Bar No. 11518700
      billk@kirkmanlawfirm.com
      Preston B. Sawyer
      State Bar No. 24102465
      prestons@kirkmanlawfirm.com
      KIRKMAN LAW FIRM, PLLC
      201 Main Street, Suite 1160
      Fort Worth, Texas 76102
      Telephone:   (817) 336-2800
      Facsimile:   (817) 877-1863

ATTORNEYS FOR DEFENDANT,
SKIPLAGGED, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 8, 2023, a true and correct copy of the foregoing

was served via e-mail upon all counsel of record as indicated:

Messrs. Dee J. Kelly, Jr. and Lars L. Berg
 and Ms. Julia G. Wisenberg
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102

Ms. Bina Palnitkar
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201

Mr. Nathan J. Muyskens
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037

      */s/William L. Kirkman*
      William L. Kirkman

APP 0111

# EXHIBIT 1-E

APP 0112

**Bill Kirkman**

| | |
|---|---|
| **From:** | Lars Berg <lars.berg@kellyhart.com> |
| **Sent:** | Thursday, November 09, 2023 3:49 PM |
| **To:** | Bill Kirkman |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer |
| **Subject:** | RE: AA v. Skiplagged, Inc. |
| **Attachments:** | American v Skiplagged - Agmt re Confid Info.DOCX |

Bill:

I've attached American's proposed Agreement Governing the Use and Disclosure of Confidential Information.  Please let me know whether or not your client will agree.

Regards,
Lars

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Wednesday, November 8, 2023 3:39 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: AA v. Skiplagged, Inc.

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

OK Great. We'll take a look as possible after we receive it.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

**From:** Lars Berg <lars.berg@kellyhart.com>
**Sent:** Wednesday, November 08, 2023 3:12 PM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>

1

Cc: Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: AA v. Skiplagged, Inc.

Bill:

Thank you for the information.  American cannot agree to the protective order from the Southwest v. Kiwi case.  I am working on a confidentiality agreement now, with the intention of providing it to you by tomorrow.

Regards,
Lars

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Wednesday, November 8, 2023 2:33 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
Cc: Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** AA v. Skiplagged, Inc.

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars:

I have attached our *Objections and Responses* to your *Interrogatories* and *Requests for Production* propounded to Skiplagged, Inc. These are in accordance with our prior conversations and e-mail exchanges.

As indicated in my e-mail from yesterday, my client is satisfied that the *Protective Order* entered in the *Southwest v. Kiwi* case is acceptable with regard to the information we have agreed to provide, as set forth in these *Answers to Interrogatories*. However, I have had no indication from you that this *Protective Order* is agreeable to American. Nevertheless, I will take the liberty of redrafting the proposed *Protective Order* to fit our case and will send same to you later this week in hopes that we can at least work out the confidentiality issue and avoid court involvement over that and our clients' rights to protect their confidential information.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

**APP 0114**

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

APP 0115

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

## AGREEMENT GOVERNING THE USE AND DISCLOSURE
## OF CONFIDENTIAL INFORMATION

Plaintiff American Airlines, Inc. ("American" or "Plaintiff") and Defendant Skiplagged, Inc.

("Skiplagged" or "Defendant") (American and Skiplagged are collectively "Parties" or singly a "Party")

agree and stipulate, pursuant to Rule 29(b) of the Federal Rules of Civil Procedure, as follows:

### DEFINITIONS GENERALLY

1. As used in this Agreement, the term "Action" shall mean the above-captioned litigation.

2. As used in this Agreement the terms "Party" or "Parties" shall include current employees.

3. As used in this Agreement, the term "Non-Party" shall mean any individual, corporation, association, or other natural person or entity that is not a named Party to the Action. This Agreement shall govern all Documents, materials, and information disclosed during the course of this Action in any form (including, but not limited to, Documents, materials, and information produced by a Party or Non-Party, disclosed through testimony, or contained in pleadings, motions, briefs, or other materials filed with the Court) for purposes of discovery or otherwise.

4. As used in this Agreement, the term "Document" is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Rule 34 of the Federal Rules of Civil Procedure, and shall include all written, oral, recorded, or graphic material, however produced or reproduced including, but not limited to: all written or printed matter of any kind, including the originals

1

and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise; electronically stored information, software, and other computer data including, but not limited to, information stored in a computer at any time; all graphic or manual records or representations of any kind including, but not limited to, photographs, microfiche, microfilm, videotape, records, and motion pictures; electronic, mechanical, or electric records or representations of any kind including, but not limited to, cassettes, discs, magnetic cards and recordings, optical and other media; and all drafts, alterations, modifications, changes, and amendments to any of the foregoing.

5.      As used in this Agreement, the term "privilege" shall mean the attorney-client privilege, the work-product doctrine, the common-interest or joint-defense doctrine, and/or any other privilege, protection, or immunity recognized by applicable law.

6.      As used in this Agreement, the term "Confidential Material" means any Documents, materials, or information supplied in any form, or any portion thereof, which is or contains confidential or proprietary business, commercial, research, personnel, process, product, or financial information of the producing Party or Non-Party. A designation by a Party or Non-Party of Confidential Material shall constitute a representation to the Court that such Party or Non-Party believes in good faith that the information constitutes Confidential Material. The Parties and Non-Parties shall make a good faith effort to designate information as Confidential Material only as needed. A Party or Non-Party designating information as Confidential Material shall mark each page of the Document containing such material as "Confidential."

## GENERAL PROVISIONS

7.      **Production for Inspection Purposes Only.** Notwithstanding the provisions of Paragraph 6, in the event that a Party or Non-Party provides Documents, materials, or information for inspection only, no marking need be made by the producing Party or Non-Party in advance of the initial inspection, and the following procedures shall apply:

2

(a)     The producing Party or Non-Party shall not be considered to have waived the status as Confidential Material of Documents, materials, or information made available during such an initial inspection but not chosen by the inspecting Party for copying; and

(b)     Thereafter, upon selection of specified Documents, materials, or information for copying by the inspecting Party, the producing Party or Non-Party shall, within twenty-one (21) days (or such longer period as may be agreed upon by the Parties), and prior to providing copies of the selected Documents, materials, or information to the requesting Party, mark each page as may contain Confidential Material in accordance with this Agreement.

8.     **Depositions.** From the date of a deposition until twenty-one (21) days after receipt of a final deposition transcript, such transcript shall be deemed Confidential Material in accordance with this Agreement. The designation by a Party or Non-Party of a transcript, exhibit, or video recording (or any portion thereof) as Confidential Material shall be made in writing and served upon all counsel of record and the relevant court reporter. Designations of a transcript are to be conducted on a page-by-page or line-by-line basis. Any designation of a transcript (or portion thereof) shall be treated as a designation of the corresponding video, or portion thereof, and vice-versa.

9.     **Using Confidential Material at Depositions.** Subject to the terms of this Agreement and the Federal Rules of Civil Procedure, any Party may use Confidential Material in an examination of a witness at a deposition, provided that:

(a)     the witness is an author, addressee, recipient, or source of the Confidential Material;

(b)     the witness is a current or former employee of the producing Party or Non-Party and has or had lawful access to the specific Document containing the Confidential Material to be disclosed;

(c)     the witness is likely to have had knowledge of the Confidential Material to be disclosed;

(d)     the witness is one of the persons identified in Paragraph 11 (for Confidential Material) as the case may be; or

3

(e)     the Party wishing to use Confidential Material in an examination of a witness obtains consent, which shall not be unreasonably withheld, from the producing Party or Non-Party prior to using such Confidential Material.

10.     **Objections to Designation or Treatment.** A Party may at any time, in good faith, object to the designation of any Document or specific information as Confidential Material by stating its objection in writing, which specifies the Document or information challenged (or, where appropriate, by reasonably defined categories of Documents or information challenged) and includes a statement of the legal or factual basis for each objection, to the Party or Non-Party making the designation, and it shall make a good faith effort to resolve the dispute with counsel for the Party or Non-Party so designating the Document or information. If the Parties cannot reach agreement as to the designation, the receiving Party or objector may move the Court for an order determining whether such Document is Confidential Material pursuant to this Agreement.

## DISCLOSURE OF PROTECTED MATERIAL

11.     **Confidential Material.** Subject to all other terms of this Agreement, Confidential Material may be disclosed only to:

(a)     the Parties;

(b)     if the Confidential Material was produced by a Non-Party, the Non-Party that produced the Confidential Material;

(c)     the Parties' attorneys involved in this Action (and the partners, associates, paralegals, and clerical and support personnel, including outside vendors, working under the direct supervision of such counsel and that are directly involved in or assisting in this Action);

(d)     each Party's respective in-house attorneys who are practicing law on behalf of the Party as part of their job responsibilities;

(e)     the Court and all persons assisting the Court in the Action, including special masters, mediators, court reporters taking testimony involving such information, and necessary stenographic and clerical personnel thereof, in accordance with the procedures set forth below;

4

(f)        persons retained as consultants or experts by any Party for the purposes of this Action and principals and employees of the firms with which consultants or experts are associated and who are directly involved and assisting in this Action (but excluding any consultants or experts known to be regularly employed or engaged by a current or prospective competitor of the Party or Non-Party that designated the material as Confidential Material);

(g)        persons other than consultants or experts who are retained to provide purely administrative assistance to counsel for any Party for the purpose of the Action, including litigation support services and outside copying services;

(h)        persons whom the Confidential Material itself indicates, or the receiving Party otherwise has reason to believe, were the author, addressee, source, or recipient of the Document;

(i)        any person noticed or called to testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in the Action, and for the purpose of assisting in the preparation or examination of the witness, provided that the requirements of Paragraph 9 have been satisfied;

(j)        any other person hereafter designated by written stipulation of the Parties or by further order of the Court; and

(k)        any person to whom the producing Party or Non-Party agrees in writing disclosure may be made.

12.     **Security of Confidential Materials.**

(a)        **Security Requirements**: Receiving Party agrees to apply reasonable physical, technical, and administrative safeguards for Confidential Material that is in Receiving Party's possession or under Receiving Party's control in order to protect the same from unauthorized access that would violate the Agreement or any data law. Receiving Party agrees and represents as to any access of Confidential Material by Receiving Party or Receiving Party's subcontractors under this Agreement shall at all times be (i) in material compliance with all data laws, and (ii) consistent in all material respects with the guidelines, principles, or frameworks embodied in (A) ISO 27001 and ISO 27002 and (B) industry standard practices (such data laws, guidelines, principles or frameworks, collectively, the "Security Requirements"). In

5

addition, Receiving Party shall require any of Receiving Party employees, agents, or contractors with access to Confidential Material to adhere to the Security Requirements, and Receiving Party shall certify that such employees, agents, and contractors have not experienced any circumstances or events that are inconsistent with the Security Requirements during the last twenty-four months. Receiving Party agrees that the controls used to safeguard Confidential Material in Receiving Party's possession will take into account the sensitivity and confidentiality of such information.

(b)     **Data Processor Requirements**: Receiving Party agrees and acknowledges that Confidential Material may be disclosed by Receiving Party to a third-party e-discovery contractor that will store and process Confidential Material for Receiving Party for purposes of this Action (a "Data Processor") only after the Data Processor has executed a nondisclosure and security agreement pursuant to this Agreement. Prior to any Data Processor providing access to the Confidential Material to another third party (e.g., a further subcontractor, also a "Data Processor"), such additional third-party and the disclosure and access to the Confidential Material by such third-party shall require the further third-party to have executed a nondisclosure and security agreement in accordance with this Agreement prior to receipt of or access to Confidential Materials. As between Receiving Party and the Producing Party, Receiving Party shall have sole responsibility for the acts and omissions of such Data Processors to the extent such acts or omissions are not consistent with Receiving Party's obligations with respect to the use of the Confidential Material as provided in this Agreement.

13.     **Acknowledgment and Acceptance of Terms of this Agreement.** Before any Confidential Material is disclosed to the persons identified above in Paragraphs 11(f)–11(k) such persons shall be provided with a copy of this Agreement and shall execute the Acknowledgment of Agreement Governing the Use and Disclosure of Confidential Information attached as Exhibit A. Counsel for the Party seeking to disclose information pursuant to this Agreement shall retain the original copies of executed Acknowledgment forms and need not disclose who has executed them during the course of this Action, unless a dispute arises as to the dissemination of Confidential Material to persons other than those identified as authorized under this Agreement.

6

14.      **Confidential Material to be Used Only for the Action.** Unless otherwise agreed to in writing by the Parties, Documents produced in this Action, including Confidential Material, may be used only in this Action, and may not be used in any other action, proceeding, or arbitration or for any purpose unconnected to the Action; however, any Documents, data, or information produced by Defendant or any non-party in this Action relating to American's fare, schedule, and inventory content, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights, and communications with American's passengers by Defendant acting as American's agent may be used by American in its day-to-day commercial activities and American may retain pursuant to American's retention policies.

15.      **Redaction.** If Confidential Material contains information of a particularly sensitive, personal nature relating to a Party's customers or employees, the producing Party may make limited redactions of that material. Information appropriate for redaction includes, without limitation: social security numbers, home or mobile phone numbers, secure traveler ID numbers, frequent flier numbers (except AAdvantage numbers), credit card numbers, and driver's license, passport, or similar identification numbers, or any other information required to be protected under applicable law; however, this does not apply to Defendant's production of Documents, data, or information relating to American's passengers, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights and communications with American's passengers by Defendant acting as American's agent.

16.      **Maintaining Confidentiality.** Subject to the exceptions in Section 14, all persons authorized by this Agreement to receive Confidential Material shall maintain such information as confidential consistent with the terms of this Agreement and shall agree to be bound by its terms. Accordingly, no person, firm, corporation, or other entity shall use, disclose, make available, or otherwise communicate Confidential Material in any manner whatsoever except for purposes of the Action, and then

APP 0122

only in a manner consistent with this Agreement. A Party's or Non-Party's use for any purpose of its own Documents, materials, and information which it produces or discloses in the Action shall not be considered a violation of this Agreement.

17.    **Rendering Legal Advice.** Nothing in this Agreement shall restrict any Party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Confidential Material; provided, however, that in rendering such advice, outside counsel shall not disclose any other Party's or Non-Party's Confidential Material other than in a manner provided for in this Agreement.

## USE OF PROTECTED MATERIAL BY A PARTY IN THIS ACTION

18.    In the event a Party wishes to use Confidential Material:

(a)    in any affidavits, briefs, memoranda of law, exhibits to motions, or other papers filed in Court in the Action, a Party shall redact such filings so as to remove any Confidential Material. This Agreement does not, by itself, authorize the filing of any Document under seal; the filing Party must move the Court, for permission to file un-redacted versions of any Confidential Materials under seal.

(b)    in hearings, oral arguments, or other appearances in court in the Action, the parties shall confer and attempt to agree before any hearing on the procedures under which Confidential Material may be introduced into evidence or otherwise used at such hearing. Upon reaching agreement, the parties shall submit their proposal to the Court and give notice of the terms of such agreement to each Non-Party producing any Confidential Material that may be used or introduced at such hearing. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential Material at such a hearing upon reasonable notice to all Parties and Non-Parties that have produced such Confidential Material.

(c)    This Agreement governs only pretrial proceedings. The protections applicable during pretrial discovery proceedings herein to Confidential Material shall apply during trial proceedings only pursuant to a separate order of the Court.

8

## REQUEST FOR CURE OF UNAUTHORIZED DISCLOSURES

19.     Any Party or Non-Party (or counsel to any Party or Non-Party) that becomes aware of any unauthorized disclosure of Confidential Material or any breach of this Agreement shall promptly give notice to the Party or Non-Party that produced or supplied the Confidential Material of such circumstances, including a reasonable description of the circumstances that led to the unauthorized disclosure. Upon such notice, the Party or Non-Party that produced or supplied the Confidential Material may seek such other relief as is appropriate. In any event, the Party or Non-Party that made the unauthorized disclosure shall immediately take all reasonable steps to cure the unauthorized disclosure (by, inter alia, retrieving such information) and shall make every effort to prevent further disclosure.

## SUBPOENAS COMMANDING PRODUCTION OF PROTECTED MATERIAL

20.     If any Party has obtained Confidential Material under the terms of this Agreement and receives a subpoena, civil investigative demand, or other compulsory process commanding the production of such Confidential Material, such Party shall notify the counsel of record for the producing Party or Non-Party, in writing (including, but not limited to e-mail) no later than seven (7) days following the discovery that the subpoena or process order calls for Confidential Material. Within seven (7) days of receipt of notification, the producing Party or Non-Party shall inform the subpoenaed Party either that it does not object to production of the Confidential Material or that it will seek court protection to prevent the production. If the producing Party or Non-Party fails to provide the subpoenaed Party with a response, the subpoenaed Party may produce the Confidential Material after fourteen (14) days following the subpoenaed Party's notification of the subpoena to the producing Party or Non-Party. In the event the producing Party or Non-Party informs the subpoenaed Party that it will seek court protection to prevent the production, the subpoenaed Party shall not produce any Confidential Material without the prior written consent of the producing Party or Non-Party unless required by an order of a court of competent jurisdiction.

## PRODUCTION OF PROTECTED MATERIAL WITHOUT DESIGNATION

21.     The production of Confidential Material without a designation as Confidential Material shall not be deemed a waiver or impairment of any claim of privilege or protection of the confidential nature

9

of any such material. Upon a Party or Non-Party's discovery that its information was not correctly designated, that Party or Non-Party shall provide notice to the other litigants that the information was inappropriately designated and shall re-designate the information. Additionally, upon notice that any Confidential Material has not been appropriately so designated and should be re-designated as Confidential Material, the Party receiving such notice shall make a reasonable, good faith effort to ensure that any analyses, memoranda, or notes that were generated based upon such material before its re-designation shall immediately be treated in conformity with any such re-designation.

### INADVERTENT PRODUCTION OF PRIVILEGED, PROTECTED, OR OTHER MATERIAL IMMUNE FROM DISCOVERY

22.     Pursuant to Federal Rule of Evidence 502, the production or disclosure of a Document containing material subject to a claim of privilege (as defined in this Agreement) shall not constitute a waiver, in this or any other federal or state proceeding, of any privilege applicable to that Document or the material contained in that Document—even if the producing Party or Non-Party made no effort to prevent the disclosure. A producing Party's or Non-Party's use of its own Document (e.g., as a deposition exhibit) containing material subject to a claim of privilege shall not constitute a waiver of any applicable privilege unless the Party affirmatively uses or relies upon the specific material contained in the Document that is subject to the claim of privilege.

23.     A producing Party or Non-Party may, at any time, demand that a receiving Party return or destroy a Document containing material subject to a good-faith claim of privilege. The demand shall be made in writing and shall identify the Document to be returned or destroyed by Bates range whenever possible. Within twenty-one (21) days of receiving such a demand, a receiving Party shall certify in writing that: (1) it has returned, destroyed, or otherwise sequestered all copies or versions of the Documents requested to be returned or destroyed and that the receiving Party shall not attempt to examine, review, or use such Documents without further order of the Court permitting such activity; and (2) the receiving Party has deleted or sequestered from its work product or other materials any information or material derived from the Documents requested to be returned or destroyed. Within twenty-one (21) days of receipt of the

10

receiving Party's certification, a producing Party or Non-Party shall provide a privilege log for any Documents demanded to be returned as well as redacted versions of any of those Documents that contain both privileged and non-privileged information and placeholder images for Documents containing exclusively privileged information.

24.     After receipt of the producing Party's or Non-Party's privilege log and a good faith effort to meet and confer, a receiving Party may file a motion to compel production of a Document demanded to be returned pursuant to Paragraph 23 hereof. The motion shall not quote or paraphrase the substance of the Document subject to the motion to compel beyond the description of the Document contained in the privilege log entry for the Document; however, the motion may request that an in camera inspection be made of the Document. Unless the motion is granted, a requesting Party may not use any information contained in the Document that has been clawed back for any purpose, unless that same information is available from a non-privileged source.

25.     If a receiving Party receives Documents that it has reason to believe are subject to a good faith claim of privilege, the receiving Party must refrain from examining the Documents any more than is essential to ascertain if the materials are reasonably subject to a privilege claim. The receiving Party shall promptly notify the producing Party or Non-Party in writing that the receiving Party possesses material that appears to be privileged or otherwise protected from disclosure. The producing Party or Non-Party shall have twenty-one (21) days, or such other time as the Parties or Non-Parties may agree or the Court may order, to assert privilege over the material identified by the requesting Party. If, within the time allowed, the producing Party or Non-Party does not assert privilege, then the material in question shall be deemed non-privileged.

## MISCELLANEOUS PROVISIONS

26.     Nothing contained in this Agreement shall be construed as an admission that any Documents, materials, or information, or any testimony relating to such Documents, materials, or information, is or would be admissible in evidence in this Action or in any other proceeding.

11

27.     Nothing contained in this Agreement shall affect the rights of the Parties or Non-Parties to object to discovery, nor shall it relieve a Party or Non-Party of its obligation to properly respond or object to discovery requests, nor shall it preclude any Party or Non-Party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

28.     The parties to the Action reserve all rights to apply to the Court for any order modifying this Agreement, seeking greater access to Confidential Materials than those provided herein.

29.     Nothing contained in this Agreement shall affect the ability of the Parties to alter the time periods set forth in this Agreement by further agreement.

30.     Any person or entity requiring further confidentiality protection may petition the Court for a separate order governing disclosure of its information.

31.     When serving subpoenas on Non-Parties, a copy of this Agreement (including Exhibit A) shall be included with the subpoena, and the subpoena shall expressly incorporate by reference the terms of this Agreement.

32.     The provisions of this Agreement shall survive the conclusion of the Action.

33.     This Agreement may be signed in counterparts.

## COMPLETION OF LITIGATION

34.     Subject to the exceptions in Section 14, within thirty (30) days after the resolution of the Action (including resolution of all appellate proceedings), all Documents and copies of all Documents (other than exhibits of record) produced or supplied by a Party or Non-Party which contain Confidential Material shall be either destroyed or returned to the Party or Non-Party that produced or supplied the Confidential Material. Upon request of the Party or Non-Party that produced or supplied the Confidential Material, all counsel of record who received such Documents shall certify compliance herewith and shall deliver the same to counsel for the Party or Non-Party that produced or supplied the Confidential Material not more than thirty (30) days after the final resolution of the Action (including resolution of all appellate proceedings).

APP 0127

**AGREED TO:**

By: /s/ DRAFT _____
    Dee J. Kelly, Jr.
    State Bar No. 11217250
    dee.kelly@kellyhart.com
    Lars L. Berg
    State Bar No. 00787072
    lars.berg@kellyhart.com
    Julia G. Wisenberg
    State Bar No. 24099146
    julia.wisenberg@kellyhart.com
    KELLY HART & HALLMAN LLP
    201 Main Street, Suite 2500
    Fort Worth, Texas 76102
    (817) 332-2500

    Bina Palnitkar
    State Bar No. 24070378
    palnitkarb@gtlaw.com
    Zachary B. Tobolowsky
    State Bar No. 24106512
    zachary.tobolowsky@gtlaw.com
    GREENBERG TRAURIG LLP
    2200 Ross Avenue, Suite 5200
    Dallas, TX 75201
    Telephone: (214) 665-3600

    Nathan J. Muyskens
    nathan.muyskens@gtlaw.com
    GREENBERG TRAURIG, LLP
    2101 L Street, N.W., Suite 1000
    Washington, DC 20037
    Telephone: (202) 331-3100

    **ATTORNEYS FOR PLAINTIFF**

By: /s/ DRAFT _____
    William L. Kirkman
    State Bar No. 11518700
    billk@kirkmanlawfirm.com
    Preston B. Sawyer
    State Bar No. 24102465
    prestons@kirkmanlawfirm.com
    KIRKMAN LAW FIRM, PLLC
    201 Main Street, Suite 1160
    Fort Worth, Texas 76102
    Telephone: (817) 336-2800
    Facsimile: (817) 877-1863

    **ATTORNEYS FOR DEFENDANT**

APP 0128

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**ACKNOWLEDGMENT OF AGREEMENT GOVERNING THE USE
AND DISCLOSURE OF CONFIDENTIAL INFORMATION**

I hereby certify that I have received a copy of the Agreement Governing the Use and Disclosure of Confidential Information in the above-styled and numbered civil action and signed by Plaintiff American Airlines, Inc. and Defendant Skiplagged, Inc. ("Skiplagged" or "Defendant") ("Agreement"). I further certify that I have read or am otherwise familiar with and understand the contents of that Agreement.

I understand and agree to comply with the standards, requirements, and procedures that are set forth in the Agreement. I understand that compliance with these standards, requirements, and procedures is a condition of receipt of Confidential Material (as defined in the Agreement), and that a failure to comply with the Agreement may constitute contempt of the Court and/or a violation of applicable law.

I agree to consent to the jurisdiction of this Court for the purpose of enforcing the Agreement.

Signature: _____

Printed Name: _____

Date: _____

Address: _____

_____

Telephone: _____

2

APP 0129

# EXHIBIT 1-F

**Bill Kirkman**

| | |
|---|---|
| **From:** | Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com> |
| **Sent:** | Tuesday, December 05, 2023 11:49 AM |
| **To:** | Bill Kirkman; Lars Berg |
| **Cc:** | Dee Kelly; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer |
| **Subject:** | RE: AA v. Skiplagged, Inc. |
| **Attachments:** | American v Skiplagged - Agmt re Confid Info (Skiplagged comments).pdf |

Bill,

Will you please send us the Word version of your redlined edits to our Agreement Governing the Use and Disclosure of Confidential Information? We will respond to the rest of your email in due course.

Thank you,
Julia

**Julia G. Wisenberg**
*Associate*

**KELLY 🄚 HART**
201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3520
FAX (817) 878-9280
*julia.wisenberg@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Friday, December 1, 2023 3:44 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** AA v. Skiplagged, Inc.

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars:

We have completed our re-review of your proposed *Confidentiality Order* and enclose a .pdf of a marked-up copy of that which you originally sent. Let me know if you

want it in Word. Of course, we have already agreed that ¶ 8 of your original draft controls the treatment of the deposition of Dan Gellert.

We have also taken another serious look at the proposed *ESI Order* we sent earlier that was patterned after the *Order* Judge Ada Brown entered in the Dallas case filed against Skiplagged by Southwest Airlines and your proposed *Order*. My client, our new additional counsel at Condon Tobin (see *Notices of Appearance* and below), and I believe Judge Brown's *Order* is a perfect fit for this case. It is simple, straightforward, and allows production of the parties' electronic documents and e-mails through an orderly production process. Upon further review of your proposed *Order*, we continue to believe it is overly broad and complicated and prohibitively expensive to Skiplagged to operate in place. So, we will make a few changes to the draft we sent you earlier and will send another copy on Monday with hopes that you will consider this. We are ready to start the process of production of electronic documents pursuant to this *Order*, so let us know if this will work for you. We also understand you are working on getting us search terms and custodians for e-mails.

As I advised you earlier, Skiplagged has engaged Aaron Tobin and Kendal Reed of the firm of Condon Tobin Sladek Thornton Nerenberg PLLC as co-counsel with me in this case. They have filed *Notices of Appearance* and support the positions set out above on the *Orders*. If we cannot work through these issues on these two proposed *Orders*, I have asked them to work the process going forward on behalf of Skiplagged. That allows me to focus on getting the other discovery matters we have been addressing, and I shall be back to you shortly on those matters.

Finally, I am sorry I did not have time to more thoroughly discuss the points you raised yesterday afternoon after the deposition was over and I was headed out the door, as to the click wrap and browse wrap issues and our *Motion to Dismiss for Lack of Jurisdiction*. I am not sure I fully understand what you were telling me. I am available Monday to further that discussion and I think it might be productive for Irwin Schwartz to join such a discussion based on his history with Skiplagged and his knowledge of internet-type issues. Just let me know and we will make ourselves available to discuss.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error,

please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**AGREEMENT AND PROPOSED ORDER GOVERNING THE USE AND DISCLOSURE
OF CONFIDENTIAL INFORMATION**

Plaintiff American Airlines, Inc. ("American" or "Plaintiff") and Defendant Skiplagged, Inc.
("Skiplagged" or "Defendant") (American and Skiplagged are collectively "Parties" or singly a "Party")
agree and stipulate, pursuant to Rule 29(b) of the Federal Rules of Civil Procedure, as follows:

**DEFINITIONS GENERALLY**

1.     As used in this Agreement and Order, the term "Action" shall mean the above-captioned
litigation.

2.     As used in this Agreement and Order the terms "Party" or "Parties" shall mean the plaintiff
and defendant~~include current employees~~.

3.     As used in this Agreement and Order, the term "Non-Party" shall mean any individual,
corporation, association, or other natural person or entity that is not a named Party to the Action. This
Agreement and Order shall govern all Documents, materials, and information disclosed during the course
of this Action in any form (including, but not limited to, Documents, materials, and information produced
by a Party or Non-Party, disclosed through testimony, or contained in pleadings, motions, briefs, or other
materials filed with the Court) for purposes of discovery or otherwise.

4.     As used in this Agreement and Order, the term "Document" is intended to be
comprehensive and includes any and all materials in the broadest sense contemplated by Rule 34 of the

1

Federal Rules of Civil Procedure, subject to e-discovery protocols adopted for this Action, and shall include all written, oral, recorded, or graphic material, however produced or reproduced including, but not limited to: all written or printed matter of any kind, including the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise; electronically stored information, software, and other computer data including, but not limited to, information stored in a computer at any time; all graphic or manual records or representations of any kind including, but not limited to, photographs, microfiche, microfilm, videotape, records, and motion pictures; electronic, mechanical, or electric records or representations of any kind including, but not limited to, cassettes, discs, magnetic cards and recordings, optical and other media; and all drafts, alterations, modifications, changes, and amendments to any of the foregoing.

5.      As used in this Agreement and Order, the term "privilege" shall mean the attorney-client privilege, the work-product doctrine, the common-interest or joint-defense doctrine, and/or any other privilege, protection, or immunity recognized by applicable law.

6.      As used in this Agreement and Order, the term "Confidential Material" means any Documents, materials, or information supplied in any form, or any portion thereof, which is or contains confidential or proprietary business, commercial, research, personnel, process, product, or financial information of the producing Party or Non-Party. A designation by a Party or Non-Party of Confidential Material shall constitute a representation to the Court that such Party or Non-Party believes in good faith that the information constitutes Confidential Material. The Parties and Non-Parties shall make a good faith effort to designate information as Confidential Material only as needed. A Party or Non-Party designating information as Confidential Material shall make reasonable efforts to mark each page of the Document containing such material as "Confidential," subject to any provisions of the e-discovery protocols adopted for this Action.

**GENERAL PROVISIONS**

2

7.      **Production for Inspection Purposes Only.** Notwithstanding the provisions of Paragraph 6, in the event that a Party or Non-Party provides Documents, materials, or information other than electronically stored information for inspection only, no marking need be made by the producing Party or Non-Party in advance of the initial inspection, and the following procedures shall apply:

(a)      The producing Party or Non-Party shall not be considered to have waived the status as Confidential Material of Documents, materials, or information made available during such an initial inspection but not chosen by the inspecting Party for copying; and

(b)      Thereafter, upon selection of specified Documents, materials, or information for copying by the inspecting Party, the producing Party or Non-Party shall, within twenty-one (21) days (or such longer period as may be agreed upon by the Parties), and prior to providing copies of the selected Documents, materials, or information to the requesting Party, mark each page as may contain Confidential Material in accordance with this Agreement and order.

8.      **Depositions.** From the date of a deposition until twenty-one (21) days after receipt of a ~~final~~ deposition transcript, such transcript shall be deemed Confidential Material in accordance with this Agreement and Order. The designation by a Party or Non-Party of a transcript, exhibit, or video recording (or any portion thereof) as Confidential Material shall be made in writing and served upon all counsel of record and the relevant court reporter. Designations of a transcript are to be conducted on a page-by-page or line-by-line basis. Any designation of a transcript (or portion thereof) shall be treated as a designation of the corresponding video, or portion thereof, and vice-versa.

9.      **Using Confidential Material at Depositions.** Subject to the terms of this Agreement and Order and the Federal Rules of Civil Procedure, any Party may use Confidential Material in an examination of a witness at a deposition, provided that:

(a)      the witness is an author, addressee, recipient, or source of the Confidential Material;

3

28157828v1 99460.002.00

**APP 0136**

(b)    the witness is a current or former employee of the producing Party or Non-Party and has or had lawful access to the specific Document containing the Confidential Material to be disclosed;

(c)    the witness is likely to have had knowledge of the Confidential Material to be disclosed;

(d)    the witness is one of the persons identified in Paragraph 11 (for Confidential Material) as the case may be; or

(e)    the Party wishing to use Confidential Material in an examination of a witness obtains consent, which shall not be unreasonably withheld, from the producing Party or Non-Party prior to using such Confidential Material.

10.    **Objections to Designation or Treatment.** A Party may at any time, in good faith, object to the designation of any Document or specific information as Confidential Material by stating its objection in writing, which specifies the Document or information challenged (or, where appropriate, by reasonably defined categories of Documents or information challenged) and includes a statement of the legal or factual basis for each objection, to the Party or Non-Party making the designation, and it shall make a good faith effort to resolve the dispute with counsel for the Party or Non-Party so designating the Document or information. If the Parties cannot reach agreement as to the designation, the receiving Party or objector may move the Court for an order determining whether such Document is Confidential Material pursuant to this Agreement and Order, with burden of proof on the party designating the materials Confidential.

**DISCLOSURE OF PROTECTED MATERIAL**

11.    **Confidential Material.** Subject to all other terms of this Agreement and Order, Confidential Material may be disclosed only to:

11.

(a)    the Parties' employees who are directly involved in this litigation as a witness, person with knowledge of relevant facts or as an executive decision maker regarding this matter;

4

28157828v1 99460.002.00

(b)     if the Confidential Material was produced by a Non-Party, the Non-Party that produced the Confidential Material;

(c)     the Parties' attorneys involved in this Action (and the partners, associates, paralegals, and clerical and support personnel, including outside vendors, working under the direct supervision of such counsel and that are directly involved in or assisting in this Action);

(d)     each Party's respective in-house attorneys who are engaged in the conduct of the Action practicing law on behalf of the Party as part of their job responsibilities;

(e)     the Court and all persons assisting the Court in the Action, including special masters, mediators, court reporters taking testimony involving such information, and necessary stenographic and clerical personnel thereof, in accordance with the procedures set forth below;

(f)     persons retained as consultants or experts by any Party for the purposes of this Action and principals and employees of the firms with which consultants or experts are associated and who are directly involved and assisting in this Action (but excluding any consultants or experts known to be regularly employed or engaged by a current or prospective competitor of the Party or Non-Party that designated the material as Confidential Material), subject to their execution of an acknowledgment of the provisions of this Agreement and Order ;

(g)     persons other than consultants or experts who are retained to provide purely administrative assistance to counsel for any Party for the purpose of the Action, including litigation support services and outside copying services;

(h)     persons whom the Confidential Material itself indicates, or the receiving Party otherwise has reason to believe, were the author, addressee, source, or recipient of the Document;

(i)     any person noticed or called to testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in the Action, and for the purpose of assisting in the preparation or examination of the witness, provided that the requirements of Paragraph 9 have been satisfied;

5

(j)        any other person hereafter designated by written stipulation of the Parties or by further order of the Court; and

(k)        any person to whom the producing Party or Non-Party agrees in writing disclosure may be made.

12.        **Security of Confidential Materials.**

(a)        **Security Requirements**: Receiving Party agrees to apply reasonable physical, technical, and administrative safeguards for Confidential Material that is in Receiving Party's possession or under Receiving Party's control in order to protect the same from unauthorized access that would violate the Agreement and Order or any data law. ~~Receiving Party agrees and represents as to any access of Confidential Material by Receiving Party or Receiving Party's subcontractors under this Agreement shall at all times be (i) in material compliance with all data laws, and (ii) consistent in all material respects with the guidelines, principles, or frameworks embodied in (A) ISO 27001 and ISO 27002 and (B) industry standard practices (such data laws, guidelines, principles or frameworks, collectively, the "Security Requirements"). In addition, Receiving Party shall require any of Receiving Party employees, agents, or contractors with access to Confidential Material to adhere to the Security Requirements, and Receiving Party shall certify that such employees, agents, and contractors have not experienced any circumstances or events that are inconsistent with the Security Requirements during the last twenty-four months.~~ Receiving Party agrees that the controls used to safeguard Confidential Material in Receiving Party's possession will take into account the sensitivity and confidentiality of such information.

(b)        **Data Processor Requirements**: Receiving Party agrees and acknowledges that Confidential Material may be disclosed by Receiving Party to a third-party e-discovery contractor that will store and process Confidential Material for Receiving Party for purposes of this Action (a "Data Processor") only after the Data Processor has executed a nondisclosure and security agreement pursuant to this Agreement and Order. Prior to any Data Processor providing access to the Confidential Material to another third party (e.g., a further subcontractor, also a "Data Processor"), such additional third-party and the

6

28157828v1 99460.002.00

**APP 0139**

disclosure and access to the Confidential Material by such third-party shall require the further third-party

to have executed a nondisclosure and security agreement in accordance with this Agreement and Order

prior to receipt of or access to Confidential Materials. As between Receiving Party and the Producing Party,

Receiving Party shall have sole responsibility for the acts and omissions of such Data Processors to the

extent such acts or omissions are not consistent with Receiving Party's obligations with respect to the use

of the Confidential Material as provided in this Agreement and Order.

13.    **Acknowledgment and Acceptance of Terms of this Agreement and Order**. Before any

Confidential Material is disclosed to the persons identified above in Paragraphs 11(ef)–11(jk) such persons

shall be provided with a copy of this Agreement and Order and shall execute the Acknowledgment of

Agreement and Order Governing the Use and Disclosure of Confidential Information attached as Exhibit

A. Counsel for the Party seeking to disclose information pursuant to this Agreement and Order shall retain

the original copies of executed Acknowledgment forms and need not disclose who has executed them

during the course of this Action, unless a dispute arises as to the dissemination of Confidential Material to

persons other than those identified as authorized under this Agreement and Order.

14.    **Confidential Material to be Used Only for the Action**. Unless otherwise agreed to in

writing by the Parties, Documents produced in this Action, including Confidential Material, may be used

only in this Action, and may not be used in any other action, proceeding, or arbitration or for any purpose

unconnected to the Action; however, any Documents, data, or information produced by Defendant or any

non-party in this Action relating to American's fare, schedule, and inventory content, the booking and

ticketing of tickets to American's passengers, the access and display of American's content, and the

representations and comments made by Defendant in marketing, displaying, booking, and ticketing of

American flights, and communications with American's passengers by Defendant acting as American's

agent may be used by American in its day-to-day commercial activities and American may retain pursuant

to American's retention policies.

7

28157828v1 99460.002.00

15. **Redaction.** If Confidential Material contains information of a particularly sensitive, personal nature relating to a Party's customers or employees, the producing Party may make limited redactions of that material. Information appropriate for redaction includes, without limitation: social security numbers, home or mobile phone numbers, secure traveler ID numbers, frequent flier numbers~~, (except AAdvantage numbers),~~ credit card numbers, and driver's license, passport, or similar identification numbers, or any other information required to be protected under applicable law~~.; however, this does not apply to Defendant's production of Documents, data, or information relating to American's passengers, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights and communications with American's passengers by Defendant acting as American's agent.~~

16. **Maintaining Confidentiality.** ~~Subject to the exceptions in Section 14, a~~All persons authorized by this Agreement and Order to receive Confidential Material shall maintain such information as confidential consistent with the terms of this Agreement and Order and shall agree to be bound by its terms. Accordingly, no person, firm, corporation, or other entity shall use, disclose, make available, or otherwise communicate Confidential Material in any manner whatsoever except for purposes of the Action, and then only in a manner consistent with this Agreement and Order. A Party's or Non-Party's use for any purpose of its own Documents, materials, and information which it produces or discloses in the Action shall not be considered a violation of this Agreement and Order.

17. **Rendering Legal Advice.** Nothing in this Agreement **and Order** shall restrict any Party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Confidential Material; provided, however, that in rendering such advice, outside counsel shall not disclose any other Party's or Non-Party's Confidential Material other than in a manner provided for in this Agreement and Order.

**USE OF PROTECTED MATERIAL BY A PARTY IN THIS ACTION**

8

18.     In the event a Party wishes to use Confidential Material:

(a)     in any affidavits, briefs, memoranda of law, exhibits to motions, or other papers filed in Court in the Action, a Party shall redact such filings so as to remove any Confidential Material. This Agreement and Order does not, by itself, authorize the filing of any Document under seal; the filing Party must move the Court, for permission to file un-redacted versions of any Confidential Materials under seal.

(b)     in hearings, oral arguments, or other appearances in court in the Action, the parties shall confer and attempt to agree before any hearing on the procedures under which Confidential Material may be introduced into evidence or otherwise used at such hearing. Upon reaching agreement, the parties shall submit their proposal to the Court and give notice of the terms of such agreement to each Non-Party producing any Confidential Material that may be used or introduced at such hearing. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential Material at such a hearing upon reasonable notice to all Parties and Non-Parties that have produced such Confidential Material.

(c)     This Agreement and Order governs only pretrial proceedings. The protections applicable during pretrial discovery proceedings herein to Confidential Material shall apply during trial proceedings only pursuant to a separate order of the Court.

**REQUEST FOR CURE OF UNAUTHORIZED DISCLOSURES**

19.     Any Party or Non-Party (or counsel to any Party or Non-Party) that becomes aware of any unauthorized disclosure of Confidential Material or any breach of this Agreement and Order shall promptly give notice to the Party or Non-Party that produced or supplied the Confidential Material of such circumstances, including a reasonable description of the circumstances that led to the unauthorized disclosure. Upon such notice, the Party or Non-Party that produced or supplied the Confidential Material may seek such other relief as is appropriate. In any event, the Party or Non-Party that made the unauthorized disclosure shall immediately take all reasonable steps to cure the unauthorized disclosure (by, inter alia, retrieving such information) and shall make every effort to prevent further disclosure.

**SUBPOENAS COMMANDING PRODUCTION OF PROTECTED MATERIAL**

9

20.     If any Party has obtained Confidential Material under the terms of this Agreement and Order and receives a subpoena, civil investigative demand, or other compulsory process commanding the production of such Confidential Material, such Party shall notify the counsel of record for the producing Party or Non-Party, in writing (including, but not limited to e-mail) no later than seven (7) days following the discovery that the subpoena or process order calls for Confidential Material. Within seven (7) days of receipt of notification, the producing Party or Non-Party shall inform the subpoenaed Party either that it does not object to production of the Confidential Material or that it will seek court protection to prevent the production. Subject to any order of a court of competent jurisdiction, iIf the producing Party or Non-Party fails to provide the subpoenaed Party with a response, the subpoenaed Party may produce the Confidential Material after fourteen (14) days following the subpoenaed Party's notification of the subpoena to the producing Party or Non-Party. In the event the producing Party or Non-Party informs the subpoenaed Party that it will seek court protection to prevent the production, the subpoenaed Party shall not produce any Confidential Material without the prior written consent of the producing Party or Non-Party unless required by an order of a court of competent jurisdiction.

## PRODUCTION OF PROTECTED MATERIAL WITHOUT DESIGNATION

21.     The production of Confidential Material without a designation as Confidential Material shall not be deemed a waiver or impairment of any claim of privilege or protection of the confidential nature of any such material. Upon a Party or Non-Party's discovery that its information was not correctly designated, that Party or Non-Party shall provide notice to the other litigants that the information was inappropriately designated and shall re-designate the information. Additionally, upon notice that any Confidential Material has not been appropriately so designated and should be re-designated as Confidential Material, the Party receiving such notice shall make a reasonable, good faith effort to ensure that any analyses, memoranda, or notes that were generated based upon such material before its re-designation shall immediately be treated in conformity with any such re-designation.

## INADVERTENT PRODUCTION OF PRIVILEGED, PROTECTED,
## OR OTHER MATERIAL IMMUNE FROM DISCOVERY

10

28157828v1 99460.002.00

22.     Pursuant to Federal Rule of Evidence 502, the production or disclosure of a Document containing material subject to a claim of privilege (as defined in this Agreement and Order) shall not constitute a waiver, in this or any other federal or state proceeding, of any privilege applicable to that Document or the material contained in that Document—even if the producing Party or Non-Party made no effort to prevent the disclosure. A producing Party's or Non-Party's use of its own Document (e.g., as a deposition exhibit) containing material subject to a claim of privilege shall not constitute a waiver of any applicable privilege unless the Party affirmatively uses or relies upon the specific material contained in the Document that is subject to the claim of privilege.

23.     A producing Party or Non-Party may, at any time, demand that a receiving Party return or destroy a Document containing material subject to a good-faith claim of privilege. The demand shall be made in writing and shall identify the Document to be returned or destroyed by Bates range whenever possible. Within twenty-one (21) days of receiving such a demand, a receiving Party shall certify in writing that: (1) it has returned, destroyed, or otherwise sequestered all copies or versions of the Documents requested to be returned or destroyed and that the receiving Party shall not attempt to examine, review, or use such Documents without further order of the Court permitting such activity; and (2) the receiving Party has deleted or sequestered from its work product or other materials any information or material derived from the Documents requested to be returned or destroyed. Within twenty-one (21) days of receipt of the receiving Party's certification, a producing Party or Non-Party shall provide a privilege log for any Documents demanded to be returned as well as redacted versions of any of those Documents that contain both privileged and non-privileged information and placeholder images for Documents containing exclusively privileged information.

24.     After receipt of the producing Party's or Non-Party's privilege log and a good faith effort to meet and confer, a receiving Party may file a motion to compel production of a Document demanded to be returned pursuant to Paragraph 23 hereof. The motion shall not quote or paraphrase the substance of the Document subject to the motion to compel beyond the description of the Document contained in the

11

28157828v1 99460.002.00

privilege log entry for the Document; however, the motion may request that an in camera inspection be made of the Document. Unless the motion is granted, a requesting Party may not use any information contained in the Document that has been clawed back for any purpose, unless that same information is available from a non-privileged source.

26.    If a receiving Party receives Documents that it has reason to believe are subject to a good faith claim of privilege, the receiving Party must refrain from examining the Documents any more than is essential to ascertain if the materials are reasonably subject to a privilege claim. The receiving Party shall promptly notify the producing Party or Non-Party in writing that the receiving Party possesses material that appears to be privileged or otherwise protected from disclosure. The producing Party or Non-Party shall have twenty-one (21) days, or such other time as the Parties or Non-Parties may agree or the Court may order, to assert privilege over the material identified by the requesting Party. If, within the time allowed, the producing Party or Non-Party does not assert privilege, then the material in question shall be deemed non-privileged.

## MISCELLANEOUS PROVISIONS

26.    Nothing contained in this Agreement and Order shall be construed as an admission that any Documents, materials, or information, or any testimony relating to such Documents, materials, or information, is or would be admissible in evidence in this Action or in any other proceeding.

27.    Nothing contained in this Agreement and Order shall affect the rights of the Parties or Non-Parties to object to discovery, nor shall it relieve a Party or Non-Party of its obligation to properly respond or object to discovery requests, nor shall it preclude any Party or Non-Party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

28.    The parties to the Action reserve all rights to apply to the Court for any order modifying this Agreement and Order, seeking greater access to Confidential Materials than those provided herein.

29.    Nothing contained in this Agreement and Order shall affect the ability of the Parties to alter the time periods set forth in this Agreement and Order by further agreement.

12

28157828v1 99460.002.00

30.     Any person or entity requiring further confidentiality protection may petition the Court for a separate order governing disclosure of its information.

31.     When serving subpoenas on Non-Parties, a copy of this Agreement and Order (including Exhibit A) shall be included with the subpoena, and the subpoena shall expressly incorporate by reference the terms of this Agreement and Order.

32.     The provisions of this Agreement and Order shall survive the conclusion of the Action.

33.     This Agreement and Order may be signed in counterparts.

## COMPLETION OF LITIGATION

34.     Subject to the exceptions in Section 14, within thirty (30) days after the resolution of the Action (including resolution of all appellate proceedings), all Documents and copies of all Documents (other than exhibits of record) produced or supplied by a Party or Non-Party which contain Confidential Material shall be either destroyed or returned to the Party or Non-Party that produced or supplied the Confidential Material. Upon request of the Party or Non-Party that produced or supplied the Confidential Material, all counsel of record who received such Documents shall certify compliance herewith and shall deliver the same to counsel for the Party or Non-Party that produced or supplied the Confidential Material not more than thirty (30) days after the final resolution of the Action (including resolution of all appellate proceedings).

**AGREED TO:**

By: /s/ DRAFT_____

Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
Zachary B. Tobolowsky
State Bar No. 24106512
zachary.tobolowsky@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com

13

28157828v1 99460.002.00

GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

By: /s/ DRAFT _____
    William L. Kirkman
    State Bar No. 11518700
    billk@kirkmanlawfirm.com
    Preston B. Sawyer
    State Bar No. 24102465
    prestons@kirkmanlawfirm.com
    KIRKMAN LAW FIRM, PLLC
    201 Main Street, Suite 1160
    Fort Worth, Texas 76102
    Telephone: (817) 336-2800
    Facsimile: (817) 877-1863

    **ATTORNEYS FOR DEFENDANT**

2

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**ACKNOWLEDGMENT OF AGREEMENT AND ORDER GOVERNING THE USE
AND DISCLOSURE OF CONFIDENTIAL INFORMATION**

I hereby certify that I have received a copy of the Agreement and Order Governing the Use and Disclosure of Confidential Information in the above-styled and numbered civil action and signed by Plaintiff American Airlines, Inc. and Defendant Skiplagged, Inc. ("Skiplagged" or "Defendant") ("Agreement and Order"). I further certify that I have read or am otherwise familiar with and understand the contents of that Agreement.

I understand and agree to comply with the standards, requirements, and procedures that are set forth in the Agreement and Order. I understand that compliance with these standards, requirements, and procedures is a condition of receipt of Confidential Material (as defined in the Agreement and Order), and that a failure to comply with the Agreement and Order may constitute contempt of the Court and/or a violation of applicable law.

I agree to consent to the jurisdiction of this Court for the purpose of enforcing the Agreement and Order.

Signature:    _____

Printed Name:  _____

Date:      _____

Address:    _____

2

28157828v1 99460.002.00

Telephone: _____

3

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Tuesday, December 05, 2023 2:20 PM |
| **To:** | Julia G. Wisenberg; Lars Berg |
| **Cc:** | Dee Kelly; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer |
| **Subject:** | RE: AA v. Skiplagged, Inc. |

Will do.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

**From:** Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>
**Sent:** Tuesday, December 05, 2023 11:49 AM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>; Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: AA v. Skiplagged, Inc.

Bill,

Will you please send us the Word version of your redlined edits to our Agreement Governing the Use and Disclosure of Confidential Information? We will respond to the rest of your email in due course.

Thank you,
Julia

**Julia G. Wisenberg**
*Associate*

KELLY Ⓚ HART

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3520
FAX (817) 878-9280
*julia.wisenberg@kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Friday, December 1, 2023 3:44 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** AA v. Skiplagged, Inc.

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars:

We have completed our re-review of your proposed *Confidentiality Order* and enclose a .pdf of a marked-up copy of that which you originally sent. Let me know if you want it in Word. Of course, we have already agreed that ¶ 8 of your original draft controls the treatment of the deposition of Dan Gellert.

We have also taken another serious look at the proposed *ESI Order* we sent earlier that was patterned after the *Order* Judge Ada Brown entered in the Dallas case filed against Skiplagged by Southwest Airlines and your proposed *Order*. My client, our new additional counsel at Condon Tobin (see *Notices of Appearance* and below), and I believe Judge Brown's *Order* is a perfect fit for this case. It is simple, straightforward, and allows production of the parties' electronic documents and e-mails through an orderly production process. Upon further review of your proposed *Order*, we continue to believe it is overly broad and complicated and prohibitively expensive to Skiplagged to operate in place. So, we will make a few changes to the draft we sent you earlier and will send another copy on Monday with hopes that you will consider this. We are ready to start the process of production of electronic documents pursuant to this *Order*, so let us know if this will work for you. We also understand you are working on getting us search terms and custodians for e-mails.

As I advised you earlier, Skiplagged has engaged Aaron Tobin and Kendal Reed of the firm of Condon Tobin Sladek Thornton Nerenberg PLLC as co-counsel with me in this case. They have filed *Notices of Appearance* and support the positions set out above on the *Orders*. If we cannot work through these issues on these two proposed *Orders*, I have asked them to work the process going forward on behalf of Skiplagged. That allows me to focus on getting the other discovery matters we have been addressing, and I shall be back to you shortly on those matters.

APP 0151

Finally, I am sorry I did not have time to more thoroughly discuss the points you raised yesterday afternoon after the deposition was over and I was headed out the door, as to the click wrap and browse wrap issues and our *Motion to Dismiss for Lack of Jurisdiction*. I am not sure I fully understand what you were telling me. I am available Monday to further that discussion and I think it might be productive for Irwin Schwartz to join such a discussion based on his history with Skiplagged and his knowledge of internet-type issues. Just let me know and we will make ourselves available to discuss.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Tuesday, December 05, 2023 2:54 PM |
| **To:** | Julia G. Wisenberg; 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer |
| **Subject:** | RE: AA v. Skiplagged, Inc. |
| **Attachments:** | American v Skiplagged - Agmt re Confid Info (Skiplagged comments.2).docx |

Julia:

      Pursuant to your request, here is a Word version of the proposed *Order* I sent you on Friday.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

**From:** Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>
**Sent:** Tuesday, December 05, 2023 11:49 AM
**To:** Bill Kirkman <billk@kirkmanlawfirm.com>; Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** RE: AA v. Skiplagged, Inc.

Bill,

Will you please send us the Word version of your redlined edits to our Agreement Governing the Use and Disclosure of Confidential Information? We will respond to the rest of your email in due course.

Thank you,
Julia

**Julia G. Wisenberg**
*Associate*

KELLY 🆗 HART

1

201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE (817) 878-3520
FAX (817) 878-9280
*julia.wisenberg@kellyhart.com*
*www.kellyhart.com*

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged. If you have received this communication in error, do not read it. Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error. Then delete it. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

**From:** Bill Kirkman <billk@kirkmanlawfirm.com>
**Sent:** Friday, December 1, 2023 3:44 PM
**To:** Lars Berg <lars.berg@kellyhart.com>
**Cc:** Dee Kelly <dee.kelly@kellyhart.com>; Julia G. Wisenberg <Julia.Wisenberg@kellyhart.com>; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer <prestons@kirkmanlawfirm.com>
**Subject:** AA v. Skiplagged, Inc.

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Lars:

We have completed our re-review of your proposed *Confidentiality Order* and enclose a .pdf of a marked-up copy of that which you originally sent. Let me know if you want it in Word. Of course, we have already agreed that ¶ 8 of your original draft controls the treatment of the deposition of Dan Gellert.

We have also taken another serious look at the proposed *ESI Order* we sent earlier that was patterned after the *Order* Judge Ada Brown entered in the Dallas case filed against Skiplagged by Southwest Airlines and your proposed *Order*. My client, our new additional counsel at Condon Tobin (see *Notices of Appearance* and below), and I believe Judge Brown's *Order* is a perfect fit for this case. It is simple, straightforward, and allows production of the parties' electronic documents and e-mails through an orderly production process. Upon further review of your proposed *Order*, we continue to believe it is overly broad and complicated and prohibitively expensive to Skiplagged to operate in place. So, we will make a few changes to the draft we sent you earlier and will send another copy on Monday with hopes that you will consider this. We are ready to start the process of production of electronic documents pursuant to this *Order*, so let us know if this will work for you. We also understand you are working on getting us search terms and custodians for e-mails.

As I advised you earlier, Skiplagged has engaged Aaron Tobin and Kendal Reed of the firm of Condon Tobin Sladek Thornton Nerenberg PLLC as co-counsel with me in this case. They have filed *Notices of Appearance* and support the positions set out above

2

on the *Orders*. If we cannot work through these issues on these two proposed *Orders*, I have asked them to work the process going forward on behalf of Skiplagged. That allows me to focus on getting the other discovery matters we have been addressing, and I shall be back to you shortly on those matters.

Finally, I am sorry I did not have time to more thoroughly discuss the points you raised yesterday afternoon after the deposition was over and I was headed out the door, as to the click wrap and browse wrap issues and our *Motion to Dismiss for Lack of Jurisdiction*. I am not sure I fully understand what you were telling me. I am available Monday to further that discussion and I think it might be productive for Irwin Schwartz to join such a discussion based on his history with Skiplagged and his knowledge of internet-type issues. Just let me know and we will make ourselves available to discuss.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## AGREEMENT AND PROPOSED ORDER GOVERNING THE USE AND DISCLOSURE OF CONFIDENTIAL INFORMATION

Plaintiff American Airlines, Inc. ("American" or "Plaintiff") and Defendant Skiplagged, Inc. ("Skiplagged" or "Defendant") (American and Skiplagged are collectively "Parties" or singly a "Party") agree and stipulate, pursuant to Rule 29(b) of the Federal Rules of Civil Procedure, as follows:

### DEFINITIONS GENERALLY

1.     As used in this Agreement and Order, the term "Action" shall mean the above-captioned litigation.

2.     As used in this Agreement and Order the terms "Party" or "Parties" shall mean the plaintiff and defendant include current employees.

3.     As used in this Agreement and Order, the term "Non-Party" shall mean any individual, corporation, association, or other natural person or entity that is not a named Party to the Action. This Agreement and Order shall govern all Documents, materials, and information disclosed during the course of this Action in any form (including, but not limited to, Documents, materials, and information produced by a Party or Non-Party, disclosed through testimony, or contained in pleadings, motions, briefs, or other materials filed with the Court) for purposes of discovery or otherwise.

4.     As used in this Agreement and Order, the term "Document" is intended to be comprehensive and includes any and all materials in the broadest sense contemplated by Rule 34 of the

1

Error! Unknown document property name.28157828v1 99460.002.00

Field Code Changed

Federal Rules of Civil Procedure, subject to e-discovery protocols adopted for this Action, and shall include all written, oral, recorded, or graphic material, however produced or reproduced including, but not limited to: all written or printed matter of any kind, including the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise; electronically stored information, software, and other computer data including, but not limited to, information stored in a computer at any time; all graphic or manual records or representations of any kind including, but not limited to, photographs, microfiche, microfilm, videotape, records, and motion pictures; electronic, mechanical, or electric records or representations of any kind including, but not limited to, cassettes, discs, magnetic cards and recordings, optical and other media; and all drafts, alterations, modifications, changes, and amendments to any of the foregoing.

5.      As used in this Agreement and Order, the term "privilege" shall mean the attorney-client privilege, the work-product doctrine, the common-interest or joint-defense doctrine, and/or any other privilege, protection, or immunity recognized by applicable law.

6.      As used in this Agreement and Order, the term "Confidential Material" means any Documents, materials, or information supplied in any form, or any portion thereof, which is or contains confidential or proprietary business, commercial, research, personnel, process, product, or financial information of the producing Party or Non-Party. A designation by a Party or Non-Party of Confidential Material shall constitute a representation to the Court that such Party or Non-Party believes in good faith that the information constitutes Confidential Material. The Parties and Non-Parties shall make a good faith effort to designate information as Confidential Material only as needed. A Party or Non-Party designating information as Confidential Material shall make reasonable efforts to mark each page of the Document containing such material as "Confidential," subject to any provisions of the e-discovery protocols adopted for this Action.

**GENERAL PROVISIONS**

2

| Field Code Changed |
| --- |

7.    **Production for Inspection Purposes Only.** Notwithstanding the provisions of Paragraph 6, in the event that a Party or Non-Party provides Documents, materials, or information other than electronically stored information for inspection only, no marking need be made by the producing Party or Non-Party in advance of the initial inspection, and the following procedures shall apply:

(a)    The producing Party or Non-Party shall not be considered to have waived the status as Confidential Material of Documents, materials, or information made available during such an initial inspection but not chosen by the inspecting Party for copying; and

(b)    Thereafter, upon selection of specified Documents, materials, or information for copying by the inspecting Party, the producing Party or Non-Party shall, within twenty-one (21) days (or such longer period as may be agreed upon by the Parties), and prior to providing copies of the selected Documents, materials, or information to the requesting Party, mark each page as may contain Confidential Material in accordance with this Agreement and order.

8.    **Depositions.** From the date of a deposition until twenty-one (21) days after receipt of a final deposition transcript, such transcript shall be deemed Confidential Material in accordance with this Agreement and Order. The designation by a Party or Non-Party of a transcript, exhibit, or video recording (or any portion thereof) as Confidential Material shall be made in writing and served upon all counsel of record and the relevant court reporter. Designations of a transcript are to be conducted on a page-by-page or line-by-line basis. Any designation of a transcript (or portion thereof) shall be treated as a designation of the corresponding video, or portion thereof, and vice-versa.

9.    **Using Confidential Material at Depositions.** Subject to the terms of this Agreement and Order and the Federal Rules of Civil Procedure, any Party may use Confidential Material in an examination of a witness at a deposition, provided that:

(a)    the witness is an author, addressee, recipient, or source of the Confidential Material;

3

Field Code Changed

(b)    the witness is a current or former employee of the producing Party or Non-Party and has or had lawful access to the specific Document containing the Confidential Material to be disclosed;

(c)    the witness is likely to have had knowledge of the Confidential Material to be disclosed;

(d)    the witness is one of the persons identified in Paragraph 11 (for Confidential Material) as the case may be; or

(e)    the Party wishing to use Confidential Material in an examination of a witness obtains consent, which shall not be unreasonably withheld, from the producing Party or Non-Party prior to using such Confidential Material.

10.    **Objections to Designation or Treatment.** A Party may at any time, in good faith, object to the designation of any Document or specific information as Confidential Material by stating its objection in writing, which specifies the Document or information challenged (or, where appropriate, by reasonably defined categories of Documents or information challenged) and includes a statement of the legal or factual basis for each objection, to the Party or Non-Party making the designation, and it shall make a good faith effort to resolve the dispute with counsel for the Party or Non-Party so designating the Document or information. If the Parties cannot reach agreement as to the designation, the receiving Party or objector may move the Court for an order determining whether such Document is Confidential Material pursuant to this Agreement and Order, with burden of proof on the party designating the materials Confidential.

**DISCLOSURE OF PROTECTED MATERIAL**

11.    **Confidential Material.** Subject to all other terms of this Agreement and Order, Confidential Material may be disclosed only to:

11.

(a)    the Parties' employees who are directly involved in this litigation as a witness, person with knowledge of relevant facts or as an executive decision maker regarding this matter;

4

Error! Unknown document property name.28457828v1 99460.002.00

APP 0159

(b)      if the Confidential Material was produced by a Non-Party, the Non-Party that produced the Confidential Material;

(c)      . the Parties' attorneys involved in this Action (and the partners, associates, paralegals, and clerical and support personnel, including outside vendors, working under the direct supervision of such counsel and that are directly involved in or assisting in this Action);

(d)      each Party's respective in-house attorneys who are engaged in the conduct of the Action practicing law on behalf of the Party as part of their job responsibilities;

(e)      the Court and all persons assisting the Court in the Action, including special masters, mediators, court reporters taking testimony involving such information, and necessary stenographic and clerical personnel thereof, in accordance with the procedures set forth below;

(f)      persons retained as consultants or experts by any Party for the purposes of this Action and principals and employees of the firms with which consultants or experts are associated and who are directly involved and assisting in this Action (but excluding any consultants or experts known to be regularly employed or engaged by a current or prospective competitor of the Party or Non-Party that designated the material as Confidential Material), subject to their execution of an acknowledgment of the provisions of this Agreement and Order ;

(g)      persons other than consultants or experts who are retained to provide purely administrative assistance to counsel for any Party for the purpose of the Action, including litigation support services and outside copying services;

(h)      persons whom the Confidential Material itself indicates, or the receiving Party otherwise has reason to believe, were the author, addressee, source, or recipient of the Document;

(i)      any person noticed or called to testify as a witness at a deposition, hearing, mediation, trial, or other proceeding in the Action, and for the purpose of assisting in the preparation or examination of the witness, provided that the requirements of Paragraph 9 have been satisfied;

Field Code Changed

Error! Unknown document property name.28157828v1-99460.002.00

(j)     any other person hereafter designated by written stipulation of the Parties or by further order of the Court; and

(k)     any person to whom the producing Party or Non-Party agrees in writing disclosure may be made.

12.     **Security of Confidential Materials.**

(a)     **Security Requirements**: Receiving Party agrees to apply reasonable physical, technical, and administrative safeguards for Confidential Material that is in Receiving Party's possession or under Receiving Party's control in order to protect the same from unauthorized access that would violate the Agreement and Order or any data law. ~~Receiving Party agrees and represents as to any access of Confidential Material by Receiving Party or Receiving Party's subcontractors under this Agreement shall at all times be (i) in material compliance with all data laws, and (ii) consistent in all material respects with the guidelines, principles, or frameworks embodied in (A) ISO 27001 and ISO 27002 and (B) industry standard practices (such data laws, guidelines, principles or frameworks, collectively, the "Security Requirements"). In addition, Receiving Party shall require any of Receiving Party employees, agents, or contractors with access to Confidential Material to adhere to the Security Requirements, and Receiving Party shall certify that such employees, agents, and contractors have not experienced any circumstances or events that are inconsistent with the Security Requirements during the last twenty-four months.~~ Receiving Party agrees that the controls used to safeguard Confidential Material in Receiving Party's possession will take into account the sensitivity and confidentiality of such information.

(b)     **Data Processor Requirements**: Receiving Party agrees and acknowledges that Confidential Material may be disclosed by Receiving Party to a third-party e-discovery contractor that will store and process Confidential Material for Receiving Party for purposes of this Action (a "Data Processor") only after the Data Processor has executed a nondisclosure and security agreement pursuant to this Agreement and Order. Prior to any Data Processor providing access to the Confidential Material to another third party (e.g., a further subcontractor, also a "Data Processor"), such additional third-party and the

6

Field Code Changed

APP 0161

disclosure and access to the Confidential Material by such third-party shall require the further third-party to have executed a nondisclosure and security agreement in accordance with this Agreement and Order prior to receipt of or access to Confidential Materials. As between Receiving Party and the Producing Party, Receiving Party shall have sole responsibility for the acts and omissions of such Data Processors to the extent such acts or omissions are not consistent with Receiving Party's obligations with respect to the use of the Confidential Material as provided in this Agreement and Order.

13.     **Acknowledgment and Acceptance of Terms of this Agreement and Order.** Before any Confidential Material is disclosed to the persons identified above in Paragraphs 11(ef)–11(jk) such persons shall be provided with a copy of this Agreement and Order and shall execute the Acknowledgment of Agreement and Order Governing the Use and Disclosure of Confidential Information attached as Exhibit A. Counsel for the Party seeking to disclose information pursuant to this Agreement and Order shall retain the original copies of executed Acknowledgment forms and need not disclose who has executed them during the course of this Action, unless a dispute arises as to the dissemination of Confidential Material to persons other than those identified as authorized under this Agreement and Order.

14.     **Confidential Material to be Used Only for the Action.** Unless otherwise agreed to in writing by the Parties, Documents produced in this Action, including Confidential Material, may be used only in this Action, and may not be used in any other action, proceeding, or arbitration or for any purpose unconnected to the Action; however, any Documents, data, or information produced by Defendant or any non-party in this Action relating to American's fare, schedule, and inventory content, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights, and communications with American's passengers by Defendant acting as American's agent may be used by American in its day-to-day commercial activities and American may retain pursuant to American's retention policies.

7

APP 0162

15.    **Redaction.** If Confidential Material contains information of a particularly sensitive, personal nature relating to a Party's customers or employees, the producing Party may make limited redactions of that material. Information appropriate for redaction includes, without limitation: social security numbers, home or mobile phone numbers, secure traveler ID numbers, frequent flier numbers, ~~(except AAdvantage numbers);~~ credit card numbers, and driver's license, passport, or similar identification numbers, or any other information required to be protected under applicable law~~,; however, this does not apply to Defendant's production of Documents, data, or information relating to American's passengers, the booking and ticketing of tickets to American's passengers, the access and display of American's content, and the representations and comments made by Defendant in marketing, displaying, booking, and ticketing of American flights and communications with American's passengers by Defendant acting as American's agent~~.

16.    **Maintaining Confidentiality.** ~~Subject to the exceptions in Section 14, a~~All persons authorized by this Agreement _and Order_ to receive Confidential Material shall maintain such information as confidential consistent with the terms of this Agreement _and Order_ and shall agree to be bound by its terms. Accordingly, no person, firm, corporation, or other entity shall use, disclose, make available, or otherwise communicate Confidential Material in any manner whatsoever except for purposes of the Action, and then only in a manner consistent with this Agreement _and Order_. A Party's or Non-Party's use for any purpose of its own Documents, materials, and information which it produces or discloses in the Action shall not be considered a violation of this Agreement _and Order_.

17.    **Rendering Legal Advice.** Nothing in this Agreement **and Order** shall restrict any Party's counsel from rendering advice to its clients with respect to this Action and, in the course thereof, relying upon Confidential Material; provided, however, that in rendering such advice, outside counsel shall not disclose any other Party's or Non-Party's Confidential Material other than in a manner provided for in this Agreement _and Order_.

**USE OF PROTECTED MATERIAL BY A PARTY IN THIS ACTION**

Error! Unknown document property name.~~28157828v1~~99460.002.00

Field Code Changed

18.    In the event a Party wishes to use Confidential Material:

(a)    in any affidavits, briefs, memoranda of law, exhibits to motions, or other papers filed in Court in the Action, a Party shall redact such filings so as to remove any Confidential Material. This Agreement and Order does not, by itself, authorize the filing of any Document under seal; the filing Party must move the Court, for permission to file un-redacted versions of any Confidential Materials under seal.

(b)    in hearings, oral arguments, or other appearances in court in the Action, the parties shall confer and attempt to agree before any hearing on the procedures under which Confidential Material may be introduced into evidence or otherwise used at such hearing. Upon reaching agreement, the parties shall submit their proposal to the Court and give notice of the terms of such agreement to each Non-Party producing any Confidential Material that may be used or introduced at such hearing. Absent agreement, the Court shall be asked to issue an order governing the use of such Confidential Material at such a hearing upon reasonable notice to all Parties and Non-Parties that have produced such Confidential Material.

(c)    This Agreement and Order governs only pretrial proceedings. The protections applicable during pretrial discovery proceedings herein to Confidential Material shall apply during trial proceedings only pursuant to a separate order of the Court.

### REQUEST FOR CURE OF UNAUTHORIZED DISCLOSURES

19.    Any Party or Non-Party (or counsel to any Party or Non-Party) that becomes aware of any unauthorized disclosure of Confidential Material or any breach of this Agreement and Order shall promptly give notice to the Party or Non-Party that produced or supplied the Confidential Material of such circumstances, including a reasonable description of the circumstances that led to the unauthorized disclosure. Upon such notice, the Party or Non-Party that produced or supplied the Confidential Material may seek such other relief as is appropriate. In any event, the Party or Non-Party that made the unauthorized disclosure shall immediately take all reasonable steps to cure the unauthorized disclosure (by, inter alia, retrieving such information) and shall make every effort to prevent further disclosure.

### SUBPOENAS COMMANDING PRODUCTION OF PROTECTED MATERIAL

Error! Unknown document property name.28157828v1 99460.002.00

Field Code Changed

20.    If any Party has obtained Confidential Material under the terms of this Agreement and Order and receives a subpoena, civil investigative demand, or other compulsory process commanding the production of such Confidential Material, such Party shall notify the counsel of record for the producing Party or Non-Party, in writing (including, but not limited to e-mail) no later than seven (7) days following the discovery that the subpoena or process order calls for Confidential Material. Within seven (7) days of receipt of notification, the producing Party or Non-Party shall inform the subpoenaed Party either that it does not object to production of the Confidential Material or that it will seek court protection to prevent the production. Subject to any order of a court of competent jurisdiction, iIf the producing Party or Non-Party fails to provide the subpoenaed Party with a response, the subpoenaed Party may produce the Confidential Material after fourteen (14) days following the subpoenaed Party's notification of the subpoena to the producing Party or Non-Party. In the event the producing Party or Non-Party informs the subpoenaed Party that it will seek court protection to prevent the production, the subpoenaed Party shall not produce any Confidential Material without the prior written consent of the producing Party or Non-Party unless required by an order of a court of competent jurisdiction.

**PRODUCTION OF PROTECTED MATERIAL WITHOUT DESIGNATION**

21.    The production of Confidential Material without a designation as Confidential Material shall not be deemed a waiver or impairment of any claim of privilege or protection of the confidential nature of any such material. Upon a Party or Non-Party's discovery that its information was not correctly designated, that Party or Non-Party shall provide notice to the other litigants that the information was inappropriately designated and shall re-designate the information. Additionally, upon notice that any Confidential Material has not been appropriately so designated and should be re-designated as Confidential Material, the Party receiving such notice shall make a reasonable, good faith effort to ensure that any analyses, memoranda, or notes that were generated based upon such material before its re-designation shall immediately be treated in conformity with any such re-designation.

**INADVERTENT PRODUCTION OF PRIVILEGED, PROTECTED,
OR OTHER MATERIAL IMMUNE FROM DISCOVERY**

10

Error! Unknown document property name.28157828v1 99460.002.00

Field Code Changed

22.     Pursuant to Federal Rule of Evidence 502, the production or disclosure of a Document containing material subject to a claim of privilege (as defined in this Agreement and Order) shall not constitute a waiver, in this or any other federal or state proceeding, of any privilege applicable to that Document or the material contained in that Document—even if the producing Party or Non-Party made no effort to prevent the disclosure. A producing Party's or Non-Party's use of its own Document (e.g., as a deposition exhibit) containing material subject to a claim of privilege shall not constitute a waiver of any applicable privilege unless the Party affirmatively uses or relies upon the specific material contained in the Document that is subject to the claim of privilege.

23.     A producing Party or Non-Party may, at any time, demand that a receiving Party return or destroy a Document containing material subject to a good-faith claim of privilege. The demand shall be made in writing and shall identify the Document to be returned or destroyed by Bates range whenever possible. Within twenty-one (21) days of receiving such a demand, a receiving Party shall certify in writing that: (1) it has returned, destroyed, or otherwise sequestered all copies or versions of the Documents requested to be returned or destroyed and that the receiving Party shall not attempt to examine, review, or use such Documents without further order of the Court permitting such activity; and (2) the receiving Party has deleted or sequestered from its work product or other materials any information or material derived from the Documents requested to be returned or destroyed. Within twenty-one (21) days of receipt of the receiving Party's certification, a producing Party or Non-Party shall provide a privilege log for any Documents demanded to be returned as well as redacted versions of any of those Documents that contain both privileged and non-privileged information and placeholder images for Documents containing exclusively privileged information.

24.     After receipt of the producing Party's or Non-Party's privilege log and a good faith effort to meet and confer, a receiving Party may file a motion to compel production of a Document demanded to be returned pursuant to Paragraph 23 hereof. The motion shall not quote or paraphrase the substance of the Document subject to the motion to compel beyond the description of the Document contained in the

11

Field Code Changed

APP 0166

privilege log entry for the Document; however, the motion may request that an in camera inspection be made of the Document. Unless the motion is granted, a requesting Party may not use any information contained in the Document that has been clawed back for any purpose, unless that same information is available from a non-privileged source.

25.     If a receiving Party receives Documents that it has reason to believe are subject to a good faith claim of privilege, the receiving Party must refrain from examining the Documents any more than is essential to ascertain if the materials are reasonably subject to a privilege claim. The receiving Party shall promptly notify the producing Party or Non-Party in writing that the receiving Party possesses material that appears to be privileged or otherwise protected from disclosure. The producing Party or Non-Party shall have twenty-one (21) days, or such other time as the Parties or Non-Parties may agree or the Court may order, to assert privilege over the material identified by the requesting Party. If, within the time allowed, the producing Party or Non-Party does not assert privilege, then the material in question shall be deemed non-privileged.

## MISCELLANEOUS PROVISIONS

26.     Nothing contained in this Agreement and Order shall be construed as an admission that any Documents, materials, or information, or any testimony relating to such Documents, materials, or information, is or would be admissible in evidence in this Action or in any other proceeding.

27.     Nothing contained in this Agreement and Order shall affect the rights of the Parties or Non-Parties to object to discovery, nor shall it relieve a Party or Non-Party of its obligation to properly respond or object to discovery requests, nor shall it preclude any Party or Non-Party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

28.     The parties to the Action reserve all rights to apply to the Court for any order modifying this Agreement and Order, seeking greater access to Confidential Materials than those provided herein.

29.     Nothing contained in this Agreement and Order shall affect the ability of the Parties to alter the time periods set forth in this Agreement and Order by further agreement.

12

Error! Unknown document property name.28157828v1-99460.002.00

Field Code Changed

30.     Any person or entity requiring further confidentiality protection may petition the Court for a separate order governing disclosure of its information.

31.     When serving subpoenas on Non-Parties, a copy of this Agreement and Order (including Exhibit A) shall be included with the subpoena, and the subpoena shall expressly incorporate by reference the terms of this Agreement and Order.

32.     The provisions of this Agreement and Order shall survive the conclusion of the Action.

33.     This Agreement and Order may be signed in counterparts.

### COMPLETION OF LITIGATION

34.     Subject to the exceptions in Section 14, within thirty (30) days after the resolution of the Action (including resolution of all appellate proceedings), all Documents and copies of all Documents (other than exhibits of record) produced or supplied by a Party or Non-Party which contain Confidential Material shall be either destroyed or returned to the Party or Non-Party that produced or supplied the Confidential Material. Upon request of the Party or Non-Party that produced or supplied the Confidential Material, all counsel of record who received such Documents shall certify compliance herewith and shall deliver the same to counsel for the Party or Non-Party that produced or supplied the Confidential Material not more than thirty (30) days after the final resolution of the Action (including resolution of all appellate proceedings).

**AGREED TO:**

By: /s/ DRAFT
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
Zachary B. Tobolowsky
State Bar No. 24106512
zachary.tobolowsky@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com

**Field Code Changed**

13

Error! Unknown document property name.28157828v1 99460.002.00

GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

By: /s/ DRAFT
    William L. Kirkman
    State Bar No. 11518700
    billk@kirkmanlawfirm.com
    Preston B. Sawyer
    State Bar No. 24102465
    prestons@kirkmanlawfirm.com
    KIRKMAN LAW FIRM, PLLC
    201 Main Street, Suite 1160
    Fort Worth, Texas 76102
    Telephone: (817) 336-2800
    Facsimile: (817) 877-1863

**ATTORNEYS FOR DEFENDANT**

| Field Code Changed |
| --- |

Error! Unknown document property name.28457828v1-99460.002.00

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| Defendant. | § | |

**ACKNOWLEDGMENT OF AGREEMENT AND ORDER GOVERNING THE USE
AND DISCLOSURE OF CONFIDENTIAL INFORMATION**

I hereby certify that I have received a copy of the Agreement and Order Governing the Use and Disclosure of Confidential Information in the above-styled and numbered civil action and signed by Plaintiff American Airlines, Inc. and Defendant Skiplagged, Inc. ("Skiplagged" or "Defendant") ("Agreement and Order"). I further certify that I have read or am otherwise familiar with and understand the contents of that Agreement.

I understand and agree to comply with the standards, requirements, and procedures that are set forth in the Agreement and Order. I understand that compliance with these standards, requirements, and procedures is a condition of receipt of Confidential Material (as defined in the Agreement and Order), and that a failure to comply with the Agreement and Order may constitute contempt of the Court and/or a violation of applicable law.

I agree to consent to the jurisdiction of this Court for the purpose of enforcing the Agreement and Order.

Signature:  _____

Printed Name:  _____

Date:  _____

Address:  _____

Field Code Changed

2

Error! Unknown document property name.28157828v1-99460.002.00

Telephone: _____

_____

3

Error! Unknown document property name.28157828v1 99460.002.00

Field Code Changed

# EXHIBIT 1-G

APP 0172

**Bill Kirkman**

| | |
|---|---|
| **From:** | Bill Kirkman |
| **Sent:** | Tuesday, December 05, 2023 2:59 PM |
| **To:** | 'lars.berg@kellyhart.com' |
| **Cc:** | Dee Kelly; Julia G. Wisenberg; palnitkarb@gtlaw.com; nathan.muyskens@gtlaw.com; atobin@condontobin.com; kreed@condontobin.com; Preston Sawyer |
| **Subject:** | AA v. Skiplagged, Inc. |
| **Attachments:** | Stipulated E-Discovery Order.docx |

Lars:

As promised, I made a few other changes to the proposed *ESI Order* I sent you on November 15 based on the *Order* Ada Brown issued in the *Southwest Airlines* case and attach a Word version of same. I made changes to a typographical error in ¶ 2, reworded ¶ 6 to bring it up to speed in terms of the timing of such, and added Aaron Tobin and Kendal Reed to our signature block. I had hoped to get these to you yesterday, but ran into logistical issues.

We are willing to discuss inclusions in this *Order* of a few of the terms in your proposed *Order* you sent on October 12 which are not included in the attached—such as certain of your paragraphs related to your Production Format (certain portions of your paragraphs on Delivery, Branding, Redacting) and your section regarding Privilege if we can come to an agreement other than simply adopting your proposed *Order*. But as indicated in my e-mail from Friday, we believe much of your proposed *Order* is very onerous and expensive for Skiplagged to follow. And, this attached *Order* appears to be suited to this suit and Skiplagged's business, as it is totally digital.

William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## STIPULATED [PROPOSED] ORDER REGARDING E-DISCOVERY

The Court ORDERS as follows:

1.      This Order supplements all other discovery rules and orders. It is intended to streamline production of Electronically Stored Information ("ESI") to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the FEDERAL RULES OF CIVIL PROCEDURE.

2.      A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

3.      Absent a showing of good cause, general ESI production requests under Rules 34 and 45 of the FEDERAL RULES OF CIVIL PROCEDURE, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist.

4.      Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

1

A.      **General Document Image Format**. Each electronic document shall be produced in single-page Tagged Image File Format ("TIFF") format. TIFF files shall be single-page and shall be named with a unique production number, followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

B.      **Text-Searchable Documents**. No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

C.      **Footer**. Each document image shall contain a footer with a sequentially ascending production number.

D.      **Native Files**. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

E.      **No Back-up Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which back-up data is maintained in a party's normal or allowed processes, including but not limited to back-up tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

APP 0175

F.    **Voicemail and Mobile Devices**. Absent a showing of good cause, voicemails, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

5.    General ESI production requests under Rules 34 and 45 of the FEDERAL RULES OF CIVIL PROCEDURE, or compliance with a mandatory disclosure order of this Court, shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests.

6.    Email production requests shall be phased to occur timely after the parties have exchanged (1) initial disclosures, and (2) a specific identification of the ten most significant listed email custodians in view of the pleaded claims and defenses.[1] The exchange of this information shall occur ~~at the time required for initial disclosures or by order of the Court~~ on or before December __, 2023. Each requesting party may also propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for email production requests. The Court may allow additional discovery to determine these matters upon a showing of good cause.

7.    Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians per producing party, upon a showing of a distinct need based on the size, complexity, and issues of this specific case.

---

[1] A "specific identification" requires a short description of why the custodian is believed to be significant.

8.      Each requesting party shall limit its email production requests to a total of seven search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer search terms per custodian, upon a showing of a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless the words or phrases are variants of the same word or phrase. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

9.      Pursuant to Rule 502(d) of the FEDERAL RULES OF EVIDENCE, the inadvertent production of privileged or work-product-protected documents or ESI does not constitute a waiver in the pending case or in any other federal or state proceeding.

10.     The mere production of documents or ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

11.     Except as expressly stated, nothing in this Order affects the parties' discovery obligations under the Federal Rules or Local Rules.

IT IS SO ORDERED,

Signed this __ day of ~~November~~ December, 2023

_____

Honorable Mark Pittman
United States District Judge

4

**AGREED TO:**

By: /s/ DRAFT _____

    Dee J. Kelly, Jr.
    State Bar No. 11217250
    dee.kelly@kellyhart.com
    Lars L. Berg
    State Bar No. 00787072
    lars.berg@kellyhart.com
    Julia G. Wisenberg
    State Bar No. 24099146
    julia.wisenberg@kellyhart.com
    KELLY HART & HALLMAN LLP
    201 Main Street, Suite 2500
    Fort Worth, Texas 76102
    (817) 332-2500

    Bina Palnitkar
    State Bar No. 24070378
    palnitkarb@gtlaw.com
    Zachary B. Tobolowsky
    State Bar No. 24106512
    zachary.tobolowsky@gtlaw.com
    GREENBERG TRAURIG LLP
    2200 Ross Avenue, Suite 5200
    Dallas, TX 75201
    Telephone: (214) 665-3600

    Nathan J. Muyskens
    nathan.muyskens@gtlaw.com
    GREENBERG TRAURIG, LLP
    2101 L Street, N.W., Suite 1000
    Washington, DC 20037
    Telephone: (202) 331-3100

    **ATTORNEYS FOR PLAINTIFF**

By: /s/ DRAFT _____

    William L. Kirkman
    State Bar No. 11518700
    billk@kirkmanlawfirm.com
    Preston B. Sawyer
    State Bar No. 24102465
    prestons@kirkmanlawfirm.com
    KIRKMAN LAW FIRM, PLLC
    201 Main Street, Suite 1160
    Fort Worth, Texas 76102
    Telephone: (817) 336-2800
    Facsimile: (817) 877-1863

    Aaron Z. Tobin
    State Bar No. 24028045
    atobin@condontobin.com m-
    Kendal B. Reed
    State Bar No. 24048755
    kreed@condontobin.com
    CONDON TOBIN SLADEK THORNTON
    NERENBERG PLLC
    8080 Park Lane, Suite 700
    Dallas, Texas 75231
    Telephone: (214) 265-3800
    Facsimile: (214) 691-6311

    **ATTORNEYS FOR DEFENDANT**

APP 0178

# EXHIBIT 1-H



# KELLY 🅚 HART

LARS L. BERG
*lars.berg@kellyhart.com*

TELEPHONE: (817) 878-3524
FAX: (817) 878-9845

December 6, 2023

William "Bill" L. Kirkman
Preston B. Sawyer
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, TX 76102

*Via Email:* billk@kirkmanlawfirm.com,
prestons@kirkmanlawfirm.com,
atobin@condontobin.com, and
kreed@condontobin.com

Aaron Z. Tobin
Kendal B. Reed
Condon Tobin Sladek Thornton Nerenberg, PLLC
8080 Park Lane, Suite 700
Dallas, TX 75231

Re:   *American Airlines, Inc. v. Skiplagged, Inc.*, Cause No. 4:23-cv-00860-P, pending
in the United States District Court for the Northern District of Texas—Fort Worth
Division

Dear Bill:

In addition to replying to your December 1 and 5, 2023 emails, I am addressing
Skiplagged's overdue responses to American's discovery requests. American served its First Set
of Requests for Production ("RFPs") and First Set of Interrogatories ("Interrogatories") on October
12, 2023. On November 8, Skiplagged served objections only to both requests. Skiplagged chose
to ignore its obligations to (i) produce documents responsive to American's RFPs and (ii) provide
answers to American's Interrogatories.

On November 27, 2023, Skiplagged belatedly served incomplete answers to Interrogatories
Nos. 12, 13, and 15–19. To date, Skiplagged still has not answered the other 12 interrogatories.
Further, Skiplagged has not produced any documents responsive to American's 56 document
requests. That includes documents that Daniel Gellert testified about during his November 30,
2023 deposition. For instance, Mr. Gellert testified that Skiplagged sends booking confirmation
emails to its customers, that those emails contain the customer's PNR information, and that
Skiplagged saves the PNRs of customers that booked flights through Skiplagged.com in
Skiplagged's database. The following excerpts from the rough draft of the deposition transcript
reflect this:

Q:   One of the items that would be contained in that booking information e-mail
is the PNR, correct?

. . .

December 6, 2023
Page 2

_____

A:    Yes.

[Gellert Rough Depo. Transcript, 114:7–9, 23].

A:    After the booking is made we send the user an e-mail that says your booking is made. There is a [booking] confirmation . . . e-mail that has PNR information and details about their itinerary that they get sent.

[Gellert Rough Depo. Transcript, 135:20–25].

Q:    Does Skiplagged take the PNR off of that confirmation . . . e-mail and save it in any way?

       . . .

A:    Yes.

Q:    Okay. How does Skiplagged save [the] PNR of a customer that booked through Skiplagged[.]com and went . . . through [the] facilitate[d] . . . booking page pathway?

A:    In our database.

Q:    And what is [the] database called?

A:    We don't have a name for it.

[*See* Gellert Rough Depo. Transcript, 139:6–17].

Q:    What information [that] consumers enter[] on Skiplagged[.]com does Skiplagged keep?

       . . .

Q:    Does it keep the first and last name?

       . . .

A:    Yes.

Q:    Does it keep—we know it keeps the e-mail address?

A:    Yes.

Q:    Does it keep on for that particular flight the departure city and arrival city?

A:    Yes.

Q:    Does it keep the flights chosen?

A:    Like the—

Q:    The specific flight, like—

A:    Flight number?

Q:    Yes, sir.

A:    Yes.

Q:    Does it keep the amount that was paid by the consumer?

A:    Yes.

[*See* Gellert Rough Depo. Transcript, 140:10–141:10].

December 6, 2023
Page 3

These documents, which Mr. Gellert testified exist, are highly relevant to the issues in this case, including the jurisdictional issues raised by Skiplagged's pending Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 21]. Further, American has requested this information through multiple discovery requests:

**REQUEST FOR PRODUCTION NO. 4:** All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, *including, for each booking, all PNR Data* and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 5:** All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, *including, for each booking, all PNR Data* and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**REQUEST FOR PRODUCTION NO. 6:** Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, *including all PNR Data* for all such passengers.

**INTERROGATORY NO. 8:** Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, *all PNR Data*, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

[*See* Exhibit A at 5–6 & Exhibit B at 7 (emphasis added)].

The documents Mr. Gellert testified exist not only are directly responsive to the above requests, but go to the heart of the jurisdictional issues that are the subject of Skiplagged's Motion to Dismiss for Lack of Personal Jurisdiction. Yet, Skiplagged has failed to produce a single document.

December 6, 2023
Page 4

_____

Skiplagged has no legitimate reason to withhold documents or its responses to the remaining Interrogatories. Indeed, the PNR and related data that Skiplagged admitted it has in its possession is so directly relevant to jurisdiction that American can only conclude that Skiplagged is intentionally withholding it to prevent American from not only gathering information that will defeat Skiplagged's Motion to Dismiss, but also show that Skiplagged's motion was inappropriately filed.

Skiplagged filed its Motion for Protective Order as to Discovery from Plaintiff and to Stay Merits-Based Discovery Pending the Court's Ruling on Skiplagged's Motion to Dismiss for Lack of Personal Jurisdiction on November 8, 2023. The Court denied Skiplagged's motion in full. [*See* Dkt. Nos. 29–31]. The non-entry of a Protective Order in this case is no excuse for Skiplagged's deficient responses, as per the Court's order there will be no Protective Order in this litigation.

In addition to diligently pursuing Skiplagged's overdue discovery responses through emails and phone calls, American engaged in good faith in a meet-and-confer conference with Skiplagged on November 17, 2023. During that conference, you indicated that Skiplagged would likely provide its Answers to Interrogatories Nos. 12, 13, and 15–19 by November 20 and answers to the remaining Interrogatories and a document production by December 6. Not only did Skiplagged serve its Answers to Interrogatories Nos. 12, 13, and 15–19 a week after the date indicated—without any explanation—but your recent email states that "[w]e will do our best to comply with your self-imposed date of December 6. But, my time in New York preparing for and defending Mr. Gellert's deposition will cramp your deadline."

Pursuant to Fed. R. Civ. P. 34(b)(1)(C), American served on Skiplagged the ESI protocol that specified "the form or forms in which electronically stored information is to be produced." Skiplagged refused to agree, but failed to object. But you did, however, note in the November 17, 2023 meet and confer that Skiplagged would make redlined edits to American's proposed ESI protocol and would be sending your edits soon. However, you have not sent any edits to American's proposal. Rather, you recently, on December 1, 2023, indicated that Skiplagged would instead be sending redlined edits to an ESI order entered in another case (*Southwest Airlines Co. v. Kiwi.com, Inc. and Kiwi.com s.r.o.*, Cause No. 3:21-cv-00098-E)—without any explanation on why Skiplagged has reneged on its prior representation that it would edit American's proposal—and sent those edits to the *Southwest v. Kiwi* order yesterday. And, as we explained during the meet and confer, the ESI order entered in the *Southwest v. Kiwi* case is not appropriate for this case. For example, counter to commonly accepted practice, the *Southwest v. Kiwi* order does not explicitly require production of searchable text, which manufactures inefficiency and places a burden on the receiving party to create text that the producing party should already have available. The *Southwest v. Kiwi* order also includes some conditions that must be met prior to email production requests, which are not common practice.

Most troubling and obviously inappropriate for this case, the order in the *Southwest v. Kiwi* case also limits each party's email production requests to a total of seven search terms per custodian per party. It is unreasonable to expect either party to artfully identify that small number

December 6, 2023
Page 5

_____

of search terms in a manner that will successfully identify relevant and potentially key documents without unnecessarily excluding many more. While such a provision may be appropriate for the very limited type of case for which such an order was designed, along with other reasons, the *Southwest v. Kiwi* order is inappropriate for this case. American re-urges Skiplagged to review the proposed ESI protocol that it sent on October 12, 2023—and that Skiplagged previously agreed to edit. Further, if Skiplagged fails to produce documents, by December 6, 2023, responsive to American's requests that include ESI produced in the form requested by American, American reserves its rights to file a motion to compel.

Skiplagged's motion for a protective order [Dkt. No. 29] included a request for an order to protect the information Skiplagged contends is confidential. The Court denied that request. American, nevertheless, was willing to entertain an agreement as to confidentiality, but Skiplagged has unreasonably thwarted those efforts. Indeed, one of Skiplagged's proposed changes to the agreement is to make it a court order, a proposal the Court already rejected. Skiplagged's other revisions are similarly unacceptable. Accordingly, American rejects all of Skiplagged's proposed revisions, for all the reasons previously explained. American insists Skiplagged produce its discovery responses and document production without any such confidentiality agreement in place no later than December 6, 2023, as you said you would.

Skiplagged's continued, intentional delays are unacceptable under the Federal Rules of Civil Procedure and this Court's November 13th Order. Skiplagged's discovery responses are deficient and overdue by several weeks. Skiplagged must serve its answers to the remaining Interrogatories and all documents responsive to American's RFPs—including those that Mr. Gellert testified about—by December 6, or American will have no recourse but to file a motion to compel.

Please do not hesitate to reach out to me to discuss these issues.

Sincerely,

Lars L. Berg

# EXHIBIT 1-I

APP 0185

# KIRKMAN LAW FIRM, PLLC

### ATTORNEYS AND COUNSELORS
201 MAIN STREET, SUITE 1160
FORT WORTH, TEXAS 76102
817-336-2800
FACSIMILE 817-877-1863

WILLIAM L. KIRKMAN
billk@kirkmanlawfirm.com

PRESTON B. SAWYER
prestons@kirkmanlawfirm.com

December 7, 2023

Mr. Lars L. Berg                                           <u>VIA E-MAIL</u>
Kelly Hart & Hallman, LLP
201 Main Street
Suite 2500
Fort Worth, Texas 76102

Dear Lars:

Re:   U.S.D.C. C.A. No. 4:23-cv-00860-P
      Northern District of Texas, Fort Worth Division
      ***American Airlines, Inc. v. Skiplagged, Inc.***

     I am responding to your letter received late yesterday afternoon. Unfortunately, there are inaccuracies in your letter. Rest assured that Skiplagged is not "intentionally delaying" discovery. I will address your positions and provide our responses in this letter.

     Our answers to Interrogatories Nos. 12, 13, and 15–19 were not incomplete. They were responsive, appropriate, and provided the information American requested.

     We have now gathered the information responsive to your Interrogatories Nos. 1–11 and 14 and expect to provide the answers tomorrow. However, certain of the requests seek confidential information which we are only willing to provide pursuant to a *Confidentiality Order.*

**APP 0186**

Mr. Lars L. Berg
December 7, 2023
Page 2

I will review the rough draft of the Dan Gellert deposition concerning the portions you quoted. However, the references you make to Mr. Gellert's testimony appear to address e-mails Skiplagged has sent to persons for whom we have facilitated flight arrangements and the quotations on p. 2 of your letter address e-mail addresses, names of such persons, and information about particular flights of such persons. The e-mails and information to which you make reference in Mr. Gellert's testimony would be a subject of the *ESI Order* and the *Confidentiality Order/Agreement* which we have been attempting to negotiate with you now in good faith for some time. Obviously, the e-mails and the information you quote from Mr. Gellert's deposition testimony are electronically stored at Skiplagged. And, Skiplagged desires that the personal and confidential information included therein be treated as such, as we have proposed in our edits to your proposed *Confidentiality Agreement*.

You claim at the top of p. 4 that American has concluded that Skiplagged is "intentionally withholding" PNR and related data to prevent American from not only gathering information that will defeat its *Motion to Dismiss*, but show how Skiplagged's *Motion* was inappropriately filed. That is inaccurate and I view such as inappropriate rhetoric from your client. It is also belied by our providing Interrogatory Answers, Dan Gellert for a deposition, and our attempts to negotiate in good faith, these *Confidentiality* and *ESI Orders/Agreements*.

I do not understand or agree with the position you take in the initial sentence of your fourth paragraph on p. 4. We do not agree with your interpretation of the Court's *Order* as respects our *Motion for Protective Order* and that Judge Pittman has denied any attempts to treat certain information as confidential. We have been trying to work with you in good faith to get a legitimate and fair *Confidentiality Orders/Agreement* in place. I also do not understand the first sentences of the first full paragraph on p. 5 of your letter or the basis therefor. It is simply untrue that Skiplagged "unreasonably thwarted" efforts to achieve an acceptable *Confidentiality Agreement*. We have redlined your *Confidentiality Agreement*. You consistently ignore such, refuse to

Mr. Lars L. Berg
December 7, 2023
Page 3

negotiate, and simply say it is either American's way or the highway. We do not think that is reasonable, fair, or appropriate in this case.

The statements in the third paragraph of your letter on p. 4 are inaccurate. We have been negotiating an *ESI Order* and *Confidentiality Order/Agreement* as a fundamental basis for production of documents and provision of certain confidential information for some time now. The statement you quote in the last sentence of the third paragraph on p. 4 is also inaccurate. As I have indicated to you in correspondence, we have been working to provide this discovery information from before the Gellert deposition was scheduled throughout and since it was completed.

The *Order* entered in the *Southwest v. Kiwi* case is appropriate for this case. We also do not believe that the *Kiwi Order* places conditions on production that are not common practice. Nevertheless, in an effort to work with American on the *ESI Order*, I agreed to take another look at your proposed *ESI Order* and see if we could possibly work with it and redline it. After reviewing it yet again, in detail, and discussing its provisions with my client, it became apparent that with certain exceptions, that was simply not possible. It is way too onerous for Skiplagged to follow and we believe it would be prohibitively expensive to do so. And, in my correspondence yesterday, I indicated those areas we would be willing to discuss with you if we could reach an agreement on the other terms soon. If you want more than seven search terms, how many do you want? Also, please send us the search terms you do want so we can go forward with a hit list on our end. If American wants searchable texts, we will agree to that. We will also consider any other reasonable requested additions or changes. Finally, we are close to finalizing an agreement with a third-party vendor as to our prospective ESI collection and production and are willing to put that vendor in touch with you to see if that discussion can help bridge the gap between our positions over an *ESI Order*. Let me know.

You have had our answers to Interrogatories Nos. 12, 13, and 15–19 for some time now and we provided them immediately after the Thanksgiving

Mr. Lars L. Berg
December 7, 2023
Page 4

break. I never said I would provide Interrogatory answers or produce documents by yesterday without any *Confidentiality Agreement* in place, and our written communications belie that.

As this letter indicates, Skiplagged continues to be willing to work towards acceptable solutions to these discovery-related issues, remains willing to attempt to negotiate a fair and reasonable *ESI Order* and *Confidentiality Order*, and will continue to be of that mind, whether you file a motion or not. If it will expedite things, if we are able to agree to an acceptable form of a *Confidentiality Order*, we will treat such as a valid agreement between us and immediately begin providing you information before the entry of the *Order* by the Court. At any rate, I have asked Aaron Tobin and Kendal Reed to step in and approach you with their ideas about working through the ESI and confidentiality issues. They have substantial experience with these matters—certainly more than I do. Perhaps they will have better luck than I have or can provide new and different ideas on how to bridge the gap between us.

I am in the office all day tomorrow if you choose to discuss these issues further.

Very truly yours,

William L. Kirkman

WLK/jbg

cc:   Mr. Dee J. Kelly, Jr.                        VIA E-MAIL
      Ms. Julia G. Wisenberg                       VIA E-MAIL
      Ms. Bina Palnitkar                           VIA E-MAIL
      Mr. Nathan J. Muyskens                       VIA E-MAIL
      Mr. Aaron Z. Tobin                           VIA E-MAIL

Mr. Lars L. Berg
December 7, 2023
Page 5


cc:    Mr. Kendal B. Reed                                      VIA E-MAIL
       Mr. Preston B. Sawyer                                   VIA E-MAIL

# EXHIBIT 1-J

APP 0191

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SKIPLAGGED, INC.'S SECOND AMENDED**
**OBJECTIONS AND ANSWERS TO PLAINTIFF AMERICAN**
**AIRLINES, INC.'S FIRST SET OF INTERROGATORIES**

TO:   Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr. and Lars L. Berg and Ms. Julia G. Wisenberg, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J. Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.

**NOW COMES** Defendant, Skiplagged, Inc. ("Skiplagged"), and hereby makes these *Second Amended Objections and Answers to Plaintiff American Airlines, Inc.'s First Set of Interrogatories*.

**I.**

**STATEMENT REGARDING SECOND AMENDED OBJECTIONS**

1.     Skiplagged continues to object to the Instructions and Definitions preceding the Interrogatories to the extent that they impose duties and obligations beyond the requirements of the FEDERAL RULES OF CIVIL PROCEDURE. In particular, Skiplagged objects to the Instructions and Definitions of (1) "identify" with regard to a communication, document, or person, in that same are overly broad, onerous, and cumbersome; (2) American's Content, American-Skiplagged

1

APP 0192

Customer, Travel carrier(s), Travel Agency and PNR Data, as same are unnecessarily overly broad, vague, and in part ambiguous.

2.      Skiplagged also continues to object to all of the Interrogatories to the extent they seek documents or information protected by the attorney-client privilege, the work-product privilege, the party communication privilege, the witness statement privilege, the consulting expert privilege, the investigative privilege, or any other legally recognized privilege, immunity, or doctrine. Skiplagged's agreement herein to produce certain information or documents is subject to this objection and does not constitute an agreement to produce any information or documents protected by such privilege, immunity, or doctrine. Inadvertent disclosure of any such information shall not constitute a waiver or prejudice of any privilege or any other ground for objecting to discovery with respect to any such information, nor shall the inadvertent disclosure waive or prejudice Skiplagged's right to object to the use of any such information during this or any subsequent proceeding.

3.      Skiplagged objects to all of the Interrogatories to the extent they seek information for a period prior to August 1, 2018. Unless otherwise specified in the Interrogatory or the Answer, Skiplagged will only provide information limited to August 1, 2018 to August 18, 2023.

## II.

### SECOND AMENDED OBJECTIONS AND ANSWERS TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**ANSWER:**

Objection. This Interrogatory, in part, calls for confidential information as to revenue. Skiplagged will  provide that information upon the entry of a confidentiality order.  Skiplagged does not make "American Bookings" or "book" airfares as such.  Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources.

2

Additionally, Skiplagged is aware of the number of bookings done through Skiplagged's Book Now facilitated booking feature and not the number done for redirected users to on-line travel agencies. With this understanding, annual American Bookings for the requested periods is as follows:

| Period | Users | Sessions | American Bookings |
|---|---|---|---|
| Total 2018 (after 8/1) | 4,243,819 | 14,140,549 | 114,050 |
| Total 2019 | 12,021,027 | 42,685,506 | 305,441 |
| Total 2020 | 9,479,785 | 32,503,203 | 303,295 |
| Total 2021 | 12,987,591 | 38,832,655 | 328,588 |
| Total 2022 | 14,059,796 | 47,352,018 | 210,466 |
| Total 2023 (through 8/18) | 11,148,418 | 34,150,376 | 115,087 |

**INTERROGATORY NO. 2:** Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**ANSWER:**

Skiplagged objects to this Interrogatory because it calls for confidential and propriety information as to the details of how Skiplagged accessed, obtained, collected, or received information concerning American's flight data. Skiplagged will provide such information upon the entry of a confidentiality order. Skiplagged has not "scraped," "cached," or "harvested" American's content, as Skiplagged understands the meaning of these terms. Skiplagged obtains American Airlines flight information through one or more APIs and then uses that data to present responses to user prompts for travel routes through Skiplagged.com's graphical user interface.

**INTERROGATORY NO. 3:** Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**ANSWER:**

This Interrogatory appears to be duplicative of Interrogatory No. 2. Therefore, please see the response to Interrogatory No. 2.

3

In addition, this Interrogatory calls for confidential and propriety information in the form of data and content and the process used to use such. Skiplagged will provide that information upon the entry of a confidentiality order.

**INTERROGATORY NO. 4:**   Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your ANSWER should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

**ANSWER:**

This Interrogatory appears to be duplicative or repetitive, at least in part, of Interrogatory Nos. 2 and 3. Therefore, see the answer to Interrogatories Nos. 2 and 3.

Skiplagged does not "book" airfares as such. Skiplagged also does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources. Skiplagged.com provides a wide range of travel information to users over the Internet, including for persons interested in booking commercial airline flights. Skiplagged uses a unique algorithm to enable customers to identify affordable rates for airline or hotel accommodations and then refers the user to on-line travel agents to complete the bookings. In some instances Skiplagged.com offers a "Book Now" feature that offers users the opportunity to utilize Skiplagged.com to facilitate the user's purchase of a given flight.  When the user selects the "Book Now" option for an American flight, Skiplagged.com then prompts the user to input their passenger information and payment details through an on-line form. Skiplagged.com then uses Google's Puppeteer software https://developer.chrome.com/docs/puppeteer to open a Google Chrome browser in the Skiplagged computer servers and populate the user's information from the on-line form into the booking instance on the Uniform Resource Locator or "URL" on AA.com on the user's behalf without Skiplagged's intervention.  Skiplagged has configured Puppeteer to allow the user to submit data to the AA.com website through Skiplagged.com.

**INTERROGATORY NO. 5:**   Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**ANSWER:**

This Interrogatory appears to be duplicative of Interrogatory No. 4, which was repetitive of Interrogatory No. 2. Therefore, see the answer to Interrogatories Nos. 2 and 4. In addition, Skiplagged.com automatically presents the user with the total fare plus Skiplagged's service fee

4

as separate line items through the Skiplagged.com graphical user interface.  If the user decides to proceed with the booking and accepts Skiplagged.com's terms and conditions, Skiplagged.com automatically completes the booking on AA.com on the user's behalf and AA.com charges the user for the fare and Skiplagged.com charges the user for its service fee.  Skiplagged.com runs on virtual servers hosted by Google Cloud located in South Carolina that use dynamic IP addresses to access AA.com.

**INTERROGATORY NO. 6:**   Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**ANSWER:**

This Interrogatory appears to be duplicative or repetitive of Interrogatory Nos. 1, 2 and 4 (at least in part). Therefore, see the answers to those Interrogatories. Also, Skiplagged is not a Travel Agency and thus Interrogatory No. 6 has a presumption that is incorrect.

This Interrogatory is also overly broad by requesting the specific details in the last sentence. Such requested details also seek information that is not reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the needs of the case to the extent it seeks information concerning Skiplagged's dealings with respect to travel vendors for bookings other than American Airlines. Skiplagged.com aggregates travel options offered by travel companies for American Airlines services, including flights directly from American Airlines, and presents those options for routes and prices to users.  Users may select a travel option through Skiplagged.com by which users are redirected to the travel companies to potentially book the selected option.

This Interrogatory also calls for Skiplagged to identify agreements and third parties which is confidential, proprietary information. Skiplagged will provide such upon the entry of a confidentiality order.

**INTERROGATORY NO. 7:**   Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**ANSWER:**

This Interrogatory is duplicative of Interrogatory Nos. 2 and 6. Therefore, see answers to Interrogatories Nos. 2 and 6. Skiplagged has redirected users to AA.com to potentially complete bookings of American Airlines flights. Beyond that, Skiplagged objects to this Interrogatory because it calls for confidential and propriety information as to the details of how Skiplagged accessed, obtained, collected, or received information concerning American's flight data. Skiplagged will provide this information upon the entry of a confidentiality order.

**INTERROGATORY NO. 8:**   Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**ANSWER:**

Skiplagged stands on its previous objections previously lodged as to this Interrogatory, that it is unnecessarily and unreasonably overly broad by asking Skiplagged to "identify all instances" relative to bookings, considering the proportional needs of the case, and that it seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case. This interrogatory also seeks personal information of Skiplagged users that is private and personal to such persons, and Skiplagged will not disclose such. The provision of the requested information may cause Skiplagged to breach contractual obligations to its users and calls for confidential information.

**INTERROGATORY NO. 9:**   Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

**ANSWER:**

Skiplagged does not book, ticket, purchase and/or sell tickets on American-marketed flights. Skiplagged is unable to identify the requested IP addresses, as Skiplagged uses Google Cloud to host Skiplagged.com, which uses dynamic addresses for Skiplagged.com instances.

**INTERROGATORY NO. 10:**   Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**ANSWER:**

Skiplagged provides no refunds of American fares and is therefore generally unaware of such refunds, if they are made. Specifically, Skiplagged does not charge customers for the ticket or "book" the ticket and does not know of or have visibility to whether a customer requests as refund as such from American.

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**ANSWER:**

Skiplagged identifies the following lawsuits filed against it, the allegations of which are a public record.

1. United Airlines, Inc., Orbitz Worldwide, LLC, and Orbitz, LLC, Case No. 1:14-cv-09214 (N.D. Ill.); and

2. Southwest Airlines, Inc. v. Skiplagged, Inc., Skybooker.com LTD, Case No. 3:21-cv-01722-E (N.D. Tex.).

Both cases have been resolved and are terminated.

The following "claims, charges, and allegations" have also been made:

1. A demand letter from counsel for Delta Air Lines, Inc. dated July 19, 2018, to which Skiplagged responded through counsel on July 26, 2018; and

2. A demand letter from Fareportal on behalf of Cheapoair dated February 11, 2015, which was resolved on February 27, 2015.

**INTERROGATORY NO. 12**: Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**ANSWER:**

Skiplagged has no practice that directs, targets, or keeps separate, persons with a Texas address. The reference made by Mr. Zaman in his Declaration is to Skiplagged's general operations, which are used by all persons everywhere and not just Texans. Skiplagged provides information to persons who come to its website to find information about airfares, air travel, and online travel offerings so they may book fares or tickets through other travel resources and does not "book" tickets or airfares as such, but facilitates persons booking flights. With this understanding, from August 1, 2018, through August 17, 2023, and according to Google Analytics, 59,426,399 persons accessed Skiplagged's site through 209,618,689 sessions, which resulted in 434,534 bookings reflecting Texas addresses through Skiplagged's "Book Now" feature. Accordingly, bookings with Texas addresses made through Skiplagged's Book Now feature represents approximately 00.207 percent of all sessions on Skiplagged.com during the identified period.

**INTERROGATORY NO. 13**: Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

APP 0198

**ANSWER:**

Skiplagged has no practice that directs, targets, or keeps separate, persons with a Texas address. The reference made by Mr. Zaman in his Declaration is to Skiplagged's general operations, which are used by all persons everywhere and not just Texans. Skiplagged provides information to persons who come to its website to find information about airfares, air travel, and online travel offerings so they may book fares or tickets through other travel resources and does not "book" tickets or airfares as such, but facilitates persons booking flights. With this understanding, from August 1, 2018, through August 17, 2023, and according to Google Analytics, 59,426,399 persons accessed Skiplagged's site through 209,618,689 sessions, which resulted in 854,317 bookings for flights that originated and/or terminated in Texas through Skiplagged's "Book Now" feature. Accordingly, such bookings made through Skiplagged's Book Now feature represent approximately 00.408 percent of all sessions on Skiplagged.com during the identified period.

**INTERROGATORY NO. 14**: Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and describe the technical means and process by which Skiplagged obtains such information.

**ANSWER:**

This Interrogatory is duplicative of Interrogatory Nos. 2 and 3. Therefore, see answers to Interrogatories Nos. 2 and 3. In addition, this Interrogatory also calls for confidential information by asking Skiplagged to "identify" such agencies, systems, and engines. Skiplagged will provide that information upon the entry of a confidentiality order.

**INTERROGATORY NO. 15**: Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**ANSWER:**

Skiplagged has no practice that directs, targets, or keeps separate, persons with a Texas address. Skiplagged is not a Travel Agency, so use of the term "other Travel Agencies" is incorrect. Subject to these provisos, from August 1, 2018, through August 17, 2023, Skiplagged is unaware of the total number of bookings through Travel Agencies made by persons referred by Skiplagged. Additionally, Skiplagged does not receive commission information as to redirected "bookings" because it is primarily paid on CPC (*i.e.*, intent to book), the standard advertising revenue model, rather than CPA (*i.e.*, successful booking), for which it does not collect the requested information with respect to Texas addresses or anywhere else.

**INTERROGATORY NO. 16**: Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and

8

the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**ANSWER:**

Skiplagged has no practice that directs, targets, or keeps separate, persons who fly to, from, or within Texas. Skiplagged is not a Travel Agency, so use of the term "other Travel Agencies" is incorrect. Subject thereto, Skiplagged has no information responsive to this Interrogatory because it is not paid for bookings by Travel Agencies, or it does not collect the requested information with respect to routing for bookings made by Travel Agencies.

**INTERROGATORY NO. 17**:  Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.

**ANSWER:**

Skiplagged has no practice that directs or targets persons or keeps separate, persons with a Texas address or that records a "home airport" located in Texas as such. Despite that, zero persons "signed up" for such newsletter or e-mail subscriber service from August 1, 2018, to August 17, 2023, by entering a "home airport" located in Texas. This is because Skiplagged launched the newsletter sign-up page on August 28, 2023, which was after American Airlines filed the complaint in this action.

**INTERROGATORY NO. 18**: Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**ANSWER:**

Skiplagged has no practice that directs, targets, or keeps separate, persons who fly to, from, or within Texas. Skiplagged is not a Travel Agency, so the use of the term "another Travel Agency" is incorrect. With that understanding, Skiplagged has redirected persons 966,655 times to a Travel Agency (not "another" Travel Agency, as Skiplagged is not a "Travel Agency") to potentially "complete" a booking for a flight to from or within Texas from August 1, 2018, to August 17, 2023, understanding that Skiplagged interprets this Interrogatory to ask for the number of times that Skiplagged.com has redirected persons to an online Travel Agency to complete a booking for a flight involving Texas.  Skiplagged does not have information as to how many such referrals resulted in the purchase of airline tickets for flights involving Texas.  Each identified booking involves two cities, not necessarily in the same state or country, and "involving Texas" refers to bookings where the trip starts and/or ends in Texas.

**INTERROGATORY NO. 19**: Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

9

**ANSWER:**

Paragraph 10 of the Zaman Declaration does not reference American Marks and page 13 of Skiplagged's *Motion to Dismiss* erroneously cites Zaman Declaration paragraph 10 instead of paragraph 11 for this proposition. The reference made by Mr. Zaman is to Skiplagged's general operations, which are used by all customers and not just Texans. Subject to this correction, Skiplagged states that on May 23, 2017, a former employee obtained the American icon from the API response of a Skiplagged advertiser, which Skiplagged understood to be allowed to use and distribute the American icon. Skiplagged's former employee then edited the image to make the background transparent and slightly enlarge the logo. The result is what Skiplagged has been using: https://skiplagged.com/img/airlines-favicon/AA.png.

Dated: December 13, 2023              Respectfully submitted,

                                      By:      /s/*William L. Kirkman*
                                               William L. Kirkman
                                               State Bar No. 11518700
                                               billk@kirkmanlawfirm.com
                                               Preston B. Sawyer
                                               State Bar No. 24102465
                                               prestons@kirkmanlawfirm.com
                                               KIRKMAN LAW FIRM, PLLC
                                               201 Main Street, Suite 1160
                                               Fort Worth, Texas 76102
                                               Telephone:      (817) 336-2800
                                               Facsimile:       (817) 877-1863

                                               Aaron Z. Tobin
                                               State Bar No. 24028045
                                               atobin@condontobin.com
                                               Kendal B. Reed
                                               State Bar No. 24048755
                                               kreed@condontobin.com
                                               CONDON TOBIN SLADEK THORNTON
                                                 NERENBERG PLLC
                                               8080 Park Lane, Suite 700
                                               Dallas, Texas 75231
                                               Telephone:      (214) 265-3800
                                               Facsimile:       (214) 691-6311

                                               ATTORNEYS FOR DEFENDANT,
                                               SKIPLAGGED, INC.

10

APP 0201

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 13, 2023, a true and correct copy of the

foregoing was served via e-mail upon all counsel of record as indicated:

> Messrs. Dee J. Kelly, Jr. and Lars L. Berg
>  and Ms. Julia G. Wisenberg
> Kelly Hart & Hallman LLP
> 201 Main Street, Suite 2500
> Fort Worth, Texas 76102
>
> Ms. Bina Palnitkar
> Greenberg Traurig LLP
> 2200 Ross Avenue, Suite 5200
> Dallas, Texas 75201
>
> Mr. Nathan J. Muyskens
> Greenberg Traurig, LLP
> 2101 L Street, N.W., Suite 1000
> Washington, D.C. 20037
>
> Messrs. Aaron Z. Tobin and Kendal B. Reed
> Condon Tobin Sladek Thornton Nerenberg PLLC
> 8080 Park Lane, Suite 700
> Dallas, Texas 75231

> */s/William L. Kirkman*
> William L. Kirkman

11

# EXHIBIT 2

APP 0203

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**DECLARATION OF AKTARER ZAMAN SUBMITTED IN
OPPOSITION TO AMERICAN AIRLINES, INC.'S MOTION TO COMPEL**

I, Aktarer Zaman, declare under the pains and penalties of perjury as follows:

1.    At all relevant times in this case, I have been the Chief Executive Officer and founder of Defendant, Skiplagged, Inc. ("Skiplagged").    I submit this declaration in opposition to Plaintiff American Airlines, Inc.'s *Motion to Compel*.    The information contained in this declaration is true and correct based on my personal knowledge. I am above the age of eighteen years and competent to testify.

2.    Skiplagged is an entirely digital business meaning that all the companies documents and communications are electronically stored on our virtual servers hosted through Google Workspace and the Slack platform.    Skiplagged also maintains a database that contains customer information such as identities, route and fare information for inquiries made through the Skiplagged.com website.

3.    Skiplagged takes the protection of its confidential information and trade secrets very seriously and treats all its internal business documents and information as confidential. To my knowledge, all Skiplagged employees are required to sign a non-disclosure agreement that prevents them from disclosing Skiplagged's confidential information:

APP 0204

Both during and after the term of my employment, I will maintain in strict confidence and will not, without the prior express written consent of the Company, (i) directly or indirectly disclose or cause to be disclosed to any third party, including any person, firm, corporation or other entity or association, or (ii) use in any manner, except for the sole benefit of the Company and to the extent necessary to perform my obligations and duties on behalf of the Company, any Confidential Information.   "Confidential Information" means any proprietary or confidential information or trade secrets or know-how, whether or not it is in written or other tangible or permanent form: (a) obtained from or belonging to the Company or its affiliates; (b) received by the Company or its affiliates from any third party, which the Company designates or treats as being proprietary, private or confidential, whether or not owned by the Company; (c) concerning the Company's or the Company's affiliates' businesses, customers, suppliers and other business relationships or financial affairs; (d) relating to the techniques, formulation, organization, design, development, implementation, preparation and other operations, methods and accumulated experiences incidental to the sale and promotion of the products and services sold by the Company or its affiliates, including information which pertains to the solicitation of customers for the sale of such products, job order specifications, pricing structures or the Company's commission structure based thereon, or the services from time to time provided by the Company to its customers; (e) relating to marketing techniques, advertising, promotions, supplier, customer and prospect customer lists, mailing lists, concepts, ideas, know-how, trade secrets and/or research of the Company, whether prepared, conceived or developed by an employee of the Company (including myself) or received by the Company from a third party; and (f) which is identified as confidential by the Company or its affiliates, or that would be apparent to a reasonable person, familiar with the Company's businesses and the industries in which it operates, as information of a confidential or proprietary nature. I understand and acknowledge that this Confidential Information and the Company's ability to reserve it for the exclusive knowledge and use of the Company or its affiliates is of great competitive importance and commercial value to the Company, and that improper use or disclosure of the Confidential Information by me will cause irreparable harm to the Company, for which remedies at law will not be adequate.

      4.     For documents maintained on Google Workspace and for email, each employee only has access to his or her own materials and access beyond them is only on a need-to-know basis.   Similarly for Slack messages and the customer database, access is limited to employees on a need-to-know basis. With respect to Skiplagged's customer database, only selected customer service employees have access to respond to particular customer inquiries. As Skiplagged's founder and president, I am the only person associated with Skiplagged that has access to all Skiplagged documents and information. All Skiplagged employees are required to use

2

passwords and two-factor authentication to access Skiplagged's confidential information on the Google and Slack servers.   Skiplagged customers are also required to enter passwords and use two-factor authentication, or authenticate through their verified Apple, Google, or Facebook account.

       5.     I understand that American Airlines has sought production of a wide spectrum of Skiplagged internal documents and information, such as our computer code, our methodologies for aggregating and displaying information, our vendor terms and business strategies, our financial information and detailed customer information, all of which Skiplagged treats as confidential and some of which is trade secret. The disclosure of that information, without court-ordered protection against its use outside this litigation would be highly damaging to Skiplagged.

       6.     For example, Skiplagged's core business model is to provide users of Skiplagged.com comparative information about airline routing and pricing by aggregating information from multiple sources, including on-line travel agents, metasearch engines and other publicly available sources. To do this, Skiplagged has developed proprietary software and applications that run on Skiplagged.com.   Interested users come to Skiplagged.com to benefit from Skiplagged's publication of comparative route and fare information that is not available directly from carriers.   If Skiplagged's computer software and applications were made public through discovery, it would allow competitors to benefit from Skiplagged's innovation, but also could be used to disrupt Skiplagged's information sources to diminish the value of Skiplagged's business proposition.   If the Court requires Skiplagged to produce such trade secret information is should be on an attorneys-eyes-only basis.

3

7.     Similarly, I understand that American Airlines is seeking detailed information as to over one million Skiplagged customers, including personally identifiable information.   Skiplagged's customer lists are confidential, not publicly disclosed, and unknown to those outside of Skiplagged. Not only would the provision of that information to American Airlines without the customer consent violate the customers' expectation of privacy in their provision of information to Skiplagged, but also the disclosure of their details could be used by American Airlines to seek to disrupt Skiplagged's relationships with those customers or even used to punish those customers for using Skiplagged, as American Airlines has already publicly done. Indeed, with the customer information that American Airlines requested from Skiplagged, American Airlines could target those Skiplagged customers to seek to penalize them for using Skiplagged or dissuade them from using Skiplagged for future travel plans.   Again, if the Court requires Skiplagged to produce such confidential information it should only be under an attorneys-eyes only designation to protect Skiplagged and its customers.

8.     More broadly, to the extent American Airlines is seeking information about Skiplagged's revenues or relationships with vendors, that is all confidential and should be protected from use beyond this case. Skiplagged is privately held and none of its financial information is public.   Skiplagged has competitors in the business of providing travel information to internet users and facilitating ticketing and disclosure of Skiplagged's confidential financial and vendor information would cause Skiplagged competitive harm to the extent it could attract additional competitors or help existing competitors refine their offerings and pricing. Additionally, Skiplagged does not disclose to outside parties any confidential information pertaining to its contractual relationship with vendors.   Rather, Skiplagged maintains the confidentiality of such information. The disclosure of information concerning the terms of

4

contracts with vendors would provide a business advantage to competitors, which would be harmful to Skiplagged. Accordingly, Skiplagged needs protection against American Airlines' disclosure or use of Skiplagged's confidential information for any purposes beyond this litigation.

9.      Skiplagged stands ready to collect and produce responsive information once a protective order is entered.   However, the breadth of information requested by American Airlines would force Skiplagged to expend an exorbitant amount of time and money to search for, review, redact if necessary, and produce responsive material. Skiplagged has in excess of one million documents and email stored in Google platforms and has over 500,000 messages and 27,000 documents stored on the Slack platform.   In addition, Skiplagged maintains a database of customer information that contains tens of millions of data fields.

10.      Given all of Skiplagged's documents are electronically stored information, American Airlines' requests would require Skiplagged to run broad search terms likely to return hundreds of thousands if not millions of documents, email and Slack messages, comb through those to identify potentially responsive electronic documents related to, for example, travel agency contracts, digitally redact information as necessary, all before production.   Skiplagged has only seven employees, only one of which has access to the entire range of Skiplagged ESI, and it would unreasonably hinder Skiplagged's ability to conduct business if it had to devote such extensive time and efforts search through potentially tens of millions of data fields, review same, redact, and produce.

11.      As one example, American Airlines requests "PNR Data" for approximately 2,665,748 flight bookings facilitated by Skiplagged. American defined "PNR Data" to include 19 separate data points, including highly sensitive consumer information. This process alone would require Skiplagged to pull each of the 2,665,748 bookings, then gather over 50,649,212 data points,

5

redact highly sensitive third-party information, and produce the resulting tens of millions of documents. This would be a burdensome task on any business, but especially on Skiplagged, a small company of only seven employees.

"Pursuant to 28 USCS § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 15th day of December, 2023, in Singapore."

Aktarer Zaman

6