UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

    Plaintiff,

v.                                                     No. 4:23-cv-0860-P

SKIPLAGGED, INC.,

    Defendant.

## ORDER

Before the Court is Plaintiff's Motion for Issuance of Letters of Request under the Hague Convention. ECF No. 68.

Having considered the motion and applicable law, the Court **GRANTS** the motion and hereby **ISSUES** the letter of request attached to this Order.

**SO ORDERED** on this **28th day** of **February 2024.**

_Mark T. Pittman_
Mark T. Pittman
UNITED STATED DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## LETTER OF REQUEST TO THE MINISTRY OF JUSTICE
## OF THE UNITED KINGDOM

TO THE MINISTRY OF JUSTICE OF THE UNITED KINGDOM:

The United States District Court for the Northern District of Texas presents its compliments to the Ministry of Justice of the United Kingdom (the "Ministry of Justice") and, pursuant to *The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*, respectfully requests international judicial assistance to obtain oral testimony and documents from a private limited company located within your jurisdiction to be used as evidence in the above-captioned civil proceeding before this Court. In particular, this Court has determined that it would further the interests of justice if, by the proper and usual process of the Ministry of Justice of the United Kingdom, you summon or compel Skyscanner Limited ("Skyscanner") to give testimony upon oral examination and produce documents regarding the matters and issues identified under paragraphs 10–11 below. The applicant for these letters is American Airlines, Inc. ("American"), the plaintiff in the above-captioned case.

Skyscanner is incorporated and registered in England and Wales (with company number 04217916). Their registered office is located within the United Kingdom at: Skyscanner Limited,

1

Level 5, Ilona Rose House, Manette Street, London W1D 4AL. The testimony and documents sought from Skyscanner is intended for use at trial or in preparation for trial, and, in the view of this Court, is directly relevant to the parties' claims and defenses in the case.

This request is made with the understanding that it will in no way require Skyscanner to commit any offense, or to undergo a broader form of inquiry than it would if the litigation were conducted in the United Kingdom. The requesting Court is satisfied that the evidence sought to be obtained through this request is relevant and necessary and cannot reasonably be obtained by other methods. Because Skyscanner's participation is necessary for justice to be served in the above-captioned proceedings, this Court respectfully requests assistance from the Ministry of Justice of the United Kingdom.

1.     **SENDER**

United States District Court for the Northern District of Texas—Fort Worth Division
501 West 10th Street, Room 401
Fort Worth, Texas 76102–3673
United States of America

2.     **CENTRAL AUTHORITY OF THE REQUESTED STATE**

Ministry of Justice of the United Kingdom
The Senior Master, Royal Courts of Justice
For the attention of the Foreign Process Section
Room E16
Royal Courts of Justice
Strand
LONDON WC2A 2LL
England
Telephone: +44 203 936 8957 (please select the option for 'Foreign Process')
Email: foreignprocess.rcj@justice.gov.uk

3.     **PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED**

Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
KELLY HART & HALLMAN LLP

201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

4.      **SPECIFICATION OF THE DATE BY WHICH THE REQUESTED AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER OF REQUEST**

A response is requested as soon as reasonably possible. The reason for the urgency of this request is that, pursuant to this Court's Scheduling Order issued in this case, the deadline by which the parties are required to complete discovery and obtain evidence for use at trial is May 31, 2024, and the parties and witness will need to coordinate mutually convenient dates for the taking of testimony from the witness.

5.      **IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:**

      a.      **REQUESTING JUDICIAL AUTHORITY (Article 3(a))**

Honorable Judge Mark T. Pittman
United States District Court for the Northern District of Texas—Fort Worth Division
501 West 10th Street, Room 401
Fort Worth, TX 76102-3673
United States of America

      b.      **TO THE COMPETENT AUTHORITY OF (Article 3(a))**

United Kingdom

      c.      **NAMES OF THE CASE AND ANY IDENTIFYING NUMBER**

*American Airlines, Inc. v. Skiplagged, Inc.*, Case No. 4:23-cv-00860-P, in the United States District Court of the Northern District of Texas—Fort Worth Division.

6.      **NAMES AND ADDRESSES OF THE PARTIES AND THEIR REPRESENTATIVES (Article 3(b))**

      a.      *Plaintiff:*

American Airlines, Inc.
1 Skyview Drive
Fort Worth, Texas 76155

3

*Representatives:*

Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: 202-331-3100
Facsimile: 202-331-3101

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Greenberg Traurig, LLP's London office will also represent Plaintiff and provide any needed assistance.

GREENBERG TRAURIG, LLP
The Shard, Level 8
32 London Bridge Street
London SE1 9SG, United Kingdom
Telephone: +44 (0) 203.349.8700
Fax: +44 (0) 207.900.3632
https://www.gtlaw.com/en/locations/london

4

**b.**   *Defendant:*

Skiplagged, Inc.
41 E. 11th St., 9th Floor
New York, NY 10003
-or-
525 W. 28th St., # 1158
New York, NY 10001

*Representatives:*

William L. Kirkman
billk@kirkmanlawfirm.com
Preston B. Sawyer
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800

Aaron Z. Tobin
atobin@condontobin.com
Kendal B. Reed
kreed@condontobin.com
Abigail R.S. Campbell
acampbell@condontobin.com
CONDON TOBIN SLADEK THORNTON NERENBERG PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800

**7.**

**a.   NATURE OF THE PROCEEDINGS**

Breach of Contract; Tortious Interference; Trademark Infringement (15 U.S.C. § 1114); False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)); Copyright Infringement (17 U.S.C. § 101); and Request for Injunctive Relief.

**b.   SUMMARY OF COMPLAINT**

Skiplagged, Inc. owns and operates the website Skiplagged.com, an online travel agency and travel metasearch engine that allows users to search for and book/purchase flights, hotels, and

App'x 005

rental cars. Among other things, Skiplagged.com allows users to search for, identify, and purchase and book American flights directly on the Skiplagged.com website and/or by redirecting users to the websites of other online travel agencies to complete the purchase/booking of American flights. In doing so, Skiplagged also uses and displays on its website American's valuable trademarks, American's fare, schedule, inventory, ticketing, and flight data, and other protected information and content owned by American. However, only authorized agents of American are permitted to act on behalf of American, to use/display its protected data and content, and to issue tickets to passengers on its behalf. Skiplagged is not, and has never been, an agent for American, has never had authorization from American to use its valuable and protected data, content, or intellectual property, and has never been authorized by American to market, display, or sell American tickets or related flight services, or to otherwise act as American's agent. Yet, through its website, Skiplagged holds itself out as an agent of American by misappropriating, using, and displaying American's data and using American's trademarks in order to sell tickets for American flights. To do this, Skiplagged employs various electronic means—such as unique software, algorithms, code, programs, and other technical means—to access, interact with, and obtain data and content from AA.com, and then modifies and republishes the data on Skiplagged.com.

Based on the foregoing, American filed this lawsuit in August 2023, asserting claims against Skiplagged for breach of contract, tortious interference, trademark infringement, false designation of origin and unfair competition, copyright infringement, and injunctive relief.

### c.    SUMMARY OF DEFENSE

Skiplagged denies essentially all of the allegations in American's complaint and asserts various affirmative defenses to American's claims.

6

8.

    **a.**    **EVIDENCE TO BE OBTAINED OR OTHER JUDICIAL ACT TO BE PERFORMED (Article 3(d))**

It is requested that the testimony of Skyscanner obtained through document requests and oral deposition, under oath, and that such testimony be recorded and preserved by means of a stenographer and/or videographer.

    **b.**    **PURPOSE OF THE EVIDENCE OR JUDICIAL ACT SOUGHT**

American intends to use the testimony obtained from Skyscanner as evidence at trial to support American's claims and/or to refute Skiplagged's defenses.

**9.**    **IDENTITY AND ADDRESS OF THE PERSON TO BE EXAMINED (Article 3(e))**

Corporate representative of Skyscanner Limited
Level 5
Ilona Rose House
Manette Street
London W1D 4AL
England

**10.**    **STATEMENT OF THE SUBJECT MATTER ABOUT WHICH THE PERSON IS TO BE EXAMINED (Article 3(f))**

The corporate representative of Skyscanner should be examined on the following subjects related to Skiplagged and Skiplagged.com:

### I.    DEFINITIONS

1.    "American" means Plaintiff American Airlines, Inc.

2.    "API" or "American's API" refers to the application programming interface of AA.com.

3.    "American Data" means data, facts, statistics, and information and analysis related to fares, schedules and inventory of American and American-marketed flights and services, the distribution of American and American-marketed flights and services to passengers, customers, sub-agents and any other third parties, the identities, personnel and contact information for any third-parties, including sub-agents to whom American or American-marketed content or data was distributed, booking and ticketing of American and American-marketed flights and  services, including but not limited to Passenger Name Records (PNRs), any and information about American passengers and customers, , member

7

information relating to the AAdvantage® loyalty program, customer identification, fares, inventory, travel schedules, finances, financial projections, reports, bookings, tickets, cancellations, and trip modifications.

4.    "American's Marks" means those trademarks and copyrights belonging to American.

5.    "Skiplagged" shall mean, collectively or separately as appropriate, Skiplagged, Inc., any of Skiplagged employees, personnel, agents, sub-agents, representatives, consultants, legal counsel, accountants, predecessors, successors, subsidiaries, parents, assignees, assignors, affiliates, all past or present directors, officers, shareholders, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other persons acting under their control or on their behalf.

6.    "Communication" shall mean any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of any document.

7.    "Document" and "documents" are used herein in the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any written, recorded or tangible graphic matter, or any other means of preserving data, expression, facts, opinions, thought, images, or other information of any kind, including without limitation all non-identical copies, drafts, outtakes, subsequent versions, worksheets and proofs, however created or recorded, including without limitation audio tapes, annotations, calendars, correspondence, data or information of any kind recorded on compact disks, digital video diskettes, or any other type or form of diskettes for use with computers or other electronic devices, or any hard drive, diary entries, electronic recordings of any kind, e-mail, memoranda, notes, photographs, reports, telephone slips and logs, video cartridges and videotapes, and sites, databases, or other means of information storage or retrieval on the Internet or the World Wide Web.

8.    "Identify," "identification," "specify, "description," and "describe":

   a.   When used in referenced to an individual, shall mean to state their full name, known home and business address, telephone number, email address, present or last known occupation, employer, job title, and job description; if none of the aforementioned information is known, then the name, known home and business address, telephone number/s, and email address/es of all persons who may be able to provide all or part of the information.

   b.   When used in referenced to an organization, shall mean to state its full name, state of incorporation if applicable, the address of its principal place of business, telephone number/s, and email address/es.

   c.   When used in reference to a document, shall mean to state the type of document, its title, its date, the identity of its author/s and its recipient/s, any title and/or serial number

App'x 008

or file number appearing on the document, the identity of its present custodian, its present location, and a brief description of its subject matter. If any such document was, but no longer is, in your possession or control or in existence, state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred to others, or (iv) has been otherwise disposed of. In lieu of identifying a document, a copy of the document can be produced.

9.    "Including" shall mean including without limitation.

10.   "Method" means the rules, procedures, design, logic, and/or principles used or referenced in connection with a particular process, product, and/or system.

11.   "Person" shall mean any natural person, corporation, partnership, unincorporated association, joint venture, trust, estate, public or quasi-public entity, or any other legal entity, whether foreign or domestic.

12.   "PNR" means passenger name record.

13.   "Relating to," "relate to," "reflect," or "reflecting," when referring to any given subject matter, means any document or communication that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to, or is any way relevant to the particular subject matter identified.

14.   "Skyscanner" shall mean, collectively or separately as appropriate, Skyscanner Ltd, Skyscanner.com, Ctrip, Trip.com, any of Skyscanner's employees, personnel, agents, sub-agents, representatives, consultants, legal counsel, accountants, predecessors, successors, subsidiaries, parents, assignees, assignors, affiliates, all past or present directors, officers, shareholders, entities acting in joint venture or partnership with or having investment relationships with Skyscanner, and any other persons acting under their control or on their behalf.

## II.    DEPOSITION TOPICS

1.    Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto, between Skyscanner and Skiplagged that in any way, directly or indirectly, relates to American or American Data from August 1, 2018 to present.

2.    Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto, between Skyscanner and American that in any way, directly or indirectly, relates to American or American Data from August 1, 2018 to present.

3.    The data, information, systems, resources, or services that Skyscanner has provided or made available to Skiplagged, and the means, methods or processes by which Skyscanner has provided or made available such data or information.

9

4.    Skiplagged's communications or documents exchanged with Skyscanner referring in any way to:

   a.    accessing, obtaining, harvesting, scraping, extracting, or receiving American's Data, including but not limited to American's flight and fare data;

   b.    interacting with or accessing AA.com, American's API, or American's computer systems;

   c.    searching for or identifying American flights, itineraries, or fares to present to customers on Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com) (including to identify the best prices or to generate "hidden city" tickets);

   d.    deploying or utilizing automated bots or scripts to interact with AA.com or American's API;

   e.    republishing, displaying, distributing, providing access to, or otherwise using American's Data, including American's flight and fare data, on one of Skyscanner's websites (including Skyscanner.com);

   f.    booking or purchasing American flights on AA.com for Skiplagged users/customers;

   g.    charging users/customers fees for the purchase of American flights;

   h.    selling American flights;

   i.    communicating travel information to customers who purchase American flights or services through Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com); and

   j.    circumventing any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

5.    The identity of and Skyscanner's communications or documents exchanged with any third party referring in any way to:

   a.    accessing, obtaining, harvesting, scraping, extracting, or receiving American's Data, including but not limited to American's flight and fare data;

   b.    interacting with or accessing AA.com, American's API, or American's computer systems;

   c.    searching for or identifying American flights, itineraries, or fares to present to customers on Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com) (including to identify the best prices or to generate "hidden city" tickets);

10

    d.  deploying or utilizing automated bots or scripts to interact with AA.com or American's API;

    e.  republishing, displaying, distributing, providing access to, or otherwise using American's Data, including American's flight and fare data, on one of Skyscanner's websites (including Skyscanner.com);

    f.  booking or purchasing American flights on AA.com for Skiplagged users/customers;

    g.  charging users/customers fees for the purchase of American flights;

    h.  selling American flights;

    i.  communicating travel information to customers who purchase American flights or services through Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com); and

    j.  circumventing any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

6.    Skiplagged's communication or documents exchanged with Skyscanner referring to any of the following:

    a.  Skiplagged's efforts, business plans, decisions, or strategies, including communications, referring to any of the information described in Topic No. 4 and its subparts;

    b.  Skiplagged's research and development costs referring to or associated with any of the means, methods, processes, programs, techniques, or software described in Topic No. 4 and its subparts;

    c.  Skiplagged's revenues, cost of services sold, gross margins, and gross and net profits referring to American bookings made or purchased by customers through one of Skyscanner's websites (including Skyscanner.com) to which Skiplagged redirected the customer;

    d.  The names and identities of any third party other than Skyscanner whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights;

    e.  The process by which Skiplagged purchases and completes a customer's reservation on AA.com, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger and notifies the passenger of the booking;

    f.  Meetings and communications between Skiplagged and Skyscanner regarding, or referring in any way to, American, AA.com, the marketing or sale of American flights or services, and/or obtaining, providing, accessing, distributing, or using American's Data;

g. Skiplagged's relationships, agreements, communications, and/or dealings with any other travel agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other companies or websites, including how each one is (or was) involved in, contributes to, or otherwise facilitates the operation of Skiplagged.com, and any payments Skiplagged has received from or made to any such entity(ies), including but not limited to the following:

- Mondee.com (Mondee, Inc. and/or Mondee Holdings, Inc.)
- ExploreTrip.com (ExploreTrip, Inc.)
- LBGTravel.com (LBF Travel, Inc.)
- Kiwi.com (Kiwi.com, Inc. or Kiwi.com, s.r.o.)
- DestinaHolidays.com / Skybooker.com (Destina Holidays Ltd., Skybooker.com Ltd., and/or Destina Travel)
- Trip.com / US.Trip.com (Trip.com Travel Singapore Pte. Ltd.)
- Justfly.com (JustFly Inc.)
- Globehunters.com (A1 Travel Deals Limited d/b/a Globehunters)
- Travelmerry.com (Vyoma Travels Inc.)
- KissAndFly.com / Avia. KissAndFly.com (TTN GmbH)
- BudgetAir.com (Travix / BudgetAir)

7. The annual, monthly, and quarterly number of American bookings made or purchased on one of Skyscanner's websites (including Skyscanner.com) by customers that were re-directed or given a link to Skyscanner.com by, through, or from Skiplagged.com.

8. Each way that Skyscanner has purchased, booked, brokered, facilitated, acted as a conduit, or made a reservation for Skiplagged.com customers purchasing American flights.

9. The commissions, fees, or other financial compensation Skiplagged has received from or paid to Skyscanner in connection with the sale of American flights and any related goods or services to consumers, including the details, dates, number, amounts of such payments, and all related PNR data.

10. Skiplagged's communications or documents exchanged with Skyscanner reflecting any consumer complaints referring in any way to an American booking.

11. Skiplagged's communications or documents exchanged with Skyscanner reflecting any chargebacks or debit memos to Skiplagged or Skyscanner referring in any way to an American booking.

12. Skiplagged's communications or documents exchanged with Skyscanner discussing or referring to the use of American's Marks.

13. What actions, if any, has Skyscanner taken in terms of providing American information to Skiplagged since American filed the Skiplagged Lawsuit, *i.e., American Airlines, Inc. v. Skiplagged, Inc.*, Cause No. 4:23-cv-00860-P, filed in the United Stated District Court for the Northern District of Texas—Fort Worth Division.

14. All communications between Skyscanner and Skiplagged since American filed the Skiplagged Lawsuit, including communications between Skyscanner's counsel and counsel for Skiplagged.

15. Skyscanner's communications or documents referring to applications, forms, or submissions completed when signing up to be a subagent of Skyscanner and communications or documents related to Skyscanner's approval subagents.

16. Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto, between Skyscanner and Skiplagged that in any way directly or indirectly relates to any American booking and/or the distribution, display, access, use, modification, manipulation, change, servicing or marketing of American Data from August 1, 2018 to present.

17. Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto referring to any incentive Skyscanner provided, offered, planned, or considered to provide Skiplagged to motivate increased bookings.

18. Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to Skiplagged's access, use, redistribution, and remarketing of Skyscanner's Consolidator Fares or any other fare programs or commission arrangements with American.

19. Skyscanner's policies, procedures and practices in detail to instruct, train and inform Skiplagged concerning American's GTAA.

20. Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to efforts and measures taken to establish, implement, maintain, and use reasonable physical, technical, and administrative safeguards for American Data.

21. Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to Skyscanner's policies, procedures, and/or practices, and the implementation thereof, regarding compliance with GTAA, the Airlines Reporting Corporation, or the International Air Transport Association, including all communications with the Airlines Reporting Corporation, the International Air Transport Association or American.

22. Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to American bookings, ticketings and/or the distribution, access, use, servicing, managing or remarketing of American Data.

23. Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to any American booking and/or the distribution, display, access, use, modification, manipulation, change, servicing or marketing of American Data.

24. Skyscanner's communications or documents exchanged with Skiplagged describing the technical details of how Skyscanner distributes, provides access to, or otherwise permits

13

use of American Data to Skiplagged, or any other third party, including referring to search, display, booking, ticketing, or servicing, managing, altering or rebooking of an American PNR, booking or ticket.

25.    Skyscanner's communication or documents exchanged with Skiplagged discussing or referring to policies, procedures, practices, plans, or technical details of how Skiplagged uses, accesses, distributes, displays, manipulates, caches or markets American Data from Skyscanner.

26.    Skyscanner's communications or documents exchanged with Skiplagged reflecting any consumer complaints to Skyscanner or Skiplagged referring in any way to an American booking, including but not limited to complaints made to or received by any secretary of state, the Better Business Bureau, or Chambers of Commerce.

27.    Any complaints, demands, or legal requests Skyscanner has received referring in any way to Skiplagged.

28.    Any complaints, demands, or inquiries from governmental or administrative agencies referring in any way to Skiplagged.

29.    Skyscanner's communications or documents exchanged with Skiplagged reflecting any chargebacks or debit memos to Skyscanner or Skiplagged referring in any way to an American booking.

30.    Other consolidators agencies or third parties that distribute, provide access to, or otherwise permit use of American Data to Skiplagged, including referring to search, display, booking, ticketing, servicing, managing, altering, or rebooking of an American PNR, booking, or ticket.

31.    Skyscanner's communication or documents exchanged with Skiplagged discussing or referring to the use of American's Marks.

## 11.    DOCUMENTS OR OTHER PROPERTY TO BE INSPECTED (Article 3(g))

Skyscanner should produce documents responsive to the following requests:

### I.    DEFINITIONS

*See* Definitions listed above in paragraph 10, Section I.

### II.    INSTRUCTIONS

These requests shall apply to all items (e.g., documents or things) in your possession, custody, or control at the present time, as well as all items that come into your possession, custody, or control. If you know of the existence, past or present, of any items requested below, but are unable to produce such items because they are not presently in your possession, custody or control, you shall so state and shall provide a written statement setting forth:

14

App'x 014

      a. the identity of the item;
      b. the nature of the item (e.g., letter, memorandum, or chart);
      c. the identity of the person(s) who created (e.g., authored) the item;
      d. the identity of any person who received a copy of the item;
      e. the date of the item;
      f. a brief description of the subject matter of the item; and
      g. the identity of any person who has possession, custody, or control of the item.

1. If no documents are responsive to a particular request, state that no responsive documents exist.

2. For any responsive items (e.g., documents or things) that have been lost, destroyed, withheld from production, or redacted, for any reason, you shall provide a written statement setting forth:

      a. the identity of the item;
      b. the nature of the item (e.g., letter, memorandum, or chart);
      c. the identity of the persons(s) who created (e.g., authored) the item;
      d. the identity of any person who received a copy of the item;
      e. the date of the item;
      f. a brief description of the subject matter of the item; and
      g. the circumstances of the loss or destruction of the item or any fact, statute, rule, or decision upon which you rely in withholding or redacting the item.

3. All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as in the original.

The period applicable to each request below is from August 1, 2018 through present.

## III.   REQUESTS FOR PRODUCTION

1. Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto, between Skyscanner and Skiplagged that in any way, directly or indirectly, relates to American or American Data from August 1, 2018 to present.

2. Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto, between Skyscanner and American that in any way, directly or indirectly, relates to American or American Data from August 1, 2018 to present.

3. Documents and communications reflecting the data, information, systems, resources, or services that Skyscanner has provided or made available to Skiplagged, and the means,

methods or processes by which Skyscanner has provided or made available such data or information.

4.      Skiplagged's communications or documents exchanged with Skyscanner referring in any way to:

     a. accessing, obtaining, harvesting, scraping, extracting, or receiving American's Data, including but not limited to American's flight and fare data;

     b. interacting with or accessing AA.com, American's API, or American's computer systems;

     c. searching for or identifying American flights, itineraries, or fares to present to customers on Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com) (including to identify the best prices or to generate "hidden city" tickets);

     d. deploying or utilizing automated bots or scripts to interact with AA.com or American's API;

     e. republishing, displaying, distributing, providing access to, or otherwise using American's Data, including American's flight and fare data, on one of Skyscanner's websites;

     f. booking or purchasing American flights on AA.com for Skiplagged users/customers;

     g. charging users/customers fees for the purchase of American flights;

     h. selling American flights;

     i. communicating travel information to customers who purchase American flights or services through Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com); and

     j. circumventing any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

5.      Skyscanner's communications or documents exchanged with any third party in any way referring to:

     a. accessing, obtaining, harvesting, scraping, extracting, or receiving American's Data, including but not limited to American's flight and fare data;

     b. interacting with or accessing AA.com, American's API, or American's computer systems;

     c. searching for or identifying American flights, itineraries, or fares to present to customers on Skiplagged.com or redirected to one of Skyscanner's websites (including

16

Skyscanner.com) (including to identify the best prices or to generate "hidden city" tickets);

d.  deploying or utilizing automated bots or scripts to interact with AA.com or American's API;

e.  republishing, displaying, distributing, providing access to, or otherwise using American's Data, including American's flight and fare data, on one of Skyscanner's websites;

f.  booking or purchasing American flights on AA.com for Skiplagged users/customers;

g.  charging users/customers fees for the purchase of American flights;

h.  selling American flights;

i.  communicating travel information to customers who purchase American flights or services through Skiplagged.com or redirected to one of Skyscanner's websites (including Skyscanner.com); and

j.  circumventing any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

6.  Skiplagged's communication or documents exchanged with Skyscanner referring to any of the following:

a.  Skiplagged's efforts, business plans, decisions, or strategies, including communications, referring to any of the information described in Topic No. 4 and its subparts;

b.  Skiplagged's research and development costs referring to or associated with any of the means, methods, processes, programs, techniques, or software described in Topic No. 4 and its subparts;

c.  Skiplagged's revenues, cost of services sold, gross margins, and gross and net profits referring to American bookings made or purchased by customers through Skyscanner.com to which Skiplagged redirected the customer;

d.  The names and identities of any third party other than Skyscanner whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights;

e.  The process by which Skiplagged purchases and completes a customer's reservation on AA.com, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger and notifies the passenger of the booking;

f.  Meetings and communications between Skiplagged and Skyscanner regarding, or referring in any way to, American, AA.com, the marketing or sale of American flights

17

or services, and/or obtaining, providing, accessing, distributing, or using American's Data;

g.  Skiplagged's relationships, agreements, communications, and/or dealings with any other travel agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other companies or websites, including how each one is (or was) involved in, contributes to, or otherwise facilitates the operation of Skiplagged.com, and any payments Skiplagged has received from or made to any such entity(ies), including but not limited to the following:

- Mondee.com (Mondee, Inc. and/or Mondee Holdings, Inc.)
- ExploreTrip.com (ExploreTrip, Inc.)
- LBGTravel.com (LBF Travel, Inc.)
- Kiwi.com (Kiwi.com, Inc. or Kiwi.com, s.r.o.)
- DestinaHolidays.com / Skybooker.com (Destina Holidays Ltd., Skybooker Ltd., and/or Destina Travel)
- Trip.com / US.Trip.com (Trip.com Travel Singapore Pte. Ltd.)
- Justfly.com (JustFly Inc.)
- Globehunters.com (A1 Travel Deals Limited d/b/a Globehunters)
- Travelmerry.com (Vyoma Travels Inc.)
- KissAndFly.com / Avia. KissAndFly.com (TTN GmbH)
- BudgetAir.com (Travix / BudgetAir)

7.  Documents and communications reflecting the annual, monthly, and quarterly number of American bookings made or purchased on Skyscanner.com by customers that were re-directed or given a link to Skyscanner.com by, through, or from Skiplagged.com.

8.  Documents and communications reflecting each way that Skyscanner.com has purchased, booked, brokered, facilitated, acted as a conduit, or made a reservation for Skiplagged.com customers purchasing American flights.

9.  Documents and communications reflecting the commissions, fees, or other financial compensation Skiplagged has received from or paid to Skyscanner.com in connection with the sale of American flights and any related goods or services to consumers, including the details, dates, number, amounts of such payments, and all related PNR data.

10.  Skiplagged's communications or documents exchanged with Skyscanner reflecting any consumer complaints referring in any way to an American booking.

11.  Skiplagged's communications or documents exchanged with Skyscnaner reflecting any chargebacks or debit memos to Skiplagged or Skyscanner referring in any way to an American booking.

12.  Skiplagged's communications or documents exchanged with Skyscanner discussing or referring to the use of American's Marks.

13.   Documents and communications reflecting what actions, if any, Skyscanner has taken in terms of providing American information to Skiplagged since American filed the Skiplagged Lawsuit, *i.e.*, *American Airlines, Inc. v. Skiplagged, Inc.*, Cause No. 4:23-cv-00860-P, filed in the United Stated District Court for the Northern District of Texas—Fort Worth Division.

14.   All communications between Skyscanner and Skiplagged since American filed the Skiplagged Lawsuit, including communications between Skyscanner's counsel and counsel for Skiplagged.

15.   Skyscanner's communications or documents referring to applications, forms, or submissions completed when signing up to be a subagent of Skyscanner and communications or documents related to Skyscanner's approval subagents.

16.   Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto, between Skyscanner and Skiplagged that in any way directly or indirectly relates to any American booking and/or the distribution, display, access, use, modification, manipulation, change, servicing or marketing of American Data from August 1, 2018 to present.

17.   Agreements, including amendments, supplemental agreements, side letters, or affiliate program documents that constitute an agreement, including any drafts thereof and comments related thereto referring to any incentive Skyscanner provided, offered, planned, or considered to provide Skiplagged to motivate increased bookings.

18.   Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to Skiplagged's access, use, redistribution, and remarketing of Skyscanner's Consolidator Fares or any other fare programs or commission arrangements with American.

19.   Documents and communications reflecting Skyscanner's policies, procedures and practices in detail to instruct, train and inform Skiplagged concerning American's GTAA.

20.   Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to efforts and measures taken to establish, implement, maintain, and use reasonable physical, technical, and administrative safeguards for American Data.

21.   Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to Skyscanner's policies, procedures, and/or practices, and the implementation thereof, regarding compliance with GTAA, the Airlines Reporting Corporation, or the International Air Transport Association, including all communications with the Airlines Reporting Corporation, the International Air Transport Association or American.

22.   Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to American bookings, ticketings and/or the distribution, access, use, servicing, managing or remarketing of American Data.

19

23.  Skyscanner's communications or documents exchanged with Skiplagged discussing or referring to any American booking and/or the distribution, display, access, use, modification, manipulation, change, servicing or marketing of American Data.

24.  Skyscanner's communications or documents exchanged with Skiplagged describing the technical details of how Skyscanner distributes, provides access to, or otherwise permits use of American Data to Skiplagged, or any other third party, including referring to search, display, booking, ticketing, or servicing, managing, altering or rebooking of an American PNR, booking or ticket.

25.  Skyscanner's communication or documents exchanged with Skiplagged discussing or referring to policies, procedures, practices, plans, or technical details of how Skiplagged uses, accesses, distributes, displays, manipulates, caches or markets American Data from Skyscanner.

26.  Skyscanner's communications or documents exchanged with Skiplagged reflecting any consumer complaints to Skyscanner or Skiplagged referring in any way to an American booking, including but not limited to complaints made to or received by any secretary of state, the Better Business Bureau, or Chambers of Commerce.

27.  Documents and communications reflecting any complaints, demands, or legal requests Skyscanner has received referring in any way to Skiplagged.

28.  Documents and communications reflecting any complaints, demands, or inquiries from governmental or administrative agencies referring in any way to Skiplagged.

29.  Skyscanner's communications or documents exchanged with Skiplagged reflecting any chargebacks or debit memos to Skyscanner or Skiplagged referring in any way to an American booking.

30.  Documents and communications identifying other consolidators, agencies, or third parties that distribute, provide access to, or otherwise permit use of American Data to Skiplagged, including referring to search, display, booking, ticketing, servicing, managing, altering, or rebooking of an American PNR, booking, or ticket.

31.  Skyscanner's communication or documents exchanged with Skiplagged discussing or referring to the use of American's Marks.

**12.   ANY REQUIREMENT THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION AND ANY SPECIAL FORM TO BE USED (Article 3(h))**

The deposition testimony should be given under oath or affirmation, or in the alternative, the witness should be instructed of the consequences of giving untruthful or false answers under the laws of the United Kingdom. It is also requested that an audio-visual and written record of the testimony be taken, with a videographer and reporter/stenographer to be provided by American. In the event the

20

evidence cannot be taken in the manner requested, it should be taken in such manner as provided by the laws of the United Kingdom.

13.    **SPECIAL METHODS OR PROCEDURE TO BE FOLLOWED (Articles 3(i) and 9)**

The examination of the corporate representative of Skyscanner shall be conducted pursuant to the discovery rules as provided for in the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the laws of the United Kingdom. It is further requested that: (i) the examination be taken orally; (ii) the examination be taken before a stenographer and videographer provided by American; (iii) the videographer be permitted to record the examination by audiovisual means; (iv) the stenographer be allowed to record a verbatim transcript of the examination; (v) the examination be conducted in English; (vi) the witness be examined for no more than seven hours; (vii) the witness be examined as soon as possible; and (viii) attorneys from the law firms Kelly Hart & Hallman LLP and Greenberg Traurig LLP, acting as legal representatives for American, be permitted to conduct the oral examination.

In the event that the evidence cannot be taken in accordance with some or all of the procedures described above, it is requested that the testimony be taken in such manner as provided by the applicable laws of the United Kingdom for the formal taking of testimonial evidence.

14.    **REQUEST FOR NOTIFICATION OF THE TIME AND PLACE FOR THE EXECUTION OF THE REQUEST AND IDENTITY AND ADDRESS OF ANY PERSON TO BE NOTIFIED (Article 7)**

Please notify the following persons regarding the time and place for the execution of the Request:

> Dee J. Kelly, Jr.
> State Bar No. 11217250
> dee.kelly@kellyhart.com
> Lars L. Berg
> State Bar No. 00787072
> lars.berg@kellyhart.com
> Julia G. Wisenberg
> State Bar No. 24099146

App'x 021

julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: 202-331-3100
Facsimile: 202-331-3101

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

William L. Kirkman
billk@kirkmanlawfirm.com
Preston B. Sawyer
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800

Aaron Z. Tobin
atobin@condontobin.com
Kendal B. Reed
kreed@condontobin.com
Abigail R.S. Campbell
acampbell@condontobin.com
CONDON TOBIN SLADEK THORNTON NERENBERG PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800

15. **REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER OF REQUEST (Article 8)**

None requested.

16. **SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE REQUESTING STATE (Article 11(b))**

Under the laws of the United States, the witness may refuse to give testimony that calls for the disclosure of any confidential communication between him and his counsel that was made in connection with a request for legal advice. This privilege is known as the attorney-client privilege. The witness may also refuse to answer a question if the answer would subject him to a real and appreciable danger of criminal liability in the U.S. This privilege is known as the privilege against criminal self-incrimination. If any testimony is withheld on either of these grounds, a statement to that effect must be made at the time of the taking of testimony.

17. **THE FEES AND COSTS INCURRED WHICH ARE REIMBURSABLE UNDER THE SECOND PARAGRAPH OF ARTICLE 14 OR UNDER ARTICLE 26 OF THE CONVENTION WILL BE BORNE BY:**

Plaintiff American Airlines, Inc.


**DATE OF REQUEST**: _2 - 28_____, 2024


_Mark T. Pittman_ (signature)
_____
HON. MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

23