IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**APPENDIX TO PLAINTIFF AMERICAN AIRLINES, INC.'S
BRIEF IN SUPPORT OF ITS MOTION TO COMPEL AND FOR SANCTIONS**

---

In support of Plaintiff American Airlines, Inc.'s ("American") Brief in Support of its

Motion to Compel and for Sanctions, American submits the following materials:

| <u>EX.</u> | <u>DESCRIPTION</u> | <u>PAGE NOS.</u> |
|---|---|---|
| A | Declaration of J. Austin Franklin | App. 001–03 |
| A-1 | Plaintiff American Airlines, Inc.'s First Set of Requests for Production to Defendant Skiplagged, Inc. | App. 004–21 |
| A-2 | Plaintiff American Airlines, Inc.'s First Set of Interrogatories to Defendant Skiplagged, Inc. | App. 022–33 |
| A-3 | Defendant Skiplagged, Inc.'s Second Amended Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Requests for Production | App. 034–49 |
| A-4 | Defendant Skiplagged, Inc.'s Third Amended Objections and Responses to Plaintiff's First Set of Interrogatories | App. 050–61 |
| A-5 | Transcript of Deposition of Daniel Gellert, Chief Executive Officer of Defendant Skiplagged, Inc. ("Skiplagged") | App. 062–119 |
| A-6 | Excerpt of Exemplar Report 1 (Bates-labeled SKP00081039) | App. 120–34 |
| A-7 | Emails between counsel for American, Austin Franklin, and counsel for Skiplagged, Abigail Campbell | App. 135–38 |

| **EX.** | **DESCRIPTION** | **PAGE NOS.** |
|:---:|---|:---:|
| A-8 | Exemplar Report 1 (Bates-labeled SKP00081039) | *Submitted Electronically* |
| A-9 | Exemplar Report 2 (Bates-labeled SKP00081151) | *Submitted Electronically* |
| A-10 | Exemplar Report 3 (Bates-labeled SKP00081157) | *Submitted Electronically* |

Dated: April 5, 2024

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
State Bar No. 24075853
austin.franklin@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 5, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF J. AUSTIN FRANKLIN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TARRANT | § |

1.      My name is J. Austin Franklin. I am over the age of 21 and competent to make this declaration as authorized under 28 U.S.C. § 1746. My business address is 201 Main Street, Suite 2500, Fort Worth, Texas 76102.

2.      I make this declaration in support of Plaintiff American Airlines, Inc.'s ("American") Motion to Compel and for Sanctions.

3.      Attached as Exhibit A-1 is a true and correct copy of Plaintiff American Airlines, Inc.'s First Set of Requests for Production to Defendant Skiplagged, Inc.

4.      Attached as Exhibit A-2 is a true and correct copy of Plaintiff American Airlines, Inc.'s First Set of Interrogatories to Defendant Skiplagged, Inc.

5.      Attached as Exhibit A-3 is a true and correct copy of Defendant Skiplagged, Inc.'s Second Amended Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Requests for Production.

6.      Attached as Exhibit A-4 is a true and correct copy of Defendant Skiplagged, Inc.'s Third Amended Objections and Responses to Plaintiff's First Set of Interrogatories.

7.      Attached as Exhibit A-5 is a true and correct copy of the transcript of deposition of Daniel Gellert, Chief Executive Officer of Defendant Skiplagged, Inc.

8.      Attached as Exhibit A-6 is a true and correct copy of an excerpt of Exemplar Report 1 (Bates-labeled SKP00081039).

9.      Attached as Exhibit A-7 is a true and correct copy of emails exchanged between counsel for American, J. Austin Franklin, and counsel for Skiplagged, Abigail Campbell.

10.     American is submitting electronically, via a flash drive, as Exhibit A-8 a true and correct copy of Exemplar Report 1 (Bates-labeled SKP00081039).

11.     American is submitting electronically, via a flash drive, as Exhibit A-9 a true and correct copy of Exemplar Report 2 (Bates-labeled SKP00081151).

12.     American is submitting electronically, via a flash drive, as Exhibit A-10 a true and correct copy of Exemplar Report 3 (Bates-labeled SKP00081157).

13.     I declare under penalty of perjury that the foregoing is true and correct. Executed on April 5, 2024.

_____
J. Austin Franklin

# Exhibit A-1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff American Airlines, Inc. ("American") hereby serves its First Set of Requests for Production to Defendant Skiplagged, Inc. ("Skiplagged"), as follows.

## INSTRUCTIONS

1.      Skiplagged is instructed to produce for inspection and copying the documents and things within its possession, custody, or control as described in the requests set forth herein within thirty (30) days after service hereof, in accordance with Rule 34.

2.      These requests shall apply to all items (e.g., documents or things) in your possession, custody, or control at the present time, as well as all items that come into your possession, custody, or control. If you know of the existence, past or present, of any items requested below, but are unable to produce such items because they are not presently in your possession, custody or control, you shall so state and shall provide a written statement setting forth:

  a.  the identity of the item;
  b.  the nature of the item (e.g., letter, memorandum, or chart);

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.** 3818255_1.DOCX

**PAGE 1**

App'x 005

      c.  the identity of the person(s) who created (e.g., authored) the item;
      d.  the identity of any person who received a copy of the item;
      e.  the date of the item;
      f.  a brief description of the subject matter of the item; and
      g.  the identity of any person who has possession, custody, or control of the item.

3.      If you have no documents that are responsive to a particular request, state that no responsive documents exist.

4.      For any responsive items that have been lost, destroyed, withheld from production, or redacted, for any reason, you shall provide a written statement setting forth:

      a.  the identity of the item;
      b.  the nature of the item (e.g., letter, memorandum, or chart);
      c.  the identity of the person(s) who created (e.g., authored) the item;
      d.  the identity of any person who received a copy of the item;
      e.  the date of the item;
      f.  a brief description of the subject matter of the item; and
      g.  the circumstances of the loss or destruction of the item or any fact, statute, rule, or decision upon which you rely in withholding or redacting the item.

5.      If you decline to produce any document or part thereof based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient to (a) disclose the facts upon which you rely in asserting your claim; (b) permit the grounds and reasons for withholding the information to be unambiguously identified; and (c) permit the information withheld to be unambiguously identified.

6.      All documents requested are to be produced in the same file or other organizational environment in which they are maintained. For example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as in the original.

7.      You shall keep and produce a record of the source of each document produced, which shall include the name and location of the file where each document was located and the name of the person, group, or department having possession, custody, or control of each document.

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**        **PAGE 2**
3818255_1.DOCX

App'x 006

8.    It is requested that all information, documents, and things, including, without limitation, electronically-stored information, that might relate to or have an impact on the subject matter of this litigation, including information, documents, and things responsive to these discovery requests, be preserved and that you immediately cease any ongoing process of removal, discarding, and/or destruction of such information and documents.

9.    For purposes of interpreting or construing the scope of these discovery requests, all terms shall be given their most inclusive interpretation unless otherwise specifically limited by the language of an individual request.  This includes, without limitation, the following:

     a.    construing "and" and "or" in the disjunctive or conjunctive, as necessary to make the request more inclusive and to bring within the scope of the discovery request any information or documents that might otherwise be construed to be outside of its scope;

     b.    construing "any" and "all" to mean "any and all," as necessary, to make the request more inclusive

     c.    construing the singular form of the word to include the plural, and the plural form to include the singular;

     d.    construing the past tense of a verb to include the present tense and the present tense to include the past tense;

     e.    construing the masculine to include the feminine and, *vice versa;* and

     f.    construing the term "including" to mean "including but not limited to."

10.    These discovery requests are intended to include all documents, things, and/or information in your possession, custody, or control, whether directly or indirectly.  A document or information is deemed to be within your possession, custody, or control if:

     g.    it is within your actual knowledge or possession;

     h.    it is in your physical control or ownership;

     i.    it is within the knowledge, custody, or control of any other person or entity and you could obtain it upon conducting a reasonable inquiry; or

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                          PAGE 3
3818255_1.DOCX

App'x 007

    j.    it is in the physical control of any other person, and you:

        i.    own the document in whole or in part;

        ii.    have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; or

        iii.    have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so.

11.    These discovery requests are continuing under Fed. R. Civ. P. 26(e). If any document, information, and/or other material responsive to any request comes to the attention, possession, custody, or control of you, your associates, or your attorneys subsequent to serving your response(s), you are required promptly to furnish said additional documents or information.

12.    Unless otherwise specified in a particular request below, the relevant time period for purposes of these Requests is **from August 1, 2018 to the present**.

**DEFINITIONS**

1.    "**American**" means and refers to Plaintiff American Airlines, Inc.

2.    "**Skiplagged**" means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

3.    "**You**," "**your**," or "**Defendant**" means and refers to Skiplagged.

4.    "**American's Content**" means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**        **PAGE 4**
3818255_1.DOCX

App'x 008

or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

5.     **"American Bookings"** means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

6.     **"American-Skiplagged Customer"** means and refers to any person who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether such person completed the booking on Skiplagged.com, through another agency or on another website or platform to which Skiplagged provided a direct link, transferred, referred, or redirected the person.

7.     **"AA.com Use Agreement"** means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

8.     **"American's Conditions of Carriage"** means and refers to the Conditions of Carriage    agreement    between    American    and    its    passengers,    available    at

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                **PAGE 5**
3818255_1.DOCX

App'x 009

https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

9.      **"API"** or **"American's API"** refers to the application programming interface of AA.com.

10.      **"AA.com"** refers to American's public-facing front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

11.      **"Travel carrier(s)"** refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

12.      **"Travel Agency"** means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

13.      **"Person"** or **"persons"** mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.      **"PNR Data"** refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 6
3818255_1.DOCX

App'x 010

information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

15. **"Communication"** or **"communications"** shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in nay nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

16. **"Document"** and **"documents"** are used herein in the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any written, recorded or tangible graphic matter, or any other means of preserving data, expression, facts, opinions, thought, images, or other information of any kind, including without limitation all

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF**
**REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**                     **PAGE 7**
**3818255_1.DOCX**

App'x 011

non-identical copies, drafts, outtakes, subsequent versions, worksheets and proofs, however created or recorded, including without limitation audio tapes, annotations, calendars, correspondence, data or information of any kind recorded on compact disks, digital video diskettes, or any other type or form of diskettes for use with computers or other electronic devices, or any hard drive, diary entries, electronic recordings of any kind, e-mail, memoranda, notes, photographs, reports, telephone slips and logs, video cartridges and videotapes, and sites, databases, or other means of information storage or retrieval on the Internet or World Wide Web.

These terms are to be interpreted broadly to include documents stored in any medium and specifically include electronically stored information ("ESI") such as e-mail and documents maintained in electronic form on Delta's websites, servers, and stand-alone computers and hard drives. ESI includes, but is not be limited to, text files (including word processing documents), spreadsheets, e-mail files and information concerning e-mail (including all metadata fields, logs of e-mail history and usage, header information and "deleted" files including all potentially relevant data contained in free or slack space), Internet history files and preferences, graphical image format ("GIF"), tagged image file format ("TIFF"), portable document format ("PDF") files, databases, contacts, tasks, calendar and scheduling information, computer system activity logs, all file fragments, and backup files containing Electronic Data.

17.     "**Relating to**," "**related to**," "**concerning**," or "**referencing**" mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the request.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 8
3818255_1.DOCX

App'x 012

18.     **"This lawsuit"** refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas, Fort Worth Division.

19.     **"Skiplagged's Motion to Dismiss"** refers to *Skiplagged's Motion to Dismiss American's First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. 21].

20.     **"Zaman's Declaration"** refers to the *Declaration of Aktarer Zaman Submitted in Support of Skiplagged's Motion to Dismiss*, filed on October 2, 2023 [Dkt. 22].

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**   Documents relating to or evidencing Skiplagged's corporate structure, locations, organization, formation, management, ownership, shareholders, and investors.

**REQUEST FOR PRODUCTION NO. 2:**   All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**REQUEST FOR PRODUCTION NO. 3:**   All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**REQUEST FOR PRODUCTION NO. 4:**   All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 5:**   All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the

customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**REQUEST FOR PRODUCTION NO. 6:**   Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, including all PNR Data for all such passengers.

**REQUEST FOR PRODUCTION NO. 7:**   All communications between AA.com and Skiplagged relating to any purchases or sales of American flights or services by Skiplagged.

**REQUEST FOR PRODUCTION NO. 8:**   All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

    (a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

    (b) interact with or access AA.com, American's API, or American's computer systems;

    (c) search for or identify American flights, itineraries, and fares to present to customers on Skiplagged.com (including to identify the best prices and/or to generate "hidden city" tickets);

    (d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

    (e) republish, display, distribute, provide access to, or otherwise use American's Content, including but not limited to American's flight and fare data, on Skiplagged.com;

    (f) book or purchase American flights on AA.com for Skiplagged users/customers;

    (g) charge users/customers fees for the purchase of American flights

    (h) sell American flights;

    (i) communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

    (j) circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

**REQUEST FOR PRODUCTION NO. 9:**   Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    **PAGE 10**
3818255_1.DOCX

App'x 014

**REQUEST FOR PRODUCTION NO. 10:** Documents and communications evidencing all research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Request No. 8 and its subparts.

**REQUEST FOR PRODUCTION NO. 11:** Documents and communications relating to Skiplagged's advertisement, promotion, or sale of American products or services.

**REQUEST FOR PRODUCTION NO. 12:** Documents and communications relating to Skiplagged obtaining, or attempting to obtain, American's Content, including but not limited to American fare, schedule or inventory data.

**REQUEST FOR PRODUCTION NO. 13:** Documents and communications relating to, discussing, or referencing American, AA.com, the AA.com Use Agreement, American's Conditions of Carriage, any other rules or policies of American, Skiplagged's use of American's Content, or Skiplagged's sale of tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 14:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or understanding that Skiplagged is not authorized by American to access, distribute, display or use American's content on Skiplagged.com or to book, ticket or sell tickets for American-marketed flights.

**REQUEST FOR PRODUCTION NO. 15:** Documents and communications relating to or discussing the sale of tickets on American-marketed flights or services by any Travel Agencies or travel metasearch engines other than Skiplagged.

**REQUEST FOR PRODUCTION NO. 16:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness of other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or websites having authorization from, or agreements with, American to access or distribute American's fare, schedule and inventory content, to market or advertise American-marketed flights or to book, ticket or sell tickets on American-marketed flights, use American's Content, or otherwise act as an agent of American.

**REQUEST FOR PRODUCTION NO. 17:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness that American revoked Kiwi.com's right and authorization to access or distribute American fare, schedule and inventory content, or to book, ticket or sell tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 18:** All communications between Skiplagged and any other third party discussing, mentioning, or relating in any way to American, the booking, ticketing or sale of tickets on American-marketed flights, or the distribution, publication, access, or use of American's Content.

**REQUEST FOR PRODUCTION NO. 19:** Documents and communications relating to any meetings or discussions involving any Skiplagged employees, directors, board members, officers, investors, or shareholders where American or AA.com was discussed, addressed, mentioned.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 11
3818255_1.DOCX

App'x 015

**REQUEST FOR PRODUCTION NO. 20:** Documents and communications relating to Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its marketing and sale of tickets on American-marketed flights and/or its use of American's Content, including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of tickets on American-marketed flights or services; (ii) the benefits of or reasons for marketing, offering, booking, ticketing, purchasing, and/or selling tickets on American-marketed flights or services; and (iii) consumer demand or preferences for booking travel with American.

**REQUEST FOR PRODUCTION NO. 21:** Presentations, slide decks, handouts, or other presentation materials concerning Skiplagged's business plans, strategies, technology, or platform—both final and draft versions—for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

**REQUEST FOR PRODUCTION NO. 22:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on or through Skiplagged.com since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 23:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on any other travel websites by any customers who were transferred, referred or re-directed to such travel websites by or through Skiplagged.com since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 24:** Documents and communications relating to or reflecting any complaints by any customers or passengers who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether booked directly on Skiplagged.com or on another website to which Skiplagged transferred, referred or redirected the customer to complete the booking.

**REQUEST FOR PRODUCTION NO. 25:** Communications with any American-Skiplagged Customers regarding flight changes, delays, cancellations, refunds, customer service issues, baggage fees, service fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

**REQUEST FOR PRODUCTION NO. 26:** All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

**REQUEST FOR PRODUCTION NO. 27:** All documents and financials identifying or reflecting Skiplagged's total revenues, gross margins, and net profits relating to or resulting from Skiplagged's sale of American flights, including taking into account any/all additional fees of any kind charged to customers in connection with the sales of American flights (e.g., service fees, baggage fees, or other fees).

**REQUEST FOR PRODUCTION NO. 28:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to American.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 12
3818255_1.DOCX

App'x 016

**REQUEST FOR PRODUCTION NO. 29:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to travel to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 30:** Communications between Skiplagged and any third-party regarding American, AA.com, Skiplagged's marketing or sale of tickets on American-marketed flights or services, Skiplagged's use of American's Content on Skiplagged.com, Skiplagged's efforts to obtain data or information from AA.com, or American's claims or allegations in this lawsuit.

**REQUEST FOR PRODUCTION NO. 31:** All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

**REQUEST FOR PRODUCTION NO. 32:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has received from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of American flights.

**REQUEST FOR PRODUCTION NO. 33:** All documents, communications, and agreements concerning Skiplagged's payment of or obligation to pay commissions, fees, or other financial compensation to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems) in connection with the sale of commercial flights to consumers.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has made to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies) in connection with the sale of tickets on American-marketed flights.

**REQUEST FOR PRODUCTION NO. 35:** Any settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any carriers' flights or services or use of carriers' flight and fare information, trademarks, or data/content.

**REQUEST FOR PRODUCTION NO. 36:** All complaints, legal notices, demand letters, cease and desist letters, and any other similar correspondence that Skiplagged has received from any other person or entity, including any airline, travel carrier, travel service provider, Travel Agency, travel metasearch engine, or governmental, regulatory, or administrative agency, relating to Skiplagged's operations or the operation of Skiplagged.com.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                PAGE 13
3818255_1.DOCX

App'x 017

**REQUEST FOR PRODUCTION NO. 37:** Communications with any American-Skiplagged Customers regarding any issues, problems, or troubles that the passenger encountered during her travel with American, and any documents relating thereto.

**REQUEST FOR PRODUCTION NO. 38:** Documents and communications with customers and any internal documents or communications relating to, or concerning issues arising from, Skiplagged's warnings and/or instructions to purchasers of "hidden-city" tickets, including about what the passengers should do to avoid problems or what they should say to airline staff.

**REQUEST FOR PRODUCTION NO. 39:** Any press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other travel carriers.

**REQUEST FOR PRODUCTION NO. 40:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 41:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 42:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else," as stated on Skiplagged.com.

**REQUEST FOR PRODUCTION NO. 43:** Documents and communications relating to or supporting Skiplagged's statements on its website regarding "Why are we doing this?", including the specific reasons described therein.

**REQUEST FOR PRODUCTION NO. 44:** All documents, communications, and agreements relating to Skiplagged's terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, the collection, protection, and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

**REQUEST FOR PRODUCTION NO. 45:** Documents and communications referring or relating to the Airlines Reporting Corporation ("ARC") or the International Air Transport Association ("IATA"), including but not limited to documents concerning Skiplagged's consideration, evaluation, decision, or reasons for deciding whether or not to apply to become an accredited ARC/IATA travel agency.

**REQUEST FOR PRODUCTION NO. 46:** Any documents or communications relating to or evidencing any confusion or misunderstanding by American-Skiplagged Customers, after the time of their purchase of a ticket on an American-marketed flight, regarding Skiplagged's authority/ability or lack thereof to address or resolve any matters relating to their travel or booking.

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**                    **PAGE 14**
**3818255_1.DOCX**

App'x 018

**REQUEST FOR PRODUCTION NO. 47:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers who previously purchased travel or lodging on Skiplagged.com with a Texas address.

**REQUEST FOR PRODUCTION NO. 48:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers specifically identifying or offering "deals" or promotions on hotels in Texas or flights to, from, or within Texas.

**REQUEST FOR PRODUCTION NO. 49:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**REQUEST FOR PRODUCTION NO. 50:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**REQUEST FOR PRODUCTION NO. 51:** Documents relating to the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and the means or processes by which Skiplagged obtains such information.

**REQUEST FOR PRODUCTION NO. 52:** All communications between Skiplagged and any of the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration).

**REQUEST FOR PRODUCTION NO. 53:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases made by consumers that Skiplagged.com redirected to such other Travel Agency or metasearch engine.

**REQUEST FOR PRODUCTION NO. 54:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency or travel metasearch engine.

**REQUEST FOR PRODUCTION NO. 55:** Documents and communications relating to or supporting Skiplagged's statement that it "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.                    PAGE 15
3818255_1.DOCX

App'x 019

**REQUEST FOR PRODUCTION NO. 56:** All documents that you referred to or relied upon in answering any Interrogatory or Request for Admission served by American.

Dated: October 12, 2023

Respectfully submitted,

/s/ Lars L. Berg
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Tyson Lies
State Bar No. 24087927
tyson.lies@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2023, I served the foregoing document *via hand delivery* to opposing counsel below in accordance with the Federal Rules of Civil Procedure:

> William L. Kirkman
> Kirkman Law Firm, PLLC
> 201 Main Street, Suite 1160
> Fort Worth, Texas  76102

*/s/ Lars L. Berg*
Lars L. Berg

**PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION TO DEFENDANT SKIPLAGGED, INC.**
3818255_1.DOCX

**PAGE 17**

App'x 021

# Exhibit A-2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANT SKIPLAGGED, INC.

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff American Airlines, Inc. ("American") hereby serves its First Set of Interrogatories to Defendant Skiplagged, Inc. ("Skiplagged"), as follows.

### INSTRUCTIONS

1.     Skiplagged is instructed to answer each of the below interrogatories separately and in writing, and under oath, within thirty (30) days after service hereof, in accordance with Rule 33.

2.     To the extent Skiplagged objects to any of the Interrogatories herein, the reasons for Skiplagged's objection(s) shall be stated and described with specificity. Notwithstanding any objection(s) to, you should respond to each Interrogatory to the extent you are able.

3.     Skiplagged shall be under a continuing obligation to supplement its answers to these Interrogatories to the extent provided in Rule 26(e)(1) of the Federal Rules of Civil Procedure.  If any information and/or other information responsive to any interrogatory comes to the attention, possession, custody, or control of you, your associates, or your attorneys subsequent

to serving your response(s), you are required promptly to supplement your answers with said additional information.

4.      Each Interrogatory calls for not only Skiplagged's knowledge, but also all information that is available to Skiplagged by reasonable inquiry and due diligence, including through inquiry of its directors, officers, shareholders, managing agents, and representatives, including but not limited to any of its affiliates and/or attorneys.

5.      No Interrogatory shall be read as limiting any other Interrogatory.

6.      If, in responding to these Interrogatories, you claim any ambiguity in interpreting an Interrogatory or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond but, instead, you shall set forth as part of your response the language deemed to be ambiguous and the interpretation that you used in responding to the Interrogatory.

7.      Whenever in these Interrogatories there is a request to "identify" a communication, you shall: (1) state the date and place of such communication; (2) identify each person who was present at, involved in, connected with, or who participated in such communication; (3) identify the type of communication (e.g., letter, telegram, conference, meeting, telephone conversation); (4) state the substance of such communication; and (5) identify each document reflecting or comprising such communication.

8.      Whenever in these Interrogatories there is a request to "identify" an individual, you shall state with respect to such individual: (1) his or her name; (2) his or her present or last-known business or home address; (3) his or her present or last-known business or home telephone number; (4) his or her present or last-known employer and present or last-known position; and (5) all positions he or she has held with the answering party (including the dates that each such

period of employment commenced and terminated, and a brief description of the responsibility of such position).

9.      Whenever in these Interrogatories there is a request to "identify" a document, you shall set forth: (1) the individual(s) who prepared the document; (2) the individual(s) who drafted the document; (3) the individual(s) who received or approved the document; (4) the type of document (e.g., letter, memorandum, tape recording, or other form of document); and (5) a description of it with the specificity required on a subpoena. Further, whenever in these Interrogatories there is a request to "identify" a document, you may produce the document to American in lieu of specifically identifying the document as required by this instruction if: (1) the document contains the information required by this instruction; (2) you describe the document specifically enough for American to locate the document in your document production; and (3) you clearly state in your response to the Interrogatory that you will produce the identified document.

10.      Unless otherwise specified in a particular Interrogatory below, the relevant time period for purposes of these Interrogatories is **from August 1, 2018 to the present**.

## DEFINITIONS

1.      "**American**" means and refers to Plaintiff American Airlines, Inc.

2.      "**Skiplagged**" means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other

person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

      3.     **"You**," "**your**," or "**Defendant**" means and refers to Skiplagged.

      4.     **"American's Content"** means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

      5.     **"American Bookings"** means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

      6.     **"American-Skiplagged Customer"** means and refers to any person who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether such person completed the booking on Skiplagged.com, through another agency or on another website or platform to which Skiplagged provided a direct link, transferred, referred, or redirected the person.

PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
INTERROGATORIES TO DEFENDANT SKIPLAGGED, INC.          **PAGE 4**
3818285_1.DOCX

App'x 026

7.      **"AA.com Use Agreement"** means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

8.      **"American's Conditions of Carriage"** means and refers to the Conditions of Carriage agreement between American and its passengers, available at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

9.      **"API"** or **"American's API"** refers to the application programming interface of AA.com.

10.     **"AA.com"** refers to American's public-facing front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

11.     **"Travel carrier(s)"** refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

12.     **"Travel Agency"** means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

13.     **"Person"** or **"persons"** mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

14.    **"PNR Data"** refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact information (including originator of reservation); (8) All available payment/billing information (e.g. credit card number); (9) Travel itinerary for specific PNR; (10) Travel agency/travel agent; (11) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (12) Split/divided information (e.g., when one PNR contains a reference to another PNR); (13) Travel status of passenger (including confirmations and check-in status); (14) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (15) Baggage information; (16) Seat information, including seat number; (17) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI) and Supplemental Service Request (SSR) information; (18) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (19) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

15.    **"Communication"** or **"communications"** shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in nay nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone

calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

16.     **"Relating to," "related to," "concerning,"** or **"referencing"** mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the Interrogatory.

17.     **"This lawsuit"** refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas, Fort Worth Division.

18.     **"Skiplagged's Motion to Dismiss"** refers to *Skiplagged's Motion to Dismiss American's First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. 21].

19.     **"Zaman's Declaration"** refers to the *Declaration of Aktarer Zaman Submitted in Support of Skiplagged's Motion to Dismiss*, filed on October 2, 2023 [Dkt. 22].

## INTERROGATORIES

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**INTERROGATORY NO. 2:**   Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**INTERROGATORY NO. 3:**   Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**INTERROGATORY NO. 4:**   Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your response should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

**INTERROGATORY NO. 5:**   Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**INTERROGATORY NO. 6:**   Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**INTERROGATORY NO. 7:**   Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**INTERROGATORY NO. 8:**   Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**INTERROGATORY NO. 9:**   Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

**INTERROGATORY NO. 10:**   Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**INTERROGATORY NO. 12:** Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**INTERROGATORY NO. 13:** Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**INTERROGATORY NO. 14:** Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration), and describe the technical means and process by which Skiplagged obtains such information.

**INTERROGATORY NO. 15:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**INTERROGATORY NO. 16:** Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**INTERROGATORY NO. 17:** Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.

**INTERROGATORY NO. 18:** Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**INTERROGATORY NO. 19:** Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

Dated: October 12, 2023

Respectfully submitted,

*/s/ Lars L. Berg*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Tyson Lies
State Bar No. 24087927
tyson.lies@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2023, I served the foregoing document *via hand delivery* to opposing counsel below in accordance with the Federal Rules of Civil Procedure:

> William L. Kirkman
> KIRKMAN LAW FIRM, PLLC
> 201 Main Street, Suite 1160
> Fort Worth, Texas  76102

*/s/ Lars L. Berg*
Lars L. Berg

# Exhibit A-3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SKIPLAGGED, INC.'S SECOND AMENDED OBJECTIONS AND
RESPONSES TO PLAINTIFF AMERICAN AIRLINES, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION**

TO:    Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr. and Lars L. Berg and Ms. Julia G. Wisenberg, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J. Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C. 20037.

      Pursuant to Federal Rules of Civil Procedure 26 and 34 and Judge Ray's December 19, 2023

Order, Defendant Skiplagged, Inc. ("Skiplagged"), hereby serves this, its Second Amended

Objections and Responses to Plaintiff American Airlines, Inc.'s First Set of Requests for Production.

Dated: January 12, 2024          Respectfully submitted,

                                 /s/*William L. Kirkman*_____
                                 William L. Kirkman
                                 State Bar No. 11518700
                                 billk@kirkmanlawfirm.com
                                 Preston B. Sawyer
                                 State Bar No. 24102465
                                 prestons@kirkmanlawfirm.com
                                 **KIRKMAN LAW FIRM, PLLC**
                                 201 Main Street, Suite 1160
                                 Fort Worth, Texas 76102
                                 Telephone: (817) 336-2800
                                 Facsimile: (817) 877-1863

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin,
Texas Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
Texas Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
acampbell@condontobin.com
**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311

***ATTORNEYS FOR DEFENDANT SKIPLAGGED, INC.***

## CERTIFICATE OF SERVICE

It is hereby certified that on January 12, 2024, a copy of the foregoing was served via email as to all parties who have entered an appearance in this proceeding.

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

2

## SECOND AMENDED OBJECTIONS AND RESPONSES
## TO REQUESTS FOR PRODUCTION

To comply with Judge Ray's December 19, 2023 Order, Skiplagged makes the following amended objections and responses to Plaintiff's Requests for Production but does not waive its previously asserted objections.

**REQUEST FOR PRODUCTION NO. 1:**  Documents relating to or evidencing Skiplagged's corporate structure, locations, organization, formation, management, ownership, shareholders, and investors.

**RESPONSE**: In response to this request, Skiplagged has produced responsive documents.

**REQUEST FOR PRODUCTION NO. 2:**  All contracts or agreements, and any amendments, supplements, and drafts related thereto, between Skiplagged and any Travel Agency, metasearch engine, or any other company or website that searches for, displays, markets, or sells commercial flights to consumers, including, but not limited to, each of the third parties identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 3:**  All documents and communications relating to, or to or from, any of the third parties described in Request No. 2 and/or identified by Skiplagged in response to American's Interrogatory Nos. 6 and 7.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 4:**  All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**RESPONSE:** Objection. This request is unnecessarily and unreasonably overbroad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request further seeks information (PNR Data and any other personal identifying information) that is proprietary, confidential, private, personal, and not subject to public disclosure. *See* Zaman Declaration, which is found in the Appendix to Skiplagged's Response in Opposition to Plaintiff's Motion to Compel [Ex. 2 to Dkt. 48].

In response to this Request, Skiplagged states that does not "book" airfares as such. Skiplagged also does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources. Pursuant to Judge Ray's December 19, 2023 Order, Skiplagged is producing responsive documents located after a reasonable search except redacting social security numbers or credit card numbers.

**REQUEST FOR PRODUCTION NO. 5:**   All documents and communications relating to how all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**RESPONSE:** Objection. This request is unnecessarily and unreasonably overbroad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request also seeks information that is proprietary, confidential, private, personal, and not subject to public disclosure. *See* Zaman Declaration, which is found in the Appendix to Skiplagged's Response in Opposition to Plaintiff's Motion to Compel [Ex. 2 to Dkt. 48].

Pursuant to Judge Ray's December 19, 2023 Order, Skiplagged is producing responsive documents in its possession and control located after a reasonable search except redacting social security numbers or credit card numbers.

**REQUEST FOR PRODUCTION NO. 6:**   Documents and communications sufficient to show all flight tickets booked through Skiplagged.com (including for any/all airlines) with a departure or arrival city in Texas since August 1, 2018, including all PNR Data for all such passengers.

**RESPONSE:** In response to this request, Skiplagged states that it does not "book" airfares as such. Skiplagged also does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources. Further, Skiplagged is unaware and does not have responsive documents related to flight tickets facilitated by Skiplagged but booked through an online travel agency. In response to this request, Skiplagged is producing responsive documents located after a reasonable search showing flights facilitated by Skiplagged through its "Book Now" feature with a departure or arrival city in Texas since August 1, 2018.

**REQUEST FOR PRODUCTION NO. 7:**   All communications between AA.com and Skiplagged relating to any purchases or sales of American flights or services by Skiplagged.

**RESPONSE:** In response to this request, Skiplagged states that it does not purchase or sell any American flights or services, thus, there are no documents responsive to this request.

4

**REQUEST FOR PRODUCTION NO. 8:** All documents, including but not limited to specifications, schematics, design documents, user guides, manuals, source code, technical documents, and any other documents relating to, reflecting, or describing the details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, and/or hardware—both current and historical—that Skiplagged has used to:

    (a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

    (b) interact with or access AA.com, American's API, or American's computer systems;

    (c) search for or identify American flights, itineraries, and fares to present to customers on Skiplagged.com (including to identify the best prices and/or to generate "hidden city" tickets);

    (d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

    (e) republish, display, distribute, provide access to, or otherwise use American's Content, including but not limited to American's flight and fare data, on Skiplagged.com;

    (f) book or purchase American flights on AA.com for Skiplagged users/customers;

    (g) charge users/customers fees for the purchase of American flights

    (h) sell American flights;

    (i) communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

    (j) circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

**RESPONSE:** In response to this request, Skiplagged states that it does not harvest, scrape, or extract American's Content. Skiplagged is producing responsive documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 9:** Documents sufficient to show the operation of any aspects or elements of the programs, tools, or technologies that Skiplagged has used to carry out or achieve the activities described in Request No. 8, subparts (a)-(j).

**RESPONSE:** In response to this request, Skiplagged states that it does not harvest, scrape, or extract American's Content. Skiplagged is producing responsive documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 10:** Documents and communications evidencing all research and development costs relating to or associated with any of the means, methods, processes,

programs, techniques, or software described in Request No. 8 and its subparts.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents, including financial documents that contain responsive information located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 11:** Documents and communications relating to Skiplagged's advertisement, promotion, or sale of American products or services.

**RESPONSE**: In response to this request, Skiplagged states that it does not advertise or sell American products or services. The only way in which Skiplagged "promotes" American products or services is by, in response to a customer search, providing customers information about American flights upon which the customer may choose to purchase for which the flight is billed directly from and paid to American. This information is provided in real time in response to a customer's inquiry. Consequently, Skiplagged does not have any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 12:** Documents and communications relating to Skiplagged obtaining, or attempting to obtain, American's Content, including but not limited to American fare, schedule or inventory data.

**RESPONSE**: In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 13:** Documents and communications relating to, discussing, or referencing American, AA.com, the AA.com Use Agreement, American's Conditions of Carriage, any other rules or policies of American, Skiplagged's use of American's Content, or Skiplagged's sale of tickets on American-marketed flights.

**RESPONSE**: In response to this request, Skiplagged states that it does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources. Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 14:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or understanding that Skiplagged is not authorized by American to access, distribute, display or use American's content on Skiplagged.com or to book, ticket or sell tickets for American-marketed flights.

**RESPONSE**: Skiplagged states it does not have documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 15:** Documents and communications relating to or discussing the sale of tickets on American-marketed flights or services by any Travel Agencies or travel metasearch engines other than Skiplagged.

**RESPONSE:** In response to this request, Skiplagged will produce responsive, non-privileged documents located after a reasonable search using reasonable search terms.

6

**REQUEST FOR PRODUCTION NO. 16:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness of other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or websites having authorization from, or agreements with, American to access or distribute American's fare, schedule and inventory content, to market or advertise American-marketed flights or to book, ticket or sell tickets on American-marketed flights, use American's Content, or otherwise act as an agent of American.

**RESPONSE**: In response to this request, Skiplagged states that it is not a Travel Agency, thus it is unclear what the phrase "other Travel Agencies" seeks. In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 17:** Documents and communications relating to, acknowledging, or reflecting Skiplagged's knowledge or awareness that American revoked Kiwi.com's right and authorization to access or distribute American fare, schedule and inventory content, or to book, ticket or sell tickets on American-marketed flights.

**RESPONSE:** In response to this request, Skiplagged states that it is not a Travel Agency, thus the request is unclear in its use of the phrase "other Travel Agencies." Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 18:** All communications between Skiplagged and any other third party discussing, mentioning, or relating in any way to American, the booking, ticketing or sale of tickets on American-marketed flights, or the distribution, publication, access, or use of American's Content.

**RESPONSE:** In response to this request, Skiplagged states that it does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources. In response to this request, Skiplagged is producing responsive documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 19:** Documents and communications relating to any meetings or discussions involving any Skiplagged employees, directors, board members, officers, investors, or shareholders where American or AA.com was discussed, addressed, mentioned.

**RESPONSE:** In response to this request, Skiplagged located no responsive documents following a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 20:** Documents and communications relating to Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its marketing and sale of tickets on American-marketed flights and/or its use of American's Content, including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of tickets on American-marketed flights or services; (ii) the benefits of or reasons for marketing, offering, booking, ticketing, purchasing, and/or

7

selling tickets on American-marketed flights or services; and (iii) consumer demand or preferences for booking travel with American.

**RESPONSE**: In response to this request, Skiplagged states that it does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online offerings so that they may book fares or tickets with travel resources. Skiplagged located no responsive documents following a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 21:** Presentations, slide decks, handouts, or other presentation materials concerning Skiplagged's business plans, strategies, technology, or platform—both final and draft versions—for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

**RESPONSE:** In response to this request, Skiplagged states there are no responsive documents.

**REQUEST FOR PRODUCTION NO. 22:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on or through Skiplagged.com since August 1, 2018.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 23:** Documents and communications relating to, identifying, or evidencing Skiplagged's internal processing of all American Bookings made or purchased on any other travel websites by any customers who were transferred, referred or re-directed to such travel websites by or through Skiplagged.com since August 1, 2018.

**RESPONSE:** In response to this request, Skiplagged states that it is unaware of American Bookings made or purchased on third-party websites, thus Skiplagged has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 24:** Documents and communications relating to or reflecting any complaints by any customers or passengers who booked, ticketed or purchased a ticket on an American-marketed flight through Skiplagged.com—whether booked directly on Skiplagged.com or on another website to which Skiplagged transferred, referred or redirected the customer to complete the booking.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents regarding American flights located after a reasonable search using the search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 25:** Communications with any American-Skiplagged Customers regarding flight changes, delays, cancellations, refunds, customer service issues, baggage fees, service fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents regarding American flights located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 26:** All documents and financials identifying or reflecting Skiplagged's financial condition and performance from its inception to the present, including but not limited to its monthly, quarterly, and yearly income, revenues, costs, expenses, and actual and/or projected gross and net revenues and profits.

**RESPONSE:** Objection. This Request is not relevant to any issue in the case, is not calculated to lead to the discovery of relevant information, considering the proportional needs of the case, and is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. As to this additional information sought, this Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case, and seeks private, proprietary, and confidential information personal to Skiplagged and not subject to public disclosure. *See* Zaman Declaration, which is found in the Appendix to Skiplagged's Response in Opposition to Plaintiff's Motion to Compel [Ex. 2 to Dkt. 48].

Pursuant to Judge Ray's December 19, 2023 Order, Skiplagged is producing annual profit and loss reports, income statements, balance sheets, or similar documents from its inception to the present.

**REQUEST FOR PRODUCTION NO. 27:** All documents and financials identifying or reflecting Skiplagged's total revenues, gross margins, and net profits relating to or resulting from Skiplagged's sale of American flights, including taking into account any/all additional fees of any kind charged to customers in connection with the sales of American flights (e.g., service fees, baggage fees, or other fees).

**RESPONSE:** In response to this Request, Skiplagged states that it does not sell American flights and thus, there are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 28:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to American.

**RESPONSE**: In response to this Request, Skiplagged states that it does not make any efforts to "market" or "promote" American. Consequently, Skiplagged does not have any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 29:** Documents and communications relating to Skiplagged's marketing or promotional efforts to customers relating to travel to, from, or within Texas.

**RESPONSE:** In response to this Request, Skiplagged states that it does not direct any marketing or promotional efforts to Texas. Consequently, Skiplagged does not have any documents responsive to this request.

9

**REQUEST FOR PRODUCTION NO. 30:** Communications between Skiplagged and any third-party regarding American, AA.com, Skiplagged's marketing or sale of tickets on American-marketed flights or services, Skiplagged's use of American's Content on Skiplagged.com, Skiplagged's efforts to obtain data or information from AA.com, or American's claims or allegations in this lawsuit.

**RESPONSE:** In response to this request, Skiplagged states that it does not market or sell flight tickets or services. Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 31:** All documents, communications, and agreements concerning Skiplagged's receipt of or entitlement to any commissions, fees, or other financial compensation from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of commercial flights to consumers.

**RESPONSE:** In response to this request, Skiplagged states that it does not sell commercial flights, American or otherwise, thus there are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 32:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has received from any third parties other than customers/purchasers, including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies, in connection with the sale of American flights.

**RESPONSE**: In response to this request, Skiplagged states that it does not sell commercial flights, American or otherwise, thus there are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 33:** All documents, communications, and agreements concerning Skiplagged's payment of or obligation to pay commissions, fees, or other financial compensation to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems) in connection with the sale of commercial flights to consumers.

**RESPONSE**: In response to this request, Skiplagged states that it does not sell commercial flights, American or otherwise, thus there are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 34:** Documents sufficient to show all fees, commissions, or other payments Skiplagged has made to any other travel websites or other third parties (including but not limited to travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or other travel companies) in connection with the sale of tickets on American-marketed flights.

**RESPONSE**: In response to this request, Skiplagged states that it does not sell tickets on American-marketed flights, thus there are no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 35:** Any settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other travel carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any carriers' flights or services or use of carriers' flight and fare information, trademarks, or data/content.

**RESPONSE:** Objection. This Request seeks documents that are not relevant to any issue in the case and are not calculated to lead to the discovery of admissible evidence considering the proportional needs of the case when it requests documents that do not relate to American. As to the non-American documents, this Request also seeks information that is confidential, private, personal, and not subject to public disclosure. *See* Zaman Declaration, which is found in the Appendix to Skiplagged's Response in Opposition to Plaintiff's Motion to Compel [Ex. 2 to Dkt. 48].

**REQUEST FOR PRODUCTION NO. 36:** All complaints, legal notices, demand letters, cease and desist letters, and any other similar correspondence that Skiplagged has received from any other person or entity, including any airline, travel carrier, travel service provider, Travel Agency, travel metasearch engine, or governmental, regulatory, or administrative agency, relating to Skiplagged's operations or the operation of Skiplagged.com.

**RESPONSE:** In response to this request, Skiplagged states that it has produced and is producing non-privileged documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 37:** Communications with any American-Skiplagged Customers regarding any issues, problems, or troubles that the passenger encountered during her travel with American, and any documents relating thereto.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 38:** Documents and communications with customers and any internal documents or communications relating to, or concerning issues arising from, Skiplagged's warnings and/or instructions to purchasers of "hidden-city" tickets, including about what the passengers should do to avoid problems or what they should say to airline staff.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 39:** Any press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other travel carriers.

**RESPONSE:** Objection. This Request is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case.

Pursuant to Judge Ray's December 19, 2023 Order, Skiplagged is producing responsive documents that pertain to American located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 40:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money," as stated on Skiplagged.com.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents related to American flights located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 41:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere," as stated on Skiplagged.com.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents related to American flights located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 42:** Documents and communications relating to, supporting, or evidencing how Skiplagged "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else," as stated on Skiplagged.com.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents related to American flights located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 43:** Documents and communications relating to or supporting Skiplagged's statements on its website regarding "Why are we doing this?", including the specific reasons described therein.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents related to American flights located after a reasonable search using reasonable search terms..

**REQUEST FOR PRODUCTION NO. 44:** All documents, communications, and agreements relating to Skiplagged's terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, the collection, protection, and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

**RESPONSE:** Objection. This Request is unnecessarily and unreasonably overly broad, considering the proportional needs of the case, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request also seeks information that is neither relevant nor is reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the issues in the case. In response to this Request, Skiplagged produced its terms and conditions and privacy policy as posted on its website.

**REQUEST FOR PRODUCTION NO. 45:** Documents and communications referring or relating to the Airlines Reporting Corporation ("ARC") or the International Air Transport Association ("IATA"), including but not limited to documents concerning Skiplagged's consideration, evaluation, decision, or reasons for deciding whether or not to apply to become an accredited ARC/IATA travel agency.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 46:** Any documents or communications relating to or evidencing any confusion or misunderstanding by American-Skiplagged Customers, after the time of their purchase of a ticket on an American-marketed flight, regarding Skiplagged's authority/ability or lack thereof to address or resolve any matters relating to their travel or booking.

**RESPONSE:** In response to this Request, Skiplagged is producing responsive, non-privileged documents related to American flights located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 47:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers who previously purchased travel or lodging on Skiplagged.com with a Texas address.

**RESPONSE:** In response to this Request, Skiplagged states there are no responsive documents and directs Plaintiff to Skiplagged's response to Interrogatory No. 17.

**REQUEST FOR PRODUCTION NO. 48:** Documents and communications relating to or evidencing all advertising, marketing, promotional, or "newsletter" emails that Skiplagged has sent to customers specifically identifying or offering "deals" or promotions on hotels in Texas or flights to, from, or within Texas.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 49:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 50:** Documents and communications relating to or evidencing all bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

13

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents located after a reasonable search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 51:** Documents relating to the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and the means or processes by which Skiplagged obtains such information.

**RESPONSE:** In response to this request, Skiplagged is producing responsive, non-privileged documents located after diligent search using reasonable search terms.

**REQUEST FOR PRODUCTION NO. 52:** All communications between Skiplagged and any of the "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration).

**RESPONSE**: In response to this request, Skiplagged is producing responsive documents in which Skiplagged obtained American flight and fare information located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 53:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases made by consumers that Skiplagged.com redirected to such other Travel Agency or metasearch engine.

**RESPONSE**: Objection. This Request seeks documents that are not relevant to any issue in the case and are not calculated to lead to the discovery of admissible evidence considering the proportional needs of the case. This Request is unnecessarily and unreasonably overly broad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request also seeks information that is confidential, private, and not subject to public disclosure.

**REQUEST FOR PRODUCTION NO. 54:** Documents and communications relating to or evidencing each booking for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies or travel metasearch engines for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency or travel metasearch engine.

**RESPONSE:** In response to this request, Skiplagged states that it is not a Travel Agency, thus it is unclear what the phrase "other Travel Agencies" seeks. Further, Skiplagged states that it does not have information as to whether users redirected to third-party websites complete a booking of a flight to, from, or within Texas, thus, there are no documents responsive to this request and Skiplagged directs Plaintiff to its response to Interrogatory No. 18.

14

**REQUEST FOR PRODUCTION NO. 55:** Documents and communications relating to or supporting Skiplagged's statement that it "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents in which Skiplagged obtained American flight and fare information located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 56:** All documents that you referred to or relied upon in answering any Interrogatory or Request for Admission served by American.

**RESPONSE:** In response to this request, Skiplagged is producing responsive documents.

15

# Exhibit A-4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SKIPLAGGED, INC.'S THIRD AMENDED OBJECTIONS AND**
**RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Judge Ray's December 19, 2023

Order [Dkt. 53], and the parties' Confidentiality Agreement, Defendant Skiplagged, Inc.

("Skiplagged") hereby serves this, its Third Amended Objections and Responses to Plaintiff

American Airlines, Inc.'s First Set of Interrogatories.

Dated:  January 12, 2024

Respectfully submitted,

/s/*William L. Kirkman*_____
William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile:  (817) 877-1863

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

1

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin,
Texas Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
Texas Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
acampbell@condontobin.com
**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311

***ATTORNEYS FOR DEFENDANT
SKIPLAGGED, INC.***

## CERTIFICATE OF SERVICE

It is hereby certified that on January 12, 2024, a copy of the foregoing was served via e-mail as to all parties who have entered an appearance in this proceeding.

*/s/ Abigail R.S. Campbell*
Abigail R.S. Campbell

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

2

### THIRD AMENDED OBJECTIONS AND RESPONSES
### TO FIRST SET OF INTERROGATORIES

To comply with Judge Ray's December 19, 2023 Order, Skiplagged makes the following amended objections and responses to Plaintiff's First Set of Interrogatories but does not waive its previously asserted objections.

**INTERROGATORY NO. 1:**   Identify Skiplagged's annual, monthly, and quarterly number of American Bookings, and the resulting revenue generated from such bookings, from January 1, 2020 to the present.

**RESPONSE:**



**INTERROGATORY NO. 2:**   Identify and describe in detail each way that Skiplagged has accessed, obtained, collected, received, scraped, cached or harvested American's Content, including but not limited to when and how Skiplagged collected or otherwise obtained the content/information, and including information obtained by Skiplagged from any third party or other source other than American or AA.com.

**RESPONSE:**

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.



**INTERROGATORY NO. 3:**   Identify and describe all types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

**RESPONSE:**

**INTERROGATORY NO. 4:**   Identify and describe in detail each way that Skiplagged has purchased, booked, ticketed, sold, resold, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means. Your ANSWER should include, without limitation, the names/identities of each and every third party whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

**RESPONSE:**

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

28191315v2 99460.002.00



**INTERROGATORY NO. 5:**   Describe in detail, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger, the process by which Skiplagged purchases and completes a customer's reservation on AA.com, including but not limited to each step of the process, how the passenger's personal, contact, and payment information is submitted on AA.com (i.e., manually or by an automated technological means), and the specific location (both physical and IP address) of the computers or servers from which Skiplagged inputs the passenger's information on AA.com.

**RESPONSE:**


**INTERROGATORY NO. 6:**   Identify and describe all agreements and/or business relationships that Skiplagged has with other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, or any other third party that provides, enables, facilitates, or otherwise participates in the distribution, display, marketing, brokering, booking, ticketing or sale of flights. Your answer should include the nature of the relationship, any agreements relating to such relationships, and the details, dates, and amounts of any payments or monetary compensation that Skiplagged has paid to or received from such third parties.

**RESPONSE:**


Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

28191315v2 99460.002.00
App'x 055



**INTERROGATORY NO. 7:**    Identify all other websites to which Skiplagged.com has provided customers a link or otherwise re-directed customers to complete a booking or purchase of American flights.

**RESPONSE:**    

Skiplagged identifies the following websites to which it may have provided customers a link or re-directed customer to potentially complete booking or purchase of American flights: Flight Hub, Sky Scanner, Kiwi, E Travel I, Price Line, Ovago, and AA.com.

**INTERROGATORY NO. 8:**    Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

**RESPONSE:** In response to this interrogatory and pursuant to Judge Ray's Order, Skiplagged states that while it has information regarding the number of bookings facilitated through its "Book Now" feature, the number of bookings facilitated by redirecting users to online travel agencies is unknown. Thus, the number of instances in which Skiplagged facilitated the booking of an American flight from August 1, 2018, to August 17, 2023 and according to Google Analytics is 1,376,927. Because of the magnitude of the information requested, pursuant to Fed. R. Civ. P. 33(d), Skiplagged refers Plaintiff to documents being produced by Skiplagged that reflect responsive information.

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

28191315v2 99460.002.00
App'x 056

**INTERROGATORY NO. 9:** Identify all IP addresses, names, email addresses, accounts, computers, and any other identifying information that Skiplagged, or anyone acting under Skiplagged's instruction or direction, has used in connection with booking, ticketing, purchasing and/or selling of tickets on American-marketed flights.

**RESPONSE:** In response to this interrogatory, Skiplagged states that it does not book, ticket, purchase, or sell tickets for American-marketed flights. Skiplagged is unable to identify the requested IP addresses, as Skiplagged uses Google Cloud to host Skiplagged.com, which uses dynamic addresses.

**INTERROGATORY NO. 10:** Identify each and every instance where an American-Skiplagged Customer requested a refund, partial or full, for a ticket on an American-marketed flight or where Skiplagged received a refund from American for a flight booked for an American-Skiplagged Customer, and for each instance, identify the reservation number, date of the request, date of the refund, the amount refunded by American, if any, and whether Skiplagged issued a refund back to the customer (and if so, how much of the amount refunded by American was paid back to the customer).

**RESPONSE:** In response to this interrogatory, Skiplagged states that it does not provide or receive refunds from American for any flights because Skiplagged does not charge users for flight tickets nor does Skiplagged purchase flight tickets. Users pay American for their flight tickets. In response to Skiplagged users who request flight refunds, Skiplagged informs them that refunds must be requested from and issued by American. In certain instances, Skiplagged has refunded service fees. Pursuant to Fed. R. Civ. P. 33(d), Skiplagged refers Plaintiff to documents being produced that reflect customer requests for refunds of American flights.

**INTERROGATORY NO. 11:** From the time Skiplagged began its operations, identify and describe any/all other lawsuits, claims, charges, allegations, arbitration, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights or other travel services, including the status of any such proceedings.

**RESPONSE:** In response to this interrogatory, Skiplagged identifies the following lawsuits filed against it, the allegations of which are publicly available:

1. United Airlines, Inc., Orbitz Worldwide, LLC, and Orbitz, LLC v. Zaman, Case No. 1:14-cv-09214 (N.D. Ill.); and
2. Southwest Airlines, Inc. v. Skiplagged, Inc., Skybooker.com LTD, Case No. 3:21-cv-01722-E (N.D. Tex.).

Both cases have been resolved and are terminated. The following "claims, charges, and allegations" have also been made:

1. A demand letter from counsel for Delta Air Lines, Inc. dated July 19, 2018, to which Skiplagged responded through counsel on July 26, 2018; and

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

2. A demand letter from Fareportal on behalf of Cheapoair dated February 11, 2015, which was resolved on February 27, 2015.

**INTERROGATORY NO. 12**: Identify the number of bookings Skiplagged has made for or on behalf of consumers with a Texas address through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:** In response to this interrogatory, Skiplagged states that it does not direct, target, or keep separate in its records, persons with a Texas address. The reference made by Mr. Zaman in his Declaration is to Skiplagged's general operations, which are used by all persons everywhere and not just Texans. Skiplagged provides information to persons who come to its website to find information about airfares, air travel, and online travel offerings so they may book fares or tickets through other travel resources and Skiplagged does not "book" tickets or airfares, but rather facilitates persons booking flights. With this understanding, from August 1, 2018, through August 17, 2023, and according to Google Analytics, 59,426,399 persons accessed Skiplagged's site through 209,618,689 sessions, which resulted in 434,534 bookings reflecting Texas addresses through Skiplagged's "Book Now" feature. Accordingly, bookings with Texas addresses made through Skiplagged's Book Now feature represents approximately 00.207 percent of all sessions on Skiplagged.com during the identified period.

**INTERROGATORY NO. 13**: Identify the number of bookings Skiplagged has made for or on behalf of consumers for flights to, from, or within Texas through Skiplagged.com's "Book Now" feature, as described in paragraph 12 of Zaman's Declaration.

**RESPONSE:** In response to this interrogatory, Skiplagged states that it does not direct, target, or keep separate in its records, persons with a Texas address. The reference made by Mr. Zaman in his Declaration is to Skiplagged's general operations, which are used by all persons everywhere and not just Texans. Skiplagged provides information to persons who come to its website to find information about airfares, air travel, and online travel offerings so they may book fares or tickets through other travel resources and Skiplagged does not "book" tickets or airfares, but rather facilitates persons booking flights. With this understanding, from August 1, 2018, through August 17, 2023, and according to Google Analytics, 59,426,399 persons accessed Skiplagged's site through 209,618,689 sessions, which resulted in 854,317 bookings for flights that originated and/or terminated in Texas through Skiplagged's "Book Now" feature. Accordingly, such bookings made through Skiplagged's Book Now feature represent approximately 00.408 percent of all sessions on Skiplagged.com during the identified period.

**INTERROGATORY NO. 14**: Identify all "online travel agencies, global distribution systems, and other travel metasearch engines" and any of the other "variety of sources" from whom "Skiplagged obtains American flight and fare information" (as described in paragraphs 10 and 11 of Zaman's Declaration) and describe the technical means and process by which Skiplagged obtains such information.

**RESPONSE:** ██████████████████████████████████████████

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

8

28191315v2 99460.002.00
App'x 058



**INTERROGATORY NO. 15**: Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases made by consumers with a Texas address that Skiplagged.com redirected to such other Travel Agency.

**RESPONSE:** In response to this interrogatory, Skiplagged states it does not direct, target, or keep separate in its records, persons with a Texas address.  Skiplagged is not a Travel Agency, so use of the term "other Travel Agencies" is incorrect. With that understanding, from August 1, 2018, through August 17, 2023, Skiplagged is unaware of the total number of bookings through Travel Agencies made by persons referred by Skiplagged. Skiplagged commissions on redirected bookings to Travel Agencies are paid on two models (1) cost per click or "CPC" (*i.e.*, intent to book), the standard advertising revenue model, or (2) cost per action or "CPA" (*i.e.*, successful booking). However, Skiplagged does not collect the requested information with respect to Texas addresses or anywhere else.

**INTERROGATORY NO. 16**: Identify the total number of bookings for which Skiplagged has received commission payments or other financial compensation from other Travel Agencies, and the total amount of such payments, for purchases of flights to, from, or within Texas made by users that Skiplagged.com redirected to such other Travel Agency.

**RESPONSE:** In response to this interrogatory, Skiplagged states it does not direct, target, or keep separate in its records, persons with a Texas address. Skiplagged is not a Travel Agency, so use of the term "other Travel Agencies" is incorrect. With that understanding, from August 1, 2018, through August 17, 2023, Skiplagged is unaware of the total number of bookings through Travel Agencies made by persons referred by Skiplagged. Skiplagged commissions on redirected bookings to Travel Agencies are paid on two models (1) cost per click or "CPC" (*i.e.*, intent to book), the standard advertising revenue model, or (2) cost per action or "CPA" (*i.e.*, successful booking). However, Skiplagged does not collect the requested information with respect to routing for bookings made by Travel Agencies.

**INTERROGATORY NO. 17**:  Identify the number of persons who have signed up for the Skiplagged.com "newsletter" or email subscriber service by entering a "home airport" located in Texas, as prompted on https://skiplagged.com/signup.\

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

**RESPONSE:** In response to this interrogatory, Skiplagged states that it does not direct, target or keeps separate in its records, persons with a Texas address or a "home airport" located in Texas as such. Despite that, zero persons "signed up" for such newsletter or e-mail subscriber service from August 1, 2018, to August 17, 2023, by entering a "home airport" located in Texas. This is because Skiplagged launched the newsletter sign-up page on August 28, 2023, which was after American Airlines filed the Complaint in this action.

**INTERROGATORY NO. 18**: Identify the number of times Skiplagged.com has redirected a user to another Travel Agency to complete a booking for a flight to, from, or within Texas.

**RESPONSE:** In response to this interrogatory, Skiplagged states that it does not direct, target, or keeps separate in its records, persons who fly to, from, or within Texas. Skiplagged is not a Travel Agency, so the use of the term "another Travel Agency" is incorrect. With that understanding, Skiplagged has redirected persons 966,655 times to a Travel Agency (not "another" Travel Agency, as Skiplagged is not a "Travel Agency") to potentially "complete" a booking for a flight to from or within Texas from August 1, 2018, to August 17, 2023, understanding that Skiplagged interprets this Interrogatory to ask for the number of times that Skiplagged.com has redirected persons to an online Travel Agency to complete a booking for a flight involving Texas. Skiplagged does not have information as to how many such referrals resulted in the purchase of airline tickets for flights involving Texas. Each identified booking involves two cities, not necessarily in the same state or country, and "involving Texas" refers to bookings where the trip starts and/or ends in Texas.

**INTERROGATORY NO. 19**: Describe in detail how and from what sources Skiplagged "obtained … the alleged 'American Marks' from [sources other than] American's website" as alleged in paragraph 10 of Zaman's Declaration and at page 13 of Skiplagged's Motion to Dismiss.

**RESPONSE:** In response to this interrogatory, Skiplagged states that paragraph 10 of the Zaman Declaration does not reference American Marks and page 13 of Skiplagged's Motion to Dismiss erroneously cites Zaman Declaration paragraph 10 instead of paragraph 11 for this proposition. Subject to this correction, Skiplagged states that on May 23, 2017, a former employee obtained the American icon from the API response of a Skiplagged advertiser, which Skiplagged understood to be allowed to use and distribute the American icon. Skiplagged's former employee then edited the image to make the background transparent and slightly enlarge the logo. The result is what Skiplagged has been using: https://skiplagged.com/img/airlines-favicon/AA.png.

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

**28 U.S.C. § 1746 DECLARATION VERIFYING INTERROGATORY ANSWERS**

"I declare and verify under penalty of perjury that the foregoing responses to Interrogatories are true and correct. Executed on the 12th day of January 2024, in New York City, New York."

_____
Aktarer Zaman
Chief Executive Officer
Skiplagged, Inc.

Pursuant to the parties' Confidentiality Agreement, Skiplagged's Responses to Interrogatory Nos. 1-7, and 14 are designated CONFIDENTIAL.

# Exhibit A-5

## (App'x 062 - App'x 119)

## Withheld Pursuant to the Parties' Agreement Governing the Use and Disclosure of Confidential Information

## Pending Motion to Seal

# Exhibit A-6

## (App'x 120 - App'x 134)

## Withheld Pursuant to the Parties' Agreement Governing the Use and Disclosure of Confidential Information

## Pending Motion to Seal

# Exhibit A-7

| | |
|---|---|
| **From:** | Abigail Campbell <acampbell@condontobin.com> |
| **Sent:** | Tuesday, April 2, 2024 4:15 PM |
| **To:** | Austin Franklin |
| **Cc:** | Kendal B. Reed; Aaron Z. Tobin; Lars Berg; Dee Kelly |
| **Subject:** | RE: Skiplagged Discovery [IWOV-Interwoven.FID461762] |

**EXTERNAL SENDER ALERT - This message originated outside the Kelly Hart domain. Please exercise caution when opening attachments, following links or responding to this message.**

Austin,

I made no such confirmation and your representation otherwise is misleading. The documents of data you seek do not exist and cannot easily be created.

Best,

---

**Abigail R.S. Campbell**  ATTORNEY

8080 Park Lane, Suite 700, Dallas, Texas 75231
D  214.265.3891 |  T  214.265.3800 |  VCard
acampbell@condontobin.com | condontobin.com

Please note our new name and my new email address

The information contained in this transmission is privileged and confidential and intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is prohibited. If you have received this transmission in error, please reply immediately to sender that you have received this communication in error and delete it. Thank you

---

**From:** Austin Franklin <Austin.Franklin@kellyhart.com>
**Sent:** Tuesday, April 2, 2024 4:11 PM
**To:** Abigail Campbell <acampbell@condontobin.com>
**Cc:** Kendal B. Reed <kreed@condontobin.com>; Aaron Z. Tobin <atobin@condontobin.com>; Lars Berg <lars.berg@kellyhart.com>; Dee Kelly <dee.kelly@kellyhart.com>
**Subject:** RE: Skiplagged Discovery [IWOV-Interwoven.FID461762]

Abigail,

Thank you for confirming that Skiplagged has the data.  Please confirm by 12:00 noon on April 3 that Skiplagged refuses to produce the data based on the claim of burden.

VR,

Austin

On March 29, 2024 at 5:13:00 PM MDT, Austin Franklin <Austin.Franklin@kellyhart.com> wrote:

App'x 136

Abigail,

Due to the holiday weekend and prior commitments, I will have to respond to your below email in more detail on Monday.

VR,

**Austin Franklin**
*Partner*



201 MAIN STREET, SUITE 2500
FORT WORTH, TEXAS 76102
TELEPHONE: (817) 878-3588
austin.franklin@kellyhart.com
www.kellyhart.com

CONFIDENTIAL NOTICE: This electronic transmission and any documents or other writings sent with it constitute confidential information which is intended only for the named recipient and which may be legally privileged.  If you have received this communication in error, do not read it.  Please reply to the sender at Kelly Hart & Hallman LLP that you have received the message in error.  Then delete it.  Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication or any attachment(s) by anyone other than the named recipient is strictly prohibited.

---

**From:** Abigail Campbell <acampbell@condontobin.com>
**Sent:** Thursday, March 28, 2024 4:02 PM
**To:** Austin Franklin <Austin.Franklin@kellyhart.com>
**Cc:** Kendal B. Reed <kreed@condontobin.com>; Aaron Z. Tobin <atobin@condontobin.com>
**Subject:** Skiplagged Discovery [IWOV-Interwoven.FID461762]

Austin,

As previously discussed, AA identified SKP00081039 as a potential example of PNR data that Skiplagged has in its possession and for which AA has requested production. I have followed up with my client on this and in short, the document you cite is not merely an export of data that Skiplagged has easy access to, nor is it even accurate data.

Specifically, to retrieve data of this nature, Skiplagged would have to write a brand new code and program. This is not the classic example of Quickbooks or some other database where searches can easily be run and results produced. Thus, this information is not easily accessible and would require Skiplagged to create not only a new program but new documentation rather than documents as they are kept in the ordinary course of business.

SKP81039 is the result of a special project that was done by a former employee when she was new to the company and where she had to write specific code for the information returned. Moreover, the information is incorrect and the code was flawed. For example, you can see that there are multiple duplicate rows, which results in inaccurate data.

App'x 137



In sum, SKP00081039 is not an example of data that Skiplagged has in its possession and that can be produced as kept in the ordinary course of business.

Best,

**Abigail R.S. Campbell**  ATTORNEY
8080 Park Lane, Suite 700, Dallas, Texas 75231
D  214.265.3891 |  T  214.265.3800 |  VCard
acampbell@condontobin.com | condontobin.com

Please note our new name and my new email address

The information contained in this transmission is privileged and confidential and intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is prohibited. If you have received this transmission in error, please reply immediately to sender that you have received this communication in error and delete it. Thank you

App'x 138

# Exhibit A-8

## Exemplar Report 1
## (Bates-labeled SKP00081039)

## Withheld Pursuant to the Parties' Agreement Governing the Use and Disclosure of Confidential Information

## Pending Motion to Seal

# Exhibit A-9

## Exemplar Report 2
## (Bates-labeled SKP00081151)

## Withheld Pursuant to the Parties'
## Agreement Governing the Use and
## Disclosure of Confidential Information

## Pending Motion to Seal

*Submitted Electronically on Thumb Drive*

# Exhibit A-10

## Exemplar Report 3
## (Bates-labeled SKP00081157)

## Withheld Pursuant to the Parties' Agreement Governing the Use and Disclosure of Confidential Information

## Pending Motion to Seal