IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SKIPLAGGED, INC.'S MOTION TO COMPEL RESPONSES TO
DISCOVERY AND BRIEF IN SUPPORT**

William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone:  (817) 336-2800
Facsimile:   (817) 877-1863

Aaron Z. Tobin
Texas Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
Texas Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
acampbell@condontobin.com
**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311

***ATTORNEYS FOR DEFENDANT
SKIPLAGGED, INC.***

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENTS AND AUTHORITIES........................................................................................ 4

    I.    Legal Standard .................................................................................................... 4

    II.    AA's Boilerplate Objections and "Subject to" Responses are Improper ............... 6

        A.    Boilerplate objections are not sufficient ......................................................... 6

        B.    AA's "vague and ambiguous" objections are improper ................................. 7

        C.    AA fails to state whether information is being withheld or produced............ 9

    III.    AA is Improperly Withholding Documents and Information ............................... 10

        A.    Improper excuse of "if and when the specific information" and documents become available .............................................................................................................. 10

        B.    Intentionally withholding financial documents .............................................. 11

        C.    Intentional withholding of trademark and copyright documents................... 12

        D.    Refusal to identify contracts and breaches at issue........................................ 13

CONCLUSION..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) ..................................... 5

*Consumer Electronics Ass'n v. Compras & Buys Magazine, Inc.*, No.
   08-21085-CIV, 2008 WL 4327253................................................................................. 9, 10

*Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)................................... 6

*Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-cv-2719-B, 2018
   WL 3655574 ................................................................................................................... 4,5,6

*Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)....................................... 2,6,7,8,9

*Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)) ........................... 5,6

*McLeod, Alexander, Powel & Apffel, P.C.* 894 F.2d 1482, 1484-86 (5th Cir.1990)...................... 7

*Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D. Tex. 2005) .......................................... 5

*Orchestrate HR, Inc. v. Trombetta*, 178 F.Supp.3d 476, 504 (N.D. Tex. 2016) ..................... 4,5,6

*Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017)......................... 5

*SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 926587................................. 6

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG,
   2018 WL 4620634 ............................................................................................................... 10

**Rules**

FED. R. CIV. P. 26................................................................................................................... 5

FED. R. CIV. P. 34................................................................................................................... 6

FED. R. CIV. P. 37.............................................................................................................. 5,6,11

Defendant Skiplagged Inc. ("Skiplagged") respectfully moves for an Order, pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, compelling Plaintiff American Airlines, Inc. ("Plaintiff" or "AA") to fully respond to discovery and produce responsive documents, and would show the Court as follows:

## INTRODUCTION

Despite suing Skiplagged for over $55 million[1] on breach of contract, intentional interference, and alleged federal trademark and copyright violations, AA refuses to produce or identify even the most basic information from its files. AA has not identified the contracts that were breached or interfered with or provided any internal information with respect its trademark or copyright claims. Why? It claims it is too big to do so. This is not the discovery standard.

AA's contractual claims require a showing of a valid contract, performance by AA, breach or a willful and intentional act of interference, causation, and damages. Despite this, AA relies on improper objections and an excuse that it is a "large company" to refuse even searching for information, let alone produce information or documents that go to each of these elements or Skiplagged's defenses. Similarly, AA fails and refuses to produce any information or documents related to their federal trademark or copyright claims.

Skiplagged explained AA's discovery deficiencies in a detailed, eleven-page letter that cited to each specific request or interrogatory at issue on February 16, 2024. AA ignored such details and refuses to utilize Skiplagged's efforts to resolve or at least narrow the discovery issues. Instead, as AA insisted, from February to April, Skiplagged participated in at least six meet and confer calls where Skiplagged's counsel re-explained the discovery issues ad nauseum. AA promised that these efforts would result in fruitful resolutions to at least some discovery issues.

---

[1] Note, Skiplagged is guessing at this damages number based on AA's representations at mediation because AA has not produced a single document or provided interrogatory responses in support of its damages in this litigation.

Instead, AA used Skiplagged's good faith efforts to delay being held accountable for AA's failure to honor its discovery obligations under the federal rules. Consequently, Skiplagged must seek the Court's intervention to compel AA to adhere to its discovery duties and provide full and complete responses as well as documents regarding the contracts at issue, AA's alleged damages and financial losses, and its trademark and copyright allegations.

## FACTUAL AND PROCEDURAL BACKGROUND

AA filed its First Amended Complaint on August 17, 2023. Dkt. 8. On October 2, 2023, Skiplagged filed a Motion to Dismiss based on lack of personal jurisdiction. Dkt. 21. During the pendency of Skiplagged's Motion to Dismiss, AA served extensive discovery requests on Skiplagged. Ultimately, AA filed a Motion to Compel Skiplagged. Dkt. 38. On December 19, 2023, Magistrate Judge Ray held a hearing on AA's Motion to Compel and then issued an order granting in part and denying part, AA's Motion to Compel. Dkt. 53.

On December 19, 2023, the Court also denied Skiplagged's jurisdictional Motion to Dismiss. Dkt. 52. On January 10, 2024, Skiplagged served its First Request for Production, First Set of Interrogatories, and First Requests for Admission to AA. Ex. 1-A (App'x pp. 1-27), 1-B (App'x pp. 28-40), and 1-C (App'x pp. 41-48), respectively. On February 9, 2024, AA served responses to Skiplagged's discovery requests. Ex. 1-D, Plaintiff's Responses to Skiplagged's Requests for Production (App'x pp. 49-124); 1-E, Plaintiff's Responses to Skiplagged's Interrogatories (App'x pp. 125-147); 1-F, Plaintiff's Responses to Skiplagged's Requests for Admission (App'x pp. 148-169). AA's written responses consisted largely of multiple boilerplate objections and refusals to answer in violation of *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014). Moreover, AA did not produce any documents until February 14, 2024, which only consisted of 945 pages of junk emails. From February to April 2, 2024, AA produced 58,805

pages of documents. However, at least 6,193 pages are merely publicly available trademark documents or consolidated American Airlines Group and American Airlines Inc. Form 10-K's. Moreover, 34,706 pages are merely data from a former AA intern sent on the last day at his internship and are not specific to this litigation. In total, AA has produced very little in this litigation and its failure to adhere to the discovery rules severely prejudices Skiplagged.

In a significant effort to resolve or at least narrow the discovery issues created by AA, on February 16, 2024, Skiplagged sent AA an eleven-page letter detailing the discovery deficiencies and citing to each request and response at issue. Ex. 1-G (App'x pp. 170-181). The parties held their first meet and confer on February 20, 2024 where it was immediately apparent to Skiplagged's counsel that AA did not seriously review the detailed letter or come prepared to discuss the issues already identified. Given AA's refusal to refer to or respond to Skiplagged's deficiency letter, Skiplagged explained and re-explained AA's discovery deficiencies to AA over a series of at least six meet and confers. Each meet and confer resulted in a promise from AA to consider Skiplagged's positions. Thus, Skiplagged expected this long process to be fruitful.

For example, pursuant to the parties' agreement on March 8, 2024, Skiplagged sent proposed search terms to AA. Ex. 1-H (App'x p. 187). Two weeks later, on March 22, 2024, AA finally responded to Skiplagged's proposed search terms. *Id.* (App'x p. 183). However, instead of proposing alternative terms, AA merely rejected terms proposed by Skiplagged and though AA located responsive documents, claimed such documents would not be produced because they were not what AA believed Skiplagged "might be looking for."[2] *Id.* (App'x pp. 188-189). Moreover, AA revealed that it only conducted document searches for five custodians, none of which would

---

[2] Indeed, AA took this position in response to multiple Skiplagged discovery requests and though Skiplagged corrected AA each time and informed AA that its arbitrary decision on what documents Skiplagged wanted is improper, AA continues to assert this improper position to support its refusal to produce.

3

have financial information or trademark and copyright information sought by Skiplagged. *Id.* (App'x p. 188).

Despite months of meet and confers and the false pretense that progress was being made, on March 22, 2024, AA made the surprising offer to provide amended answers on only two of the interrogatories and respond to an additional seven interrogatories previously ignored in three weeks' time. *Id.* (App'x p. 183). Though AA offered to agree to search terms for requests for production, AA merely refused to run such terms, did not propose alternative terms, and improperly limited the terms to just five custodians. *Id.* (App'x p. 188-189). Moreover, AA would only agree to these tasks if Skiplagged agreed that it resolved all of its concerns with the discovery responses to date. *Id.* (App'x p. 183). When Skiplagged pointed out AA's unreasonable proposal, AA walked back its offer to demanding that Skiplagged agree AA's tasks would resolve the discovery issues as to those tasks. Ex. 1-I (App'x pp. 190-203). Again, Skiplagged explained that it could not make preemptive agreements that its discovery issues were resolved without first seeing the amendments and productions. *Id.* Ultimately, AA refused to make any amendments or additional production. Thus, Skiplagged requests an order from the Court compelling full and complete discovery responses from AA and cease the prejudice caused to Skiplagged by AA's refusal to produce basic discovery.

## **ARGUMENTS AND AUTHORITIES**

### I.     **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 37, "a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34." *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-cv-2719-B, 2018 WL 3655574, at *4 (N.D. Tex. July 16, 2018) (quoting FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv)); *see Orchestrate HR, Inc. v. Trombetta*, 178

F.Supp.3d 476, 504 (N.D. Tex. 2016). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

The scope of discovery is governed by Federal Rule of Civil Procedure 26: "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D. Tex. 2005) (internal quotations omitted).

To be relevant under Rule 26(b)(1), documents or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017). As such, "the scope of discovery is not limited simply to 'facts,' but may entail other 'matters' that remain relevant to a party's claims or defenses, even if not strictly fact-based." *Id.* (internal quotations omitted).

A party opposing discovery has the burden of proof to "show specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive." *Merrill*, 227 F.R.D. at 477. The objecting party's response must "urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection." *Firebirds Int'l, LLC*, 2018 WL 3655574, at *7 (citing *Orchestrate HR*, 178 F. Supp. 3d at 507). "'[A] district court has broad discretion in all discovery matters….'" *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (*quoting Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.

5

2000)). "[Rule] 37(a)[] empowers the court to compel the production of documents and complete responses to interrogatories upon motion by the party seeking discovery." *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Exercise of the Court's discretion to compel is appropriate where the discovery sought is relevant to a claim or defense or, when accompanied by good cause, relevant to the subject matter involved in the action. *See, e.g.*, *SEC v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 926587, at *2 (N.D. Tex. Apr. 7, 2008).

## II.     AA's Boilerplate Objections and "Subject to" Responses are Improper

"Objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Orchestrate HR*, 178 F. Supp. 3d at 507. Further, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C); *see id.* Similarly, a response to an interrogatory must "urge and argue in support of its objection [] and, if it does not, it waives the objection." *Firebirds Int'l, LLC*, 2018 WL 3655574, at *7 (citing *Orchestrate HR*, 178 F. Supp. 3d at 507).

### A.  Boilerplate objections are not sufficient

As Magistrate Judge Ray set forth in his December 19, 2023 Order, "[i]n responding to requests for production under Federal Rule of Civil Procedure 34, '[t]he prohibition against general or blanket objections to discovery requests has been long established.'" Dkt. 53, quoting *Heller,* 303 F.R.D. at 483. Further quoting *Heller*, Judge Ray noted that "objections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections" even when such objections are in response to a specific discovery request. *Id.* Indeed "simply objecting to requests as 'overly broad, burdensome, oppressive and irrelevant' without showing 'specifically how each [request] is not relevant or how each question is overly broad,

6

burdensome or oppressive,' is inadequate to 'voice a successful objection.'" *Heller*, 303 F.R.D. at 483-84 quoting, *McLeod, Alexander, Powel & Apffel, P.C.* 894 F.2d 1482, 1484-86 (5th Cir.1990).

In response to nearly every request for production and interrogatory, AA asserts boilerplate objections without any explanation or reasoning. Such boilerplate objections include:

- Overbroad and unduly burdensome because it improperly requests American to marshal all of its evidence and discovery is still ongoing. Ex. 1-D, Response to Request for Production 11 (App'x pp. 58-59); Ex. 1-E, Responses to Interrogatories 2-11 (App'x pp. 127-138).

- Discovery is ongoing and American doesn't have the ability to answer. Ex. 1-E, Responses to Interrogatories 2-11 (App'x pp. 127-138).

- Overbroad and premature because the information sought is to be assembled and compiled for review in connection with expert reports due at a later date in the case. Ex. 1-E, Responses to Interrogatories 3-5, 8, 17, 24. (App'x pp. 130-133, 135-136, 140-141, 145).

- Seeks information that is irrelevant to any of the claims and defenses raised in this case. Ex. 1-D, Responses to Requests for Production 1-9, 11-13, 15-34, 38-102 (App'x pp. 51-123); Ex. 1-E, Responses to Interrogatories 12-13, 15-20, 23 (App'x pp. 139-143).

- Failure to describe with reasonable particularity each item or category of items to be inspected. Ex. 1-D, Responses to Requests for Production 1-9, 11, 13, 15-18, 20-34, 38-39, 41-57, 59-102 (App'x pp. 51-123).

In addition to these objections lacking logical support, AA fails to offer any specific reasoning to support these objections. Despite Judge Ray's previous instructions in this case, AA refuses to remove these improper objections. These objections should be overruled and AA should be ordered to provide full substantive responses and produce all responsive documents.

**B. AA's "vague and ambiguous" objections are improper**

In response to multiple interrogatories, requests for production, and requests for admission, AA asserts objections that certain words or phrases are vague and ambiguous without further explanation. "The party objecting to discovery as vague or ambiguous has the burden to show such

vagueness or ambiguity" and "must explain the specific and particular way in which a request is vague." *Heller*, 303 F.R.D. at 491 (internal citations omitted).

Moreover, even though the responding party may believe a word or phrase is vague or ambiguous they are required to "exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized" and if it is necessary to clarify its answers, the responding party can include "any reasonable definition of the term or phrase at issue." *Id.* (internal citations omitted).

Not only are AA's vague and ambiguous objections improper boilerplate, but also the words or phrases in Skiplagged's requests are commonly used, including by AA in its own discovery requests and business documents, and AA made no effort to apply the terms' usual meaning to respond to discovery. For example, Plaintiff objects to phrases such as "steps, policies, and procedures," "Skiplagging," "facilitated the purchase of AA flights," "governing or regulatory authority," "documents reflecting the process for purchasing a flight ticket on AA.com and each variation of such process," "evidencing," "efforts to stop," "supporting," "actions," "abilities," "complete file," "contend," "legs of a flight," "made some use of the American Marks," "made some use of the American Copyright," and objections to entire requests. Ex. 1-D, Responses to Requests for Production 2, 5, 7, 12, 18, 22-28, 33-34, 43, 66-67, 69-71, 77-81, 87-89, 92, 95, 99-101 (App'x pp. 51-123); Ex. 1-E, Responses to Interrogatories 3, 19, 21 (App'x pp. 130-131, 142-143) ; Ex. 1-F, Responses to Requests for Admission 1-2, 13-20, 22-29 (App'x pp. 151-152, 156-164).

Consequently, Skiplagged requests the Court overrule AA's improper vague and ambiguous objections and compel full and complete responses to Interrogatories 3, 13, 18, 19, 21,

8

Requests for Production 1-9, 11-12, 16, 18, 20-34, 40, 42-43, 45-52, 54-55, 58, 61-63, 66-67, 69-71, 75-81, 83-89, 92-102, and Requests for Admission 1-20, 22-29.

### C. AA fails to state whether information is being withheld or produced

In addition to asserting improper boilerplate objections, AA further responds to numerous requests that "subject to the foregoing objections" AA "will produce proportionally responsive, non privileged" documents or respond to an interrogatory. Ex. 1-D, Responses to Requests for Production 1-2, 4, 6-8, 11, 13, 17-18, 20-27, 30-31, 33, 35-39, 43, 45, 50-52, 59, 67-74, 77-81, 89, 92, 95-97, 99-102 (App'x pp. 51-123); Ex. 1-E, Responses to Interrogatories 1-11 (App'x pp. 127-138); Ex. 1-F, Responses to Requests for Admission 31-39 (App'x pp. 164-138).

AA's non-specific responses prevent Skiplagged from understanding if all responsive information has been produced and are manifestly confusing. *Heller*, 303 F.R.D. at 486-87 (the practices of responding to discovery requests "subject to" objections "is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"). This is especially true in light of AA's rolling production where it is unclear when and if Skiplagged will get the requested documents. Indeed, as *Heller* quotes, "such objection and answer…leaves the requesting party uncertain as to whether the question has been fully answered or whether only a portion of the question has been answered." *Id.* quoting *Consumer Electronics Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 WL 4327253, at *3 (S.D. Fla. Sept. 18, 2008).

Courts in the Northern District of Texas have concluded that responding to discovery requests "subject to" objections "is not consistent with the Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" because pursuant to the Federal Rules, a responding party has a duty to

respond to or answer a discovery request to the extent that it is not objectionable. *Id.* at 487. Moreover, if, despite objection, AA purports to respond to the discovery request, such objections are superfluous and should be overruled completely. *See id.* (responding "subject to" the objection "preserves nothing and serves only to waste the time and resources of both the Parties and the Court") (quoting *Consumer Electric*, 2008 WL 4327252, at *3).

The Court should order AA to state clearly in response to each request what it has produced and whether it is withholding documents, including whether it has failed or refuses to search for documents and information.

### III. AA is Improperly Withholding Documents and Information

#### A. Improper excuse of "if and when the specific information" and documents become available

After AA's improper form objections and "subject to" responses, in response to multiple discovery requests, AA states that it is "in the process, through discovery and work with its expert witnesses, of compiling additional information responsive to this [request] and will supplement this Answer when the specific information becomes available." Ex. 1-D, Responses to Requests for Production 12, 28-29, 34, 50 (App'x pp. 59-60, 71-72, 75-76, 85); Ex. 1-F, Responses to Interrogatories 2, 4-6, 8, 11 (App'x pp. 127-130, 131-136, 138).

The fact that discovery is ongoing is not an excuse to not provide responses or produce documents. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *2 (E.D. Tex. Apr. 27, 2018). Further, it again leaves Skiplagged confused as to whether all responsive documents and information have been produced.

Additionally, these requests and interrogatories do not require expert analysis in order to respond. For example:

**INTERROGATORY NO. 2:**

Identify each and every agreement or contract between You and Skiplagged that You allege Skiplagged breached. As part of Your answer, for each allegedly breached agreement, identify: (a) the date the agreement was executed; (b) each representative that executed the agreement; (c) the specific provisions You allege Skiplagged breached; (d) how Skiplagged breached each specific provision; (e) the date of each alleged breach, and (f) the alleged damages from each breach, including amounts of financial loss.

**INTERROGATORY NO. 5:**

Identify each and every "problem" allegedly caused by Skiplagged that You have expended employee time and resources investigating and trying to address as alleged in Paragraph 82 of the Complaint. For each such problem, identify and describe (a) the nature of the investigation and results thereof, (b) what steps were taken to "address the problem" and the results of same, (c) the employee time spent, (d) the resources spent, (e) the identity of each employee that conducted the investigation or tried to address the alleged problem, (f) and the dates of each.

**INTERROGATORY NO. 6:**

Identify and describe each of Your efforts to stop Skiplagged's alleged abusive practices as alleged in Paragraph 84 of the Complaint. As part of Your response, for each effort, identify (a) the date You took such efforts, (b) how Skiplagged allegedly took measures to hide or to elude Your efforts, (c) the alleged abusive practice the effort was aimed at, (d) the result of such efforts.

**INTERROGATORY NO. 8:**

Identify each and every existing contract or agreement to which You allege Skiplagged interfered. As part of Your response, for each contract, identify (a) the parties to the contract, (b) the date the contract was executed, (c) the date Skiplagged allegedly interfered with the contract, (d) the lost profits You allege were caused by that interference, and other financial losses caused by each such interference.

Ex. 1-E, Responses to Interrogatories 2, 5-6, 8 (App'x pp. 127-130, 132-136). AA's "you have to wait" responses are non-responsive under Rule 37(a)(4) and merely serve to delay production of relevant information and documents that severely prejudices Skiplagged's ability to defend itself in this litigation.  AA should be compelled to respond to Interrogatories 2, 4-6, 8, 11 and Requests for Production 12, 28-29, 34, 50 in full.

**B.   Intentionally withholding financial documents**

Similarly, though Skiplagged requested AA's financial documents, including profit and loss statements and balance sheets that AA must use to support its claim for actual damages, AA refuses to provide such documents and is withholding same until the disclosure of its expert(s) on

April 19, 2024, over two months after responsive documents were due. Moreover, Plaintiff's recent Motion to Compel [Dkt. 74] again seeks to push its expert disclosure date back and further withhold documents from Skiplagged, increasing the prejudice caused by AA.

Not only is the intentional withholding of responsive documents pending release of an expert report improper, but Skiplagged also requested all documents and information AA provided to its experts in this litigation. Ex. 1-D, Responses to Requests for Production 36 (App'x p. 76). AA seeks actual damages in this litigation. With expert disclosures due on April 19, 2024, it is impossible to believe that AA has not provided financial information to its expert(s). AA's intentional delay in producing relevant documents merely because their expert is relying on them is not only improper but also severely prejudicial to Skiplagged, which much provide expert(s) reports that analyze such information and adhere to court deadlines.

Consequently, Plaintiff should be compelled to produce documents in response to Request for Production 9, 12, 28, 40, 41, 50-51, and 58.

### C. Intentional withholding of trademark and copyright documents

Skiplagged's Requests for Production 56-58, 60-68, 75, 82-85, 87-88, 90-91 and Interrogatories 10, 17, 22-23 seek documents and information relevant to AA's trademark and copyright claims as well as Skiplagged's defenses to same. After asserting improper boilerplate objections, on April 2, 2024, Plaintiff produced only publicly available trademark documents from the US Trademark Office website. Plaintiff has not produced a single internal document or communication related to its trademark or copyright claims.

AA's objections to these requests and interrogatories are improper for all the reasons stated above and the information requested is relevant to the claims and defenses at stake in this litigation. Consequently, AA's objections should be overruled and AA compelled to response to these

requests in full.

### D. Refusal to identify contracts and breaches at issue

Two of AA's claims against Skiplagged are breach of contract and tortious interference with AA's Conditions of Carriage contract. Dkt. 8. In order to gain information relevant to AA's claims and Skiplagged's defenses, Skiplagged requested information such as the identity of contracts that AA alleges Skiplagged breached, the date of each alleged breach, the damages from each breach, the identify of each contract AA alleges Skiplagged interfered, the parties to such contract, the date of the contract and date of interference and damages. Ex. 1-E, Responses to Interrogatories 2, 8 (App'x pp. 127-130, 125-136). Skiplagged also requests information and communications related to AA's Use Agreement and Conditions of Carriage (the allegedly breached contracts), communications relating to the contracts allegedly interfered with by Skiplagged, and documents and communications supporting AA's allegations that Skiplagged entered into any contracts with AA. Ex. 1-D, Responses to Requests for Production 4, 10-11, 24, 45 (App'x pp. 53, 58, 68, 81).

To date, AA has flat out failed and refuses to provide any specific details or documents regarding the alleged breaches or interference with contracts and resulting damages. AA's excuse that it doesn't know details of the very contracts that are the basis of its claims is unfathomable considering it brought these claims. Similarly, the "you have to wait for expert disclosures" excuse is improper and inapplicable. To date, it is unclear to Skiplagged what breaches or interferences are even at issue in this litigation let alone the damages AA seeks for same. Consequently, Skiplagged is currently stonewalled from knowing what exactly it is defending against and AA should be ordered to produce the requested information in full or dismiss its breach of contract and tortious interference claims.

28265098v1 99460.002.00

## CONCLUSION

For the reasons discussed above, Skiplagged request that the Court order AA to, within seven days (1) amend all of its discovery responses to remove improper objections; (2) answer Skiplagged's Requests for Production, Interrogatories, and Requests for Admission in full; and (3) produce all documents provided to its expert(s). Skiplagged also requests an award of its fees and expenses related to this Motion to Compel under Fed. R. Civ. P. 37(a), as well as any other relief of which it may be entitled. Failing to do so prevents Skiplagged from adequately defending itself in this matter.

Dated: April 11, 2024.

Respectfully submitted,

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800

Facsimile: (214) 691-6311  
atobin@condontobin.com  
kreed@condontobin.com  
acampbell@condontobin.com  

***Attorneys for Defendant, Skiplagged, Inc.***

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Plaintiff on the issues presented in this motion. On February 16, 2024, I sent an eleven-page letter detailing these issues to Plaintiff. I participated in multiple meet and confer telephone conversations with Plaintiff, including conversations that lasted over an hour, on February 20, 2024, February 22, 2024, February 29, 2024, March 7, 2024, March 20, 2024, and March 27, 2024. I also exchanged multiple emails with Plaintiff on these issues. Due to the quickly approaching discovery deadline and the need for these documents in advance of expert disclosures and depositions, Skiplagged is submitting the motion for the Court's consideration.

*/s/ Abigail R.S. Campbell*  
Abigail R.S. Campbell

## CERTIFICATE OF SERVICE

On April 11, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Abigail R.S. Campbell*  
Abigail R.S. Campbell

28265098v1 99460.002.00