IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:23-cv-00860-P |
| SKIPLAGGED, INC., | § § § | |
| Defendant. | § | |

# DEFENDANT SKIPLAGGED, INC.'S RESPONSE
# IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com
***Attorneys for Defendant, Skiplagged, Inc.***

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY .................................................................. 2

ARGUMENTS AND AUTHORITIES ........................................................................................ 5

    I.    SKIPLAGGED FULLY COMPLIED WITH JUDGE RAY'S ORDER .................................................. 5

    II.    SKIPLAGGED IS NOT REQUIRED TO CREATE NEW DOCUMENTS OR COMPILE SUMMARIES ... 7

    III.  AA ALREADY POSSESSES RESPONSIVE INFORMATION ....................................................... 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721 .......... 7

*Marchese v. Sec'y, Dep't of the Interior*, Civ. A. No. 03-3082, 2004 WL 2297465 ....................... 7

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016) ..................... 7

*Wilson v. Navika Cap. Grp., LLC*, No. 4:10-CV-1569, 2014 WL 2534904 ................................... 7

**Rules**

Fed. R. Civ. P. 33 ................................................................................................................................ 6

28267810v1 99460.002.00

**PRELIMINARY STATEMENT**

Plaintiff American Airlines, Inc.'s ("AA") Motion to Compel is premised on a misunderstanding that Defendant Skiplagged, Inc. ("Skiplagged") is withholding documents. Skiplagged is not withholding documents. Rather, the documents that AA seeks do not exist and the data sought is either in an unproduceable raw form incapable of being downloaded or exported into a report or the result of an analysis Skiplagged is not required to perform for the purposes of a document production. Indeed, the data and analysis that AA seeks from Skiplagged does not already exist, let alone in the form demanded by AA, and would require Skiplagged to write new code to compile and organize data from multiple third-party platforms, overlay such data sets and cross reference the information, and then audit the information to make sure it is correct. Ex. 1, Declaration of Aktarer Zaman ("Zaman Decl.") ¶ (App'x pp. 1-2). Performing this process for the over one million bookings at issue would require at least one month to organize and audit, at least $100,000 in technical resources and employee time, and a level of technical sophistication that goes beyond routine data retrieval, with no guarantee of complete or accurate information. *Id.* at ¶ 4 (App'x p. 2).

Skiplagged fully complied with Judge Ray's December 19, 2023 Order in producing documents and communications responsive to AA's discovery requests. Skiplagged (1) amended its discovery responses to meet AA's demands; and (2) produced approximately 111,100 pages of documents, including financial records and documents evidencing customers that purchased an AA flight ticket facilitated by Skiplagged. Ex. 2, Affidavit of Abigail Campbell ("Campbell Aff."), ¶ 3 (App'x p. 5-6). Despite this, AA complains Skiplagged has not responded to Requests for Production Nos. 4 and 5 or Interrogatory No. 8 because Skiplagged has not produced spreadsheets similar to three alleged examples, which were the result of previous unrelated and failed internal

1

projects, and are inapposite to the additional discovery that AA is seeking. Rule 34 and AA's requests only require Skiplagged to produce documents and communications in Skiplagged's possession, custody, or control, which have all been produced by Skiplagged. In contrast, by this motion AA is improperly seeking to compel Skiplagged to compile, analyze, and summarize information for AA. Not only is this an improper use of discovery, but also AA cannot use Rule 34 to require Skiplagged to create or prepare new or previously non-existent documents solely for production.

AA's further request for an additional three weeks for its damages expert disclosure is not supported by argument or evidence. AA fails to explain or offer a declaration from its expert as to why the specific "data" AA seeks is necessary for the damages expert report.

Because responsive documents and information have already been produced by Skiplagged in response to Requests for Production Nos. 4 and 5 and Interrogatory No. 8 and AA is not entitled to force Skiplagged to create documents or analysis for the purpose of production nor impose the obligation for Skiplagged to write computer code to extract, organize, and analyze information from Skiplagged's database that would take months to perform, this Court should deny AA's Motion in its entirety.

## BACKGROUND AND PROCEDURAL HISTORY

AA filed its First Amended Complaint on August 17, 2023. Dkt. 8. On October 2, 2023, Skiplagged filed a Motion to Dismiss based on lack of personal jurisdiction. Dkt. 21. During the pendency of Skiplagged's Motion to Dismiss, AA served extensive discovery requests on Skiplagged. Though Skiplagged made extensive efforts to move discovery forward, AA thwarted all negotiations and filed a Motion to Compel Skiplagged. Dkt. 38.

On December 19, 2023, Magistrate Judge Ray held a hearing on AA's Motion to Compel

and then issued an order granting in part and denying part, AA's Motion to Compel. Dkt. 53. Specifically, Judge Ray ordered that Skiplagged respond to AA's Interrogatory No. 8 and as to Requests for Production Nos. 4 and 5:

> The Court **OVERRULES in part** and **SUSTAINS in part** Skiplagged's objections to RFP Nos. 4-5. Skiplagged **SHALL PROVIDE** all responsive documents in its possession and control pertinent to this RFP except with regards to Skiplagged's customer's social security numbers or credit card numbers.

Dkt. 38.

In response to Judge Ray's Order, Skiplagged worked with its third-party vendor to search for responsive documents and hired a team of at least 46 attorney reviewers in addition to trial counsel to review documents for production. Dkt. 57. On January 12, 2024, Skiplagged served its Third Amended Responses to AA's Interrogatories (Pl's App'x pp. 50-61) and Second Amended Responses to AA's Requests for Production (Pl's App'x pp. 34-49). Moreover, from December 15, 2023 to March 28, 2024, Skiplagged produced approximately 111,100 pages of documents. Ex. 2, Campbell Aff. ¶ 3 (App'x pp. 1-2). Amongst Skiplagged's production are its profit and loss statements, balance sheets, correspondence from Skiplagged customers who purchased AA flights or made "American Bookings" (as referred to in AA's discovery requests), internal communications and documents relating to customers who made "American Bookings," and documents and communications reflecting the PNR Data for these customers. *Id.* Skiplagged did not and is not withholding documents responsive to AA's discovery requests. *Id.*

On March 21, 2024 during a meet and confer regarding Skiplagged's issues with AA's discovery deficiencies, AA brought to Skiplagged's counsel's attention its belief that Skiplagged produced a document (SKP00081039) evidencing that Skiplagged had data that should have been

3

produced.[1] Ex. 2, Campbell Aff. ¶ 6 (App'x p. 6). Skiplagged investigated AA's claim in good faith. *Id.* at ¶ 7. On March 28, 2024, Skiplagged informed AA that the document it cited (SKP00081039) is not merely an export of data that Skiplagged can easily access nor is the data even accurate. *Id.*; Pl's App'x pp. 137-138. Skiplagged further explained that data similar to that represented in the cited document could only be retrieved by writing new software code and programs—*i.e.* creating not only new documents but a new program to create the new documents. *Id.* AA ignored this explanation, to which Skiplagged again explained that the documents AA seeks do not exist. *Id.* at p. 136.

On April 5, 2024, fourteen days before AA's expert disclosure deadline, AA filed its Motion to Compel responses to Requests for Production Nos. 4 and 5 and Interrogatory No. 8 as well as sanctions. Dkt. 75. Additionally, without any detail or support, let alone a declaration from its damages expert, establishing that the purportedly missing documents and information are necessary for AA's damages expert report, AA requests an extension of its expert disclosure deadline to three weeks after the demanded information is produced. *Id.* Ironically, previously AA had no difficulty in stating its claimed damages.

On April 11, 2024, the parties participated in a meet and confer via video conference. Ex. 2, Campbell Aff. ¶ 8 (App'x p. 7). Skiplagged again explained that it is not withholding responsive documents, that the spreadsheets sought by AA do not exist, and the examples referenced by AA are failed attempts to write code to gather different information than is sought by this Motion, but that there is no system or program by which Skiplagged can export data or run a report that would result in the data sought by AA. *Id.* AA insisted Skiplagged had a duty to create software and

---

[1] Notably, though AA's Motion also references SKP00081151 and SKP00081157, AA never mentioned these documents to Skiplagged prior to filing its Motion to Compel. Ex. 2, Campbell Aff. ¶ 7 (App'x p. 6).

4

documents that do not exist for the purpose of litigation and refused to accept any explanation. *Id*. AA's response made it clear that rather than analyze the documents already produced by Skiplagged, AA wants Skiplagged to compile and analyze data for AA's experts.[2]

### ARGUMENTS AND AUTHORITIES

**I.        Skiplagged Fully Complied with Judge Ray's Order**

Judge Ray ordered Skiplagged to respond to AA's Interrogatory No. 8 and as to Requests for Production Nos. 4 and 5:

> The Court **OVERRULES in part and SUSTAINS in part** Skiplagged's objections to RFP Nos. 4-5. Skiplagged **SHALL PROVIDE** all responsive documents in its possession and control pertinent to this RFP except with regards to Skiplagged's customer's social security numbers or credit card numbers.

Dkt. 38.

AA's discovery requests are:

> **INTERROGATORY NO. 8:**   Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.

Pl.'s App'x p. 30.

---

[2]    Skiplagged later proposed to resolve AA's Motion to Compel by which Skiplagged would write the software code that would publish a report containing all the record locator numbers for American Bookings. Ex. 2, Campbell Aff. ¶ 9 (App'x p. 7). The record locator number is the unique combination of letters and numbers associated with each flight ticket. *Id*. Because the bookings at issue were on AA flights, Skiplagged believes AA can use the record locator number to obtain the PNR Data requested from AA's own files. *Id*. AA refused to accept, stating that the record locator would only reveal how much AA earned, not Skiplagged's revenue and/or profits related to the bookings. *Id*.; Ex. A-1. Oddly, this financial information is not requested in Requests for Production Nos. 4 and 5 nor Interrogatory No. 8.

> **REQUEST FOR PRODUCTION NO. 4:** All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).
>
> **REQUEST FOR PRODUCTION NO. 5:** All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

Pl.'s App'x pp. 13-14.

In response to Judge Ray's Order, Skiplagged searched for all documents and communications (including emails and Slack messages) from August 1, 2018 to August 17, 2023 using reasonable search terms such as ticket, flight, booking, PNR data, fee, fare, data, inventory, and schedule, limited to American Airlines. Ex. 2, Campbell Aff. ¶ 3 (App'x pp. 5-6). All non-privileged, responsive documents were produced to AA and Skiplagged is not withholding any documents. *Id.* at ¶¶ 4-5. Indeed, AA's referenced "Exemplar Documents," though the result of failed projects, are an example of Skiplagged's production efforts. Similarly, because responsive information to Interrogatory No. 8 is present throughout the majority of the produced documents and Interrogatory No. 8 would require significant time, money, and effort for Skiplagged to compile and list, pursuant to Fed. R. Civ. P. 33(d), Skiplagged responded by referencing its production. For example, customer complaint emails from customers who booked AA flight tickets identify instances in which an "American Booking" occurred and often contain the PNR data AA seeks. *Id.* at ¶ 3. In addition, and relevant to AA's arguments, Skiplagged also provided the number of "American Bookings" and corresponding revenue in response to AA Interrogatory No. 1. Pl.'s App'x p. 53. This demonstrates the false premise of AA's Motion to Compel: it already has the

6

information that it evidently seeks through Interrogatory No. 8 and Requests for Production No. 4 and 5.

Consequently, Skiplagged fully complied with Judge Ray's December 19, 2023 Order, AA already has the substantive information that it is seeking, and AA's Motion to Compel should be denied in total.

## II.  Skiplagged is Not Required to Create New Documents or Compile Summaries

Parties "cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016) (citing *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010) (collecting cases); *accord Marchese v. Sec'y, Dep't of the Interior*, Civ. A. No. 03-3082, 2004 WL 2297465, at *4 (E.D. La. Oct. 12, 2004) ("Rule 34 does not require a party responding to discovery to create responsive materials, only to produce those in its possession, custody or control." (emphasis removed)). Similarly, parties are not required to cull through documents and create a spreadsheet or other document for the requesting party to use to prove its claims or damages. *Wilson v. Navika Cap. Grp., LLC*, No. 4:10-CV-1569, 2014 WL 2534904, at *4 (S.D. Tex. June 4, 2014).

Yet that is exactly what AA asks this Court to compel Skiplagged to do. The AA Motion to Compel does not contend that Skiplagged has documents containing all the information AA seeks and fails to cite any case law requiring Skiplagged to create new documents, let alone new software, to compile and summarize information for AA. Notably, AA also fails to offer any argument or evidence that its damages expert needs the demanded information for the damages expert report.

Despite having all Skiplagged's documents requested by Requests for Production Nos. 4

and 5 and Interrogatory No. 8, as well as the number of "American Bookings" and corresponding revenue as requested by AA's Interrogatory No. 1, AA nevertheless seeks an order compelling Skiplagged to create a spreadsheet or summary of over one million tickets and an analysis of the associated monetary values. No such documents exist and creating the information would require Skiplagged to write new software code to extract data from multiple third-party platforms, cross reference the information and then, since this process has never been done before, audit the compiled information to make sure it is correct. Ex. 1, Zaman Decl. ¶ 3 (App'x pp. 1-2).

Indeed, this is nothing like pressing a button and running a report. Skiplagged's database contains raw data related to all of Skiplagged's operations, including its flight, hotel, and car rental services. *Id.* at ¶ 2. The raw data on Skiplagged's database is in its most basic form, not organized or processed. *Id.* Such data is inaccessible without writing specific software code that creates a search program. *Id.* In other words, without writing a specific software program tailored to the precise information sought, the Skiplagged database cannot be searched to generate a report or exported for download. *Id.*

Further, AA's demands go far beyond standard data retrieval, and instead, demand elaborate and costly data generation. *Id.* at ¶ 4 (App'x p. 2). For example, AA indicates that it is seeking Skiplagged's profit data for each individual booking. Ex. 2-A (App'x pp. 9-10). Skiplagged does not store this data in such a format. Ex. 1, Zaman Decl. ¶ 4 (App'x p. 2). Calculating profits as AA demands would necessitate the painstaking process of cross-referencing over one-million bookings, with numerous transactions, on various third-party vendor systems. *Id* This involves taking into account the money received, any fees, disputes, penalties, and dynamic rewards from Skiplagged's reward program. *Id.* Skiplagged has never tried to do this before and AA's demand for "PNR Data" that does not already exist in any document would require newly

written the code, Skiplagged to test the new program to make sure it worked correctly and address any issues, run the program for each of the 18 sets of data in AA's definition of "PNR Data" plus additional categories requested for approximately one million bookings, overlaying such data sets and cross referencing the information to organize into a spreadsheet, and then auditing the spreadsheet to make sure the information is correct. *Id* This is not a mere extraction of existing data, but rather a complex calculation that would interrupt Skiplagged's ordinary course of business. *Id* Specifically, this process would require at least one month to organize and audit, at least $100,000 in technical resource and employee time, and a level of technical sophistication that goes beyond routine data retrieval, with no guarantee of complete or accurate information. *Id.*

The "Exemplar Documents" cited by AA (Pl.'s App'x Ex. A-8-10) are the result of past failed attempts by Skiplagged personnel to compile and analyze data for now-abandoned special projects. *Id.* at ¶¶ 5-6 (App'x p. 3). A Skiplagged employee wrote specific code to pull data from multiple platforms and then attempted to overlay, cross reference, and analyze data sets. *Id.* at ¶ 6. However, as the "Exemplar Documents" show, the code and analysis did not work, resulting in duplicate rows and incorrect, unreliable data sorting. *Id.* Further, the "savings information" AA references in these documents is not retained as a course of Skiplagged's operations. *Id.* Given the billions of searches conducted by Skiplagged's users, amounting to over 500 billion unique travel options, Skiplagged does not store "savings data" for each potential trip. *Id.* Moreover, to retroactively calculate such information for over one million records would require at least several months at a significant cost in resources and employee time, with no guarantee of complete or accurate information. *Id.* Consequently, these past failed projects do not exhibit that Skiplagged has documents and information it is withholding from AA nor that Skiplagged generates such spreadsheets in the ordinary course of business or has computer programs by which Skiplagged

9

can obtain the data sought by the Motion to Compel.

Because AA cannot use its discovery requests to impose on Skiplagged the burden of writing computer code and incurring extraordinary expense when Skiplagged has already provided the revenue information purportedly requested, the Motion to Compel should be denied in total.

**III.    AA Already Possesses Responsive Information**

Tellingly, AA's Motion to Compel fails to argue that AA does not have information responsive to Requests for Production Nos. 4 and 5 or Interrogatory No. 8, nor why AA's expert allegedly needs the requested data or three additional weeks to compose his report. *See* Dkt. 75. Rather, AA complains it does not have spreadsheets similar to three examples it found in Skiplagged's production without connecting the absence of the requested documents, which do not exist, to the subject matter of AA's expert report.

Indeed, as set forth above, Skiplagged has already produced all responsive documents in its possession, custody, or control and rather than culling through its documents to provide a summary of information to AA, Skiplagged's response to Interrogatory No. 8 referred to the multitude of documents indicating "American Bookings" that Skiplagged produced.

Though not required, in a good faith effort to go above and beyond and assist AA with discovery, Skiplagged offered to take on the burden to write new code for a new program that could create a report containing the record locator numbers for "American Bookings." Ex. 2-A (App'x p. 10). This process would be the least burdensome because it would not require overlaying multiple data sets or cross referencing. Ex. 1, Zaman Decl. ¶ 7 (App'x p. 3). In contrast to at least one month of time and over $100,000 it would require for Skiplagged to create the information AA seeks in its Motion to Compel, Skiplagged believes the process of creating and organizing the record locator numbers only requires a few hours. *Id*.

In furtherance of the parties' meet and confer, Skiplagged offered to provide the record locators for approximately one million bookings from August 1, 2018 to August 17, 2023, which Skiplagged estimates will require over 1500 pages of multiple columns. Ex. 2, Campbell Aff. ¶ 9 (App'x p. 7); Ex. 2-A (App'x p. 10). These record locators are not merely data points, but allow AA to access the comprehensive PNR information already maintained in AA's own systems, which information is what AA's seeks to compel Skiplagged to provide. Ex. 2, Campbell Aff. ¶ 9 (App'x p. 7)

In rejecting Skiplagged's proposal to resolve AA's purported discovery issues through the production of record locator numbers, AA revealed what it is really after—an analysis of Skiplagged's revenue and/or profits related to American Bookings. Ex. 2-A (App'x p. 9-10). However, this information is requested nowhere in the discovery at issue in AA's Motion to Compel. Indeed, neither Interrogatory No. 8 nor Requests for Production Nos. 4 and 5 seek Skiplagged's revenue or profits related to each American Booking and AA fails to make such a connection otherwise. Pl's App'x pp. 9-10, 30. Moreover, AA makes no argument as to why the unidentified information it claims to be missing is necessary to its expert disclosures. As such, AA's Motion to Compel is a mere pretext to gain additional time for its expert disclosures, which extension should also be denied.[3]

## CONCLUSION

Because Skiplagged fully complied with Judge Ray's December 19, 2023 Order, properly responded to Requests for Production Nos. 4 and 5 and Interrogatory No. 8, and because Skiplagged is not required to create new documents or write software to compile and analyze data

---

[3] On April 15, 2024, for reasons unrelated to AA's Motion to Compel, Skiplagged requested to extend both parties' expert deadline by two-court days.

11

for the sole purpose of production, AA's Motion to Compel, request for sanctions, and request for the extension of time to disclose its experts should be denied and Skiplagged further granted relief to which the Court finds Skiplagged entitled.

Dated: April 15, 2024.

          Respectfully submitted,

*William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

***Attorneys for Defendant, Skiplagged, Inc.***

**CERTIFICATE OF SERVICE**

      On April 15, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                               */s/Abigail R.S. Campbell*
                                               Abigail R.S. Campbell

28267810v1 99460.002.00