IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | (**Relates to the Motion Referred to** |
| | § | **Magistrate Judge Ray**.) |
| Defendant. | § | |

---

**AMERICAN AIRLINES, INC.'S REQUEST FOR GOOD FAITH CONFERENCE AND
RESPONSE TO DEFENDANT SKIPLAGGED'S MOTION TO COMPEL RESPONSES
TO DISCOVERY AND BRIEF IN SUPPORT**

---

## <u>TABLE OF CONTENTS</u>

PAGE

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

III.  ARGUMENT AND AUTHORITIES ................................................................ 6

    A.   Skiplagged has not satisfied the threshold requirements for filing its Motion to Compel. ........................................................................................ 6

        1.   Skiplagged refused to meaningfully confer with American about the specific issues raised in its Motion to Compel ............................................. 7

        2.   Skiplagged failed to "specifically and individually identify" any of the discovery requests it attempts to dispute. ................................................. 10

    B.   American's objections are not boilerplate objections. .......................................... 12

        1.   American is not required to "marshal all of its evidence." ...................... 12

        2.   Skiplagged's ubiquitous use of "all documents and communications" in its discovery requests necessitated repeated "relevancy" and "reasonable particularity" objections. ........................................................................... 14

    C.   American asserted valid "vague and ambiguous" objections. .............................. 15

    D.   American is not improperly withholding financial documents. ............................. 16

    E.   Skiplagged's Requests for "trademark and copyright documents" are irrelevant to the claims and defenses at issue. ................................................................... 17

        1.   The Facts Underlying American's Trademark and Copyright Claims are Undisputed ............................................................................................... 17

        2.   Skiplagged's Discovery Requests on Trademarks and Copyrights. ......... 20

    F.   American has repeatedly identified the contracts and breaches at issue in its live pleading. ....................................................................................................... 25

IV.   CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Batiste v. Lewis*,
 976 F.3d 493 (5th Cir. 2020) .................................................................................19

*Beall v. A2Z Limousine Trans*,
 No. 3:18-CV-194-G-BN, 2019 WL 13252643 (N.D. Tex. Jan. 29, 2019) (Dallas Division) .10

*Carter v. H2R Rest. Holdings, LLC*,
 No. 3:16-CV-1554-N-BN, 2017 WL 3724122 (N.D. Tex. Aug. 29, 2017) ...........................11

*Copus v. Life Ins. Co. of N. Am.*,
 No. 7:07-CV-113-R, 2008 WL 2794807 (N.D. Tex. July 18, 2008)......................................13

*Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*,
 No. 1:16-CV-0153-BL, 2018 WL 2317696 (N.D. Tex. May 22, 2018) (Abilene Division)6, 7, 9, 10, 11

*Gen. Universal Sys., Inc. v. Lee*,
 379 F.3d 131 (5th Cir. 2004) (per curiam)..............................................................19

*Heller v. City of Dallas*,
 303 F.R.D. 466 (N.D. Tex. 2014) (Dallas Division) .......................................................12, 15

*Herrmann Holdings Ltd. v. Lucent Technologies, Inc.*,
 302 F.3d 552 (5th Cir. 2002) ..............................................................................11

*Mahalingam v. Wells Fargo Bank, N.A.*,
 No. 3:22-CV-1076-L, 2023 WL 3575645 (N.D. Tex. May 19, 2023) (Dallas Division)........14

*Nerium Skincare, Inc. v. Olson*,
 No. 3:16-CV-1217-B, 2017 WL 277634 (N.D. Tex. Jan. 20, 2017), objections overruled sub nom., 2017 WL 9934881 (N.D. Tex. Feb. 6, 2017).............................................................15

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
 783 F.3d 527 (5th Cir. 2015) ..............................................................................19

*Paulsson Geophysical Servs. v. Sigmar*,
 529 F.3d 303 ..................................................................................................18

*ReSea Project APS v. Restoring Integrity to the Oceans, Inc.*,
 No. SA-21-CV-1132-JKP, 2023 WL 3029268 (W.D. Tex. Apr. 20, 2023) ...........................15

*Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*,
    325 F.R.D. 578 (N.D. Tex. 2017) (Dallas Division) ...............................................................11

*Sirey v. Metro. Life Ins. Co.*,
    No. CV 18-00197, 2018 WL 3928221 (E.D. La. Aug. 16, 2018) ...........................................13

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440 (5th Cir. 2017) ...................................................................................................17

*Tesoros Trading Co. v. Tesoros Misticos, Inc.*,
    10 F. Supp. 3d 701 (N.D. Tex. 2014) ......................................................................................18

*Turner v. JP Morgan Chase Bank, N.A.*,
    No. 3:12-CV-2701-M (BF), 2013 WL 12139324 (N.D. Tex. July 26, 2013) (Dallas
    Division) ..............................................................................................................................12, 13

*Woolery v. Doty*,
    No. 3:21-CV-1728-D, 2023 WL 416556 (N.D. Tex. Jan. 25, 2023) (Dallas Division) ...........9

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
    576 F.3d 221 (5th Cir. 2009) ...................................................................................................18

## Federal Statutes

15 U.S.C. 1115(b) ...........................................................................................................................18

15 U.S.C. § 1057(b) ........................................................................................................................17

15 U.S.C. § 1115(b) ............................................................................................................21, 22, 23

15 U.S.C. § 1116(a) ........................................................................................................................24

15 U.S.C. § 1117(a) ........................................................................................................................20

17 U.S.C. § 504(a) ..........................................................................................................................20

## Federal Rules

Fed. R. Civ. P. 9 .............................................................................................................................21

iv

Plaintiff American Airlines, Inc. ("American") respectfully files this Request for Good Faith Conference and Response to Defendant Skiplagged, Inc.'s ("Skiplagged") Motion to Compel Responses to Discovery and Brief in Support ("Motion to Compel") (ECF No. 83), and would respectfully show the Court as follows:

## I. INTRODUCTION

Skiplagged's Motion to Compel starts with a statement that violates the privilege of a court-ordered mediation,[1] and ends with a request that American answer all of "Skiplagged's Requests for Production, Interrogatories, and Request for Admission in full." [Mot. to Compel, p. 14]. Both of these statements, and the majority of the argument that Skiplagged sandwiches between them in its Motion to Compel and Brief, were not filed in the pursuit of discovery. They certainly weren't made in "good faith," a term Skiplagged uses liberally to describe its discovery efforts in this case.

In fact, Skiplagged's Motion to Compel is as bereft of detail as its meet and confer sessions were with American. For example, the Motion identifies broad categories of objections Skiplagged seeks to have overruled by the Court, but doesn't address *all* of the objections to any of American's document request answers. Skiplagged took this same kind of approach to the meet and confer sessions. It's team resisted discussing the specifics of American's responses; instead, pivoting away in pursuit of a sweeping resolution as outlined in its February 16, 2024 letter. It's no surprise to American that Skiplagged continued this unsuccessful approach in the court-ordered meet and confer this past Friday.

---

[1]Skiplagged writes, "Despite suing Skiplagged for over $55 million…" (Motion and Brief, p, 1). This $55 million number does not appear anywhere in American's Complaint. Skiplagged admits in Footnote 1 of its Motion to Compel that it obtained this information in a privileged communication during a Court-ordered mediation and does not even attempt to protect this information by filing the Motion to Compel under seal.

What Skiplagged's tactical decision left behind is a Motion to Compel that contains a scattershot approach to several broad categories of objections that Skiplagged claims are generally deficient.  But Skiplagged's analyses stops there.  It fails to evaluate American's objections in the context of the specific requests at issue, and leaves the Court to decipher if it can rule in a manner that will even cure the disputes between the parties.

For these reasons, and those set forth below in more detail, American requests that Skiplagged's Motion be denied in its entirety.

## II. FACTUAL BACKGROUND

American filed this lawsuit on August 17, 2023.  Skiplagged did not serve the discovery requests at issue in this Motion to Compel until roughly five months later, on January 10, 2024.  [ECF No. 1; Def.'s App'x 7, 30, 43].  American timely served objections and responses on February 9, 2024.  [Mot. to Compel, p. 2].  One week later, Skiplagged sent American a letter declaring virtually all of American's responses were deficient and demanding withdrawal of hundreds of American's objections.  [Def.'s App'x 170–181].  At the time Skiplagged sent its letter, counsel for Skiplagged had not even reviewed the documents American produced in response to the requests.[2]

American conferred with Skiplagged in good faith to try to resolve Skiplagged's discovery complaints beginning with an initial meeting on February 20, 2024.  Similar to counsel's February 16, 2024 letter and this Motion to Compel, Skiplagged consistently refused to specifically and individually address American's objections to its discovery requests.  Nevertheless, American attempted to address Skiplagged's discovery complaints, including offering to add an additional custodian, run additional search terms, gather additional documents specifically requested by

---

[2]Indeed, as of the parties' first meet and confer on February 20, 2024, counsel for Skiplagged admitted that she had not reviewed all of the documents American produced.

Skiplagged's counsel, and offering to modify and amend its responses to requests for admission and interrogatories. Unfortunately, it was clear from the beginning that Skiplagged was determined to bring American before the Court on a motion to compel.

During the first meeting, which lasted one hour, counsel for Skiplagged declared the process to be a waste of time, demanded American withdraw all of the challenged objections, and abruptly ended the meeting. [App'x 5–7]. The parties met again on February 22, 2024 for another hour or so, and discussed potential resolutions to Skiplagged's Requests for Admission, as well as Requests for Production Nos. 4, 18, 42, 44, 54, and 55.[3] During the next meeting on February 29, 2024, the parties addressed Requests for Production Nos. 12, 28–29, and 50–51, and counsel for Skiplagged suggested sending proposed search terms for American to consider in an attempt to globally resolve issues related to document requests. Despite American's efforts, the parties never again discussed requests for production individually, and the parties had not reached an impasse on any of the discussed document requests. Even though they served 166 discovery requests, Skiplagged focused its discussion on less than 25% of them and is now seeking to compel AA to amend every single response.

Ten days later, on March 8, 2024, Skiplagged sent American its proposed search terms. [App'x 13]. As promised, American analyzed the proposed search terms, and performed tests with the proposed terms to determine their efficacy for collecting responsive material. On March 20, 2024, the parties had a 45 minute meeting during which the parties discussed American's ongoing concerns with Skiplagged's refusal to produce data related to the American bookings sold through

---

[3]In the context of discussing Request for Production 55, Skiplagged's counsel claimed that Requests for Production Nos. 56–58, 61-67, 69, 75–6, 84–5, 87–8, 90–1, and 93–4 all had similar objections, but the parties did not address any of those requests individually.

Skiplagged's website,[4] American's response to Skiplagged's proposed search terms, and potential resolutions to the parties' dispute regarding interrogatories and requests for admission.

On March 22, 2024, American provided a detailed response to Skiplagged's proposed search terms indicating which terms it might agree to run, and offered specific reasons why it could not agree to run the rest. [Def.'s App'x 188–89]. Of the 20 proposed search term strings, American offered to run 14, and offered to work with Skiplagged to refine the remaining six. [*Id.*].

On March 25, 2024, Skiplagged responded unfavorably to American's search terms analysis and proposed resolution to the parties' discovery dispute. [Def.'s App.'x 191–98]. Nevertheless, the parties set another meeting for March 27, 2024 to attempt to resolve the disputes. During this roughly 40 minute meeting, counsel for Skiplagged did not have any substantive updates or response to American's proposed resolution from March 22, 2024. [App'x 21–22]. Skiplagged falsely accused American of having an "all or nothing" approach to resolving the parties' discovery dispute, refused to work to narrow its proposed search terms, and vaguely demanded that American withdraw the objections listed in Skiplagged's February 16, 2024 letter. Even still, the parties did not reach an impasse. Counsel for American followed-up the meeting with an email inviting Skiplagged to provide information that could help the parties reach a resolution, and stated availability for the next call. [*Id.*].

Meantime, the parties *did* reach an impasse on American's demand that Skiplagged produce the American booking data and associated revenue to Skiplagged that American's expert needs to complete his report, and American advised Skiplagged on April 5, 2024 that it intended to move forward with a motion to compel the data. [*Id.*]. Although the parties exchanged a few

---

[4] Counsel for American had been pressing this issue via email for weeks prior to raising the issue during this conference. [App'x 41–42].

emails between March 27 and April 5, 2024, counsel for Skiplagged never requested another meet and confer session, and never advised American those issues as to which Skiplagged believed the parties had reached an impasse. [*Id.*]. Without any additional conference, Skiplagged filed this Motion to Compel on April 11, 2024. The only thing that changed after the last meet and confer was that American filed its motion to compel.

Skiplagged's description of the background facts in its Motion to Compel is replete with false accusations and misleading statements. For instance, on the very first page of its Motion to Compel, Skiplagged claims American "has not identified the contracts that were breached or interfered with," and in the next sentence, asserts that American "claimed it is too big to do so." [Mot. to Compel, p. 1]. The truth, however, is that American identified the contracts at issue in its live complaint, in discovery responses, and during phone conferences and emails with opposing counsel. [1st Am. Compl., pp. 5–6, 12–30 (ECF No. 8); Def.'s App'x 127–30, 135–36, 189; App'x 19, 38–42]. To be clear, American's February 9, 2024 answer to Interrogatory 2 is two full pages of verified explanation "that Skiplagged has breached the AA.com Use Agreement and American's Conditions of Carriage," including specific reference to paragraphs of those agreements and how Skiplagged breaches those agreements. [Def.'s App'x 127–30]. Another key point—American has repeatedly advised Skiplagged that it cannot provide any additional clarity as to Skiplagged's wrongful conduct until Skiplagged produces the data in its possession detailing the American bookings made through Skiplagged's website. [*See* American's Mot. to Compel, pp. 1–2, (ECF No. 87);[5] *see infra* Par. III(H)].

Similarly, Skiplagged claims that American "merely refused to run search terms, did not

---

[5]For example, SKP00081151, a spreadsheet produced by Skiplagged, contains a snapshot from 2022 of many of the data points Skiplagged tracks that would provide the additional clarity needed and for which we are entitled.

propose alternative terms, and improperly limited the terms to just five custodians." [Mot. to Compel, p. 4]. However, the email traffic is clear that American did offer to run search terms, and was attempting to work with Skiplagged to satisfy its concerns. [Def.'s App'x 188-89; App'x 19–36]. Specifically, American inquired as to the specific discovery requests Skiplagged was targeting with its search terms, but Skiplagged refused to answer. [*Id.*]. Without knowing the requests at issue, American was incapable of crafting proposed alternative search terms that would be more effective. Nevertheless, American actually offered to add a new custodian in light of Skiplagged's discovery complaints in an attempt to avoid the need for judicial intervention in the parties' discovery dispute, and is actively working to collect, search, and produce additional documents even though the parties have been unable to reach an agreement on search terms. If Skiplagged would sit down with American and work diligently and constructively through the meet and confer process, most (if not all) of the issues raised in its Motion to Compel could be cured.[6]

### III. ARGUMENT AND AUTHORITIES

**A.    Skiplagged has not satisfied the threshold requirements for filing its Motion to Compel.**

"There are at least three 'threshold requirements for a proper Rule 37(a) motion to compel.'" *Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-CV-0153-BL, 2018 WL 2317696, at *13 (N.D. Tex. May 22, 2018) (Abilene Division) (citing *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 600 (N.D. Tex. 2017) (Dallas

---

[6] Many of the "disputes" in this Motion to Compel were minor quibbles that American readily resolved despite Skiplagged's lack of good faith conference. As ordered by the Court, the parties conducted a final meet and confer session last Friday that was as unfruitful as the rest that came before it because counsel for Skiplagged merely demanded production of documents while refusing to address the particular requests and objections raised in this Motion to Compel. The parties originally discussed conferring again on Saturday, but counsel for Skiplagged emailed Saturday around noon and claimed unavailability. In the absence of the ability to mutually agree, American unilaterally identified objections it could withdraw to limit the scope of discovery for the Court. [App'x 44–45].

Division)).  "The movant must (1) meet and confer regarding the specific discovery disputes at issue; (2) attach a copy of the discovery requests, responses, and objections that are placed at issue by the motion; and (3) specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute." *Id.*

　　　Skiplagged has not satisfied the first or third threshold requirement.

### 1.　Skiplagged refused to meaningfully confer with American about the specific issues raised in its Motion to Compel.

　　　"The conference requirements of the Federal Rules of Civil Procedure and the local rules of this Court serve the important function of narrowing or eliminating issues before a party seeks judicial involvement." *Eagle Railcar Servs.-Roscoe, Inc.*, 2018 WL 2317696 at *17 (citation omitted).  "Failures to confer may lead to unnecessary motions that require judicial resources to resolve disputes that the parties could have worked out themselves." *Id.* at *14.  "In general, the courts find a failure to confer to be an adequate reason to deny a discovery motion." *Id.* (gathering cases).  The Court is to assess "the reasonableness of movant's good-faith efforts [to confer] by considering not only the sheer quantity of contacts, but also their quality in relation to the issues in dispute." *Id.* at *15 (citation omitted).  "The duty to confer involves more than making a certain number of contacts with opposing counsel.  The quality of the contacts is far more important than the quantity." *Id.* at *15 (citation omitted).  "Further, when a movant raises a number of issues in a motion to compel, good faith efforts to confer generally require discussion of each matter in an attempt to resolve each issue without judicial intervention." *Id.* at 14. (citation omitted).

　　　While it is true that counsel for American and Skiplagged had as many as six discovery phone conferences and exchanged several emails in the roughly eight weeks preceding Skiplagged's Motion to Compel, the parties did not discuss the vast majority of the discovery requests Skiplagged lists in its Motion to Compel during any of those meetings or exchanges.  As

7

to those discussed, the parties had not reached an impasse prior to Skiplagged filing its Motion to Compel.  For instance, during the February 22, 2024 and February 29, 2024 meetings, the parties discussed American's objections and responses to only roughly 25 of the 102 Requests for Production Skiplagged served.  Then, at the conclusion of the February 29, 2024 conference, Skiplagged proposed exchanging search terms, dates, and custodians as a way to globally resolve the parties' disputes as to Skiplagged's Requests for Production.  Despite American's requests, Skiplagged never again discussed American's objections and responses to Requests for Production individually.  Instead, Skiplagged chose to file its Motion to Compel listing a whopping 100 of its 102 Requests for Production.

Similarly, the parties addressed American's objections to Skiplagged's Requests for Admission on February 22, 2024, after which counsel for Skiplagged agreed to consult with her client regarding the discussed potential resolutions.  Despite repeated follow-up requests, Skiplagged never responded to American's proposed solutions to the Requests for Admission.  Eventually, during the parties' March 20, 2024 meet and confer, counsel for Skiplagged admitted that she had not yet discussed the Requests for Admission with Skiplagged, and informed American that she "would much rather American focus on document production and the interrogatories."  The parties never again discussed ways to narrow disputes related to Skiplagged's Requests for Admission for the Court.  Nevertheless, without any further notice, Skiplagged listed Requests for Admission Nos. 1–20, 22–29, and 31–39 (i.e., all but two of its Requests for Admissions) in its Motion to Compel.

Finally, the parties only conferred on American's objections and response to Interrogatory 2, focused the lion's share of its conference time address American's subpart objections to Interrogatories 1–11 (which are not even at issue in this Motion to Compel), and never discussed

any of American's objections and responses to Interrogatories 12–25.  Nevertheless, Skiplagged has listed Interrogatories 2–13, 15–21, 22–23, and 25 in its Motion to Compel.

Skiplagged attempts to support its approach by referencing its letter dated February 16, 2024, which was sent before any discovery conferences.  [Mot. to Compel, pp. 1, 15].  This is improper.   "[W]hen a movant raises a number of issues in a motion to compel, good faith efforts to confer generally require discussion of *each matter* in an attempt to resolve each issue without judicial intervention." *Eagle Railcar Servs.-Roscoe, Inc.*, 2018 WL 2317696 at *14 (citations omitted) (emphasis added).

> When the dispute involves objections to requested discovery, ***parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery***. The parties need to address and discuss the propriety of asserted objections. They must deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention. They must make genuine efforts to resolve the dispute by determining precisely what the re-questing party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.

*Id.* (quoting *Cotracom Commodity Trading Co.*, 189 F.R.D. at 459) (emphasis added). Skiplagged's February 16th letter merely alleged wide-sweeping discovery deficiencies and demanded American withdraw its objections.  [Def.'s App'x 171–81].  That is not a sufficient conference under Rule 37(a).  *Eagle Railcar Servs.-Roscoe, Inc.*, 2018 WL 2317696 at *14.

Because Skiplagged "has presented nothing to the Court to show that the parties were indeed at an impasse requiring judicial involvement in the discovery dispute," the Court should "decline to entertain and thus deny the motion." *Id.* at *17; *see also Woolery v. Doty*, No. 3:21-CV-1728-D, 2023 WL 416556, at *1 (N.D. Tex. Jan. 25, 2023) (Dallas Division) (denying motion to compel because movant failed to meet the conference "threshold requirement" of Rule 37(a));

9

*Beall v. A2Z Limousine Trans*, No. 3:18-CV-194-G-BN, 2019 WL 13252643, at *1 (N.D. Tex. Jan. 29, 2019) (Dallas Division) (same).   Although the Court has the discretion to waive Skiplagged's failure to properly confer prior to filing its motion, the Court should not do so here because requiring Skiplagged to meaningfully complete the meet and confer process would not be a "waste of time."   American is ready to discuss each and every "matter raised in the motion to compel in an effort to resolve the parties' dispute or to limit the issues needing judicial resolution." *Id.*

### 2.  Skiplagged failed to "specifically and individually identify" any of the discovery requests it attempts to dispute.

"[A] movant must provide necessary identifying information to resolve the dispute presented for judicial resolution."  *Eagle Railcar Servs.-Roscoe, Inc.*, 2018 WL 2317696 at *17 (citing Fed. R. Civ. P. 7(b)(1) and 37(a)), N. D. Tex. L. Civ. R. 5.2(3) and 7.1).  This means the movant

> must specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute, including, for example, explaining . . . how a response or answer is deficient or incomplete, and ask the Court for specific relief as to each request; and must include a concise discussion of the facts and authority that support the motion as to each discovery request in dispute.

*Id.* (quoting *Samsung Elecs. Am. Inc.*, 325 F.R.D. at 600); *Beall*, 2019 WL 13252643 at *1.  Said differently,

> the ***party moving to compel has the initial burden*** to identify the nature and basis of the discovery dispute with sufficient specificity to (1) explain how each discovery response is deficient or incomplete, (2) ask for specific relief sought for each discovery request, and (3) provide facts and authority to support the motion for each request.

*Id.* at 18 (emphasis added).  A movant fails to meet this initial burden as to the objections it

challenges in a motion to compel when it merely "list[s] them by number." *Samsung Elecs. Am. Inc.*, 325 F.R.D. at 600. Moreover, movants cannot cure this deficiency at a hearing because "counsel's explanations and argument presented for the first time at oral argument come too late." *Id.*; *Carter v. H2R Rest. Holdings, LLC*, No. 3:16-CV-1554-N-BN, 2017 WL 3724122, at *6 (N.D. Tex. Aug. 29, 2017); *see also Herrmann Holdings Ltd. v. Lucent Technologies, Inc.*, 302 F.3d 552, 562 n.2 (5th Cir. 2002).

Skiplagged failed to specifically identify any of the disputed requests in its Motion to Compel, opting instead to improperly lump large swaths of objections together under a general alleged deficiency, and ask the Court to broadly overrule all objections as a group "list[ed] by number." *See id.* Moreover, none of the disputed objection in Skiplagged's motion are broken down individually with "facts and authority to support the motion for each request." *Eagle Railcar Servs.-Roscoe, Inc.*, 2018 WL 2317696 at *18. For the Court's convenience, American has included a chart identifying the wide breadth of objections at issue in this Motion to Compel. [App'x 47–72].[7]

For example, Skiplagged attempts to challenge *all* of American's relevancy objections across *all* discovery responses in one sweeping list: "Responses to Requests for Production 1–9, 11–13, 15–34, 38–102 []; [] Responses to Interrogatories 12–13, 15–20, 23 []." [Mot. to Compel, p. 7]. Skiplagged's wide-sweeping and shallow challenge of American's relevancy objections is not unique; indeed, all of Skiplagged's challenges are similarly devoid of specificity and individuality. [*See* Mot. to Compel, pp. 7–13].

---

[7]Significantly, Skiplagged has not moved to overrule all of American's objections to Skiplagged's Requests for Production, Interrogatories, and Requests for Admission. Skiplagged's Motion does not clearly identify which objections it seeks to have the Court overrule, and it paints with broad strokes like "such boilerplate objections include. . . ." Yet, for nearly all of Skiplagged's requests, Skiplagged has only moved the Court to withdraw a portion of American's objections. [*See* App'x 47–72].

Because Skiplagged's Motion to Compel fails the threshold "specificity" requirement, the Court should deny the Motion to Compel in its entirety.

**B.    American's objections are not boilerplate objections.**

It is well established that boilerplate objections are prohibited in federal civil practice. *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014) (Dallas Division).   That is, "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections." *Id.*  In a brief, bullet-point list, Skiplagged asserts in conclusory fashion that American has asserted various boilerplate objections that impact virtually all of American's responses to Skiplagged's Requests for Production and Interrogatories, listing the allegedly deficient responses by number.  [Mot. to Compel, p. 7].  At the end of its list, Skiplagged baldly claims that "[i]n addition to these objections lacking logical support, [American] fails to offer any specific reasoning to support these objections." [*Id.*].  Without more, Skiplagged then asks the Court to overrule hundreds of American's objections across various discovery requests.  As demonstrated below, Skiplagged's sweeping approach to challenging American's objections are improper.

**1.    American is not required to "marshal all of its evidence."**

Skiplagged challenges American's objection to Request for Production No. 11 that it "improperly seeks to require American to marshal 'all evidence.'"  [Def.'s App'x 58–59].  Accordingly, American's objection specifically includes the exact language from the request itself, thereby making clear that the objection is not "boilerplate."  [*Id.*].  The entirety of Skiplagged's challenge to this request is that it "lack[s] logical support." [Mot. to Compel, p. 7].  It does not.

As an initial matter, there is nothing improper or disfavored about a responding party objecting to a discovery request that requires the party to "marshal all of its evidence." *See Turner*

*v. JP Morgan Chase Bank, N.A.,* No. 3:12-CV-2701-M (BF), 2013 WL 12139324, at *1 (N.D.

Tex. July 26, 2013) (Dallas Division) ("Defendant is not required to marshal Plaintiffs' evidence

for them"); *Copus v. Life Ins. Co. of N. Am.*, No. 7:07-CV-113-R, 2008 WL 2794807, at *2 (N.D.

Tex. July 18, 2008) ("Defendant need not marshal its evidence."); *Sirey v. Metro. Life Ins. Co.*,

No. CV 18-00197, 2018 WL 3928221, at *6 (E.D. La. Aug. 16, 2018) (sustaining objection

because "the Court finds that the Defendant is not required to marshal Petitioner's evidence for

her").

 American's assertion of this objection is valid.  Request for Production No. 11 seeks "[a]ll

communications relating to the contracts or agreements allegedly interfered with, including, but

not limited to, ***all evidence*** that Skiplagged was aware of such contract or agreement."  [Def.'s

App'x 58–59 (emphasis added)].  This request is structured similarly to the document requests at

issue in *Turner*, which sought "***all evidence*** supporting any claim that [Defendant] properly posted

the Property for foreclosure."  *Turner*, 2013 WL 12139324 at *1 (emphasis added).  In that case,

the responding party produced roughly 6000 pages of responsive documents, and the Court found

that doing so complied with its discovery obligations because parties are "not required to marshal

[opponent's] evidence for them."  *Id.*  In its Motion to Compel, Skiplagged did not assert any facts

to demonstrate that American has failed to meet its discovery burden as to Request for Production

No. 11, nor has it identified any relevant documents it believes American is withholding based on

this objection.  Request for Production No. 11 is improper to the extent it seeks "all evidence," and

American's objection is a valid mechanism for preserving its opposition to Skiplagged's attempt

to expand American's discovery obligations beyond that required by the Federal Rules of Civil

Procedure.  Accordingly, the Court should deny Skiplagged's Motion to Compel on this point.

2.      **Skiplagged's ubiquitous use of "all documents and communications" in its discovery requests necessitated repeated "relevancy" and "reasonable particularity" objections.**

Skiplagged complains that American has asserted "boilerplate" objections because it claims American has asserted two objections as to various requests: (1) that the request "[s]eeks information that is irrelevant to any of the claims and defenses raised in this case," and (2) that the request is deficient because of its "[f]ailure to describe with reasonable particularity each item or category of items to be inspected."[8] [Mot. to Compel, p. 7].

American's objections are not "boilerplate" merely because similar objections were asserted as to many of Skiplagged's requests. *Mahalingam v. Wells Fargo Bank, N.A.*, No. 3:22-CV-1076-L, 2023 WL 3575645, at *5 (N.D. Tex. May 19, 2023) (Dallas Division) ("For objections that deserve the label "boilerplate," counsel's repeating them in response to more than one discovery request is not the problem; counsel's failing to explain the basis for them as to each individual discovery request is."). To determine whether an objection is boilerplate, "the language must be read in the context of the . . . general objections" to see whether the entirety of the objection "provide[s] [a] detailed explanation[] for the [responding party's] arguments regarding relevancy and privilege." *Amos*, 2020 WL 7049848, at *8 ("while the defendants utilized near-identical language at the beginning of their discovery responses, the language cited by the plaintiffs does not represent the entirety of the specific objections to the discovery requests."). When a responding party "detail[s] why their general objections appl[y] to the specific request at issue . . . the objection is not boilerplate." *Id.*

This is especially true when, as is the case here, the requesting party uses the same

---

[8]Skiplagged did not quote American's objections in its Motion to Compel, and American did not assert objections phrased the way Skiplagged states them in any of its responses. Skiplagged's inability to quote the allegedly boilerplate" objections underscores that American's objections were not "cookie cutter" responses that lacked particularity and support.

objectionable request format throughout.  Because Skiplagged began virtually every one of its requests demanding "[a]ll documents and communications" or "all communications," American was obligated to assert specific objections throughout its responses.  Similarly, Skiplagged repeatedly used the objectionable term "relating to," which meant American had to assert the same objection as to each use.  *See ReSea Project APS v. Restoring Integrity to the Oceans, Inc.*, No. SA-21-CV-1132-JKP, 2023 WL 3029268, at *3 (W.D. Tex. Apr. 20, 2023) ("When use of the omnibus phrase relating to . . . does not modify a specific type of document, but rather all documents, such use makes the request overly broad on its face.") (internal quotation marks and citation omitted); *Nerium Skincare, Inc. v. Olson*, No. 3:16-CV-1217-B, 2017 WL 277634, at *7 (N.D. Tex. Jan. 20, 2017), objections overruled sub nom., 2017 WL 9934881 (N.D. Tex. Feb. 6, 2017) (sustaining objection to a request for "all documents relating to" as overbroad).

## C.    American asserted valid "vague and ambiguous" objections.

Similar to Skiplagged's complaint that American's objections are "boilerplate," its challenge to American's "vague and ambiguous" objections paints with too broad of a brush.  Here again, Skiplagged has challenged all "vague" and "ambiguous" objections American asserted in response to many of its more than one hundred requests, and summarily claimed that American hasn't supported any of them.  That's simply not true.  Despite Skiplagged not conferring with American on any of the "vague" or "ambiguous" objections asserted in response to its Requests for Production prior to filing its Motion to Compel, American has since agreed to withdraw those objections in an effort to narrow the scope of this dispute for the Court.  *Heller*, 303 F.R.D. at 492 (quotation omitted) ("because objections to the wording of a discovery request are usually resolved by phone calls or meetings between counsel, the objection that a discovery request is vague or ambiguous calls into question whether the required meet and confer was conducted in good

15

faith."). Instead, American only urges and stands upon its objections to Skiplagged's Requests for Admission and only three Interrogatories: numbers 13, 18, and 21.

Not only are American's objections valid, but American attempted to work with Skiplagged to clarify the words and phrases that were objectionable in Skiplagged's Requests for Admission during the meet and confer process. Skiplagged's counsel refused to provide clarity or reach an agreement with American to resolve the objectionable language. Indeed, as of March 20, 2024, counsel for Skiplagged admitted that she had not yet discussed the Requests for Admission with Skiplagged, and informed American that she "would much rather American focus on document production and the interrogatories."

Skiplagged did not, however, confer with American as to its "vague" and "ambiguous" objections to Skiplagged's Interrogatories. Nevertheless, American has agreed to withdraw its "vague" and "ambiguous" objections to all interrogatory responses other than 13, 18, and 21. As to those requests, American urges and stands upon its objections for the reasons described with particularity in its timely served objections.

American remains willing to work with Skiplagged to arrive at non-objectionable language that would resolve these discovery disputes. Otherwise, American has no choice but to stand on and re-urge its objections to Skiplagged's Requests for Admission.

## D.    American is not improperly withholding financial documents.

Skiplagged's entire premise underlying its demand for production of "financial documents, including profit and loss statements and balance sheets" is that American "must use [these documents] to support its claim for actual damages. [Mot. to Compel, p. 11]. That premise is false. American has not provided—and does not need to provide—the financial documents demanded by Skiplagged in its Motion to Compel to its expert. American has already produced

16

to Skiplagged all documents that have been provided to its experts.  Furthermore, contrary to Skiplagged's assertion that American refused to produce financial documents, American has produced 10-Ks for the relevant years.  Although these 10-Ks are for American Airlines Group, there is a consolidated financial statement specifically for American Airlines, Inc.

American therefore stands on its objections asserted as to Requests for Production Nos. 9, 12, 28, 40, 41, 50–51, and 58, which are the requests Skiplagged listed in its Motion to Compel when asserting this challenge.  [Mot. to Compel, p. 12].  American further notes for the Court that Skiplagged did not challenge any of American's objections to those requests when demanding production of the financial documents, nor did it present any argument or facts specific to any of those requests in its brief.

**E.     Skiplagged's Requests for "trademark and copyright documents" are irrelevant to the claims and defenses at issue.**

### 1.     The Facts Underlying American's Trademark and Copyright Claims are Undisputed

Before addressing the individual requests, it is important to consider that the fundamental facts supporting American's trademark and copyright claims are indisputable. There is no dispute in this litigation that Skiplagged uses American's *exact* trademarks and copyrights, including American's *exact* trademarked and copyrighted "flight symbol." As a result, many of the factual questions that might arise in an ordinary trademark or copyright case are not relevant here.

To prove trademark infringement American must prove (a) that it owns valid and protectable marks, and (b) that Skiplagged's use of these trademarks "creates a likelihood of confusion as to source, affiliation or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). American's trademark registrations are *prima facie* evidence of its trademarks, and therefore satisfy the first element.  15 U.S.C. § 1057(b); *see also*

17

*Tesoros Trading Co. v. Tesoros Misticos, Inc.*, 10 F. Supp. 3d 701, 710 (N.D. Tex. 2014). These registrations also demonstrate that American's trademarks are incontestable under 15 U.S.C. 1115(b), which states that "the registration shall be conclusive evidence of the validity of the registered mark, and of the registrant's exclusive right to use the registered mark in commerce." The statute limits the defenses which can be asserted against an incontestable trademark, and Skiplagged has not asserted any of those defenses in its Answer. Accordingly, American's ownership of valid trademarks is undisputed and there is no discovery to conduct on this issue.

To establish the second element, likelihood of confusion, courts consider the "digits of confusion."[9] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). These include "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id*. But analysis of these factors is unnecessary when the accused infringer is using an *exact copy* of asserted marks. *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 311 (affirming district court's decision not to analyze the likelihood of confusion factors because the marks were an exact match). There is no dispute in this case that Skiplagged is using exact copies of American's AMERICAN AIRLINES, AMERICAN, AA and FLIGHT SYMBOL trademarks.

Even if the Court were to review each digit of confusion, out of an abundance of caution, it is clear that they all weigh heavily in favor of American, on the undisputed facts. They are strong, well-known marks; Skiplagged is using the identical marks; Skiplagged is selling identical products; the target consumers are exactly the same; Skiplagged advertises in the same media; Skiplagged clearly intends for consumers to believe it has the authority to act as American's agent

---

[9] These are referred to as likelihood of confusion "factors" in other Circuits.

for the purpose of issuing tickets; and consumers generally do not engage in an inquiry as to whether Skiplagged is an authorized agent, as demonstrated by Skiplagged's substantial sales. In short, likelihood of confusion is a foregone conclusion and there is no relevant fact discovery to conduct on this issue.

With respect to copyright infringement, American must prove "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015). Once again, a certificate of registration is *prima facie* evidence of ownership and validity. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (per curiam). A defendant may attempt to rebut this presumption, but Skiplagged has not alleged in its answer that American's Flight Symbol copyright is invalid. Accordingly, there is no factual dispute on this element and no discovery to conduct.

There is also no discovery to conduct on the second and third elements. Factual copying may be inferred from (a) striking similarity, or (b) a combination of access and substantial similarity. *Batiste v. Lewis*, 976 F.3d 493, 503-505 (5th Cir. 2020). Once again, it is undisputed that Skiplagged had access to American's Flight Symbol image, and that the image is identical to American's, so access, substantial similarity, and striking similarity are already proven and undisputed.

Skiplagged's discovery requests must be weighed in the context of these undisputable claims. Because American has *already* marshaled adequate proof of its claims – Skiplagged's own website is indisputable evidence—Skiplagged's discovery requests are seeking information which is irrelevant, and certainly not proportional to the needs of this case.

19

## 2. Skiplagged's Discovery Requests on Trademarks and Copyrights.

Request Nos. 56–58 seek *all* documents *and* communications demonstrating the value of American's trademarks and copyrights generally. This request does not seek relevant evidence. For the trademark claims, American has the option of pursuing "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). For the copyright claims, American has the option of pursuing "(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages." 17 U.S.C. § 504(a). American is basing its damages claims under both statutes on Skiplagged's profits, as well as the direct and consequential damages caused by Skiplagged's infringement. American has not advanced any damages argument based on a valuation of its trademarks or its copyright.[10] Further, even if American had advanced this as a theory of damages, the request for *every* communication and *every* document relating to "value" is patently overbroad.

Request No. 60 seeks "all assignments or documents affecting any rights" in American's trademarks and copyright, for all time. But given that American has already demonstrated a *prima facie* case of ownership of its trademarks and copyrights, given that the trademarks are incontestable, there is no relevance to a general fishing expedition into the decades-long history of American's intellectual property rights.

Request No. 61 seeks all licenses of American's trademarks and copyrights, but American's licenses would only be potentially relevant if American was seeking damages based on a reasonable-royalty-type calculation. It is not.

Request No. 62 seeks "valuations" of American's trademarks and copyrights. This request is irrelevant for the same reason Request Nos. 56-68 are not relevant.

---

[10] American did produce its overall 10-k statements, arguable requested in Request No. 58, despite the apparent lack of relevance, as they are public documents.

Request No. 63 seeks opinions on the validity or enforceability of American's trademarks and copyrights. But American has already demonstrated a *prima facie* case of validity and enforceability by providing copies of its registrations. Further, Skiplagged *can't* challenge the validity of American's trademarks because they are incontestable. 15 U.S.C. § 1115(b). The only way Skiplagged can challenge the validity of the marks is to allege fraud, which Skiplagged would have had to plead with particularity under Fed. R. Civ. P. 9.  Further, to the extent any such opinions exist, they would almost certainly be privileged.

Request No. 64 seeks documents identifying all individuals that participated "in any way" with the creation of American's copyright. This request is presumably a fishing expedition into American's ownership of the copyright. But American's copyright registration identifies the authorship of the flight symbol on its face. American has complied with this request.

Request No. 65 seeks documents regarding the copyright authors' employment or contract status with American. This request is apparently a fishing expedition into ownership, but American's registration already establishes a *prima facie* case of validity of the copyright and of the facts stated on the certificate, and Skiplagged has not asserted a counterclaim or affirmative defense that the copyright is invalid. Indeed, Skiplagged's affirmative defenses only appear to challenge damages.

Request No. 66 seeks the "complete file" for the American Copyrights. American has produced the copyright registration.  American has agreed to produce responsive documents to the extent they are not privileged, are in American's possession, custody and control, and can be located after a reasonable search. American notes that the documents Skiplagged appears to be seeking also appear to be public information.  Similarly, Request No. 67 seeks the "complete file" for American's trademarks. These items are publicly available information, readily downloaded

21

from the trademark office website, and as Skiplagged noted in its motion, American already produced the trademark files.

Request No. 68 seeks *all* documents establishing American's initial and *continued* use in commerce of the American Marks. This request does not seek relevant information because the American Marks are incontestable and because Skiplagged has not alleged any of the limited defenses permitted by 15 U.S.C. § 1115(b). Further, evidence regarding American's initial and continued use in commerce is contained in the public trademark files already produced. The request is also painfully overbroad and American objected for that reason as well.

Request No. 75 seeks documents showing "any difference in legal rights" between American's marks and its copyright. To the extent this request is understandable, it appears to be seeking statutes, legal treatises and case law explaining the differences between copyrights and trademarks. This is not a proper document request as it effectively asks American to perform legal research for Skiplagged.

Request No. 82 seeks documents and communications relating to when Skiplagged first used the copyrighted Flight Symbol and when American first became aware of it. The first portion of this request seeks information that is not in American's possession, custody or control. The second portion of this request seeks information that is not relevant because it seeks "***all*** documents and communications," and the only relevant document or communication to this request is the one that identifies "when American first became aware of" Skiplagged's unauthorized use of the copyrighted Flight Symbol.

Request No. 83 seeks documents as to "why" American purportedly "waited" to file its copyright claim. This request does not seek relevant information; it is neither relevant under *Martinelli* nor under the pending *Warner Chappel Music v. Nealy* Supreme Court case.

22

Request No. 84 seeks all documents and communications regarding American's first awareness of Skiplagged's use of American's marks. This request is patently overbroad, as it appears to require American to search the entire company for all communications referencing skiplagged for the entirety of Skiplagged's existence.

Request No. 85 seeks all documents and communications regarding the "reasons why" American did not file its trademark claims until August 17, 2023. This request is patently overbroad, as it appears to require American to search the entire company for all communications referencing skiplagged for the entirety of Skiplagged's existence.

Request No. 87 seeks *all* documents *and* communications relating to the validity and enforceability of American's copyrights. But this request is not relevant to any claim or defense at issue in this case. As noted above, American has already established a *prima facie* case of validity and Skiplagged has not alleged invalidity or asserted any affirmative defense relating to validity. Further, this request is overly broad, as it seems to ask American to search the entire company, across all of time, for files which may be relevant to a defense Skiplagged has not asserted.

Request No. 88 seeks *all* documents *and* communications relating to the validity and enforceability of American's trademarks. This request is not relevant to any claim or defense because American has already established its *prima facie* case, because its trademarks are incontestable, and because Skiplagged has not asserted any affirmative defense or counterclaim allowed under 15 USC § 1115(b). Further, the request like many others is designed as a nuisance, ostensibly asking American to search the entire company, across all of time, for files which may be relevant to a defense Skiplagged has not even asserted.

Request Nos. 90 and 91 seek *all* documents demonstrating by year the amount of advertising spent using the American Marks and American's sales. This request was properly

objected to on several grounds.  Moreover, American has agreed to produce a document containing its advertising spend and has provided its public 10-k forms (which demonstrate American's revenue) in response to these requests.  But this request asks American to produce *every* document seeking the same information and Skiplagged has provided no explanation for why American should engage in this burdensome search, nor does American understand what value cumulative information would have.

Interrogatory No. 9 seeks a description of the irreparable harm American has suffered. American identified injury to reputation, loss of goodwill and consumer confusion as evidence of irreparable harm, and has also produced to Skiplagged complaints American has received from consumers exhibiting confusion. Further, American notes that it enjoys a rebuttable presumption of irreparable harm pursuant to 15 U.S.C. § 1116(a). Given that American has already described the irreparable harm in its response and other pleadings, and that American has produced consumer complaints exhibiting actual confusion, American is at a loss as to what further information Skiplagged is seeking, as the consumer complaints alone are enough to establish irreparable harm.

Interrogatory No. 17 seeks an itemization of damages. American noted in its objections this will be the subject of expert testimony and is preparing a detailed expert report which it plans to serve shortly.

Interrogatory No. 22 seeks information on how and when American became aware of Skiplagged's use of American's trademarks and copyright. As set forth above (Request Nos. 82–83), this information is not relevant.

Interrogatory No. 23 seeks information regarding American's efforts to license or enforce its trademarks and copyright. This information is not relevant to any claim or defense at issue in this case. American is not seeking reasonable-royalty-type damages.

**F.      American has repeatedly identified the contracts and breaches at issue in its live pleading.**

American has not "flat our failed [or] refuse[d]" to identify the contracts and breaches at issue.  On the contrary, American has provided the fullest, most-complete response it can as of the date of this filing.[11]  Moreover, as American has repeatedly made expressly clear that "[t]he date of each alleged breach is the date of every time Skiplagged has accessed AA.com and misused AA.com in the abovementioned manners," [*Id.*] and "Skiplagged interferes with the Conditions of Carriage every time it promotes prohibited forms of travel and encourages its customers to lie about their travel to American."  [Def.'s App'x 135–36].

Until Skiplagged produces the data related to American bookings made through Skiplagged's website, as sought in American's pending Motion to Compel, American is not able to provide any greater detail than it has already provided related to the specific breaches and instances of tortious interference.

## IV. CONCLUSION

For the abovementioned reasons, American requests that the Court (1) deny Skiplagged's motion (without prejudice) for failure to comply with the threshold requirements for filing a Motion to Compel; (2) re-set the hearing on the Motion to Compel and order Skiplagged and American to meaningfully confer in good faith and specifically identify which, if any, discovery requests are truly at issue in Skiplagged's Motion to Compel; (3) deny Skiplagged's request of an award of its fees and expenses related to its Motion to Compel; and (4) grant American any other relief to which it may be entitled at law or in equity.

---

[11]Again, American's response to Interrogatory 2 states in pertinent part that "Skiplagged has breached numerous provisions of American's Use Agreement and Conditions of Carriage," and identifies the specific paragraphs at issue.  [Def.'s App'x 128–130; *see supra* pp. 5, 8].

Dated: April 15, 2024                                        Respectfully submitted,

                                                             */s/ Dee J. Kelly, Jr.*
                                                             Dee J. Kelly, Jr.
                                                             State Bar No. 11217250
                                                             dee.kelly@kellyhart.com
                                                             Lars L. Berg
                                                             State Bar No. 00787072
                                                             lars.berg@kellyhart.com
                                                             J. Austin Franklin
                                                             State Bar No. 24075853
                                                             austin.franklin@kellyhart.com
                                                             Julia G. Wisenberg
                                                             State Bar No. 24099146
                                                             julia.wisenberg@kellyhart.com
                                                             KELLY HART & HALLMAN LLP
                                                             201 Main Street, Suite 2500
                                                             Fort Worth, Texas 76102
                                                             (817) 332-2500

                                                             Bina Palnitkar
                                                             State Bar No. 24070378
                                                             palnitkarb@gtlaw.com
                                                             GREENBERG TRAURIG LLP
                                                             2200 Ross Avenue, Suite 5200
                                                             Dallas, TX 75201
                                                             Telephone: (214) 665-3600

                                                             Nathan J. Muyskens
                                                             nathan.muyskens@gtlaw.com
                                                             GREENBERG TRAURIG LLP
                                                             2101 L Street, N.W., Suite 1000
                                                             Washington, DC 20037
                                                             Telephone: (202) 331-3100

                                                             **ATTORNEYS FOR PLAINTIFF**

26

## CERTIFICATE OF SERVICE

I certify that on April 15, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ J. Austin Franklin*                                    .
Austin Franklin