IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT SKIPLAGGED, INC.'S RESPONSE
## TO AMERICAN AIRLINES, INC.'S BENCH BRIEF

Defendant, Skiplagged, Inc. ("Skiplagged"), submits this Response to Plaintiff, American Airlines, Inc.'s ("AA"), Bench Brief in Support of its Motion to Compel and for Sanctions (the "Brief," and "Motion," respectively):

## I.    INTRODUCTION

AA's Bench Brief seeks to compel Skiplagged to produce information AA does not seek in the Requests and Interrogatories that are the subject of AA's Motion. And, it rests on an incorrect assumption that Skiplagged's database can be searched and revenue numbers per ticket exported. It cannot. *See* Dkt. 91 at App. 1. Skiplagged has continuously explained this reality to AA, but its hollow response is, "I don't believe you." And, AA submits no contrary proof.

Despite AA's beliefs, Skiplagged's database contains raw data that cannot be produced, let alone searched and a simple report prepared containing revenues per ticket, unless Skiplagged crafts new computer code and then analyzes multiple data sets, including those from third parties at great time, energy, and expense. *See id.* at App. 1-2. That fact distinguishes this case from the authorities cited in AA's Bench Brief, which asks this Court to order Skiplagged to do more than just create new documents, which is prohibited by relevant authorities and the undisputed technical realities of Skiplagged's database. Indeed, without any supporting evidence, AA asks this Court to order Skiplagged to write computer software to generate new documents and calculate revenues for over one million tickets, which goes far beyond what is required under the Federal Rules and

is not proportionate to the evidentiary value given Skiplagged has already estimated its revenues related to AA tickets and provided that information in its amended response to AA's Interrogatory No. 1. Further, Skiplagged remains ready to produce the record locator numbers of AA bookings (as previously offered) and additional passenger identifying information (such as name), that would provide AA the ability to access information in its own system.[1] Thus, the Court should deny AA's Motion.

## II.    SKIPLAGGED IS NOT REQUIRED TO CREATE NEW DOCUMENTS

A fatal fundamental flaw in AA's request is that a responding party is not required to create new documents. *See Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. Nov. 12, 2014). Nevertheless, AA demands Skiplagged go far beyond creating new documents, to crafting new software code to compile data from its own database and then incorporate data from multiple third-party platforms, overlay and cross-reference the data, and then audit the data to ensure accuracy— in short, AA demands Skiplagged create and then analyze and calculate data. *See* Dkt. 91 at App. 2. And, AA's cases do not support its demand.

AA relies on *Steward by next friend Minor v. Smith*, No. SA-10-CA-1025-OG, 2018 WL 11361752 (W.D. Tex. July 24, 2018) to posit that Skiplagged must produce the requested data in the form requested by AA "despite the complexity of [its] database system." Br. at 2. *Smith*, however, concerned a searchable database. In fact, "[t]he parties spent over a year…coming up with criteria that may help in locating information in the databases, and producing the data located therein." *Smith*, 2018 WL 11361752, at *1. The court added, "some of the identifying criteria used *to search the specific databases* missed the mark." *Id.* at *2 (emphasis added). The facts are different here. Skiplagged's database cannot be searched for the information sought by AA because no program exists to do so. Instead, Skiplagged would have to craft original computer code, from the ground up, to extract and then analyze the requested information from the database. *See* Dkt. 91 at App. 1-2. Rule 34 does not impose this burden. *Mir v. L-3 Comms. Integrated Sys.*,

---

[1] This alleviates AA's concern that record locater numbers are reused as well as the burden on Skiplagged.

28276383v2 99460.002.00

L.P., 319 F.R.D. 220, 227 (N.D. Tex. Aug. 22, 2016) ("a party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production").

AA's demand is similarly at odds with *Humphrey v. LeBlanc*, No. 20-233-JWD-SDJ, 2021 WL 3560842 (M.D. La. 2021).  In *Humphrey*, the responding party confirmed it was "not creating any new data; [it's] just pulling data from different places in [the database] and assembling it into one document." 2021 WL 3560842, at *3. The court then held that "simply searching a database and providing the results" is not creating a new document. *See id*. Though AA continuously attempts to state it merely wants exported data, the demand and the reality do not line up. Importantly, AA does not demand Skiplagged "simply search[] a database and provide[] the results." *See id*. at *3. No, AA demands that Skiplagged create software, *analyze* reports from that software and create new documents based on that analysis. Skiplagged's CEO, Aktarer Zaman, stated in his declaration that AA's demand "relates to over one million tickets and would require an analysis of related money values." Dkt. 91 at App. 1. He added, the calculation required "would necessitate the painstaking process of cross-referencing over one-million bookings, with numerous transactions, on various third-party vendor systems." *Id.* at App. 2. This requires analyzing "the money received, any fees, disputes, penalties, and dynamic rewards from Skiplagged's reward program." *Id. Humphrey*, which concerned "simply searching a database and providing the results," does not entertain this scenario and, thus, does not support AA's position. *See Humphrey*, 2021 WL 3560842, at *3. The law does not require Skiplagged to undertake this burden.

AA's reliance on *Bean v. John Wiley & Sons, Inc.*, No. CV-11-08028-PCT-FJM, 2012 WL 129809 (D. Ariz. Jan. 17, 2012) and *TIGI Linea Corp. v. Professional Products Group, LLC*, No. 4:19-cv-00840-RWS-KPJ, 2021 WL 1947341 (E.D. Tex. May 14, 2021) also misses the mark. *Bean* concerned providing a "key to each spreadsheet that would define each abbreviation." 2012 WL 129808 at *1. In other words, the responding party had already produced spreadsheets of data. *See id.*

*TIGI Linea Corp.* presents a perfect example of what is wrong with AA's request and why

its cases do not support the relief AA seeks. It concerned requests for sales data "created in the ordinary course of business[,]" that was routinely retrieved by employees. *See id.* at *6. No such access exists for the information sought by AA nor is such information generated in the ordinary course of Skiplagged's business. *See* Dkt. 91 at App. 1-2. Moreover, the responding party in *TIGI Linea* did not submit any affidavits supporting its opposition to the request. *See id.* at *6. While the court ordered production, it reiterated that courts cannot compel production of documents that do not exist. *See id.* (citing *Hoffman v. AmericaHomeKey Inc.*, No. 3:12-cv-3806-B-BK, 2015 WL 12698388, at *1 (N.D. Tex. June 24, 2015)). Here, Skiplagged does not have, nor does it generate in the ordinary course of business, any reports reflecting the "data" AA seeks. But unlike the responding party in *TIGI Linea Corp.*, which failed to submit any affidavits, Skiplagged offers an affidavit from its CEO, Aktarer Zaman, who testified "[s]uch data is inaccessible without writing specific software code that creates a search program." Dkt. 91 at App. 1. And, there is no evidence submitted by AA to the contrary.

AA demands Skiplagged write computer software code to create new reports that Skiplagged has never generated or used before. AA further demands that Skiplagged analyze multiple data sets to respond to AA's Interrogatory No. 8 and Requests for Production Nos. 4-5 to calculate revenue for over one million individual bookings. Neither *Bean* nor *TIGI Linea Corp.* support, or even contemplate, this proposition. When presented with this proposition, this Court rejected it. *See Mir,* 319 F.R.D. at 227 ("a party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production"); *see also Hoffman*, 2015 WL 12698388, at *1 ("the Court cannot compel production of documents that do not exist[.]"). Thus, the Court should not require Skiplagged to craft new computer code to generate and then analyze or calculate data to create documents to respond to AA's demands.

## III.   SKIPLAGGED'S OBJECTION IS REASONABLE UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND THIS COURT'S PRECEDENT

Fundamental to the impropriety of AA's request is that AA is seeking to compel Skiplagged to produce information that AA never sought in its interrogatories and document

4

requests.[2] Since AA presents a *new* request, Skiplagged's objection to this new request could not have been previously overruled. AA ignores this and demands Skiplagged create new documents by calculating revenue numbers. AA's cited authorities do not support its demand. Thus, AA's argument is meritless.

For example, AA tries to use *Smith*, highlighting the court's reference to a third-party contractor, to support its position that its demand for new documents "outweighs any potential burden." Br. at 4. But AA fails to mention the responding party in *Smith* hired the third-party contractor on its own *before* the court ordered production. *See Smith*, 2018 WL 11361752, at *2. *Smith*, in other words, contains no analysis on proportionality or whether a responding party is required to create and then analyze new documents. *Smith*, therefore, does not support AA's position.[3]

*Humphrey* also has no bearing on Skiplagged's objection because it concerns "compil[ing] the requested documents," not creating and then analyzing data to create previously non-existent documents. *See Humphrey*, 2021 WL 3560842, at *7. AA points to the court's holding that spending "up to 2,000 hours to compile the requested documents" is not unreasonable. *See* Br. at 7; *see also Humphrey*, 2021 WL 3560842, at *7. But AA ignores that the documents in *Humphrey* already existed; the responding party just had to compile them. *See id.* at *7. Skiplagged has already produced all responsive, non-privileged documents requested by AA.

Unlike *Humphrey,* here, Skiplagged objects because AA demands Skiplagged create data, overlay it with third party data to perform an analysis and calculations and then combine all the information on a new, never created before, document. Mr. Zaman testified, "This is not a mere extraction of existing data, but rather a complex calculation[.]" Dkt. 91 at App. 2. *Humphrey* does not contemplate this scenario because the documents in *Humphrey* already existed and did not involve complex calculations. Thus, *Humphrey* has no bearing on Skiplagged's objection.

---

[2] Indeed, Requests for Production Nos. 4-5 nor Interrogatory 8 request information regarding Skiplagged's revenue for each "American Booking."

[3] On the contrary, Skiplagged has already gone through great lengths to response to AA's extensive discovery including hiring a third-party contractor to assist with gather documents within Skiplagged's possession and control, which it could actually search for and produce.

28276383v2 99460.002.00

AA's argument here is a red herring. Skiplagged does not reassert its unduly burdensome objection. Rather, Skiplagged objects because AA's *new* demand is for disclosure of Skiplagged's "revenue" on over 1 million tickets on a ticket-by-ticket basis, which would require Skiplagged to go through multiple steps creating code, organizing and comparing data, performing calculations, and then creating new documents, none of which is done in the ordinary course of Skiplagged's business. Since a responding party is not required to create new documents, let alone data and analysis for the purposes of responding to discovery, the Court should deny Skiplagged's Motion.

## IV.   INSPECTION WOULD NOT SATISFY AA'S DEMAND

Finally, inspection would not give AA what it demands. AA seeks an analysis of related money values to over one million tickets. Inspecting Skiplagged's database—which includes raw data for Skiplagged's *entire* business operations beyond just flight data—would still not accomplish cross-referencing, overlaying, and calculating monetary values on a ticket-by-ticket basis to provide AA the revenue information it seeks.

AA relies on *Madden v. Wyeth*, No. 3:03CV 0167BD(R), 2006 WL 8420904, at *1 (N.D. Tex. Jan. 12, 2006) to support its argument that broad sweeping inspection of Skiplagged's entire database is a solution. But in *Madden*, the court permitted the requesting party's experts to inspect a database and copy relevant data onto a CD. *See Madden v. Wyeth*, No. 3:03CV 0167BD(R), 2006 WL 8420904, at *1 (N.D. Tex. Jan. 12, 2006). The moving party's request in *Madden*, in other words, could be satisfied by simply reviewing a database. *See id.* at *1.

Here, not only can Skiplagged's database not merely be searched and copied onto a CD, but also AA seeks more than data—it seeks an *analysis* of that data. *See* Dkt. 91 at App. 2. *Madden*, therefore, is inapplicable here because AA's demand would not be satisfied by an inspection of Skiplagged's extensive confidential database. Thus, the Court should not permit AA to inspect Skiplagged's database.

## V.   SKIPLAGGED'S RESPONSE TO INTERROGATORY NO. 1

As set forth in Skiplagged's Response to AA's Motion to Compel [Dkt. 90], calculating Skiplagged's revenue related to AA flights is extremely time consuming, expensive, and ultimately

28276383v2 99460.002.00

impossible to exactly determine. From August 1, 2018 to August 17, 2023, Skiplagged facilitated approximately 1.377 million AA bookings. Because the components that make up net revenue related to a specific airline can be dynamic or unknown, Skiplagged does not maintain net revenue in its systems or database. For example, the revenue amount can change merely depending on when the calculations are made. Consequently, to respond to Interrogatory 1, Skiplagged took the most reliable approach to analyze a representative sample to determine an estimated net review.[4] This process is set forth below:

(1) Skiplagged determined an appropriate sample size for statistical validity. This was calculated using Cochran's Sample Size Formula.[5] This resulted in 385 as a sufficiently large sample size to be a representative sample.

(2) Skiplagged then wrote code to randomly extract 385 AA bookings for each year (2020 to August 18, 2023) from its system. Because Skiplagged's database retains minimal information regarding revenue, each booking went through a tedious analysis and calculation process:

a. (Plus)- Identify service fee for each booking. This amount is shown to Skiplagged users and retained in Skiplagged's system but is not tied to the actual financial transaction. Thus, just identifying the service fee does not confirm whether Skiplagged actually received funds.

b. (Minus)- Identify costs associated with the service fee. This requires Skiplagged to map the expected service fee to a financial record with Skiplagged's third-party payment services provider. After the financial record is found, Skiplagged can determine whether the charge was successful and, how much must be subtracted for transaction fees, refunds, or chargebacks.

c. (Plus)-Identify revenue earned from insurance sales. Skiplagged's third-party insurance provider does not report insurance sales per booking. Therefore, it is impossible to reconcile at the per booking level. To account for this, Skiplagged

---

[4] Skiplagged took reasonable steps to adequately respond to Interrogatory No. 1, which only requests information from 2020 to 2023. In contrast, AA's Requests for Production Nos. 4-5, Interrogatory 8, and AA's new demand for revenue all demand information *per booking* since 2018, approximately 1.377 million. Such demands are significantly more burdensome than Interrogatory No. 1.

[5] $n = Z^2 * P(1-P) / E^2$

  Where:

  n = sample size

  Z = Z score (1.96 for 95% confidence level)

  P = hypothetical proportion of the population (we use 0.5 to maximize the sample size)

  E = margin of error (0.05 for 5%)

  $n = 1.96^2 * 0.5(1-0.5) / 0.05^2$

  $n = 3.8416 * 0.25 / 0.0025$

  $n = 0.9604 / 0.0025$

  $n = 384.16$

28276383v2 99460.002.00

took total expected revenue and compared it against total revenue received for the given year and then reduced it by the factor that represents the proportion of AA bookings for Skiplagged's facilitated booking program for the year.

d.  (Plus)- Identify revenue from delayed baggage service sales. Similar to insurance, Skiplagged's third-party service provider does not report Skiplagged commissions per booking. Thus, it is impossible to reconcile at the per booking level. Skiplagged again took total expected revenue compared to total revenue received for the year and then reduced it by the factor that represents the proportion of AA bookings for Skiplagged's facilitated booking program for the year.

e.  (Plus)- Identify commissions from vendors of the facilitated bookings program. Vendors do not typically report commissions at the per booking level and if they do, such information is not readily available to Skiplagged. For the same, Skiplagged attempted to determine the average commission received and applied it to the bookings in the sample that were commissionable.

f.  (Minus)- Identify use of Skiplagged's rewards program. Use of Skiplagged's rewards program can change based on the state of the booking, as determined by customer service and various legitimacy signals. The amount is calculated live as users seek any kind of information regarding their earnings. Given this dynamic nature, Skiplagged does not maintain the exact awards amount. To determine use of the rewards program for the sample, Skiplagged attempted to run the same computation.

(3) After calculating the above values for each booking in the sample, Skiplagged took the sum total and then determined the average for the samples by year. Skiplagged then multiplied the amount by the total AA facilitated bookings for the given year. This resulted in the estimated net revenue.

Due to the nature of sampling, this same process run again would result in some variation. However, it is statistically sound with 95% confidence.

## VI.    <u>CONCLUSION</u>

AA presses Skiplagged to craft an original computer code to gather data from multiple sources, analyze and calculate such data, and then create documents containing the requested information *for AA* at time and expense to Skiplagged. And, the information it seeks is not even requested by the subject discovery requests. AA's cases do not support this demand. Instead, this Court has already held responding parties are not required to create new documents—of which AA's demands go far beyond. The Court, therefore, should deny AA's Motion.

28276383v2 99460.002.00

Dated: April 24, 2024.

Respectfully submitted,

*William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

**Attorneys for Defendant, Skiplagged, Inc.**

## CERTIFICATE OF SERVICE

On April 24, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Abigail R.S. Campbell*
Abigail R.S. Campbell

28276383v2 99460.002.00