```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF TEXAS

3                    FORT WORTH DIVISION

4

5   AMERICAN AIRLINES, INC.,  ) CASE NO. 4:23-CV-00860-P
                              )
6        Plaintiff,           ) FORT WORTH, TEXAS
                              )
7   VS.                       ) APRIL 17, 2024
                              )
8   SKIPLAGGED, INC.,         )
                              ) 2:52 P.M.
9        Defendant.           )

10

11                    VOLUME 1 OF 1
                TRANSCRIPT OF MOTIONS TO COMPEL
12          BEFORE THE HONORABLE HAL R. RAY, JR.
              UNITED STATES MAGISTRATE JUDGE
13
    A P P E A R A N C E S:
14
    FOR THE PLAINTIFF:  MR. LARS L. BERG
15                      MR. DEE J. KELLY, JR.
                        MR. J. AUSTIN FRANKLIN
16                      KELLY HART & HALLMAN, LLP
                        201 Main Street, Suite 2500
17                      Fort Worth, Texas 76102
                        Telephone:  817.332.2500
18
    FOR THE PLAINTIFF:  MR. ZACH TOBOLOSKY
19                      GREENBERG TRAURIG, LLP
                        2200 Ross Avenue, Suite 5200
20                      Dallas, Texas 75201
                        Telephone:  214.665.5947
21
    FOR THE DEFENDANT:  MR. WILLIAM L. KIRKMAN
22                      KIRKMAN LAW FIRM, PLLC
                        201 Main Street, Suite 1160
23                      Fort Worth, TX 76102
                        Telephone:  817.336.2800
24

25
```

```
 1
 2     FOR THE DEFENDANT:   MS. ABIGAIL RUTH STORM CAMPBELL
                            MR. AARON Z. TOBIN
 3                          CONDON TOBIN SLADEK THORNTON NERENBERG
                            8080 Park Lane, Suite 700
                            Dallas, TX 75231
 4                          Telephone:  214.265.3800
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2    COURT REPORTER:        ZOIE M. WILLIAMS, RMR, RDR, FCRR
                            United States Federal Court Reporter
3                           501 W. 10th Street
                            Fort Worth, Texas  76102
4                           zwilliams.rmr@gmail.com
                            817.850.6630
5

6

7

8        The above styled and numbered cause was reported by

9    computerized stenography and produced by computer.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                           I N D E X
 3
 4    Motions to Compel:
 5    American Airlines, Inc. –
 6    By Mr. Berg.....................................06
 7    By Mr. Kirkman..................................15
 8    By Ms. Campbell................................20
 9    Skiplagged, Inc. –
10    By Mr. Kirkman..................................45
11    By Mr. Berg....................................53
12    Court's Ruling on Objections...................65
13    Reporter's Certificate.........................98
14    Word Index.....................................99
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                          APRIL 17, 2024

 2                               oOo

 3                  P R O C E E D I N G S

 4          THE COURT:  Thank you.  Please be seated.

 5          The Court calls 4:23-CV-00860-P, American

 6  Airlines, Inc. v. Skiplagged, Inc.

 7          Would counsel state their appearances for the

 8  record, beginning with counsel for the plaintiff?

 9          MR. BERG:  Good afternoon, Your Honor.  Lars Berg

10  on behalf of American Airlines.  With me today is Austin

11  Franklin on behalf of American Airlines, Dee Kelly, as well

12  as Jeremy Ballew, who works for American Airlines as a

13  lawyer, and Mr. Zach Tobolosky with the Greenberg Traurig

14  firm is also here.

15          THE COURT:  Okay.  Thank you.

16          MR. KIRKMAN:  Hi, Judge Ray.  I'm Bill Kirkman.

17  With me is Abigail Campbell and behind me is Aaron Tobin,

18  and we are here on behalf of Skiplagged.

19          THE COURT:  All right.  Well, welcome back.  This

20  seems like yesterday that we were all here before.  Here we

21  are again.

22          So this time we're going to take up American's

23  motion to compel and for sanctions.  And then, we're also

24  going to hear Skiplagged's motion to compel.

25          So, Mr. Berg, you got to file first, so we will
```

1    hear from you first.

2            MR. BERG:  Yes, sir.  Thank you.  I know you

3    remember the case, but to put it in context, Skiplagged is a

4    company that sells hidden city tickets on its website.  It

5    purports to facilitate the sale of those tickets on all

6    airlines including American Airlines.

7            In doing so, Judge, Skiplagged uses American

8    Airlines' trademarks and American Airlines' copyrights.

9    They display them just as plain as the nose on your face on

10   Skiplagged's website every time somebody types in a query.

11           As you may remember, hidden city ticketing is

12   where, because of the unique pricing for the hub and spoke

13   system, which is what American operates, a ticket from DFW

14   to Portland, Oregon, may be $500, but a ticket from DFW to

15   Seattle -- from DFW to Portland to Seattle may be 300.

16           And so, the hidden city ticket is somebody buys a

17   $300 ticket and gets off in Portland, Oregon, instead of

18   going on to their destination.

19           As you may remember, Your Honor, that violates

20   American Airlines' terms of use and conditions of carriage

21   and so, in addition to the copyright and trademark claims,

22   we've got breach of contract and some associated claims.

23           We are here today on, really, what is a very

24   simple idea.  And the very simple idea is that American is

25   seeking information about each of those tickets that

1    Skiplagged facilitated on American.

2            They have that information, Judge, in their

3    database.  They have the database.  And it's clear, we're

4    here on interrogatory No. 8, request for production No. 4,

5    and request for production No. 5.

6            The common theme among those three requests is

7    that we're seeking the amounts paid by the customer to

8    Skiplagged.  The PNRs that identify each ticket, and the

9    fees and other costs charged to the customer, what the

10   customer paid to Skiplagged, as well as -- that's both 4 and

11   5.

12           We know that they have this information.  When I

13   took the oral deposition of one of their, I believe it's

14   their CFO, he specifically said, I asked him:  "Does

15   Skiplagged take the PNR off the confirmation email and save

16   it?"

17           "Yes."

18           "How does Skiplagged save the PNR?"

19           "In our database."

20           And then I asked a few more questions about the

21   database.  "Does it keep the amount that was paid by the

22   customer?"

23           "Yes, it's in the database.  It's in the

24   database."

25           They have all of this information in their

1    database.  There's no question about it.

2           If you look at their response, Judge, Mr. Aktarer

3    Zaman's declaration makes crystal clear that they have all

4    this information in their database.

5           Judge, to the extent there's any question about

6    what that is, we have an example in our papers that shows

7    exactly what is in there.  You've seen the example.  We've

8    got another example that shows American Airlines.

9           And you read across all the fields.  And it's got

10   the customer's name.  It's got the origin city.  The

11   destination city.  The amount charged.  If there was a

12   savings.  The amount that Skiplagged received in fees or

13   commissions or whatever it was that they charged.  All of

14   that is in the database.  There's just no question about it.

15          Judge, the revenue, they have a field in that

16   database for revenue that they have received.  And Judge,

17   that is the key for all of this.  Specifically, we are

18   entitled to that revenue because we need to know for our

19   experts and for our damages exactly how much revenue they

20   took in.

21          Judge, we got two statutes at issue here.  We've

22   got the copyright statute, and we've got the trademark

23   statute.  The copyright statute allows the owner -- and

24   this, Judge, this is 17 USCA, Section 504, that allows the

25   owner of the copyright, in this case American, to recover

1    its damages, including the infringer's profits.

2              Here's the key sentence, Judge:  "In establishing

3    the infringer's profits, the copyright owner is required to

4    present proof only of the infringer's gross revenue."

5    Judge, those numbers are in the database.  Nobody denies it.

6    Nobody claims anything different.

7              Trademark.  Judge, same idea.  Plaintiff gets

8    defendant's profits.  This is 15 USCA, Section 1117(a), it

9    says:  "In assessing profits, the plaintiff shall be

10   required to prove defendant's sales only."

11             So, Judge, all of the information is in this

12   database.  The revenue that they are taking in, it shows it

13   line by line, and we're entitled to that information.

14             Their response, Judge, to this is really a straw

15   man.  And it's just shown through in the very first sentence

16   of their response.  The very first sentence, Judge.

17   "Plaintiff American Airlines' motion to compel is premised

18   on a misunderstanding that defendant Skiplagged is

19   withholding documents."

20             We don't claim they're withholding documents.

21   We've never claimed they're withholding documents.  You look

22   at the motion, you look at the response, you focus on what

23   they're trying to do in their response, prove burden to get

24   the data out.  We've never claimed it.  So they set up a

25   straw man, which they can't even knock that down, but it's

```
 1    just false.

 2              You keep going.  And then they say that:

 3    "American seeks to have Skiplagged compile, analyze, and

 4    summarize the data."  That's on page two.  Again, Judge, a

 5    straw man; not true.  We just want them to extrap from the

 6    database that which is already there.  It doesn't require

 7    anything else.

 8              Judge, this is kind of disappointing.  But, in

 9    their response, in their two declarations, they got so

10    desperate that they made some pretty substantial

11    misrepresentations.

12              Mr. Zaman says that:  "The information sought by

13    American in its motion to compel goes far beyond data

14    retrieval and instead demands elaborate and costly data

15    generation"; not true.

16              We presented to you the specific example of the

17    database and what information is in there.  We're not asking

18    for that.  Look at our requests.  We're asking for their

19    revenue.  That's all we need to prove.

20              If they want to, Judge, go on and do something

21    with their data to prove profits, that's their burden under

22    the Copyright Act and under the Trademark Act.  If they

23    don't prove it, then we get all their revenue.  So we're not

24    really interested in their profits.  We have three distinct

25    requests.  And so that's just not true.
```

```
1               Judge, also, in Ms. Campbell's affidavit.  She

2    accuses us of malfeasance.  Paragraph six of her affidavit,

3    she says:  "Though AA's motion to compel references Bates

4    label SKP81-151 and 81-157, AA never mentioned these

5    documents to Skiplagged prior to filing its motion to

6    compel."  Not true, Judge.

7               May I approach?

8               THE COURT:  Sure.

9               MR. BERG:  Judge, I've highlighted, Skiplagged has

10   produced only what appears to be three limited exports.  I

11   cite to all three documents.

12              We weren't hiding behind the law.  We weren't

13   trying to, you know, pull anything.  We told them exactly

14   what we wanted.  You can see that this is from me,

15   Ms. Campbell is included, along with lots of other lawyers.

16   That was on March 8th, before we filed the motion to compel.

17              Worse yet, Judge -- may I approach again?

18              THE COURT:  Sure.

19              MR. BERG:  Mr. Kirkman responded.  You can see in

20   the highlighted portions of that response, they

21   specifically -- he specifically references the two documents

22   that they swore to you, Judge, we never mentioned before.

23              The problem with this is it's just two more

24   examples of how they are trying to mislead the Court about

25   what the dispute is really about and try to avoid their
```

1    discovery obligations.

2           Judge, I'll let you finish reading.

3           THE COURT:  Go ahead.  I'm listening.

4           MR. BERG:  I'm taking a drink.  Thank you.

5           Their entire response, really, along with

6    Mr. Zaman's declaration shouldn't be considered at all.

7    There's three main reasons.  You've already overruled their

8    burden objections.  That is what the first hearing was

9    about.  You overruled their burden objections.

10          If they wanted to present this kind of testimony,

11   this kind of evidence, if they wanted to protect those

12   objections, they had their chance.  Their objections were

13   all overruled.

14          They didn't do anything to come back behind those

15   and try to, you know, ask Judge Pittman to take a look.

16   They didn't come back and ask for reconsideration from you.

17   They didn't do anything.  They just continued to stick by

18   those objections.  So their response really should be out

19   the door.

20          Second, their response is based on what is,

21   essentially, an expert opinion.  Mr. Zaman is giving an

22   expert opinion about his analysis of a database and what

23   would be required to extract information out of that

24   database.

25          But look at his declaration.  He doesn't establish

1    himself as a database expert, much less an expert on what it

2    would cost to extract the information.

3              Also, he doesn't identify what we seek.  He didn't

4    review the requests for production.  He reviewed apparently

5    some emails back and forth, but our requests for production

6    are clear.  We don't ask for the profits.  We don't ask for

7    the analyzation.  We don't ask for the things that he says

8    we're asking for and that would require expertise to come to

9    some idea about what the cost would be.

10             You can't render an expert opinion unless you're

11   qualified as an expert.  And their declaration doesn't

12   qualify him as an expert.

13             So, like I said, he really addressed the wrong

14   issue.  Very simple, Judge.  They have the data; it's in

15   their database.  They don't want to produce it because it

16   may be difficult.  I don't believe that, but they say it is,

17   without anything, any support.

18             And then they say, and this is just most

19   unfortunate, they say that we are not entitled to it because

20   Rule 34 does not require them to pull this information out

21   of the database.  That's just wrong.  Everybody knows it's

22   wrong.

23             Judge, we've got several cases, and I've got a

24   bench brief if you would like it.

25             May I approach?

1              THE COURT:  Sure.

2              MR. BERG:  So, Judge, a couple of cases, but the

3    bench brief really lays it all out and explains why Humphrey

4    is the best one.  It talks about Rule 34.  And then,

5    Humphrey, it's virtually the same dispute we've got going on

6    here.

7              There was a database and one party objected to

8    getting the information out of the database, saying it was

9    going to be difficult and expensive and basically brought up

10   all of the same arguments that have been brought up here.

11             And the Court says, no.  If you put this

12   information in a database, you are obligated to go and pull

13   the information out.  It doesn't matter that it may cost you

14   money.  It doesn't matter that it may cost you time.  It

15   doesn't matter because the rules require it.

16             Moreover, Judge, the cases say, as well as the

17   statute itself that when you are talking about pulling

18   information out of the database, Rule 34's prohibition about

19   creating documents does not apply.

20             It specifically addresses the idea that, when you

21   have information in a database, you're not creating a

22   document when you are going and retrieving it.  It's part of

23   your obligation.

24             And so, Judge, the law is crystal clear that, in

25   this instance, American has proven its entitlement to the

1   data that's in the database, all the objections preventing

2   us from getting that information out of the database have

3   been overruled, and the fundamental principle in the case

4   law, as well as Rule 34, holds that, if the information is

5   in the database, and then the party that owns the database

6   is responsible for going in and retrieving it.  That's all

7   we're asking for.  We just want the applicable fields for

8   the PNRs and the revenue.

9           MR. KIRKMAN:  May it please the Court.

10          THE COURT:  Mr. Kirkman.

11          MR. KIRKMAN:  With your permission, I'm going to

12  make a very brief overview response and then turn the matter

13  over to Ms. Campbell, who has the on-the-ground --

14  boots-on-the-ground information.

15          First of all, with all due respect to my friend

16  Mr. Berg, we don't really sell the tickets.  We facilitate

17  the ability to get those tickets.  I just want to make that

18  clear.

19          THE COURT:  I wish you'd explain to me,

20  Mr. Kirkman, that seems to have been a disagreement from the

21  get-go.  And so, how is revenue generated and how is

22  Skiplagged compensated?

23          MR. KIRKMAN:  Well, they're compensated in a

24  couple of different ways based on the manner and means by

25  which the sale of the tickets are facilitated.  One way is

1      they put out website information.

2              For instance, the Dallas-Fort Worth, Portland,

3      Seattle trip.  It's out there.  If the customer decides

4      that's what they want to do, they purchase it.  They press a

5      button called Book Now, and they're the ones who purchase

6      it, their credit card, from American, not us.

7              THE COURT:  But the Book Now tab or whatever on

8      Skiplagged's website refers it to American, and then it goes

9      on to AA.com?

10             MR. KIRKMAN:  Uh-huh.

11             THE COURT:  Okay.

12             MR. KIRKMAN:  The second way is that there is a

13     referral to a travel agency.  For instance, if they like the

14     ticket and they want to buy it, they can go out to a travel

15     agency, which produces a lot less information to Skiplagged,

16     because they simply say, go to Expedia, go to whatever.

17             And then, there's an arrangement between the

18     Expedias of the world and Skiplagged where, based on the

19     referral or what they call in this business, a click,

20     they're paid a fee.  So I just wanted to make that clear as

21     to how that works.

22             THE COURT:  Okay.  Very good.

23             MR. KIRKMAN:  Now, permit me to sort of summarize

24     what I believe this dispute is about.  It does involve three

25     separate discovery requests:  Request for production No. 4,

1    request for production No. 5, and interrogatory No. 8.

2            I really don't think there can be any, in my view,

3    legitimate dispute that we didn't comply with your order,

4    because we produced every document and every communication

5    we had that was responsive to those two requests and that

6    interrogatory.  Those have been produced.

7            And those documents are replete with the

8    information that they want.  What we're here about, I think

9    Mr. Berg has accurately stated, is data in a database.

10   Unvarnished, unorganized, unprocessed data that simply

11   exists in a database.  Some of which they've requested, and

12   we have tons more.

13           I think as the affidavit or the declaration of our

14   client says, the only way to retrieve or access that data is

15   to write some kind of software program to try to get that

16   data.  And so, that's really the dispute.

17           I don't think there can be a legitimate dispute

18   that we didn't comply with your order or the request.  It's

19   just, does that data -- are they entitled to that type of

20   data?

21           Now, we have submitted case law to you that says,

22   in our view pretty clearly, that we are not required to

23   create a document, or write a software program to respond.

24           I hadn't seen the bench brief, or the case that

25   Mr. Berg provided.  To the extent I'm allowed an

1    opportunity, I will respond.  But in our brief, I think the

2    briefing was pretty clear that the Rule 34 in the Northern

3    District of Texas doesn't require you to generate a

4    document.

5         Which the only evidence you have, Judge, is that

6    that's what has to happen.  They have to construct some kind

7    of software program, something to get certain data.

8         And so, that really is what I think the issue is.

9    And depending on what they want, it may take a month, it may

10   take three months to try to figure out how to access

11   otherwise unascertainable data.  And then, I don't think

12   there's any guarantee that whatever you are trying to access

13   will work.

14        So that's really what I believe the issue is.

15   It's not whether we didn't produce the documents.  It's not

16   whether we did this.  But I really believe the rules say

17   that you are not required to produce that kind of data.

18        Now, I will tell the Court that, in an effort to

19   try to move this along, we told them we would produce what's

20   called a record locator.

21        If you've ever flown American Airlines, you get a

22   little email and there's a record locator number that

23   designates that particular flight.  And so, that's an easy

24   fix for us.  We can do that in an hour or two.  And we've

25   told them we'd do it, even though that information is not

1    requested.  They said no, it wasn't sufficient.

2              So it's not that we're not trying.  It's just that

3    the data they've put in their motion they want is just

4    terribly, terribly time consuming, oppressive, and very,

5    very difficult to retrieve, it just is.

6              Now, I do want to make a couple of direct

7    responses to what I heard from Mr. Berg that I didn't really

8    understand until today.

9              He says, he made a tremendous emphatic point that

10   he wanted revenue.  I mean, I heard that two or three times.

11   I mean, we have given him that information specifically in

12   an answer to interrogatory No. 1.  He has all of that

13   information from us.

14             So I'm not really certain why he would say he

15   wants this to get revenue.  All the Court needs to do is

16   look at our answer to interrogatory No. 1 which specifically

17   states how much revenue we provided.  So I'm very confused

18   about that.

19             Lastly, the expert business about an affidavit

20   really isn't an expert.  It's our client's database.  He's

21   established through that declaration that he, above all

22   persons, knows what that database contains and how to access

23   it, how to deal with that raw data.

24             So I probably took up too much of my overview

25   time.  I want to turn it over to Ms. Campbell, but I wanted

1    the Court to understand sort of the overview of what I

2    perceive the issue to be.

3              THE COURT:  Thank you, Mr. Kirkman.

4              Ms. Campbell.

5              MS. CAMPBELL:  I wanted to clarify.  You asked

6    Mr. Kirkman about the money, the revenue through Skiplagged.

7    I want to make it crystal clear that the money, purchase for

8    a ticket, never goes to Skiplagged.

9              If you were to look on a customer's bank

10   statement, they would have a charge that says American

11   Airlines.  That money doesn't pass through Skiplagged at any

12   point.  I will just expound on a few points from

13   Mr. Kirkman.

14             THE COURT:  Let me stop you though.  How does

15   Skiplagged get any part of that ticket purchased?

16             Does American give them some money, or how do they

17   get it?

18             MS. CAMPBELL:  They charge a service fee to use

19   their service, which is a separate -- so if you were to look

20   at a credit card statement, you would see a Skiplagged

21   service fee.  And that's determined by a portion of the

22   ticket capped at, I believe, $35.  It's not a portion of the

23   American ticket.

24             THE COURT:  So they get paid a certain amount over

25   and above whatever the customer paid American for that DFW

1    to Portland ticket?

2              MS. CAMPBELL:  A service fee, correct.

3              THE COURT:  Okay.

4              MS. CAMPBELL:  As Mr. Kirkman said, Skiplagged

5    fully complied with your order from December 19th.  If you

6    recall, you ordered Skiplagged to answer interrogatory 8,

7    and to produce documents within Skiplagged's possession and

8    control to requests for production 4 and 5.

9              I want to point out something that Mr. Berg said.

10   "Look at our request.  We're asking for their revenue." If

11   you look at requests for production 4 and 5 and

12   interrogatory 8, there is not a request for revenue.

13             They're asking for all documents and

14   communications relating to all the American bookings made

15   and/or purchased by any customer, on, through, or

16   facilitated by Skiplagged.com since August 1st, 2018."

17             They go on to request, saying that includes the

18   PNR data.  Which, if you remember last time, their

19   definition of PNR data includes the customer name, the

20   flight time, their seat number, and things like that.

21             And interrogatory -- and they do request

22   information regarding, I think, baggage fees, and what was

23   paid to American.  Which that's information that Skiplagged

24   just doesn't have, and it doesn't keep.

25             When you pay a baggage fee, that's when you check

1    in.  When you say, I have a bag, you pay the fee right to

2    American.  That's not information that Skiplagged has.

3           Same thing for production No. 5.  It requests the

4    same information but for people that were redirected, as

5    Mr. Kirkman said, another way for the customer to obtain a

6    ticket, they get redirected to another website, another

7    travel agency website.

8           Skiplagged doesn't have that information.  They

9    get paid, as Mr. Kirkman said, on a cost per click or a cost

10   per action basis, and they're paid a lump sum.

11          This has already been told to American in response

12   to some of the interrogatories that that information just

13   isn't kept by Skiplagged.  It's just not.  It's not in the

14   database; it's nowhere.

15          And as Mr. Kirkman said, the information that is

16   requested, PNR data, record locator numbers, names of people

17   who have purchased tickets, is prevalent throughout the

18   documents that we've produced, which is 111,100 documents.

19          After your order, we hired a team of 64 reviewers,

20   plus trial counsel, to get those documents produced.  We're

21   not withholding anything.  We're not sitting on anything.

22          I think tellingly, even though American is saying

23   this information is in a database, it's there.  They found

24   three examples out of 111,000 documents that, these aren't

25   generated in the ordinary course of business.  These aren't

 1    documents that Skiplagged has, or they would have been

 2    produced, or we wouldn't have produced those examples.

 3          What I want to make very clear, and what Mr. Zaman

 4    talks about in his declaration, which I have a copy for you,

 5    if you would like, is that those examples were from a

 6    special project that somebody at Skiplagged was trying to

 7    do.

 8          What they had to do for that is they had to write

 9    code to pull data from a database, as well as from

10    third-party platforms, and they had to do an analysis.  And

11    that, even when they tried to do that, it was incorrect.

12          We've pointed this out to American, that these

13    were special circumstances.  I think that goes to show how

14    open we have been with production is that we produced them.

15    We didn't hold them back, saying these were mistakes.

16          We produced every hit that came up when we

17    conducted our search.  So these documents, they're not an

18    example of just what's sitting on a database that you can

19    go, you know, type in your date range, your search terms,

20    and click generate.

21          You have to write a code to specifically ask for

22    it to search for what you want.  And even then, you're only

23    going to get specific data.

24          For what has been asked for when we've

25    communicated in emails, and even today, the revenue.  That's

1    what Mr. Zaman is talking about when you have to compare

2    multiple platforms to get this information.  And that is an

3    analysis.  That is more than generating data.

4         And that's why, in trying to work with American,

5    we offered to pull the record locator numbers.  Because, at

6    the end of the day, these are American's tickets.  They can

7    type in that record locator number and get all the

8    information, the customer's name, the flight, the time, the

9    route, all of that.

10        That doesn't involve an analysis.  That involves

11   just pulling data.  And that's what Mr. Berg claims is what

12   is involved in the revenue, but that's what Mr. Zaman's

13   declaration says otherwise, and how we tried to compromise

14   with the record locator numbers, but were told no.

15        So I think we do stand by that; we have produced

16   all documents and information in response to your order.

17   That what they're requesting in this analysis and

18   spreadsheet would involve having to create a document, and

19   that just simply isn't required under Rule 34.

20        We quoted the Mir vs. L-3 Communications case,

21   which cites to multiple cases, holding that a request for

22   production cannot be used to require a responding party to

23   compile and summarize responsive data.  And that's exactly

24   what they are asking for.

25        We tried to reach an agreement.  We've tried to

```
 1    explain that these exemplar documents are not representative
 2    of what's just sitting in a database.  And unfortunately, we
 3    just came to an impasse because we're met with no.  And
 4    that's where we've come today, Your Honor.  And that's where
 5    we're kind of at.  We still offer to produce the record
 6    locator numbers to move this issue along.
 7              THE COURT:  Let me ask you this question,
 8    Ms. Campbell.  If you've got the record locator numbers, are
 9    those not linked to some kind of payments to Skiplagged?
10              MS. CAMPBELL:  They're not.  I had to learn a lot
11    about technology in getting this.  This database is not like
12    a QuickBooks, right?  Where you can ask it for info, and you
13    know, you can click on something that brings you to an
14    invoice.
15              This is a database of raw unorganized data.  It
16    does nothing until you write a code asking for it to give
17    you certain data points back.
18              THE COURT:  Okay.  So tell me how then you're
19    able, you can spit out the list of file locator numbers, and
20    it would come up?
21              MS. CAMPBELL:  The client has to write a code
22    asking the database to give that information.  That's
23    different than asking for revenue, because as Mr. Zaman
24    talks about in his declaration, that revenue number, it
25    involves having to take out refunds.
```

```
 1                It involves taking into account whether

 2   Skiplagged's rewards program was used.  It doesn't just spit

 3   out a number.  It involves multiple levels of analysis and

 4   overlaying data to get to that.

 5                MR. KIRKMAN:  May I add something to the record,

 6   Judge?

 7                THE COURT:  Sure.

 8                MR. KIRKMAN:  I don't know if you have the answer

 9   to interrogatory No. 1 that is not redacted in the record.

10                THE COURT:  I don't have it in front of me, but

11   you probably do.  You can tell me.

12                MR. KIRKMAN:  I was looking for it, but I'm really

13   having a hard time when they say they want revenue and we've

14   given that to them.

15                THE COURT:  What was the number, do you know, off

16   the top of your head?

17                MR. KIRKMAN:  The amount?  In the millions.  I

18   can't remember, but it's there.  I read it.

19                MS. CAMPBELL:  It's broken down by year and just

20   as to American.  I do have it.  It will take me a second.  I

21   apologize, Your Honor.  I do only have the redacted version.

22                THE COURT:  Okay.  Well, that's all right.  We can

23   get there if we need to.

24                All right.  Mr. Berg.

25                MR. BERG:  Yes, sir.  So the first thing I want to
```

```
1   explain is the Book Now feature.  They didn't really give

2   you the full picture there.  The full picture is really

3   important.

4            What they do is, and it's in one of Mr. Aktarer's

5   declarations, they don't just send the customer to AA.com.

6   So that, when you go to Skiplagged and choose an American

7   flight, you go to AA.com, and you know you're putting in

8   your information, and you know what you're agreeing to.

9   That would be the honest way to do it, but they don't.

10           What they do is, you enter all your information,

11  name, address, date of birth, credit card information, and

12  virtually simultaneously, Skiplagged opens another, I think

13  it's a different kind of a window, a Google window, and they

14  contact AA.com, and they write a script.

15           It's called Puppeteer.  And they write a script

16  that takes all the information you just entered into

17  Skiplagged, and put it into AA.com.  They put all that

18  information into AA.com.  And then they click, for the

19  customer, for whoever, me, you, whoever, they click "I

20  agree."

21           So it is Skiplagged agreeing, for all intents and

22  purposes, to the terms and conditions.  So it's not this

23  direct, easy just, oh, we're going to send them over to

24  AA.com.  That's not at all what's going on.  It's hidden.

25           THE COURT:  Okay.  I get it.
```

1          MR. BERG:  So this is not just about the revenue,

2    although it is a lot about the revenue, and we ask for very

3    clearly what we need.  We need the PNR data.

4          Because, see, Judge, not everything that they do

5    is a hidden city ticket.  Sometimes they sell just regular

6    tickets.  Somebody just decides to buy.  They see all their

7    warnings that say, you can't do this, you can't do that, you

8    might get your trip canceled.

9          They say, I don't want to do that.  I want to buy

10   a regular ticket.  Well, they still go through Skiplagged

11   and Skiplagged still charges them.  And so, that's the Book

12   Now.

13         When we've got all these other things, and we

14   believe they're in the database, and they say that it's not

15   there, but that's just not believable.  We've got some

16   examples.  I've highlighted one that I think may be useful.

17   This is out of our appendix A.  Judge, you can see across

18   the top we've got all the columns.

19         The airline name, American Airlines.  We're just

20   looking at line 46.  It goes across.  That's, you know, when

21   you print these databases out, that's the way it goes.  But

22   it shows all of the information.  And they've got this.

23         And we need all of this for every ticket, so we

24   will know how many times our trademark was used, how many

25   times our copyright was used.

1          They've got all this information, and they won't

2     give it to us.  They've got the origin city.  They've got

3     the destination city.  It tells whether or not it's a

4     Skiplagged ticket.  Hidden city, Judge, column A, as in

5     alpha, S, as in super, and it shows, is it a hidden city?

6     And one is yes, zero is no.

7          And then, it's got the cost per ticket in BA, and

8     that's going to be, Judge, what goes to the airline.  Then

9     it shows the savings, right?  Well, that's the savings.  How

10    much did each customer save?  We're entitled to know that.

11         And then, the revenue.  The revenue, that's B, as

12    in boy, Q, as in queen.  It shows all of the revenue.  We're

13    entitled to that information, Judge.  They make a big deal

14    out of interrogatory No. 1.  I've got a copy of it here, if

15    I may approach?  We will talk about why that's insufficient.

16         So, first and foremost, Judge, interrogatory No. 1

17    says:  "Identify Skiplagged's annual monthly and quarterly

18    number of American bookings and resulting revenue generated

19    from such bookings from January 1, 2020, to the present."

20         What they don't tell you, Judge, is that our

21    requests for production go back further than that.  To the

22    extent they objected, that's been overruled.  Our request

23    for production goes back to August 1 of 2018.

24         So we're seeking additional information.  And

25    moreover, Judge, let's look at what their interrogatory

```
1    answer actually says.  I've highlighted it.  "Skiplagged's

2    revenue stream structure includes uncertainties and

3    difficulties in calculating exact revenue limited to

4    American's bookings."

5              Judge, the exhibit that I just showed you has got

6    it.  So they're telling you, when they're answering the

7    interrogatory, whatever they did to answer it, however they

8    answered it, they're telling you in the answer, this isn't

9    right.

10             So even if they have provided the full scope of

11   information we've requested, they haven't given us any

12   confidence that this number is accurate.  They have the

13   exact information and it's in their database.  There's no

14   reason that they can't produce it.

15             THE COURT:  What about this comment that we're

16   going to have to write a code to extract it from the

17   database?

18             MR. BERG:  Absolutely.  That may be true.  I don't

19   believe it, because it is onerous --

20             THE COURT:  Be careful now.  "That may be true,

21   but I don't believe it."  I mean --

22             MR. BERG:  I don't believe it's as onerous as they

23   claim.

24             THE COURT:  Okay.

25             MR. BERG:  So that's, first and foremost.
```

```
 1   Obviously, I've talked to somebody, couldn't get them down

 2   here, so -- but, you know -- let's talk about Rule 34.

 3           Rule 34:  "Any designated documents or

 4   electronically stored information" -- that's what we're

 5   talking about, electronically stored information -- "stored

 6   in any medium from which information can be obtained either

 7   directly or, if necessary," here's the key, Judge, "after

 8   translation by the responding party into a reasonably usable

 9   form."  That's 34(a)(1).  It requires it.

10           In the Humphrey case, the Court concluded the

11   requiring reports be run from a database was not outside

12   Rule 34.  They just have to provide the information

13   requested in usable form.  That's Humphrey.

14           Let's talk about the advisory committee note,

15   2006, to Rule 34.  "Rule 34(a) requires that, if necessary,

16   a responding party translate information into a reasonably

17   usable form."  They are obligated to do it.  They haven't

18   cited a single case to the contrary.

19           What they cite are old cases that are

20   inapplicable.  They say we're not required to create a

21   document, and then say somehow writing a script is a

22   document.

23           That's not the law.  That's not the case.  I've

24   given you the brief.  I've given you all of the case law and

25   it shows what is required.  We've given you the evidence
```

1    that they've got it.

2             We know they can get it out, because we've got

3    examples of it.  They make a big deal of, well, we've

4    graciously produced these three examples.  Those three

5    examples do nothing more than prove that, when they want to,

6    they can extract this information.

7             THE COURT:  Is that where this excerpt from

8    Exhibit 8A, is that this information from those three

9    examples, or what is this?

10            MR. BERG:  Yes, sir.  That is an excerpt from the

11   three data sheets they provided.  They produced native

12   format, we gave to the Court on a thumb drive the entire

13   document, I believe it's an Excel spreadsheet.

14            THE COURT:  Yeah.

15            MR. BERG:  So they take it out of the database.

16            THE COURT:  Put it in Excel, and then this is what

17   you get?

18            MR. BERG:  And this may have to be a CSV file or

19   another type of file.  That's really of no moment, because

20   sometimes they get so big that they can't go into an Excel

21   database.  But be that as it may, it's their burden.  If

22   they want to -- it's their burden to produce.

23            The revenue and all of the information that we've

24   requested, the PNR, all of the data about the city, whether

25   or not it was a hidden city ticket, but all of that is in

```
 1    our request.

 2            But what's not in our request is this, and this is

 3    from paragraph 4 of Mr. Zaman's declaration:  "Calculating

 4    profits as AA demands would necessitate the painstaking

 5    process of cross-referencing over," and then he goes on.  I

 6    don't care about their profits.  I want their revenues.  And

 7    that's what this is about.

 8            So the profits are a red herring.  The case law --

 9    or the statutes that I showed you prove that, if they want

10    to talk about refunds, if they want to talk about taking out

11    their rewards, if they want to talk about deductions, that's

12    on them, not us.

13            And so, we're not asking them to calculate their

14    profits.  Frankly, Judge, I'd just as soon they didn't

15    calculate their profits, because then I get all their

16    revenues.

17            Happy to answer any questions, Judge.

18            THE COURT:  Let me ask you a question,

19    Ms. Campbell and Mr. Kirkman.  How long do you need to

20    respond to this bench memo that cites to the Humphrey case

21    and this other Rule 34 case?

22            MS. CAMPBELL:  We've never seen it before today

23    and right now --

24            THE COURT:  That's why I'm asking you the

25    question.
```

```
1              MS. CAMPBELL:  I don't even know how long it is.

2              THE COURT:  So how long --

3              MR. KIRKMAN:  We can do it whenever you tell us to

4    do it.  We can do it in a week.  If you want it by Monday or

5    Tuesday, we will do it.  Unfortunately, I'm going out of

6    town, but I can get it done first thing when I get back on

7    Sunday.

8              THE COURT:  I hope you're going all the way and

9    you're not getting off before you --

10             MR. KIRKMAN:  No, I'm not.

11             Skiplagged had the best deal you could possibly

12   get.  I'm flying to New York for half the price.

13             THE COURT:  I don't want to hear it.  I don't want

14   to hear about it.

15             MR. KIRKMAN:  No.  Your Honor, if you want it by

16   mid-week next week, that would be fine, because we haven't

17   seen this.  Obviously, we think the law is different as

18   quoted.

19             THE COURT:  I hear you.

20             MR. KIRKMAN:  Can I make one other small point?

21             THE COURT:  Well, really small.  Because I'm not

22   prepared to you rule on this today.

23             MR. KIRKMAN:  I didn't really realize we were

24   missing a year on the revenue.

25             THE COURT:  Or two.
```

```
 1                  MR. KIRKMAN:  If American wants that year or two,

 2       we will get that.  That's not a problem.

 3                  THE COURT:  Well, how do you get it though and you

 4       can't show your work?

 5                  MR. KIRKMAN:  Completely separate analysis.

 6       Completely separate.  I asked that very question.  We talked

 7       about it on the phone.  I mean, it's a completely separate

 8       easy analysis to get revenue.  It has nothing to do with

 9       writing codes for what they want.

10                  THE COURT:  But the point is though, would it be

11       easy to give them the lines that have individual revenue

12       data on there and then you add it up and then you get for

13       2020 you get $2,015,000?

14                  MS. CAMPBELL:  That's what we're saying, Your

15       Honor, is respectfully, that's the analysis.  That's way

16       more than data generation.  And it's never even been done

17       correctly, that's what those are.

18                  THE COURT:  Wait a minute.  My question though is

19       this, if you can give the total amount, why can't you give

20       everything that went into that amount?

21                  Because somehow or another, you're going to have

22       to come up with that number.  And that number is a

23       tabulation of a bunch of numbers.

24                  MS. CAMPBELL:  Well, respectfully, it's not asked

25       for in requests for production 4 and 5.
```

```
 1                THE COURT:  I hear you.  We're not talking about

 2    that.

 3                We're just talking about the nuts and bolts of

 4    coming up with a sum of a bunch of numbers.  Right?

 5                So you've provided the sums.  What I'm wondering

 6    is, where are all the inputted numbers, and is that

 7    something you can't just spit out?

 8                MR. KIRKMAN:  Can we find that out?  We will.

 9                THE COURT:  That's my question.

10                MS. CAMPBELL:  It's not something that just spits

11    out.

12                THE COURT:  Because they want a lot of other data,

13    I hear it.  I hear that.  But some of that data they can

14    generate just as easily.  They've got a big ol' database

15    over there too.

16                MR. KIRKMAN:  We can get an answer to that

17    question.  I understand what you want.  We will try to get

18    that to them at the same time we file the brief and share it

19    with the other side.

20                THE COURT:  All right.  I think they're entitled

21    to evidence of revenues, right?

22                We've already decided that.  That's already been

23    decided that that issue is relevant.

24                The question is, you know, is it feasible to

25    generate all that, or do you have to write a whole bunch of
```

1    code?  Or if you do, then, you know, whose burden is that?

2         And if you can get some of this information

3    another way, is it less onerous to get it a different way

4    than it is to make Skiplagged go out and spend yet more

5    money to put all this stuff together?

6         MR. KIRKMAN:  I think that's an issue we can come

7    up with on the revenue.  We will provide an answer at the

8    same time we file the brief, if that's acceptable?

9         THE COURT:  That's acceptable.

10        And then, my question is for the other

11   information, not just the dollar amounts of revenue, where

12   do they go?  Where are the legs, and all this other stuff?

13        I have a hard time understanding why that's not in

14   the big ol' computer out there at the end of the runway?

15        MR. BERG:  Yes, sir.  I can explain it.

16        THE COURT:  Okay.

17        MR. BERG:  So very specifically, what we know is

18   American Airlines has a PNR.  We know that Jane Doe got on

19   our plane at DFW and was scheduled to fly from DFW to

20   Seattle to Portland, Oregon.  We don't always know if she

21   got off in Seattle.  Right?

22        THE COURT:  Right.

23        MR. BERG:  But they do.  They have it.  It's in

24   that example I showed you.

25        So the Skiplagging part of it is completely opaque

```
1    to us.  We don't know how much Skiplagged tickets they
2    actually sold.  It's in their database.
3            THE COURT:  I hear you.  I get you.  I'm just
4    trying to get the facts.
5            MR. BERG:  Yes, sir.
6            THE COURT:  I'm just trying to figure out, because
7    all the time I deal with American and they collect all this
8    stuff, and I look at my record locator, you know, and I type
9    in the letters and all that jazz, it all -- you know, it all
10   comes out.
11           That's what I'm trying to figure out.  If you've
12   got all those record locators, what do you already have,
13   over and above what they get independently, or they could
14   get independently through their looking through the
15   database?
16           MR. BERG:  First and foremost, we don't know which
17   tickets were facilitated by Skiplagged.  We have no way of
18   knowing that.
19           THE COURT:  Well, they give you a list of a
20   million record locators.
21           MR. BERG:  That's the starting point.
22           THE COURT:  All right.  And y'all run those in
23   your system, and what does it spit out?
24           MR. BERG:  We're going to get the origin,
25   destination.
```

```
1              THE COURT:  The name?

2              MR. BERG:  We're going to get the name, address,

3    telephone number.

4              THE COURT:  You get how much the ticket was?

5              MR. BERG:  How much we received for the ticket?

6              THE COURT:  How much you got for the ticket?

7              MR. BERG:  We don't get how much they received for

8    the ticket.

9              THE COURT:  Right.  I understand.  That's revenue.

10             MR. BERG:  Yes, sir.

11             THE COURT:  But I'm talking about all this other

12   stuff you want.  And you are saying you're entitled to it

13   because they produce it.  I'm just trying to figure out how

14   much of that you've already got.

15             And if it's a matter of you-all querying the

16   databases and all that other jazz on record locator, as

17   opposed to making them do it, in addition to them coming up

18   with revenue that's linked to a particular record locator.

19             MR. BERG:  So record locators are reused.  There's

20   only a certain number of them.  Right?

21             MR. KIRKMAN:  The record locators are what?  I

22   didn't hear you.

23             THE COURT:  They're reused.  They recycle them.

24             MR. BERG:  They recycle them.  It's because

25   there's only a certain number of them, and we sell millions
```

```
 1   of tickets a year.  So two PNRs are the same.  You know,

 2   one, two, three, four, five, six.  One, two, three, four,

 3   five, six.  Three or four of them.  They know which one they

 4   sold, we don't.  We don't have any idea.

 5           So they give us a PNR and they match.  So we can't

 6   just say, you know, once we know which PNR it is and which

 7   customer, then we can match it up.  So it's not just that.

 8   It's the PNR, we need the information they've got.

 9           And that's not what they're complaining about

10   providing.  Look at what they're really complaining about

11   providing.  It's the revenue numbers.  Right?

12           THE COURT:  Well, I think the difficulty is the

13   same whether -- or what I hear is the difficulty is the same

14   whether it's revenue or, you know, whichever one of these

15   you know, columns it is.  It's a matter of trying to extract

16   all that information from the database that they've got.

17           So, obviously, I was just asking the question

18   because I hate to make people plow up ground that can be

19   plowed up by somebody else more easier and quicker, that

20   sort of thing.

21           So I think I've heard your explanation.  You-all

22   may disagree, but at least you hear why just getting record

23   locators may not be the answer to the problem.  Go ahead.

24           MR. KIRKMAN:  I just want to make the point that,

25   if the record locator comes from us, they're going to know
```

```
1    it's from us.  That's the point of giving it to them.

2              THE COURT:  But they can't then take that,

3    Mr. Kirkman, and link it up necessarily to a particular

4    ticket that they sold.

5              MR. KIRKMAN:  Sure they can.  That's the whole

6    point of giving them.

7              THE COURT:  But they reuse them.

8              MR. KIRKMAN:  I'm confused.

9              THE COURT:  If you get record locator X, Y, Z, T,

10   A, then it's reused at some point.  I don't know how often

11   it's reused.  I don't know how long it takes to go through

12   however many, six or seven letters, to get there.  Somebody

13   smarter than me -- some expert would have to say.

14             MR. BERG:  Well, regardless of the burden, Judge,

15   they've waived it.  You've already ruled on those.  And for

16   them to get a second bite at the apple is not fair.

17             THE COURT:  Sure, it's fair.  I mean, we're trying

18   to get you the information you're entitled to get.  And

19   everybody is entitled to say, yes, they're entitled to this

20   information, but it's going to cost a gazillion dollars to

21   give it to them, because proportionality is always something

22   that you've got to take into consideration.

23             Should this all have been brought out before,

24   maybe so.  But we are where we are.  I'm trying to get this

25   thing, keep moving it on down the road, and get you the
```

```
1    information that you need to show what the revenues were, or
2    spot check them, or whatever you-all's expert is going to
3    do.
4              MR. BERG:  Yes, sir.  Thank you.
5              THE COURT:  That's the plan.
6              So next Wednesday I want a response from you on
7    the bench brief.  Please keep it no longer than the bench
8    brief was.
9              MR. KIRKMAN:  Was that 23 pages?
10             THE COURT:  Six pages.
11             MR. KIRKMAN:  Okay.
12             THE COURT:  And one to the eight-point tie.
13             MR. KIRKMAN:  Okay.
14             THE COURT:  Just something that responds.
15             If they're right, if this is the prevailing law,
16   then just say that's what it is.  We'll deal with it.
17             MR. KIRKMAN:  We will.
18             THE COURT:  I'm not trying to make this the Death
19   March.  But I do think they're entitled to this revenue
20   information, if they can get other revenue information that
21   fills in this gap they say exists for '18, '19, I think
22   that's good too.
23             I don't know, I have a hard time wrapping my head
24   around the idea that you've got this database and no way to
25   extract it.  I'm not saying that's not the case, but it's
```

1    troublesome.

2              Because somehow or another you've got to come up

3    with what are the influences that yield those sums?

4              MR. KIRKMAN:  I'm confident that we know the

5    answer on the revenue, and we will get that by Wednesday,

6    along with our response, Your Honor.

7              THE COURT:  All right.  So I am going to hold on

8    to RPF 4 and 5 and interrogatory No. 8, unless there's

9    something else somebody wants to add on those?

10             MR. BERG:  Judge, the one last thing is, we need

11   this information for our expert.  The expert deadline is

12   Friday.

13             MR. KIRKMAN:  It's the 19th.

14             MS. CAMPBELL:  It's the 23rd.

15             MR. KIRKMAN:  If he grants my trip to New York for

16   my daughter's birthday, then, it will be the 23rd.

17             MR. BERG:  Whatever it is, Judge --

18             MS. CAMPBELL:  It was granted as I walked into the

19   courthouse.

20             THE COURT:  I don't think you're going to get them

21   to write code and do anything about it between now and the

22   23rd of April.

23             MR. BERG:  That's my point.

24             THE COURT:  Even if I ordered it today.

25             MR. BERG:  Well, I can --

1          THE COURT:  Sorry.

2          MR. BERG:  That's part of the relief we've

3   requested.

4          THE COURT:  Yeah.

5          MR. BERG:  The request, the sanctions -- look,

6   we're not going after fees.  We're not trying to hurt them.

7   We want --

8          THE COURT:  The thing is you can't -- if they have

9   to go out and write code to generate all this information,

10  you're not going to have that in six days.

11         MR. BERG:  That's why I want the extension for my

12  expert.

13         THE COURT:  I hear you.  I would too.  But I'm not

14  running that part of the case.

15         MR. BERG:  I apologize, Judge, please forgive my

16  ignorance.  I will do whatever you told me to do, but I

17  thought the whole motion and all the relief requested in our

18  motion was assigned to you.

19         THE COURT:  I don't think extending the deadlines

20  on experts is in my bailiwick, is it?

21         MR. BERG:  My understanding of the referral order,

22  I would have done something different if I would have

23  thought it didn't include an extension of that deadline.

24  I'm happy, if you don't think it's within your purview --

25         THE COURT:  Let me look at it and be sure, but I'm

1    not sure.  I haven't been looking at it in that respect, but

2    I will be glad to look at it.

3              MR. BERG:  Yes, sir.

4              THE COURT:  I don't want Mr. Kirkman to miss a

5    trip to New York City.

6              MR. BERG:  That's different.  He and I agreed that

7    that four-day extension is different for his daughter's

8    birthday than what this is for getting the data so we can

9    get it to our expert.

10             THE COURT:  All right.  Well, we'll look at that.

11   If that's a problem, if they've got to generate coding and

12   all that jazz to spit this out, that might take a while to

13   do.  Okay.

14             All right.  Can we move on then to Skiplagged's

15   motion to compel?

16             MR. KIRKMAN:  We can.  May it please the Court, we

17   are here to discuss three forms of discovery that were

18   generated by Skiplagged to American.  So, requests for

19   admissions, some interrogatories, and requests for

20   production.

21             American lodged what I would call extensive

22   objections and failures to answer or produce documents.  On

23   Monday, they filed a document through this status report

24   that withdrew a number of those.  Left us with the same

25   requests, but a small number of objections withdrawn.

1       So what we did in order to assist the Court given

2  that background, Judge, is we've prepared a status report as

3  you had required after our meetings.  And what we endeavored

4  to do is, through our status report, summarize where we

5  think we are after American's withdrawing of certain

6  objections.

7       What we chose to do in hopes that this would be

8  the most expeditious way to deal with them is we grouped the

9  remaining issues in our status report in hopes that this

10  would give us the ability to get through this.

11       What we did was, on page three of our status

12  report, which was filed on the 15th, at No. 2, we told the

13  Court what interrogatories and requests for production we

14  had propounded where there were still relevancy objections,

15  which we don't think any of which were well-founded.

16       And then, in No. 3 in the status report, we

17  grouped together those requests for production where

18  American claimed that we didn't describe with "reasonable

19  particularity" what we wanted.  We take issue with those.

20  Again, to be clear, these are objections that they did not

21  withdraw.

22       And in the fourth category, we grouped together

23  objections where they claimed that the interrogatories and

24  requests for admissions that we made were "vague and

25  ambiguous."  We took issue with those.  And we listed them

1    with the Court to show this is what's remaining with these

2    objections.

3           Now, of course, what we're faced with is, absent a

4    ruling by the Court on these objections, or having them

5    withdrawn, then we're left hanging out on the documents that

6    we've requested.

7           So I don't know any other way than to allow the

8    Court to go through these various requests and

9    interrogatories to determine whether these relevancy,

10   failure to describe with particularity, and vague and

11   ambiguous objections are any good.

12          If they're overruled, then we're okay.  We know

13   where we are, and we can get the documents.  We just need a

14   statement that they're going to produce those documents.

15          We can walk through those.  I know enough about

16   Your Honor and your background and history to allow you to

17   just walk through them and rule on them.  If you want to do

18   that, rather than stay here and walk through each one,

19   because we're happy to stand on what we've submitted.

20          If you want to walk through them, we will give you

21   our arguments and show you why these objections that they

22   made are just, in essence, boilerplate objections and no

23   good.

24          If you rule overruling them, then we know we have

25   the ability to get that information, because without an

48

1   objection, they're required to produce.  We would just want

2   some order from the Court that would indicate when the

3   information is to be produced in terms of documents or in

4   terms of interrogatories based on those overruled

5   objections.

6           Now, having said that, I did want to summarize

7   what I believe are the three general categories of documents

8   and information that were requested that, based on our

9   discussions and papers that I've seen from American, we have

10  a significant difference.

11          So what I'm saying, Judge, is beyond these, what

12  I'll call boilerplate objections, vague and ambiguous and

13  relevance that I think you are capable of handling when you

14  look at them, there are three general areas that I do want

15  to go over to explain exactly what our positions are on some

16  of these.

17          The first one has to do with No. 7 in our proposed

18  motion to compel which deals with financial documents.  Now,

19  for purposes of the Court's review, we have addressed this

20  on pages 11 and 12 of our motion.

21          Here's the bottom line.  They have requested in

22  their live pleading damages that were proximately caused by

23  what they say were breaches of contract and tortious

24  interference with contract.

25          Now, my friend, Mr. Berg, makes a big deal of

```
1    federal claims and he does make federal claims.  But in

2    addition, he's got these state law claims that they're

3    asserting actual damages for.

4            And we need information regarding the financial

5    documents that we requested from American that analyze those

6    actual damage claims.  There's proximate cause requirement

7    under the law and we need that financial information to find

8    out exactly what their damages are going to be.

9            Now, what they've told us is, well, we're working

10   with our experts, and we can't give you those until our

11   experts disclose.  Well, that's not a basis.  We are

12   entitled to the underlying documents so we can look at them

13   and determine what are your actual damages here?

14           Just take a simple example.  If Joe Blow doesn't

15   satisfy their hidden ticket claim, where's the cost?

16           What information do they have financially that

17   tells us what those damages are?  We don't know.  We have

18   nothing from them.

19           So in reading pages 11 and 12 of our motion, and

20   No. 7 in our status report, those request for productions 9,

21   12, 28, 40 through 41, 50, 51, and 58 specifically request

22   those types of financial documents to assist us in finding

23   out just what their actual damage claims are.

24           Now, the second category of documents, Your Honor,

25   is summarized in paragraph 8 of our status report, which has
```

1    to do with their federal claim for copyright, trademark

2    infringement, et cetera.  Well, let me talk about a

3    fundamental issue with the issue for the damages of those

4    federal claims.

5          Let me characterize it this way.  If they're

6    claiming only some form of disgorgement damages from

7    Skiplagged, okay.  But they don't do that.  They claim all

8    through their pleadings that they're entitled to actual

9    damages.

10         And so, we need the information that we've

11   requested in request for productions 56 through 58, 60

12   through 68, 75, 82 through 85, 87 to 88, and 90, 91 to help

13   us understand what those copyright claims are and what their

14   actual damage claims are.

15         Now, if they were to represent to the Court and

16   stipulate, we're only seeking disgorgement of monies from

17   Skiplagged, that would be a horse of a different color.

18         But when they're not, and they seek actual damages

19   based on their claims, we need these documents that are

20   requested to determine the legitimacy of those damages.

21         Now, the second aspect of the federal claims is,

22   again, they're making underlying claims about damages.  Even

23   if it were disgorgement, the factors that go into

24   determining whether disgorgement is appropriate is whether

25   the sales have been diverted, was there an unreasonable

1   delay by the plaintiff in asserting rights, and all of these

2   underlying documents we've asked for.

3          A number of the requests for admission, we said,

4   haven't you known since 2012, or since 2013 that Skiplagged

5   was engaged in this conduct?  We need to know the answer to

6   that.

7          Because even if we're only a disgorgement damage

8   claim, that's relevant.  It's relevant for the Court's

9   consideration on just the disgorgement.

10          Not addressing the fact that they have actual

11   damage claims.  I mean, our belief is under the law they've

12   got to prove the appropriate copyright basis.  All they've

13   given us is publicly filed documents.  That's not enough.

14   They haven't gotten any further documents to us whatsoever.

15          Now, if they're going to say, Mr. Skiplagged,

16   we're not going to produce any other documents.  What you've

17   been given is it, that's going to be the entire basis of our

18   copyright claim, great.

19          But that's not what they say when they ask for

20   actual damages and make these violations.  If we don't get

21   those documents, we can't make that analysis, because what

22   we've got right now is insufficient.  If they're going to

23   stop and that's it, okay, we will defend the case on that

24   basis.  But without those other documents, we can't do that

25   on these federal claims.

1           Here's the last point.  They have, as I said, this

2    breach of contract, tortious interference set of claims

3    which we have requested documents asking, what is it

4    specifically?  Which customer's contracts are you claiming

5    are breached or tortiously interfered with?

6           Interrogatories Nos. 2, 8, and request for

7    productions 4, 10 through 11, 24 and 25, as set out in

8    paragraph 9 of our status report, are designed to get that

9    information.  We have briefed that extensively on page 13 --

10   on page 13 of our motion.

11          We need to know the dates they were breached,

12   which customers they say were breached.  We understand

13   you're saying there's contracts of carriage that exist

14   between the customer and American, you claim that they're

15   breached or, tortious interference, but which ones?  How do

16   we know which specific contracts were breached?

17          They have a causal connection to meet, Judge, they

18   do.  We don't know how to defend that.  We don't know which

19   contracts they're saying.  You can't just say, well, all the

20   contracts.  How do you explain what that particular customer

21   did?  Did he fly to that city?  What were the reasons he

22   didn't fly?  Those are causal connections they've got to

23   prove.

24          And without a listing of the contracts that they

25   say were breached or tortiously interfered with by these

1  individual customers, we can't begin to determine what their

2  actual damages are.  They can't just say it's everything.

3          Again, if it's a disgorgement claim, that's

4  different.  That's not what their pleading says.  Their

5  pleading says they want actual damages.  They've got to

6  prove that.  So we need that information to determine what

7  contracts do you claim we breached?

8          Specifically, by customer?  And what is it that we

9  tortiously interfered with by customer?  Because without

10 that information, we can't begin to determine what our

11 exposure is, what the damages are, what the breach of

12 contracts make up.  Thank you.

13         THE COURT:  All right.

14         Mr. Berg.

15         MR. BERG:  So, first and foremost, Judge, we've

16 got a couple reasons why their motion shouldn't even be

17 considered at all.  I know your tendency is to consider

18 these things, but at some point you got to put a stop to the

19 nonsense of them just coming down here.

20         This motion is clearly in retaliation for us

21 filing our motion to compel.  Right?  We won't go through

22 all of the details, but we were working towards a solution.

23         In their anger and their frustration, what they

24 did in their motion is just unconscionable.  Unconscionable,

25 Judge.  They violated the mediation rules.

```
 1              They received the mediation rules from Judge R.H.

 2    Wallace.  Presumably they signed them, which he requested.

 3    He sent them to us on March 9th.  Judge R.H. Wallace

 4    mediation rules.  "The parties shall maintain the

 5    confidentiality of the mediation and shall not rely on or

 6    introduce as evidence in any arbitral, judicial, or other

 7    proceeding, A, views expressed or suggestions made by

 8    another party with respect to a possible settlement of the

 9    disputes."

10              One of very first things they did in their motion

11    to compel, Judge, was point out what the mediation demand

12    was in direct violation.  That's footnote 11 on page 1.

13    "Skiplagged is guessing at this damages number based on AA's

14    representations at mediation."

15              And they say, it's $55 million.  That was the

16    demands at mediation, Judge.  You can't allow people to

17    violate the sanctity of mediation and expect to get by with

18    it.  If you want to give them a second bite of the apple on

19    other things, I understand, but that's just unconscionable.

20              Second, Judge, they did not in good faith confer

21    with us.  They did not.  They sent us a letter.  They said,

22    let's talk about it.  We tried to go down the path of

23    talking about specific requests.  You know, specific

24    objections.

25              For whatever reason, that turned, and they started
```

1    talking about more practical solutions to the issues.

2         Let's talk about adding custodians.  Let's talk

3    about adding search terms.  Let's talk about all these other

4    things and maybe we will get to that point.

5         We file our motion to compel.  Those discussions

6    are off.  They won't talk about that stuff.  Then we're

7    ordered to come back and, you know, meet again, set up a

8    call, tried to go through it, but they refused to go through

9    each objection.  They haven't talked to us about each

10   objections, despite my request to do so.

11        And so, pre-motion and post-motion, they have not

12   complied with the rule.  It's all over our brief, Judge.  We

13   explain exactly what is required.

14        Specifically, you know, they are required under

15   the Eagle vs. NGL to confer, and then attach the discovery

16   and specifically identify each discovery and why, talk about

17   the nature of it.  They didn't do that, Judge.

18        In their rush to retaliate against us to get

19   something on file, look what they did.  They just said, oh,

20   well, you know, I want you to rule on the relevancy

21   objection too, and then they just list them.  I want you to

22   rule on the, you know, particularity objection, and then

23   they just list them.

24        They don't go through each and every one and

25   explain why it's not relevant.  Why, you know -- or give us

```
1   the opportunity to explain relevancy to them.  They don't
2   talk about reasonable particularity.  They did not do what
3   they're supposed to do.
4          So those are the three reasons, right?  They
5   violated the mediation rules, they did not confer in good
6   faith, and they didn't identify in the motion the
7   specificity with which they are required to do so in order
8   to present this to the Court.  It's just not fair.
9          We don't really know what they want and that's
10  what they're doing and just punting it to you.  They don't
11  want to argue about it.  They don't want to talk about it.
12  They just want to, in a vacuum, let's see what's going on.
13          Incredible that they say we didn't identify our
14  contracts.  Judge, our interrogatory response, it's
15  interrogatory No. 2, our answer to interrogatory No. 3,
16  American answers in Count I of American's first amended
17  complaint, asserts a claim for breach of contract and
18  alleges that Skiplagged has breached the AA.com use
19  agreement, and American's conditions of carriage.
20          For them to say we didn't identify the contract at
21  issue, and what the breaches are is preposterous.  "The use
22  agreement is executed every time a user, such as
23  Skiplagged," I explained that to you, how they go on to
24  AA.com, "gains access and uses our website."  They're using
25  our website.  That's a breach of that contract.
```

1          We don't know how many times they did it.  They

2    say they want to know each and every time, each and every

3    customer.  We don't know.  They have that information.

4    That's the whole point of our motion to compel.

5          They want us to prove each customer who flew a

6    Skiplagged ticket.  And so, that's the causal connection

7    that Mr. Kirkman just talked about.  Well, guess what?  The

8    only way for us to do that, for us to prove, is to get the

9    information from them.  They have it.  They're the only ones

10   that have it.

11         It's completely disingenuous for them to say, we

12   can't identify specific customers, when they're the only

13   ones that have the information.  We go on to explain that to

14   them in our response.

15         That's, you know, document 84, page 131 of 206.

16   "Skiplagged has breached numerous provisions."  So we don't

17   just tell them they breached it, we identify a page and a

18   half of detailed, specific bullet points about how they did.

19   And we tell them more, here's how they did it.  And we have

20   a handful more of bullet points.

21         So we have given them the information on the

22   breach of contract.  To the extent they want a specific

23   name, address, telephone number of every person that

24   Skiplagged flew on a hidden city ticket, they have it,

25   they've got to give it to us.  They can't say somehow we

58

```
 1    can't prove our claims when they refuse to give us the

 2    information.

 3               THE COURT:  Don't you have the burden though?

 4               You say they interfered with your contract with

 5    the customer.  Don't you have the burden of showing that to

 6    the Court, to the jury?

 7               MR. BERG:  Absolutely.  And I'm entitled to

 8    discovery to get that information.

 9               THE COURT:  If you can't get that discovery, then

10    who bears the burden of not being able to produce that, that

11    evidence?

12               MR. BERG:  I misunderstood your question.

13               THE COURT:  Well, you got the burden of proof

14    though, right?

15               MR. BERG:  Absolutely.

16               THE COURT:  And so, if you can't prove it, you

17    can't recover.

18               MR. BERG:  On some parts, but not all parts.

19    Right?

20               THE COURT:  Right.

21               MR. BERG:  We do know, they've identified how many

22    times they hit our website.  We've got a lot of

23    alternatives.

24               THE COURT:  Right.

25               MR. BERG:  But to get down to what is the critical
```

```
 1    issue here, we do not know who flew hidden city tickets.
 2    We're entitled to discovery to figure that out.  They've got
 3    it.  And now they're coming, trying to turn that against us.
 4              They're saying we're not going to give you the
 5    information.  Oh, and by the way, now you can't prove your
 6    case.  That's not the way it should work.  That's completely
 7    unfair.
 8              So, Judge, they say boilerplate.  Our objections
 9    are not boilerplate.
10              THE COURT:  They're not?
11              MR. BERG:  Absolutely not.  He accuses us of
12    filing boilerplate objections.  They can't say, Judge, any
13    and all documents for every request -- any and all documents
14    relating to X, and then we say, look, when you say any and
15    all documents relating --
16              THE COURT:  What do you mean by "any"?
17              What do you mean by "all"?
18              I mean, that's just the most boilerplate objection
19    there is.
20              MR. BERG:  I didn't object on what do you mean by
21    any?  What do you mean by all?  I objected because it's
22    relevant.  You know, all documents related to X, Y, or Z --
23              THE COURT:  Look, I don't mean to interrupt you,
24    Mr. Berg.
25              MR. BERG:  Yes, sir.
```

```
 1              THE COURT:  We had this same discussion last time
 2    we were here.  You'll recall, the Court said, I think I
 3    pointed, I said goose and gander, right?  Remember that?
 4              MR. BERG:  (Nods head.)
 5              THE COURT:  And that's what this is about.  This
 6    is about goose and gander.  And so, I'm happy to go through
 7    here, line by line, request by request.  I will be glad to
 8    rule on your objections about the interrogatories exceeded
 9    25 discreet subparts, because that's a good objection.
10    That's a good objection.
11              MR. BERG:  That one is not before the Court.
12              MR. KIRKMAN:  We didn't put that in the motion to
13    compel.  That's one time I thought maybe Mr. Berg was right.
14              MS. CAMPBELL:  That is being discussed and being
15    conferred and in agreement.
16              THE COURT:  So where are you on the
17    interrogatories?
18              You are going to go down through number what?
19              MR. KIRKMAN:  I think where we are is they were
20    offering to do the next seven.  And we said, well, can we
21    pick seven?
22              And we never did get a resolution of that because
23    we got down to this, but I'm confident that narrow issue can
24    be resolved between the lawyers.
25              THE COURT:  All right.  I'm sorry.  Go ahead.
```

```
 1              MR. BERG:  Goose, gander, I get it, but our
 2   objections are specific.  We identify exactly why something
 3   is vague.  We identify exactly why it's not relevant.
 4              We did not rely exclusively on, oh, Judge, this
 5   request is vague and ambiguous.  We withdrew all the vague
 6   and ambiguous.  We were talking about relevance, reasonable
 7   subparts, and vagueness as to requests for admissions, I
 8   believe.
 9              THE COURT:  Well, you've objected to all the
10   requests for admissions as vague, right?
11              MR. BERG:  Yeah.  Look at the way, if you are
12   going to go through them one by one, look at their
13   definitions.  And their definitions make it virtually
14   impossible to understand the requests.
15              If they want to talk to us and get down to it, but
16   they say you, Judge.  American -- and then they identify
17   American Airlines as every employee and agent and everybody
18   that ever had anything to do with American Airlines.  Well,
19   that's not relevant.
20              What I knew or what, you know, some lawyer that's
21   representing American Airlines in a slip and fall case knows
22   about Skiplagged is not relevant to anything, but by their
23   definition in requests for admissions, we've got to go
24   interview all these people and figure this out.
25              THE COURT:  No, you don't.  No, you don't.
```

```
1              MR. BERG:  That's what it says.

2              THE COURT:  Come on.  Come on now.  Come on.  Any

3    one of you, any one of you would meet that definition.

4              "Admit that American Airlines was aware in a

5    certain year that Skiplagged made use of some of the

6    American marks."  Admit.

7              MR. BERG:  That's not what they asked.

8              THE COURT:  Huh?

9              MR. BERG:  That's not what they asked.

10             THE COURT:  Well, call up request for admission 13

11   and read it to me.

12             MR. BERG:  Admit that you were aware.  And then,

13   go back and look how they define "you."

14             THE COURT:  No.  Just read the request for

15   admission to me, if you will.

16             MR. BERG:  No. 13?

17             THE COURT:  Yeah.

18             MR. BERG:  "Admit that in or before 2015 you were

19   aware that Skiplagged made some use of the American marks."

20             THE COURT:  Okay.

21             MR. BERG:  And then, when you go back to what

22   their definitions of who "you" is, it's impossible.

23             THE COURT:  Read it to me.

24             MR. BERG:  Which?

25             THE COURT:  The definition of "you."
```

```
1              MR. KELLY:  It's in the response.  Here.  It's

2   right there.

3              MR. BERG:  Skiplagged has defined "you" as meaning

4   "American Airlines, Inc., its present and former agents,

5   employees, representatives, attorneys, predecessors in

6   interest, successors in interest, and all other persons or

7   entities presently or formerly acting in whole or in part on

8   its behalf."

9              THE COURT:  Okay.

10             MR. BERG:  That's everybody in the world,

11   practically.

12             THE COURT:  All right.

13             MR. BERG:  And so, how can we possibly answer

14   that?

15             THE COURT:  That's not vague, right?  That's not

16   vague.  So can you admit that all those people knew that at

17   a certain time in the past?

18             MR. BERG:  I understand, Your Honor.  Thank you.

19             THE COURT:  No.  Right?  You couldn't possibly

20   know that.  But that's not vagueness.  That's just deny.

21             MR. BERG:  Yes, sir.

22             THE COURT:  Right?  Unless I'm missing something?

23             MR. BERG:  No, sir.

24             THE COURT:  So that particular question by year,

25   takes up 13 through 20.  And then, 22 through 29 of the
```

1    RFAs, right?

2              MR. BERG:  I think that's right, Your Honor.

3              MR. KIRKMAN:  One, two, 13 through 20, and 22

4    through 29.

5              THE COURT:  No.  Just that one that he read.  The

6    deal about y'all are asking did everybody in the world know

7    this in 2015, and for 2016, 2017?

8              I'm just saying that particular request takes up

9    request for admission 13 through 20, and then, 22 through --

10             MR. KIRKMAN:  Twenty-nine.

11             THE COURT:  -- 29.

12             So, I mean, to me, it's not vague.  I don't know

13   how you'd ever -- you know, I don't know how you'd ever

14   answer that.  Because, you know, predecessors -- I mean,

15   it's the way you defined "you."

16             So now if you asked, admit that American Airlines

17   knew blah, blah, blah.  I think American Airlines can answer

18   that probably and would have a hard time saying how can they

19   know what American Airlines would know because, you know,

20   it's everybody that wears the eagle.

21             But when you define it as God and everybody, it's

22   not vague.  But I don't know that what you have in terms of

23   a response is going to be all that helpful.

24             And then you look at RFA 1 and 2, again, how can

25   they admit that all those people that charged customers less

1    money to purchase a flight, their predecessors in interest,

2    their successors in interest, U.S. Air, you know, American

3    West, America West, predecessors in interest, American

4    Airlines, you know?

5            MR. KIRKMAN:  If it's a problem with the way it's

6    worded, we accept that.  I'm not asking the Court to do

7    anything other than just overrule the objections.  We'll do

8    it again, if that's what it takes.

9            THE COURT:  Okay.  Well, I overrule the vagueness

10   objection.  I think that Skiplagged needs to refine those

11   requests for admission if they expect American to respond.

12           MR. KIRKMAN:  We will do that.

13           THE COURT:  Okay.  So that takes care of

14   admissions by my calculation.  Is that right?

15           MR. KIRKMAN:  Yes.

16           THE COURT:  All right.  So which of the

17   interrogatories then do I need to rule on?  Any?

18           MR. KIRKMAN:  Okay.  I can walk you through them.

19   We didn't group them in a chronological order.  We grouped

20   them by relevancy --

21           THE COURT:  Yeah.

22           MR. KIRKMAN:  -- objections.

23           THE COURT:  Yeah.  If you tell me the group

24   numbers, and then walk me through them.

25           MR. KIRKMAN:  They objected on relevancy to

 1    interrogatory Nos. 12 and 13, 15 through 20, and 23.  They

 2    objected on vague and ambiguous to 13, 18, and 21.

 3            THE COURT:  Okay.  So tell me then, Mr. Kirkman,

 4    how is interrogatory No. 12 relevant?

 5            What I show that one is, "Identify each time you

 6    denied Skiplagged access to your AA.com site as you claim

 7    you reserve the right to do on the AA.com site usage page

 8    located at," and then the address.

 9            MS. CAMPBELL:  Your Honor, we think that goes to

10    mitigation of damages and things that they specifically

11    brought up, their site usage agreement.  That it's been

12    breached.  So we were asking more questions about that same

13    agreement that's been an issue in this case.

14            We've also brought defenses for laches and waiver

15    based on how long it's taken American Airlines to bring this

16    case with evidence and knowledge that Skiplagged was

17    operating and believe this goes to that as well.

18            THE COURT:  Mr. Berg, anything to add to your

19    objections or argument on your objections?

20            MR. BERG:  Whether or not we denied them access is

21    of no moment; it doesn't matter.  It doesn't go to prove

22    laches.  It doesn't go to prove waiver.  It doesn't go to

23    prove mitigation of damages.  They just throw those words

24    out and don't explain how it goes to any of those things and

25    it doesn't.

67

```
 1                    THE COURT:  I sustain the relevancy objection to

 2      12.

 3                    All right.  Thirteen.  I show it says, "Identify

 4      and describe the details and date ranges for any promotional

 5      or discounted fair offerings by you since August 1st of

 6      2018."  How is that relevant?

 7                    MS. CAMPBELL:  Your Honor, that goes to damages.

 8      In their contract claims they've brought damages for breach

 9      of contract and interference.

10                    What we suspect what they'll claim is money that

11      American missed out on had the customer bought the

12      straight-through flight ticket.

13                    So if there was a promotion going on at the time

14      or a lesser fare, we need to know about that to make sure

15      that the calculations are correct for their damages.

16                    THE COURT:  Won't you be able to determine that

17      once you see what the particular fares were?

18                    MS. CAMPBELL:  That's another issue of what fares

19      they're going to use, but I think we have asked for fare and

20      flight information that we haven't got.

21                    And so, it's a look at -- because they can't prove

22      that somebody would have taken this exact flight, rather

23      than the hidden city flight.  Right?

24                    We don't know what somebody would have really done

25      if they would have chosen a different time, date, different
```

1    airline.  And so, we need to look at the broad picture of

2    what was going on during that time period, whether there

3    would have been a promotion the week after the planned

4    flight.

5                THE COURT:  Mr. Berg.

6                MR. BERG:  Judge, if there's a promotion going on

7    in South America or in Asia or somewhere else in the world,

8    it doesn't have anything to do, almost certainly, with some

9    Skiplagging going on in the United States.  That seems to be

10   where most of it is.

11               Judge, like you said, you've got to look at each

12   ticket.  If a ticket was going to be subject to some sort of

13   a promotional fare, that's going to be in there.

14               They're just asking, in general, for promotional

15   discounted fares or offerings.  Those general promotions or

16   discount fares don't have anything in the world to do with

17   somebody who took a specific flight on a specific date.  We

18   will be able to compare it.

19               They did compare it, Judge, in the data.  They

20   know exactly what the alternative fare was.  And the reason

21   they know so clearly is because they said to customer Jack

22   Smith, guess what, the regular fare was $400, or the fare

23   that you would have gotten, but for hidden city ticketing

24   was 400.  We got you this ticket on a hidden city for 200.

25   So we're charging you a commission on the savings.

```
 1              So they have that information for specific people.
 2   General fares and promotions just, at this point, don't have
 3   anything to do with the damages.  It's what actually
 4   happened.
 5              THE COURT:  I sustain the objections on 12, or I'm
 6   sorry, on interrogatory 13.
 7              Okay.  Fifteen.  That's the next relevancy
 8   objection.  Other lawsuits for the last 10 years.
 9              MS. CAMPBELL:  Oh, Your Honor, that goes to that
10   they've been trying to do this before.  And a lot of things
11   that have happened in this case seem to be more --
12              THE COURT:  I'm sorry.  They've been trying do
13   what before?
14              MS. CAMPBELL:  Stop information from being put out
15   there to help customers fly with all the information that's
16   needed to fly with the most reasonable prices.
17              We know that American has targeted other
18   businesses that just help customers to fly at reasonable
19   prices.  And they've asked very similar requests to
20   Skiplagged in this way as well.
21              We think a lot of this case has to go more towards
22   punishing customers, rather than the lawsuit at issue.  I
23   think that this would show that.
24              THE COURT:  Mr. Berg.
25              MR. BERG:  Punishing customers?  That's absurd,
```

```
1    Judge.  I mean, the nonsense that comes from over there is
2    just unbelievable.  Punishing customers?  We're not in
3    business to punish our customers.
4            Judge, other lawsuits, all the other lawsuits in
5    the world, it's what they want.  Some lawsuits over in the
6    European Union over some guy who thought he should have got
7    more of a refund than he did.  That doesn't have anything to
8    do with anything in this case.
9            THE COURT:  I think that's overly broad.  I think
10   as phrased it calls for irrelevant information.
11           I will say that if there are any cases to which
12   American is a party involved in suits such as this one for
13   copyright and trademark infringement -- what's the term, not
14   phantom city?
15           MR. BERG:  Hidden city.
16           THE COURT:  Hidden city.
17           MR. KIRKMAN:  Hidden city ticket.
18           MS. CAMPBELL:  That sounds better.
19           THE COURT:  I think phantom city sounds better.
20   But for hidden city, I think you ought to answer for those,
21   but otherwise I sustain the objection.
22           MR. BERG:  Yes, sir.
23           THE COURT:  Sixteen.  What's your response to
24   that?  Anything in addition to your objections, Mr. Berg?
25           MR. BERG:  I'm sorry, Your Honor, what?
```

```
 1                 THE COURT:  On interrogatory No. 16.

 2                 MR. BERG:  Yes, sir.

 3                 THE COURT:  So do you have any other objection

 4    besides it's not relevant?

 5                 MR. BERG:  Well, we've got lots of objections, but

 6    the only one --

 7                 THE COURT:  The ones that you haven't waived

 8    because they're general and boilerplate.  And the main one

 9    I'm thinking about in this case is relevancy on this

10    particular one.

11                 MR. BERG:  Yes, sir.

12                 THE COURT:  Any cease-and-desist letters that

13    you've sent to third parties regarding hidden city or

14    Skiplagging since January of 2013.

15                 MR. BERG:  How does a cease and desist letter to a

16    third party that doesn't have anything to do with

17    Skiplagged, it's just on a hidden city ticket.  You know, if

18    we have some suspicion that some travel agent somewhere is

19    unintentionally or inadvertently booked a hidden city ticket

20    or allowed it to be booked on their plates, and we tell

21    them, hey, remember, you can't do this.

22                 What does that have to do with anything with the

23    lengthy, sustained plan that Skiplagged has got going on

24    here?

25                 It's just not relevant to any claims or defenses.
```

1    It's not relevant to our claims, what we do.  And it's not

2    relevant to their defenses.

3          THE COURT:  Well, I'm not sure about that.  You

4    say there's no way to know.  And you've got a billed stack

5    of cease-and-desist letters where you've called people out

6    for doing that.  Aren't they entitled to know that?

7          MR. BERG:  On specific people?  Going back --

8          THE COURT:  Well, I don't know.

9          MR. BERG:  -- fifteen years?

10          THE COURT:  Not 15.

11          MR. BERG:  Ten?  To 2015, I misspoke.  It goes

12    back 10 years.  Judge, that doesn't --

13          What happened in 2015 doesn't have anything to do

14    with what is going on today with Skiplagged violating our

15    copyrights, violating our trademarks, using AA.com,

16    breaching the carriage of condition.  It doesn't have

17    anything to do with our claims.

18          And it certainly doesn't have anything to do with

19    their defenses, because what's going on with somebody else

20    may or may not and doesn't have anything to do with what

21    we're doing with them in this lawsuit.

22          THE COURT:  Ms. Campbell, what about that?

23          MS. CAMPBELL:  I disagree, Your Honor.  I think

24    for the same reasons we talked about the lawsuits in

25    interrogatory No. 15, but this also goes to causation.

```
 1                    They've claimed they've lost actual damages based

 2      on time that their employees have had to deal with people

 3      that have done hidden city flights.

 4                    Hidden city ticketing is not unique to Skiplagged.

 5      Other companies do it, other information is out there.

 6      Somebody doesn't even need a company to do it.  They can

 7      figure it out by themselves.

 8                    And so, we need to be able to temper that, whether

 9      damages were actually caused by Skiplagged, or by hidden

10      city ticketing from another company.  That's what this would

11      show.

12                    MR. BERG:  Judge, that's -- we're not claiming

13      damages for hidden city tickets that John Doe over in

14      Oklahoma City managed to figure out on his own and do on his

15      own.  We're only claiming damages for people who booked

16      through Skiplagged.

17                    THE COURT:  But you don't know who those are?

18                    MR. BERG:  We don't.  We know -- but they do.

19                    MS. CAMPBELL:  Your Honor, this also going to

20      protecting their IP.

21                    THE COURT:  Huh?

22                    MS. CAMPBELL:  This also goes to American's

23      efforts to protect their IP.

24                    THE COURT:  Efforts to protect IP, yeah.

25                    I'm going to sustain the objection as to any
```

 1   cease-and-desist demand letters that were sent prior to

 2   August 1st of 2018, but I will overrule it as to after then.

 3          Okay.  Seventeen.  So this is, explain your

 4   damages.

 5          So what's your objections here, Mr. Berg?

 6          MR. BERG:  Judge, it just goes too far.  They're

 7   seeking way too much information.  For instance, every

 8   person who has possession, custody, or control of

 9   information related to damages.  You know, that's the A

10   subpart.  But that's one of the specifics.

11          They ask about details A through F, specific

12   details that just have no relevance to the actual damages in

13   this case.

14          We can provide them with the damages.  That's our

15   expert.  Once we get the information from them, we can

16   answer it.  But we're not going to be able to identify, you

17   know, each and every person.

18          Again, it's just, they're overbroad.  And because

19   they're so overbroad, it goes into too much information that

20   makes a lot of it irrelevant.

21          THE COURT:  Ms. Campbell.

22          MS. CAMPBELL:  We disagree, Your Honor.  I think

23   this -- obviously, this goes straight to their damages

24   claim.

25          As to the people that have information, we

1   shouldn't have to wait for an expert report to cite if

2   they've talked to so and so at American Airlines, when we've

3   asked for this information back in February so we could have

4   deposed them before then and now, instead of just having to

5   wait on an expert report.

6          They know who has information that's gone to their

7   damages expert.  And we are asking who those people are, on

8   top of very basic damages questions.

9          THE COURT:  Next one, E.  "An explanation of how

10  each item of damages was computed, including any

11  mathematical formula used."

12         MS. CAMPBELL:  And if they don't know the answer

13  to that right now, it needs to be supplemented, then that's

14  appropriate.  But I don't think all of these fall under that

15  same issue.

16         THE COURT:  "Every person who has this business,

17  everybody who has possession, custody, or control of such

18  factual information and/or documents."

19         I think you're entitled to know the total amount

20  of their damages and the categories that make that up and,

21  in general, what the factual bases are for that.  How you

22  arrived at the damages both on the state and the federal

23  claims.

24         I sustain the objections as to having to identify

25  every person who has custody -- possession, custody, or

1    control of such factual information and/or documents.  I

2    think you will need to produce somebody who can explain your

3    damage calculations and how you got there, not necessarily

4    an expert.

5         It could be somebody that's not a designated

6    expert at American Airlines who provides that information.

7    I realize that may be primarily an expert.  You may have to

8    answer it the best you can now, and then supplement it with

9    your expert at a later time.

10        So 18.  Are we still talking about that?  We are,

11   are we not?  Eighteen, 19, and 20?  Let's go on to

12   interrogatory 18.

13        How is this relevant, Ms. Campbell, "Identify and

14   describe all of your fare-setting procedures, policies, and

15   strategies for the routes commonly subject to Skiplagging or

16   hidden city ticketing, as well as your justification for

17   charging consumers of your services less for flights with

18   more legs."

19        What does that have to do with anything?

20        MS. CAMPBELL:  Well, that has to do with the

21   justification defense for Skiplagged.  What Skiplagged does

22   is justified is helping its customers find information that

23   leads them to make the best choice for their flight needs

24   and their travel needs.

25        American has already been able to tell which

1   routes are more subject to people taking advantage of hidden

2   city ticketing.  And so, we want to be able to know that and

3   what their procedures are.

4          They've already admitted that the straight-through

5   flight costs more.  We want to know why?

6          Why are you charging customers more to fly

7   straight through when that same flight they could have

8   gotten off?  It has to go to why Skiplagged does what it

9   does, to get information to its customers.

10          THE COURT:  That seems pretty circular to me.  I'm

11   not sure that why American charges people more for -- I

12   mean, it seems kind of obvious to me.  Somebody who flies

13   routinely in coach, not on the bulkhead, they pay more for a

14   direct, you know, a nonstop flight.

15          MS. CAMPBELL:  To clarify, Your Honor.  Somebody

16   who flies hidden city is flying a nonstop flight.  They're

17   flying from Dallas to Charlotte.  That's it.

18          THE COURT:  Right.

19          MS. CAMPBELL:  But they bought the ticket that

20   goes Dallas to Charlotte to New York.

21          THE COURT:  I understand how it works.  Okay?

22          MS. CAMPBELL:  Yeah.  And so, the same ticket, if

23   I went on AA.com and searched for Dallas to Charlotte can

24   cost $200 more.

25          THE COURT:  Right.  Because it's a nonstop flight,

1    right?

2              MS. CAMPBELL:  So is the person that got off at

3    Charlotte?

4              THE COURT:  They got off, but they didn't pay for

5    a nonstop.  I'm not arguing the merits of the case.  I know

6    it costs more to fly from DFW to Heathrow than it does from

7    Oklahoma City to Heathrow, even though you fly through DFW

8    to get from OKC to wherever it is at Lake Charlotte, right?

9    But that's how it works.

10             What difference does it make to Skiplagged's

11   defense that American does it that way?

12             Why other airlines do it that way?

13             MS. CAMPBELL:  It's to justification.  There's a

14   reason why Skiplagged is doing what it's doing to help

15   consumers have all the information they need to fly smart.

16             THE COURT:  Yeah.  I sustain the objection on 18.

17             What about 19?  "All your procedures, policies,

18   and strategies for identifying suspected cases of

19   Skiplagging or" -- is Skiplagging, is that the term for, as

20   you put it, for getting those whatever, you get off in --

21             MS. CAMPBELL:  Colloquially --

22             THE COURT:  If I fly to New York City, this is how

23   it's done.  When you're flying to New York City and you get

24   a ticket to Boston, it stops in New York City, and you just

25   get off in New York City and it's cheap?

```
1              MS. CAMPBELL:  Colloquially, they've been used
2    interchangeably.
3              THE COURT:  Same type of deal.
4              MS. CAMPBELL:  (Nods head.)
5              THE COURT:  What's the relevance of American's
6    procedures, policies, and strategies for identifying that?
7              MS. CAMPBELL:  Well, Your Honor, they've pled, and
8    it's come up multiple times today that they have no clue and
9    they can't identify when Skiplagged or when a customer has
10   Skiplagged tickets.  We want to see what have they tried to
11   do to do that?
12             How have they tried to mitigate their alleged
13   damages here?
14             And significantly, I've seen otherwise than the
15   claim that they have no information and can't identify
16   anything.
17             Once we did get documents, we've seen significant
18   attempts at trying to identify hidden city.  We've even seen
19   emails where they've identified multiple Skiplagged-specific
20   tickets.  We would like to know how they do that.
21             THE COURT:  Mr. Berg.
22             MR. BERG:  You know when a kid says, yeah, I'm not
23   going all the way to New York City.  I'm getting off in
24   Charlotte, we got him.  Absolutely.
25             But, you know, as far as how we do it, that's a
```

1   lot of times what happens.  We just catch people because

2   they admit.  Somebody is suspicious.

3           But this doesn't have anything to do with our

4   claims.  How we catch people, if we can.  What we do is we

5   file a lawsuit against Skiplagged.  That's what we do.

6           The policies, procedures, all of those things for

7   identifying suspected cases, doesn't go to any of our claims

8   or any of their defenses.  It doesn't matter what we do to

9   try and stop it.

10          The fact of the matter is they're going around us.

11  You can see where this is truly headed.  You absolutely know

12  where this is truly headed.

13          Aktarer Zaman wants to get this information so

14  that he can tweak his algorithm and work around us.  We've

15  seen lots and lots of their emails where they're trying to

16  figure out, what is American doing?  How are they doing it?

17  They just want the information so they can cheat us better.

18          THE COURT:  Well, I don't think it's relevant.  I

19  sustain the objection on 19.

20          On No. 20, isn't that a continuation of the same

21  thing?

22          "Short-term and long-term steps or actions you

23  took and/or take after identifying an instance of hidden

24  city ticketing or Skiplagging?"  I sustain that objection.

25          So 21 is vague; is that right?

1          MR. KIRKMAN:  Yes.

2          THE COURT:  So objection here, Mr. Berg, on

3   interrogatory 21, vagueness?

4          MR. BERG:  In part, yes.

5          THE COURT:  What's the other objection?

6          MR. BERG:  We've got the subpart objections.

7          THE COURT:  Which you waive?

8          I mean, you-all have worked out something on that,

9   right?

10          MR. BERG:  Well, not finally.  We're in the

11   process.  They've got to tell us, you know, which other

12   ones -- and this is not one they've identified.  So we may

13   or may not.

14          THE COURT:  Well, then I shouldn't be ruling on

15   stuff that you-all aren't going to be having any problems

16   with, right?

17          MR. KIRKMAN:  Well --

18          THE COURT:  I mean, I'm down to two left.  I guess

19   I should have figured that out before now.

20          But when did American Airlines, not Lars Berg or

21   Dee Kelly, Jr., when did American Airlines first become

22   aware that Skiplagged offered information about facilitating

23   the purchase of AA flights?

24          MR. BERG:  I don't have that date in my head,

25   Judge.

1          THE COURT:  Well, somebody does.  You figure that

2   one out.  I overrule the objection there.

3          Twenty-three.  I show the objection here is

4   relevance.

5          So, Ms. Campbell, what does the evidence of what

6   American has done to protect its marks and copyrights --

7   what does that have to do with -- does that go to your

8   waiver defense?

9          What is that, waiver and laches, or what?

10         MS. CAMPBELL:  It also goes to how American values

11  its trademarks and copyrights?

12         THE COURT:  But you are not asking for how much --

13  maybe in a metaphysical sense, it does.  Because you say, we

14  value it a lot, and that's why we sue.

15         You're not really asking.  You're just saying

16  details to license or enforce those marks.  So how does that

17  impact what they're suing for here?

18         How's that relevant, with what they've done with

19  others?

20         MS. CAMPBELL:  As they've alleged for actual

21  damages on their trademark claims as well.  I think their

22  efforts to enforce has to go to value.  And so, the value of

23  their trademark relates to the damages.

24         So they can't -- you know, you can't come out and

25  say, oh, we value it at this number, and then we see no

```
 1    efforts to ever enforce it?  That doesn't jibe.

 2              THE COURT:  Well, but it doesn't jibe as long as

 3    there are other people who are exploiting that mark or

 4    copyright without a license or without American's

 5    permission.

 6              MS. CAMPBELL:  But if they do nothing to enforce

 7    it, then it doesn't seem like they value it very much.

 8              THE COURT:  That's kind of an oblique way of

 9    proving that though, isn't it?

10              You're not showing that they don't value something

11    because they don't sue about it.  Well, that may be one

12    reason they don't sue about it, it's not worthwhile, or it

13    may be that there aren't any infringers.

14              MS. CAMPBELL:  I understand.  That's why I think,

15    I mean, for discovery, it can be we're seeking information

16    that could lead to discoverable evidence.

17              THE COURT:  That's not the test anymore.  It's

18    relevance and proportionality.  And so, I think you can get

19    that for any efforts that American made to license or

20    enforce those marks and copyrights in the last 10 years, as

21    it relates to Skiplagging, or hidden city flights.

22              But without more, I think it's overbroad.  And it

23    launches into irrelevant information when you go beyond

24    that.  So I will sustain the objection to that extent.

25              MR. BERG:  Well, Judge, I would like to be heard
```

1    on that one.

2            THE COURT:  Be careful.  You might lose what you

3    just got.  But go ahead.

4            MR. BERG:  Well, I understand.  But you said we

5    are supposed to produce information on hidden city

6    ticketing, our efforts in that regard.  But that is not

7    relevant to anything, Judge, our enforcement actions.

8            It goes back to trademark law and copyright law.

9    The elements of the trademark law are, A, who owns the

10   trademark.  We've absolutely proved that.  We gave them the

11   wrapper.  We produced it and that proves it creates a

12   presumption.  And that's done.

13           Skiplagged's use creates likelihood of confusion.

14   They don't contest that.  Judge, they didn't file a

15   counterclaim contesting our marks.  They didn't file a

16   counterclaim to invalidate it.

17           The trademark statute has defenses that limit us.

18   Skiplagged didn't plead any of those defenses, didn't put

19   any of those defenses in any of their discovery responses.

20   There's just no dispute about those elements.  So even when

21   you limit it to hidden city ticketing, it's not relevant.

22           And the same almost goes for copyright, the

23   elements of copyright, ownership, copying, and substantial

24   similarity.  Again, the presumption when we produce the

25   registration, the certificate of registration, we produced

1   it.  They don't contest it.  Copying, they've admitted that

2   they copied it.  They admit they had one of their employees

3   go and copy it off the Internet.

4           Substantial similarity.  Judge, that's proved as a

5   matter of course when they admitted they copied it.  So

6   there's no dispute over those elements with the consequence

7   our enforcement or nonenforcement even as to hidden city

8   ticketing is not relevant to any claims or defenses.

9           THE COURT:  Okay.  Thank you, Mr. Berg.

10          My ruling stands.

11          All right.  So then that gets us through the

12  requests for admissions and interrogatories by my

13  calculation, unless we have to go through 1 through 11 on

14  the interrogatories.

15          MS. CAMPBELL:  Well, Your Honor, too,

16  Mr. Kirkman's, one of his three main points that he went

17  through was identification of the contracts at issue.  That

18  is, I believe, asked in interrogatory 2.  I don't know if

19  you want to take it up that way or take up, as a general

20  issue, of the three that Mr. Kirkman identified.

21          THE COURT:  I want to take up any interrogatories

22  you need a ruling on the objections on, because we've gone

23  through 12, 13, 15, 16, 17, 18, 19, 20, 21, and 23.

24          MR. KIRKMAN:  May I make one comment?

25          THE COURT:  Sure.

```
 1              MR. KIRKMAN:  Those preliminary interrogatories 2,
 2    4, 6, and 8.  There's a statement that American makes that
 3    they're in the process through discovery and work with their
 4    expert witnesses, says compiling additional information
 5    responsive, and will supplement when the specific
 6    information becomes available, will be produced.
 7              When will that be produced?
 8              Excuse me.  Will that be produced?  And when?
 9              I mean, they can't sit there and take this vague
10    position.  Well, when we get through the discovery and get
11    our expert witnesses, we'll give you the documents.  I think
12    that we're just looking for a time when they have to give us
13    this stuff.
14              MR. BERG:  Your Honor, we would --
15              MR. KIRKMAN:  We're less than three months from
16    discovery cutoff for September trial, and we don't have it.
17    I don't think it's appropriate to say we're in the process
18    of working through discovery and working with expert
19    witnesses and compiling additional information and will
20    supplement it.  We just would like some answer as to when?
21    By when?
22              THE COURT:  Okay.
23              MR. BERG:  We withdrew that.
24              THE COURT:  All right.
25              MR. BERG:  We withdrew that statement.  And it's
```

```
 1    contained in paragraph No. 6 on page two that we withdrew

 2    that statement.

 3              MR. KIRKMAN:  Well, I didn't read it that way.  If

 4    that's the way, I apologize.  That's interrogatories 2, 4

 5    through 6, 8 and 11.  I still think we need an idea when

 6    they're supposed to give us the information.  If they

 7    withdraw it and don't give us the information, what good

 8    does it do?

 9              THE COURT:  So you are standing on your other

10    objections as to those interrogatories, is that right,

11    Mr. Berg?

12              MR. BERG:  Yes, sir.  The ones that they haven't

13    challenged.

14              THE COURT:  All right.  So let's go through the

15    interrogatories then.  The other interrogatories for which

16    you need rulings.

17              MR. KIRKMAN:  Okay.  Two.

18              MR. BERG:  Judge, on No. 2 --

19              THE COURT:  Wait a second.

20              Yes, sir.  Unless you're going to help us,

21    Mr. Berg, wait your turn.  But go ahead.

22              MR. BERG:  I was going to help you.  Yes, sir.

23              THE COURT:  All right.  I will take your help.

24              MR. BERG:  Thank you, sir.  Two, I believe, was

25    vague and ambiguous are the objections left that they've
```

```
 1    challenged.
 2              MR. KIRKMAN:  I really think, Judge, that's all
 3    that's left in these interrogatories is, when do we get the
 4    information?
 5              THE COURT:  Which interrogatories are you talking
 6    about?
 7              MR. KIRKMAN:  It's 2, 4 through 6, and 8.
 8              THE COURT:  So, Mr. Berg, you have objections to
 9    2, 4 through 6, and 8 that need to be ruled on.
10              MR. BERG:  We don't have any objections that they
11    challenged.
12              THE COURT:  Well, that doesn't really answer the
13    question.  I don't want to have to rule on these again.  So
14    are there objections that you've made that the Court is
15    going to sustain?
16              MR. BERG:  Well, I think the Court should sustain
17    all of our objections to each of those.
18              THE COURT:  Okay.  So I don't think the only
19    problem here is when you're going to get them, Mr. Kirkman.
20    So let's go through them and see what objections are
21    remaining here.  Mr. Berg says it's ambiguity.  And what is
22    it, vagueness?
23              MR. BERG:  We've got, let's see --
24              MS. CAMPBELL:  Your Honor --
25              MR. KIRKMAN:  I thought those were withdrawn?
```

```
 1              MS. CAMPBELL:  -- I'm looking at their answer to

 2    interrogatory 2.  There's no vague and ambiguous objection.

 3    There's marshal all the evidence, which they did agree to

 4    withdraw.  And the inquiry into the fact, which Mr. Kirkman

 5    went through, that they're saying they're agreeing to

 6    withdraw.

 7              So based on that, and they have agreed to withdraw

 8    their subject two language that's prohibited by Heller.

 9    There's no more objections left there.  We just want to know

10    based on them now removing their objections when will we get

11    a complete answer?

12              THE COURT:  Okay.  So are there any other

13    objections that American is asserting on interrogatory

14    No. 2?  I'm asking you --

15              MR. BERG:  Yes, sir.

16              THE COURT:  -- you, Mr. Berg.  The little why, not

17    the big why.

18              MR. BERG:  I misunderstood.  I thought you were

19    looking over there, Judge.

20              THE COURT:  No, sir.

21              MR. BERG:  Yes, sir.  We've got our subparts

22    objection, which is --

23              THE COURT:  Now, listen.  I will be glad to rule

24    on these objections.  It's 5:00.  Okay?  And I will sit here

25    as long as anybody else is seeking justice, but I don't want
```

1      to rule on stuff that you-all are going to then say, oh, no,

2      Judge, we've already reached an agreement on that.

3              So, I mean, there's a good objection on subparts.

4      That's a good objection.  But if you've withdrawn it, or

5      whatever you are doing, then I want to know that.  And then,

6      I will go ahead and rule on it without that.

7              MR. BERG:  So setting the subparts aside.

8              THE COURT:  Okay.

9              MR. BERG:  We withdrew our overly broad and --

10             THE COURT:  Burdensome.

11             MR. BERG:  -- burdensome --

12             THE COURT:  And then you withdraw the subject to

13     the foregoing?

14             MR. BERG:  And we withdrew the marshaling.  We

15     withdrew the ongoing.

16             But again, this goes back to the idea, we can't

17     give them the answer they want until they give us the

18     information.  So the key is when.  That's what Mr. Kirkman

19     is asking.  They have the key to that.

20             THE COURT:  I'm just asking a very fundamental

21     question.  And that is, are there any other objections that

22     you've lodged here on interrogatory No. 2 that you are

23     seeking a ruling from the Court on?

24             MR. BERG:  Not today.

25             THE COURT:  Okay.  What about the next

1  interrogatory, which I guess would be No. 3?

2        MS. CAMPBELL:  I'm sorry, Your Honor, we do have

3  an issue with their answer to interrogatory 2 as to what

4  Mr. Kirkman brought up earlier as one of the broad

5  categories.

6        Do you want to address that now while we're here

7  looking at it?

8        THE COURT:  Sure.  You want to compel some

9  additional response?

10        MS. CAMPBELL:  Yes, Your Honor.

11        May I approach?

12        THE COURT:  Sure.

13        MS. CAMPBELL:  Your Honor, we've heard today

14  multiple times that American Airlines cannot give us any

15  information as to which tickets are at issue or contracts

16  are at issue, because they can't identify this information.

17        If you look on page 2 of what I just handed you is

18  an email produced by American Airlines where they do have

19  some of this information.

20        They've identified by record locator number, and

21  then, you can see in the PNR remarks:  "Skiplagged ticket.

22  Booked her ticket through Skiplagged.  She bought her ticket

23  from Skiplagged."

24        So if these are, you know, contracts at issue,

25  they do have some of this information.  I don't think it's

```
 1   proper to stand behind and say that they have nothing when

 2   we're asking for what they have.

 3             MR. BERG:  That's not what they're doing at all.

 4             THE COURT:  What are you doing?

 5             MR. BERG:  I'm trying to provide an answer that is

 6   accurate and complete that won't be used against me or my

 7   expert later on.  And they're trying to set a trap for us.

 8   And that is exactly what I'm doing.

 9             When they give us all the information, we will be

10   able to answer interrogatory No. 2 in full, without a trap

11   being set, without them trying to challenge our expert,

12   without them trying to file a motion for summary judgment on

13   us on causation.

14             That's exactly what they're trying to do.  They're

15   trying to limit our damages.  Did we catch a few people here

16   and there Skiplagging because they didn't follow

17   Skiplagged's advice on how to avoid detection?  That's not

18   what this is about.

19             THE COURT:  Well, then, you'll live by your

20   answer.

21             MR. BERG:  Yes, sir.

22             THE COURT:  And they will live by their answer.

23   You can cross-examine their expert.

24             What about No. 2?

25             I guess, what are we talking about?  No. 3?
```

```
1            Any objections there that need to have a ruling?

2            MR. BERG:  No, sir.

3            THE COURT:  Is that right, Mr. Kirkman?

4            MR. KIRKMAN:  I'm sorry?

5            THE COURT:  Any more objections that need a ruling

6    on for No. 3?  Interrogatory No. 3?

7            MR. KIRKMAN:  Or has American withdrawn all the

8    objections?

9            The question would be, is the answer then on page

10   5, first paragraph, sufficient, since they have no

11   objections?

12           MS. CAMPBELL:  I'm sorry, Lars, is that what you

13   are representing?  Obviously, I don't think you're talking

14   about the attorney-client privilege.

15           MR. BERG:  Yeah, we've still got the

16   attorney-client privilege, and the attorney work product.

17   Which, you know, we will present the appropriate privilege

18   log for that.

19           MS. CAMPBELL:  Okay.  And then, all other

20   objections have been removed?

21           MR. BERG:  No.  We still got the multiple discreet

22   subparts, which is going to be the case every time.

23           MS. CAMPBELL:  I think we've established we're not

24   talking about that one.

25           THE COURT:  I'm not ruling on stuff that you-all
```

1    are --

2            I mean, I don't know how else to say it.  Okay?

3    Tell me what to do on the subparts.  It's like you're asking

4    for an advisory opinion on this stuff, and then you are

5    going to finally say, oh, well, this is all beyond 25

6    questions, so, you know --

7            MR. BERG:  So as long as it's understood that

8    every time I say "any other objections need ruling on,"

9    we're setting aside that discreet subpart, that's fine.

10           But when she says, so, Lars, you are withdrawing

11   all your objections?  She's going to then use that against

12   me later, and say, oh, you said you were withdrawing it,

13   that means your subpart objections.

14           THE COURT:  Look.  Look.  Either you want a

15   ruling, or you don't.  All right?

16           MR. BERG:  Not today.

17           THE COURT:  You-all either got an agreement or you

18   don't.  No, not today, not ever.  This is your chance to

19   object to this, because it's got more than 25 subparts.

20           Or, if you need to take a minute and go work out

21   something, come back and tell me, but life's too short to

22   rule on stuff that I get to rule on again.

23           We've been at this a while.  You-all take a few, I

24   want to take a few minutes here, I want y'all to talk about

25   that.  I want you also to talk about these requests for

95

```
1    production because we got 102 of them.

2            And at the rate we're going, you-all need to work

3    through them, or I'll work through them for you.

4            MR. BERG:  Yes, sir.  Let's take a few minutes.

5            COURT SECURITY OFFICER:  All rise.

6        (A recess was had at 5:09 p.m.)

7        (The proceedings reconvened at 5:23 p.m.)

8            THE COURT:  All right.  Let's go back on the

9    record in American Airlines vs. Skiplagged.

10           Were the parties able to reach any agreements

11   regarding the requests for production?

12           MR. KIRKMAN:  Yes.

13           THE COURT:  Do you want to state what the

14   agreements are?

15           MR. KIRKMAN:  Yes.  Mr. Lars Berg and Mr. Bill

16   Kirkman are going to meet and discuss the requests for

17   production and report back to the Court by Wednesday the

18   same time our brief is due as to whether there are any

19   remaining disputes and submit those remaining disputes to

20   the Court at the earliest available time.

21           The goal is to limit disputes as much as possible,

22   so we don't have to go through all of these.  And then we

23   will come back to you and tell you, these are the ones we

24   can't agree on, make it concise and let you rule.

25           THE COURT:  Is that right, Mr. Berg?
```

```
 1              MR. BERG:  Yes, sir.
 2              THE COURT:  All right.  That's agreeable with the
 3  Court.
 4              Anything else we need to take up on the motions
 5  today?
 6              MR. BERG:  Yes, sir.
 7              On the interrogatories, the subpart issue, subject
 8  to your other rulings today, American agrees to answer the
 9  following seven numbered, according to the number,
10  regardless of how many subparts are in there, interrogatory
11  14, 15, 16, 17, 21, 23, and 24.
12              MR. KIRKMAN:  That's agreeable.
13              THE COURT:  All right.  So that will resolve the
14  subpart issue on the subpart objection on the
15  interrogatories?
16              MR. BERG:  Yes, sir.
17              THE COURT:  Is that right, Mr. Kirkman?
18              MR. KIRKMAN:  Yes.
19              THE COURT:  All right.  Now, anything else?
20              MR. BERG:  No, sir, not from American's
21  perspective.
22              THE COURT:  Anything on behalf of Skiplagged?
23              MR. KIRKMAN:  Not from Skiplagged's perspective.
24              THE COURT:  Okay.
25              MR. KIRKMAN:  We just would appreciate, to the
```

1    extent we can't work this out, if you get to hear us pretty

2    quickly.

3            THE COURT:  I'm going to rule on it -- I may rule

4    on it by submission, but I will rule on it promptly.

5            MR. KIRKMAN:  Good.

6            MR. BERG:  That would be fine with us, Your Honor.

7    Obviously, it's your choice, but we would not object to

8    that.

9            THE COURT:  Fair enough.

10           MR. KELLY:  Your Honor, just for clarification, we

11   will file a motion tomorrow with the Court on the deadline,

12   just to make sure it's teed up.

13           MR. BERG:  The expert deadline.

14           THE COURT:  I think that's wise, Mr. Kelly.

15           Okay.  Anything else?

16           MR. BERG:  Thank you for your time this afternoon

17   and thank you to your staff for staying late.

18           THE COURT:  Thank you.  We will be in recess.

19      (The proceedings concluded at 5:26 p.m.)

20

21

22

23

24

25

1

2                    REPORTER'S CERTIFICATE

3

4        I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that

5   the foregoing is a true and correct transcript from

6   the record of proceedings in the foregoing entitled

7   matter to the best of my ability to hear.

8        Further, due to the COVID-19 pandemic, some

9   participants are wearing masks, and/or appeared via

10  videoconferencing, so proceedings were transcribed to the

11  best of my ability.

12       I further certify that the transcript fees format

13  comply with those prescribed by the Court and the Judicial

14  Conference of the United States.

15       Signed this 23rd day of April, 2024.

16

17                    ___/s/ Zoie Williams_____
                      Zoie Williams, RMR, RDR, FCRR
18                       Official Court Reporter
                       Northern District of Texas
19                        Fort Worth Division

20  Business Address:    501 W. 10th Street
                         Fort Worth, Texas 76102
21                       zwilliams.rmr@gmail.com
                         817.850.6630
22

23

24

25

COURT SECURITY
OFFICER: **[1]** 95/5
MR. BERG: **[126]**
MR. KELLY: **[2]** 63/1
97/10
MR. KIRKMAN: **[63]** 5/16
15/9 15/11 15/23 16/10
16/12 16/23 26/5 26/8
26/12 26/17 34/3 34/10
34/15 34/20 34/23 35/1
35/5 36/8 36/16 37/6
39/21 40/24 41/5 41/8
42/9 42/11 42/13 42/17
43/4 43/13 43/15 45/16
60/12 60/19 64/3 64/10
65/5 65/12 65/15 65/18
65/22 65/25 70/17 81/1
81/17 85/24 86/1 86/15
87/3 87/17 88/2 88/7
88/25 93/4 93/7 95/12
95/15 96/12 96/18 96/23
96/25 97/5
MS. CAMPBELL: **[49]**
20/5 20/18 21/2 21/4
25/10 25/21 26/19 33/22
34/1 35/14 35/24 36/1
43/14 43/18 60/14 66/9
67/7 67/18 69/9 69/14
70/18 72/23 73/19 73/22
74/22 75/12 76/20 77/15
77/19 77/22 78/2 78/13
78/21 79/1 79/4 79/7
82/10 82/20 83/6 83/14
85/15 88/24 89/1 91/2
91/10 91/13 93/12 93/19
93/23
THE COURT: **[208]**

**$**

**$2,015,000 [1]** 35/13
**$200 [1]** 77/24

**$300 [1]** 6/17
**$35 [1]** 20/22
**$400 [1]** 68/22
**$500 [1]** 6/14
**$55 [1]** 54/15

**'**

**'18 [1]** 42/21
**'19 [1]** 42/21

**/**

**/s [1]** 98/17

**1**

**10 [4]** 52/7 69/8 72/12
83/20
**102 [1]** 95/1
**10th [2]** 3/3 98/20
**11 [6]** 48/20 49/19 52/7
54/12 85/13 87/5
**111,000 [1]** 22/24
**111,100 [1]** 22/18
**1117 [1]** 9/8
**1160 [1]** 1/22
**12 [8]** 48/20 49/19 49/21
66/1 66/4 67/2 69/5
85/23
**13 [11]** 52/9 52/10 62/10
62/16 63/25 64/3 64/9
66/1 66/2 69/6 85/23
**131 [1]** 57/15
**14 [1]** 96/11
**15 [6]** 9/8 66/1 72/10
72/25 85/23 96/11
**151 [1]** 11/4
**157 [1]** 11/4
**15th [1]** 46/12
**16 [3]** 71/1 85/23 96/11
**17 [5]** 1/7 5/1 8/24 85/23
96/11
**18 [5]** 66/2 76/10 76/12
78/16 85/23
**19 [5]** 76/11 78/17 80/19

85/23 98/8
**19th [2]** 21/5 43/13
**1st [2]** 21/16 67/5

**2**

**20 [7]** 63/25 64/3 64/9
66/1 76/11 80/20 85/23
**200 [1]** 68/24
**2006 [1]** 31/15
**201 [2]** 1/16 1/22
**2012 [1]** 51/4
**2013 [2]** 51/4 71/14
**2015 [4]** 62/18 64/7 72/11
72/13
**2016 [1]** 64/7
**2017 [1]** 64/7
**2018 [4]** 21/16 29/23 67/6
74/2
**2020 [2]** 29/19 35/13
**2024 [3]** 1/7 5/1 98/15
**206 [1]** 57/15
**21 [5]** 66/2 80/25 81/3
85/23 96/11
**214.265.3800 [1]** 2/4
**214.665.5947 [1]** 1/20
**22 [3]** 63/25 64/3 64/9
**2200 [1]** 1/19
**23 [4]** 42/9 66/1 85/23
96/11
**23rd [3]** 43/14 43/16
98/15
**23rd of [1]** 43/22
**24 [2]** 52/7 96/11
**25 [4]** 52/7 60/9 94/5
94/19
**2500 [1]** 1/16
**28 [1]** 49/21
**29 [3]** 63/25 64/4 64/11
**2:52 [1]** 1/8

**3**

**300 [1]** 6/15
**34 [12]** 13/20 14/4 15/4

**3**

**34…** **[9]** 18/2 24/19 31/2 31/3 31/9 31/12 31/15 31/15 33/21

**34's [1]** 14/18

**4**

**40 [1]** 49/21
**400 [1]** 68/24
**41 [1]** 49/21
**46 [1]** 28/20
**4:23-CV-00860-P [2]** 1/5 5/5

**5**

**50 [1]** 49/21
**501 [2]** 3/3 98/20
**504 [1]** 8/24
**51 [1]** 49/21
**5200 [1]** 1/19
**56 [1]** 50/11
**58 [2]** 49/21 50/11
**5:00 [1]** 89/24
**5:09 p.m [1]** 95/6
**5:23 p.m [1]** 95/7
**5:26 p.m [1]** 97/19

**6**

**60 [1]** 50/11
**64 [1]** 22/19
**68 [1]** 50/12

**7**

**700 [1]** 2/3
**75 [1]** 50/12
**75201 [1]** 1/20
**75231 [1]** 2/3
**76102 [4]** 1/17 1/23 3/3 98/20

**8**

**8080 [1]** 2/3
**81-157 [1]** 11/4
**817.332.2500 [1]** 1/17

**817.336.2800 [1]** 1/23
**817.850.6630 [2]** 3/4 98/21
**82 [1]** 50/12
**84 [1]** 57/15
**85 [1]** 50/12
**87 [1]** 50/12
**88 [1]** 50/12
**8A [1]** 32/8
**8th [1]** 11/16

**9**

**90 [1]** 50/12
**91 [1]** 50/12
**9th [1]** 54/3

**A**

**AA [3]** 11/4 33/4 81/23
**AA's [2]** 11/3 54/13
**AA.com [13]** 16/9 27/5 27/7 27/14 27/17 27/18 27/24 56/18 56/24 66/6 66/7 72/15 77/23
**AARON [2]** 2/2 5/17
**ABIGAIL [2]** 2/1 5/17
**ability [5]** 15/17 46/10 47/25 98/7 98/11
**able [10]** 25/19 58/10 67/16 68/18 73/8 74/16 76/25 77/2 92/10 95/10
**about [88]** 6/25 7/20 8/1 8/5 8/14 11/24 11/25 12/9 12/22 13/9 14/4 14/17 14/18 16/24 17/8 19/18 19/19 20/6 23/4 24/1 25/11 25/24 28/1 28/2 29/15 30/15 31/2 31/5 31/14 32/24 33/6 33/7 33/10 33/10 33/11 34/14 35/7 36/1 36/3 39/11 40/9 40/10 43/24 47/15 50/2 50/22 54/22 54/23 55/1 55/2 55/3 55/3 55/6 55/9

55/16 56/2 56/11 56/11 57/7 57/18 60/3 60/6 60/8 61/6 61/22 64/6 66/12 67/14 71/9 72/3 72/22 72/24 74/11 76/10 78/17 81/22 83/11 83/12 84/20 88/6 90/25 92/18 92/24 92/25 93/14 93/24 94/24 94/25
**above [4]** 3/8 19/21 20/25 38/13
**absent [1]** 47/3
**absolutely [7]** 30/18 58/7 58/15 59/11 79/24 80/11 84/10
**absurd [1]** 69/25
**accept [1]** 65/6
**acceptable [2]** 37/8 37/9
**access [7]** 17/14 18/10 18/12 19/22 56/24 66/6 66/20
**according [1]** 96/9
**account [1]** 26/1
**accurate [2]** 30/12 92/6
**accurately [1]** 17/9
**accuses [2]** 11/2 59/11
**across [3]** 8/9 28/17 28/20
**Act [2]** 10/22 10/22
**acting [1]** 63/7
**action [1]** 22/10
**actions [2]** 80/22 84/7
**actual [14]** 49/3 49/6 49/13 49/23 50/8 50/14 50/18 51/10 51/20 53/2 53/5 73/1 74/12 82/20
**actually [4]** 30/1 38/2 69/3 73/9
**add [4]** 26/5 35/12 43/9 66/18
**adding [2]** 55/2 55/3
**addition [4]** 6/21 39/17

**A**

addition... **[2]** 49/2 70/24

additional **[4]** 29/24 86/4 86/19 91/9

address **[6]** 27/11 39/2 57/23 66/8 91/6 98/20

addressed **[2]** 13/13 48/19

addresses **[1]** 14/20

addressing **[1]** 51/10

admission **[5]** 51/3 62/10 62/15 64/9 65/11

admissions **[7]** 45/19 46/24 61/7 61/10 61/23 65/14 85/12

admit **[9]** 62/4 62/6 62/12 62/18 63/16 64/16 64/25 80/2 85/2

admitted **[3]** 77/4 85/1 85/5

advantage **[1]** 77/1

advice **[1]** 92/17

advisory **[2]** 31/14 94/4

affidavit **[4]** 11/1 11/2 17/13 19/19

after **[8]** 22/19 31/7 44/6 46/3 46/5 68/3 74/2 80/23

afternoon **[2]** 5/9 97/16

again **[14]** 5/21 10/4 11/17 46/20 50/22 53/3 55/7 64/24 65/8 74/18 84/24 88/13 90/16 94/22

against **[5]** 55/18 59/3 80/5 92/6 94/11

agency **[3]** 16/13 16/15 22/7

agent **[2]** 61/17 71/18

agents **[1]** 63/4

agree **[3]** 27/20 89/3 95/24

agreeable **[2]** 96/2 96/12

agreed **[2]** 45/6 89/7

agreeing **[3]** 27/8 27/21 89/5

agreement **[8]** 24/25 56/19 56/22 60/15 66/11 66/13 90/2 94/17

agreements **[2]** 95/10 95/14

agrees **[1]** 96/8

ahead **[6]** 12/3 40/23 60/25 84/3 87/21 90/6

Air **[1]** 65/2

airline **[3]** 28/19 29/8 68/1

airlines **[31]** 1/5 4/5 5/6 5/10 5/11 5/12 6/6 6/6 6/8 18/21 20/11 28/19 37/18 61/17 61/18 61/21 62/4 63/4 64/16 64/17 64/19 65/4 66/15 75/2 76/6 78/12 81/20 81/21 91/14 91/18 95/9

Airlines' **[4]** 6/8 6/8 6/20 9/17

Aktarer **[2]** 8/2 80/13

Aktarer's **[1]** 27/4

algorithm **[1]** 80/14

all **[134]**

all's **[1]** 42/2

alleged **[2]** 79/12 82/20

alleges **[1]** 56/18

allow **[3]** 47/7 47/16 54/16

allowed **[2]** 17/25 71/20

allows **[2]** 8/23 8/24

almost **[2]** 68/8 84/22

along **[5]** 11/15 12/5 18/19 25/6 43/6

alpha **[1]** 29/5

already **[11]** 10/6 12/7 22/11 36/22 36/22 38/12 39/14 41/15 76/25 77/4 90/2

also **[10]** 5/14 5/23 11/1 13/3 66/14 72/25 73/19

73/22 82/10 94/25

alternative **[1]** 66/20

alternatives **[1]** 58/23

although **[1]** 28/2

always **[2]** 37/20 41/21

am **[1]** 43/7

ambiguity **[1]** 88/21

ambiguous **[8]** 46/25 47/11 48/12 61/5 61/6 66/2 87/25 89/2

amended **[1]** 56/16

America **[2]** 65/3 68/7

AMERICAN **[83]** 1/5 4/5 5/5 5/10 5/11 5/12 6/6 6/7 6/8 6/13 6/20 6/24 7/1 8/8 8/25 9/17 10/3 10/13 14/25 16/6 16/8 18/21 20/10 20/16 20/23 20/25 21/14 21/23 22/2 22/11 22/22 23/12 24/4 26/20 27/6 28/19 29/18 35/1 37/18 38/7 45/18 45/21 46/18 48/9 49/5 52/14 56/16 61/16 61/17 61/18 61/21 62/4 62/6 62/19 63/4 64/16 64/17 64/19 65/2 65/3 65/11 66/15 67/11 69/17 70/12 75/2 76/6 76/25 77/11 78/11 80/16 81/20 81/21 82/6 82/10 83/19 86/2 89/13 91/14 91/18 93/7 95/9 96/8

American's **[10]** 5/22 24/6 30/4 46/5 56/16 56/19 73/22 79/5 83/4 96/20

among **[1]** 7/6

amount **[8]** 7/21 8/11 8/12 20/24 26/17 35/19 35/20 75/19

amounts **[2]** 7/7 37/11

analysis **[10]** 12/22 23/10

**A**

analysis… **[8]** 24/3 24/10 24/17 26/3 35/5 35/8 35/15 51/21

analyzation **[1]** 13/7

analyze **[2]** 10/3 49/5

anger **[1]** 53/23

annual **[1]** 29/17

another **[12]** 8/8 22/5 22/6 22/6 27/12 32/19 35/21 37/3 43/2 54/8 67/18 73/10

answer **[34]** 19/12 19/16 21/6 26/8 30/1 30/7 30/8 33/17 36/16 37/7 40/23 43/5 45/22 51/5 56/15 63/13 64/14 64/17 70/20 74/16 75/12 76/8 86/20 88/12 89/1 89/11 90/17 91/3 92/5 92/10 92/20 92/22 93/9 96/8

answered **[1]** 30/8

answering **[1]** 30/6

answers **[1]** 56/16

any **[53]** 8/5 13/17 17/2 18/12 20/11 20/15 21/15 30/11 31/3 31/6 33/17 40/4 46/15 47/7 47/11 51/14 51/16 54/6 59/12 59/13 59/14 59/16 59/21 62/2 62/3 65/17 66/24 67/4 70/11 71/3 71/12 71/25 73/25 75/10 80/7 80/8 81/15 83/13 83/19 84/18 84/19 84/19 85/8 85/21 88/10 89/12 90/21 91/14 93/1 93/5 94/8 95/10 95/18

anybody **[1]** 89/25

anymore **[1]** 83/17

anything **[33]** 9/6 10/7 11/13 12/14 12/17 13/17

22/21 22/21 43/21 61/18 61/22 65/7 66/18 68/8 68/16 69/3 70/7 70/8 70/24 71/16 71/22 72/13 72/17 72/18 72/20 76/19 79/16 80/3 84/7 96/4 96/19 96/22 97/15

apologize **[3]** 26/21 44/15 87/4

apparently **[1]** 13/4

appearances **[1]** 5/7

appeared **[1]** 98/9

appears **[1]** 11/10

appendix **[1]** 28/17

apple **[2]** 41/16 54/18

applicable **[1]** 15/7

apply **[1]** 14/19

appreciate **[1]** 96/25

approach **[5]** 11/7 11/17 13/25 29/15 91/11

appropriate **[5]** 50/24 51/12 75/14 86/17 93/17

APRIL **[4]** 1/7 4/15 43/22 98/15

arbitral **[1]** 54/6

are **[115]**

areas **[1]** 48/14

aren't **[5]** 22/24 22/25 72/6 81/15 83/13

argue **[1]** 56/11

arguing **[1]** 78/5

argument **[1]** 66/19

arguments **[2]** 14/10 47/21

around **[3]** 42/24 80/10 80/14

arrangement **[1]** 16/17

arrived **[1]** 75/22

as **[83]** 5/11 5/12 5/12 6/9 6/9 6/11 6/19 7/10 7/10 13/1 13/11 13/12 14/16 14/16 15/4 15/4 16/20 17/13 21/4 22/4 22/9

22/15 23/9 23/9 25/23 26/20 29/3 29/3 29/11 29/12 30/22 30/22 32/21 33/4 33/14 34/17 36/14 39/16 43/18 46/2 52/1 52/7 54/6 56/22 61/7 61/10 61/17 63/3 64/21 66/6 66/17 69/20 70/10 70/12 73/25 74/2 74/25 75/24 76/16 76/16 78/19 79/25 79/25 82/20 82/21 83/2 83/2 83/20 85/4 85/7 85/19 86/20 87/10 89/25 89/25 91/3 91/4 91/15 94/7 94/7 95/18 95/21 95/21

Asia **[1]** 68/7

aside **[2]** 90/7 94/9

ask **[12]** 12/15 12/16 13/6 13/6 13/7 23/21 25/7 25/12 28/2 33/18 51/19 74/11

asked **[14]** 7/14 7/20 20/5 23/24 35/6 35/24 51/2 62/7 62/9 64/16 67/19 69/19 75/3 85/18

asking **[26]** 10/17 10/18 13/8 15/7 21/10 21/13 24/24 25/16 25/22 25/23 33/13 33/24 40/17 52/3 64/6 65/6 66/12 68/14 75/7 82/12 82/15 89/14 90/19 90/20 92/2 94/3

aspect **[1]** 50/21

asserting **[3]** 49/3 51/1 89/13

asserts **[1]** 56/17

assessing **[1]** 9/9

assigned **[1]** 44/18

assist **[2]** 46/1 49/22

associated **[1]** 6/22

at **[74]** 8/2 8/21 9/22

## A

**at...** [71] 9/22 10/18 12/6 12/25 19/16 20/11 20/20 20/22 21/10 21/11 23/6 24/5 25/5 27/24 28/20 29/25 36/18 37/7 37/14 37/19 38/8 40/10 40/22 41/10 41/16 44/25 45/1 45/2 45/10 46/12 48/14 49/12 53/17 53/18 54/13 54/14 54/16 56/20 61/11 61/12 63/16 64/24 66/8 67/13 67/21 68/1 68/11 69/2 69/18 69/22 75/2 75/22 76/6 76/9 78/2 78/8 79/18 82/25 85/17 89/1 91/7 91/15 91/16 91/24 92/3 94/23 95/2 95/6 95/7 95/20 97/19

**attach** [1] 55/15
**attempts** [1] 79/18
**attorney** [3] 93/14 93/16 93/16
**attorney-client** [2] 93/14 93/16
**attorneys** [1] 63/5
**August** [4] 21/16 29/23 67/5 74/2
**August 1** [1] 29/23
**August 1st** [1] 21/16
**August 1st of** [1] 74/2
**AUSTIN** [2] 1/15 5/10
**available** [2] 86/6 95/20
**Avenue** [1] 1/19
**avoid** [2] 11/25 92/17
**aware** [4] 62/4 62/12 62/19 81/22

## B

**BA** [1] 29/7
**back** [21] 5/19 12/14 12/16 13/5 23/15 25/17 29/21

29/23 34/6 55/7 62/13 62/21 72/7 72/12 75/3 84/8 90/16 94/21 95/8 95/17 95/23

**background** [2] 46/2 47/16
**bag** [1] 22/1
**baggage** [2] 21/22 21/25
**bailiwick** [1] 44/20
**Ballew** [1] 5/12
**bank** [1] 20/9
**based** [11] 12/20 15/24 16/18 48/4 48/8 50/19 54/13 66/15 73/1 89/7 89/10
**bases** [1] 75/21
**basic** [1] 75/8
**basically** [1] 14/9
**basis** [5] 22/10 49/11 51/12 51/17 51/24
**Bates** [1] 11/3
**be** [74] 5/4 6/14 6/15 9/9 11/10 12/6 12/18 12/23 13/9 13/16 14/9 17/2 17/17 20/2 24/22 27/9 28/16 29/8 30/18 30/20 30/20 31/6 31/11 32/18 32/21 34/16 35/10 40/18 40/23 43/16 44/25 45/2 46/7 46/20 48/3 49/8 50/17 51/17 53/16 60/7 60/24 64/23 67/16 68/9 68/12 68/13 68/18 69/11 71/20 73/8 74/16 75/13 76/5 76/7 77/2 81/14 81/15 83/11 83/13 83/15 83/25 84/2 86/6 86/7 86/8 88/9 89/23 91/1 92/6 92/9 93/9 93/22 97/6 97/18
**bears** [1] 58/10
**because** [49] 6/12 8/18 13/15 13/19 14/15 16/16 17/4 24/5 25/3 25/23

28/4 30/19 32/2 32/19 33/4 34/24 35/7 35/21 36/12 38/6 39/13 39/24 40/18 41/21 43/2 47/19 47/25 51/7 51/21 53/9 59/21 60/9 60/22 64/14 64/19 67/21 68/21 71/8 72/19 74/18 77/25 80/1 82/13 83/11 85/22 91/16 92/16 94/19 95/1
**become** [1] 81/21
**becomes** [1] 86/6
**been** [24] 14/10 15/3 15/20 17/6 22/11 23/1 23/14 23/24 29/22 35/16 36/22 41/23 45/1 50/25 51/17 66/11 66/13 68/3 69/10 69/12 76/25 79/1 93/20 94/23
**before** [13] 1/12 5/20 11/16 11/22 33/22 34/9 41/23 60/11 62/18 69/10 69/13 75/4 81/19
**begin** [2] 53/1 53/10
**beginning** [1] 5/8
**behalf** [5] 5/10 5/11 5/18 63/8 96/22
**behind** [4] 5/17 11/12 12/14 92/1
**being** [5] 58/10 60/14 60/14 69/14 92/11
**belief** [1] 51/11
**believable** [1] 28/15
**believe** [16] 7/13 13/16 16/24 18/14 18/16 20/22 28/14 30/19 30/21 30/22 32/13 48/7 61/8 66/17 85/18 87/24
**bench** [6] 13/24 14/3 17/24 33/20 42/7 42/7
**BERG** [30] 1/14 5/9 5/25 15/16 17/9 17/25 19/7 21/9

# B

**BERG…** **[22]** 24/11 26/24 48/25 53/14 59/24 60/13 66/18 68/5 69/24 70/24 74/5 79/21 81/2 81/20 85/9 87/11 87/21 88/8 88/21 89/16 95/15 95/25

Berg………………………
……………06 **[1]** 4/6

Berg………………………
……………53 **[1]** 4/11

besides **[1]** 71/4

best **[6]** 14/4 34/11 76/8 76/23 98/7 98/11

better **[3]** 70/18 70/19 80/17

between **[4]** 16/17 43/21 52/14 60/24

beyond **[4]** 10/13 48/11 83/23 94/5

big **[7]** 29/13 32/3 32/20 36/14 37/14 48/25 89/17

Bill **[2]** 5/16 95/15

billed **[1]** 72/4

birth **[1]** 27/11

birthday **[2]** 43/16 45/8

bite **[2]** 41/16 54/18

blah **[3]** 64/17 64/17 64/17

Blow **[1]** 49/14

boilerplate **[7]** 47/22 48/12 59/8 59/9 59/12 59/18 71/8

bolts **[1]** 36/3

Book **[4]** 16/5 16/7 27/1 28/11

booked **[4]** 71/19 71/20 73/15 91/22

bookings **[4]** 21/14 29/18 29/19 30/4

boots **[1]** 15/14

Boston **[1]** 78/24

both **[2]** 7/10 75/22

bottom **[1]** 48/21

bought **[3]** 6/11 7/15 91/22

boy **[1]** 29/12

breach **[7]** 6/22 52/2 53/11 56/17 56/25 57/22 67/8

breached **[11]** 52/5 52/11 52/12 52/15 52/16 52/25 53/7 56/18 57/16 57/17 66/12

breaches **[2]** 48/23 56/21

breaching **[1]** 72/16

brief **[12]** 13/24 14/3 15/12 17/24 18/1 31/24 36/18 37/8 42/7 42/8 55/12 95/18

briefed **[1]** 52/9

briefing **[1]** 18/2

bring **[1]** 66/15

brings **[1]** 25/13

broad **[4]** 68/1 70/9 90/9 91/4

broken **[1]** 26/19

brought **[7]** 14/9 14/10 41/23 66/11 66/14 67/8 91/4

bulkhead **[1]** 77/13

bullet **[2]** 57/18 57/20

bunch **[3]** 35/23 36/4 36/25

burden **[12]** 9/23 10/21 12/8 12/9 32/21 32/22 37/1 41/14 58/3 58/5 58/10 58/13

burdensome **[2]** 90/10 90/11

business **[6]** 16/19 19/19 22/25 70/3 75/16 98/20

businesses **[1]** 69/18

but **[95]** 6/3 6/14 9/25 10/8 12/25 13/5 13/16 14/2

16/7 18/1 18/16 19/25 22/4 24/12 24/14 26/10 26/12 26/18 27/9 28/15 28/21 30/21 31/2 32/21 32/25 33/2 34/6 35/10 36/13 37/23 39/11 40/22 41/2 41/7 41/20 41/24 42/19 42/25 44/13 44/16 44/25 45/1 45/25 49/1 50/7 50/18 51/19 51/24 52/15 53/18 53/22 54/19 55/8 58/18 58/25 60/23 61/1 61/15 61/22 63/20 64/21 64/22 67/19 68/23 70/20 70/21 71/5 72/25 73/17 73/18 74/2 74/10 74/14 75/14 77/19 78/4 78/9 79/25 80/3 81/20 82/12 83/2 83/6 83/22 84/3 84/4 84/6 87/21 89/25 90/4 90/16 94/10 94/21 97/4 97/7

button **[1]** 16/5

buy **[3]** 16/14 28/6 28/9

buys **[1]** 6/16

# C

calculate **[2]** 33/13 33/15

calculating **[2]** 30/3 33/3

calculation **[2]** 65/14 85/13

calculations **[2]** 67/15 76/3

call **[5]** 16/19 45/21 48/12 55/8 62/10

called **[4]** 16/5 18/20 27/15 72/5

calls **[2]** 5/5 70/10

came **[2]** 23/16 25/3

CAMPBELL **[12]** 2/1 5/17 11/15 15/13 19/25 20/4 25/8 33/19 72/22 74/21 76/13 82/5

Campbell's **[1]** 11/1

Campbell…………………
……………20 **[1]** 4/8

**C**

**can [61]** 11/14 11/19 16/14 17/2 17/17 18/24 23/18 24/6 25/12 25/13 25/19 26/11 26/22 28/17 31/6 32/2 32/6 34/3 34/4 34/6 34/20 35/19 36/8 36/13 36/16 37/2 37/6 37/15 40/7 40/18 41/5 42/20 43/25 45/8 45/14 45/16 47/13 47/15 49/12 60/20 60/23 63/13 63/16 64/17 64/18 64/24 65/18 73/6 74/14 74/15 76/2 76/8 77/23 80/4 80/11 80/14 80/17 83/15 83/18 91/21 92/23

**can't [40]** 9/25 13/10 26/18 28/7 28/7 30/14 32/20 35/4 35/19 36/7 40/5 41/2 44/8 49/10 51/21 51/24 52/19 53/1 53/2 53/10 54/16 57/12 57/25 58/1 58/9 58/16 58/17 59/5 59/12 67/21 71/21 79/9 79/15 82/24 82/24 86/9 90/16 91/16 95/24 97/1

**canceled [1]** 28/8

**cannot [2]** 24/22 91/14

**capable [1]** 48/13

**capped [1]** 20/22

**card [3]** 16/6 20/20 27/11

**care [2]** 33/6 65/13

**careful [2]** 30/20 84/2

**carriage [4]** 6/20 52/13 56/19 72/16

**case [28]** 1/5 6/3 8/25 15/3 17/21 17/24 24/20 31/10 31/18 31/23 31/24 33/8 33/20 33/21 42/25 44/14 51/23 59/6 61/21

**66/13 66/16 69/11 69/21 70/3 71/9 74/13 78/5 93/22**

**cases [8]** 13/23 14/2 14/16 24/21 31/19 70/11 78/18 80/7

**catch [3]** 80/1 80/4 92/15

**categories [3]** 48/7 75/20 91/5

**category [2]** 46/22 49/24

**causal [3]** 52/17 52/22 57/6

**causation [2]** 72/25 92/13

**cause [2]** 3/8 49/6

**caused [2]** 48/22 73/9

**cease [4]** 71/12 71/15 72/5 74/1

**certain [9]** 18/7 19/14 20/24 25/17 39/20 39/25 46/5 62/5 63/17

**certainly [2]** 68/8 72/18

**certificate [2]** 84/25 98/2

Certificate...................
..........**98 [1]** 4/13

**certify [2]** 98/4 98/12

**cetera [1]** 50/2

**CFO [1]** 7/14

**challenge [1]** 92/11

**challenged [3]** 87/13 88/1 88/11

**chance [2]** 12/12 94/18

**characterize [1]** 50/5

**charge [2]** 20/10 20/18

**charged [4]** 7/9 8/11 8/13 64/25

**charges [2]** 28/11 77/11

**charging [3]** 68/25 76/17 77/6

**Charlotte [6]** 77/17 77/20 77/23 78/3 78/8 79/24

**cheap [1]** 78/25

**cheat [1]** 80/17

**check [2]** 21/25 42/2

**choice [2]** 78/23 97/7

**choose [1]** 27/6

**chose [1]** 46/7

**chosen [1]** 67/25

**chronological [1]** 65/19

**circular [1]** 77/10

**circumstances [1]** 23/13

**cite [3]** 11/11 31/19 75/1

**cited [1]** 31/18

**cites [2]** 24/21 33/20

**city [48]** 6/4 6/11 6/16 8/10 8/11 28/5 29/2 29/3 29/4 29/5 32/24 32/25 45/5 52/21 57/24 59/1 67/23 68/23 68/24 70/14 70/15 70/16 70/17 70/19 70/20 71/13 71/17 71/19 73/3 73/4 73/10 73/13 73/14 76/16 77/2 77/16 78/7 78/22 78/23 78/24 78/25 79/18 79/23 80/24 83/21 84/5 84/21 85/7

**claim [15]** 9/20 30/23 49/15 50/1 50/7 51/8 51/18 52/14 53/3 53/7 56/17 66/6 67/10 74/24 79/15

**claimed [5]** 9/21 9/24 46/18 46/23 73/1

**claiming [4]** 50/6 52/4 73/12 73/15

**claims [28]** 6/21 6/22 9/6 24/11 49/1 49/1 49/2 49/6 49/23 50/4 50/13 50/14 50/19 50/21 50/22 51/11 51/25 52/2 58/1 67/8 71/25 72/1 72/17 75/23 80/4 80/7 82/21 85/8

**clarification [1]** 97/10

**clarify [2]** 20/5 77/15

**clear [10]** 7/3 8/3 13/6

**C**

clear… **[7]**  14/24 15/18 16/20 18/2 20/7 23/3 46/20

clearly **[4]**  17/22 28/3 53/20 68/21

click **[6]**  16/19 22/9 23/20 25/13 27/18 27/19

client **[4]**  17/14 25/21 93/14 93/16

client's **[1]**  19/20

clue **[1]**  79/8

coach **[1]**  77/13

code **[8]**  23/9 23/21 25/16 25/21 30/16 37/1 43/21 44/9

codes **[1]**  35/9

coding **[1]**  45/11

collect **[1]**  38/7

Colloquially **[2]**  78/21 79/1

color **[1]**  50/17

column **[1]**  29/4

columns **[2]**  28/18 40/15

come **[16]**  12/14 12/16 13/8 25/4 25/20 35/22 37/6 43/2 55/7 62/2 62/2 62/2 79/8 82/24 94/21 95/23

comes **[3]**  38/10 40/25 70/1

coming **[4]**  36/4 39/17 53/19 59/3

comment **[2]**  30/15 85/24

commission **[1]**  68/25

commissions **[1]**  8/13

committee **[1]**  31/14

common **[1]**  7/6

commonly **[1]**  76/15

communicated **[1]**  23/25

communication **[1]**  17/4

communications **[2]**  21/14 24/20

companies **[1]**  73/5

company **[3]**  6/4 73/6 73/10

compare **[3]**  24/1 68/18 68/19

compel **[17]**  1/11 4/4 5/23 5/24 9/17 10/13 11/3 11/6 11/16 45/15 48/18 53/21 54/11 55/5 57/4 60/13 91/8

compensated **[2]**  15/22 15/23

compile **[2]**  10/3 24/23

compiling **[2]**  86/4 86/19

complaining **[2]**  40/9 40/10

complaint **[1]**  56/17

complete **[2]**  89/11 92/6

completely **[6]**  35/5 35/6 35/7 37/25 57/11 59/6

complied **[2]**  21/5 55/12

comply **[3]**  17/3 17/18 98/13

compromise **[1]**  24/13

computed **[1]**  75/10

computer **[2]**  3/9 37/14

computerized **[1]**  3/9

concise **[1]**  95/24

concluded **[2]**  31/10 97/19

condition **[1]**  72/16

conditions **[3]**  6/20 27/22 56/19

CONDON **[1]**  2/2

conduct **[1]**  51/5

conducted **[1]**  23/17

confer **[3]**  54/20 55/15 56/5

Conference **[1]**  98/14

conferred **[1]**  60/15

confidence **[1]**  30/12

confident **[2]**  43/4 60/23

confidentiality **[1]**  54/5

confirmation **[1]**  7/15

confused **[2]**  19/17 41/8

confusion **[1]**  84/13

connection **[2]**  52/17 57/6

connections **[1]**  52/22

consequence **[1]**  85/6

consider **[1]**  53/17

consideration **[2]**  41/22 51/9

considered **[2]**  12/6 53/17

construct **[1]**  18/6

consumers **[2]**  76/17 78/15

consuming **[1]**  19/4

contact **[1]**  27/14

contained **[1]**  87/1

contains **[1]**  19/22

contest **[2]**  84/14 85/1

contesting **[1]**  84/15

context **[1]**  6/3

continuation **[1]**  80/20

continued **[1]**  12/17

contract **[11]**  6/22 48/23 48/24 52/2 56/17 56/20 56/25 57/22 58/4 67/8 67/9

contracts **[12]**  52/4 52/13 52/16 52/19 52/20 52/24 53/7 53/12 56/14 85/17 91/15 91/24

contrary **[1]**  31/18

control **[4]**  21/8 74/8 75/17 76/1

copied **[2]**  85/2 85/5

copy **[3]**  23/4 29/14 85/3

copying **[2]**  84/23 85/1

copyright **[16]**  6/21 8/22 8/23 8/25 9/3 10/22 28/25 50/1 50/13 51/12 51/18 70/13 83/4 84/8 84/22 84/23

copyrights **[5]**  6/8 72/15 82/6 82/11 83/20

correct **[3]**  21/2 67/15 98/5

**C**

correctly [1]  35/17
cost [10]  13/2 13/9 14/13 14/14 22/9 22/9 29/7 41/20 49/15 77/24
costly [1]  10/14
costs [3]  7/9 77/5 78/6
could [6]  34/11 38/13 75/3 76/5 77/7 83/16
couldn't [2]  31/1 63/19
counsel [3]  5/7 5/8 22/20
Count [1]  56/16
Count I [1]  56/16
counterclaim [2]  84/15 84/16
couple [4]  14/2 15/24 19/6 53/16
course [3]  22/25 47/3 85/5
COURT [34]  1/1 3/2 3/2 5/5 11/24 14/11 15/9 18/18 19/15 20/1 31/10 32/12 45/16 46/1 46/13 47/1 47/4 47/8 48/2 50/15 56/8 58/6 60/2 60/11 65/6 88/14 88/16 90/23 95/17 95/20 96/3 97/11 98/13 98/18
Court's [3]  4/12 48/19 51/8
courthouse [1]  43/19
COVID [1]  98/8
COVID-19 [1]  98/8
create [3]  17/23 24/18 31/20
creates [2]  84/11 84/13
creating [2]  14/19 14/21
credit [3]  16/6 20/20 27/11
critical [1]  58/25
cross [2]  33/5 92/23
cross-examine [1]  92/23
cross-referencing [1]  33/5
crystal [5]  6/3 14/24 20/7 21/3 22/12 
CSV [1]  32/18
custodians [1]  55/2
custody [4]  74/8 75/17 75/25 75/25
customer [23]  7/7 7/9 7/10 7/22 16/3 20/25 21/15 21/19 22/5 27/5 27/19 29/10 40/7 52/14 52/20 53/8 53/9 57/3 57/5 58/5 67/11 68/21 79/9
customer's [4]  8/10 20/9 24/8 52/4
customers [13]  52/12 53/1 57/12 64/25 69/15 69/18 69/22 69/25 70/2 70/3 76/22 77/6 77/9
cutoff [1]  86/16
CV [2]  1/5 5/5

**D**

Dallas [6]  1/20 2/3 16/2 77/17 77/20 77/23
Dallas-Fort [1]  16/2
damage [6]  49/6 49/23 50/14 51/7 51/11 76/3
damages [42]  8/19 9/1 48/22 49/3 49/8 49/13 49/17 50/3 50/6 50/9 50/18 50/20 50/22 51/20 53/2 53/5 53/11 54/13 66/10 66/23 67/7 67/8 67/15 69/3 73/1 73/9 73/13 73/15 74/4 74/9 74/12 74/14 74/23 75/7 75/8 75/10 75/20 75/22 79/13 82/21 82/23 92/15
data [38]  9/24 10/4 10/13 10/14 10/21 13/14 15/1 17/9 17/10 17/14 17/16 17/19 17/20 18/7 18/11 18/17 19/3 19/23 21/18 21/22 22/12 23/9 23/23 24/3 24/11 24/23 25/15 25/17 26/4 28/3 32/11 32/24 35/12 35/16 36/12 36/13 45/8 68/19
database [51]  7/3 7/3 7/19 7/21 7/23 7/24 8/1 8/4 8/14 8/16 9/5 9/12 10/6 10/17 12/22 12/24 13/1 13/15 13/21 14/7 14/8 14/12 14/18 14/21 15/1 15/2 15/5 15/5 17/9 17/11 19/20 19/22 22/14 22/23 23/9 23/18 25/2 25/11 25/15 25/22 28/14 30/13 30/17 31/11 32/15 32/21 36/14 38/2 38/15 40/16 42/24
databases [2]  28/21 39/16
date [6]  23/19 27/11 67/4 67/25 68/17 81/24
dates [1]  52/11
daughter's [2]  43/16 45/7
day [3]  24/6 45/7 98/15
days [1]  44/10
deadline [4]  43/11 44/23 97/11 97/13
deadlines [1]  44/19
deal [11]  19/23 29/13 32/3 34/11 38/7 42/16 46/8 48/25 64/6 73/2 79/3
deals [1]  48/18
Death [1]  42/18
December [1]  21/5
December 19th [1]  21/5
decided [2]  36/22 36/23
decides [2]  16/3 28/6
declaration [10]  8/3 12/6 12/25 13/11 17/13 19/21 23/4 24/13 25/24 33/3

**D**

declarations **[2]** 10/9 27/5
deductions **[1]** 33/11
DEE **[3]** 1/15 5/11 81/21
defend **[2]** 51/23 52/18
defendant **[4]** 1/9 1/21 2/1 9/18
defendant's **[2]** 9/8 9/10
defense **[3]** 76/21 78/11 82/8
defenses **[9]** 66/14 71/25 72/2 72/19 80/8 84/17 84/18 84/19 85/8
define **[2]** 62/13 64/21
defined **[2]** 63/3 64/15
definition **[4]** 21/19 61/23 62/3 62/25
definitions **[3]** 61/13 61/13 62/22
delay **[1]** 51/1
demand **[2]** 54/11 74/1
demands **[3]** 10/14 33/4 54/16
denied **[2]** 66/6 66/20
denies **[1]** 9/5
deny **[1]** 63/20
depending **[1]** 18/9
deposed **[1]** 75/4
deposition **[1]** 7/13
describe **[4]** 46/18 47/10 67/4 76/14
designated **[2]** 31/3 76/5
designates **[1]** 18/23
designed **[1]** 52/8
desist **[4]** 71/12 71/15 72/5 74/1
desperate **[1]** 10/10
despite **[1]** 55/10
destination **[4]** 6/18 8/11 29/3 38/25
detailed **[1]** 57/18
details **[5]** 53/22 67/4

74/11 74/12 82/16
detection **[1]** 92/17
determine **[7]** 47/9 49/13 50/20 53/1 53/6 53/10 67/16
determined **[1]** 20/21
determining **[1]** 50/24
DFW **[8]** 6/13 6/14 6/15 20/25 37/19 37/19 78/6 78/7
did **[29]** 18/16 29/10 30/7 46/1 46/11 46/20 48/6 52/21 52/21 53/24 54/10 54/20 54/21 55/19 56/2 56/5 57/1 57/18 57/19 60/22 61/4 64/6 68/19 70/7 79/17 81/20 81/21 89/3 92/15
didn't **[30]** 12/14 12/16 12/17 13/3 17/3 17/18 18/15 19/7 23/15 27/1 33/14 34/23 39/22 44/23 46/18 52/22 55/17 56/6 56/13 56/20 59/20 60/12 65/19 78/4 84/14 84/15 84/18 84/18 87/3 92/16
difference **[2]** 48/10 78/10
different **[13]** 9/6 15/24 25/23 27/13 34/17 37/3 44/22 45/6 45/7 50/17 53/4 67/25 67/25
difficult **[3]** 13/16 14/9 19/5
difficulties **[1]** 30/3
difficulty **[2]** 40/12 40/13
direct **[4]** 19/6 27/23 54/12 77/14
directly **[1]** 31/7
disagree **[3]** 40/22 72/23 74/22
disagreement **[1]** 15/20
disappointing **[1]** 10/8

disclose **[1]** 49/11
discount **[1]** 68/16
discounted **[2]** 67/5 68/15
discoverable **[1]** 83/16
discovery **[14]** 12/1 16/25 45/17 55/15 55/16 58/8 58/9 59/2 83/15 84/19 86/3 86/10 86/16 86/18
discreet **[3]** 60/9 93/21 94/9
discuss **[2]** 45/17 95/16
discussed **[1]** 60/14
discussion **[1]** 60/1
discussions **[2]** 48/9 55/5
disgorgement **[7]** 50/6 50/16 50/23 50/24 51/7 51/9 53/3
disingenuous **[1]** 57/11
display **[1]** 6/9
dispute **[8]** 11/25 14/5 16/24 17/3 17/16 17/17 84/20 85/6
disputes **[4]** 54/9 95/19 95/19 95/21
distinct **[1]** 10/24
DISTRICT **[4]** 1/1 1/2 18/3 98/18
diverted **[1]** 50/25
DIVISION **[2]** 1/3 98/19
do **[121]**
document **[10]** 14/22 17/4 17/23 18/4 24/18 31/21 31/22 32/13 45/23 57/15
documents **[47]** 9/19 9/20 9/21 11/5 11/11 11/21 14/19 17/7 18/15 21/7 21/13 22/18 22/18 22/20 22/24 23/1 23/17 24/16 25/1 31/3 45/22 47/5 47/13 47/14 48/3 48/7 48/18 49/5 49/12 49/22 49/24 50/19 51/2 51/13 51/14

**D**

documents... **[12]** 51/16 51/21 51/24 52/3 59/13 59/13 59/15 59/22 75/18 76/1 79/17 86/11

**Doe [2]** 37/18 73/13

**does [28]** 7/14 7/18 7/21 13/20 14/19 16/24 17/19 20/14 20/16 25/16 38/23 49/1 71/15 71/22 76/19 76/21 77/8 77/9 78/6 78/10 78/11 82/1 82/5 82/7 82/7 82/13 82/16 87/8

**doesn't [36]** 10/6 12/25 13/3 13/11 14/13 14/14 14/15 18/3 20/11 21/24 21/24 22/8 24/10 26/2 49/14 66/21 66/21 66/22 66/22 66/25 68/8 70/7 71/16 72/12 72/13 72/16 72/18 72/20 73/6 80/3 80/7 80/8 83/1 83/2 83/7 88/12

**doing [12]** 6/7 56/10 72/6 72/21 78/14 78/14 80/16 80/16 90/5 92/3 92/4 92/8

**dollar [1]** 37/11

**dollars [1]** 41/20

**don't [90]** 9/20 10/23 13/6 13/6 13/7 13/15 13/16 15/16 17/2 17/17 18/11 26/8 26/10 27/5 27/9 28/9 29/20 30/18 30/21 30/22 33/6 34/1 34/13 34/13 37/20 38/1 38/16 39/7 40/4 40/4 41/10 41/11 42/23 43/20 44/19 44/24 45/4 46/15 47/7 49/17 50/7 51/20 52/18 52/18 55/24 56/1 56/9

56/10 56/11 57/1 57/3 57/16 58/3 58/5 59/23 61/25 61/25 64/12 64/13 64/22 66/24 67/24 68/16 69/2 72/8 73/17 73/18 75/12 75/14 80/18 81/24 83/10 83/11 83/12 84/14 85/1 85/18 86/16 86/17 87/7 88/10 88/13 88/18 89/25 91/25 93/13 94/2 94/15 94/18 95/22

**done [9]** 34/6 35/16 44/22 67/24 73/3 78/23 82/6 82/18 84/12

**door [1]** 12/19

**down [11]** 9/25 26/19 31/1 41/25 53/19 54/22 58/25 60/18 60/23 61/15 81/18

**drink [1]** 12/4

**drive [1]** 32/12

**due [3]** 15/15 95/18 98/8

**during [1]** 68/2

**E**

**each [16]** 6/25 7/8 29/10 47/18 55/9 55/9 55/16 55/24 57/2 57/2 57/5 66/5 68/11 74/17 75/10 88/17

**eagle [2]** 55/15 64/20

**earlier [1]** 91/4

**earliest [1]** 95/20

**easier [1]** 40/19

**easily [1]** 36/14

**easy [4]** 18/23 27/23 35/8 35/11

**effort [1]** 18/18

**efforts [6]** 73/23 73/24 82/22 83/1 83/19 84/6

**eight [1]** 42/12

**eight-point [1]** 42/12

**Eighteen [1]** 76/11

**either [3]** 31/6 94/14

94/17

**elaborate [1]** 10/14

**electronically [2]** 31/4 31/5

**elements [4]** 84/9 84/20 84/23 85/6

**else [10]** 10/7 40/19 43/9 68/7 72/19 89/25 94/2 96/4 96/19 97/15

**email [3]** 7/15 18/22 91/18

**emails [4]** 13/5 23/25 79/19 80/15

**emphatic [1]** 19/9

**employee [1]** 61/17

**employees [3]** 63/5 73/2 85/2

**end [2]** 24/6 37/14

**endeavored [1]** 46/3

**enforce [5]** 82/16 82/22 83/1 83/6 83/20

**enforcement [2]** 84/7 85/7

**engaged [1]** 51/5

**enough [3]** 47/15 51/13 97/9

**enter [1]** 27/10

**entered [1]** 27/16

**entire [3]** 12/5 32/12 51/17

**entities [1]** 63/7

**entitled [19]** 8/18 9/13 13/19 17/19 29/10 29/13 36/20 39/12 41/18 41/19 41/19 42/19 49/12 50/8 58/7 59/2 72/6 75/19 98/6

**entitlement [1]** 14/25

**essence [1]** 47/22

**essentially [1]** 12/21

**establish [1]** 12/25

**established [2]** 19/21 93/23

**establishing [1]** 9/2

**et [1]** 50/2

# E

**European [1]** 70/6
**even [18]** 9/25 18/25
22/22 23/11 23/22 23/25
30/10 34/1 35/16 43/24
50/22 51/7 53/16 73/6
78/7 79/18 84/20 85/7
**ever [6]** 18/21 61/18 64/13
64/13 83/1 94/18
**every [18]** 6/10 17/4 17/4
23/16 28/23 55/24 56/22
57/2 57/2 57/23 59/13
61/17 74/7 74/17 75/16
75/25 93/22 94/8
**everybody [8]** 13/21 41/19
61/17 63/10 64/6 64/20
64/21 75/17
**everything [3]** 28/4 35/20
53/2
**evidence [10]** 12/11 18/5
31/25 36/21 54/6 58/11
66/16 82/5 83/16 89/3
**exact [3]** 30/3 30/13
67/22
**exactly [12]** 8/7 8/19
11/13 24/23 48/15 49/8
55/13 61/2 61/3 68/20
92/8 92/14
**examine [1]** 92/23
**example [7]** 8/6 8/7 8/8
10/16 23/18 37/24 49/14
**examples [9]** 11/24 22/24
23/2 23/5 28/16 32/3
32/4 32/5 32/9
**exceeded [1]** 60/8
**Excel [3]** 32/13 32/16
32/20
**excerpt [2]** 32/7 32/10
**exclusively [1]** 61/4
**Excuse [1]** 86/8
**executed [1]** 56/22
**exemplar [1]** 25/1

**exhibit [2]** 30/5 32/8
**Exhibit 8A [1]** 32/8
**exist [1]** 52/13
**exists [2]** 17/11 42/21
**expect [2]** 54/17 65/11
**Expedia [1]** 16/16
**Expedias [1]** 16/18
**expeditious [1]** 46/8
**expensive [1]** 14/9
**expert [30]** 12/21 12/22
13/1 13/1 13/10 13/11 13/12
19/19 19/20 41/13 42/2
43/11 43/11 44/12 45/9
74/15 75/1 75/5 75/7 76/4
76/6 76/7 76/9 86/4 86/11
86/18 92/7 92/11 92/23
97/13
**expertise [1]** 13/8
**experts [4]** 8/19 44/20
49/10 49/11
**explain [13]** 15/19 25/1
27/1 37/15 48/15 52/20
55/13 55/25 56/1 57/13
66/24 74/3 76/2
**explained [1]** 56/23
**explains [1]** 14/3
**explanation [2]** 40/21 75/9
**exploiting [1]** 83/3
**exports [1]** 11/10
**exposure [1]** 53/11
**expound [1]** 20/12
**expressed [1]** 54/7
**extending [1]** 44/19
**extension [3]** 44/11 44/23
45/7
**extensive [1]** 45/21
**extensively [1]** 52/9
**extent [6]** 8/5 17/25
29/22 57/22 83/24 97/1
**extract [6]** 12/23 13/2
30/16 32/6 40/15 42/25
**extrap [1]** 10/5

# F

**face [1]** 6/9
**faced [1]** 47/3
**facilitate [2]** 6/5 15/16
**facilitated [4]** 7/1 15/25
21/16 38/17
**facilitating [1]** 81/22
**fact [3]** 51/10 80/10 89/4
**factors [1]** 50/23
**facts [1]** 38/4
**factual [3]** 75/18 75/21
76/1
**failure [1]** 47/10
**failures [1]** 45/22
**fair [5]** 41/16 41/17 56/8
67/5 97/9
**faith [2]** 54/20 56/6
**fall [2]** 61/21 75/14
**false [1]** 10/1
**far [3]** 10/13 74/6 79/25
**fare [7]** 67/14 67/19
68/13 68/20 68/22 68/22
76/14
**fare-setting [1]** 76/14
**fares [5]** 67/17 67/18
68/15 68/16 69/2
**FCRR [3]** 3/2 98/4 98/17
**feasible [1]** 36/24
**feature [1]** 27/1
**February [1]** 75/3
**federal [8]** 3/2 49/1 49/1
50/1 50/4 50/21 51/25
75/22
**fee [6]** 16/20 20/18 20/21
21/2 21/25 22/1
**fees [5]** 7/9 8/12 21/22
44/6 98/12
**few [6]** 7/20 20/12 92/15
94/23 94/24 95/4
**field [1]** 8/15
**fields [2]** 8/9 15/7
**fifteen [2]** 69/7 72/9

**F**

**figure [10]**  18/10 38/6
38/11 39/13 59/2 61/24
73/7 73/14 80/16 82/1
**figured [1]**  81/19
**file [13]**  5/25 25/19 32/18
32/19 36/18 37/8 55/5
55/19 80/5 84/14 84/15
92/12 97/11
**filed [4]**  11/16 45/23 46/12
51/13
**filing [3]**  11/5 53/21 59/12
**fills [1]**  42/21
**finally [2]**  81/10 94/5
**financial [4]**  48/18 49/4
49/7 49/22
**financially [1]**  49/16
**find [3]**  36/8 49/7 76/22
**finding [1]**  49/22
**fine [3]**  34/16 94/9 97/6
**finish [1]**  12/2
**firm [2]**  1/22 5/14
**first [17]**  5/25 6/1 9/15
9/16 12/8 15/15 26/25
29/16 30/25 34/6 38/16
48/17 53/15 54/10 56/16
81/21 93/10
**five [2]**  40/2 40/3
**fix [1]**  18/24
**flew [3]**  57/5 57/24 59/1
**flies [2]**  77/12 77/16
**flight [17]**  18/23 21/20
24/8 27/7 65/1 67/12
67/20 67/22 67/23 68/4
68/17 76/23 77/5 77/7
77/14 77/16 77/25
**flights [4]**  73/3 76/17
81/23 83/21
**flown [1]**  18/21
**fly [11]**  37/19 52/21
52/22 69/15 69/16 69/18
77/6 78/6 78/7 78/15

78/22
**flying [4]**  34/12 77/16
77/17 78/23
**focus [1]**  9/22
**follow [1]**  92/16
**following [1]**  96/9
**footnote [1]**  54/12
**foregoing [3]**  90/13 98/5
98/6
**foremost [4]**  29/16 30/25
38/16 53/15
**forgive [1]**  44/15
**form [4]**  31/9 31/13 31/17
50/6
**format [2]**  32/12 98/12
**former [1]**  63/4
**formerly [1]**  63/7
**forms [1]**  45/17
**formula [1]**  75/11
**FORT [8]**  1/3 1/6 1/17 1/23
3/3 16/2 98/19 98/20
**forth [1]**  13/5
**found [1]**  22/23
**founded [1]**  46/15
**four [4]**  40/2 40/2 40/3
45/7
**four-day [1]**  45/7
**fourth [1]**  46/22
**FRANKLIN [2]**  1/15 5/11
**Frankly [1]**  33/14
**Friday [1]**  43/12
**friend [2]**  15/15 48/25
**front [1]**  26/10
**frustration [1]**  53/23
**full [4]**  27/2 27/2 30/10
92/10
**fully [1]**  21/5
**fundamental [3]**  15/3 50/3
90/20
**further [4]**  29/21 51/14
98/8 98/12

**G**

**gains [1]**  56/24
**gander [3]**  60/3 60/6 61/1
**gap [1]**  42/21
**gave [2]**  32/12 84/10
**gazillion [1]**  41/20
**general [8]**  48/7 48/14
68/14 68/15 69/2 71/8
75/21 85/19
**generate [6]**  18/3 23/20
36/14 36/25 44/9 45/11
**generated [4]**  15/21 22/25
29/18 45/18
**generating [1]**  24/3
**generation [2]**  10/15 35/16
**get [88]**  9/23 10/23 15/17
15/21 17/15 18/7 18/21
19/15 20/15 20/17 20/24
22/6 22/9 22/20 23/23
24/2 24/7 26/4 26/23
27/25 28/8 31/1 32/2
32/17 32/20 33/15 34/6
34/6 34/12 35/2 35/3
35/8 35/12 35/13 36/16
36/17 37/2 37/3 38/3
38/4 38/13 38/14 38/24
39/2 39/4 39/7 41/9 41/12
41/16 41/18 41/18 41/24
41/25 42/20 43/5 43/20
45/9 46/10 47/13 47/25
51/20 52/8 54/17 55/4
55/18 57/8 58/8 58/9
58/25 60/22 61/1 61/15
74/15 77/9 78/8 78/20
78/23 78/25 79/17 80/13
83/18 86/10 86/10 88/3
88/19 89/10 94/22 97/1
**get-go [1]**  15/21
**gets [3]**  6/17 9/7 85/11
**getting [8]**  14/8 15/2 25/11
34/9 40/22 45/8 78/20
79/23

# G

**give [27]** 20/16 25/16 25/22 27/1 29/2 35/11 35/19 35/19 38/19 40/5 41/21 46/10 47/20 49/10 54/18 55/25 57/25 58/1 59/4 86/11 86/12 87/6 87/7 90/17 90/17 91/14 92/9

**given [10]** 19/11 26/14 30/11 31/24 31/24 31/25 46/1 51/13 51/17 57/21

**giving [3]** 12/21 41/1 41/6

**glad [3]** 45/2 60/7 89/23

**gmail.com [2]** 3/4 98/21

**go [56]** 10/20 12/3 14/12 15/21 16/14 16/16 16/16 21/17 23/19 27/6 27/7 28/10 29/21 32/20 37/4 37/12 40/23 41/11 44/9 47/8 48/15 50/23 53/21 54/22 55/8 55/8 55/24 56/23 57/13 60/6 60/18 60/25 61/12 61/23 62/13 62/21 66/21 66/22 66/22 69/21 76/11 77/8 80/7 82/7 82/22 83/23 84/3 85/3 85/13 87/14 87/21 88/20 90/6 94/20 95/8 95/22

**goal [1]** 95/21

**God [1]** 64/21

**goes [25]** 10/13 16/8 20/8 23/13 28/20 28/21 29/8 29/23 33/5 66/9 66/17 66/24 67/7 69/9 72/11 72/25 73/22 74/6 74/19 74/23 77/20 82/10 84/8 84/22 90/16

**going [65]** 5/22 5/24 6/18 10/2 14/5 14/9 14/22 15/6 15/11 23/23 27/23 27/24

29/8 30/16 34/5 34/8 35/21 38/24 39/24 40/25 41/20 42/2 43/7 43/20 44/6 44/10 47/14 49/8 51/15 51/16 51/17 51/22 56/12 59/4 60/18 61/12 64/23 67/13 67/19 68/2 68/6 68/9 68/12 68/13 71/23 72/7 72/14 72/19 73/19 73/25 74/16 79/23 80/10 81/15 87/20 87/22 88/15 88/19 90/1 93/22 94/5 94/11 95/2 95/16 97/3

**gone [2]** 75/6 85/22

**good [13]** 5/9 16/22 42/22 47/11 47/23 54/20 56/5 60/9 60/10 87/7 90/3 90/4 97/5

**Google [1]** 27/13

**goose [3]** 60/3 60/6 61/1

**got [71]** 5/25 6/22 8/8 8/9 8/10 8/21 8/22 8/22 10/9 13/23 13/23 14/5 25/8 28/13 28/15 28/18 28/22 29/1 29/2 29/2 29/7 29/14 30/5 32/1 32/2 36/14 37/18 37/21 38/12 39/6 39/14 40/8 40/16 41/22 42/24 43/2 45/11 49/2 51/12 51/22 52/22 53/5 53/16 53/18 57/25 58/13 58/22 59/2 60/23 61/23 67/20 68/11 68/24 70/6 71/5 71/23 72/4 76/3 78/2 78/4 79/24 81/6 81/11 84/3 88/23 89/21 93/15 93/21 94/17 94/19 95/1

**gotten [3]** 51/14 68/23 77/8

**graciously [1]** 32/4

**granted [1]** 43/18

**grants [1]** 43/15

**great [1]** 51/18

**GREENBERG [2]** 1/19 5/13

**gross [1]** 9/4

**ground [3]** 15/13 15/14 40/18

**group [2]** 65/19 65/23

**grouped [4]** 46/8 46/17 46/22 65/19

**guarantee [1]** 18/12

**guess [5]** 57/7 68/22 81/18 91/1 92/25

**guessing [1]** 54/13

**guy [1]** 70/6

# H

**had [15]** 12/12 17/5 23/8 23/8 23/10 25/10 34/11 46/3 46/14 60/1 61/18 67/11 73/2 85/2 95/6

**hadn't [1]** 17/24

**HAL [1]** 1/12

**half [2]** 34/12 57/18

**HALLMAN [1]** 1/16

**handed [1]** 91/17

**handful [1]** 57/20

**handling [1]** 48/13

**hanging [1]** 47/5

**happen [1]** 18/6

**happened [3]** 69/4 69/11 72/13

**happens [1]** 80/1

**happy [4]** 33/17 44/24 47/19 60/6

**hard [4]** 26/13 37/13 42/23 64/18

**HART [1]** 1/16

**has [35]** 11/9 14/25 15/13 17/9 18/6 19/12 22/2 22/11 23/1 23/24 25/21 30/5 35/8 37/18 48/17 49/25 56/18 57/16 63/3 69/17

# H

has... **[15]** 69/21 71/23 74/8 75/6 75/16 75/17 75/25 76/20 76/25 77/8 79/9 82/6 82/22 84/17 93/7

hate **[1]** 40/18

have **[138]**

haven't **[10]** 30/11 31/17 34/16 45/1 51/4 51/14 55/9 67/20 71/7 87/12

having **[8]** 24/18 25/25 26/13 47/4 48/6 75/4 75/24 81/15

he **[29]** 7/14 11/21 12/25 13/3 13/3 13/4 13/7 13/13 19/9 19/9 19/10 19/12 19/14 19/14 19/21 33/5 43/15 45/6 49/1 52/21 52/21 54/2 54/3 59/11 64/5 70/6 70/7 80/14 85/16

he's **[2]** 19/20 49/2

head **[5]** 26/16 42/23 60/4 79/4 81/24

headed **[2]** 80/11 80/12

hear **[15]** 5/24 6/1 34/13 34/14 34/19 36/1 36/13 36/13 38/3 39/22 40/13 40/22 44/13 97/1 98/7

heard **[5]** 19/7 19/10 40/21 83/25 91/13

hearing **[1]** 12/8

Heathrow **[2]** 78/6 78/7

Heller **[1]** 89/8

help **[7]** 50/12 69/15 69/18 78/14 87/20 87/22 87/23

helpful **[1]** 64/23

helping **[1]** 76/22

her **[3]** 11/2 91/22 91/22

here **[33]** 5/14 5/18 5/20 5/20 6/23 7/4 8/21 14/6

14/10 17/8 29/14 31/2 45/17 47/18 49/13 53/19 59/1 60/2 60/7 63/1 71/24 74/5 79/13 81/2 82/3 82/17 88/19 88/21 89/24 90/22 91/6 92/15 94/24

here's **[5]** 9/2 31/7 48/21 52/1 57/19

herring **[1]** 33/8

hey **[1]** 71/21

Hi **[1]** 5/16

hidden **[34]** 6/4 6/11 6/16 27/24 28/5 29/4 29/5 32/25 49/15 57/24 59/1 67/23 68/23 68/24 70/15 70/16 70/17 70/20 71/13 71/17 71/19 73/3 73/4 73/9 73/13 76/16 77/1 77/16 79/18 80/23 83/21 84/5 84/21 85/7

hiding **[1]** 11/12

highlighted **[4]** 11/9 11/20 28/16 30/1

him **[4]** 7/14 13/12 19/11 79/24

himself **[1]** 13/1

hired **[1]** 22/19

his **[9]** 12/22 12/25 23/4 25/24 45/7 73/14 73/14 80/14 85/16

history **[1]** 47/16

hit **[2]** 23/16 58/22

hold **[2]** 23/15 43/7

holding **[1]** 24/21

holds **[1]** 15/4

honest **[1]** 27/9

Honor **[28]** 5/9 6/19 25/4 26/21 34/15 35/15 43/6 47/16 49/24 63/18 64/2 66/9 67/7 69/9 70/25 72/23 73/19 74/22 77/15 79/7 85/15 86/14 88/24

91/2 91/10 91/13 97/6

HONORABLE **[1]** 1/12

hope **[1]** 34/8

hopes **[2]** 46/7 46/9

horse **[1]** 50/17

hour **[1]** 18/24

how **[67]** 7/18 8/19 11/24 15/21 15/21 16/21 18/10 19/17 19/22 19/23 20/14 20/16 23/13 24/13 25/18 28/24 28/24 29/9 33/19 34/1 34/2 35/3 38/1 39/4 39/5 39/6 39/7 39/13 41/10 41/11 52/15 52/18 52/20 56/23 57/1 57/18 57/19 58/21 62/13 63/13 64/13 64/13 64/18 64/24 66/4 66/15 66/24 67/6 71/15 75/9 75/21 76/3 76/13 77/21 78/9 78/22 79/12 79/20 79/25 80/4 80/16 82/10 82/12 82/16 92/17 94/2 96/10

How's **[1]** 82/18

however **[2]** 30/7 41/12

hub **[1]** 6/12

huh **[3]** 16/10 62/8 73/21

Humphrey **[5]** 14/3 14/5 31/10 31/13 33/20

hurt **[1]** 44/6

# I

I'd **[1]** 33/14

I'll **[3]** 12/2 48/12 95/3

I'm **[56]** 5/16 12/3 12/4 15/11 17/25 19/14 19/17 26/12 33/24 34/5 34/10 34/12 34/21 36/5 38/3 38/6 38/11 39/11 39/13 41/8 41/24 42/18 42/25 43/4 44/13 44/24 44/25 48/11 58/7 60/6 60/23

Case 4:23-cv-00860-P Document 115-15 Filed 05/28/24 Page 114 of 133 PageID 3195

**I'm... [25]** 60/25 63/22
64/8 65/6 69/5 69/12
70/25 71/9 72/3 73/25
77/10 78/5 79/22 79/23
81/18 89/1 89/14 90/20
91/2 92/5 92/8 93/4 93/12
93/25 97/3
**I've [11]** 11/9 13/23 28/16
29/14 30/1 31/1 31/23
31/24 40/21 48/9 79/14
**idea [9]** 6/24 6/24 9/7
13/9 14/20 40/4 42/24
87/5 90/16
**identification [1]** 85/17
**identified [5]** 58/21 79/19
81/12 85/20 91/20
**identify [21]** 7/8 13/3
29/17 55/16 56/6 56/13
56/20 57/12 57/17 61/2
61/3 61/16 66/5 67/3
74/16 75/24 76/13 79/9
79/15 79/18 91/16
**identifying [4]** 78/18 79/6
80/7 80/23
**if [95]** 8/2 8/11 10/20
10/22 12/10 12/11 13/24
14/11 15/4 16/3 16/13
18/21 20/9 20/19 21/5
21/10 21/18 23/5 25/8
26/8 26/23 29/14 30/10
31/7 31/15 32/21 33/9
33/10 33/11 34/4 34/15
35/1 35/19 37/1 37/2 37/8
37/20 38/11 39/15 40/25
41/9 42/15 42/15 42/20
43/15 43/24 44/8 44/22
44/24 45/11 45/11 47/12
47/17 47/20 47/24 49/14
50/5 50/15 50/23 51/7
51/15 51/20 51/22 53/3
54/18 58/9 58/16 61/11
61/15 62/15 64/16 65/5
65/9 65/11 65/23 67/13
67/25 68/6 68/12 70/11
71/17 75/1 75/12 77/22
78/22 80/4 83/6 85/18
87/3 87/6 90/4 91/17
91/24 94/20 97/1
**ignorance [1]** 44/16
**impact [1]** 82/17
**impasse [1]** 25/3
**important [1]** 27/3
**impossible [2]** 61/14 62/22
**in [207]**
**inadvertently [1]** 71/19
**inapplicable [1]** 31/20
**INC [7]** 1/5 1/8 4/5 4/9
5/6 5/6 63/4
**include [1]** 44/23
**included [1]** 11/15
**includes [3]** 21/17 21/19
30/2
**including [3]** 6/6 9/1 75/10
**incorrect [1]** 23/11
**Incredible [1]** 56/13
**independently [2]** 38/13
38/14
**Index........................
................99 [1]** 4/14
**indicate [1]** 48/2
**individual [2]** 35/11 53/1
**influences [1]** 43/3
**info [1]** 25/12
**information [123]**
**infringement [2]** 50/2
70/13
**infringer's [3]** 9/1 9/3 9/4
**infringers [1]** 83/13
**inputted [1]** 36/6
**inquiry [1]** 89/4
**instance [5]** 14/25 16/2
16/13 74/7 80/23
**instead [3]** 6/17 10/14
75/4
**insufficient [2]** 29/15
51/22
**intents [1]** 27/21
**interchangeably [1]** 79/2
**interest [5]** 63/6 63/6
65/1 65/2 65/3
**interested [1]** 10/24
**interfered [4]** 52/5 52/25
53/9 58/4
**interference [4]** 48/24
52/2 52/15 67/9
**Internet [1]** 85/3
**interrogatories [22]** 22/12
45/19 46/13 46/23 47/9
48/4 52/6 60/8 60/17
65/17 85/12 85/14 85/21
86/1 87/4 87/10 87/15
87/15 88/3 88/5 96/7
96/15
**interrogatory [33]** 7/4
17/1 17/6 19/12 19/16 21/6
21/12 21/21 26/9 29/14
29/16 29/25 30/7 43/8
56/14 56/15 56/15 66/1
66/4 69/6 71/1 72/25
76/12 81/3 85/18 89/2
89/13 90/22 91/1 91/3
92/10 93/6 96/10
**interrupt [1]** 59/23
**interview [1]** 61/24
**into [14]** 26/1 27/16 27/17
27/18 31/8 31/16 32/20
35/20 41/22 43/18 50/23
74/19 83/23 89/4
**introduce [1]** 54/6
**invalidate [1]** 84/16
**invoice [1]** 25/14
**involve [3]** 16/24 24/10
24/18
**involved [2]** 24/12 70/12
**involves [4]** 24/10 25/25

Case 4:23-cv-00860-P Document 115 Filed 04/29/24 Page 115 of 133 PageID 2149

## I

involves... **[2]** 26/1 26/3
IP **[3]** 73/20 73/23 73/24
irrelevant **[3]** 70/10 74/20
 83/23
is **[241]**
isn't **[6]** 19/20 22/13
 24/19 30/8 80/20 83/9
issue **[27]** 8/21 13/14 18/8
 18/14 20/2 25/6 36/23
 37/6 46/19 46/25 50/3
 50/3 56/21 59/1 60/23
 66/13 67/18 69/22 75/15
 85/17 85/20 91/3 91/15
 91/16 91/24 96/7 96/14
issues **[2]** 46/9 55/1
it **[276]**
it's **[115]**
item **[1]** 75/10
its **[11]** 6/4 9/1 10/13 11/5
 14/25 63/4 63/8 76/22
 77/9 82/6 82/11
itself **[1]** 14/17

## J

Jack **[1]** 68/21
Jane **[1]** 37/18
January **[2]** 29/19 71/14
January 1 **[1]** 29/19
jazz **[3]** 38/9 39/16 45/12
Jeremy **[1]** 5/12
jibe **[2]** 83/1 83/2
Joe **[1]** 49/14
John **[1]** 73/13
JR **[3]** 1/12 1/15 81/21
JUDGE **[83]** 1/12 5/16 6/7
 7/2 8/2 8/5 8/15 8/16 8/21
 8/24 9/2 9/5 9/7 9/11 9/14
 9/16 10/4 10/8 10/20 11/1
 11/6 11/9 11/17 11/22 12/2
 12/15 13/14 13/23 14/2
 14/16 14/24 18/5 26/6

28/4 28/17 29/4 29/8
29/13 29/16 29/20 29/25
30/5 31/7 33/14 33/17
41/14 43/10 43/17 44/15
46/2 48/11 52/17 53/15
53/25 54/1 54/3 54/11
54/16 54/20 55/12 55/17
56/14 59/8 59/12 61/4
61/16 68/6 68/11 68/19
70/1 70/4 72/12 73/12
74/6 81/25 83/25 84/7
84/14 85/4 87/18 88/2
89/19 90/2
judgment **[1]** 92/12
judicial **[2]** 54/6 98/13
jury **[1]** 58/6
just **[105]**
justice **[1]** 89/25
justification **[3]** 76/16
 76/21 78/13
justified **[1]** 76/22

## K

keep **[5]** 7/21 10/2 21/24
 41/25 42/7
KELLY **[5]** 1/15 1/16 5/11
 81/21 97/14
kept **[1]** 22/13
key **[5]** 8/17 9/2 31/7
 90/18 90/19
kid **[1]** 79/22
kind **[11]** 10/8 12/10 12/11
 17/15 18/6 18/17 25/5
 25/9 27/13 77/12 83/8
KIRKMAN **[26]** 1/21 1/22
 5/16 11/19 15/10 15/20
 20/3 20/6 20/13 21/4 22/5
 22/9 22/15 33/19 41/3
 45/4 57/7 66/3 85/20
 88/19 89/4 90/18 91/4
 93/3 95/16 96/17
Kirkman's **[1]** 85/16
Kirkman......................
............15 **[1]** 4/7

Kirkman......................
............15 **[1]** 4/10
knew **[3]** 61/20 63/16
 64/17
knock **[1]** 9/25
know **[108]**
knowing **[1]** 38/18
knowledge **[1]** 66/16
known **[1]** 51/4
knows **[3]** 13/21 19/22
 61/21

## L

L-3 **[1]** 24/20
label **[1]** 11/4
laches **[3]** 66/14 66/22
 82/9
Lake **[1]** 78/8
Lane **[1]** 2/3
language **[1]** 89/8
LARS **[6]** 1/14 5/9 81/20
 93/12 94/10 95/15
last **[6]** 21/18 43/10 52/1
 60/1 69/8 83/20
Lastly **[1]** 19/19
late **[1]** 97/17
later **[3]** 76/9 92/7 94/12
launches **[1]** 83/23
law **[16]** 1/22 11/12 14/24
 15/4 17/21 31/23 31/24
 33/8 34/17 42/15 49/2
 49/7 51/11 84/8 84/8 84/9
lawsuit **[3]** 69/22 72/21
 80/5
lawsuits **[5]** 69/8 70/4
 70/4 70/5 72/24
lawyer **[2]** 5/13 61/20
lawyers **[2]** 11/15 60/24
lays **[1]** 14/3
lead **[1]** 83/16
leads **[1]** 76/23
learn **[1]** 25/10
least **[1]** 40/22

**L**

left [6]  45/24 47/5 81/18 87/25 88/3 89/9
legitimacy [1]  50/20
legitimate [2]  17/3 17/17
legs [2]  37/12 76/18
lengthy [1]  71/23
less [6]  13/1 16/15 37/3 64/25 76/17 86/15
lesser [1]  67/14
let [8]  12/2 20/14 25/7 33/18 44/25 50/2 50/5 95/24
let's [14]  29/25 31/2 31/14 54/22 55/2 55/2 55/3 56/12 76/11 87/14 88/20 88/23 95/4 95/8
letter [2]  54/21 71/15
letters [5]  38/9 41/12 71/12 72/5 74/1
levels [1]  26/3
license [3]  82/16 83/4 83/19
life's [1]  94/21
like [13]  5/20 13/13 13/24 16/13 21/20 23/5 25/11 68/11 79/20 83/7 83/25 86/20 94/3
likelihood [1]  84/13
limit [4]  84/17 84/21 92/15 95/21
limited [2]  11/10 30/3
line [6]  9/13 9/13 28/20 48/21 60/7 60/7
lines [1]  35/11
link [1]  41/3
linked [2]  25/9 39/18
list [4]  25/19 38/19 55/21 55/23
listed [1]  46/25
listen [1]  89/23
listening [1]  12/3

listing [1]  52/24
little [2]  18/22 89/16
live [3]  48/22 92/19 92/22
LLP [2]  1/16 1/19
located [1]  66/8
locator [15]  18/20 18/22 22/16 24/5 24/7 24/14 25/6 25/8 25/19 38/8 39/16 39/18 40/25 41/9 91/20
locators [5]  38/12 38/20 39/19 39/21 40/23
lodged [2]  45/21 90/22
log [1]  93/18
long [9]  33/19 34/1 34/2 41/11 66/15 80/22 83/2 89/25 94/7
long-term [1]  80/22
longer [1]  42/7
look [33]  8/2 9/21 9/22 10/18 12/15 12/25 19/16 20/9 20/19 21/10 21/11 29/25 38/8 40/10 44/5 44/25 45/2 45/10 48/14 49/12 55/19 59/14 59/23 61/11 61/12 62/13 64/24 67/21 68/1 68/11 91/17 94/14 94/14
looking [8]  26/12 28/20 38/14 45/1 86/12 89/1 89/19 91/7
lose [1]  84/2
lost [1]  73/1
lot [10]  16/15 25/10 28/2 36/12 58/22 69/10 69/21 74/20 80/1 82/14
lots [4]  11/15 71/5 80/15 80/15
lump [1]  22/10

**M**

made [10]  10/10 19/9 21/14 46/24 47/22 54/7

62/5 62/19 83/19 88/14
**MAGISTRATE [1]**  1/12
main [5]  1/16 1/22 12/7 71/8 85/16
maintain [1]  54/4
make [25]  15/12 15/17 16/20 19/6 20/7 23/3 29/13 32/3 34/20 37/4 40/18 40/24 42/18 49/1 51/20 51/21 53/12 61/13 67/14 75/20 76/23 78/10 85/24 95/24 97/12
makes [4]  8/3 48/25 74/20 86/2
making [2]  39/17 50/22
malfeasance [1]  11/2
man [3]  9/15 9/25 10/5
managed [1]  73/14
manner [1]  15/24
many [6]  28/24 28/24 41/12 57/1 58/21 96/10
March [3]  11/16 42/19 54/3
March 8th [1]  11/16
March 9th [1]  54/3
mark [1]  83/3
marks [6]  62/6 62/19 82/6 82/16 83/20 84/15
marshal [1]  89/3
marshaling [1]  90/14
masks [1]  98/9
match [2]  40/5 40/7
mathematical [1]  75/11
matter [11]  14/13 14/14 14/15 15/12 39/15 40/15 66/21 80/8 80/10 85/5 98/7
may [34]  6/11 6/14 6/15 6/19 11/7 11/17 13/16 13/25 14/13 14/14 15/9 18/9 18/9 26/5 28/16 29/15 30/18 30/20 32/18

**M**

**may… [15]** 32/21 40/22 40/23 45/16 72/20 72/20 76/7 76/7 81/12 81/13 83/11 83/13 85/24 91/11 97/3
**maybe [4]** 41/24 55/4 60/13 82/13
**me [33]** 5/10 5/17 5/17 11/14 15/19 16/23 20/14 25/7 25/18 26/10 26/11 26/20 27/19 33/18 41/13 44/16 44/25 50/2 50/5 62/11 62/15 62/23 64/12 65/23 65/24 66/3 77/10 77/12 86/8 92/6 94/3 94/12 94/21
**mean [22]** 19/10 19/11 30/21 35/7 41/17 51/11 59/16 59/17 59/18 59/20 59/21 59/23 64/12 64/14 70/1 77/12 81/8 81/18 83/15 86/9 90/3 94/2
**meaning [1]** 63/3
**means [2]** 15/24 94/13
**mediation [9]** 53/25 54/1 54/4 54/5 54/11 54/14 54/16 54/17 56/5
**medium [1]** 31/6
**meet [4]** 52/17 55/7 62/3 95/16
**meetings [1]** 46/3
**memo [1]** 33/20
**mentioned [2]** 11/4 11/22
**merits [1]** 78/5
**met [1]** 25/3
**metaphysical [1]** 82/13
**mid [1]** 34/16
**mid-week [1]** 34/16
**might [3]** 28/8 45/12 84/2
**million [2]** 38/20 54/15
**millions [2]** 26/17 39/25

**minute [2]** 35/18 94/20
**minutes [2]** 94/24 95/4
**Mir [1]** 24/20
**mislead [1]** 11/24
**misrepresentations [1]** 10/11
**miss [1]** 45/4
**missed [1]** 67/11
**missing [2]** 34/24 63/22
**misspoke [1]** 72/11
**mistakes [1]** 23/15
**misunderstanding [1]** 9/18
**misunderstood [2]** 58/12 89/18
**mitigate [1]** 79/12
**mitigation [2]** 66/10 66/23
**moment [2]** 32/19 66/21
**Monday [2]** 34/4 45/23
**money [8]** 14/14 20/6 20/7 20/11 20/16 37/5 65/1 67/10
**monies [1]** 50/16
**month [1]** 18/9
**monthly [1]** 29/17
**months [2]** 18/10 86/15
**more [27]** 7/20 11/23 17/12 24/3 32/5 35/16 37/4 40/19 55/1 57/19 57/20 66/12 69/11 69/21 70/7 76/18 77/1 77/5 77/6 77/11 77/13 77/24 78/6 83/22 89/9 93/5 94/19
**moreover [2]** 14/16 29/25
**most [5]** 13/18 46/8 59/18 68/10 69/16
**motion [29]** 5/23 5/24 9/17 9/22 10/13 11/3 11/5 11/16 19/3 44/17 44/18 45/15 48/18 48/20 49/19 52/10 53/16 53/20 53/21 53/24 54/10 55/5 55/11 55/11 56/6 57/4 60/12

92/12 97/11
**motions [3]** 7/11 7/19 96/4
**move [3]** 18/19 25/6 45/14
**moving [1]** 41/25
**MR [12]** 1/14 1/15 1/15 1/18 1/21 2/2 4/6 4/7 4/10 4/11 96/17 97/14
**Mr. [62]** 5/13 5/25 8/2 10/12 11/19 12/6 12/21 15/10 15/16 15/20 17/9 17/25 19/7 20/3 20/6 20/13 21/4 21/9 22/5 22/9 22/15 23/3 24/1 24/11 24/12 25/23 26/24 27/4 33/3 33/19 41/3 45/4 48/25 51/15 53/14 57/7 59/24 60/13 66/3 66/18 68/5 69/24 70/24 74/5 79/21 81/2 85/9 85/16 85/20 87/11 87/21 88/8 88/19 88/21 89/4 89/16 90/18 91/4 93/3 95/15 95/15 95/25
**Mr. Aktarer [1]** 8/2
**Mr. Aktarer's [1]** 27/4
**Mr. Berg [26]** 5/25 15/16 17/9 17/25 19/7 21/9 24/11 26/24 48/25 53/14 59/24 60/13 66/18 68/5 69/24 70/24 74/5 79/21 81/2 85/9 87/11 87/21 88/8 88/21 89/16 95/25
**Mr. Bill [1]** 95/15
**Mr. Kirkman [21]** 11/19 15/10 15/20 20/3 20/6 20/13 21/4 22/5 22/9 22/15 33/19 41/3 45/4 57/7 66/3 85/20 88/19 89/4 90/18 91/4 93/3
**Mr. Kirkman's [1]** 85/16
**Mr. Lars [1]** 95/15
**Mr. Skiplagged [1]** 51/15

**M**

**Mr. Zach [1]** 5/13

**Mr. Zaman [5]** 10/12 12/21 23/3 24/1 25/23

**Mr. Zaman's [3]** 12/6 24/12 33/3

**MS [2]** 2/1 4/8

**Ms. [11]** 11/1 11/15 15/13 19/25 20/4 25/8 33/19 72/22 74/21 76/13 82/5

**Ms. Campbell [10]** 11/15 15/13 19/25 20/4 25/8 33/19 72/22 74/21 76/13 82/5

**Ms. Campbell's [1]** 11/1

**much [16]** 8/19 13/1 19/17 19/24 29/10 38/1 39/4 39/5 39/6 39/7 39/14 74/7 74/19 82/12 83/7 95/21

**multiple [7]** 24/2 24/21 26/3 79/8 79/19 91/14 93/21

**my [24]** 15/15 17/2 19/24 35/18 36/9 37/10 38/8 42/23 43/15 43/16 43/23 44/11 44/15 44/20 44/21 48/25 55/10 65/14 81/24 85/10 85/12 92/6 98/7 98/11

**N**

**name [8]** 8/10 21/19 24/8 27/11 28/19 39/1 39/2 57/23

**names [1]** 22/16

**narrow [1]** 60/23

**native [1]** 32/11

**nature [1]** 55/17

**necessarily [2]** 41/3 76/3

**necessary [2]** 31/7 31/15

**necessitate [1]** 33/4

**need [35]** 8/18 10/19 26/23 28/3 28/3 28/23 33/19 40/8 42/1 43/10 47/13 49/4 49/7 50/10 50/19 51/5 52/11 53/6 65/17 67/14 68/1 73/6 73/8 76/2 78/15 85/22 87/5 87/16 88/9 93/1 93/5 94/8 94/20 95/2 96/4

**needed [1]** 69/16

**needs [5]** 19/15 65/10 75/13 76/23 76/24

**NERENBERG [1]** 2/2

**never [8]** 9/21 9/24 11/4 11/22 20/8 33/22 35/16 60/22

**New [9]** 34/12 43/15 45/5 77/20 78/22 78/23 78/24 78/25 79/23

**next [6]** 34/16 42/6 60/20 69/7 75/9 90/25

**NGL [1]** 55/15

**nine [1]** 64/10

**no [51]** 1/5 7/4 8/1 8/14 14/11 19/1 19/12 19/16 24/14 25/3 29/6 29/16 30/13 32/19 34/10 34/15 38/17 42/7 42/24 46/16 47/22 49/20 56/15 61/25 61/25 62/14 63/19 63/23 64/5 66/4 66/21 71/1 72/4 74/12 79/8 79/15 82/25 84/20 85/6 87/18 89/2 89/9 89/20 90/1 92/24 93/2 93/6 93/10 93/21 94/18 96/20

**No. [22]** 7/4 7/5 16/25 17/1 17/1 22/3 26/9 29/14 43/8 46/12 48/17 56/15 62/16 72/25 80/20 87/1 89/14 90/22 91/1 92/10 92/25 93/6

**No. 1 [2]** 26/9 29/14

**No. 13 [1]** 62/16

**No. 15 [1]** 72/25

**No. 2 [5]** 46/12 56/15 89/14 90/22 92/10

**No. 20 [1]** 80/20

**No. 3 [3]** 91/1 92/25 93/6

**No. 4 [1]** 16/25

**No. 5 [3]** 7/5 17/1 22/3

**No. 6 [1]** 87/1

**No. 7 [1]** 48/17

**No. 8 [3]** 7/4 17/1 43/8

**Nobody [2]** 9/5 9/6

**Nods [2]** 60/4 79/4

**nonenforcement [1]** 85/7

**nonsense [2]** 53/19 70/1

**nonstop [4]** 77/14 77/16 77/25 78/5

**NORTHERN [3]** 1/2 18/2 98/18

**Nos [2]** 52/6 66/1

**nose [1]** 6/9

**not [149]**

**note [1]** 31/14

**nothing [6]** 25/16 32/5 35/8 49/18 83/6 92/1

**now [33]** 16/5 16/7 16/23 17/21 18/18 19/6 27/1 28/12 30/20 33/23 43/21 47/3 48/6 48/18 48/25 49/9 49/24 50/15 50/21 51/15 51/22 59/3 59/5 62/2 64/16 75/4 75/13 76/8 81/19 89/10 89/23 91/6 96/19

**nowhere [1]** 22/14

**number [22]** 18/22 21/20 24/7 25/24 26/3 26/15 29/18 30/12 35/22 35/22 39/3 39/20 39/25 45/24 45/25 51/3 54/13 57/23 60/18 82/25 91/20 96/9

# N

numbered [2] 3/8 96/9
numbers [12] 9/5 22/16
24/5 24/14 25/6 25/8
25/19 35/23 36/4 36/6
40/11 65/24
numerous [1] 57/16
nuts [1] 36/3

# O

object [3] 59/20 94/19
97/7
objected [6] 14/7 29/22
59/21 61/9 65/25 66/2
objection [26] 48/1 55/9
55/21 55/22 59/18 60/9
60/10 65/10 67/1 69/8
70/21 71/3 73/25 78/16
80/19 80/24 81/2 81/5
82/2 82/3 83/24 89/2
89/22 90/3 90/4 96/14
objections [56] 12/8 12/9
12/12 12/12 12/18 15/1
45/22 45/25 46/6 46/14
46/20 46/23 47/2 47/4
47/11 47/21 47/22 48/5
48/12 54/24 55/10 59/8
59/12 60/8 61/2 65/7
65/22 66/19 66/19 69/5
70/24 71/5 74/5 75/24
81/6 85/22 87/10 87/25
88/8 88/10 88/14 88/17
88/20 89/9 89/10 89/13
89/24 90/21 93/1 93/5
93/8 93/11 93/20 94/8
94/11 94/13
Objections . . . . . . . . . . . . . . . . . . .
. . . 65 [1] 4/12
obligated [2] 14/12 31/17
obligation [1] 14/23
obligations [1] 12/1
oblique [1] 83/8

obtain [1] 22/5
obtained [1] 31/6
obvious [1] 77/12
obviously [6] 31/1 34/17
40/17 74/23 93/13 97/7
off [13] 6/17 7/15 26/15
34/9 37/21 55/6 77/8
78/2 78/4 78/20 78/25
79/23 85/3
offer [1] 25/5
offered [2] 24/5 81/22
offering [1] 60/20
offerings [2] 67/5 68/15
Official [1] 98/18
often [1] 41/10
oh [9] 27/23 55/19 59/5
61/4 69/9 82/25 90/1 94/5
94/12
okay [36] 5/15 16/11 16/22
21/3 25/18 26/22 27/25
30/24 37/16 42/11 42/13
45/13 47/12 50/7 51/23
62/20 63/9 65/9 65/13
65/18 66/3 69/7 74/3
77/21 85/9 86/22 87/17
88/18 89/12 89/24 90/8
90/25 93/19 94/2 96/24
97/15
OKC [1] 78/8
Oklahoma [2] 73/14 78/7
ol' [2] 36/14 37/14
old [1] 31/19
on [178]
once [4] 40/6 67/17 74/15
79/17
one [42] 7/13 14/4 14/7
15/25 27/4 28/16 29/6
34/20 40/2 40/2 40/3
40/14 42/12 43/10 47/18
48/17 54/10 55/24 60/11
60/13 61/12 61/12 62/3
62/3 64/3 64/5 66/5

70/12 71/6 71/8 71/10
74/10 75/5 81/12 82/2
83/11 84/1 85/2 85/16
85/24 91/4 93/24
onerous [3] 30/19 30/22
37/3
ones [8] 16/5 52/15 57/9
57/13 71/7 81/12 87/12
95/23
ongoing [1] 90/15
only [18] 9/4 9/10 11/10
17/14 18/5 23/22 26/21
39/20 39/25 50/6 50/16
51/7 57/8 57/9 57/12 71/6
73/15 88/18
oOo [1] 5/2
opaque [1] 37/25
open [1] 23/14
opens [1] 27/12
operates [1] 6/13
operating [1] 66/17
opinion [4] 12/21 12/22
13/10 94/4
opportunity [2] 18/1 56/1
opposed [1] 39/17
oppressive [1] 19/4
or [104]
oral [1] 7/13
order [10] 17/3 17/18 21/5
22/19 24/16 44/21 46/1
48/2 56/7 65/19
ordered [3] 21/6 43/24
55/7
ordinary [1] 22/25
Oregon [3] 6/14 6/17
37/20
origin [3] 8/10 29/2 38/24
other [38] 7/9 11/15 28/13
33/21 34/20 36/12 36/19
37/10 37/12 39/11 39/16
42/20 47/7 51/16 51/24
54/6 54/19 55/3 63/6

# O

other... **[19]** 65/7 69/8 69/17 70/4 70/4 71/3 73/5 73/5 78/12 81/5 81/11 83/3 87/9 87/15 89/12 90/21 93/19 94/8 96/8

others **[1]** 82/19

otherwise **[4]** 18/11 24/13 70/21 79/14

ought **[1]** 70/20

our **[77]** 7/19 8/6 8/18 8/19 10/18 13/5 17/13 17/22 18/1 19/16 19/20 21/10 23/17 28/17 28/24 28/25 29/20 29/22 33/1 33/2 37/19 43/6 43/11 44/17 45/9 46/3 46/4 46/9 46/11 47/21 48/8 48/15 48/17 48/20 49/10 49/10 49/19 49/20 49/25 51/11 51/17 52/8 52/10 53/10 53/21 55/5 55/12 56/13 56/14 56/15 56/24 56/25 57/4 57/14 58/1 58/22 59/8 61/1 70/3 72/1 72/14 72/15 72/17 74/14 80/3 80/7 84/6 84/7 84/15 85/7 86/11 88/17 89/21 90/9 92/11 92/15 95/18

out **[60]** 9/24 12/18 12/23 13/20 14/3 14/8 14/13 14/18 15/2 16/1 16/3 16/14 18/10 21/9 22/24 23/12 25/19 25/25 26/3 28/17 28/21 29/14 32/2 32/15 33/10 34/5 36/7 36/8 36/11 37/4 37/14 38/6 38/10 38/11 38/23 39/13 41/23 44/9 45/12 47/5 49/8 49/23 52/7 54/11 59/2 61/24 66/24 67/11

69/14 72/5 73/5 73/7 73/14 80/16 81/9 81/15 82/2 82/24 94/20 97/1

outside **[1]** 31/11

over **[15]** 15/13 19/25 20/24 27/23 33/5 36/15 38/13 48/15 55/12 70/1 70/5 70/6 73/13 85/6 89/19

overbroad **[3]** 74/18 74/19 83/22

overlaying **[1]** 26/4

overly **[2]** 70/9 90/9

overrule **[4]** 65/7 65/9 74/2 82/2

overruled **[7]** 12/7 12/9 12/13 15/3 29/22 47/12 48/4

overruling **[1]** 47/24

overview **[3]** 15/12 19/24 20/1

own **[2]** 73/14 73/15

owner **[3]** 8/23 8/25 9/3

ownership **[1]** 84/23

owns **[2]** 15/5 84/9

# P

p.m **[4]** 1/8 95/6 95/7 97/19

page **[11]** 10/4 46/11 52/9 52/10 54/12 57/15 57/17 66/7 87/1 91/17 93/9

pages **[4]** 42/9 42/10 48/20 49/19

paid **[9]** 7/7 7/10 7/21 16/20 20/24 20/25 21/23 22/9 22/10

painstaking **[1]** 33/4

pandemic **[1]** 98/8

papers **[2]** 8/6 48/9

paragraph **[6]** 11/2 33/3 49/25 52/8 87/1 93/10

Park **[1]** 2/3

part **[7]** 14/22 20/15 37/23 44/2 44/11 63/7 81/4

participants **[1]** 98/9

particular **[8]** 18/23 39/18 41/3 52/20 63/24 64/8 67/17 71/10

particularity **[4]** 46/19 47/10 55/22 56/2

parties **[3]** 54/4 71/13 95/10

parts **[2]** 58/18 58/18

party **[9]** 14/7 15/5 23/10 24/22 31/8 31/16 54/8 70/12 71/16

pass **[1]** 20/11

past **[1]** 63/17

path **[1]** 54/22

pay **[4]** 21/25 22/1 77/13 78/4

payments **[1]** 25/9

people **[20]** 22/4 22/16 40/18 54/16 61/24 63/16 64/25 69/1 72/5 72/7 73/2 73/15 74/25 75/7 77/1 77/11 80/1 80/4 83/3 92/15

per **[3]** 22/9 22/10 29/7

perceive **[1]** 20/2

period **[1]** 68/2

permission **[2]** 15/11 83/5

permit **[1]** 16/23

person **[6]** 57/23 74/8 74/17 75/16 75/25 78/2

persons **[2]** 19/22 63/6

perspective **[2]** 96/21 96/23

phantom **[2]** 70/14 70/19

phone **[1]** 35/7

phrased **[1]** 70/10

pick **[1]** 60/21

picture **[3]** 27/2 27/2 68/1

**P**

plain [1]  12/15

plaintiff [8]  1/6 1/14 1/18
5/8 9/7 9/9 9/17 51/1

plan [2]  42/5 71/23

plane [1]  37/19

planned [1]  68/3

plates [1]  71/20

platforms [2]  23/10 24/2

plead [1]  84/18

pleading [3]  48/22 53/4
53/5

pleadings [1]  50/8

please [5]  5/4 15/9 42/7
44/15 45/16

pled [1]  79/7

PLLC [1]  1/22

plow [1]  40/18

plowed [1]  40/19

plus [1]  22/20

PNR [12]  7/15 7/18 21/18
21/19 22/16 28/3 32/24
37/18 40/5 40/6 40/8
91/21

PNRs [3]  7/8 15/8 40/1

point [18]  19/9 20/12 21/9
34/20 35/10 38/21 40/24
41/1 41/6 41/10 42/12
43/23 52/1 53/18 54/11
55/4 57/4 69/2

pointed [2]  23/12 60/3

points [5]  20/12 25/17
57/18 57/20 85/16

policies [4]  76/14 78/17
79/6 80/6

portion [2]  20/21 20/22

portions [1]  11/20

Portland [6]  6/14 6/15
6/17 16/2 21/1 37/20

position [1]  86/10

positions [1]  48/15

possession [4]  21/7 74/8
75/17 75/25

possible [2]  54/8 95/21

possibly [3]  34/11 63/13
63/19

post [1]  55/11

post-motion [1]  55/11

practical [1]  55/1

practically [1]  63/11

pre [1]  55/11

pre-motion [1]  55/11

predecessors [4]  63/5
64/14 65/1 65/3

preliminary [1]  86/1

premised [1]  9/17

prepared [2]  34/22 46/2

preposterous [1]  56/21

prescribed [1]  98/13

present [6]  9/4 12/10
29/19 56/8 63/4 93/17

presented [1]  10/16

presently [1]  63/7

press [1]  16/4

Presumably [1]  54/2

presumption [2]  84/12
84/24

pretty [5]  10/10 17/22
18/2 77/10 97/1

prevailing [1]  42/15

prevalent [1]  22/17

preventing [1]  15/1

price [1]  34/12

prices [2]  69/16 69/19

pricing [1]  6/12

primarily [1]  76/7

principle [1]  15/3

print [1]  28/21

prior [2]  11/5 74/1

privilege [3]  93/14 93/16
93/17

probably [3]  19/24 26/11
64/18

problem [6]  11/23 35/2
40/23 45/11 65/25 80/19

problems [1]  81/15

procedures [5]  76/14 77/3
78/17 79/6 80/6

proceeding [1]  54/7

proceedings [4]  95/7 97/19
98/6 98/10

process [4]  33/5 81/11
86/3 86/17

produce [17]  13/15 18/15
18/17 18/19 21/7 25/5
30/14 32/22 39/13 45/22
47/14 48/1 51/16 58/10
76/2 84/5 84/24

produced [20]  3/9 11/10
17/4 17/6 22/18 22/20
23/2 23/2 23/14 23/16
24/15 32/4 32/11 48/3
84/11 84/25 86/6 86/7
86/8 91/18

produces [1]  16/15

product [1]  93/16

production [20]  7/4 7/5
13/4 13/5 16/25 17/1 21/8
21/11 22/3 23/14 24/22
29/21 29/23 35/25 45/20
46/13 46/17 95/1 95/11
95/17

productions [3]  49/20
50/11 52/7

profits [12]  9/1 9/3 9/8
9/9 10/21 10/24 13/6 33/4
33/6 33/8 33/14 33/15

program [4]  17/15 17/23
18/7 26/2

prohibited [1]  89/8

prohibition [1]  14/18

project [1]  23/6

promotion [3]  67/13 68/3
68/6

promotional [3]  67/4 68/13

**P**

promotional... **[1]** 68/14
promotions **[2]** 68/15 69/2
promptly **[1]** 97/4
proof **[2]** 9/4 58/13
proper **[1]** 92/1
proportionality **[2]** 41/21 83/18
proposed **[1]** 48/17
propounded **[1]** 46/14
protect **[4]** 12/11 73/23 73/24 82/6
protecting **[1]** 73/20
prove **[19]** 9/10 9/23 10/19 10/21 10/23 32/5 33/9 51/12 52/23 53/6 57/5 57/8 58/1 58/16 59/5 66/21 66/22 66/23 67/21
proved **[2]** 84/10 85/4
proven **[1]** 14/25
proves **[1]** 84/11
provide **[4]** 31/12 37/7 74/14 92/5
provided **[5]** 17/25 19/17 30/10 32/11 36/5
provides **[1]** 76/6
providing **[2]** 40/10 40/11
proving **[1]** 83/9
provisions **[1]** 57/16
proximate **[1]** 49/6
proximately **[1]** 48/22
publicly **[1]** 51/13
pull **[5]** 11/13 13/20 14/12 23/9 24/5
pulling **[2]** 14/17 24/11
punish **[1]** 70/3
punishing **[3]** 69/22 69/25 70/2
punting **[1]** 56/10
Puppeteer **[1]** 27/15
purchase **[5]** 16/4 16/5 20/7 65/1 81/23

purchased **[3]** 20/15 21/15 22/17
purports **[1]** 6/5
purposes **[2]** 27/22 48/19
purview **[1]** 44/24
put **[13]** 6/3 14/11 16/1 19/3 27/17 27/17 32/16 37/5 53/18 60/12 69/14 78/20 84/18
putting **[1]** 27/7

**Q**

qualified **[1]** 13/11
qualify **[1]** 13/12
quarterly **[1]** 29/17
queen **[1]** 29/12
query **[1]** 6/10
querying **[1]** 39/15
question **[18]** 8/1 8/5 8/14 25/7 33/18 33/25 35/6 35/18 36/9 36/17 36/24 37/10 40/17 58/12 63/24 88/13 90/21 93/9
questions **[5]** 7/20 33/17 66/12 75/8 94/6
QuickBooks **[1]** 25/12
quicker **[1]** 40/19
quickly **[1]** 97/2
quoted **[2]** 24/20 34/18

**R**

R.H **[2]** 54/1 54/3
range **[1]** 23/19
ranges **[1]** 67/4
rate **[1]** 95/2
rather **[3]** 47/18 67/22 69/22
raw **[2]** 19/23 25/15
RAY **[2]** 1/12 5/16
RDR **[3]** 3/2 98/4 98/17
reach **[2]** 24/25 95/10
reached **[1]** 90/2
read **[7]** 8/9 26/18 62/11

62/14 62/23 64/5 87/3 87/12 87/22 88/2 97/19
reading **[2]** 42/2 49/19
realize **[2]** 34/23 76/7
really **[29]** 6/23 9/14 10/24 11/25 12/5 12/18 13/13 14/3 15/16 17/2 17/16 18/8 18/14 18/16 19/7 19/14 19/20 26/12 27/1 27/2 32/19 34/21 34/23 40/10 56/9 67/24 82/15 88/2 88/12
reason **[5]** 30/14 54/25 68/20 78/14 83/12
reasonable **[5]** 46/18 56/2 61/6 69/16 69/18
reasonably **[2]** 31/8 31/16
reasons **[5]** 12/7 52/21 53/16 56/4 72/24
recall **[2]** 21/6 60/2
received **[5]** 8/12 8/16 39/5 39/7 54/1
recess **[2]** 95/6 97/18
reconsideration **[1]** 12/16
reconvened **[1]** 95/7
record **[24]** 5/8 18/20 18/22 22/16 24/5 24/7 24/14 25/5 25/8 26/5 26/9 38/8 38/12 38/20 39/16 39/18 39/19 39/21 40/22 40/25 41/9 91/20 95/9 98/6
recover **[2]** 8/25 58/17
recycle **[2]** 39/23 39/24
red **[1]** 33/8
redacted **[2]** 26/9 26/21
redirected **[2]** 22/4 22/6
references **[2]** 11/3 11/21
referencing **[1]** 33/5
referral **[3]** 16/13 16/19 44/21
refers **[1]** 16/8
refine **[1]** 65/10

**R**

refund [1] 70/7
refunds [2] 25/25 33/10
refuse [1] 58/1
refused [1] 55/8
regard [1] 84/6
regarding [4] 21/22 49/4 71/13 95/11
regardless [2] 41/14 96/10
registration [2] 84/25 84/25
regular [3] 28/5 28/10 68/22
related [2] 59/22 74/9
relates [2] 82/23 83/21
relating [3] 21/14 59/14 59/15
relevance [6] 48/13 61/6 74/12 79/5 82/4 83/18
relevancy [9] 46/14 47/9 55/20 56/1 65/20 65/25 67/1 69/7 71/9
relevant [20] 36/23 51/8 51/8 55/25 59/22 61/3 61/19 61/22 66/4 67/6 71/4 71/25 72/1 72/2 76/13 80/18 82/18 84/7 84/21 85/8
relief [2] 44/2 44/17
rely [2] 54/5 61/4
remaining [5] 46/9 47/1 88/21 95/19 95/19
remarks [1] 91/21
remember [7] 6/3 6/11 6/19 21/18 26/18 60/3 71/21
removed [1] 93/20
removing [1] 89/10
render [1] 13/10
replete [1] 17/7
report [12] 45/23 46/2 46/4 46/9 46/12 46/16

49/20 49/25 52/8 75/1 75/5 95/17
reported [1] 3/8
REPORTER [3] 3/2 3/2 98/18
Reporter's [2] 4/13 98/2
reports [1] 31/11
represent [1] 50/15
representations [1] 54/14
representative [1] 25/1
representatives [1] 63/5
representing [2] 61/21 93/13
request [27] 7/4 7/5 16/25 17/1 17/18 21/10 21/12 21/17 21/21 24/21 29/22 33/1 33/2 44/5 49/20 49/21 50/11 52/6 55/10 59/13 60/7 60/7 61/5 62/10 62/14 64/8 64/9
requested [16] 17/11 19/1 22/16 30/11 31/13 32/24 44/3 44/17 47/6 48/8 48/21 49/5 50/11 50/20 52/3 54/2
requesting [1] 24/17
requests [31] 7/6 10/18 10/25 13/4 13/5 16/25 17/5 21/8 21/11 22/3 29/21 35/25 45/18 45/19 45/25 46/13 46/17 46/24 47/8 51/3 54/23 61/7 61/10 61/14 61/23 65/11 69/19 85/12 94/25 95/11 95/16
require [6] 10/6 13/8 13/20 14/15 18/3 24/22
required [13] 9/3 9/10 12/23 17/22 18/17 24/19 31/20 31/25 46/3 48/1 55/13 55/14 56/7
requirement [1] 49/6

requires [2] 31/9 31/15
requiring [1] 91/11
reserve [1] 66/7
resolution [1] 60/22
resolve [1] 96/13
resolved [1] 60/24
respect [3] 15/15 45/1 54/8
respectfully [2] 35/15 35/24
respond [4] 17/23 18/1 33/20 65/11
responded [1] 11/19
responding [3] 24/22 31/8 31/16
responds [1] 42/14
response [21] 8/2 9/14 9/16 9/22 9/23 10/9 11/20 12/5 12/18 12/20 15/12 22/11 24/16 42/6 43/6 56/14 57/14 63/1 64/23 70/23 91/9
responses [2] 19/7 84/19
responsible [1] 15/6
responsive [3] 17/5 24/23 86/5
resulting [1] 29/18
retaliate [1] 55/18
retaliation [1] 53/20
retrieval [1] 10/14
retrieve [2] 17/14 19/5
retrieving [2] 14/22 15/6
reuse [1] 41/7
reused [4] 39/19 39/23 41/10 41/11
revenue [42] 8/15 8/16 8/18 8/19 9/4 9/12 10/19 10/23 15/8 15/21 19/10 19/15 19/17 20/6 21/10 21/12 23/25 24/12 25/23 25/24 26/13 28/1 28/2 29/11 29/11 29/12 29/18

**R**

**revenue...** **[15]** 30/2 30/3 32/23 34/24 35/8 35/11 37/7 37/11 39/9 39/18 40/11 40/14 42/19 42/20 43/5

**revenues [4]** 33/6 33/16 36/21 42/1

**review [2]** 13/4 48/19

**reviewed [1]** 13/4

**reviewers [1]** 22/19

**rewards [2]** 26/2 33/11

**RFA [1]** 64/24

**RFAs [1]** 64/1

**right [66]** 5/19 22/1 25/12 26/22 26/24 29/9 30/9 33/23 36/4 36/20 36/21 37/21 37/22 38/22 39/9 39/20 40/11 42/15 43/7 45/10 45/14 51/22 53/13 53/21 56/4 58/14 58/19 58/20 58/24 60/3 60/13 60/25 61/10 63/2 63/12 63/15 63/19 63/22 64/1 64/2 65/14 65/16 66/7 67/3 67/23 75/13 77/18 77/25 78/1 78/8 80/25 81/9 81/16 85/11 86/24 87/10 87/14 87/23 93/3 94/15 95/8 95/25 96/2 96/13 96/17 96/19

**rights [1]** 51/1

**rise [1]** 95/5

**RMR [3]** 3/2 98/4 98/17

**road [1]** 41/25

**Ross [1]** 1/19

**route [1]** 24/9

**routes [2]** 76/15 77/1

**routinely [1]** 77/13

**RPF [1]** 43/8

**rule [30]** 13/20 14/4 14/18 15/4 18/2 24/19 31/2 31/3

31/12 31/15 31/15 33/21 34/22 47/17 47/24 55/12 55/20 55/22 60/8 65/17 88/13 89/23 90/1 90/6 94/22 94/22 95/24 97/3 97/3 97/4

**ruled [2]** 41/15 88/9

**rules [6]** 14/15 18/16 53/25 54/1 54/4 56/5

**ruling [11]** 4/12 47/4 81/14 85/10 85/22 90/23 93/1 93/5 93/25 94/8 94/15

**rulings [2]** 87/16 96/8

**run [2]** 31/11 38/22

**running [1]** 44/14

**runway [1]** 37/14

**rush [1]** 55/18

**RUTH [1]** 2/1

**S**

**said [20]** 7/14 13/13 19/1 21/4 21/9 22/5 22/9 22/15 48/6 51/3 52/1 54/21 55/19 60/2 60/3 60/20 68/11 68/21 84/4 94/12

**sale [2]** 6/5 15/25

**sales [2]** 9/10 50/25

**same [21]** 9/7 14/5 14/10 22/3 22/4 36/18 37/8 40/1 40/13 40/13 45/24 60/1 66/12 72/24 75/15 77/7 77/22 79/3 80/20 84/22 95/18

**sanctions [2]** 5/23 44/5

**sanctity [1]** 54/17

**satisfy [1]** 49/15

**save [3]** 7/15 7/18 29/10

**savings [4]** 8/12 29/9 29/9 68/25

**say [50]** 10/2 13/16 13/18 13/19 14/16 16/16 18/16 19/14 22/1 26/13 28/7 28/9 28/14 31/20 31/21

40/6 41/13 41/19 42/16 42/21 48/23 51/15 51/19 52/12 52/19 52/25 53/2 54/15 56/13 56/20 57/2 57/11 57/25 58/4 59/8 59/12 59/14 59/14 61/16 70/11 72/4 82/13 82/25 86/17 90/1 92/1 94/2 94/5 94/8 94/12

**saying [15]** 14/8 21/17 22/22 23/15 35/14 39/12 42/25 48/11 52/13 52/19 59/4 64/8 64/18 82/15 89/5

**says [20]** 9/9 10/12 11/3 13/7 14/11 17/14 17/21 19/9 20/10 24/13 29/17 30/1 53/4 53/5 62/1 67/3 79/22 86/4 88/21 94/10

**scheduled [1]** 37/19

**scope [1]** 30/10

**script [3]** 27/14 27/15 31/21

**search [4]** 23/17 23/19 23/22 55/3

**searched [1]** 77/23

**seat [1]** 21/20

**seated [1]** 5/4

**Seattle [5]** 6/15 6/15 16/3 37/20 37/21

**second [9]** 12/20 16/12 26/20 41/16 49/24 50/21 54/18 54/20 87/19

**Section [2]** 8/24 9/8

**see [14]** 11/14 11/19 20/20 28/4 28/6 28/17 56/12 67/17 79/10 80/11 82/25 88/20 88/23 91/21

**seek [2]** 13/3 50/18

**seeking [8]** 6/25 7/7 29/24 50/16 74/7 83/15 89/25 90/23

**seeks [1]** 10/3
**seem [2]** 69/11 83/7
**seems [5]** 5/20 15/20 68/9 77/10 77/12
**seen [9]** 8/7 17/24 33/22 34/17 48/9 79/14 79/17 79/18 80/15
**sell [3]** 15/16 28/5 39/25
**sells [1]** 6/4
**send [2]** 27/5 27/23
**sense [1]** 82/13
**sent [4]** 54/3 54/21 71/13 74/1
**sentence [3]** 9/2 9/15 9/16
**separate [5]** 16/25 20/19 35/5 35/6 35/7
**September [1]** 86/16
**service [4]** 20/18 20/19 20/21 21/2
**services [1]** 76/17
**set [6]** 9/24 52/2 52/7 55/7 92/7 92/11
**setting [3]** 76/14 90/7 94/9
**settlement [1]** 54/8
**seven [4]** 41/12 60/20 60/21 96/9
**Seventeen [1]** 74/3
**several [1]** 13/23
**shall [3]** 9/9 54/4 54/5
**share [1]** 36/18
**she [5]** 11/1 11/3 37/20 91/22 94/10
**She's [1]** 94/11
**sheets [1]** 32/11
**short [2]** 80/22 94/21
**Short-term [1]** 80/22
**should [6]** 12/18 41/23 59/6 70/6 81/19 88/16
**shouldn't [4]** 12/6 53/16 75/1 81/14

**show [10]** 23/13 35/4 42/1 47/15 47/21 66/5 67/3 69/23 73/11 82/3
**showed [3]** 30/5 33/9 37/24
**showing [2]** 58/5 83/10
**shown [1]** 9/15
**shows [8]** 8/6 8/8 9/12 28/22 29/5 29/9 29/12 31/25
**side [1]** 36/19
**signed [2]** 54/2 98/15
**significant [2]** 48/10 79/17
**significantly [1]** 79/14
**similar [1]** 69/19
**similarity [2]** 84/24 85/4
**simple [4]** 6/24 6/24 13/14 49/14
**simply [3]** 16/16 17/10 24/19
**simultaneously [1]** 27/12
**since [6]** 21/16 51/4 51/4 67/5 71/14 93/10
**single [1]** 31/18
**sir [28]** 6/2 26/25 32/10 37/15 38/5 39/10 42/4 45/3 59/25 63/21 63/23 70/22 71/2 71/11 87/12 87/20 87/22 87/24 89/15 89/20 89/21 92/21 93/2 95/4 96/1 96/6 96/16 96/20
**sit [2]** 86/9 89/24
**site [3]** 66/6 66/7 66/11
**sitting [3]** 22/21 23/18 25/2
**six [6]** 11/2 40/2 40/3 41/12 42/10 44/10
**Sixteen [1]** 70/23
**SKIPLAGGED [84]** 1/8 4/9 5/6 5/18 6/3 6/7 7/1 7/8 7/10 7/15 7/18 8/12 9/18

10/3 11/5 11/9 15/22 16/15 16/18 20/6 20/9 20/11 20/15 20/20 21/4 21/6 21/23 22/2 22/8 22/13 23/1 23/6 25/9 27/6 27/12 27/17 27/21 28/10 28/11 29/4 34/11 37/4 38/1 38/17 45/18 50/7 50/17 51/4 51/15 54/13 56/18 56/23 57/6 57/16 57/24 61/22 62/5 62/19 63/3 65/10 66/6 66/16 69/20 71/17 71/23 72/14 73/4 73/9 73/16 76/21 76/21 77/8 78/14 79/9 79/10 79/19 80/5 81/22 84/18 91/21 91/22 91/23 95/9 96/22
**Skiplagged's [12]** 5/24 6/10 16/8 21/7 26/2 29/17 30/1 45/14 78/10 84/13 92/17 96/23
**Skiplagged-specific [1]** 79/19
**Skiplagged.com [1]** 21/16
**Skiplagging [9]** 37/25 68/9 71/14 76/15 78/19 78/19 80/24 83/21 92/16
**SKP81 [1]** 11/4
**SKP81-151 [1]** 11/4
**SLADEK [1]** 2/2
**slip [1]** 61/21
**small [3]** 34/20 34/21 45/25
**smart [1]** 78/15
**smarter [1]** 41/13
**Smith [1]** 68/22
**so [141]**
**software [3]** 17/15 17/23 18/7
**sold [3]** 38/2 40/4 41/4
**solution [1]** 53/22

**S**

solutions [1] 55/1

some [35] 6/22 10/10 13/5 13/9 17/11 17/15 18/6 20/16 22/12 25/9 28/15 36/13 37/2 41/10 41/13 45/19 48/2 48/15 50/6 53/18 58/18 61/20 62/5 62/19 68/8 68/12 70/5 70/6 71/18 71/18 86/20 91/8 91/19 91/25 98/8

somebody [19] 6/10 6/16 23/6 28/6 31/1 40/19 41/12 43/9 67/22 67/24 68/17 72/19 73/6 76/2 76/5 77/12 77/15 80/2 82/1

somehow [4] 31/21 35/21 43/2 57/25

something [17] 10/20 18/7 21/9 25/13 26/5 36/7 36/10 41/21 42/14 43/9 44/22 55/19 61/2 63/22 81/8 83/10 94/21

sometimes [2] 28/5 32/20

somewhere [2] 68/7 71/18

soon [1] 33/14

sorry [8] 44/1 60/25 69/6 69/12 70/25 91/3 93/4 93/12

sort [4] 16/23 20/1 40/20 68/12

sought [1] 10/12

sounds [2] 70/18 70/19

South [1] 68/7

special [2] 23/6 23/13

specific [16] 10/16 23/23 52/16 54/23 54/23 57/12 57/18 57/22 61/2 68/17 68/17 69/1 72/7 74/11 79/19 86/5

specifically [15] 7/14 8/17

11/21 11/21 14/20 19/11 19/16 23/21 37/17 49/2 52/4 53/8 55/14 55/16 66/10

specificity [1] 56/7

specifics [1] 74/10

spend [1] 37/4

spit [5] 25/19 26/2 36/7 38/23 45/12

spits [1] 36/10

spoke [1] 6/12

spot [1] 42/2

spreadsheet [2] 24/18 32/13

stack [1] 72/4

staff [1] 97/17

stand [3] 24/15 47/19 92/1

standing [1] 87/9

stands [1] 85/10

started [1] 54/25

starting [1] 38/21

state [4] 5/7 49/2 75/22 95/13

stated [1] 17/9

statement [6] 20/10 20/20 47/14 86/2 86/25 87/2

states [6] 1/1 1/12 3/2 19/17 68/9 98/14

status [9] 45/23 46/2 46/4 46/9 46/11 46/16 49/20 49/25 52/8

statute [5] 8/22 8/23 8/23 14/17 84/17

statutes [2] 8/21 33/9

stay [1] 47/18

staying [1] 97/17

stenography [1] 3/9

steps [1] 80/22

stick [1] 12/17

still [8] 25/5 28/10 28/11 46/14 76/10 87/5 93/15 93/21

stipulate [1] 50/16

stop [5] 20/24 51/23 53/18 69/14 80/9

stops [1] 78/24

stored [3] 31/4 31/5 31/5

STORM [1] 2/1

straight [4] 67/12 74/23 77/4 77/7

straight-through [2] 67/12 77/4

strategies [3] 76/15 78/18 79/6

straw [3] 9/14 9/25 10/5

stream [1] 30/2

Street [4] 1/16 1/22 3/3 98/20

structure [1] 30/2

stuff [11] 37/5 37/12 38/8 39/12 55/6 81/15 86/13 90/1 93/25 94/4 94/22

styled [1] 3/8

subject [6] 68/12 76/15 77/1 89/8 90/12 96/7

submission [1] 97/4

submit [1] 95/19

submitted [2] 17/21 47/19

subpart [7] 74/10 81/6 94/9 94/13 96/7 96/14 96/14

subparts [9] 60/9 61/7 89/21 90/3 90/7 93/22 94/3 94/19 96/10

substantial [3] 10/10 84/23 85/4

successors [2] 63/6 65/2

such [5] 29/19 56/22 70/12 75/17 76/1

sue [3] 82/14 83/11 83/12

sufficient [2] 19/1 93/10

suggestions [1] 54/7

suing [1] 82/17

**S**

**Suite [4]** 1/16 1/19 1/22 2/3

**suits [1]** 70/12

**sum [2]** 22/10 36/4

**summarize [5]** 10/4 16/23 24/23 46/4 48/6

**summarized [1]** 49/25

**summary [1]** 92/12

**sums [2]** 36/5 43/3

**Sunday [1]** 34/7

**super [1]** 29/5

**supplement [3]** 76/8 86/5 86/20

**supplemented [1]** 75/13

**support [1]** 13/17

**supposed [3]** 56/3 84/5 87/6

**sure [15]** 11/8 11/18 14/1 26/7 41/5 41/17 44/25 45/1 67/14 72/3 77/11 85/25 91/8 91/12 97/12

**suspect [1]** 67/10

**suspected [2]** 78/18 80/7

**suspicion [1]** 71/18

**suspicious [1]** 80/2

**sustain [11]** 67/1 69/5 70/21 73/25 75/24 78/16 80/19 80/24 83/24 88/15 88/16

**sustained [1]** 71/23

**swore [1]** 11/22

**system [2]** 6/13 38/23

**T**

**tab [1]** 16/7

**tabulation [1]** 35/23

**take [24]** 5/22 7/15 12/15 18/9 18/10 25/25 26/20 32/15 41/2 41/22 45/12 46/19 49/14 80/23 85/19 85/19 85/21 86/9 87/23

94/20 94/23 94/24 95/4 96/4

**taken [2]** 66/15 67/22

**takes [6]** 27/16 41/11 63/25 64/8 65/8 65/13

**taking [5]** 9/12 12/4 26/1 33/10 77/1

**talk [18]** 29/15 31/2 31/14 33/10 33/10 33/11 50/2 54/22 55/2 55/2 55/3 55/6 55/16 56/2 56/11 61/15 94/24 94/25

**talked [6]** 31/1 35/6 55/9 57/7 72/24 75/2

**talking [14]** 14/17 24/1 31/5 36/1 36/3 39/11 54/23 55/1 61/6 76/10 88/5 92/25 93/13 93/24

**talks [3]** 14/4 23/4 25/24

**targeted [1]** 69/17

**team [1]** 22/19

**technology [1]** 25/11

**teed [1]** 97/12

**telephone [6]** 1/17 1/20 1/23 2/4 39/3 57/23

**tell [15]** 18/18 25/18 26/11 29/20 34/3 57/17 57/19 65/23 66/3 71/20 76/25 81/11 94/3 94/21 95/23

**telling [2]** 30/6 30/8

**tellingly [1]** 22/22

**tells [2]** 29/3 49/17

**temper [1]** 73/8

**Ten [1]** 72/11

**tendency [1]** 53/17

**term [4]** 70/13 78/19 80/22 80/22

**terms [7]** 6/20 23/19 27/22 48/3 48/4 55/3 64/22

**terribly [2]** 19/4 19/4

**test [1]** 83/17

**testimony [1]** 12/10 **TEXAS [8]** 1/2 1/14 1/17 1/20 3/3 18/18 98/18 98/20

**than [19]** 24/3 25/23 29/21 32/5 35/16 37/4 41/13 42/7 45/8 47/7 47/18 65/7 67/23 69/22 70/7 78/6 79/14 86/15 94/19

**thank [13]** 5/4 5/15 6/2 12/4 20/3 42/4 53/12 63/18 85/9 87/24 97/16 97/17 97/18

**that [503]**

**that's [146]**

**their [100]**

**them [78]** 6/9 10/5 11/13 13/20 18/19 18/25 20/16 23/14 23/15 26/14 27/23 28/11 31/1 33/12 33/13 35/11 36/18 39/17 39/17 39/20 39/23 39/24 39/25 40/3 41/1 41/6 41/7 41/16 41/21 42/2 43/20 44/6 46/8 46/25 47/4 47/17 47/17 47/20 47/24 48/14 49/12 49/18 53/19 54/2 54/3 54/18 55/21 55/23 56/1 56/20 57/9 57/11 57/14 57/17 57/19 57/21 61/12 65/18 65/19 65/20 65/24 66/20 71/21 72/21 74/14 74/15 75/4 76/23 84/10 88/19 88/20 89/10 90/17 92/11 92/12 95/1 95/3 95/3

**theme [1]** 7/6

**themselves [1]** 73/7

**then [71]** 5/23 7/20 10/2 10/23 13/18 14/4 15/5 15/12 16/8 16/17 18/11 23/22 25/18 27/18 29/7

**then...** **[56]** 29/8 29/11 31/21 32/16 33/5 33/15 35/12 35/12 37/1 37/10 40/7 41/2 41/10 42/16 43/16 45/14 46/16 47/5 47/12 47/24 55/6 55/15 55/21 55/22 58/9 59/14 61/16 62/12 62/21 63/25 64/9 64/24 65/17 65/24 66/3 66/8 74/2 75/4 75/13 76/8 81/14 82/25 83/7 85/11 87/15 90/1 90/5 90/5 90/12 91/21 92/19 93/9 93/19 94/4 94/11 95/22

**there** **[45]** 8/7 8/11 10/6 10/17 14/7 16/3 16/12 17/2 17/17 21/12 22/23 26/18 26/23 27/2 28/15 35/12 36/15 37/14 41/12 46/14 48/14 50/25 59/19 63/2 67/13 68/2 68/13 69/15 70/1 70/11 73/5 76/3 82/2 83/3 83/13 86/9 88/14 89/9 89/12 89/19 90/21 92/16 93/1 95/18 96/10

**there's** **[23]** 8/1 8/5 8/14 12/7 16/17 18/12 18/22 30/13 39/19 39/25 43/8 49/6 52/13 68/6 72/4 78/13 84/20 85/6 86/2 89/2 89/3 89/9 90/3

**these** **[37]** 11/4 22/24 22/25 23/12 23/15 23/17 24/6 25/1 28/13 28/21 32/4 40/14 46/20 47/1 47/4 47/8 47/9 47/21 48/11 48/16 49/2 50/19 51/1 51/20 51/25 52/25 53/18 55/3 61/24 75/14 88/3 88/13 89/24 91/24

**they** **[251]**

**they'll** **[1]** 67/10

**they're** **[61]** 9/20 9/21 9/23 15/23 16/5 16/20 21/13 22/10 23/17 24/17 25/10 28/14 30/6 30/6 30/8 36/20 39/23 40/9 40/10 40/25 41/19 42/15 42/19 47/12 47/14 48/1 49/2 50/5 50/8 50/18 50/22 51/15 51/22 52/14 52/19 56/3 56/10 56/24 57/9 57/12 59/3 59/4 59/10 67/19 68/14 71/8 74/6 74/18 74/19 77/16 80/10 80/15 82/17 86/3 87/6 89/5 89/5 92/3 92/7 92/14 92/14

**they've** **[38]** 17/11 19/3 28/22 29/1 29/2 29/2 32/1 36/14 40/8 40/16 41/15 45/11 49/9 51/11 51/12 52/22 53/5 57/25 58/21 59/2 67/8 69/10 69/12 69/19 73/1 73/1 75/2 77/4 79/1 79/7 79/19 81/11 81/12 82/18 82/20 85/1 87/25 91/20

**thing** **[8]** 22/3 26/25 34/6 40/20 41/25 43/10 44/8 80/21

**things** **[11]** 13/7 21/20 28/13 53/18 54/10 54/19 55/4 66/10 66/24 69/10 80/6

**think** **[59]** 17/2 17/8 17/13 17/17 18/1 18/8 18/11 21/22 22/22 23/13 24/15 27/12 28/16 34/17 36/20 37/6 40/12 40/21 42/19 42/21 43/20 44/19 44/24

94/25 95/22 95/23 96/13 96/17 96/18 96/19 60/13 61/2 64/17 65/10 66/9 67/19 69/21 69/23 70/9 70/9 70/19 70/20 72/23 74/22 75/14 75/19 76/2 80/18 82/21 83/14 83/18 83/22 86/11 86/17 87/5 88/2 88/16 88/18 91/25 93/13 93/23 97/14

46/5 46/15 48/13 60/2 60/13 61/2 64/17 65/10

**thinking** **[1]** 71/9

**third** **[3]** 23/10 71/13 71/16

**third-party** **[1]** 23/10

**Thirteen** **[1]** 67/3

**this** **[146]**

**THORNTON** **[1]** 2/2

**those** **[66]** 6/5 6/25 7/6 9/5 12/11 12/14 12/18 15/17 17/5 17/6 17/7 22/20 23/2 23/5 25/9 32/4 32/8 35/17 38/12 38/22 41/15 43/3 43/9 45/24 46/17 46/19 46/25 47/14 47/15 48/4 49/5 49/10 49/17 49/20 49/22 50/3 50/13 50/20 51/21 51/24 52/22 55/5 56/4 63/16 64/25 65/10 66/23 66/24 68/15 70/20 73/17 75/7 78/20 80/6 82/16 83/20 84/18 84/19 84/20 85/6 86/1 87/10 88/17 88/25 95/19 98/13

**though** **[11]** 11/3 18/25 20/14 22/22 35/3 35/10 35/18 58/3 58/14 78/7 83/9

**thought** **[6]** 44/17 44/23 60/13 70/6 88/25 89/18

**three** **[25]** 7/6 10/24 11/10 11/11 12/7 16/24 18/10 19/10 22/24 32/4 32/4

# T

three... **[14]** 32/8 32/11 40/2 40/2 40/3 45/17 46/11 48/7 48/14 56/4 82/3 85/16 85/20 86/15
through **[63]** 9/15 19/21 20/6 20/11 21/15 28/10 38/14 38/14 41/11 45/23 46/4 46/10 47/8 47/15 47/17 47/18 47/20 49/21 50/8 50/11 50/12 50/12 52/7 53/21 55/8 55/8 55/24 60/6 60/18 61/12 63/25 63/25 64/3 64/4 64/9 64/9 65/18 65/24 66/1 67/12 73/16 74/11 77/4 77/7 78/7 85/11 85/13 85/13 85/17 85/23 86/3 86/10 86/18 87/5 87/14 88/7 88/9 88/20 89/5 91/22 95/3 95/3 95/22
throughout **[1]** 22/17
throw **[1]** 66/23
thumb **[1]** 32/12
ticket **[39]** 6/13 6/14 6/16 6/17 7/8 16/14 20/8 20/15 20/22 20/23 21/1 22/6 28/5 28/10 28/23 29/4 29/7 32/25 39/4 39/5 39/6 39/8 41/4 49/15 57/6 57/24 67/12 68/12 68/12 68/24 70/17 71/17 71/19 77/19 77/22 78/24 91/21 91/22 91/22
ticketing **[10]** 6/11 68/23 73/4 73/10 76/16 77/2 80/24 84/6 84/21 85/8
tickets **[17]** 6/4 6/5 6/25 15/16 15/17 15/25 22/17 24/6 28/6 38/1 38/17 40/1 59/1 73/13 79/10 79/20

91/15
tie **[1]** 42/12
time **[32]** 5/22 6/10 14/14 19/4 19/25 21/18 21/20 24/8 26/13 36/18 37/8 37/13 38/7 42/23 56/22 57/2 60/1 60/13 63/17 64/18 66/5 67/13 67/25 68/2 73/2 76/9 86/12 93/22 94/8 95/18 95/20 97/16
times **[8]** 19/10 28/24 28/25 57/1 58/22 79/8 80/1 91/14
TOBIN **[3]** 2/2 2/2 5/17
TOBOLOSKY **[2]** 1/18 5/13
today **[16]** 5/10 6/23 19/8 23/25 25/4 33/22 34/22 43/24 72/14 79/8 90/24 91/13 94/16 94/18 96/5 96/8
together **[3]** 37/5 46/17 46/22
told **[8]** 11/13 18/19 18/25 22/11 24/14 44/16 46/12 49/9
tomorrow **[1]** 97/11
tons **[1]** 17/12
too **[10]** 19/24 36/15 42/22 44/13 55/21 74/6 74/7 74/19 85/15 94/21
took **[6]** 7/13 8/20 19/24 46/25 68/17 80/23
top **[3]** 26/16 28/18 75/8
tortious **[3]** 48/23 52/2 52/15
tortiously **[3]** 52/5 52/25 53/9
total **[2]** 35/19 75/19
towards **[2]** 53/22 69/21
town **[1]** 34/6
trademark **[13]** 6/21 8/22

9/7 10/22 28/24 50/1 70/13 82/21 82/23 84/8 84/9 84/10 84/17
trademarks **[3]** 6/8 72/15 82/11
transcribed **[1]** 98/10
transcript **[3]** 1/11 98/5 98/12
translate **[1]** 31/16
translation **[1]** 31/8
trap **[2]** 92/7 92/10
TRAURIG **[2]** 1/19 5/13
travel **[5]** 16/13 16/14 22/7 71/18 76/24
tremendous **[1]** 19/9
trial **[2]** 22/20 86/16
tried **[8]** 23/11 24/13 24/25 24/25 54/22 55/8 79/10 79/12
trip **[4]** 16/3 28/8 43/15 45/5
troublesome **[1]** 43/1
true **[7]** 10/5 10/15 10/25 11/6 30/18 30/20 98/5
truly **[2]** 80/11 80/12
try **[7]** 11/25 12/15 17/15 18/10 18/19 36/17 80/9
trying **[27]** 9/23 11/13 11/24 18/12 19/2 23/6 24/4 38/4 38/6 38/11 39/13 40/15 41/17 41/24 42/18 44/6 59/3 69/10 69/12 79/18 80/15 92/5 92/7 92/11 92/12 92/14 92/15
Tuesday **[1]** 34/5
turn **[4]** 15/12 19/25 59/3 87/21
turned **[1]** 54/25
tweak **[1]** 80/14
Twenty **[2]** 64/10 82/3
Twenty-nine **[1]** 64/10

**T**

**Twenty-three [1]** 82/3
**two [19]** 8/21 10/4 10/9 11/21 11/23 17/5 18/24 19/10 34/25 35/1 40/1 40/2 40/2 64/3 81/18 87/1 87/17 87/24 89/8
**TX [2]** 1/23 2/3
**type [6]** 17/19 23/19 24/7 32/19 38/8 79/3
**types [2]** 6/10 49/22

**U**

**U.S [1]** 65/2
**Uh [1]** 16/10
**Uh-huh [1]** 16/10
**unascertainable [1]** 18/11
**unbelievable [1]** 70/2
**uncertainties [1]** 30/2
**unconscionable [3]** 53/24 53/24 54/19
**under [7]** 10/21 10/22 24/19 49/7 51/11 55/14 75/14
**underlying [3]** 49/12 50/22 51/2
**understand [12]** 19/8 20/1 36/17 39/9 50/13 52/12 54/19 61/14 63/18 77/21 83/14 84/4
**understanding [2]** 37/13 44/21
**understood [1]** 94/7
**unfair [1]** 59/7
**unfortunate [1]** 13/19
**unfortunately [2]** 25/2 34/5
**unintentionally [1]** 71/19
**Union [1]** 70/6
**unique [2]** 6/12 73/4
**UNITED [5]** 1/1 1/12 3/2 68/9 98/14

**unless [5]** 13/10 43/8 63/22 85/13 87/20
**unorganized [2]** 17/10 25/15
**unprocessed [1]** 17/10
**unreasonable [1]** 50/25
**until [4]** 19/8 25/16 49/10 90/17
**Unvarnished [1]** 17/10
**up [31]** 5/22 9/24 14/9 14/10 19/24 23/16 25/20 35/12 35/22 36/4 37/7 39/4 40/7 40/18 40/19 41/3 43/2 53/12 55/7 62/10 63/25 64/8 66/11 75/20 79/8 85/19 85/19 85/21 91/4 96/4 97/12
**us [53]** 11/2 15/2 16/6 18/24 19/13 29/2 30/11 33/12 34/3 38/1 40/5 40/25 41/1 45/24 46/10 49/9 49/17 49/22 50/13 51/13 51/14 53/20 54/3 54/21 54/21 55/9 55/18 55/25 57/5 57/8 57/8 57/25 58/1 59/3 59/11 61/15 80/10 80/14 80/17 81/11 84/17 85/11 86/12 87/6 87/7 87/20 90/17 91/14 92/7 92/9 92/13 97/1 97/6
**usable [3]** 31/8 31/13 31/17
**usage [2]** 66/7 66/11
**USCA [2]** 8/24 9/8
**use [9]** 6/20 20/18 56/18 56/21 62/5 62/19 67/19 84/13 94/11
**used [7]** 24/22 26/2 28/24 28/25 75/11 79/1 92/6
**useful [1]** 28/16
**user [1]** 56/22

**uses [2]** 6/7 56/24
**using [2]** 56/24 72/15

**V**

**vacuum [1]** 56/12
**vague [16]** 46/24 47/10 48/12 61/3 61/5 61/5 61/10 63/15 63/16 64/12 64/22 66/2 80/25 86/9 87/25 89/2
**vagueness [5]** 61/7 63/20 65/9 81/3 88/22
**value [6]** 82/14 82/22 82/22 82/25 83/7 83/10
**values [1]** 82/10
**various [1]** 47/8
**version [1]** 26/21
**very [19]** 6/23 6/24 9/15 9/16 13/14 15/12 16/22 19/4 19/5 19/17 23/3 28/2 35/6 37/17 54/10 69/19 75/8 83/7 90/20
**via [1]** 98/9
**videoconferencing [1]** 98/10
**view [2]** 17/2 17/22
**views [1]** 54/7
**violate [1]** 54/17
**violated [2]** 53/25 56/5
**violates [1]** 6/19
**violating [2]** 72/14 72/15
**violation [1]** 54/12
**violations [1]** 51/20
**virtually [3]** 14/5 27/12 61/13
**VOLUME [1]** 1/11

**W**

**wait [5]** 35/18 75/1 75/5 87/19 87/21
**waive [1]** 81/7
**waived [2]** 41/15 71/7
**waiver [4]** 66/14 66/22

# W

**waiver...** **[2]** 82/8 82/9

**walk [6]** 47/15 47/17 47/18 47/20 65/18 65/24

**walked [1]** 43/18

**Wallace [2]** 54/2 54/3

**want [75]** 10/5 10/20 13/15 15/7 15/17 16/4 16/14 17/8 18/9 19/3 19/6 19/25 20/7 21/9 23/3 23/22 26/13 26/25 28/9 28/9 32/5 32/22 33/6 33/9 33/10 33/11 34/4 34/13 34/13 34/15 35/9 36/12 36/17 39/12 40/24 42/6 44/7 44/11 45/4 47/17 47/20 48/1 48/6 48/14 53/5 54/18 55/20 55/21 56/9 56/11 56/11 56/12 57/2 57/5 57/22 61/15 70/5 77/2 77/5 79/10 80/17 85/19 85/21 88/13 89/9 89/25 90/5 90/17 91/6 91/8 94/14 94/24 94/24 94/25 95/13

**wanted [8]** 11/14 12/10 12/11 16/20 19/10 19/25 20/5 46/19

**wants [4]** 19/15 35/1 43/9 80/13

**warnings [1]** 28/7

**was [48]** 3/8 7/21 8/11 8/13 11/16 12/8 14/7 14/8 17/5 18/2 21/22 23/6 23/11 26/2 26/12 26/15 28/24 28/25 31/11 32/25 37/19 39/4 40/17 42/8 42/9 43/18 44/18 46/11 46/12 50/25 51/5 54/11 54/12 54/15 60/13 62/4 66/16 67/13 68/2 68/12 68/20 68/22 68/24 75/10

85/17 87/22 87/24 95/6

**wasn't [1]** 19/7

**way [31]** 15/25 16/12 17/14 22/5 27/9 28/21 34/8 35/15 37/3 37/3 38/17 42/24 46/8 47/7 50/5 57/8 59/5 59/6 61/11 64/15 65/5 69/20 72/4 74/7 78/11 78/12 79/23 83/8 85/19 87/3 87/4

**ways [1]** 15/24

**we [296]**

**we'd [1]** 18/25

**we'll [4]** 42/16 45/10 65/7 86/11

**we're [61]** 5/22 5/23 7/3 7/7 9/13 10/17 10/18 10/23 13/8 15/7 17/8 19/2 21/10 22/20 22/21 25/3 25/5 27/23 28/19 29/10 29/12 29/24 30/15 31/4 31/20 33/13 35/14 36/1 36/3 38/24 39/2 41/17 44/6 44/6 47/3 47/5 47/12 47/19 49/9 50/16 51/7 51/16 55/6 59/2 59/4 68/25 70/2 72/21 73/12 73/15 74/16 81/10 83/15 86/12 86/15 86/17 91/6 92/2 93/23 94/9 95/2

**we've [51]** 6/22 8/7 8/21 8/22 9/21 9/24 13/23 14/5 18/24 22/18 23/12 23/24 24/25 25/4 26/13 28/13 28/15 28/18 30/11 31/25 32/2 32/3 32/23 33/22 36/22 44/2 46/2 47/6 47/19 50/10 51/2 51/22 53/15 58/22 61/23 66/14 71/5 75/2 79/17 79/18 80/14 81/6 84/10 85/22 88/23 89/21 90/2 91/13

93/15 93/23 94/23

**wears [1]** 64/20

**website [9]** 6/4 6/10 16/1 16/8 22/6 22/7 56/24 56/25 58/22

**Wednesday [3]** 42/6 43/5 95/17

**week [4]** 34/4 34/16 34/16 68/3

**welcome [1]** 5/19

**well [57]** 5/11 5/19 7/10 14/16 15/4 15/23 23/9 26/22 28/10 29/9 32/3 34/21 35/3 35/24 38/19 40/12 41/14 43/25 45/10 46/15 49/9 49/11 50/2 52/19 55/20 57/7 58/13 60/20 61/9 61/18 62/10 65/9 66/17 69/20 71/5 72/3 72/8 76/16 76/20 79/7 80/18 81/10 81/14 81/17 82/1 82/21 83/2 83/11 83/25 84/4 85/15 86/10 87/3 88/12 88/16 92/19 94/5

**well-founded [1]** 46/15

**went [4]** 35/20 77/23 85/16 89/5

**were [41]** 5/20 12/12 20/9 20/19 22/4 23/5 23/13 23/15 24/14 34/23 38/17 42/1 45/17 46/14 46/15 46/24 48/8 48/22 48/23 50/15 50/23 52/11 52/12 52/16 52/21 52/25 53/22 60/2 60/19 61/6 62/12 62/18 66/12 67/17 73/9 74/1 88/25 89/18 94/12 95/10 98/10

**weren't [2]** 11/12 11/12

**West [2]** 65/3 65/3

# W

**what [192]**

**what's [13]** 18/19 23/18
25/2 27/24 33/2 47/1
56/12 70/13 70/23 72/19
74/5 79/5 81/5

**whatever [12]** 8/13 16/7
16/16 18/12 20/25 30/7
42/2 43/17 44/16 54/25
78/20 90/5

**whatsoever [1]** 51/14

**when [54]** 7/12 14/17
14/20 14/22 21/25 21/25
22/1 23/11 23/16 23/24
24/1 26/13 27/6 28/13
28/20 30/6 32/5 34/6
48/2 48/13 50/18 51/19
57/12 58/1 59/14 62/21
64/21 75/2 77/7 78/23
79/9 79/9 79/22 81/20
81/21 83/23 84/20 84/24
85/5 86/5 86/7 86/8
86/10 86/12 86/20 86/21
87/5 88/3 88/19 89/10
90/18 92/1 92/9 94/10

**whenever [1]** 34/3

**where [24]** 6/12 16/18
25/4 25/4 25/12 32/7
36/6 37/11 37/12 41/24
46/4 46/14 46/17 46/23
47/13 60/16 60/19 68/10
72/5 79/19 80/11 80/12
80/15 91/18

**where's [1]** 49/15

**wherever [1]** 78/8

**whether [14]** 18/15 18/16
26/1 29/3 32/24 40/13
40/14 47/9 50/24 50/24
66/20 68/2 73/8 95/18

**which [47]** 6/13 9/25 10/6
15/25 16/15 17/11 18/5
19/16 20/19 21/18 21/23
22/18 23/4 24/21 31/6
38/16 40/3 40/5 40/6
46/12 46/15 46/15 48/18
49/25 52/3 52/4 52/12
52/15 52/16 52/18 54/2
56/7 62/24 65/16 70/11
76/25 81/7 81/11 87/15
88/5 89/3 89/4 89/22 91/1
91/15 93/17 93/22

**whichever [1]** 40/14

**while [3]** 45/12 91/6 94/23

**who [24]** 5/12 15/13 16/5
22/17 57/5 58/10 59/1
62/22 68/17 70/6 73/15
73/17 74/8 75/6 75/7
75/16 75/17 75/25 76/2
76/6 77/12 77/16 83/3
84/9

**whoever [2]** 27/19 27/19

**whole [5]** 36/25 41/5
44/17 57/4 63/7

**whose [1]** 37/1

**why [26]** 14/3 19/14 24/4
29/15 33/24 35/19 37/13
40/22 44/11 47/21 53/16
55/16 55/25 55/25 61/2
61/3 77/5 77/6 77/8 77/11
78/12 78/14 82/14 83/14
89/16 89/17

**will [47]** 5/25 18/1 18/13
18/18 20/12 26/20 28/24
29/15 34/5 35/2 36/8
36/17 37/7 42/17 43/5
43/16 44/16 45/2 47/20
51/23 55/4 60/7 62/15
65/12 68/18 70/11 74/2
76/2 83/24 86/5 86/6
86/7 86/8 86/19 87/23
89/10 89/23 89/24 90/6
92/9 92/22 93/17 95/23
96/13 97/4 97/11 97/18

**WILLIAM [1]** 1/21

**WILLIAMS [4]** 3/2 98/4
98/17 98/17

**window [2]** 27/13 27/13

**wise [1]** 97/14

**wish [1]** 15/19

**withdraw [6]** 46/21 87/7
89/4 89/6 89/7 90/12

**withdrawing [3]** 46/5
94/10 94/12

**withdrawn [5]** 45/25 47/5
88/25 90/4 93/7

**withdrew [8]** 45/24 61/5
86/23 86/25 87/1 90/9
90/14 90/15

**withholding [4]** 9/19 9/20
9/21 22/21

**within [2]** 21/7 44/24

**without [12]** 13/17 47/25
51/24 52/24 53/9 83/4
83/4 83/22 90/6 92/10
92/11 92/12

**witnesses [3]** 86/4 86/11
86/19

**won't [5]** 29/1 53/21 55/6
67/16 92/6

**wondering [1]** 36/5

**Word [1]** 4/14

**worded [1]** 65/6

**words [1]** 66/23

**work [11]** 18/13 24/4 35/4
59/6 80/14 86/3 93/16
94/20 95/2 95/3 97/1

**worked [1]** 81/8

**working [4]** 49/9 53/22
86/18 86/18

**works [4]** 5/12 16/21 77/21
78/9

**world [6]** 16/18 63/10 64/6
68/7 68/16 70/5

**Worse [1]** 11/17

**WORTH [8]** 1/3 1/6 1/17
1/23 3/3 16/2 98/19 98/20

## W

worthwhile [1] 83/12
would [47] 5/7 12/23 13/2
13/8 13/9 13/24 18/19
19/14 20/10 20/20 23/1
23/5 24/18 25/20 27/9
33/4 34/16 35/10 41/13
44/13 44/22 44/22 45/21
46/7 46/10 48/1 48/2
50/17 62/3 64/18 64/19
67/22 67/24 67/25 68/3
68/23 69/23 73/10 79/20
83/25 86/14 86/20 91/1
93/9 96/25 97/6 97/7
wouldn't [1] 23/2
wrapper [1] 84/11
wrapping [1] 42/23
write [12] 17/15 17/23
23/8 23/21 25/16 25/21
27/14 27/15 30/16 36/25
43/21 44/9
writing [2] 31/21 35/9
wrong [3] 13/13 13/21
13/22

## Y

y'all [3] 38/22 64/6 94/24
yeah [11] 32/14 44/4
61/11 62/17 65/21 65/23
73/24 77/22 78/16 79/22
93/15
year [6] 26/19 34/24 35/1
40/1 62/5 63/24
years [4] 69/8 72/9 72/12
83/20
yes [34] 6/2 7/17 7/23
26/25 29/6 32/10 37/15
38/5 39/10 41/19 42/4
45/3 59/25 63/21 65/15
70/22 71/2 71/11 81/1 81/4
87/12 87/20 87/22 89/15
89/21 91/10 92/21 95/4
95/12 95/15 96/1 96/6
96/16 96/18
yesterday [1] 5/20
yet [2] 11/17 37/4
yield [1] 43/3
York [9] 34/12 43/15 45/5
77/20 78/22 78/23 78/24
78/25 79/23
York for [1] 34/12
you [333]
you'd [3] 15/19 64/13
64/13
you'll [2] 60/2 92/19
you're [23] 13/10 14/21
23/22 25/18 27/7 27/8
34/8 34/9 35/21 39/12
41/18 43/20 44/10 52/13
75/19 78/23 82/15 82/15
83/10 87/20 88/19 93/13
94/3
you've [20] 8/7 12/7 18/21
25/8 36/5 38/11 39/14
41/15 41/22 42/24 43/2
51/16 61/9 68/11 71/13
72/4 72/5 88/14 90/4
90/22
you-all [9] 39/15 40/21
81/8 81/15 90/1 93/25
94/17 94/23 95/2
you-all's [1] 42/2
your [78] 5/9 6/9 6/19
14/23 15/11 17/3 17/18
21/5 22/19 23/19 23/19
24/16 25/4 26/16 26/21
27/8 27/10 28/8 34/15
35/4 35/14 38/23 40/21
43/6 44/24 47/16 47/16
49/13 49/24 53/17 58/4
58/12 59/5 60/8 63/18
64/2 66/6 66/9 66/18
66/19 67/7 69/9 70/23
70/24 70/25 72/23 73/19

74/3 74/5 74/22 76/2
76/9 76/14 76/16 76/17
77/15 78/17 79/7 82/7
85/15 86/14 87/9 87/21
87/23 88/24 91/2 91/10
91/13 92/19 94/11 94/13
94/18 96/8 97/6 97/7
97/10 97/16 97/17

## Z

ZACH [2] 1/18 5/13
Zaman [6] 10/12 12/21
23/3 24/1 25/23 80/13
Zaman's [4] 8/3 12/6
24/12 33/3
zero [1] 29/6
ZOIE [4] 3/2 98/4 98/17
98/17
zwilliams.rmr [2] 3/4
98/21