IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court are the Motion to Compel and for Sanctions ("AA's Motion") and brief and appendix in support filed by Plaintiff American Airlines, Inc. ("AA") (ECF Nos. 74-76); the Parties' Joint Status Report (ECF No. 92); the Response and appendix in support filed by Defendant Skiplagged, Inc. ("Skiplagged") (ECF No. 90-91); AA's Bench Brief (ECF No. 116); and Skiplagged's Response (ECF No. 113). United States District Judge Mark T. Pittman referred the Motion to the undersigned for review, hearing, and disposition. *See* (ECF No. 77). The Court held a hearing on the matter on April 17, 2024. After considering the pleadings, status reports, and applicable legal authorities, and for the reasons stated in this Order, the Court **GRANTS** AA's Motion (ECF No. 74) **in part**.

**II.    BAKCKGROUND**

AA's Motion is only concerned with AA's Request for Production Nos. 4 and 5 and Interrogatory No. 8. ECF No. 74. This discovery dispute dates to December 2023. *See* ECF Nos. 38-40. The Court previously overruled Skiplagged's objections to Interrogatory No. 8 and ordered Skiplagged to respond completely and fully to the interrogatory. ECF No. 53 at 1. The Court also overruled in part and sustained in part Skiplagged's objections to RFP Nos. 4-5 and ordered it to provide "all responsive documents in its possession and control pertinent to [these RFPs] except

with regards to Skiplagged's customer's social security numbers or credit card numbers." *Id.* at 3.

AA argues that Skiplagged did not comply with these orders. ECF No. 74.

### III.     ANALYSIS

    **A.     Skiplagged's answer to Interrogatory No. 8 was insufficient.**

Interrogatory No. 8 and Skiplagged's answer are as follows:

> **INTERROGATORY NO. 8:** Identify all instances in which a person has booked, ticketed or purchased a ticket on an American-marketed flight through or facilitated by Skiplagged.com, including by providing, without limitation, the purchasers' name/identity, location, all PNR Data, any other personal identifying information, flight/itinerary information, reservation numbers, amounts paid by the customer, dates of purchase, and dates of travel.
>
> **RESPONSE:** In response to this interrogatory and pursuant to Judge Ray's Order, Skiplagged states that while it has information regarding the number of bookings facilitated through its "Book Now" feature, the number of bookings facilitated by redirecting users to online travel agencies is unknown. Thus, the number of instances in which Skiplagged facilitated the booking of an American flight from August 1, 2018, to August 17, 2023 and according to Google Analytics is 1,376,927. *Because of the magnitude of the information requested, pursuant to Fed. R. Civ. P. 33(d), Skiplagged refers Plaintiff to documents being produced by Skiplagged that reflect responsive information.*

ECF No. 76 at 59 (emphasis added). AA asserts that this answer does not comply with Federal Rule of Civil Procedure 33(d). ECF No. 75 at 8. Skiplagged responds that documents containing the requested information are "present throughout the majority of the produced documents, and Interrogatory No. 8 would require significant time, money, and effort for Skiplagged to compile and list." ECF No. 90 at 9.

Under Rule 33(d), a responding party may answer an interrogatory by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Skiplagged has "produced approximately 111,100 pages of documents." ECF No. 90 at 4. The Court finds that as written, Skiplagged's answer does not enable AA to locate and identify documents responsive to Interrogatory No. 8 "as

readily" as Skiplagged could. Fed. R. Civ. P. 33(d)(1). Skiplagged's answer would only suffice if every document it produced was responsive to Interrogatory No. 8, not just "the majority." Indeed, in its Response, Skiplagged demonstrated its ability to specify the relevant documents by identifying the "customer complaint emails from customers who booked AA flight tickets" as an example of a category of the produced documents responsive to Interrogatory No. 8. ECF No. 90 at 9. Accordingly, Skiplagged **SHALL** specify which records and documents AA must review to obtain the information responsive to Interrogatory No. 8. This specification must be more complete and robust than simply saying, in essence, "there's the haystack, and the needle you're looking for is in there somewhere."

    **B.**    **Skiplagged must produce the responsive information in its database.**

The RFPs at issue and contested answers provide as follows:

**REQUEST FOR PRODUCTION NO. 4:** All documents and communications relating to all American Bookings made and/or purchased by any customers on, through or facilitated by Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees).

**RESPONSE:** Objection. This request is unnecessarily and unreasonably overbroad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request further seeks information (PNR Data and any other personal identifying information) that is proprietary, confidential, private, personal, and not subject to public disclosure. *See* Zaman Declaration, which is found in the Appendix to Skiplagged's Response in Opposition to Plaintiff's Motion to Compel [Ex. 2 to Dkt. 48].

    In response to this Request, Skiplagged states that [it] does not "book" airfares as such. Skiplagged also does not purchase or sell American tickets to anyone and does not claim that it is an agent of American or any other airline. Instead, Skiplagged facilitates booking of flights by providing information to users of Skiplagged.com to find information about airfares, air travel, and online

3

offerings so that they may book fares or tickets with travel resources. Pursuant to Judge Ray's December 19, 2023 Order, Skiplagged is producing responsive documents located after a reasonable search except redacting social security numbers or credit card numbers.

**REQUEST FOR PRODUCTION NO. 5:** All documents and communications relating to show all American Bookings made and/or purchased on or through any other travel websites by any customers who were re-directed to such travel websites by or through Skiplagged.com since August 1, 2018, including, for each booking, all PNR Data and any other personal identifying information for each passenger, all reservation and itinerary details, the amount charged to the customer for the American ticket, and the amounts of any additional fees or costs charged to the customer broken down by service or fee (e.g., service fees, baggage fees, or other fees), if available.

**RESPONSE:** Objection. This request is unnecessarily and unreasonably overbroad, considering the proportional needs of the case. This Request is also oppressive, burdensome, and presents an unreasonable burden upon Skiplagged to search out, find, and produce such information in assessing the proportional needs of the case as respects the issues raised in the case. This Request also seeks information that is proprietary, confidential, private, personal, and not subject to public disclosure. *See* Zaman Declaration, which is found in the Appendix to Skiplagged's Response in Opposition to Plaintiff's Motion to Compel [Ex. 2 to Dkt. 48].

Pursuant to Judge Ray's December 19, 2023 Order, Skiplagged is producing responsive documents in its possession and control located after a reasonable search except redacting social security numbers or credit card numbers.

ECF No. 76 at 40-41.

Skiplagged maintains that it produced all documents in its possession responsive to Interrogatory No. 8 and RFP Nos. 4 and 5. ECF No. 90 at 9. But AA argues that Skiplagged is improperly withholding responsive information. ECF No. 74. Specifically, AA seeks Skiplagged's profit data for each individual passenger who booked an AA flight through Skiplagged. However, Skiplagged "does not store this data in such a format." ECF No. 91 at 4. The parties do not dispute that the data sought exists and is in Skiplagged's possession. ECF No. 76 at 68-69. But the data is in "its most basic form, not organized or processed," and it "is inaccessible without writing specific software code that creates a search program." ECF No. 91 at 3. Skiplagged would have to write

4

this code to "extract data from multiple third-party platforms, cross reference the information, and then, since this process has never been done before, audit the compiled information to make sure it is correct." *Id.* at 3-4.

1. <u>AA's discovery requests do not call for document creation.</u>

Skiplagged argues that AA's discovery requests go beyond mere data retrieval and call for document creation. ECF No. 113 at 2. Federal Rule of Civil Procedure 34(a) allows for the discovery of "any . . . electronically stored information—including . . . data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Rule 34 discovery requests must be "within the scope of Rule 26(b)[.]" *Id.* Further, "a party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016) (citing *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *14 (D. Colo. Feb. 8, 2010) (collecting cases)). "Simply running a search through a database, however, is not the same as 'creating new documents.'" *Architectural Granite & Marble, LLC v. Pental*, No. 3:20-CV-295-L-BK, 2022 WL 1090262 (N.D. Tex. Apr. 11, 2022). Thus, the issue is whether AA's Motion asks the court to compel Skiplagged to create a new document.

AA argues that it does not, and it primarily relies on two cases in support. ECF No. 116 at 2-3. First, in *Steward v. Smith*, the court compelled the defendants to produce responsive documents found across multiple complex databases. No. CV SA-10-CA-1025-OG, 2018 WL 11361752, at *2 (W.D. Tex. July 24, 2018). Skiplagged responds that *Smith* is distinguishable because the database there was searchable, but Skiplagged's currently is not. ECF No. 113 at 2.

5

Next, in *Humphrey v. LeBlanc*, the court compelled discovery though (1) the defendant "did not create or compile, in the form requested, [the information at issue] as a matter of ordinary course"; and (2) the request required "code searches . . .[,] cross check[ing] enormous amounts of data, manually fill[ing] data in to the columns requested by [the] plaintiff, and creat[ing] a spreadsheet." No. CV 20-233-JWD-SDJ, 2021 WL 3560842, at *2 (M.D. La. Aug. 11, 2021) (internal quotation marks and citation omitted). The court further held that "simply searching a database and providing the results therefrom does not require creation of a new document beyond the scope of Rule 34." *Id.* at *3 (collecting cases). The defendant did "not have to [do] anything other than provide the information requested in a usable form with the information properly identified." *Id.* (footnote omitted). Skiplagged distinguishes *Humphrey* because the responding party there was "not creating any new data[,]" instead it was "pulling data from different places in [the database] and assembling it into one document." *Id.* at *3; ECF No. 113 at 3. Skiplagged asserts that AA's Motion would require it to "create software, *analyze* reports from that software[,] and create new documents based on that analysis." ECF No. 113 at 3 (emphasis in original). Skiplagged also argues that AA's Motion goes too far because Skiplagged does not keep reports reflecting the data AA seeks in the ordinary course of business. *Id.* at 4 (citing *TIGI Linea Corp. v. Pro. Prod. Grp., LLC*, No. 419CV00840RWSKPJ, 2021 WL 1947341, at *6 (E.D. Tex. May 14, 2021) (compelling discovery of sales information maintained in a database).

But the searchability of a database is irrelevant for purposes of Rule 34. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (denying Google's motion to quash government subpoena which required production of information from databases, though it required Google to create "new code to format and extract query and URL data from many computer banks" where the government agreed to compensate Google for the reasonable costs of production).

6

Indeed, Rule 34(a) is bound only by the strictures of Rule 26(b) and the rule against data creation. The responding party bears the burden of translating existing data, like the data at issue, into "a reasonably useable form." Fed. R. Civ. P. 34. "[R]equiring a party to query an existing dynamic database for relevant information" is not the same as requiring it "to create completely new documents[.]" *Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK (PSG), 2013 WL 4426512 (N.D. Cal. Aug. 14, 2013) ("Courts regularly require parties to produce reports from dynamic databases, holding that the 'technical burden . . . of creating a new dataset for the instant litigation does not excuse production.'") (quoting *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2009 WL 3613511, at *1 (N.D. Cal. Oct. 28, 2009) (upholding magistrate judge's order compelling data where combining or manipulating individual data fields does not create new data). The advisory committee notes to Rule 34 support this result: "the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information." Fed. R. Civ. P. 34 advisory committee's note to 2006 amendment.

Skiplagged emphasizes that AA's Motion requires it to analyze data. ECF No. 113 at 1, 3. The Court agrees that data analysis crosses the line of document creation. The Federal Rules of Civil Procedure only require Skiplagged to produce its data, not analyze it. Accordingly, the Court finds that, to the extent that Interrogatory No. 8 and RFP Nos. 4 and 5 do not call for data analysis, they do not require Skiplagged to create new documents. However, Skiplagged still must take the necessary steps to translate the information in its database responsive to Interrogatory No. 8 and RFP Nos. 4-5 (including, if necessary, by writing code) into a reasonably useable form. Skiplagged must produce its data, raw and unorganized though it may be, translated such that AA can

reasonably use that data to perform the necessary analysis and calculations to ascertain the information responsive to Interrogatory No. 8 and RFP Nos. 4-5.

### 2. Skiplagged's objections are to proportionality are overruled.

Skiplagged objects to AA's discovery requests as overbroad and unduly burdensome. ECF No. 76 at 40-41. The advisory committee contemplated a situation such as this, providing that "[s]ome electronically stored information may be ordinarily maintained in a form that is not reasonably usable by any party[.]" *Id.* In such situations, "[t]he questions whether a producing party should be required to convert such information to a more usable form, or should be required to produce it at all, should be addressed under Rule 26(b)(2)(B)." *Id.* In December 2023, the Court found that RFP Nos. 4 and 5 were proportional. ECF No. 53. Skiplagged's responses to RFP Nos. 4 and 5 restate objections substantially similar to its previously overruled objections. *Compare* ECF No. 76 at 40-41 *with* ECF No. 40 at 84-83. Since that time, Skiplagged has not moved for protection or for reconsideration of the Court's December 2023 order. Skiplagged argues that AA "is seeking to compel Skiplagged to produce information that AA never sought in its interrogatories and document requests." ECF No. 113 at 5 (footnote omitted). Thus, it argues, AA's objection was not previously overruled in light of the new request. *Id.* The Court finds this argument to be unavailing. The Court previously overruled these objections. To the extent that Skiplagged seeks to reassert them, the Court **OVERRULES** them again.

Even if the Court were considering these objections for the first time, it still would overrule them. The Court finds that the requests are proportional to the needs of this particular case. Skiplagged argues that to compel the requested information "would require at least one month to organize and audit, at least $100,000 in technical resources and employee time, and at a level of technical sophistication that goes beyond routine data retrieval, with no guarantee of complete or

accurate information." ECF No. 90 at 4. As AA points out, the court in *Humphrey* compelled discovery where the responding party estimated that it would take 2,000 hours for two other discovery requests. *Humphrey*, 2021 WL 3560842, at *7. "Defendant in essence argues that, because there" is so much data to analyze, the burden of providing the requested information is too great. *Id*. As in *Humphrey*, the Court finds this argument unpersuasive. In response, Skiplagged attempts to distinguish *Humphrey* by rehashing its already-addressed argument that AA's Motion requires it to create documents. Having found that retrieving the information in Skiplagged's database does not constitute data creation, this argument is unavailing.

Finally, Skiplagged asserts that AA's Motion calls for documents that are not proportional because "Skiplagged has already estimated its revenues related to AA tickets and provided that information in its amended response to AA's Interrogatory No. 1." ECF No. 113 at 2. But hard data is preferable to an estimate. Accordingly, Interrogatory No. 8 and RFP Nos. 4-5 do not seek duplicative information.

## IV.   CONCLUSION

For these reasons, Skiplagged **SHALL** specify which records AA must review to locate documents responsive to Interrogatory No. 8 as Federal Rule of Civil Procedure 33(d)(1) requires. Skiplagged also **SHALL PRODUCE** all data in its possession or control responsive to Interrogatory No. 8 and Request for Production Nos. 4-5 (except with regards to Skiplagged's customer's social security numbers or credit card numbers), translated into a reasonably useable form, except to the extent that the translation requires analysis of the data.

Finally, the Court **DENIES** AA's request for sanctions (ECF No. 74) because of the novelty and difficulty of the legal questions at issue in AA's Motion. The Court concludes that it is not in the interest of justice to sanction Skiplagged at this time.

It is so **ORDERED** on May 1, 2024.

                                                           Hal R. Ray, Jr.
                                                          UNITED STATES MAGISTRATE JUDGE