**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**APPENDIX IN SUPPORT OF DEFENDANT SKIPLAGGED, INC.'S MOTION FOR
PROTECTIVE ORDER AND BRIEF IN SUPPORT**

Defendant Skiplagged, Inc. ("Skiplagged") files this Appendix in support of its Motion

for Protective Order and Brief in Support, as follows:

| Exhibit A | Draft deposition topics | APPX. 001-016 |
|---|---|---|
| Exhibit B | Plaintiff American Airlines, Inc.'s Notice of Rule 30(b)(6) Deposition of Defendant Skiplagged, Inc.'s Corporate Representative | APPX. 017-035 |

Dated: June 11, 2024

Respectfully submitted,

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

*/s/ Abigail R. S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045

Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*Attorneys for Defendant, Skiplagged, Inc.*

## CERTIFICATE OF SERVICE

It is hereby certified that on June 11, 2024, a copy of the foregoing was served through the

Court's electronic filing system as to all parties who have entered an appearance in this proceeding.

*/s/   Abigail R. S. Campbell*
ABIGAIL R.S. CAMPBELL

# EXHIBIT A

# EXHIBIT A

## I.     DEFINITIONS

The following definitions shall apply to the Deposition Topics set forth herein:

1.      "**American**" means and refers to Plaintiff American Airlines, Inc.

2.      "**Skiplagged**" means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com (both the website and the mobile app) and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

3.      "**You**," "**your**," or "**Defendant**" means and refers to Skiplagged.

4.      "**This lawsuit**" refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas—Fort Worth Division.

5.      "**Skiplagged's Motion to Dismiss**" refers to *Defendant Skiplagged, Inc.'s Motion to Dismiss Plaintiff American Airlines, Inc.'s First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. No. 21].

6.      "**Zaman's Declaration**" refers to the *Declaration of Aktarer Zaman Submitted in Support of Defendant Skiplagged, Inc.'s Motion to Dismiss*, filed on October 2, 2023 [Dkt. No. 22 at 4–7].

7.      "**AA.com**" refers to American's public-facing, front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

8.      "**API**" or "**American's API**" refers to the application programming interface of AA.com.

9.      "**American Bookings**" means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

10.     "**American's Content**" means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

11.     "**AA.com Use Agreement**" means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

12.     "**American's Conditions of Carriage**" means and refers to the Conditions of Carriage agreement between American and its passengers, available at

https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

13.    "**Travel carrier(s)**" refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

14.    "**Travel Agency**" means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

15.    "**PNR Data**" refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact information (including originator of reservation); (8) Travel itinerary for specific PNR; (9) Travel agency/travel agent; (10) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (11) Split/divided information (e.g., when one PNR contains a reference to another PNR); (12) Travel status of passenger (including confirmations and check-in status); (13) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (14) Baggage information; (15) Seat information, including seat number; (16) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI)

and Supplemental Service Request (SSR) information; (17) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (18) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

16.     "**Person**" or "**persons**" mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

17.     "**Communication**" or "**communications**" shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in any nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

18.     "**Document**" and "**documents**" are used herein in the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any written, recorded or tangible graphic matter, or any other means of preserving data, expression, facts, opinions, thought, images, or other information of any kind, including without limitation all non-identical copies, drafts, outtakes, subsequent versions, worksheets and proofs, however created or recorded, including without limitation audio tapes, annotations, calendars, correspondence, data or information of any kind recorded on compact disks, digital video diskettes, or any other type or form of diskettes for use with computers or other electronic devices, or any hard drive, diary entries, electronic recordings of any kind, e-mail, memoranda, notes,

photographs, reports, telephone slips and logs, video cartridges and videotapes, and sites, databases, or other means of information storage or retrieval on the Internet or World Wide Web.

These terms are to be interpreted broadly to include documents stored in any medium and specifically include electronically stored information ("ESI") such as e-mail and documents maintained in electronic form on Skiplagged's websites, servers, and stand-alone computers and hard drives. ESI includes, but is not limited to, text files (including word processing documents), spreadsheets, e-mail files and information concerning e-mail (including all metadata fields, logs of e-mail history and usage, header information and "deleted" files including all potentially relevant data contained in free or slack space), Internet history files and preferences, graphical image format ("GIF"), tagged image file format ("TIFF"), portable document format ("PDF") files, databases, contacts, tasks, calendar and scheduling information, computer system activity logs, all file fragments, and backup files containing Electronic Data.

19.     "**Referring to**," "**evidencing**," "**concerning**," "**reflecting**," or "**referencing**" mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the request.

## II.     <u>DEPOSITION TOPICS</u>

1.     The corporate structure, organization, formation, management, ownership, shareholders, and investors of Skiplagged.

2.     The roles, responsibilities, and period of employment with Skiplagged of each officer, director, executive, or manager of Skiplagged, current or former.

3.     Skiplagged's financial condition and performance from its creation to the present, including but not limited to its monthly, quarterly, and yearly income, revenue, costs, and actual and/or anticipated gross and net revenues and profits.

4.     The owners of Skiplagged, Skiplagged's software, algorithms and processes, and Skiplagged's intellectual property.

5.     Skiplagged's total revenues, gross margins, gross and net profits, and all sources of such revenues and profits.

6.     Skiplagged's revenues, cost of services sold, gross margins, and gross and net profits relating to American Bookings made or purchased by customers (a) on Skiplagged.com (e.g., through its "Book Now" feature); and (b) through other Travel Agency websites to which Skiplagged redirected the customer.

7.     The annual, monthly, and quarterly number of American bookings facilitated, made or purchased by customers by, through, from or facilitated by Skiplagged.com using the "Book Now" feature, including the PNR of such customers.

8.     The annual, monthly, and quarterly number of American bookings made or purchased by customers that were re-directed or given a link to a third party by, through, from or facilitated by Skiplagged.com (whether through the "Book Now" feature or through any other means), including the PNR of such customers.

9.     Skiplagged's PNR database, "live" database, "production" database, My Sequel database management system, and/or Mongo DB.

10.     The annual, monthly, and quarterly number of American Bookings made or purchased on Skiplagged.com, and the identity and location of the customers who purchased such flights.

11.     The annual, monthly, and quarterly number of American Bookings made or purchased on other websites by customers who were re-directed or given a link to such other websites by or through Skiplagged.com, including the identity and location of such customers.

12.     The details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, specifications, schematics, and/or hardware—both current and historical—that Skiplagged has used to:

(a)     access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

(b)     interact with or access AA.com, American's API, or American's computer systems;

(c)     search for or identify American flights, itineraries, or fares to present to customers on Skiplagged.com (including to identify the best prices or to generate "hidden city" tickets);

(d)     deploy or utilize automated bots or scripts to interact with AA.com or American's API;

    (e)    republish, display, distribute, provide access to, or otherwise use American's Content, including American's flight and fare data, on Skiplagged.com;

    (f)    book or purchase American flights on AA.com for Skiplagged users/customers;

    (g)    charge users/customers fees for the purchase of American flights;

    (h)    sell American flights;

    (i)    communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

    (j)    circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

13.    Skiplagged's efforts, business plans, decisions, or strategies, including communications, relating to any of the information described in Topic No. 11 and its subparts.

14.    Skiplagged's research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Topic No. 11 and its subparts.

15.    The various APIs that Skiplagged has obtained flight information for American flights from, including Air Projects Travel, AirfareExperts, BookAirFare, Bravofly, British Airways, BudgetAir, Cathay Pacific, Cheaptickets, Destina Holidays, eDreams, Expedia, ExploreTrip, Fareboom, FareDepot, Finnair, FlightNetwork, Flyfar, Globehunters, GotoGate, Hop2, Iberia, Indian Eagle, Indian Eagle, Japan Airlines, JustFly, Kissandfly, Kiwi.com, Korean Air, LATAM Airlines, Mytrip, Oojo, Ovago, Priceline, Qatar Airways, Sky-tours, Skybooker, SmartFares, Snaptravel, Travel Merry, Travel2Be, Travelgenio, Travelocity, Trip.com, and Vayama.

16.    The ways in which Skiplagged has accessed, obtained, collected, received, or harvested American's Content, including but not limited to when, how, and from what source Skiplagged collected or obtained the content/information.

17.    All "online travel agencies, global distribution systems, and other travel metasearch engines" and other "variety of sources" from whom "Skiplagged obtains American flight and fare information" as described in paragraphs 10 and 11 of Zaman's Declaration [Dkt. 22], and the technical means and process by which Skiplagged obtains such information

18.    The manner by which Skiplagged accesses or is provided access to American content from the following sites, and whether each of the below entities has actual knowledge that American content is being accessed, gathered, obtained or used by Skiplagged:

- Air Projects Travel;
- AirfareExperts;
- BookAirFare;
- Booking.com;

- Bravofly;
- BudgetAir;
- CheapTickets;
- Destina Holidays (formerly Skybooker);
- etraveli;
- eDreams;
- Expedia;
- ExploreTrip;
- Fareboom;
- FareDepot;
- Fareportal (CHEAPOAIR);
- FlightHub;
- FlightNetwork;
- Flyfar;
- Globehunters (A1 Travel Deals);
- GotoGate;
- Hop2;
- Indian Eagle;
- JustFly;
- Kayak;
- Kissandfly (Tickets Travel Network);
- Kiwi.com;
- LBF Travel;
- Mondee;
- Mytrip;
- Oojo;
- Orbitz;
- Ovago (Travel Outlet / Travel Outlet of Virginia);
- Priceline;
- Skyscanner;
- Skytours;
- SmartFares;
- Snaptravel;
- TravelMerry (Vyoma Travels);
- Travel2Be;
- Travelgenio;
- Travelocity;
- Trip.com;
- Trivago;
- Vayama;
- AA.com;
- Aer Lingus;
- British Airways;
- Cathay Pacific;

- Finnair;
- Iberia;
- Japan Airlines;
- Korean Air;
- LATAM Airlines; and
- Qatar Airways

19. The types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, a third party, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

20. Each way that Skiplagged has purchased, booked, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means.

21. The communications and interactions that occur between Skiplagged and AA.com in connection with Skiplagged purchasing or selling American's flights, products, or services, and the process used to generate and conduct such communications.

22. The processes, step-by-step, that a customer on Skiplagged takes to (1) search for a flight and (2) to make a booking facilitated by, using or through Skiplagged, including completing each information field and what part of the AA.com website that information field populates.

23. How the search is performed for origin-and-destination options presented as hidden city fares on Skiplagged, including how and where Skiplagged performs the search, how it sorts the results and how it determines the "savings' presented.

24. The names and identities of any/all third parties whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

25. The process by which Skiplagged purchases and completes a customer's reservation on AA.com, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger and notifies the passenger of the booking.

26. Any/all fees Skiplagged charges, or has charged, customers in connection with Skiplagged's sale of American flights, products, or services.

27. Meetings and communications among Skiplagged's employees, board of directors, officers, investors, and/or shareholders relating to or discussing American, AA.com, the marketing or sale of American flights or services, and/or obtaining, providing, accessing, distributing, or using American's Content.

28. Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its use of American's Content and/or its marketing and sale of American flights, products, or services,

including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of American flights or services; (ii) the benefits of or reasons for marketing, offering, purchasing, or selling American flights or services; and (iii) consumer demand or preferences for booking travel with American, or comparisons between American and other Travel Carriers.

29.    Skiplagged's knowledge, awareness, or acknowledgement of the AA.com Use Agreement, American's Conditions of Carriage, or any other rules or policies of American.

30.    Skiplagged's notices, disclaimers, warnings, or disclosures provided to customers or users of Skiplagged.com relating to American Bookings, the fees and charges imposed by Skiplagged and/or American, and any rules or policies of Skiplagged and/or American.

31.    Skiplagged's warnings, instructions, or advice to purchasers of "hidden-city" tickets.

32.    Skiplagged's knowledge, awareness, acknowledgement, or discussion of other Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems having authorization from and/or agreements with American to sell American flights, use American's Content, or otherwise act as an agent of American.

33.    The contracts, agreements, and/or relationships between Skiplagged and any other Travel Agencies, metasearch engines, airfare consolidators, global distribution systems, or any other company or website that searches for, displays, or sells flights to consumers or that otherwise enables, facilitates, or participates in such services, specifically including:

- Air Projects Travel;
- AirfareExperts;
- BookAirFare;
- Booking.com;
- Bravofly;
- BudgetAir;
- CheapTickets;
- Destina Holidays (formerly Skybooker);
- etraveli;
- eDreams;
- Expedia;
- ExploreTrip;
- Fareboom;
- FareDepot;
- Fareportal (CHEAPOAIR);
- FlightHub;
- FlightNetwork;
- Flyfar;
- Globehunters (A1 Travel Deals);
- GotoGate;

- Hop2;
- Indian Eagle;
- JustFly;
- Kayak;
- Kissandfly (Tickets Travel Network);
- Kiwi.com;
- LBF Travel;
- Mondee;
- Mytrip;
- Oojo;
- Orbitz;
- Ovago (Travel Outlet / Travel Outlet of Virginia);
- Priceline;
- Skyscanner;
- Skytours;
- SmartFares;
- Snaptravel;
- TravelMerry (Vyoma Travels);
- Travel2Be;
- Travelgenio;
- Travelocity;
- Trip.com;
- Trivago;
- Vayama;
- AA.com;
- Aer Lingus;
- British Airways;
- Cathay Pacific;
- Finnair;
- Iberia;
- Japan Airlines;
- Korean Air;
- LATAM Airlines; and
- Qatar Airways

34.    The commissions, fees, or other financial compensation Skiplagged has received from or paid to any other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, booking partners, or any other company, website, or entity in connection with the sale of flights to consumers, including the details, dates, number, and amounts of such payments.

35.    The commissions, fees, or other financial compensation Skiplagged has paid to any third parties other than customers/passengers in connection with the sale of American flights, including the details, dates, number, and amounts of such payments.

36.    All websites to which Skiplagged.com has accessed, scraped, provided customers a link, or re-directed customers, to search, book or purchase American flights outside of Skiplagged.com.

37.    The storage of all customer data, including PNRs, credit card information, or any other information associated with a particular passenger, the length of time it is stored, what is done with the data, and to whom or what entities the data is provided or shared.

38.    Skiplagged's efforts to become an accredited agency and the reasons for not becoming accredited.

39.    The process by which Skiplagged has "obtained … the alleged 'American Marks' from [sources other than] American's website," including the identity of the sources from which it obtains American's marks, as alleged in Zaman's Declaration at ¶ 10 [Dkt. 22] and Skiplagged's Motion to Dismiss at page 13 [Dkt. 21].

40.    The nature, timing, and means by which Skiplagged has used the American Marks, and the identity, number, and amount of flights, revenues, and profits from Skiplagged's sale of American flights while displaying or using any of American's Marks.

41.    Meetings and communications between Skiplagged and any third party regarding, or relating in any way to, American, AA.com, the marketing or sale of American flights or services, and/or obtaining, providing, accessing, distributing, or using American's Content.

42.    Skiplagged's knowledge, awareness, acknowledgement, or discussion of American revocation or termination of Kiwi.com's right and authorization to sell American flights.

43.    Skiplagged's relationships, contracts, agreements, supplemental agreements, side letters, communications, and dealings with any of the following companies/websites, including how each one is (or was) involved in, contributes to, or otherwise facilitates the operation of Skiplagged.com, and any payments Skiplagged has received from or made to any such entity(ies):

- Skyscanner.com (Skyscanner Ltd.)
- Kiwi.com (Kiwi.com, Inc. and/or Kiwi.com, S.R.O)
- DestinaHolidays.com / Skybooker.com (Destina Holidays Ltd., Skybooker.com Ltd., and/or Destina Travel)
- Trip.com / US.Trip.com (Trip.com Travel Singapore Pte. Ltd.)
- Justfly.com (JustFly Inc.)
- Globehunters.com (A1 Travel Deals Limited d/b/a Globehunters)
- Travelmerry.com (Vyoma Travels Inc.)
- KissAndFly.com / Avia. KissAndFly.com (TTN GmbH)
- BudgetAir.com (Travix / BudgetAir)
- ExploreTrip.com (ExploreTrip, Inc.)
- Etraveligroup.com (Etraveli Group)
- Ovago.com (Ovago)
- Hop2.com (Hop 2 Travel)
- Flightnetwork.com (Flight Network)

- LBFtravel.com (LBF Travel, Inc.)
- Smartfares.com (SmartFares)
- Ubio (https://ub.io/)

44.     Skiplagged.com's "newsletter" or email subscriber service described and offered at https://skiplagged.com/signup, including all details, metrics, processes, and communications associated therewith.

45.     Skiplagged's marketing and sale of "hidden city" tickets on American flights.

46.     Skiplagged's metrics and calculations of consumers' alleged savings from booking "hidden city" tickets.

47.     Skiplagged's marketing activities/efforts and promotional emails to customers (whether previous/existing customers or potential customers) relating to or identifying American flights, products, or services.

48.     Skiplagged's handling of, and communications with consumers who booked or purchased an American flight through Skiplagged.com, through any means, relating to, flight changes, delays, cancellations, refunds, baggage issues, booking fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

49.     The identity, number, details, and handling of complaints, requests, or demands that Skiplagged has received from consumers who booked or purchased an American flight through Skiplagged.com, through any means, relating in any way to any issues, problems, or concerns arising from the customer's travel, booking/reservation, or payment.

50.     Skiplagged's customer service and customer support to consumers who booked or purchased an American flight through Skiplagged.com, through any means.

51.     Press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other Travel Carriers.

52.     Previous lawsuits, claims, charges, allegations, arbitrations, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights, accommodations, or other travel services and/or the use or operation of Skiplagged.com.

53.     Skiplagged's receipt and handling of complaints, legal notices, cease and desist letters, or demand letters received from any other person or entity, including any airline, Travel Carrier, Travel Agency, travel metasearch engine, or governmental, regulatory, or administrative agency, relating to the use or operation of Skiplagged.com.

54.     Settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other Travel Carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any

Travel Carriers' flights or use of the carriers' trademarks, flight/fare information, or other data/content.

55.     Skiplagged's consideration, evaluation, decisions, and discussions regarding the Airlines Reporting Corporation ("ARC") and International Air Transport Association ("IATA") and whether or not to apply to become an accredited ARC or IATA travel agency.

56.     Presentations, slide decks, handouts, or other informational materials concerning Skiplagged's business plans, strategies, technology, or platform for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

57.     Skiplagged's operation of Skiplagged.com, including the terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, Skiplagged's collection and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

58.     The bases for, and information supporting, the statements on Skiplagged.com, including but not limited to the statements that Skiplagged (1) "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money"; (2) "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere"; (3) "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else"; and (4) "Why are we doing this?"

59.     Skiplagged's position and contentions regarding the enforceability and validity of the AA.com Use Agreement.

60.     The bases for Skiplagged's denials of American's factual allegations, as set forth in its Amended Answer and Affirmative Defenses [Dkt. No. 63], and any positions taken or contentions made by Skiplagged in this Lawsuit.

61.     The factual bases for Skiplagged's affirmative defenses, as set forth in its Amended Answer and Affirmative Defenses [Dkt. No. 63].

62.     Skiplagged's discovery responses, including all facts relating to its interrogatory responses, initial disclosures, and any other discovery served upon Skiplagged in this Lawsuit.

63.     The identification, location, control, and custody of any documents or electronically stored information relevant or responsive to any topic above and/or to American's requests for production that have been served on Skiplagged in this Lawsuit.

64.     Skiplagged's document retention and/or destruction policies, procedures, and practices for documents, tangible things, and electronically stored information and data, including all written, verbal, or informal policies, procedures, or practices.

65.     The redemption of Skiplagged Rewards for any American Bookings, including those in which a virtual credit card ("VCC") was used.

66.     Skiplagged's use of Google Puppetier, Google ITA Matrix, Google Flights, Google Cloud, Slack, GitHub, Braze, Stripe, and SendGrid.

67.     Skiplagged's use of any global distribution system ("GDS") or new distribution capability ("NDC").

68.     Skiplagged's user and session metrics, including those measured through Google Analytics, Google Search Console, or other analytics software or reports concerning the number of people who visit any webpage owned by, operated by, or affiliated with Skiplagged that displays American's marks.

69.     Skiplagged's customer engagement data for Skiplagged.com, including Google analytics data, relating to or identifying (i) the consumer demographics of Skiplagged's customers (including but not limited to age, location/geography, income, gender, race/ethnicity, or other identifying information), (ii) repeat customers, (iii) completed transactions, (iv) abandoned and/or uncompleted potential bookings, and/or (v) customer complaints.

70.     Skiplagged's proprietary algorithm for gathering flight and fare information for route and date combinations for customer searches.

71.     Skiplagged's communications and relationships with Binary Capital and Lerer Hippeau and investments made by Binary Capital and Lerer Hippeau.

72.     The settlement between Skiplagged and Southwest Airlines, Co. for Case No. 1:21-cv-05749, in the United States District Court for the Southern District of New York, styled *Skiplagged, Inc. v. Southwest Airlines Co.*

73.     Skiplagged's responses to American's interrogatories and requests for admissions served in this lawsuit.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF AMERICAN AIRLINES, INC.'S NOTICE OF RULE 30(b)(6) DEPOSITION
OF DEFENDANT SKIPLAGGED, INC.'S CORPORATE REPRESENTATIVE**

TO:   Defendant Skiplagged, Inc., by and through its attorneys of record, William L. Kirkman
and Preston B. Sawyer, KIRKMAN LAW FIRM, P.L.L.C., 201 Main Street, Suite 1160, Fort
Worth, Texas 76102, and Aaron Z. Tobin, Kendal B. Reed, and Abigail R.S. Campbell,
CONDON TOBIN SLADEK THORNTON NERENBERG PLLC, 8080 Park Lane, Suite 700, Dallas,
Texas 75231

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Plaintiff American Airlines, Inc. ("American"), by and through its undersigned counsel, will take

the oral and videotaped deposition of Defendant Skiplagged, Inc. ("Skiplagged") through its

designated corporate representative, starting at **9:00 a.m. (E.D.T.) on Wednesday, June 12, 2024,**

**at the offices of GREENBERG TRAURIG, LLP, One Vanderbilt Avenue, 29th Floor, New York,**

**NY 10017**, or such other location mutually agreed to by the parties in advance of the deposition.

The deposition will be taken upon oral examination before an officer authorized by law to

administer oaths, will be videotaped and recorded by stenographic means by a certified court

reporter, and shall continue from day to day until completed.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Skiplagged is required to designate

a representative to testify on Skiplagged's behalf with respect to the Topics set forth in **Exhibit A**

attached hereto. Skiplagged has a duty to prepare the witness to testify on all Topics for which he

or she has been designated to testify for Skiplagged, based on all documents, communications, facts, and information known to Skiplagged, within Skiplagged's possession, custody, or control, or otherwise available to Skiplagged. American reserves all rights to seek appropriate relief in the event the witness is not sufficiently prepared to testify to all Topics for which he or she is offered to testify.

Dated: June 10, 2024                          Respectfully submitted,

*/s/ Lars L. Berg*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 10, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Julia G. Wisenberg*
Julia G. Wisenberg

## EXHIBIT A

## I.        DEFINITIONS

The following definitions shall apply to the Deposition Topics set forth herein:

1.        "**American**" means and refers to Plaintiff American Airlines, Inc.

2.         "**Skiplagged**" means and refers to Defendant Skiplagged, Inc., and includes, without limitation, Skiplagged.com (both the website and the mobile app) and all of Skiplagged's predecessors, successors, subsidiaries, parents, assignees, assignors, and affiliates, and all past or present directors, officers, shareholders, agents, representatives, employees, consultants, attorneys, accountants, entities acting in joint venture or partnership with or having investment relationships with Skiplagged, and any other person or entities acting in cooperation with, at the instruction or direction of, or on behalf of any of the above.

3.        "**You**," "**your**," or "**Defendant**" means and refers to Skiplagged.

4.        "**This lawsuit**" refers to the above-captioned case: *American Airlines, Inc. v. Skiplagged, Inc.*, No. 4:23-cv-00860-P, in the U.S. District Court for the Northern District of Texas—Fort Worth Division.

5.        "**Skiplagged's Motion to Dismiss**" refers to *Defendant Skiplagged, Inc.'s Motion to Dismiss Plaintiff American Airlines, Inc.'s First Amended Complaint for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue and Brief in Support*, filed on October 2, 2023 [Dkt. No. 21].

6.        "**Zaman's Declaration**" refers to the *Declaration of Aktarer Zaman Submitted in Support of Defendant Skiplagged, Inc.'s Motion to Dismiss*, filed on October 2, 2023 [Dkt. No. 22 at 4–7].

7.    "**AA.com**" refers to American's public-facing, front-end website located at https://www.aa.com, and also includes American's API and American's computer systems.

8.    "**API**" or "**American's API**" refers to the application programming interface of AA.com.

9.    "**American Bookings**" means and refers to the booking, ticketing or purchase of a ticket on any American Airlines-marketed flight whether directly or through any other agency or platform.

10.    "**American's Content**" means and includes any and all information, data, or other content relating to American and/or its products, services, and offerings—whether from American or AA.com directly or from its licensors or other third parties (both authorized or unauthorized)—including but not limited to American flights, flight schedules, routes, fares, fees, text, graphics, icons, images, designs, databases, articles, posts, files, scripts, instructions, illustrations, photographs, advertising, URLs, technology, software, interactive features, audio or video clips, digital downloads, data compilations, customer information, AAdvantage® information, the "look and feel" of AA.com or the compilation, assembly, and arrangement of information on AA.com, all copyrightable materials, trademarks, logos, trade names, trade dress, service marks, trade identities, and any other forms of intellectual property associated with American, and any information relating to American flights, products, fees, offerings, or services.

11.    "**AA.com Use Agreement**" means and refers to the AA.com Site Usage agreement, available at https://www.aa.com/i18n/customer-service/support/legal-information.jsp, as defined and described in American's Original Complaint.

12.    "**American's Conditions of Carriage**" means and refers to the Conditions of Carriage    agreement    between    American    and    its    passengers,    available    at

https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp, as defined and described in American's Original Complaint.

13.    "**Travel carrier(s)**" refers to and includes all airlines and any other providers of ground or water transportation (including by bus, train, subway, automobile, or boat) whose products or services Skiplagged offers on Skiplagged.com.

14.    "**Travel Agency**" means and includes any online travel agency (OTA), brick-and-mortar travel agency, travel management company (TMC), airfare ticketing consolidator, ARC- or IATA-accredited agency, unaccredited travel agency, and any other person or entity that advertises or markets air fares, or sells, arranges, or facilitates the booking of transportation services of travel carriers, including commercial flights, to customers.

15.    "**PNR Data**" refers to and includes all passenger reservation information, referred to as Passenger Name Record (PNR) data/information, collected in connection with the booking of air transportation, which may include but not be limited to the following information: (1) PNR record locator code; (2) Date of reservation/issue of ticket; (3) Date(s) of intended travel; (4) Name(s); (5) Available frequent flier and benefit information (i.e., free tickets, upgrades, etc.); (6) Other names on PNR, including number of travelers on PNR; (7) All available contact information (including originator of reservation); (8) Travel itinerary for specific PNR; (9) Travel agency/travel agent; (10) Code share information (e.g., when one air carrier sells seats on another air carrier's flight); (11) Split/divided information (e.g., when one PNR contains a reference to another PNR); (12) Travel status of passenger (including confirmations and check-in status); (13) Ticketing information, including ticket number, one way tickets and Automated Ticket Fare Quote (ATFQ) fields; (14) Baggage information; (15) Seat information, including seat number; (16) General remarks including Other Service Indicated (OSI), Special Service Indicated (SSI)

and Supplemental Service Request (SSR) information; (17) Any collected APIS information (e.g., Advance Passenger Information (API) that is initially captured by an air carrier within its PNR, such as passport number, date of birth and gender); and (18) All historical changes to the PNR listed in numbers 1 to 18. *See* https://www.cbp.gov/travel/clearing-cbp/passenger-name-record.

16.     "**Person**" or "**persons**" mean and include any individual or firm, association, organization, joint venture, trust, partnership, corporation, or other collective organization or entity.

17.     "**Communication**" or "**communications**" shall mean and include any and all contact whatsoever and any transfer or exchange between two or more persons of any information, whether by oral, written, or electronic means, whether directly or indirectly and in any nature whatsoever, including but not limited to any correspondence, conversations, meetings, telephone calls, e-mails, electronic transmission, online or internet communications, faxes, notes, letters, telegrams, telexes, text messages, voicemails, cables, and/or memoranda.

18.     "**Document**" and "**documents**" are used herein in the broadest sense permissible under Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any written, recorded or tangible graphic matter, or any other means of preserving data, expression, facts, opinions, thought, images, or other information of any kind, including without limitation all non-identical copies, drafts, outtakes, subsequent versions, worksheets and proofs, however created or recorded, including without limitation audio tapes, annotations, calendars, correspondence, data or information of any kind recorded on compact disks, digital video diskettes, or any other type or form of diskettes for use with computers or other electronic devices, or any hard drive, diary entries, electronic recordings of any kind, e-mail, memoranda, notes,

photographs, reports, telephone slips and logs, video cartridges and videotapes, and sites, databases, or other means of information storage or retrieval on the Internet or World Wide Web.

These terms are to be interpreted broadly to include documents stored in any medium and specifically include electronically stored information ("ESI") such as e-mail and documents maintained in electronic form on Skiplagged's websites, servers, and stand-alone computers and hard drives. ESI includes, but is not limited to, text files (including word processing documents), spreadsheets, e-mail files and information concerning e-mail (including all metadata fields, logs of e-mail history and usage, header information and "deleted" files including all potentially relevant data contained in free or slack space), Internet history files and preferences, graphical image format ("GIF"), tagged image file format ("TIFF"), portable document format ("PDF") files, databases, contacts, tasks, calendar and scheduling information, computer system activity logs, all file fragments, and backup files containing Electronic Data.

19.     "**Referring to**," "**evidencing**," "**concerning**," "**reflecting**," or "**referencing**" mean referring to, pertaining to, evidencing, referencing, containing, referencing, describing, identifying, embodying, commenting upon, identifying, incorporating, summarizing, mentioning, having any relationship to, constituting evidence of, or otherwise connected with or pertinent in any way to the subject matter of the request.

## II.     <u>DEPOSITION TOPICS</u>

1.     The corporate structure, organization, formation, management, ownership, shareholders, and investors of Skiplagged.

2.     The roles,  responsibilities, and period of employment with Skiplagged of each officer, director, executive, or manager of Skiplagged, current or former.

3.     Skiplagged's financial condition and performance from its creation to the present, including but not limited to its monthly, quarterly, and yearly income, revenue, costs, and actual and/or anticipated gross and net revenues and profits.

4. The owners of Skiplagged, Skiplagged's software, algorithms and processes, and Skiplagged's intellectual property.

5. Skiplagged's total revenues, gross margins, gross and net profits, and all sources of such revenues and profits.

6. Skiplagged's revenues, cost of services sold, gross margins, and gross and net profits relating to American Bookings made or purchased by customers (a) on Skiplagged.com (e.g., through its "Book Now" feature); and (b) through other Travel Agency websites to which Skiplagged redirected the customer.

7. The annual, monthly, and quarterly number of American bookings facilitated, made or purchased by customers by, through, from or facilitated by Skiplagged.com using the "Book Now" feature, including the PNR of such customers.

8. The annual, monthly, and quarterly number of American bookings made or purchased by customers that were re-directed or given a link to a third party by, through, from or facilitated by Skiplagged.com (whether through the "Book Now" feature or through any other means), including the PNR of such customers.

9. Skiplagged's PNR database, "live" database, "production" database, My Sequel database management system, and/or Mongo DB.

10. The annual, monthly, and quarterly number of American Bookings made or purchased on Skiplagged.com, and the identity and location of the customers who purchased such flights.

11. The annual, monthly, and quarterly number of American Bookings made or purchased on other websites by customers who were re-directed or given a link to such other websites by or through Skiplagged.com, including the identity and location of such customers.

12. The details, development, design, structure, functionality, and operation of the technical means, methods, processes, software, programs, techniques, source code, specifications, schematics, and/or hardware—both current and historical—that Skiplagged has used to:

(a) access, obtain, harvest, scrape, extract, or receive American's Content, including but not limited to American's flight and fare data;

(b) interact with or access AA.com, American's API, or American's computer systems;

(c) search for or identify American flights, itineraries, or fares to present to customers on Skiplagged.com (including to identify the best prices or to generate "hidden city" tickets);

(d) deploy or utilize automated bots or scripts to interact with AA.com or American's API;

(e)   republish, display, distribute, provide access to, or otherwise use American's Content, including American's flight and fare data, on Skiplagged.com;

(f)   book or purchase American flights on AA.com for Skiplagged users/customers;

(g)   charge users/customers fees for the purchase of American flights;

(h)   sell American flights;

(i)   communicate travel information to customers who purchase American flights or services through Skiplagged.com; and

(j)   circumvent any technological protections, firewalls, or other digital security measures in place for AA.com, American's API, or American's computer systems.

13.   Skiplagged's efforts, business plans, decisions, or strategies, including communications, relating to any of the information described in Topic No. 11 and its subparts.

14.   Skiplagged's research and development costs relating to or associated with any of the means, methods, processes, programs, techniques, or software described in Topic No. 11 and its subparts.

15.   The various APIs that Skiplagged has obtained flight information for American flights from, including Air Projects Travel, AirfareExperts, BookAirFare, Bravofly, British Airways, BudgetAir, Cathay Pacific, Cheaptickets, Destina Holidays, eDreams, Expedia, ExploreTrip, Fareboom, FareDepot, Finnair, FlightNetwork, Flyfar, Globehunters, GotoGate, Hop2, Iberia, Indian Eagle, Indian Eagle, Japan Airlines, JustFly, Kissandfly, Kiwi.com, Korean Air, LATAM Airlines, Mytrip, Oojo, Ovago, Priceline, Qatar Airways, Sky-tours, Skybooker, SmartFares, Snaptravel, Travel Merry, Travel2Be, Travelgenio, Travelocity, Trip.com, and Vayama.

16.   The ways in which Skiplagged has accessed, obtained, collected, received, or harvested American's Content, including but not limited to when, how, and from what source Skiplagged collected or obtained the content/information.

17.   All "online travel agencies, global distribution systems, and other travel metasearch engines" and other "variety of sources" from whom "Skiplagged obtains American flight and fare information" as described in paragraphs 10 and 11 of Zaman's Declaration [Dkt. 22], and the technical means and process by which Skiplagged obtains such information

18.   The manner by which Skiplagged accesses or is provided access to American content from the following sites, and whether each of the below entities has actual knowledge that American content is being accessed, gathered, obtained or used by Skiplagged:

- Air Projects Travel;
- AirfareExperts;
- BookAirFare;
- Booking.com;

- Bravofly;
- BudgetAir;
- CheapTickets;
- Destina Holidays (formerly Skybooker);
- etraveli;
- eDreams;
- Expedia;
- ExploreTrip;
- Fareboom;
- FareDepot;
- Fareportal (CHEAPOAIR);
- FlightHub;
- FlightNetwork;
- Flyfar;
- Globehunters (A1 Travel Deals);
- GotoGate;
- Hop2;
- Indian Eagle;
- JustFly;
- Kayak;
- Kissandfly (Tickets Travel Network);
- Kiwi.com;
- LBF Travel;
- Mondee;
- Mytrip;
- Oojo;
- Orbitz;
- Ovago (Travel Outlet / Travel Outlet of Virginia);
- Priceline;
- Skyscanner;
- Skytours;
- SmartFares;
- Snaptravel;
- TravelMerry (Vyoma Travels);
- Travel2Be;
- Travelgenio;
- Travelocity;
- Trip.com;
- Trivago;
- Vayama;
- AA.com;
- Aer Lingus;
- British Airways;
- Cathay Pacific;

- Finnair;
- Iberia;
- Japan Airlines;
- Korean Air;
- LATAM Airlines; and
- Qatar Airways

19.     The types of data, information, and content relating to American flights, fares, products, or services that Skiplagged has collected or used (whether from or through AA.com, an API of AA.com, a third party, or some other source), and the process used by Skiplagged to obtain and use such data, information, or content.

20.     Each way that Skiplagged has purchased, booked, brokered, facilitated, acted as a conduit, or made a reservation for customers on American flights, whether purchased or booked on AA.com, through another third party, or by some other means.

21.     The communications and interactions that occur between Skiplagged and AA.com in connection with Skiplagged purchasing or selling American's flights, products, or services, and the process used to generate and conduct such communications.

22.     The processes, step-by-step, that a customer on Skiplagged takes to (1) search for a flight and (2) to make a booking facilitated by, using or through Skiplagged, including completing each information field and what part of the AA.com website that information field populates.

23.     How the search is performed for origin-and-destination options presented as hidden city fares on Skiplagged, including how and where Skiplagged performs the search, how it sorts the results and how it determines the "savings" presented.

24.     The names and identities of any/all third parties whose data, services, or platform Skiplagged has used or relied on to facilitate the sale of American flights.

25.     The process by which Skiplagged purchases and completes a customer's reservation on AA.com, from the time a user submits her information and payment on Skiplagged.com to the time Skiplagged completes the booking on AA.com on behalf of the passenger and notifies the passenger of the booking.

26.     Any/all fees Skiplagged charges, or has charged, customers in connection with Skiplagged's sale of American flights, products, or services.

27.     Meetings and communications among Skiplagged's employees, board of directors, officers, investors, and/or shareholders relating to or discussing American, AA.com, the marketing or sale of American flights or services, and/or obtaining, providing, accessing, distributing, or using American's Content.

28.     Skiplagged's investigation, analysis, strategies, plans, and decisions relating to its use of American's Content and/or its marketing and sale of American flights, products, or services,

including but not limited to (i) any marketing strategies, revenue projections/forecasts, pricing strategies, market analyses, valuations, and business plans relating to the sale of American flights or services; (ii) the benefits of or reasons for marketing, offering, purchasing, or selling American flights or services; and (iii) consumer demand or preferences for booking travel with American, or comparisons between American and other Travel Carriers.

29.     Skiplagged's knowledge, awareness, or acknowledgement of the AA.com Use Agreement, American's Conditions of Carriage, or any other rules or policies of American.

30.     Skiplagged's notices, disclaimers, warnings, or disclosures provided to customers or users of Skiplagged.com relating to American Bookings, the fees and charges imposed by Skiplagged and/or American, and any rules or policies of Skiplagged and/or American.

31.     Skiplagged's warnings, instructions, or advice to purchasers of "hidden-city" tickets.

32.     Skiplagged's knowledge, awareness, acknowledgement, or discussion of other Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems having authorization from and/or agreements with American to sell American flights, use American's Content, or otherwise act as an agent of American.

33.     The contracts, agreements, and/or relationships between Skiplagged and any other Travel Agencies, metasearch engines, airfare consolidators, global distribution systems, or any other company or website that searches for, displays, or sells flights to consumers or that otherwise enables, facilitates, or participates in such services, specifically including:

- Air Projects Travel;
- AirfareExperts;
- BookAirFare;
- Booking.com;
- Bravofly;
- BudgetAir;
- CheapTickets;
- Destina Holidays (formerly Skybooker);
- etraveli;
- eDreams;
- Expedia;
- ExploreTrip;
- Fareboom;
- FareDepot;
- Fareportal (CHEAPOAIR);
- FlightHub;
- FlightNetwork;
- Flyfar;
- Globehunters (A1 Travel Deals);
- GotoGate;

- Hop2;
- Indian Eagle;
- JustFly;
- Kayak;
- Kissandfly (Tickets Travel Network);
- Kiwi.com;
- LBF Travel;
- Mondee;
- Mytrip;
- Oojo;
- Orbitz;
- Ovago (Travel Outlet / Travel Outlet of Virginia);
- Priceline;
- Skyscanner;
- Skytours;
- SmartFares;
- Snaptravel;
- TravelMerry (Vyoma Travels);
- Travel2Be;
- Travelgenio;
- Travelocity;
- Trip.com;
- Trivago;
- Vayama;
- AA.com;
- Aer Lingus;
- British Airways;
- Cathay Pacific;
- Finnair;
- Iberia;
- Japan Airlines;
- Korean Air;
- LATAM Airlines; and
- Qatar Airways

34.     The commissions, fees, or other financial compensation Skiplagged has received from or paid to any other Travel Agencies, travel metasearch engines, airfare consolidators, global distribution systems, booking partners, or any other company, website, or entity in connection with the sale of flights to consumers, including the details, dates, number, and amounts of such payments.

35.     The commissions, fees, or other financial compensation Skiplagged has paid to any third parties other than customers/passengers in connection with the sale of American flights, including the details, dates, number, and amounts of such payments.

36.     All websites to which Skiplagged.com has accessed, scraped, provided customers a link, or re-directed customers, to search, book or purchase American flights outside of Skiplagged.com.

37.     The storage of all customer data, including PNRs, credit card information, or any other information associated with a particular passenger, the length of time it is stored, what is done with the data, and to whom or what entities the data is provided or shared.

38.     Skiplagged's efforts to become an accredited agency and the reasons for not becoming accredited.

39.     The process by which Skiplagged has "obtained … the alleged 'American Marks' from [sources other than] American's website," including the identity of the sources from which it obtains American's marks, as alleged in Zaman's Declaration at ¶ 10 [Dkt. 22] and Skiplagged's Motion to Dismiss at page 13 [Dkt. 21].

40.     The nature, timing, and means by which Skiplagged has used the American Marks, and the identity, number, and amount of flights, revenues, and profits from Skiplagged's sale of American flights while displaying or using any of American's Marks.

41.     Meetings and communications between Skiplagged and any third party regarding, or relating in any way to, American, AA.com, the marketing or sale of American flights or services, and/or obtaining, providing, accessing, distributing, or using American's Content.

42.     Skiplagged's knowledge, awareness, acknowledgement, or discussion of American revocation or termination of Kiwi.com's right and authorization to sell American flights.

43.     Skiplagged's relationships, contracts, agreements, supplemental agreements, side letters, communications, and dealings with any of the following companies/websites, including how each one is (or was) involved in, contributes to, or otherwise facilitates the operation of Skiplagged.com, and any payments Skiplagged has received from or made to any such entity(ies):

- Skyscanner.com (Skyscanner Ltd.)
- Kiwi.com (Kiwi.com, Inc. and/or Kiwi.com, S.R.O)
- DestinaHolidays.com / Skybooker.com (Destina Holidays Ltd., Skybooker.com Ltd., and/or Destina Travel)
- Trip.com / US.Trip.com (Trip.com Travel Singapore Pte. Ltd.)
- Justfly.com (JustFly Inc.)
- Globehunters.com (A1 Travel Deals Limited d/b/a Globehunters)
- Travelmerry.com (Vyoma Travels Inc.)
- KissAndFly.com / Avia. KissAndFly.com (TTN GmbH)
- BudgetAir.com (Travix / BudgetAir)
- ExploreTrip.com (ExploreTrip, Inc.)
- Etraveligroup.com (Etraveli Group)
- Ovago.com (Ovago)
- Hop2.com (Hop 2 Travel)
- Flightnetwork.com (Flight Network)

- LBFtravel.com (LBF Travel, Inc.)
- Smartfares.com (SmartFares)
- Ubio (https://ub.io/)

44.     Skiplagged.com's "newsletter" or email subscriber service described and offered at https://skiplagged.com/signup, including all details, metrics, processes, and communications associated therewith.

45.     Skiplagged's marketing and sale of "hidden city" tickets on American flights.

46.     Skiplagged's metrics and calculations of consumers' alleged savings from booking "hidden city" tickets.

47.     Skiplagged's marketing activities/efforts and promotional emails to customers (whether previous/existing customers or potential customers) relating to or identifying American flights, products, or services.

48.     Skiplagged's handling of, and communications with consumers who booked or purchased an American flight through Skiplagged.com, through any means, relating to, flight changes, delays, cancellations, refunds, baggage issues, booking fees, or any other matters relating to the customer's travel, booking/reservation, or payment.

49.     The identity, number, details, and handling of complaints, requests, or demands that Skiplagged has received from consumers who booked or purchased an American flight through Skiplagged.com, through any means, relating in any way to any issues, problems, or concerns arising from the customer's travel, booking/reservation, or payment.

50.     Skiplagged's customer service and customer support to consumers who booked or purchased an American flight through Skiplagged.com, through any means.

51.     Press releases, website posts, social media posts, posts on online discussion boards, and any other public statements made by Skiplagged or any employees or representative of Skiplagged concerning American or any other Travel Carriers.

52.     Previous lawsuits, claims, charges, allegations, arbitrations, threatened litigation, administrative complaints, or other proceedings against Skiplagged, whether in the United States or any other country, relating to Skiplagged's marketing or sale of flights, accommodations, or other travel services and/or the use or operation of Skiplagged.com.

53.     Skiplagged's receipt and handling of complaints, legal notices, cease and desist letters, or demand letters received from any other person or entity, including any airline, Travel Carrier, Travel Agency, travel metasearch engine, or governmental, regulatory, or administrative agency, relating to the use or operation of Skiplagged.com.

54.     Settlement agreements, consent agreements, letters of consent, or license agreements between Skiplagged and any other Travel Carriers, Travel Agencies, travel metasearch engines, airfare consolidators, or global distribution systems relating to Skiplagged's sale of any

Travel Carriers' flights or use of the carriers' trademarks, flight/fare information, or other data/content.

55.     Skiplagged's consideration, evaluation, decisions, and discussions regarding the Airlines Reporting Corporation ("ARC") and International Air Transport Association ("IATA") and whether or not to apply to become an accredited ARC or IATA travel agency.

56.     Presentations, slide decks, handouts, or other informational materials concerning Skiplagged's business plans, strategies, technology, or platform for any trade shows, industry events, investor meetings, pitches, or fundraising or partnership efforts.

57.     Skiplagged's operation of Skiplagged.com, including the terms of use, terms of service, terms and conditions, privacy policy, Rewards Program Terms and Conditions, and any other terms or conditions governing the use of Skiplagged.com, Skiplagged's collection and use of customers' data, and/or customers' use or purchase of Skiplagged's services.

58.     The bases for, and information supporting, the statements on Skiplagged.com, including but not limited to the statements that Skiplagged (1) "Find[s] flights the airlines don't want you to see" and is "exposing loopholes in airfare pricing to save you money"; (2) "Shows you the cheapest regular flights. This way you can be sure you're seeing the best available rates anywhere"; (3) "Exposes inefficiencies in airline pricing, such as hidden-city, to find you deals you can't get anywhere else"; and (4) "Why are we doing this?"

59.     Skiplagged's position and contentions regarding the enforceability and validity of the AA.com Use Agreement.

60.     The bases for Skiplagged's denials of American's factual allegations, as set forth in its Amended Answer and Affirmative Defenses [Dkt. No. 63], and any positions taken or contentions made by Skiplagged in this Lawsuit.

61.     The factual bases for Skiplagged's affirmative defenses, as set forth in its Amended Answer and Affirmative Defenses [Dkt. No. 63].

62.     Skiplagged's discovery responses, including all facts relating to its interrogatory responses, initial disclosures, and any other discovery served upon Skiplagged in this Lawsuit.

63.     The identification, location, control, and custody of any documents or electronically stored information relevant or responsive to any topic above and/or to American's requests for production that have been served on Skiplagged in this Lawsuit.

64.     Skiplagged's document retention and/or destruction policies, procedures, and practices for documents, tangible things, and electronically stored information and data, including all written, verbal, or informal policies, procedures, or practices.

65.     The redemption of Skiplagged Rewards for any American Bookings, including those in which a virtual credit card ("VCC") was used.

66.     Skiplagged's use of Google Puppetier, Google ITA Matrix, Google Flights, Google Cloud, Slack, GitHub, Braze, Stripe, and SendGrid.

67.     Skiplagged's use of any global distribution system ("GDS") or new distribution capability ("NDC").

68.     Skiplagged's user and session metrics, including those measured through Google Analytics, Google Search Console, or other analytics software or reports concerning the number of people who visit any webpage owned by, operated by, or affiliated with Skiplagged that displays American's marks.

69.      Skiplagged's customer engagement data for Skiplagged.com, including Google analytics data, relating to or identifying (i) the consumer demographics of Skiplagged's customers (including but not limited to age, location/geography, income, gender, race/ethnicity, or other identifying information), (ii) repeat customers, (iii) completed transactions, (iv) abandoned and/or uncompleted potential bookings, and/or (v) customer complaints.

70.     Skiplagged's proprietary algorithm for gathering flight and fare information for route and date combinations for customer searches.

71.     Skiplagged's communications and relationships with Binary Capital and Lerer Hippeau and investments made by Binary Capital and Lerer Hippeau.

72.     The settlement between Skiplagged and Southwest Airlines, Co. for Case No. 1:21-cv-05749, in the United States District Court for the Southern District of New York, styled *Skiplagged, Inc. v. Southwest Airlines Co.*

73.     Skiplagged's responses to American's interrogatories and requests for admissions served in this lawsuit.