**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

---

### DEFENDANT SKIPLAGGED, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*/s/ Darin M. Klemchuk*
Darin M. Klemchuk
Texas Bar No. 24002418

KLEMCHUK PLLC
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

*Attorneys for Defendant, Skiplagged, Inc.*

II

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

III.  LEGAL STANDARD ............................................................................................. 5

IV.  ARGUMENTS AND AUTHORITIES ................................................................. 6

   A.  Each of AA's claims are barred by statute of limitations and laches ............................... 6
      1. Each of AA's claims are barred by applicable limitations ............................... 6

      2. AA's Lanham Act claims are barred by laches ............................................. 8

   B.  AA's breach of contract claim fails on the elements ................................................. 8
      1. Skiplagged is not a party to AA's Conditions of Carriage  ............................... 8
      2. AA cannot prove damages for its breach of contracts claim ............................ 9

   C.  AA's tortious interference with Conditions of Carriage Contract claim fails ................. 11
      1. AA's cannot establish each element of its tortious interference claim ....................... 11

      2. AA cannot meet its burden to prove causation or damages for its tortious interference
      claim .................................................................................................. 13

   D.  AA's Lanham Act claims are barred .................................................................. 13
      1. Skiplagged's use of AA's trademarks is fair use, not infringement ........................... 13

         *a. Skiplagged's use of AA's trademarks is the most straightforward, obvious, and
         truthful way necessary to describe AA's own goods and services* ........................... 13

         *b. Skiplagged's use of AA's trademarks does not suggest affiliation, sponsorship, or
         endorsement* ...................................................................................... 14

      2. AA's Lanham Act claims further fail because there is no likelihood of confusion ...... 16

      3. AA cannot prove damages on its Lanham Act claims ................................ 17

   E.  AA's copyright infringement claim fails .............................................................. 18
      1. AA cannot establish the elements of its copyright infringement claim ....................... 18

         *a. AA cannot demonstrate ownership of the copyright at issue* .................................. 18

         *b. AA cannot demonstrate "copying" by Skiplagged* ............................................. 19

      2. AA's copyright infringement claim is barred by the defense of fair use .................... 20

   F.  AA is not entitled to attorneys' fees ................................................................. 22
      1. AA is not entitled to attorneys' fees for its tortious interference claim ....................... 22

      2. AA cannot recover attorneys' fees for its breach of contract claim ........................... 23

      3. AA cannot recover attorneys' fees under Tex. Civ. Prac. Rem. Code § 143.002 ........ 24

   G.  AA is not entitled to permanent injunctive relief ................................................. 24

V.   CONCLUSION .................................................................................................... 25

28334525v1 99460.002.00

# TABLE OF AUTHORITIES

**Cases**

*Adler v. McNeil Consultants, LLC*, No. 3:19-cv-2025-K-BN, 2023 U.S. Dist. LEXIS 154440 .. 17

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001) .......... 5

*Applied Underwriters, Inc. v. Lichtenegger,* 913 F.3d 884, 894 (9th Cir. 2019) ................... 15,16

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v.*
    *Smack Apparel Co.*, 550 F.3d 465, 489 (5th Cir. 2008) ................................................ 13,16,17

*BDO Seidman LLP v. Alliantgroup, L.P.*, No. CIV.A.H-08-905, 2009 WL 1322555 ................ 13

*Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir.)....................................................... 20

*Brown v. City of Hous.*, 337 F.3d 539, 540 (5th Cir. 2003)........................................................... 5

*Burkhart Grob Luft Und Raumfahrt GmbH & Co. KG v. E–Systems, Inc.*,
    257 F.3d 461, 467 (5th Cir.2001) ...................................................................................... 10

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1154 (9th Cir. 2002)............................................. 14

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78, (1994)............................................ 21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, (1986) ..................................................................... 5

*Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013)........................... 25

*CMRE Fin. Servs. Inc. v. Doxo Inc.,* No. 222CV00298RAJBAT, 2022 WL 16701259 ......... 14,15

*Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505
    (5th Cir. 2014).......................................................................................................................... 5

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)............................ 18,19

*Creations Unlimited v. McCain*, 112 F.3d 814 (5th Cir. 1997) ................................................... 20

*Derrick Mfg. Corp. v. Southwestern Wire Cloth*, 934 F. Supp. 796, 804 (S.D. Tex. 1996).......... 7

*Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) ........................................ 8,17

*Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335,
    1340-41 (5th Cir. 1994) ......................................................................................................... 20

*Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 345 n.9 (5th Cir. 1984) ...... 16

*Fillyaw v. Cmty. Nat'l Bank & Tr.*, No. 3:22-CV-1112-N (BH), 2023 WL 6797540 ................. 12

*Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 766 (2nd Cir. 1991) ......................... 20

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, (1994)................... 11

*Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.,* 226 F.3d 387, 392-393 (5th Cir. 2000) ......... 18,19

*Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.,* No. 4:19-CV-358,
    2022 WL 3008501 ................................................................................................................. 25

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, (1985) ........................... 21

*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992)).......................................... 10

*Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1041 (9th Cir. 2003)............................... 13

*Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 516 (5th Cir. 2020) ................... 18

*In re H & M Oil & Gas, LLC*, 514 B.R. 790, 807 (Bankr. N.D. Tex. 2014)................................. 9

*Int'l Info Sys. Sec. Certification Consortium v. Sec. Univ., LLC*, 823 F.3d 153, 159
    (2d Cir. 2016)......................................................................................................................... 15

*Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*, No. CIV.A. H-04-2322,
    2004 WL 3331843 ................................................................................................................... 6

*King v. Ames*, 179 F.3d 370, 375-376 (5th Cir. 1999)................................................................. 20

*Lexington Ins. Co. v. Ferguson*, No. SA-09-CA-214-H, 2009 WL 10700016 ............................ 23

*Lulirama Ltd., Inc. v. Axcess Broad. Servs.*, 128 F.3d 872 (5th Cir. 1997)................................. 19

IV

*Mary Kay, Inc. v. Weber*, 601 F. Supp.2d 839, 859 (N.D. Tex. 2009) ........................................... 7

*Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App. 2010) .................................... 23

*New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992)............... 14, 16

*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998) ................................ 16,17

*Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290 (5th Cir. 2015) ......... 8

*Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 780

(N.D. Tex. 2006)............................................................................................................... 24

*Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014)..................................... 5

*Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4th 715 (5th Cir. 2024)................................. 8

*Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966), *cert.*

*denied*, 385 U.S. 1009, (1967) ........................................................................................ 21

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012)................................... 13,17

*S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d at 765; *Patel*, 940 F. Supp. 2d at 542 .............. 25

*Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477,

486 (5th Cir. 2004).......................................................................................... 14,15,16,17

*Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 166 (5th Cir. 2024) ...................... 6

*Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 459, 461 (5th Cir. 2017) .................... 18

*Suter v. Univ. of Texas at San Antonio*, 495 F. App'x 506, 509 (5th Cir. 2012)........................... 6

*Sw. Recreational Indus., Inc. v. FieldTurf, Inc.*, No. 01-50073, 2002 WL 32783971................. 24

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33, (2001)........................... 16

*Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171,

1174 (5th Cir. 1980)....................................................................................................... 21,22

*U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 705

(W.D. Tex. 2013) ............................................................................................................. 12

*Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314-315 (Tex. 2006) .................................................... 6

*Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 184-185 (5th Cir. 2018 ................ 16

*VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006)................................................... 25

*Wagner Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 743-737 (Tex. 2001 ....................................... 6

*WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 353

(5th Cir. 2021)................................................................................................................... 12

*Wood v. B L Bldg. Co.*, No. CIV.A.H-03-713, 2004 WL 5866352................................................ 20

*XTO Energy Inc. v. Frontier Drilling, LLC*, 549 F. Supp. 3d 526, 535 (N.D. Tex. 2021)............. 9

## Statutes

15 U.S.C. § 1114.................................................................................................................... 1

15 U.S.C. § 1117(a) ............................................................................................................. 18

15 U.S.C. § 1125(a) ............................................................................................................... 1

17 U.S.C. § 101 ............................................................................................................... 1, 19

17 U.S.C. § 107 .................................................................................................................... 21

17 U.S.C. § 201(a) .......................................................................................................... 18,19

17 U.S.C. § 201(b) ............................................................................................................... 18

17 U.S.C. § 507(b) ................................................................................................................. 7

## Rules

CIV. PRAC. & REM. CODE § 16.004(a)(3) ......................................................................... 6

V

FED. R. CIV. P. 56(c) ................................................................................................. 5

Tex. Civ. Prac. & Rem. Code § 143.001(a) .............................................................. 24

Tex. Civ. Prac. & Rem. Code § 143.001(b) .............................................................. 24

Tex. Civ. Prac. & Rem. Code § 143.002 .............................................................. 23,24

Tex. Civ. Prac. & Rem. Code § 38.001 ............................................................... 23,24

VI

## I.  **INTRODUCTION**

By this action, Plaintiff, American Airlines, Inc. ("AA"), is attempting to use this Court to gag an information source for the cost-saving practice of hidden city ticketing and eliminate the natural consequence of AA's hub-and-spoke routing system. As explained by Professor Sheldon Jacobson, hidden-city flying is the consumers' attempt to avoid the high prices of flying direct into or out of airline hubs, like DFW airport:

> Airlines use a complex system to price their tickets. This complexity means that it is highly likely that the prices paid for most tickets on any given flight are different. Such price differences are a consequence of the hub-and-spoke system used by legacy airlines such as Delta, United, and American, and dynamic pricing models that squeeze every last dollar out of every seat to make it more likely for airlines to stay profitable. One consequence of this model is hidden-city ticketing, sometimes referred to as skiplagging. Hidden-city ticketing exploits the economic model employed by airlines. Airlines must compete on every route that they offer tickets for…. Airlines are not pleased when travelers exploit this loophole in their economic model.[1]

Defendant Skiplagged, Inc. ("Skiplagged") provides information that allows consumers to, among other things, make informed travel decisions and save money. To eliminate Skiplagged, AA filed a scattershot of claims based on unsubstantiated allegations that Skiplagged books tickets for customers, purchases and sells flight tickets, uses information directly from AA's website, and only offers hidden-city ticket options. These allegations have no evidentiary support and summary judgment is the reasonable means to put an end to AA's attempts to eliminate the natural consequences of its market share dominance through litigation.

After over seven years of "investigating" Skiplagged and punishing AA customers who utilize Skiplagged (for any type of ticketing), AA filed suit in August 2023, claiming: (1) breach of the aa.com Use Agreement and AA's Conditions of Carriage; (2) tortious interference with AA's Conditions of Carriage; (3) trademark infringement under 15 U.S.C. § 1114; (4) false designation of origin and unfair competition under 15 U.S.C. § 1125(a); (5) copyright infringement under 17 U.S.C. § 101; (6) attorneys' fees; and (7) a permanent injunction. Dkt 8. AA's claims fail

---

[1] *The price-cutting loophole the airlines hate* – Sheldon H. Jacobson, Opinion Contributor. *The Hill*, July 20, 2023.

28334525v1 99460.002.00

because: (1) each claim is barred by applicable limitations and laches; (2) AA cannot prove a breach of contract, as Skiplagged is not a party to AA's Conditions of Carriage and AA cannot prove any legitimate, non-speculative contract-related damages; (3) AA cannot establish each essential element of its tortious interference claim; (4) Skiplagged's use of AA's trademarks is fair use, as there is no likelihood of confusion; (5) AA cannot establish each essential element of its copyright infringement claim, which is also barred by the defense of fair use; and (6) AA cannot prove any related actionable damages. Further, AA is not entitled to recovery attorneys' fees or to a permanent injunction.

As Professor Jacobson explained just a few days ago,

> [S]kiplagging is a by-product of how airlines set airfares and operate their system of flights. It is the unintended consequences of yield management, the method that prices seats on airplanes based on supply, demand, and competition, and the hub-and-spoke system. Of course, if air ticket prices were based solely on distance traveled and not competition, then skiplagging would never occur. But then airlines would have total overall lower revenue, which means whatever they would gain by eliminating skiplagging would be far overshadowed by suboptimal pricing across their entire network of flights.[2]

The Court should grant this summary judgment motion.

## II.    BACKGROUND

The following facts are not in dispute. Skiplagged is an online travel information provider. Its business plan is simple—assist consumers in making travel decisions by showing airline itineraries, hotel availability, and other travel information through its website, Skiplagged.com. Ex. 1, Declaration of Aktarer Zaman ("Zaman Decl") ¶ 2 (App. p. 2).[3] Skiplagged uses a unique algorithm, developed by its founder, Aktarer Zaman, to enable consumers to identify affordable pricing options for travel, including flights, empowering consumers to exercise their buying power in a more informed, efficient, and cost-effective manner. *Id.* at ¶ 4. Skiplagged began publishing travel information about AA routes and fares in 2013 and has been using the AA logo since May

---

[2] *Should skiplagging to get a cheaper flight be banned?* Sheldon H. Jacobson, *Chicago Tribune News*, June 21, 2024.
[3] Pursuant to L.R. 7.1(i), Skiplagged concurrently files its Appendix in Support of its Motion for Summary Judgment.

2017.[4] *Id.* at ¶ 2. Since August 2018, Skiplagged facilitated customers purchasing over 1.3 million flight tickets from AA, resulting in hundreds of millions of dollars in revenue to AA. *Id.* at ¶ 3.

In response to a consumer search, Skiplagged provides flight itinerary information for direct flights, itineraries with layovers in which the traveler will complete each leg of the itinerary, hidden-city flights[5], and other cost saving ticketing options. *Id.* at ¶ 5. As Professor Jacobson explained and there is no dispute, consumers utilize hidden city tickets because they are cheaper than the direct flight price to the passenger's desired destination.[6] *Id.* at ¶ 7. The ticket is no different than any other, but consumers exercise their right to purchase the service and only utilize a portion of what he or she purchased as a money saving strategy. *Id.* Skiplagged.com explains what hidden city ticketing is to consumers both as an informational page and when a hidden-city option is presented. *Id.* at ¶ 8, *See* Ex. 1-A (App. p. 8).

Hidden-city ticketing is available because certain airlines, such as AA, make the strategic decision to offer flights through a layover hidden-city for a cheaper fare on the way to another destination. Ex. 1, Zaman Decl., ¶ 9 (App. p. 3). Skiplagged did not invent hidden city ticketing—the practice has been around for decades and has been utilized by companies and individual customers. *Id.* at ¶ 9. For example, a consumer could use Google flights, metasearch websites, or even an airline's own website to locate layover cities that they intend as their final destination. *Id.; See, e.g.,* Ex. 2-A (App. p. 16).[7] There are well-known limitations and risks to utilizing hidden-city ticketing, including not being able to check luggage, the risk of a carry-on being gate checked to the ticketed final destination, and having to show a passport when the final destination is international. Ex. 1, Zaman Decl. ¶ 9 (App. p. 3). And, as Professor Jacobson points out in his articles, it is no secret that some airline carriers do not like hidden city because they are unable to

---

[4] Skiplagged incorporated in 2015. *Id.*
[5] Hidden-city is a normal airline ticket that includes at least one layover, but rather than completing the itinerary to the final destination, the passenger does not continue on after one of the layover destinations. *Id.* at ¶ 6.
[6] For example, a passenger wishes to fly from Atlanta to Orlando. The flight from Atlanta to Dallas with a layover in Orlando is cheaper than the direct flight from Atlanta to Orlando. Thus, the passenger purchases the itinerary of Atlanta-Orlando-Dallas and exits in Orlando. *Id. at* ¶ 7.
[7] In March 2018, AA discussed Skiplagged and admits, ███████████████████████████████████
████████████████████████ Ex. 2-A (App'x p. 16).

3

force consumers to pay a premium for the same seat on the same exact flight to the layover destination as a direct flight. *Id.* at ¶ 10. Indeed, to punish passengers that may have purchased a hidden city ticket, airlines (including AA) are known to refuse to honor the ticket, threaten to invalidate frequent flyer miles, and use other forms of intimidation. *Id.*

Skiplagged informs consumers of the above risks and limitations associated with hidden-city ticketing on its website as well as during the search process and requires consumers to acknowledge they have read and understand these warnings before proceeding. *Id* at ¶ 11; Exs. 1-A, 1-B (App. p. 8-10); Ex. 2-B (App. pp. 26, 29). This seeks to ensure consumers are not confused about their hidden-city ticket choices. Ex. 1, Zaman Decl., ¶ 11 (App. p. 4).

Skiplagged provides flight itinerary information through its algorithm by either predicting the route and fare information or receiving the information from third parties such as metasearch engines or online travel agencies. *Id.* at ¶ 12. Contrary to AA's allegations, Skiplagged does not obtain information directly from AA's website or internal inventory. *Id.* at ¶ 12. As to Skiplagged's predictions of route and pricing information, this information is created by a system that utilizes machine learning to predict flight routes and fares. *Id.* at ¶ 13. Mr. Zaman created this system to learn from the third-party data obtained as well as visitor use of Skiplagged.com. *Id.*

Consumers who wish to book a flight itinerary identified by Skiplagged may do so by: (1) using the flight information to purchase tickets directly on the airline or other third party website, (2) being redirected by Skiplagged to an online travel agency, (3) being redirected by Skiplagged to the airline's website, (4) being provided a link to the airline's website, or (5) utilizing Skiplagged's "book with Skiplagged" feature. *Id.* at ¶ 14; Ex. 3, Deposition of Marcial Lapp ("Lapp Depo.") 60:16-61-3 (App. pp. 142-43). The book with Skiplagged feature allows a customer to fill out a passenger and billing information form generated by Skiplagged.com, which is then utilized by a Google program and a form-filling system to fill-in such information into the airline's booking and payment forms. Ex. 1, Zaman Decl., ¶ 14 (App. p. 5). When utilizing the book with Skiplagged feature, the customer is presented with and agrees to pay a service fee to

4

Skiplagged ranging from $0 to $35.00 at max.[8] *Id.*; *See, e.g.,* Ex. 2-B (App. p. 27). The flight is then purchased directly by the customer from the airline and the airline directly charges the customer's credit card. *Id.*; Ex. 2-A (App. pp. 34-35, 37). At no point does Skiplagged act as an agent to book customer flights, purchase or sell flight tickets. Ex. 1, Zaman Decl., ¶ 15 (App. p. 5); Ex. 3, Lapp Depo. 42:6-21 (App. p. 141).

After knowing about and "investigating" Skiplagged's operations for over seven years, AA filed this lawsuit in August 2023, falsely alleging that Skiplagged purchases and sells AA tickets and scrapes information from AA's website, allegations that AA knew at the time and has confirmed are incorrect. Dkt. 8. Prior to filing suit, AA never demanded Skiplagged cease any alleged bad acts or warned of alleged damages. Ex. 1, Zaman Decl., ¶ 16 (App. p. 5).

## III.    LEGAL STANDARD

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Brown v. City of Hous.*, 337 F.3d 539, 540 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). "A genuine dispute as to material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (internal quotation marks omitted).

While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it need not negate the elements of the nonmovant's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014). Once a movant fulfills its initial burdens, the nonmovant must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, (1986).

---

[8] There are instances where a customer utilizing Skiplagged is not charged any service fee. *Id.*

5

## IV.    ARGUMENTS AND AUTHORITIES

### A.  Each of AA's claims are barred by statute of limitations and laches

#### 1.  Each of AA's claims are barred by applicable limitations

AA's breach of contract claim[9] is barred by Texas's four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). A cause of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 166 (5th Cir. 2024) (internal citation omitted). Thus, "a cause of action for breach of contract accrues at the moment the contract is breached." *Id.* For alleged serial breaches, there are only limited circumstances where more than one limitations period applies—none of which exist in this case.[10] *Id.* at 168-169. Moreover, the discovery rule will rarely apply in a breach of contract case, because contracting parties are expected to exercise due diligence in enforcing their contract rights within the limitations period. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314-315 (Tex. 2006); *Wagner Brown, Ltd. V. Horwood*, 58 S.W.3d 732, 743-737 (Tex. 2001). Thus, limitations on AA's entire breach of contract claim began to run when Skiplagged first allegedly breached the Use Agreement and Conditions of Carriage. And, even if the discovery rule applies, AA has known about Skiplagged's alleged breaches since at least 2016.

AA's claim for tortious interference of its Conditions of Carriage is barred by Texas's two-year statute of limitations. *See Suter v. Univ. of Texas at San Antonio*, 495 F. App'x 506, 509 (5th Cir. 2012) (tortious interference claims are subject to a two-year statute of limitations). The continuing tort doctrine does not apply to tortious interference claims. *Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*, No. CIV.A. H-04-2322, 2004 WL 3331843, at *11 (S.D. Tex. Nov. 15, 2004).

---

[9] For both the aa.com Use Agreement and separate Conditions of Carriage contract.

[10] "Texas courts have recognized serial accrual of breaches in a few discrete instances…: (1) when the breach is of an installment contract; (2) when the defendant's wrongful conduct caused temporary (as opposed to permanent) injuries to real property; and (3) in the very limited circumstance[] when the same wrongful conduct causes distinct legal injuries, as when exposure to asbestos gives rise to separate diseases that manifest years or even decades apart." *Sheet Pile,* 98 F.4th at 168 (internal quotations and citations omitted).

6

A civil action under the Copyright Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). District courts apply a four-year limitations period to trademark infringement. *Mary Kay, Inc. v. Weber*, 601 F. Supp.2d 839, 859 (N.D. Tex. 2009); *Derrick Mfg. Corp. v. Southwestern Wire Cloth*, 934 F. Supp. 796, 804 (S.D. Tex. 1996).

AA filed its Complaint on August 17, 2023. Dkt. 1. Putting aside the factual inaccuracies of AA's allegations, summary judgment evidence establishes Skiplagged has been practicing the methods at issue in this case since 2013. Ex. 1, Zaman Decl., ¶ 2 (App. p. 2). Limitations expired on the two-year claims in 2015, the three-year claims in 2016, and the four-year claims in 2017.

Further, AA had actual knowledge of Skiplagged's alleged actions for more than four years prior to initiating this lawsuit. The undisputed evidence shows: (1) in June 2017, ███████ ████████████████████████████████████████████████████████████████ ███ (Ex. 2-C (App. p. 39)); (2) in May 2017, AA requested a third party restrict access to content "███████████████████████ (Ex. 2-D (App. p. 43)); (3) in March 2018, ███████ █████████████████████████████ (Ex. 2-E (App. pp. 47-48)); (4) from March to October 2018, AA corresponded via email titled "Skiplagged" discussing Skiplagged extensively (Ex. 2-F (App. pp. 51-57)); (5) in May 2018, AA stated it had been ████████ ████████████████████████████████████████████████████████████████ ██████████" Ex. 2-G (App. p. 59); Ex. 4, Deposition of Scott Chandler ("Chandler Depo.") 44:16-45:10 (App. pp. 151-52); (6) from at least November 2018 through June 2019, AA prevented customers from boarding flights with tickets facilitated by Skiplagged. *See* Ex. 2-H – 2-L (App. pp. 65-84).

Accordingly, AA cannot dispute that it knew of Skiplagged's alleged actions at least as of 2016 and certainly by June 2019. Thus, even operating off AA's actual knowledge, limitations expired on the two-year claims as early as 2018 and as late as June 2021, the three-year claims as early as 2019 and as late as June 2022, and the four-year claims as early as 2020 and as late as June 2023. The Court should enter judgment against each of AA's claims on that ground alone.

7

### 2. AA's Lanham Act claims are barred by laches

A defendant urging a laches defense must establish: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4th 715 (5th Cir. 2024) (internal quotations omitted). The time period for laches begins when an owner of a mark first knew or should have known of the accused use. *Id.* (citation omitted); *see also Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). In the Fifth Circuit, courts analyzing the laches defense have focused on whether the defendant made significant business decisions in reliance on the plaintiff's conduct. This includes, when a defendant "makes major business investments or expansions that depend on the use of the marks," "build[s] up a valuable business around . . . [the plaintiff's] trademark" which would be lost if the mark could no longer be used or, by foregoing the use of the mark, would have "destroyed the investment of capital in the [business]." *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290 (5th Cir. 2015).

It is undisputed that AA had actual knowledge of Skiplagged's use of AA's trademarks since at least 2016. *See* Section A(1) *supra.* During that time, relying on AA's silence and lack of objection (amounting to consent), Skiplagged invested significant time, money, and effort into its website, grew its user base, expanded its business worldwide, and grew its revenue from approximately $800,000 to over $20,000,000 in 2023. Ex. 1, Zaman Decl., ¶ 17 (App. p. 5). Specifically, Skiplagged redesigned its website, android app, and iOS app.[11] *Id.* Skiplagged also invested in search engine optimization (SEO) for its landing pages and created a customer loyalty program.[12] *Id.* As such, AA's Lanham Act claims are barred by laches.

### B. AA's breach of contract claim fails on the elements

### 1. Skiplagged is not a party to AA's Conditions of Carriage

---

[11] The 2016 version of Skiplagged's website is available at https://web.archive.org/web/20161111072508/https://skiplagged.com/. Skiplagged's Android app is available at https://play.google.com/store/apps/details?id=com.skiplagged&hl=en_US. Skiplagged's iOS app is available at https://apps.apple.com/us/app/skiplagged-flight-booking/id823443083.

[12] Information regarding Skiplagged's customer loyalty program is available at https://skiplagged.com/rewards.

AA cannot prevail on Count I for breach of the Use Agreement and Conditions of Carriage. AA has no evidence that Skiplagged ever accessed its website or electronic ecosystem, and thefore could not have entered into the Use Agreement. Further, Skiplagged is not and never has been a party to the Conditions of Carriage. Under Texas law, "the benefits and burdens of a contract belong solely to the contracting parties…" *XTO Energy Inc. v. Frontier Drilling, LLC*, 549 F. Supp. 3d 526, 535 (N.D. Tex. 2021)(internal quotation omitted). The AA Conditions of Carriage, in AA's words, is part of the flight ticket and constitutes "a contract between [] the passenger, and American Airlines." Ex. 2-M (App. p. 89).[13]

Skiplagged has never been a passenger on any AA flight. Skiplagged does not and has never purchased flight tickets on aa.com, on behalf of itself or customers. Ex. 1, Zaman Decl., ¶ 15 (App. p. 5). Customers who utilize Skiplagged for flight travel are charged directly by the airline—including AA, and no money passes through Skiplagged. *Id.*; *See, e.g.,*Ex. 2-B (App. pp. 34-35, 37). Because there is no privity between AA and Skiplagged, Skiplagged is not a party to the Use Agreement or Conditions of Carriage and could not breach either agreement.

### 2. AA cannot prove damages for its breach of contracts claim

Additionally, AA's breach of contracts claim (for both agreements) fails because AA cannot prove damages. *In re H & M Oil & Gas, LLC*, 514 B.R. 790, 807 (Bankr. N.D. Tex. 2014) (without proof of damages, a claim for breach of contract fails). AA's damage theory is based on alleged lost profits, measured as amounts AA would have received from a customer if they purchased a direct flight, directly from AA, as opposed to a hidden-city flight. Ex. 5, Declaration of Gary Gutzler ("Gutzler Decl."), ¶ 5 (App. p. 303); Ex. 6. Deposition of David N. Fuller ("Fuller Depo.") p. 70 (App. p. 163).[14]

Though recovery for lost profits does not require the loss "be susceptible of exact

---

[13] Indeed, AA states this in large font at the top of the Conditions of Carriage posted on AA's website. Ex. 2-N (App. p. 92). Despite the version produced (the earliest in time being February 2020) this language remains on AA's website even today. *See* https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp?anchorEvent=false&from=footer?

[14] The deposition of David N. Fuller was conducted on June 27, 2024. Skiplagged submits a rough draft of the corresponding transcript and will supplement with the final transcript once it is available.

calculation… [t]he amount of the loss must be shown by competent evidence with reasonable certainty." *Id.* (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992)). "At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id.* Without objective, non-speculative evidence, such as credible evidence regarding the probability of a potential customer's alternative actions to utilizing Skiplagged, there is nothing upon which the Court could base a lost profits calculation. *Id*; *Burkhart Grob Luft Und Raumfahrt GmbH & Co. KG v. E–Systems, Inc*., 257 F.3d 461, 467 (5th Cir.2001) ("A plaintiff's failure to show either the existence or amount of lost profits will necessarily prevent their recovery.").

But AA's lost profits calculation is based on the erroneous assumptions that: (1) every ticket at issue is a hidden city ticket for which AA lost profits, and (2) but for Skiplagged, a potential customer would have purchased an AA direct flight at the same time and date as their use of Skiplagged.com for the same travel dates and times. Ex. 5, Gutzler Decl., ¶ 6 (App. p. 158); Ex. 6, Fuller Depo. pp. 70 (App. p. 163). Both assumptions are speculative and conclusory. The evidentiary record is void of any objective, non-speculative evidence to support AA's claim for contract breach damages.

Notably missing is any factual basis upon which the Court may conclude that every AA flight purchase facilitated by Skiplagged resulted in lost profits to AA. There can be no dispute that AA reaped hundreds of millions of dollars from tickets AA sold to Skiplagged users. Skiplagged provides information to consumers regarding the lowest priced travel itineraries. This includes non-hidden city options such as direct flights or itineraries with layovers for which the traveler will complete all legs of the itinerary. Ex. 1, Zaman Decl., ¶ 5 (App. p. 3). There is no dispute that there is no difference between the amount AA received for a flight ticket it sold to a Skiplagged user and what AA believes it should have received for a non-hidden city ticket because hidden city is not at issue. Ex. 5, Gutzler Decl., ¶ 7 (App. p. 158). In other words, AA received the

10

same amount of money for the AA ticket that it would have without Skiplagged.[15] *Id.* Thus, AA's assumption that every ticket facilitated by Skiplagged resulted in lost profits to AA is not supported by any competent summary judgment evidence. Nor is there any competent evidence that AA lost money in connection with the abandoned leg of the hidden city ticket, for which it was paid, especially in light over oversold flights, standby passengers, and the lack of evidence that AA would have sold the seat for the extra leg if it had known that the hidden city traveler would not continue to the final destination.

Moreover, AA's damages theory lacks any factual basis upon which the Court may conclude that but for Skiplagged's alleged breach of AA agreements, potential customers would have purchased an AA direct flight at a higher price at the same time and date as their use of Skiplagged.com. AA and its expert fail to address a consumer's alternative choices of another airline, a booking agency, another date and time of travel, another booking date, the ability to drive, or decision not to travel. *Id.* at ¶ 8.[16] The absence of such proof is fatal to AA's breach claim. Further, AA has no customer testimony, data, survey, or analysis to support its assumption. Consequently, AA's lost profits calculations are entirely based on an erroneous assumption rather than objective, non-speculative evidence upon which the alleged lost profits could be quantified. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, (1994) (Unsubstantiated assertions, improbable inferences and unsupported speculation are not competent summary judgment evidence.). Because AA cannot carry its burden of proof on the damage element of its contract breach claim, summary judgment should be granted dismissing this claim.

### C. AA's tortious interference with Conditions of Carriage Contract claim fails

#### 1. AA's cannot establish each element of its tortious interference claim

To prevail on its interference claim, AA must prove "(1) an existing contract subject to

---

[15] Note, ███████████████████████████████████
███████████████████████████ Ex. 3, Lapp Depo. 120:20-121:5 (App. p. 144-45).
[16] Indeed, ███████████████████████████████████
██████████ . Exs. 2-O, 2-P (App. pp. 113, 117).

11

interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 353 (5th Cir. 2021), as revised (Mar. 2, 2021) (internal citation omitted). AA must show that Skiplagged "knowingly induced one of the contracting parties to breach its obligation under the contract." *Fillyaw v. Cmty. Nat'l Bank & Tr.*, No. 3:22-CV-1112-N (BH), 2023 WL 6797540, at *6 (N.D. Tex. Aug. 22, 2023), *report and recommendation adopted*, No. 3:22-CV-1112-N (BH), 2023 WL 6797496 (N.D. Tex. Oct. 13, 2023). AA must show Skiplagged had "actual knowledge of the contract" or knowledge of facts "that would lead a reasonable person to believe in the existence of the contract" at issue. *Id.*[17]

Though AA's Complaint implies that Skiplagged's alleged "promoting prohibited forms of travel, and asking its customer to lie about it to American" occurs after the passenger enters into the Conditions of Carriage with AA (Dkt. 8, ¶¶ 100-103), the competent summary judgment evidence proves otherwise. Passengers do not enter into any agreement with AA until *after* their Skiplagged interactions. *See e.g.* Ex. 2-B (App. pp. 20-37) (detailing a consumer's steps through searching for and selecting an itinerary through Skiplagged.com).

Specifically, a customer does not become a "passenger" or enter into AA's Conditions of Carriage until he or she buys a ticket or is part of a purchased reservation. *See, e.g.,* Ex. 2-N (App. p. 92-111). The Conditions of Carriage makes this clear, stating "[when] you buy a ticket or travel on a flight provided by American Airlines, you agree…" *See* aa.com Conditions of Carriage.[18] Skiplagged's alleged "promotion" of hidden city tickets occurs *before* the customer buys a flight from AA. Ex. 2-B (App. pp. 21-27).[19] Consequently, there is no genuine dispute that at the time of Skiplagged's alleged interference, the Conditions of Carriage between the passenger and AA

---

[17] Importantly, claims for interference with an existing contract and interference with a prospective contract are different, with different elements to prove, including that interference with a prospective contract requires proof of an independent tort. *U.S. Enercorp, Ltd. v. SDC Montana Bakken Expl., LLC*, 966 F. Supp. 2d 690, 705 (W.D. Tex. 2013). AA only pleads a claim for breach of an existing contract—the Conditions of Carriage.

[18] https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp?anchorEvent=false&from=footer?

[19] ███████████ a customer is presented with hidden city itinerary options and warned about airline interactions prior to purchasing a ticket from AA. Ex. 2-B (App. pp. 21-27).

did not exist and Skiplagged could not have interfered with it.

### 2. AA cannot meet its burden to prove causation or damages for its tortious interference claim

Similar to AA's breach of contract claim, AA cannot support the damages element of its tortious interference claim. Under Texas law, "neither the fact and amount of damages alleged can be speculative, both must be established with 'reasonable certainty'" and a plaintiff's "failure to show either acts as a bar to recovery." *Roehrs v. Conesys, Inc*., 332 F. App'x 184, 186 (5th Cir. 2009). AA alleges the same damages for its breach of contract and interference claims—lost profits. For the same reasons set forth in Section B(2) above, AA's alleged causation and damages are speculative and entirely based on erroneous assumptions, rather than objective, non-speculative evidence upon which the alleged lost profits could be quantified or proven with competent causation evidence. Thus, AA fails to carry its burden on its tortious interference claim and such claim should be foreclosed.

### D. AA's Lanham Act claims are barred

### 1. Skiplagged's use of AA's trademarks is fair use, not infringement

Nominative fair use is a type of fair use defense to Lanham Act claims and is available where the defendant uses the *plaintiff's trademark* to describe the *plaintiff's product*. *BDO Seidman LLP v. Alliantgroup, L.P*., No. CIV.A.H-08-905, 2009 WL 1322555, at *7-9 (S.D. Tex. May 11, 2009); *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1041 (9th Cir. 2003) (internal quotations omitted); *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 154 (4th Cir. 2012) (nominative fair use differs from typical infringement, where defendant passes off plaintiff's good as his own, because defendant uses the plaintiff's mark to refer to the plaintiff's own goods).

To employ the defense in the Fifth Circuit, a defendant "(1) may only use so much of the mark as necessary to identify the product or service and (2) may not do anything that suggests affiliation, sponsorship, or endorsement by the markholder." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co*., 550 F.3d 465, 489 (5th Cir. 2008).

### a. Skiplagged's use of AA's trademarks is the most straightforward, obvious, and

13

*truthful way necessary to describe AA's own goods and services*

What is "reasonably necessary to identify the plaintiff's product" differs from case to case. *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1154 (9th Cir. 2002). "Indeed, it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark." *New Kids on the Block v. News Am. Pub., Inc*., 971 F.2d 302, 306 (9th Cir. 1992). Similarly, where "use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point." *New Kids*, 971 F.2d at 309.

Here, Skiplagged includes the mark of each airline in order to accurately, and efficiently, describe each flight shown on its comparative website. *See, e.g.* Ex. 2-B (App. p. 21). There is no genuine issue of material fact that Skiplagged uses AA's trademarks only to identify flights *offered by AA*, such use is, therefore, only as necessary to identify AA as the source of those goods and services. *Scott Fetzer Co. v. House of Vacuums, Inc*., 381 F.3d 477, 486 (5th Cir. 2004) ("nominative use of a mark – where the only word reasonably available to describe a particular thing is pressed into service - lies outside the strictures of trademark law"). Likewise, Skiplagged cannot advertise or offer its own services (comparative analysis of airfare) without referring to the airlines by name. *Cairns*, 292 F.3d at 1154. Such use is not trademark infringement, does not infringe upon AA's trademarks, and is appropriate as a matter of law. *CMRE Fin. Servs. Inc. v. Doxo Inc.,* No. 222CV00298RAJBAT, 2022 WL 16701259, at *5 (W.D. Wash. Oct. 7, 2022), *report and recommendation adopted*, No. 222CV00298RAJBAT, 2022 WL 16699090 (W.D. Wash. Nov. 3, 2022).

### b.  Skiplagged's use of AA's trademarks does not suggest affiliation, sponsorship, or endorsement

Importantly, "intent to compete is not tantamount to intent to confuse." *Scott Fetzer Co.,* 381 F.3d at 485. The gravamen of AA's complaints is that when shown a choice of flights *offered by AA*, consumers choose the less expensive flight. Yet exposing pricing variations does not equate to an intent to confuse. Here, nothing on Skiplagged.com claims, or even infers, that it is approved,

14

endorsed, or "authorized" by AA. Rather, Skiplagged's website prominently displays its own, separate trademark, makes numerous statements expressing that it is not AA (or any other airline), and clearly displays the trademarks of various airlines in order to identify which carrier offers each flight. *See Doxo, Inc.,* 2022 WL 16701259, at *7-9 (that each page of Doxo's website featured the Doxo word mark, logo, and banners, included disclaimers that Doxo was not affiliated with each biller, and included the service mark for overlapping billers, demonstrated a lack of affiliation with the plaintiff); *See, e.g.,* Ex. 2-B (App. pp. 21-26). Moreover, Skiplagged's "warning" that "[a]irlines don't like when you miss flights to save money so don't do this often" is a strong indication that Skiplagged does not suggest any affiliation, sponsorship, or endorsement, but instead, is providing travelers with information airlines oppose. *Id.* (App. p. 26). Indeed, Skiplagged's terms and conditions make clear that even links on its website are not endorsed by Skiplagged and Skiplagged makes no representations regarding such links. Ex. 2-Q (App. pp. 126-127).

Skiplagged makes clear to consumers that it is not AA, or any other of the airlines included in the search results, but rather is merely comparing the flights of various airlines in order to assist consumers in finding the lowest fares possible. *Scott Fetzer Co.,* 381 F.3d at 486 (plaintiff's brand was one of many brands listed and was evidence of a lack of any claim of affiliation, sponsorship, or endorsement). There is nothing actionable about that.

Moreover, the use of a plaintiff's mark to critique a plaintiff's products strongly suggests no sponsorship or endorsement. *See Applied Underwriters, Inc. v. Lichtenegger,* 913 F.3d 884, 894 (9th Cir. 2019). Skiplagged's website exists for the purpose of assisting consumers in locating lower airfares not advertised by airlines, leading to the tagline that Skiplagged helps consumers "Find flights the airlines don't want you to see."[20] *See also Int'l Info Sys. Sec. Certification Consortium v. Sec. Univ., LLC,* 823 F.3d 153, 159 (2d Cir. 2016) (disclaimers on ads further served to reduce any suggestion of sponsorship or endorsement). The comparative—and critical—nature

---

[20] *See* https://skiplagged.com/.

28334525v1 99460.002.00

of Skiplagged's website undermines any argument or inference of endorsement or sponsorship and satisfies the second element of the nominative fair use defense. *Applied Underwriters, Inc.,* 913 F.3d at 894; *see also New Kids,* 971 F.2d at 308-309.

For these reasons, Skiplagged's use of AA's trademarks to describe (and compare) AA's own goods and services is not trademark infringement, but nominative fair use and Plaintiff's Lanham Act claims must fail as a matter of law.

### 2. AA's Lanham Act claims further fail because there is no likelihood of confusion

As noted above, "intent to compete is not tantamount to intent to confuse." *Scott Fetzer Co.*, 381 F.3d at 485. Thus, while AA is upset that Skiplagged educates consumers about lower fares offered by AA (and other major airlines) rather than the more expensive flights that generate more revenue for AA, increasing competition among the airlines (and assisting consumers in the process) is legitimate competition, not an intent to confuse. Viewed in this context, as the Fifth Circuit requires, there is no likelihood of confusion and AA's Lanham Act claims must fail as a matter of law. *Bd. of Supervisors*, 550 F.3d at 489.

Likelihood of confusion is an essential element of AA's Lanham Act claims. *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 184-185 (5th Cir. 2018). AA must show "a probability of confusion, which is more than a mere possibility of confusion." *Id.* When assessing whether use of a mark creates a likelihood of confusion Fifth Circuit courts consider the so-called "digits of confusion"—(1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *Id.* These digits "are not an end in themselves, and all are not of equal significance" but "serve only as guides on the analytical route to the ultimate determination of whether confusion is likely to result." *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998), abrogated on other grounds by *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33, (2001); *see also Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336,

16

345 n.9 (5th Cir. 1984). Thus, even a positive finding on most of the digits of confusion does not require a court to find a likelihood of confusion. *Pebble Beach,* 155 F.3d at 546-547, citing *Elvis Presley,* 141 F.3d at 194.

Because Skiplagged is referring to AA's goods rather than Skiplagged's own goods, context is key. *Scott Fetzer Co.,* 381 F.3d at 485. There can be no confusion when the marks were used to describe or refer to AA's *own goods*. Indeed, "a court ordinarily should consider a nominative fair use claim in conjunction with its likelihood-of-confusion analysis in order to avoid lowering the standard for confusion." *Bd. of Supervisors,* 550 F.3d at 489. In fact, "[i]n the context of a referential or nominative type of use, the application of the traditional multi-factor test is difficult because often many of the factors are either unworkable or not suited or helpful as indicators of confusion in this context." *Rosetta Stone*, 676 F.3d at 154.

Here, only AA's marks are at issue—marks being used only to refer and direct consumers to AA's own goods and services. Thus, the digits of confusion do not accurately reflect a true likelihood of confusion because Skiplagged is not using the marks as its own. Instead, Skiplagged is simply providing a service that directs consumers to AA, where consumers then purchase directly from AA (not Skiplagged). This case, then, is more akin to comparative advertising cases and the key factor is whether Skiplagged's use infers some sponsorship, approval, or endorsement by AA. *Pebble Beach*, 155 F.3d at 546-547; *Scott Fetzer Co.,* 381 F.3d at 485. As shown in detail above, it does not.

At their core, AA's claims are not that Skiplagged is using AA's trademarks to "palm off" separate goods and services not originating with AA, but rather that Skiplagged is educating consumers on how to find low airfares offered (but not advertised) by AA. Thus, no likelihood of confusion exists, and AA's Lanham Act claims must fail as a matter of law.

### 3. AA cannot prove damages on its Lanham Act claims

Damages are an essential element of AA's trademark claims; if a Lanham Act plaintiff cannot show a loss for which it needs compensation, it cannot receive a compensatory award. *Adler*

*v. McNeil Consultants, LLC*, No. 3:19-cv-2025-K-BN, 2023 U.S. Dist. LEXIS 154440 at *23-24 (N.D. Tex. July 27, 2023), citing *Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 516 (5th Cir. 2020); *see also id.* at 515 ("Lanham Act awards are compensatory, not punitive. 15 U.S.C. § 1117(a). The goal of these awards is to achieve equity between the parties"); *see also Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 459, 461 (5th Cir. 2017) (plaintiff can prove Lanham Act liability but fail to satisfactorily demonstrate tangible harm that would justify a monetary award). The requirement to prove compensable harm to justify monetary damages for a Lanham Act claim is separate from the requirement to prove injury for the purposes of establishing liability. *Id.*

Here, there is no evidence that AA suffered compensable harm attributable to Skiplagged's actions—in fact, all airfare was purchased *from AA* resulting in profits to AA. AA fails to identify a single instance in which AA's mark was used to refer to goods or services *other than* AA's. Without such evidence, AA cannot recover on its Lanham Act claims. *Id.* On this additional basis, AA's Lanham Act claims must fail as a matter of law.

### E.  AA's copyright infringement claim fails

#### 1.  AA cannot establish the elements of its copyright infringement claim

An action for copyright infringement requires the plaintiff to show its own "ownership" of the material as well as "copying" of the material by the defendant. *Geoscan, Inc. of Tex. v. Geotrace Techs., Inc.,* 226 F.3d 387, 392-393 (5th Cir. 2000). AA fails to establish either element as a matter of law.

##### a.  *AA cannot demonstrate ownership of the copyright at issue*

Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work," which is "the party who actually creates the work," *i.e.*, "the person who translates an idea into a fixed, tangible expression entitled to copyright protection." 17 U.S.C. § 201(a); *see also Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). One exception to this rule is "work for hire." *See* 17 U.S.C. § 201(b). As defined by the statute, "work for hire" means (1)

18

"a work prepared by an employee within the scope of his or her employment;" or (2) "a work specially ordered or commissioned. . .if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *See* 17 U.S.C. § 101. Thus, "in the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author" and, "unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." *Lulirama Ltd., Inc. v. Axcess Broad. Servs.*, 128 F.3d 872 (5th Cir. 1997).

The copyright registration certificate identifies "Hypermedia, Solutions, LLC d/b/a FutureBrand" as the author of the copyrighted content that was allegedly "transferred by written agreement." *See* Ex. 2-S, U.S. Copyright Reg. No. VA0002130520 (App'x. p. 137). Yet, AA has produced no evidence establishing that (1) Hypermedia was the initial "author" of the copyrighted work, either through creation by Hypermedia employees or through a written agreement with independent contractors; or (2) that Hypermedia assigned the copyright to AA. Thus, while it is clear that Hypermedia *claimed* initial authorship (and thereby ownership) of the copyright at issue, AA has not produced evidence establishing that authorship, despite repeated requests for this information—in written discovery requests and in deposition. AA's copyright claim fails on this basis alone. *Geoscan, Inc.* 226 F.3d at 392-393; 17 U.S.C. § 201(a); *see also Community for Creative Non-Violence*, 490 U.S. at 737.

This is not the only significant gap in AA's evidence. In addition to failing to prove Hypermedia's initial ownership of the copyright, AA maintains, but fails to prove, that Hypermedia assigned the copyrighted content to AA. Again, despite express requests for documents or information demonstrating that Hypermedia assigned its purported ownership of the copyright to AA—AA has not produced documents or other evidence sufficient to establish that fact. The Court therefore has two independent bases to grant summary judgment on just the ownership element, alone.

**b. AA cannot demonstrate "copying" by Skiplagged**

19

Not all copying is legally actionable as copyright infringement. *King v. Ames*, 179 F.3d 370, 375-376 (5th Cir. 1999). A plaintiff may prove that actionable copying has occurred by establishing: (1) that the alleged infringer copied, or "actually used the copyrighted material to create his own work;" and (2) that there is "substantial similarity" between the copyrighted work and the allegedly infringing work. *Wood v. B L Bldg. Co., No. CIV.A.H-03-713, 2004 WL 5866352,* at *8 (S.D. Tex. June 22, 2004), citing *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340-41 (5th Cir. 1994) (citations omitted); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir.), *reh'g en banc denied*, 66 Fed. Appx. 527, 2003 WL 21018279 (2003). Thus, the Court must determine whether AA produced sufficient evidence of substantial similarity between the works copyrighted and the works in question in order to permit a reasonable jury to find in its favor. *Id.* To accomplish this, a side-by-side comparison must be made between the original and the purported copy to assess whether the two works are substantially similar. *King*, 179 F.3d at 375-376, citing *Creations Unlimited v. McCain*, 112 F.3d 814 (5th Cir. 1997) and *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 766 (2nd Cir. 1991) (holding copying is an issue to be determined by comparison of works, not credibility).

In *King*, because King failed to produce evidence of the *content* of the copyright at issue (*i.e.*, the copyright deposit), precluding a side-by-side comparison of the original work and the alleged copy, the Fifth Circuit awarded defendant judgment on King's copyright infringement claim. *King*, 179 F.3d at 376. Likewise, having failed to produce an admissible and certified form of the copyright deposit—required for a side-by-side comparison—AA fails to demonstrate the essential element of "copying" and its copyright claim must fail.

## 2. AA's copyright infringement claim is barred by the defense of fair use

The fair use doctrine is a statutory exception under the Copyright Act to the generally exclusive set of rights given to copyright holders. 17 U.S.C. §107. "Although no definition of fair use that is workable in every case has ever evolved, a frequently quoted definition of fair use is 'a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable

20

manner without his consent, notwithstanding the monopoly granted to the owner (by the copyright).'" *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc*., 626 F.2d 1171, 1174 (5th Cir. 1980), quoting *Rosemont Enterprises, Inc. v. Random House, Inc*., 366 F.2d 303, 306 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, (1967).

Courts consider four non-exclusive factors when conducting the fair use analysis: (1) the purpose and character of the use, *i.e.* commercial or nonprofit; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The factors are not meant to be exclusive: "[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts." *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 560, (1985); *see also Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 577-78, (1994) (courts must consider the statutory factors together rather than in isolation). And while some courts have focused heavily on the first factor—whether the use was commercial—in this Circuit, commercial use can be relevant, but "it is certainly not decisive." *Triangle Publications.*, 626 F.2d at 1175 (internal citations omitted). Thus, the fair use defense to AA's copyright is factually and equitably similar to trademark fair use (above) and AA's copyright claim should similarly fail.

In *Triangle Publications, Inc.,* after the district court rejected the fair use defense due to the commercial use involved, the Fifth Circuit reversed, noting that the use of the magazine covers in a comparative advertising context minimized the importance of any commercial use. *Id.* In applying the four factors, the Court noted: (1) the nature of the use was in comparative advertising and defendant made no attempt to palm off plaintiff's product as its own; (2) although the TV Guide was a commercial publication, defendant's use of the covers in comparative advertising was such that the factor did not support, nor undermine, the fair use defense; (3) defendant's use was only of the covers of the magazine such that this factor was entitled to less weight. *Id.* at 1176-1177. As to the fourth factor—the effect of the use upon the potential market for, or the value of,

21

the copyrighted work—which the Court noted is widely accepted to be the most important of the factors, the Court held "[w]e are simply unable to find any effect other than possibly de minimis on the commercial value of the copyright." *Id.* at 1177. Thus, while "[defendant's] advertisements may have had the effect of drawing customers away from TV Guide," this "result[ed] from the nature of advertising itself and in no way stem[med] from the fact that TV Guide covers were used." *Id.*

The facts in this case are more compelling in Skiplagged's favor. The first two prongs weigh in favor of Skiplagged since the use, while arguably commercial in nature, is akin to comparative advertising and makes no attempt to palm off AA's goods or services as belonging to Skiplagged. For the third prong, as in *Triangle Publications,* Skiplagged used only AA's small logo and its name—"American Airlines." Finally, with regard to the most important factor, the effect of the use upon the potential market for or the value of the copyrighted work, there is no impact other than potentially de minimis, as Skiplagged's use of AA's copyright resulted in consumers purchasing *AA's flights directly from AA*. *See e.g.,* Ex. 2-B (App. pp. 35, 37). There was no palming off or confusion as to the source of the goods. Further, to the extent Skiplagged's use may have had the effect of drawing customers away from AA, or caused them to purchase flights at lower fares, this resulted from the nature of the comparison itself and in no way stemmed from the use of AA's logo. Even AA's damages expert, David Fuller, conceded that he had no opinion as to any damage to AA's copyright. Ex. 6, Fuller Depo. p. 92.

Ultimately, in the same way the *Triangle Publications* Court found the plaintiff was not harmed by the defendant's use of the mark and because "the public as well as [Skiplagged] benefit[] from comparative advertising, thus minimizing the importance of the fact that a commercial use was involved" the fair use defense bars AA's copyright infringement claim and Skiplagged is entitled to summary judgment on that claim. *Id.* at 1178.

**F.  AA is not entitled to attorneys' fees**

**1.  AA is not entitled to attorneys' fees for its tortious interference claim**

22

As a matter of law, AA is not entitled to recover its attorneys' fees for its tortious interference claim. *Lexington Ins. Co. v. Ferguson*, No. SA-09-CA-214-H, 2009 WL 10700016, at *2 (W.D. Tex. June 30, 2009). Texas law does not authorize an award of attorneys' fees for a tortious interference claim. *Id.*

## 2. AA cannot recover attorneys' fees for its breach of contract claim

AA is not entitled to attorneys' fees for its breach of contract claim because, even assuming Skiplagged enter into the Use Agreement with AA, the Use Agreement does not contain terms awarding such fees and AA failed to present its claims to Skiplagged.[21]

AA's Use Agreement does not contain terms that entitle a party to the agreement to attorneys' fees or legal costs from the other party to the agreement. Ex. 2-R (App. pp. 129-135). The Use Agreement only provides for indemnification of legal costs, but AA cannot use the indemnity clause to recover attorneys' fees from Skiplagged. *Id.* "A defining characteristic of an indemnity agreement is that it does not apply to claims between the parties to the agreement." *Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 144 (Tex. App. 2010) (internal quotation omitted). An agreement to indemnify "does not relate to liability claims between the parties to the agreement but, of necessity, obligates the indemnitor to protect the indemnitee against liability claims of persons not a party to the agreement. *Id.* Consequently, an indemnity clause cannot be used to obligate a party to the agreement to pay the other party's attorneys' fees in prosecuting claims between the parties. *Id.* ("because both NCM and Carolyn are parties to the indemnity agreement, the agreement, as a matter of law, does not obligate Carolyn to pay NCM its attorneys' fees incurred in defending itself against Carolyn's claims and in prosecuting its counterclaim").

Further, AA cannot recover its attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001 because it failed to provide notice of its claims to Skiplagged prior to filing suit.[22] While Section 38.001 allows for a party to recover reasonable attorney's fees for a breach of contract claim, a

---

[21] Because Skiplagged is not a party to AA's Conditions of Carriage Contract, AA also cannot recover attorneys' fees for breach of the Conditions of Carriage claim.

[22] AA seeks to recover attorneys' fees under Tex. Civ. Prac. & Rem. Code §§ 38.001 and 143.002. Dkt. 130.

28334525v1 99460.002.00

party can only recover attorney's fees under Section 38.001 if it presents the claim to the opposing party and the opposing party does not pay the claim within 30 days. *Recursion Software, Inc. v. Interactive Intel., Inc*., 425 F. Supp. 2d 756, 780 (N.D. Tex. 2006).

AA did not present its claim to Skiplagged nor wait the required 30 days for potential payment of such claims prior to filing suit. Thus, there is no genuine issue of material fact that AA did not fulfill the requirements of Tex. Civ. Prac. & Rem. Code § 38.001 and cannot use Chapter 38 to recover attorney's fees from Skiplagged. *See Sw. Recreational Indus., Inc. v. FieldTurf, Inc*., No. 01-50073, 2002 WL 32783971, at *6 (5th Cir. Aug. 13, 2002) (finding that the district court erred in awarding attorneys' fees on breach of contract claim because Southwest failed to present FieldTurf with an opportunity to pay those claims and avoid the burden of paying attorneys' fees).

### 3. AA cannot recover attorneys' fees under Tex. Civ. Prac. Rem. Code § 143.002

AA cannot recover its attorneys' fees under Tex. Civ. Prac. & Rem. Code § 143.002 [Dkt. 8, ¶ 130] because AA cannot establish a cause of action for harmful access by computer—a claim AA has not pleaded nor would such claim be timely. Specifically, Section 143.002 states that "a person who establishes a cause of action under this chapter is entitled to: (1) actual damages; and (2) reasonable attorney's fees and costs." TEX. CIV. PRAC. & REM. CODE § 143.002. "This chapter" refers to Chapter 143, harmful access by computer, which refers to a civil action for a violation of the penal code. *Id.* at § 143.001(a). Importantly, Chapter 143 also requires a suit for damages be brought by the earlier of the fifth anniversary of the last violation or second anniversary of when the claimant discovered or should have discovered the violation. *Id.* at § 143.001(b). Thus, even if AA pleaded a claim for harmful access by computer, which it did not, such claim would be time barred because AA discovered the alleged violative conduct between 2016 and 2019, more than two years before AA filed suit. Consequently, AA cannot utilize Tex. Civ. Prac. & Rem. Code § 143.002 to recover attorneys' fees in this action.

### G. AA is not entitled to permanent injunctive relief

Because AA's underlying claims for breach of contract, tortious interference, Lanham Act

24

and Copyright Act violations fail as set forth above, AA cannot succeed on its application for injunctive relief. To be entitled to a permanent injunction, AA must prove: (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

"[C]ourts in trademark infringement cases often assess irreparable injury by looking at the likelihood of confusion and whether the plaintiff suffered a loss of control." *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.,* No. 4:19-CV-358, 2022 WL 3008501, at *3 (E.D. Tex. July 28, 2022), *motion for relief from judgment denied,* 668 F. Supp. 3d 614 (E.D. Tex. 2023). This is because "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013). As set forth above, there is no likelihood of confusion as Skiplagged's use of AA's trademarks is to refer to AA's own goods and services and is fair use rather than infringement. Moreover, because Skiplagged's use of AA's trademarks is to refer to fights offered by AA, AA has never lost control over the quality of those goods and services such that there is no irreparable harm as a matter of law. *Gibson Brands, Inc.*, 2022 WL 3008501 at *8-9; *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d at 765; *Patel*, 940 F. Supp. 2d at 542.

Because AA cannot show actual success on the merits of its underlying claims nor irreparable injury, summary judgment on AA's application for a permanent injunction should be granted in favor of Skiplagged.

## V.   CONCLUSION

For all the reasons set forth above, Skiplagged respectfully requests the Court grant summary judgment in favor of Skiplagged on each of AA's claims, dismiss AA's claims in total, and grant Skiplagged all other relief as the Court deems proper, including, but not limited to, an award of costs and attorney's fees.

25

Dated: July 1, 2024

Respectfully submitted,

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*/s/ Darin M. Klemchuk*
Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

**Attorneys for Defendant, Skiplagged, Inc.**

26

28334525v1 99460.002.00

**CERTIFICATE OF SERVICE**

It is hereby certified that on July 1, 2024, a copy of the foregoing was served through the Court's electronic filing system as to all parties who have entered an appearance in this proceeding.

*/s/ Abigail R.S. Campbell*
ABIGAIL R.S. CAMPBELL

27

28334525v1 99460.002.00