# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:23-CV-00860-P** |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

---

### AMERICAN AIRLINES, INC.'S BRIEF IN SUPPORT OF ITS
### MOTION FOR PARTIAL SUMMARY JUDGMENT

---

## <u>TABLE OF CONTENTS</u>

**Page**

I.      SUMMARY JUDGMENT GROUNDS ....................................................................... 3

II.     SUMMARY OF FACTS ........................................................................................... 5

    A.      Skiplagged's Unauthorized Use of American's Trademarks and Copyright. ........5
        1.      American's Undisputed Trademark and Copyright Rights. ......................5
        2.      Skiplagged is Not an Authorized Agent. ..................................................8
        3.      Skiplagged Uses American's Marks and Copyrighted Flight Symbol. .......8
    B.      Skiplagged Agrees to—and Breaches—American's Use Agreement.................12
        1.      Skiplagged Accessed American's Website Millions of Times.................12
        2.      American's Use Agreement Forbids Skiplagged's Activities. .................13
        3.      Skiplagged's Own Use Agreement Has Similar Terms...........................14
    C.      Skiplagged's Activities are Willful. ...................................................................15
        1.      Skiplagged Charges Fees for Ordinary Tickets and Leaves Customers
                Hanging................................................................................................15
        2.      Skiplagged Advises Customers to Lie to American. ...............................16
    D.      Skiplagged Profits Handsomely from Deceiving Customers..............................20

III.    SUMMARY JUDGMENT LEGAL STANDARD ......................................... 20

IV.     ARGUMENTS AND AUTHORITIES...................................................... 20

    A.      Skiplagged is Liable for Trademark Infringement under the Lanham Act. .........21
    B.      Skiplagged is Liable for False Designation of Origin and Unfair Competition...25
    C.      Skiplagged is Liable for Infringing American's Flight Symbol Copyright. ........26
    D.      Skiplagged Breaches of the AA.com Use Agreement. ......................................28
    E.      The Court Should Grant American Summary Judgment on Skiplagged's
        Affirmative Defenses. .......................................................................................34

V.      CONCLUSION ................................................................................................52

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*8300 Buckeye Delaware LLC v. UPS Supply Chain Sols., Inc.*,
   No. 4:22-CV-00726-O, 2023 WL 7273712 (N.D. Tex. Sept. 17, 2023) ...............................29

*A Touch of Class Jewelry v. J.C. Penney Co.*,
   No. CIV. A. 98–2949, 2000 WL 1224804 (E.D. La. Aug. 28, 2000)....................................25

*Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*,
   295 Fed. Appx. 630 (5th Cir. 2008) (*per curiam*) ..................................................................26

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...............................................................................................................20

*Armour v. Knowles*,
   512 F.3d 147 (5th Cir. 2007) .................................................................................................26

*Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*,
   609 F.3d 768 (5th Cir. 2010) .................................................................................................43

*Batiste v. Lewis*,
   976 F.3d 493 (5th Cir. 2020) .................................................................................................27

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) .................................................................................................35

*Berg v. Symons*,
   393 F. Supp. 2d 525 (S.D. Tex. 2005) ...................................................................................25

*Bos. Prof'l. Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc.*,
   510 F.2d 1004 (5th Cir. 1975) ...............................................................................................25

*Bott v. J.F. Shea Co.*,
   299 F.3d 508 (5th Cir. 2002) .................................................................................................40

*Broad. Music, Inc. v. Xanthas, Inc.*,
   855 F.2d 233 (5th Cir. 1988) .................................................................................................24

*by Eppendorf–Netheler–Hinz GMBH v. Ritter GMBH*,
   289 F.3d 351 (5th Cir. 2002) .................................................................................................35

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991)..........................................................................................................45, 46

*Cheung-Loon, LLC v. Cergon, Inc.*,
   392 S.W.3d 738 (Tex. App.—Dallas 2012, no pet.)..............................................................44

*E.E.O.C. v. I-Sector Corp.*,
   No. 3:01-CV-2240-R, 2003 WL 29939 (N.D. Tex. Jan. 2, 2003) .........................................20

*Energy Intelligence Group, Incorporated v. Kayne Anderson Capital Advisors, L.P.*,
  948 F.3d 261 (5th Cir. 2020) ................................................................................47

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
  26 F.3d 1335 (5th Cir. 1994) ...............................................................................27

*Exxon Corp. v. Oxxford Clothes, Inc.*,
  109 F.3d 1070 (5th Cir. 1997) .............................................................................42

*FDIC v. Fuller*,
  994 F.2d 223 (5th Cir. 1993) ...............................................................................41

*Garcia v. Lumacorp, Inc.*,
  No. CIV.A. 3:02-CV-2426-, 2004 WL 1686635 (N.D. Tex. July 27, 2004),
  *aff'd*, 429 F.3d 549 (5th Cir. 2005)......................................................................44

*Gen. Universal Sys., Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) ...............................................................................27

*Harper & Row, Publrs. v. Nation Enters.*,
  471 U.S. 539 (1985)..............................................................................................37

*Heritage Capital Corp. v. Christie's, Inc.*,
  No. 3:16-CV-3404-D, 2017 WL 1550514 (N.D. Tex. May 1, 2017) ...................29

*Hodges v. Delta Air Lines, Inc.*,
  4 F.3d 350 (5th Cir. 1993) ...................................................................................50

*Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*,
  53 S.W.3d 799 (Tex. App.—Austin 2001, pet. denied)........................................39

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)..................................................................................25

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,
  962 S.W.2d 507 (Tex. 1998)..................................................................................40

*King Aerospace Commercial Corp., Inc. v. Al-Anwa Aviation, Inc.*,
  No. CIVA 308-CV-0999-L, 2010 WL 286729 (N.D. Tex. Jan. 21, 2010)............41

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) ...............................................................................20

*Mary Kay, Inc. v. Weber*,
  601 F. Supp. 2d 839 (N.D. Tex. 2009) .................................................................39

*Microsoft Corp. v. Wholesale Club, Inc.*,
  129 F. Supp. 2d 995 (S.D. Tex. 2000) .................................................................25

*NB Gathering IX Pref, L.L.C. v. Nelson*,
  No. 3:20-CV-3491-K, 2022 WL 347610 (N.D. Tex. Feb. 4, 2022) ......................29

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
  783 F.3d 527 (5th Cir. 2015) ...............................................................................21

*Paulsson Geophysical Servs. v. Sigmar*,
  529 F.3d 303 ........................................................................................................23

*Pebble Beach Co. v. Tour 18 I Ltd.*,
   155 F.3d 526 (5th Cir.1998) ..................................................................................35

*Petrella v. MGM*,
   572 U.S. 663 (2014)......................................................................................46, 47

*Ringers Techs. LLC v. Harmer*,
   No. 4:18-CV-4347, 2020 WL 6385813 (S.D. Tex. Aug. 17, 2020) ......................20

*Robinson v. Match.com, L.L.C.*,
   No. 3:10-CV-2651-L, 2012 WL 5007777 (N.D. Tex. Oct. 17, 2012), *aff'd sub*
   *nom. Malsom v. Match.com, L.L.C.*, 540 Fed. Appx. 412 (5th Cir. 2013) ...........29, 44, 45, 46

*Rogers v. Ricane Enters. Inc.*,
   772 S.W.2d 76 (Tex. 1989).................................................................................42

*Sardinas v. American Airlines, Inc*.,
   1994 Ct. Sup. 9196 (Conn. Super. Ct. 1994) ......................................................50

*SecuraComm Consulting Inc. v. Securacom*,
   166 F.3d 182 (3d Cir. 1999)................................................................................25

*Shoop v. Devon Energy Prod. Co., L.P.*,
   No. 3:10-CV-00650-P, 2013 WL 12251353 (N.D. Tex. Mar. 28, 2013) ...............40

*Smith Int'l, Inc. v. Egle Group, LLC*,
   490 F.3d 380 (5th Cir. 2007) .........................................................................29, 33

*Southwest Airlines Co. v. BoardFirst, L.L.C.*,
   2007 U.S. Dist. LEXIS 96230, Case No. 3:06-cv-0891-B (N.D. Tex.
   September 12, 2007) .......................................................................................30, 45

*Southwest Airlines Co. v. Skiplagged, Inc. et al.*,
   Case No. 3:21-cv-01722-E......................................................................................31

*Stine v. Stewart*,
   80 S.W.3d 586 (Tex. 2002)..................................................................................39

*Sw. Airlines Co. v. Farechase, Inc.*,
   318 F. Supp. 2d 435 (N.D. Tex. 2004) ................................................................29

*Sw. Airlines Co. v. Roundpipe, LLC*,
   375 F. Supp. 3d 687 (N.D. Tex. 2019) .............................................................29, 46

*Taylor Made Golf Co. v. MJT Consulting Group*,
   265 F. Supp. 2d 732 (N.D. Tex. 2005) ................................................................24

*Transparent Energy LLC v. Premiere Mktg. LLC*,
   2020 WL 4678438 (N.D. Tex. July 28, 2020) (Rutherford, J.) ...........................26

*Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*,
   626 F.2d 1171 (5th Cir. 1980) ............................................................................37

*Tyler v. Citi-Residential Lending Inc.*,
   812 F. Supp. 2d 784 (N.D. Tex. 2011) .............................................................20, 29

*Weitzul Constr., Inc. v. Outdoor Environs,*
  849 S.W.3d 359 (Tex. App.—Dallas 1993, writ denied) ........................................32

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.,*
  2021 WL 2651087, Case No. 3:20-cv-2541-K (N.D. Tex. June 28, 2021)............................30

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.,*
  576 F.3d 221 (5th Cir. 2009) ........................................22

**Statutes**

15 U.S.C. §1057(b) ........................................21

15 U.S.C. § 1115(a) ........................................21

15 U.S.C. § 1115(b) ........................................21

17 U.S.C. § ........................................36, 37

17 U.S.C. § 410(c) ........................................26

17 U.S.C. § 507(b) ........................................46

49 U.S.C. § 1305(a)(1) ........................................49

ADA ........................................49

Airline Deregulation Act ........................................50, 51

*Airline Deregulation Act*, 10 ........................................50

Airline Deregulation Act of 1978 ........................................49

Aviation Deregulation Act ........................................49

Copyright Act ........................................36

Lanham Act ........................................26, 39, 42

Sherman Act ........................................46

Tex. Civ. Prac. & Rem. Code § 16.004 ........................................39

Tex. Civ. Prac. & Rem. Code § 16.051 ........................................38

Skiplagged, Inc. is an online business that claims to be committed to helping customers "find flights the airlines don't want you to see . . . by exposing loopholes in airfare pricing to save money." *See* http://skiplagged.com. On its customer-facing website, Skiplagged boasts that it can facilitate "ridiculous travel deals you can't find anywhere else," and brazenly claims that its system "exposes inefficiencies in airline pricing, such as hidden-city." [ *Id.*].

The majority of the "ridiculous" travel deals Skiplagged advertises are nothing more than ordinary tickets that are readily available on American's website. While Skiplagged's advertising emphasizes hidden-city tickets, ███████ American tickets bought by customers through Skiplagged's website are ordinary, non-hidden-city tickets that customers could have booked directly on American's website or through one of the many agencies authorized by American, without paying Skiplagged's additional "fee." [App'x 0066 (Deposition of Skiplagged's 30(b)(6) Corporate Representative, herein referred to as "Skiplagged's 30(b)(6) Depo.," 206:10–207:8)]. Further, to the extent Skiplagged has sold hidden-city tickets, it promotes these tickets as "perfectly legal" when they are in fact invalid, illegal tickets that Skiplagged well knows violate American's Conditions of Carriage. [App'x 0109 (Skiplagged Website FAQ, p. 2); App'x 0066-67 (Skiplagged's 30(b)(6) Depo., 208:14–23, 210:4–21); App'x 0111 ("United Sued Me Last Year" Reddit AMA, p. 1); App'x 0152-153 (*Southwest Airlines v. Skiplagged* First Amended Complaint, ¶¶ 105-106)]. To cap it all off, Skiplagged coaches its users to lie to American personnel when using hidden-city tickets. [App'x 0080-81, 0100 (Skiplagged's 30(b)(6) Depo., 265:22–267:6, 342:8–344:23); App'x 0187, 0237-38 (Test Buys 2 and 17, p. 2 and 52-53, showing filter for customer to target "Hidden-City" tickets); App'x 0256-59 (Slack Chats re Hidden City

Warnings)].[1]

What Skiplagged fails to tell its users, and what it consistently hides behind its guise of pro-customer rhetoric, is the fact that its entire business model is based on deceiving both customers and airlines. Skiplagged dupes customers into believing that it is an authorized travel agent, but it is not. Skiplagged has concocted a computer system which *looks* like a normal travel website, but when a customer selects a ticket on the Skiplagged website, ████████████ ████████████████████████████. [App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0304 (Deposition of Daniel Gellert, herein referred to as "Gellert Depo.," 123:24–125:18); App'x 0023, 0033-34 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 77:13–78:5)]. Skiplagged does not tell its customers ████████████████, or that it is not an authorized travel agent of American. At the same time, Skiplagged uses this ████████████ to trick the airline into believing the customer, and not Skiplagged, accessed AA.com. Once Skiplagged gets its money from the customer for this "service," it leaves the customer without the support a travel agent would ordinarily provide, which leaves the customer to deal with the consequences of the invalid ticket. Skiplagged has generated ████████████ fees, built on the backs of unsuspecting customers, airlines, and the thousands of legitimate travel agents.

The most important fact to remember about Skiplagged is that it is not an authorized agent of American Airlines. A real travel agent supports its customers and has the tools to do so. But Skiplagged cannot—and does not want to—do that. It has no relationship with American, no

---

[1] "Hidden-city ticketing" is an industry term used to define the illegal practice of ticketing a flight to a destination with an interim stop, but deplaning at the interim stop rather than the final destination. "Skiplagging" is a slang term for this practice.

authority to sell flights, and no authority to use American's trademarks and copyrights on its website (which it does with impunity). Skiplagged does not have—and does not want—access to the computer systems it would need to support customers. These are the grand deceptions that underlie Skiplagged's business model. Skiplagged is the business equivalent of a remora—a suckerfish—that attaches itself to a much larger creature in the ocean so it can hitch a ride wherever the bigger creature goes. But unlike the remora, Skiplagged provides no useful value to the customer or to American. Instead, Skiplagged leaves the airline with angry customers who missed flights, experienced delayed flight times, lost or misrouted baggage, and denied the airline the opportunity to fill empty seats.

American's motion for summary judgment is straightforward. After adequate time for discovery, Skiplagged has not offered, and cannot offer, sufficient evidence to support its defenses as a matter of law, nor can it dispute its admitted unauthorized uses of American's trademarks and copyrights. Skiplagged's repeated breaches of the AA.com Use Agreement—as many as 1.4 million[2] of them—is also undisputed. After consideration of this Motion, American believes the only matters left for this Court to consider at trial are damages, attorneys' fees, and injunctive relief. For these reasons, and those more fully set forth below, American respectfully requests the Court to grant summary judgment as follows.

## I. SUMMARY JUDGMENT GROUNDS

American seeks summary judgment on the following causes of action:

1.    Skiplagged has breached, and continues to breach, American's Use Agreement

---

[2] Skiplagged has admitted it sold approximately 1.4 million American tickets, but has steadfastly refused to produce precise data that would enable American to determine what portion of these tickets were booked on the American website ("Booked with Skiplagged Direct"), ███████████ ███████████████████████████████████████████████████████████████ The tickets Booked with Skiplagged Direct tickets are the ones which violate the AA.com Use Agreement.

ACTIVE 698659351v16

(Count I);

2.  Skiplagged has infringed, and continues to infringe, on the trademarks of American Airlines under 15 U.S.C. 1114 (Count III);

3.  Skiplagged has falsely designated the origin of American's Marks, and continues to falsely designate the origin of American's Marks, under 15 U.S.C 1125 (a) (Count IV);

4.  Skiplagged has infringed on American's copyrights under 17 U.S.C. 101 (Count V);[3]

American also seeks summary judgment on all of Skiplagged's affirmative defenses:

1.  This Court has personal jurisdiction over Skiplagged (the Court previously ruled on this in its Order dated December 19, 2023 (Dkt. 52);

2.  American's claims are not barred by the statute of limitations;

3.  American's claims are not barred by the principles of equitable estoppel, quasi-estoppel, consent, waiver, ratification or acquiescence;

4.  American's claims are not barred by laches;

5.  American's claims are not barred by unclean hands;

6.  American's claims are not barred by failure of consideration;

7.  American's claims are not barred by lack of privity;

8.  American's claims are not barred by the lack of mutual assent;

9.  American's claims are not void as against public policy;

10. American's claims are not barred due to illegality of contract;

11. American's trademark infringement, designation of false origin, and unfair competition claims are not barred by the doctrine of fair use;

12. American's copyright infringement claim is not barred under 17 U.S.C 107.

13. American's copyright infringement claim is not barred by the statute of

---

[3] American is not moving for summary judgment on its claim that Skiplagged has breached American's Conditions of Carriage (part of Count I) or tortiously interfered with American's Conditions of Carriage Contract (Count II). [*See* American's First Amended Complaint [Dkt. No. 8], ¶¶ 27–30]. However, in the event the Court grants Judgment in favor of American, it intends to voluntarily dismiss these claims (disposing of all remaining claims in this lawsuit).

limitations;

14.    American's claims for damages are not barred by its alleged failure to mitigate damages;

15.    American's claims for damages are not barred by the allegation its suffered no compensable damages;

16.    American's claims are not barred due to third party actions;

17.    American's claims are not barred due to disclaimers contained in Skiplagged's terms and conditions;

18.    American's claims are not barred by preemption;

19.    American's breach of contract claims are not barred by lack of standing;

20.    American's claims are not barred by any license given to Skiplagged.

## II.  SUMMARY OF FACTS

### A.    Skiplagged's Unauthorized Use of American's Trademarks and Copyright.

### 1.    American's Undisputed Trademark and Copyright Rights.

American has used and continues to use the trademarks AMERICAN AIRLINES and AMERICAN, as well as other iconic trademarks, for decades. [App'x 0331–485 (Reg. No. 4449061 File Wrapper, p. 1– 40, Reg. No. 4939082 File Wrapper, p. 42–89, Reg. No. 5279167 File Wrapper, p. 90–124, Reg. No. 5559145 File Wrapper, p. 125–155, (collectively, the "Trademark File Wrappers"))]. American's brands and other intellectual property are the result of significant investment and worth at least a billion dollars. [App'x 0490 (2023 Form 10-K, reflecting $1b note secured by American's IP)]. In the early 2010s, American modernized its branding and introduced an updated logo, shown below, which is referred to as American's "Flight Symbol":



[App'x 0492–94 (Flight Symbol Copyright Registration); App'x 0331–70, 0455–85 (Color Flight Symbol Trademark Registration, p. 1–40. and Flight Symbol Trademark Registration, p.125–56 )]. American uses AMERICAN AIRLINES, AMERICAN and the Flight Symbol (collectively, the "American Marks") extensively in connection with transportation services, loyalty programs, discount programs, incentive award programs, and travel-related goods and services, in interstate commerce. [App'x 0339–44, 0352–60, 0365–67, 0380–98, 0406–19, 0427–41, 0445–46, 0450–54, 0467–0485 (Trademark File Wrappers, p. 9–14, 23–30, 35–37, 50–68, 76–89, 97–111, 115–14, 120–124, 137–155) (collectively, the "Trademark Specimens"))]. American uses the American Marks at virtually every opportunity, including on its aircraft, on employee uniforms, on its website, throughout airports, on stadium and arena sponsorships, and in print and spot advertisements. [App'x 0342, 0385-86, 0409, 0427, 0467–72, 0473–79 (Trademark Specimens, p. 12 (on aircraft), p. 55–56 (building signage), p, 79 and maintenance checklist), p. 97 (inflight wifi login), p. 137–142 (memorabilia), and p. 143–49 (webpages))].

American owns the following federally registered marks:

| Mark | Reg. No. | Reg. Date | Services |
|---|---|---|---|
| **AMERICAN AIRLINES** | 4939082 | April 19, 2016 | (Int'l Class: 39) air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing information in the field of travel by means of a global computer network; etc. |
| **AMERICAN AIRLINES** | 5279167 | Sep. 5, 2017 | (Int'l Class: 09) computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award programs; computer application software for mobile devices; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status |

| | 4449061 | Dec.10, 2013 | (Int'l Class: 39) air transportation of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, etc. by means of a global computer network; providing information in the field of travel by means of a global computer network |
|---|---|---|---|
| | 5559145 | Sep.11, 2018 | (Int'l Class: 39) air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, etc. |

[App'x 0331–485 (Trademark File Wrappers)]. The American Marks are well-known and recognized by the general public, as well as by members of the travel industry, as symbols indicating travel-related services originating with American. [App'x 0511 (Brand Recognition Report, showing 60-75% recognition of American by Flight Symbol and name)]. American also owns U.S. Copyright Registration No. VA00002130520 for the Flight Symbol ("American Copyright," and collectively with the American Marks, the "American IP"). [App'x 0492-94 (Flight Symbol Copyright Registration)].

American has expended significant resources in controlling the use of the American IP. [App'x 0611-12 (American's Amended Objections and Responses to Skiplagged's Interrogatory No. 3)]. For example, American strictly limits the licenses it grants to accredited, authorized travel agents. [App'x 0645-46 (Addendum to Governing Travel Agency Agreements, Section 10)]. These licenses are personal to the agent and do *not* include any right to sublicense the American IP. [*Id.*].

### 2.    Skiplagged is Not an Authorized Agent.

7

An airline ticket is a contract of carriage between American and a customer. [App'x 0650 (Conditions of Carriage)]. Because of this, American closely controls who can act on its behalf in forming this contract. [https://www2.arccorp.com/support-training/agent-reporting-agreement/ (ARC Agent Reporting Agreement, Section 11.4 ("Agent must be appointed by a Carrier to identify Carrier on any segment of an issued ARC Traffic Document."))]. Skiplagged admits that it is not and never has been an agent of American. [App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4)]. In addition, American has never authorized or consented to Skiplagged's use of the American IP.

### 3.   Skiplagged Uses American's Marks and Copyrighted Flight Symbol.

Skiplagged uses the American IP—without permission—extensively throughout the booking process. [App'x 0187-0253 (Test Buys 2, 14, and 17)]. It allows customers to search for "American Airlines" tickets, uses American's trademarked and copyrighted Flight Symbol when presenting search results, and uses the word mark AMERICAN AIRLINES when presenting a specific flight to its users:[4]

---

[4] Just before the filing of this summary judgment motion, Skiplagged removed the "flight symbol" from the search results on its website, but it is still using the AMERICAN and AMERICAN AIRLINES trademarks. While this last-minute change may be a tacit admission by Skiplagged of its wrongdoing, it is both too little (it is still using other American Marks without permission), and too late (its milking every last dollar out of its use of the Flight Symbol up until the eve of summary judgment demonstrates its utter lack of remorse).

ACTIVE 698659351v16



https://skiplagged.com/flights/DFW/ORD/2024-07-12/2024-07-14 (last accessed Jun. 28, 2024)



https://skiplagged.com/flights/DFW/ORD/2024-07-12/2024-07-14#trip=AA270,AA2896 (last accessed Jun. 28, 2024).

Skiplagged takes yet additional steps to give the customer the false impression it is acting

9

as American's agent. Skiplagged books many American flights through what it calls Booked with Skiplagged Direct booking. [App'x 0673-75 ("Skiplagged Overview" presentation); App'x (Gellert Depo., 130:14–133:10); App'x 0687, 0691-92 (Deposition of Aktarer Zaman, herein referred to as "Zaman Depo.," 21:18–22:20, 40:14–41:170); App'x 0020, 0033 (Skiplagged's 30(b)(6) Depo., 22:22–23, 77:5–12); App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4)]. Under that process, the customer never leaves Skiplagged's website and submits their personal and credit card information to Skiplagged. [App'x 0197-201, 0204-206, 0225-0229, 0243-0246 (Test Buys 2, 14, and 17)]. In the background—and unbeknownst to the customer—Skiplagged ███████████████████████████

███████████████ [App'x (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0711 (Zaman Depo., 117:11–120-6); App'x 0023, 0028, 0033-34 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 54:19–55:2; 77:13–78:5)]. ███████████████

Skiplagged accesses American's website and enters the customer's flight selection, personal information and credit card information into American's website. [ *Id.*; App'x 0306 (Gellert Depo., 130:14–133:10)]. From the customer's perspective, the entire booking process takes place on skiplagged.com, just as if the user had booked a flight through a *bona fide* online travel agency like Expedia. [*Id.*; App'x 0197-201, 0204-206, 0225-0229, 0243-0246 ((Test Buys 2, 14, and 17)]. In the same screen, Skiplagged provides a "Support" number, indicated in red:



[App'x 0201 (Test Buy 2)]. This is <u>not</u> Skiplagged's phone number; it is *American's* customer service number. [App'x 0713 (Zaman Depo., 125-24–126:15); https://www.aa.com/i18n/customer-service/contact-american/reservations-and-ticket-changes.jsp#usandcanada (American Airlines' Customer Service page); App'x 0737 (Skiplagged's internal "Manage Booking & Flight Cancellation for Airlines" reference spreadsheet].

From American's perspective, the booking appears to have been made by the customer. [App'x 0747]. Skiplagged does not access American's website using a fixed IP address or a fixed pool of IP addresses associated with Skiplagged. [App'x 0265, 0267 (Skiplagged's Third Amended Objections and Responses to American's Interrogatory Nos. 5, 9); App'x 0058-59 (Skiplagged's 30(b)(6) Depo., 176:22–178:19)]. Instead, Skiplagged employs a pool of dynamically-assigned IP addresses when accessing American's website ███████████████ ████ [*Id.*]. When booking flights, Skiplagged's software enters the customer's information, including the customer's email address, instead of an email address associated with Skiplagged.

ACTIVE 698659351v16

This means that American cannot detect that it is Skiplagged, as opposed to the customer, who is actually accessing American's website. ████████████████████████████

████████████████████████████████████████████████

**B.      Skiplagged Agrees to—and Breaches—American's Use Agreement.**

**1.      Skiplagged Accessed American's Website Millions of Times.**

At the bottom of every page of American's website, AA.com, American includes a link to "Legal, privacy and copyright." [App'x 0669 (Conditions of Carriage); App'x 0648 (Addendum to Governing Travel Agency Agreements); App'x 0764 (Use Agreement)]. That link leads to "policies about site usage," which is the AA.com Use Agreement. [App'x 0758-65 (Use Agreement)].

Skiplagged admits it booked at least 1,376,927 American Airlines trips between August 1, 2018 and August 18, 2023. [App'x 0768 (Skiplagged's Fourth Amended Answer to American's Interrogatory No. 8)]. This is just the customers who booked tickets directly through Skiplagged; during the same time period, Skiplagged admits its website had over fifty-nine million users and over 209 million sessions. [App'x 0268 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 12)]. Skiplagged has not produced records identifying the specific number ████████████████████████████████████████████████████

████████████████████████████████████████ [App'x 0029 (Skiplagged's 30(b)(6) Depo., 59:15–60:10)]. Accordingly, Skiplagged may have created as many as ████████ ████████████ sessions during this time.[6]

---

[5] Skiplagged has not produced documents to demonstrate that this is true; it may well be a low estimate of the American tickets sold by Skiplagged.

[6] Not every user session on the Skiplagged website necessarily means ████████████████ ████████████████ Nevertheless, these numbers demonstrate that Skiplagged likely created ████████████ sessions for more than just the amount of tickets it booked.

ACTIVE 698659351v16

2.      **American's Use Agreement Forbids Skiplagged's Activities.**

American's Use Agreement sets forth the terms and conditions under which users may

access and use AA.com.

> In return for gaining access to the Site and using it, you agree to be bound by
> the following Agreement without limitation or qualification, so please carefully
> review this Agreement before proceeding. *If you do not intend to be legally
> bound by these terms and conditions, do not access and use the Site.*

[App'x 0758 (Use Agreement (emphasis added))]. The Use Agreement further provides that:

- o   Content "appearing on the website is the exclusive property of [American]."
  [*Id.*].

- o   The user will not "engage in any commercial purpose including but not
  limited to… [a]dvertising or offering to sell any goods or services."]."
  [App'x 0760 (Use Agreement)].
- o   The user will not "[p]ost, send, or otherwise disclose confidential
  information…of any entity or person..." [*Id.*].

- o   The user will not "copy, display, distribute, download…publish, re-post,
  reproduce, reuse, sell, transmit…the content of the Site for public or
  commercial purposes." [App'x 0759 (Use Agreement)].
- o   The user will not "[c]opy…publish, recreate, reproduce, sell, transfer, or
  transmit any information, products, services, or software obtained by, from,
  or through the Site." [App'x 0760 (Use Agreement)].
- o   The user will not "[m]onitor or copy any Content…without first obtaining
  American Airlines' prior written consent." [App'x 0761 (Use Agreement)].
- o   The user will not "[a]ct as an agent…for any person who is not a member
  of your immediate household; or your direct supervisor at your place of
  employment." [*Id.*].

- o   The user will not "[m]isrepresent or omit the origin or source of any file you
  download or upload." [App'x 076 (Use Agreement)].

American also specifically denies the user permission to hyperlink or provide references

to the Site or to use any trademarked or copyrighted material to provide such hyperlinks or

references, unless authorized by American Airlines. [App'x 0762 (Use Agreement)].

Skiplagged breaches these provisions █████████████████████████████████

███████ Skiplagged accesses American's website for a commercial purpose [App'x 0215-17,

0232-35, 0247-49, 0253 (Test Buys 2, 14, and 17)]; it sends the unsuspecting customer's confidential information, including personal and credit card information, to American's website [App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0687, 0691-92 (Zaman Depo., 21:18–22:20, 40:14–41:17); App'x (Skiplagged 30(b)(6) Depo., 22:22–23, 77:5–12); App'x 0213-14, 0230-31, 0250-51 (Test Buys 2, 14, and 17)]; it sends content it obtains from the website back to the customer by displaying it on the screen as well as in emails [App'x 0206, 0210, 0215, 0229, 0232, 0246-47 ((Test Buys 2, 14, and 17); App'x -712-13 (Zaman Depo., 124:25–126:6)]; and in doing so, it copies content off the American website without American's written consent [*Id.*]; and it acts as an agent of the unsuspecting customer and misrepresents the source of the information it presents to the customer [*Id.*].

### 3.       Skiplagged's Own Use Agreement Has Similar Terms.

Skiplagged has similar terms in the Use Agreement on its own website. [App'x 1017 (Skiplagged Terms and Conditions)]. That agreement states:

> By accessing this web site, you are agreeing to be bound by these web site Terms and Conditions of Use, all applicable laws and regulations, and agree that you are responsible for compliance with any applicable local laws. If you do not agree with any of these terms, you are prohibited from using or accessing this site. The materials contained in this web site are protected by applicable copyright and trademark law.

[*Id.*]. It further provides that users may only use the site for "personal, non-commercial transitory viewing" and that users may not "use the materials for any commercial purpose." [*Id.*].

### C.       Skiplagged's Activities are Willful.

### 1.       Skiplagged Charges Fees for Ordinary Tickets and Leaves Customers Hanging.

While real travel agencies often charge a small fee, on the order of $5 to $30, these travel agencies have a duty to support the customer in the event of a flight change, cancellation, refund

14

or other issue. [https://www.asta.org/about-us/leadershipGovernance/Credo ("ASTA travel advisors often charge clients professional fees, to reflect the value of the unique services they provide to their clients."); https://www.travelweekly.com/Travel-News/Travel-Agent-Issues/Fees-by-the-numbers (2023 article discussing survey of travel advisors which reveals 71% charge some kind of fee; also indicates average ticketing fees of $35 for domestic air travel)].

████████████ Skiplagged's sales of American tickets are ordinary, non-hidden-city tickets. [App'x 0066 (Skiplagged's 30(b)(6) Depo., 206:10–17)]. Skiplagged charges customers a fee for these tickets—██████████████████████—but it does not provide the customer any services. ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

### 2.    Skiplagged Advises Customers to Lie to American.

An airline ticket is a contract of carriage between American and the passenger. [App'x 0650 (Conditions of Carriage)]. The Conditions of Carriage apply to a ticketed passenger regardless of who pays for the ticket. [App'x 0651 (Conditions of Carriage]. The Conditions of Carriage explicitly prohibit "[r]eservations made to exploit or circumvent fare and ticket rules," including "[p]urchasing a ticket without intending to fly all flights to gain lower fares (hidden city ticketing)." [App'x 0668 (Conditions of Carriage)]. Relatedly, the Conditions of Carriage explicitly state that a "ticket is valid only when: [t]ravel is to/from the cities on your ticket and in your trip record." [App'x 0667-68 (Conditions of Carriage)]. A ticket is not valid when American

"find[s] that the ticket was bought using an exploitative practice," such as hidden city ticketing. [App'x 0668 (Conditions of Carriage)].

Skiplagged is aware of the Conditions of Carriage and takes affirmative steps to mislead customers about the Conditions of Carriage. Skiplagged's founder and CEO, Aktarar Zaman, publicly admitted in 2015 that customers may be "*breaking an agreement with the airlines known as a contract of carriage*, where it might say you can't miss flights on purpose." [App'x 0111 ("United Sued Me Last Year" Reddit AMA)]. Despite this admission, Skiplagged tells customers that purchasing hidden-city tickets is "perfectly legal," and its website says nothing about the ticket being invalid or in violation of the Contract of Carriage. [App'x 0836 (███████████████████ ██████████████████████████████████████████); App'x -0109 (Skiplagged.com FAQ, "What is Skiplagging or 'hidden-city' flying?")]. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

Skiplagged takes this step further by *telling the passenger to lie to American about their final destination*. Skiplagged provides personalized, scripted guidance that is unique to the customer's specific booking:



[App'x 0227, 0245 (Test Buys 14 and 17)].

Skiplagged also implicitly acknowledges that it knows it is encouraging illegal activity by expressly advising customers to take steps to avoid getting caught:



[App'x 0194 (Test Buy 2)].

- **Don't associate a frequent flyer account** — If you do, the airline might invalidate any miles you've accrued with them.

- **Some airlines may require proof of a return ticket** during check-in. If this happens to you, just buy a refundable return ticket directly from the airline and cancel it ASAP after boarding.

- **Do not overuse** hidden-city itineraries. Do not fly hidden-city on the same route with the same airline dozens of times within a short time frame.

- You might upset the airline, so don't do this often.

[App'x 0109 (Skiplagged.com FAQ, "What is Skiplagging or 'hidden-city' flying?")].

17

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████ Skiplagged's behavior harms American. When a passenger skips the final leg of her flight, American might delay the flight unnecessarily to track down the passenger. If the passenger still does not show, American has to determine whether she has checked luggage through to the final destination, because the luggage would need to be removed from the plane as a serious security matter, causing a flight delay. Additionally, when the passenger does not show up for the second leg of her flight, the rest of her

18

itinerary is automatically cancelled and she will not have a valid ticket on her way home.

### D. Skiplagged Profits Handsomely from Deceiving Customers.

Skiplagged has amassed ████████████████████ earnings, ████████

████████ derived from the fees they charge customers for booking tickets the customers could

have booked themselves on American's website. [App'x 0869-74 (Skiplagged's Profit and Loss

Statements for 2018-2023); App'x 0730-32 (Zaman Depo., 194:19–21, 197:11–20, 200:11–20;

203:3–13)].

## III.   SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate "when the pleadings and record evidence show no

genuine issue of material fact exists and that the movant is entitled to summary judgment as a

matter of law." *Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 786 (N.D. Tex. 2011)

(quoting FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Partial summary judgment can be used to dispose of affirmative defenses and

counterclaims. *Ringers Techs. LLC v. Harmer*, No. 4:18-CV-4347, 2020 WL 6385813, at *12

(S.D. Tex. Aug. 17, 2020), *report and recommendation adopted*, No. 4:18-CV-04347, 2020 WL

6384349 (S.D. Tex. Oct. 30, 2020); *E.E.O.C. v. I-Sector Corp.*, No. 3:01-CV-2240-R, 2003 WL

29939, at *6 (N.D. Tex. Jan. 2, 2003) (citation omitted).

## IV. ARGUMENTS AND AUTHORITIES

There are no genuine, material factual disputes which preclude summary judgment.

Skiplagged is using exact copies of American's trademarks and copyrighted flight symbol without

American's permission. Because of this, likelihood of confusion is a foregone conclusion. Further,

19

Skiplagged's *own documents* demonstrate thousands of instances of *actual* confusion. Because of these undisputed facts, American is entitled to summary judgment of liability and willfulness on its infringement, unfair competition, and copyright claims.

With respect to American's contract claims, there are similarly no disputed questions of material fact which would preclude summary judgment. Skiplagged indisputably breaches the AA.com Use Agreement by intercepting and transmitting customer data without the customer's knowledge.

## A.   Skiplagged is Liable for Trademark Infringement under the Lanham Act.

The elements of trademark infringement are easily satisfied here. To prevail on its claim of trademark infringement, American must show (1) it possesses valid trademarks and (2) Skiplagged's use of American's Marks creates a likelihood of confusion as to source, affiliation or sponsorship. *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.,* 783 F.3d 527, 536 (5th Cir. 2015). There is no dispute that American is the owner of registered trademark rights in its famous and valuable American Marks. Likewise, there is no genuine dispute that Skiplagged used without authorization marks that were identical to the American Marks at least 1.4 million times in connection with its website.

### 1.   American Has Valuable, Protectable Rights in the American Marks.

3.     American's federal registrations on the Principal Register are *prima facie* evidence of American's ownership of the American Marks, the validity of the registered American Marks, and of American's exclusive right to use the American Marks in commerce. 15 U.S.C. §1115(a); 15 U.S.C. §1057(b); [App'x 0331–485 (Trademark File Wrappers)]. Indeed, all but one of the American Marks are "incontestable." 15. U.S.C. §1115(b); [App'x 0347–51, 0375–79, 0423–26 (Reg. No. 4449061 File Wrapper, p. 17–21, Reg. No. 4939082 File Wrapper, p. 45–49, Reg. No. 5279167 File Wrapper, p. 93–96)]. Skiplagged has not pleaded an affirmative defense that

20

American lacks standing to bring its trademark claims (e.g., due to lack of ownership), nor has it pleaded an affirmative defense that any of the American Marks are invalid. *See gen.*, Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. 144]. American's ownership of valid trademarks is therefore undisputed.

### 2.    Skiplagged Used the American Marks to Create Confusion.

Skiplagged admits to using ***exact*** copies of the American Marks on its website to sell at least 1.4 million trips on American Airlines and to generate ███████████ revenue for itself. [App'x 0037 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); App'x 0696-97 (Zaman Depo., 60:14–62:10); App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. Skiplagged admits it is not and never has been American's agent. *See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. 144], ¶ 2. Skiplagged claims that "on May 23, 2017, a former [Skiplagged] employee obtained the American icon from the API response of a Skiplagged advertiser, which Skiplagged understood to be allowed to use and distribute the American icon." [App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. But Skiplagged has not explained how this could possibly constitute "authorization" to use American's trademarks—and with good reason: American's agreements with its agents expressly exclude the right to sublicense the American Marks. [App'x 0645 (Addendum to Governing Travel Agency Agreements)].

To establish the second element, likelihood of confusion, courts consider the "digits of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). These include "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* But analysis of these factors is unnecessary when the accused infringer is using an *exact copy* of asserted marks. *Paulsson Geophysical Servs. v.*

*Sigmar*, 529 F.3d 303, 311 (affirming district court's decision not to analyze the likelihood of confusion factors because the marks were an exact match). There is no dispute in this case that Skiplagged is using **exact** copies of American's AMERICAN AIRLINES, AMERICAN and Flight Symbol trademarks. [App'x 0037 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); App'x 0696-97 (Zaman Depo., 60:14–62:10); App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. Thus, Skiplagged's use of unauthorized *exact* copies of the American Marks is *prima facie* evidence of likelihood of confusion. *See Paulsson*, 529 F.3d at 310-311.

4.      Even if the Court were to review each digit of confusion out of an abundance of caution, they conclusively weigh in favor of American. The American Marks are strong, well-known marks. [App'x 0511 (Brand Recognition Report)]. American has been using AMERICAN AIRLINES and AMERICAN since the 1930s and has been using the Flight Symbol for over a decade. [App'x 0331–485 (Trademark File Wrappers); App'x 0492– 94 (Flight Symbol Copyright Registration)]. American tens of millions of passengers, and sells tens of billions in tickets every year. [App'x 0489 (2023 Form 10-K, p. 2–3)]. Skiplagged is using exact copies of the American Marks and is selling identical services. [App'x 0187-93, 0200-0206, 0210, 0215, 0219-220, 0223-25, 0232, (Test Buy 2 and 14, showing American IP)]. Both companies target the exact same customers and advertise in the exact same media. [App'x 0876, 0880 (Skiplagged's answers to marketing companies' questionaires)]. Skiplagged's intent is unabashedly to persuade customers that it is a legitimate source of tickets for American flights. [App'x 0106-109 (Skiplagged Website FAQs); App'x 0066-67, 0101 (Skiplagged's  30(b)(6) Depo., 208:14–23, 210:4–21, 347:3-349:19); App'x 0256-59 (███████████)]. Customers generally do not exercise enough care to determine whether Skiplagged is American's authorized agent, ████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████

Finally, and most importantly, it is not necessary in this case to examine whether confusion is *likely*, because there is *actual* confusion in the marketplace. ██████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████  █  ██████████████████████████████████████████

████████████. The scientific study conducted by American's expert, Professor Jerry Wind, further confirms that customers mistakenly believe that Skiplagged has some sort of association with American. [App'x 0964 (Wind Report, Exhibit 6a)]. Perhaps most strikingly, Professor Wind's study showed that roughly the same percentage of survey participants believed Skiplagged was associated with American as did those who believed that Expedia is associated with American—the latter ***actually being*** a longstanding agent of American. [*Id.*]. In short, all eight digits of confusion conclusively weigh in American's favor.

### 3.      Skiplagged Willfully Infringed the American Marks.

A defendant acts willfully "'if he knows his actions constitute an infringement.'" *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732, 748 (N.D. Tex. 2005) (*quoting Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). Several Circuit Courts of Appeal, as well as courts within the Fifth Circuit, have found willful conduct where a defendant acts with "'reckless disregard for, or [with] willful blindness'" toward a trademark owner's rights.

---

[7] The latter would be something with which an actual agent of American would be able to assist. The fact that consumers contact Skiplagged with such requests is proof that consumers mistakenly believe Skiplagged is American's agent.

23

*Berg v. Symons*, 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005) (*quoting Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). *See also Microsoft Corp. v. Wholesale Club, Inc*., 129 F. Supp. 2d 995, 1007 (S.D. Tex. 2000) ("A finding of willfulness does not require actual knowledge, but rather willful blindness."); *A Touch of Class Jewelry v. J.C. Penney Co*., No. CIV. A. 98–2949, 2000 WL 1224804, at *5 (E.D. La. Aug. 28, 2000) (*quoting SecuraComm Consulting Inc. v. Securacom*, 166 F.3d 182, 187 (3d Cir. 1999) ("Knowing or willful infringement ... involves an intent to infringe or a deliberate disregard of the mark holder's rights.")).

Skiplagged's willfulness is indisputable. Skiplagged took affirmative steps to avoid detection (shifting IP addresses, using customers' emails, using



Any one of these factors would be sufficient to support a finding of willfulness.

## B.     Skiplagged is Liable for False Designation of Origin and Unfair Competition.

The federal trademark infringement analysis is also dispositive of American's federal false designation of origin and unfair competition claims under § 1125(a). *See Bos. Prof'l. Hockey Ass'n, Inc. v. Dall. Cap & Emblem Mfg., Inc*., 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule ... the same facts which would support an action for trademark infringement [under the

Lanham Act] would also support an action for unfair competition."); *Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.*, 295 Fed. Appx. 630, 634 (5th Cir. 2008) (*per curiam*) ("Likelihood of confusion is the central evidentiary test for ... [f]alse designation of origin under the Lanham Act"); *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *6 (N.D. Tex. July 28, 2020) (Rutherford, J.) ("Federal unfair competition, false designation of origin, and false association claims, as well as Texas common law trademark infringement claims, all have the same elements as trademark infringement under the Lanham Act."), *rec. adopted*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020) (Lindsay, J.). Because American is entitled to summary judgment on its trademark infringement claim, it is also entitled to summary judgment on its false designation of origin and unfair competition claims.

## C.   Skiplagged is Liable for Infringing American's Flight Symbol Copyright.

Skiplagged has unequivocally infringed the American Copyright. A claim for copyright infringement has three elements: "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). There is no genuine dispute that American is the owner of a registered copyright for its Flight Symbol, and Skiplagged has admitted to copying it and using it for commercial purposes.

### 1.   American Owns the Copyright in the Flight Symbol.

American's copyright registration is *prima facie* evidence of American's ownership and the validity of the American Copyright. 17 U.S.C. § 410(c); [App'x (Copyright Registration)]. Skiplagged has not pleaded an affirmative defense that American lacks standing to bring its copyright claim (e.g., due to lack of ownership), nor has it pleaded an affirmative defense that the American Copyright is invalid. *See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. 144], ¶¶ 135–154. Accordingly, American's ownership of a valid copyright is undisputed.

25

## 2.      Skiplagged Admits It Copied the Copyrighted Flight Symbol.

Establishing factual copying requires proof that the defendant "actually used the copyrighted material to create his own work." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (*quoting Eng'g Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340 (5th Cir. 1994)). Absent direct evidence of copying, factual copying can be inferred from (1) striking similarity, or (2) a combination of access and substantial similarity." *Batiste v. Lewis*, 976 F.3d 493, 503–05 (5th Cir. 2020). Here, Skiplagged admits to accessing and using *exact* copies of the Flight Symbol on its website to sell American flights and to generate ████████████████ revenue for itself in the way of service fees and referral fees. [App'x 0037 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); App'x 0696-97 (Zaman Depo., 60:14–62:10); App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. Specifically, Skiplagged admits "on May 23, 2017, a former [Skiplagged] employee obtained the American icon from the API response of a Skiplagged advertiser." [App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. ████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████ Skiplagged reproduces that copy of the Flight Symbol each time an American flight is responsive to a user's search query—often multiple times on the same page.[8] [App'x 0188-193, 0219-20, 0237-38 (Test Buys 2, 14, and 17)].

Once again, Skiplagged admits it is not and never has been American's agent. *See*

_____

[8] In fact, in every test buy conducted by American the Flight Symbol was reproduced for all American flights. While Skiplagged appears to have finally ceased use of the Flight Symbol just hours before this motion was filed, it is still using other American Marks and there is no reason to believe Skiplagged will not immediately resume copying the Flight Symbol at a time convenient to its legal strategy.

ACTIVE 698659351v16

Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. 144], ¶ 2; [App'x 0264 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4)]. As a result, American has never licensed Skiplagged to use the American Copyright. Skiplagged claims that it "understood" the advertiser from whom it received the Flight Symbol in 2017 was "allowed to use and distribute the American icon." [App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. But this amounts to saying, "I found it on the Internet so I decided I could use it;" ███████████████████████████████████ ████████████████████████████████████████████ and it is undisputed American never granted Skiplagged such a right. The simple truth is, Skiplagged appropriated the Flight Symbol to line its pockets.

In short, it is undisputed that Skiplagged had access to American's Flight Symbol image and that the image is identical to the American Copyright, so access, substantial similarity and striking similarity are likewise undisputed, and American is entitled to summary judgment that Skiplagged has infringed the American Copyright.

### 3. Skiplagged Willfully Infringed the American Copyright.

Skiplagged's infringement of the American Copyright was willful for the same reasons its infringement of the American Trademarks was willful. *See* Section III.A.3, *supra*.

### D. Skiplagged Breaches of the AA.com Use Agreement.

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011) (citing *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

The Federal Rules of Civil Procedure permit parties to seek summary judgment on all

27

elements of a breach of contract claim, or to bifurcate the breach of contract claim into questions of liability and damages. FED. R. CIV. P. 56(a); *NB Gathering IX Pref, L.L.C. v. Nelson*, No. 3:20-CV-3491-K, 2022 WL 347610, at *1 (N.D. Tex. Feb. 4, 2022) (summary judgment movant on liability question only); *see 8300 Buckeye Delaware LLC v. UPS Supply Chain Sols., Inc.*, No. 4:22-CV-00726-O, 2023 WL 7273712, at *3 (N.D. Tex. Sept. 17, 2023) (same). Summary judgment on the breach of contract liability question is proper when liability can be proven without creating fact questions. *Nelson*, 2022 WL 347610 at *1. Answering the liability question requires the movant to demonstrate the existence of a valid contract, performance by the movant, breach by the non-movant, and that the breach damaged the movant as a matter of law. *Id.* at *3 (noting that the movant need not introduce any evidence as to the quantum or calculation of damages when merely seeking a liability determination).

### 1.   The Use Agreement is a valid and enforceable contract.

"Browsewrap" agreements like the Use Agreement are recognized as valid contracts. *E.g.*, *Robinson v. Match.com, L.L.C.*, No. 3:10-CV-2651-L, 2012 WL 5007777, at *12 (N.D. Tex. Oct. 17, 2012), *aff'd sub nom. Malsom v. Match.com, L.L.C.*, 540 Fed. Appx. 412 (5th Cir. 2013) ("Thus, in using Match.com's website, Plaintiffs agreed to be bound by the Terms of Use or Agreement…"); *Heritage Capital Corp. v. Christie's, Inc.*, No. 3:16-CV-3404-D, 2017 WL 1550514, at *3 (N.D. Tex. May 1, 2017) (enforcing arbitration agreement in use agreement); *Sw. Airlines Co. v. Roundpipe, LLC*, 375 F. Supp. 3d 687, 706 (N.D. Tex. 2019); *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 441 (N.D. Tex. 2004). As with the use agreements in those cases, the Use Agreement here is a valid and enforceable contract.

Skiplagged has adopted a strategy of cultivated ignorance, ███████████████ ██████████████████████████████████████████████████████████████ But claimed ignorance is not a "get out of jail free" card. A Use Agreement is enforceable if a party had

constructive notice of it. *See Southwest Airlines Co. v. BoardFirst, L.L.C.*, 2007 U.S. Dist. LEXIS 96230, \*14-22, Case No. 3:06-cv-0891-B (N.D. Tex. September 12, 2007); *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, 2021 WL 2651087, \*5-6, Case No. 3:20-cv-2541-K (N.D. Tex. June 28, 2021) (collecting cases and listing factors demonstrating constructive notice). Factors demonstrating constructive notice include whether the defendant uses similar terms of use on its own website, whether the defendant took steps to avoid detection, such as using email addresses other than company emails, and whether the defendant masked its IP addresses. *Widespread Elec. Sales*, 2021 WL 2651087, 5-6.

Indisputably, *every* factor demonstrating constructive notice is present here:

- o Skiplagged has similar terms of use on its own website, including prohibiting anyone from making commercial use of the website. [App'x 1017-18 (Skiplagged Website Terms & Conditions)].
- o Skiplagged used customer emails, instead of Skiplagged corporate email addresses, to access American's website. [App'x 1020-21, 1023-24, 1028-30, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉s)].
- o Skiplagged masked its IP addresses▉▉▉▉▉▉. [App'x 0265, 0267 (Skiplagged's Third Amended Objections and Responses to American's Interrogatory Nos. 5, 9); App'x 0058-59 (Skiplagged's 30(b)(6) Depo., 176:22–178:19)].
- o Skiplagged encouraged customers to obfuscate about obtaining tickets from Skiplagged. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉)].
- o Skiplagged accessed and used AA.com on the order of a million to several million times in the past five years.[9] [App'x 0768 (Skiplagged's Fourth Amended Answer to American's Interrogatory No. 8)].
- o Skiplagged sells American flights to customers by having them book and pay for their tickets on Skiplagged.com, and then taking the customer's personal and credit card information and completing the booking on

---

[9] To the extent Skiplagged avoided admitting the *specific* number of ▉▉▉▉▉▉▉▉▉ access AA.com, and the *specific* number▉▉▉▉▉▉▉▉▉▉ which resulted in booking a ticket, that is immaterial. Skiplagged's admissions are sufficient to established it happened at least around a million, and up to several million, times. Further, Skiplagged cannot use its refusal to maintain records, or to cooperate in discovery, as a both sword and shield.

29

AA.com. [App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0306 (Gellert Depo., 130:14–133:10); App'x 0023, 0033-34 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 77:13–78:5)].



)].

What's more, Skiplagged is aware of these kinds of Use Agreements generally. In addition to having a similar Use Agreement on its own website, Skiplagged was sued by Southwest Airlines in this District over the same behavior. *Southwest Airlines Co. v. Skiplagged, Inc. et al.*, Case No. 3:21-cv-01722-E. In that case, Southwest pointed out that the terms and conditions on its website prohibited use of Southwest's website for any commercial purpose and for infringing Southwest's intellectual property, among other things. [App'x 0127 (Southwest's Amended Complaint [Dkt. No. 36], ¶ 33)]. In view of this, there can be no dispute that Skiplagged is keenly aware of the terms and conditions on airlines' websites.

Further, Skiplagged has had actual notice of American's Use Agreement since this lawsuit began. Yet Skiplagged has continued to ███████████████████ access American's website. ████████████████████████████████████████████ ████████████████████████████████ As of June 28, 2024, Skiplagged has not stopped its use of the Flight Symbol and American's Marks. *See* https://skiplagged.com/flights/DFW/ORD/2024-07-12/2024-07-14 (last accessed Jun. 28, 2024); *see also* https://skiplagged.com/flights/DFW/ORD/2024-07-12/2024-07-14#trip=AA270,AA2896 (last accessed Jun. 28, 2024). Accordingly, there is no dispute that Skiplagged is accessing American's website with actual notice of American's Use Agreement.

    2.    **American performed its obligations under the Use Agreement.**

Under Texas law, a party to a contract satisfies its obligations if it can establish it fully or substantially performed its contractual obligations. *See Weitzul Constr., Inc. v. Outdoor Environs*, 849 S.W.3d 359, 363 (Tex. App.—Dallas 1993, writ denied). In the Use Agreement, in exchange for accepting its conditions, American promises to provide access to the site. [App'x 0758 (Use Agreement, p. 1)]. It is undisputed that Skiplagged gains access to the site each time it ███████ ███████ book a flight on AA.com. [App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0711 (Zaman Depo., 117:11–120-6; App'x 0043-44 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 54:19–55:2; 77:13–78:5)].

### 3.   Skiplagged materially breached the Use Agreement.

The Use Agreement explicitly states that AA.com is solely for personal, non-commercial use. [App'x 0758 (Use Agreement)]. Users of AA.com agree that they will not misuse the website to, among other things:

- Engage in any commercial purpose including but not limited to advertising or offering to sell any goods or services. [App'x 0760 (Use Agreement)].
- Post, send, or otherwise disclose confidential information …of any entity or person. [*Id.*].
- Copy, display, distribute, download…publish, re-post, reproduce, reuse, sell, transmit…the content of the Site for public or commercial purposes. [App'x 0759 (Use Agreement)].
- Monitor or copy any Content…without first obtaining American Airlines' prior written consent. [App'x 0761 (Use Agreement)].
- Act as an agent…for any person who is not a member of your immediate household; or your direct supervisor at your place of employment. [*Id.*].
- Misrepresent or omit the origin or source of any file you download or upload. [App'x 0760 (Use Agreement)].

The evidence set forth in this brief demonstrates that Skiplagged breached all of these obligations. Skiplagged breaches these provisions in every ███████ session it creates for its customers. Skiplagged accesses American's website for commercial purposes [App'x 0215-17, 0232-35, 0247-49, 0253 (Test Buys 2, 14, and 17)]; it sends the unsuspecting customer's

31

confidential information, including personal and credit card information, to American's website [App'x 0264-65 (Skiplagged' Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0687, 0691-92 (Zaman Depo., 21:18–22:20, 40:14–41:17; App'x 0020, 0033 (Skiplagged's 30(b)(6) Depo., 22:22–23, 77:5–12); App'x 0197, 0204, 0225, 0243 (Test Buys 2, 14, and 17)]; it sends content it obtains from the website back to the customer by displaying it on the screen as well as in emails [App'x 0206, 0210, 0215, 0229, 0232, 0246-47 ((Test Buys 2, 14, and 17); App'x 0712-13 (Zaman Depo., 124:25–126:6)]; and in doing so, it copies content off the American website without American's written consent [*Id.*]; and it acts as an agent of the unsuspecting customer and misrepresents the source of the information it presents to the customer [*Id.*]. Therefore, as a matter of law, Skiplagged is liable for breach of contract. *See Smith Intern., Inc.*, 490 F.3d at 387.

### 4. American has suffered damages as a result of Skiplagged's breaches.

While American does not seek summary judgment as to the specific amount of damages, there is no dispute of material fact that Skiplagged's breaches damage American. ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

ACTIVE 698659351v16

███████████████████████████████████

███████████████████████████████████

██████████████████████████████

**E.    The Court Should Grant American Summary Judgment on Skiplagged's Affirmative Defenses.**

Skiplagged has asserted a litany of boilerplate, unsubstantiated defenses. The Court should grant American summary judgment on all of them for the reasons detailed below.

**1.    Skiplagged's Use of the American Trademarks is Not Fair Use.**

Skiplagged's willful infringement of the American Trademarks for commercial gain is anything but fair use. There are two types of noninfringing uses of another's mark that are both known under the label of "fair use." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 4:17 (5th ed. 2024). They are "classic fair use" (using a descriptive, geographic, or personal name to describe one's *own* goods) and "nominative fair use" (using someone else's trademark but only to the extent necessary to *describe* goods). *Id.* Skiplagged has engaged in neither type.

This is not a classic fair use case. Classic fair use is for companies who *need* to use a descriptive term, geographic term, or personal name to describe to describe their *own* goods. McCarthy, § 11:45. Skiplagged is not using the American Marks to describe its own goods. Further, the Flight Symbol mark is not a description at all.

Nor is this a nominative fair use case, because Skiplagged is not authorized to sell American tickets to *anyone*. Nominative fair use arises in situations involving goods which can be resold; if one sells a used iPhone, it is fair to describe the product as a used iPhone when reselling it. But tickets are not goods which can be resold; as noted above, a ticket is a contract of carriage between American and the customer and *cannot* be resold. *Nobody* can act on American's behalf

to negotiate that contract with a customer without American's permission.

Nominative fair use permits one to "use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 488 (5th Cir. 2008) (*quoting Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir.1998) (internal quotation marks omitted), *abrogation on other grounds recognized by Eppendorf– Netheler–Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 356 (5th Cir. 2002)). To avail itself of the nominative fair use defense, Skiplagged must (1) only use so much of the American Marks as necessary to identify the product or service and (2) not do anything that suggests affiliation, sponsorship, or endorsement by American. *Smack Apparel*, 550 F.3d at 489. "A court ordinarily should consider a nominative fair use claim in conjunction with its likelihood-of-confusion analysis in order to avoid lowering the standard for confusion." *Id.*

Skiplagged cannot meet this standard because *any* use of the American Marks suggest sponsorship or affiliation.[10] Tickets for American's flights are not commodities that can be purchased and resold. [App'x 0650 (Conditions of Carriage)]. They are contracts between the passenger and American, and American's authorized agents are the only third parties that can enter into those contracts with passengers on American's behalf. [*Id.*]. Skiplagged is not and never has been American's agent. *See* Skiplagged's Amended Answer and Affirmative Defenses [Dkt. No. 144], ¶ 2. By booking American flights for customers—particularly through its Book Now feature

_____

[10] As noted above, Skiplagged appears to have stopped using the flight symbol on its website in the hours preceding the filing of this motion. This last-minute hail-Mary does not improve Skiplagged's position on fair use because airline tickets are not goods which can be resold. Further, Skiplagged is not telling consumers the truth. It does not tell them that it is merely transmitting their personal information to American's website, or that it is not authorized to sell tickets.

in which the customer never leaves Skiplagged's website and which mimics the experience of booking through a bona fide agent—Skiplagged is suggesting it is American's agent.

Further, Skiplagged is not using the American Marks to truthfully describe Skiplagged's product. Skiplagged actively encourages customers to buy hidden-city tickets, which are a violation of American's Conditions of Carriage, making the tickets invalid. [App'x 0105-09 (Skiplagged Website FAQ); App'x 0668 (Conditions of Carriage)]. Skiplagged's falsely suggests the tickets its books are valid. [*Id.*].

### 2.   Skiplagged's Use of the American Copyright is Not Fair Use

The Copyright Act provides that "the fair use of a copyrighted work … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The factors to be considered in determining whether there is fair use are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id.* The Court need not address any of these factors in this case, because Skiplagged's use of the Flight Symbol is not for the purpose of criticism, comment, news reporting, teaching, scholarship, or research. Rather, Skiplagged's use is strictly for commercial purposes—more specifically, to drive its own profits—and thus this is not a case where there are any concerns with conflicts between copyright and free speech. [App'x 0730-32 (Zaman Depo., 194:19–21, 197:11–20, 200:11–20; 203:3–13); App'x 1224 (customer complaints); App'x 1228-38 (customer complaints); App'x 0869-74 (Skiplagged's Profit and Loss Statements)].

Even if the Court were to consider the four fair use factors, all favor a finding of infringement and no fair use. Regarding the purpose and character of use, "any commercial use

tends to cut against a fair use defense." *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, 626 F.2d 1171, 1175 (5th Cir. 1980). Skiplagged's use of the Flight Symbol is indisputably commercial, as Skiplagged stands to profit from exploitation of the Flight Symbol without paying for a license. *Id.* The first factor favors American.

To determine the nature of the work, courts consider whether the work has been appropriated for its "expressive elements," rather than to disseminate "the underlying facts." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 563–64 (1985). There are no "underlying facts" to the Flight Symbol; it is a graphical work, and thus Skiplagged has appropriated it for its expressive elements. The second factor favors American.

It is undisputed that Skiplagged copied the *entirety* of the Flight Symbol. [App'x 0037 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); App'x 0697 (Zaman Depo., 60:14–62:10); App'x 0270 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. The third factor favors American.

Finally, Skiplagged's use of the Flight Symbol diminishes its value. The only entities permitted to use the Flight Symbol are American and its authorized agents and licensees. Skiplagged could have, but has not, gone through the process of seeking accreditation as a travel agent or a direct licensee of American. Instead, it misappropriates the Flight Symbol to draw in customers interested in American flights and then misleads them by offering a booking experience that mimics that of bona fide travel agents. [App'x 0107 (Skiplagged Website FAQ "How to Book a Flight on Skiplagged")]. Permitting Skiplagged and other third parties to freely use the Flight Symbol for their own commercial gain would destroy American's licensing market for the Flight Symbol. Skiplagged's use of the Flight Symbol is precisely the kind of use copyright laws were created to prevent. The fourth factor overwhelmingly favors American.

36

Accordingly, the Court should grant summary judgment in American's favor on Skiplagged's copyright fair use defense.

### 3.      The Court Has Personal Jurisdiction Over Skiplagged.

Skiplagged's defense that the Court lacks personal jurisdiction is moot, as the Court has already found that it unequivocally does have personal jurisdiction over Skiplagged. *See* Dtk. No. 52, p. 1–2. The Court's exercise of personal jurisdiction over Skiplagged is therefore proper, and the Court should grant summary judgment in American's favor.

### 4.      Skiplagged's Statute of Limitations Defense Fails as a Matter of Law Because All Claims Have Been Timely Asserted.

Skiplagged's statute of limitations affirmative defenses fails as a matter of law because American has brought all of its claims within the applicable periods. Under Texas law, breach of contract claims have a four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). "[A] breach of contract claim accrues when the contract is breached." *Stine*, 80 S.W.3d at 592. Skiplagged breaches American's Use Agreement on a daily basis—each time it ███████████████ book a flight on AA.com. [App'x 0264-65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0306 (Gellert Depo., 133:4–10); App'x 0023, 0033-34 (Skiplagged's 30(b)(6) Depo., 34:6–35:8, 77:13–78:5); App'x 0711 (Zaman Depo., 117:11–120:6]. American has timely asserted its breach of contract claims. [*Id.*]

Under Texas law, Lanham Act violations—such American's trademark infringement and false designation and unfair competition claims—have a four-year statute of limitations. *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 859 (N.D. Tex. 2009) (noting the Lanham Act itself does not prescribe a statute of limitations, but that federal courts applying Texas law apply the four-year statute of limitations prescribed in section 16.004 of the Texas Civil Practices and Remedies

Code); *see also* TEX. CIV. PRAC. & REM. CODE § 16.004. The statute of limitations accrues "when a wrongful act causes some legal injury . . . [e]ach subsequent violation is a separate event, separately actionable, which begins anew the running of the statute of limitations." *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied). Skiplagged infringes the American Marks repeatedly on a daily basis each time a flight search through Skiplagged includes an American flight. American has timely asserted its Lanham Act claims against Skiplagged.

### 5.      Skiplagged's Myriad Estoppel Claims (Equitable Estoppel, Quasi-Estoppel, Consent, Waiver, Ratification, and Acquiescence) Fail as a Matter of Law Because No Evidence Supports the Claims.

Skiplagged's myriad estoppel defenses—equitable estoppel, quasi-estoppel, consent, waiver, ratification, and acquiescence—fail as a matter of law as follows.

"The doctrine of equitable estoppel requires: '(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representation.'" *Shoop v. Devon Energy Prod. Co., L.P.*, No. 3:10-CV-00650-P, 2013 WL 12251353, at *23 (N.D. Tex. Mar. 28, 2013) (quoting *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998)). Skiplagged's equitable estoppel defense fails as a matter of law because the record shows there is no evidence supporting these elements. *See Sanchez*, 2016 WL 3453635 at *1; *see also Shoop*, 2013 WL 12251353 at *23 ("Reviewing the record, summary judgment is proper against the defense of equitable estoppel because Defendant fails to muster any evidence supporting the bare accusations that Plaintiffs made false representations or Defendant relied on these representations."). Skiplagged has not identified any facts supporting this defense; when asked about this defense at Skiplagged's 30(b)(6) deposition, Skiplagged did not identify any false

38

representation or concealment of material facts and did not identify any reliance on the same. [App'x 0094-95 (Skiplagged's 30(b)(6) Depo., 320:10–321:16)].

The affirmative defense of "quasi-estoppel 'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken.'" *Shoop*, 2013 WL 12251353 at *23 (quoting *Bott v. J.F. Shea Co.*, 299 F.3d 508, 512-13 (5th Cir. 2002)). "At its very core" it seeks to prevent "one who retains benefits under a transaction [from] avoid[ing] its obligations" and therefore estops the party from taking an inconsistent position. *Id.* Skiplagged's quasi-estoppel defense fails as a matter of law because Skiplagged has failed to introduce any evidence demonstrating that American has previously taken a position that it now is inconsistent with. *See id.; Sanchez*, 2016 WL 3453635 at *1. Indeed, Skiplagged's 30(b)(6) witness did not identify any position taken by American when asked about this defense. [App'x 0094-95(Skiplagged's 30(b)(6) Depo., 320:10–321:16)].

As to Skiplagged's related defenses of consent, waiver, ratification, and acquiescence, the evidence in the record conclusively demonstrates that American in no way condoned Skiplagged's damaging actions. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Because Skiplagged has failed to introduce evidence to the contrary—that American condoned its damaging acts and actions—the Court should rule as a matter of law on these defenses. *See Sanchez*, 2016 WL 3453635 at *1.

**6.      Skiplagged's Laches is Inapplicable to Most of American's Claims, and If It Applies to American's Equitable Claim, No Evidence Supports Its Application.**

This Circuit does not recognize laches as an affirmative defense to claims brought at law—

only claims brought at equity. *See King Aerospace Commercial Corp., Inc. v. Al-Anwa Aviation, Inc.*, No. CIVA 308-CV-0999-L, 2010 WL 286729, at *6 (N.D. Tex. Jan. 21, 2010) (citing *FDIC v. Fuller*, 994 F.2d 223, 224 (5th Cir. 1993). Accordingly, Skiplagged's affirmative defense of laches fails as a matter of law for American's breach of contract, trademark infringement, and false designation and unfair competition claims[11] (hereinafter collectively referred to as American's "Legal Claims").

Because all of American's Legal Claims have been timely asserted as a matter of law, Skiplagged's affirmative defense of laches should fail because American's only equitable request—a prayer for an injunction—is derivative of its legal harms. *See* American's First Amended Complaint [Dkt. No. 8], ¶ 132 (Noting injunctive relief is necessary because of "Skiplagged's ongoing actions in violation of its contracts, the Lanham Act, and the Copyright Act…").

Alternatively, Skiplagged's laches defense fails as a matter of law because the record shows there is no evidence that American (1) unreasonably delayed asserting its rights, or (2) that Skiplagged has suffered "a good faith change of position . . . to his detriment because of [American's] delay." *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997) (quoting *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)); *see Sanchez*, 2016 WL 3453635 at *1. The only fact Skiplagged's 30(b)(6) witness could identify supporting this defense is the fact that Skiplagged started operations ten (10) years ago. But as noted throughout this brief, Skiplagged's entire business model centers around avoiding detection; it uses dynamic IP addresses so that American cannot detect when Skiplagged ████████████████

---

[11] Skiplagged does not assert this defense against American's copyright claim.

to access AA.com. [App'x 0265, 0267 (Skiplagged's Third Amended Objections and Responses to American's Interrogatory Nos. 5, 9); App'x 0058-59 (Skiplagged's 30(b)(6) Depo., 176:22–178:19)].



It encouraged customers to lie to American if asked whether they did business with Skiplagged. [App'x 1035, 1041].

American was only able to discover the full scope of Skiplagged's efforts to avoid detection, and the scope of Skiplagged's infringement, through discovery in this litigation. [App'x 1245-47; App'x 1249-1251; App'x 0747-48; App'x 1253-54]. It took substantial investigation and skill to uncover the truth of Skiplagged's infringement—

[App'x 0751, 0754].

### 7. Skiplagged's Unclean Hands Defense is Inapplicable to American's Legal Claims, and If It Applies to American's Equitable Claims, No Evidence Supports Its Application.

"Texas courts have long held that the affirmative defense of unclean hands is available only in equity." *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) (internal citations omitted). Accordingly, the doctrine of unclean hands cannot bar American's claims for damages.

As to American's claims for equitable relief, "the doctrine should not be applied unless the party asserting [it] has been seriously harmed and the wrong complained of cannot be corrected without the application of the doctrine." *Id.* (internal quotations omitted). Skiplagged's defense asserts as its basis for its defense that "American uses its control over gates and authorized agents

as well as false communications to impose predatory practices on consumers and Skiplagged." *See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. No. 144], ¶ 139. However, Skiplagged has not identified the allegedly false communications, nor how American's "control over gates and authorized agents" have "seriously harmed" Skiplagged. *Bagby*, 609 F.3d at 774. Skiplagged's 30(b)(6) witness also testified that "nothing comes to mind" when asked to describe its factual basis for this defense [App'x 0095 (Skiplagged's 30(b)(6) Depo., 322:13–323:5)]. Moreover, Skiplagged merely books tickets readily available on American's website, and profits from booking these tickets, so it cannot be impacted by so-called predatory pricing. The Court should accordingly grant summary judgment in American's favor on Skiplagged's unclean hands defense.

### 8.    Skiplagged's Failure of Consideration Defense Fails as a Matter of Law Because No Evidence Supports It.

"[A] failure of consideration occurs when, because of some supervening cause arising after the contract is formed, the promised performance fails." *Cheung-Loon, LLC v. Cergon, Inc.*, 392 S.W.3d 738, 747 (Tex. App.—Dallas 2012, no pet.). Because Skiplagged has introduced no evidence demonstrating a supervening cause that forced American's performance under the Use Agreement (providing accessing to AA.com) to fail, the defense fails as a matter of law. *See Sanchez*, 2016 WL 3453635 at *1. Skiplagged accessed AA.com somewhere between a million and several million times in the last five years, and the Use Agreement clearly sets forth that access to AA.com is itself the consideration provided in exchange for entering into the Use Agreement. [App'x 0758 (Use Agreement)]. Skiplagged even completes transactions with American via AA.com ███████████████, which is further consideration for Skiplagged's access to AA.com The defense further fails because as a general matter, it is not within the province of a court to "inquire into the adequacy of consideration supporting a contract …" *Garcia v. Lumacorp,*

42

*Inc.*, No. CIV.A. 3:02-CV-2426-, 2004 WL 1686635, at *11 (N.D. Tex. July 27, 2004), *aff'd*, 429 F.3d 549 (5th Cir. 2005).[12]

**9.     Skiplagged's Lack of Privity Defense Fails as a Matter of Law Because It is a Party to the Use Agreement.**

5.     Skiplagged's lack of privity claim fails as a matter of law because the evidence conclusively proves that Skiplagged, by accessing AA.com, agreed to and became a party bound by the Use Agreement. *See Robinson*, 2012 WL 5007777, at *12 ("Thus, in using Match.com's website, Plaintiffs agreed to be bound by the Terms of Use or Agreement, which includes the numerous disclaimers discussed in this and the court's prior opinions."); *BoardFirst, L.L.C.*, 2007 WL 4823761, at *7; App'x 0264–65 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0767–72 (Skiplagged's Fourth Amended Answer to American's Interrogatory No. 8); App'x 0711 (Zaman Depo., 117:11–120-6); App'x 0023, 0028, 0033–34 (Skiplagged 30(b)(6) Depo., 34:6–35:8; 54:19–55:2; 77:13–78:5)]. As set forth repeatedly above, Skiplagged's affirmative access of American's website, a million to several million times, as well as its constructive notice of the Use Agreement for American's website, demonstrates privity.

**10.     Skiplagged's No Mutual Assent Defense Fails as a Matter of Law Because It Agreed to the Use Agreement by Its Conduct.**

Skiplagged's affirmative defense of no mutual assent fails on the same grounds of its lack of privity claim. The evidence conclusively proves that Skiplagged, by accessing AA.com, agreed to the Use Agreement. *See Robinson*, 2012 WL 5007777 at *12; *BoardFirst*, 2007 WL 4823761

---

[12] *See also Cheung-Loon, LLC*, 392 S.W.3d at 747 (noting that lack of consideration and failure of consideration are distinct defenses—lack of consideration, as opposed to failure of consideration, deals with a situation where no consideration was exchanged at the onset of a contract). Skiplagged has not asserted a lack of consideration defense.

at *7. As noted elsewhere herein, Skiplagged's use of ████████████████ to access American's website a million to several million times, coupled with its use of information from ████████████████ sessions to send information back to customers, and its attempt to evade detection by American, firmly demonstrates Skiplagged's knowledge of and assent to American's Use Agreement.

### 11.     Skiplagged's Defense that the Use Contract Is Void as Against Public Policy Fails as a Matter of Binding Court Precedent.

6.      Skiplagged's affirmative defense that the Use Agreement is void as against public policy fails as a matter of law on legal and evidentiary grounds. First, courts enforce contracts like the Use Agreement. *E.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991); *Robinson*, 2012 WL 5007777 at *12; *BoardFirst*, 2007 WL 4823761 at *7. Second, Skiplagged has failed to introduce evidence showing how or why the Use Agreement violates public policy. *See Sanchez*, 2016 WL 3453635 at *1. Skiplagged's does not identify any factual basis for this defense. [App'x 0095 (Skiplagged 30(b)(6) Depo., 323:7–323:17)]. Further, Skiplagged's *own* website contains a Use Agreement containing several terms which are essentially the same as those found in American's Use Agreement. [App'x 0758–65 (Use Agreement)].

### 12.     Skiplagged's Performance Under the Use Agreement Is Not Illegal.

7.      Skiplagged's affirmative defense that *performance* of the Use Agreement is illegal under the Sherman Act fails as a matter of law on legal and evidentiary grounds. First, courts have long enforced contracts like the Use Agreement. *E.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991); *Robinson*, 2012 WL 5007777 at *12; *Sw. Airlines Co.*, 2007 WL 4823761 at *7. Second, Skiplagged has failed to introduce evidence showing how or why the Use Agreement violates the Sherman Act. Parroting its unclean hands defense, Skiplagged asserts, "American uses its control over gates and authorized agents as well as false communications to

impose predatory practices on consumers and Skiplagged." *See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. No. 144], ¶ 144]. However, Skiplagged has not come forward with any evidence of any alleged "predatory practices," much less made any connection to how they would render Skiplagged's *performance* under the Use Agreement illegal. [App'x 0096 (Skiplagged 30(b)(6) Depo., 323:18–323:25)]. Indeed, there is nothing illegal about Skiplagged's performance under the Use Agreement, and the Court should grant summary judgment in American's favor on Skiplagged's illegality of contract defense.

### 13. American's Copyright Claim is Not Barred by the Copyright Act's Statute of Limitations

Under Federal law, copyright infringement claims have a three-year statute of limitations. 17 U.S.C. § 507(b); *Petrella v. MGM,* 572 U.S. 663, 667 (2014). "A claim ordinarily accrues when an infringing act occurs. Under the separate-accrual rule that attends the copyright statute of limitations, when a defendant has committed successive violations, each infringing act starts a new limitations period." *Id.* Skiplagged commits multiple new infringements of the American Copyright on a daily basis, since it reproduces the Flight Symbol each time a user of Skiplagged's website or mobile app conducts a search for flights that includes American flights. [App'x 0187-0193, 0219-20, 0237-38 (Test Buys 2, 14, and 17)].

### 14. American Has Not Failed to Mitigate Damages

8.    The duty to mitigate arises after an injury occurs, not before. *Energy Intelligence Group, Incorporated v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 274 (5th Cir. 2020). "Mitigation is a method of apportioning damages where the party, subsequent to infliction of the harm, fails to reasonably avoid loss. *Id.* As noted herein, Skiplagged made extensive efforts to avoid detection by American, and even encouraged customers to lie to American to further avoid detection. Skiplagged has not identified anything American could have done, subsequent to

Skiplagged's infliction of harm, to minimize the harm Skiplagged was causing. Skiplagged's servers utilize dynamic internet protocol (IP) addresses, so American cannot block Skiplagged's access to AA.com by simply blocking specific IP addresses. [App'x 0265, 0267 (Skiplagged's Third Amended Objections and Responses to American's Interrogatory Nos. 5, 9); App'x 0058–59 (Skiplagged 30(b)(6) Depo., 176:22–178:19)]. Once Skiplagged made an initial copy of the Flight Symbol and saved it to its servers, Skiplagged repeatedly reproduced the Flight Symbol via content delivery networks under its control. [App'x 0075 (Skiplagged 30(b)(6) Depo., 242:18–245:12)]. Apart from the injunctive relief American is presently seeking, there is little else American can do to prevent Skiplagged's ongoing and repeated infringement of the American IP. Meanwhile, Skiplagged could easily take steps itself to reduce American's damages by ceasing its use of the American IP and its booking of American flights. The ongoing damages Skiplagged is causing American are entirely within Skiplagged's control, and Skiplagged chooses to continue its wrongful and damaging conduct. In short, Skiplagged has failed to show that American failed to mitigate its damages, and the Court should grant summary judgment in American's favor.

### 15.     American Has Suffered Compensable Damages

Skiplagged's "No Compensable Damages" defense is not a defense at all; it is merely a reiteration of Skiplagged's denials of American's pleaded claims. For that reason alone, the Court should grant American summary judgment and strike the defense.

9.     Moreover, American has unquestionably incurred compensable damages because of Skiplagged's conduct. Skiplagged is not an agent of American, yet it unlawfully ███████ ████████████ to circumvent the normal travel agent channels and book flights for customers on AA.com—all the while charging customers service fees *on top of* the cost of the flight. [App'x 0264-65, 0267 (Skiplagged's Third Amended Objection and Response to American's Interrogatory Nos. 4, 9); App'x 0690, 0701, 0725–26 (Zaman Depo., (30(b)(6), 34:6–35:8, 77:13–

78:5, 176:22–177:12, 178:13–19); App'x 1230–38 (Customer support emails); App'x 0208–17, 0230–35, 0250–53 (Test Buy 2, p. 23–32, Test Buy 14, p.45–50; Test Buy 17, p. 65–69)]. Further, Skiplagged's sale of hidden-city tickets that are subject to invalidation lead to poor customer experience that damage the goodwill, reputation and value inherent in the American IP [App'x 1257–58, 1260, 1262 (customer complaints to American, p. 2–3, 4, 7)]. Indeed, American's expert, David Fuller, has quantified American's damages in detail. [App'x 1277–80 (Report of David N. Fuller, ¶¶ 32-37, 40].

### 16.   Third Party Actions

Skiplagged asserts that "third party actions" are the cause of American's complaints because Skiplagged customers are the ones making the travel decisions and comparing flight prices. *See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. No. 144], ¶ 150. There is no legally recognized defense of "third party actions." Moreover, trademark and copyright infringement are strict liability torts. For these reasons, American moves for summary judgment on Skiplagged's "third party actions" defense.

### 17.   Disclaimed Liability

Skiplagged asserts that it "disclaimed liability" to American by virtue of the Terms and Conditions on the Skiplagged.com website. *See id.* at ¶ 151. However, American was not and is never, by no uncertain terms, a party to any terms and conditions agreed to by a customer on the Skiplagged.com webpage. Further, American does not purchase tickets from Skiplagged.com, other than the limited test purchases made by its investigator as part of American's investigation into Skiplagged, and an even smaller number of test purchases made by American employees at earlier stages of its investigation. In order for Skiplagged to claim that it disclaimed liability to American, a valid and enforceable contract as to Skiplagged's Terms and Conditions would have needed to be formed to give foundation to the disclaimer of liability. No allegation or evidence in

47

this case supports such an argument. Therefore, Skiplagged's disclaimed liability defense fails.

### 18.    Preemption

Skiplagged misplaces its preemption defense. It asserts that Americans claims are preempted by the Aviation Deregulation Act. *See id.* at ¶ 152. The preemption clause of the Aviation Deregulation Act preempts a *state or a political division* thereof from re-establishing economic regulations that the federal government abolished with the ADA. *See* 49 U.S.C. § 1305(a)(1). "The Airline Deregulation Act of 1978 was an economic deregulation statute. It included an explicit preemption provision prohibiting a state or a political division thereof to enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. The preemption clause of the ADA was designed to prohibit the states from re-establishing economic regulation that the Federal Government had abolished. In other words, the question of whether a state law relates to rates, routes, or services is whether state law actually 'interferes' with the purposes of the federal statute, in this case airline deregulation. Airline deregulation explicitly was designed to stimulate efficiency, innovation and low prices as well as variety and quality of air transportation services." *See* Paul Dempsey, *Federal Preemption of State Regulation of Airline Pricing, Routes, and Services: The Airline Deregulation Act*, 10 FIU L. Rev. 435 (2015); s*ee Sardinas v. American Airlines, Inc*., 1994 Ct. Sup. 9196 (Conn. Super. Ct. 1994) (quoting *Hodges v. Delta Air Lines, Inc*., 4 F.3d 350, 353 (5th Cir. 1993) (analyzing preemption clause of ADA in personal injury tort case and finding that Congress' silence as to preemption of personal injury claims was evidence that the claim was not preempted by the ADA.) ("In evaluating the scope of § 1305(a) preemption, one must bear in mind its origin in the ADA, an economic deregulation statute. The Federal Aviation Act of 1958 (FAA), 72 Stat. 731, 49 U.S.C. App. *et seq.* (as amended), conferred on the Civil Aeronautics Board economic regulation authority over interstate air transportation. In determining that efficiency, innovation, low prices, variety,

48

and quality would be best furthered by reliance on competitive market forces in the airline industry. Congress enacted the ADA to dismantle the pervasive federal economic regulation of the interstate airline industry . . . [and] [t]o prevent the states from frustrating the goals of federal deregulation by establishing or maintaining economic regulation of their own.). It is undisputed that American is not asserting any state regulations that are preempted by the Airline Deregulation Act. The Court should therefore grant summary judgment in American's favor on this defense.

### 19. Lack of Standing

Skiplagged's lack of standing defense only applies to American's tortious interference claim, which is not the subject of this motion. *See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. No. 144], ¶ 153.

### 20. License

10.     Skiplagged's recently-added "license" defense is without merit. Skiplagged alleges American "licensed" or "authorized" Skiplagged to use American's IP. *See id.* at ¶ 154]. Skiplagged relies exclusively on the fact that American has granted a limited license to Skyscanner—a third party. *Id*. But American's agreement with SkyScanner explicitly limits who SkyScanner can share this data with.[13] ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[13] Throughout discovery Skiplagged has refused to provide a clear answer as to where it is acquiring American Data and American IP, and American strongly doubts that Skiplagged is in fact receiving anything from SkyScanner. Skiplagged is not an authorized B2B Affiliate of Skyscanner and has no right to American's Data and IP from any third-party source. [App'x (Exhibit 62, 2016 Agreement, Exhibit 5, Skyscanner B2B Affiliates authorized by American at the time of signing); App'x (Exhibit 63, November 2023 email communication between American and Skyscanner regarding updated affiliate list; App'x (Exhibit 64, August 26, 2015, email from Mark Crossey to Alex Comber)].



11.     At no time has American *ever* approved Skiplagged to receive American content, including American IP, by virtue of American's relationship with Skyscanner. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Skiplagged's last-minute "license" defense is utterly without merit.

## V.  CONCLUSION

For the reasons stated above, the Court should grant summary judgment in favor of American and against Skiplagged as having willfully infringed American's trademarks and copyright and having breached the AA.com Use Agreement.


Dated: July 1, 2024                          Respectfully submitted,

                                             */s/ Dee J. Kelly, Jr.*
                                             Dee J. Kelly, Jr.
                                             State Bar No. 11217250
                                             dee.kelly@kellyhart.com
                                             Lars L. Berg
                                             State Bar No. 00787072
                                             lars.berg@kellyhart.com

ACTIVE 698659351v16

J. Austin Franklin
State Bar No. 24075853
austin.franklin@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 1, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

<u>/s/</u>*Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.

51