IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

# DEFENDANT SKIPLAGGED, INC.'S RESPONSE
## IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE THE COURT'S MAY 1, 2024 ORDER

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

INTRODUCTION

The Court's May 1, 2024 Order required Skiplagged, Inc. ("Skiplagged") to produce its data "as raw and unorganized though it may be," in a reasonable format because American Airlines, Inc. ("AA") said it needed such to calculate its alleged damages (the "Order"). But neither the Court's order nor AA's discovery requests identified a specific format in which Skiplagged was to produce the data. So, Skiplagged took on the burden of writing a computer code and renting costly servers to produce approximately 1.4 million customer flight records in PDF format, a format commonly used in litigation production and which Skiplagged believed complied with the Order.

When AA complained about the readability of the PDFs, Skiplagged then went to the trouble of writing an additional code to enhance/sharpen the image of the PDFs, performed tests that confirmed the high quality reproduction of the PDFs, and produced such enhanced PDFs to AA. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ But, Skiplagged had previously produced such "record locator numbers."

Since courts have held PDFs are reasonably usable, and Skiplagged has produced readable PDFs, Skiplagged complied with the Court's Order. Yet, AA's Motion to Enforce the Court's May 1, 2024 Order (the "Motion") claims Skiplagged intentionally altered its production of customer flight records to make them unusable by AA. [Dkt. 145], p. 1. Skiplagged did no such thing. And, AA's claims that Skiplagged violated Judge Ray's order because Skiplagged should have produced the information in a format that it never identified or requested is without merit. The first time AA requested production in table format was June 21, 2024, long after Skiplagged

1

made its production in PDF format.  Nothing in Judge Ray's order required Skiplagged to produce the data in any particular format and PDF format is a universally acceptable format.

Moreover, AA's Motion contains zero analysis of what data is still needed. ███████

████████████████████████████████████████

████████████████████████████████

█████ Skiplagged not only produced those record locators in its PDF production, but after understanding AA's damage expert's complaints about the readability of the PDFs in the production, Skiplagged reproduced clearer PDFs to remedy that concern and avoid further burdening the Court.  AA's Motion should be denied.

<u>BACKGROUND AND PROCEDURAL HISTORY</u>

On October 12, 2023, AA served its First Set of Requests for Production, which included RFP Nos. 4 and 5, seeking documents from Skiplagged which AA said it needed to calculate its damages.

On December 8, 2023, AA filed a motion to compel. [Dkt. 38].  On December 19, 2023, Judge Ray ordered Skiplagged to produce documents responsive to RFP Nos. 4 and 5. [Dkt. 53], p. 3.  Skiplagged commenced producing responsive documents.

Despite Skiplagged's voluminous compliant productions, AA honed in on one topic—Skiplagged's raw data as to customer flights on AA.  According to AA, this was responsive to RFP Nos. 4 and 5 and must be produced in order to allow AA to calculate its damages.  [Dkt. 75], p. 1.  Skiplagged responded by explaining that such data could not be converted from raw data to something useable without significant expense and writing software code to perform that specific purpose. [Dkt 90], p. 4-5.

Nevertheless, on April 5, 2024, AA filed another motion to compel, which did not specify the format for the production of that raw data. *See* [Dkt. 75]. On May 1, 2024, Judge Ray issued an order requiring Skiplagged to "produce its data, raw and unorganized though it may be, translated such that AA can reasonably use that data to perform the necessary analysis and calculations to ascertain the information responsive to Interrogatory No. 8 and RFP Nos. 4-5." [Dkt. 118], p. 7. (the "Order"). Consistent with AA's motion and discovery requests, Judge Ray did not mandate or even suggest the format for the translation that he ordered Skiplagged to undertake.

███████████████████████████████████████████████████████

██████ Ex. A-2, Deposition of Skiplagged's Corporate Representative ("Skiplagged's Corp. Rep. Depo.") 294:17-19 (App. p. 016). On May 31, 2024, Skiplagged produced its data to AA in PDF format. Ex. A-5 (App. p. 072). Weeks later and for the first time, AA then demanded that Skiplagged produce its raw data in a "single, tab-delimited text file, with headers." Ex. A, Declaration of Aaron Z. Tobin ("Tobin Decl.") ¶ 4 (App. p. 002); Ex. A-1 (App. p. 007). AA's primary complaint was that Skiplagged's production of PDFs is unusable because it is "individual grainy, pixelated PDFs." [Dkt. 145], p. 5.

Skiplagged offered a reasonable solution: "Skiplagged is willing to take on the burden of writing additional code which will enhance/sharpen the text and thus reduce the noise in the existing production…[w]hile no OCR function is perfect, this should increase the accuracy rate to 95% or better. We believe this process can be done in relatively short order." Ex. A-1 (App. p. 006). Skiplagged then produced its documents in a higher image quality in an effort to try and assist and address AA's poor-quality complaint. Ex. A, Tobin Decl., ¶ 7; Ex. A-1 (App. p. 006). Skiplagged even performed numerous tests to confirm that its improved production eliminated the

concern about the production being grainy and pixilated and has found that high quality OCR software is effective at over 99% accuracy. Ex. C, Declaration of Aktarer Zaman ("Zaman Decl.") ¶ 6 (App. p. 094).

On July 1, 2024, three days after this Motion was filed, and after Skiplagged had produced the clear, enhanced images to AA, Skiplagged deposed AA under Federal Rule of Civil Procedure 30(b)(6) concerning the data produced and AA's method of calculating its damages. Ex. A-6 (App. pp. 074-081). AA testified ███████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Ex. A-3, Deposition of American's Corporate Representative ("American Corp. Rep. Depo,") 220:14-221:12; 231:1-10; 232:13-25 (App. pp. 45-48). However, AA already had all of the record locator numbers in the previously produced PDFs. And, Skiplagged found a zero percent error rate as to the record locator numbers that AA claims are necessary for its damages analysis. Ex. C, Zaman Decl., ¶ 6.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.    Legal Standard**

A party is "the master of its production requests[.]" *Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.*, No. 15-5265, 2017 WL 111268 at *3 (E.D. La. Jan. 11, 2017). "Lacking a specific request to the contrary, courts regularly find searchable PDF documents to constitute a reasonably usable form." *Davenport v. Charter Comms., LLC*, No. 4:12CV0007AGF, 2015 WL 1286372, at *3 (E.D. Miss. Mar. 20, 2015).

II.  **Skiplagged Complied with the May 1, 2024 Order**

   A. **Skiplagged transformed its raw data into a reasonably usable format, as required by the Court's Order**

AA's Motion accuses Skiplagged of purposeful conduct that was "designed with the intent to deprive American of the information needed to fully prosecute its case." [Dkt. 145], p. 1.  In fact, AA accuses Mr. Zaman of something nefarious—using his technological expertise to manipulate the data so AA cannot use it.  *Id*., p. 5.  But there is no intentional misconduct here.  Rather, Skiplagged complied with the Court's order by transforming its raw data into a reasonably usable format, PDF files.  Skiplagged produced data from almost 1.4 million records in this universally acceptable format and even provided high quality OCR enriched images to ease in AA's use of that data, which is what Judge Ray required.



Ex. A-2, Skiplagged's Corp. Rep. Depo., 294:17-22 (App. p. 016); Ex. C, Zaman Decl. ¶ 3 (App. pp. 093-094).

Ex. A-2, Skiplagged's Corp. Rep. Depo., 296:6-9 (App. p. 018).   *See id*., 303:3-6 (App. p. 025).

[1]  *See id*., 315:23-25 (App. p. 037).  Since AA did not specify how Skiplagged had to produce its raw data, Skiplagged did so in a manner that is

---

[1] Later, based on AA's complaints after Skiplagged's production, Mr. Zaman enriched the images with high quality OCR software to make them easier to use.

5

commonly used in litigation—PDF files. Ex. B, Declaration of Ron Schnell ("Schnell Decl.") ¶ 3 (App. p. 084).

The Motion falls short in demonstrating that this production format frustrated AA's ability to use the data for its damages calculations, ███████████████████████. Mr. Fuller provided no analysis on what further data he needs or why it is important in performing AA's damage calculation. *See* [Dkt. 146], pp. 20-45. ██████████████████████████████████████████████████████████████████████████████████████████. And, after hearing Mr. Fuller's complaints about the image quality and OCR functionality in Skiplagged's production, Skiplagged moved quickly[2] to provide an enhanced production that has an over 99% accuracy rate in its OCR function. Ex. C, Zaman Decl., ¶¶ 5-6 (App. p. 094).

AA contends Mr. Zaman "discarded" the Python script, but that is incorrect. [Dkt. 147], p. 6. As stated, Mr. Zaman had to rent a virtual computing machine and when Skiplagged completed the production, the Python program remained in the virtual machine. Ex. C, Zaman Decl., ¶ 4 (App. p. 094). ████████████████████████████████████████████████ Ex. A-2, Skiplagged's Corp. Rep. Depo., 318:2-3 (App. p. 040). The Python script went away when Skiplagged terminated the lease. Ex. C, Zaman Decl., ¶ 4 (App. p. 094). Mr. Zaman did not "discard" the script. Skiplagged simply stopped renting the virtual computing machine because it no longer needed the machine once Skiplagged produced its data. AA ignores this and demands that the Court order Mr. Zaman to create the script—*again*.

---

[2] Mr. Fuller's testimony took place on Thursday, June 27. Skiplagged worked over the weekend and provided the enhanced images by Monday, July 1.

Nevertheless, AA seeks an order to compel Skiplagged to reproduce the raw data in AA's recently revealed preferred method, "single, tab-delimited text file, with headers," which would require Skiplagged to start this whole process over again. Ex. B, Schnell Decl., ¶ 4 (App. p. 084); Ex. C, Zaman Decl., ¶ 7 (App. p. 094). This would require spending significant time, effort, and money to, once again, rent a high-powered virtual computing machine, and draft and apply a new script to gather, decrypt, and prepare Skiplagged's scattered data in a new format. *Id.*

Skiplagged "need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E). And, Skiplagged has remedied the supposed readability issue as there is now no showing that AA is unable to read the record locator numbers from the enhanced production. Ex. A-1 (App. p. 006). Thus, the Court should deny AA's Motion.

**B. Courts have found PDFs to be reasonably usable**

In *M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-cv-2390-F, 2011 WL 13128965 (N.D. Tex. Aug. 31, 2011), the defendants moved to compel the plaintiff to produce its financial records and email correspondence in native electronic format. *Id.* at *1. The plaintiff asserted it produced the documents in an accessible format, PDF files. *Id.* at *4. The court denied the motion because "Defendants are holding out for the format that they want" and "the formats used by Plaintiff…are absolutely reasonable." *See id.* at *5. Other courts have also found PDFs to be reasonably usable. *See Tijerna-Salazar v. Venegas*, 19-CV-00074-DC-DF, 2022 WL 1085620 at *12 (W.D. Tex. April 11, 2022) (holding that PDF formats are "sufficient."); *Autotech Techs. Ltd. P'Ship v. Automationdirect.com*, 248 F.R.D. 556, 559-60 (N.D. Ill. 2008) (finding a PDF document to be in a reasonably usable form when the request for production did not specify).

28337882v1 99460.002.00

In fact, like Skiplagged in this case, the defendant in *Davenport v. Charter Comms., LLC*, No. 4:12CV0007AGF, 2015 WL 1286372 (E.D. Miss. Mar. 20, 2015) produced searchable PDF files to the plaintiffs. 2015 WL 1286372 at *1-2. Plaintiffs complained that defendant should have produced the documents "in a pipe delimited text format…that is computer-readable, sortable, exportable, and able to be manipulated." *Id.* at *2. Plaintiffs, however, did not specify a format for the requested documents and the plaintiffs' position was therefore rejected. *See id.* "Lacking a specific request to the contrary, courts regularly find searchable PDF documents to constitute a reasonably usable form." *Id.* at *3 (internal citations omitted).

Here, neither the Order nor AA's discovery requests specified a particular form the data production must take. So, ███████████████████████████████████ Skiplagged's Corp. Rep. Depo. 294:17-22; 303:19-20 (App. pp. 016, 025); Ex. C, Zaman Decl., ¶ 3 (App. pp. 093-094). Skiplagged, like the defendant in *Davenport*, then produced the PDF files, which courts have found to be reasonably usable. *See also Tijerna-Salazar,* 2022 WL 1085620 at *12; *M3Girl Designs, LLC*, 2011 WL 13128965 at *5; *Autotech Techs. Ltd. P'Ship*, 248 F.R.D. at 559-60.

Ron Schnell, a computer science expert and Managing Director of Berkeley Research Group ("BRG") whom Skiplagged retained for this Response, agrees. *See* Ex. B, Schnell Decl., ¶ 3 (App. p. 084). He states, "[i]n my experience as an expert, the production of text-based data in pdf format is typical in the context of litigation." *Id*. Thus, as Judge Ray ordered, Skiplagged wrote code to piece together the raw data in a "reasonably usable" format as required by this Court's Order. Since PDF files are routinely used in litigation, Skiplagged has complied with the Court's Order. *See id*.

28337882v1 99460.002.00

Finally, Skiplagged's production in PDF is no different than AA's production to Skiplagged. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. Ex. A-4 (App. pp. 053-070). AA, in other words, asks the Court to impose obligations on Skiplagged for a production standard that AA itself did not use for its production to Skiplagged.

## CONCLUSION

AA's complaint about the quality of Skiplagged's production has been remedied. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Skiplagged complied with the May 1 Order. AA's Motion should be denied.

Dated: July 8, 2024.

                                                       Respectfully submitted,

                                                       *William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231

9

        Telephone: (214) 265-3800
        Facsimile: (214) 691-6311
        atobin@condontobin.com
        kreed@condontobin.com
        acampbell@condontobin.com

        ***Attorneys for Defendant, Skiplagged, Inc.***

28337882v1 99460.002.00

**CERTIFICATE OF SERVICE**

      On July 8, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                      */s/Aaron Z. Tobin*
                                      Aaron Z. Tobin