## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

### APPENDIX IN SUPPORT OF DEFENDANT SKIPLAGGED, INC.'S RESPONSE IN OPPPOSITION TO PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO ENFORCE THE COURT'S MAY 1, 2024 ORDER AND BRIEF IN SUPPORT

Defendant Skiplagged, Inc. ("Skiplagged") files this Appendix in support of Defendant Skiplagged, Inc.'s Response in Opposition to Plaintiff American Airlines, Inc.'s Motion to Enforce the Court's May 1, 2024, Order and Brief in Support, as follows:

| Exhibit A | Declaration of Aaron Z. Tobin | APPX. 001 - 004 |
|---|---|---|
| Exhibit A-1 | July 1, 2024 Email re: AA/Skiplagged/Data | APPX. 005 - 009 |
| Exhibit A-2 | Aktarer Zaman's June 12, 2024 Confidential Deposition Transcript excerpts | APPX. 010 |
| Exhibit A-3 | Marcial Lapp's July 1, 2024 Deposition Transcript excerpts | APPX. 011 |
| Exhibit A-4 | AA-SKP-00059659 - AA-SKP-00059676 | APPX. 012 |
| Exhibit A-5 | May 31, 2024 Email from Kirkman re: Data to be Produced under Magistrate Judge Ray's May 1, 2024 Order | APPX. 013 - 014 |
| Exhibit A-6 | Defendant Skiplagged, Inc.'s Notice of Rule 30(b)(6) Deposition of Plaintiff American Airlines, Inc.'s Corporate Representative | APPX. 015 - 023 |
| Exhibit B | Declaration of Ron Schnell | APPX. 024 - 027 |

| Exhibit B-1 | Ron Schnell CV | APPX. 028 - 033 |
|---|---|---|
| Exhibit C | Declaration of Aktarer Zaman | APPX. 034 - 037 |

Dated: July 8, 2024

Respectfully submitted,

/s/ William L. Kirkman
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


/s/ Aaron Z. Tobin
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG,
PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com


/s/ Darin M. Klemchuk
Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com


***Attorneys for Defendant, Skiplagged, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

On July 8, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Aaron Z. Tobin*      
Aaron Z. Tobin

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF AARON Z. TOBIN

The undersigned, AARON Z. TOBIN, hereby states as follows:

1.      "My name is Aaron Z. Tobin. I am over the age of 18 and legally competent to make this declaration.

2.      I am counsel for Defendant Skiplagged, Inc. ("Skiplagged"). I submit this declaration in support of Defendant Skiplagged, Inc.'s Response in Opposition to Plaintiff's Motion to Enforce the Court's May 1, 2024 Order.

3.      On June 21, 2024, my co-counsel, Bill Kirkman and I conferred by telephone with counsel for American Airlines, Inc. ("AA") regarding AA's complaints concerning Skiplagged's May 31, 2024 production that was served pursuant to the Court's May 1, 2024 Order.

4.      On June 26, 2024, I responded via email noting the June 21, 2024 telephone call was the first time AA requested the data in question be produced in a specific format.

5.      After taking the deposition of AA's damages expert, David Fuller, on July 27, I followed-up on July 28 via email with Skiplagged's offer to take on the burden of writing additional code to enhance/sharpen the text to address Fuller's concerns about the quality of the images and Optical Character Recognition ("OCR") functionality.

6.     On the same day, via telephone, counsel for AA rejected Skiplagged's offer to resolve the issue by providing the enhanced pdfs and instead continued to insist Skiplagged reproduce the data in a single, tab-delimited text file.

7.     In light of Fuller's testimony, AA's Motion to Enforce the Court's May 1, 2024 Order [Dkt 145], filed on June 28, 2024, and in a continued effort to avoid burdening the Court, on July 1, I emailed AA's counsel a link to enhanced pdfs for the production at issue.

8.     Attached hereto as <u>Exhibit A-1</u> is a true and correct copy of the email chain between AA's counsel and me, dated June 21, 2024 through July 1, 2024.

9.     Attached hereto as <u>Exhibit A-2</u> is a true and correct copy of excerpts from the transcript of the deposition of Aktarer Zaman, Skiplagged's Corporate Representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure, taken on June 12, 2024.

10.     Attached hereto as <u>Exhibit A-3</u> is a true and correct copy of excerpts from the transcript of the deposition of Marcial Lapp, AA's Corporate Representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure, taken on July 1, 2024.

11.     Attached hereto as <u>Exhibit A-4</u> is a true and correct copy of AA-SKP-00059659-76, which AA produced to Skiplagged in this lawsuit on May 3, 2024.

12.     Attached hereto as <u>Exhibit A-5</u> is a true and correct copy of an email between Bill Kirkman and counsel for American, dated May 31, 2024.

13.     Attached hereto as <u>Exhibit A-6</u> is a true and correct copy of Skiplagged's Notice of Rule 30(b)(6) Deposition of American's Corporate Representative, dated June 25, 2024.

14.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

DATED the 7th day of July, 2024.

___/s/_ Aaron Z. Tobin_____
**AARON Z. TOBIN**

28337695v3 99460.002.00

# EXHIBIT A-1

| From: | Aaron Z. Tobin |
|---|---|
| To: | NelsonC@gtlaw.com; billk@kirkmanlawfirm.com |
| Cc: | lars.berg@kellyhart.com; dee.kelly@kellyhart.com |
| Subject: | RE: AA / Skiplagged / Data [IWOV-Interwoven.FID461762] |
| Date: | Monday, July 1, 2024 12:20:23 PM |
| Attachments: | image001.png |

Dee and Cam – following up on my previous emails, and conversation with Dee Friday morning, my client has decided to voluntarily do what we offered American on Friday - upscale and enhance the production of the data. This process has resulted in enhanced OCR capabilities with very high accuracy rates (over 95%).  My client started the process over the weekend, and we are producing this enhanced version in the following link https://drive.google.com/file/d/14Ss-kMFuzhcOr_bHS92bl3Bl2UTBrnzf/view?usp=drive_link.  This production is without prejudice to Skiplagged's position that it fully complied with the Judge Ray's May 1 order.

We believe this should moot the complaints identified in the motion American filed on Friday evening.  Please let me know as soon as possible if American agrees that the motion is now moot and when it will inform the court accordingly.  Bill and I are available to discuss.

Thank you,

Aaron Z. Tobin
www.condontobin.com
214-265-3851

---

**From:** Aaron Z. Tobin
**Sent:** Friday, June 28, 2024 6:56 AM
**To:** NelsonC@gtlaw.com; billk@kirkmanlawfirm.com
**Cc:** lars.berg@kellyhart.com; dee.kelly@kellyhart.com
**Subject:** RE: AA / Skiplagged / Data [IWOV-Interwoven.FID461762]


Cam – after having a chance to hear Mr. Fuller's testimony today on his concerns about the quality of the images and OCR function on the data produced, we visited again internally. While Skiplagged maintains that it has complied with Judge Ray's May 1 Order, it does want to do everything it can within reason to try and reach a compromise to avoid further burdening the court with the issue.  In that vein, my client is willing to take on the burden of writing additional code which will enhance/sharpen the text and thus reduce the noise in the existing production.  With the font being a standard Times New Roman, this should substantially enhance the OCR function within the production and make it more effective.  While no OCR function is perfect, this should increase the accuracy rate to 95% or better.  We believe this process can be done in relatively short order.  Is this offer acceptable to put to bed the dispute over the data produced and whether the production complies with the May 1 Order?


Aaron Z. Tobin
www.condontobin.com

214-265-3851

---

**From:** Aaron Z. Tobin
**Sent:** Wednesday, June 26, 2024 10:28 AM
**To:** NelsonC@gtlaw.com; billk@kirkmanlawfirm.com
**Cc:** lars.berg@kellyhart.com; dee.kelly@kellyhart.com
**Subject:** RE: AA / Skiplagged / Data [IWOV-Interwoven.FID461762]

Cam,

Thank you for your email. As we discussed, AA did not request information responsive to RFPs 4 and 5 and ROG 8 be produced in a "single, tab-delimited text file, with headers" until our 6/21 telephone call. We have considered AA's recent request and believe that it is untimely and outside Judge Ray's 5/1 Order, of which Skiplagged has fully complied with.

As you correctly quote, the May 1 Order required Skiplagged to produce the requested data "translated into a reasonably usable form, except to the extent that the translation requires analysis of the data." This is what Skiplagged did. Further, your email contains incorrect assumptions. First, you state that the "data exists in Skiplagged's systems in electronic, text format." This is not correct. The data exists in Skiplagged's systems, intertwined with other data, and in an encrypted form. Merely pulling the data would not be usable, instead it requires translation into a reasonably usable form. To do this, Mr. Zaman had to rent powerful computers with 360 processors, at a significant cost, to extract the relevant data and handle the encryption. The process of extracting and translating the Skiplagged data was done in many terabytes RAM using sophisticated data structures, not multiple steps as you assume. The python script Mr. Zaman wrote extracted, decrypted, and translated the data into the usable PDFs without creating an intermediate tab delimited format.  No additional steps were taken to convert the data after it was extracted, decrypted and published to PDF. Indeed, as Mr. Zaman testified on June 12, 2024, all of this was done by the python script.  At no point was unencrypted data obtained and then converted.

As to the OCR issue raised, when copying and pasting from a PDF to a Word document, for example, it is not uncommon for there to be mistakes in the translation. Nothing was specifically done to interfere with the OCR.  The OCR feature was implemented using one of the more accurate open-source OCR engines available that in turn made the data reasonably usable. We took a look at the sample you sent over and we were able to search for and find the PNR record locator as well as other information within the document using the find tool, a process that doesn't work without OCR.  Further, fuzzy search can be done to overcome any OCR issues that you claim. And if AA is not satisfied with the OCR, it is my understanding that AA can run its own OCR process on the documentation produced.

In sum, AA very recently requested for the first time that Skiplagged produce the requested data in a particular format.  This request comes well after the discovery requests, the motion to compel and May 1 Order. Skiplagged fully complied with the May 1 Order by producing the data requested in a reasonably usable format.  To do so again, as AA is requesting would be unreasonably costly and unnecessarily burdensome.

Thank you,

Aaron Z. Tobin
www.condontobin.com

**APPX. 007**

214-265-3851

---

**From:** NelsonC@gtlaw.com <NelsonC@gtlaw.com>
**Sent:** Friday, June 21, 2024 11:15 AM
**To:** billk@kirkmanlawfirm.com; Aaron Z. Tobin <atobin@condontobin.com>
**Cc:** lars.berg@kellyhart.com; dee.kelly@kellyhart.com
**Subject:** AA / Skiplagged / Data

Aaron,

This is in furtherance of our discussion today regarding the roughly 1.4 million PNR records that Skiplagged produced pursuant to the Court's order of May 1st. During our call, you asked me to put in an email exactly what American is asking for.

The short answer is (with more detailed explanation below), that American is simply asking for the data to be produced in a single, tab-delimited text file, with headers. To the extent their needs to be more than one row per PNR (for example, to show multiple segments) that would be acceptable.

The longer explanation is as follows.

On May 1st, the Court ordered that "Skiplagged also **SHALL PRODUCE** all data in its possession or control responsive to Interrogatory No. 8 and Request for Production Nos. 4-5 (except with regards to Skiplagged's customer's social security numbers or credit card numbers), translated into a reasonably useable form, except to the extent that the translation requires analysis of the data." In response to that order, Skiplagged produced 1.4 million PDFs.

These 1.4 million PDFs are not in a "reasonably useable form." Among other things, the OCR in the PDFs is inaccurate. I have attached just one example here. If you open the PDF, you can see that the PNR is "QSHWAU," but if you copy and paste this you get "QsHWwaU." There are many other OCR errors in this page alone, and there are similar errors throughout this production. These errors make it impossible for American to do any kind of analysis of the data.

What's more, we should not be talking about OCR in the first place. The data exists in Skiplagged's systems in electronic, text format. Converting that electronic data into images, and then applying OCR to it, were extra steps that never should have been carried out.

During the 30(b)(6) deposition of Skiplagged, Mr. Zaman confirmed that in gathering this data, he first obtained a tab-delimited file from the "production" database, and that some of the fields in that tab-delimited file were encrypted. He used a Python script to decrypt the encrypted fields. He could have stopped there, and simply sent us the decrypted, tab-delimited file.

Instead, Mr. Zaman inexplicably chose to take *extra* steps to convert the decrypted data into in an image format, and then applying a sloppy OCR process to those images. Doing this rendered the data unreadable to a computer.

The data should have been produced in a single text file, in a format that would render it useable (i.e., so that it can be imported into Excel). Since Mr. Zaman has already admitted the data started in tab-delimited format, it should be produced that way.

Please give me a call if you have any questions. My mobile number is below.

Cam

**Cameron M. Nelson**
Shareholder

Greenberg Traurig, LLP
77 West Wacker Drive | Suite 3100 | Chicago, IL 60601
T +1 312.456.6590 | F +1 312.899.0360 | C +1 708.227.7106
NelsonC@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

# EXHIBIT A-2

**(FILED UNDER SEAL)**

# EXHIBIT A-3

**(FILED UNDER SEAL)**

# EXHIBIT A-4

**(FILED UNDER SEAL)**

# EXHIBIT A-5

| | |
|---|---|
| **From:** | Bill Kirkman |
| **To:** | lars.berg@kellyhart.com; julia.wisenberg@kellyhart.com; Austin Franklin; Dee Kelly |
| **Cc:** | Aaron Z. Tobin; Abigail Campbell; Darin Klemchuk |
| **Subject:** | data to be produced under Magistrate Judge Ray"s May 1, 2024 Order |
| **Date:** | Friday, May 31, 2024 5:18:03 PM |

Counsel,

Here is a link to the data described above. It is to be referred to as a whole as Bates # SKP00111228:

https://drive.google.com/file/d/1I1eT0Gk0CfxNuQh7WIoZLh7A8Mlxqd7C/view?usp=sharing


William L. Kirkman
Kirkman Law Firm, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
(817) 336-2800, ext. 107
(817) 877-1863 (Fax)
billk@kirkmanlawfirm.com

The information in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use, or disseminate the information. If you have received this e-mail transaction in error, please notify us immediately. Although this e-mail and any attachments are believed to be free of any virus or other defect which might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free, and no responsibility is accepted by Kirkman Law Firm, PLLC for any loss or damage arising in any way from its use.

# EXHIBIT A-6

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT SKIPLAGGED, INC.'S NOTICE OF RULE 30(b)(6) DEPOSITION OF
PLAINTIFF AMERICAN AIRLINES, INC.'S CORPORATE REPRESENTATIVE**

TO:   Plaintiff, American Airlines, Inc., through its attorneys of record, Messrs. Dee J. Kelly, Jr.,
Lars L. Berg, and J. Austin Franklin and Ms. Julia G. Wisenberg, Kelly Hart & Hallman
LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102; Ms. Bina Palnitkar, Greenberg
Traurig LLP, 2200 Ross Avenue, Suite 5200, Dallas, Texas 75201; and Mr. Nathan J.
Muyskens, Greenberg Traurig LLP, 2101 L Street, N.W., Suite 1000, Washington, D.C.
20037.

**PLEASE TAKE NOTICE** that pursuant to FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6),

Defendant, Skiplagged, Inc. ("Skiplagged"), by and through its undersigned counsel, will take the

oral (and possibly) videotaped deposition of Plaintiff, American Airlines, Inc. ("American"), through

its designated corporate representative, starting at 9:00 a.m. CDT on Monday, July 1, 2024, at the

offices of Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, Texas 76102, or

such other location mutually agreed to by the parties in advance of the deposition. The deposition

will be taken upon oral examination before an officer authorized by law to administer oaths, may be

videotaped, and will be recorded by stenographic means by a certified court reporter, and shall

continue from day to day until completed.

1

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6), American is required to designate a representative to testify on American's behalf with respect to the Topics set forth in Exhibit A attached hereto. American has a duty to prepare the witness to testify on all Topics for which he or she has been designated to testify for American, based on all documents, communications, facts, and information known to American, with American's possession, custody, or control, or otherwise available to American. Skiplagged reserves all rights to seek appropriate relief in the event the witness is not sufficiently prepared to testify to all Topics for which he or she is offered to testify.

Dated:  June 25, 2024

Respectfully submitted,

/s/ *William L. Kirkman*
William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone:  (817) 336-2800
Facsimile:   (817) 877-1863

/s/ *Abigail R.S. Campbell*
Aaron Z. Tobin,
Texas Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
Texas Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
acampbell@condontobin.com
**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311

2

Darin M. Klemchuk
State Bar No. 24002418
Darin.klemchuk@klemchuk.com
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone:  (214) 367-6000
Facsimile:   (214) 367-6001

***ATTORNEYS FOR DEFENDANT
SKIPLAGGED, INC.***

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I have communicated with opposing counsel in this matter as to a date, time, and place for the aforementioned deposition.

*/s/William L. Kirkman*
William L. Kirkman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on  June 25, 2024, a true and correct copy of the foregoing was served via e-mail upon all counsel of record who have entered an appearance in this proceeding.

*/s/William L. Kirkman*
William L. Kirkman

3

## EXHIBIT A

## I.

## <u>DEFINITIONS</u>

The following Definitions apply to each request set forth herein.

1.      "Plaintiff," "AA," "You," or "Your" shall mean American Airlines, Inc, its present and former agents, employees, representatives, attorneys, websites under your control, and all other persons or entities presently or formerly acting in whole or in part for or on its behalf.

2.      "Skiplagged" or "Defendant" shall mean Defendant Skiplagged, Inc.

3.      "Complaint" shall mean the First Amended Complaint filed by AA in this matter on August 17, 2023, Dkt. 8.

4.      "American Marks" shall have the same definition as set forth in the Complaint.

5.      "American Copyright" shall have the same definition as set forth in the Complaint.

6.      "Person" or "Persons" shall mean all individuals and entities, including, but not limited to, sole proprietorships, partnerships, joint ventures, estates, trusts, associations, companies, corporations, or government agencies.  When the referenced person is an entity of any type, the term "person" or "persons" includes all present or former officers, directors, employees, agents, shareholders, trustees, beneficiaries, or other representatives.

7.      "Document" or "Documents" shall mean the original and all non-identical copies of any writing or record of any type or description known to Respondent, including, but not limited to, e-mails, computer records, instant messages, letters, statements, envelopes, contracts, bulletins, circular, pamphlets, phone message slips, telephone logs, telephone bills, agreements, agendas, minutes, memoranda, telegrams, telexes, teletypes, cables, messages, notes, worksheets, reports, forms, studies, checkbooks, canceled checks, interoffice communications, intra-office

4

communications, appointment books, appointment logs, desk calendars, pocket calendars, expense reports, drafts, wire transfers, transmittal authorizations and confirmations, bank statements, ledgers, financial statements, work orders, logs, purchase orders, bills of lading, letters of credit, invoices, confirmation, travel vouchers, promotional materials, lists, notebooks, computer printouts, electronically or magnetically recorded or stored data, microfilm, photographs, tape recordings, digests, affidavits, opinions, investigations, signed statements, summaries, notices, proposals, books, articles, press releases, newspapers, charts, magazines, and all other written, printed, typed, photographed or graphically recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, computer disks or other media, phonographic recording, film, photography, tape or videotape.   The term "document" or "documents" includes all documents responsive to request and all associated or attached metadata, regardless of whether or not the document still exists, and regardless of who has maintained custody of such a document.

8.      "Communications" is used in its customarily broad sense and includes, without limitation, telephone conferences, correspondence, letters, memoranda, and other written forms of exchange and in all verbal conversation by whatever means including all forms and manifestations of electronically stored and/or retrieved electronic information, in all electronic media (hard drive, diskette or tape), including but not limited to "e-mail" and all associated or attached metadata.

9.      "Concerning," "concern," "relating," "relate," or "regarding" shall mean concerning, referring to, alluding to, responding to, relating to, connected with, connected on, connected to, in respect of, about, regarding, discussing, showing, depicting, recording, memorializing, describing, mentioning, reflecting, analyzing, constituting, pertaining to or evidencing.

10.      As used herein, the conjunctions "and" and "or" shall be interpreted in each instance as meaning "and/or" so as to encompass the broader of the two possible constructions, and shall not

5

be interpreted disjunctively so as to exclude any information or documents otherwise within the scope of any request.

11.    The term "hidden city ticket" means a ticket with a connecting flight to a final destination beyond the purchaser's intended destination in which the traveler intends to end or modify his travels at the layover point. The practice of purchasing a hidden city ticket or ending a travel journey at a layover destination is referred to as "hidden city ticketing" or "skiplagging."

12.    Any pronouns or nouns used herein, shall include and be read and applied as to encompass the alternative forms of the pronoun or noun, whether masculine, feminine, neuter, singular or plural, and shall not be interpreted so as to exclude any information or documents otherwise within the scope of the request.

## II.

## DEPOSITION TOPICS

1.    The factual allegations supporting the claims asserted by Plaintiff in this lawsuit.

2.    Plaintiff's responses to Defendant's discovery requests, including Plaintiff's efforts to search for and gather documents and information responsive to Defendant's discovery requests.

3.    Documents and information produced by Plaintiff in this lawsuit.

4.    Documents and information provided by Plaintiff to its testifying experts.

5.    Plaintiff's alleged damages, including all efforts to mitigate the alleged damages, the categories, amounts, factual bases and method of calculating such damages.

6.    Plaintiff's interactions with Defendant.

7.    Plaintiff's knowledge, awareness, investigation, and/or studies of Defendant or hidden city ticketing, including Plaintiff's internal and third-party communications relating to Defendant.

8.      Plaintiff's Use Agreement and Conditions of Carriage as it relates to Plaintiff's claims asserted in this lawsuit, including any basis to assert that Defendant accepted Plaintiff's terms of service or contract of carriage.

9.      Plaintiff's website, aa.com and the ability to purchase flight tickets on aa.com.

10.     The contracts or agreements allegedly interfered with or breached by Defendant.

11.     Plaintiff's sales information, tax returns, balance sheets, income statements, profit and loss statements, cash flow statements, and other financial statements that form the basis of Plaintiff's alleged damages.

12.     Plaintiff's subpoenas and corresponding responses issued in this litigation, to include any documents and information produced pursuant to said subpoenas.

13.     Plaintiff's efforts to protect against unauthorized use of the American Marks or American Copyright, including but not limited to Plaintiff's efforts to license or enforce its American Marks or American Copyrights, any settlements or lawsuits relating to the American Marks or American Copyrights, and the use by Plaintiff and its licensees of the applicable registration symbols for each.

14.     The creation, validity, licensing, and ownership of the American Marks and American Copyright from creation through the present.

15.     Plaintiff's efforts to verify the use of the American Marks for each good or service listed in the applications, any office action responses or amendments, Section 8 & 15 filings, renewals, and registrations.

16.     The value of American Marks and American Copyrights and any harm or loss to same allegedly caused by Defendant, including but not limited to Defendant's alleged profits sough to be disgorged, any sales alleged to be diverted from Plaintiff to another carrier, and any reduced fares alleged to be received by Plaintiff as a result of Defendant's conduct.

17.     The average amount or range of amounts Plaintiff spends to acquire customers or flights similar to the flights booked by consumers visiting Defendant's website, the subject of Plaintiff's claims.

18.     The confusion allegedly caused by Defendant's conduct.

19.     Customer complaints related to Skiplagged received by Plaintiff.

20.     Plaintiff's actions against and interactions with customers who purchase hidden city tickets, including those purchased through Skiplagged.

7

21.     Plaintiff's refund policies.

22.     Plaintiff's Settlement Agreement with Kiwi.

23.     Plaintiff's contracts and communications with Kiwi, Mondee, Skyscanner, and Sabre.

24.     Plaintiff's development of any marketing or business plans targeting Defendant.

25.     The revenues and profits enjoyed by Plaintiff on tickets purchased through Defendant.

26.     Any basis to assert that customers who purchased hidden city tickets would have purchased tickets to their intended destination on Plaintiff's flights at a higher cost rather than flown on a different carrier.

27.     All communications with other third parties concerning Defendant and/or hidden city ticketing.

28.     Plaintiff's position as to Skiplagged's affirmative defenses as set forth in Defendant's January 26, 2024 Amended Answer and Affirmative Defenses.

8

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF RON SCHNELL**

I, Ron Schnell, declare under the penalties of perjury as follows:

1.      My name is RON SCHNELL. I am over the age of 18 years and am fully competent to make this affidavit. I am a Managing Director of Berkeley Research Group ("BRG"). I have provided expert testimony in federal and state courts, depositions, and arbitrations in numerous highly-technical litigation cases and provided litigation support including source-code reviews in most programming languages. I have also been an Adjunct Professor of Computer Science and Computer Information Systems at Nova Southeastern University in Fort Lauderdale, Florida for over nineteen (19) years and was previously on the Advisory Board for the College of Engineering and Information Science. My educational background includes a Master of Science, Computer Science degree from Syracuse University. My full educational and professional qualifications are set forth in my CV attached as <u>Exhibit B-1</u>. The facts stated in this affidavit are true and correct and are based on my personal knowledge, review of American Airlines, Inc.'s Motion to Enforce the Court's May 1, 2024 Order, and conversations with Skiplagged's CEO, Aktarer Zaman, and counsel for Skiplagged.

28336994v2 99460.002.00

2.      Based on these conversations and my review of the Motion, I am informed the following: To comply with this Court's order, Zaman rented a virtual Linux machine. Using this machine, Zaman wrote a script, utilizing the Python programming language, to piece together both encrypted and unencrypted data scattered in Skiplagged's production system. The script decrypted the encrypted fields, computed travel credits, computed the current state of Skiplagged service fees for each transaction, and, upon gathering this information, applied Optical Character Recognition ("OCR") software and directly prepared the produced pdf files in a readable format. No intermediate text files were created.

3.      In my experience as an expert, the production of text-based data in pdf format, as was done in this instance, is typical in the context of litigation.

4.      For the project at hand, I am informed that Skiplagged spent significant time and rented additional computational power in order to generate the produced pdfs.  This was necessary because of the need to decrypt the encrypted information and then apply OCR software. To re-produce in another format would require Skiplagged to restart the process. This would require spending significant time, effort, and money to, once again, rent a high-powered virtual computing machine, and draft and apply a new script to gather, decrypt, and prepare Skiplagged's scattered data in a new format.  Based on my understanding, Skiplagged is correct that there was no destruction of the code or script.  Since Skiplagged had to rent computers to run the script/code, it would have entered the code into the computers and the script/code and there was nothing to save. Since this was a one-time project, it was reasonable to stop renting the computers after the project was complete.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

**APPX. 026**

SUBSCRIBED TO, SWORN TO, AND EXECUTED on this 5th day of July, 2024, in

<u>Sunrise</u>, Florida.


_____
Ron Schnell

28336994v2 99460.002.00

# EXHIBIT B-1



## Ron Schnell

1111 Brickell Ave, Suite 2050, Miami, FL 33131
Mobile (954) 682-7822 – rschnell@thinkbrg.com

**Executive Profile**

Accomplished executive with a history of running large technology organizations, from early stage startups to large divisions of S&P 500 corporations. Strategic consultant and forward-thinking technology and architecture expert, with a unique understanding of the low-level "bits" (as a former kernel programmer) as well as the business rules and implications.  Successful at managing diverse engineers and stakeholders, while digging in and writing code where necessary.

40+ years of experience in technology, 30+ years of executive experience, 40+ years of experience in Artificial Intelligence.  Founder of 3 startups, one with exit to a public company. Early architect of UNIX kernel.  Special Master experience and Monitorship experience. Knowledge and coding experience of most computer languages, including many assembly languages.

**Technical Expertise**

- Artificial Intelligence/Machine Learning
- Advertising/Tracking Pixels
- BIPA/VPPA
- Source Code Analysis
- Software Project Management/Remediation/Analysis
- Blockchain (Private/Public)
- OS Kernel
- Device Drivers
- Very Large Database Architecture and Analysis
- Healthcare Software
- Autonomous Driving Software
- Breach Investigation/Remediation
- Forensic Analysis
- Bid Protest Analysis
- Patent Analysis (IPR/District Court)

**Professional Experience**

**Managing Director**
September 2013 – Present
**Berkeley Research Group**

Testifying and consulting expert in highly-technical litigation and large-scale corporate and board level consulting.  Gives testimony in Federal Court, State Court, Depositions and Arbitrations.  Writes expert reports as an independent expert for litigation.  Technical advisory

consulting work for all types of companies and boards of directors.  Litigation support includes source code reviews in many languages, architecture review, and advice on software trade secret and copyright issues.


**President**
February 2005 – Present
**Quogic, Inc. –** Ft. Lauderdale, FL

Perform per-project consulting for corporate clients, which have included:
**Intel Corporation** (via Berkeley Research Group) **–** Board/executive level strategic consulting
**AEther, LLC –** Inflight entertainment system architecture and development
**Virgin America Airlines –** Inflight entertainment system architecture
**BidKind, LLC –** Charity auction site architecture and development management
**HockeyTech, Inc. –** Sports management software architecture and development
**Several law firms** as testifying and consulting expert witness

**Adjunct Professor of Computer Science, Board Member: Graduate School of Computer Science**
August 2013 – Present
**Nova Southeastern University,** Ft. Lauderdale, FL

Classes in Cyber Security and Operating Systems

**President**
August 2012 to August 2013
**Invenstar, LLC –** Boca Raton, FL

Ran day-to-day operations of hardware and software manufacturing company in the point-of-sale space for retail establishments.  Architected cloud-based point-of-sale system and managed all developers.

**General Manager - Chief Executive**
May 2005 to August 2011
**Technical Committee –** Bellevue, WA and Palo Alto, CA

Ran day-to-day operations (as chief executive) of private corporation ordered to be formed by the United States Courts. This corporation was tasked with monitoring Microsoft Corp., ensuring their compliance with the Final Judgments in the US v. Microsoft/NY v. Microsoft antitrust case filed in 1998. Daily interaction with Microsoft executive and senior staff, Microsoft competitors and partners, Attorneys General/Deputies for multiple states, Assistant Attorneys General for the United States, and representatives from other countries. Was responsible for responding to potential complaints from 3rd parties.  Hired over 90 people to work in 3 offices.

**Vice President**
April 2002 to January 2005
**Equifax Corporation –** Boca Raton, FL

Head of software development, network relations, privacy and data security, new product development, and data enhancement delivery technology for the Internet Marketing division of Equifax, at the time a 105-year-old company. Was responsible for architecting software products, B-to-B processes, and assigning personnel. Responsible for long-term planning for

strategy and expenditures. Interfaced with key people at vendors, clients, and service providers. Oversaw integration of major corporate acquisitions, creating efficiencies in technologies and personnel.  Created partnerships and was liaison with companies including AOL, Yahoo, and Microsoft. Headed team that coordinated data enhancement of client databases, and delivered enhanced data to those clients. Implemented processes, quality controls, project planning and client interfaces by technical staff. Chairperson of committee that made decisions on types of marketing accepted, approval for types of clients/messages, and responses to complaints. Performed integration of several acquired companies, including technical integration as well as integration of staff and other efficiencies of scale.  Spoke on behalf of Equifax at the Federal Trade Commission (FTC) on *spam* and anti-spam technology.

**Senior Vice President, Chief Technology Officer**
February 2000 to February 2002
**Voice and Wireless Corp –** Minneapolis, MN

Responsible for all technology decisions for the public company that acquired Mail Call, Inc. in 2000. Made product decisions, architected product enhancements, and recommended technology direction. Oversaw acquisitions of other technology companies. Participated in due diligence for potential acquisitions, and interfaced with other potential buyers of technology. Spoke at shareholder meetings and other shareholder events.

**Founder, President, Chief Technology Officer**
May 1997 to February 2002
**Mail Call, Inc. –** Pembroke Pines, FL

Founder of corporation providing a service to business consumers, allowing them to retrieve and manage their E-Mail over the phone. Performed project design, project management, data privacy and security, all software programming and testing. Negotiated contracts with all partners, including GTE, Verizon, Concentric Networks, Net2Phone, IDT, Earthlink, Casio, Knight-Ridder, T-Mobile (Voicestream) and others.  Managed all staff.  Implemented exit strategy by negotiating buyout by Voice and Wireless Corp.

**President**
February 1994 to January 2003
**Driver Aces, Inc –**Miami, FL

President of corporation specializing in developing device drivers for the UNIX operating system. Performed project design, project management, driver design, driver authoring, driver testing, customer contact, sales, and staff management. Customers included Sun Microsystems, IBM, Digital Equipment, SCO, Lucent Technologies, and others. Drivers were for high-speed networking devices, including fast Ethernet, token-ring, and fiber-optic, SCSI devices, RAID controllers, serial devices, parallel devices, and pseudo-devices.  Managed staff of developers.

**Consultant - Kernel Programmer**
January 1992 to June 1995
**Sun Microsystems –** Los Angeles, CA

Worked in the Peripherals Engineering group, Multiprocessor group, and Device Driver group. Was responsible for various programming and testing on Solaris 2.1, 2.4, 2.5, and 2.5.1. Wrote kernel and driver code for Solaris x86, Sparc, and PowerPC. Performed bug-fixing, authoring of

system software, kernel enhancement, and device driver authoring for high-performance network and serial drivers. Was responsible for development of device driver porting kit. Wrote a book entitled Solaris 2.1 Guide to Porting SVR4.0 Device Drivers for x86. Worked with Independent Hardware Vendors on getting device drivers ported to Solaris. Re-wrote existing network drivers to improve network performance and to add multiprocessor/multithreaded functionality.

**Principal Member of Technical Staff**
September 1991 to December 1992
**Encore Computer Corp. –** Ft. Lauderdale, FL

Worked on new massively parallel hardware, developing UMAX V in the kernel development group. Developed device drivers for new memory cards, fixed kernel bugs, worked in a team implementing RPC system, and worked on tcp/ip network code for use on a proprietary network.

**Founder, President**
March 1990 to June 1991
**Secure Online Systems, Inc. –** Los Angeles, CA

President and founder of a software company that developed and marketed system management software for UNIX, specializing in data security. Designed packages, then managed development project. Investigated strategic relationships in order to create channels of distribution. Managed office staff including programming and marketing. Designed and oversaw creation of product brochures. Wrote new device drivers, kernel modifications, applications in X-windows including Motif, TCP/IP applications, database applications, and screen management routines.

**Consultant - Development manager and kernel programmer**
September 1988 to February 1990
**IBM Corp. –** Los Angeles, CA

Worked on AIX/370 and AIX PS/2. Was site lead architect and made many design decisions affecting the end product. Worked on kernel, commands, customer support, and applications. Supervised 15 programmers and testers who reported directly to me. Implemented new device drivers, fixed many bugs, made changes to TCP/IP layer, hired new employees, made OS POSIX compliant, and taught several classes. Also worked on internals of TCF (transparent computing facility) on site at Locus Computing Corporation.

**Consultant - Kernel Programmer**
May 1987 to September 1988
**AT&T Bell Laboratories –** Summit, NJ

Worked on the UNIX project, developing UNIX System V release 4.0, in kernel development group. Developed new "filesystem independent boot" feature and a new filesystem type; fixed performance, security, and fault types of bugs in UNIX kernel; wrote a new hard disk device driver; oversaw software development contracted out to remote sites; acted as a mentor to new employees; was part of the design and architecture teams dealing with firmware and machine diagnostics; and interacted directly with Sun Microsystems on joint software development.

**Academia and Education**

| | |
|---|---|
| **Syracuse University** | Master of Science, Computer Science |
| **Nova Southeastern University** | Adjunct Professor of CS (present) |
| | Board, Graduate School of CS (past) |
| **YPO Palm Beach** | Education Chair, Vice Chapter Chair (past) |
| **YPO Southeast US and Caribbean Region** | Education Chair (past) |

**Personal Information**

- Instrument rated pilot for 35 years; donates pilot time and aircraft to Angel Flight
- Arbitrator since 2000 for the state of Florida, hearing and deciding cases several times a month, usually for the Lemon Law
- Wrote freeware text adventure game that ships with all modern versions of the UNIX Operating System, including Mac OS
- Captain – US Polo Bears – International Segway Polo Team

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,    §
                            §
        Plaintiff,          §
                            §
v.                          §        Civil Action No. 4:23-cv-00860-P
                            §
SKIPLAGGED, INC.,           §
                            §
        Defendant.          §

---

**DECLARATION OF AKTARER ZAMAN**

I, Aktarer Zaman, declare under the penalties of perjury as follows:

1.      My name is AKTARER ZAMAN. I am over the age of 18 years and am fully competent to make this affidavit. At all relevant times in this case, I have been the Chief Executive Officer and founder of Defendant, Skiplagged, Inc. ("Skiplagged"). I submit this declaration in opposition to Plaintiff American Airlines, Inc.'s *Motion to Enforce the Court's May 1, 2024 Order*. The information contained in this declaration is true and correct based on my personal knowledge. I am above the age of eighteen years and competent to testify.

2.      To comply with Judge Ray's Order issued on May 1, 2024, I created software code to produce Skiplagged's raw data in a form that is legible and can be utilized by American.

3.      Specifically, I rented a costly cloud server and spent several weeks writing script utilizing the Python programming language to analyze the massive amount of encrypted and unencrypted raw data scattered throughout Skiplagged's production systems. The script attempted to piece together the scattered data, decrypt certain encrypted fields, compute travel credits and the current state of Skiplagged service fees for each transaction, and apply Optical Character

28337665v2 99460.002.00

Recognition ("OCR") software to the data so that the production would be searchable. Once the script gathered the information, it prepared PDF files.

4.      Once the PDFs were produced, I ceased the rental of the cloud server utilized in writing and applying the Python script described above. After cessation of the rental, the Python script contained in the machine was no longer accessible or retrievable.

5.      After hearing the concern of American Airlines, Inc.'s ("American's") expert David Fuller on June 27, 2024, regarding the image quality and OCR functionality of Skiplagged's production, I worked over the weekend to write additional script which enhanced the PDFs and increased the accuracy of the OCR functionality to over 99%. A link to these enhanced PDFs was provided to American on Monday, July 1, 2024.

6.      Skiplagged performed numerous tests on the enhanced PDFs and confirmed that the improved production eliminated the concern about any graininess or pixelation in the PDFs and further found the high-quality OCR software is effective at over 99% accuracy. More importantly, Skiplagged found no errors to the record locator numbers that American claims are necessary for its damage analysis.

7.      To re-produce Skiplagged's raw data in a new format as demanded by American would be a costly and time-consuming endeavor. This would require me to restart the process described in paragraph 3, above. Specifically, I would have to spend significant time, money, and resources to, once again, rent a costly cloud server, and write new script to gather, decrypt, compute, and render the raw data in the new "tab-delimited" format recently requested by American.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

28337665v2 99460.002.00

SUBSCRIBED TO, SWORN TO, AND EXECUTED on this 7th day of July, 2024, in New York, New York.

_Aktarer Zaman_
Aktarer Zaman

28337665v2 99460.002.00