**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00860-P** |
| | § | |
| **SKIPLAGGED, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT SKIPLAGGED, INC.'S BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

*Attorneys for Defendant, Skiplagged, Inc.*

28347013v10 99460.002.00

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION.................................................................................................. 10

II.     RELEVANT MATERIAL FACTS NECESSARY TO DECIDE SUMMARY
        JUDGMENT ........................................................................................................ 11

        A.  AA's long history of "investigating" Skiplagged........................................ 11

        B.  How Skiplagged works ............................................................................... 12

III.    LEGAL STANDARD ........................................................................................... 16

IV.     ARGUMENTS & AUTHORITIES ...................................................................... 16

        A.  AA is not entitled to summary judgment on its Lanham Act claims ........... 16

            1.  All of AA's Lanham Act claims are barred by laches ........................... 16

                a.  AA delayed filing this lawsuit by over seven years............................ 17

                b.  AA offers no excuse for its unreasonable delay ............................... 18

                c.  AA's delay resulted in undue prejudice to Skiplagged......................... 19

            2.  Skiplagged's use of the AA marks is not trademark infringement......... 19

            3.  AA's reliance on the traditional "digits of confusion" is not dispositive ............... 21

            4.  Skiplagged's use of AA's trademarks does not suggest affiliation,
                sponsorship, or endorsement............................................................... 23

            5.  AA cannot prove damages on its Lanham Act claims............................ 25

        B.  AA is not entitled to summary judgment on its copyright infringement claim........... 26

            1.  AA fails to prove the essential element of ownership of the copyright at issue...... 26

            2.  AA cannot establish the essential element of copying as a matter of law ............. 27

            3.  Skiplagged's use of the AA logo constitutes fair use, not infringement ............... 28

                a.  The comparative nature of Skiplagged's use weighs in favor of fair use............ 29

                b.  The most important factor—the effect of use on the potential market for
                    or value of the copyrighted work—is decidedly in favor of fair use ................... 30

        C.  AA is not entitled to summary judgment on its breach of contract claim.................. 32

            1.  AA's breach of contract claim is barred by the four-year statute of limitations...... 32

            2.  AA fails to establish each element of its contract breach claim .............................. 33

                a.  AA admits it has no evidence of a contract between AA and Skiplagged .......... 33

                b.  AA's damages claim is speculative, at best............................................... 37

        D.  AA is not entitled to summary judgment on Skiplagged's affirmative defenses......... 39

            1.  Skiplagged's fair use defense to AA's copyright and trademark claims
                withstand summary judgment........................................................................... 39

            2.  This Court lacks personal jurisdiction over Skiplagged ........................................ 39

3.  AA's claims are barred by statute of limitations and laches.................................. 40

    a.  Each of AA's claims are barred by applicable limitations .................................. 40

    b.  Skiplagged's laches defense is valid.................................................................... 41

4.  Estoppel, Quasi-Estoppel, Consent, Waiver, Ratification, and Acquiescence ........ 42

5.  Lack of privity, lack of mutual assent, and lack of standing .................................. 43

6.  AA failed to mitigate its alleged damages, if any.................................................... 44

7.  Skiplagged has a license to use AA's trademarks and copyright ........................... 45

V.  CONCLUSION ...................................................................................................................... 47

28347013v10 99460.002.00

# TABLE OF AUTHORITIES

**Cases**

*Acme Valve & Fittings Co. v. Wayne,*
  386 F. Supp. 1162 (S.D. Tex. 1974) ................................................................... 45

*Adler v. McNeil Consultants, LLC,*
  No. 3:19-cv-2025-K-BN, 2023 U.S. Dist. LEXIS 154440
  (N.D. Tex. July 27, 2023) ......................................................................... 25, 26

*Am. Registry of Radiologic Technologists v. Bennett,*
  939 F. Supp. 2d 695 (W.D. Tex. 2013)................................................................ 43

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)................................................................................... 16

*Applied Underwriters, Inc. v. Lichtenegger,*
  913 F.3d 884 (9th Cir. 2019) ......................................................................... 24

*Baisden v. I'm Ready Prods., Inc.,*
  693 F.3d 491 (5th Cir. 2012) ..................................................................... 45, 46

*Bayle v. Allstate Ins. Co.,* 615 F.3d 350, 355 (5th Cir. 2010)..................................... 16

*Bridgestone/Firestone Research, Inc. v. Auto Club de L'Ouest de la France,*
  245 F.3d 1359 (Fed. Cir. 2001)....................................................................... 18

*Bridgmon v. Array Sys. Corp.,*
  325 F.3d 572 (5th Cir.), *reh'g en banc denied,* 66 Fed. Appx. 527,
  2003 WL 21018279 (2003)............................................................................. 27

*Carson v. Dynegy, Inc.,*
  344 F.3d 446 (5th Cir. 2003) ......................................................................... 42

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)................................................................................... 38

*Century 21 Real Estate Corp. v. Lendingtree, Inc.,*
  425 F.3d 211 (3d Cir. 2005).......................................................................... 20

*Chaos Lacrosse, LLC v. Premier Lacrosse League, Inc.,*
  No. 4:23-cv-00399, 2023 WL 7005831 (E.D. Tex. Oct. 24, 2023)......................................... 19

*City of Fort Worth v. Johnson,*
  388 S.W.2d 400 (Tex. 1964)........................................................................... 41

*CMRE Fin. Servs. Inc. v. Doxo Inc.,*
  No. 222CV00298RAJBAT, 2022 WL 16701259 (W.D. Wash. Oct. 7, 2022),
  *report and recommendation adopted,* No. 222CV00298RAJBAT,
  2022 WL 16699090 (W.D. Wash. Nov. 3, 2022)......................................................... 23

*Colt Industries, Inc. v. Fidelco Pump & Compressor Corp.,*
  844 F.2d 117 (3rd Cir. 1988) ......................................................................... 45

28347013v10 99460.002.00

*Conan Properties, Inc. v. Conans Pizza, Inc.*,
  752 F.2d 145 (5th Cir. 1985) ................................................................. 18, 19

*Creations Unlimited v. McCain*,
  112 F.3d 814 (5ᵗʰ Cir. 1997) ................................................................. 28

*Delgado v. The Malula*,
  291 F.2d 420 (5th Cir. 1961) ................................................................. 42

*DHI Grp., Inc. v. Kent*,
  No. H-16-1679, 2017 WL 4837730 (S.D. Tex. Oct. 26, 2017) ................................ 34

*Elvis Presley Enters. v. Capece*,
  141 F.3d 188, 205 (5th Cir. 1998) ................................................................. 17, 21

*Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*,
  948 F.3d 261 (5ᵗʰ Cir. 2020) ................................................................. 44

*Engineering Dynamics, Inc. v. Structural Software, Inc.*,
  26 F.3d 1335 (5ᵗʰ Cir. 1994) ................................................................. 27

*Exxon Corp. v. Oxxford Clothes, Inc.*,
  109 F.3d 1070 (5th Cir. 1997). ................................................................. 16

*Folio Impressions, Inc. v. Byer California*,
  937 F.2d 759 (2ᵈ Cir. 1991) ................................................................. 28

*Galindo v. Precision Am. Corp.*,
  754 F.2d 1212 (5th Cir. 1985) ................................................................. 38

*Geophysical Serv. v. TGS-NOPEC Geophysical Co.*,
  784 Fed. Appx. 253 (5th Cir. 2019) ................................................................. 45

*Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*,
  226 F.3d 387 (5th Cir. 2000) ................................................................. 26

*Gochnour v. Marsh*,
  754 F.2d 1137 (5th Cir. 1985) ................................................................. 42

*Hill Country Bakery, LLC v. Honest Kitchens Grp., LLC*,
  No. 5:17-CV-334-DAE, 2017 WL 9362706 (W.D. Tex. Dec. 11, 2017) .................... 45

*Illinois Tool Works, Inc. v. Rust-Oleum Corp.*,
  955 F.3d 512 (5ᵗʰ Cir. 2020) ................................................................. 25

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
  893 F.Supp.2d 1058 (D. Nev. 2012) ................................................................. 36

*Int'l Info Sys. Sec. Certification Consortium v. Sec. Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016) ................................................................. 24

*Jack Preston Wood: Design, Inc. v. B L Bldg. Co.*,
  No. H-03-713, 2004 WL 5866352 (S.D. Tex. June 22, 2004) .......................... 27, 28

*King v. Ames*,
  179 F.3d 370 (5ᵗʰ Cir. 1999) ................................................................. 27

28347013v10 99460.002.00

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ......................................................................... 16

*Lulirama Ltd., Inc. v. Axcess Broadcast Servs.*,
    128 F.3d 872 (5th Cir. 1997) ........................................................................ 45

*McCoy v. Mitsuboshi Cutlery, Inc.*,
    67 F.3d 917 (Fed. Cir. 1995), cert. denied, U.S., 116 S. Ct. 1268 (1996) ............................. 45

*Menendez v. Holt*,
    128 U.S. 514 (1888) ................................................................................. 18

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) .................................................................... 22, 24

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ............................................................... 34, 35, 36

*Norma Ribbon & Trimming, Inc. v. Little*,
    51 F.3d 45 (5th Cir. 1995) ........................................................................... 26

*Ogden v. Cozumel, Inc.*,
    No. 1:18-CV-358-LY, 2019 WL 7758918 (W.D. Tex. Sept. 18, 2019) ................................. 41

*Pebble Beach Co. v. Tour 18 I Ltd.*,
    155 F.3d 526 (5th Cir. 1998) ........................................................................ 21

*Peel & Co., Inc. v. The Rug Market*,
    238 F.3d 391 (5th Cir. 2001) ........................................................................ 28

*Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*,
    779 F.3d 290 (5th Cir. 2015) .................................................................. 17, 19

*Pickersgill v. Neely*,
    No. 3:21-CV-00773-X, 2021 U.S. Dist. LEXIS 214306 (N.D. Tex. Nov. 5, 2021) ............... 45

*Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*,
    767 F.3d 503 (5th Cir. 2014) ........................................................................ 26

*Polymer Tech. Corp. v. Mimran*,
    975 F.2d 58 (2d Cir. 1992) ........................................................................... 20

*Prestonettes, Inc. v. Coty*,
    264 U.S. 359, 1924 Dec. Comm'r Pat. 508 (1924) .................................................... 20

*Regent Intern. Hotels, Ltd. v. Las Colinas Hotels Corp.*,
    704 S.W.2d 101 (Tex.App.-Dallas 1985, no writ) ................................................... 41

*Rolex Watch USA, Inc. v. Beckertime, L.L.C.*,
    96 F.4d 715 (5th Cir. 2024) .................................................................... 17, 41

*Rosetta Stone Ltd. v. Google, Inc.*,
    676 F.3d 144 (4th Cir. 2012) ................................................................ 20, 21, 22

*S. Tex. Neon Sign Co. v. Ixtapa, Inc.*,
    No. 5:08-CV-116, WL 10695794 (S.D. Tex. Aug. 14, 2009). .................................... 17, 18

28347013v10 99460.002.00

*Satis Vacuum Indus. Vertriebs, AG v. Optovision Techs., Inc.*,
  No. CIV. A. 399CV2147-M, 2001 WL 1142803 (N.D. Tex. Sept. 24, 2001) ........................ 42

*Scott Fetzer Co. v. House of Vacuums, Inc*.,
  381 F.3d 477 (5th Cir. 2004) ................................................................. 20, 21, 22, 23

*Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*,
  98 F.4th 161 (5th Cir. 2024) ................................................................. 32, 33

*Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*,
  No. 3:17-CV-0054-B, 2018 U.S. Dist. LEXIS 63988 (N.D. Tex. Apr. 17, 2018) .................. 17

*Streamline Prod. Sys. v. Streamline Mfg.*,
  851 F.3d 440 (5th Cir. 2017)................................................................. 25

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
  No. 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .................................. 36

*Tiffany (NJ) Inc. v. eBay Inc*.,
  600 F.3d 93 (2d Cir. 2010)................................................................. 20

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001)................................................................. 21

*Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*,
  626 F.2d 1171 (5th Cir. 1980) ................................................... 28, 29, 30, 31, 32

*U.S. Money Rsrv., Inc. v. Kagan*,
  No. A-18-CV-577-LY, 2019 WL 1313469 (W.D. Tex. Jan. 29, 2019) .................................. 34

*Universal City Studios, Inc. v. Ideal Publishing Corp*.,
  195 U.S.P.Q. 761 (S.D.N.Y. 1977)................................................................. 23

*University of Pittsburgh v. Champion Products*, Inc.,
  686 F.2d 1040 (3d Cir.), *cert. denied*, 459 U.S. 1087 (1982)................................. 18

*Van Tassell v. United Mktg. Grp., LLC*,
  795 F.Supp.2d 770 (N.D. Ill. 2011) ................................................................. 36

*Via Net v. TIG Ins. Co.*,
  211 S.W.3d 310 (Tex. 2006)................................................................. 33

*Wagner Brown, Ltd. V. Horwood*,
  58 S.W.3d 732 (Tex. 2001)................................................................. 33

*Westchester Media v. PRL USA Holdings, Inc*.,
  214 F.3d 658 (5th Cir. 2000) ................................................................. 17

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*,
  No. 3:20-CV-2541-K, 2021 WL 2651087 (N.D. Tex. June 28, 2021)................................ 34, 35

*Wood v. B L Bldg. Co.*,
  No. CIV.A.H-03-713, 2004 WL 5866352 (S.D. Tex. June 22, 2004)....................................... 27

**Statutes**

15 U.S.C. § 1117(a). ....................................................................................... 25

**Other Authorities**

4 McCarthy on Trademarks & Unfair Competition, § 31:33 (5th ed.) .......................................... 17

https://apps.apple.com/us/app/skiplagged-flight-booking/id823443083 ..................................... 19

https://play.google.com/store/apps/details?id=com.skiplagged&hl=en_US .............................. 19

https://skiplagged.com/. ................................................................................ 24

https://skiplagged.com/flights/book/297fd9b6df35773e9d449e6c28452e6a. ............................ 15

https://skiplagged.com/rewards. ....................................................................... 19

https://web.archive.org/web/20161111072508/https://skiplagged.com/ ..................................... 19

https://www.aa.com/homePage.do ......................................................................... 36

https://www.aa.com/i18n/customer-service/support/legal-privacy-
    copyright.jsp?anchorEvent=false&from=comp_footer ........................................... 37

TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3) ............................................................ 32

28347013v10 99460.002.00

Defendant Skiplagged, Inc. ("Skiplagged") files this Opposition to Plaintiff American Airlines, Inc.'s ("AA") Motion for Partial Summary Judgment and Brief in Support ("Motion") [Dkts. 154-155, 172], and would show the Court as follows:

## I.     INTRODUCTION

AA's briefing resorts to hyperbole and even name-calling[1] in support of its quest to preserve, if not enhance, its $52 billion annual revenue stream through this suit. AA's Motion ignores relevant facts and the testimony of its own witnesses, including its corporate representative, who admits to the legally meritless nature of many of AA's claims, all in an effort to weave its own story.

Conclusory allegations and smear tactics do not carry AA's heavy summary judgment burden. The relevant facts tell a straightforward story of Skiplagged, a company providing information that allows consumers to, among other things, make informed travel decisions and save money. All the while, AA, one of the world's largest airlines, sits on the sidelines for over seven years knowing and watching Skiplagged provide a successful service to consumers. Now, after over seven years after learning about and studying Skiplagged, AA aims to retaliate against anyone who exposes or takes advantage of its less expensive flight prices, despite profiting from such customer business and demand generation. AA waited too long to bring this suit. Even if it had timely filed, AA cannot carry its very high burden on its misplaced claims.

AA's complaint is that Skiplagged highlighted to consumers the less expensive connecting flight as opposed to the direct flight. But the undisputed evidence is that the flights at issue are offered by AA, were purchased by consumers directly from AA, and resulted in profits to AA. Competent summary judgment evidence further establishes that (1) AA knew about Skiplagged and its operations since at least 2015 but took no action, not even a cease and desist, until filing this case in August 2023; (2) AA admits it has no evidence Skiplagged ever utilized any of AA's platforms and thus, couldn't have agreed to AA's Use Agreement; and (3)

---

[1] Referring to Skiplagged as a "sucker fish" and attempting to create a false narrative that Skiplagged deceives its customers. Dkt. 172.

Skiplagged in no way buys or sells AA flight tickets and only uses AA trademark and copyright to point to AA's own services, not Skiplagged's. At a minimum, there is a genuine issue of material fact on each of AA's claims. Thus, AA's summary judgment motion must be denied.

## II.   RELEVANT MATERIAL FACTS NECESSARY TO DECIDE SUMMARY JUDGMENT

Skiplagged disputes the 14 pages of skewed "facts" set forth in AA's Motion that are unsupported by record evidence. On the contrary, the verifiable facts are laid out in Skiplagged's Brief in Support of Motion for Summary Judgment, which is incorporated as if fully set forth herein.[2] Dkt. 170, pp. 2-5. The following is a summary of the relevant facts associated with Skiplagged's operations that should compel the Court to deny AA's Motion.

### A.   AA's long history of "investigating" Skiplagged

AA has known about Skiplagged's operations, including Skiplagged's use of AA's alleged copyright and trademarks and that Skiplagged provides information regarding AA flights since at least 2015. Ex. 1, Deposition of AA's Rule 30(b)(6) Corporate Representative ("AA Depo."),[3] 54:19-23, 57:6-12 (App. pp. 14, 16). In gaining knowledge about Skiplagged, AA accessed Skiplagged's website and purchased flights facilitated by Skiplagged. *Id.* at 53:10-54:15, 63:22-64:1 (App. pp. 13-14, 21-22); Ex. 2, Deposition of Marcial Lapp ("Lapp Depo."), 91:15-25 (App. p. 61). Indeed, in 2015-2016, AA discovered that one of the things Skiplagged did was offer information about hidden city ticketing and AA flights, matters which serve as the gravamen of AA's suit filed over seven years later. *Id.* at 64:7-16, 65:19-66:10 (App. p. 22-24); Dkt. 170, p. 7 (detailing emails and testimony of AA's long history of Skiplagged knowledge). Despite AA's extensive history of knowledge of Skiplagged's operations and AA's frequent internal complaints about how hidden city tickets facilitated by Skiplagged cut into AA's

---

[2] Skiplagged files its Objections to Plaintiff's Summary Judgment Evidence contemporaneously herewith and incorporates the objections as if fully set forth herein.
[3] AA's Marcial Lapp provided deposition testimony in his personal capacity on May 30, 2024 and served as AA's Rule 30(b)(6) corporate representative at deposition on July 1, 2024. Thus, Mr. Lapp's personal deposition is referred to as "Lapp Depo." and Mr. Lapp's testimony as AA's corporate representative is referred to as "AA Depo."

revenue stream, AA never served a pre-suit demand or any other communication on Skiplagged asking it to cease the actions upon which AA now takes issue and only recently sued Skiplagged. Ex. 3, Declaration of Aktarer Zaman ("Zaman Decl."), ¶¶ 3, 17(App. pp. 66, 69); Ex. 1, AA Depo. 56:2-15 (App. p. 15). AA's suit is too late.

## B.  How Skiplagged works

Skiplagged is an online travel information provider that assists consumers in making informed travel decisions through its website, Skiplagged.com. Ex. 3, Zaman Decl., ¶ 1 (App. p. 66). Skiplagged's founder, Aktarer Zaman, developed a unique algorithm that enables consumers to identify affordable travel pricing options, including flights, empowering consumers to exercise their buying power in a more informed, efficient, and cost-effective manner. *Id.* at ¶ 4 (App. p. 67). Skiplagged began publishing travel information about AA routes and fares in 2013 and has been using the AA logo since May 2017.[4] *Id.* at ¶ 2 (App. p. 66).

In response to a consumer search, Skiplagged provides flight itinerary information for direct flights, itineraries with layovers in which the traveler will complete each leg of the itinerary, hidden-city flights[5], and other cost saving ticketing options. *Id.* at ¶ 5 (App. p. 67). Skiplagged did not invent the concept that AA takes issue with—hidden city ticketing. Instead, hidden city ticketing is a practice that has been around for decades and has been utilized by companies and individual customers. *Id.* at ¶ 7; Ex. 1, AA Depo., 72:5-16 (App. p. 26) (admitting a customer can purchase a hidden city ticket on AA's website); Ex. 4. Deposition of AA expert Darin Lee ("Lee Depo.") 17:8-13 (App. p. 158) (confirming hidden city ticketing is not brand new and has been around awhile).

Skiplagged provides flight itinerary information through its algorithm by either predicting the route and fare information or receiving the information from third parties such as metasearch engines or online travel agencies. Ex. 3, Zaman Decl., ¶ 8 (App. p. 67). AA acknowledges that

---

[4] Skiplagged incorporated in 2015. *Id.*
[5] Hidden-city is a normal airline ticket that includes at least one layover, but rather than completing the itinerary to the final destination, the passenger does not to continue on after one of the layover destinations. *Id.* at ¶ 6.

Skiplagged does not obtain information directly from AA's website or internal inventory. *Id.*; Ex. 1, AA Depo. 76:14-77:1, 77:23-78:5 (App. pp. 27-29) (confirming the alleged AA content on Skiplagged's website is not coming from AA). In fact, AA has no evidence that Skiplagged has ever used a platform associated with AA. Ex. 1, AA Depo. 105:2-5, 114:3-18 (App. pp. 34-35).

Consumers who wish to book a flight itinerary identified by Skiplagged may do so by: (1) using the flight information to purchase tickets directly on the airline or other third party website, (2) being redirected by Skiplagged to an online travel agency, (3) being redirected by Skiplagged to the airline's website, (4) being provided a link to the airline's website, or (5) utilizing Skiplagged's "book with Skiplagged" feature. Ex. 3, Zaman Decl., ¶ 11 (App. p. 68); Ex. 2, Lapp Depo., 60:16-61-3 (App. pp. 59-60).

The book with Skiplagged feature allows a customer to fill out a passenger and billing information form generated by Skiplagged.com, which is then utilized by a Google program (Google Puppeteer) and a form-filling system to fill-in such information into the airline's booking and payment forms. Ex. 3, Zaman Decl., ¶ 11 (App. p. 68). When utilizing the book with Skiplagged feature, the customer is usually presented with and agrees to pay a service fee to Skiplagged ranging from $0 to $35.00 at max.[6] *Id.*; *See, e.g.,* Ex. 5-A (App. p. 171).[7] The flight is then purchased directly by the customer from the airline and the airline directly charges the customer's credit card. *Id.*; Ex. 5-A (App. pp. 178-181); Ex. 1, AA Depo. 28:4-7, 29:3-7 (App. pp. 7-8) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At no point does Skiplagged act as an agent to book customer flights, purchase or sell flight tickets. Ex. 3, Zaman Decl., ¶ 12 (App. p. 68); Ex. 2, Lapp Depo. 42:6-21 (App. p. 58).

AA's "unsuspecting customer" rhetoric [Dkt. 172, pp. 2, 14, 31-32] rings hollow when the Court looks at the facts. Skiplagged's website contains a wealth of information, warnings,

---

[6] There are instances where a customer utilizing Skiplagged is not charged any service fee. *Id.*

[7] Despite AA's possession and use of clearly legible and color exhibits in its own summary judgment filing as well as Skiplagged's discovery requests for same, AA refused to produce such exhibits in the same form to Skiplagged. Thus, Skiplagged can only utilize the black and white pixilated images produced by AA.

and notices that inform customers about various aspects hidden-city ticketing, of Skiplagged and its book with Skiplagged's process. Ex. 3, Zaman Decl., ¶ 13 (App. p. 69). Skiplagged.com explains what hidden city ticketing is to consumers both as an informational page and when a hidden-city option is presented. *Id.*, Ex. 3-F (App. p. 148); Ex. 6, Deposition of Neil Guerin ("Guerin Depo.") 23:13-24:6 (App. pp. 299-300) ███████████████████████████████

██████████████████████ 64:3-10 (App. p. 301). To be certain, in seeking to ensure customers are not confused about their hidden-city ticket choices, Skiplagged informs consumers about the risks and limitations associated with hidden-city ticketing on its website as well as during the search process and requires consumers to acknowledge they have read and understand these warnings before proceeding. Ex. 3, Zaman Decl., ¶¶ 13-16 (App. p. 69), Exs. 3-F, 3-G (App. pp. 148-150; Ex. 5-A (App. pp. 169-169, 173).



Further, before a Skiplagged customer fills in the form to provide their payment information, Skiplagged provides the consumer with a customer support number that states it is by the airline (████████████████████████████████████████████

████████████████████████████████████ Ex. 5-B (App. pp. 208-210);

Ex. 5-C (App. pp. 236-237).



Ex. 5-B (App. p. 210)[8]



Ex. 5-C (App. p. 236).

Before checking out, a consumer must click a box stating they agree to Skiplagged's terms and conditions, which is hyperlinked in the same sentence. *Id.* (App. p. 238).



Finally, upon completing the booking process, Skiplagged informs customers the flight is booked that the **airline** will send the customer an email confirmation and that they customer can contact the airline. *Id.* (App. pp. 240-241).



---

[8] Given AA's refusal to produce legible color copies of its LitPaks in discovery, for the ease of the Court, Skiplagged adds a screen shot from Skiplagged's website to confirm the screen shot from AA's imaged production, found at https://skiplagged.com/flights/book/297fd9b6df35773e9d449e6c28452e6a.

### III.     LEGAL STANDARD

"Summary judgment should be granted only if there is no genuine issue of material fact." *Bayle v. Allstate Ins. Co*., 615 F.3d 350, 355 (5th Cir. 2010). The movant has the burden of showing the absence of a genuine issue of material fact. *Exxon Corp. v. Oxxford Clothes, Inc*., 109 F.3d 1070, 1074 (5th Cir. 1997). "If the moving party fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).

"Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of such an issue for trial." *Bayle*, 615 F.3d at 355. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. Id. at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### IV.     ARGUMENTS & AUTHORITIES

#### C.  AA is not entitled to summary judgment on its Lanham Act claims

Despite AA's arguments that it is entitled to summary judgment on its Lanham Act claims [Dkt. 172, §IV(A)-(B), pp. 20-24], summary judgment should be denied because (1) AA's Lanham Act claims are barred by laches; (2) Skiplagged's use of AA's marks is not trademark infringement; (3) AA's "digits of confusion" argument is not dispositive; (4) there is no suggestion of affiliation, sponsorship, or endorsement; and (5) AA cannot prove damages.

#### 1.  All of AA's Lanham Act claims are barred by laches

Relying on an inapplicable breach of contract case with no analysis, AA claims Skiplagged's laches defense is inapplicable to AA's Lanham Act claims as a matter of law. Dkt. No. 172, p. 40. AA is incorrect. The Northern District of Texas and this Circuit have applied the

28347013v10 99460.002.00

laches defense to federal trademark infringement claims under the Lanham Act. *See Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 U.S. Dist. LEXIS 63988 *20 (N.D. Tex. Apr. 17, 2018) ("courts have recognized that the laches defense is available against plaintiffs who have waited too long to file federal trademark suits") (citing 4 McCarthy on Trademarks & Unfair Competition, § 31:33 (5th ed.)); *see also Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000) (same).

As set forth in Skiplagged's Brief in Support of Motion for Summary Judgment [Dkt. 170. p. 8], to defeat summary judgment through its laches defense, Skiplagged must demonstrate a genuine issue of material fact on "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4d 715 (5th Cir. 2024). The time period for laches begins when an owner of a mark first knew or should have known of the accused use and ends when suit is filed. *Id., see also Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998); *S. Tex. Neon Sign Co. v. Ixtapa, Inc.*, No. 5:08-CV-116, WL 10695794, at *11 (S.D. Tex. Aug. 14, 2009).

In the Fifth Circuit, courts analyzing the laches defense have focused on whether the defendant made significant business decisions in reliance on the plaintiff's conduct. This includes when a defendant "makes major business investments or expansions that depend on the use of the marks," and "build[s] up a valuable business around … [the plaintiff's] trademark" that would be lost if the mark could no longer be used or, by foregoing the use of the mark, would have "destroyed the investment of capital in the [business]." *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290 (5th Cir. 2015); *see also Rolex Watch USA, Inc. v. Beckertime*, L.L.C., 96 F.4th 715 (5th Cir. 2024) (holding ten years of sales during which plaintiff did not bring suit allowed defendant to build up and invest in the business in a way it would not have otherwise, which resulted in clear prejudice).

### a. AA delayed filing this lawsuit by over seven years

According to AA's own witnesses, AA had actual knowledge of Skiplagged, its website,

28347013v10 99460.002.00

and its activities (including use of the AA trademarks) as early as 2015. Ex. 1, AA Depo. 54:19-



23 ██████████████████████████████████████████████), 57:6-58:4 ███████

████████████████████████████████████████████████, 60:14-24, 61:5-17

█████████████████████████████████████████████████████████████████

62:17-20 (same), 63:22-64:16 (███████████████████████████████████████

██████████████████████████████████), 68:10-14 (same) (App. pp. 14, 16-22,

25); Ex. 6, Guerin Depo. 17:5-7, 64:3-13 (App. pp. 298, 301); *See also* Dkt. 170, pp. 7-8.

AA's delay "implied consent" to Skiplagged's use of the mark, "essentially amounting to a license," which license remained in place until AA filed this lawsuit. *See Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 152 (5th Cir. 1985) citing *Menendez v. Holt*, 128 U.S. 514, 524 (1888) and *University of Pittsburgh v. Champion Products*, Inc., 686 F.2d 1040, 1045 (3d Cir.), *cert. denied*, 459 U.S. 1087 (1982). This delay far exceeds the applicable limitations period and establishes a genuine issue of material fact on the first element of the laches defense, if not outright as a matter of law. *S. Texas Neon Sign Co. v. Ixtapa, Inc.,* No. 5:08-CV-116, 2009 WL 10695794, at *11 (S.D. Tex. Aug. 14, 2009) (noting courts refer to statute of limitations period to determine if delay was unreasonable and holding seven-year delay in bringing trademark claims exceeded applicable limitations period and constituted laches as a matter of law). Further, the theory of continuing tort cannot shield a plaintiff from the defense of laches. *Id.* (citing *Bridgestone/Firestone Research, Inc. v. Auto Club de L'Ouest de la France*, 245 F.3d 1359, 1364 (Fed. Cir. 2001)).

       *b. AA offers no excuse for its unreasonable delay*

Apart from the conclusory statement that all its Lanham Act claims are "timely" (though they are not), AA offers no excuse for its over seven year delay in bringing its trademark infringement claims. Rather, AA admits that despite multiple investigations dating back as early as 2015 (involving numerous AA employees in at least two departments), it took no action against Skiplagged, not even sending a cease-and-desist letter, until it filed the instant lawsuit in August 2023. *See* Ex. 1, AA Depo. 54:19-23, 57:6-12; 62:17-20; 64:7-16; 66:5-10; 68:10-14;

76:7-13; 91:12-24; 93:7-15; 209:11-211:4 (App. pp. 14, 16, 20, 22, 24-25, 27, 30-31, 42-44); *see* Ex. 6, Geurin Depo. 17:5-7, 64:3-13 (App. pp. 298, 301); *see also* Section IV(A)(1)(a) *supra*; Dkt. 170, pp. 7-8. Having offered no explanation whatsoever, AA's delay is without excuse. *See Chaos Lacrosse, LLC v. Premier Lacrosse League, Inc*., No. 4:23-cv-00399, 2023 WL 7005831 *20 (E.D. Tex. Oct. 24, 2023).

### c. AA's delay resulted in undue prejudice to Skiplagged

From 2015 to 2023, relying on AA's silence and lack of objection (which legally amounts to consent), Skiplagged invested significant time, money, and effort into its website, grew its user base, expanded its business worldwide, and grew its revenue from approximately $800,000 to more than $20,000,000 in 2023. *See Conan Props., Inc*., 752 F.2d at 152; Dkt. 170, p. 8; Ex. 3, Zaman Decl. ¶¶ 17-18 (App. pp. 69-70). Specifically, Skiplagged redesigned its website, android app, and iOS app.[9] *Id*. Skiplagged also invested in search engine optimization (SEO) for its landing pages and created a customer loyalty program.[10] *Id*.

Given the significant expansion of Skiplagged's business, and the accompanying capital investment, there is, at minimum, a fact issue on whether AA's delay in bringing its trademark infringement and other Lanham Act claims would result in undue prejudice to Skiplagged. *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290 (5th Cir. 2015); *Conan Props., Inc*., 752 F.2d at 152 (upholding laches defense based on plaintiff's delay of seven years). For all these reasons, AA's Lanham Act claims must fail as a matter of law and Skiplagged is entitled to summary judgment on its affirmative defense of laches. At minimum, there is a genuine issue of material face on Skiplagged's laches defense to AA's Lanham Act claims.

### 2. Skiplagged's use of the AA marks is not trademark infringement

Despite AA's attempts to rewrite the facts to support its claims, this case does not present

---

[9] The 2016 version of Skiplagged's website is available at https://web.archive.org/web/20161111072508/https://skiplagged.com/. Skiplagged's Android app is available at https://play.google.com/store/apps/details?id=com.skiplagged&hl=en_US. Skiplagged's iOS app is available at https://apps.apple.com/us/app/skiplagged-flight-booking/id823443083.
[10] Information regarding Skiplagged's customer loyalty program is available at https://skiplagged.com/rewards.

a trademark infringement pattern where a defendant passes off another's mark as its own, using the mark on the defendant's own goods or services, thereby creating confusion as to whose goods are actually being sold. *See Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 154 (4th Cir. 2012). "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark" even if the use is not authorized by the trademark owner. *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58 (2d Cir. 1992).

AA asserts, without any legal or factual basis, that there is no nominative fair use here because Skiplagged is not authorized to sell AA flights to anyone. Yet, Skiplagged does not purchase flights from AA, does not sell (or re-sell) flights from AA to consumers, and has not used the AA marks on its own goods or services. Ex. 3, Zaman Decl. ¶ 12 (App. p. 68); Ex. 1, AA Depo. 175:13-16 (App. p. 41) (███████████████████████████████████████████ ███████████████████████████████████). Instead, using its own algorithm, Skiplagged merely identifies or predicts flights (offered by a variety of airlines) that meet specific consumer criteria. Ex. 3, Zaman Decl. ¶¶ 4-5, 8 (App. p. 67). Consumers are then free to choose any of the listed flights and purchase their chosen itinerary directly from the airline or third-party travel agency offering that itinerary. *Id*. at ¶ 11; Ex. 5-A (App. p. 165); Ex. 5-B (App. p. 184).

Skiplagged has only ever used the AA marks as needed to refer specifically to flights offered (and sold) by AA and to differentiate from the various airline offerings shown in search results on its comparative website. Ex. 1, AA Depo. 175:13-16 (App. p. 41). Such use is rational, permissible, and does not constitute trademark infringement. *Scott Fetzer Co. v. House of Vacuums, Inc*., 381 F.3d 477, 485 (5th Cir. 2004); *Rosetta Stone*, 676 F.3d at 154 ("[u]nlike the typical infringement fact-pattern wherein the defendant passes off another's mark as its own and confuses the public as to precisely whose goods are being sold, a nominative use is one in which the defendant uses the plaintiff's trademark to identify the plaintiff's own goods") (citing *Century 21 Real Estate Corp. v. Lendingtree, Inc*., 425 F.3d 211, 217 (3d Cir. 2005); *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 102 (2d Cir. 2010)) (brackets, quotation marks, and citations omitted); *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 1924 Dec. Comm'r Pat. 508 (1924)

(when a "mark is used in a way that does not deceive the public," there is "no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo"). Consequently, AA cannot succeed on its trademark claims as a matter of law, much less on its own motion. Summary judgment must be denied.

### 3. AA's reliance on the traditional "digits of confusion" is not dispositive

Rather than acknowledge the specific facts of this case, AA first proffers that because Skiplagged is using AA's exact trademarks, confusion must exist, and no further analysis is required. Dkt. 172, p. 19. Alternatively, AA would have the Court blindly apply the "digits of confusion" and conclude that confusion exists, so there must be trademark infringement. *Id.* at pp. 21-23. Neither argument withstands scrutiny.

First, AA ignores the fact that it admits Skiplagged is not using the AA mark to refer to anything other than AA's own goods. Ex. 1, AA Depo. 175:13-16 (App. pp. 41) (███████████████████ ████████████████████████████████████████████████). Second, a positive finding on most of the digits of confusion does not require a court to find a likelihood of confusion. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001), citing *Elvis Presley*, 141 F.3d at 194.

More importantly, the Fifth Circuit makes clear that "[c]ontext is especially critical" where the defendant is using the mark to refer to the plaintiff's goods, rather than his own. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 485 (5th Cir. 2004) (emphasis added) (noting application of traditional "digits of confusion" would indicate confusion even though no such confusion existed). "Therefore, in addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis." *Id.* at 485-486. "In the context of a referential or nominative type of use," such as is at issue here, "the application of the traditional multi-factor test is difficult because often many of the factors are either unworkable or not suited or helpful as indicators of confusion in this context." *Rosetta Stone*, 676 F.3d at 154; *Scott Fetzer*, 381 F.3d at 486.

For example, in a case involving advertising by an independent dealer and repairer of Kirby branded vacuums (among other brands), the Fifth Circuit noted the traditional digits of confusion proved little about likelihood of confusion because the defendant was using the Kirby mark to describe actual Kirby goods (not his own). *Scott Fetzer*, 381 F.3d at 486. Indeed,

> [c]onsideration of the similarity of the marks will always suggest the presence of consumer confusion—the mark used will always be identical because, by definition, nominative use involves the use of another's trademark in order to describe the trademark owner's own product" such that "the similarity factor does not account for context and leads to the incorrect conclusion that virtually all nominative uses are confusing.

*Rosetta Stone*, 676 F.3d at 154 (internal citations omitted).

The fact that the mark is "identical" to AA's marks is not probative or dispositive because the mark is being used only in connection with AA's own goods. *Scott Fetzer*, 381 F.3d at 485. Likewise, the strength of the mark is often not informative as to confusion where the defendant is not passing off its products under the plaintiff's mark but using the plaintiff's mark to refer to the plaintiff's own products. *Rosetta Stone*, 676 F.3d at 154-55. Reaching a similar conclusion as to the sixth digit of confusion (the defendant's intent) the Fifth Circuit refused to presume an intent to confuse consumers based on knowing use of the plaintiff's mark as "unreasonable" because a defendant using a plaintiff's mark to refer to the plaintiff's own goods "will always use the plaintiff's mark with knowledge that the plaintiff owns the mark" and because "intent to compete is not tantamount to intent to confuse." *Scott Fetzer*, 381 F.3d at 485.

AA argues that Skiplagged cannot demonstrate nominative fair use because "any use of the American Marks suggest (sic) sponsorship or affiliation." Dkt. No. 172, p. 34. This is not the law. To the contrary, "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one" such "nominative use of a mark – where the only word reasonably available to describe a particular thing is pressed into service - lies outside the strictures of trademark law." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306-309 (9th Cir. 1992); *see also Scott Fetzer*, 381 F.3d at 485-486 (finding nominative fair use, and therefore no trademark infringement as a matter of law, where

defendant used Kirby trademark to refer to Kirby's own goods rather than his own). Similarly, "where, as here, the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point. *See, e.g., Universal City Studios, Inc. v. Ideal Publishing Corp.*, 195 U.S.P.Q. 761 (S.D.N.Y. 1977). In sum, at minimum, fact issues as to the weight and applicability of the "digits of confusion" argued by AA precludes summary judgment in favor of AA.

### 4. Skiplagged's use of AA's trademarks does not suggest affiliation, sponsorship, or endorsement

Nothing on Skiplagged.com claims, or even infers, that Skiplagged is affiliated with, sponsored, or endorsed by AA. In *Fetzer,* where the Kirby brand was only one of many listed in the defendant's advertisement, the Fifth Circuit held that consumers were much less likely to conclude the defendant was in any way affiliated with or approved by Kirby. *Scott Fetzer*, 381 F.3d at 485. The same is true here.

Skiplagged does not exist solely to identify less expensive flights offered by AA. Instead, Skiplagged identifies travel itineraries from at least 800 airlines, including major airlines Delta and United Airlines, (as well as hotel and rental car opportunities). Ex. 3, Zaman Decl. ¶ 8 (App. p. 67); *See, e.g.,* Ex. 5-A (App. p. 165); Ex. 5-B (App. p. 184). That Skiplagged highlights flights offered by AA's direct competitors (something AA would never do) weighs strongly against any claim of affiliation, sponsorship, or endorsement by AA. *Scott Fetzer,* 381 F.3d at 486 (plaintiff's brand was one of many brands listed, evidencing a lack of any claim of affiliation, sponsorship, or endorsement).

Rather, Skiplagged's website prominently displays its own separate trademark, makes numerous statements expressing that it is not AA nor endorsed by AA (or any other airline), and clearly displays the trademarks of other various airlines in order to identify which carrier offers each flight. *See CMRE Fin. Servs. Inc. v. Doxo Inc.,* No. 222CV00298RAJBAT, 2022 WL 16701259, at *5 (W.D. Wash. Oct. 7, 2022), *report and recommendation adopted*, No. 222CV00298RAJBAT, 2022 WL 16699090 (W.D. Wash. Nov. 3, 2022). (that each page of

Doxo's website featured the Doxo word mark, logo, and banners, included disclaimers that Doxo was not affiliated with each biller, and included the service mark for overlapping billers, demonstrated a lack of affiliation with the plaintiff); *See, e.g.,* Ex. 5-A (App. pp. 164-74). Moreover, Skiplagged's "warning" that "[a]irlines don't like when you miss flights to save money so don't do this often" demonstrates that Skiplagged does not suggest any affiliation, sponsorship, or endorsement, but instead, is providing travelers with information the airlines oppose. *Id.* (App. p. 170, 173). Indeed, Skiplagged's terms and conditions make clear that even links on its website are not endorsed by Skiplagged and Skiplagged makes no representations regarding such links. Ex. 3-H (App. pp. 152-53).

Still further, the use of a plaintiff's mark to critique a plaintiff's product strongly suggests no sponsorship or endorsement. *See Applied Underwriters, Inc. v. Lichtenegger,* 913 F.3d 884, 894 (9th Cir. 2019). Skiplagged's website exists to assist consumers in locating lower airfares not advertised by airlines, leading to the tagline that Skiplagged helps consumers "Find flights the airlines don't want you to see."[11] *See Int'l Info Sys. Sec. Certification Consortium v. Sec. Univ., LLC,* 823 F.3d 153, 159 (2d Cir. 2016) (disclaimers on ads further served to reduce any suggestion of sponsorship or endorsement). The comparative, and critical, nature of Skiplagged's website undermines any argument or inference of endorsement or sponsorship such that Skiplagged's use of the AA marks is not trademark infringement, but nominative fair use, as a matter of law. *Applied Underwriters,* 913 F.3d at 894; *New Kids,* 971 F.2d at 308-309.

At their core, AA's claims are not that Skiplagged is using the AA marks to "palm off" separate goods and services that do not originate with AA, but that Skiplagged is educating consumers on how to find low airfares and routes already offered—but not necessarily advertised—by AA.  Skiplagged's nominative fair use of the AA marks for comparative purposes is not trademark infringement, and does not infer or suggest any affiliation,

---

[11] *See* https://skiplagged.com/.

sponsorship, or endorsement by AA, and AA is not entitled to summary judgment on its Lanham Act claims.[12]

### 5.  AA cannot prove damages on its Lanham Act claims

Damages are an essential element of AA's Lanham Act claims, on which AA carries the burden of proof; if a Lanham Act plaintiff cannot show a loss for which it needs compensation, it cannot receive a compensatory award. *Adler v. McNeil Consultants, LLC,* No. 3:19-cv-2025-K-BN, 2023 U.S. Dist. LEXIS 154440 at \*23-24 (N.D. Tex. July 27, 2023), citing *Illinois Tool Works, Inc. v. Rust-Oleum Corp.,* 955 F.3d 512, 516 (5th Cir. 2020); *see also id.* at 515 ("Lanham Act awards are compensatory, not punitive. 15 U.S.C. § 1117(a). The goal of these awards is to achieve equity between the parties"); *see also Streamline Prod. Sys. v. Streamline Mfg.,* 851 F.3d 440, 459, 461 (5th Cir. 2017) (plaintiff can prove Lanham Act liability but fail to satisfactorily demonstrate tangible harm that would justify a monetary award). The requirement to prove compensable harm to justify monetary damages for a Lanham Act claim is separate from the requirement to prove injury for the purposes of establishing liability. *Id.*

Here, there is no evidence that AA suffered any compensable harm attributable to Skiplagged's actions—AA's complaint is that Skiplagged highlighted to consumers the less expensive connecting flight as opposed to the direct flight, but the evidence is undisputed that the flights at issue are offered by AA and were purchased by consumers directly from AA, resulting in profits to AA. Ex. 1, AA Depo. 175:13-16 (App. p. 41). Still further, AA has failed to identify a single instance in which AA's marks were used to refer to goods or services *other than* AA's own offerings. *Id.* Finally, ███████████████████████████████████████

████████████████████████████████████████████████

██████████ Ex. 1, AA Depo. 36:5-37:16; 49:8-10, 52:16-18; 167:5-9; 169:18-170:18; 219:23-220:7 (App. pp. 9-12, 38-40, 45-46).

---

[12] As Plaintiff concedes, the analysis of Plaintiff's federal false designation of origin and unfair competition claims is the same as that of federal trademark infringement. Because there is no trademark infringement, as discussed *supra*, there likewise is no false designation of origin or unfair competition as a matter of law. Dkt. No 172, p. 24.

Because AA has not carried its high summary judgment burden on the essential element of damages, its Lanham Act claims must fail, and AA is not entitled to summary judgment on these claims. *Adler v. McNeil Consultants, LLC*, No. 3:19-cv-2025-K-BN, 2023 U.S. Dist. LEXIS 154440 (N.D. Tex. July 27, 2023) (summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."), citing *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (cleaned up).

## B. AA is not entitled to summary judgment on its copyright infringement claim

AA cannot succeed on summary judgment of its copyright infringement claim because (1) AA fails to prove ownership of the copyright; (2) AA cannot establish the essential element of copying; and (3) Skiplagged's use of AA's copyright is fair use, not infringement.

### 1. AA fails to prove the essential element of ownership of the copyright at issue

AA bears the burden of proving its ownership of the copyright as a matter of law. *Geoscan, Inc. of Texas v. Geotrace Techs., Inc.,* 226 F.3d 387, 392-393 (5th Cir. 2000). While AA relies solely on its certificate of registration as *prima facie* evidence of ownership and ignores the fact that the certificate creates a *rebuttable presumption* of ownership. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45 (5th Cir. 1995).

On its face, the registration certificate at issue states that the copyright was initially authored (and therefore owned) by Hypermedia Solutions, LLC d/b/a Future Brand ("Hypermedia") and allegedly "transferred by written agreement" to AA. *See* Ex. 5-D, U.S. Copyright Reg. No. VA0002130520 (App. p. 257). What AA fails to disclose, however, is that ███████████████████████████████████████████████████████████████████ ███████████████████████████████████. *See* Ex. 5-E, January 2013 Consulting Services Agreement between AA and Hypermedia Solutions, LLC d/b/a FutureBrand (App. p. 263). Because the transfer of intellectual property rights initially authored and owned by Hypermedia to AA (including the copyright at issue) was dependent on AA's full and final payment to

Hypermedia, and because AA failed to produce evidence that it complied with the conditional terms of the assignment, AA fails to prove its ownership of the copyright at issue as a matter of law. In fact, ███████████████████████████████████████████████████████ ███████████████████████████████████. Ex. 1, AA Depo. 163:9-15 (App. p. 37). As such, AA is not entitled to summary judgment on its copyright infringement claim.

### 2. AA cannot establish the essential element of copying as a matter of law

Not all copying is legally actionable as copyright infringement. *King v. Ames,* 179 F.3d 370, 375-376 (5th Cir. 1999). Rather, AA bears the burden of proving actionable copying has occurred by establishing: (1) that Skiplagged copied or "actually used the copyrighted material to create [its] own work" and (2) that there is "substantial similarity" between the copyrighted work and the alleged infringing work. *Wood v. B L Bldg. Co.,* No. CIV.A.H-03-713, 2004 WL 5866352 at *8 (S.D. Tex. June 22, 2004), citing *Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1340-1341 (5th Cir. 1994) (citations omitted); *Bridgman v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir.), *reh'g en banc denied,* 66 Fed. Appx. 527, 2003 WL 21018279 (2003). Carrying this burden inherently requires AA's demonstration of (1) the actual content of the copyrighted work *and* (2) a substantial similarity between the original content and the alleged copy.

Importantly, "the law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the two works." *Jack Preston Wood: Design, Inc. v. B L Bldg. Co.,* No. H-03-713, 2004 WL 5866352 *31-32 (S.D. Tex. June 22, 2004), quoting *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir.), *reh'g en banc denied,* 66 Fed. Appx. 527, 2003 WL 21018279 (2003) (despite evidence of direct copying, the owner of the copyright in a software program failed to produce a copy of that program and therefore was unable to establish infringement because a finding of factual copying required a side-by-side comparison of the works at issue).

In *King v. Ames,* the Fifth Circuit made clear that there cannot be a finding of actionable copying sufficient to support a claim of copyright infringement unless the copyright owner

provides evidence of the original copyrighted content and the alleged copy that will allow for a side-by-side comparison of the two. 179 F.3d 370, 375-376 (5th Cir. 1999). Because the copyright owner failed to produce that evidence, the Fifth Circuit affirmed the district court's finding of no evidence of copying as a matter of law. *Id.*

The same is true here. While the certificate of registration shows AA has registered a copyright for "visual material" entitled "American Airlines Flight Symbol," the certificate does not show the copyrighted image and, therefore, does not demonstrate or otherwise provide evidence of the actual content of the copyrighted work. In the copyright context, the actual content the subject of registration is demonstrated in a separate "copyright deposit" submitted to the Copyright Office for that purpose.

Having failed to produce the copyright deposit in this case, AA has no evidence establishing the actual content of its copyright apart from its own "say so"—which just happens to be inconsistent with AA's Rule 30(b)(6) representative's sworn testimony. Ex. 1, AA Depo. 163:9-15 (App. p. 37). Because actionable copying is to be determined by a comparison of the works and not credibility, AA's copyright infringement claim must fail as a matter of law and AA is not entitled to summary judgment on its copyright claim. *Id.* at 376, citing *Folio Impressions, Inc. v. Byer California,* 937 F.2d 759, 766 (2[d] Cir. 1991); *see also Jack Preston Wood*, 2004 WL 5866352 at *29, quoting *Creations Unlimited v. McCain,* 112 F.3d 814 (5th Cir. 1997) and *Peel & Co., Inc. v. The Rug Market,* 238 F.3d 391, 395 (5th Cir. 2001).

### 3. Skiplagged's use of the AA logo constitutes fair use, not infringement

AA claims that Skiplagged's use of AA's logo is not fair use as (1) the Court need not consider the fair use factors in this case "because Skiplagged's use of the Flight Symbol is not for the purpose of criticism, comment, news reporting, teaching, scholarship, or research" and (2) even if the Court were to review the factors, they weigh in favor of AA. Dkt. No. 172, p. 35. In support, AA cites to the opinion in *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.*, but wholly ignores the Fifth Circuit's ultimate holding in that case. 626 F.2d 1171 (5th Cir. 1980).

28347013v10 99460.002.00

AA fails to cite any caselaw in support of its position that the Court need not consider the fair use factors in this case because "Skiplagged's use is strictly for commercial purposes." Dkt. 172, p. 35. To the contrary, in *Triangle Publications* the Fifth Circuit applied (and upheld) the fair use defense to facts similar to those at issue here. *Triangle Publications*, 626 F.2d 1171. There, plaintiff, the publisher of "TV Guide" brought copyright infringement claims against the publisher of the Miami Herald Newspaper arising out of the Herald's use of copyrighted images of various TV Guide magazine covers to compare and promote its own newly developed television booklet intended to compete with the TV Guide by providing television schedules and articles related to that media. *Id.* at 1172-73. After the district court rejected the fair use defense due to the commercial nature of the defendant's use (AA's position here), the Fifth Circuit reversed, noting that the defendant's use of plaintiff's magazine covers in a comparative advertising context minimized the importance of any commercial use and constituted fair use as a matter of law. *Id.*

### a.   The comparative nature of Skiplagged's use weighs in favor of fair use

While AA urges that any commercial use weighs against fair use, the Fifth Circuit in *Triangle Publications* concluded that "in viewing commercial motive as conclusive on the question of fair use, the District Court incorrectly applied § 107." *Triangle Publications*, 626 F.2d at 1175. Looking to the legislative history of Section 107 of the Copyright Act, which expressly notes that fair use "is not intended to be interpreted as any sort of not-for-profit limitation" on fair use, the Court rejected the per se rule that commercial motive destroys the defense of fair use. *Id.* Thus, given the purpose and character of use was in comparative advertising and defendant made no attempt to palm off the plaintiff's product as its own, the Court held "the precise characteristics of the commercial use in [that] case caution[ed] against too much weight being given to the fact that the use is commercial." *Id.* at 1175-1176.  Thus, the first factor weighed in favor of a finding of fair use. *Id.*

The same is true here. Skiplagged makes no attempt to palm off AA's flights as belonging to anyone other than AA and uses the AA logo only in the context of comparative

advertising—demonstrating various lower fare flights offered by a wide variety of airlines (approximately 800). Ex. 1, AA Depo. 175:13-16 (App. p. 41). Just as in *Triangle Publications,* the comparative purpose and character of Skiplagged's use minimizes the weight of any commercial use and this factor weighs in favor of fair use.

As to the second prong, AA offers only the conclusory statement that Skiplagged has "appropriated" the AA logo "for its expressive elements" such that this factor weighs against a finding of fair use. Dkt. 172, p. 26. Yet the Fifth Circuit concluded otherwise. Although the TV Guide covers at issue in *Triangle Publications* were a commercial publication (and defendant was offering its own product to compete with TV Guide), the Court held that defendant's use of the copyrighted covers in comparative advertising was such that "the fact that TV Guide [was] a commercial publication neither support[ed] nor hurt[]" defendant's fair use defense. *Triangle Publications*, 626 F.2d at 1176. Given the similar nature of Skiplagged's use to compare lower fare flights offered by the various airlines, the same should result here.

Next, the Fifth Circuit held defendant's use of the TV Guide covers was reasonable such that the third factor was entitled to less weight. *Id.* at 1176-1177. Here, Skiplagged's use of the logo solely to differentiate between the various airlines in its search results was only as necessary for its comparative purposes and never in an attempt to palm off AA's flights or services as Skiplagged. Ex. 1, AA Depo. 175:13-16 (App. p. 41).

Overall, these three factors weigh in favor of the fair use defense. At a minimum, there is a genuine issue of material fact and AA is not entitled to summary judgment on its copyright claim or Skiplagged's fair use affirmative defense.

> b. *The most important factor—the effect of use on the potential market for or value of the copyrighted work—is decidedly in favor of fair use*

The final factor to consider in the fair use defense, "widely accepted to be the most important," is the effect of the use on the potential market for, or value of, the copyrighted work. *Triangle Publications*, 626 F.2d at 1177. AA maintains that Skiplagged's use of its logo has diminished the value of its copyright because the only entities allowed to use the AA logo are

AA and its authorized agents and licensees. Dkt. 172, p. 36. Once again, this is not the law. As a matter of law, fair use is a statutory exception under the Copyright Act to the generally exclusive set of rights given to copyright holders and is "a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner (by the copyright)." *Triangle Publications*, 626 F.2d at 1174.

In *Triangle Publication,* given the comparative nature of defendant's use (and regardless of the commercial nature of that use) the Court held it was "simply unable to find any effect other than possibly de minimus on the commercial value of the copyright." *Id.* at 1177. More specifically, the Court noted that while the Herald's use "may have had the effect of drawing customers away from TV Guide," this "resulted from the nature of advertising itself and in no way stem[med] from the fact that TV Guide covers were used." *Id.* Because plaintiff at no point "offered a cogent explanation of the logical link between the showing of the TV Guide covers and the alleged harm to the copyright," and because "[t]he alleged infringement itself causes no injury to the plaintiff because it does not in any manner substitute for the plaintiff's product," this final, most important factor, weighed in favor of fair use as a matter of law. *Id.* at 1177-1178.

The facts here are even more compelling in Skiplagged's favor. First, Skiplagged's use of the AA logo *resulted in consumers purchasing AA flights directly from AA*, meaning direct sales and profits to AA. Ex. 1, AA Depo. 28:13-29:7 (App. pp. 7-8). There was no palming off or confusion as to the source of the goods. *Id.* at 175:13-16 (App. p. 41). Moreover, to the extent Skiplagged's use may have had the effect of drawing customers away from AA or caused them to purchase flights at lower fares, this resulted from the comparative nature of Skiplagged's website (identifying the lowest fares among a host of major airlines) and in no way stemmed from the use of AA's logo. Even AA's expert, David Fuller, ███████████████████ ████████████████████████████████████████████ ("Fuller Depo.") 88:1-8 (App. p. 307).

"Applying the four factors specified in § 107 and giving heavy emphasis to the fourth factor," as is required, the Fifth Circuit concluded that "the fair use defense applie[d]" and that "the District Court erred in holding that it did not." *Triangle Publications,* 626 F.2d at 1178. In the same way the Fifth Circuit found Triangle Publications was not harmed by the defendant's use of the copyright and because "the public as well as [Skiplagged] benefit[] from comparative advertising, thus minimizing the importance of the fact that a commercial use was involved," the fair use defense bars AA's copyright infringement claim and AA is not entitled to summary judgment on its copyright claim nor Skiplagged's fair use defense. *Id.* at 1178.

## C. AA is not entitled to summary judgment on its breach of contract claim

AA's Motion asserts that Skiplagged breached the AA.com Use Agreement. However, the undisputed evidence establishes that this claim is barred as a matter of law by the statute of limitations. And, even if it is not, AA's summary judgment proof fails to establish its breach of contract claim as a matter of law because AA admits it has no evidence Skiplagged ever entered into the Use Agreement.[13]

### 1. AA's breach of contract claim is barred by the four-year statute of limitations

AA's breach of contract claim is barred by Texas's four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). A cause of action accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Sheet Pile, L.L.C. v. Plymouth Tube Co., USA,* 98 F.4th 161, 166 (5th Cir. 2024) (internal citation omitted). Thus, "a cause of action for breach of contract accrues at the moment the contract is breached." *Id.*

Without any legal support, AA makes the conclusory statement that Skiplagged continually breaches AA's Use Agreement on a daily basis "each time it uses its shadow-browser to book a flight on AA.com." Dkt. 172, p. 37. Putting aside this inaccuracy, AA claims it timely asserted its breach of contract claims. *Id.* AA's unsupported statement misses the mark because it

---

[13] AA's Motion only pursues an action for breach of the AA Use Agreement. Dkt. 172, pp. 3, 13-14, 27-33.

lacks any analysis of the alleged "serial breach" at issue and merely assumes, without legal support, that the statute of limitations runs from each alleged breach. Contrary to AA's conclusory argument, for alleged serial breaches, there are only limited circumstances where more than one limitations period applies—none of which exist in this case. *Sheet Pile,* 98 F.4th at 168-169. "Texas courts have recognized serial accrual of breaches in a few discrete instances…: (1) when the breach is of an installment contract; (2) when the defendant's wrongful conduct caused temporary (as opposed to permanent) injuries to real property; and (3) in the very limited circumstance[] when the same wrongful conduct causes distinct legal injuries, as when exposure to asbestos gives rise to separate diseases that manifest years or even decades apart." *Id.* at 168 (internal quotations and citations omitted).

Moreover, the discovery rule, which AA did not plead, will rarely apply in a breach of contract case, because contracting parties are expected to exercise due diligence in enforcing their contract rights within the limitations period. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314-315 (Tex. 2006); *Wagner Brown, Ltd. V. Horwood*, 58 S.W.3d 732, 743-737 (Tex. 2001). Thus, limitations on AA's entire breach of contract claim began to run when Skiplagged first allegedly breached the Use Agreement. And, even if the discovery rule applies, AA has known about Skiplagged's alleged breaches since at least 2015. Ex. 1, AA Depo. 54:19-23, 57:6-12, 64:7-16 (App. p. 14, 16, 22); *See* Dkt. 170, p. 7 (detailing AA's long history of knowledge about Skiplagged).

Limitations on AA's breach of contract claim began to run at least in 2015 and expired in at least 2019. Therefore, AA is not entitled to summary judgment on its breach of contract claim nor Skiplagged's statute of limitations affirmative defense because, at a minimum, there is a fact issue that AA's claim is barred by the applicable four-year statute of limitations.

**2. AA fails to establish each element of its contract breach claim**

     *a.  AA admits it has no evidence of a contract between AA and Skiplagged*

AA admits its Use Agreement is a browsewrap agreement based on a user's use of AA's online platforms, but that AA has no evidence Skiplagged ever utilized those platforms. Dkt.

172, p. 28; Ex. 1, AA Depo. 99:13-23, 105:2-5; 114:3-18 (App. p. 32, 34-35). "Because there is no affirmative step to acknowledge assent to the agreement, it is necessary to show the user had actual or constructive knowledge of the terms and conditions to prove a valid contract exists between the user and the owner of the website." *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2021 WL 2651087, at *5 (N.D. Tex. June 28, 2021) (quoting *DHI Grp., Inc. v. Kent*, No. H-16-1679, 2017 WL 4837730, at *2 (S.D. Tex. Oct. 26, 2017). Indeed, in the many years since the *Southwest Airlines Co. v. Farechase, Inc.* case cited by AA, courts have further analyzed the enforceability of browsewrap agreements and found that "the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions **prior to using the site**." *Widespread Elec.* 2021 WL 2651087 at *5 (quoting *DHI Grp,* 2017 WL 4837730 at *2) (emphasis added).

Further, browsewrap agreements are typically unenforceable "if the website fails to provide adequate notice of the terms and there is no showing of actual or constructive knowledge of the terms. *U.S. Money Rsrv., Inc. v. Kagan*, No. A-18-CV-577-LY, 2019 WL 1313469, at *4 (W.D. Tex. Jan. 29, 2019); *see Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-79 (9th Cir. 2014) (holding that "a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice").

AA claims Skiplagged had constructive knowledge of AA's Use Agreement and actual knowledge of the Use Agreement since this lawsuit began. Dkt. 172, pp. 29-30. Neither argument entitles AA to summary judgment. First, AA admits that the Use Agreement is between AA and anyone accessing AA's digital platforms, thus if someone doesn't interact with AA's platforms, they would not be a party to the Use Agreement. Ex. 1, AA Depo. 99:13-23 (App. p. 32). AA admits it has no evidence that Skiplagged ever used a platform associated with AA. *Id.* at 105:2-5; 114:3-18 (App. p. 34-35). Thus, by AA's own words, Skiplagged is not a party to the Use Agreement and AA is not entitled to summary judgment on its breach of

contract claim.

Second, notice of the terms of an agreement due to the filing of this litigation is not sufficient to establish actual or constructive notice against Skiplagged. It is axiomatic that a plaintiff cannot rely on its own lawsuit to prove prior notice or knowledge of terms plaintiff alleged the defendant breached. This is especially true given the requirement that AA must show that Skiplagged had knowledge of AA's terms and conditions *prior to* using AA's website. *See Nguyen,* 763 F.3d at 1175-79.

Third, AA's constructive notice argument is not reliable. Specifically, AA makes up a list of "factors" that demonstrate constructive notice from an order on a motion to dismiss that cited other cases where Courts found a party sufficiently alleged actual or constructive knowledge to get past the motion to dismiss stage. *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2021 WL 2651087, at *5 (N.D. Tex. June 28, 2021). Not only is the motion to dismiss and summary judgment standard entirely different, but also nowhere does the case relied on by AA state that there is a list of "factors" as AA argues. *Id.*

Moreover, AA misconstrues evidence in this case to fit into its self-named "factors." Dkt. 172, p. 29. For example, AA's claim that Skiplagged used customer emails instead of its own corporate emails, masked its IP addresses, accessed AA.com, and sells AA flights are all contradicted by competent summary judgment evidence. Customer email addresses are used to book AA flights because the customer is booking the flight and the customer is informed that their information is being given to the airline. Ex. 5-B (App. p. 210). Skiplagged does not purposefully mask its IP address and in fact, Skiplagged has always used a third-party company to manage its networking (a fact AA knew prior to filing its Motion). Ex. 3, Zaman Decl., ¶ 19 (App. p. 70); Ex. 8, Zaman Depo. 204:3-17 (App. p. 314). Finally, Skiplagged does not sell AA flights as AA directly bills the customer for flight tickets and no money passes through Skiplagged for such purchases. Ex. 3, Zaman Decl., ¶ 12 (App. p. 68); Ex. 5-A (App. p. 178-181). Thus, even if AA's "factors" were correct, they do not fit in this case.

AA also ignores important findings in another case it relies upon, *Sw. Airlines Co. v.*

*BoardFirst, L.L.C.,* No. 3:06-CV-0891-B, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007). In *BoardFirst*, the Court found that BoardFirst had knowledge of Southwest's Terms of Use when Southwest sent BoardFirst a cease-and-desist letter specifically informing BoardFirst of its Terms of Use. *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007). AA did not send any similar communications to Skiplagged such that Skiplagged would have been put on any notice of the terms of AA's Use Agreement. Ex. 1, AA Depo. 56:2-15 (App. p. 15); Ex. 3, Zaman Decl., ¶ 17 (App. p. 69).

Moreover, AA does not provide adequate notice of its Use Agreement on aa.com, making its browsewrap agreement unenforceable. *BoardFirst*, 2007 WL 4823761 at *5 ("Where a website fails to provide adequate notice of the terms, and there is no showing of actual or constructive knowledge, browsewraps have been found unenforceable"); *See Nguyen*, 763 F.3d at 1177 ("Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."); *In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, 893 F.Supp.2d 1058, 1064 (D. Nev. 2012) ("The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links, and the website never directs a user to the Terms of Use."); *Van Tassell v. United Mktg. Grp., LLC*, 795 F.Supp.2d 770, 792-93 (N.D. Ill. 2011) (refusing to enforce arbitration clause in browsewrap agreement that was only noticeable after a "multi-step process" of clicking through non-obvious links). A link to AA's Use Agreement is not located until you go to the bottom of aa.com, amongst 19 other links. Even then, there is no link to a "Use Agreement" or even "Terms of Use." Ex. 5-F. As AA admits, the Use Agreement is hidden behind a link labeled "Legal, privacy and copyright." Dkt. 172, p. 12.[14]

---

[14] https://www.aa.com/homePage.do

Even by clicking on "Legal, privacy, copyright" a user is still not shown the Use Agreement but instead must guess that on the next page, the link "aa.com legal information, Policies about site usage. Legal Information" will finally lead them to the Use Agreement.[15]



In sum, AA cannot prove the first element of its breach of contract claim and at the very least, a genuine issue of material fact exists as to whether Skiplagged entered into a valid contract with AA in the form of AA's hidden browsewrap Use Agreement. Consequently, AA is not entitled to summary judgment on its breach of contract claim.

> b.  *AA's damages claim is speculative, at best*

Knowing it cannot prove the amount of its damages (as set forth in Skiplagged's Brief in Support of Summary Judgment [Dkt. 170, pp. 9-11]), AA makes the conclusory argument that

---

[15]https://www.aa.com/i18n/customer-service/support/legal-privacy-copyright.jsp?anchorEvent=false&from=comp_footer

Skiplagged's alleged breach of AA's Use Agreement materially damaged AA by causing negative customer experiences and flight delays. Dkt. 172, p. 32. However, AA fails to establish any connection between the alleged customer complaints and delayed flights to or how they caused damage to AA. Moreover, AA's own testimony of conclusory facts is not sufficient to support summary judgment. *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (party testimonyh setting forth only ultimate or conclusory facts are insufficient to either support or defeat a motion for summary judgment).

First, none of the alleged "customer complaints" cited by AA demonstrate any damage or loss to AA. *See* Dkt. 172, p. 32. Aside from being inadmissible hearsay, each complaint was made to Skiplagged, not to AA. *Id.* In other words, the alleged "unhappy customers" took their complaints to Skiplagged, not AA, and AA fails to make any connection between complaints made to Skiplagged and damages to AA.

Second, AA offers no evidence of any damages to AA related to flight delays or passenger incidents nor how Skiplagged "caused" the same. Dkt. 172, pp. 32-33. To be clear, AA fails to identify even a single flight that was delayed as a result of a hidden-city ticket facilitated by Skiplagged. Instead, AA cites to its own deposition testimony where, despite never seeing an analysis of any damages, makes a conclusory assumption that AA has been damaged. *Id.* at 33. Further AA cites to numerous email communications dealing with alleged issues with hidden city ticketing in general, not specifically caused by Skiplagged. *Id.* As AA admits, Skiplagged is not the sole source of hidden city ticketing information. Ex. 1, AA Depo., 72:5-16 (App. p. 26). Thus, AA fails to present competent summary judgment evidence connecting its conclusory allegation of damages to Skiplagged.

Because AA has not and cannot meet its initial burden to show it is entitled to summary judgment with competent evidence as to damages for its breach of contract claim, summary judgment on AA's breach of contract claim should be denied. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986) (initial burden is on movant to show entitlement to summary judgment with competent evidence).

**D. AA is not entitled to summary judgment on Skiplagged's affirmative defenses**

AA moves for summary judgment on a majority of Skiplagged's affirmative defenses by asserting the conclusory argument that Skiplagged has no evidence to support its defenses. Dkt. 172, pp. 33-50. AA also tries to argue that it is entitled to summary judgment on Skiplagged's affirmative defenses because Skiplagged's corporate representative, Aktarer Zaman, could not speak to the legal defenses. *Id.* As set forth in Skiplagged's summary judgment papers [Dkts. 170-171, 178-179] and below, Skiplagged has significant summary judgment evidence to support its defenses. Further, Skiplagged disclosed all of the evidence that supports its defenses during the discovery phase of litigation and Mr. Zaman, a non-lawyer, is not required nor expected to testify about what facts apply to legal defenses—testimony that would require legal training.

**1. Skiplagged's fair use defense to AA's copyright and trademark claims withstand summary judgment**

As set forth above (Section IV(A)(2)-(4) and (B)(3)), Skiplagged's fair use defense is valid and supported by competent summary judgment evidence. Moreover, Skiplagged has affirmatively shown that its fair use defense defeats AA's copyright and trademark claims. *Id.;* Dkt. 170, pp. 13-18, 20-22. Thus, AA is not entitled to summary judgment on this defense.

**2. This Court lacks personal jurisdiction over Skiplagged**

Respectfully, Skiplagged wishes to point out to the Court that at the time the Motion to Dismiss was decided, the Court did not have the benefit of the competent summary judgment evidence establishing that Skiplagged is not a party to AA's Use Agreement and thus, not subject to the Use Agreement's forum selection clause. Indeed, as set forth in Section IV(C)(2)(a) above, Skiplagged is not a party to AA's Use Agreement and did not have actual or constructive notice of the terms of same. Indeed, AA admits it has no evidence that Skiplagged ever accessed AA's platforms to be bound by the terms of the Use Agreement. Ex. 1, AA Depo., 99:13-23, 105:2-5, 114:3-18 (App. pp. 32, 34-35). Thus, Skiplagged never agreed to the Use Agreement's forum selection clause and Skiplagged respectfully suggests that this Court lacks personal jurisdiction

over Skiplagged and the Court should reconsider its previous ruling accordingly.

### 3. AA's claims are barred by statute of limitations and laches

#### a. Each of AA's claims are barred by applicable limitations

Though AA argues that *all* its claims have been timely asserted, AA's Motion only attempts to address its breach of contract, Lanham Act, and copyright infringement claims' limitations periods. Dkt. 172, pp. 37-38, 45. Thus, AA has not moved for summary judgment as to Skiplagged's affirmative defense of statute of limitations on AA's tortious interference claim.

As set forth in greater detail in Skiplagged's Brief in Support of Motion for Summary Judgment [Dkt. 170, pp. 6-7], incorporated as if fully set forth herein, as well as Section IV(C)(1) above, Skiplagged is entitled to summary judgment on each of AA's claims because AA failed to bring its claims by the two, three, and four-year applicable statute of limitations.

Specifically, AA filed its Complaint on August 17, 2023. Dkt. 1. Putting aside the factual inaccuracies of AA's allegations, summary judgment evidence establishes Skiplagged has been practicing the methods at issue in this case since 2013. Ex. 3, Zaman Decl., ¶ 2 (App. p. 66). Thus, limitations have expired on the two-year claims (tortious interference), the three-year claims (copyright infringement), and the four-year claims (breach of contract and Lanham Act). Further, AA had actual knowledge of Skiplagged's actions for more than four years prior to initiating this lawsuit. Dkt. 170, p. 7 (detailing history of AA's knowledge of Skiplagged). Indeed, the undisputed evidence shows that, and AA admits, it has known about Skiplagged's operations and actions since at least 2015. *Id.*; Ex. 1, AA Depo., 54:19:23, 57:6-12; 61:5-17, 63:22-64:16 (App. pp. 14, 16, 19, 21); Ex. 6, Guerin Depo., 17:5-7, 64:3-13 (App. pp. 298, 301). Thus, even the four-year statute of limitations would have expired in 2019.

Further, AA acknowledges that its Lanham Act claims have a four-year statute of limitations. *See* Dkt. 172, p. 37. Likewise, AA agrees that copyright infringement claims have a three-year limitation. *Id.* at p. 45. Thus, AA must concede that any allegations under the Lanham Act occurring prior to August 17, 2019 are barred by limitations as a matter of law. Likewise, any copyright claims that arose prior to August 17, 2020 are barred by limitations and cannot

form the basis for any liability of Skiplagged or recovery by AA. Conversely, any claims for liability under the Lanham Act must be based on allegations occurring on or after August 17, 2019 and any claim for copyright infringement must be based on conduct occurring on or after August 17, 2020.

       *b.   Skiplagged's laches defense is valid*

As set forth in Skiplagged's Brief in Support of Motion for Summary Judgment [Dkt. 170, p. 8] and Section IV(A)(1) above, AA's Lanham Act claims are barred by laches.

Further, AA's assertion that laches is only available as a defense to equitable claims and thus does not apply to AA's breach of contract and Lanham Act claims is misguided.[16] *See City of Fort Worth v. Johnson,* 388 S.W.2d 400, 403 (Tex. 1964) (indicating that laches may apply in a case concerning legal rights); *Regent Intern. Hotels, Ltd. v. Las Colinas Hotels Corp.*, 704 S.W.2d 101, 106 (Tex.App.-Dallas 1985, no writ) (explaining that although "some appellate courts have viewed laches as a defense against the enforcement of equitable rights, the Texas Supreme Court and many appellate courts have included legal rights as well"); *see, e.g., Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4th 715 (5th Cir. 2024); *see, e.g., Ogden v. Cozumel, Inc.,* No. 1:18-CV-358-LY, 2019 WL 7758918, at *1 (W.D. Tex. Sept. 18, 2019) (granting defendant's summary judgment and finding plaintiff's breach of contract claim barred by laches).

There is no doubt that AA has known about Skiplagged's operations, actions, and use of AA's alleged trademarks since at least 2015. Ex. 1, AA Depo., 54:19:23, 57:6-12; 61:5-17, 63:22-64:16 (App. pp. 14, 16, 19, 21); Dkt. 170, p. 7 (detailing evidence of AA's extensive knowledge of Skiplagged). AA's claim that it took discovery in this litigation to discover the "full scope" of Skiplagged is unavailing. Dkt. 172, p. 41. A plaintiff is not required to know the "full scope" before filing suit, nor has AA pleaded that the discovery rule applies in this case. Instead, AA admits, and the summary judgment evidence establishes, that AA knew of all of the

---

[16] AA's Motion does not argue that Skiplagged's laches defense does not apply to AA's tortious interference claim, thus Skiplagged's laches defense as to that claim is not subject to AA's request for summary judgment.

actions it complains of for more than seven years before filing this lawsuit. Seven years is a significant delay. *See, e.g., Gochnour v. Marsh*, 754 F.2d 1137, 1139 (5th Cir. 1985) (claims delayed by six years barred by laches); *see, e.g., Delgado v. The Malula,* 291 F.2d 420, 421 (5th Cir. 1961) (finding laches barred claim delayed by four years).

As set forth in Skiplagged's Brief in Support of Motion for Summary Judgment, relying on the years of silence from AA, Skiplagged invested significant time, money, and effort into its website, grew its user base, expanded its business worldwide, and grew its revenue from approximately $800,000 to over $20,000,000 in 2023. Ex. 3, Zaman Decl., ¶ 18 (App. pp. 69-70). Specifically, Skiplagged redesigned its website, android app, and iOS app. *Id.* Skiplagged also invested in search engine optimization (SEO) for its landing pages and created a customer loyalty program. *Id.*

As such, Skiplagged's statute of limitations and laches defenses are not barred as a matter of law and at minimum, a fact issue as to AA's significant delay in filing suit against Skiplagged and the resulting detriment to Skiplagged prohibits summary judgment.

**4.  Estoppel, Quasi-Estoppel, Consent, Waiver, Ratification, and Acquiescence**

AA's conclusory argument that Skiplagged's defenses of estoppel, quasi-estoppel, consent, waiver, ratification, and acquiescence are subject to summary judgment because Skiplagged has no evidence to support such defenses is inaccurate.

A copyright defendant must prove four conjunctive elements to establish estoppel: (1) the plaintiff must know the facts of the defendant's infringing conduct; (2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended; (3) the defendant must be ignorant of the true facts; and (4) the defendant must rely on the plaintiff's conduct to its injury." *Carson v. Dynegy, Inc*., 344 F.3d 446, 453 (5th Cir. 2003). Quasi-estoppel "precludes a party from asserting, to another party's disadvantage, a right inconsistent with a position previously taken." *Satis Vacuum Indus. Vertriebs, AG v. Optovision Techs., Inc*., No. CIV. A. 399CV2147-M, 2001 WL 1142803, at *12 (N.D. Tex. Sept. 24, 2001). Quasi-estoppel does not require a fraudulent misrepresentation or omission. *Id.* "Waiver is an

intentional relinquishment of a known right." *Id.* For ratification, a defendant must establish that the plaintiff: "(1) had full knowledge of the breach of duty or wrongdoing at the time of ratification; and (2) intentionally chose to ratify the conduct in spite of this knowledge." *Id.* at *13. A party may ratify by silence. *Id.* "Acquiescence involves the plaintiff's implicit or explicit assurance to the defendant which induces reliance by the defendant." *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 713 (W.D. Tex. 2013). All these defenses "depend upon a showing that the plaintiff acted in such a way that the defendant was led to believe that the plaintiff did not object to the defendant's conduct or did not intend to enforce [its] rights." *Id.*

Here, as demonstrated throughout Skiplagged's Brief in Support of Motion Summary Judgment and this Opposition, AA has had actual knowledge of Skiplagged's use of Plaintiff's trademarks, provision of information regarding AA flights, including hidden city, and Skiplagged's operations for more than seven years before lodging any complaint, during which time Skiplagged has invested significant time, money, and resources on growing its business and user base. Ex. 3, Zaman Decl., ¶¶ 17-18 (App. pp. 69-70). Over those seven plus years, while AA made money on flights facilitated by Skiplagged, AA stayed silent and made no effort to contact Skiplagged regarding its actions or a request to cease same. *Id.;* Ex. 1, AA Depo., 56:2-15 (App. p. 15). Further, though AA acknowledged it had claims against Skiplagged, it inexplicably chose to delay filing suit. *See* Ex. 5-G (App. pp. 288-89).

Thus, in contrast to AA's bare-bones argument that Skiplagged has no evidence to support its affirmative defenses, at minimum, material fact issues exist as to Skiplagged's defenses of quasi-estoppel, consent, waiver, ratification, and acquiescence defenses and AA is not entitled to summary judgment.

## 5. Lack of privity, lack of mutual assent, and lack of standing

As set forth in Skiplagged's Brief in Support of Motion for Summary Judgment [Dkt. 170, pp. 8-9], there is no privity between Skiplagged and AA on AA's Conditions of Carriage and likewise, Skiplagged did not assent to AA's Conditions of Carriage. Further, as AA admits,

the Conditions of Carriage is a contract between AA and the passenger (the person that's flying on the airline), formed when the customer books a ticket with AA. Ex. 1, AA Depo. 99:1-8, 100:8-24 (App. pp. 32-33).

Further, as set forth in Section IV(C)(2)(a) above, there is no privity between Skiplagged and AA on AA's Use Agreement and Skiplagged did not assent to the terms of AA's Use Agreement. As such, AA has no standing to sue for breach of contract against Skiplagged. *XTO Energy Inc. v. Frontier Drilling, LLC*, 549 F. Supp. 3d 526, 535 (N.D. Tex. 2021)("the benefits and burdens of a contract belong solely to the contracting parties…"). AA is not entitled to summary judgment on Skiplagged's lack of privity, lack of mutual assent, or lack of standing defenses.

### 6. AA failed to mitigate its alleged damages, if any

AA admits that the duty to mitigate arises once an injury occurs and notes "[m]itigation is a method of apportioning damages where the party, subsequent to the infliction of the harm, fails to reasonably avoid loss." Dkt. No. 172, p. 45, citing *Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.,* 948 F.3d 261, 274 (5th Cir. 2020). AA nevertheless maintains the conclusory allegation that Skiplagged "has not identified anything American could have done, subsequent to [the alleged] infliction of harm." *Id.* at pp. 45-46. To the contrary, Skiplagged has demonstrated—and AA does not dispute—that AA has had actual knowledge of Skiplagged's website, business model, and even use of the AA logo and name since as early as 2015 but did not send a cease-and-desist letter and waited more than seven years to bring this lawsuit. Ex. 1, AA Depo., 54:19:23, 56:2-15, 57:6-12; 61:5-17, 63:22-64:16 (App. pp. 14-16, 19, 21-22); Ex. 5-G (App. pp. 288-89). During that time, Skiplagged invested significant amounts in the growth and expansion of its business, growing its revenue from approximately $800,000 to over $20,000,000 by 2023. Ex. 3. Zaman Decl., ¶ 18 (App. pp. 69-70).

Having acquired actual knowledge of Skiplagged and its activities as early as 2015 yet failing to take any action (whether by filing suit or seeking a preliminary injunction) for over seven years, AA has failed to mitigate its damages as a matter of law. *See Energy Intelligence,*

948 F.3d at 268 (allowing alleged infringements to pile up as a means of increasing damages supports an affirmative defense of failure to mitigate damages and ordering plaintiff could "not recover for any item of damage that they could have avoided through reasonable effort"). Thus, AA is not entitled to summary judgment on Skiplagged failure to mitigate defense.

### 7. Skiplagged has a license to use AA's trademarks and copyright

Courts have routinely recognized an express or implied license as an affirmative defense against trademark infringement claims. *Hill Country Bakery, LLC v. Honest Kitchens Grp., LLC*, No. 5:17-CV-334-DAE, 2017 WL 9362706, at *6 (W.D. Tex. Dec. 11, 2017) (citing cases). "[A] license to use a mark…is a transfer of limited rights, less than the whole interest which might have been transferred." *Acme Valve & Fittings Co. v. Wayne*, 386 F. Supp. 1162, 1165 (S.D. Tex. 1974) (citations omitted). Even if the parties intend no formal licensing agreement, "in some circumstances…the entire course of conduct between a…trademark owner and an accused infringer may create an implied license." *McCoy v. Mitsuboshi Cutlery, Inc*., 67 F.3d 917, 920 (Fed. Cir. 1995), cert. denied, U.S., 116 S. Ct. 1268, (1996); *see also Colt Industries, Inc. v. Fidelco Pump & Compressor Corp*., 844 F.2d 117, 119-120 (3rd Cir. 1988). The essential inquiry then is whether, under cover of the agreement claimed to be a license, "the licensee is engaging in acts which would infringe the licensor's mark but for the permission granted in the license." 2 McCarthy, § 18:79, p. 118-128.

Likewise, license is a valid affirmative defense to a claim of copyright infringement, and it can be "implied from conduct." *Pickersgill v. Neely*, No. 3:21-CV-00773-X, 2021 U.S. Dist. LEXIS 214306 at *6 (N.D. Tex. Nov. 5, 2021). In the copyright context, the court will determine whether an implied license exists based on "the totality of the parties' conduct." *Geophysical Serv. v. TGS-NOPEC Geophysical Co*., 784 Fed. Appx. 253, 256 (5th Cir. 2019), citing *Lulirama Ltd., Inc. v. Axcess Broadcast Servs*., 128 F.3d 872, 879 (5th Cir. 1997); *see also Baisden v. I'm Ready Prods., Inc*., 693 F.3d 491, 501 (5th Cir. 2012) (holding that "an implied license [can] arise . . . where the totality of the parties' conduct support[s] such an outcome"). Thus, "[c]onsent for an implied license may take the form of permission or lack of objection." *Id.*,

28347013v10 99460.002.00

citing *Baisden*, 693 F.3d at 500.

Skiplagged entered into agreements with third parties that allowed Skiplagged to use the trademarks and copyrights at issue. Ex. 3, Zaman Decl., ¶ 9 (App. p. 68). Each of these third parties was held out as an authorized agent of AA and Skiplagged reasonably relied upon their representations that Skiplagged could use AA's trademarks and copyrights. *Id.* Specifically, Skiplagged is a party to certain contracts that allow Skiplagged to use third party application programming interface (API), including airline content, flight, and route information. For example, Skiplagged's agreement with Skyscanner states:



Ex. 3-A (App. pp. 74-75, 78-79). Similar provisions in Skiplagged's agreements with Exploretrip, Inc, Kiwi.com, LBF Travel, Inc. and The Travel Outlet of Virginia provide Skiplagged with the right to utilize flight information from these websites or their search features. Exs. 3-B – 3-E (App. pp. 92-146).

Skiplagged lacks knowledge or opportunity to know of AA's agreements or the terms

with these third parties (Ex. 3, Zaman Decl., ¶ 9 (App. p. 69)) and if AA takes issue with its agreement with those parties, that is between AA and the third party, not Skiplagged. Consequently, at minimum, there is a genuine issue of material fact as to whether Skiplagged has a license to use AA's trademarks and copyrights and AA is not entitled to summary judgment on Skiplagged's affirmative defense of license.

## V.    CONCLUSION

For the foregoing reasons, Defendant Skiplagged, Inc. requests that the court deny Plaintiff's Motion for Summary Judgment and grant Skiplagged such further relief to which it is entitled.


Dated: July 22, 2024

Respectfully submitted,

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

*/s/ Darin M. Klemchuk*

Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

**Attorneys for Defendant, Skiplagged, Inc.**

## CERTIFICATE OF SERVICE

It is hereby certified that on July 22, 2024, a copy of the foregoing was served through the Court's electronic filing system as to all parties who have entered an appearance in this proceeding.

*/s/ Abigail R.S. Campbell*
ABIGAIL R.S. CAMPBELL