IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**AMERICAN AIRLINES, INC.'S BRIEF IN SUPPORT OF ITS RESPONSE TO
DEFENDANT SKIPLAGGED, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

## <u>TABLE OF CONTENTS</u>

PAGE

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................... 2

    A.  Skiplagged's Surreptitious Access and Use of American's Website..................... 2

    B.  Skiplagged's Unauthorized Use of the American IP ............................................ 5

    C.  Skiplagged Profits at American's Expense........................................................... 8

III.  SUMMARY JUDGMENT STANDARD ............................................................. 9

IV.  ARGUMENTS & AUTHORITIES ....................................................................... 10

    A.  American's Breach of Contract Claim is Not Barred by Limitations................... 10

    B.  American's Tortious Interference Claim is Not Barred by Limitations. .............. 11

    C.  American's Copyright Claim is Not Barred by Limitations.................................. 12

    D.  American's Lanham Act Claims are Not Barred by Limitations ......................... 13

    E.  American's Lanham Act Claims are Not Barred by Laches................................. 14

    F.  Skiplagged Has Breached the AA.com Use Agreement...................................... 17

        1.  Skiplagged is a Party to the AA.com Use Agreement. ........................... 17

        2.  There is Ample Evidence Supporting American's Damages Resulting from Skiplagged's Breaches of Contract. ................................................. 19

    G.  There are Disputes of Material Fact which Preclude Summary Judgment on American's Tortious Interference Claim. .......................................................... 22

    H.  Skiplagged's Infringing Use of American's Marks Does Not Constitute Fair Use ............................................................................................................. 23

    I.  Skiplagged's Use of the American Marks Causes Confusion ............................. 26

    J.  Skiplagged's Lanham Act Violations Have Caused American Damages ........... 29

    K.  Skiplagged Infringes the Flight Symbol Copyright ............................................. 31

        1.  American's Ownership of its Copyright is Unequivocal.......................... 31

        2.  Skiplagged Copies American's Copyrighted Flight Symbol.................... 32

        3.  Skiplagged's Infringing Use of American's Copyrights Does Not Constitute Fair Use .............................................................................. 34

        4.  Skiplagged's Arguments on Copyright Damages Lack Merit................. 35

    L.  American is Entitled to Recover Its Attorneys' Fees for Its Breach of Contract Claim .................................................................................................. 35

    M.  American is Entitled to Permanent Injunctive Relief .......................................... 37

V.  CONCLUSION ...................................................................................................... 38

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................9

*Barker v. Eckman*,
    213 S.W.3d 306 (Tex. 2006)......................................................................10

*Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) ..............................................................15, 25

*Birdwell v. Texins Credit Union*,
    843 S.W.2d 246 (Tex. App.—Texarkana 1992, no writ) .......................37

*Bulbs 4 E. Side, Inc. v. Ricks*,
    199 F. Supp. 3d 1151 (S.D. Tex. 2016) ..........................................13, 16

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002) ...............................................................25

*Choice Hotels Intern., Inc. v. Patel*,
    940 F. Supp. 2d 532 (S.D. Tex. 2013) ..............................................37, 38

*Elvis Presley Enters. v. Capece*,
    141 F.3d 188 (5th Cir. 1998) ..................................................................14

*Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*,
    No. 4:19-CV-358, 2022 WL 3008501 (E.D. Tex. July 28, 2022), *motion for
    relief from judgment denied*, 668 F. Supp. 3d 614 (E.D. Tex. 2023) ...............................37, 38

*Horseshoe Bay Resort Sales Co. v. Lake LBJ Imp. Corp.*,
    53 S.W.3d 799 (Tex. App.—Austin 2001, pet. denied)..........................13

*Inman v. Loe*,
    No. 05-18-00130-CV, 2019 WL 698089 (Tex. App.—Dallas Feb. 20, 2019,
    pet. denied)...............................................................................................11

*K.C. Roofing Co., Inc. v. Abundis*,
    940 S.W.2d 375 (Tex. App.-San Antonio 1997, writ denied) .........36, 37

*King v. Ames*,
    179 F.3d 370 (5th Cir. 1999) ..................................................................33

*King v. Ames*,
    No. 3:95-cv-03180-G, 1997 WL 327019 (N.D. Tex. 1997).....................33

*Mary Kay, Inc. v. Weber*,
   661 F. Supp. 2d 632 (N.D. Tex. 2009) ...................................................................38

*McAdams v. McAdams*,
   No. 07-01-0343-CV, 2002 WL 342639 (Tex. App.—Amarillo Mar. 1, 2002,
   no pet.) ..................................................................................................................36

*Meecorp Capital Mkts. LLC v. Tex-Wave Indus. LP*,
   265 F. App'x 155 (5th Cir. 2008).........................................................................10

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ...............................................................................25

*Newby v. Bearup*,
   No. 3:17-cv-109-S, 2018 WL 2321991 (N.D. Tex. Apr. 2, 2018) ...........................9

*NY-NY Hotel & Casino, LLC v. Katzin*,
   No. 2:09-CV-02139-LDG, 2010 WL 4386497 (D. Nev. Oct. 27, 2010)................24

*Paulsson Geophysical Servs. v. Sigmar*,
   529 F.3d 303 (5th Cir. 2008) ...............................................................................26

*Pebble Beach Co. v. Tour 18 I Ltd.*,
   155 F.3d 526 (5th Cir. 1998) ...............................................................................29

*Pennzoil-Quaker State Co. v. Miller Oil and Gas Ops.*,
   779 F.3d 290 (5th Cir. 2015) ...............................................................................14

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014).............................................................................................13

*Provident Life & Accid. Ins. Co. v. Knott*,
   128 S.W.3d 211 (Tex. 2003)................................................................................12

*Rich v. Fox News Network, LLC*,
   939 F.3d 112 (2d Cir. 2019).................................................................................23

*Roehre v. Conesys, Inc.*,
   332 F. App'x 184 (5th Cir. 2009) .........................................................................23

*Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*,
   96 F.4th 715 (5th Cir. 2024) ...............................................................................14

*S & H Indus., Inc. v. Selander*,
   932 F. Supp. 2d 754 (N.D. Tex. 2013) ...........................................................37, 38

*S.V. v. R.V.*,
   933 S.W.2d 1 (Tex. 1996)....................................................................................12

*S.W. Airlines Co. v. BoardFirst, LLC*,
   No. 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ............................17, 18

*Scott Fetzer Co. v. H. of Vacuums Inc.*,
   381 F.3d 477 (5th Cir. 2004) .....................................................................................25

*Setai Hotel Acq., LLC v. Miami Beach Luxury Rentals, Inc*.,
   No. 16-21296-CIV, 2017 WL 1608891 (S.D. Fla. Apr. 28, 2017)..........................................24

*Simmons v. Jackson*,
   No. 3:15-CV-01700-S-BT, 2019 WL 360636 (N.D. Tex. Jan. 4, 2019) ................................10

*Spectrum Creations, L.P. v. Carolyn Kinder Intern., LLC*,
   No. SA-05-CV-750-XR, 2008 WL 416264 (W.D. Tex. Feb. 13, 2008) ................................31

*Stevens v. Avent*,
   No. 07-20-00265-CV, 2022 WL 393576 (Tex. App.—Amarillo Feb. 9, 2022,
   no pet.) ...........................................................................................................................36

*Svoboda v. Thai*,
   No. 01-17-00584-CV, 2019 WL 1442434 (Tex. App.—Hous. [1st Dist.] Apr.
   2, 2019, no pet.) .........................................................................................................36, 37

*TRO-X, L.P. v. Eagle Oil & Gas Co*.,
   608 S.W.3d 1 (Tex. App.—Dallas 2018, pet. denied), aff'd, 619 S.W.3d 699
   (Tex. 2021) .....................................................................................................................11

*Wavetronix LLC v. Iteris, Inc*.,
   No. 6:21-cv-00899-ADA-DTG, 2022 WL 4211306 (W.D. Tex. Sept. 13,
   2022) ..............................................................................................................................11

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc*.,
   No. 3:20-CV-2541-K, 2021 WL 2651087 (N.D. Tex. June 28, 2021)...................................18

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
   576 F.3d 221 (5th Cir. 2009) .....................................................................................27

*Zenith Radio Corp. v. Hazeltine Research, Inc*.,
   401 U.S. 321 (1971).......................................................................................................12

**STATUTES**

15 U.S.C. § 1115(b)(4) ....................................................................................................24

15 U.S.C. § 1117(a) .........................................................................................................30

17 U.S.C. § 107..................................................................................................................34

17 U.S.C. § 410(c) ...........................................................................................................31

17 U.S.C. § 504 ...................................................................................................35

17 U.S.C. § 504(b) .............................................................................................35

17 U.S.C. § 507 ...................................................................................................12

35 U.S.C. 1117(a) ...............................................................................................30

Tex. Civ. Prac. & Rem. Code § 38.001 ........................................................35, 36, 37

Plaintiff American Airlines, Inc. ("American") files this Brief in Support of its Response to Defendant Skiplagged, Inc.'s ("Skiplagged") Motion for Summary Judgment [Dkt. No. 150] (the "Motion") and respectfully shows the Court the following:

## I.     PRELIMINARY STATEMENT

Skiplagged's motion attempts to change the script about what this dispute is really over. This case is not only, or even largely, about hidden-city ticketing—it is about Skiplagged's unauthorized access and use of American's trademarks ("American Marks") and copyrighted Flight Symbol (collectively, "American IP") to deceive customers, all so that it can insert itself into American's relationships with its customers. While Skiplagged would rather focus on the hidden-city angle because it fits its story, it cannot hide behind this false narrative.

Skiplagged is not and never has been an authorized agent of American Airlines, and tickets are not goods which can be scalped at higher prices to customers. They are contracts of carriage, and *nobody* has the authority to enter into those contracts on American's behalf without authorization. Nor is Skiplagged a search engine; it only makes its money from the fees it charges customers on ticket purchases. Like a ticket scalper, Skiplagged provides no service to these customers once they have made a purchase, offering them no support for travel changes, weather events, or the other services real travel agencies provide.

All of Skiplagged's spin aside, Skiplagged fails to put forth any arguments in its Motion that meet the test for summary judgment. Indeed, the undisputed facts and evidence demonstrate that *American* is entitled to summary judgment, and all Skiplagged's motion does is confirm that it does not have any valid legal arguments to challenge this fact. American therefore requests the Court to deny Skiplagged's motion in its entirety.

## II.    STATEMENT OF FACTS

### A.    Skiplagged's Surreptitious Access and Use of American's Website

While American has been aware of Skiplagged for some time, and has made efforts to investigate its online presence, American has had a difficult time determining the scope of Skiplagged's infringement because it hides its activities from American. [App'x 0015–17 (Deposition of Marcial Lapp ("Lapp Depo."), 43:8–18; 47:14–17; 72:1–4); App'x 0038–39, 0041–42 (Deposition of Raymond Scott Chandler ("Chandler Depo."), 44:11–46:22, 54:3–55:3, 59:6–8); App'x 0077–79 (Deposition of American's 30(b)(6) Corporate Representative ("American's 30(b)(6) Depo."), 57:6–12, 60:14–24, 63:22–65:10); App'x 0124, 0127, 0130–131, 0133, 0135, 0138 (American internal emails trying to identify a SL booking/discussing Skiplagged's access to AA data)]. American has long struggled to understand how Skiplagged obtains real-time data of all of American's flights ("American Data"), and how Skiplagged sell American tickets. American also struggled to identify which tickets were sold by Skiplagged, or from which third parties Skiplagged obtained American Data. [App'x 0020 (Lapp Depo., 134:11–1); App'x 0034–35, 0058 (Chandler Depo., 28:17–30:18, 123:18–124:17); App'x 0076, 0078–79, 0081–82 (American's 30(b)(6) Depo., 54:4–23, 63:22–65:10, 76:23–77:13); App'x 0124–125, 0131, 0133, 0135, 0138 (███████████████████████████████████████████████ ███ )].

The reason American struggled to understand these activities is because of Skiplagged's persistent efforts to hide them. Discovery has now revealed that Skiplagged ██████████ █████████████████████████████████ [App'x 0145–146 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0183 (Deposition of Aktarer Zaman ("Zaman Depo."), 117:11–120:6); App'x 0218, 0223, 0228–229

(Deposition of Skiplagged's 30(b)(6) Corporate Representative ("Skiplagged's 30(b)(6) Depo."),

34:6–35:8; 54:19–55:2; 77:13–78:5); App'x 0333 (Deposition of Daniel Gellert ("Gellert Depo."),

130:14–133:10)]. These ████████████████ are invisible both to the user and to American;

they are hidden by design. [*Id.*] From the customer's perspective, the entire booking process takes

place on skiplagged.com, just as if the user had booked a flight through a *bona fide* online travel

agency like Expedia. [*Id.*; App'x 0359–0378 (Test Buy 2)]. From American's perspective, the

booking appears to have been made by the customer. Skiplagged also uses ███████████

to avoid detection by American (and other airlines). [App'x 0146, 0148 (Skiplagged's Third

Amended Objections and Responses to American's Interrogatory Nos. 5, 9); App'x 0253–254

(Skiplagged's 30(b)(6) Depo., 176:22–178:19); App'x 0129–130 ██████████████

████████████████████████████████████].

     Skiplagged's extensive efforts to avoid detection demonstrate that Skiplagged is fully

aware of the Use Agreement on AA.com, and that its activities violate that agreement. The Use

Agreement states:

> In return for gaining access to the Site and using it, you agree to be bound by
> the following Agreement without limitation or qualification, so please carefully
> review this Agreement before proceeding. *If you do not intend to be legally
> bound by these terms and conditions, do not access and use the Site.*

[App'x 0427 (Use Agreement, p. 1 (emphasis added))]. It further states that:

- o Content "appearing on the website is the exclusive property of [American]."
  [*Id.*].
- o The user will not "engage in any commercial purpose including but not
  limited to… [a]dvertising or offering to sell any goods or services."]."
  [App'x 0429 (Use Agreement, p. 3].
- o The user will not "[p]ost, send, or otherwise disclose confidential
  information…of any entity or person."]." [*Id.*].
- o The user will not "copy, display, distribute, download…publish, re-post,
  reproduce, reuse, sell, transmit…the content of the Site for public or
  commercial purposes." [App'x 0428 (Use Agreement, p. 2)].
- o The user will not "[c]opy…publish, recreate, reproduce, sell, transfer, or
  transmit any information, products, services, or software obtained by, from,

or through the Site." [App'x 0429 (Use Agreement, p. 3)].
- The user will not "[m]onitor or copy any Content…without first obtaining American Airlines' prior written consent." [App'x 0430 (Use Agreement, p. 4)].
- The user will not "[a]ct as an agent…for any person who is not a member of your immediate household; or your direct supervisor at your place of employment." [*Id.*].
- The user will not "[m]isrepresent or omit the origin or source of any file you download or upload." [App'x 0429 (Use Agreement, p. 3)].

American also specifically denies the user permission to hyperlink or provide references to the Site or to use any trademarked or copyrighted material to provide such hyperlinks or references, unless authorized by American Airlines. [App'x 0431 (Use Agreement, p. 5)].

Skiplagged breaches these provisions in every shadow browser session it creates for its customers. Skiplagged has accessed American's website ███████████████████████ ████████████ from August 2018 to August 2023, evading detection in all but a few instances.[1] Skiplagged accesses American's website for a commercial purpose [App'x 0380–389, 0402–407, 0419–425 (payment confirmation from Test Buys 2, 14, and 17)]; it transmits the unsuspecting customer's confidential information, including personal and credit card information, to American's website [App'x 0145–146 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); App'x 0159, 0163–164 (Zaman Depo., 21:18–22:20, 40:14– 41:17); App'x 0228–229 (Skiplagged 30(b)(6) Depo., 77:5–78:5); App'x 0372, 0376, 0397, 0415

---

[1] Skiplagged admits it booked at least 1,376,927 American Airlines trips between August 1, 2018 and August 18, 2023. [App'x 0436–437 (Skiplagged's Fourth Amended Answer to American's Interrogatory No. 8)]. This is just the customers who booked tickets directly through Skiplagged; during the same time period, Skiplagged admits its website had over fifty-nine million users and over 209 million sessions. [App'x 0149 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 12)]. Skiplagged has not produced records identifying the specific number of ███████████████ it created during this time frame, but its CEO claims that approximately ███████ of its overall sales are American tickets.[1] [App'x 0224 (Skiplagged's 30(b)(6) Depo., 59:15–60:10)]. Accordingly, Skiplagged may have created ██████████ ███████████████

(Consumer personal information inserted on Skiplagged website from Test Buys 2, 14, and 17)];

it sends content it obtains from the website back to the customer by displaying it on the screen as

████████████████ [App'x 0373, 0378, 0382–0384, 0387–388, 0401, 0404–406, 0418–421

(American record locator confirmation on Skiplagged website ████████████████████

███████████████ from Test Buys 2, 14, and 17); App'x 0184–185 (Zaman Depo., 124:25–

126:6)]; and in doing so, it copies content verbatim off the American website without American's

written consent [*Id.*]; and it acts as an agent of the unsuspecting customer and misrepresents the

source of the information it presents to the customer [*Id.*].

**B.    Skiplagged's Unauthorized Use of the American IP**

Skiplagged uses the American IP—without permission—extensively throughout the

booking process. [App'x 0359–365, 0367–369, 0372–376, 0382, 0387, 0391–392, 0395, 0397,

0404, 0409–410, 0413, 0415, 0417–419 (American IP used by Skiplagged from Test Buy 2 and

14)]. Skiplagged allows customers to search for "American Airlines" tickets, uses American's

trademarked and copyrighted Flight Symbol when presenting search results, and uses the word

mark AMERICAN AIRLINES when presenting a specific flight to its users:

5



https://skiplagged.com/flights/DFW/ORD/2024-07-12/2024-07-14 (last accessed Jun. 28, 2024)



https://skiplagged.com/flights/DFW/ORD/2024-07-12/2024-07-14#trip=AA270,AA2896 (last

accessed Jun. 28, 2024).

Skiplagged's use of the American IP inevitably leads customers shopping on Skiplagged's website to believe that American endorses or authorizes Skiplagged's sale of American flights. While Skiplagged's own website and business model is definitive proof of this fact, American also commissioned a customer survey from Dr. Jerry Wind to further evidence the point. In that survey, 42% of respondents believed Skiplagged was an authorized agent of American. [App'x 0482 (Expert Report of Professor Yoram (Jerry) Wind ("Wind Report"), Exhibit 5, p. 39)]. There is simply no dispute that Skiplagged's use of the American IP causes customers to (incorrectly) believe that Skiplagged is affiliated with American.

It is worth noting that, at some time between June 28, 2024 and July 1, 2024 (the dispositive motion deadline), Skiplagged removed the Flight Symbol from the search results on its website. But Skiplagged is still using the AMERICAN and AMERICAN AIRLINES trademarks, to sell tickets American has not authorized Skiplagged to sell, and Skiplagged has offered no evidence demonstrating whether this mitigates customer confusion.



https://skiplagged.com/flights/DFW/MIA/2024-07-26/2024-07-28#trip=AA2206~ (last accessed

7/12/2024).

### C.    Skiplagged Profits at American's Expense

Skiplagged's practices harm both the customer and American. Skiplagged's entire business is premised on luring customers in with promises of *valid* cost savings, charging a fee, and then disappearing. What Skiplagged fails to recognize is that when an American customer is harmed, American is also harmed. Skiplagged charges customers a "service fee" and then leaves the passenger without any support when travel issues arise. American, on the other hand, walks the entire travel experience with its customers.

American bears the operational and reputational harm arising from Skiplagged's conduct because Skiplagged, in its effort to avoid any responsibility, simply directs its customers to American's customer service line.[2]

Even more, in those instances where a customer purchases a hidden city ticket from

_____

[2]

8

Skiplagged and then gets caught or runs into an unexpected problem at the airport, it is American who is vilified for enforcing its rules, and other passengers who bear the fallout. [App'x 0575–576, 0580–581, 0584, 0587–588, 0590 (American internal communications regarding hidden city passenger issues at airport); App'x 0053 (Chandler Depo., 102:14–104:3); App'x 0014–15, 0018–19, 0022 (Lapp Depo., 30:25–31:21, 41:11–17, 128:4–130:7, 141:11–21); App'x 0110 (American's 30(b)(6) Depo., 192:13–24)]. For example, when a passenger skips the final leg of her flight, American sometimes delays the flight unnecessarily to track down the passenger. If the passenger still does not show, American tries to determine whether she has checked luggage through to the final destination, because the luggage would need to be removed from the plane, causing further delay. Additionally, when the passenger does not show up for the second leg of her flight, the rest of her itinerary is automatically cancelled and she will not have a valid ticket for her return trip home.

It is an indisputable and natural consequence that Skiplagged's sale of American tickets many times lead to poor customer experience that damage the goodwill, reputation and value inherent in the American brand [App'x 0602–603, 0605, 0607 (customer complaints to American)]. Indeed, American's damages expert, David N. Fuller, has quantified American's damages in detail. [App'x 0622–625 (Expert Report of David N. Fuller ("Fuller Report"), ¶¶ 32–37, 40)].

### III.   SUMMARY JUDGMENT STANDARD

The summary judgment standard is well known. *See Newby v. Bearup*, No. 3:17-cv-109-S, 2018 WL 2321991, *1 (N.D. Tex. Apr. 2, 2018). The party moving for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for

summary judgment who bears the burden of proof on a claim "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *See Meecorp Capital Mkts. LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 157 (5th Cir. 2008) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis in original). "The beyond peradventure standard imposes a heavy burden on the movant to show there are no genuine material fact disputes and that the movant is entitled to summary judgment as a matter of law." *Simmons v. Jackson*, No. 3:15-CV-01700-S-BT, 2019 WL 360636, at *1 (N.D. Tex. Jan. 4, 2019), *report and recommendation adopted*, 2019 WL 358751 (N.D. Tex. Jan. 29, 2019) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)). "On such a motion, the Court draws all reasonable inferences in favor of the nonmovant." *Id.* (citing *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002)).

## IV.    ARGUMENTS & AUTHORITIES

Skiplagged is not entitled to summary judgment. Its arguments in favor of summary judgment ignore undisputed facts which support summary judgment in favor of *American*, and attempt to paper over undisputed facts with a revisionist-history declaration from its CEO (his fourth such declaration offered in this case).

### A.    American's Breach of Contract Claim is Not Barred by Limitations.

Skiplagged's statute of limitations arguments are wrong. It is undisputed that Skiplagged used the █████████████████████ to access American's website millions of times. Each time it does so, a new breach of the Use Agreement occurs, and a new claim accrues. The Texas Supreme Court has held that where a plaintiff "claims numerous individual breaches through the years[,] . . . his claims for those serial breaches accrued as soon as he had the right to sue on them individually, that is, immediately upon the occurrence of each breach." *Barker v. Eckman*, 213

S.W.3d 306, 311 (Tex. 2006). "[I]f a party breaches legal duties multiple times and those breaches cause distinct legal injuries, ... different accrual dates will result." *Inman v. Loe*, No. 05-18-00130-CV, 2019 WL 698089, at *3 (Tex. App.—Dallas Feb. 20, 2019, pet. denied) (noting "the rule that separate breaches causing distinct legal injuries give rise to claims with different accrual dates") (citing *Barker*, 213 S.W.3d at 311); *see also TRO-X, L.P. v. Eagle Oil & Gas Co.*, 608 S.W.3d 1, 18 (Tex. App.—Dallas 2018, pet. denied), aff'd, 619 S.W.3d 699 (Tex. 2021) (holding "limitations began to run separately upon the occurrence of each such separate breach"). *See also, Wavetronix LLC v. Iteris, Inc.*, No. 6:21-cv-00899-ADA-DTG, 2022 WL 4211306, at *2 (W.D. Tex. Sept. 13, 2022) ("Each sale . . . is a separate breach of Iteris's continuing performance obligations, and the statute of limitation begins to run anew from the date of each breach. Thus, the statute of limitations has not run for any breach occurring within the four-year period prior to the filing of the Complaint. Otherwise, a breach of a continuing obligation occurring three days before filing of the complaint would be barred by a separate breach that occurred five years earlier. That result would be inconsistent with Texas case law.")

**B.    American's Tortious Interference Claim is Not Barred by Limitations.**

At the outset, American noted in its own motion for summary judgment that should the Court grant summary judgment in favor of American on its other counts, it will dismiss its tortious interference count to resolve the remaining claims in the case.

That said, Skiplagged's arguments on American's tortious interference claim fail for similar reasons. Skiplagged argues that the two-year statute of limitations for tortious interference bars American's claim because the "continuing tort doctrine does not apply to tortious interference claims." Dkt. No. 151 at 6. But American does not allege a continuing tort—it alleges that Skiplagged commits repeated but separate acts of tortious interference each time it sells a ticket to

11

a customer. Each time Skiplagged books a ticket on an American flight for a customer, a new and separate Conditions of Carriage contract is formed between American and that customer, and Skiplagged tortiously interferes by inducing each such customer to breach each separate contract.

For limitations purposes, "a cause of action accrues when a wrongful act causes some legal injury." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). A "legal injury" occurs when facts come into existence that authorize a party to seek a judicial remedy. *Provident Life & Accid. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971). "This has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Id.* Thus, with each booking, a new Conditions of Carriage contract is formed that Skiplagged causes the customer to breach, and each instance of such interference causes distinct legal injuries resulting in new/different accrual dates.

## C.   American's Copyright Claim is Not Barred by Limitations.

Skiplagged's statute of limitations argument on American's copyright claim fails for the same reasons. Skiplagged argues American's copyright claims is barred by the Copyright Act because American "knew of Skiplagged's alleged actions at least as of 2016 and certainly by 2019." Dkt. No. 151 at 7. But once again, the separate accrual rule applies to copyright claims.

17 U.S.C. § 507 states "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." But as the Supreme Court recognized:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute

of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).

Because Skiplagged continued to commit repeated, separate copyright every time it displayed the Flight Symbol on its webpages, including even after American filed this suit, American's copyright claim is timely. Each copy of the Flight Symbol displayed by Skiplagged's website in the three years prior to suit constitutes a separate infringement.

**D.     American's Lanham Act Claims are Not Barred by Limitations.**

Skiplagged's statute of limitations argument similarly ignores the facts of this case, and with this claim *both* the continuing wrong doctrine *and* the separate accrual rule apply. "Trademark infringement ... is a continuous wrong, and as such gives rise to a claim for relief as long as the infringement persists." *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1165 (S.D. Tex. 2016) (quoting *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 500 (Tex. App.—Houston [14th Dist.] 1995, no writ)). As set forth in *Horseshoe Bay Resort Sales Co. v. Lake LBJ Imp. Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied):

> A continuing tort involves wrongful conduct that is repeated over a period of time and each day creates a separate cause of action. Each subsequent violation is a separate event, separately actionable, which begins anew the running of the statute of limitations. Trademark infringement is a continuing tort in Texas.
>
> …
>
> Each day that Resort Sales Co. infringes on Lake LBJ Corp.'s mark by holding and using the domain name "horseshoebay.com," Resort Sales Co. harms Lake LBJ Corp.'s business. This continuing harm gives rise to a separate cause of action each day it is repeated. Because Resort Sales Co. used the domain name from 1996 through the institution of this suit, the district court did not err by failing to find that the limitations period barred Lake LBJ Corp.'s infringement claim.

**E.     American's Lanham Act Claims are Not Barred by Laches.**

Skiplagged's laches argument is also without merit. First, *none* of the cases cited by Skiplagged support summary judgment based on laches. In *Rolex Watch USA, Inc. v. BeckerTime, L.L.C.*, 96 F.4th 715, 719 (5th Cir. 2024), the parties proceeded to a bench trial, and the court addressed laches only in the context of whether it was a proper basis to preclude disgorgement of defendant's profits—not to preclude the claim itself. In *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998), the Court actually held that the trademark claim was *not* barred by laches. Skiplagged's reliance on *Pennzoil* is also misplaced. Laches was not even asserted in that case but was merely referenced to help inform the court's review of an acquiescence defense. In any event, the court explained:

> With respect to laches, we have affirmed jury instructions that focus on whether the defendant had made significant business decisions in reliance on the plaintiff's conduct. This includes, for instance, whether the defendant "makes major business investments or expansions *that depend on the use of the marks*," "*build[s] up a valuable business around ... [the plaintiff's] trademark*" which would be lost if the mark could no longer be used, or, by foregoing the use of the mark, would have "destroyed the investment of capital in the [business]."

*Pennzoil-Quaker State Co. v. Miller Oil and Gas Ops.*, 779 F.3d 290, 297 (5th Cir. 2015) (emphasis added). Here, Skiplagged simply argues that it "invested significant time, money, and effort into its website, grew its user base, expanded its business worldwide, and grew its revenue, . . . redesigned its website," and "invested in search engine optimization (SEO) for its landing pages and created a customer loyalty." Dkt. No. 151 at 8. But these investments and decisions were made to improve Skiplagged's business *in general* and without regard to its use of the American Marks specifically or reliance on American's conduct. Nowhere does Skiplagged assert that any of these purported expenditures specifically relied or depended on American's actions in particular. And it certainly cannot be said that such general improvements "built up [Skiplagged's]

14

business around [American's] trademark." Indeed, Skiplagged claims American only makes up ▮▮ of its business [App'x 0224 (Skiplagged's 30(b)(6) Depo., 59:17–61:4)], so it is clear that Skiplagged's general business investment permitted Skiplagged to continue generating ▮▮▮ ▮▮▮ profits each year for sales *unrelated* to American Airlines.

Additionally, because laches is an equitable defense, it cannot be asserted by a party with unclean hands: "A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008). There is no genuine dispute of material fact that Skiplagged's infringement is intentional; it knows it is not an authorized agent and knows that American has not given it permission to use the American Marks, and its continued infringement after this lawsuit was filed demonstrates its infringement is not a mere mistake. Thus, Skiplagged is precluded from asserting this defense.

Further, the key element of laches is *unreasonable* delay. American did not delay filing suit in an attempt to seek greater damages later. It delayed in filing suit because it did not understand the scope or specific mechanisms of Skiplagged's infringement, and because it was looking for other, non-litigious ways to address Skiplagged's infringing activities. [App'x 0124–125, 0127, 0129–131, 0133, 0135, 0138 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)].

For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This demonstrates Skiplagged's knowledge that authorized

travel providers explicitly objected to its behavior.

Finally, Skiplagged was well aware of American's objections to its website, which negates any notion of reliance to the contrary. Why else would it structure its business around ████ ████████████████████████████████████████████████████ and actively instruct its customers to lie to American? [App'x 0145–146, 0148 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4, 5, 9); (App'x 0183 (Zaman Depo., 117:11–120-6; App'x 0218, 0223, 0228–229, 0253–254 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 54:19–55:2; 77:13–78:5, 176:22–178:19); App'x 0333 (Gellert Depo., 130:14–133:10); App'x 0124–125, 0127, 0129–131, 0133, 0135, 0138 (████████████████████████████████████ ████████████████████████████████████████); App'x 0399, 0417 (Skiplagged instructing consumer to lie to airline from Test Buys 14 and 17)]; *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1164 (S.D. Tex. 2016) ("[T]he defense of laches is not appropriate here, . . . because he was aware of Plaintiff's objections to his website."). Further, Skiplagged has been sued by other airlines over the same activity. [App'x 0654–721 (Southwest Airlines Co.'s First Amended Complaint against Skiplagged, Inc., et al.); App'x 0723–0757 (United Airlines, Inc., et al.'s Complaint against Aktarer Zaman, individually and d/b/a Skiplagged.com)]. Skiplagged also produced ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████]. In view of these undisputed facts, it is impossible to conclude that Skiplagged believed American, or any other airline, had decided to give it a "free pass."

**F.      Skiplagged Has Breached the AA.com Use Agreement.**

      **1.      Skiplagged is a Party to the AA.com Use Agreement.**

The AA.com Use Agreement states: "In return for *gaining access to the Site and using it*, you agree to be bound by the following Agreement without limitation or qualification[.]" [App'x 0427 (Use Agreement, p. 1 (emphasis added)). Skiplagged's sole, unserious argument is that there is "no evidence that Skiplagged ever accessed [American's] website or electronic ecosystem, and therefore could not have entered into the Use Agreement." This is preposterous. It is undisputed that Skiplagged ███████████████████████████████████████████████ to access American's website. [App'x 0145–146 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4, 5); (App'x 0183 (Zaman Depo., 117:11–120-6); App'x 0218, 0228–229 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 77:13–78:5); App'x 0333 (Gellert Depo., 130:14–133:10)]. It is further undisputed that Skiplagged uses ██████████ to book tickets *and* to copy information from American's website and send that information back to the customer. [*Id.*; App'x 0373, 0378, 0382–0384, 0387–388, 0401, 0404–406, 0418–421 (American record locator confirmation on Skiplagged website and through Skiplagged email confirmation to consumer from Test Buys 2, 14, and 17)]. Skiplagged presents no authority suggesting it can hide behind software *it created* to claim it is somehow a third party who accesses American's website.

Regarding "the term 'access' . . . courts have broadly construed it in a manner that would encompass conduct such as a computer communicating to another computer via a wireless network." *S.W. Airlines Co. v. BoardFirst, LLC*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *12 (N.D. Tex. Sept. 12, 2007) (internal citation omitted). This case presents the very same scenario as BoardFirst:

      Here, BoardFirst's use of Southwest's website easily falls within any reasonable

> construction of the word "access". There is no dispute that, in conducting its business, BoardFirst logs on to southwest.com and enters the flight confirmation numbers and names of its customers and clicks on the appropriate boxes in order to obtain an "A" boarding pass. . . . Thus, in its operations BoardFirst makes free use of southwest.com and exchanges information with it. By any interpretation, BoardFirst "intentionally accesses" the Southwest site.

*Id.*

Further, Skiplagged clearly had constructive notice of the Use Agreement. For a breach of contract claim based on a website's use agreement, the defendant must have had "actual or constructive knowledge of it to show a valid contract exists." *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2021 WL 2651087, at \*5 (N.D. Tex. June 28, 2021); *see also BoardFirst*, 2007 WL 4823761, at \*6-7. Such notice may be achieved where "defendant used similar 'terms of use' on its own website," engaged in efforts to avoid detection, "used different email addresses from defendant's," or used a masked IP address when accessing the website, among others. *Widespread Elec.*, 2021 WL 2651087, at \*5 (collecting cases). All of these facts are present here: Skiplagged's own Use Agreement contains the same terms [App'x 0798– 799 (Skiplagged.com Terms and Conditions, General Terms)], it ███████ ██████████████████████ for the purpose of evading detection [App'x 0145–146, 0148 (Skiplagged's Third Amended Objection and Response to American's Interrogatory Nos. 4, 5, 9); App'x 0218, 0223, 0228–229 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 54:19–55:2; 77:13–78:5); it ██████████████████ to evade detection [*Id.*; App'x 0253–254 (Skiplagged's 30(b)(6) Depo., 176:22–178:19)]; and it used customer email addresses, instead of an email address associated with Skiplagged, to avoid giving American a way to detect Skiplagged's activity. [App'x 0380–381, 0385–386, 0402–403, 0422–424 (AA.com booking confirmation email sent directly to consumer's email from Test Buys 2, 14, and 17)].

Skiplagged points to Mr. Lapp's testimony that ███████████████████ ████████████████████ [Dkt. No. 180 (Skiplagged's Supplemental Brief in Support of its Motion for Summary Judgment), ¶ 2], but this is entirely consistent with Skplagged's efforts to evade detection. American *can't* detect Skiplagged's access of the AA.com website. It is only through discovery that American secured Skiplagged's admissions that it ███████████████ ████████████████ to book tickets via the AA.com website.

Finally, Skiplagged's supplemental brief in support of summary judgment attempts to confuse the issue of accessing American's website for the purpose of obtaining flight information, with the issue of accessing American's website ████████████████ for the purpose of booking tickets. American is not arguing that Skiplagged is obtaining flight data from American's website; Skiplagged has testified ███████████████████████████ [App'x 0236 (Skiplagged's 30(b)(6) Depo., 107:20–109:12); App'x 0144–145 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 2)]. While American is skeptical of this testimony because ████████████████████████████████████████ ██████████████████████████████████████████████ [App'x 0236–0238 (Skiplagged's 30(b)(6) Depo., 109:16–114:15)], where Skiplagged is getting flight data does not matter because Skiplagged admits ████████████████ accesses American's website to book tickets [App'x 0183 (Zaman Depo., 117:11–120-6); App'x 0218, 0228–229 (Skiplagged's 30(b)(6) Depo., 34:6–35:8; 77:13–78:5)].

## 2.    There is Ample Evidence Supporting American's Damages Resulting from Skiplagged's Breaches of Contract.

Skiplagged's argument that American is not damaged by its activities is created from whole cloth. First, Skiplagged's own document production in this case demonstrates customer after customer directing their anger at American for issues created by Skiplagged. [App'x 0801– 0802,

0805, 0809, 0811 (American customer complaints)]. ████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Accordingly, even for those tickets that are not hidden city tickets, these ██████████ demonstrate the substantial operational and goodwIll damage caused by Skiplagged's activities.

Second, to the extent Skiplagged uses its motion for summary judgment as a collateral attack on American's expert report on damages, the appropriate motion to challenge that report would be through a *Daubert* motion. Skiplagged ignores the fact that the parties are *still* engaged in a discovery dispute relating to the data American needs to more accurately assess its damages, and American has indicated that it will update its expert's report upon resolution of that dispute. [App'x 0627 (Fuller Report, ¶ 47); Dkt. Nos. 145, 168].

Third, to the extent Skiplagged disputes whether *every* purchaser of a hidden-city ticket would have purchased the correct ticket but for Skiplagged's breach of contract, that dispute goes to the weight or amount of American's damages. That argument does *not* lead to the conclusion that *none* of the customers who purchased hidden-city tickets would have purchased the correct ticket but for Skiplagged—which is what the Court would have to conclude in order to grant summary judgment. To the contrary, a ████████████████ customers lured to Skiplagged's website by their promises of cheaper tickets ultimately bought non-hidden city tickets. [App'x 0261 (Skiplagged's 30(b)(6) Depo., 206:10–207:8)]. Further, American's 30(b)(6) witness provided detailed testimony supporting ████████████████ that Skiplagged complains of. [App'x 0074 (American's 30(b)(6) Depo., 45:21–48:10)].

Fourth, Skiplagged's supplemental brief attempts to use the ongoing discovery dispute it created as both sword and shield. Skiplagged complains that American has not "analyzed" the

customers who purchased hidden city tickets through Skiplagged, but American does not yet have that information in a form it can analyze. [App'x 0072 (American's 30(b)(6) Depo., 39:7–15, 39:25–40:10)].[3]

Fifth, Skiplagged's supplemental brief also relies on a number of red herrings. Skiplagged complains that American has not analyzed what portion of *its* overall flight sales are hidden city flights, but that is not relevant to this case. *None* of the hidden city tickets sold by Skiplagged would exist but for Skiplagged's breach of the Use Agreement. Skiplagged also complains that American has not "removed[d] from its damages calculations customers that missed their second flight leg due to…weather or flight cancellations," but that is also irrelevant. *Every* hidden city ticket purchased through Skiplagged was purchased with the explicit intent of missing the connecting flight. 100% of those tickets deprived American of the opportunity to sell a ticket for the second "hidden" leg of the trip.

Sixth, Skiplagged argues that American would have receive the same "revenue" from a hidden city ticket regardless of whether the customer takes the last leg of the journey. But American's 30(b)(6) witness clearly explained that the proper calculation of damages would be to

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ [App'x 0072– 74 (American's 30(b)(6) Depo., 40:18–48:10)].

Finally, neither case cited by Skiplagged involved summary judgment being granted against a breach of contract claim based upon an alleged failure to prove damages (or on any other

---

[3] American has sought relief from the Court on this matter; American's Motion to Enforce the Court's May 1, 2024 Order is still pending before Magistrate Judge Hal R. Ray, Jr. [*See* Dkt. Nos. 145–46 (redacted motion and appendix) & 168–69 (sealed motion and appendix); *see also* Dkt. No. 118 (May 1, 2024 Order)].

ground, for that matter). In fact, the two cases cited by Skiplagged proceeded through trial.

**G.     There are Disputes of Material Fact which Preclude Summary Judgment on American's Tortious Interference Claim.[4]**

Skiplagged argues American's tortious interference claim fails on the first element—namely, an existing contract with which defendant interfered. Dkt. No. 151 at 12. This argument is also without merit.

Skiplagged argues that the customer does not enter into the Conditions of Carriage until she purchases an American ticket, and the "evidence proves" that Skiplagged's interactions with the customer regarding hidden-city travel occurs *only* "*before* the customer buys a flight"—i.e., before the contract existed. *See id.* at 12-13. This is a false and brazen misrepresentation of the evidence.

*After a customer purchases a hidden-city ticket* (i.e., after the formation of the Conditions of Carriage contract), Skiplagged sends the customer a confirmation email stating: ████████

████████████████████████████████████████████████████████

████████████████████████████████████ [App'x 0383, 0405, 0420 (Skiplagged confirmation email from Test Buys 2, 9 and 14); App'x 0814, 0816, 0818, 0820, 0822, 082 (████████████████████████████████████████████

████████)]. ████████████████████████ Skiplagged's webpage that specifically promotes prohibited hidden-city travel and that provides instructions on how to avoid getting caught by the airline— https://support.skiplagged.com/hc/en-us/articles/115003286687-What-is-Skiplagging-or-hidden-city-flying. [App'x 0830 (Skiplagged Website FAQ on "What is Skiplagging or 'hidden-city' flying?")]. ████████████████████████████

---

[4] As noted above, American is not pursuing summary judgment on this claim, and will dismiss this claim if the Court grants American summary judgment on its other counts. That said, Skiplagged is not entitled to summary judgment on this claim.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████

Moreover, a defendant cannot defeat a claim for tortious interference with an existing contract simply because "some (but not all) interfering conduct takes place before a contract has been finalized." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 127 (2d Cir. 2019) ("[A]t least where there allegedly is tortious interference *after* contract formation, the fact that there also was allegedly interfering conduct *before* the agreement was signed doesn't preclude . . . but-for causation."). This is exactly the case here.

Skiplagged's argument that American cannot prove causation or damages for its tortious interference claim is also unavailing. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 127 (2d Cir. 2019) (holding "but-for causation exists when some (but not all) interfering conduct takes place before a contract has been finalized" and the "interference [] started before the contract … was signed").

Regarding damages, Skiplagged simply repeats the same arguments it asserted regarding American's breach of contract damages; its argument fails for the same reasons discussed above. Further, the sole case cited by Skiplagged—*Roehre v. Conesys, Inc.*, 332 F. App'x 184, 186 (5th Cir. 2009)—involved a claim for tortious interference with prospective economic relations, not a claim for tortious interference with existing contracts.

## H.     Skiplagged's Infringing Use of American's Marks Does Not Constitute Fair Use.

Skiplagged's argument that its use of American's trademarks is "fair use" is baseless. Because an airline ticket is a contract of carriage, *only* an authorized agent of American can enter into these contracts with customers. An airline ticket is not a good which can be resold, so this is

not a situation where Skiplagged can simply "resell" a ticket and needs to be able to describe what it is selling. Tellingly, Skiplagged misdescribes tickets as "goods" throughout its brief, but it is undisputed that an airline ticket is *not* a good. [App'x 0832 (American's Conditions of Carriage stating that the airline provides a "service")]. And Skiplagged argues in its supplemental brief that "Skiplagged cannot identify AA flights without specifying they are AA flights," but this ignores the fact that *Skiplagged is not authorized by AA to offer flights to anyone, period.*

Further, Skiplagged's deceptive activities, including failing to tell customers that they are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ access American's website, and failing to inform customers of the *actual* terms and conditions of tickets, demonstrate Skiplagged is not making fair use of the American Marks but rather using the commercially to capitalize on their substantial goodwill. *Setai Hotel Acq., LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 1608891, at *3 (S.D. Fla. Apr. 28, 2017) ("The Defendants have manipulated search engines to send internet traffic to the Defendants' website instead of to The Setai Hotel's website. What is more, the Defendants then provide links to The Setai Hotel's actual website, creating an impression that the services are connected. This described use of the Setai Mark goes beyond fair use. See 15 U.S.C. § 1115(b)(4)."); *NY-NY Hotel & Casino, LLC v. Katzin*, No. 2:09-CV-02139-LDG, 2010 WL 4386497, at *3 (D. Nev. Oct. 27, 2010) ("Katzin's use of plaintiff's mark would not direct internet users to plaintiff's website to book hotel reservations with the plaintiff, but would instead direct the internet users to a webpage on which the internet users could reserve a room for plaintiff's hotel, or for another Las Vegas hotel, through Expedia. Katzin received a commission payment from Expedia for each hotel room that was booked through Expedia's hotel reservation service and was then used. Katzin's use of the plaintiff's mark in this context cannot be considered as bona fide noncommercial or fair use of the plaintiff's mark. Rather, Katzin intended to divert customers to a

web page other than the plaintiff's online location in order to profit from the plaintiff's goodwill.").

Still further, Skiplagged's attempt to portray itself as merely providing "information" ignores the facts. Skiplagged is a for-profit corporation, it refers to its fees as fees, █████████ ███████████████████████ and it has made █████████████████████ profits on its deceptive practices. [App'x 0854– 859 (Skiplagged Profit & Loss Statements 2018-2023)].

None of the fair use cases Skiplagged cited are relevant to the facts at issue here. In *Smack Apparel* the Court *rejected* a similar nominative fair use argument:

> Smack used [plaintiffs'] colors and indicia in more than a nominative sense. It did not incorporate the colors and other indicia to describe or compare its shirts with shirts licensed by the [plaintiffs], nor did it do so to tell the public what it had copied. Smack did incorporate the marks to identify the [plaintiffs] as the subject of the shirts, but it did so in a way that improperly suggested affiliation, sponsorship, or endorsement. . . . Such an attempt to capitalize on customer confusion is not a nominative fair use.

*Smack Apparel*, 550 F.3d at 489. In *Cairns v. Franklin Mint Co*., 292 F.3d 1139, 1154 (9th Cir. 2002), the defendant actually created a product, a likeness of Princess Diana, and had to reference Princess Diana in order to describe the product it created. Similarly, in *Scott Fetzer Co. v. H. of Vacuums Inc*., 381 F.3d 477, 484 (5th Cir. 2004), independent dealers simply advertised their offer to sell or repair Kirby vacuums.[5] Finally, *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir. 1992) involved claims against a newspaper for using New Kids' name in a poll.

Finally, Skiplagged's argument that this case "is more akin to comparative advertising cases and the key factor is whether Skiplagged's use infers some sponsorship, approval, or endorsement by AA" is without merit. Dkt. No. 151 at 17. Skiplagged is *not* a comparative advertising platform, and its unsupported claim that it merely provides "information" to customers

---

[5] American notes, once again, that an airline ticket is not a good which can be resold. It is a contract, and only an authorized agent of American can enter into that contract with customers on American's behalf.

is belied by the fact that the entire purpose of its website is to *sell tickets*. ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████. Additionally, while Skiplagged sometimes refers customers to third party websites, ████

████████████████████████████████████████████ [App'x 0250–

251, 0257 (Skiplagged's 30(b)(6) Depo., 165:11–166:10; 191:17–192:15); App'x 0226–227

(Gellert Depo., 68:20–70:2)]. Further, the survey conducted by Dr. Wind clearly demonstrates that

43% of respondents incorrectly believe Skiplagged is an authorized agent of American, 38% of

respondents incorrectly believe Skiplagged has access to special fares, and that 30% to 40% of

customers incorrectly believe Skiplagged is associated or affiliated with American. [App'x 0481–

482, 0484 (Wind Report, pp. 38, 39, 41)]. While American has many authorized travel agents,

Skiplagged is not, and has never been, one of them.

## I.     Skiplagged's Use of the American Marks Causes Confusion.

Skiplagged admits to using *exact* copies of the American Marks on its website to sell at

least 1.4 million trips on American and to generate millions of dollars in revenue for itself in the

way of service fees ████████. [App'x 0232 (Skiplagged's 30(b)(6) Depo., 91:25–93:15);

App'x 0168–169 (Zaman Depo., 60:14–62:10); App'x 0151 (Skiplagged's Third Amended

Objection and Response to American's Interrogatory No. 19)]. Skiplagged also admits it is not and

never has been American's agent nor licensee. *See* Skiplagged's Second Amended Answer and

Affirmative Defenses [Dkt. No. 144], ¶ 2. Thus, Skiplagged has admitted to *prima facie* likelihood

of confusion. *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (affirming

district court's decision not to analyze the likelihood of confusion factors because the marks were

26

an exact match).

Even if the Court were to review each digit of confusion[6] out of an abundance of caution, they all weigh heavily in favor of American, on the undisputed facts. The American Marks are strong, well-known marks. [App'x 0882 (███████████████)]. American has been using AMERICAN AIRLINES and AMERICAN since the 1930s and has been using the Flight Symbol for over a decade. [App'x 0978–1132 (Trademark File Wrappers for Registration for No. 4449061 (Dec. 10, 2013), Trademark File Wrapper Registration for No. 4939082 (Apr. 19, 2016), Trademark File Wrapper Registration for No. 5288639 (Sept. 19, 2017), Trademark File Wrapper Registration for No. 5279167 (Sept. 5, 2017), Trademark File Wrapper Registration for No. 5559145 (Sept. 11, 2018); App'x 1134 (Flight Symbol Copyright Registration)]. American flies hundreds of millions of passengers, and sells tens of billions in tickets every year. [App'x 1139–1140 (American 2023 Form 10-K)]. Skiplagged is using exact copies of the American Marks and is selling identical services. [App'x 0359–365, 0367–369, 0372–376, 0382, 0387, 0391–392, 0395, 0397, 0404, 0409–410, 0413, 0415, 0417–419 (American IP used by Skiplagged from Test Buy 2 and 14)]. Both companies target the exact same customers and advertise in the exact same media. [App'x 1142 (███████████████████████)]. Skiplagged's intent is unabashedly to persuade customers that it is a legitimate source of tickets for American flights. [App'x 0828, 0830 (Skiplagged website FAQ conveying hidden-city ticket as legitimate and "perfectly legal"); App'x 0261, 0262 (Skiplagged's 30(b)(6) Depo., 208:14–23, 210:4–21, 347:3–349:19); App'x 0862– 0865 (███████████████████████)

---

[6] These include "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

████████████████ )]. Customers generally do not exercise enough care to determine whether Skiplagged is American's authorized agent, as demonstrated by Skiplagged's substantial sales, as well as numerous complaints submitted to both Skiplagged and American. [App'x 1151, 1153, 1158, 1162 (customer complaints to Skiplagged showing customer confusion); App'x 1168, 1171, 1173 (customer complaints to American showing customer confusion)].

Finally, and most importantly, it is not necessary in this case to examine whether confusion is *likely*, because there is *actual* confusion in the marketplace. The record is replete with examples of both customers ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ ▌████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ )]. The scientific study conducted by American's expert, Professor Jerry Wind, further confirms that customers mistakenly believe that Skiplagged has some sort of association with American. [App'x 0485 (Wind Report, Exhibit 6a, p. 42)]. Perhaps most strikingly, Professor Wind's study showed that roughly the same percentage of survey participants believed Skiplagged was associated with American as did those who believed that Expedia is associated with American—the latter ***actually being*** a longstanding agent of American. [*Id.*]. In short, all eight digits of confusion conclusively weigh in American's favor.

Skiplagged's entire argument rests on the flawed premise that it cannot infringe if the flights it is booking are American's flights. First, trademark infringement is not limited solely to

---

[7] The latter would be something with which an actual agent of American would be able to assist. The fact that customers contact Skiplagged with such requests is proof that customers mistakenly believe Skiplagged is American's agent.

likelihood of confusion as to source, but also includes likelihood of confusion as to affiliation, connection, association or sponsorship. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 543 (5th Cir. 1998). Skiplagged's own evidence shows that its customers mistakenly believe it is American's agent. ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ [App'x 1206 (Skiplagged customer complaint)]. Skiplagged produced numerous other customer complaints in which ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████. [App'x 1168, 1171, 1173 (American customer complaints showing confusion); App'x 1188, 1190, 1192, 1197, 1199, 1208, 1211, 1212, (Skiplagged customer complaints)]. Second, Skiplagged routinely books hidden-city flights that violate American's Conditions of Carriage, which American does not authorize *anyone*—passenger, travel agent or otherwise—to do. Thus, Skiplagged is not selling the same services that American would sell.[8]

**J.      Skiplagged's Lanham Act Violations Have Caused American Damages.**

Skiplagged's trademark infringement has caused American demonstrable, quantifiable harm. Skiplagged is not an authorized agent of American, yet it has deceived customers into believing it is, and in the process, has generated ████████████████████████████

█████████████████████. [App'x 0146 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 5); App'x 0619–0624 (Fuller Report, ¶¶ 25–37).

---

[8] American is not moving for summary judgment on its claim that Skiplagged has breached American's Conditions of Carriage (part of Count I), or tortiously interfered with American's Conditions of Carriage contract (Count II). However, in the event the Court grants Judgment in favor of American, American intends to voluntarily dismiss these claims (disposing of all remaining claims in the lawsuit). That said, there remains a dispute of material fact on whether Skiplagged tortiously interferes with American's Conditions of Carriage.

Because Skiplagged is not an authorized agent of American, American is entitled to recover Skiplagged's profits stemming from the infringement. 35 U.S.C. 1117(a). "In assessing profits, American is required to prove Skiplagged's *sales only*; Skiplagged must prove all elements of cost or deduction claimed. *Id.* Although Skiplagged has attempted to obfuscate its sales of American flights, American has nevertheless been able to establish that Skiplagged's service fee revenue from American flights ██████████████. [App'x 0624 (Fuller Report, ¶ 37)]. Further, "[i]n assessing profits, the plaintiff shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a). American's damages analysis presents Skiplagged's profits as the basis for damages, and American is not required to prove anything further.

In addition to Skiplagged's ill-gotten profits from unauthorized service fees, the hidden city flights Skiplagged has booked—all of which violate American's Conditions of Carriage—have cost American in terms of the lost revenue American would have obtained through a normal booking to the passenger's actual intended destination. American has established that its lost revenue from Skiplagged's hidden city bookings ████████████. [App'x 0624–625 (Fuller Report, ¶ 40)].

Finally, the record is replete with examples of customer complaints. ████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ In all

of these examples, the negative customer experiences caused by Skiplagged's deception damaged the American brand.

In short, not only has American established that Skiplagged's infringement has caused American damages, it has established that those damages are substantial.

## K.      Skiplagged Infringes the Flight Symbol Copyright.

### 1.      American's Ownership of its Copyright is Unequivocal.

American has plainly demonstrated its ownership of the Flight Symbol and that fact is not genuinely in dispute. Skiplagged argues that there is not enough evidence that (1) Hypermedia (the advertising firm American retained to create the Flight Symbol) was the initial "author" of the copyrighted work, or (2) that Hypermedia assigned the copyright to AA. Dkt. No. 151 at 19. But a certificate of copyright registration—which American has produced—"constitutes *prima facie* evidence of copyright ownership." 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); *Spectrum Creations, L.P. v. Carolyn Kinder Intern., LLC*, No. SA-05-CV-750-XR, 2008 WL 416264, at *87 (W.D. Tex. Feb. 13, 2008).

"[S]ubmission of a certificate of registration by the copyright holder shifts to the alleged infringer the burden of proving invalidity," and "to rebut the presumption of validity, an alleged infringer must offer some evidence to dispute the [plaintiff]'s prima facie case of infringement." *Id.* Having produced the copyright registration, American has created a rebuttable presumption of ownership, and Skiplagged has offered no evidence whatsoever to genuinely dispute, much less

refute such ownership. The Court's analysis can stop there.

Even if Skiplagged had come forward with *any* evidence showing American does not own the Flight Symbol copyright—which it has not—American has produced its agreement with Hypermedia, which provides that ███████████████████████████████████████████ ████████████████████████████ [App'x 1222 (Hypermedia Agreement, § 6.4(b))]. There simply is no genuine dispute that American owns the Flight Symbol

### 2.    Skiplagged Copies American's Copyrighted Flight Symbol.

Skiplagged argues that it purportedly cannot compare American's Flight Symbol to the obvious copy of the Flight Symbol on its own website. As a threshold matter, that comparison is unnecessary because Skiplagged *admits* that it took an exact copy of American's Flight Symbol from SkyScanner—an authorized limited[9] licensee of American. [App'x 0151 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19); App'x 0168 (Zaman Depo., 60:14-25)]. Further, there is no genuine dispute over what the Flight Symbol looks like. American displays the Flight Symbol on its own website, complete with copyright notice, and has done so for a decade. [App'x 986-88, 990-91, 999-1004, 1012-14 (Trademark File Wrappers)]. Every instance of the Flight Symbol on American's website, in its emails to customers, in its advertising, and on its planes is the same.

To the extent Skiplagged argues that it needs to see a certified copy of the copyright office deposit, certified copies can be obtained from the copyright office by any member of the public. Skiplagged did not *ask* for a certified copy of the deposit at any point during discovery; it merely asked for the documents in American's possession, custody or control, which American produced

---

[9]  Skyscanner ████████████████████████████████████████████████. [App'x 1284 (Skyscanner Fare, Schedule and Inventory Access and Use Agreement, Section 7)].

(unsurprisingly, American does not retain correspondence from ten years ago).

Nor is there any reasonable dispute about what the deposit at the Copyright Office is. American's litigation with the copyright office over the Flight Symbol is well-known and extensively documented in the press and in official records on the Copyright Office website. (See, e.g., https://www.copyright.gov/rulings-filings/review-board/docs/american-airlines-flight-symbol.pdf; https://thepointsguy.com/news/american-airlines-is-suing-to-get-its-logo-copyrighted/; https://www.chicagotribune.com/2018/10/17/us-copyright-office-thinks-the-american-airlines-logo-is-so-blah-it-refuses-to-copyright-it/; https://www.smh.com.au/traveller/inspiration/american-airlines-sues-united-states-copyright-office-over-refusal-to-copyright-logo-20181017-h16qes.html). All of these, especially the Copyright Office's own published decision granting registration for the Flight Symbol, make clear that the scope of the copyright is the identical Flight Symbol that American displays on its website and that Skiplagged serves copies of on a daily basis. If Skiplagged ever had a genuine concern about the deposit, it could have asked American to obtain a certified copy from the Copyright Office, or it could have sought a certified copy itself.

Finally, to the extent Skiplagged relies on *King v. Ames*, 179 F.3d 370, 375–376 (5th Cir. 1999), it misstates the facts and ruling in that case. In *King*, the daughter of blues legend Freddie King brought suit for copyright infringement, and both King and Ames claimed to possess the original master recordings (made in the 1970's) at issue. *King*, 179 F.3d at 372–73. The court ruled in King's favor on summary judgment, but at trial, King never presented *any* copy of the recordings she claimed to possess to compare against the accused works. *King v. Ames*, No. 3:95-cv-03180-G, 1997 WL 327019, at *6 (N.D. Tex. 1997) ("Because the jury did not have any competent evidence before it with which to compare King's copyrighted recordings and the products of

33

Collectibles and Ames, a finding of probative similarity cannot be sustained."). That is vastly different from this case, where there are *countless* examples of American's Flight Symbol in the record to use as a side-by-side comparison which, again, is a pointless exercise since Skiplagged has admitted to making exact copies of the Flight Symbol. Accordingly, unlike the sole case relied upon by Skiplagged and there are ample examples of the copyrighted Flight Symbol to permit a trier of fact to determine that Skiplagged's copy is, in fact, a copy.

> **3.    Skiplagged's Infringing Use of American's Copyrights Does Not Constitute Fair Use.**

For the reasons set forth in American's own motion for summary judgment, Skiplagged's unauthorized copying of American's Flight Symbol does not constitute fair use. Skiplagged is not offering "criticism, comment, news reporting, teaching, scholarship, or research." 17 U.S.C. § 107. Skiplagged's use is strictly for commercial purposes—more specifically, to drive its own profits— and thus this is not a case where there are any concerns with conflicts between copyright and free speech. [App'x 0202–204 (Zaman Depo., 194:19–21, 197:11–20, 200:11–20; 203:3–13); App'x 1222 ███████████████████████████████████████████████████████████ ███████████████████); App'x 1216, 1218–1220 (customer complaints regarding ██████ ██); App'x 0854–859 (Skiplagged's Profit and Loss Statements)]. Skiplagged's attempt to "white knight" itself as a champion of customers is simply an attempt to spin its years of profits at the expense of both customers and American.

It is undisputed that Skiplagged copied the entirety of the Flight Symbol. [App'x 0232 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); App'x 0168 (Zaman Depo., 60:14–25);  App'x 0151 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)].

Finally, Skiplagged's use of the Flight Symbol diminishes its value. The only entities permitted to use the Flight Symbol are American and its authorized agents and licensees.

Skiplagged could have, but has not, gone through the process of seeking accreditation as a travel agent or a direct licensee of American. Instead, it misappropriates the Flight Symbol to draw in customers interested in American flights and then misleads them by offering a booking experience that mimics that of bona fide travel agents. [App'x 0828 (Skiplagged ebsite FAQ, "How to Book a Flight on Skiplagged")]. Permitting Skiplagged and other third parties to freely use the Flight Symbol for their own commercial gain would destroy American's licensing market for the Flight Symbol. Skiplagged's use of the Flight Symbol is precisely the kind of use copyright laws were created to prevent. The fourth factor overwhelmingly favors American.

Accordingly, the Court should deny summary judgment for Skiplagged on its copyright fair use defense.

### 4.     Skiplagged's Arguments on Copyright Damages Lack Merit.

In its supplemental brief, submitted just days before this response is due, Skiplagged argues for the first time that American cannot prove damages on its copyright claims. But as with damages for trademark infringement, American need only prove the Defendants' profits. 17 U.S.C. § 504(b). Further, American may elect statutory damages in connection with its copyright claim. Statutory damages are authorized by 17 U.S.C. § 504, which states:

> …the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action…

Skiplagged offers no argument or authority as to why American is not entitled to seek statutory damages. American clearly set forth both measures of damages in its expert report on damages. [App'x 0626 (Fuller Report, ¶¶ 42-45)].

### L.     American is Entitled to Recover Its Attorneys' Fees for Its Breach of Contract Claim.

Skiplagged argues "AA cannot recover its attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001 because it failed to provide notice of its claims to Skiplagged prior to filing suit."

Dkt. No. 151 at 24. Skiplagged misunderstands the law in Texas for the recovery of attorneys' fees. Chapter 38 contains a presentment requirement, not a pre-suit notice requirement.

Tex. Civ. Prac. & Rem. Code § 38.001 provides for the recovery of attorneys' fees by a party who prevails on a breach of contract claim. § 38.002 requires that "the claimant must present the claim to the opposing party" and "payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." "The purpose of the presentment requirement is to allow the party against whom the claim is asserted an opportunity to pay it or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney's fees." *Svoboda v. Thai*, No. 01-17-00584-CV, 2019 WL 1442434, at *3 (Tex. App.—Hous. [1st Dist.] Apr. 2, 2019, no pet.).

Presentment simply means "a demand or request for payment or performance, whether written or oral," and "[n]o particular form of presentment is required." *Id.* And "a presentment of a claim is timely even if made after suit is filed, if it is made at least 30 days before trial." *McAdams v. McAdams*, No. 07-01-0343-CV, 2002 WL 342639, at *8 (Tex. App.—Amarillo Mar. 1, 2002, no pet.); *see also K.C. Roofing Co., Inc. v. Abundis*, 940 S.W.2d 375, 379 (Tex. App.-San Antonio 1997, writ denied) ("The only requirement is that presentment of the claim be made at least thirty days before the trial, even if made after the suit is filed."). Most importantly, as is well known among Texas practitioners, "if the pleading gives 'fair notice' that the party is seeking to recover attorney's fees under chapter 38, it is sufficient." *Stevens v. Avent*, No. 07-20-00265-CV, 2022 WL 393576, at *6 (Tex. App.—Amarillo Feb. 9, 2022, no pet.); *Svoboda*, 2019 WL 1442434, at *3 (same).

Thus, Texas courts routinely hold that where, as here, the plaintiff's pleading provides notice that it is seeking attorneys' fees under Chapter 38, that is sufficient to satisfy the presentment

36

requirement. *See K.C. Roofing*, 940 S.W.2d at 379 ("Attorney's fees were requested and pleaded by Abundis several months before the trial. Thus, they were timely presented."); *Birdwell v. Texins Credit Union*, 843 S.W.2d 246, 251 (Tex. App.—Texarkana 1992, no writ) ("[S]ince more than thirty days elapsed from the time of filing suit until the judgment, the requirements under Article 38.002 have been met."); *Svoboda*, 2019 WL 1442434, at *3 (same).

Here, American's First Amended Complaint pleads a breach of contract claim and expressly seeks its attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001. [*See* Dkt. No. 8, Count I, ¶ 130].

Skiplagged's other argument, that the AA Use Agreement does not include an attorneys' fees provision, is an inapposite, as American is not seeking its attorneys' fees based on the terms of that agreement.

**M.    American is Entitled to Permanent Injunctive Relief.**

Skiplagged's motion for summary judgment on American's claim for injunctive relief suggests that American cannot succeed on the merits, and therefore is not entitled to relief. That argument is addressed throughout this brief and in American's own motion for summary judgment.

Skiplagged's second argument is that American cannot show irreparable injury. In making this argument, Skiplagged focuses solely on trademark infringement cases. Tellingly, *in every one of the Lanham Act cases cited by Skiplagged for this argument*, the courts held that the evidence supported the entry of a permanent injunction against the defendant. *See Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc*., No. 4:19-CV-358, 2022 WL 3008501, at *2-4 (E.D. Tex. July 28, 2022), *motion for relief from judgment denied*, 668 F. Supp. 3d 614 (E.D. Tex. 2023); *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 542-43 (S.D. Tex. 2013); *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765-66 (N.D. Tex. 2013). The same outcome is necessary here.

First, as discussed above American has shown not only a likelihood of confusion, but *actual* confusion sufficient to warrant summary judgment. As discussed above, in addition to winning on every one of the digits of confusion, American has submitted survey evidence demonstrating substantial confusion, as well as numerous customer complaints ██████████

████. This powerful evidence alone is sufficient to also demonstrate irreparable injury. *See Gibson*, 2022 WL 3008501, at *2-4; *Choice Hotels*, 940 F. Supp. 2d at 542-43; *S & H Indus.*, 932 F. Supp. 2d at 765-66; *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009). "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Choice Hotels,* 940 F. Supp. 2d at 542.

Second, contrary to Skiplagged's conclusory assertion that "AA has never lost control over the quality of those goods and services," like *Choice Hotels*, American's loss of control over its brand is not merely hypothetical, but has been demonstrated through customer complaints. *Choice Hotels*, 940 F. Supp. 2d at 542.

## V.     CONCLUSION

For all the foregoing reasons, the Court should deny Skiplagged's Motion for Summary Judgment [Dkt. No. 150] in its entirety.

Dated: July 22, 2024

Respectfully submitted,

/s/ Dee J. Kelly, Jr.
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Lars L. Berg
State Bar No. 00787072
lars.berg@kellyhart.com
J. Austin Franklin
State Bar No. 24075853
austin.franklin@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

/s/ Dee J. Kelly, Jr.
Dee J. Kelly, Jr.