UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**AMERICAN AIRLINES, INC.,**

   Plaintiff,

v.                                                            No. 4:23-cv-0860-P

**SKIPLAGGED, INC.,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant Skiplagged's Motion for Summary Judgment (ECF No. 150) and Plaintiff American Airlines' Cross-Motion for Partial Summary Judgment. ECF No. 154. Having considered the Motions, briefs, evidence of record, and applicable legal authorities, the Court concludes both Motions should be and hereby are **GRANTED in part** and **DENIED in part** as set forth below.

## BACKGROUND

Skiplagged is a national, internet-based travel logistics company. American doesn't really need an introduction.

This suit arises out of Skiplagged's somewhat dubious business model and practices. In short, Skiplagged offers customers discounted airline tickets through a loophole that the industry calls "hidden-city ticketing." Simply put, it's often less expensive to buy a ticket to a city you don't intend to visit with a layover in your actual intended destination (for example, a ticket from Dallas to New York with a layover in Charlotte may be cheaper than a ticket straight from Dallas to Charlotte). So, the passenger purchases a ticket to a certain destination, abandons their route when they arrive at the layover, and considers it a great deal.

Skiplagged peddles these "hidden-city" tickets, and its platform facilitates the process by booking directly on the websites of major

airlines like American while disguised as the underlying consumer. Once a customer books a ticket advertised by Skiplagged, things are up to them and American. They receive an American confirmation number and are redirected to American for any further customer service. Skiplagged has made a killing in recent years by utilizing this Trojan Horse model, popularizing the practice now dubbed "skiplagging" in common parlance.

For obvious reasons, airlines like American don't like this. And Skiplagged knows it. So Skiplagged coaches its customers on what to say when a suspicious gate agent inquires about their travel plans, for example, by providing packing tips like "only bring a carry-on bag" (since checked luggage arrives at the final destination listed on the ticket). If a passenger is forced to check their bags, Skiplagged provides tips for what to tell the airline to insist their bag be removed from the plane. Seems a little shady, right?

The airlines certainly think so, as Skiplagged has faced a slew of lawsuits related to its business model since 2014. Following suit behind other industry giants United and Southwest, American sued Skiplagged in August 2023 for trademark and copyright infringement, breach of contract, tortious interference with contract, and unfair competition. After multiple discovery disputes, Skiplagged moved for summary judgment on July 1, 2024. American filed a cross-motion for partial summary judgment as to most claims, and reserved the issues of damages, fees, and injunctive relief for trial.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect the case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *See First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence of record, but it need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). And the Court need not mine the record to find evidence to support the non-movant; the burden falls on the movant to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

### I. Skiplagged is entitled to summary judgment on American's claim for breach of contract.

Both Parties seek summary judgment on American's claim that Skiplagged breached the airline's user agreement. *See* ECF Nos. 151 at 12; 172 at 33. Skiplagged wins the day.

Under Texas law, a claim for breach of contract requires: (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages sustained by the plaintiff because of the defendant's breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 258 (Tex. App.—Fort Worth 2018, no pet.). "[A] breach of contract claim accrues when the contract is breached." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). The statute of limitations on such an action is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(1).

American argues that its claim is timely because Skiplagged breaches the agreement every time a customer uses its platform to buy a ticket. *See* ECF No. 172 at 43. Skiplagged says it isn't, because the website's user agreement is not the type of contract that can suffer a serial breach and reset the limitations period. *See* ECF No. 195 at 32–33. Skiplagged is right.

Generally, a contract is not breached until a wrongful act occurs. *Jones v. Blume*, 196 S.W.3d 440, 446 (Tex. App.–Dallas 2006, pet.

3

denied). And the claim "accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Id.* (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)). But Texas recognizes certain instances where discreet independent breaches reset the limitations period. *See Sheet Pile, LLC v. Plymouth Tube Co. USA*, 98 F.4th 161, 168 (5th Cir. 2024) (citing *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 447 (Tex. App.–Houston [14th Dist.] 2016, no pet.)) (collecting examples). Those circumstances involve multiple breaches under one contract, like multiple failures to pay under a lease agreement or missed periodic payments under an installment contract. *Id.*

This case is different. American's user agreement is a contract every user enters any and every time they use American's website to engage in a discreet transaction. *See* ECF No. 174-4 at 274 ("American Airlines provides the Site solely to permit you to determine the availability of goods and services offered . . . and to make legitimate reservations or otherwise transact business with American Airlines, and for no other purposes."). So every time a user enters the website, a new user agreement is effectively executed. *See id.* at 273 ("American Airlines reserves the right to change this Agreement . . . therefore you should periodically visit this page when you use the Site to review the then current Agreement that binds you."). Thus, one entry into the site does not create a periodic obligation on the user such that multiple breaches (illegitimate reservations, for example) would violate the *same* agreement. *See id.* A user who breaches the agreement by making multiple illegitimate reservations would therefore breach multiple contracts, they would not breach one contract multiple times.

Accordingly, this is not an agreement that lends itself to a "serial breach" liability theory. *See generally Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593 & n. 45 (5th Cir. 2017) (distinguishing serial breach arguments and noting the relevant breach "occurred once, at origination," despite colorable arguments that subsequent breaches had occurred). So, the statute of limitations for American's claim began to run when it first gained knowledge of Skiplagged's conduct. *Jones*, 196

S.W.3d at 446. And the summary judgment record shows American's education regarding Skiplagged came well beyond the applicable limitations period.

The evidence of record clearly indicates that American knew of the Skiplagged "problem" as early as 2016. *See* ECF No. 171 at 43 (email stating American had been "dealing with this for over a year" to the question: "Do any of us manage Skiplagged?"); *see also id.* ("Frequently encountering customers booking tickets on a 3rd party website called Skiplagged, which looks for the cheapest route possible but will include an international ending destination . . . even though customer isn't traveling [sic] internatio[nal]."). Indeed, by 2019, American was brainstorming new policies to deter hidden-city passengers, like charging extra fees to deliver checked bags to the "hidden city." *See* ECF No. 174-6 at 190. And those are just the high-level internal records: summary judgment evidence shows American's rank-and-file employees were reporting problematic "skiplagging" well before the higher-ups took action. *See id.*

Thus, American had the requisite knowledge of Skiplagged's wrongful conduct by at least 2016. So, they had four years from that point to figure out whether Skiplagged's conduct constituted a breach of contract. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 16.004(a)(4). Yet they didn't assert their breach claim until filing this lawsuit in 2023. *See* ECF No. 1. Accordingly, although the Court is certainly disturbed by Skiplagged's questionable business practices, the statute of limitations has run, so the Court must **GRANT** Skiplagged's Motion (ECF No. 150) and **DENY** American's Motion (ECF No. 154) on this claim. *See Plymouth Tube Co.*, 98 F.4th at 168–69. For the same reasons, the Court **GRANTS** Skiplagged's Motion for American's claim for breach of its conditions of carriage (another breach-of-contract claim) and American's claim for tortious interference with the same. *See Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 776 (Tex. App.–Dallas 2005, pet. denied) (noting the statute of limitations for tortious interference with contract is two years).

5

## II. American is entitled to summary judgment on its claim for copyright infringement.

Unlike breach of contract, a single act of copyright infringement can reset the three-year limitations period for bringing a claim. *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 271 (5th Cir. 2020). Because American has furnished evidence that Skiplagged was using American's flight symbol on its platform as late as August 2023, *see* ECF No. 174-2, American's claim for copyright infringement is timely. *See id.*

To establish a claim for copyright infringement, a plaintiff must show: (1) they owned a valid copyright, (2) the defendant copied the plaintiff's work, and (3) a substantial similarity between the copyrighted work and the copied work. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). American says it's entitled to summary judgment because Skiplagged copied American's flight symbol on its website and used the symbol for commercial purposes. ECF No. 172 at 31. Skiplagged disagrees, arguing that (1) American doesn't own the copyright to the flight symbol; (2) American cannot prove Skiplagged copied the symbol; and (3) in any event, Skiplagged is entitled to the affirmative defense of fair use. ECF No. 170 at 24–27. American wins.

*First*, "a certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *see also* 17 U.S.C. § 410(c). True, as Skiplagged notes, a certificate only creates a rebuttal presumption, and is not dispositive a priori. *See Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 49 (5th Cir. 1995). But the evidence of record here more than suffices for the Court to conclude American owns the copyright to its own flight symbol. *See* ECF No. 174-4 at 7–8.

*Second*, the Court concludes that Skiplagged copied American's flight symbol because the symbol on its website is identical. *See Batiste v. Lewis*, 976 F.3d 493, 503–05 (5th Cir. 2020) (holding that a court may find that a defendant factually copied a plaintiff's work based on a combination of access and substantial similarity between the two).

6

Skiplagged makes much clamor over American's failure to produce the official copyright deposit, which they say prohibits the Court from assessing the similarity between the flight symbol and the symbol on Skiplagged's website. *See* ECF No. 195 at 27–28; *King v. Ames*, 179 F.3d 370, 375–76 (5th Cir. 1999). But the Court doesn't need it. *See* FED. R. EVID. 201(b)(2) (the Court may take judicial notice of adjudicative facts not subject to reasonable dispute because they can be readily determined from a source whose accuracy cannot be questioned). Because American's flight symbol is ubiquitous and is an adjudicative fact, the Court finds that American's copyright registration, ECF No. 174-4 at 7–8, suffices—particularly when coupled with other evidence in the summary judgment record. For instance, the Copyright Office documents cited in American's response, *see* ECF No. 196 at 39, portray an identical, stylized image by the same title.

The Court understands that sometimes you have to make the best argument you can, so it does not fault Skiplagged for this argument. Nevertheless, Skiplagged's counsel had to know this argument was a long shot, with about as much likelihood of success as challenging Nike's swoosh or Coca Cola's cursive. Because the Certificate describes the flight symbol, and because the flight symbol is known beyond reasonable dispute, the Court does not hesitate to conclude the images used throughout American's brief are in fact its flight symbol. *See MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) (citing FED. R. EVID. 201(b)). Accordingly, the Court can compare the flight symbol cited in American's briefs to the symbol used on Skiplagged's website. *See King*, 179 F.3d at 375–76. And to the surprise of nobody, the images are exactly the same—as Skiplagged purchased *American's* own tickets from *American's* own website.

Having found no genuine dispute exists regarding the essential elements of American's claim, the Court now turns to Skiplagged's asserted defense. Simply put, Skiplagged says "[American's] infringement claim is barred by the defense of fair use." ECF No. 151 at 26. Although "fair use" defies easy definition, "a frequently quoted definition of fair use is 'a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner

7

without his consent, notwithstanding the monopoly granted to the owner (by the copyright).'" *Triangle Publ'ns, Inc. v. Knight-Rider Newspapers, Inc.*, 626 F.2d 1171, 1174 (5th Cir. 1980) (quoting *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966)). Afterall, as Skiplagged sees things, American still profited from the relevant ticket sales, Skiplagged just made a quick buck in the process. *See* ECF No. 151 at 28. The Court is unsure which is more impressive: the intuitive appeal of Skiplagged's argument or the charlatan's logic behind it. In any event, the argument misses the mark.

While Skiplagged extensively briefs factors traditionally associated with the fair-use analysis, *see id.* at 26–28, the Court need not progress its analysis that far. As noted in American's response briefing, "[b]ecause an airline ticket is a contract of carriage, *only* an authorized agent of American can enter into these contracts with customers." ECF No. 187 at 29. And "*Skiplagged is not authorized by AA to offer flights to anyone, period.*" *Id.* at 30. Moreover, despite Skiplagged's PR campaign to the contrary, the Court disagrees that Skiplagged is effectively a "comparative advertising enterprise" that merely transacts in "information" regarding American's flight schedules. *See* ECF No. 151 at 28. The list of comparable cases in American's briefing obviates any need for further analysis on this point: it is patently *not* fair use to resale another entity's tickets, while brandishing *their* logo and directing consumers to *their* information. *See* ECF No. 187 at 30–31.

Finally, Skiplagged leans on the fact that American benefited from sales transactions despite Skiplagged's use of the copyrighted mark. *See* ECF No. 151 at 28. As such, "there was no palming off or confusion of the goods." *Id.* Like its other arguments, this contention fails to sway the summary-judgment analysis. Skiplagged's primary appeal to consumers lies in the cheaper airfare obtainable via the platform's transactional hat-trick. Put differently, Skiplagged's primary appeal to consumers is that, *through Skiplagged*, they can avoid paying American more. Courts have routinely rejected a fair-use defense under similar circumstances, "[e]ven though the use to which [the infringer] put [the copyrighted] works is not harmful per se." *Veeck v. S. Bldg. Code Congress Intern., Inc.*, 241 F.3d 398, 410 (5th Cir. 2001). The relevant

8

inquiry is whether the infringement would "severely undermine" the commercial value of the infringed property. *Id.* And it is beyond dispute that Skiplagged significantly undermined American's profitability—even if American still profited and consumers were more the merrier.

Having concluded that American establishes its claim for copyright infringement and that Skiplagged's use was not fair, the Court **DENIES** Skiplagged's Motion (ECF No. 150) for this claim and **GRANTS** American's Motion. ECF No. 154.

### III. Summary judgment is improper on American's claims for trademark infringement and unfair competition.

Turning next to American's claim for trademark infringement, a plaintiff asserting infringement under the Lanham Act must show (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark. *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018).

The main fact issue for this claim is whether Skiplagged is entitled to raise the laches defense. *See* ECF No. 195 at 16. American says the laches defense is unavailable because Skiplagged has intentionally infringed their trademark, giving Skiplagged unclean hands. ECF No. 196 at 21–22; *see generally Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) ("A laches defense cannot be asserted by a party with unclean hands because it is equitable.") (citation omitted). In response, the Parties brief diverging precedents regarding the applicability of laches to legal as well as equitable claims. *See, e.g.*, ECF No. 182 at 41–42. In any event, the Court need not address these wrinkles because fact issues preclude summary judgment vis-à-vis the laches defense.

To successfully assert laches, a defendant must show (1) the plaintiff delayed in asserting its trademark rights, (2) the plaintiff had no excuse for the delay, and (3) the defendant relayed on plaintiff's delay and would be prejudiced by untimely enforcement of the relevant rights. *Rolex Watch USA, Inc. v. Beckertime, LLC*, 96 F.4th 715, 723 (5th Cir. 2024). In the Fifth Circuit, undue prejudice exists where a defendant relied on a plaintiff's non-enforcement when making significant

9

business decisions or otherwise expanding its brand. *Pennzoil-Quaker State Co. v. Miller Oil & Gas Ops.*, 779 F.3d 290, 295, (5th Cir. 2015).

Skiplagged asserts laches for the same reason the Court granted it judgment on American's breach of contract and tortious interference claims. *See* ECF No. 170 at 14. Namely, that American knew about Skiplagged's business conduct as early as 2016 and has no excuse for its delay in filing suit. *Id.* American responds that it delayed bringing suit because it initially didn't "understand the scope or specific mechanisms of Skiplagged's infringement, and because it was looking for other, non-litigious ways to address Skiplagged's infringing activities." ECF No. 196 at 21. American says Skiplagged's litigation history demonstrates that it's infringing conduct was intentional, and that it is unreasonable to think American would unreasonably delay litigation because other, authorized licensees of American were consistently objecting to Skiplagged's conduct. *Id.*

For all the Parties' briefing on the applicability of laches, the briefs only succeed in highlighting controlling questions of law that preclude summary judgment. Summary judgment is proper only where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Here, there are genuine factual disputes regarding, at minimum, Skiplagged's defense (namely, the excusability of American's delay and the alleged prejudice to Skiplagged), as well as the intentionality of its infringing conduct. *See Abraham*, 708 F.3d at 624–26. And even before that, there's a preliminary issue regarding the *timing* of Skiplagged's allegedly unclean hands. *See Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985) ("The critical issue is whether [the infringer] was an intentional infringer and therefore lacked the clean hands necessary to assert . . . laches . . . To foreclose the laches [] defense[], the plaintiff must offer something more than mere objective evidence to demonstrate that the defendant employed the allegedly infringing mark with the wrongful intent of capitalizing on its goodwill."). The order matters: if Skiplagged's hands were unclean, they had to be unclean *at the time of the alleged infringement*. Otherwise, if laches can ultimately be asserted, the defense may provide a safe harbor against Lanham Act

10

liability. As these issues are best reserved for the jury as trier of fact, the Court **DENIES** both Parties' Motions with respect to American's trademark infringement claim.

## CONCLUSION

Abraham Lincoln observed "[w]hat kills a skunk is the publicity it gives itself." GREAT QUOTES FROM GREAT LEADERS 21 (compiled by Peggy Anderson 1990). Here, American got wind of Skiplagged's stinky business practices, but it waited a little too long to extinguish the stench via certain claims. Fortunately for American, those are not the only tools at its disposal.

As explained herein, the Court **GRANTS** Skiplagged's Motion for Summary Judgment (ECF No. 150) **only** as to American's claims for breach of contract, breach of its conditions of carriage, and tortious interference with said conditions of carriage. In addition, the Court **GRANTS** American's Cross-Motion for Partial Summary Judgment (ECF No. 154) **only** as to its claim for copyright infringement. The Court **DENIES** both Motions in all other respects.

**SO ORDERED** on this **31st day** of **July 2024.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE