IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF GARY L. GUTZLER, MOTION TO STRIKE LATE-PRODUCED EVIDENCE RELIED UPON BY GUTZLER, AND BRIEF IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND .............................................................................................. 2

III.    LEGAL STANDARD ...................................................................................... 4

IV.     ARGUMENT ................................................................................................... 6

        A.      Gutzler's opinions and testimony in his Expert Report should be excluded,
                because the underlying facts and data and the methodology he employs are
                unreliable......................................................................................................... 6

                1.      Gutzler relies on unsubstantiated financial information from Zaman and
                        performed no independent analysis. ....................................................... 6

                2.      Gutzler's opinions are unreliable because he did not perform any analysis
                        of how the alleged $12,860,290 in operating costs are attributable to
                        American's ticket sales. ........................................................................ 12

                3.      Why did Gutzler do it this way? ............................................................ 14

        B.      Gutzler's Rebuttal Report and Rebuttal to Supplemental Report testimony should
                be excluded because they include non-rebuttal opinions...................................... 15

V.      MOTION TO STRIKE AND ADDITIONAL GROUNDS FOR EXCLUSION ............. 18

VI.     CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Alexander v. Chesapeake, Potomac & Tidewater Books, Inc.*,
    60 F. Supp. 2d 544 (E.D. Va. 1999) ......................................................................13

*CEATS, Inc. v. TicketNetwork, Inc.*,
    No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018)....................3, 15

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*,
    No. 304CV1866D, 2006 WL 2506957 (N.D. Tex. Aug. 15, 2006) .......................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...........................................................................................4, 5

*DeWolff, Boberg & Assocs., Inc. v. Pethick*,
    No. 3:20-CV-3649-L, 2024 WL 1396267 (N.D. Tex. Mar. 31, 2024) .................................4, 5

*Dondi Properties Corp. v. Com Sav. & Loan Ass'n*,
    121 F.R.D. 284 (N.D. Tex. 1988) .........................................................................15

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)................................................................................................6

*Goodman v. Harris County*,
    571 F.3d 388 (5th Cir. 2009) ...................................................................................5

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) .................................................................................11

*Guillory v. Domtar Indus. Inc.*,
    95 F.3d 1320 (5th Cir. 1996) .................................................................................11

*GWTP Invs., L.P. v. SES Americom, Inc.*,
    No. 3:04-CV-1383-L, 2007 WL 7630459 (N.D. Tex. Aug. 3, 2007)....................................15

*In re H & M Oil & Gas, LLC*,
    511 B.R. 408 (Bankr. N.D. Tex. 2014)....................................................................11

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    807 F. App'x 344 (5th Cir. 2020) ..........................................................................10

*Jezek v. R.E. Garrison Trucking, Inc.*,
    No. 4:21-cv-01102-O, 2022 WL 18717712 (N.D. Tex. Nov. 1, 2022) ...................................5

*Knight v. Kirby Inland Marine Inc.*,
    482 F.3d 347 (5th Cir. 2007) ........................................................................5, 6, 13

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*,
    No. H-05-1634, 2007 WL 150606 (S.D. Tex. Jan. 16, 2007)................................................11

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F. Supp. 2d 776 (N.D. Tex. 2013) ...........................................................................6

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) ........................................................................................11

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ..........................................................................................6

*Poly-Am., Inc. v. Serrot Int'l, Inc.*,
    No. 300CV1457D, 2002 WL 1996561 (N.D. Tex. Aug. 26, 2002) .......................................16

*Smith v. Johnson & Johnson, Inc.*,
    483 F. App'x 909 (5th Cir. 2012) ..................................................................................13

*Stinson Air Ctr., LLC v. XL Speciality Ins. Co.*,
    No. SA-03-CA-61-FB, 2005 WL 5979096 (W.D. Tex. July 8, 2005) .....................................6

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) ........................................................................................13

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ..........................................................................................5

*Wilbourn v. BRG Sports, Inc.*,
    No. 4:19-CV-00263-P, 2021 WL 5577683 (N.D. Tex. Oct. 7, 2021) ...................................11

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
    No. A-15-CV-597-RP, 2017 WL 394511 (W.D. Tex. Jan. 27, 2017).........................4, 16, 17

**STATUTES**

15 U.S.C. § 1117(a) ................................................................................................16, 18

17 U.S.C. § 504(a) ................................................................................................16, 18

**RULES**

FED. R. CIV. P. 26(a)(2) ...................................................................................1, 3, 19

FED. R. CIV. P. 26(a)(2)(B)(i)–(iii)..................................................................................1

FED. R. CIV. P. 26(a)(2)(D)(ii) ...............................................................................3, 15

FED. R. CIV. P. 26(a)(2)(B)......................................................................................3, 4, 15

FED. R. EVID. 403 ................................................................................................................................14

FED. R. EVID. 702 ..............................................................................................................................4, 5

FED. R. EVID. 702(c) ............................................................................................................................5

Plaintiff American Airlines, Inc. ("American") seeks an order excluding the expert opinions and testimony of Defendant Skiplagged, Inc.'s ("Skiplagged") expert, Gary L. Gutzler ("Gutzler"), and certain late-produced evidence relied upon by Gutzler, and would respectfully show the Court as follows:

## I.       INTRODUCTION

The Court's Scheduling Order required Skiplagged to file its Initial Expert Designations and Reports by February 2, 2024. [Dkt. No. 20 at 2–3]. The deadline was later extended until May 31, 2024. [*See* Dkt. Nos. 62, 73, 101, 108]. The Scheduling Order specifically states:

> [T]he party with the burden of proof on the issue subject to the expert designation must file a written designation . . . of each <u>expert witness</u> who will testify at trial for that party and ***must*** comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure[.]

[Dkt. No. 20 at 2–3 (emphasis added)]. Of most importance, Rule 26(a)(2) requires the reports to include:

> (i)      a complete statement of ***all*** opinions the witness will express and the basis and reasons for them;
> (ii)     the facts or data considered by the witness in forming them; [and]
> (iii)    any exhibits that will be used to summarize or support them[.]

Fed. R. Civ. P. 26(a)(2)(B)(i)–(iii) (emphasis added).

Skiplagged designated Gutzler to serve as its "Damages Expert" on May 31, 2024 and filed his designation pursuant to Federal Rule of Civil Procedure 26(a)(2). [Dkt. No. 129 at 1]. That same date, Skiplagged served the 13-page Expert Report of Gary L. Gutzler ("Expert Report"). [*See* App'x 004–22 (Gutzler Report)]. Simply stated, Gutzler's Expert Report is woefully deficient in facts and analysis, and it in no way complies with the Court's Scheduling Order or Rule 26(a)(2). For the reasons set forth in this Motion and Brief, American seeks to exclude all opinions and testimony raised by Gutzler in his Expert Report as well as any opinions or testimony in his later-

served Rebuttal Reports that include, expand, or incorporate the deficient opinions and testimony in his Expert Report.[1]

## II.    BACKGROUND

In its current posture after the Court's rulings on summary judgment [*see* Dkt. No. 199], this case is primarily focused on two key elements of damages. One relates to American's damages resulting from Skiplagged's infringement of its copyright (liability established); and the second is American's damages for Skiplagged's infringement of its trademarks (liability determined to be a fact issue for trial). [*See id.* at 6–11]. In both instances, the law is unambiguous that Skiplagged has the burden of proof on certain elements of these damages, specifically:

(1)    as to copyright damages, "the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); and

(2)    As to trademark damages, "defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).

Gutzler acknowledged Skiplagged's burden on both of these issues in his Expert Report. [App'x 011–12 (Gutzler Report, p. 6–7 ¶¶ 12–15, p. 7 n.24 & n.25)]. And it's equally clear these issues have been in the case from the outset; they were no surprise to Skiplagged or Gutzler.

Gutzler's Expert Report is entirely deficient on both issues. What his Expert Report reveals is that Skiplagged didn't provide him access to any of the source information—information entirely under Skiplagged's control—that was necessary to do this work. Rather, Gutzler's vague and general opinions simply parrot what Skiplagged's Chief Executive Officer, Aktarer Zaman ("Zaman"), told him. [App'x 014–16 (Gutzler Report, p. 9–11 ¶ 19–21, p. 9 n.33–35); App'x 027

---

[1] There is a difference in the relief American seeks with regard to the exclusion of Gutzler's opinions and testimony in his Expert Report versus that included in his Rebuttal Reports (to be discussed further below). American does not seek to exclude Gutzler's critique of American's lost profits analysis in his Rebuttal Reports—that work is responsive to American's damages expert's report. By contrast, the opinions and testimony in Gutzler's Rebuttal Reports that American seeks to exclude are continuations of deficient expert opinions in his initial Expert Report, those that were not properly disclosed to American, and those that do not constitute proper rebuttal.

(Gutzler Depo., 12:21–13:9)]. Gutzler's Report reflects zero independent examination of Skiplagged's financials and instead relies almost entirely on two thirty-minute conversations between Gutzler and Zaman. [*See, e.g.,* App'x 014 (Gutzler Report, p. 9 n.33–35); App'x 028 (Gutzler Depo., 14:12–15:8)]. There are no notes of these conversations and Skiplagged has not produced business records which support the "facts" Zaman purportedly told Gutzler. The Court's Scheduling Order and Rule 26(a)(2) requires far more than a superficial review of this kind.

It appears Skiplagged and Gutzler recognized these glaring problems with Gutzler's Expert Report when preparing his two Rebuttal Reports in this case.[2] In both instances, Gutzler attempted to remedy the deficiencies in his Expert Report by ***backdooring*** in opinions and testimony that were required to be included in his initial Expert Report. This is improper rebuttal material—it is not responsive to American's expert report as required by Rule 26(a)(2)(B), but instead presented in an effort to re-do what was required in his initial Expert Report. These new opinions and work should not be considered by the Court or jury. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); *CEATS, Inc. v. TicketNetwork, Inc.*, No. 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (distinguishing between an "'initial,' 'affirmative,' or 'opening' report" and a 'rebuttal' report") (citing *Morgan v. Commercial Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979) and *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006)).

Again, one only needs to review the Court's Scheduling Order to see the limits on rebuttal experts:

    **c. Rebuttal Expert(s):** If the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule

---

[2] Gutzler was designated and submitted a report as Skiplagged's rebuttal damages expert on July 31, 2024 ("Rebuttal Report"). [*See* Dkt. No. 201 at 1; App'x 050–51 (Rebuttal Report, p. 2–3 ¶¶ 4–5)]. Gutzler's rebuttal report was served in response to the May 31, 2024 expert report of American's damages expert, David Fuller (the "Fuller Report"). [*See* App'x 050–51 (Rebuttal Report, p. 2–3 ¶¶ 4–5); *see generally* App'x 083–112 (Fuller Report)]. American served Fuller's Supplemental Expert Report on August 2, 2024 ("Supplemental Fuller Report"). [See App'x 113–34 (Fuller's Supp'l Report)]. Skiplagged served Gutzler's Rebuttal to the Supplemental Fuller Report on August 22, 2024 ("Rebuttal to Supplemental Report"). [*See* App'x 135–70 (Rebuttal to Supp'l Report)].

26(a)(2)(B), the disclosures required under Rule 26(a)(2) must be made within **30 days** after the disclosure made by the other party.

[Dkt. No. 20 at 3]; *see* Fed. R. Civ. P. 26(a)(2)(B) (substantively similar language).

All that Gutzler's Rebuttal Reports are permitted to do under the Court's Scheduling Order and the Federal Rules is to "contradict or rebut" the Fuller Report. His rebuttal report is not a *Get Out of Jail Free* card to be used to bolster or create new calculations upon which he could base new opinions that are not contained in his Expert Report. But that is exactly what Gutzler has attempted to do.

More specifically, using late-disclosed data (which Skiplagged always possessed), Gutzler seeks to create new calculations in his two rebuttal reports regarding Skiplagged's costs and expenses that are not covered in his Expert Report. Courts have excluded expert opinions on these very topics for exactly this reason—they should have been raised in the expert's initial report. *See, e.g., YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 394511, at *2 (W.D. Tex. Jan. 27, 2017) (excluding defendant's rebuttal expert's report "focused solely on the issue of apportionment of profits—an issue on which [the defendant] has the burden of proof, and an issue not addressed by any [plaintiff] expert" and thus should have been raised in defendant's expert's initial report).

In addition, Gutzler utilizes unreliable data and methodology, relying blindly on information from Zaman and failing to engage in any actual financial analysis, as detailed below. This is a second independent basis to exclude Gutzler's testimony.

### III.    LEGAL STANDARD

Trial courts act as gatekeepers for expert testimony, determining its admissibility based on Rule 702 of the Federal Rule of Evidence as well as *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. *DeWolff, Boberg & Assocs., Inc. v. Pethick*, No. 3:20-CV-3649-

L, 2024 WL 1396267, at *3 (N.D. Tex. Mar. 31, 2024). Under Rule 702, an expert witness may provide expert opinions if:

> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert* and its progeny, expert testimony is admissible if the proponent of the testimony establishes: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). "The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *DeWolff, Boberg & Assocs.*, 2024 WL 1396267, at *3.

An expert may be qualified "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. An expert may not "go beyond the scope of his expertise in giving his opinion." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009); *Jezek v. R.E. Garrison Trucking, Inc.*, No. 4:21-cv-01102-O, 2022 WL 18717712, at *3 (N.D. Tex. Nov. 1, 2022) (expert testimony inadmissible under Rule 702 when expert "concede[s] that he lacks both training and experience" regarding the specific topic at issue).

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93); *see also* FED. R. EVID. 702(c) (testimony must be "the product of reliable principles and methods"). Expert testimony "must be reliable at each and every step," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight*, 482 F.3d at 355 (citation omitted). Where "opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert," a "court

may conclude that there is simply too great an analytical gap between the data and the opinion proffered" and exclude the expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 593).

## IV.    ARGUMENT

### A.    Gutzler's opinions and testimony in his Expert Report should be excluded, because the underlying facts and data and the methodology he employs are unreliable.

Gutzler's opinions on costs and expenses in this case are unreliable because he performed no independent examination of Skiplagged's financial information, relying instead on the unsupported and unreliable "facts" provided to him by Zaman. Moreover, Gutzler utilizes inappropriate methodologies for determining Skiplagged's costs and expenses that he claims are related to Skiplagged's sale of American tickets. *See Knight*, 482 F.3d at 355.

### 1.    Gutzler relies on unsubstantiated financial information from Zaman and performed no independent analysis.

Gutzler's Expert Report is tainted by the fact he relied entirely on his "discussions" with Zaman and Skiplagged's conclusory discovery responses (verified by Zaman). Gutzler failed to perform any independent analysis regarding the financial data he relied on to form his opinions. Courts in Texas have repeatedly held in similar situations that an expert "cannot forgo his own independent analysis and rely exclusively on what an interested party tells him." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (granting motion to exclude expert testimony where expert did not conduct independent analysis and instead relied primarily on what interested party told him); *see, e.g., Stinson Air Ctr., LLC v. XL Speciality Ins. Co.*, No. SA-03-

CA-61-FB, 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) (granting motion to exclude plaintiff LLC's expert testimony where financial expert based opinions "primarily" on talks with the plaintiff LLC's owner, rather than "any independent review of any cash flow statements, financial statements, or balance sheets"). Because Gutzler relies solely on Skiplagged's unverified financial data, his opinions fundamentally lack reliability, and his testimony and opinions in his Expert Report should be excluded.

Gutzler's Summary of Opinions in his Expert Report highlights this problem:



[App'x 008 (Gutzler Report, p. 3 ¶ 5)]. There are a myriad of problems raised by these "opinions."

First, Gutzler begins his calculation by parroting a "net revenue" figure provided to him by Skiplagged in its interrogatory responses. Gutzler concedes ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ [App'x 008 (Gutzler Report, p. 3 n.1) (quoting Skiplagged's Response to Interrogatory No. 1, Third Amended Objections and Responses to American's First Set of Interrogatories)]. But equally problematic, this "net revenue" figure from Skiplagged's interrogatory responses is nothing more than the *ipse dixit* of Zaman. He admitted during Skiplagged's Rule 30(b)(6) deposition that he calculated revenue using a "sampling;" ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████ [App'x

174, 176–80, 186–87 (Skiplagged's 30(b)(6) Depo., 7:14–9:11, 14:15–15:7, 17:9–18:22, 19:15–

19:19, 20:19–21:19, 23:6–23:12, 26:11–27:2, 27:20–28:7, 28:25–29:13, 30:6–31:17, 32:14–33:14,

57:12–58:25)]. Notably, Zaman did not save any portion of his analysis—not the scripts he wrote

to perform the analysis, nor the results of the analysis itself—so that American (or his own expert)

could analyze it later. [App'x 174, 180, 187 (Skiplagged's 30(b)(6) Depo., 9:7–9:23, 30:6–30:17,

58:21–58:25)]. Because Zaman did not retain any of this information, Gutzler merely parrots

Skiplagged's interrogatory response without ever checking these calculations.

Gutzler's failure to do any analysis of this "net revenue" calculation is especially egregious

because the "net revenue" calculation deducts certain costs, and proving costs is 100% his

responsibility. Gutzler admits that he buried multiple unverified offsets against the revenue number

he used in his Expert Report. In fact, he didn't even know the amount of the total deductions, much

less the breakdown of the individual components. [*See* App'x 030 (Gutzler Depo., 23:15–23:17)

(When asked if he did anything to analyze whether the net revenue number is accurate, Gutzler

responded: "No, I've—I've assumed that number's accurate."); App'x 014 (Gutzler Report, p. 9 ¶

18) ("the above American Bookings revenue is net of certain estimated offsets, including Stripe

transaction fees; dispute costs, penalties, and chargebacks; and awards travel")]. As noted, Gutzler

made no effort whatsoever to offer a breakdown of any of these individual deductions:

> Q. Okay. In that middle category—and I'm going to break it down. Do you know
> a specific amount for the deduction of dispute costs?
> A. No.
> Q. Do you know a specific dollar amount for the deduction of penalties?
> A. No.
> Q. Do you know a specific dollar amount for the deduction of chargebacks?
> A. No.
> Q. Do you know a specific dollar amount for the deduction of award travel?
> A. No.

[App'x 033 (Gutzler Depo., 36:3–36:15)]. When further questioned about how he came to understand these expenses were related to American Bookings, Gutzler again punted to Zaman:

> Q.  It says, "Based on my review," what specifically did you review to come to the conclusion that certain of these expenses are related to American Bookings?
> A.  Based on my understanding of what's included in the categories.
> Q.  And where did you gain that understanding of what's included in the categories?
> A.  Mr. Zaman.

[App'x 034 (Gutzler Depo., 40:20–41:2)]. Skiplagged hired an expert on damages, but that expert did not calculate the deductions he used to determine Skiplagged's purported "revenues"; instead, Skiplagged is using their expert as its owner's mouthpiece, forcing its expert to blindly rely on Zaman's representations.

These numbers are not incidental, and in some cases are enormous and completely erroneous. For instance, in parroting Skiplagged's "net revenue" figures, Gutzler appears to have

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████

Second, Gutzler admits that he did ***no*** analysis of apportionment in his Expert Report. [*See* App'x 004–22 (Gutzler Report)]. To the extent he's now arguing apportionment of Skiplagged's revenues to other factors besides American's trademarks and copyright (which he does in his Rebuttal Reports), Gutzler had a duty to examine that issue and include it in his initial Expert Report. Gutzler admitted that as of the date of his deposition, well after his Expert Report had been served on American, he'd done zero analysis of apportionment. Indeed, Skiplagged never even ***asked*** their expert to examine the issue:

> Q. Have you actually formed your opinions as we sit here today on apportionment?
> A. I don't believe so.
> Q. In your report of May 31st, 2024, do you provide any opinions on apportionment?
> A. I don't believe so.
> . . .
> Q. Why didn't you do an assessment of apportionment in your Original Report?
> A. I—I wasn't asked to do that.

[App'x 032 (Gutzler Depo., 31:5–31:10; 32:25–33:2)].

American expects Skiplagged will try to make arguments about apportionment at trial, but, based on its failure to timely do any analysis of the issue, it should be prevented from doing so. Gutzler and Skiplagged had every opportunity (and all the data) to do this analysis when it was required—they chose not to. They should be made to live with the consequences of their decision.

Third, instead of performing an independent review of the financial data before calculating Skiplagged's costs and expenses, Gutzler simply accepted Zaman's conclusory data and numbers. In other cases, as with apportionment and ███████████████, he did nothing. Generally, the facts, data, and sources used in an expert's opinion are considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d

420, 422 (5th Cir. 1987)). The court must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 388 (5th Cir. 2009). "[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). Indeed, if all Gutzler is planning to do is to repeat, verbatim, what he learned from Zaman, he adds no value as an expert. Zaman can testify to facts within his personal knowledge, but those facts do not deserve the patina of "expertise" when the expert does nothing more than uncritically repeat them to the jury.

Although in forming an independent opinion an expert can rely on information provided by a party or a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him. *See Wilbourn v. BRG Sports, Inc*., No. 4:19-CV-00263-P, 2021 WL 5577683, at *7 (N.D. Tex. Oct. 7, 2021) (excluding expert testimony that relied "primarily on what an interested party" provided as "not reliable expert opinion"); *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. H-05-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (granting motion to exclude defendant corporation's expert testimony where expert did not conduct independent analysis and instead relied primarily on information from the defendant corporation's president); *see also In re H & M Oil & Gas, LLC*, 511 B.R. 408, 416 (Bankr. N.D. Tex. 2014) ("when an expert relies upon information given to him by a party or counsel, [he] must independently verify that information before utilizing it in [his] calculations.") (citations omitted).

Here, Gutzler admits that he did not conduct the requisite independent analysis of key sources of financial data that form the basis of his calculations. [App'x 027, 030 (Gutzler Depo.,

13:4–13:9, 23:2–24:10)]. Gutzler made no effort to review Skiplagged's source documents, did not look at or investigate any of the underlying QuickBooks entries that directly led to the Balance Sheets or Profit and Loss Statements, and simply bought Zaman's story. [App'x 028–29 (Gutzler Depo., 16:17–18:13)].

### 2. Gutzler's opinions are unreliable because he did not perform any analysis of how the alleged ███████ in operating costs are attributable to American's ticket sales.

Gutzler's opinions should also be excluded because he did no analysis to determine how the alleged ████████ in costs should be allocated to American ticket sales. [App'x 015–17 (Gutzler Report, p. 10–12 ¶¶ 20–24, Tables 3–5)].[3] In fact, Gutzler admitted he performed *no* analysis with respect to the American net profits total calculation provided to him by Skiplagged, and he performed *no* analysis to determine what overhead costs should be apportioned to revenue derived from American's ticket sales versus those apportioned to non-American sales. [App'x 030, 032, 034 (Gutzler Depo., 23:15–24:10, 31:8–31:10, 32:14–32:17, 39:3–39:6, 40:20–41:5)].

When specifically asked how each of the individual costs in Table 2 of his Expert Report "contributed directly" to American bookings revenue, Gutzler punted on the question. He merely suggested that these were all of the expenses "that allow Skiplagged to operate its website and generate revenues from that website." [App'x 038 (Gutzler Depo., 56:3–56:14)]. Yet, he later admitted that these are the same expenses that "facilitated bookings on other airlines, United, Delta, foreign carriers." [App'x 038 (Gutzler Depo., 56:20–56:23)]. Gutzler simply made no attempt to disaggregate costs:

> Q. In assessing the cost directly related to generation of revenue, did you distinguish between revenue attributable to American Airlines and other revenues?

---

[3] These alleged costs also suffer from the same infirmity as the so-called deductions to revenue Gutzler opined about in his Expert Report. Both numbers were generated from conversations with Zaman and without any analysis of source documents or verified financials.

    A. No.

    Q. Why not?

    A. As I say, those—they don't track costs—Skiplagged does not track the cost on a per airline basis.

    Q. Did you do anything to try and track costs on a per airline basis?

    A. I don't believe so.

[App'x 030–31 (Gutzler Depo., 25:23–26:7)]. And, as is the case for all other numbers he cites, Gutzler has no source for the ██████ cost number other than Zaman:

    Q. Okay. So other than your discussion with Mr. Zaman, did you have any other basis for forming those opinions on costs?

    A. I don't believe so, other than what I've seen in other trademark and copyright cases.

[App'x 034 (Gutzler Depo., 41:14–41:18)]. Gutzler could have analyzed American's booking revenues and costs using the data in Skiplagged's database, but Skiplagged apparently declined to provide it to him. Because that never happened, his work is unreliable and should be excluded. *See Smith v. Johnson & Johnson, Inc*., 483 F. App'x 909, 912 (5th Cir. 2012) (holding that district court did not abuse its discretion by striking expert reports based on the unexplained conclusory statements provided); *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 440–41 (4th Cir. 2010), as amended (Aug. 24, 2010) (court concluded that infringer failed to meet its burden of proving deductible expenses because it presented methods of calculating costs which were confusing, unreliable, and internally inconsistent).

    Further, Gutzler provides no reliable explanation why he chose to include certain overhead expenses, or how he ensured that costs were not deducted twice, thus skewing his damages analyses. There can be little doubt that Gutzler's cost analysis is unreliable and provides no relevant information regarding costs specifically attributable to the alleged American ticket revenue calculation. *See Knight*, 482 F.3d at 355; *see*, *e.g.*, *Alexander v. Chesapeake, Potomac & Tidewater Books, Inc*., 60 F. Supp. 2d 544, 550 (E.D. Va. 1999) ("a deduction for overhead is only permitted when 'the infringer can demonstrate it was of actual assistance in the production,

distribution, or sale of the infringing product'") (quoting *Kama Intern., Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1332 (9th Cir. 1984)); *see also* FED. R. EVID. 403 (prohibiting admission of relevant testimony if its probative value is substantially outweighed by the danger that the evidence will confuse the issues or mislead the jury).

### 3.      Why did Gutzler do it this way?

Gutzler is an experienced financial expert with significant experience in his field, so why would he do his work in such an incomplete way? The answer lies in the game Skiplagged played with its financial data throughout this case.

As the Court is aware, the parties had numerous discovery fights over the course of the past year. Almost all of them had to do with Skiplagged's unwillingness to produce the financial data it kept hidden ██████████████████████████████ After many different motions and rulings filed in that eight-month fight, on May 31, 2024, Skiplagged finally served its initial production of its database financial information (pursuant to the Court's May 1, 2024 Order), which consisted of 1,376,859 PDF files. [*See* Dkt. No. 176 at 75]. This production was made simultaneously with Gutzler's Expert Report, but Gutzler did not incorporate this data into his work.

To be sure, Skiplagged had the data in its possession the whole time Gutzler was working on his Expert Report—but it intentionally shielded it from him to avoid having to produce it to American. For months, Skiplagged had claimed its financial data was inaccessible and unavailable because it was in a form that could not be extracted and produced. That all proved to be false.

Even when Skiplagged produced the financial data to American, the data still proved to be inaccurate and not reasonably usable for the purposes of conducting an independent analysis of American's damages [*See* Dkt. No. 168 at 6–11]. After being forced to file yet another motion regarding the issue, American was finally contacted by Skiplagged and offered an "enhanced

version" of the database information on July 1, 2024. [*See* Dkt. No. 176 at 9; Dkt. No. 181 at 1–2; Dkt. No. 197 at 1–2]. Gutzler's Expert Report was long since done at that point, but that didn't stop him from taking all of this new data and inserting it into his "rebuttal" reports. The reason? Gutzler could no longer fudge on his work; American and its expert, Fuller, had the real[4] financial data incorporated into his expert report.

Skiplagged now seeks to profit from the discovery game it played throughout this case. This conduct is entirely inconsistent with the principles of *Dondi. See Dondi Properties Corp. v. Com Sav. & Loan Ass'n*, 121 F.R.D. 284, 287–89 (N.D. Tex. 1988).

## B.   Gutzler's Rebuttal Report and Rebuttal to Supplemental Report testimony should be excluded because they include non-rebuttal opinions.

Gutzler has impermissibly exceeded the scope of a rebuttal witness in both his July 31, 2024 Rebuttal Report to the Fuller Report and his August 22, 2024 Rebuttal to Supplemental Fuller Report by providing opinions that have other purposes than to "contradict or rebut evidence on the same subject matter" of those in the Fuller Report.

Pursuant to Rule 26(a)(2)(D)(ii), a party may designate a rebuttal expert witness "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii). "A 'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS, Inc.*, 2018 WL 453732, at *3. "Rebuttal is a term of art, denoting evidence introduced by a plaintiff to meet new facts brought out in his opponent's case in chief." *GWTP Invs., L.P. v. SES Americom, Inc.*, No.

---

[4] As addressed above, not all of the "data" included in this production is actual financial data. █████████████████████████████████████████████████████████████████

3:04-CV-1383-L, 2007 WL 7630459, at *9 (N.D. Tex. Aug. 3, 2007). Courts in this district often

ask three questions in determining whether preferred expert evidence is rebuttal evidence:

> First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?

*Poly-Am., Inc. v. Serrot Int'l, Inc.*, No. 300CV1457D, 2002 WL 1996561, at *15 (N.D. Tex. Aug.

26, 2002); *see, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 304CV1866D, 2006

WL 2506957, at *2 (N.D. Tex. Aug. 15, 2006) (excluding portions of defendant's rebuttal expert

report opining about defendant's affirmative defense as not rebuttal opinions).

Gutzler attempts to challenge Fuller on the basis that he "only includes revenues and does

not consider related costs and apportionment"—however, as Gutzler admits in his own Expert

Report, that is ***all*** Fuller is required to demonstrate. [App'x 051 (Rebuttal Report, p. 3 ¶ 5); App'x

139 (Rebuttal to Supp'l Report, p. 3 ¶ 8)]. The Lanham Act, Copyright Act, and even Gutzler's

reports make clear that plaintiff's only burden is to prove gross revenue of the defendant and that

proving costs, deductions, and apportionment are the ***defendant's*** burden. *See* 15 U.S.C. § 1117(a);

17 U.S.C. § 504(a). Thus, under the guise of rebutting Fuller's calculation of profits, Gutzler is

actually improperly seeking to introduce evidence for the first time in his Rebuttal Report that was

Skiplagged's burden to introduce in Gutzler's Expert Report. *See YETI Coolers*, 2017 WL 394511,

at *2.

Specifically, when discussing Fuller's calculation of Skiplagged's profits, Gutzler

introduces new evidence regarding Skiplagged's deductible expenses. [App'x 060–071 (Rebuttal

Report, p. 12–23 ¶¶ 31–52)]. His Rebuttal Report includes several tables performing various

calculations related to Skiplagged's expenses, such as Table 3, ███████████████████

███████████████████████████████████████████████████████████



[App'x 064–65 (Rebuttal Report, p. 16–17 ¶¶ 41–42, Tables 3 & 4]. Gutzler goes on to calculate Skiplagged's costs ███████████████ █████████████████████████████████ [App'x 065–66 (Rebuttal Report, p. 17–18 ¶¶ 43–44, Tables 5 & 6].

Gutzler proceeds to argue that ████████████████████████████████

████████████ Not only is this calculation based on unreliable data and methodology, but the entire apportionment analysis and calculations is time-barred as an improper attempt to introduce expert testimony regarding Skiplagged's burden of proof. *See YETI Coolers*, 2017 WL 394511, at *2 ("Accordingly, [RTIC's expert] Dr. Erdem's expert report could not be rebutting a claim on which YETI bears the burden of proof, since the burden of proof on apportionment is on RTIC."). Recall Gutzler's deposition testimony about why he didn't conduct an assessment of attribution: "I wasn't asked to do that." [*See* App'x 032 (Gutzler Depo., 31:5–31:10; 32:25–33:2)].

Accordingly, the Court should exclude Gutzler's Rebuttal Report and Rebuttal to Supplemental Report as to all portions of the reports that are not rebuttal opinions—specifically, Gutzler's testimony related to the "elements of cost or deduction claimed," "deductible expenses," and "elements of profit attributable to factors other than the copyrighted work" (*i.e.*, reductions

from the infringer's profits) under the Lanham Act and Copyright Act. *See* 15 U.S.C. § 1117(a); 17 U.S.C. § 504(a).

## V.   MOTION TO STRIKE AND ADDITIONAL GROUNDS FOR EXCLUSION

On August 9, 2024—on the day of the parties' Court-ordered mediation and nearly six weeks after the June 30, 2024 completion of discovery deadline—Skiplagged produced a PDF which was Bates-labeled SKP00111228–31.[5] [App'x 320–23 (SKP00111228–31)]. This document contained data points with no information to explain why it was being produced at this late date. It was not until American received Gutzler's Rebuttal Report to Fuller's Supplemental Report on August 22, 2024 did Skiplagged's scheme get revealed. Gutzler wrote:



[App'x 159 (Gutzler Rebuttal to Supp'l Report, p. 23 n.84)]. Gutzler continued:



[*Id.*]. SKP00111228–31 and the new calculations that Gutzler included in his Rebuttal to Fuller's Supplemental Expert Report purport to be ████████████████████████████

---

[5] Skiplagged appears to have inadvertently begun the numbering for this document with "SKP00111228," which is the identical Bates numbering for Skiplagged's production of its database information on May 31, 2024 pursuant to the Court's Order granting American's Motion to Compel. [*See* Dkt. No. 176 at 75].

███████████████████████████████████████████████████████████

██████████████████████████████████. Gutzler doesn't explain his point at all in his Rebuttal Report but merely suggests "I reserve my right to comment further on this issue." [*See id.*].

Gutzler's reliance on SKP00111228–31, and any opinions related to it, are entirely inappropriate. First, as discussed previously, Gutzler failed to disclose anything about this document, or the theories behind it, in his Expert Report on May 31, 2024, as he was obligated to do by the Court's Scheduling Order and Rule 26(a)(2). *See supra* Section IV.A.1. Second, Gutzler's wholly-new opinions, which apparently are still under construction at this late date, are improperly inserted as rebuttal to Fuller's Supplemental Expert Report. *See supra* Section IV.B. Either of these reasons is sufficient to strike SKP00111228–31.

To be clear, American had never seen SKP00111228–31 until August 9th, nor were any of the theories surrounding it (actually, they're still under construction) disclosed to American until August 22, 2024. This new measure of apportionment was contrived by Gutzler only after Skiplagged had been required by the Court to produce all the damaging financial information from Skiplagged's database. This ***new*** document, this ***new*** theory, and all of the ***new*** numbers surrounding it in Gutzler's Rebuttal to Fuller's Supplemental Report should be stricken and excluded from the trial of this case.

## VI.    CONCLUSION

For the reasons stated above, American requests the Court to exclude all opinions contained in the Expert Report of Gary L. Gutzler and all opinions in his Rebuttal Report and Rebuttal to Supplemental Report that relate to issues upon which Skiplagged has the burden of proof at trial. Additionally, American requests that the Court strike Skiplagged's document, SKP00111228–31,

and prohibit Skiplagged or Gutzler from relying on this document or any testimony related to it at the trial of this case.

Dated: August 23, 2024                    Respectfully submitted,

                                          */s/ Dee J. Kelly, Jr.*
                                          Dee J. Kelly, Jr.
                                          State Bar No. 11217250
                                          dee.kelly@kellyhart.com
                                          Julia G. Wisenberg
                                          State Bar No. 24099146
                                          julia.wisenberg@kellyhart.com
                                          KELLY HART & HALLMAN LLP
                                          201 Main Street, Suite 2500
                                          Fort Worth, Texas 76102
                                          (817) 332-2500

                                          R. Paul Yetter
                                          State Bar No. 22154200
                                          pyetter@yettercoleman.com
                                          YETTER COLEMAN LLP
                                          811 Main Street, Suite 4100
                                          Houston, Texas 77002
                                          (713) 632-8003

                                          Cameron M. Nelson
                                          nelsonc@gtlaw.com
                                          GREENBERG TRAURIG LLP
                                          77 West Wacker Drive, Suite 3100
                                          Chicago, Illinois 60601
                                          Telephone: (312) 456-6590

                                          Nathan J. Muyskens
                                          nathan.muyskens@gtlaw.com
                                          GREENBERG TRAURIG LLP
                                          2101 L Street, N.W., Suite 1000
                                          Washington, DC 20037
                                          Telephone: (202) 331-3100

                                          **ATTORNEYS FOR PLAINTIFF**

20

## CERTIFICATE OF CONFERENCE

I certify that on August 23, 2024, I conferred with Bill Kirkman, counsel for Skiplagged, who stated that he is opposed to the relief requested herein.

*/s/ Dee J. Kelly, Jr.*_____
Dee J. Kelly, Jr.


## CERTIFICATE OF SERVICE

I certify that on August 23, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*_____
Dee J. Kelly, Jr.