IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**DEFENDANT SKIPLAGGED, INC.'S BRIEF IN SUPPORT OF
MOTION TO STRIKE AND EXCLUDE PLAINTIFF
AMERICAN AIRLINES, INC.'S EXPERT DAVID FULLER**

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC

8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com

1

kreed@condontobin.com
acampbell@condontobin.com

Darin M. Klemchuk
Texas Bar No. 24002418
KLEMCHUK PLLC
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

*Attorneys for Defendant, Skiplagged, Inc.*

# <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................................................ **7**

    **I.**    **Background** ........................................................................... **7**

    **II.**   **Law on copyright damages that must guide Fuller's expert opinions** ................ **7**

    **III.**  **Law on trademark damages that must guide Fuller's expert opinions** ............. **9**

    **IV.**  **Summary of Skiplagged's position on Fuller's opinions** .................................... **10**

**ARGUMENTS AND AUTHORITIES** .................................................................. **11**

    **I.**    **Fuller's Supplemental Report on actual damages should be stricken as untimely** ............................................................................................ **11**

        **A. Legal standard** ........................................................................... **11**

        **B. Fuller's supplemental opinion on actual damages is untimely** ............................ **13**

    **II.**   **Fuller's opinions fail to satisfy Fed. R. Evid. 702** .................................... **16**

        **A. Legal standard** ........................................................................... **16**

        **B. Fuller's opinions contain legal conclusions and assumptions that lack independent analysis** ...................................................................... **18**

        **C. Fuller's actual damages opinion is unreliable** .................................... **20**

            *i.Lanham Act actual damages* ................................................ **20**

            *ii. Copyright actual damages* .................................................. **22**

            *iii. Fuller's actual damages opinions* ....................................... **22**

        **D. Fuller's profit analysis damages opinions are unreliable** ................................ **24**

    **CONCLUSION** ............................................................................... **25**

## TABLE OF AUTHORITIES

**Cases**

*360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. A-14-CA-00847-SS, 2016 WL 6075566, at *3 (W.D. Tex. Apr. 22, 2016) ............................................................................. 20

*Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 3019795, at *2 (N.D. Tex. July 29, 2022) ................................................................................................. 13

*Albritton v. Acclarent, Inc.*, 2020 WL 11627275, at *13 (N.D. Tex. Feb. 28, 2020) ................... 13

*Am. Airlines, Inc. v. Delta Air Lines, Inc.,* No. 4:19-cv-1053-0, 2021 WL 3629735, at *18 (N.D. Tex. May 18, 2021) ....................................................................................................... 21

*Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ................................................................... 17

*Barrett v. Atlantic Richfield Co.*, 95 F.3d at 381. ........................................................................ 12

*Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir. 1977) ......................................... 22

*BMC Software, Inc. v. Baker Hughes, a GE Co., LLC,* No. CV H-19-4810, 2022 WL 4390612, at *2 (S.D. Tex. Aug. 24, 2022) ................................................................................................. 21

*Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005 ................................................................... 8

*C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) ................................................................... 13

*Camowraps, LLC v. Quantum Dig. Ventures LLC*, 74 F. Supp. 3d 730 (E.D. La. 2015) ...... 10, 21

*Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) ........................................................................................................................... 16

*Choice Hotels Int'l, Inc. v. Frontier Hotels, Inc.*, No. CV H-15-2355, 2016 WL 4367993, at *5 (S.D. Tex. Aug. 15, 2016) ............................................................................................... 10, 21

*CQ, Inc. v. TXU Min. Co., L.*P., 565 F.3d 268, 279 (5th Cir. 2009) ............................................ 11

*C.V. v. Casa Azul Spirits, LLC*, No. CV H-22-2972, 2023 WL 7284182, at *7-8 (S.D. Tex. Nov. 3, 2023 ........................................................................................................................... 21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) ................................ 16

*Davidson v. AT&T Mobility, LLC*, No. 3:17- CV-0006-D, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018) .................................................................................................................... 12

*ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) .............................. 20

*Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir.1999) .................................... 17

*Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 190 (5th Cir. 1988 ............................................. 9

*Exxon Mobil Corp. v. FX Networks, LLC*, Civil Action No. H-13-2906, 2015 U.S. Dist. LEXIS 186394 *7 (S.D. Tex. Aug. 26, 2015)..................................................................... 10

*Factory Mutual Insurance Co. v. Alon USA LP*, 705 F.3d 518, 524 (5th Cir. 2013) .................. 17

*Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005) ........................................................ 17

*Hoffman v. L & M Arts*, 2013 WL 81578, at *1-2 (N.D. Tex. Jan. 8, 2013) ............................. 12

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515 (5th Cir. 2020) ......................... 21

*Jacobs v. Tapscott*, 2006 WL 2728827, at *11 (N.D. Tex. Sept. 25, 2006) ............................... 12

*Leland Med. Ctrs. v. Weiss*, 2007 U.S. Dist. LEXIS 76095, *18-19 (U.S.D.C. Eastern Dist. of Texas Sherman Div., Op. by Mag. Judge Don Bush 2007)...................................................... 8

*Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) ............... 17

*Martino v. Kiewit New Mexico Corp.*, 600 Fed. App'x 908 (5th Cir. 2015)............................... 12

*Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998). ................ 13

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361 (5th Cir. 2010) .......... 8,18, 22

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) ....................................................................................................... 20

*Moore v. Int'l Paint, L.L.C.*, 547 Fed. Appx. 513, 515 (5th Cir. 2013)................................. 16,19

*Orthoflex, Inc. v. Thermotek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ................... 17, 18

*Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).......................................... 19

*PAR Microsystems v. Pinnacle Dev. Corp.*, 995 F. Supp. 658, 661 (N.D. Tex. 1998). .............. 22

*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) ............................. 9

*Prepaid Wireless Servs., Inc. v. Sw. Bell Wireless, Inc.*, No. CIV.A. M-00-302, 2002 WL 34367328, at *2 (S.D. Tex. July 23, 2002). .............................................................. 20

*Red Dot Bldgs. v. Jacobs Tech., Inc.*, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012)............ 12

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) ............................................................... 17, 18

*Rodeway Inns Int'l., Inc. v. Amar Enter., Inc.*, 742 F. Supp. 365, 369 (S.D. Miss. 1990)...... 10, 21

*Rolex Watch USA v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998).................................... 9

*Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998);....................................... 11

*Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)............................................... 18

*Seaman v. Seacor Marine*, LLC, 326 Fed. Appx. 721, 725 (5th Cir. 2009).......................... 16, 17

*Stinson Air Ctr., LLC v. XL Specialty Ins. Co.*, 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) ................................................................................................................ 20

*StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 9899920, at *19 (E.D. Tex. June 28, 2019) ............................................................................. 19

*Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 502 (D.Md.1997) ............................................. 13

*Sw. Agri-Plastics, Inc. v. Hog Slat, Inc.*, No. 3:09-CV- 1271-B (BK), 2010 WL 11618873, at *1 (N.D. Tex. Sept. 21, 2010) ..................................................................................... 12

*Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 695 (5th Cir. 1992) ......... 9, 21

*U.S. v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) .................................................. 17

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ..................................... 17

*Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ................................................ 16

**Rules**

Fed. R. Civ. P. 16(f); ...................................................................................... 11

Fed. R. Civ. P. 26(a)(2)(B) .............................................................................. 11

Fed. R. Civ. P. 37(b)(2) .................................................................................. 11

Fed. R. Evid. 702 .......................................................................................... 16

Defendant Skiplagged, Inc. ("Skiplagged") files this Motion to Strike and Exclude Plaintiff American Airlines, Inc's ("AA") Expert David Fuller and would show the Court as follows:

## INTRODUCTION

### I.    Background

After the Court's July 31, 2024 Memorandum Opinion and Order on the parties' cross motions for summary judgment [Dkt. 199], the remaining claims for trial in this matter are AA's trademark infringement claims under the Lanham Act and its copyright damages claim. AA's claims for breach of contract and tortious interference with contract were deposed of at summary judgment. AA designated David Fuller as its damages expert in support of its affirmative claims and as a rebuttal expert to the opinions of Gary Gutzler. Therefore, based on the current status of the case, the only relevance of a damage expert such as Fuller is as to AA's alleged trademark and copyright damages.

Fuller issued an expert report on May 31, 2024 ("Fuller Original Report"), attached hereto as Exhibit 1 (App. pp. 1-31), and a Rebuttal Damages Report on July 1, 2024 [Dkt. 149]. Then, to account for additional data produced by Skiplagged that identified AA flight bookings facilitated by Skiplagged over a period of time, the Court granted AA leave to file a supplemental damages report. Dkt. 203. Skiplagged provided such additional data and thus, on August 2, 2024, AA served Fuller's Supplemental Report ("Fuller Supplemental Report") attached hereto as Exhibit 2 (App. pp. 32-52). Dkt. 199.

### II.    Law on copyright damages that must guide Fuller's expert opinions

In a copyright infringement action, the infringer is liable for either statutory damages or the copyright owner's actual damages, together with any additional profits of the infringer that are attributable to the infringement. 17 U.S.C. § 504 (1982). As to statutory damages, *see* 17 U.S.C.

§ 504(c) (infringement damages "in a sum of not less than $750 or more than $30,000 as the court considers just); 17 U.S.C. § 1203(c)(3)(B)."

Actual damages are measured by "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." *Leland Med. Ctrs. v. Weiss*, 2007 U.S. Dist. LEXIS 76095, *18-19 (U.S.D.C. Eastern Dist. of Texas Sherman Div., Op. by Mag. Judge Don Bush 2007). And, to be certain, such actual damages are calculated with reference to the loss in the fair market value of the copyright. *Id.* at *19-20. Failure to apply this measure in weighing actual damages for copyright infringement is error. *Id.* At *22 and the 4th Circuit case cited there.

As to an infringer's profit, "[O]nce liability has been shown, § 504(b) creates an initial presumption that the infringer's 'profits ... attributable to the infringement' are equal to its gross revenue," *MGE UPS Sys.*, 622 F.3d at 367 (quoting *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005)) (ellipsis in original). "In meeting its initial burden, a copyright holder must show more than the infringer's total gross revenue from all of its profit streams.... Rather, 'gross revenue' refers only to revenue *reasonably related* to the infringement." *Id.* (quoting *Bonner*, 404 F.3d at 294) (ellipsis in original). Therefore, even if a Plaintiff can prove copyright infringement, he must sufficiently demonstrate a nexus between the alleged infringement and Defendant's gross revenue from sales, to be awarded damages. In other words, AA must show that its bookings facilitated by Skiplagged are attributable to Skiplagged's use of AA's claimed Flight Symbol copyrighted work. To be clear, in order to be entitled to disgorgement of profits under § 504(b), "a copyright holder must show more than an infringer's total gross revenue from all of its profit streams." *MGE UPS Sys. Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) (emphasis in original). Instead, the copyright holder must come forward with evidence of revenues "reasonably related to

the infringement." *Id.* (emphasis in original). As the Court might suspect based on this requirement, "The question will often be highly fact-specific." *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 190 (5th Cir. 1988).

## III.    Law on trademark damages that must guide Fuller's expert opinions

In a trademark action, when a violation of any right of the registrant of a mark has been established in any civil action, the plaintiff shall be entitled to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117.

Similar to the law with regard to proof of a defendant's profit in a copyright case, a trademark defendant's profits must be shown to be attributable to the infringement act. Therefore, an award of the defendant's profits is not automatic. *See Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998). And, the Fifth Circuit has identified a non-exhaustive list of factors to determine when a plaintiff is entitled to an accounting of the defendant's profits under § 1117(a):

(1) whether the defendant intended to confuse or deceive;

(2) whether the sales have been diverted;

(3) the adequacy of other remedies;

(4) any unreasonable delay by the plaintiff in asserting her rights;

(5) in the public interest in making the conduct unprofitable, and

(6) whether it is a case of palming off.

*See Rolex Watch USA v. Meece*, 158 F.3d 816, 823 (5th Cir. 1998); *Pebble Beach Co.*, 155 F.3d at 554; *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 695 (5th Cir. 1992). And, to be clear, if the Court determines that an accounting of profits is appropriate, the plaintiff is entitled to only those profits attributable to the unlawful use of its trademark. *See Pebble Beach Co.*, 155 F.3d at 554.

9

As to actual damages for a trademark violation, causation is a necessary element and there must be a showing that such damages are attributable to the infringing act. A plaintiff must submit evidence that it has sustained actual damage as a result of the infringement. *Choice Hotels Int'l, Inc. v. Frontier Hotels, Inc*., No. CV H-15-2355, 2016 WL 4367993, at *5 (S.D. Tex. Aug. 15, 2016) citing *Rodeway Inns Int'l., Inc. v. Amar Enter., Inc*., 742 F. Supp. 365, 369 (S.D. Miss. 1990) (Lee, J.) ("A determination of damages under the Lanham Act must be supported by evidence of actual damages suffered by the plaintiff"). The "[r]ecovery of damages for trademark infringement is also subject to the usual standards of damages: plaintiff must prove both causation and amount." *Camowraps, LLC v. Quantum Dig. Ventures LLC*, 74 F. Supp. 3d 730 (E.D. La. 2015), quoting 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:72. Such damages must also be attributable to the infringement. *See Exxon Mobil Corp. v. FX Networks, LLC*, Civil Action No. H-13-2906, 2015 U.S. Dist. LEXIS 186394 *7 (S.D. Tex. Aug. 26, 2015) (damages not awarded where the only evidence related to actual damages was the testimony of corporate representatives who could not identify any harm to the plaintiff caused by the defendant's use of the allegedly infringing logo); *accord Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1572 (S.D. Tex. 1996) (denying an award of actual damages after bench trial because the plaintiffs failed to "provide any evidence of actual damages in the form of lost good will, damage to reputation, or diverted or lost sales").

## IV.    Summary of Skiplagged's position on Fuller's opinions

Fuller's analysis of damages based on Skiplagged's profits under both AA's claims of copyright and trademark lack the necessary nexus establishing that any such profits of Skiplagged are "attributable" or "reasonably related" to the infringement act. His proffered opinions therefore lack the necessary legal basis, are inadmissible, and should be stricken.

As to Fuller's opinion on AA's actual damages, Fuller's Original Report issued on May 21, 2024, focused solely on the disposed of AA claims for contract breach and tortious interference. Fuller's Supplemental Report offered new damage theories for the federal claims and was simply too late, according to the Court's Scheduling Order setting forth dates experts' opinions should be provided. To the extent the Court allows the Supplemental Report, notwithstanding its late-asserted theories, it is irrelevant to the actual damages, and his report is unreliable because his methodology and reliance lacks the proper causation and is based on flawed data which he used to make his opinions is unreliable. As such, Fuller's damages opinions should be stricken and excluded from trial.

## ARGUMENTS AND AUTHORITIES

### I.   Fuller's Supplemental Report on actual damages should be stricken as untimely

#### A.  Legal standard

"'[L]itigants have an unflagging duty to comply with clearly communicated case-management orders.' *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998); *see* Fed. R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2) (authorizing a trial court to refuse to admit evidence or permit witnesses linked to a party's failure to follow a court order).

Federal Rule of Civil Procedure 26(a)(2)(B) mandates that an expert retained by a party to provide expert testimony in the case must prepare a written report that contains, in part, "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness when forming them; [and] any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D); *CQ, Inc. v. TXU Min. Co., L.*P., 565 F.3d 268, 279 (5th Cir. 2009).

Federal Rule of Civil Procedure 37(c)(1) states:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless…

Courts have wide discretion in determining whether the nondisclosure of evidence is substantially justified or harmless, and may, as the Rule states, preclude a party from using that information at trial. *Martino v. Kiewit New Mexico Corp.,* 600 Fed. App'x 908 (5th Cir. 2015); *Red Dot Bldgs. v. Jacobs Tech., Inc.,* 2012 WL 2061904, at *3 (E.D. La. June 7, 2012) ("Exclusion of the evidence is mandatory and automatic unless the party demonstrates substantial justification or harmlessness.").

The Fifth Circuit considers four factors in evaluating whether a violation of Rule 26 is substantially justified or harmless, "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Hoffman v. L & M Arts*, 2013 WL 81578, at *1-2 (N.D. Tex. Jan. 8, 2013); *Davidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018). "Disruption of the Court's discovery schedule and the opponent's preparation constitutes sufficient prejudice to militate in favor of the exclusion of information." *Sw. Agri-Plastics, Inc. v. Hog Slat, Inc*., No. 3:09-CV-1271-B (BK), 2010 WL 11618873, at *1 (N.D. Tex. Sept. 21, 2010); *see Geiserman*, 893 F.2d at 791; *see also Barrett v. Atlantic Richfield Co.*, 95 F.3d at 381.

"Rule 26(e)(1) requires that, with respect to the retained expert, there is a duty to supplement the expert's opinion if there is a material change in the opinion. This obligation extends to both the report required by Rule 26(a)(2)(B), as well as the expert's deposition testimony." *Jacobs v. Tapscott*, 2006 WL 2728827, at *11 (N.D. Tex. Sept. 25, 2006) (citing *Sullivan v. Glock,*

12

*Inc.*, 175 F.R.D. 497, 502 (D.Md.1997)). However, "[w]hen 'the analysis and opinions in the second report [are] largely new rather than supplementary,' they cannot qualify as a supplemental expert report under Rule 26(e)." *Albritton v. Acclarent, Inc.*, 2020 WL 11627275, at *13 (N.D. Tex. Feb. 28, 2020) (Lynn, C.J.) (second alteration in original) (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016); *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 3019795, at *2 (N.D. Tex. July 29, 2022), *aff'd sub nom. Aircraft Holding Sols., L.L.C. v. Learjet, Inc.*, No. 23-10388, 2024 WL 3042394 (5th Cir. June 18, 2024)).

As in other cases within this District, here, the Court imposed deadlines for designating expert witnesses and a discovery deadline that were periodically modified at the parties' requests. "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998).

### B. Fuller's supplemental opinion on actual damages is untimely

Fuller's Supplemental Report, tendered on August 2, 2024, contains an untimely new opinion on AA's actual copyright and trademark damages based on information available to Fuller prior to his Original Report. This information was available well before the close of discovery and has nothing to do with the purpose of the Supplemental Report—to account for additional data produced by Skiplagged. Specifically, (1) Fuller testified at both his June and August depositions that he had no opinion as to copyright actual damages; (2) neither Fuller's Original Report (tendered May 31, 2024) nor Rebuttal Report (tendered July 1, 2024) contained any opinion about actual damages under the Lanham Act or copyright law; and (3) Fuller's Supplemental Report attempts to change his previous theory on contractual damages to an impermissible and untimely new opinion as to Lanham Act actual damages in response to the Court's summary judgment

ruling. Finally, AA's attempt to amend its damages disclosures after Fuller's depositions as well as the close of discovery is improper and futile. Given that the Fuller Supplemental Report includes entirely new—and not supplemental—information and opinions on actual damages, it would be manifestly unfair to Skiplagged to allow that portion of AA's Supplemental Expert Report and accompanying testimony to be presented as evidence in this case. *Albritton,* 2020 WL 11627275 at *13 (finding expert report that offered new conclusions about a topic not previously discussed is not a supplemental report).

On July 29, 2024, AA sought leave of Court to serve a supplemental expert report on damages so that Fuller "may incorporate additional findings he's made based upon the production of database information by Skiplagged on July 1, 2024." Dkt. 198. Indeed, the entirety of AA's motion requesting a supplemental damages report involves the need to supplement Fuller's original opinions based on the data regarding AA flights that Skiplagged re-produced on July 1, 2024. *Id.* AA did not seek permission for Fuller to add new opinions with respect to previously undisclosed damages theories.

Fuller's Supplemental Report includes calculations and opinions regarding "merchant fees" and AA's recoupment of money from customers who booked hidden city flights. Ex. 2, ¶ 39 (App. p. 11). Neither of these factors relates to the AA bookings data produced by Skiplagged on July 1 but both are AA's own information that Fuller had access to from AA prior to his May 31, 2024 Original Report. Fuller's Original Report contains no calculations or opinions on deducting merchant fees or recoupment. *See* Ex. 1 (App. pp. 2-30). Indeed, Fuller's new calculations and opinions are instead based off of omissions from the Fuller Original Report pointed out at his June 27, 2024 deposition and Skiplagged's summary judgment papers.

AA is utilizing Fuller's Supplemental Report to make an untimely change to its damages

theory after the Court's summary judgment ruling. Specifically, Fuller's *new* actual damages theory is based on lost revenue AA alleges it would have earned if Skiplagged had not utilized AA's trademarks. Ex. 2, pp. 10-12 (App. pp. 41-43). This damages model is new as AA previously alleged actual damages was based solely on AA's claimed lost profits had Skiplagged not facilitated hidden city ticketing in violation of the Contract of Carriage. Ex. 1, ¶ 40 (App. pp. 13-14). Indeed, Fuller admitted in his deposition that his disgorgement damages analysis applies to AA's copyright and trademark claims, that he did no actual damages analysis specific to AA's copyright or trademark claims, and that he wasn't even asked to do a trademark actual damages analysis. Ex. 3, June 27, 2024 Deposition of David Fuller ("Fuller June Depo.") 86:7-16, 87:22-88:8 (App. pp. 62-64); Ex. 4, August 13, 2024 Deposition of David Fuller ("Fuller August Depo.") 23:5-8 (App. p. 73). Moreover, Fuller admitted that his lost revenue comparison analysis assumes there is an underlying breach of AA's contracts of carriage. Ex. 3, Fuller June Depo. 63:3-64:6 (App. pp. 57-58). Thus, Fuller's lost profits/revenue analysis contained in the Fuller Original Report addressed only AA's now disposed of contract claims and the supplemental report's last-minute pivot to apply Fuller's prior damages calculations to assert actual damages on AA's trademark claims is untimely.

There is no justification as to why Fuller's new opinion and analysis regarding merchant fees and recoupment could not have been included in his Original Report or made part of a timely supplement. Fuller and AA had access to the underlying information prior to Fuller's May 31 Original Report because that is AA's own information. Moreover, the new opinions in no way relate to the Skiplagged database production on July 1, 2024—the basis for AA's motion to allow Fuller to supplement his report. Consequently, Fuller's new opinions and analysis regarding actual damages to AA must be stricken and excluded.

## II.   Fuller's opinions fail to satisfy Fed. R. Evid. 702

### A.  Legal standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence, permitting opinion testimony of a witness "'qualified as an expert by knowledge, skill, experience, training, or education' if the expert's knowledge will assist the trier of fact and (1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) 'the expert has reliably applied the principles and methods to the facts of the case.'" *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) (quoting Fed. R. Evid. 702). A court, in performing its gatekeeper function, must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony, as reflected in Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

"[T]he expert's testimony must be reliable at each and every step or else it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Seaman v. Seacor Marine*, LLC, 326 Fed. Appx. 721, 725 (5th Cir. 2009). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Id.* "[E]xpert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 Fed. Appx. 513, 515 (5th Cir. 2013) (internal quotations omitted). *"*When an expert's testimony is not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position, the trial court should exclude it." *Id.* (internal quotations omitted) (alternation in original).

Further, the party offering the expert opinion bears the burden of establishing its

16

admissibility by a preponderance of the evidence. *See U.S. v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003); *Seaman*, 326 F. App'x at 724. Where the challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. U.S.*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Additionally, an expert may not testify regarding legal conclusions. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir.1999) (affirming exclusion of expert legal opinion "'tell[ing] the trier of fact what to decide'" (alteration in original)).

Expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed." Fed. R. Evid. 703. However, numerous cases, including in the Fifth Circuit, support the proposition that "Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.'" *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) (quoting *Factory Mutual Insurance Co. v. Alon USA LP*, 705 F.3d 518, 524 (5th Cir. 2013) (quoting *Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005)); *Orthoflex, Inc. v. Thermotek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him.").

"The danger of allowing an expert to simply summarize evidence provided to the expert by the party that retained him is, of course, that the expert will become a vehicle through whom the party can summarize its case for the jury, with the imprimatur of the expert's asserted

'expertise.' Courts have regularly barred experts from testifying in that manner." *Robroy*, 2017 WL 1319553 at *10; *See, e.g., Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."); *Orthoflex*, 986 F. Supp. 2d at 798 ("Nor is it acceptable for a party to call a witness who, after synthesizing the party's trial arguments, presents them as expert opinions."); *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361 (5th Cir. 2010) (striking expert opinion on lost profits based on insufficient facts and data, including unsupported assumptions).

### B. Fuller's opinions contain legal conclusions and assumptions that lack independent analysis

Fuller's expert testimony and opinions on causation and the "but-for" world should be excluded because they contain improper legal conclusions and assumptions that lack independent analysis. Specifically, Fuller opines that: (1) Skiplagged would not have received any of the calculated revenue but for its infringement of AA's trademarks; (2) there is a reasonable causal nexus between Skiplagged's unauthorized sale of AA tickets and its revenue from the sale of those tickets; (3) Skiplagged has unjustly enriched itself through the sale of AA tickets; and (4) but-for Skiplagged's existence, every Skiplagged customer would have purchased an AA ticket at the same time and higher price directly from AA. These opinions are speculative.

Fuller's opinions merely regurgitate the causation assumptions that AA needs the jury to accept to be successful on its damages claims at trial. Fuller admits he did no independent causation analysis to support his opinions. Specifically, Fuller admits he did no analysis of whether consumers would have purchased AA flights facilitated by Skiplagged with Skiplagged's use of AA's logo versus without the use of AA's logo nor did Fuller analyze any apportionment of Skiplagged's revenue that could be attributed to the use of AA's logo versus the use of AA's name (*i.e.* copyright vs. trademark). Ex. 3, Fuller June Depo. 89:1-6, 89:15-90:1 (App. pp. 65-66).

Further, Fuller fails to cite to any specific reference in support of his assumption that without the existence of Skiplagged, each and every customer would have purchased the exact same AA flight directly from AA. Ex. 1, ¶ 40 (App. pp. 12-13); Ex. 2, ¶ 38 (App. p. 41). Instead, Fuller admits, without any evidence to support his assumption, that he ignored any other alternatives to flight purchases such as through a travel agent, another air carrier, a cheaper time and date, or not traveling by plane at all. Ex. 3, Fuller June Depo. 70:15-23 (App. p. 59); Ex. 4, Fuller August Depo. 55:12-56:2, 57:8-14, 59:12-60:1, 60:10-21 (App. pp. 80-84). At the same time, however, Fuller admits those consumers have choices beyond just purchasing the exact same flight from AA. Ex. 3, Fuller June Depo. 70:24-71:1, 72:2-12 (App. pp. 59-61); Ex. 4, Fuller August Depo. 59:23-60:1 (App. pp. 83-84). Unsupported opinions like these are inherently unreliable. *Moore*, 547 Fed. Appx. at 515.

Further, Fuller's opinions amount to improper legal conclusions. An expert's legal conclusion "both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Expert opinions regarding "reasonable cause" are impermissible legal opinions. *Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999) (excluding expert testimony as inadmissible legal opinion on the issue of "reasonable cause"). Similarly, whether a party has been "unjustly enriched" is a legal conclusion not appropriate for an expert's opinion. *See StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 9899920, at *19 (E.D. Tex. June 28, 2019) (striking expert testimony that part had been unjustly enriched because "it would confuse the jury and give undue significance to…damages related testimony").

Because Fuller's opinions amount to improper legal conclusions and assumptions that lack independent analysis, they should be stricken and Fuller not permitted to testify to same at trial.

19

### C. Fuller's actual damages opinion is unreliable

Even if Fuller's updated actual damages opinion was timely, it should be stricken as unreliable because it is based on faulty data and lacks independent analysis. Expert "opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc*., No. A-14-CA-00847-SS, 2016 WL 6075566, at *3 (W.D. Tex. Apr. 22, 2016) (quoting *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010)). It follows, an expert's failure to independently analyze relevant sales figures or perform independent analysis on the figures he relied upon is a "fatal flaw to the expert's methodology and reliability." *See Prepaid Wireless Servs., Inc. v. Sw. Bell Wireless, Inc.*, No. CIV.A. M-00-302, 2002 WL 34367328, at *2 (S.D. Tex. July 23, 2002).

An expert cannot substitute independent analysis with a party's own statement or estimate. *See id.* at *4; *see Orthoflex,* 986 F. Supp. at 798 ("an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."); *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (granting motion to exclude expert testimony where expert did not conduct independent analysis and instead relied primarily on what interested party told him); *Stinson Air Ctr., LLC v. XL Specialty Ins. Co*., 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) (granting motion to exclude expert testimony where expert based opinions on representations of interested party and not on independent review of ordinary sources of financial analysis).

#### i. *Lanham Act actual damages*

Actual damages under the Lanham Act may include "any damages sustained by the plaintiff" (15 U.S.C. § 1117(a)), but such damages must be compensatory, not punitive. *BMC*

*Software, Inc. v. Baker Hughes, a GE Co., LLC,* No. CV H-19-4810, 2022 WL 4390612, at *2 (S.D. Tex. Aug. 24, 2022), report and recommendation adopted sub nom. *BMC Software, Inc. v. Baker Hughes*, No. CV H-19-4810, 2022 WL 4389524 (S.D. Tex. Sept. 22, 2022) quoting *Am. Airlines, Inc. v. Delta Air Lines, Inc.,* No. 4:19-cv-1053-0, 2021 WL 3629735, at *18 (N.D. Tex. May 18, 2021); *Texas Pig Stands, Inc. v. Hard Rock Cafe International, Inc*., 951 F.2d 684, 697 (5th Cir. 1992) ("Remedies are intended to make violations of the Act unprofitable, but not to act as a penalty"). Likewise, a plaintiff must submit evidence that it has sustained actual damage as a result of the infringement. *Choice Hotels Int'l, Inc. v. Frontier Hotels, Inc*., No. CV H-15-2355, 2016 WL 4367993, at *5 (S.D. Tex. Aug. 15, 2016) citing *Rodeway Inns Int'l., Inc. v. Amar Enter., Inc*., 742 F. Supp. 365, 369 (S.D. Miss. 1990) (Lee, J.) ("A determination of damages under the Lanham Act must be supported by evidence of actual damage suffered by the plaintiff").

Separately, the "[r]ecovery of damages for trademark infringement is subject to the usual standards of damages: plaintiff must prove both causation and amount." *Camowraps, LLC v. Quantum Dig. Ventures LLC*, 74 F. Supp. 3d 730 at 741 (E.D. La. 2015), quoting 5 McCarthy on Trademarks and Unfair Competition § 30:72. Such damages must also be attributable to the infringement. *See Exxon Mobil,* 2015 U.S. Dist. LEXIS 186394 at *7.

Actual damages under the Lanham Act are "any damages sustained by the Plaintiff," (15 U.S.C. § 1117), and typically include damages such as the trademark owner's lost profits or sales, reasonable royalty (in some circumstances), corrective advertising, or damage to business reputation in particular. *C.V. v. Casa Azul Spirits, LLC*, No. CV H-22-2972, 2023 WL 7284182, at *7-8 (S.D. Tex. Nov. 3, 2023); *see also Ill. Tool Works, Inc. v. Rust-Oleum Corp*., 955 F.3d 512, 515 (5th Cir. 2020) (speaking to whether and when corrective advertising damages may be appropriate); *BMC Software, Inc. v. Baker Hughes, a GE Co., LLC,* 2022 WL 4390612 at *2

(same). Fuller did not analyze AA's alleged Lanham Act actual damages under reasonable royalty, corrective advertising or damage to business reputation theories. Ex. 4, Fuller August Depo. 27:7-22 (App. p. 75). Similarly, Fuller has no opinion on statutory damages under the Lanham Act. *Id.* at 48:21-24 (App. p. 76).

### ii. Copyright actual damages

For copyright actual damages, it is a plaintiff's burden to prove the actual damages sought are attributable to the infringement. *PAR Microsystems v. Pinnacle Dev. Corp*., 995 F. Supp. 658, 661 (N.D. Tex. 1998). "The plaintiff must also prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement." *Id*., citing *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir. 1977) ("Damages may be recovered only if there is a necessary, immediate and direct causal connection between the wrongdoing and the damages").

Actual copyright damages may consist of a reasonable royalty, expressed as the market value of a license fee. *See MGE UPS,* 622 F.3d at 367. But, Fuller has no opinion on reasonable royalties as a form of damages in this case. Ex. 4, Fuller August Depo. 27:7-14 (App. p. 75). And again, Fuller has no calculations or opinions on statutory copyright damages. *Id.* at 48:16-20 (App. p. 76).

### iii. Fuller's actual damages opinions

Fuller's actual damages to AA opinion, for both the Lanham Act and copyright claims, is based on lost revenue AA alleges it would have earned if Skiplagged had not utilized AA's trademarks or copyright. Ex. 2, pp. 10-12 (App. pp. 41-43). This damages model is new as of Fuller's Supplemental Report as AA previously alleged its actual damages model was based off of lost revenue AA would have received had Skiplagged not facilitated hidden city ticketing in

violation of the Contract of Carriage.[1] Ex. 1, ¶ 40 (App. pp. 12-13). Despite the untimely change in theory, Fuller uses the exact same calculations and methodology to revise his actual damages figures. In other words, despite the focus now being on trademark infringement (which has nothing to do with hidden-city ticketing), Fuller still calculates lost revenue as money AA allegedly would have received had Skiplagged not facilitated hidden city tickets. Ex. 2, ¶ 38 (App. p. 10). This is not the appropriate methodology for determining actual damages for trademark infringement claims.

Additionally, Fuller did nothing to analyze whether consumers would have purchased AA tickets facilitated by Skiplagged with versus without the AA logo nor with or without the AA trademarks. Ex. 3, Fuller June Depo. 89:1-6, 89:15-90:1 (App. pp. 65-66). In sum, Fuller's actual damages methodology is inapplicable to AA's alleged copyright and trademark damages. Thus, Fuller's actual damages opinions are not relevant and would significantly confuse the jury as to the issues ripe for trial.

Even if Fuller's actual damages calculations were relevant, the calculations are so flawed and not based on objective facts and figures that the calculations are unreliable. First, without any underlying support, analysis, or evidence, Fuller assumes that every single customer that purchased a hidden-city flight facilitated by Skiplagged would have purchased the exact same flight, at the same time and date, for a higher price, directly from AA. Ex. 1, ¶, 40 (App. pp. 12-13); Ex. 2, ¶ 38 (App. p. 10). Though he acknowledges consumers have multiple travel options, Fuller did no analysis and took no consideration of customers' nearly endless options absent Skiplagged. Ex. 3, Fuller June Depo. 70:24-71:1, 72:2-12 (App. pp. 59-61); Ex. 4, Fuller August Depo. 59:23-60:1

---

[1] Indeed, Fuller testified that he was not even asked to perform an analysis for actual trademark damages and has no opinion as to actual copyright damages. Ex. 4, Fuller August Depo. 23:5-8; Ex. 3, Fuller June Depo. 87:22-88:8.

(App. pp. 83-84). Fuller's reliance on the completely unsubstantiated assertion that each and every customer that utilized Skiplagged would have purchased an identical ticket for more money directly from AA makes his damages opinion inadmissible. *See Moore*, 547 Fed. Appx. at 515.

Second, Fuller's actual damages calculations are fundamentally flawed because even though AA has access to actual data that could be utilized in a lost profits analysis, Fuller instead relies on inaccurate test data from a five month time period and applies it to every single flight (regardless of hidden city or not) that Skiplagged facilitated for AA since 2018, or the applicable 3 or 4 year limitations period. Ex. 2, pp. 10-12 (App. p. 41-43). AA and Fuller have been well aware that the spreadsheet Fuller relied upon (SKP00081039) was part of a trial project that produced inaccurate data. *See* Dkt. 90-91 (filed April 15, 2024, prior to Fuller's Original Report); Ex. 4, Fuller August Depo. 51:10-52:6 (App. pp. 77-78). Further, AA's corporate representative testified that AA could access actual data via historical fare shopping to determine the price difference between Skiplagged and AA. Ex. 5, Deposition of AA's Corporate Representative ("AA Depo.") 40:18-41:13, 42:4-43:8 (App. pp. 94-97). In other words, rather than relying on known inaccurate data from a five-month period and extrapolating those numbers out, Fuller could have and should have utilized AA's actual data to determine the alleged lost profits. In fact, Fuller didn't even ask AA for this data. Ex. 4, Fuller August Depo. 53:14-16 (App. p. 79). Thus, Fuller's actual damages calculations are not based on insufficient information, making his opinion unreliable, and it should be excluded at trial. *See Seaman*, 326 Fed. Appx. at 725.

### D.  Fuller's profit analysis damages opinions are unreliable

Finally, Fuller's opinion on the profits of Skiplagged fails to meet the standards set out in above as to both of AA's claims of copyright and trademark. All Fuller provided is information as to Skiplagged's revenues for particular periods of time. He provided no opinion, nor has he done

any analysis, of how such revenues are attributable or reasonably related to any use by Skiplagged, of the flight symbols or the name American Airlines displayed on Skiplagged's website. He also has done no analysis of the so-called *Pebble Beach* factors as to the trademark claim. Such is fatal to the propriety and admissibility of such opinions.

## **CONCLUSION**

For these reasons, Defendant Skiplagged, Inc. requests that the Court strike and exclude the expert testimony and opinion of Plaintiff AA's expert David Fuller and grant all other relief to which Skiplagged may be justly entitled.

Dated: August 26, 2024

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com

kreed@condontobin.com
acampbell@condontobin.com

*/s/ Darin M. Klemchuk*
Darin M. Klemchuk
Texas Bar No. 24002418
KLEMCHUK PLLC
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

*Attorneys for Defendant, Skiplagged, Inc.*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Plaintiff regarding the relief requested herein. Counsel stated that Plaintiff is opposed.

*/s/ William L. Kirkman*
William L. Kirkman

## CERTIFICATE OF SERVICE

On August 26, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Abigail R.S. Campbell*
Abigail R.S. Campbell