IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO EXCLUDE EXPERT
OPINIONS AND TESTIMONY OF JOSEPH M. PIMBLEY, PHD
AND BRIEF IN SUPPORT**

---

**TABLE OF CONTENTS**

                                                                                                **PAGE**

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD ....................................................................................... 1

III.    ARGUMENT ..................................................................................................... 3

        A.      Dr. Pimbley is not an expert on consumer surveys or likelihood of confusion. ..... 3

        B.      Dr. Pimbley contradicts established case law and methodology on consumer
                surveys. ............................................................................................................. 5

        C.      Dr. Pimbley does not understand consumer deception. ......................................... 6

        D.      Dr. Pimbley's remaining criticisms are *ipse dixit* and confusing........................... 8

IV.     CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..........................................................................................................1, 2

*DeWolff, Boberg & Assocs., Inc. v. Pethick*,
    No. 3:20-CV-3649-L, 2024 WL 1396267 (N.D. Tex. Mar. 31, 2024) ...................................1, 2

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)................................................................................................................3

*Goodman v. Harris County*,
    571 F.3d 388 (5th Cir. 2009) ................................................................................................2

*Jezek v. R.E. Garrison Trucking, Inc.*,
    No. 4:21-cv-01102-O, 2022 WL 18717712 (N.D. Tex. Nov. 1, 2022) .....................................2

*Jim S. Adler, P.C. v. McNeil Consultants, LLC*,
    No. 3:19-CV-2025-K-BN, 2023 WL 5600128 (N.D. Tex. July 27, 2023), *report*
    *and recommendation adopted*, 2023 WL 5604169 (N.D. Tex. Aug. 28, 2023) ........................7

*Knight v. Kirby Inland Marine Inc.*,
    482 F.3d 347 (5th Cir. 2007) .............................................................................................2, 3

*M2 Software, Inc. v. Madacy Ent.*,
    No. CV 00-2853 AHM RZX, 2003 WL 25667611 (C.D. Cal. Jan. 3, 2003) ...........................4

*NFL Properties, Inc. v. Wichita Falls Sportswear, Inc.*,
    532 F. Supp. 651 (W.D. Wash. 1982).....................................................................................4

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ................................................................................................3

*Scott Fetzer Co. v. House of Vacuums Inc.*,
    381 F.3d 477 (5th Cir. 2004) ................................................................................................5

*Slaughter v. Southern Talc Co.*,
    919 F.2d 304 (5th Cir. 1990) ................................................................................................9

*SquirtCo. v. Seven-Up Co.*,
    628 F.2d 1086 (8th Cir. 1980) ..............................................................................................4

*Union Carbide Corp. v. Ever-Ready Inc.*,
    531 F.2d 366 (7th Cir. 1976) ................................................................................................4

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ................................................................................................2

**RULES**

FED. R. EVID. 702 ................................................................................................................1, 2

FED. R. EVID. 702(c) ...............................................................................................................2

## I.      INTRODUCTION

Skiplagged retained Dr. Joseph M. Pimbley as a purported "rebuttal" expert to American's likelihood of confusion expert, Dr. Yoram "Jerry" Wind. [*See* Dkt. No. 122 at 1; App'x 167, 171 (Pimbley Report, p. 4 ¶ 11)]. Dr. Wind is a well-established survey expert who conducted a likelihood of confusion survey using screenshots from Skiplagged's own website as the stimuli and using screenshots from Expedia's website as a control. [*See* App'x 013–16 (Wind Report, p. 8–11)]. He then asked survey respondents a series of questions, including whether respondents thought the website belonged to an authorized agent of the airline. [App'x 016–32 (Wind Report, p. 11–27)]. Based on these screenshots, over 60% of respondents thought Skiplagged was an authorized agent of American Airlines or had some other relationship with American airlines. [App'x 044, 092 (Wind Report, p. 39, 87)].

But Skiplagged's rebuttal expert Dr. Pimbley does not have any specialized knowledge, skill, experience, training, or education about likelihood of confusion, consumer confusion surveys—or even trademarks; indeed, he doesn't know anything about these subjects *at all*. As a result, he is not qualified to offer a relevant opinion in this case. In some instances, Dr. Pimbley's opinions even contradict well-established principles of likelihood of confusion surveys. Because Dr. Pimbley is entirely unqualified to testify on likelihood of confusion, and because he demonstrated he does not even understand the most basic requirements of a likelihood of confusion survey, his testimony would confuse rather than help the jury. The Court should exclude his opinion in its entirety.

## II.      LEGAL STANDARD

Trial courts act as gatekeepers for expert testimony, determining its admissibility based on Rule 702 of the Federal Rule of Evidence as well as *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. *DeWolff, Boberg & Assocs., Inc. v. Pethick*, No. 3:20-CV-3649-

L, 2024 WL 1396267, at *3 (N.D. Tex. Mar. 31, 2024). Under Rule 702, an expert witness may

provide expert opinions if:

> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)     the testimony is based on sufficient facts or data;
> (c)     the testimony is the product of reliable principles and methods; and
> (d)     the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert* and its progeny, expert testimony is admissible if the proponent

of the testimony establishes: (1) the expert is qualified; (2) the evidence is relevant to the suit; and

(3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997).

"The burden is on the proponent of the expert testimony to establish its admissibility by a

preponderance of the evidence." *DeWolff, Boberg & Assocs.*, 2024 WL 1396267, at *3.

An expert may be qualified "by knowledge, skill, experience, training, or education." FED.

R. EVID. 702. An expert may not "go beyond the scope of his expertise in giving his opinion."

*Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009); *Jezek v. R.E. Garrison Trucking,*

*Inc.*, No. 4:21-cv-01102-O, 2022 WL 18717712, at *3 (N.D. Tex. Nov. 1, 2022) (expert testimony

inadmissible under Rule 702 when expert "concede[s] that he lacks both training and experience"

regarding the specific topic at issue).

"Reliability is determined by assessing 'whether the reasoning or methodology underlying

the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th

Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93); *see also* FED. R. EVID. 702(c) (testimony must

be "the product of reliable principles and methods"). Expert testimony "must be reliable at each

and every step," including "the methodology, the facts underlying the expert's opinion, [and] the

link between the facts and the conclusion." *Knight*, 482 F.3d at 355 (citation omitted). Where

"opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert," a "court

may conclude that there is simply too great an analytical gap between the data and the opinion proffered" and exclude the expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 593).

### III.    ARGUMENT

**A.    Dr. Pimbley is not an expert on consumer surveys or likelihood of confusion.**

Dr. Pimbley is not qualified to offer *any* opinion on the Wind Survey or likelihood of confusion, generally. Indeed, in his deposition he *admitted* he was not an expert on consumer confusion. Instead, his CV demonstrates that his expertise, if any, is in financial risk analysis. [App'x 169–71, 194–95 (Pimbley Report, p. 2–4, 27–28)]. Notwithstanding his retention to "review and respond to the report of Professor Yoram (Jerry) Wind with specific emphasis on the analysis, interpretation, and integrity of survey data disclosed therein," nothing in his CV demonstrates any experience, training, or knowledge with trademarks or consumer confusion. [*See id.*; App'x 171 (Pimbley Report, p. 4 ¶ 11)].

Unsurprisingly, this lack of relevant experience showed during Dr. Pimbley's deposition. There, Dr. Pimbley affirmed that he knows *nothing* about likelihood of confusion or consumer surveys and admitted he was not an expert in the field of likelihood of confusion. [App'x 230 (Pimbley Depo., 95:22–96:5)]. He has never conducted or designed a consumer survey or likelihood of confusion study. [App'x 215 (Pimbley Depo., 34:11–35:3)]. He does not know the meaning of the term "likelihood" in the context of confusion studies, and he has not reviewed and

3

is not familiar with any of the legal standards or cases that govern a likelihood of confusion analysis:

> Q. So you—I'm going to go through some cases here. And I know you've already answered, but you've never read the "Eveready"[1] case, for example?
> A. No, sir.
> Q. You've never read the "Squirt" case?
> A. No, sir.
> Q. Never read the "NFL Properties" case?
> A. No, sir.
> Q. Okay. You've never read any court cases either approving or rejecting expert testimony on consumer confusion surveys?
> A. No, sir.

[App'x 215 (Pimbley Depo., 35:4–36:6)]. Dr. Pimbley has never written or published an article, or made any presentations on consumer confusion, and has performed no legal or consultative work in this area. [App'x 218 (Pimbley Depo. at 46:15–47:1)].

Even more troubling, Dr. Pimbley does not even know what a trademark is. When asked if he had ever consulted on a trademark case, he began describing a patent case and a trade secret case. Ultimately, to facilitate discussion at the deposition, counsel had to explain to the purported expert what a trademark actually is. [App'x 209–11 (Pimbley Depo., 12:18–20:8)].

Rather than the recognized fields of consumer confusion or trademarks, Dr. Pimbley holds himself out as an expert in field of "critical thinking." [App'x 212–13 (Pimbley Depo., 24:16–28:10)]. But "critical thinking" is hardly a recognized field of study, and allowing experts in such a nebulous discipline will surely invade the province of the jury. *See*, *e.g.*, *M2 Software, Inc. v. Madacy Ent.*, No. CV 00-2853 AHM RZX, 2003 WL 25667611, at *4 (C.D. Cal. Jan. 3, 2003) (finding individual did not qualify as an expert on consumer surveys "by knowledge, skill,

---

[1] The *Ever-Ready*, *Squirt* and *NFL Properties* cases are seminal cases on likelihood of confusion surveys, of which any competent expert would be familiar. *See SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086 (8th Cir. 1980); *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976); *NFL Properties, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651 (W.D. Wash. 1982).

experience, training, or education" where individual had an MBA and undergraduate degree in electrical engineering and had only taken one marketing course).

Dr. Pimbley's utter lack of knowledge of trademarks and likelihood of confusion is disqualifying. Unsurprisingly, his ignorance has also led him to offer opinions which are flatly contrary to established case law, principles, and methodology required to properly conduct a consumer survey. Given this myriad of issues, the Court should exclude his testimony in full.

**B.      Dr. Pimbley contradicts established case law and methodology on consumer surveys.**

Dr. Pimbley's ignorance of trademark law led him to offer opinions which are flatly contrary to established case law, principles, and methodology required to properly conduct and analyze a consumer survey. Particularly, Dr. Pimbley incorrectly opines that Dr. Wind did not survey the correct "universe" of consumers.

According to Dr. Pimbley, his critique that survey respondents are "not the proper population" is a "dominant feature" of his report. [App'x 225 (Pimbley Depo., 77:14–77:18)]. Dr. Pimbley claims that Dr. Wind should have only surveyed *actual* Skiplagged customers. [App'x 186–88 (Pimbley Report, p. 19–21); App'x 227 (Pimbley Depo., 83:17–84:18)]. Dr. Pimbley's support for this argument is a generic book on statistics and an entry in the "*Encyclopaedia Britannica*". [App'x 186–87 (Pimbley Report, p. 19 n.12 & p. 20 n.13); App'x 217 (Pimbley Depo., 44:21–45:24)].

But Dr. Pimbley's opinion as to the relevant "universe" of consumers flatly contradicts well-established case law and methodology on surveys. In *Scott Fetzer Co. v. House of Vacuums Inc.*, the Fifth Circuit explicitly *rejected* a trademark owner's survey *because* it was limited solely to the defendant's customers (among other reasons). 381 F.3d 477, 487–88 (5th Cir. 2004). The relevant legal question here is *likelihood* of confusion amongst *all* consumers. Limiting a survey to the infringers' *actual* customers would tend to artificially inflate the degree of confusion. For

5

this reason, "the proper universe to survey is composed of the *potential* buyers of the junior user's goods or services." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 32:159 (emphasis added).

Indeed, Dr. Pimbley's deposition also revealed that he does not understand the difference between actual confusion and a likelihood of confusion:

> Q. Okay. If I told you that one type of evidence of actual confusion would be things like customer complaints that demonstrated in the text of the complaint, "Oh, I thought I was dealing with American," just hypothetically, is that consistent with what you're thinking when I say "actual confusion"?
> A. No.
> Q. No? What are you thinking when I say "actual confusion"?
> A. I mean actual confusion is—I honestly don't know what—I would say in this case, Professor Wind is—let me take it apart. I'm genuinely confused about something. Okay. I'm generally—I—
> Q. Okay.
> A. —I walked the wrong way to try to get to this building yesterday type of thing.

[App'x 227–28 (Pimbley Depo. at 85:17–86:11)]. This exchange illustrates the fundamental problem underlying *all* of Dr. Pimbley's opinions; if he does not understand the key distinction between actual confusion and likelihood of confusion, how can he help a jury understand a fact in issue? Indeed, ironically, the only "actual confusion" that his testimony would elucidate would be the jury's.

## C.     Dr. Pimbley does not understand consumer deception.

Dr. Pimbley also fundamentally misunderstands consumer deception. Dr. Pimbley opines that Dr. Wind's report does not "support allegations of deceit on the part of Skiplagged" because, he believes, the Wind Report does not provide any data. [App'x 188 (Pimbley Report, p. 21 (Section V heading))]. This opinion is nonsense; Dr. Wind designed and executed a likelihood of confusion survey with ample data to support his claims of deception. Dr. Pimbley apparently fails to understand that the survey itself is the data, which, given his lack of expertise is perhaps, unsurprising. Survey data may not be sufficient in Dr. Pimbley's self-defined field of "critical

thinking," but it is the heart of consumer confusion testimony—about which he admits he knows nothing. Dr. Wind's survey was properly designed and executed. No additional "data" is required.

Indeed, this survey is well designed, with a respondent group and a control group properly implemented. The survey respondents saw only *Skiplagged's own website*, and those in the control group saw *Expedia's* website. Any difference in the survey respondents' reactions to these stimuli demonstrates confusion and deception, as those terms are defined in trademark law; those survey respondents that saw Skiplagged's website and believed Skiplagged was an agent or affiliate of American are, *by definition*, deceived. [App'x 044, 092 (Wind Report, p. 39, 87)]. Dr. Pimbley apparently does not understand this connection, and in any event, is unqualified to critique it.

Dr. Pimbley's repeated claim that the Wind Report "fails" to show what the survey respondents "believed" is merely arguing semantics (semantics Dr. Pimbley does not understand, since he does not know what a trademark is) and conveniently ignores the basic principles of consumer surveys, because he is wholly unfamiliar with them. [App'x 174–75, 177–79 (Pimbley Report at p. 7–8, 10–12 ¶¶ 19a, 21a, 21d); App'x 285, 302–03, 305–06 (Wind Depo. at 151:14–152:2, 218:22–220:16, 222:6–222:9, 232:21–234:16)]. "Consumer surveys qualify as evidence of actual confusion, and the Fifth Circuit has found a survey showing a 15% confusion rate to be 'strong evidence indicating a likelihood of confusion.'" *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-CV-2025-K-BN, 2023 WL 5600128, at *9 (N.D. Tex. July 27, 2023), *report and recommendation adopted*, 2023 WL 5604169 (N.D. Tex. Aug. 28, 2023) (citing *Viacom Int'l v. IJR Cap. Inv., LLC*, 891 F.3d 178, 197 (5th Cir. 2018) and *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 507 (5th Cir. 1980)). Dr. Pimbley apparently disagrees that consumer confusion surveys can show a likelihood of confusion, but his opinion directly contradicts clearly established law, and therefore should not be permitted.

Dr. Pimbley essentially argues that the Wind report fails to show that Skiplagged *intended* to deceive individual survey respondents, but of course, intent to deceive (a) is not the object of conducting a survey, (b) can be inferred from the survey results, as well other evidence in the case, and (c) is not the subject of Dr. Wind's report. [App'x 174–180, 188 (Pimbley Report, p. 13–16 ¶¶ 22–25, p. 21 ¶ 37)]. Dr. Pimbley's own misunderstanding will only confuse the jury about the applicable legal principles, and his opinions necessarily have no bearing on any issue the jury will be asked to consider.

**D.     Dr. Pimbley's remaining criticisms are *ipse dixit* and confusing.**

In addition to the defects identified above, there are additional elements in Dr. Pimbley's report that demonstrate his opinions have no evidentiary value. Many of Dr. Pimbley's statements are mere *ipse dixit*, while others are based on an apparent misunderstanding (whether intentional or not) of the evidence. Allowing a jury to hear these bold, unfounded statements could only result in confusion at trial.

For example, Dr. Pimbley appears confused as to why the Wind Survey presented some survey respondents with Expedia stimuli (the control stimuli and others with Skiplagged stimuli). [App'x 173, 175 (Pimbley Report, p. 6, 8 ¶¶ 17a, 19a)]. Any properly qualified expert (and indeed, many lay observers) could understand that Expedia is the control stimuli because Expedia *is* an authorized agent of American, allowing it to legally display American's registered marks on its website and act as an agent in selling airfares to consumers. [App'x 183 (Pimbley Report, p. 16 ¶ 25d) (contending no evidence Expedia is an authorized agent of American)]. Thus, the fact that nearly as many survey respondents believed Skiplagged is an authorized agent of American (43%), as those that believed Expedia is an authorized agent of American (56%), clearly demonstrates Skiplagged's use of American's trademarks is deceptive and causes consumer confusion. [App'x 044 (Wind Report, p. 39)]. Dr. Pimbley simply ignores or misunderstands this fact.

8

Most disturbing, Dr. Pimbley also claims that nothing in questions #1 through #11 of the Wind Survey is associated with American, but this ignores the fact that the survey showed respondents Skiplagged's website which included American's trademarks. [App'x 174 (Pimbley Report, p. 7 ¶ 17c); App'x 096–97, 099–103, 106–11 (Appendix C-2 to Wind Report, p. 1–2, 4–8, 11–16; App'x 113 (Appendix C-4 (Hidden City) to Wind Report, at p. 1);  App'x 140 (Appendix C-4 (Non-Hidden City) to Wind Report, p. 1)]. Similarly, he claims that that the survey respondents could not know American was involved in the Wind Study but this is also refuted by the stimuli presented to the survey respondents. [App'x 175–76 (Pimbley Report at p. 8–9 ¶ 19c); App'x 096–97, 099–103, 106–11 (Appendix C-2 to Wind Report, p. 1–2, 4–8, 11–16; App'x 113 (Appendix C-4 (Hidden City) to Wind Report, at p. 1);  App'x 140 (Appendix C-4 (Non-Hidden City) to Wind Report, p. 1); App'x 232 (Pimbley Depo., 102:20–102:24) (admitting survey respondent would have already seen stimuli regarding purchasing an American ticket)]. It appears that Dr. Pimbley's opinions are based on a misunderstanding—or mischaracterization—of the Wind Survey and the underlying data. In either case his opinions are unreliable and they should be excluded. *Slaughter v. Southern Talc Co.,* 919 F.2d 304, 307 (5th Cir. 1990) (holding that the expert's opinions were inadmissible when premised on unsupported conclusions and erroneous data).

The remaining opinions expressed in Dr. Pimbley's report are merely conclusory statements that Dr. Wind's report does not present sufficient data. None of these statements are supported by analysis; they are solely supported by Dr. Pimbley's conclusory claim—which itself not supported by any statistical analysis—that the data is not "statistically significant." These opinions, along with all others offered by Dr. Pimbley, should be excluded.

## IV.    CONCLUSION

For the reasons stated above, the Court should grant American's Motion to Exclude Expert

Opinions and Testimony of Joseph M. Pimbley, PhD, striking Dr. Pimbley's expert report and

excluding his opinions and testimony from this litigation.

Dated: August 26, 2024                              Respectfully submitted,

/s/ Dee J. Kelly, Jr.
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8003

Cameron M. Nelson
nelsonc@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-6590

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

10

**CERTIFICATE OF CONFERENCE**

I certify that on August 26, 2024, I conferred with Bill Kirkman, counsel for Skiplagged, who stated that Skiplagged is opposed to the relief requested herein.

/s/ Julia G. Wisenberg_____
Julia G. Wisenberg

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

/s/ Dee J. Kelly, Jr._____
Dee J. Kelly, Jr.

11