IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO EXCLUDE
EXPERT OPINIONS AND TESTIMONY OF BIJAN VASIGH, PHD
AND BRIEF IN SUPPORT**

---

# <u>TABLE OF CONTENTS</u>

**PAGE**

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

    A.    Dr. Vasigh's experience. .............................................................................. 2

    B.    Dr. Vasigh's proffered opinions. ................................................................. 3

III.  LEGAL STANDARD ............................................................................................... 5

IV.  ARGUMENT ........................................................................................................... 6

    A.    Vasigh's Report Should be Excluded as Unreliable. ................................... 6

        1.    Dr. Vasigh's opinions are unreliable because they cite to no data and he fails to explain how his knowledge and experience support his opinions.......................................................................................... 8

        2.    Dr. Lee's Report refutes Dr. Vasigh's opinions ....................................... 10

            a.    Deregulation has led to an increase in low cost carriers' share of passengers. ..................................................................... 11

            b.    American does not hold a "monopoly position" and low cost carriers have increased their presence in hub-to-hub routes......... 12

            c.    There is no "hub premium" for travel on American to/from DFW. ...................................................................................... 13

            d.    Vasigh did not account for obvious alternative reasons for why Skiplagged's business exists and why Skiplagging hurts passengers and American's business. ............................................ 14

    B.    The Court should exclude Dr. Vasigh as he makes legal conclusions and his opinions are not relevant to this case. .................................................... 17

    C.    Dr. Vasigh's Report is barred by Rule 403 because it confuses the issues and will mislead the jury. ...................................................................................... 19

V.   CONCLUSION ........................................................................................................ 20

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*Bocanegra v. Vicmar Servs., Inc.*,
    320 F.3d 581 (5th Cir. 2003) ................................................................................17

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...................................................................................5, 7, 17, 19

*DeWolff, Boberg & Assocs., Inc. v. Pethick*,
    2024 WL 1396267 (N.D. Tex. Mar. 31, 2024) ................................................5, 10

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..........................................................................................6, 9

*Goodman v. Harris County*,
    571 F.3d 388 (5th Cir. 2009) ..................................................................................5

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) ............................................................................7, 14

*Guillory v. Domtar Indus. Inc.*,
    95 F.3d 1320 (5th Cir. 1996) .......................................................................7, 8, 20

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) ..................................................................................8

*Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*,
    574 F. App'x 486 (5th Cir. 2014)....................................................................17, 18

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    807 F. App'x 344 (5th Cir. 2020) ...........................................................................7

*Jezek v. R.E. Garrison Trucking, Inc.*,
    2022 WL 18717712 (N.D. Tex. Nov. 1, 2022)........................................................5

*Knight v. Kirby Inland Marine Inc.*,
    482 F.3d 347 (5th Cir. 2007) ..............................................................................6, 7

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) ..................................................................................6

*Moore v. Int'l Paint, L.L.C.*,
    547 F. App'x 513 (5th Cir. 2013) ...........................................................................7

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) ..................................................................................7

*Pipitone v. Biomatrix, Inc.*,
    288 F.3d 239 (5th Cir. 2002) ..................................................................6

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ................................................................17

*Renfroe v. Parker*,
    974 F.3d 594 (5th Cir. 2020) ................................................................17

*Salas v. Carpenter*,
    980 F.2d 299 (5th Cir. 1992) ..................................................................8

*U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*,
    645 F. Supp. 3d 554 (E.D. La. 2002) ......................................................9

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ..................................................................8

*Watkins v. Telsmith, Inc.*,
    121 F.3d 984 (5th Cir. 1997) ..................................................................5

### STATUTES

15 U.S.C. § 1114 ....................................................................................2, 19

15 U.S.C. § 1125(a) ................................................................................2, 19

17 U.S.C. § 101 ......................................................................................2, 19

Airline Deregulation Act of 1978 ................................................................3

### RULES

FED. R. EVID. 402 ......................................................................................17

FED. R. EVID. 403 ................................................................................19, 20

FED. R. EVID. 702 ................................................................................ *passim*

FED. R. EVID. 702(c) ..................................................................................6

FED. R. EVID. 702 ......................................................................................17

# I.      INTRODUCTION

The opinions of Skiplagged, Inc.'s ("Defendant" or "Skiplagged") designated transport finance expert Bijan Vasigh, Ph.D. ("Dr. Vasigh") are moot for two reasons. First, Dr. Vasigh was retained "to provide an expert opinion relating to hidden-city ticketing and Skiplagged, Inc.'s business operations related thereto," and the "justification for its existence."  (App'x 007, 018 (Expert Report of Bijan Vasigh, Ph.D. ("Vasigh Report"), pp. 2, 13)]. But Skiplagged's Second Amended Answer and Affirmative Defenses (Skiplagged's live pleading) omits its originally plead justification defense, rendering testimony about whether Skiplagged's practice is justified moot. [*see* Dkt. No. 144].  And second, after the Court's rulings on summary judgment [*see* Dkt. No. 199], the "correctness" of hidden-city ticketing (i.e., was there a breach of the Use Agreement or tortious interference with American's Conditions of Carriage) is no longer a live issue in this litigation. For each of these reasons alone, Dr. Vasigh should be excluded as an expert in this litigation because his opinions are moot.

Out of an abundance of caution, however, American files this Motion to Exclude, setting forth the substantive fatal flaws of Dr. Vasigh's expert report and opinions.

Skiplagged appears to designate Dr. Vasigh not for his theoretical ability to gather and analyze voluminous flight and airfare data, or explain complicated airline financial and operational considerations—which he does not do—but to instead provide purely anecdotal statements about the "usefulness" or "justification" of Defendant's business based on, as Vasigh himself repeatedly admits, absolutely no cited records, databases, or academic publications. Vasigh's expert report and deposition testimony essentially boil down to totally-unsupported claims about both American and Skiplagged, including prejudicial and inflammatory statements about American's supposed "monopoly" power as well as how Skiplagged's business model "helps passengers" such that there is "substantial justification" for Skiplagged's existence. [App'x 018 (Vasigh Report, p. 13)].

1

Vasigh's polarizing opinions are not only unreliable and inaccurate, but also totally irrelevant and highly likely to confuse the jury. As this Court is aware, this case does not relate to, *e.g.*, claims of unfair competition or an alleged industry monopoly, it instead involves American's trademark infringement under 15 U.S.C. § 1114, False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a), and damages for copyright infringement under 17 U.S.C. § 101. *See* American's First Amended Complaint (Dkt. No. 8). Dr. Vasigh's opinions are thereby both irrelevant and unreliable. Accordingly, American seeks to exclude Dr. Vasigh entirely.

## II.    BACKGROUND

### A.    Dr. Vasigh's experience.

Dr. Vasigh received a Ph.D. in Economics at State University of New York at Binghamton, and an M.A. in Economics at University of Detroit. [App'x 022 (Vasigh Report, Ex. A)]. He currently is a Professor at the Embry-Riddle Aeronautical University in the College of Business, Department of Economics, Finance, and Accounting, where he primarily teaches three rotating courses: "advanced air transport economics," "engineering economics," and "air transport finance." [App'x 058 (Vasigh Report, Ex. A); App'x 076 (Deposition of Bijan Vasigh, Ph.D. ("Vasigh Depo."), 15:25–16:16)]. He is also the Founder and President of Aviation Consulting Group, LLC, which provides consulting services related to "airline economics and finance" and "aviation air transportation." [App'x 022 (Vasigh Report, Ex. A); App'x 076 (Vasigh Depo., 16:17–24)]. Dr. Vasigh has provided consulting services to a number of entities, provided executive training from 1992 through 2023, and authored or co-authored numerous publications on airline and airport financial matters, but has never been designated an expert or provided any testimony in any litigation. [App'x 023–56 (Vasigh Report, Ex. A); App'x 076, 078 (Vasigh Depo., 17:16–22; 23:12–14)]. Dr. Vasigh testified that none of his publications or speaking engagements relate to skiplagging. [App'x 023–56 (Vasigh Report, Ex. A); App'x 093 (Vasigh Depo., 83:23–84:1)].

2

**B.      Dr. Vasigh's proffered opinions.**

Dr. Vasigh's Report neither cites to or references any of the materials he consulted in writing his opinions located in Exhibit B. [App'x 006–08 (Vasigh Report, pp. 1–13); App'x 061–63 (Vasigh Report, Ex. B); App'x 074–76 (Vasigh Depo., 9:18–10:3; 14:2–7)]. The majority of the Vasigh Report attempted to provide an overview of airline operations both before and after the Airline Deregulation Act of 1978, including a general overview of airline revenue management, and an explanation of general economic incentives for airfare ticket pricing. [App'x 007–14 (Vasigh Report, pp. 2–8)]. His Report also discussed "hidden-city ticketing," *i.e.*, skiplagging, or buying a multi-city ticket with the intent to deboard the plane prior to the final destination, and provided his opinion that major airports or "hubs," such as Dallas-Fort Worth and Chicago's O'Hare, drive the increased costs in certain airline tickets. [App'x 013–15 (Vasigh Report, pp. 8–10)]. Vasigh also opined that airlines are able to increase ticket prices because a majority of their market are business travelers, and this demographic is more willing to pay higher ticket prices than leisure travelers. [App'x 16–18 (Vasigh Report, pp. 11–13)]. He further stated that "flights to and from airport hubs often experience higher demand due to the monopoly of the airlines, convenience of connecting flights and the availability of more routes. Airlines may adjust prices based on demand and competition on these popular routes." [App'x 017 (Vasigh Report, p. 12)].

Vasigh opined that the "big businesses that dominate these airports [hubs] can effectively set higher prices without experiencing a significant loss in demand." [App'x 018 (Vasigh Report, p. 13)]. He also opined that:

> Hidden city ticketing can offer a valuable opportunity for passengers with limited incomes to travel to their desired destinations more affordably and hence often plays a major role in driving consumer action By taking advantage of pricing discrepancies and booking flights with layovers in their intended destinations, these passengers can often secure lower fares than they would with traditional booking methods, which provides a substantial justification for its existence.

3

[App'x 018 (Vasigh Report, p. 13)]. And ultimately concluded:

> Skiplagged's business and its providing of information relative to HCT [hidden-city ticketing] can indeed provide passengers with a means to _circumvent the monopoly positions_ that airlines often hold at certain hub airports. When airlines dominate a particular airport, they can _wield significant pricing power_, leading to higher fares and limited options for travelers. In such cases, hidden city ticketing _helps passengers_ to bypass the high prices associated with direct flights to the hub airport's destination by booking flights with layovers at the hub. This provides a significant justification for its existence in the marketplace in my opinion.

[App'x 018 (Vasigh Report, p. 13) (emphasis in original)].

On May 30, 2024, Plaintiff's expert Darin N. Lee, Ph.D. ("Lee"), issued the Expert Rebuttal Report of Darin N. Lee, Ph.D. ("Lee Report") to the Vasigh Report. Lee first noted that overall, ███████████████████████████████████████████████████████ [App'x 105–06 (Lee Report, ¶ 9 (citing to App'x 008–10, 018 (Vasigh Report, pp. 3–5, 13) (emphasis in original)))]. Among other critiques, Lee explained that relevant data refutes Dr. Vasigh's unsupported opinions. Lee analyzed both American's and Skiplagged's websites and the airfare information contained therein, as well as relevant data from the United States Department of Transportation (DOT) (including the "DB1B" data set) and Office of Airline Guidance (OAG) databases. [App'x 101–44 (Lee Report, ¶¶ 1–45)]. Most importantly, Lee explained that relevant data shows the following, in contravention with Dr. Vasigh's opinions: ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

[App'x 101–44 (Lee Report, ¶¶ 1–45)].

### III.    LEGAL STANDARD

Trial courts act as gatekeepers for expert testimony, determining its admissibility based on Rule 702 of the Federal Rule of Evidence as well as *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. *DeWolff, Boberg & Assocs., Inc. v. Pethick*, 2024 WL 1396267, at *3 (N.D. Tex. Mar. 31, 2024). Under Rule 702, an expert witness may provide expert opinions if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert* and its progeny, expert testimony is admissible if the proponent of the testimony establishes: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). "The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence." *DeWolff, Boberg & Assocs., Inc. v. Pethick*, No. 3:20-CV-3649-L, 2024 WL 1396267, at *3 (N.D. Tex. Mar. 31, 2024) (internal citations omitted).

An expert may be qualified "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. An expert may not "go beyond the scope of his expertise in giving his opinion." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009); *Jezek v. R.E. Garrison Trucking, Inc.*, 2022 WL 18717712, at *3 (N.D. Tex. Nov. 1, 2022) (expert testimony inadmissible under Rule 702 when expert "concede[s] that he lacks both training and experience" regarding specific topic at issue).

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th

Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93); *see also* FED. R. EVID. 702(c) (testimony must be "the product of reliable principles and methods"). Expert testimony "must be reliable at each and every step," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Knight*, 482 F.3d at 355 (citation omitted). Where "opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert," a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" and exclude the expert testimony. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 593).

## IV.     ARGUMENT

### A.     Vasigh's Report Should be Excluded as Unreliable.

Vasigh's opinions are unreliable because they are conclusory and not based on sufficient underlying support—a fact he repeatedly admits. [App'x 082–83, 085, 089 (Vasigh Depo., 40:23–41:9; 42:6–9; 48:18–24; 52:1–53:25; 62:9–17)]. Instead, Dr. Vasigh states that his experience and knowledge support his opinions. [App'x 083, 088, 093 (Vasigh Depo., 43:21–25; 45:5–10; 63:20–25; 83:14–22)]. Nevertheless, Dr. Vasigh fails show that either his Report or testimony are reliable. The party offering the report or testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *See Daubert*, 509 U.S. at 59. "[F]undamentally unsupported" opinions "offer[ ] no expert assistance to the [trier of fact]" and should be excluded.

*Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks omitted). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

Generally, the facts, data, and sources used in an expert's opinion are considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.' " *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, the court must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted).

Further, courts routinely exclude expert testimony where the expert "offers little more than personal assurances based on his [professional] experience that his conclusions are so" on the grounds that such opinions have "insufficient factual support and lack [ ] reliable methodology." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory."). "Without more than credentials and a

subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo*, 826 F.2d at 424. Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.' " *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

1.      **Dr. Vasigh's opinions are unreliable because they cite to no data and he fails to explain how his knowledge and experience support his opinions.**

Dr. Vasigh's opinions are wholly unreliable and should be excluded because he cites to "no research at all," and does not provide any necessary analysis so as to rely on his knowledge and experience. *Guillory*, 95 F.3d at 1320. Dr. Vasigh repeatedly admitted that he cited to *no* data in his Report to support any of his opinions. [App'x 082–83, 084–85, 088 (Vasigh Depo., 40:23–41:9; 42:6–9; 48:18–24; 52:1–53:25; 62:9–17)]. Dr. Vasigh also testified that he did not consider any data from either American or Skiplagged, and had never visited Skiplagged's website. [App'x 082 (Vasigh Depo., 37:23–38:2; 38:9–11)].

He stated that the only information that serves as a basis for his Report are the documents listed in Exhibit B of his Report, but none of these documents provide the requisite basis to support his opinions. [App'x 076 (Vasigh Depo., 14:2–7)]. Vasigh first stated he reviewed American's First Amended Complaint as well as the unattached two declarations from Defendant's Chief Executive Officer, but that he did not use anything contained in either declaration for his Report. [App'x 075 (Vasigh Depo., 11:21–25)]. Vasigh also discussed the news articles contained in Exhibit B (regarding the present lawsuit and/or skiplagging generally) and stated that he considered them when writing his Report. [App'x 075 (Vasigh Depo., 12:25–13:12)]. Further, he explained that he had created the chart located in Exhibit C of his Report, which contains random airfare data he gathered and "continuously" updated, but this was his "anecdotal evidence." [App'x 086 (Vasigh Depo., 54:1–55:16, 56:9–10)]. By Dr. Vasigh's own admissions, he cited to none of the records in

Exhibit B, and even if he had, none of these documents provides a reliable basis to support his opinions.

Ultimately Dr. Vasigh testified that his Report and his opinions therein are solely based on his experience and knowledge, including prior work evidenced in his publications and speaking engagements. [App'x 083, 088, 093 (Vasigh Depo., 43:21–25; 45:5–10; 63:20–25; 83:14–22)]. Where "opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert," a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co.*, 522 U.S. at 146; *see also LeBlanc*, 396 F. App'x at 100 (5th Cir. 2010) ("[e]ven when an expert is extrapolating from personal experience," his opinion "must have some demonstrable and reliable basis in underlying facts" beyond *ipse dixit*). However, at no time during Dr. Vasigh's deposition and in no portion of his Report did Dr. Vasigh provide any further explanation how his experience and knowledge led him to make his conclusory opinions. Further, he admitted *none* of his publications or speaking engagements were related to hidden city ticketing, showing his expertise cannot provide the necessary basis for his conclusions. [App'x 093 (Vasigh Depo., 83:23–84:1)]. Relying on no data and only personal experience, Dr. Vasigh's opinions are not reliable and should be excluded.

"[I]t is well settled that expert reports that are 'nothing more than bare conclusions' are inadmissible because they offer no value to the trier of fact." *U.S. Alliance Group, Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2002) (quoting *Slaugther v. Southern Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990)). Because Dr. Vasigh admittedly cites to no data to support his conclusions and opinions, and because he fails to include any explanation how his experience led him to make his conclusions, how his experience provides a sufficient basis for his opinions and how he reliably applies his experience to the facts of this case, this Court should

exclude his testimony for lack of reliability. *See* Advisory Committee Notes to 2000 Amendment of FED. R. EVID. 702 (witness "relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts"); *DeWolff*, 2024 WL 1396267 at *14 (striking expert witness testimony regarding damages for lack of reliability where expert provided no analysis of how his experience led him to make ultimate conclusion).Dr. Vasigh's opinions lack reliability as required under Rule 702 and relevant case law, and this Court should exclude Dr. Vasigh entirely.

 2. **Dr. Lee's Report refutes Dr. Vasigh's opinions.**

Dr. Lee's rebuttal Report provides further evidence that Dr. Vasigh's opinions are totally without merit: "Dr. Vasigh's report is ███████████████████████████████████ ███████ most importantly the following main unsupported opinions from Dr. Vasigh:

█ ████████████████████████████████████████████████
████████████████████████████

█ ███████████████████████████████
██████████

█ █████████████████████████████████████████████████
█████████████

█ ████████████████████████████████████████████████████
███████████████████████

█ ████████████████████████████████████████████████
████████████████

[App'x 104–05 (Lee Report, ¶¶ 8–9)]. Lee's Report provides reliable data and analyses that refute Dr. Vasigh's opinions.[1]

        **a.      Deregulation has led to an increase in low cost carriers' share of passengers.**

As Dr. Lee explains in his expert rebuttal report, ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

---

[1] Of note, Dr. Vasigh testified that the databases that Dr. Lee relies on and cites to in the Lee Report, namely from the DOT and the "DB1B" database, are data sources routinely used by airline industry economists. [App'x 080 (Vasigh Depo., pp. 30:17-31:10)].

> **b.     American does not hold a "monopoly position" and low cost carriers have increased their presence in hub-to-hub routes.**

Regarding Dr. Vasigh's unsupported opinions that "airlines often hold" "*monopoly positions* . . . at certain hub airports," and that "hubs are naturally less hospitable to the entry of new airlines," are refuted by data that instead show the opposite conclusion. [App'x 018 (Vasigh Report, p. 13 (emphasis in original))]. Dr. Lee points out that, contrary to Dr. Vasigh's conclusion, there is no evidence that American ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ [App'x 112– 13 (Lee Report, ¶ 15 (internal citations omitted))]. Further, Lee points to evidence showing that ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████ [App'x 113– 14 (Lee Report, ¶ 16 (internal citations omitted) (emphasis in original))]. Likewise, Dr. Vasigh testified that he cited to no data to support opinion regarding American's alleged "monopoly" or his claim that "hubs are naturally less hospitable to the entry of new airlines." [App'x 018 (Vasigh Report, p. 13); (Vasigh Depo., 48:14–23)]. He also testified that there are "absolutely" low cost carriers at hubs, thereby refuting his own claim that American has a "monopoly" at "hub airports." [App'x 084 (Vasigh Depo., 49:18–21)].

American's lack of "market dominance" profit margins further refute Dr. Vasigh's totally unsupported opinion that American has a "monopoly" in the airline industry or "market dominance" at its hubs. [App'x 018 (Vasigh Report, p. 13); App'x 120– 21 (Lee Report, ¶ 21 (internal citations omitted))]. ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ [App'x 121–22 (Lee Report, ¶ 22 (internal citations omitted))]. Accordingly, Dr. Vasigh's unsupported opinion that American holds a "monopoly" or has "market dominance" is therefore unreliable and should be excluded.

Relevant and reliable data also refute Dr. Vasigh's unsupported opinion ████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.

[App'x 114–15 (Lee Report, ¶ 17 (emphasis in original))]. Once more in refutation of an unsupported claim, relevant data instead show that ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ [App'x 114–15 (Lee Report, ¶ 17 (internal citations omitted))]. Again, Dr. Vasigh testified that his Report relies on and cites to no analysis to support his claim, and the data instead show the opposite findings to be true. [App'x 085 (Vasigh Depo., 52:1–53:25)]. Consequently, Dr. Vasigh's opinion lacks reliability and should be excluded.

### c.    There is no "hub premium" for travel on American to/from DFW.

Dr. Lee shows that data directly contradicts Dr. Vasigh's attempt to allege, via incomplete and undated records listed in Exhibit C of the Vasigh Report, that there is a "hub premium" for travel on American to DFW (Dallas-Fort Worth Airport). [App'x 116–17 (Lee Report, ¶ 18 (noting

████████████████████████████████████████████████████████████████████████

████████████████████████████ ")); App'x 195 (Lee Depo., 128:10–24)]. As Dr. Lee explains ████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████ [App'x 116–17

(Lee Report, ¶ 18 (internal citations omitted)); App'x 087 (Vasigh Depo., 56:9–10 (admitting

Exhibit C to his Report is his "anecdotal evidence"))].

Considering the competition American faces on these non-stop routes by low and ultralow

cost carriers, such data refute Dr. Vasigh's unsupported opinions that American enjoys a

"monopoly" position or that American can "exploit" the supposed "opportunity" at hub airports.

[App'x 018 (Vasigh Report, p. 13); App'x 116–17 (Lee Report, ¶ 18 (internal citations omitted))].

Therefore, because Vasigh's claims regarding American's supposed ability to "exploit" its

"monopoly" position at its hubs, specifically including DFW, are not based on any data and instead

are refuted by Lee's well-supported analyses, Vasigh's opinion is unreliable and this Court should

exclude him. *See Guile*, 422 F.3d at 227 ("[F]undamentally unsupported" opinions "offer[ ] no

expert assistance to the [trier of fact]" and should be excluded).

> **d.  Vasigh did not account for obvious alternative reasons for why Skiplagged's business exists and why Skiplagging hurts passengers and American's business.**

Dr. Vasigh's Report also shows that he did not account for obvious alternative explanation

for his ultimate opinions. *See* Advisory Committee Notes to 2000 Amendment of FED. R. EVID.

702 (noting that courts should consider "[w]hether the expert has adequately accounted for obvious

alternative explanations"). Dr. Vasigh opines that hidden city ticketing is "undesirable to airlines

as it prevents them from "*exploiting the market*," that hidden city ticketing "exists primarily due

to pricing disparities in the airline industry," and that hidden city ticketing "can offer a valuable

opportunity for passengers . . . which provides a substantial justification for its existence" therefore

"hidden city ticketing *helps passengers* . . ." [App'x 010, 018 (Vasigh Report, pp. 5, 13 (emphasis

in original))]. However, Dr. Vasigh's Report does not account for obvious alternative reasons for:

why hidden city ticketing, *i.e.*, Skiplagged's business, exists; that American has a reasonable, pro-consumer basis for finding Skiplagged "undesirable;" and how these obvious alternative reasons negate his ultimate conclusions that there is "substantial justification" for Skiplagged's "existence" and that skiplagging "helps passengers."[2]

Dr. Lee noted that his research of skipplaged.com showed ███████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████████ [App'x 131–36 (Lee Report, ¶¶ 34–37); App'x 196 Lee Depo., 132:1–9)]. Dr. Lee explained ██████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████ [App'x 131–36 (Lee Report, ¶¶ 34–37 (internal citations omitted)); App'x 199, 201 (Lee Depo., 144:19–145:15; 152:25–153:5)]. Again, Dr. Vasigh testified that he has *never* visited skiplagged.com (and thus apparently was unaware of Skiplagged's fee structure) and relied on no evidence from Skiplagged when writing his report. [App'x 081–82 (Vasigh Depo., 37:23–38:1; 38:9–11)]. These obvious alternative explanations refute Dr. Vasigh's opinion that Skiplagged's business model is "justified," and refutes Dr. Vasigh's claim that Skiplagged provides a "valuable opportunity" to consumers.

Further, Dr. Lee points out several other obvious alternative explanations for why hidden city ticketing is "undesirable" to American and simultaneously does *not* "help passengers." [App'x 137–40 (Lee Report, ¶¶ 38–39)]. For example, Skiplagged advises consumers to only pack a

---

[2] Of note, during his deposition Vasigh ultimately testified that customers who engage in skiplagging "could create . . . some type of logistic problem" for the affected airline. [App'x 090 (Vasigh Depo., 71:18–20)]. The fact that no such acknowledgment is even remotely considered in his Report further undercuts Vasigh's claims that skiplagging is "undesirable" to American only because it prevents American from "exploiting the market" and that there is "substantial justification" for Skiplagged's existence. [App'x 010, 018 (Vasigh Report, pp. 5, 13)].

backpack to take on the plane, even though all tickets sold by American allow the consumer to fly with one bag *and* a personal item for free ███████████████████████████████ ███████████████████████. [App'x 137–38 (Lee Report, ¶ 38 (internal citations omitted)); App'x 202 (Lee Depo., 154:11–20)]. Advising a consumer to unnecessarily limit their carryon luggage ██████████████████████████████████████████████████████████. [App'x 137–38 (Lee Report, ¶ 38 (internal citations omitted))]. Dr. Vasigh did not account for this alternative reason.

████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████. Dr. Vasigh did not account for any of these alternative explanations for his opinion that Skiplagged "helps passengers," that hidden city ticketing "provides a significant justification for its existence in the marketplace," or why skiplagging is "undesirable" to American. [App'x 018 (Vasigh Report, p. 13)]. Therefore, for this additional reason, the Court should exclude Dr. Vasigh.

**B.      The Court should exclude Dr. Vasigh as he makes legal conclusions and his opinions are not relevant to this case.**

Under Federal Rule of Evidence 702(a), an expert's knowledge must "help" the trier of fact understand the evidence or determine a fact in issue. 2023 Notes to FED. R. EVID. 702, ¶ 7, Appendix II. An expert's proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Federal Rule of Evidence 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc*., 320 F.3d 581, 584 (5th Cir. 2003). The district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e*., whether it is relevant. *Daubert*, 509 U.S. at 591.

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc*., 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id*. at 293-94 (cleaned up). Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[ ] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A*., 574 F. App'x 486, 491 (5th Cir. 2014); *see also Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues")).

Here, Dr. Vasigh's opinions are irrelevant: they make legal determinations and provide bare conclusions on issues not in controversy in this case, and thus will not assist the trier of fact.

17

Vasigh makes the following opinions that are clearly irrelevant to this case, and are his impermissible opinion on legal issues:

- Skiplagged's business and its providing of information relative to HCT [hidden-city ticketing] can indeed provide passengers with a means to *circumvent the monopoly positions* that airlines often hold at certain hub airports . . .

- When airlines dominate a particular airport, they can *wield significant pricing power*, leading to higher fares and limited options for travelers. In such cases, hidden city ticketing *helps passengers* to bypass the high prices associated with direct flights to the hub airport's destination by booking flights with layovers at the hub.

- This provides a significant justification for its existence in the marketplace in my opinion.

[App'x 018 (Vasigh Report, p. 13 (emphasis in original))].

Dr. Vasigh's Report does not provide his analysis and methodology leading to his ultimate expert opinions on relevant matters within his expertise; instead his Report makes legal and factual determinations reserved to the trier of fact. For example, Vasigh improperly posits that airlines, including apparently American, hold "monopoly positions" that thereby allow them to "wield significant pricing power" leading to "higher fares and limited options for travelers." [App'x 018 (Vasigh Report, p. 13)]. These legal and factual determinations must be excluded as an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make[ ] factual determinations reserved for the trier of fact." *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014). Further, his opinions that a consumer is "justified" in engaging in skiplagging and that Skiplagged's "existence" is "justified" likewise make factual and/or legal determinations that an expert witness is not allowed to make. [App'x 018 (Vasigh Report, p. 13)].

His Report also states his irrelevant beliefs regarding American's business strategies, the morality of Skiplagged's services, and the economic usefulness of Skiplagged's business to the consumer. [App'x 018 (Vasigh Report, p. 13 (*e.g.*, "This provides a significant justification for its existence in the marketplace in my opinion."))]. Such subjective beliefs regarding the value or morality of Defendant's services fail to help the trier of fact understand the evidence or determine any fact at issue in this matter—a case involving claims of trademark infringement under 15 U.S.C. § 1114, False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a), and copyright infringement damages under 17 U.S.C. § 101. Instead, such opinions are irrelevant and prejudicial. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. As these opinions do "not relate to any issue in the case" and therefore are not relevant, this Court should exclude Dr. Vasigh's testimony.

**C.   Dr. Vasigh's Report is barred by Rule 403 because it confuses the issues and will mislead the jury.**

Even if the Court finds Dr. Vasigh's methodology reliable and his opinions relevant, his testimony is barred by Federal Rules of Evidence 403. *See* FED. R. EVID. 403. Rule 403 prohibits admission of relevant testimony if its probative value is substantially outweighed by the danger that the evidence will confuse the issues or mislead the jury. Dr. Vasigh's testimony does just that: his Report confuses the claims in controversy by providing prejudicial opinions on non-issues (including alleging American holds a "monopoly," opining consumers receive a benefit from Skiplagged without discussing the negative consequences of buying a ticket through skiplagged.com, concluding that Skiplagged is "justified" in offering its products, and that American has no basis other than lost profits for considering skiplagging and hidden city ticketing "undesirable") and is based on no evidence such that his ultimate findings are unreliable and will impermissibly mislead the jury. *See Daubert*, 509 U.S. at 595 ("'Expert evidence can be both

19

powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge, in weighing possible prejudice against probative force under Rule 403 of the present rules, exercises more control over experts than over lay witnesses'"); *see also Guillory,* 95 F.3d at 1331 (noting that even if properly excluded expert testimony were admissible under Rule 702, the district court could have also excluded it under Rule 403). Because juries place great weight on expert evidence, Dr. Vasigh's confusing and prejudicial testimony is especially dangerous and should be excluded under Rule 403.

## V.    CONCLUSION

For the reasons stated above, the Court should grant American's Motion to Exclude Expert Bijan Vasigh, Ph.D., striking Dr. Vasigh's expert report and excluding his opinions and testimony from this litigation.


Dated: August 26, 2024                    Respectfully submitted,

                                          */s/ Dee. J. Kelly, Jr.*
                                          Dee J. Kelly, Jr.
                                          State Bar No. 11217250
                                          dee.kelly@kellyhart.com
                                          Julia G. Wisenberg
                                          State Bar No. 24099146
                                          julia.wisenberg@kellyhart.com
                                          KELLY HART & HALLMAN LLP
                                          201 Main Street, Suite 2500
                                          Fort Worth, Texas 76102
                                          Telephone: (817) 332-2500

                                          R. Paul Yetter
                                          State Bar No. 22154200
                                          pyetter@yettercoleman.com
                                          YETTER COLEMAN LLP
                                          811 Main Street, Suite 4100
                                          Houston, Texas 77002
                                          Telephone: (713) 632-8003

Cameron M. Nelson
nelsonc@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-6590

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I certify that on August 26, 2024, I conferred with Bill Kirkman, counsel for Skiplagged, who stated that he is opposed to the relief requested herein.

*/s/ Julia G. Wisenberg*_____
Julia G. Wisenberg

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*_____
Dee J. Kelly, Jr.