IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

**BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF GARY L. GUTZLER, MOTION TO STRIKE LATE-PRODUCED EVIDENCE**

---

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com

Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com

1

acampbell@condontobin.com

Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

*Attorneys for Defendant, Skiplagged, Inc.*

28390526v1 99460.002.00

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 5

LEGAL STANDARD ........................................................................................................ 6

   I.   Disclosure of expert testimony ........................................................................... 6

   II.   Admissibility of expert testimony ..................................................................... 7

ARGUMENTS AND AUTHORITIES .............................................................................. 7

   I.   Gutzler's opinions and testimony should not be excluded because the underlying facts, data, and the methodology he employed are reliable ................................................................ 7

      A.  Gutzler performed an independent analysis of Skiplagged's business records and did not depend on "unreliable" facts ................................................................................................. 8

      B.  Gutzler's opinions are reliable, and he *did* perform an independent analysis of how the $12,860,290 in operating costs are attributable to AA ........................................................ 11

   II.   Gutzler's Rebuttal Reports contain proper rebuttal opinions ......................................... 13

      A.  AA misconstrues the burden of proof and order of expert witness opinions ................ 14

      B.  AA's contentions regarding the tables in Gutzler's Rebuttal Report are misplaced ...... 16

   III.   AA's Motion to Strike should be denied .................................................................... 17

CONCLUSION ................................................................................................................ 20

28390526v1 99460.002.00

## **TABLE OF AUTHORITIES**

**Cases**

*AMX Corp. v. Pilote Films*, No. 3:04-CV-2035-D, 2007 WL 1813770
  (N.D. Tex. June 22, 2007) ................................................................................... 19

*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F.Supp.3d 363, 408
  (N.D. Tex. 2016) .................................................................................................. 8

*Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005)) ....................................... 16

*ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*, 2016 WL 8136622 ...... 17

*Clearline Techs. Ltd. v. Cooper B-Line, Inc*., 948 F.Supp.2d 691 (S.D. Tex. 2013) ... 17

*Daedalus Blue LLC v. SZ DJI Tech. Co., Ltd.*, W-20-CV-00073-ADA, 2022 WL 831619 ........ 19

*Daubert v. Merrell Dow Pharm's, Inc.*, 509 U.S. 579 (1993) ................................. 8

*Everett Fin., Inc. v. Primary Residential Mortg., Inc*., No. 3:14-CV-1028-D,
  2018 WL 2441829 ............................................................................................. 9

*Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC,* 397 F. Supp. 3d 847, 869
  (N.D. Tex. 2019) ................................................................................................ 17

*Gause-Ware Funeral Home v. McGinley*, 21 S.W.2d 347, 2023 WL 6284727 ............................ 20

*Madison v. Courtney*, No. 4:18-CV-00671-O, 2019 WL 8263428 ................................ 8

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.,* 622 F.3d 361, 367 (5th Cir. 2010) ........... 16

*Protradenet, LLC v. Predictenive Profiles, Inc.*, No. 6:18-CV-00038-ADA, 2019
  U.S. Dist. LEXIS 210737 .................................................................................... 9

*Sheldon v. Metro-Goldwyn Pictures Corp*, 106 F.2d 45, 54 (2d Cir. 1939) .......................... 13, 14

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc*., 73 F.3d 546, 571
  (5th Cir. 1996) .................................................................................................... 8

*Six Dimensions, Inc. v. Perficient, Inc.*, No. H-17-2680, 2019 WL 12338327 ........................ 19

*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ....................... 9

*TBC-JP-LR, JV v. Allied Prop. & Casualty Ins. Co.*, No. 4:17-CV-131-Y,
  2018 WL 10563033 ........................................................................................... 20

*United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998) .................................. 8

*Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56 (1st Cir. 2008) ........................ 17

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ....................................... 10

*Warner Bros. v. Gay Toys, Inc.*, 598 F. Supp. 424, 428 (S.D.N.Y. 1984) ............................. 13

**Statutes**

15 U.S.C. § 1117(a) ................................................................................................. 15

17 U.S.C § 504(b) ................................................................................................... 16

**Rules**

FED. R. CIV P. 26(a)(2)(D)(ii) ................................................................................... 14

FED. R. CIV. P. 26(a)(2)(B) ...................................................................................... 7

FED. R. CIV. P. 26(a)(2)(C) ...................................................................................... 7

FED. R. CIV. P. 26(a)(2)(D) ...................................................................................... 7

FED. R. CIV. P. 37(c)(1) ........................................................................................... 7

FED. R. EVID. 702 ................................................................................................... 8

Rule 26(a) or (e) ..................................................................................................... 7

28390526v1 99460.002.00

Defendant Skiplagged, Inc. ("Skiplagged") files this Brief in Response to Plaintiff American Airlines, Inc.'s ("AA") Motion to Exclude Expert Opinions and Testimony of Gary L. Gutzler ("Gutzler"), and Motion to Strike Late- Produced Evidence and shows the Court as follows:

## INTRODUCTION

AA's reliance on a strict interpretation of the Scheduling Order's language regarding "party with the burden of proof" is misplaced. Yes, it is Skiplagged's burden to show deductible expenses, but this is still the job of a rebuttal report. AA has to first prove the revenue derived from infringing acts and then Skiplagged must prove the expenses deducible from that amount. AA is not arguing that it has been prejudiced by anything in Gutzler's reports, rather it is simply trying to avoid facing the merits of Skiplagged's defense by misinterpreting the burdens in this case.

Likewise, AA has not challenged the integrity of any of the facts or data relied upon by Gutzler with contrary evidence, it is only attacking the source of that information. AA's position is merely argument without evidence and is an argument about the weight of the evidence not its admissibility. And, AA's argument that Gutzler did not perform any analysis regarding the operating cost attributable to AA's ticket sales, or that he included non-rebuttal opinions is simply false and takes portions of his testimony out of context while ignoring contrary testimony and language in his report.

Gutzler's Rebuttal and Rebuttal to Supplemental Fuller Report do not set forth opinions or analysis outside the scope of rebutting the opinions offered by Fuller. AA is merely using Fuller's failure to consider pertinent facts and information as a ground for striking Gutzler by arguing that Gutzler's criticism of Fuller exceeds the scope of a rebuttal opinion.

Finally, the information provided in the Supplemental Report was not available prior to the

report deadline, but Skiplagged has a duty to supplement, and this is highly relevant information. Gutzler responded to a point raised by Fuller—that is what rebuttal experts do. But AA asks the Court to let Fuller have the last word. The law does not allow for this. Thus, the Court should deny AA's Motion.

## LEGAL STANDARD

Disclosure of expert testimony is governed by Rule 26 of the Federal Rules of Civil Procedure while admissibility of such testimony is governed by Rules 702 and 703 of the Federal Rules of Evidence.

## I.    Disclosure of expert testimony

Under Rule 26, a party who retains an expert to provide expert testimony must disclose the identity of the expert accompanied by that expert's report that contains, *inter alia*, a complete statement of all opinions of the expert and the reasons for them; and, the facts or data the expert considered in forming his opinions. FED. R. CIV. P. 26(a)(2)(B). Expert designations and disclosure of expert reports are completed "at the times and in the sequence that the court orders." *See* FED. R. CIV. P. 26(a)(2)(D). A rebuttal expert report contradicts or rebuts evidence on the same subject matter identified by another party's expert. See FED. R. CIV. P. 26(a)(2)(C).

If a party fails to provide the information required under Rule 26(a) or (e), it may not use that information or witness to "supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1). Determining whether an untimely disclosure was substantially justified or harmless requires consideration of four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and, (4) the availability of continuance to cure such prejudice." *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc*., 73 F.3d 546, 571 (5th

Cir. 1996). Ultimately, "[t]he Court has broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless." *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998).

## II.      Admissibility of expert testimony

Likewise, the Court has broad discretion in making the preliminary determination regarding the admissibility of expert testimony pursuant to its "gatekeeping function that filters the evidence the trier of fact will deliberate." *Madison v. Courtney*, No. 4:18-CV-00671-O, 2019 WL 8263428, at *1 (N.D. Tex. Jan. 26, 2019); *see Daubert v. Merrell Dow Pharm's, Inc.*, 509 U.S. 579 (1993). However, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee note (emphasis added). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In exercising its gatekeeping role, the Court must, therefore, "evaluate whether the reasoning and methodology underlying the testimony is valid and can be reliably applied to the facts of the case." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F.Supp.3d 363, 408 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018) (citing *Daubert*, 509 U.S. at 592-98).

## ARGUMENTS AND AUTHORITIES

## I.      Gutzler's opinions and testimony should not be excluded because the underlying facts, data, and the methodology he employed are reliable

Gutzler's opinions on costs and expenses are reliable because he was using reliable information—Skiplagged's profit and loss statements and verified interrogatory answers—and applied the correct methodology and independent analysis.  No expert is required to independently audit financial statements before they rely upon them, and AA has not challenged the accuracy of

28390526v1 99460.002.00

those statements with any evidence. *See Protradenet, LLC v. Predictive Profiles, Inc.*, No. 6:18-CV-00038-ADA, 2019 U.S. Dist. LEXIS 210737, at *8 (W.D. Tex. 2019)(unaudited financial records not required). Moreover, none of AA's expert witnesses independently verified any of the information *they* were provided with by AA's counsel, so this is a false standard that AA whimsically fashioned but cannot meet itself. The claim that Gutzler relied on "unsupported and unreliable 'facts' provided to him by Zaman" is also demonstrably false and AA has not provided any evidence that the facts or data provided to Gutzler were inaccurate. Moreover, this is an argument about the weight of the evidence, not its admissibility. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015).

### A. Gutzler performed an independent analysis of Skiplagged's business records and did not depend on "unreliable" facts

AA has not presented any evidence to support its conclusion that the facts or data considered by Gutzler were unreliable. The mere fact that some of the information came from the company's CEO is not inherently problematic. Zaman, as CEO, is one the most knowledgeable persons regarding this information and is fully capable of providing accurate information. *See Everett Fin., Inc. v. Primary Residential Mortg., Inc*., No. 3:14-CV-1028-D, 2018 WL 2441829, at *3 (N.D. Tex. May 31, 2018). The fact that Gutzler was able to talk directly with the CEO makes his opinions more, rather than less reliable. The financial statements were provided in discovery and AA had the opportunity to examine Zaman about the expenses. While AA argues that these have not been audited, that is not a requirement, and these are business records that Skiplagged relies upon. Again, this is an argument about the weight of the evidence, not its admissibility. *Summit 6,* 802 F.3d at 1299. Moreover, AA has deposed Zaman twice and could have queried him on issues they now bring up in their motion.

Gutzler relied on the actual financial statements produced by Skiplagged that accurately

summarize all of the relevant revenues and costs. *See e.g.,* Ex. 1, Deposition of Gary Gutzler ("Gutzler Depo.") 24:19-25:8 (App. p. 3). Relying on income statements and other financial statements produced by the parties is perfectly appropriate and acceptable. Further, Gutzler relied on the amounts set forth in the verified interrogatory answers. Again, AA does not dispute the veracity of that information with any contrary evidence. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility").

The independence of Gutzler's analysis was discussed at length in his deposition, and AA has omitted key testimony regarding this and taken other portions of his testimony out of context. For example, on page 13 of the motion, AA cites to an excerpt from page 41 of Gutzler's deposition to assert that the only basis for the $12,680,290 figure is from Zaman.  But looking at page 41, immediately preceding that excerpt, he made it clear that he only talked to Zaman about what *types* of costs are included within those line items, and in terms of choosing what then to include in his analysis, he testified that it was his independent analysis:

> Q.   What did Mr. Zaman tell you that caused you to come
> to the conclusion that certain of those expenses were related
> to American Bookings?
>
> A.   I -- I think I disagree with that statement.  What
> Mr. Zaman told me is, what is included within each category of
> costs, and then I made the determination of what to include for
> purposes of this report.  Include as a cost for purposes of
> this report.

Ex. 1, Gutzler Depo. 40:6-13 (App. p. 5). This is consistent with his report which stated: "Based on *my review* and discussions with Mr. Zaman, certain of the above expenses are related to the American Bookings revenue generated by Skiplagged." Dkt. 213-2 (AA App'x p. 15, Gutzler

28390526v1 99460.002.00

Report, p. 10, ¶ 20) (emphasis added). He goes on to list a number of expense categories from the financial statements which he examined.[1] And considering the Tables, on the next page and throughout each of Gutzler's Reports—which cite the source documents from which they were created, by bates number—it is inaccurate to argue that somehow this information only came from a conversation with Zaman.

Gutzler also testified that he used his experience from other trademark and copyright cases for expenses that are not included in calculating a defendant's profits:

> Q.   Okay.  So other than your discussions with Mr. Zaman,
> did you have any other basis for forming those opinions about
> the costs?
>
> A.   I don't believe so, other than what I've seen in
> other trademark and copyright cases.
>
> Q.   When you say "other than what you've seen in other
> trademark and copyright cases," what do you mean by that, sir?
>
> A.   That -- for example, generally, taxes and legal
> expenses, generally, aren't included as a deduction for
> purposes of calculating defendant's profits in a copyright or
> trademark case.

Ex. 1, Gutzler Depo. 41:14-24 (App. p. 6).

Gutzler then made it clear that he was very selective about what he included, even though some of the categories of expenses were arguably related to the AA bookings:

---

[1] Note that Gutzler uses the terms "income statement" and "P&L statement" interchangeably. Ex. 1, Gutzler Depo. 24:19-25:8 (App. pp. 3-4).

28390526v1 99460.002.00

```
     Q.   Are there -- other than -- I'm just going to list
them so we'll be on the same page.  This is starting at
Page 10.  1, Advertising; 2, Bank Charges; 3, Insurance; 4,
Office Expenses; 5, Other Business Expenses; 6, Payroll; 7,
Renter Lease; 8, Repair and Maintenance; and 9, Utilities.
Were there any other expenses that are related to the American
Bookings revenue?

     A.   Not, in my opinion, for purposes of ongoing
generation of revenues.  One could argue that all the costs
incurred by Skiplagged in some way relate to the American
Bookings.  But for purposes of my analysis, what I wanted to
focus on were the costs more closely related to its actual
generation of revenues.
```

*Id.* at 42:7-19 (App. p. 7).

AA is not challenging the accuracy of any of the data reviewed by Gutzler with any contrary evidence, only the fact that it is "unverified." This is not a basis to exclude his opinions. This may impact the weight of the evidence but not its admissibility. Yet, AA has not shown any evidence that calls into question the integrity of the data. Nor has it submitted any evidence that would even affect the weight that should be given to this data. AA merely offers argument. Without establishing any reason the Court should question this data, there is no basis to call its reliability into question, or even its weight.

### B. Gutzler's opinions are reliable, and he *did* perform an independent analysis of how the $12,860,290 in operating costs are attributable to AA

Gutzler was asked directly about independence of his costs analysis and his answer could not have been more clear:

11

```
                Q.   The cost that you decided to include, those were the
            ones that Mr. Zaman told you to include, correct?

                A.   No.

                Q.   Okay.

                A.   I was not given any instructions on what costs to
            include or exclude.   That -- that's my opinion what to include.
```

Ex. 1, Gutzler Depo. 67:2-7 (App. p. 9). And AA's allegation that "Gutzler admitted he performed *no* analysis with respect to the American net profits . . . etc." is simply not true. *See* Dkt. 211, p. 12. Even taken out of context, those portions of the deposition do not support such a bold statement. AA overreached.

Gutzler's approach to calculating the deductible cost was sound and he applied the widely accepted "full absorption" approach. While the Fifth Circuit has not yet weighed in on the proper accounting method, under Second Circuit precedent, the "full absorption" approach was held to be the correct accounting method in similar cases. *Warner Bros. v. Gay Toys, Inc.*, 598 F. Supp. 424, 428 (S.D.N.Y. 1984). As that court noted, the leading case—authored by Judge Learned Hand—is *Sheldon v. Metro-Goldwyn Pictures Corp*. where Judge Hand explained:

> "Overhead" which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases. In the case at bar the infringing picture was one of over forty made by the defendants, using the same supervising staff and organization, which had to be maintained if the business was to go on at all. Without them no picture could have been produced; they were as much a condition upon the production of the infringing picture as the scenery, or the plaintiffs' play itself.

106 F.2d 45, 54 (2d Cir. 1939). This is exactly the approach taken by Gutzler. Looking at his testimony, he made it clear that he excluded discretionary costs that were not related to Skiplagged's operation and included those that were related to generating the applicable revenue:

> A.   For purposes of determining the cost related to the trademark and copyright claims, I excluded certain costs that I felt were either discretionary or not directly related to Skiplagged's operations, and its efforts to generates revenues and operate the firm.  And so I excluded those types of costs, and focused on those costs that were related to generating revenues for the firm.

Ex.1, Gutzler Depo. 25:16-22 (App. p. 4).

Gutzler's systematic approach to determining what costs to include in his analysis was further discussed in his deposition, but AA left those parts out of its motion. For example, when Gutzler was asked to discuss specifically how each of the costs contributed to the AA booking revenue, he explained: "those costs are the costs incurred for employees, for equipment, for operating expense, that allow Skiplagged to operate its website and generate revenue from that website." Ex. 1, Gutzler Depo. 56:6-9 (App. p. 8). As Judge Hand explained, these are the expenses "which had to be maintained if the business was to go on at all." *Sheldon*, 106 F.2d at 54. Therefore, Gutzler's opinion are sound and will help the jury better understand the remaining issues int this case.

## II.    Gutzler's Rebuttal Reports contain proper rebuttal opinions

In Section IV(B) of its Motion, AA argues that portions of Gutzler's Rebuttal Reports (dated July 31, 2024 and August 22, 2024) should be excluded because they exceed the scope of a rebuttal witness under Fed. R. Civ P. 26(a)(2)(D)(ii). In this argument, AA is not challenging Gutzler's May 31, 2024 report, including the estimated deductible expenses and profits, as being improper. Nor is AA challenging the timing of the July 31, 2024 and August 22, 2024 Rebuttal Reports. According to AA, Gutzler allegedly opines in his Rebuttal Reports on issues on which Skiplagged initially had the burden of proof, but failed to include in its initial May 31, 2024 Gutzler

13

Report. This argument fails for two reasons. First, AA's motion misconstrues Skiplagged's burden of proof and the related timing of expert reports.  An additional independent reason why the Court can deny AA's motion on this point is that the portions of the Gutzler reports to which AA objects are proper rebuttal opinion to AA's expert Fuller.

### A.  AA misconstrues the burden of proof and order of expert witness opinions

According to AA, a defendant who has not yet been shown to have infringed on a plaintiff's trademark or copyright and who has no means of yet knowing the nature or amount of damages claimed by the plaintiff under the Lanham Act or Copyright Act, bears the affirmative burden of first proving, in the blind, the deductible expenses and apportionment of profits to non-infringing factors associated with whatever sales the plaintiff might allege in the future to be as a result of infringement.  The argument fails as a matter of both logic and law.

As stated by McCarthy in his leading treatise on trademark law, "the plaintiff need only prove gross sales and it is *then* the infringer's burden to prove (1) which, if any, of *those* sales were not attributable to the wrongful act, and (2) deductible costs and expenses to arrive at net profits." 5 McCarthy on Trademarks and Unfair Competition § 30:66 (5th ed.) (emphasis added) (and cases cited therein) ); *see also* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). Thus, until a plaintiff first identifies the gross sales attributable to the infringement it seeks, a defendant has no way of knowing specifically what costs it is being called upon to account for in response to the plaintiff's claimed trademark infringement damages.

14

Copyright law follows a similar protocol.[2] As to an infringer's profit, "[o]nce liability has been shown, [17 U.S.C.] § 504(b) creates an initial presumption that the infringer's 'profits ... attributable to the infringement' are equal to its gross revenue." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.,* 622 F.3d 361, 367 (5th Cir. 2010) (quoting *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005)) (ellipsis in original). "In meeting its initial burden, however, a copyright holder must show more than the infringer's total gross revenue from all of its profit streams.... Rather, 'gross revenue' refers only to revenue *reasonably related* to the infringement." *Id.* (quoting *Bonner*, 404 F.3d at 294) (ellipsis in original). Therefore, even if a Plaintiff can prove copyright infringement, he must sufficiently demonstrate a nexus between the alleged infringement and Defendant's gross revenue from sales, to be awarded damages. In other words, AA must show that the bookings facilitated by Skiplagged are attributable to Skiplagged's use of AA's claimed Flight Symbol copyrighted work.

Therefore, the law is clear as to both trademark infringement damages and copyright infringement damages: AA had the initial burden of proving the gross revenue attributable to the infringement. AA first attempted to meet this burden with Fuller's initial May 31, 2024 Report and then again in its August 1, 2024 Supplemental Report. Following Fuller's May 31, 2024 Report, the burden shifted to Skiplagged to establish deductible costs and apportionment of profits to factors other than the infringement. AA does not dispute or challenge that Gutzler's Rebuttal Report was served timely by the July 31, 2024 deadline.[3] Therefore, Gutzler's July 31, 2024 report is both a proper rebuttal report of Fuller's May 31, 2024 report, and also a timely opinion as to

---

[2] According to 17 U.S.C § 504(b), "In establishing the infringer's profits, the copyright owner *is required to present proof only of the infringer's gross revenue,* and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. (emphasis added).
[3] According to the Docket Order No. 108, the Rebuttal Expert Report deadline was extended to July 31, 2024.

Skiplagged's deductible expenses and apportionment.[4]   For these reasons alone, AA's motion should be denied.

This is consistent with the approach taken in other Texas federal courts.[5]   For example, in *Clearline Techs. Ltd. v. Cooper B-Line, Inc*., 948 F.Supp.2d 691 (S.D. Tex. 2013), the district court of the Southern District of Texas cited to both McCarthy and to *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56 (1st Cir. 2008), in which the First Circuit made clear that a defendant's burden of showing what portion of its profits should be deducted from its gross sales is not triggered *until* the plaintiff first presents evidence of the defendant's gross sales. *Venture*, 540 F.3d at 64 ("Here, Venture met its burden by introducing tax returns showing Venture's gross sales over the relevant time period. McGills *then* had the burden of producing evidentiary documentation that some of those sales were unrelated to and unaided by McGills' illicit use of Venture's marks.") (emphasis added).

### B.   AA's contentions regarding the tables in Gutzler's Rebuttal Report are misplaced

On pages 16-17 of its Motion, AA argues that Gutzler's inclusion of certain tables in the report somehow constitutes improper "new evidence" for a rebuttal report. Dkt. 213-1, p. 16-17. AA specifically identifies Tables 3, 4, 5, and 6 to support its argument. However, an examination

---

[4] Gutzler's May 31, 2024 Report provides his initial opinions regarding deductible expenses without the benefit of Fuller's May 31, 2024 report setting forth his opinions as to what revenues AA contends are attributable to the alleged trademark and copyright infringement, how those revenues were specifically calculated, and most importantly, the amount of disgorgement damages sought.

[5] While it is true that the Lanham Act provides a formula for the recovery of a defendant's profits when it says "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed," it is likewise true that in Texas district courts, as elsewhere, "Courts interpret this to mean that 'a plaintiff must prove defendant's sales in order to determine a defendant's profits, and *if a plaintiff can prove a defendant's sales, then* the defendant has the burden to prove any costs or deductions it claims.'" *Firebirds Int'l, LLC v. Firebird Rest. Grp., LLC,* 397 F. Supp. 3d 847, 869 (N.D. Tex. 2019) (quoting *ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC,* 2016 WL 8136622, at *6 (S.D. Tex. Dec. 23, 2016) (emphasis added).

of these tables demonstrates that all of the tables either were in the original Gutzler May 31, 2024 report or contain information in rebuttal to Fuller's May 31, 2024 report:

- Rebuttal Report Table 3 estimates commission income attributable to AA *based on how Fuller calculated the same information—i.e.* Gutzler offers a calculation "consistent with Mr. Fuller's analysis," including consideration of Mr. Gellert's deposition testimony. Dkt. 213-2 (AA App'x pp. 64-65, Gutzler Rebuttal Report, pp. 16-17, ¶ 16). Gutzler could not have performed this calculation without first having Fuller's opinions and calculations.

- Rebuttal Report Table 4 simply combines information from Table 1 (which AA takes no issue with) and Table 3, which Gutzler could not have had without Fuller's opinions and calculations. *Id.* Indeed, Table 4 clearly identifies Table 1 and Table 3 as the sources of information. *Id.*

- Rebuttal Report Table 5 is identical to Table 5 in Gutzler's Original Report, thus there is no "new evidence" as AA argues. *Compare* Dkt. 213-2, (AA App'x p. 17, Gutzler Report, p. 12) *with* Dkt. 213-2 (AA App'x p. 66, Gutzler Rebuttal Report, p. 18).

- Rebuttal Report Table 6, similar to Table 4, combines information from Table 4 and 5. Dkt. 213-2 (AA App'x p. 66, Gutzler Rebuttal Report, p. 18). In other words, Gutzler merely furthers his analysis in a step-by-step process that began with information from Fuller's analysis that flowed from Table 3 through to Table 6.

In the middle of page 17, AA argues that Gutzler's opinions regarding apportionment contained in paragraphs 45-52 of Gutzler's Rebuttal Report is "time-barred as an improper attempt to introduce expert testimony regarding Skiplagged's burden of proof." However, as established above, Skiplagged's burden of proof regarding deductible expenses and apportionment was not triggered until after Fuller served his May 31, 2024 report and AA does not dispute that Gutzler's July 31, 2024 Rebuttal Report was timely. Alternatively, Gutzler's Rebuttal Report's portions discussing deductible expenses and apportionment of profits to non-infringing factors is a proper rebuttal to Fuller's May 31, 2024 report regarding AA's damage claim. This provides the Court with two independent reasons to deny AA's motion on this point.

### III.     AA's Motion to Strike should be denied

On June 30, 2024, Skiplagged removed the AA flight symbol from its website and later prepared a summary of its website users who tried to book AA flights between June 3, 2024, and July 28, 2024, showing sales pre- and post-removal of the flight symbol. AA bases this argument on the fact that the document was produced after the conclusion of discovery and further that this document should have been included in Gutzler's initial May 31, 2024 report. But as established below, this document and the information contained therein are not prejudicial to AA, the document's production is consistent with Skiplagged's duty to supplement, and this information could not have been included in Gutzler's initial report because it contains information from *June to July 2024*, months after Gutzler's report was served. Indeed, the document was produced expeditiously after the data was gathered. Moreover, Gutzler's reference to this document rebuts an opinion expressed by AA's expert Fuller in his August 13, 2024 deposition regarding his August 1, 2024 Supplemental Report.

Skiplagged's duty to supplement discovery "continues beyond the discovery closing date." *Six Dimensions, Inc. v. Perficient, Inc.*, No. H-17-2680, 2019 WL 12338327, at *1 (S.D. Tex. Apr. 25, 2019) (internal citation omitted). This is because there may be "information that was not available at the time of the [expert's] initial disclosure." *Daedalus Blue LLC v. SZ DJI Tech. Co., Ltd.*, W-20-CV-00073-ADA, 2022 WL 831619, at *2 (W.D. Tex. Feb. 24, 2022) (internal citation omitted). For example, in *AMX Corp. v. Pilote Films*, No. 3:04-CV-2035-D, 2007 WL 1813770 (N.D. Tex. June 22, 2007), the court allowed an expert to supplement his report after the relevant deadline with documents that were previously unavailable. *Id.* at **2-3.

Here, on June 30, 2024, for business reasons, Skiplagged removed the AA flight symbol from its website and later prepared a summary of its website users who tried to book AA flights between

28390526v1 99460.002.00

June 3, 2024, and July 28, 2024, showing sales pre- and post-removal of the flight symbol. *See* Dkt. 213-2 (AA App'x pp. 320-23, (SKP00111228-31). Skiplagged produced this summary (SKP00111228-231) to AA on August 9, 2024—more than 30 days before trial and before the deposition of AA's damages expert, Fuller, on August 13, 2024. Skiplagged served Gutzler's Supplemental Rebuttal Report on August 22, 2024—also more than 30 days before trial. Thus, AA is not prejudiced by the supplemental production or Gutzler's Supplemental Rebuttal Report referencing that production. *See TBC-JP-LR, JV v. Allied Prop. & Casualty Ins. Co.*, No. 4:17-CV-131-Y, 2018 WL 10563033, at *3 (N.D. Tex. Sept. 10, 2018) (expert disclosures must be made "at least 30 days before trial.").

In Fuller's August 13, 2024 deposition (after the production of the summary data at issue), Fuller ███████████████████████████████████████████████████. Ex. 2, Fuller August Depo. 62:18 (App. p. 14). He also testified that he did not "████████████ ██████████████████████████████████████████████████" in his August 1, 2024 Supplement Report *Id.* at 63:3-4 (App. p. 15). But he concluded ██████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████"[6] *Id.* at 63:20-24. Gutzler is entitled in his Supplemental Rebuttal Report to challenge Fuller's new opinion that removal of the flight symbol had no impact on sales (and as a consequence, profits). The data in the supplemental production SKP00111228-31 referenced in the Gutzler's Supplemental Rebuttal Report and his opinion are therefore proper

---

[6] Thus, according to AA's own expert, use by Skiplagged of the flight symbol trademarks and copyright had little or no impact on sales. This information (sales before and after removal of the flight symbol) is relevant to AA's burden to prove gross revenue *attributable* to the alleged trademark and copyright infringement as well as Skiplagged's right to apportion profits to factors other than the alleged infringement of the trademarks or copyright.

28390526v1 99460.002.00

rebuttal opinion. *See McGinley*, 2023 WL 6284727, at *3 ("[a] rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.").

Gutzler responded to an opinion expressed by Fuller—that is what rebuttal experts do. But AA asks the Court to let Fuller have the last word, unchallenged. The law does not allow for this. Thus, the Court should deny AA's Motion to Strike and Additional Grounds for Exclusion this point.

## CONCLUSION

AA will receive an unearned windfall if Skiplagged cannot present its evidence of deductible costs. While the law only requires plaintiffs show the revenue, and places the burden of proving expenses on defendants, this system is not designed to award massive damages awards of a defendant's entire revenue stream to plaintiffs simply because the burden shifts between the parties. The Scheduling Order and its control of the deadlines are meant to serve the cause of an orderly presentment of evidence and should not be used weaponized to exclude a final hearing on the merits of the defenses. Gutzler was working within the constrains to the information and deadlines he had in front of him and came to his opinions using sound reasoning and judicially accepted methods. There is no dispute that Skiplagged has many business expenses that cut into its profits—every business does. AA seeks to make this reality fade into an illusion so it can reap a reward it would not otherwise be entitled to. Such an outcome would not be just.

For these reasons, Skiplagged request that AA's Motion to Exclude Expert Opinions and Testimony of Gary L. Gutzler and Motion to Strike Late-Produced Evidence be denied and Skiplagged further granted relief to which the Court finds Skiplagged entitled.

 Dated: August 30, 2024

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


*/s/ Abigail R.S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com


*/s/ Darin M. Klemchuk*
Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com


**Attorneys for Defendant, Skiplagged, Inc.**

21

## <u>CERTIFICATE OF SERVICE</u>

On August 30, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/Abigail R.S. Campbell*
Abigail R.S. Campbell

22