IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| AMERICAN AIRLINES, INC., | § |  |
|---|---|---|
| Plaintiff, | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| SKIPLAGGED, INC., | § | |
| Defendant. | § | |

**APPENDIX IN SUPPORT OF DEFENDANT SKIPLAGGED, INC.'S RESPONSE TO PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO STRIKE AND EXCLUDE DEFENDANT SKIPLAGGED, INC.'S EXPERT GARY L. GUTZLER**

Defendant Skiplagged, Inc. ("Skiplagged") files this Appendix in Support of Defendant Skiplagged, Inc.'s Response to Plaintiff American Airlines, Inc.'s Motion to Strike and Exclude Defendant Skiplagged, Inc.'s Expert Gary L. Gutzler, as follows:

| EXH. NO. | DESCRIPTION | APPX. NO. |
|---|---|---|
| 1 | Deposition Transcript excerpts of Gary L. Gutzler; Dated: 07/12/24 | 001-011 |
| 2 | Deposition Transcript excerpts of David N. Fuller; Dated: 8/13/24 (Under Seal) | 012 |

Dated: August 30, 2024                    Respectfully submitted,

*/s/ William L. Kirkman*
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


*/s/ Abigail R. S. Campbell*
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com


*/s/ Darin M. Klemchuk*
Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

**Attorneys for Defendant, Skiplagged, Inc.**

## **CERTIFICATE OF SERVICE**

On August 30, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

            */s/ Abigail R. S. Campbell*
            ABIGAIL R.S. CAMPBELL

# EXHIBIT 1

```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
 2                           FORT WORTH DIVISION
 3    AMERICAN AIRLINES, INC.,        )
                                      )
 4         Plaintiff,                 )
                                      )
 5    v.                              )         CIVIL ACTION
                                      )       NO. 4:23-cv-00860-P
 6    SKIPLAGGED, INC.,               )
                                      )
 7         Defendant.                 )
 8
 9
10
11                 -----------------------------------
12                   ORAL AND VIDEOTAPED DEPOSITION OF
13                           GARY L. GUTZLER
14                            JULY 12, 2024
15                 -----------------------------------
16
17
18       ORAL AND VIDEOTAPED DEPOSITION OF GARY L. GUTZLER,
19   produced as a witness at the instance of the PLAINTIFF, and
20   duly sworn, was taken in the above-styled and numbered cause on
21   July 12, 2024, from 10:00 a.m. to 12:30 p.m., before Amber
22   Garcia, Notary Public in and for the State of Texas, reported
23   by machine shorthand, at the law offices of Condon Tobin Sladek
24   Thornton Nerenberg, PLLC, 8080 Park Lane, Suite 700, Dallas,
25   Texas, pursuant to the Federal Rules of Civil Procedure.
```

Page 1

1  Q. And what is your understanding, the components of the
2  $6.1 million number to be?
3  A. It includes the service fees that Skiplagged
4  generates from its customers, it includes estimates of what
5  I'll call "ancillary revenue," which could be related to
6  baggage insurance, trip insurance.  It includes offsets or
7  discounts and allowances in -- in returns, including travel
8  credits, discounts for cancellations, chargebacks, transaction
9  fees.  So that $6.1 million, my understanding, is a net revenue
10 number.
11 Q. So the next sentence, "Skiplagged does not track
12 operating costs related specifically to American Bookings."
13 How did you come to form that belief?
14 A. It was either Mr. Gellert's deposition, but I suspect
15 it was based on my conversation with Mr. Zaman.
16 Q. Okay.  Anything else?
17 A. I'm not sure if it was in Mr. Zaman's declaration
18 also.  Potentially, in an interrogatory answer.  I'm not sure.
19 Q. So the next sentence we talk about -- you talk about
20 Skiplagged's total operating costs from 2020 through 2023 to be
21 $13,936,004.  Do you see that?
22 A. Yes.
23 Q. And where did you get that number?
24 A. From the Skiplagged income statements.
25 Q. And when you say "income statements," we're talking

Page 24

1  the profit and loss sta- --
2      A.   Profit and loss statements.
3      Q.   I'm going to keep going back to that because that's
4  what they say at the top of the document.  I understand that
5  income statements and P&L are the same.  I'm not trying to give
6  you a hard time, but that's what the document says, and so...
7      A.   And if I use the wrong terminology, I mean profit and
8  loss statement the same as an income statement.
9      Q.   Thank you.
10          And then it says, "its" -- "its," meaning
11  Skiplagged's, "total operating costs related to the generation
12  of, among other things, American Bookings revenue for the same
13  period total $12,680,290."  Do you see that?
14     A.   I do.
15     Q.   And how did you arrive at that number?
16     A.   For purposes of determining the cost related to the
17  trademark and copyright claims, I excluded certain costs that I
18  felt were either discretionary or not directly related to
19  Skiplagged's operations, and its efforts to generates revenues
20  and operate the firm.  And so I excluded those types of costs,
21  and focused on those costs that were related to generating
22  revenues for the firm.
23     Q.   In assessing the cost directly related to generation
24  of revenue, did you distinguish between revenue attributable to
25  American Airlines and other revenues?

Page 25

1    A.   No, not in this report.

2    Q.   Yes, sir.  I understand it's not in the report, but
3 did you do any calculations similar to those in Table 2 for any
4 year before 2020?

5    A.   I reviewed those income statements, profit and loss
6 statements, but I haven't included any sort of calculations of
7 those in the report.

8    Q.   I apologize.  I'm not trying to be difficult.  But I
9 under- -- I understand you reviewed them.  I understand that
10 you didn't include them in the report.

11         My -- my question is, did you do the similar
12 calculations for any year prior to 2020?

13    A.   I don't remember.  I'm not sure.

14    Q.   Have you done any similar calculations for any part
15 of 2024?

16    A.   No.

17    Q.   It says -- Paragraph 20, it says, "Based on my review
18 and discussions with Mr. Zaman," do you see that?

19    A.   I do.

20    Q.   It says, "Based on my review," what specifically did
21 you review to come to the conclusion that certain of those
22 expenses are related to American Bookings?

23    A.   Based on my understanding of what's included in the
24 categories.

25    Q.   And where did you gain that understanding of what's

Page 40

1     included in the categories?
2          A.   Mr. Zaman.
3          Q.   Did you review any documents to come to the
4     conclusion about what is in each of those categories?
5          A.   I don't believe so.
6          Q.   What did Mr. Zaman tell you that caused you to come
7     to the conclusion that certain of those expenses were related
8     to American Bookings?
9          A.   I -- I think I disagree with that statement.  What
10    Mr. Zaman told me is, what is included within each category of
11    costs, and then I made the determination of what to include for
12    purposes of this report.  Include as a cost for purposes of
13    this report.
14         Q.   Okay.  So other than your discussions with Mr. Zaman,
15    did you have any other basis for forming those opinions about
16    the costs?
17         A.   I don't believe so, other than what I've seen in
18    other trademark and copyright cases.
19         Q.   When you say "other than what you've seen in other
20    trademark and copyright cases," what do you mean by that, sir?
21         A.   That -- for example, generally, taxes and legal
22    expenses, generally, aren't included as a deduction for
23    purposes of calculating defendant's profits in a copyright or
24    trademark case.
25         Q.   Anything else?

1    A.   I don't believe so.
2    Q.   Okay.  And I believe you've identified nine
3  categories of expenses that you believe or you're opining
4  should be included as deductions related to the American
5  Bookings, correct?
6    A.   Looks like it.  Yes.
7    Q.   Are there -- other than -- I'm just going to list
8  them so we'll be on the same page.  This is starting at
9  Page 10.  1, Advertising; 2, Bank Charges; 3, Insurance; 4,
10 Office Expenses; 5, Other Business Expenses; 6, Payroll; 7,
11 Renter Lease; 8, Repair and Maintenance; and 9, Utilities.
12 Were there any other expenses that are related to the American
13 Bookings revenue?
14   A.   Not, in my opinion, for purposes of ongoing
15 generation of revenues.  One could argue that all the costs
16 incurred by Skiplagged in some way relate to the American
17 Bookings.  But for purposes of my analysis, what I wanted to
18 focus on were the costs more closely related to its actual
19 generation of revenues.
20   Q.   Okay.  So then just to be clear, you're not going to
21 opine in this case that all of Amer- -- or Skiplagged's
22 expenses should be deducted for purposes of the trademark or
23 copyright analysis, correct?
24   A.   I don't intend to do that, no.
25   Q.   So under the advertising, I can read here in your

Page 42

| | |
|---|---|
| 1 | reflected in Table 4? |
| 2 | A.   I don't believe so. |
| 3 | Q.   Can you tell me specifically how each of the costs in |
| 4 | Table 4 actually contributed directly to the American Bookings |
| 5 | revenue? |
| 6 | A.   Well, I think those costs are the costs incurred for |
| 7 | employees, for equipment, for operating expenses, that allow |
| 8 | Skiplagged to operate its website and generate revenues from |
| 9 | that website. |
| 10 | Q.   Anything else? |
| 11 | A.   At a high level, I think that summarizes it. |
| 12 | Q.   Well, at any level, is there anything else? |
| 13 | A.   No, I -- I think that is my explanation, |
| 14 | understanding of what and why these categories I've included. |
| 15 | Q.   In Paragraph 23 of your report, "Thus, based on the |
| 16 | above, Skiplagged had costs approximately $12.7 million that |
| 17 | were incurred in generating, among other revenue streams, the |
| 18 | American Bookings revenue."  Do you see that? |
| 19 | A.   Yes. |
| 20 | Q.   And what are the other revenue streams that you're |
| 21 | referring to here? |
| 22 | A.   It could be other facilitated bookings on other |
| 23 | airlines, United, Delta, foreign carriers.  It could be the |
| 24 | revenue is generated from online travel agency -- agencies, |
| 25 | whether it's the cost per click or cost per action revenue that |

1   purposes of a calculation of Defendant's profits.
2        Q.   The cost that you decided to include, those were the
3   ones that Mr. Zaman told you to include, correct?
4        A.   No.
5        Q.   Okay.
6        A.   I was not given any instructions on what costs to
7   include or exclude.  That -- that's my opinion what to include.
8        Q.   When we were previously talking about the Stripe
9   fees, do you remember that --
10       A.   Yes.
11       Q.   -- discussion?
12            Okay.  You said that that was also an
13   above-the-line deduction, do you remember that?
14       A.   It's a deduction for purposes of calculating net
15   revenue from gross revenue.
16       Q.   Right.  And so the net revenue is in Exhibit 2
17   reflected as -- well, it says, "Gross profit," not "net
18   profit," correct?
19       A.   It says that, yes.
20       Q.   Okay.  So --
21       A.   Net profit is the bottom line number.
22       Q.   Right.
23       A.   Okay.
24       Q.   And so -- but I'm trying to figure this out.  Because
25   you said the Stripe fees were deducted above-the-line, meaning,

Page 67

```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF TEXAS
                              FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,        )
                                )
     Plaintiff,                 )
                                )
v.                              )        CIVIL ACTION
                                )        NO. 4:23-cv-00860-P
                                )
SKIPLAGGED, INC.,               )
                                )
     Defendant.                 )
```

                    REPORTER'S CERTIFICATION
                ORAL AND VIDEOTAPED DEPOSITION OF
                         GARY L. GUTZLER
                         JULY 12, 2024

    I, Amber Garcia, Notary Public in and for the State of Texas, hereby certify to the following:

    That the witness, GARY L. GUTZLER, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

    I further certify that pursuant to FRCP Rule 30 (e) (1) that the signature of the deponent:

    _____ was requested by the deponent or a party before the completion of the deposition and returned within 30 days from date of receipt of the transcript.  If returned, the attached Changes and Signature Page contains any changes and

Page 76

```
 1   the reasons therefor;
 2        _____x____ was not requested by the deponent or a party
 3   before the completion of the deposition.
 4        I further certify that I am neither attorney nor counsel
 5   for, related to, nor employed by any of the parties to the
 6   action in which this testimony was taken.
 7         Further, I am not a relative or employee of any attorney
 8   of record in this cause, nor do I have a financial interest in
 9   the action.
10        Subscribed and sworn to on this the 19th day of July,
11   2024.
12
13
14
                    [signature: Amber Garcia]
15                  Amber Garcia, Notary ID No. 13426953-9
                    My commission expires:  3-24-2027
16                  VERITEXT LEGAL SOLUTIONS
                    Firm Registration No. 571
17                  300 Throckmorton Street, Suite 1600
                    Fort Worth, Texas 76102
18                  (817) 336-3042
                    (800) 336-4000
19
20
21
22
23
24
25
                                                       Page 77
```

# EXHIBIT 2

(FILED UNDER SEAL)