IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF AMERICAN AIRLINES, INC.'S REPLY TO SKIPLAGGED, INC.'S RESPONSE TO MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF GARY L. GUTZLER AND MOTION TO STRIKE LATE-PRODUCED EVIDENCE RELIED UPON BY GUTZLER**

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Skiplagged's strategy to withhold its financial data is now fully revealed............. 2

    B. Case law from courts in this Circuit support the exclusion of Gutzler's burden of proof opinions and testimony. .............................................................................. 5

    C. Gutzler's Expert Report is unreliable and speculative........................................... 7

    D. Skiplagged's "full absorption" approach is the latest twist to Gutzler's Report. ... 8

    E. Skiplagged suggests its burden of proof doesn't matter. ........................................ 8

    F. American's Motion to Strike should be granted. .................................................... 9

III. CONCLUSION.................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*GWTP Invs., L.P. v. SES Americom, Inc.*,
    No. 3:04-CV-1383-L, 2007 WL 7630459 (N.D. Tex. Aug. 3, 2007) ......................................... 6

*United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*,
    507 F. Supp. 3d 734 (W.D. Tex. 2020) ..................................................................................... 6

*Orthoflex, Inc. v. ThermoTek, Inc.*,
    986 F. Supp. 2d 776 (N.D. Tex. 2013) ..................................................................................... 8

*Powell v. Penhollow*,
    260 F. App'x 683 (5th Cir. 2007) ............................................................................................ 3

*Powell v. Penhollow*,
    No. 3:04-CV-1744-BF(H), 2009 WL 10703687 (N.D. Tex. May 20, 2009) ........................ 3, 8

*Red Dot Bldgs. v. Jacobs Tech., Inc.*,
    No. CIV.A. 11-1142, 2012 WL 2061904 (E.D. La. June 7, 2012) ........................................... 6

*YETI Coolers, LLC v. RTIC Coolers, LLC*.
    No. A-15-CV-597-RP, 2017 WL 394511 (W.D. Tex. Jan. 27, 2017). ................................. 5, 6

**STATUTES**

15 U.S.C. § 1117(a) ...................................................................................................................... 9

17 U.S.C. § 504(a) ........................................................................................................................ 9

**RULES**

Fed. R. Civ. P. 37(c)(1) ................................................................................................................. 6

Plaintiff American Airlines, Inc. ("American") files this Reply to Skiplagged, Inc.'s Response ("Response") [*see* Dkt. Nos. 245–48] to American's Motion to Exclude Expert Opinions and Testimony of Gary L. Gutzler ("Gutzler"), Motion to Strike Late-Produced Evidence Relied Upon by Gutzler, and Brief in Support ("Motion to Exclude") [*see* Dkt. Nos. 211–12 (redacted Motion & Appendix); Dkt. Nos. 242–43 (sealed Motion & Appendix)], and would respectfully show the Court as follows:

## I. INTRODUCTION

Skiplagged does not dispute that its burden of proof expert report on damages was due on May 31, 2024 pursuant to the Court's Scheduling Order. [*See* Dkt. No. 20 at 2–3; *extended by* Dkt. Nos. 62, 73, 101, 108]. And Gutzler's burden of proof Expert Report was indeed completed and served on American on that date. [*See* Dkt. No. 243 at 8]. What Skiplagged does challenge in its Response, however, is the nature of the information Gutzler was required to analyze and include in his report. And it's now very apparent from Skiplagged's Response that Skiplagged's answer to that question is nothing.

Skiplagged takes the unsupportable position that its late-developed theories on apportionment were not required to be detailed in Gutzler's Expert Report. In Skiplagged's view, Gutzler was justified in hiding its apportionment theories away, just like Skiplagged hid all of its financial data away from American, until well past the expert and discovery deadlines. Furthermore, even after all the unnecessary discovery disputes and late disclosures, fundamental aspects of Gutzler's original report remain entirely unsupported except for those premised on the say-so of Skiplagged's CEO. For many categories of financial information, Skiplagged has not produced the underlying financial documents for Gutzler *or* American to examine, and for others, Skiplagged relies exclusively on purported "complex" queries of Skiplagged's database which Skiplagged's CEO deleted and did not even share with his expert.

1

What Skiplagged wants the Court to believe is that it had the right to withhold its burden of proof theories and evidence on damages for rebuttal (if it ever disclosed them at all); that it was fair game to prejudice American by hiding its financial data well past the discovery deadline; and that it was free to ignore the rules and orders of this Court without peril.[1]

Finally, at its most brazen, Skiplagged removed one of American's trademarks from its website *after* the discovery period and then produced additional data in an attempt to manufacture a new argument and new evidence on apportionment. Skiplagged could have made this change at any point while discovery was ongoing; instead, it chose to wait until the close of discovery to prevent American from being able to cross-examine any witness on this issue. Skiplagged should not be permitted to benefit from its gamesmanship. The evidence should be excluded.

## II.    ARGUMENT

### A.    Skiplagged's strategy to withhold its financial data is now fully revealed.

Skiplagged made a tactical decision at the outset of this case to withhold its financial data from American, and only produced a small portion of its financial data in useable form when pinned against the wall by the Court's Order. Skiplagged's limited production of financial data didn't occur until July 1, 2024, well after Gutzler had a responsibility to disclose his burden of proof expert opinions to American. [*See* Dkt. No. 20 at 2–3 (Initial Expert Designations due by February 2, 2024); Dkt. No. 108 (extending deadline to May 31, 2024)]. Skiplagged's Response to American's Motion to Exclude further reinforces the theme that Skiplagged's whole defense of this case was wrapped into its strategy to hide its financial data from American.

It's equally clear that Gutzler's burden of proof Expert Report of May 31, 2024 fell victim

---

[1] Skiplagged's attitude about the Court's authority to enforce its Scheduling Order is reflected in the first sentence of its Response, wherein it writes: "a strict interpretation of the Scheduling Order's language regarding 'party with the burden of proof' is misplaced." [Dkt. No. 246 at 5].

2

to this strategy. Instead of giving its damages expert the financial data he needed to prepare his work, which it could have easily done, Skiplagged instead kept that data buried in its database. Because Gutzler was left in the dark, he could not do a detailed analysis of the costs he planned to deduct from Skiplagged's American-related revenues. Rather, Skiplagged forced Gutzler to rely on the undocumented representations of Skiplagged's CEO, Aktarer Zaman ("Zaman"), regarding its revenue and costs, but Gutzler could not verify this data, and reliance on the direction of an interested party is not a sufficient basis upon which to build a reliable expert report.[2] *Powell v. Penhollow*, No. 3:04-CV-1744-BF(H), 2009 WL 10703687, at *2 (N.D. Tex. May 20, 2009) (on remand from 5th Circuit, court excluded expert witness because "Defendants neither offered into evidence, nor provided to Plaintiff, any underlying documentation to support the amounts they claimed as allocated overhead expense. The excluded expert witness, the accountant who prepared Defendants' tax returns, did not examine the underlying documentation of any of the claimed overhead expenses."); *see also Powell v. Penhollow*, 260 F. App'x 683, 687–89 (5th Cir. 2007).

American raised this point in its Motion to Exclude Gutzler and Skiplagged did not even attempt to refute it. Rather, Skiplagged has now taken the remarkable position that Gutzler could not timely calculate Skiplagged's *own* deductions, expenses, and costs nor provide specifics as to its late-developed apportionment theory in his burden of proof Expert Report because he had to wait until American provided the opinions and calculations of its damages expert, David Fuller. [Dkt. No. 246 at 15–16]. Not so. Skiplagged claims:

> Gutzler could not have performed this calculation without first having Fuller's opinions and calculations. . . . Skiplagged's burden of proof regarding deductible expenses and apportionment *was not triggered* until after Fuller served his May 31, 2024 report[.]

---

[2] As the Court well knows, Skiplagged took the now-debunked position throughout this case that its financial data was inaccessible and could not be produced from its database. As described later in this Reply, Zaman was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See infra* at p. 4–5.

3

[Dkt. No. 246 at 17 (emphasis added)]. *Skiplagged* bears the burden to prove its costs, expenses, deductions, and any revenue it believes is wholly due to factors other than its infringement; those issues are not predicated on Fuller's opinions, they are separate and apart from them. After all, expenses are deducted from revenue, they are not dependent on the other. Skiplagged's position follows the classic sword and shield approach to litigation. Skiplagged refused to produce financial information that existed in its database before the discovery deadline and before American's damages expert report was due (sword); and then claims it was free of providing a burden of proof damages report because it needed that same data included in Fuller's report first (shield). All the while, Skiplagged secreted its financial documents away in its database, forcing American to seek Court assistance three separate times before Skiplagged finally agreed to produce a small portion of its financial data just after discovery closed. Notably, all of Gutzler's calculations of costs, and his arguments regarding apportionment rely exclusively on data from Skiplagged.

If that wasn't enough, Skiplagged now argues American "has not presented any evidence to support its conclusion that the facts or data considered by Gutzler were unreliable." [Dkt. No. 246 at 8]. This argument despite the fact American could not challenge any of the facts and data Gutzler relied on because they were all derived from the mind of Zaman, and Skiplagged's CEO ███████████████████████████████████████. Zaman testified:



4

██████████████████████████

[Dkt. No. 243 at 177, 190 (Skiplagged's 30(b)(6) Depo., 9:7–9:11, 9:16–9:23, 58:21–58:25)].

In sum, Gutzler (1) relied on the unsubstantiated memory of Skiplagged's CEO and Skiplagged's summary, unverified financial statements to calculate overhead costs in his original report, (2) improperly inserted an apportionment theory, based solely on information from Skiplagged (into his July 31, 2024 Rebuttal Report to the Fuller Report), and (3) created yet another apportionment theory, based solely on Skiplagged's "business decision" to remove an American mark after the close of discovery, in a transparent attempt to manufacture new evidence (in his August 22, 2024 Rebuttal to Supplemental Fuller Report). Each of these opinions should be excluded.

**B.     Case law from courts in this Circuit support the exclusion of Gutzler's burden of proof opinions and testimony.**

In *YETI Coolers, LLC v. RTIC Coolers, LLC*, the court considered a nearly identical fact pattern to the one before this Court (absent the discovery games played by Skiplagged). No. A-15-CV-597-RP, 2017 WL 394511, at *1 (W.D. Tex. Jan. 27, 2017). The defendant, RTIC Coolers, submitted the expert report of Dr. Tulin Erdmen, Ph.D., on one of the core issues in the case (the design of RTIC coolers). *Id.* at *1. YETI argued that Dr. Erdmen's report was untimely, having been filed after the deadline for filing burden of proof reports in the Scheduling Order. *Id.* YETI also sought to exclude Dr. Erdmen's work because her opinions were too unreliable to be helpful to a jury. *Id.* And just as Skiplagged has done in this case, RTIC responded by claiming Dr. Erdmen's report was a rebuttal report rather than a burden of proof report. *Id.* The court bought none of RTIC's arguments and excluded Dr. Erdmen's report, writing:

> To determine whether Dr. Erdem's report is a rebuttal report requires the Court to consider three factors: (1) whether Dr. Erdem is purporting to contradict or rebut expert opinions offered by YETI as to a claim or defense on which YETI has the burden of proof; (2) whether her opinions are on the same subject matter as that

5

>identified by a YETI expert in its Rule 26(a)(2)(B) disclosure; and (3) whether the evidence disclosed as rebuttal evidence is intended solely to contradict or rebut that evidence.

*Id.* at *2. Concluding that Dr. Erdmen's report did not meet this standard and should be excluded, the Court further wrote:

>Dr. Erdem's report is focused solely on the issue of apportionment of profits—an issue on which RTIC has the burden of proof. . . . Dr. Erdem's expert report is a burden of proof report, it was filed well after the applicable deadline [in the Court's Scheduling Order].

*Id.* at *2–3. *YETI Coolers* makes clear that a party required to serve a burden of proof expert report must do so timely or the court's scheduling order breaks down. Fact and expert discovery, selection of rebuttal witnesses, and trial preparation all depend on parties meeting this Court-ordered responsibility. And there can be no doubt that the burden of proof issue Skiplagged admits it must take on at trial—apportionment—was not covered in Gutzler's burden of proof Expert Report.

To be clear, *YETI Coolers* is not an outlier opinion. Many courts have excluded untimely and unreliable expert testimony in much the same way. *See, e.g., United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 507 F. Supp. 3d 734, 746–49 (W.D. Tex. 2020) (following the three factor test in *YETI Coolers* and excluding a burden of proof expert's testimony recast as rebuttal; *GWTP Invs., L.P. v. SES Americom, Inc.*, No. 3:04-CV-1383-L, 2007 WL 7630459, at *10 (N.D. Tex. Aug. 3, 2007) (excluding testimony offered to "bootstrap a late expert opinion into evidence by getting another expert to parrot that late opinion in a rebuttal report"); *see also Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. CIV.A. 11-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012) (excluding an expert witness due to timeliness and stating, "[t]he failure to meet a court-ordered deadline for supplementing an expert report is no trifling matter. 'If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . at a trial'") (quoting Fed. R. Civ. P. 37(c)(1)).

6

## C. Gutzler's Expert Report is unreliable and speculative.

American will not rehash all of the reasons Gutzler's burden of proof Expert Report is unreliable because those issues are well covered in its Motion to Exclude. One point in Skiplagged's response merits particular mention, however. In its argument about the independence of Gutzler's analysis, Skiplagged cites this exchange:

> Q. What did Mr. Zaman tell you that caused you to come to the conclusion that certain of those expenses were related to American bookings?
> A. I—I think I disagree with that statement. What Mr. Zaman told me is, what is included within each category of costs, and then I made the determination of what to include for purposes of this report. Include as a cost for purposes of this report.

[Dkt. No. 246 at 9]. This testimony not only proves Gutzler did nothing to determine the numbers included in each category of costs other than rely on Zaman's representations, but also ignores what Gutzler said immediately preceding this exchange:

> Q. It says, "Based on my review," what specifically did you review to come to the conclusion that certain of those expenses are related to American Bookings?
> A. Based on my understanding of what's included in the categories.
> Q. And where did you gain that understanding of what's included in the categories?
> A. Mr. Zaman.
> Q. Did you review any documents to come to the conclusion about what is in each of those categories?
> A. **I don't believe so.**

[Dkt. No. 243 at 37 (Gutzler Depo., 40:20–41:5) (emphasis added)].

Any fair reading of Gutzler's burden of proof Expert Report evidences that he did nothing more than recite numbers spoon-fed to him by the most interested of witnesses—the owner and CEO of Skiplagged, Zaman—while Skiplagged simultaneously produced *no* underlying documents supporting these numbers. With respect to ████████████████████, Zaman admitted those were based on ████████████████████. With respect to advertising, bank charges, insurance, office expenses, other business expenses, payroll expenses, rent, repair and maintenance, and utilities Skiplagged did not provide a *single document* supporting

7

these expenses to either Gutzler or American. This is not sufficiently reliable data on which to base an expert report. It is also prejudicial to American, because American cannot cross examine *anyone* on this information. Relying purely on Zaman's say-so, alone, is sufficient basis to exclude Gutzler's testimony on any matters Skiplagged has the burden of proof on at trial. *See Orthoflex, Inc. v. ThermoTek, Inc*., 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) (rejecting expert who did not conduct independent analysis and instead relied primarily on what an interested party told him); *Powell*, No. 3:04-CV-1744-BF(H), 2009 WL 10703687, at *2 (N.D. Tex. May 20, 2009) (rejecting damages expert because he did not examine underlying documents supporting overhead costs).

**D.    Skiplagged's "full absorption" approach is the latest twist to Gutzler's Report.**

Skiplagged now suggests that something called the "full absorption" approach justifies the soundness of Gutzler's work. Skiplagged's attempt to rebrand Gutzler's work by using a new name (and co-opting the reputation of Judge Learned Hand) to give it the imprimatur of reliability reeks of sophistry. While courts do differ on whether experts can deduct general overhead expenses, courts do *not* appear to differ on the questions of whether a defendant is required to *prove* those overhead expenses by providing underlying documentation, and whether an independent "expert" must examine these underlying documents. Skiplagged's new argument regarding "full absorption" is of no moment.[3]

**E.    Skiplagged suggests its burden of proof doesn't matter.**

As previously discussed, Skiplagged argues that it had no obligation to provide its burden of proof expert damages opinions until American had met "the initial burden of proving the gross revenue attributable to the infringement." [Dkt. No. 246 at 15]. It then cites a couple of cases for the unremarkable position that a plaintiff must first prove its copyright and trademark damages *at*

---

[3] It should come as no surprise that Gutzler never used the term "full absorption" one time to describe his work during his deposition or in any of his three reports.

8

*trial* before the burden of proof shifts to the defendant to prove any deductions to those damages. [Dkt. No. 246 at 16]; *see* 15 U.S.C. § 1117(a); 17 U.S.C. § 504(a). None of this is inconsistent with American's rationale for excluding Gutzler's untimely burden of proof expert opinions.

As American explicitly lays out in its Motion to Exclude (see Section IV.B) [Dkt. No. 242 at 20–23], both parties had burden of proof expert reports due on May 31, 2024. The Court's Scheduling Order states at Section B.4.a. that "the party with the burden of proof on the issue subject to the expert designation **must** file a written designation . . .and **must** comply with Rule 26(a)(2)[.]" [Dkt. No. 20 at 2–3]. American did exactly what it was required to do under the Court's Order (reserving the right to supplement its revenue numbers pending Skiplagged's production of its financial data). But despite being in possession of all of the required financial information, Skiplagged ignored its Court-ordered responsibilities.

## F.   American's Motion to Strike should be granted.

American's Motion to Strike has nothing to do with Skiplagged's duty to supplement discovery. What Skiplagged is trying to do—under the guise of supplementation—is to concoct a new expert opinion that should have been provided to American in Gutzler's burden of proof Expert Report and outlined in both Skiplagged's Rule 26 disclosures and its discovery answers. It appears in none of those places.

Skiplagged made what it now calls a "business decision" but what is transparently a calculated move to manufacture evidence—without notice to American. On June 30, 2024, the same date as the Court's close of discovery deadline and two days after American filed its Motion to Enforce the Court's May 1, 2024 Order (through which Skiplagged faced sanctions for repeatedly ignoring the Court's orders requiring it to produce its financial data), Skiplagged chose to remove American's flight symbol from its website. [*See* Dkt. No. 246 at 18]. Shortly thereafter, on July 31, 2024, this Court ruled on summary judgment that Skiplagged's use of the American

9

flight symbol infringed on American's copyright. [Dkt. No. 199 at 6–9].

The timing of Skiplagged's action to remove the flight symbol stinks of gamesmanship.[4] Essentially, Skiplagged decided it had to figure out a new strategy to attack American's damages so it created new evidence to support a new theory of apportionment by changing its website in real time. This theory was presented to American in an unexplained, four-page document on August 9, 2024, and Gutzler provided only a cursory conclusion based on the document and relegated it to a footnote in his August 22, 2024 Rebuttal to Supplemental Fuller Report. [*See* Dkt. No. 243 at 162 (Report p. 23 n.84)]. For all of these reasons, American challenges this document as untimely and seeks to exclude this new theory of apportionment as improper rebuttal.

For Skiplagged to suggest American is not harmed by the introduction of a new expert opinion—and indeed, the manufacturing of new facts—at this late date is unimaginable. Skiplagged's PDF labeled SKP00111228–31 should be stricken from the record and any evidence Gutzler seeks to offer about his new theory of apportionment contained in it should be excluded.

### III.   CONCLUSION

For the reasons stated above, American requests the Court exclude all opinions contained in the Expert Report of Gary L. Gutzler and all opinions in his Rebuttal Report and Rebuttal to Supplemental Report that relate to issues upon which Skiplagged has the burden of proof at trial. Additionally, American requests that the Court strike Skiplagged's document, SKP00111228–31, and prohibit Skiplagged or Gutzler from relying on this document or any testimony related to it at the trial of this case.

---

[4] Skiplagged didn't notify American of its new theory based on the removal of the flight symbol from its website until after the Court-ordered mediation with Judge Wallace was concluded on August 9, 2024.

| | |
|---|---|
| Dated: September 2, 2024 | Respectfully submitted, |
| | /s/ Dee J. Kelly, Jr. |
| | Dee J. Kelly, Jr. |
| | State Bar No. 11217250 |
| | dee.kelly@kellyhart.com |
| | Julia G. Wisenberg |
| | State Bar No. 24099146 |
| | julia.wisenberg@kellyhart.com |
| | KELLY HART & HALLMAN LLP |
| | 201 Main Street, Suite 2500 |
| | Fort Worth, Texas 76102 |
| | (817) 332-2500 |
| | |
| | R. Paul Yetter |
| | State Bar No. 22154200 |
| | pyetter@yettercoleman.com |
| | YETTER COLEMAN LLP |
| | 811 Main Street, Suite 4100 |
| | Houston, Texas 77002 |
| | (713) 632-8003 |
| | |
| | Cameron M. Nelson |
| | nelsonc@gtlaw.com |
| | GREENBERG TRAURIG LLP |
| | 77 West Wacker Drive, Suite 3100 |
| | Chicago, Illinois 60601 |
| | Telephone: (312) 456-6590 |
| | |
| | Nathan J. Muyskens |
| | nathan.muyskens@gtlaw.com |
| | GREENBERG TRAURIG LLP |
| | 2101 L Street, N.W., Suite 1000 |
| | Washington, DC 20037 |
| | Telephone: (202) 331-3100 |
| | |
| | **ATTORNEYS FOR PLAINTIFF** |

**CERTIFICATE OF SERVICE**

I certify that on September 2, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.