IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**AMERICAN AIRLINES, INC.'S RESPONSE AND BRIEF IN OPPOSITION TO SKIPLAGGED, INC.'S MOTION TO STRIKE AND EXCLUDE PLAINTIFF AMERICAN AIRLINES, INC.'S EXPERT DAVID FULLER**

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ............................................................................................................. 1
II. ARGUMENT AND AUTHORITIES ............................................................................... 3
    A. Legal Standard ...................................................................................................... 3
    B. Fuller's supplemental report is not a new report. ................................................. 4
        1. Fuller's supplemental report employs the same damages calculation as his initial report. ............................................................................................... 4
        2. Skiplagged misstates the law on damages. .............................................. 5
        3. Fuller's damages calculations are agnostic as to specific legal claims. ...... 6
        4. Even if portions of Fuller's report are viewed as "new" opinions, they should not be stricken. ................................................................................ 7
    C. Skiplagged's criticisms of the "reliability" of Fuller's reports and opinions are without merit. ........................................................................................................ 9
III. CONCLUSION ................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                    **PAGE(S)**

*Aircraft Holding Sols., LLC v. Learjet, Inc.*,
   No. 3:18-CV-0823-D, 2022 WL 3019795 (N.D. Tex. July 29, 2022), *aff'd sub
   nom. Aircraft Holding Sols. L.L.C. v. Learjet, Inc.*, No. 23-10388, 2024 WL
   3043294 (5th Cir. June 18, 2024) ........................................................................................5

*Barrett v. Atlantic Richfield Co.*,
   95 F.3d 375 (5th Cir. 1996) .............................................................................................7, 8

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
   948 F. Supp. 2d 691 (S.D. Tex. 2013) ................................................................................11

*CliniComp Int'l, Inc. v. Athenahealth, Inc.*,
   507 F. Supp. 3d 774 (W.D. Tex. 2020) ..........................................................................10, 12

*Collins v. United States*,
   No. 3:08-CV-923-J-32JRK, 2010 WL 4643279 (M.D. Fla. Nov. 9, 2010) .............................3

*In re Complaint of C.F. Bean, Inc.*,
   841 F.3d 365 (5th Cir. 2016) ...............................................................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ..........................................................................................................12

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*,
   948 F.3d 261 (5th Cir. 2020) ...............................................................................................6

*Finch v. Owners Ins. Co.*,
   No. CV 616-169, 2017 WL 6045449 (S.D. Ga. Dec. 6, 2017) ..............................................3

*Jacked Up, LLC v. Sara Lee Corporation*,
   291 F. Supp. 3d 795 (N.D. Tex. 2018) ................................................................................9

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
   No. SA-21-CV-00673-XR, 2023 WL 28723 (W.D. Tex. Jan. 2, 2023) ............................5, 13

*Koen v. Monsanto Co.*,
   No. 1:22-CV-209-RP, 2024 WL 2948652 (W.D. Tex. June 11, 2024) ................................12

*Kumar v. Frisco Indep. Sch. Dist.*,
   476 F. Supp. 3d 439 (E.D. Tex. 2020) .................................................................................8

*McClain v. Metabolife Intern., Inc.*,
   193 F.Supp. 2d 1252 (N.D. Ala. 2002) ................................................................................3

*Nova Consulting Grp., Inc. v. End'g Consulting Servs., Ltd.*,
   290 Fed. App'x 727 (5th Cir. 2008) ..................................................................................9, 10

*Panini Am., Inc. v. Wild Card, Inc.*,
   No. 4:22-CV-093, 2023 WL 1073692 (E.D. Tex. Jan. 27, 2023) ............................................6

*PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*,
   995 F. Supp. 658 (N.D. Tex. 1998) ........................................................................................11

*Pebble Beach Co. v. Tour 18 I Ltd.*,
   155 F.3d 526 (5th Cir. 1998) ..................................................................................................13

*Robert F. v. N. Syracuse Cent. Sch. Dist.*,
   No. 518CV00594LEKATB, 2021 WL 4207203 (N.D.N.Y. Sept. 16, 2021) ...........................3

*Sandifer v. Hoyt Archery, Inc.*,
   907 F.3d 802 (5th Cir. 2018) ....................................................................................................3

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*,
   73 F.3d 546 (5th Cir. 1996) ......................................................................................................8

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
   851 F.3d 440 (5th Cir. 2017) ..................................................................................................11

*Union Oil Co. of California v. Buffalo Marine Serv., Inc.*,
   No. 1:10-CV-195, 2012 WL 13034559 (E.D. Tex. Jan. 10, 2012) .........................................10

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.,
   State of Miss.*,
   80 F.3d 1074 (5th Cir. 1996) ..................................................................................................10

*Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*,
   204 F.R.D. 309 (W.D. La. 2001) ..............................................................................................8

*Villegas v. Cequent Performance Products, Inc.*,
   No. SA-15-CV-474-XR, 2017 WL 816872 (W.D. Tex. Mar. 1, 2017) ....................................8

**STATUTES**

15 U.S.C. § 1117 ..............................................................................................................................5

17 U.S.C. § 504 ................................................................................................................................5

17 U.S.C. § 504(b) ...........................................................................................................................6

Plaintiff American Airlines, Inc. ("American") files this Response and Brief in Opposition to Defendant Skiplagged, Inc.'s ("Skiplagged") Motion to Strike and Exclude Plaintiff American Airlines, Inc.'s Expert David Fuller and Brief in Support thereof [Dkt. Nos. 222–25] (the "Motion"), and respectfully shows the Court as follows:

## I.   INTRODUCTION

The Court should deny Skiplagged's motion to exclude American's damages expert, David Fuller ("Fuller").

Though at times difficult to follow, Skiplagged offers two basic arguments why Fuller should be excluded. *First*, Skiplagged argues that Fuller provides "new" damages theories in his supplemental report. [Dkt. No. 222 at 13–15]. *Second*, Skiplagged argues his reports should be excluded because Fuller (i) relies on assumptions it disagrees with, and (ii) utilizes a calculation method it disagrees with. [Dkt. No. 222 at 18–25]. Both arguments fail, and notably, Skiplagged does not challenge Fuller's qualifications or the accuracy of the calculations performed.

As to the first argument, Fuller submitted his original report in the midst of Skiplagged's discovery gamesmanship surrounding its production of basic information about the American tickets it sold. Skiplagged did not produce its data in a usable format until well after Fuller submitted his expert report.[1] After first being ordered to produce this highly relevant information, Skiplagged produced extraordinarily poor-quality PDFs that were unusable. [*See* Dkt. Nos. 145–147 (American Airlines, Inc.'s Motion to Enforce the Court's May 1, 2024 Order and Brief in Support)]. Skiplagged finally produced barely-usable PDFs the day after discovery closed, and Fuller supplemented his report on August 2nd to account for this new data that had been improperly withheld and only after a third-party vendor was able to convert the PDFs into a usable format.

---

[1] *See* Dkt. Nos. 198 (Plf.'s Mot. to Supplement its Expert Report on Damages), 200 (Order Granting Plf.'s Mot. for Leave to File a Supplemental Expert Report on Damages).

1

Skiplagged's argument that the supplemental report contains "new" opinions is fallacious. Skiplagged tries to artificially tie Fuller's original report to American's breach of contract claims, but Fuller's analysis, in both his original report and in his supplemental report, is agnostic to American's claims. Fuller focused both reports on calculating American's lost revenues and Skiplagged's wrongfully gained profits. [App'x 011–17 (Expert Report of David N. Fuller ("Fuller Report"), ¶¶ 24–41); App'x 039–45 (Supplemental Expert Report of David N. Fuller ("Fuller Supplemental Report"), ¶¶ 19–40)]. These calculations apply to *all* of American's claims. Fuller also clearly referenced American's Lanham Act and Copyright claims in his original report. [App'x 008–11, 014, 018 (Fuller Report ¶ 14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); ¶¶ 15–19 (referencing American's copyright and trademarks claims); ¶ 23 (including trademark and copyright infringement in underlying assumptions); ¶¶ 24, 31 (citing the trademark damages statute); ¶¶ 42–43 (citing the Copyright damages statute)]. Contrary to Skiplagged's assertions, Fuller is not offering new damages theories—he is merely supplementing his same damages model, using the exact same methodology as in his original report, to account for data that was previously withheld, as permitted by the Court.

Skiplagged's second argument is also meritless because Skiplagged is criticizing Fuller for not opining on issues which are squarely in the province of the jury. Like any damages expert, Fuller's calculations make *assumptions* that American has otherwise proven liability and causation. It would be *inappropriate* for him to opine on whether American has in fact done so, and because the measure of damages is the same under any of American's theories, Fuller did not need to tie damages to particular causes of action. [App'x 073 (Deposition of David N. Fuller taken June 27, 2024 ("Fuller Depo."), 63:20–64:2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2



")); App'x 086 (Fuller Depo., 86:7–15 ("Q. So I want to make sure I'm understanding you correctly. ▮▮▮ correct? A. ▮▮▮, yes. Q. Okay. So that would go to -- ▮▮▮ right? A. I believe so."))]. Nor is Fuller required to use assumptions or a calculation method preferred by Skiplagged. Fuller's report is based on reliable facts and data, was timely disclosed,[2] and relies on sound methods. Accordingly, the Court should deny Skiplagged's Motion.

## II. ARGUMENT AND AUTHORITIES

### A. Legal Standard

District courts have broad discretion to deny a motion to strike and exclude expert testimony. *See Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018). Generally, "courts are loathe to invoke the strong medicine of precluding expert testimony" "[w]ithout a finding of bad faith or gamesmanship on the eve of trial . . . ." *McClain v. Metabolife Intern., Inc.*, 193 F.Supp. 2d 1252, 1259 (N.D. Ala. 2002); *Collins v. United States*, No. 3:08-CV-923-J-32JRK, 2010 WL 4643279, at *5 (M.D. Fla. Nov. 9, 2010) (same); *Robert F. v. N. Syracuse Cent. Sch. Dist.*, No. 518CV00594LEKATB, 2021 WL 4207203, at *5 (N.D.N.Y. Sept. 16, 2021) (same). "This caution is magnified when[,]" as here, "exclusion would lead to dismissal." *Finch v. Owners Ins. Co.*, No. CV 616-169, 2017 WL 6045449, at *3 (S.D. Ga. Dec. 6, 2017) (citing *Collins*, 2010

---

[2] In fact, had Skiplagged timely produced the data Fuller needed to perform his damages calculation, Fuller's supplemental report would not have been necessary. Ironically, Skiplagged's behavior necessitated the exact issue it now complains about—an "untimely" report.

3

WL 4643279 at *5; *Durden v. Citicorp Tr. Bank, FSB*, No. 3:07-CV-974-J-34JRK, 2008 WL 11318338, at *5 (M.D. Fla. Nov. 25, 2008)).

As set forth below, the Court should deny Skiplagged's Motion because (i) Fuller's supplemental report is just that—a supplement—and therefore it is not untimely, and (ii) Skiplagged's complaints about the assumptions underlying Fuller's opinions relate to issues which are squarely within the province of the jury.

**B.     Fuller's supplemental report is not a new report.**

    **1.     Fuller's supplemental report employs the same damages calculation as his initial report.**

Skiplagged's argument that Fuller's supplemental report is a "new" opinion is not supported by text of the report or by the circumstances under which it was served. Fuller's supplemental report merely makes a couple of minor adjustments to his original calculation of actual damages based on newly (and belatedly) produced evidence. Incidentally, two of these adjustments are *in Skiplagged's favor*.

Fuller calculated American's lost revenues the *same way* in both reports. [*Compare* App'x 017 (Fuller Report ¶ 40); *with* App'x 044–45 (Fuller Supplemental Report ¶¶ 38–39)]. In both reports, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*Id.*] In his supplemental report, Fuller added a calculation to account for the time period beginning on the date this lawsuit was filed to present, basing this estimate on the flight data Skiplagged produced on July 1st, *after* his original report. [App'x 015–17 (Fuller Report ¶¶

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

34–37, 40)]. The only other calculations Fuller added were (a) ███████████████████████████████████████████████████████████████████████████; both of these adjustments serve to reduce American's damages and favor Skiplagged. [App'x 017 (Fuller Report ¶ 40); App'x 044–45 (Fuller Supplemental Report ¶¶ 38–39)].

The damages calculation, methodology, and opinions formed in both reports are fundamentally the same, rendering Fuller's supplemental report (and opinions therein) a logical and proper extension of the first report. *See Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 3019795, at *3 (N.D. Tex. July 29, 2022), *aff'd sub nom. Aircraft Holding Sols. L.L.C. v. Learjet, Inc.*, No. 23-10388, 2024 WL 3043294 (5th Cir. June 18, 2024) ("Dufour's supplemental report . . . does not modify how he arrived at the value of the Aircraft, such as via a new methodology for determining value; rather, the supplemental report provides his assessment of the October 2021 sale price of the Aircraft based on updated market data."). Even if it weren't, however, Skiplagged's motion to strike the *entirety* of Fuller's opinions on the basis of a few allegedly new opinions makes no sense. The only "new" material Skiplagged has identified in its motion are adjustments that favor Skiplagged.

### 2. Skiplagged misstates the law on damages.

Skiplagged further attempts to confuse the issues by misstating the law on damages. At the outset, it is clear that American is entitled to recover actual damages *and* Skiplagged's profits (to the extent not covered by actual damages) under *both* the Lanham Act, 15 U.S.C. § 1117, and the Copyright Act, 17 U.S.C. § 504. Under both acts, a plaintiff need only present a calculation of a defendant's gross sales reasonably related to the infringement, and the defendant has the burden of proving costs or other deductions from those sales, as well as any apportionment theories the defendant wishes to present. *See also Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR, 2023 WL 28723, at *18 (W.D. Tex. Jan. 2, 2023) (citing 17 U.S.C. § 504(b));

5

*Panini Am., Inc. v. Wild Card, Inc.*, No. 4:22-CV-093, 2023 WL 1073692, at *8 (E.D. Tex. Jan. 27, 2023).

With respect to actual damages, Skiplagged claims that the *only* way to calculate this is to assess the "loss in fair market value of the copyright." This is unabashedly wrong; there are *numerous* ways to calculate actual damages. "'Actual damages' under the Copyright Act arise after each separate infringing act and are properly classified as consequential damages. That is because the 'basic rule' for computing actual damages in copyright 'is to inquire what revenue would have accrued to plaintiff but for the infringement.'" *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020) (citing 4 NIMMER ON COPYRIGHT § 14.02[A][1] (2019)); *see also Panini Am*, 2023 WL 1073692 at *8 ("There's no one set way of determining a plaintiff's damages under § 504(b). Instead, actual damages may be calculated in a number of ways."). Fuller calculated American's actual damages consistent with this case law, by calculating the revenues it would have received but for Skiplagged's infringement. [App'x 016–017 (Fuller Report ¶ 40); App'x 044–45 (Fuller Supplemental Report ¶¶ 38–39)].

### 3. Fuller's damages calculations are agnostic as to specific legal claims.

In its misguided attempt to attack Fuller's original report, Skiplagged mischaracterizes his initial report as one on contract damages. But Fuller's initial report referenced American's Lanham Act and Copyright claims clearly and extensively. [App'x 008–11, 014, 018 (Fuller Report ¶ 14 (███████████████████████████████████████)); ¶¶ 15–19 (referencing American's copyright and trademarks claims); ¶ 23 (including trademark and copyright infringement in underlying assumptions); ¶¶ 24, 31 (citing the trademark damages statute); ¶¶ 42–43 (citing the copyright damages statute))]. Further, to the extent Skiplagged references Fuller's deposition, Skiplagged misstates what Fuller said. Fuller did *not*

6

testify that he had "no opinion as to copyright actual damages," as Skiplagged claims. [Dkt. No. 223 at 13]. Fuller explicitly *rejected* the very proposition that Skiplagged is presenting here:



[App'x 073 (Fuller Depo., 63:15–64:2) (emphasis added)]. Later, Fuller confirmed that his damages analysis for both the copyright and trademark claims is the same:



A. I believe so.

[App'x 079 (Fuller Depo., 86:7–16)].

Skiplagged engages in these verbal gymnastics in its attempt to characterize Fuller's supplemental report as "new,", but it simply isn't. It presents the same calculation as the initial report, with a few minor adjustments based upon new evidence and arguments generated or produced by Skiplagged since the original report.

    **4.    Even if portions of Fuller's report are viewed as "new" opinions, they should not be stricken.**

Even if "new," the opinions in Fuller's supplemental report should not be stricken in any event. The Fifth Circuit applies a four-part test based on Rule 37 to determine whether an expert

7

opinion disclosed after the date set in the scheduling order should be stricken. *See Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). Under the test, courts evaluate: "(1) the party's explanation, if any, for failure to comply with the scheduling order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witness's testimony." *Id.*; *see Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996).

Here, Fuller needed to supplement his expert report based on highly relevant information. The primary reason for supplementing his expert report was the 1.4 million pages of flight booking data that Skiplagged did not produce in useable form until July 2024. Fuller could not ignore this information in preparing his supplemental report; he was obligated to consider it.

Courts in this circuit almost universally do not strike untimely expert reports when the new report relies on information that was not previously available before submission of the expert's original report. *E.g.*, *In re Complaint of C.F. Bean, Inc.*, 841 F.3d 365, 373 (5th Cir. 2016); *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 469 (E.D. Tex. 2020); *Villegas v. Cequent Performance Products, Inc.*, No. SA-15-CV-474-XR, 2017 WL 816872, *4 (W.D. Tex. Mar. 1, 2017). So too here, there is no reason to strike Fuller's supplement.

The other factors also favor not excluding Fuller's supplemental report. For example, Skiplagged cannot credibly claim it faces prejudice, given that (i) it has already had an opportunity to re-depose Fuller,[4] and (ii) two of the changes to Fuller's report actually *reduce* American's claimed damages.

---

[4] David Fuller's second deposition took place on August 13, 2024 and was confined to the opinions in his supplemental report. *See Verzwyvelt v. St. Paul Fire & Marine Ins. Co.*, 204 F.R.D. 309, 311 (W.D. La. 2001) ("plaintiffs have time to depose Phebus and prepare for trial, thereby mitigating any real or material prejudice to plaintiffs as a result of defendant's delay in rendering and correctly identifying the expert reports.").

8

### C. Skiplagged's criticisms of the "reliability" of Fuller's reports and opinions are without merit.

Skiplagged's remaining criticisms of Fuller are attempts to criticize him for *not* opining on subjects that are outside the scope of his expertise. Fuller properly identified the assumptions he was relying on and, as with any damages expert testimony, whether those assumptions prove to be valid are issues for the jury and for the other witnesses and evidence that will be presented at trial.

Skiplagged asserts that the following opinions are speculative and serve as a basis for exclusion:

> "(1) Skiplagged would not have received any of the calculated revenue but for its infringement of AA's trademarks; (2) there is a reasonable causal nexus between Skiplagged's unauthorized sale of AA tickets and its revenue from the sale of those tickets; (3) Skiplagged has unjustly enriched itself through the sale of AA tickets; and (4) but-for Skiplagged's existence, every Skiplagged customer would have purchased an AA ticket at the same time and higher price directly from AA."

[Dkt. No. at 18]. Skiplagged's criticisms about Fuller's underlying assumptions are non-starters for three reasons. Each of these items are clearly identified as underlying assumptions in Fuller's report; he is not offering independent opinions on these issues. [App'x 010 (Fuller Report ¶ 23].[5]

*First*, Fuller has wide latitude to make assumptions and use assumptions to undergird his model. *See Jacked Up, LLC v. Sara Lee Corporation*, 291 F. Supp. 3d 795, 806 (N.D. Tex. 2018); *Nova Consulting Grp., Inc. v. End'g Consulting Servs., Ltd.*, 290 Fed. App'x 727, 732–33 (5th Cir. 2008) (holding an expert's opinion was not rendered unreliable merely because he made a number of assumptions).

*Second*, American does not plan on presenting *any* of Fuller's assumptions to the jury as legal conclusions (nor could it). "[W]hen . . . the parties' experts rely on conflicting sets of facts,

---

[5] There is one paragraph in Fuller's report where he references the causal nexus, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it is not an opinion he would offer at trial, unless challenged on this particular point on cross-examination.

it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Nova Consulting Grp.*, 290 Fed App'x at 733 (quoting *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003)). American will present Fuller's assumptions merely *as assumptions* that undergird his model, and nothing more; it suspects Skiplagged, through "vigorous cross-examination, presentation of contrary evidence" will combat any assumptions it disagrees with, and the Court will provide "careful instruction on the burden of proof," which all in unison will give the jury the tools it needs to evaluate the evidence and expert testimony. *See Id.* (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)).

*Third*, the assumptions that Fuller has made *do not provide a basis for exclusion*. "Alternative or opposing facts, data, and assumptions do not preclude admission of expert testimony, that is, they go to the weight of the evidence, not admissibility." *CliniComp Int'l, Inc. v. Athenahealth, Inc.*, 507 F. Supp. 3d 774, 779 (W.D. Tex. 2020); *see United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996); *Union Oil Co. of California v. Buffalo Marine Serv., Inc.*, No. 1:10-CV-195, 2012 WL 13034559, at *5 (E.D. Tex. Jan. 10, 2012) ("Even assuming Buffalo Marine's critique of Lerman's conclusions has merit, these complaints go to the weight, not the admissibility, of his opinion, as they are focused primarily on the sources utilized by Lerman in conducting his analysis."). To the extent Skiplagged has critique about any of Fuller's assumptions, it is free to raise that critique to the jury on cross examination; not to the Court as a threshold matter for admitting the opinion.

Skiplagged makes two other "reliability" challenges to Fuller's testimony. It argues that Fuller's opinions are unreliable for failing to establish a causal connection between the damages and the infringing conduct [Dkt. No. 223 at 18, 21–22, 24], and it alleges that Fuller's opinions are

unreliable because he failed to consider alternative assumptions or alternative calculation methods. [Dkt. No. 223 at 19 ("Fuller admits . . . he ignored any other alternatives to flight purchases such as through a travel agent, another air carrier, a cheaper time and date, or not traveling by plane at all."), 22 ("Fuller did not analyze AA's alleged Lanham Act actual damages under reasonable royalty, corrective advertising or damage to business reputation theories."), 23–24]. Neither argument carries any merit.

As to Skiplagged's challenge that Fuller's opinions fail to establish a causal connection between Skiplagged's infringing conduct and the damages sought therein, this challenge fails because questions of causation (in both copyright and trademark infringement cases) and its link to damages go to the jury. *E.g.*, *PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 995 F. Supp. 658, 659 (N.D. Tex. 1998); *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 709 (S.D. Tex. 2013); *see also Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 456 (5th Cir. 2017). Further, Fuller's calculations *are* based on an appropriate causal nexus because they are limited to American Airlines flights booked by Skiplagged. By basing his calculations on these flights, Fuller has appropriately limited his damages model to those flights which bear a connection to the copyrights and trademarks at issue in this case. Each purchaser of those flights saw American's trademarks and copyrighted flight symbol when making that purchase. To the extent Skiplagged wishes to argue to the jury that its copying of these trademarks and copyrighted Flight Symbol have *nothing* to do with consumers' decision to purchase from Skiplagged, it is free to do so, just as it has always been free to stop violating American's intellectual property rights by removing American's copyrighted and trademarked material from its website (which it conveniently did the same day discovery closed in this litigation).

11

As to Skiplagged's suggestion that Fuller did not account for Skiplagged's speculative arguments about flight purchases such as through a travel agent, another air carrier, a cheaper time and date, or not traveling by plane at all, Fuller is not required to consider these alternatives. Because Fuller based his calculations on *actual* tickets purchased by consumers via Skiplagged, all of these factors are already accounted for; each consumer who purchased from Skiplagged already chose to purchase from a website bearing unauthorized copies of American's trademarks and copyrighted flight symbol; there is no reason to believe, for example, that if Skiplagged had not infringed, a consumer would have traveled by car instead. *Koen v. Monsanto Co.*, No. 1:22-CV-209-RP, 2024 WL 2948652, at *17 (W.D. Tex. June 11, 2024) ("[A]s a strict rule, *Daubert* does not require an expert to rule out alternative explanations."); *CliniComp Int'l*, 507 F. Supp. 3d at 779 ("Alternative or opposing facts, data, and assumptions do not preclude admission of expert testimony, that is, they go to the weight of the evidence, not admissibility.") (citing *Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)). The only legitimate alternative that Fuller would have, but couldn't calculate due solely to Skiplagged's deficient data, is whether the consumer still would have selected the same American flight at a higher price. With the data Skiplagged provided, this alternative cannot and should not be a part of Fuller's analysis because the data is unavailable. Fuller's assumptions go to the weight of the evidence, not admissibility, and Skiplagged will have the liberty to challenge Fuller's assumptions through cross examination, but it is the jury's job to weigh the evidence, including Fuller's assumptions. *CliniComp Int'l*, 507 F. Supp. 3d at 779 (noting any such challenges "may be explored through cross-examination.").

Similarly, as to Skiplagged's argument that Fuller did not perform calculations under "reasonable royalty, corrective advertising or damage to business reputation theories" [Dkt. No.

223 at 22], neither he nor American are required to do so, and Skiplagged has not identified any legal authority that suggests otherwise.

Finally, at various points, Skiplagged also argues that Fuller's lost profits analysis is suspect for failing to account for the so-called *Pebble Beach* factors. [Dkt. No. 223 at 9, 10, 25]. But Skiplagged misstates the law on the point. While it is true that "an award of the defendant's profits is not automatic," [Dkt. No 223 at 9 (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998)], the burden is on *Skiplagged*, not American. *See Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR, 2023 WL 28723, at *18 (W.D. Tex. Jan. 2, 2023) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, *and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work*.") (emphasis added).

### III.   CONCLUSION

For the foregoing reasons, American respectfully requests that the Court deny Skiplagged's Motion to Strike and Exclude Expert David Fuller.

Dated: September 3, 2024

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

>R. Paul Yetter
>State Bar No. 22154200
>pyetter@yettercoleman.com
>YETTER COLEMAN LLP
>811 Main Street, Suite 4100
>Houston, Texas 77002
>(713) 632-8003
>
>Cameron M. Nelson
>nelsonc@gtlaw.com
>GREENBERG TRAURIG LLP
>77 West Wacker Drive, Suite 3100
>Chicago, Illinois 60601
>Telephone: (312) 456-6590
>
>Nathan J. Muyskens
>nathan.muyskens@gtlaw.com
>GREENBERG TRAURIG LLP
>2101 L Street, N.W., Suite 1000
>Washington, DC 20037
>Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

>*/s/ Dee J. Kelly, Jr.*_____
>Dee J. Kelly, Jr.

14