IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF AMERICAN AIRLINES, INC.'S REPLY TO SKIPLAGGED, INC.'S RESPONSE TO MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF GEORGE JOHN, PHD AND BRIEF IN SUPPORT**

i

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Skiplagged fails to show Dr. John possesses the qualifications needed to qualify him as an expert on confusion surveys prepared for trademark litigation. ............................................................................................................ 1

        1. General survey or marketing expertise is not likelihood of confusion expertise. ................................................................................................ 2

        2. Dr. John's sole experience with likelihood of confusion was 35 years ago. ............................................................................................... 3

    B. Skiplagged fails to show the relevance of Dr. John's opinions. ............................ 4

    C. Skiplagged fails to show that Dr. John's opinions are reliable. ............................ 6

        1. Dr. John's "measurement of subjective concepts" analysis is unsupported. ............................................................................................ 7

        2. Dr. John's criticism of the coding of open-ended responses is unsubstantiated, and Skiplagged's arguments on this issue are unavailing. ............................................................................................... 8

        3. Dr. John's opinions about deception based on "relative prices" is unreliable and unsupported. ..................................................................... 9

        4. Dr. John's opinions criticizing Dr. Wind's survey as it relates to consumer confusion as to affiliation between American and Skiplagged is unreliable. ............................................................................. 9

        5. Dr. John's conclusory or vague opinions are the exact variety courts exclude ..................................................................................................... 10

        6. Dr. John's sole point of data analysis is flawed. ...................................... 10

III. CONCLUSION ............................................................................................................. 10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                      **PAGE(S)**

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
    666 F. Supp. 3d 328 (S.D.N.Y. 2023) .......................................................................................5, 6

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ......................................................................................................................6

*E.E.O.C. v. S & B Indus., Inc.*,
    No. 3:15-cv-641-D, 2017 WL 345641 (N.D. Tex. Jan. 27, 2017) ..........................................4, 6

*Funderburk v. S.C. Elec. & Gas Co.*,
    395 F. Supp. 3d 695 (D.S.C. 2019) ..............................................................................................4

*Guile v. United States*,
    422 F.3d 221 (5th Cir. 2005) .......................................................................................................6

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) ............................................................................................8, 9, 10

*Jacked Up, LLC v. Sara Lee Corp.*,
    291 F. Supp. 3d 795 (N.D. Tex. 2018) .................................................................................4, 6, 8

*JFJ Toys, Inc. v. Sears Holdings Corp.*,
    No. PX-14-3527, 2017 WL 679219 (D. Md. Feb. 21, 2017) ......................................................2

*Radiance Foundation Inc. v. NAACP*,
    27 F. Supp. 3d 671 (E.D. Va. 2013) ............................................................................................3

*Rivas v. Preston*,
    No. SA-11-CA-0193-FB, 2012 WL 7782960 (W.D. Tex. Feb. 29, 2012) ................................4

*Smith v. Goodyear Tire & Rubber Co.*,
    495 F.3d 224 (5th Cir. 2007) .......................................................................................................6

*Valador, Inc. v. HTC Corp.*,
    242 F. Supp. 3d 448 (E.D. Va. 2017), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) ........................2

*Viterbo v. Dow Chem. Co.*,
    826 F.2d 420 (5th Cir. 1987) ............................................................................................8, 9, 10

*Wade v. BP Expl. & Prod., Inc.*,
    630 F. Supp. 3d 776 (E.D. La. 2022) ..........................................................................................5

**R**ULES

Fed. R. Civ. P. 26(a)(2)(D)(ii) ...................................................................................................5

Fed. R. Evid. 702 ........................................................................................................................6

## I.     INTRODUCTION

In its Response to American's Motion to Exclude Expert Opinions and Testimony of George John, PhD ("Dr. John") [Dkt. No. 229], Skiplagged tries, but fails, to rehabilitate its mistake of choosing an expert who should have never been retained in the first place.

Skiplagged opens its Response by knowingly misrepresenting to the Court that Dr. Wind's experiments used "hypothetical" search results for the stimuli shown to the survey respondents. [Dkt. No. 253 at 6]. To be clear—none of the screenshots Dr. Wind showed survey respondents are "hypothetical." They are actual results that were returned from both Skiplagged.com and Expedia, and Skiplagged is *well aware* of this. In fact, their own proposed expert, Dr. John admitted that Dr. Wind's stimuli are not "false." [Dkt. No. 244 at 159 (John Depo., 56:6–56:10)].

This is but one example of the overarching theme throughout Skiplagged's defense of this case—*intentional misrepresentation of what it knows to be incorrect.* Skiplagged knows Dr. John has *no* experience with confusion surveys, has *no* data of his own to disprove or even add nuance to Dr. Wind's findings, and made *no* effort to familiarize himself with the relevant legal standards or even the legal claims in this case. Having failed to make *any* effort to familiarize himself with the issues the jury will be asked to consider, Dr. John is *incapable* of providing relevant testimony.

## II.     ARGUMENT

### A.     Skiplagged fails to show Dr. John possesses the qualifications needed to qualify him as an expert on confusion surveys prepared for trademark litigation.

Skiplagged claims that Dr. John's *general* experience with marketing surveys, which it characterizes as "involving confusion and related concepts," and *general* experience teaching classes to graduate students, qualifies him to testify on likelihood of confusion surveys. And perhaps, had Dr. John actually reviewed substantial and well-developed body of law surrounding likelihood of confusion surveys, and taken the time to look up the definition of "likelihood of

1

confusion," he might have been able to arrive at a relevant opinion that would be useful to the jury. But Dr. John conspicuously avoided learning *anything* about the legal claims in this case.

### 1.     General survey or marketing expertise is not likelihood of confusion expertise.

Courts have specifically excluded proposed likelihood of confusion experts when the witness's general expertise in the area of surveys and marketing is not sufficiently specialized to assist in deciding the particular issues of a trademark infringement case. *Valador, Inc. v. HTC Corp.,* 242 F. Supp. 3d 448, 458 (E.D. Va. 2017), *aff'd*, 707 F. App'x 138 (4th Cir. 2017).[1] In *Valador,* the court excluded an expert with 40 years of market research experience because he had no prior experience conducting or reviewing likelihood of confusion surveys in trademark infringement cases, no experience in consulting or testifying on a Lanham Act case, and a self-admitted lack of awareness about how courts analyze trademark cases. *Id.* at 458.

Skiplagged argues Dr. John is qualified to opine on consumer confusion survey methods because of his general experience in marketing. [Dkt. No. 253 at 9]. But Skiplagged's belief fails for the same reasons as the expert in *Valador.* Dr. John has *never* conducted or consulted on a likelihood of confusion survey. [Dkt. No. 244 at 153–54 (John Depo., 33:24–34:7, 36:21–36:22)]. He is only vaguely familiar with factors that the jury will be asked to evaluate in connection with likelihood of confusion. [*Id.* at 154 (John Depo., 36:11–36:18)]. He does not know which trademark survey methodologies have been accepted by courts and which have been rejected. [*Id.* at 156 (John Depo., 43:12–43:23)]. He conceded multiple times that he lacks experience regarding the very likelihood of confusion surveys he is giving his opinion on. [*Id.* at 153–54, 168 (John Depo. at 32:3–32:17, 36:21–36:22, 92:4–92:5)]. Skiplagged's argument that Dr. John is qualified

---

[1] *See also JFJ Toys, Inc. v. Sears Holdings Corp.,* Civil Action No. PX-14-3527, 2017 WL 679219, at *4 (D. Md. Feb. 21, 2017) (holding marketing expert's qualifications were "wholly inadequate" to offer testimony about likelihood of confusion where the witness's purported expertise was "devoid of specifics pertinent to the relevant market . . . or the use of the marks . . . in that same market").

2

on likelihood on confusion surveys because they "look very similar to things he has seen before" only highlights his futility as an expert. [*See* Dkt. No. 253 at 10].

Skiplagged then tries to move the goalposts established by decades of trademark survey case law by arguing that Dr. John's testimony is relevant to show whether Dr. Wind's analysis meets "scholastic standards." [*Id.* at 11]. Skiplagged argues that Dr. John's report discusses how "'confusion' is a 'subjective concept' that is not directly observable," and thus "the fields of marketing and psychology have developed a generally accepted method[.]" [*Id.*] But this only highlights Dr. John's studied ignorance of well-established standards for likelihood of confusion surveys specifically, and is exactly the type of kitchen sink noise which courts regularly exclude. *See, e.g.*, *Radiance Foundation Inc. v. NAACP,* 27 F. Supp. 3d 671, 675 (E.D. Va. 2013) (excluding a general marketing expert who had no experience in likelihood of confusion surveys).[2]

All Skiplagged has shown is that Dr. John is a professor with general experience in marketing, but that does not meet the high standard needed to render him qualified to offer testimony on "the intricacies of surveys prepared for trademark litigation." *Radiance Foundation Inc.,* 27 F. Supp. 3d at 675. Consequently, Dr. John should be excluded.

## 2. Dr. John's sole experience with likelihood of confusion was 35 years ago.

Skiplagged argues that American fails to acknowledge that Dr. John has conducted general surveys or presented on likelihood of confusion. [Dkt. No. 253 at 6]. In line with its theme of misrepresentation, this is untrue. American explicitly acknowledged Dr. John's singular, antiquated, blind date with a likelihood of confusion survey: "the only item on his CV that *potentially* relates to likelihood of confusion is a roundtable discussion he attended in 1986." [Dkt.

---

[2] "Plaintiffs have not demonstrated that [Dr. Tuten] understands the intricacies of surveys prepared for trademark litigation or surveys testing the particular issues of dilution and likelihood of consumer confusion. Dr. Tuten's opinions relate more generally to surveying, an area in which she possesses experiential expertise. However, to the extent that she attempts to proffer opinions about trademark dilution or likelihood of confusion, these opinions are unreliable." *Id.*

No. 229 at 6 (emphasis in original)]. Skiplagged claims this fabled 1986 roundtable "include[d] surveys he designed and conducted, at a roundtable program," but Dr. John's CV merely indicates he attended, not that he presented, and Dr. John has not identified what survey (let alone *surveys*) he purportedly presented at this roundtable. [Dkt. No. 244 at 134 (Presentation No. 7); *id.* at 160 (John Depo., 61:1–61:20)]. Assuming there was any survey involved then, the fact is that Dr. John has not reviewed, conducted, or designed a likelihood of confusion survey since 1986.

**B.      Skiplagged fails to show the relevance of Dr. John's opinions.**

Skiplagged bears the burden of proving Dr. John's rebuttal opinions are relevant. *See Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018); *E.E.O.C. v. S & B Indus., Inc.*, No. 3:15-cv-641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan. 27, 2017).[3] Skiplagged failed to carry its burden.

Skiplagged's chief argument for the relevance of Dr. John's opinions is that he critiqued the Wind Report for "fail[ing] to resemble the real-world consumers' journeys occurring at Skiplagged.com." [Dkt. No. 253 at 12]. Dr. John's "critiques" include: that the Wind Report (i) purportedly underrepresented the number of flights offered by other airlines that are presented to consumers when they access Skiplagged's website [*Id.* at 14–15], and (ii) purportedly failed to include other elements of the Skiplagged website in his report, including that there are numerous "required affirmative acknowledgments" consumers must click on Skiplagged's page before they may purchase a ticket. [*Id.* at 15–16]. Skiplagged argues these opinions are relevant because they demonstrate "how the Wind Report Experiment fails to replicate the real-world customer journey on Skiplagged.com." Each of these arguments miss the mark.

---

[3] This same standard applies to rebuttal experts like Dr. John. *See, e.g.*, *Rivas v. Preston*, C/A No. SA-11-CA-0193-FB, 2012 WL 7782960, at *1–4 (W.D. Tex. Feb. 29, 2012); *see also Funderburk v. S.C. Elec. & Gas Co.*, 395 F. Supp. 3d 695, 716 (D.S.C. 2019) (collecting cases).

Because Dr. Wind's Report does not adopt the "consumer journey" as the method for evaluating confusion, Dr. John's opinions on consumer journey are irrelevant. *See Better Holdco, Inc. v. Beeline Loans, Inc.,* 666 F. Supp. 3d 328, 360 (S.D.N.Y. 2023) ("An expert opinion is properly offered on rebuttal if it is 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'") (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)).

Dr. Wind tested whether consumers who were exposed to screenshots of Skiplagged's website incorrectly believe Skiplagged is an authorized agent of American Airlines. [Dkt. No. 229 at 12]. By failing to take Dr. Wind's methodology head-on, Dr. John's rebuttal testimony is irrelevant because it does not "explain, repel, counteract, or disprove" the Wind Report Experiment. *Better Holdco,* 666 F. Supp. 3d at 360 (citing *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citations omitted)). He does not, for example, explain why a "consumer journey" methodology would be a more appropriate fit for this case. Similarly, Dr. John's opinions on "educating consumers" are not premised on the same subject matter identified by the Wind Report, and thus are unhelpful to the trier of fact for the purposes of understanding the evidence or facts at issue. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); *Wade v. BP Expl. & Prod., Inc.*, 630 F. Supp. 3d 776, 789–91 (E.D. La. 2022) (finding expert's opinion was unhelpful to trier of fact and excluding the expert's opinion as irrelevant).

Dr. John's contention that Dr. Wind's survey respondents need to be shown stimuli with flights on other airlines, such as United and Frontier, because it is "an actual consumer's journey when interacting with Skiplagged.com" is mind-boggling. [Dkt. No. 253 at 13–14]. Exploring how consumers choose, for example, between American and United flights is not relevant to this case and not what Dr. Wind studied. Nor does it make sense to suggest that Dr. Wind should have expended time and effort analyzing consumer's beliefs about other airlines' trademarks. Dr. John's

contention does not "explain, repel, counteract, or disprove" the Wind Report Experiment because Dr. Wind's survey concerns American Airlines' claims and trademark confusion related to the American Marks—*and not the trademarks of any other airline*. *Better Holdco,* 666 F. Supp. 3d at 360 (citing *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citations omitted)). This contention only underscores why Dr. John is not qualified to testify at all in this matter; he does not even know what this lawsuit is about:

> Q. But you understand that this is a lawsuit brought by American as it relates to American flights. Correct?
> A. I don't know that. I don't know what the basis and scope of the lawsuit is.

[Dkt. No. 244 at 176 (John Depo., 124:5–8)].

**C.    Skiplagged fails to show that Dr. John's opinions are reliable.**

Skiplagged bears the burden of proving its rebuttal opinions are reliable. *Jacked Up*, 291 F. Supp. 3d at 800; *S & B, Indus.*, 2017 WL 345641 at *2. American showed that Dr. John's opinions suffer from two fundamental defects: (1) that his opinions are unsupported by any data or any independent scientific methodology [Dkt. No. 229 at 14–15, 17–19]; and (2) that his opinions are conclusory or vague. [Dkt. No. 229 at 14–17, 20–23]. American also demonstrated that several of Dr. John's opinions are not supported by any scientific methodology, including (i) his "measurement of subjective concepts" criticisms, (ii) his opinion on "risk perception," and (iii) his opinion about deception based on "relevant prices." [Dkt. No. 229 at 15–16, 17–20]. American then demonstrated these opinions are unsupported by data, as required by *Daubert* and Rule 702. *See Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–95 (1993); Fed. R. Evid. 702). "[F]undamentally unsupported" opinions "should be excluded." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). Skiplagged utterly fails to meet its burden of demonstrating these opinions are reliable.

6

### 1. Dr. John's "measurement of subjective concepts" analysis is unsupported.

Skiplagged argues Dr. John proves the "Wind Report Experiments' measurement of subjective concepts" does not "resemble accepted practice and methodology." [Dkt. No. 253 at 18]. One would expect Dr. John to put forth a formidable likelihood of confusion or trademark litigation analysis, a proposed alternate survey design, or perhaps provide his own survey results to explain the reliability of this position. But Dr. John has no such methodology, data or designs to offer. Instead, he only refers to an outdated 1979 marketing paper that forms the entire basis of his "measurement of subjective concepts" opinions. To bolster the credibility of this paper, Skiplagged merely (1) notes how many times the article has been cited according to Google Scholar, and (2) states Dr. John is "entitled to rely on his own experience . . . in the field of marketing in analyzing and critiquing [Dr. Wind's] methodology." [Dkt. No. 253 at 18]. Simply pointing to the number of citations is irrelevant to the actual issue American identifies—the inapplicability of the article's suggested "method" to "likelihood of confusion surveys and the substantial body of case law accompanying them," and the lack of "any connection to well-established likelihood of confusion concepts." [Dkt. No. 229 at 15].

Indeed, the article ("*A paradigm for developing better measures of marketing constructs*") does not once reference anything about measuring consumers' perceptions or beliefs on any matters remotely relevant to the issues here.[4] Its only reference to a "survey" of any kind is a general reference to "experience surveys" when listing out techniques one can employ. [Dkt. No. 244 at 113 (John Report, p. 16 n.5)]. This source of Dr. John's opinions has no bearing on or relevance to the issues on which he opines (*i.e.*, criticizing a likelihood of confusion survey) and

---

[4] *See* https://www.researchgate.net/profile/Noor-Ul-Hadi-2/post/How-to-develop-and-validate-questionnaire/attachment/5d36cdd8cfe4a7968db851fa/AS%3A783753181933568%401563872728251/download/churchill1979.pdf. [Dkt. No. 244 at 113 (John Report at 16, n.5)].

7

is thus *not* a "reliable bases for his analyses and opinions" on whether Dr. Wind's survey was "methodologically acceptable." [Dkt. No. 253 at 18]. As such, "the source upon which [Dr. John]'s opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Jacked Up, LLC*, 807 F. App'x at 348; *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). This encompasses and applies to Dr. John's opinions, and Skiplagged's reliability arguments, on (i) not defining deception or confusion, (ii) the preference for closed-ended questions, and (iii) stability.

Skiplagged's blanket statement that Dr. John is entitled to rely on his own experience and expertise in the marketing field also does not support the reliability of his opinions; he is simply "offer[ing] little more than personal assurances based on his [professional] experience that his conclusions are so." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (noting such opinions have "insufficient factual support and lack [] reliable methodology").

Additionally, Skiplagged does not meaningfully refute the argument that Dr. John's opinion about open-ended vs. closed-ended questions is conclusory, unsupported, and contradicts well-settled case law and leading trademark law guidance on consumer surveys. [Dkt. No. 229 at 15–16]. Instead, without addressing any of the authorities cited by American or offering any other support, Skiplagged merely declares American's arguments "are without merit." [Dkt. No. 253 at 19]. Similarly, as to American's argument that Dr. John provides no support or explanation for his conclusory opinion about the importance of "stability," Skiplagged merely repeats and quotes the few conclusory statements and observations in his report. [*Id.*].

### 2. Dr. John's criticism of the coding of open-ended responses is unsubstantiated, and Skiplagged's arguments on this issue are unavailing.

Because Dr. John's criticism of the coding of open-ended responses was likewise part of his "measurement of subjective concepts" opinions and based upon the same inappropriate and

8

unreliable source discussed above, this opinion is also not reliable and should be excluded for the same reasons set forth in the preceding section.

> 3. **Dr. John's opinions about deception based on "relative prices" is unreliable and unsupported.**

The extent of Skiplagged's response on this issue are general declaratory statements that "Dr. John explains the fundamental flaws present in [Dr. Wind's] survey methodology and associated data," that American's arguments are without merit, and that Dr. John's opinions are reliable and relevant. [*Id.* at 22]. The only specific example it provides is that Dr. John "analyze[d] Skiplagged's main landing page," which "was not shown to the survey participants." [*Id.*]. Skiplagged does not bother to explain why or how that is relevant to this issue.

> 4. **Dr. John's opinions criticizing Dr. Wind's survey as it relates to consumer confusion as to affiliation between American and Skiplagged is unreliable.**

In response to American's argument concerning Dr. John's "opinion" criticizing the fact that Dr. Wind's survey did not define "associated," "affiliated" and "authorized agent," Skiplagged cites two cases, neither of which supports its position. It relies on *Viterbo v. Dow Chem. Co.* for the general rule that "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." 826 F.2d 420, 422 (5th Cir. 1987). But Skiplagged conveniently ignores the very next point the court explained:

> In some cases, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict. . . . If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it . . . inadmissible[.]

*Id.* That is precisely the case here. Dr. John's "opinion" at issue is his complaint that Dr. Wind's survey did not define certain terms whose meanings are obvious and well-known (and which are commonly used in confusion surveys, which Dr. John would know if he had familiarized himself

9

with the relevant legal standards and case law). Thus, just as the court held in *Viterbo*, Dr. John's "opinion simply lacks the foundation and reliability necessary to support expert testimony," and "[a]s an unsupported opinion, it does not serve the purposes for which it is offered, that is, objectively to assist the jury in arriving at its verdict." *See id.* at 424.

### 5. Dr. John's conclusory or vague opinions are the exact variety courts exclude.

The other issue American raised with Dr. John's report is that it is chock-full of unreliable *ipse dixit* based on his personal observations when he went to Skiplagged.com to "act[] as a consumer." [Dkt. No. 253 at 17]. Courts exclude expert testimony where the expert "offers little more than personal assurances based on his [professional] experience that his conclusions are so," and here these opinions should also be excluded. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007); *see also Viterbo*, 826 F.2d at 424.

### 6. Dr. John's sole point of data analysis is flawed.

To add another layer of unreliability, Dr. John steadfastly opines that the 88 complaints reviewed by Dr. Wind is just a "small fraction" of the approximately 673 million passengers who flew on American. [Dkt. No. 253 at 24]. To arrive at this 4th grade fraction problem, Dr. John divides 88 by 673 million, assuming that 673 million is the correct denominator. But that 673 million denominator consists of *everyone* who flew on American—including hundreds of millions of passengers who *did not buy their ticket on Skiplagged*. In truth, there is no "correct" denominator here, since Skiplagged tells its customers *not* to tell American that they booked on Skiplagged, and likely artificially depressed the true number of complaints. But in any event, the jury does not need Dr. John's assistance to understand a basic math fraction.

### III. CONCLUSION

For the reasons stated above, the Court should grant American's Motion to Exclude Expert George John, PhD.

10

Dated: September 9, 2024                              Respectfully submitted,

                                              */s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8003

Cameron M. Nelson
nelsonc@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-6590

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I certify that on September 9, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

                                              */s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.

11