IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## JOINT PRETRIAL ORDER

Pursuant to this Court's Scheduling Order [Dkt. No. 20 at 4–5 ¶ 8.a.] and Rule 16.4 of the Local Civil Rules for the Northern District of Texas, Plaintiff American Airlines, Inc. ("American") and Defendant Skiplagged, Inc. ("Skiplagged") submit this Joint Pretrial Order.

## I.    SUMMARY OF CLAIMS AND DEFENSES OF EACH PARTY

**A.    PLAINTIFF**

**a.    Overview of American Airlines' Claims**

American asserts three claims under federal law against Skiplagged: Trademark Infringement, Unfair Competition, and Copyright Infringement.[1] The Court has already ruled in American's favor on its Copyright Infringement claim, leaving damages the only issue to be tried on that cause of action. American seeks at trial a judgment that Skiplagged is liable for trademark infringement and unfair competition, and seeks its actual damages as well as Skiplagged's profits, in the amount of at least $33 million. American also seeks its attorneys' fees, costs, and a permanent injunction barring Skiplagged from using American's trademarks, or any marks which

---

[1] In its Memorandum Opinion & Order dated July 31, 2024 [Dkt. No. 199], the Court ruled that American's claims for breach of contract and tortious interference were barred by the statute of limitations. [*Id.* at 5].

ACTIVE 701943118v3

are confusingly similar to American's trademarks, and from using American's Flight Symbol copyright.

### b.    American's Copyright Claim

The Court ruled in favor of American's claim for copyright infringement in its Memorandum Opinion & Order dated July 31, 2024 [Dkt. No. 199], determining that Skiplagged infringed U.S. Copyright Registration No. VA00002130520 for American's Flight Symbol design under the Copyright Act, 17 U.S.C. 101 *et seq*. At trial, American seeks damages for Skiplagged's infringement for the period it used American's Flight Symbol design to book tickets through Skiplagged. 17 U.S.C. § 504. These damages include American's actual damages and disgorgement of Skiplagged's profits related to its infringing use.

As a result of Skiplagged's unauthorized use of American's Flight Symbol design, Skiplagged booked a substantial number of tickets as invalid hidden-city tickets, tying up seats on American flights that American would have otherwise sold, at a price lower than the passenger should have paid for a ticket to that passenger's final destination. Skiplagged's own documents demonstrate an average price differential of around $40 per ticket; American's lost revenue during the 3-year period prior to filing this lawsuit is approximately $24.5 million. American also seeks disgorgement of Skiplagged's profits, to the extent not accounted for in American's actual damages. American will demonstrate that Skiplagged's revenue associated with booking on American Airlines flights is approximately $ 15.8 million.

American also seeks its costs as the prevailing party in this case, and a permanent injunction barring Skiplagged from using the copyrighted Flight Symbol design.[2] Skiplagged's past

---

[2] Skiplagged claims its recent removal of American's Flight Symbol from its website vitiates any need for an injunction but that is not true and is inconsistent with the law.

ACTIVE 701943118v3

infringement of American's Flight Symbol design has caused irreparable harm, and an injunction is necessary to prevent Skiplagged from making further use of the Flight Symbol design.

### c.    American's Trademark and Unfair Competition Claims

American asserts five registered trademarks pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*., comprising two registrations for the word mark AMERICAN AIRLINES, two trademark registrations for the Flight Symbol logo (one in color and one without reference to color), and one registration for the mark AMERICAN alongside the Flight Symbol logo (collectively the "American Marks"). There is no genuine dispute that American owns these registrations and that they are valid.

Skiplagged is *not, and has never been,* authorized to use the American Marks in any way. An airline ticket is *not* a good which can be purchased and resold. *Only* an authorized agent of American can act on American's behalf in assisting consumers in booking tickets, and Skiplagged has *never* been an authorized agent of American. Notably, it is not difficult to become an authorized agent, but becoming an authorized agent means agreeing *not* to book hidden-city tickets. Accordingly, Skiplagged has never registered to become an authorized agent of American. Indeed, because it is not an authorized agent, Skiplagged developed software which allows it to book tickets on American's website, while hiding that transaction from American.  Similarly, Skiplagged hides from its consumers that it is not authorized to book tickets by American.

Having disregarded the industry-wide procedures for becoming an authorized agent, Skiplagged has littered its website with the American Marks to make it *appear* as if it is an authorized travel agent. In so doing, Skiplagged improperly inserts itself as a middle-man between American and its customers, to the detriment of both American and those customers. Skiplagged then employs unauthorized and deceptive ticketing practices, enticing consumers to participate in these deceptive practices by promising savings it rarely actually delivers. Most every ticket booked

by Skiplagged—even the invalid hidden-city tickets—costs the consumer more than if the consumer purchased the same ticket directly from American.

Skiplagged uses the American Marks to deceive customers into believing that, even though it has no authority to book tickets on American's behalf, somehow it can still do so.  That is a lie. Every "ticket" booked by Skiplagged is at risk of being invalidated.

Skiplagged also deceives customers into believing that the American fares it displays will give the consumer access to some kind of secret "loophole" in the system.  But the fares displayed on Skiplagged's website are admittedly not "real-time," and after the consumer pays Skiplagged's additional fees, the ticket is generally *higher* than what the consumer would pay if they simply booked the same ticket on American's website or through an actual authorized agent of American. It is the classic bait and switch: draw consumers in with the promise of secret fares, and instead charge the consumer a fee for the ticket at a higher price.

Skiplagged's infringement causes considerable harm to American. Its customers frequently find themselves stranded when a flight delay, weather problems, or personal schedule changes cause them to rebook a flight. Rather than help these customers find a way to their destination – something an authorized agent would be required to do—Skiplagged leaves them high and dry, directing those customers to American's phone number, while at the same time telling them not to let American know their ticket was booked through Skiplagged. American has to spend countless hours remedying improper bookings made by Skiplagged, chasing down customers' luggage, locating customers who are supposed to be on flights, and often these steps cause further flight delays. In the case of hidden-city tickets, these customers often find their baggage in the wrong destination, having to pay full price for a ticket at the airport, or unable to board the flight altogether. Many of these customers incorrectly believe Skiplagged is affiliated with American and, as a result, direct their ire towards American for a situation entirely of Skiplagged's making.

4

Further, the seats that these hidden-city tickets have tied up drive up prices for *other* customers, because Skiplagged has deceived American's systems into believing a seat is occupied.

American has spent decades building trust with its customers and investing countless resources to become one of the premier airline brands in the world. Skiplagged's unlawful, unauthorized activity threatens and erodes that trust. Further, each time Skiplagged improperly books a hidden-city ticket, American loses revenue. It loses the revenue that the customer should have paid for the correct ticket, and it loses the revenue it would have received from another customer for the seat on the "hidden" leg of the itinerary.

There is no question that Skiplagged's activities create a likelihood of confusion. Because Skiplagged is using *exact* copies of the American Marks, a detailed analysis of the "digits of confusion" is not necessary, because it is clear that *every* one of the digits of confusion weighs heavily in American's favor.

Even though American can readily meet the likelihood of confusion standard without any further evidence, American has developed substantial evidence of *actual* confusion, as reflected in complaints submitted to American as well as complaints customers submitted directly to Skiplagged. Countless numbers of these complaints illustrate the confusion and deception described above.

In addition to this overwhelming evidence of actual confusion, American has commissioned a survey from renowned consumer survey expert Yoram "Jerry" Wind. Dr. Wind conducted a survey where respondents were shown screenshots of the Skiplagged website (which is littered with the American Marks) showing the process of purchasing an American Airlines ticket on Skiplagged's website. This survey demonstrated, among other things, that *60%* of survey respondents believed that Skiplagged was affiliated with American.

Skiplagged's actions are deliberate and willful. Skiplagged knows it does not have American's authorization to use the American Marks, and does so anyway. While this is enough to demonstrate willfulness in and of itself, Skiplagged is also generally aware that airlines have trademarks and that they have not authorized Skiplagged to use those trademarks. For example, United Airlines sued Skiplagged early in its operation, before Skiplagged even incorporated, and in its complaint United Airlines explicitly put Skiplagged on notice that its use of the airlines' trademarks was unauthorized. Southwest Airlines similarly sued Skiplagged, and that lawsuit resulted in Skiplagged removing Southwest Airlines entirely from its website. Skiplagged has also received several cease and desist letters from other airlines putting Skiplagged explicitly on notice that Skiplagged's use of airlines' trademarks is unauthorized.

The damage Skiplagged has caused to American is substantial. Using a conservative estimate of $40 per ticket, American's lost revenues in the past four years exceed $33 million. Skiplagged's own profits on these same tickets during this same time period is approximately $20.8 million.

Further, considering Skiplagged's willful infringement of the American Marks, Skiplagged's behavior renders this an exceptional case under the Lanham Act, and as a result American is entitled to an award of attorney's fees.

Finally, American is entitled to a permanent injunction barring Skiplagged from using the American Marks, or any confusingly similar marks, in order to put an end to Skiplagged's shady business practices. American notes that it is entitled to a presumption of irreparable harm pursuant to 15 U.S.C. § 1116(a). That presumption is supported by the harm set forth above, and which will be further proven at trial. Skiplagged has no reasonable argument or evidence to rebut this presumption of irreparable harm. The injunction should include Skiplagged, all companies owned or controlled by Skiplagged directly or indirectly, their employees, representatives, agents,

members, and others acting in concert with them, and should permanently enjoin them from using, displaying, or referencing the American Marks, or any confusingly similar marks.

This Court will also hear from Skiplagged as to multiple affirmative defenses to American's trademark infringement claim and American requests the Court and/or jury to overrule each of them.

**B.     DEFENDANT**

    **a.     Defenses to American's Copyright Claim**

        **1.   Preliminary Statement**

In its motion [Dkt. No. 154], American moved for summary judgment on all of Skiplagged's affirmative defenses; Skiplagged opposed summary judgment arguing that a genuine of issue of material fact existed as to each of its defenses, including estoppel, acquiescence by silence, and failure to mitigate damages, which are affirmative defenses to American's copyright infringement claim.  While the Court's summary judgment order found for American on copyright infringement liability and specifically denied Skiplagged's affirmative defense of fair use as it relates to the copyright claim, the order denied both parties' motions "in all other respects."  [Dkt. No. 199].  Therefore, American was not granted summary judgment as to any of Skiplagged's affirmative defenses to the copyright claim other than copyright fair use, so those defenses remain in the case and should be presented to the jury or considered by the Court.

        **2.   Affirmative Defenses**

Skiplagged's estoppel and acquiescence by silence affirmative defenses bar American's copyright claim because the evidence demonstrates that American knew of Skiplagged's alleged infringing conduct for many years before it filed suit, Skiplagged was ignorant of American's objections to the use of its Flight Symbol until American filed suit in August 2023, and

Skiplagged relied to its detriment and undue prejudice in building its business over the seven-year period of American's silence and inaction.  This delay also establishes Skiplagged's defense that American failed to mitigate its damages for its copyright claim, which is impossible for American to overcome given it profited on every sale as to which it claims Skiplagged infringed. It is important to note that American is not seeking actual damages based on the diminution of the value of its copyrights.

### 3. Damages

As to damages, American has conceded and withdrawn both its claim for copyright statutory damages as well as its claim for willful infringement.

In addition to not being able to meet the threshold causation burden for actual copyright damages, American should not be entitled to present its actual damages theory to the jury because both its damages expert David Fuller and its corporate representative testified that neither had any opinion as to the amount of alleged actual damages, how it would be determined, or even conducted any analysis of actual damages to the copyright.  And, American cannot meet its burden to show any such actual damages attributable to the Flight Symbol, as the case law requires. The three-year statute of limitation also precludes any claim by American for damages predating August 17, 2020.

That leaves disgorgement of profits under 17 U.S.C. § 504(a).  American cannot meet its burden to show that the revenue of Skiplagged at issue was attributable to use of the Flight Symbol copyright, as the law requires.  In addition, Skiplagged will prove deductible expenses as well as apportionment to factors other than the alleged infringement.

Having lost summary judgment on its breach of contract and tortious interference claims, American should not be allowed to re-frame its copyright claim into seeking damages based on facilitation of hidden-city fares, which bears no relationship to the Flight Symbol copyright.

ACTIVE 701943118v3

### b.     Defenses to American's Lanham Act Claims

#### 1.   Defenses

American's Lanham Act claims fail because American cannot meet its burden of proving a likelihood of confusion is probable due to Skiplagged's actions.  The display of several airlines for comparative purposes on Skiplagged's website and the prominent disclaimers and warnings are alone are sufficient to prevent American from meeting this burden.  While American will point to customer complaints, those are not probative of confusion as to *affiliation* between Skiplagged and American; complaints about service are about just that, complaints about service. Put simply, American cannot show that consumers visiting Skiplagged's website were somehow tricked by Skiplagged into buying tickets on American.

To show willful infringement, American must prove that Skiplagged acted intentionally and with the specific intent to cause a likelihood of consumer confusion as to the source of goods or services and with the intent to cause confusion, cause mistake, or to deceive.  American cannot meet this heavy burden, particularly in light of its silence for seven years while Skiplagged made use of its marks with no complaint.  For American to prevail on an exceptional case award under 15 U.S.C. § 1117(a), it must prove that (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position or (2) Skiplagged has litigated the case in an unreasonable manner. American cannot satisfy either prong.

#### 2.  Affirmative Defenses

Skiplagged's affirmative defenses to American's trademark infringement and unfair competition claims under the Lanham Act include laches, estoppel by acquiescence, nominative fair use, license, and failure to mitigate damages.  Furthermore, American cannot meet its burden in proving that Skiplagged was a willful infringer, that this is an exceptional case in American's

9

favor under 15 U.S.C. § 1117(a), and that Skiplagged acted with unclean hands in a manner that precludes Skiplagged's equitable affirmative defenses.

American's seven-year delay in asserting its trademark rights coupled with no credible excuse for such delay as well as the undue prejudice to Skiplagged due to its reliance on the delay preclude American's Lanham Act claims under the doctrines of laches and estoppel by acquiescence.  As discussed above, American offers no justifiable excuse for its silence and inaction, and Skiplagged made significant investments in and expansion of its business during this time period.  American should not be rewarded for its "sit back and wait" strategy for over seven years.  While American asserts that laches is not available due to Skiplagged's unclean hands, American cannot show that Skiplagged intentionally infringed American's trademarks with the bad faith intent to capitalize on American's reputation or goodwill in the market to be entitled to such relief.  Indeed, Skiplagged's use of American's trademarks led to additional sales of American flights for which American benefitted.

In addition to the delay, American's Lanham Act claims are barred by the nominative fair use defense, which allows the public and competitors to use American's trademarks to identify the goods and services of American or for comparative and other permissible uses.  Here, there is no dispute that Skiplagged's use of the American marks were to identify *American flights sold by American*.  There is no evidence that Skiplagged attempted to pass off its products or services as that of American or that Skiplagged claimed it was an authorized agent of American.  The Lanham Act claims fail for an additional reason: American cannot establish, under the circumstances, that a likelihood of confusion is probable.

### 3.  Damages

Like its claim for actual copyright damages, American should not be entitled to present an actual damages theory for its Lanham Act claims because both its damages expert David

Fuller and its corporate representative testified that neither had any opinion as to the amount of alleged actual Lanham Act damages, how it would be determined, or even conducted any analysis of damages to American's trademarks.[3]

The four-year statute of limitation also precludes any claim by American for damages predating August 17, 2019.

While American pled a claim for statutory damages under the Lanham Act, 15 U.S.C. § 1117(c) and (d), it failed to disclose an amount of statutory damages, how that amount was calculated, and further, that it is entitled to either of these remedies. The Court should therefore prohibit American from seeking such relief.

American's sole measure of available damages for its Lanham Act claims is therefore limited to disgorgement of profits. But to be entitled to disgorgement, American bears the burden of proving that it meets the *Pebble Beach* factors:

1)  whether Skiplagged had the intent to confuse or deceive,

2)  whether sales have been diverted from American to Skiplagged,

3)  the adequacy of other remedies,

4)  any unreasonable delay by American in asserting its rights,

5)  the public interest in making the misconduct unprofitable, and

6)  whether it is a case of palming off.[4]

---

[3] American also cannot show that the alleged infringement was the cause of any actual damages or that its actual damages were attributable to any trademark infringement, as the law requires. For example, American's expert did not analyze whether consumers chose to buy tickets based on price, whether they would have purchased a ticket on another airline, whether they would have not purchased a ticket at all, or some other choice available to the consumer. Rather, American's expert simply assumes that all consumers would have purchased a higher price ticket over any other option.
[4] *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998).

ACTIVE 701943118v3

American cannot meet this burden because all of these factors either favor Skiplagged or are neutral.  Factor No. 4, unreasonable delay, alone justifies prohibiting American from any recovery of disgorgement.  Like the copyright disgorgement damages, American cannot satisfy its burden that the revenue was attributable to the infringement and Skiplagged can demonstrate deductible expenses and apportionment factors unrelated to the alleged infringement.

While American seeks disgorgement of profits under two legal theories (the Flight Symbol use is alleged to be both trademark and copyright infringement), its expert confirmed that it only suffered one alleged harm.  Therefore, American should not be allowed to obtain a double recovery for the same harm.

American's request for permanent injunctive relief should also be denied in part due to the lack of any irreparable injury given the seven-year delay in enforcing its rights.  As discussed above, American seeks through its Lanham Act and copyright claims what it lost on summary judgment—the ability to stop Skiplagged from providing information to the public regarding American's ticketing practices and fares.  The Lanham Act and Copyright Act were not intended to create anti-competitive mechanism preventing publicly available information to be provided to consumers.  The injunction American seeks does not serve the public interest.  The balance of hardship is also skewed inappropriately since Skiplagged and others are entitled as a matter of law to make nominative fair use of American's trademarks.

### d.    Skiplagged's Challenge to Personal Jurisdiction

American initially asserted claims for breach of contract, tortious interference, trademark infringement and unfair competition under the Lanham Act, and copyright infringement.  [Dkt. No. 8].  In response, Skiplagged filed a Motion to Dismiss for Lack of Personal Jurisdiction or Alternatively to Transfer Venue [Dkt. No. 21].  In its Amended Complaint, American pled this Court had personal jurisdiction over Skiplagged because by allegedly accessing American's

12

website and using publicly available information hosted there, Skiplagged consented to American's terms of use agreement ("Use Agreement"), which provides that it is "made and entered into in Tarrant County, Texas," and "that Texas law governs this Agreement's interpretation and/or any dispute arising from your access to, dealings with, or use of the this Site." [Dkt. No. 8 at ¶ 11].  The Court denied Skiplagged's motion in its Order [Dkt. No. 52] on the basis that Skiplagged, at the motion to dismiss stage, had not proven American's choice of law provision to be invalid.

Judge Pittman relied on the Fifth Circuit's decision in *Cherokee Pump & Equipment* from 1994 (a non-personal jurisdiction case) instead of the *Pervasive Software* case from the Fifth Circuit, which was handed down in July 2012 and which Skiplagged relied upon. State simply, according to the Fifth Circuit in *Pervasive*, regardless of the alleged validity of the choice-of-law provision (which we believe was placed in an unenforceable browsewrap agreement), the choice-of-law provision itself did not confer personal jurisdiction over Skiplagged. And, it has "little impact by itself."

More specifically, *Pervasive Software* provides that a choice-of-law provision in and of itself does not establish personal jurisdiction (particularly in the shrinkwrap agreement context, which courts have reasoned is analogous to an online clickwrap agreement). See the below excerpt from the *Pervasive Software* case:

> Although the DSLA did contain a Texas choice-of-law clause, that clause alone is not dispositive of the issue of specific personal jurisdiction. *Burger King*, 471 U.S. at 481-82; *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 284 N.4 (5th Cir. 1988)).When combined other factors, a choice-of-law clause may reinforce a conclusion that a defendant 'deliberate[ly] affiliate[ed] with the forum State and [had] reasonable foreseeability of possible litigation there.' *Burger King*, 471 U.S. at 482. However, the presence of a choice-of-law clause is not sufficient in itself to establish personal jurisdiction when, as here, the contacts do not otherwise demonstrate that the defendant 'purposefully availed himself of the privilege of conducting business in Texas.' *Stuart v. Spademan*, 772F.2d 1185, 1192 (5th Cir. 1986)."

13

*Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (ultimately affirming district court's dismissal for lack of personal jurisdiction).

Despite an opportunity to conduct discovery, American has not shown that Skiplagged is a party to or bound by its website Use Agreement, which serves as the sole basis for its claim that the Court has personal jurisdiction over Skiplagged.  Moreover, the Court dismissed American's breach of contract claim, so there is no longer an issue as to whether Skiplagged is bound by any alleged obligations in the Use Agreement.   Therefore, American cannot meet its burden of establishing that the Court has personal jurisdiction over Skiplagged.  For this reason alone, the Court may dismiss American's remaining claims and decline to move this case toward trial.

## II.      STATEMENT OF STIPULATED FACTS

1.      American Airlines, Inc. is a Delaware corporation with its worldwide headquarters located in this District, at 1 Skyview Drive, Fort Worth, Texas 76155.

2.      Defendant Skiplagged, Inc. is a Delaware corporation organized under Delaware law. Its principal place of business is located at 41 E. 11th St., 9th Floor, New York, New York, 10003.

3.      American filed suit against Skiplagged on August 17, 2023.

## III.      CONTESTED ISSUES OF FACT

## A.      PROPOSED BY PLAINTIFF

1.      American Airlines, Inc. owns Trademark Reg. No. 4,939,082 for AMERICAN AIRLINES for air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements

ACTIVE 701943118v3

for individuals and for groups, providing information in the field of travel by means of a global computer network, in International Class 39.

2.      American Airlines' Trademark Reg. No. 4,939,082 is valid.

3.      American Airlines' Trademark Reg. No. 4,939,082 is incontestable.

4.      American Airlines owns Trademark Reg. no. 5,279,167 for the mark AMERICAN AIRLINES for computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award programs; computer application software for mobile devices; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status, in International Class 9.

5.      American Airlines' Trademark Reg. No. 5,279,167 is valid.

6.      American Airlines' Trademark Reg. No. 5,279,167 is incontestable.

7.      American Airlines owns Trademark Reg. No. 4,449,061 for the mark  for air transportation of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, etc. by means of a global computer network; providing information in the field of travel by means of a global computer network in International Class 39.

8.      American Airlines' Trademark Reg. No. 4,449,061 is valid.

9.      American Airlines' Trademark Reg. No. 4,449,061 is incontestable.

10.     American Airlines owns Trademark Reg. No. 5,559,145 for the mark  for air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, ground support services in the field of air transportation, namely, marking, sorting, loading, unloading,

ACTIVE 701943118v3

transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, in International Class 39.

11.     American Airlines' Trademark Reg. No. 5,559,145 is valid.

12.     American Airlines' Trademark Reg. No. 5,559,145 is incontestable.

13.     American Airlines owns Trademark Reg. No. 5,288,639 for the mark

 for air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, air transportation reservation services for others, and vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network in International Class 39.

14.     American Airlines' Trademark Reg. No. 5,288,639 is valid.

15.     American Airlines' Trademark Reg. No. 5,288,639 is incontestable.

16.     American owns U.S. Copyright Registration No. VA00002130520 for its Flight Symbol design.

17.     American's Flight Symbol design copyright is valid.

18.     For the past several years, and up through June 30, 2024, Skiplagged's website displayed copies of the Flight Symbol design to users via its website.

16

19.     For the past several years, and up through at least June 30, 2024, Skiplagged displayed copies of the Flight Symbol design each time a user's search results included an American flight.

20.     For the past several years, and up through June 30, 2024, up through June 30, 2024, Skiplagged's website displayed American's Flight Symbol logos (as reflected in Trademark Reg. Nos. 5,559,145 and 4,449,061) to users.

21.     For the past several years, and up through June 30, 2024, Skiplagged's website displayed the Flight Symbol logo to users each time a user's search results included an American flight.

22.     For the past several years, and up through the present, Skiplagged's website displays American's AMERICAN AIRLINES marks (as reflected in Trademark Reg. Nos. 4,939,082 and 5,279,167) to users.

23.     Skiplagged's website displays the AMERICAN AIRLINES Marks to users each time a user's search results include an American flight.

24.     Skiplagged never received authorization from American to use any of the American Marks.

25.     Skiplagged never received authorization from American to use the Flight Symbol design.

26.     American has never granted Skiplagged a license to use its trademarks.

27.     Skiplagged is not an authorized agent of American.

28.     Skiplagged has never been an authorized agent of American.

29.     American only permits authorized agents to form contracts of carriage between American and its passengers.

30.     American does not permit any of its authorized agents to sell hidden city tickets.

17

31.     American expressly bars all of its authorized agents from selling hidden city tickets.

32.     In order to become an authorized agent of American, a party must agree to American's Addendum to the Governing Travel Agency Agreements, or must otherwise receive written authorization from American.

33.     American does not authorize any of its agents to sublicense American's trademark or copyright rights.

34.     American has not authorized any of its agents to do business with Skiplagged.

35.     American has not authorized any of its agents to share data with Skiplagged.

36.     American's trademarks are strong, in that they are widely used and recognized by the general public and associated with American.

37.     Skiplagged used exact copies of American's marks AMERICAN AIRLINES and the Flight Symbol logos.

38.     Skiplagged's use of American's marks was with the intent that consumers would associate Skiplagged's services with American.

39.     Skiplagged used American's trademarks, without authorization, in connection with mobile applications.

40.     Skiplagged used American's trademarks, without authorization, in connection with providing information in the travel industry.

41.     Skiplagged used American's trademarks, without authorization, in connection with providing travel-related services.

42.     Skiplagged received messages from consumers demonstrating actual confusion, particularly, consumers made explicit to Skiplagged that they believed it was affiliated with American.

43.     Skiplagged made no effort to disabuse consumers of the actual confusion they demonstrated.

44.     Skiplagged used unauthorized copies of American's trademarks in the exact same channels of trade where American and its authorized agents make use of American's trademarks.

45.     Skiplagged used unauthorized copies of American's trademarks in connection with the exact same goods and services that American and its authorized agents sell to consumers.

46.     The consumers who booked American tickets with Skiplagged selected American tickets from among other airline options.

47.     The consumers who booked American tickets with Skiplagged selected a specific American flight time among other flight options.

48.     The consumers who booked American tickets with Skiplagged selected a specific departure city and destination among other flight options.

49.     For at least the last several years, Skiplagged has used Google Puppeteer instances to access American's website.

50.     For at least the last several years, Skiplagged has used its Google Puppeteer instances without disclosing to consumers that it is doing so.

51.     For at least the last several years, Skiplagged has passed consumers' personally identifiable information to its Google Puppeteer instances, and then to American's website, without informing consumers that it was doing so.

52.     Skiplagged charges consumers a fee for booking with Skiplagged, unless the consumer uses rewards to pay for the ticket.

53.     Skiplagged charged consumers a fee for booking with Skiplagged in the vast majority of instances where a consumer booked an American ticket with Skiplagged.

54.     In every instance where Skiplagged charged a consumer a fee for booking an American ticket with Skiplagged, the consumer paid more than the consumer would have paid had the consumer booked the same with American or with an authorized agent of American.

55.     American's authorized agents are obligated to support consumers who purchase tickets from them in the event of travel delays, weather, rebookings, and other travel-related services.

56.     Skiplagged does not provide any support for consumers in connection with travel delays, weather, rebookings, and other travel-related services.

57.     Skiplagged tells consumers that it provides "ridiculous" travel deals and that it has the "cheapest" fares anywhere.

58.     Skiplagged does not have access to any travel deals that consumers themselves do not already have.

59.     While certain authorized agents of American have access to wholesale fares, Skiplagged does not have access to any such fares.

60.     For at least the last several years, Skiplagged has used dynamic IP addresses when accessing American's website.

61.     Skiplagged's use of dynamic IP addresses makes it impossible for American to detect when Skiplagged is accessing its website.

62.     When a consumer books a ticket with Skiplagged, Skiplagged uses that consumer's email address when booking the ticket on American's website.

63.     Because Skiplagged does not use an email address associated with Skiplagged when booking tickets, American cannot detect which tickets were booked by Skiplagged.

64.     Skiplagged has never received written authorization from any party to use any of American's trademarks or American's Flight Symbol design.

ACTIVE 701943118v3

65.     Skiplagged received notice that its use of other airlines' trademarks was unauthorized when it was sued by United Airlines.

66.     Skiplagged received notice that its sale and promotion of hidden city tickets was forbidden when it was sued by United Airlines.

67.     Skiplagged knows that it did not "win" the lawsuit by United Airlines on the merits.

68.     Skiplagged knows that United Airlines could have re-filed its lawsuit at any time.

69.     Skiplagged received notice that its use of other airlines' trademarks was unauthorized when it was sued by Southwest.

70.     Skiplagged received notice that its sale and promotion of hidden city tickets was forbidden when it was sued by Southwest.

71.     Skiplagged entered into a settlement agreement with Southwest, and no longer offers Southwest tickets for sale.

72.     Skiplagged received cease and desist letters from other airlines explicitly objecting to Skiplagged's use of those airlines' trademarks, and to Skiplagged's sale of hidden city tickets.

73.     Skiplagged did not produce document supporting the figures stated in its financial statements.

74.     Skiplagged did not produce any documents demonstrating its advertising expenses.

75.     Skiplagged did not produce any documents demonstrating its bank charges.

76.     Skiplagged did not produce any documents demonstrating its insurance expenses.

77.     Skiplagged did not produce any documents demonstrating its office expenses.

78.     Skiplagged did not produce any documents demonstrating its other business expenses.

79.     Skiplagged did not produce any documents demonstrating its payroll expenses.

80.     Skiplagged's payroll expenses include CEO Aktarer Zaman's "symbolic" $1,000,000 per year salary.

81.     Skiplagged's CEO's $1 million "symbolic" salary is not connected in any way to Skiplagged's sales of American tickets.

82.     Skiplagged did not produce any documents demonstrating its rent or lease expenses.

83.     Skiplagged did not produce any documents demonstrating its repair and maintenance expenses.

84.     Skiplagged did not produce any documents demonstrating its utilities expenses.

85.     Skiplagged's financial statements have not been audited or prepared by an accountant.

86.     American's lost revenue per American ticket sold is at least $40.

87.     What amount of actual damages is American entitled to recover as a result of Skiplagged's copyright infringement?

88.     What amount of Skiplagged's profits is American entitled to recover as a result of Skiplagged's copyright infringement?

89.     Skiplagged knows that American's Conditions of Carriage forbid hidden-city ticketing.

90.     Skiplagged knows American's Use Agreement prohibits hidden city ticketing.

91.     Skiplagged knew at all times that it did not have authorization to use American's trademarks.

92.     What amount of actual damages is American entitled to recover as a result of Skiplagged's trademark infringement and unfair competition?

ACTIVE 701943118v3

93.     What amount of Skiplagged's profits is American entitled to recover as a result of Skiplagged's trademark infringement and unfair competition?

94.     Until the Flight Symbol was removed from Skiplagged's website, where a user searched only for American flights, Skiplagged displayed up to 200 copies of the Flight Symbol design per search result.

95.     Where a user searches only for American flights, Skiplagged displays up to 200 copies of American's Flight Symbol logo.

96.     Where a user searches only for American flights, Skiplagged displays up to 200 copies of American's AMERICAN AIRLINES marks via tooltips.

97.     None of American's approved travel agents are authorized to sublicense the Flight Symbol design to Skiplagged.

98.     None of American's approved travel agents have the right to sublicense the American trademarks to Skiplagged.

99.     Skyscanner has no authorization from American to sublicense American's trademarks.

100.     American never gave Skiplagged any assurance that it could use American's trademarks.

101.     American never made any representation to Skiplagged that it could use American's trademarks.

102.     Skiplagged did not rely to its detriment on any alleged assurance given by American.

103.     Skiplagged is generally aware that hidden city ticketing is forbidden by all airlines, including American, in the travel industry.

ACTIVE 701943118v3

104.    Skiplagged did not suffer undue prejudice in reliance on any alleged assurance given by American.

105.    American's alleged delay in asserting it trademark rights was excused based on its attempts to seek other business solutions to Skiplagged's infringement.

106.    Skiplagged did not rely on any alleged delay in American asserting its trademark rights.

107.    Skiplagged did not suffer any undue prejudice due to its reliance on any alleged delay by American's in asserting its trademark rights.

108.    Skiplagged used American's trademarks in excess of what was reasonably necessary to identify American's flights.

109.    Skiplagged had no right to identify American's flights on its website, Skiplagged.com.

110.    Skiplagged used American's trademarks to suggest American sponsored Skiplagged and its website Skiplagged.com.

111.    Skiplagged used American's trademarks to suggest American endorsed Skiplagged and its website Skiplagged.com.

112.    Skiplagged knew that American's Conditions of Carriage prohibited hidden-city ticketing.

113.    Skiplagged knew American's Use Agreement prohibited hidden-city ticketing.

114.    Skiplagged knew the Governing Travel Agency Agreements prohibit hidden-city ticketing.

115.    Skiplagged knew and knows that hidden-city ticketing is generally prohibited throughout the travel industry.

116.    Skiplagged knew American's Use Agreement prohibited third-parties impersonating customers on AA.com.

117.    Skiplagged did not rely to its detriment on any delay by American in asserting its trademark rights.

118.    Skiplagged invested in its general business operations with knowledge that the hidden-city tickets it markets are generally forbidden throughout the travel industry.

119.    Skiplagged's infringement caused harm to American that is not accounted for in American's damages calculations, including harm to goodwill, travel delays, lost time of customer service, gate agent and ticketing personnel, and higher prices to consumers.

## B.    PROPOSED BY DEFENDANT

**Skiplagged's Statement:** Pursuant to Local Rule 16.4, Skiplagged respectfully submits this statement of contested issues of fact with a brief statement of what Skiplagged intends to address at trial, based on Skiplagged's current understanding of AA's arguments. The statements of contested issues of fact herein are not exhaustive, and Skiplagged reserves the right to prove any matters identified in its pleadings, interrogatory responses, and/or expert reports. Skiplagged reserves the right to amend or supplement this submission as appropriate, including to the extent American seeks to introduce different or additional arguments and facts than disclosed pursuant to the Federal Rules, Local Rules, Court's Scheduling Order, and presented in the Joint Pretrial Order.  Skiplagged reserves its rights to contest any new arguments or facts and to present any and all rebuttal evidence in response.

By including a fact herein, Skiplagged does not imply that it is necessary to prove each and ever fact set forth below to prevail or assume the burden of proof or production with respect to that fact or facts upon which American has the burden of proof. Skiplagged reserves the right to prove any issues of fact identified in the reports of Skiplagged's expert witnesses. Skiplagged further

reserves its rights to revise this statement for any reason, including in light of American's statement of contested facts, as well as any pretrial rulings by the Court. Skiplagged incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

By listing these issues, Skiplagged does not concede that all these issues are appropriate for trial. Should the Court determine that any issue identified below as an issue of fact is more properly considered an issue of law, Skiplagged respectfully requests it be so considered.

1.      Skiplagged is an online travel information provider that assists consumers in making informed travel decisions through its website, Skiplagged.com.

2.      Skiplagged began publishing travel information about airline routes, including American routes and fares, in 2013 and has been using the American logo and trademarks since at least 2015.

3.      American has known about Skiplagged's operations, including Skiplagged's use of American's alleged copyright and trademarks and that Skiplagged provides information regarding American's flights since at least 2015.

4.      Despite American's extensive history of knowledge of Skiplagged's operations and American's frequent internal complaints about how hidden city tickets facilitated by Skiplagged, American never served a pre-suit demand or any other communication on Skiplagged asking it to cease the actions upon which American now takes issue.

5.      Despite over 7 years of knowledge of Skiplagged's alleged infringement, American did not file suit until August 17, 2023.

6.      Skiplagged does not obtain information directly from American's website or internal inventory.

7.      Skiplagged has never consented to American's website Use Agreement or its terms.

8.      American's website Use Agreement is an unenforceable browse-wrap agreement.

9.      Skiplagged is not bound by any terms of American's website Use Agreement.

10.     American's Conditions of Carriage is between American and its customer.

11.     Skiplagged has never been a party to American's Conditions of Carriage.

12.     When booking a flight facilitated by Skiplagged, the flight is purchased directly by the customer from the airline (such as American) and the airline directly charges the customer's credit card.

13.     At no point does Skiplagged act as an agent to book customer flights, purchase, or sell flight tickets.

14.     Skiplagged does not "resell" American flights.

15.     Skiplagged has never claimed that it is an "authorized agent" of American.

16.     Skiplagged.com explains what hidden city ticketing is to consumers both as an informational page and when a hidden-city option is presented.

17.     Skiplagged.com and Skiplagged's communications with customers contain multiple statements and requires acknowledgement from customers of statements that make clear that Skiplagged is not endorsed by, associated with, or an agent of any airline.

18.     Skiplagged's website contains multiple disclaimers that are prominently displayed to website visitors.

19.     Skiplagged's website provides flight information for several airlines in addition to American for comparative purposes.

20.     The presence of the additional airlines on Skiplagged's website negates a likelihood of confusion.

21.     American's delay in taking action against Skiplagged constitutes laches preventing American from recovery of damages under the Lanham Act.

22.     American has no excuse for its delay in asserting its rights.

27

23.    Skiplagged experienced undue prejudice as a result of American's unexcused delay.

24.    Skiplagged made major investments in its business and further expanded its business based on American's silence and inaction during the delay period.

25.    Skiplagged would suffer significant loss if American is entitled to enforce its trademarks after such significant delay and Skiplagged would not have suffered this loss had American acted earlier.

26.    Skiplagged is not liable to American due to its estoppel by acquiescence defense.

27.    American gave Skiplagged implicit assurances that it could use American's trademarks through American's knowledge of Skiplagged's use of the marks coupled with many years of inaction and silence.

28.    Skiplagged relied on American's silence and inaction to its detriment in using the trademarks and has suffered undue prejudice.

29.    Skiplagged significantly expanded its business and made further investments in its business during the time American knew of Skiplagged's use of the trademarks, yet took no action.

30.    Skiplagged's use of American's trademarks is permissible nominative fair use.

31.    Skiplagged used only so much of American's trademarks as was reasonably necessary to identify the services of American.

32.    Skiplagged's use of the marks was not in a way that suggests sponsorship or endorsement by American.

33.    American has profited from Skiplagged's activities.

34.    American has realized revenue from Skiplagged's activities.

35.    For each flight the subject of American's Lanham Act and copyright claims, the consumer purchased a ticket directly from American.

36.    American's Lanham Act claims are barred because Skiplagged's use of American's alleged trademarks is not trademark infringement or unfair competition under the Lanham Act.

37.    Skiplagged's use of American's trademarks does not improperly suggest affiliation, sponsorship, or endorsement with American such that there is no likelihood of confusion.

38.    American is not entitled to any damages under the Lanham Act (actual, profit disgorgement, or statutory damages) because the claimed damages are not attributable to the alleged infringement.

39.    American never disclosed the amount of statutory damages it seeks as well as how the damages were calculated.

40.    American has never proven or explained any basis for alleged trademark counterfeiting.

41.    Skiplagged did not counterfeit American's trademarks.

42.    American is not entitled to actual damages under the Lanham Act because it has not met its burden of showing any such damages were caused by the alleged violations of the Lanham Act as opposed to other factors such as lower prices and flights offered by competing airlines.

43.    American failed to designate an expert or provide other admissible testimony or evidence as to the amount of actual Lanham Act damages it seeks, how the amount was calculated, the causation of such alleged damages, and whether it is entitled to such damages.

44.    Consumers are free to choose between flights offered by American and its competitors, regardless of whether those flights are featured on Skiplagged's website.

45.    Consumers can purchase flights directly on American's website that can be used as hidden-city fares.

46.    Consumers consider price in choosing flights, including American flights.

47.     Consumers consider additional factors in choosing flights, such as time, date, airline, destination, other modes of transportation, not traveling, and convenience.

48.     Not every consumer who purchased a flight facilitated by Skiplagged would have purchased a higher priced flight directly from American's website.

49.     American cannot identify specifically which or how many consumers would have purchased higher priced tickets through American as opposed to flights facilitated by Skiplagged or through another airline.

50.     Customers have expressed to American that without hidden city and based on American's actions they have or will purchase a flight ticket from another airline.

51.     American is not entitled to disgorgement damages because such an award would violate the principles of equity.

52.     Skiplagged had no intent to confuse or deceive its website visitors regarding flights facilitated on American.

53.     Skiplagged is not an airline, it does not offer airline flights itself, and it does not sell or resell flights.

54.     Skiplagged has not diverted its website visitors, through use of the American trademarks, from purchasing American flights.

55.     American unreasonably delayed in asserting its rights.

56.     The public interest favors Skiplagged publishing publicly available information regarding the flights offered by American.

57.     This is not a case of palming off.

58.     If liability is found under the Lanham Act, Skiplagged can prove deductible expenses and that the alleged profits were attributable factors other than use of the trademarks.

30

59.     American's copyright infringement claim is barred by Skiplagged's affirmative defenses of estoppel.

60.     American knew of Skiplagged's allegedly copyright infringing conduct since as early as 2015.

61.     American acted, through silence and inaction, in a way that Skiplagged had a right to believe American did not object to Skiplagged's use of the Flight Symbol copyright.

62.     Until this lawsuit was filed in August 2023, American never objected to Skiplagged's use of the Flight Symbol copyright.

63.     Due to American's extensive and inexcusable delay, Skiplagged did not reasonably believe that American would pursue a claim of copyright infringement against it.

64.     Skiplagged relied on American's inaction to its injury in building and expanding its business during the period of American's inexcusable delay.

65.     American's copyright infringement claim is barred by Skiplagged's affirmative defenses of acquiescence by silence.

66.     American gave Skiplagged implicit assurances that it could use American's Flight Symbol copyright through American's knowledge of Skiplagged's use coupled with many years of inaction and silence.

67.     Skiplagged relied on American's silence and inaction regarding the Flight Symbol copyright to its detriment and has suffered undue prejudice.

68.     Skiplagged significantly expanded its business and made further investments in its business during the time American knew of Skiplagged's use of the Flight Symbol copyright, yet took no action.

69.     American is not entitled to any damages under the Copyright Act (actual disgorgement or profit disgorgement) because the claimed damages are not attributable to the

31

infringement as opposed to other factors such as lower prices and flights offered by competing airlines and because American has not met its burden of proving its entitlement to actual copyright damages such as damage to the marketplace for the copyright.

70.     American failed to designate an expert or provide other admissible testimony or evidence as to the amount of actual copyright damages it seeks, how the amount was calculated, the causation of such alleged damages, and whether it is entitled to such damages.

71.     If liability is established, American is not entitled to disgorgement of profits for its copyright claim because Skiplagged can prove deductible expenses and that the alleged profits were attributable factors other than use of the copyright.

72.     Factors demonstrating apportionment of alleged profits for disgorgement (Lanham Act or copyright claims) include for example the time, price, airline, and destination of flights facilitated by Skiplagged; the convenience of using Skiplagged's website over manually searching for flights on the Internet; Skiplagged's website, user interface, and advertising activities that attract website visitors; and Skiplagged's operations that facilitate its services to consumers and goodwill with its customer base.

73.     American's delay in asserting its rights demonstrate that American failed to mitigate its damages, if any.

74.     American has no credible explanation for why it did not send a cease-and-desist or any similar demand letter when it first learned of Skiplagged's activities.

75.     American is not entitled to costs or attorney's fees under the Lanham Act and the Copyright Act.

76.     If American is entitled to costs or attorney's fees under the Lanham Act or Copyright Act, such costs and fees must be apportioned by claim and must be reasonable.

77.     Skiplagged did not act with unclean hands.

78.     If infringement is shown, Skiplagged did not willfully infringe the trademarks or copyright of American

79.     Skiplagged had a license to use American's trademarks and copyright and acted within the scope of that license.

80.     Skiplagged customer's alleged savings from purchasing a hidden-city ticket does not equate to American's lost profits or any other measure of damages relating to the alleged trademark or copyright infringement.

81.     American cannot show irreparable harm required to be entitled to injunctive relief.

82.     American's unnecessary delay in filing suit prohibits it from obtaining injunctive relief.

83.     American recouped significant amounts of money related to its alleged damages in this case from its customers.

84.     American stops suspected hidden-city ticketing customers at the airport and forces them to purchase a new flight ticket at that day's full price.

85.     Though American possesses data and financial information regarding the amount of money it has collected from its customers regarding recoupment or stopping customers at the airport, it never produced such information.

86.     American has the ability to look up historical flight data information to determine the price of an American flight for a specific route on a past date.

87.     Despite American's ability to access historical flight pricing, American did not do so in this case and did not produce such information.

ACTIVE 701943118v3

## IV.    CONTESTED ISSUES OF LAW

**A.    PROPOSED BY PLAINTIFF**

1.    Skiplagged's use of American's trademarks was likely to cause confusion as to source, affiliation, or sponsorship.

2.    Skiplagged acted willfully when it used American's trademarks.

3.    Skiplagged had unclean hands in its use of American's trademarks.

4.    Laches does not bar American's trademark claims.

5.    Acquiescence does not bar American's trademark claims.

6.    Skiplagged's use of American's trademarks was not fair use.

7.    Skiplagged intended to capitalize on American's reputation when infringing on American's trademarks.

8.    Skiplagged intended to capitalize on American's good will when infringing on American's trademarks.

9.    Skiplagged had no license to use American's trademarks or copyright.

10.    Skiplagged infringed on American's trademarks.

11.    Skiplagged's equitable defenses should be reserved by the Court and should not be presented to the jury.

12.    Skiplagged's license defense lacks evidentiary support as a matter of law.

13.    Skiplagged's mitigation defense lacks evidentiary support as a matter of law.

14.    Skiplagged's unclean hands, laches and fair use defenses are unavailable as a matter of law.

**B.    PROPOSED BY DEFENDANT**

Pursuant to Local Rule 16.4, Skiplagged submits this statement of issues of law that remain to be litigated. Skiplagged submits this statement based in part on its understanding of American's

ACTIVE 701943118v3

positions. By including an issue of law in this statement, Skiplagged does not assume the burden of proof regarding the that issue.

Skiplagged reserves the right to modify or amend this statement to the extent necessary to reflect any future rulings by the Court, and to supplement or amend this statement to fairly respond to any new issues that Skiplagged may raise. Skiplagged reserves the right to amend or supplement this statement after considering Skiplagged's submissions, including amendments or supplementation in response to submissions or events in pretrial proceedings, the trial itself, post-trial proceedings, or otherwise.

Skiplagged reserves the right to prove any matters of law not discussed here that are identified in its pleadings, interrogatory responses, and/or expert reports. Skiplagged incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

By listing these issues, Skiplagged does not concede that all these issues are appropriate for trial. Should the Court determine that any issue identified below as an issue of law is more properly considered an issue of fact, Skiplagged respectfully requests it be so considered.

1.      The Court lacks personal jurisdiction over Skiplagged for all of the reasons set forth in Skiplagged's Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Request to Transfer Venue. [Dkt. No. 21].

2.      American contends that the Court's Order [Dkt. No. 199] on summary judgment dismissed all of Skiplagged's affirmative defenses for American's copyright infringement claim. Skiplagged contends that the order only granted American liability on its copyright infringement claim and dismissed Skiplagged's fair use defense to copyright infringement such that Skiplagged's other affirmative defenses to American's copyright claim, including estoppel, acquiescence by silence, license, and failure to mitigate damages remain in the case and should be determined at trial.

ACTIVE 701943118v3

3.      If American prevails at trial, it is not entitled to recover profit disgorgement under both 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(a) for the same injury.  It is limited to only one recovery.

4.      American is prohibited from seeking and recovering actual copyright damages under 17 U.S.C. § 504, actual Lanham Act damages under 15 U.S.C. § 1117(a), and statutory damages under the Lanham Act under 15 U.S.C. § 1117(c)-(d), due to its failure to disclose its contentions as to these damages during the discovery period, including through its damages expert, David Fuller, or corporate representative during the 30(b)(6) deposition.

5.      Skiplagged's use of American's trademarks is not trademark infringement or unfair competition under the Lanham Act.

6.      Skiplagged's use of American's trademarks does not improperly suggest affiliation, sponsorship, or endorsement with American.

7.      American cannot establish its Lanham Act claims because there is not a likelihood of confusion between Skiplagged and American regarding Skiplagged's use of the trademarks at issue, particularly considering the disclaimers used by Skiplagged.

8.      American's Lanham Act claims and damages sought against Skiplagged are barred by laches due to American's delay in taking action and filing suit against Skiplagged.

9.      American cannot establish that Skiplagged at any time had or acted with unclean hands.

10.      American's Lanham Act claims are barred by Skiplagged's nominative fair use defense.

11.      American's Lanham Act claims are barred by Skiplagged's license to use the trademarks at issue.

12.     American's Lanham Act claims are barred by Skiplagged's estoppel by acquiescence defense.

13.     American cannot establish the requisite elements – direct injury to American and that the infringement was the cause of that injury – to be awarded actual damages under the Lanham Act, 15 U.S.C. § 1117(a).  Further, American is prohibited from obtaining actual damages under the Lanham Act because it failed to disclose the amount of damages sought and how it was calculated during the discovery period.

14.     Skiplagged's liability for American's Lanham Act claims is prohibited, or in the alternative limited, because American cannot meet the equitable factors required by 15 U.S.C. § 1117(a) and the Fifth Circuit in *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998) to be entitled to an award of profit disgorgement in this case and further, because Skiplagged can prove deductible expenses and that the alleged profits were attributable to factors other than use of the trademarks.

15.     American cannot establish that Skiplagged has engaged in any trademark counterfeiting or cybersquatting and, as a consequence, American cannot recover any statutory damages under the Lanham Act, 15 U.S.C. § 1117(c) or (d) relating to either activity.

16.     To the extent American establishes its claims under the Lanham Act, American cannot prove that such infringement was willful.

17.     American's copyright claim is barred by Skiplagged's license to use the copyright at issue.

18.     American's copyright claim is barred by Skiplagged's estoppel defense.

19.     American's copyright claim is barred by Skiplagged's acquiescence by silence defense.

20.     To the extent American establishes its copyright claim over Skiplagged's affirmative defenses, American cannot show such infringement was willful.

21.     American's alleged actual damages for its copyright infringement claim are an improper measure of damages and speculative, at best, because American cannot show any reduction to the fair market value of its copyright, nor can it show that the alleged infringement was the cause of any alleged lost revenue.  Further, American is prohibited from obtaining actual copyright damages because it failed to disclose the amount of damages sought and how it was calculated during the discovery period.

22.     American's claim for profit disgorgement under 17 U.S.C. § 504(a) is barred or limited because American cannot prove that Skiplagged's accused revenues are attributable to the alleged copyright infringement and further, because Skiplagged can prove deductible expenses and that the alleged profits were attributable to factors other than alleged infringement of the copyright.

23.     American has withdrawn its claim for statutory copyright infringement damages, and therefore, is not entitled to any such recovery.

24.     American has not established and cannot prove at trial that it is entitled to damages, pre-judgment interest, post-judgment interest, supplemental damages, attorneys' fees, or any other form of monetary relief.

25.     American's alleged damages are prohibited, or in the alternative limited by, American's failure to mitigate any alleged damages.

26.     American has not established and cannot prove at trial that this is an exceptional case in American's favor under 15 U.S.C. § 1117(a) or that it is entitled to an award of attorneys' fees, costs, or expenses under the Lanham Act.

27.     American has not established that it is entitled to recover costs and attorney's fees under the Copyright Act.

28.    American's alleged copyright infringement damages are limited by the applicable three-year statute of limitations, which runs from August 17, 2020.

29.    American's alleged Lanham Act damages are limited by the applicable four-year statute of limitations, which runs from August 17, 2019.

30.    American has not established and cannot prove at trial that it has suffered the requisite irreparable harm required to obtain permanent injunctive relief.

31.    American is barred from permanent injunctive relief due to its unnecessary delay in taking action on its rights and undue prejudice to Skiplagged.

## V.    ESTIMATED TRIAL LENGTH

American anticipates that the trial will require four days to complete. Skiplagged anticipates this jury trial will take one week.

## VI.    ADDITIONAL MATTERS AIDING IN THE DISPOSITION OF CASE

American has motions pending for exclusion of Skiplagged's expert Gary Gutzler. For the reasons stated in that motion, the witness should be excluded from trial in whole or in part. Skiplagged has a motion pending for exclusion of American's expert witness David Fuller.  For the reasons stated in the motion, this witness should be excluded from trial in whole or in part.

Each party has pending motions in limine that have been fully briefed.

American seeks a permanent injunction barring Skiplagged from making use of American's trademarks, or confusingly similar marks, and of American's Flight Symbol design, or designs substantially similar to American's Flight Symbol design. Skiplagged opposes injunctive relief on the grounds that American's claims lack merit, it has failed to show irreparable harm, and the relief sought is contrary to the interest of the public, and further, American's unreasonable delay in asserting its rights precludes injunctive relief.

ACTIVE 701943118v3

American requests this case be deemed exceptional under the Lanham Act, and that it be awarded its reasonable attorneys' fees. Skiplagged opposes such relief because American cannot meet the heavy burden of proving this is an exceptional case in its favor under 15 U.S.C. § 1117(a).

**SO ORDERED** on this ___16th___ day of _____September_____ 2024

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

40

Dated: September 13, 2024

Respectfully submitted,

/s/ Dee J. Kelly, Jr.
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8003

Cameron M. Nelson
nelsonc@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-6590

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

**ATTORNEYS FOR PLAINTIFF**

/s/Darin M. Klemchuk
William L. Kirkman
State Bar No. 11518700
billk@kirkmanlawfirm.com
Preston B. Sawyer
State Bar No. 24102465
prestons@kirkmanlawfirm.com
KIRKMAN LAW FIRM, PLLC
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 877-1863

Aaron Z. Tobin
Texas Bar No. 24028045
atobin@condontobin.com
Kendal B. Reed
Texas Bar No. 24048755
kreed@condontobin.com
Abigail R.S. Campbell
Texas Bar No. 24098959
acampbell@condontobin.com
CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC
8080 Park Lane, Suite 700
DALLAS, TEXAS 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311

Darin M. Klemchuk
Texas Bar No. 24002418
darin.klemchuk@klemchuk.com
KLEMCHUK LLC
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001

**ATTORNEYS FOR DEFENDANT**