IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

## AMERICAN AIRLINES, INC.'S TRIAL BRIEF

Skiplagged knows what a trademark is and what trademark infringement is. It has its own Skiplagged trademarks registered with the United States Patent and Trademark Office. But Skiplagged ignores the law, because by showing American's flight offerings with American's trademarks (the "American Marks") it can persuade customers that American flight offerings shown on its website are legitimate and authentic, so that the customer will proceed with their purchase and Skiplagged can charge its fee.



The evidence in this case is straightforward. It is undisputed that American owns its trademarks. It is indisputable that Skiplagged has never been authorized to use the American Marks, and Skiplagged cannot produce any evidence that it has any authority to use the American Marks. It is indisputable that Skiplagged impermissibly used and continues to use the American Marks. Further, there will be undisputed evidence that Skiplagged's use of the American Marks causes consumer confusion as to Skiplagged's association with American. Skiplagged lacks any evidence that its customers are not confused about Skiplagged's relationship with American. In fact, its lack of evidence required it to manufacture some by changing its website in real time to generate "evidence" in the form of "post flight symbol data" to support a new rebuttal damages theory of apportionment. But this "evidence" and theory of apportionment are untimely, never disclosed to American prior to August 22, 2024, when Skiplagged produced the first set of data.

Skiplagged's use of the American Marks has indeed caused American significant damage. At trial, American will seek a finding of trademark infringement from the jury, an award of damages on both trademark and copyright infringement, and injunctive relief.[1]

And what's more, Skiplagged's four remaining affirmative defenses—laches, estoppel by acquiescence, express license, and normative fair use—unequivocally fail because there is *no* evidence to support one or all elements of the defenses. Skiplagged's laches defense fails because there is no evidence that American unreasonably delayed asserting its rights or that Skiplagged has

---

[1] This Court has already ruled that Skiplagged is liable for copyright infringement. American will seek damages on that finding during trial. [Dkt. No. 199 at 6–9 (Order Granting in Part Denying in Part Motions for Summary Judgment].

American is dismissing its False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a) without prejudice to streamline the issues in this case at trial. American will file an Unopposed Motion to Dismiss its False Designation of Origin and Unfair Competition Without Prejudice.

suffered a good faith change of position to its detriment because of American's delay. Further, Skiplagged's acquiescence defense fails on the first element for lack of ***any*** evidence that American gave assurances to Skiplagged that Skiplagged could use American's Marks. Similarly, there is ***no*** evidence that American gave Skiplagged an express license to use American's Marks— indeed, Skiplagged can point to no agreement or communication where American granted Skiplagged a license to use its Marks. Last, Skiplagged's fair use defense is misplaced, as Skiplagged's use of American's Marks was not necessary, was over-used, and clearly suggested American's sponsorship or endorsement of Skiplagged's selling of American tickets.

Finally, unwavering Fifth Circuit law militates that Skiplagged's equitable defenses are for the Court's, not jury's, determination. "Issues of inequitable conduct and unclean hands are equitable in nature and that no right to a jury trial attaches to those issues." *eTool Dev., Inc. v. Nat'l Semiconductor Corp*., No. 2:08-CV-196-WCB, 2011 WL 12677158, at *1 (E.D. Tex. Dec. 12, 2011).

## I.     ARGUMENT

### A.     Skiplagged is Liable for Trademark Infringement under the Lanham Act.

The elements of trademark infringement are easily satisfied here. To prevail on its claim of trademark infringement, American must show (1) it possesses valid trademarks and (2) Skiplagged's use of the American Marks creates a likelihood of confusion as to source, affiliation or sponsorship. *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.,* 783 F.3d 527, 536 (5th Cir. 2015).

#### 1.     American's Undisputed, Valid Trademarks.

There is no dispute that American is the owner of registered trademark rights in its famous and valuable American Marks. Skiplagged agreed during a meet and confer on September 24, 2024, that it will not be contesting the validity or ownership of American's Marks.

3

## 2.      Skiplagged is Not an Authorized Agent.

American strictly limits the licenses for use of its Marks to accredited, authorized travel agents. [Dkt. No. 158-4 at 160 (Addendum to Governing Travel Agency Agreements, Section 10)]. These licenses are personal to the agent and do *not* include any right to sublicense the American Marks. [*Id.*].

Skiplagged admits that it is not and never has been an agent of American.[2] [*See* Skiplagged's Second Amended Answer and Affirmative Defenses [Dkt. 144], ¶ 2; Dkt. No. 158-2 at 80–81 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4)]. In addition, American has never authorized or consented to Skiplagged's use of the American Marks. Skiplagged uses the American Marks—without permission—extensively throughout the booking process. [Dkt. No. 158-2 at 2–69 (Test Buys 2, 14, and 17)]. It allows customers to search for "American Airlines" tickets and uses the word mark AMERICAN AIRLINES when presenting a specific flight to its users through the entire booking process. And despite Skiplagged's recent removal of American's Flight Symbol from its webpage (since July 2024 Skiplagged has only displayed the image filled with gray (  )), Skiplagged is the kind of company that will reinstate use of American's Flight Symbol depending on the outcome of this case.

---

[2] Skiplagged claims that "on May 23, 2017, a former [Skiplagged] employee obtained the American icon from the API response of a Skiplagged advertiser, which Skiplagged understood to be allowed to use and distribute the American icon." [Dkt. No. 158-2 at 86 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. But Skiplagged has not explained how this could possibly constitute "authorization" to use American's trademarks—and with good reason: American's agreements with its agents expressly exclude the right to sublicense the American Marks. [Dkt. No. 158-4 at 160 (Addendum to Governing Travel Agency Agreements)].



https://skiplagged.com/flights/DFW/MIA/2024-08-18/2024-08-20#trip=AA1405,AA2500 (last accessed Aug. 4, 2024).

### 3.    Skiplagged Uses the American Marks to Create Confusion.

To establish the second element of trademark infringement - likelihood of confusion - courts consider the "digits of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). These include "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id*. **But** analysis of these factors is unnecessary when the accused infringer is using an *exact copy* of asserted marks, as Skiplagged does here. *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (affirming district court's decision not to analyze the likelihood of confusion factors because the marks were an exact match).

i.    *Skiplagged's Use of The American Marks Satisfies All the Digits of Confusion.*

There is no dispute in this case that Skiplagged is using **exact** copies of American's AMERICAN AIRLINES, AMERICAN and Flight Symbol trademarks. [Dkt. No. 158-1 at 37 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); Dkt. No. 158-4 at 211–12 (Zaman Depo., 60:14–62:10); Dkt. No. 158-2 at 86 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)]. Thus, Skiplagged's use of unauthorized *exact* copies of the American Marks is *prima facie* evidence of likelihood of confusion. *See Paulsson*, 529 F.3d at 310-311. Skiplagged is using exact copies of the American Marks and is selling identical services, rendering an analysis of the factors above unnecessary.

Skiplagged admits to using **exact** copies of the American Marks on its website to sell at least 1.4 million trips on American Airlines and to generate millions of dollars in revenue for itself. [Dkt. No. 158-1 at 37 (Skiplagged's 30(b)(6) Depo., 91:25–93:15); Dkt. No. 158-4 at 211–12 (Zaman Depo., 60:14–62:10); Dkt. No. 158-2 at 86 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 19)].

Though unnecessary here, the analysis of each "digit of confusion" favors American. The undisputed evidence shows consumer confusion. As stated *supra,* the American Marks are strong, well-known marks. [App'x 158-4 at 11–120 (Brand Recognition Report)]. American has been using AMERICAN AIRLINES and AMERICAN since the 1930s and has been using the Flight Symbol for over a decade. [Dkt. No. 158-3 at 2–3, 42–43, 91–92, 126–27 (Trademark File Wrappers); Dkt. No. 158-4 at 7 (Flight Symbol Copyright Registration)]. American flies tens of millions of passengers, and sells tens of billions in tickets every year. [Dkt. No. 158-4 at 3 (2023 Form 10-K, p. 2–3)]. Both companies target the exact same customers and advertise in the exact same media. [Dkt. No. 158-5 at 42–49 (Skiplagged's answers to marketing companies'

questionnaires)]. Skiplagged's intent is unabashedly to persuade customers that it is a legitimate source of tickets for American flights. [Dkt. No. 158-1 at 105–09 (Skiplagged Website FAQs); Dkt. No. 158-1 at 66–67, 101 (Skiplagged's 30(b)(6) Depo., 208:14–23, 210:4–21, 347:3-349:19); Dkt. No. 158-2 at 71– 75 (Slack chat conversation)]. Customers generally do not exercise enough care to determine whether Skiplagged is American's authorized agent, as demonstrated by Skiplagged's substantial sales, as well as numerous complaints submitted to both Skiplagged and American. [Dkt. No. 158-4 at 334, 336, 338, 343 (customer complaint to Skiplagged); Dkt. No. 158-5 at 5, 11–12, 19, 26, 179–80 (customer complaints to Skiplagged); Dkt. No. 158-6 at 5, 44, 89, 210 (customer complaints to Skiplagged); Dkt. No. 158-5 at 68, 71, 73, 79, 83–85 (customer complaints to American)].

Finally, and most importantly, it is not necessary in this case to examine whether confusion is *likely*, because there is *actual* confusion in the marketplace. The record is replete with examples of both customers contacting American to complain about issues with flights they purchased through Skiplagged and customers contacting Skiplagged to make changes to their flight itineraries.[3] [Dkt. No. 158-5 at 79, 81 (customer complaint to American); Dkt. No. 158-5 at 100, 114, 121–27, 130–31 (customer complaints to Skiplagged); Dkt. No. 158-6 at 121–28 (customer complaints to Skiplagged)]. In the Fifth Circuit, "[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." McCarthy on Trademarks and Unfair Competition (Fifth Edition), § 23:13 (citing *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 168 U.S.P.Q. 609 (5th Cir. 1971). *Accord Roto-Rooter Corp. v.*

---

[3] An *actual authorized* travel agent would be able to assist customers with changes in itinerary. The fact that consumers contact Skiplagged with such requests is proof that consumers mistakenly believe Skiplagged is American's agent.

*O'Neal*, 513 F.2d 44, 186 U.S.P.Q. 73 (5th Cir. 1975) (very little proof of actual confusion is necessary to prove likelihood of confusion); *Exxon Corp. v. Texas Motor Exchange of Houston, Inc*., 628 F.2d 500, 208 U.S.P.Q. 384 (5th Cir. 1980) ("The evidence of likelihood of confusion is provided by evidence of actual confusion."); *Waples-Platter Companies v. General Foods Corp*., 439 F. Supp. 551, 196 U.S.P.Q. 50 (N.D. Tex. 1977) (any proof of actual confusion is significant)). The scientific study conducted by American's expert, Professor Jerry Wind, further confirms that customers mistakenly believe that Skiplagged has some sort of association with American. [Dkt. No. 158-5 at 130 (Wind Report, Exhibit 6a)]. Perhaps most strikingly, Professor Wind's study showed that roughly the same percentage of survey participants believed Skiplagged was associated with American as did those who believed that Expedia is associated with American— but Expedia **actually is** a longstanding agent of American. [*Id.*]. In short, all eight digits of confusion conclusively weigh in American's favor.

**B.      Skiplagged Intentionally and Willfully Infringed the American Marks.**

A defendant acts willfully "'if he knows his actions constitute an infringement.'" *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732, 748 (N.D. Tex. 2005) (*quoting Broad. Music, Inc. v. Xanthas, Inc*., 855 F.2d 233, 236 (5th Cir. 1988)). Several Circuit Courts of Appeal, as well as courts within the Fifth Circuit, have found willful conduct where a defendant acts with "'reckless disregard for, or [with] willful blindness'" toward a trademark owner's rights. *Berg v. Symons*, 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005) (*quoting Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)); *see also Microsoft Corp. v. Wholesale Club, Inc*., 129 F. Supp. 2d 995, 1007 (S.D. Tex. 2000) ("A finding of willfulness does not require actual knowledge, but rather willful blindness."); *A Touch of Class Jewelry v. J.C. Penney Co*., No. CIV. A. 98–2949, 2000 WL 1224804, at *5 (E.D. La. Aug. 28, 2000) (*quoting SecuraComm Consulting Inc. v. Securacom*, 166 F.3d 182, 187 (3d Cir. 1999)

("Knowing or willful infringement ... involves an intent to infringe or a deliberate disregard of the mark holder's rights.")).

Skiplagged's willfulness is blatant. As a result of legal action and cease and desist letters from numerous airlines, Skiplagged has been on notice for years that it is violating trademarks and improperly masquerading as an authorized travel agent. Skiplagged took affirmative steps to avoid detection (shifting IP addresses, using customers' emails, using shadow browser sessions to book tickets). [Dkt. No. 158-2 at 86 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); Dkt. No. 158-1 at 23, 28, 33–34 (Skiplagged's 30(b)(6) Depo., 34:6–-35:8; 54:19–55:2; 77:13–78:5)]. Skiplagged was so committed to deceiving customers that it utilized "shadow browser" sessions to mirror the customer's actions, without the customer's knowledge. [*Id.*]. Numerous customers complained to Skiplagged that they believed Skiplagged *was* an authorized agent; they repeatedly expressed frustration that Skiplagged refused to handle routine requests such as assisting with flight delays, weather delays, scheduling changes, and other routine issues. [Dkt. No, 158-5 at 6, 51, 53, 58, 62, (customer complaints referencing agency); Dkt. No. 158-5 at 83–86 (customer complaints seeking routine support); Dkt. No. 158-6 at 108–12, 128 (customer complaints seeking routine support)]. Any one of these factors would be sufficient to support a finding of willfulness.

## C.     American is Entitled to Injunctive Relief.

In addition to damages for past harm, a permanent injunction is the proper remedy for American's trademark claims to prevent ongoing harm, because failure to permanently enjoin Skiplagged's infringing behavior is tantamount to granting them a perpetual license. [*See* Dkt. No. 8 at 31–33]. American is entitled to injunctive relief because it will prove at trial (1) success on the merits of its trademark infringement claim; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the

opposing party; and (4) that the injunction will not disserve the public interest. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

American is entitled to a rebuttable presumption of irreparable harm, 15 U.S.C. § 1116(a).[4] Skiplagged has not rebutted this presumption, while at the same time American has presented substantial evidence to demonstrate irreparable harm even if it was not entitled to this presumption. American has established success on the merits of its Lanham Act claims against Skiplagged. American owns the American Marks, and Skiplagged's use causes a likelihood of (and actual evidenced) confusion, as discussed above. American has demonstrated irreparable harm based on the *prima facie* evidence of confusion, actual evidence of confusion, and additional evidence of both likelihood of confusion and actual confusion. This powerful evidence alone is sufficient to also demonstrate irreparable injury. *See Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 4:19-CV-358, 2022 WL 3008501, at *2–4 (E.D. Tex. July 28, 2022), *motion for relief from judgment denied*, 668 F. Supp. 3d 614 (E.D. Tex. 2023); *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 542–43 (S.D. Tex. 2013); *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765–66 (N.D. Tex. 2013); *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009). "When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services." *Choice Hotels*, 940 F. Supp. 2d at 542.

An injunction would do no more to Skiplagged than require it to cease its unlawful infringement of the American Marks. And an injunction will do no harm to the public; instead, an

---

[4] The rebuttable presumption of irreparable harm was added to 15 U.S.C. § 1116(a) in 2020. While the pre-2020 cases herein already strongly support American's position, the implementation of the statutory presumption, which Skiplagged has not rebutted, removes all doubt.

injunction would protect the public by eliminating future confusion regarding the non-existent affiliation between American and Skiplagged. *See id.*

**D.      Skiplagged is Liable for Damages on Its Copyright Infringement as Well as Trademark Infringement.**

Trademarks exists to protect business investments in a brand and to aid consumers in determining the source of the products and services they purchase. Copyrights, on the other hand, protect the investment of time and effort into creative design. Here, Skiplagged has violated both, boldly using multiple registered trademarks that are designed to denote American products, and using American's flight symbol, which is an artistic design that is American's copyrighted creation. American will demonstrate *conservative* damages calculations for Skiplagged's infringement of its trademarks and copyrights. The calculations are essentially the same for both the trademark and copyright counts, with the primary difference being the statute of limitations period (3 years for copyright versus 4 years for trademark).

For actual damages, American will demonstrate its average lost revenue per hidden-city ticket sold by Skiplagged. This estimate is conservative in that it is based on Skiplagged's admissions as to the average price differential between the hidden-city tickets Skiplagged sold and the price of the non-hidden-city tickets the consumer should have purchased. This differential, which Skiplagged characterizes as "savings" to the consumer, is conservative because it does not account for the flight delays, extra customer service agent, ticket agent, and baggage handling time caused by Skiplagged, or the lost opportunity to sell the seats on the "hidden" leg of these flights. Based on this conservative estimate, American's actual damages are $24,557,476 for American's copyright claim (3-year statute of limitations) and $33,230,127 for American's trademark claim (4-year statute of limitations).

American is also entitled to Skiplagged's profits from tickets sold for American flights, to the extent not already accounted for in awarding actual damages. American will demonstrate that Skiplagged made at least $15,814,955 in gross revenue starting three years prior to the date of American's complaint, and $20,809,140 in gross revenue starting four years prior to the date of American's complaint. Skiplagged is not entitled to any further deductions for costs, because it did not produce any underlying documentation of these costs.

**E.      Skiplagged's Untimely Data and Undisclosed Theories Should be Stricken.**

On June 30, 2024, the same date as the Court's close of discovery deadline, Skiplagged chose to remove American's flight symbol from its website.[5] [Dkt. No. 246 at 18]. On August 9, 2024, Skiplagged produced an unexplained four-page document. Twenty days later, Skiplagged filed its Rebuttal to Supplemental Fuller Report, wherein it disclosed *for the first time* a new damages theory of apportionment based on this unexplained four-page document. [Dkt. No. 243 at 162 (Report p. 23 n.84)]. Skiplagged subsequently produced another set of similar data on September 5th, and a third set on September 12th. Skiplagged's plan is transparent. What Skiplagged is trying to do—under the guise of supplementation[6]—is to concoct a new expert opinion that should have been provided to American in Gutzler's burden of proof expert report and outlined in both Skiplagged's Rule 26 disclosures and its discovery answers. It appears in none

---

[5] Skiplagged's reasoning for removing American's Flight Symbol is inconsistent. It first claimed Skyscanner, the purported source from which Skiplagged obtained American's Flight Symbol, stopped providing access to the logo in June 2024. Now, it claims that the removal was a "business decision," which begs the question, "why did you not remove the Flight Symbol over a year earlier when you were on actual notice of the alleged infringement with American's lawsuit?"

[6] The September 12th production broadens the scope of the data timeframe, taking the data back an additional two weeks from the previous data sets produced. It is not a supplementation of data it is an expansion.

of those places. Skiplagged made what it now calls a "business decision" but what is transparently a calculated move to manufacture evidence—without notice to American.

For these reasons, Skiplagged's PDF labeled SKP00111228–31, SKP00111232–39, and SKP00111240–47 should be stricken from the record and any evidence Gutzler seeks to offer about his new theory of apportionment should be excluded.

**F.    Skiplagged's Willfulness Bars its Equitable Defenses.**

Skiplagged's equitable defenses not only fail on the merits (discussed below), but they also fail because of Skiplagged's long history of willful infringement on American's Marks. *Supra* B. Skiplagged comes to the Court, asking for equity to prevail, with unclean hands. But Fifth Circuit law is sound—equitable defenses are not available to a defendant if it comes to court with "unclean hands."[7] In a trademark case, a defendant has unclean hands if it intentionally infringed the plaintiff's trademarks with the bad faith intent to capitalize on the plaintiff's reputation or goodwill in the market.[8] This bars a party from benefiting when its own conduct in connection with the

---

[7] *Abraham v. Alpha Chi Omega*, 796 F. Supp. 2d 837, 845 (N.D. Tex. 2011) ("[T]hese defenses are equitable defenses, and before determining whether [defendant] has successfully demonstrated the defenses of laches and acquiescence, the Court must determine whether [defendant] is barred from asserting these defenses due to unclean hands.") (citing *Carmona v. Rubio*, No. H–06–228, 2007 WL 543438, at *5 (S.D.Tex. Feb. 16, 2007) (Atlas, J.) ("As a threshold matter, a defendant with 'unclean hands' may not prevail on the equitable defense of laches."); 4 Callman on Unfair Competition, Trademarks, and Monopolies § 23.26 (4th ed. 2010) ("Intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor weighed in balancing the equities.")); *Tank Works, Inc. v. Snyder Indus., Inc.*, No. 4:11-cv-246-A, 2011 WL 3204694, at *5 (N.D. Tex. July 26, 2011) ("An equitable doctrine, such as waiver, 'cannot be successfully asserted ... if the defendant comes to court with unclean hands.'") (citing *Regional Props., Inc. v. Fin. & Real Estate Consulting Co*., 752 F.2d 178, 183 (5th Cir. 1985)).

[8] *Rolex Watch USA, Inc. v. Beckertime, LLC*, 96 F.4th 715, 723 (5th Cir. 2024); *Bd. of Supervisors for LSU Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 489-90 (5th Cir. 2008) (citing *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.d 145, 150 (5th Cir. 1985) ("A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense [of laches].")).

same matter has been unjust, marked by a lack of good faith, or violates the principles of equity and fair dealing.

Here, Skiplagged voluntarily and intentionally used American's Marks to acquire business from consumers. Skiplagged indisputably knew that using an airline's or an airline travel agent's marks was infringement and impermissible under federal law. Skiplagged knew this in 2014 when Orbitz and United Airlines sued it. It knew this in 2015 when Fareportal sent it a cease and desist letter. It knew this in 2019 when Delta Airlines sent it a cease and desist letter. It knew this in 2019 when TripAdvisor sent it a cease and desist letter. It knew this in 2021 when Southwest Airlines sent it two cease and desist letters, and later sued it. And it ***certainly*** knew this in August 2023 when American initiated this lawsuit. Yet, Skiplagged continues to use American's Marks to capitalize on American's recognition and goodwill. If that does not constitute unclean hands, it is hard to imagine what would.

## G.    No Evidence of Laches, Acquiescence, Express License, or Fair Use.

### 1.    Laches.

Skiplagged's entire business model centers around avoiding detection; it uses dynamic IP addresses so that American cannot detect when Skiplagged is using a shadow browser session to access AA.com. [Dkt. No. 158-2 at 81, 83 (Skiplagged's Third Amended Objections and Responses to American's Interrogatory Nos. 5, 9); Dkt. No. 158-1 at 58–59 (Skiplagged's 30(b)(6) Depo., 176:22–178:19)]. It created a sophisticated shadow browser system so it could pretend as if a customer was accessing American's website, instead of Skiplagged. [Dkt. No. 158-2 at 80–81 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 4); Dkt. No. 158-1 at 23, 33–34 (Skiplagged 30(b)(6) Depo., 34:6–35:8; 77:13–78:5)]. It encouraged customers to lie to American if asked whether they did business with Skiplagged. [Dkt. No. 158-2 at 43]. Skiplagged also claimed to have relationships with legitimate sellers of American tickets.

[Dkt. No. 158-2 at 82 (Skiplagged's Third Amended Objection and Response to American's Interrogatory No. 7); Dkt. No. 158-1 at 34 (Skiplagged's 30(b)(6) Depo., 80:23–81:10)].

It should be no wonder that American felt unarmed to file a lawsuit during its ongoing investigation and attempted stops of Skiplagged's nefarious practice. Coupled with COVID, American's filing of this lawsuit was not untimely or unreasonable in light of the circumstances.

Further, Skiplagged has no evidence that it relied on the use of American's Marks. Particularly, there is no evidence that Skiplagged made major business investments or expansions that depended on American's Marks. The evidence, or lack thereof, will clearly demonstrate Skiplagged's inability to establish a laches defense at trial.

## 2.    Acquiescence.

Skiplagged contends American's claims are barred by the estoppel by acquiescence defense. To prove this defense, Skiplagged must prove three elements by a preponderance of the evidence:

(1) that American gave assurances to Skiplagged that it could use American's Marks,

(2) that Skiplagged relied on those representations, and

(3) undue prejudice to Skiplagged resulting from its reliance on the assurances.

*See Pennzoil-Quaker State Co. v. Miller Oil & Gas Ops.*, 779 F.3d 290, 294 (5th Cir. 2015) (citing *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 624 (5th Cir. 2013)); *Wilson v. Tessmer L. Firm*, 483 F. Supp. 3d 416, 430 (W.D. Tex. 2020).

Through the past nine months and millions of pages of discovery exchanged between the parties, there is not even the slightest trace of any communication, let alone an agreement, whereby American provided *any* assurance to Skiplagged that it was ok for Skiplagged to use American's Marks. Indeed, Skiplagged and American only spoke briefly in 2020 and the product of this meeting was unmistakably not a license for American's Marks.

Further, Skiplagged has not produced any evidence that it relied on American's assurances that using the American Marks was appropriate. First, because there was no such assurance, there can be no reliance on a non-existent assurance. Second, there is simply no evidence that Skiplagged took steps such as making significant investment decisions or building the bulk of its business on the reasonable assumption that it had permission to use American's Marks. Skiplagged books flights for several airlines, not just American, and there is no evidence in any internal Skiplagged document that specifically (or even implicitly) demonstrates that Skiplagged catered its business model, decisions, and investments to its ability to use American's Marks.

### 3.    License.

Skiplagged also contends that American granted Skiplagged an express license to use American's Marks, and that Skiplagged's use of the Marks was within the scope granted by American. An express license defense raises two critical questions: (1) the existence of a valid license and (2) its scope of authorized use. *Loeb-Defever v. Mako, L.L.C.*, 2023 WL 5611042 (5th Cir. Aug. 30, 2023); *Stross v. Redfin Corp.*, 730 F. App'x 198, 203 (5th Cir. 2018). Again, Skiplagged has no evidence that American granted Skiplagged a license (whether implied or express) because no such evidence exists. Indeed, had such evidence existed, it would have been the center piece of Skiplagged's defense. The fact that it is not should be instructive that there is no evidence that American granted Skiplagged a license to use the American Marks.

In fact, Skiplagged's own data and testimony suggest that American only accounts for somewhere between 10% and 20% of Skiplagged's total revenue.  To say that Skiplagged expanded its fraudulent empire based on undue prejudice to them from American's action or inaction, fits squarely with the rest of its practice in its business and this litigation of fabricating untruths based on non-existent evidence.

16

### 4.    Fair Use.

Finally, Skiplagged's fair use defense has no legs. At the outset, fair use cannot apply here because American's tickets are not goods which can be resold. They are contracts of carriage that can only be entered into with a customer on American's behalf by an authorized agent of American. Skiplagged is not an authorized agent of American, so there is simply no scenario where Skiplagged can *ever* sell American tickets.

Further, even if we ignore this serious problem with Skiplagged's "fair use" defense, it must prove the following three things by a preponderance of the evidence:

1. Skiplagged used the trademark to refer to a product of American that cannot be easily identified without using the trademark;

2. Skiplagged used the trademark only as much as was reasonably necessary to identify the product or service; and

3. Skiplagged did not do anything in connection with using the trademark to suggest that American sponsored or endorsed Skiplagged or its product.

Skiplagged arguably cannot satisfy the first element and undoubtedly cannot satisfy the last two elements. To say that Skiplagged used American's Marks only as much as was reasonably necessary to identify the product or service is a fallacy. Skiplagged uses American's Marks ad nauseam. Starting at the search result page and continuing through the entire booking process, Skiplagged displays one or several of American's Marks every step of the way, and many times multiple times in the same step, *after* the consumer makes the decision to proceed with an American flight:

17

*Search Result Page*



[Dkt. No. 158-2 at 3].

*Itinerary Confirmation Page*



[Dkt. No. 158-2 at 8].

*Checkout Page*



[Dkt. No. 158-2 at 11].

*Confirmation Email*



[Dkt. No. 158-2 at 26]. Skiplagged's use of American's Marks is *not* only as much as was reasonably necessary to identify the product or service.

## H.    Equitable Defenses are for the Court, not the Jury.

Skiplagged seeks to defend American's infringement claims by asserting certain equitable defenses (such as laches, license, and acquiescence), but there is a reason none of these equitable

defenses appear in the pattern jury charge. None of these defenses or evidence related to them should be tried to the jury. *Encompass Office Sols., Inc. v. Louisiana Health Serv. & Indem. Co*., 919 F.3d 266, 281 (5th Cir. 2019) (no Seventh Amendment jury trial right applies to equitable defenses); *Austin v. Shalala*, 994 F.2d 1170, 1177 n.7 (5th Cir. 1993) (explaining that an equitable defense—even to a legal claim—is tried to the court); *eTool Dev., Inc. v. Nat'l Semiconductor Corp*., No. 2:08-CV-196-WCB, 2011 WL 12677158, at *1 (E.D. Tex. Dec. 12, 2011) ("The Plaintiffs correctly note that the issues of inequitable conduct and unclean hands are equitable in nature and that no right to a jury trial attaches to those issues."); *M-I LLC v. FPUSA, LLC*, No. 5:15-CV-406-DAE, 2021 WL 8946454, at *5 (W.D. Tex. Feb. 3, 2021) (Inequitable conduct and unclean hands are both equitable defenses "not triable of right by a jury."); *Reservoir, Inc. v. Truesdell*, No. CIV.A. 4:12-2756, 2013 WL 5574897, at *5 (S.D. Tex. Oct. 9, 2013) (holding that the "court is the finder of fact on equitable defenses," including laches); *United Services Auto. Ass'n v. PNC Bank N.A*., 622 F. Supp. 3d 337, 339 (E.D. Tex. 2022) (equitable defenses of estoppel and unclean hands determined by the court after a jury trial); *OPTi Inc. v. VIA Techs., Inc*., No. 2:10-CV-00279-JRG, 2015 WL 417193, at *1 (E.D. Tex. Jan. 30, 2015) (laches and estoppel tried to court after jury trial); *see also SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328, 335 (2017) (holding in copyright context that "laches is a 'defense developed by courts of equity'" that requires a case-specific "judicial determination"); *Deere & Co. v. FIMCO Inc.*, 239 F. Supp. 3d 964, 1003 (W.D. Ky. 2017) (equitable defenses to trademark infringement include "laches, acquiescence, estoppel, and implied license").

American believes the proper way to address these issues, if the Court allows them to go forward, is by is by excusing the jury from those portions of the testimony addressing these equitable defenses.

## II.      CONCLUSION

For the reasons stated above American will have sufficient evidence for a jury to find that Skiplagged is liable for Trademark Infringement under 15 U.S.C. § 1114 (Count III) and enter an injunction prohibiting Skiplagged from using American's trademarks. Further, American is confident that a jury will award an appropriate amount of damages on American's copyright and trademark claims, but requests that the Court strike SKP00111228–31, SKP00111232-39, and SKP00111240-111247, and prevent Gutlzer from testifying as to his untimely theory of apportionment. American further submits that, following sound Fifth Circuit law, Skiplagged's equitable defenses (laches, license, and acquiescence) should not be submitted to the jury but retained by the Court for determination, and that Skiplagged will fail to meet its burden on each defense.

Dated: September 27, 2024                    Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Tyler P. Young
State Bar No. 24129144
tyoung@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8003

Cameron M. Nelson
nelsonc@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-6590

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 27, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.