IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
| Defendant. | § | |

---

## SKIPLAGGED, INC.'S TRIAL BRIEF

---

William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
**CONDON TOBIN SLADEK THORNTON
NERENBERG PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com

Darin M. Klemchuk
Texas Bar No. 24002418
**KLEMCHUK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
Darin.klemchuk@klemchuk.com

***Attorneys for Defendant, Skiplagged, Inc.***

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT.................................................................................................. 1

   A.  Trademark Liability ........................................................................................... 1

   B.  Copyright Liability............................................................................................ 2

   C.  Damages: Copyright and Trademark ................................................................ 2

   D.  Consumer Complaints....................................................................................... 3

I.     ARGUMENTS AND AUTHORITIES............................................................................. 3

   A.  AA Cannot Prevail on its Trademark Infringement Claim. ................................ 3

      1.  Nominative Fair Use .................................................................................. 5

      2.  Laches........................................................................................................ 6

   B.  Skiplagged is not Barred from Asserting its Equitable Defenses. ...................... 8

   C.  The Court Should Allow Skiplagged's Equitable Defenses to be Presented to the Jury..... 9

   D.  AA is Not Entitled to Recover on its Copyright Infringement Claim............................ 11

      1.  Estoppel.................................................................................................... 11

   E.  The Customer Complaints are Inadmissible. .................................................... 12

   F.  AA has benefitted from its Acquiescence and has no evidence of actual damages. ......... 13

      1.  AA's theory of actual damages stems from its dismissed claims not its Copyright or Lanham Act claims.............................................................. 14

      2.  AA does not have an Expert Opinion on Copyright actual damages.............................. 14

      3.  AA's Disgorgement Argument Suffers from the Same Fatal Flaw. .............................. 16

      4.  AA does not have an Expert Opinion on Lanham Act actual damages ......................... 18

      5.  AA does not have an Expert Opinion on disgorgement of profits under the  Lanham Act. 20

II.   CONCLUSION .................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. McNeil Consultants*, LLC, 3:19-cv-2025-K-BN (N.D. Tex. Jul. 27, 2023) .................. 21

*Am. Airlines, Inc. v. Delta Air Lines, Inc.*, No. 4:19-CV-1053-O, 2021 WL 3629735 ............... 18

*Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695,
713 (W.D. Tex. 2013) ............................................................................................. 11

*Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003)) .................................... 17

*BMC Software, Inc. v. Baker Hughes, a GE Co., LLC,* No. CV H-19-4810,
2022 WL 4390612 .................................................................................................. 18

*C.V. v. Casa Azul Spirits, LLC*, No. CV H-22-2972, 2023 WL 7284182 ................................... 19

*Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, No. 1:20-CV-1160-DAE,
2023 WL 6532549 .................................................................................................. 17

*Conan Props. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir. 1985) ............................................ 10

*Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*,
948 F.3d 261, 275 (5th Cir. 2020) ........................................................................... 15

*EsNtion Records, Inc. v. TritonTM, Inc.*, No. CIV.A.3:07CV2027L, 2009 WL 3805827 .......... 23

*Estate of Vane v. Fair, Inc.* 849 F.2d 186, 188-89 (5th Cir. 1988) .............................................. 21

*Exxon Mobil Corp. v. FX Networks, LLC*, No. CV H-13-2906, 2015 WL 12942049 ................. 19

*Gibson, Inc. v. Armadillo Distribution Enters.*, 107 F.4th 441 (5th Cir. 2024) ........................... 10

*Hendricks v. Ford Motor Co.*, No. 4:12CV71, 2012 WL 4478308 ............................................. 12

*I&I Hair Corp. v. Beauty Plus Trading Co., Inc.*, No. 3:20-CV-02179-M, 2024 WL 758095 .... 18

*Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515 (5th Cir. 2020) ........................... 21

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR,
2023 WL 28723 ...................................................................................................... 10

*Leland Med. Centers, Inc. v. Weiss*, No. 4:07CV67, 2007 WL 2900599 ................................14, 17

*Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464 (5th Cir. 2001)) ............ 21

*MGE UPS Sys. v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 366 (5th Cir. 2010) .............. 17, 23

*M-I LLC v. FPUSA, LLC*, No. 5:15-CV-406-DAE, 2021 WL 8946454 .................................... 10

*Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008)) .............................. 4

*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998) ........................... 5, 20, 21

*Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 297
(5th Cir. 2015) .................................................................................................... 7, 10

*Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992) ................................................. 5

*Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 882 (5th Cir. 2019) ...... 20, 21

*Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4th 715, 723 (5th Cir. 2024) ................. 7, 8, 9

*Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484-485 (5th Cir. 2004) ............... 1, 5

*Serc-Ca Discos, Inc. v. Tierra Caliente Music Group, S.A. De C.V.*,
No. 7:18-CV-00252, 2023 WL 8480096 ................................................................ 19

*Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 645 (S.D. Tex. 2007) ............................. 16

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) ............. 4

*Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 966 F.2d 956, 957 (5th Cir. 1992)) ........ 21, 23

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32-33 (2001) .............................. 5

iv

*Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 617 F. App'x 272, 278 (5th Cir. 2015)) ...... 19

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)..........................4

**Statutes**

15 U.S.C. § 1114.................................................................................................................. 23

15 U.S.C. § 1117(a) ............................................................................................................ 20

**Rules**

FED. R. EVID. 401 .............................................................................................................. 12

FED. R. EVID. 403 .............................................................................................................. 13

FED. R. EVID. 405 .............................................................................................................. 12

FED. R. EVID. 801 .............................................................................................................. 13

FED. R. EVID. 803-04.......................................................................................................... 13

## SUMMARY OF ARGUMENT

Based on established Fifth Circuit law and the evidence developed in the case, American Airlines, Inc.'s ("AA") trademark infringement and copyright infringement claims are without merit. Furthermore, AA's damage claims for both causes of action lack the proper evidentiary support under established Fifth Circuit law. Accordingly, AA's trademark infringement and copyright infringement claims should be dismissed with prejudice.

### A.      Trademark Liability

The evidence at trial will demonstrate that there is no likelihood of confusion relative to Skiplagged's affiliation with AA, or as AA characterizes it, that Skiplagged is AA's agent. Such is dispositive of AA's trademark infringement claim. Beyond that, however, Skiplagged's nominative fair use defense will prevail based on the evidence which will be developed and presented at trial and the Fifth Circuit decision in *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (5th Cir. 2004). The *Fetzer* decision establishes that Skiplagged's listing of AA in connection with posting AA's routes does not constitute a trademark infringement as a matter of law.

Beyond those two established legal defenses, Skiplagged believes its evidence will carry the day with its equitable defenses of laches and estoppel by acquiescence. These defenses are fundamentally based on the undisputed fact that knowing full well of Skiplagged and its operational activities, AA did nothing to enforce any of its alleged trademark rights for over seven years. During this time span, AA prolifically discussed Skiplagged and its operations, while Skiplagged significantly built its business. As a matter of undisputed Fifth Circuit law, AA is not allowed to sit on its rights for this seven-year period and then file this suit without fatal consequences.

1

**B.        Copyright Liability**

With respect to AA's copyright claim, Skiplagged recognizes that the Court has granted partial summary judgment with regard to that claim. However, the Court specifically denied summary judgment as to Skiplagged's equitable defenses of acquiescence and estoppel. Based on the evidence and the fundamental seven-year "dead" period described above, the evidence developed at trial will establish these defenses, which are fatal to AA's copyright infringement claim.

**C.        Damages: Copyright and Trademark**

Regarding both of its infringement claims, the expert opinion evidence of AA, upon which it relies for its damage claims, falls far short of the evidentiary requirements set forth in the Fifth Circuit.

As to its copyright damage claim, its expert has admitted, without equivocation, that ███ ████████████████████████████████████████████████████████████ ████████████████. However, even if he would have stated an opinion, the damage claims he presented to the jury in support of AA's previously dismissed state law claims lacks the sufficient legal causation nexus between the damage and the copyright infringement claim.

Further, AA's profit disgorgement damages in support of its copyright claim suffer from the same lack of evidentiary support. Its expert has admitted that he ████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. Such is fatal to AA under Fifth Circuit law.

AA's trademark damages suffer from the same fatal lack of appropriate evidentiary support under the Fifth Circuit case law.

Concerning AA's actual damage claims under its trademark theory of liability, AA's expert has presented no evidence and has no opinion establishing any causal relationship between any actual damages claimed by AA as a result of Skiplagged setting forth the AA Mark on its website. The testimony of its expert is based on pure speculation and was the product of an admittedly erroneous piece of evidence produced by Skiplagged. Finally, AA's disgorgement of profits claim suffers from the same fatal lack of appropriate evidence as did its copyright claim. There was no evidence that any revenues of Skiplagged are attributable to a trademark infringement act.

**D.      Consumer Complaints**

Finally, but not any less important, is the attempt by AA to introduce into evidence, fifty-two irrelevant consumer complaints it has cherry-picked from the files of Skiplagged and AA. Despite the obvious lack of proportionality, the consumer complaints AA seeks to admit are patently irrelevant, contain inadmissible hearsay to which no exception applies, and are the perfect example of why Rule 403 exists. The undue prejudice which will likely result by presenting the jury with the irrelevant complaints of customers far outweighs any possible probative value. Almost every one of AA's complaints represent customers repeating to either Skiplagged's or AA's management, what an AA employee told them at an airport. Claims such as "Skiplagged is a scam," "Skiplagged is a fraud," and "Skiplagged's activities are illegal," have no place in this case and are nothing but improper attempts to essentially trash Skiplagged on irrelevant issues. To allow these complaints in evidence to leave an inappropriate "bad actor" impression with the jury is the classic case of why Rule 403 is in place.

**I.      ARGUMENTS AND AUTHORITIES**

**A.      AA Cannot Prevail on its Trademark Infringement Claim.**

3

Merely reproducing a trademark is not trademark infringement if there is no likelihood of confusion. And, "likelihood of confusion" means that the confusion is not just possible, but probable. Therefore, to prevail on its claim for trademark infringement, AA must demonstrate that Skiplagged's use of this trademark probably "creates a likelihood of confusion as to source, affiliation, or sponsorship." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). In evaluating the likelihood of confusion, courts in the Fifth Circuit examine the following non-exhaustive digits of confusion: (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

AA asserts in its Trial Brief that an analysis of the digits of confusion is unnecessary in this case because "the accused infringer is using an *exact copy* of asserted marks." (Dkt. 294) (citing *Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008)). Yet, in *Paulsson*, the Fifth Circuit disagreed "with the Appellant's assertion that the district court did not conduct a digits of confusion analysis. It clearly did." *Paulsson Geophysical Servs*, 529 F.3d at 310. Likewise, the string cite of cases AA relies on in footnote 46 of the Agreed Jury Charge for the same proposition almost exclusively arise in a counterfeiter or ex-franchisee context wherein the defendant is using plaintiff's mark to sell an imitation of defendant's product. *See* (Dkt. 249), p. 77, n. 46. That is obviously not the case here.

The evidence at trial will demonstrate that there is no likelihood of any confusion. Skiplagged simply uses AA's trademarks ("AA Marks") to identify AA's flights and to differentiate such flights from those of other carriers on Skiplagged's website. (Dkt. 185), Ex. 1,

App. p. 41. ███████████████████████████████████████████████████

████████████████ *Id.*

1. Nominative Fair Use

Skiplagged is entitled to use AA's trademarks to refer to AA's goods or services and not commit trademark infringement under the doctrine of nominative fair use. For nominative fair use to apply, a defendant (1) may only use so much of the mark as necessary to identify the product or service, and (2) may not do anything that suggests affiliation, sponsorship, or endorsement by the markholder." *Pebble Beach Co. v. Tour 18 I Ltd*., 155 F.3d 526, 546 (5th Cir. 1998), abrogated on other grounds by *TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23, 32-33 (2001). The seminal case on this doctrine is *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484-485 (5th Cir. 2004). *Fetzer* involved House of Vacuums' sale and repair of Kirby Vacuum Cleaners, and the Fifth Circuit decided that merely listing Kirby Vacuum Cleaners for sale in store signs and Yellow Pages was nominative fair use of the Kirby brand and did not constitute trademark infringement. *See Scott Fetzer Co*., 381 F.3d at 488.

As described above, Skiplagged only uses AA Marks to the extent necessary to refer to AA's *own* flight offerings. (Dkt. 185), Ex. 1, App. p. 41. AA argues nominative fair use cannot exist here because Skiplagged is not authorized to "sell" AA tickets. (Dkt. 294, p. 17) ("Skiplagged is not an authorized agent of American so there is simply no scenario where Skiplagged can *ever* sell American tickets."). That is incorrect.

First, by definition, nominative fair use does not require the markholder's authorization. *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992), as amended (Nov. 25, 1992) ("As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner."). Second, Skiplagged does not purchase

flights from AA, does not re-sell AA flights from AA to customers, and does not use AA Marks on its own goods and services. (Dkt. 185), Ex. 3, ¶ 12. Even customers who utilize Skiplagged's 'book with Skiplagged' feature are billed directly from the airline – including AA – and no money for the purchase of the ticket passes through Skiplagged. *Id*.

As to the second element of nominative fair use, Skiplagged's use of the AA Marks does not suggest affiliation, sponsorship, or endorsement. Skiplagged's purpose is to identify flights across hundreds of airlines, including other "major players" such as United Airlines and Delta Airlines. (Dkt. 185), Ex. 3, ¶ 8. Skiplagged offers multiple warnings throughout the purchasing process that state "Airlines don't like when you miss flights to save money so don't do this often." (Dkt. 185), Ex. 5-A, App. pp. 170-73. Skiplagged's website explicitly states, "We show you flights the airlines don't want you to see." (Dkt. 158), Ex. A-2, App. p. 105. Skiplagged's Terms and Conditions advise customers that Skiplagged does not endorse any links provided on Skiplagged's website. (Dkt. 185), Ex. 3-H, App. p. 153. Skiplagged further displays its own separate trademarks as well as the trademarks of other competing airlines alongside AA's Marks. *See e.g.*, *id*., Ex. 5-B, App. p. 184. All of the above, combined with the components of Skiplagged's website that are critical of airlines (i.e., "Our flights are so cheap, United sued us…but we won"), undermines any potential suggestion of affiliation, sponsorship or endorsement.

Skiplagged's nominative fair use of the AA Marks to identify AA's *own* flight itineraries, coupled with the lack of suggestion of affiliation, sponsorship or endorsement by AA, is a reasonable, legitimate purpose and does not constitute trademark infringement.

2.   Laches

A successful laches defense demonstrates "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4d 715 (5th Cir. 2024). The time period

for laches begins when an owner of a mark first knew or should have known of the accused use. *Id*.

With respect to whether an alleged infringer has suffered undue prejudice, Fifth Circuit courts consider "whether the defendant 'makes major business investments or expansions that depend on the use of the marks,' 'build[s] up a valuable business around ... [the plaintiff's] trademark' which would be lost if the mark could no longer be used, or, by foregoing the use of the mark, would have 'destroyed the investment of capital in the [business].'" *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 297 (5th Cir. 2015); *see also Rolex Watch USA, Inc. v. Beckertime, L.L.C.*, 96 F.4th 715, 723 (5th Cir. 2024) (holding ten years of sales during which plaintiff did not bring suit allowed defendant to build up and invest in the business in a way it would not have otherwise, resulting in clear prejudice).

AA has known about Skiplagged's activities since at least 2015. (Dkt. 185), Ex. 1, App. p. 14 ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████"); App. p. 16 ████████████████ ████████████████; App. p. 22 (██████████████████████████████████ ██████████████; Ex. 6 to Geurin Depo., AA-SKP-00059934 (stating "████ ████████████████████████████████████).

Despite this, AA did not file suit against Skiplagged until August 2023 (Dkt. 1). AA's over seven-year silence in asserting its trademarks rights constitutes an undue delay. In an attempt to excuse this delay, AA argues its ongoing investigations of Skiplagged's sophisticated system, coupled with COVID, renders AA's seven-year wait to file a lawsuit reasonable. (Dkt. 294, pp. 14-15). This argument falls short. AA did not need an extensive multi-year investigation to

determine whether Skiplagged was using AA Marks. ███████████████████████████

██████████████████████████████████████████████████ *See* Ex. 17 to

Lapp Depo., AA-SKP-00005713-18. Moreover, COVID has no bearing on AA's ability to send a

cease-and-desist letter or file a lawsuit. Thus, AA has no excuses for its unreasonable seven-year

delay.

Lastly, Skiplagged suffered undue prejudice as a result of AA's delay in asserting its

trademark rights. From 2015 to present, Skiplagged invested significant time, money, and effort

into its website, grew its user base, expanded its business worldwide, and grew its revenue from

approximately $800,000 to more than $20,000,000 in 2023. (Dkt. 185), Ex. 3, ¶ 18. Skiplagged

redesigned its website, Android app, and iOS app. *Id*. Skiplagged also invested in search engine

optimization (SEO) for its landing pages and created a customer loyalty program *Id*.

AA cannot remain silent for over seven years, permitting Skiplagged to incur millions of

dollars in sales and build up a successful business, only to then make known its issues with

Skiplagged's use of AA Marks and attempt to claim those profits it allowed Skiplagged to accrue.

*See Rolex Watch USA, Inc.*, 96 F.4th at 723 (holding ten years of sales during which plaintiff did

not bring suit allowed defendant to build up and invest in the business in a way it would not have

otherwise, which resulted in clear prejudice). This is clear prejudice to Skiplagged caused by AA's

delay. Thus, AA's claim for trademark infringement should be denied on this basis alone.

**B.      Skiplagged is not Barred from Asserting its Equitable Defenses.**

AA alleges Skiplagged is barred from asserting its equitable defenses because Skiplagged

has "unclean hands" due to a "willful infringement" of AA's Marks. (Dkt. 294), pp.13-14.

Skiplagged lacks the requisite bad faith intent for a finding of "unclean hands." *See Rolex Watch*

*USA, Inc.*, 96 F.4th at 723.

Contrary to AA's assertion, Skiplagged did not use AA's Marks to "acquire business from consumers." *See* (Dkt. 294), p. 14. Rather, as stated *supra*, Skiplagged's use of AA's Marks were solely to refer to flights offered and sold *by AA* and to differentiate AA flights from those offered by other airlines on Skiplagged's website. *See* (Dkt. 185), Ex. 1, App. p. 41. Setting aside the merits (or lack thereof) of AA's trademark infringement claim, Skiplagged's actions do not amount to a "willful infringement" with the "bad faith intent to capitalize on [AA]'s good will." *See Rolex Watch USA, Inc.*, 96 F.4th at 723.

In *Rolex Watch USA, Inc*., a case with much more egregious trademark allegation facts than here, the Fifth Circuit found no bad faith existed to bar a laches defense when a luxury watch reseller utilized the Rolex brand name and logo design. *Id*. The Court acknowledged an "inherent aspect of reselling luxury goods – that sellers wish to benefit from the reputation and goodwill of the brand name," but rejected this notion standing alone as sufficient to make a finding of unclean hands. *Id*. In doing so, the Court recognized the luxury watch reseller's efforts to clarify which parts were Rolex, and which were not. *Id*.

Similarly, in providing comparative information for flights across different airlines, there may be an inherent good (or bad) will that various customers may associate with different airlines. However, Skiplagged (1) displays its own separate trademarks, (2) offers multiple warnings stating airlines do not like this, and (3) displays its own marks as well as flight information and marks for other airlines, easily differentiating what content is Skiplagged, American, and others. (Dkt. 185), Ex. 5-A, App. pp. 170-73; (Dkt. 158), Ex. A-2, App. p. 105; (Dkt. 185), Ex. 5-B, App. p. 184.

**C.    The Court Should Allow Skiplagged's Equitable Defenses to be Presented to the Jury.**

AA asserts Skiplagged's equitable defenses should not be presented to the jury, but rather should be reserved for the Court. (Dkt. 294), pp. 20-21. While it is true that equitable defenses are

"not triable of right by a jury," the "party seeking bifurcation must show that 'the issue[(s)] to be tried [are] so distinct and separate from the others that a trial of [them] alone may be had without injustice.'" *M-I LLC v. FPUSA, LLC*, No. 5:15-CV-406-DAE, 2021 WL 8946454, at *5 (W.D. Tex. Feb. 3, 2021) (holding equitable defenses to be heard by jury when plaintiff did not meet its burden to prove bifurcation of the inequitable conduct and unclean hands defenses is warranted).

There are numerous examples in the Fifth Circuit of courts submitting equitable defenses to the jury in the same or similar contexts to this case. *See Conan Props. v. Conans Pizza, Inc.*, 752 F.2d 145 (5th Cir. 1985) (jury verdict on laches and acquiescence in trademark case); *Gibson, Inc. v. Armadillo Distribution Enters.*, 107 F.4th 441 (5th Cir. 2024) (jury finding on laches and acquiescence in trademark case); *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 297 (5th Cir. 2015) (noting history of upholding jury instructions on laches); *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, No. SA-21-CV-00673-XR, 2023 WL 28723, at *7 (W.D. Tex. Jan. 2, 2023) ("Whether an implied license exists turns on the copyright holder's intent, which is question of fact."). In fact, the *M-I LLC* case quoted above which AA relies upon in its Trial Brief expressly notes equitable defenses can be submitted to the jury on special interrogatories and ultimately holds plaintiff did not meet its burden to prove the necessity of bifurcating the equitable defenses. *M-I LLC*, 2021 WL 8946454, at *5-6.

Submission of these defenses to the jury is sensible. There is significant overlap in witnesses, evidence, and issues between AA's remaining claims and Skiplagged's equitable defenses such that a single trial with provisions for advisory verdicts on the necessary equitable defenses issues is both appropriate, efficient, and in the best interest of the Court for the sake of judicial economy. *See id* at *6.

**D.**      **AA is Not Entitled to Recover on its Copyright Infringement Claim.**

Skiplagged acknowledges the Court's determination as to liability on AA's copyright infringement cause of action (Dkt. 199). However, AA's Motion for Summary Judgment as to Skiplagged's defenses of acquiescence and estoppel was denied, and these defenses preclude AA's recovery on this claim.

1.   Estoppel

"A plaintiff is barred from bringing a copyright infringement action under the doctrine of equitable estoppel if: (1) the plaintiff knew the facts of the defendant's allegedly infringing conduct; (2) the plaintiff intended that its conduct be acted upon or acted in such a way that the defendant had a right to believe that plaintiff so intended; (3) the defendant was ignorant of the true facts; and (4) the defendant relied on the plaintiff's conduct to its detriment." *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 713 (W.D. Tex. 2013). "Estoppel may also 'be accomplished by a plaintiff's silence and inaction.'" *Id.*

AA's silence with respect to its position on Skiplagged's use of AA's flight symbol is fatal to its claim for damages related to copyright infringement. AA knew of Skiplagged's use of such symbol since at least 2015. (Dkt. 185), Ex. 1, App. p. 14; App. p. 16; App. p. 22; Ex. 6 to Geurin Depo., AA-SKP-00059934. AA's seven-year silence led Skiplagged to believe that AA did not take issue with Skiplagged's use of such symbol. Skiplagged was ignorant as to AA's present position that AA considered such use an infringement, and continued to use the flight symbol, among others, as it invested in and grew its business. AA cannot retroactively seek damages for the seven-year period in which AA was aware of Skiplagged's use yet remained silent. Allowing AA to recover for damages during such period is inequitable and barred by the defense of estoppel.

**E.      The Customer Complaints are Inadmissible.**

AA seeks to admit fifty-two (52) customer complaints ("Customer Complaints") into evidence in this case. (Dkt. 295), PX36-89. Such complaints are irrelevant, hearsay, and prejudicial in the context of FED. R. EVID. 405. Thus, they are inadmissible.

The Customer Complaints are irrelevant to AA's remaining trademark infringement claims. FED. R. EVID. 401. The vast majority of the complaints relate to customers' misunderstanding about hidden-city tickets and were prompted by AA's representative casting aspersions upon Skiplagged on matters irrelevant to trademark and copyright. Such "hidden-city confusion" is not the type of confusion applicable to AA's trademark infringement claim and will only serve to further confuse the jury as to what is and is not relevant.

"Customer complaints in a company's files are out-of-court statements. If they are offered to prove the truth of the matter asserted—that the incidents complained of in the report occurred as reported—they are hearsay and are inadmissible." *Hendricks v. Ford Motor Co*., No. 4:12CV71, 2012 WL 4478308, at *1 (E.D. Tex. Sept. 27, 2012). "While the record of the complaints, if made in the regular course of business, may fall under the business records exception, the consumer complaints themselves are hearsay within hearsay and must fall under their own exception." *Id*. "A party cannot circumvent the hearsay rules, however, by arguing that the hearsay is offered not to show the truth of the matters asserted but rather to show the opposing party's knowledge of the truth of the matters asserted." *Id*. Here, there is no question the Customer Complaints are out-of-court statements. FED. R. EVID. 801. Moreover, AA seeks to offer the Customer Complaints for the truth of the matter asserted (i.e., that the incidents complained of occurred as reported). *Id*. Lastly, such Customer Complaints do not fall under any hearsay exception. FED. R. EVID. 803-04. Thus, the Customer Complaints constitute inadmissible hearsay.

Lastly, the probative value of allowing AA to introduce such customer complaints is far outweighed by the danger of unfair prejudice. FED. R. EVID. 403. Cherry-picked complaints by AA offer little-to-no evidence of overall confusion among Skiplagged's customers. Instead, the effect of allowing the complaints into evidence will allow jurors to repeatedly hear disparaging remarks about Skiplagged, regardless of the truthfulness or probative value of such remarks, resulting in unfair prejudice to Skiplagged, and which could ultimately cause a mistrial.

## F.     AA has benefitted from its Acquiescence and has no evidence of actual damages.

When consumers use Skiplagged to purchase flights on AA, they are getting a genuine AA ticket. (Dkt. 185), Ex. 3, ¶ 12. They purchase their AA tickets directly through AA, and AA does not have to share any portion of that booking with a third party such as they would if the ticket were purchased through Expedia, Orbitz, Priceline, or any of the other third-party ticketing agents. In short, by permitting Skiplagged to use its marks for nearly a decade, AA has been the primary beneficiary of this business model and has not been damaged by it.

It is undisputed that Skiplagged uses AA trademarks to facilitate the sale of genuine AA tickets. Skiplagged's use of the trademarks was nominal and constituted fair use. Moreover, now that Skiplagged has discontinued using the logos, it has had a minimal impact on the bookings. Thus, even if there were evidence attributing Skiplagged use of AA's logo to specific profits, any profits attributable to copyright or trademark infringement would be negligible. However, AA has not demonstrated that it has any evidence attributing Skiplagged's use of AA's logo to specific profits.

AA confirmed they are not seeking statutory damages under the Copyright or Lanham Act and only seeking actual damages and disgorgement of profits. However, this is not what ████ ███████████████████████████████████████████████████████████████ and AA simply does not

have evidence to support any of its damages models. *See* (Dkt. 185), Ex. 7, App. p. 307. AA's damages expert was not even asked to assess any damage to the copyright, or to perform an analysis or even form an opinion related to actual trademark damages.

### 1. AA's theory of actual damages stems from its dismissed claims not its Copyright or Lanham Act claims.

When AA lost the summary judgment on its breach of contract, conditions of carriage, and tortious interference claims, there was no way for AA to salvage the case it *wanted* to bring with the case it was left with. AA's damages expert's report came out on May 31, 2024 (Fuller Report), but the damage scenarios he studied evaporated on July 31, 2024 with the Court's Summary Judgment Order. *See* (Dkt.. 199). Fuller's Supplemental Report came out two days later and ██

████████████████████████████████████████████

██████████████████ In fact, AA's damages expert David Fuller testified that ██████████████

██████████████████████████████████ (Dkt. 185), Ex. 7, App. p. 307.

### 2. AA does not have an Expert Opinion on Copyright actual damages.

AA's "lost revenue per hidden-city ticket sold by Skiplagged" (Dkt. 195, p. 11) is not a proper measure of actual damages under either the Lanham Act or the Copyright Act. Those damages may have been more appropriate when this was a breach of contract and tortious interference case, but they have no relevance to AA's current case.

To see why, it is helpful to state the obvious: there would have been "lost revenue per hidden-city ticket sold by Skiplagged" regardless of Skiplagged's use of AA's logo.

Case law has yielded the general consensus that "[a]ctual damages represent the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement . . . Failure to apply this measure in weighing actual damages is error." *Leland*

14

*Med. Centers, Inc. v. Weiss,* No. 4:07CV67, 2007 WL 2900599, at *7 (E.D. Tex. Sept. 28, 2007); *see also Energy Intelligence Group, Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020); 5 Nimmer on Copyright § 14.02 ("Actual damages represent the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement."). In turn, "[t]he basic rule for computing injury to the market value of a copyrighted work arising from infringement is to inquire what revenue would have accrued to plaintiff but for the infringement." 5 Nimmer on Copyright § 14.02 (citing *Energy Intelligence Grp., Inc.*, 948 F.3d at 275).

Here, Fuller did not have an opinion about 

Fuller Dep. Vol. 1. at 88:3-8. Thus, AA is relying solely on its "lost revenue." While this answers the question of *why* AA is focused on this lost revenue, the problem arises with the methodology needed to attribute those lost revenues to copyright infringement.

AA's damages expert, David Fuller admitted that

Fuller Dep. Vol. 1, at 64:3-6. Further, he admitted that

*Id*. at 87:13-25. Finally, in his second deposition, Fuller confirmed that

. *Id*. Vol. 2, at 20:11-22.

As noted above, AA has no way to show that the difference between a full fare and a hidden-city fare is revenue that was lost due to copyright infringement rather than the more obvious fact that hidden-city fares are offered at a lower price. Without tying this alleged lost revenue to copyright infringement as it's cause, this is not a measure of actual copyright infringement

damages.

Actual damages for copyright infringement is simply a problem Fuller did not address and he has nothing in his report or testimony that will help AA with its actual damages case.

### 3. AA's Disgorgement Argument Suffers from the Same Fatal Flaw.

The fatal flaw in AA's current actual damages theory is that it never accounted for the portion of that "lost revenue" that was attributable to copyright infringement. This was confirmed repeatedly by Fuller: ███████████████████████ (Fuller Dep. Vol. 1. at 89:14); █ ████████████████████████████████████████████████████████ ████████ (*Id*.at 89:22—90:1); █████████████████████." (*Id*. Vol. 2. at 19:11-12). The same flaw is demonstrated by AA's approach to disgorgement of Skiplagged's profits.

Plaintiff's burden of "establishing that profits are attributable to the infringed work" often gets confused with the defendant's burden of "apportioning profits between various factors contributing to the profits." *Straus v. DVC Worldwide, Inc*., 484 F. Supp. 2d 620, 645 (S.D. Tex. 2007) (emphasis added). This confusion is further compounded by the distinction—often unmentioned in the case law—between direct and indirect infringement.

For indirect infringement, as alleged in this case, the plaintiff has the initial burden to "demonstrate a nexus between the infringement and the indirect profits before apportionment can occur." *Id*. This is the step requiring the plaintiff to show what portions of the defendant's revenue are attributable to the infringement. Once that nexus is established by the plaintiff, if "an infringer's profits are attributable to factors in addition to use of plaintiff's work, an apportionment of profits is proper." *Id*. "The burden of proving apportionment (i.e., the contribution to profits of elements other than the infringed property), is the defendant's." *Id*.

16

When the copyright owner targets the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue." *MGE UPS Sys. v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 366 (5th Cir. 2010). However, the courts define "gross revenue" as "revenue *reasonably related* to the infringement." *Id* at 367. Thus, "[w]hen an infringer's profits are only remotely and speculatively attributable to the infringement, courts will deny recovery to the copyright owner." *Straus*, 484 F. Supp. 2d at 645 (*quoting* 4 Nimmer § 14.03[B][2] at 14-45).

The difference between direct and indirect profits is an important distinction. Direct profits cases are those where "the infringing work is sold as a whole." *Canadian Standards Ass'n v. P.S. Knight Co., Ltd*., No. 1:20-CV-1160-DAE, 2023 WL 6532549, at *3 (W.D. Tex. Apr. 27, 2023). An example of direct infringement is photocopying a book or duplicating a CD and selling the copies. In those cases, satisfying the plaintiff's burden is rather easy because they need "merely to show the infringer's gross revenues for the infringing product." *Id.* Indirect profits cases—like this one—are a different story. Indirect profits cases are those "in which defendants are alleged to have used a copyright . . . to sell other products." *Straus*, 484 F. Supp. 2d 620 at 645. With indirect profits cases, the profits "attributable" to the infringement are more difficult to quantify, but courts have recognized that this difficulty "does not change the burden of proof established by the statute." *Id.* (citing *Andreas v. Volkswagen of Am., Inc*., 336 F.3d 789, 796 (8th Cir. 2003)). Thus, whether a direct or indirect profits case, the standard is the same—albeit more difficult for a plaintiff to show in an indirect case. *See Weiss,* 2007 WL 2900599, at *3.

The plaintiff has the burden to demonstrate a nexus between the infringement and the indirect profits before apportionment can occur and must proffer sufficient *nonspeculative* evidence to support the causal relationship between the infringement and the profits generated indirectly from the infringement. *Id.* For example, in *Estate of Vane v. Fair, Inc.*, the 5th Circuit

17

found "a lump-sum figure for profits attributable to the television commercials that contained infringed material as a whole without accounting for the fact that the infringed material constituted only a fraction of any given commercial" was too speculative a connection to sustain damages. 849 F.2d 186, 188-89 (5th Cir. 1988). Thus, in an indirect profits case, a plaintiff must do more than simply isolate defendant's revenue that merely touches the infringing material in order to satisfy their burden and show what portion of the defendant's revenue was actually attributable to the infringement. *See id.*

Fuller's assumptions about causation begs the question—who will prove causation? That should have been Fuller's responsibility, but he did not even study the issue. Without any evidence of causation, his opinions are less than speculative because he did not even speculate that any profits were caused by copyright infringement. AA simply does not have any evidence of causation, and again, nothing in Fuller's report or testimony will help AA with its damages case.

### 4. AA does not have an Expert Opinion on Lanham Act actual damages

Under the Lanham act, actual damages can take the form of "lost profits or some other cognizable damages—suffered in connection with [the] trademark infringement claim." *I&I Hair Corp. v. Beauty Plus Trading Co., Inc.*, No. 3:20-CV-02179-M, 2024 WL 758095, at *9 (N.D. Tex. Feb. 22, 2024). However, a plaintiff may only recover "elements of injury to the business of the trademark owner *proximately resulting* from the infringer's wrongful acts." *BMC Software, Inc. v. Baker Hughes, a GE Co., LLC,* No. CV H-19-4810, 2022 WL 4390612, at *2 (S.D. Tex. Aug. 24, 2022), (quoting *Am. Airlines, Inc. v. Delta Air Lines, Inc.*, No. 4:19-CV-1053-O, 2021 WL 3629735, at *18 (N.D. Tex. May 18, 2021)). Lost profit damages "may not be based on evidence that is speculative, uncertain, contingent, or hypothetical." *Am. Airlines, Inc.*, WL 3629735, at *19 (quoting *Transverse, L.L.C. v. Iowa Wireless Servs., L.L.C.*, 617 F. App'x 272,

278 (5th Cir. 2015)).

Indeed, only those harms that are "a result of the" Lanham Act violation—that have some "causal link" between the infringement and harm—are recoverable. *See Serc-Ca Discos, Inc. v. Tierra Caliente Music Group, S.A. De C.V.*, No. 7:18-CV-00252, 2023 WL 8480096, at *3 (S.D. Tex. Sept. 29, 2023*)* (rejecting actual damages award where plaintiff could not "identify damages incurred by Plaintiff as a result of the alleged unfair competition," because "[i]n no way does this injury stem from customer confusion over the origin of the subject media"); *Exxon Mobil Corp. v. FX Networks, LLC*, No. CV H-13-2906, 2015 WL 12942049, at *2 (S.D. Tex. Aug. 26, 2015) (rejecting actual damages award where there was no evidence plaintiff had "sustained a direct injury caused by the" infringement); *C.V. v. Casa Azul Spirits, LLC*, No. CV H-22-2972, 2023 WL 7284182, at *8 (S.D. Tex. Nov. 3, 2023) ("[Plaintiff] has not offered any expert testimony calculating lost sales attributable to [defendant]'s sale of [infringing] products or demonstrating a causal link between [plaintiff]'s decline in sales and [defendant]'s sales of allegedly infringing products. [Plaintiff] has not presented sufficient facts to support a reasonable finding of actual damages caused by [defendant]'s alleged infringement.").



As noted above, Fuller emphatically stated ███████████████████████ ████████" Fuller Dep. Vol. 2. at 19:11-12. And he testified that ███████████████ ██████████████████████. Fuller Dep. Vol. 1. at 86:7-13. That is to say, he assumed causation without any evidence or analysis. Additionally, Fuller testified that ███████ ████████████████████████████████████████████████████████████ ██████████████████████████████████. *Id*. at 89:1-25. And, as noted above, Fuller testified that ██████████████████████████████████ ███████████████ *Id*. Vol. 2, at 23:5-8.

19

**5. AA does not have an Expert Opinion on disgorgement of profits under the Lanham Act.**

In the Fifth Circuit, there are two steps a plaintiff must satisfy when seeking an infringer's profits under 15 U.S.C. § 1117(a). The first is a threshold inquiry asking whether disgorgement is equitable under the six factors set forth in *Pebble Beach Co. v. Tour 18 I Ltd.*:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

155 F.3d at 554. The two most important factors are the diversion of sales and palming off. *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 882 (5th Cir. 2019) ("[A] plaintiff who cannot demonstrate diversion or palming off faces an uphill battle in obtaining disgorgement.").

As to diversion, this second factor is indeed important, as "[i]n many cases, disgorgement will not be equitable where few or no sales were ever diverted from the plaintiff to the defendant, because disgorgement in such contexts would grant the plaintiff an unjustified 'windfall.'" *Id.* at 878. There is some conflation here with the second overall step of the plaintiff's burden—the attribution requirement—because, naturally, any sales diverted to a defendant from the plaintiff will be attributable to the infringement. *See id.* at 875. However, just because some of the defendant's profits are attributable to infringement does "not necessarily mean the diversion factor supports disgorgement." *Id.* Lastly, "speculative and attenuated" evidence of diversion is insufficient to support disgorgement. *Id.* at 877. In fact, every factor requires such, as the Fifth Circuit has stated, "we are wary of disgorging profits to a party who can only speculate as to harm caused by the Lanham Act violation." *Id.* at 882.

The second step of the plaintiff's burden asks whether the defendant's profits are

"attributable to the Lanham Act violation." *Id.* Should a plaintiff fail to prove this second step, they will not be permitted to recover any of the defendant's profits, "even where the *Pebble Beach* test favors disgorgement." *Id.* (citing *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464 (5th Cir. 2001)). Thus, this second step is an indispensable one. *See id.* at 878 ("The 'attribution' requirement ensures that once the [] court has determined **disgorgement** is equitable, a defendant will only be forced to disgorge profits attributable to the Lanham Act violation."); *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515 (5th Cir. 2020) (failure of the plaintiff to show attribution was "fatal to the disgorgement award").

Stated simply, the attribution requirement tasks the plaintiff with showing the defendant "benefitted" from its Lanham Act violation.[1] *Id.* at 876, 878 (citing *Logan*, 263 F.3d at 464). In other words, it requires the plaintiff to "present evidence 'showing that any of [d]efendant's profits *were the result of its infringement of the mark.*'" *Logan*, 263 F.3d at 464 (emphasis in original) (quoting *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 966 F.2d 956, 957 (5th Cir. 1992)).

Here, the two most important factors weigh strongly against disgorgement. First, no sales were diverted. Skiplagged's use of AA's trademark resulted in the sale of AA tickets directly from AA. Those sales went 100% to AA, and AA did not have to share any portion of those bookings with third parties like Expedia, Orbitz, Priceline, or any of the other third-party ticketing agents.

Second, this is not a case of palming off. The AA tickets that Skiplagged's customers

---

[1] While the claim in *Retractable Techs* is for false advertising and not trademark infringement, in *Logan*, the Fifth Circuit specifically notes that the "distinction does not render this Court's holding regarding the proof necessary for a plaintiff to obtain a defendant's profits under § 1117(a) inapplicable." 263 F.3d 447, 464 (5th Cir. 2001). Moreover, *Adler*, a trademark infringement case, cites to *Retractable Techs* for the same proposition. *Adler v. McNeil Consultants*, LLC, 3:19-cv-2025-K-BN (N.D. Tex. Jul. 27, 2023).

purchased were genuine AA tickets. Thus, the two most important factors favor Skiplagged.

The remaining factors also counsel against the equities of a disgorgement award. Skiplagged's many warnings and boasts about how airlines hate what they do make it abundantly clear that there is no intent confuse or deceive—Skiplagged makes sure its customers know exactly what they are doing, and this is why they are warned against checking any bags or telling the airlines that they will not be completing the last leg of their flight. *See* (Dkt. 185), Ex. 5-A, App. pp. 170-73. And there are other remedies available such as actual damages (it is not Skiplagged fault that AA did not actually pursue these) that would better fit the facts and equitable consideration of this case.

This Court has already found unreasonable delay when it dismissed AA's breach of contract and tortious interference causes of action and the trademark claims are no different. *See* (Dkt. 199). AA could have asserted the trademark claims nearly a decade ago. Finally, the public has an interest in finding the least expensive flights available even if the airlines don't like it. Skiplagged facilitates this and it is a public good.

It goes without saying that Fuller did not opine on any of these factors, he assumed AA was entitled to disgorgement just as he assumed—without evidence—that there were profits attributable to Lanham Act violations. Fuller testified that ███████████████████████████ ██████████████████████████ Fuller Dep. Vol. 1. at 86:7-13. Just like his lack of analysis of the copyright damages, he assumed causation under the Lanham Act without any evidence or analysis.

In *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, the defendant sold pork sandwiches under a name trademarked by the plaintiff. 951 F.2d 684, 687 (5th Cir. 1992). The Court upheld a finding of no attribution because the defendant "would have sold just as many pig sandwiches by

any other name" and thus "there [was] no basis for inferring that any of the profits received by [defendant] from the sale of pig sandwiches [were] attributable to infringement." *Id.* at 696. Even though there were sales of the product bearing the infringing mark, the mere existence of the mark's presence without more was not enough to establish any "benefit" to the defendant that would satisfy the plaintiff's burden. *See id.*

Finally, this attribution requirement under the Lanham act is strikingly similar to the disgorgement analysis under the Copyright Act. *See, e.g., MGE UPS Sys. v. GE Consumer & Indus. Inc.*, 622 F.3d 361, 366-367 (5th Cir. 2010) (a plaintiff/copyright owner may seek "any profits of the infringer that are attributable to the infringement") (citing 17 U.S.C. § 504(b)). In fact, the Northern District of Texas has even found failure of the attribution requirement under the Copyright act as sufficient to defeat the same under the Lanham act in a case of simultaneous trademark and copyright infringement. *See EsNtion Records, Inc. v. TritonTM, Inc*., No. CIV.A.3:07CV2027L, 2009 WL 3805827, at *11 (N.D. Tex. Nov. 13, 2009). Thus, AA's Lanham Act damages theories fail for the same reason their Copyright damages fail.

## II.    CONCLUSION

For the reasons stated above, American Airlines, Inc. will not prevail on its Trademark Infringement claim pursuant to 15 U.S.C. § 1114. Moreover, Skiplagged has not acted with the requisite bad faith intent such that a finding of unclean hands is warranted, and it should be allowed to pursue its equitable defenses. AA has not met its burden to prove sufficient circumstances warranting a bifurcation of Skiplagged's equitable defenses. Thus, Skiplagged's equitable defenses should be presented to a jury, as courts in the Fifth Circuit have routinely done. The consumer complaints AA seeks to admit into evidence constitute hearsay, are prejudicial/irrelevant, and should be deemed inadmissible. Lastly, AA's damage model is flawed,

relies on broad and unsubstantiated assumptions, and AA cannot apportion the alleged damages and profits it seeks to recover to those arising out of Skiplagged's alleged trademark/copyright infringement.

Dated: October 2, 2024

/s/ William L. Kirkman
William L. Kirkman
Texas Bar No. 11518700
Preston B. Sawyer
Texas Bar No. 24102456
**KIRKMAN LAW FIRM, PLLC**
201 Main Street, Suite 1160
Fort Worth, Texas 76102
Telephone: (817) 336-2800
Facsimile: (817) 887-1863
billk@kirkmanlawfirm.com
prestons@kirkmanlawfirm.com


/s/ Aaron Z. Tobin
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
Abigail R.S. Campbell
Texas Bar No. 24098759
Nick H. Burns
Texas Bar No.24128189
A. Gage Taylor
Texas Bar No. 24123906
**CONDON   TOBIN   SLADEK   THORNTON NERENBERG, PLLC**
8080 Park Lane, Suite 700
Dallas, Texas 75231
Telephone: (214) 265-3800
Facsimile: (214) 691-6311
atobin@condontobin.com
kreed@condontobin.com
acampbell@condontobin.com
nburns@condontobin.com
gtaylor@condontobin.com

*s/ Darin M. Klemchuck*

Darin M. Klemchuck
Texas Bar No. 24002418
**KLEMCHUCK PLLC**
8150 North Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: (214) 367-6000
Facsimile: (214) 367-6001
darin.klemchuk@klemchuck.com

**Attorneys for Defendant, Skiplagged, Inc.**

## CERTIFICATE OF SERVICE

On October 2, 2024, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Aaron Z. Tobin*
Aaron Z. Tobin