IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00860-P |
| | § | |
| SKIPLAGGED, INC., | § | |
| | § | |
|    Defendant. | § | |

**PLAINTIFF AMERICAN AIRLINES, INC.'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW AND BRIEF IN SUPPORT**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, Plaintiff American Airlines, Inc. ("American") files this Motion for Judgment as a Matter of Law. American requests that the Court direct entry of judgment in American's favor for the reasons stated herein.

## I.   PRELIMINARY STATEMENT[1]

At the close of evidence, American moves this Court to rule as a matter of law that: (i) Skiplagged is liable for trademark infringement under 15 U.S.C. § 1114; (ii) American is entitled to injunctive relief for Skiplagged's copyright[2] and trademark infringements; and (iii) that Skiplagged's remaining defenses—nominative fair use, laches, acquiescence, license, and

---

[1] By submitting this Rule 50(a) Motion, American preserves—and specifically does not waive—its position that all equitable defenses and matters (including trademark profits disgorgement entitlement, laches, acquiescence, and unclean hands) are for the Court, not the jury. American understands the Court's ruling that it—and not a jury on an advisory basis—will determine these equitable issues. American thus submits argument on the equitable defenses and issues to assist the Court's later decision on these matters for which no 7th Amendment jury trial right exists.

[2] This Court determined on July 31, 2024 that Skiplagged is liable for copyright infringement under 17 U.S.C. § 501 *et seq*. [Dkt. No. 199 at 6–9].

1

mitigation of damages—all fail.

American is entitled to judgment as a matter of law on all such requests, because the evidence presented during its case-in-chief conclusively establishes Skiplagged's liability for trademark infringement, American is entitled to a permanent injunction to curb Skiplagged's ongoing and future infringing actions. Further, Skiplagged failed to put forth evidence to establish the required elements of its remaining defenses—and, in any event, its equitable defenses are barred by unclean hands.

## II.   LEGAL STANDARD

A motion for judgment as a matter of law ("JMOL") "challenges the legal sufficiency of the evidence." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006); *see* FED. R. CIV. P. 50(a)(1). A court must grant a motion for JMOL when there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on an issue on which that party has been fully heard. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000); *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 891 (5th Cir. 2016). In determining whether a sufficient evidentiary basis exists, the Fifth Circuit counsels that a jury's freedom to draw reasonable inferences may not extend so far as to allow the jury to draw an inference which amounts to mere speculation and conjecture. *See Nichols Const. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 352 (5th Cir. 1985). Moreover, conclusory testimony is not substantial evidence. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015). A mere scintilla of evidence is insufficient to present an issue to the jury. *See Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

## III.     ARGUMENT

**A.     American is entitled to JMOL on its trademark infringement claim.**

To prevail on its trademark infringement claim under the Lanham Act, American must show (1) it possesses valid trademarks and (ii) Skiplagged's use of American's valid trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2016); 15 U.S.C. § 1114(1). The evidence American presented during its case-in-chief—along with the parties' joint stipulations—conclusively demonstrated that American is the owner of registered trademark rights in the famous and valuable American Marks. Likewise, the evidence conclusively demonstrated that Skiplagged used without authorization marks that were identical to the American Marks in connection with the sale of at least 1.4 million tickets. The Court should accordingly rule on the issue and direct entry of judgment in American's favor on its trademark claim and all of Skiplagged's defenses to American's trademark claim.

**1.     American indisputably has valid trademarks.**

The evidence American introduced during its case-in-chief, including the Certificates of Registration and testimony of Neil Geurin regarding the same, shows that American has used and continues to use the trade name and trademark "American Airlines" and "American," as well as other iconic trademarks, for decades. [*See* Exhibits PX001–PX005]. The evidence shows American has invested heavily its brands and other intellectual property. Additionally, the evidence shows that, in the early 2010s, American modernized its branding and introduced an updated logo, shown below, which is referred to as American's "Flight Symbol." [Exhibit PX006].



In sum, it is indisputable that American uses AMERICAN AIRLINES, AMERICAN and the Flight Symbol (collectively, the "Marks" or "American Marks") extensively in connection with transportation services, loyalty programs, discount programs, incentive award programs, and travel-related goods and services, in interstate commerce.

Furthermore, as Neil Geurin testified during the trial, the evidence shows American uses the American Marks in virtually every part of its business and at every opportunity. This includes on its aircraft, on employee uniforms, on its website, throughout airports, on stadium and arena sponsorships, and in print and spot advertisements. Clearly, the American Marks are well-known and recognized by the general public, as well as by members of the travel industry, as symbols indicating travel-related services originating with American. [*See, e.g.,* Exhibit PX007 at 4, 15]. It also showed that American has expended significant resources in controlling the use of its Marks. For example, American strictly limits the licenses it grants to accredited, authorized travel agents, including through provisions in its Addendum to the Governing Travel Agency Agreement ("GTAA"), and, relevant to this case, the evidence shows any licenses granted are personal to the agent and do not include a right to sublicense American's Marks. [*See* Exhibit PX009 at 11–12; Exhibit PX010]. Further, Mr. Geurin and Skiplagged itself confirmed that American has never granted a license to Skiplagged.

American's federal registrations on the Principal Register are *prima facie* evidence of American's ownership of the American Marks, the validity of the registered American Marks, and of American's exclusive right to use the American Marks in commerce. 15 U.S.C. §1115(a); 15 U.S.C. §1057(b). All but one of the American Marks are "incontestable." 15. U.S.C. §1115(b). Skiplagged has not challenged the legitimacy of American's Marks. American's ownership of valid trademarks is therefore undisputed and established conclusively.

### 2. Skiplagged's use of valid trademarks creates confusion as to source, affiliation, or sponsorship as a matter of law.

Generally, to establish likelihood of confusion, courts consider the "digits of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). However, examining the digits of confusion is unnecessary in this case. This case presents the exceptional situation where *exact copies* of the valid trademarks at issue (the American Marks) are being used by the infringer, Skiplagged. *See Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (affirming district court's decision not to analyze the likelihood of confusion factors because the marks were an exact match). The evidence, including exhibits showing screenshots of Skiplagged.com, conclusively establishes that Skiplagged has used exact copies of American's AMERICAN AIRLINES, AMERICAN and Flight Symbol trademarks, and that it has used exact copies of the American Marks on its website to sell at least 1.4 million trips and to generate millions of dollars in revenue for itself. Thus, Skiplagged's use of unauthorized *exact* copies of the American Marks conclusively establishes a likelihood of confusion. *See id.* at 310–11.

Considering the digits of confusion leads to the same result. The digits of confusion are "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id*. The evidence, including testimony from Neil Geurin, shows that the American Marks are strong, well-known marks, that American has been using AMERICAN AIRLINES and AMERICAN since the 1930's and has been using the Flight Symbol for over a decade, that American issues tickets to hundreds of millions of passengers annually. The evidence, including testimony from Aktarer Zaman and Rob Holmes, as well as exhibits showing test buys and screenshots of Skiplagged.com, further shows Skiplagged is selling identical services, that both companies target the exact same customers and advertise in the exact same

5

media, and that Skiplagged's intent is unabashedly to persuade customers that it is a legitimate source of tickets for American flights. [*See* Exhibits PX023–PX030, PX033, PX034, PX185]. The evidence, including testimony from expert Professor Jerry Wind, also showed that customers generally do not exercise enough care to determine whether Skiplagged is American's authorized agent, as demonstrated by Skiplagged's substantial sales, as well as numerous complaints submitted to both Skiplagged and American.

Finally, and most importantly, the evidence shows that a great deal of actual confusion is taking place in the marketplace as a result of Skiplagged's actions. The trial record is replete with examples of both customers contacting American to complain about issues with flights they purchased through Skiplagged and customers contacting Skiplagged to make changes to their flight itineraries. [*See* Exhibits PX036, PX045, PX046, PX056, PX063, PX067, PX071, PX076, PX078, PX080]. Furthermore, as the testimony of Professor Wind informed, customers mistakenly believe that Skiplagged has some sort of association with American. Professor Wind's testimony further showed that roughly the same percentage of survey participants believed Skiplagged was associated with American as did those who believed that Expedia is associated with American— the latter *actually being* a longstanding agent of American. Dr. Wind also established that at least ten thousand complaints received by Skiplagged demonstrate consumer confusion and deception. [*See* Exhibits PX036, PX045, PX046, PX056, PX071, PX076]. In short, all eight digits of confusion conclusively weigh in American's favor—even though the Court is under no obligation to consider the digits here.

### 3. Skiplagged has willfully used American's valid trademarks.

Further, the evidence conclusively established that Skiplagged willfully used American's valid trademarks. The evidence shows that Skiplagged is not and never has been an agent of American, and that despite the fact that Skiplagged is not American's agent, Skiplagged uses

American's Marks—without permission—extensively throughout its booking process. [*See* Exhibits PX023, PX030]. For example, the evidence shows Skiplagged allows customers to search for "American Airlines" tickets and uses the word mark AMERICAN AIRLINES when presenting a specific flight to its users through the entire booking process.[3] [*See* Exhibits PX023, PX030].

A defendant acts willfully "if he knows his actions constitute an infringement." *Taylor Made Golf Co. v. MJT Consulting Group*, 265 F. Supp. 2d 732, 748 (N.D. Tex. 2005) (*quoting Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). Several Circuit Courts of Appeal, as well as courts within the Fifth Circuit, have found willful conduct where a defendant acts with "reckless disregard for, or [with] willful blindness" toward a trademark owner's rights. *Berg v. Symons*, 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005) (*quoting Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). *See also Microsoft Corp. v. Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 (S.D. Tex. 2000) ("A finding of willfulness does not require actual knowledge, but rather willful blindness."); *A Touch of Class Jewelry v. J.C. Penney Co.*, No. CIV. A. 98–2949, 2000 WL 1224804, at *5 (E.D. La. Aug. 28, 2000) (*quoting SecuraComm Consulting Inc. v. Securacom*, 166 F.3d 182, 187 (3d Cir. 1999) ("Knowing or willful infringement . . . involves an intent to infringe or a deliberate disregard of the mark holder's rights.")). In this case, there can be no question Skiplagged acted willfully.

The evidence presented during American's case-in-chief conclusively establishes Skiplagged's willfulness. The evidence shows Skiplagged's affirmative steps to avoid detection

---

[3] While Skiplagged's CEO, Aktarer Zaman, testified that his "experiment" of removing American's Flight Symbol from its webpage (and only displays gray-out version of the Flight Symbol (  ) did not impact traffic to its website, Skiplagged can end this "experience" at any time and reinstate use of American's Flight Symbol on the outcome of this case, absent an injunction preventing the same.

by American (e.g., by shifting IP addresses, using customers' emails, using shadow browser sessions to book tickets). [*See* Exhibits PX126, PX127, PX128, PX030]. The evidence, including testimony from Marcial Lapp, shows Skiplagged's commitment to deceiving customers was so strong that it utilized shadow browser sessions to mirror the customer's actions, without the customer's knowledge. [*See* Exhibits PX071, PX156, PX172]. The evidence introduced at trial also included numerous customer complaints to Skiplagged, wherein customers believing that Skiplagged was an authorized agent. [*See* Exhibits PX036, PX045, PX046, PX056, PX071, PX076]. These customers repeatedly expressed frustration that Skiplagged refused to handle routine requests such as assisting with flight delays, weather delays, scheduling changes, and other routine issues. [*See* Exhibits PX063, PX067, PX078, PX080]. Individually, any one of these factors and pieces of evidence would be sufficient to support a finding of willfulness—together, they are conclusive.

**B.      Skiplagged's defenses of nominative fair use, laches, acquiescence, and license all fail as a matter of law, because Skiplagged failed to put forth evidence on essential elements of its defenses and its equitable defenses are also barred by Skiplagged's unclean hands.**

The evidence presented in American's case-in-chief, along with legal bars, conclusively establish that Skiplagged did not meet its burden on its remaining affirmative defenses. As set forth below, Skiplagged's nominative fair use, laches, acquiescence, and license defenses[4] all fail as a matter of law.

---

[4] Skiplagged included additional affirmative defenses in its Answer and in the Joint Pretrial Order which it abandoned at trial by presenting no argument or evidence. [*See* Dkt. No. 144 at 18–22; Dkt. No. 282 at 35–39].

8

> **1.  Skiplagged's nominative fair use defense fails as a matter of law because the evidence establishes that the defense is inapplicable or, alternatively, shows that Skiplagged's use was of American's Marks was not *de minimis*.**

At the outset, Skiplagged's use of American's Marks is commercial and for Skiplagged's profit, and Skiplagged simply does not have permission to sell American tickets (or to surreptitiously manipulate American's website in order to trick American's website into issuing tickets). As the Court recognized in its Memorandum Opinion and Order on American's Motion for Partial Summary Judgment, "*Skiplagged is not authorized by AA to offer flights to anyone, period.*" [Dkt. No. 199 at 8 (quoting Dkt. No. 187 at 29)]. Under these circumstances, fair use can never apply.

To prove its fair use defense, Skiplagged must (1) only use so much of the American's Marks as necessary to identify the product or service and (2) not do anything that suggests affiliation, sponsorship, or endorsement by American. *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 489 (5th Cir. 2008).

The evidence American presented during its case-in-chief conclusively establish that Skiplagged cannot establish either element. First, the evidence shows that Skiplagged uses American's Marks more than is reasonably necessary to identify the product or service (or a *de minimis* amount); to the contrary, the evidence shows Skiplagged liberally used American's Marks without its permission. [*See* Exhibits PX023–PX030]. Second, the evidence further shows that Skiplagged's use is the exact kind that confuses customers into believing an affiliation, sponsorship, or endorsement exists between American and Skiplagged.

The nominative fair use doctrine permits one to "use another's mark truthfully to identify another's goods or services in order to describe or compare its product to the markholder's product." *Bd. of Supervisors for La. State Univ. Agric. & Mech. College*, 550 F.3d at 489. A defendant's use of another's mark in an attempt to "capitalize on consumer confusion" is not a

nominative fair use. *Id.* Given these additional elements, Skiplagged's nominative fair use defense fails as a matter of law. Skiplagged did not use American's Marks to "truthfully" identify American's goods "in order to describe or compare [Skiplagged's] product to" American's. *Id.* Rather, Skiplagged had the bad faith intent to use the marks to "capitalize on consumer confusion," as evidenced by the record as a whole.

On these bases, Skiplagged's nominative fair use defense fails as a matter of law.

2. **Skiplagged's laches defense fails as a matter of law because the evidence shows that American did not unreasonably delay in filing suit, and, as such, Skiplagged was not prejudiced by any such "delay."**

For Skiplagged to succeed on its laches defense, it is required to show that American (1) unreasonably delayed asserting its rights, or (2) that Skiplagged has suffered "a good faith change of position . . . to his detriment because of [American's] delay." *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997). Because Skiplagged failed to present evidence supporting either theory, its laches claim fails as a matter of law.

The evidence presented during American's case-in-chief shows that Skiplagged's entire business model centers around avoiding detection; that it uses dynamic IP addresses so that American cannot detect when Skiplagged is using a shadow browser session to access AA.com. [*See* Exhibits PX071, PX156, PX172]. The evidence shows that Skiplagged created a sophisticated shadow browser system so it could pretend as if a customer was accessing American's website, instead of Skiplagged, and that it encouraged customers to lie to American if asked whether they did business with Skiplagged. [*See* Exhibits PX023–PX030, PX178]. The evidence, including testimony from Mr. Zaman, was that Skiplagged claims to have relationships with legitimate sellers of American tickets. Because of Skiplagged's efforts to avoid detection demonstrates Skiplagged had "unclean hands," laches simply should never apply.

Further, Skiplagged's active steps to avoid detection, and to counter steps American took

to stop Skiplagged's activity, demonstrates that Skiplagged knew at all times that American objected to its activity.

Still further, Skiplagged has failed to demonstrate its reliance on American's purported lack of activity. Mr. Zaman admitted that the real impetus for investing in his website was the desire (and perhaps, pressure from investors) to be profitable, and that this pressure resulted in him completing the new "book" system in or around 2017. This testimony aligns perfectly with American's own growing awareness of Skiplagged, and explains why Skiplagged was largely not on American's radar before that. The evidence American presented further shows that American was diligent and attempted to resolve its issues with Skiplagged without resort to litigation. For example, American tried various technical solutions first, and then internal concern gradually increased once American learned in 2020 that Skiplagged was itself linking directly into American's website. [*See* Exhibit PX133]. As Mr. Geurin and Mr. Lapp discussed in their testimony, American met directly with Skiplagged in 2020 and discussed Skiplagged's business selling hidden-city tickets. [*See* PX150 at 1]. Mr. Geurin testified that the outcome of that meeting was that Skiplagged was resolved to continue using American's trademarks and sell hidden-city tickets. The evidence further shows that American filed suit in 2023, after nationwide travel rebounded from pre-pandemic levels, and in the midst of consumer complaints about Skiplagged reaching a fever pitch. Skiplagged's own sales records and company growth track perfectly with American's increasing concern about Skiplagged. Finally, Skiplagged also confirmed that it made no major capital investments since it completed development of the "book" system in 2017, and presented no evidence that it made major business investments or expansions that depended on American's Marks (as opposed to other airlines in general).

On these bases, Skiplagged's laches defense fails as a matter of law.

> 3. **Skiplagged's acquiescence defense fails as a matter of law because the evidence conclusively shows American never permitted Skiplagged to use American's Marks.**

To prove its acquiescence defense, Skiplagged must prove three elements: (1) that American gave assurances to Skiplagged that it could use American's Marks; (2) that Skiplagged relied on those representations, and (3) undue prejudice to Skiplagged resulting from its reliance on the assurances. *See Pennzoil-Quaker State Co. v. Miller Oil & Gas Ops.*, 779 F.3d 290, 294 (5th Cir. 2015) (citing *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 624 (5th Cir. 2013)); *Wilson v. Tessmer L. Firm*, 483 F. Supp. 3d 416, 430 (W.D. Tex. 2020).

The evidence presented during American's case-in-chief conclusively establishes that no communication, agreement, or assurance exists whereby American permitted Skiplagged to use American's Marks. The evidence American presented shows that when Skiplagged and American met in 2020 (they had not met subsequently, besides this litigation), the product of this meeting was unmistakably not a license for American's Marks. [*See* Exhibit PX128].

Further, Skiplagged has not produced any evidence that it relied on American's assurances that using the American Marks was appropriate. First, because there was no such assurance, there can be no reliance on a non-existent assurance. Second, there is simply no evidence that Skiplagged took steps such as making significant investment decisions or building the bulk of its business on the reasonable assumption that it had permission to use American's Marks. Skiplagged books flights for several airlines, not just American, and there is no evidence in any internal Skiplagged document that specifically (or even implicitly) demonstrates that Skiplagged catered its business model, decisions, and investments to its ability to use American's Marks.

On these bases, Skiplagged's acquiescence defense fails as a matter of law.

> **4. Skiplagged's license defense similarly fails as a matter of law because the evidence conclusively shows American never conferred Skiplagged with a license to use American's Marks.**

To prove its license defense, Skiplagged was required to prove (1) the existence of a valid license, and (2) its scope of authorized use. *Loeb-Defever v. Mako, L.L.C.*, 2023 WL 5611042 (5th Cir. Aug. 30, 2023); *Stross v. Redfin Corp.*, 730 F. App'x 198, 203 (5th Cir. 2018).

The evidence presented by American during its case-in-chief conclusively establishes that American did not confer a license—express or implied—upon Skiplagged to use American's Marks. To the exact contrary, the evidence, including testimony from Mr. Geurin that American's contract with Skyscanner does not provide Skiplagged with a license, conclusively shows that American intentionally *refrained* from conferring upon Skiplagged such a license—and no license's scope would permitted Skiplagged's use. [*See* Exhibits PX013, PX016]. On this basis, Skiplagged's license defense fails as a matter of law.

> **5. Skiplagged's mitigation of damages defense fails as a matter of law, because it is not a defense to trademark infringement and Skiplagged failed to introduce any evidence that American failed to mitigate its damages.**

American is entitled to judgment as a matter of law on Skiplagged's mitigation of damages defense, because the defense is legally inapplicable and no evidence supports it. Numerous courts have held that mitigation of damages is not a defense to trademark infringement. *See* 15 U.S.C. § 1115 (listing affirmative defenses but not failure to mitigate); *Natreon, Inc. v. Ixoreal Biomed, Inc.*, No. 16-4735 (FLW) (DEA), 2017 WL 3131975, at *7 (D.N.J. July 21, 2017) ("Moreover, this Court is unable to find any controlling authority to support the position that mitigation of damages is a valid affirmative defense to the Lanham Act[.]"); *Janes v. Watson*, No. SA-05-CA-0473-XR, 2006 WL 2322820, at *17 (W.D. Tex. Aug. 2, 2006) ("The Court fails to see how the failure to mitigate defense applies to" a claim for trademark infringement since "there is nothing Plaintiffs can do to mitigate [their] damages").

13

Regardless, no evidence supports the mitigation defense. Skiplagged adduced no evidence of any reasonable action American could have done to reduce its actual damages. Under the law, American has no duty as a matter of law to incur unreasonable expenses to stop Skiplagged's wrongful and intentional infringement.

### 6.     Skiplagged's unclean hands bar it from asserting equitable defenses.

Skiplagged's equitable defenses not only fail on their merits (discussed above), but they also fail because of Skiplagged's unclean hands and willful infringement on American's Marks. The Fifth Circuit law forbids a defendant with "unclean hands" from asserting equitable claims or defenses. *See Abraham v. Alpha Chi Omega*, 796 F. Supp. 2d 837, 845 (N.D. Tex. 2011) ("[T]hese defenses are equitable defenses, and before determining whether [defendant] has successfully demonstrated the defenses of laches and acquiescence, the Court must determine whether [defendant] is barred from asserting these defenses due to unclean hands.") (citing *Carmona v. Rubio*, No. H–06–228, 2007 WL 543438, at *5 (S.D. Tex. Feb. 16, 2007) ("As a threshold matter, a defendant with 'unclean hands' may not prevail on the equitable defense of laches."); 4 Callman on Unfair Competition, Trademarks, and Monopolies § 23.26 (4th ed. 2010) ("Intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor weighed in balancing the equities.")); *Tank Works, Inc. v. Snyder Indus., Inc.*, No. 4:11-cv-246-A, 2011 WL 3204694, at *5 (N.D. Tex. July 26, 2011) ("An equitable doctrine, such as waiver, 'cannot be successfully asserted . . . if the defendant comes to court with unclean hands.'") (citing *Regional Props., Inc. v. Fin. & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir. 1985)).

In a trademark case, a defendant has unclean hands if it intentionally infringed the plaintiff's trademarks with the bad faith intent to capitalize on the plaintiff's reputation or goodwill in the market. *Rolex Watch USA, Inc. v. Beckertime, LLC*, 96 F.4th 715, 723 (5th Cir. 2024); *Bd.*

14

*of Supervisors for LSU Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 489–90 (5th Cir. 2008) (citing *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985) ("A defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense [of laches].")). This bars a party from benefiting when its own conduct in connection with the same matter has been unjust, marked by a lack of good faith, or violates the principles of equity and fair dealing.

Here, the evidence introduced by American during its case-in-chief shows Skiplagged voluntarily and intentionally used American's Marks to acquire business from consumers. Skiplagged's CEO, Mr. Zaman, admitted he never sought permission to use American's Marks. Yet, Skiplagged continues to use American's Marks to capitalize on American's recognition and goodwill—even after this lawsuit was filed. The evidence shows that Skiplagged's own unclean hands bar it from asserting its equitable defenses.

### IV.   CONCLUSION

Based on the foregoing, American respectfully requests the Court enter judgment in this case, ruling: (i) Skiplagged is liable for Trademark Infringement under 15 U.S.C. § 1114; (ii) American is entitled to injunctive relief for Skiplagged's Copyright and Trademark infringements; and (iii) that Skiplagged's remaining defenses—nominative fair use, laches, acquiescence, license, and mitigation of damages—all fail.

Dated: October 10, 2024

Respectfully submitted,

*/s/ Dee J. Kelly, Jr.*
Dee J. Kelly, Jr.
State Bar No. 11217250
dee.kelly@kellyhart.com
Julia G. Wisenberg
State Bar No. 24099146
julia.wisenberg@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500

R. Paul Yetter
State Bar No. 22154200
pyetter@yettercoleman.com
Tyler P. Young
State Bar No. 24129144
tyoung@yettercoleman.com
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8003

Cameron M. Nelson
nelsonc@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-6590

Nathan J. Muyskens
nathan.muyskens@gtlaw.com
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, DC 20037
Telephone: (202) 331-3100

Bina Palnitkar
State Bar No. 24070378
palnitkarb@gtlaw.com
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Telephone: (214) 665-3600

**ATTORNEYS FOR PLAINTIFF**

16

**CERTIFICATE OF SERVICE**

I certify that on October 10, 2024, I served the foregoing document electronically in accordance with the Federal Rules of Civil Procedure.

*/s/ Dee J. Kelly, Jr.*_____
Dee J. Kelly, Jr.