UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 1 5 2024

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**AMERICAN AIRLINES, INC.,**

    Plaintiff,

v.

**SKIPLAGGED, INC.,**

    Defendant.

**No. 4:23-cv-00860-P**

## JURY CHARGE
## GENERAL INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You will hear the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions by a preponderance of the evidence. This means the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.

Plaintiff American Airlines, Inc. has the burden of proving its case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so, which means the greater weight of credible evidence presented in this case. If you find that American Airlines has failed to prove any element of its claim by a preponderance of the evidence, then it may not recover on that claim. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence.

In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. In determining the weight to give to

the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave during the trial.

You should keep in mind that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the

witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the

existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. You are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the

notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question. After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

## INSTRUCTIONS FOR ANSWERING QUESTIONS

Bias, prejudice, or sympathy may not play any part in your deliberation. A corporation and all other persons are equal under the law and must be treated as equals in a court of law.

Do not consider questions that ask you to provide an amount of damages unless you answered "yes" to a previous question that prompts you to provide an amount of damages.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer simply because of your answer to any other question about damages. Do not answer based on a speculation about what any party's ultimate recovery may or may not be. Any recovery will be ultimately approved by the Court when it applies the law to your answers at the time of judgment. Do not add any amount of interest to any of your answers on damages, if any. Answer in dollars and cents, if any.

## QUESTIONS

### CLAIM 1: COPYRIGHT INFRINGEMENT

The Court has previously ruled that Skiplagged is liable to American Airlines on its claim of copyright infringement. However, you must determine American Airlines' damages from Skiplagged's copyright infringement. American Airlines is entitled to recover the actual damages suffered as a result of the infringement. In addition, American is also entitled to recover any profits of the defendant attributable to the infringement. To prove damages, American Airlines must show by a preponderance of the evidence that but for Skiplagged's infringement, American Airlines would not have suffered the losses claimed.

Actual damages means the amount of money adequate to compensate American Airlines for the reduction of the fair market value of its copyrighted work caused by the infringement. In determining actual damages, you should consider the following:

1) The amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for Skiplagged's actual use of American Airlines' copyrighted work; and

2) The profits American Airlines should have received for any sales lost because of the infringement. Profits are the gross revenue American Airlines would have made on sales that did not occur because of the infringement minus additional expenses American Airlines would have incurred in making those sales.

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate his/her damages, that is, to avoid or to minimize those damages.

If you find Skiplagged is liable, and American Airlines has suffered damages, American Airlines may not recover for any item of damage which it could have avoided through reasonable effort. If you find that Skiplagged proved by a preponderance of the evidence that

American Airlines unreasonably failed to take advantage of an opportunity to lessen its damages, you should deny its recovery for those damages that it would have avoided had it taken advantage of the opportunity.

You are the sole judge of whether American Airlines acted reasonably in avoiding or minimizing its damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, a plaintiff is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. Skiplagged has the burden of proving the damages that American Airlines could have mitigated. In deciding whether to reduce American Airlines' damages because of its failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether Skiplagged has satisfied its burden of proving that American Airlines' conduct was not reasonable.

In addition to actual damages, American Airlines is entitled to any profits of Skiplagged attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of Skiplagged's profits only if you find that American Airlines showed a causal nexus between the infringement and Skiplagged's gross revenue.

Skiplagged's profit is determined by subtracting all expenses from its gross revenue attributable to the infringement.

Skiplagged's gross revenue is all of its receipts from the sale of products and services associated with the infringement. American Airlines has the burden of proving Skiplagged's gross revenue by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, and/or production costs incurred in producing Skiplagged's gross revenue associated with the infringement. Skiplagged has the burden of proving its expenses by a preponderance of the evidence.

Unless you find that a portion of the profit generated from Skiplagged's sale of products and services associated with the infringement is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. Skiplagged has the burden of proving the portion or percentage of the profit, if any, attributable to factors other than copying or infringing American Airlines' copyrighted work.

**Question No. 1:** What amount of actual damages, if any, did American Airlines prove, by a preponderance of the evidence, that it is entitled to recover as a result of Skiplagged's copyright infringement? Please answer in dollars and cents.

Answer: $ 19,000,000.00

*If you answer Question 1 with an amount greater than $0 then answer Question 2. If not proceed to Question 4.*

**Question No. 2:** Did Skiplagged prove by a preponderance of the evidence that American Airlines failed to mitigate its copyright infringement actual damages?

Answer "Yes" or "No": Yes

*If you answer Question 2 "Yes" then answer Question 3. If you answer "No" proceed to Question 4.*

**Question No. 3:** What amount of copyright infringement actual damages did American Airlines fail to mitigate through the exercise of reasonable diligence? Please answer in dollars and cents.

Answer: $ 14,300,000.00

*Proceed to Question 4.*

**Question No. 4:** What amount of Skiplagged's profits do you find American Airlines is entitled to recover as a result of Skiplagged's copyright infringement?  Please answer in dollars and cents.

Answer: $ 4,700,000.00

***Please proceed to Question 5.***

## CLAIM 2: TRADEMARK INFRINGEMENT

American Airlines also claims in this case that it owns certain registered trademarks.  Those trademarks are: (1) two-word trademarks for the words "AMERICAN AIRLINES"; (2) two trademarks on American Airlines' Flight Symbol logos,  and  ; and (3) a combined word and design mark for "American" with its associated Flight Symbol logo, .

American Airlines claims that Skiplagged committed trademark infringement by using the registered trademarks owned by American Airlines. American Airlines' claims arise under federal law.

American Airlines claims that, by using its registered trademarks in connection with providing travel reservation services, providing information in the field of travel, and providing computer applications software for mobile devices, Skiplagged infringed each of American Airlines' trademarks for the word mark "AMERICAN AIRLINES," for

its Flight Symbol logo marks  and , and for its combined word

and design mark, "American" with its Flight Symbol logo .

The purposes of trademark law are to secure to the owner of the mark the goodwill of its business and to protect the ability of consumers to distinguish among competing producers. The central question in trademark law is the likelihood of consumer confusion.

Ownership of a trademark is established by use of the trademark and does not need to be registered in order to obtain protection. A trademark is any word, name, symbol, device or any combination of these things, used by a person or corporation to identify and distinguish its goods or services from those sold by others and to indicate the source of the goods or services, even if that source is unknown to the consumer. If through use, the word or design comes to symbolize a person's or corporation's product or service in the public mind, that person or corporation acquires a property right in the mark.

American Airlines bears the burden of proving by a preponderance of the evidence that it has acquired property rights in each trademark it asserts in this case before there can be infringement of that trademark. A trademark need not, but can be, registered with the United States Patent and Trademark Office. This is called a United States or federal trademark registration. A federal trademark registration is evidence of

12

the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the registration.

American Airlines asserts that it is the owner of the following five trademarks and corresponding U.S. Trademark Registrations:

1)      The word trademark, "AMERICAN AIRLINES". American Airlines claims rights to this trademark under federal law. American owns two federal trademark registrations for this name mark. American Airlines' federal trademark for the word mark "American Airlines" specifies the goods and services associated with this mark as:

   a. "air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, providing information in the field of travel by means of a global computer network; etc." (Int'l Class 09); and

   b. "computer application software for mobile devices and handheld computers, namely, software for providing information in the fields of travel, transportation and loyalty award

programs; computer application software for mobile devices; computer application software for mobile devices and handheld computers, namely, software for ticketing passengers, checking reservations, and checking flight status" (Int'l Class 39).

2)    The logo trademark, American Flight Symbol (in color)  . American Airlines claims rights to this trademark under federal law. American Airlines owns a federal trademark registration for this mark. American Airlines' federal trademark registration for this logo trademark specifies the goods/services associated with this mark as: "air transportation of passengers, cargo, and freight; providing travel agency services, namely, providing transportation reservation services for others, air transportation reservation services for others, etc. by means of a global computer network; providing information in the field of travel by means of a global computer network." (Int'l Class 39).

3)    The logo trademark, American Flight Symbol (black and white)  . American Airlines claims rights to this

14

trademark under federal law. American Airlines owns a federal trademark registration for this mark. American Airlines' federal trademark registration for this logo trademark specifies the goods/services associated with this mark as: "air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, air transportation reservation services for others, ground support services in the field of air transportation, namely, marking, sorting, loading, unloading, transfer, and transit of cargo and passengers' luggage; providing information concerning cargo and passengers' luggage in transit and delivery; air travel passenger ticketing and check-in services; booking and providing ancillary travel services, namely, making reservations in the nature of seat selection, baggage check-in; airport ramp services, namely, transfer of checked baggage to aircraft; airport ramp services, namely, transfer of carry-on baggage to aircraft; airline services, etc." (Int'l Class 39).

4)    The combined word and symbol trademark, "American" with Flight Symbol logo  .

American Airlines claims rights to this trademark under

federal law. American Airlines owns a federal trademark registration for this mark. American's federal trademark registration for this logo trademark specifies the goods/services associated with this mark as: "air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services for others, namely, coordinating travel arrangements for individuals and for groups, air transportation reservation services for others, and vacation reservation services by means of a global computer network, namely, coordinating travel arrangements for individuals and for groups; providing information in the field of travel by means of a global computer network." (Int'l Class 39)

To prevail on its claims against Skiplagged, American must prove by a preponderance of the evidence that Skiplagged's use of American Airlines' marks creates a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the products and services offered by Skiplagged. Likelihood of confusion means a probability of confusion, which is more than a mere possibility of confusion.

In determining whether American has proven by a preponderance of the evidence that there is a likelihood of confusion with respect to the

source, affiliation, or sponsorship of the products and services offered by Skiplagged, you should consider the following factors, known as "digits of confusion," separately as to each allegedly infringed mark:

1) The type and strength of American's marks;

2) The similarity between American's marks and the marks used by Skiplagged;

3) The similarity of products and services supplied by American and the products and services supplied by Skiplagged while using American's marks;

4) The identity of retail outlets and purchasers of American's and Skiplagged's products and services;

5) The identity of advertising media used by American and Skiplagged;

6) Skiplagged's intent in using American's marks;

7) Evidence of actual confusion caused by Skiplagged's use of American's marks; and

8) The degree of care exercised by potential purchasers.

The weight to be given to the factors depends on the facts and circumstances of each case. The absence or presence of any one of the digits does not determine whether there is, or is not, a likelihood of confusion. In some cases, a jury may find a likelihood of confusion even

17

if you find less than a majority of the factors. In other cases, a jury may find no likelihood of confusion even if it finds less than a majority of the factors. These digits of confusion are flexible and do not apply mechanically or to every case. They serve only as guides, not an exact calculus. You must consider the application of each digit in light of the specific facts and circumstances of evidence in this case, and you must consider the marks in the context that a consumer perceives them in the marketplace.

You may determine how much weight to give each factor. I will discuss each of these factors in turn.

The first digit of confusion for you to consider is the strength of American Airlines' trademarks. The strength or distinctiveness of a mark determines the amount of protection the mark receives. Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark.

A mark's strength depends on: (1) the categorization or type of mark, and (2) the mark's recognition in the marketplace.

Trademarks can be categorized along the following range of generally increasing strength or distinctiveness: generic, descriptive, suggestive, arbitrary, or fanciful. Generic marks are the least distinctive and fanciful marks are the most distinctive.

The stronger or more distinctive the mark, the greater the likelihood that consumers will be confused and the more protection it receives. The last three categories of marks—suggestive, arbitrary and fanciful—are considered inherently distinctive and are entitled to protection without a showing that the marks have secondary meaning. Suggestive marks are marks that suggest an attribute of a good or service without describing it. These marks require the consumer to exercise his or her imagination to apply the trademark to the goods or services. Arbitrary marks are marks that use ordinary words that do not suggest or describe the goods or services involved. Fanciful marks are most often coined words.

A plaintiff can show that a mark is strongly recognized in the marketplace based on extensive advertising, length of time in business, public recognition, uniqueness, and the quantity of sales of the branded products.

A strong trademark is one that consumers are likely to associate with the owner of the mark and is rarely used by parties other than the trademark owner, while a weak trademark is one that is not well recognized or is often used by other parties. In short, the more distinctive a trademark, the greater its strength.

A trademark's strength is important in determining the scope of protection that it receives. The greater the number of identical or similar

trademarks already used on different kinds of goods or services by others, the weaker the trademark and the lower the likelihood of confusion. You should consider all third-party use and third-party U.S. trademark registrations, and not just use in the same industry, to determine whether a mark is weak or strong. A mark that is widely used on a variety of commercial goods and services by others is a weaker mark and entitled to a narrower range of protection.

The second digit, or factor, you may use in analyzing the likelihood of confusion is the similarity of American Airlines' marks to the marks used by Skiplagged.

The similarity of marks is determined by comparing their appearance and meaning. This factor focuses not on whether the marks are identical, but on whether they are sufficiently similar that consumers are likely to believe that American Airlines' product is somehow associated with Skiplagged. A mark must be viewed in its entirety and in the context in which it is used in the marketplace, including how and where it is used on product packaging, labeling, and advertising. It is the overall impression of the mark that counts. You should not dissect the marks to compare individual features. Although more attention should be given to the dominant portion of the marks, the use of the same dominant words does not automatically equate to similarity between the marks. Similarity of appearance is determined

20

on the basis of the total effect of the trademark, rather than on a comparison of individual features.

The third digit, or factor, to consider in analyzing likelihood of confusion is the similarity between the parties' respective products and services. The greater the similarity between the parties' products or services, the greater the likelihood of confusion. Competition between the parties' products or services is not necessary for consumers to confuse them. When a company is diversified, that is, offers a number of different goods and services, that makes it more likely that a potential consumer would associate a non-diversified company's services with the diversified company. Even when products or services do not compete, there can be confusion as to sponsorship, affiliation, or connection.

The fourth digit to consider in analyzing likelihood of confusion is whether there is overlap between the parties' retail outlets and consumers. The greater the overlap between the parties' retail outlets and consumers, the greater the likelihood of confusion. On the other hand, dissimilarities between the retail outlets for, and the primary consumers of, plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception.

The fifth digit to consider in analyzing likelihood of confusion is whether the parties use the same advertising media, such as websites,

social media, etc. The greater the similarity of advertising media, the greater the likelihood of confusion.

The sixth digit to consider in analyzing likelihood of confusion is whether Skiplagged intended to derive benefit from the reputation of American Airlines and/or American Airlines' products and services.

Evidence that Skiplagged adopted or used American Airlines' mark(s) with the intent to derive a benefit from the reputation of American Airlines' products and services is evidence of a likelihood of confusion. But a defendant's mere awareness of the plaintiff's existing mark does not establish bad intent.

Even if Skiplagged used American Airlines' marks with innocent intent, you may find intent to confuse if Skiplagged subsequently used the marks in a way that evidenced an intent to trade on American's reputation. Bad faith in adopting and using a trademark normally involves the imitation of packaging material, use of identical code numbers, adopting of similar distribution methods, or other efforts by a party to "pass off" its product as that of another. If there is no evidence of intent to confuse, this factor is neutral.

The seventh digit to consider in analyzing likelihood of confusion is evidence of actual confusion or mistake as to the source, affiliation, or sponsorship of Skiplagged's products and services. Actual confusion need not be proven but may be the best evidence of likelihood of

confusion. There may be actual confusion if people inadvertently contact Skiplagged while looking to do business with or contact American Airlines (or vice versa), or if people are confused about whether Skiplagged is affiliated with American Airlines.

In determining the weight to be given to this factor, you should consider the extent to which the type of confusion shown has been or would be likely to sway consumer purchases. Evidence that confusion in fact swayed consumer purchases is strong evidence of a likelihood of confusion. However, more evidence is required to show a likelihood of confusion when the type of confusion shown did not or cannot sway purchases.

Actual confusion has more weight if it affects a potential consumer considering whether to transact business with American Airlines or Skiplagged. To show actual confusion, American Airlines may rely on reported instances of consumer confusion. However, isolated instances of confusion about the affiliation of two companies that do not result in redirected business are not enough to find actual confusion. Instances of uncertainty about affiliation or connection should be weighed against each party's volume of business as a whole. The confusion of both retailers and consumers is relevant evidence of actual confusion.

Actual confusion evidence can demonstrate a likelihood of confusion even if confused persons realize their mistake after further

investigation. This is called "initial interest" confusion. A potential consumer may not consider American Airlines' trademarked goods or services even if the confusion with Skiplagged's goods or services is cleared up. Skiplagged may have gained the consumer's credibility and obtained the business before or after the confusion is cleared. However, short-lived impressions or a fleeting and quickly corrected mix-up of names is not evidence of actual confusion.

The eighth digit to consider in analyzing likelihood of confusion is the degree of care exercised by purchasers. Confusion is generally more likely if the products in question are impulse items or are inexpensive. Conversely, a person buying a big-ticket or expensive item is ordinarily expected to be a more careful buyer than the impulse purchaser or the purchaser of a relatively inexpensive item. If there is evidence that consumers use a great deal of care when making purchasing decisions, then they may be less likely to be confused. If the items are expensive and the buyers are sophisticated, then confusion is less likely to occur.

However, even sophisticated purchasers can be confused by similar marks used in the same general field. Additionally, even sophisticated purchasers can be subject to initial-interest confusion. Initial-interest confusion is especially relevant if the parties are direct competitors in the same market.

As I told you earlier, it is up to you to determine how to weigh each digit in determining if American Airlines has proved by a preponderance of evidence there is a likelihood of confusion. You do not need to give equal weight to each factor. You must weigh the digits separately for each of the trademarks asserted by American Airlines.

If you find that Skiplagged infringed American Airlines' marks by using American Airlines' marks, you must also determine whether American Airlines has proven that Skiplagged acted willfully at the time it used the marks. Trademark infringement is willful if it is done voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion as to the source of goods or services and with the intent to cause confusion, cause mistake, or to deceive. Willful blindness is equivalent to actual knowledge. To be willfully blind, a person must suspect wrongdoing and deliberately fail to investigate.

If you find that Skiplagged infringed American Airline's trademark rights, you must then determine what damages American Airlines is entitled to recover from Skiplagged. In this case, American Airlines seeks actual damages and damages from Skiplagged in the form of profits attributable to Skiplagged's alleged infringement.

You should not conclude from the fact that I am instructing you about damages that I have any opinion as to whether American Airlines has proved liability against Skiplagged. It is your task first to decide

whether Skiplagged is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Skiplagged is liable, and that American Airlines is entitled to recover money from Skiplagged for infringement.

If you find for American Airlines on its Trademark infringement claim, you must determine American's actual damages. To recover actual damages, American Airlines has the burden of proving, by a preponderance of the evidence, a direct injury to American Airlines and causation of that harm. An actual damages award must be attributable to the infringement.

If you find that American Airlines proved actual damages, you may make reasonable inferences from the evidence to calculate the amount of damages. Damages means the amount of money which will reasonably and fairly compensate American Airlines for any injury and/or damage you find was caused by Skiplagged's infringement of American Airlines' registered trademarks.

You should consider the following:

1) The injury to American Airlines' reputation;

2) The injury to American Airlines' goodwill, including injury to American's general business reputation;

3) The lost profits that American Airlines would have earned but for Skiplagged's infringement. Profit is determined by deducting all expenses from gross revenue;

4)   The expense of preventing customers from being deceived; and

5)   The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.

When considering prospective costs (e.g., cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate. Accordingly, your award of such future costs should not exceed the actual damage to the value of American Airlines' marks at the time of the infringement by Skiplagged.

Skiplagged claims that its use of American Airlines' trademarks is permitted because Skiplagged made nominative fair use of the trademark. To succeed on this defense, Skiplagged must prove the following three things by a preponderance of the evidence:

1)   Skiplagged used the trademark to refer to a product of American Airlines that cannot be easily identified without using the trademark;

2)   Skiplagged used the trademark only as much as was reasonably necessary to identify the product or service; and

3)   Skiplagged did not do anything in connection with using the trademark to suggest that American Airlines sponsored or endorsed Skiplagged or its product.

A product or service cannot be easily identified without using the trademark if there are no equally informative words to identify the product, or there is no other effective way to compare, criticize, refer to

27

or identify it without using the trademark. A reasonably necessary use of a trademark occurs when the trademark is used no more prominently than is needed to identify the product or service and enable consumers to understand the reference. Skiplagged's use of American Airlines' trademarks to compete with American Airlines, or to make a profit, does not by itself prevent Skiplagged from proving nominative fair use.

**Question No. 5:** Did American Airlines prove by a preponderance of the evidence that the following registered trademarks are valid and protectible?



"AMERICAN AIRLINES"

Answer "Yes" or "No."

Answer: <u>Yes</u>

***If you answered "Yes" to Question 5, then answer Question 6. If you answered "No" then stop.***

**Question No. 6:** Did American prove by a preponderance of the evidence that American owns the following valid trademarks?

"AMERICAN AIRLINES" 

           | American |

Answer "Yes" or "No": ___Yes___

   *If you answered "Yes" to Question 6, then answer Question 7. If you answered "No" then stop.*

**Question No. 7:** Did American Airlines prove by a preponderance of the evidence that Skiplagged used American Airlines' trademarks in a way that is likely to cause confusion as to source, affiliation, or sponsorship?

   Answer "Yes" or "No."

   Answer: ___Yes___

   *If you answered "Yes" to Question 7, then answer Question 8. If you answered "No" then stop.*

**Question No. 8:** Did Skiplagged prove by a preponderance of the evidence that its use of American's trademarks was a nominative fair use?

Answer "Yes" or "No."

Answer: ___Yes___

***If you answered "Yes" to Question 8, then stop. If you answer "No" answer Question 9.***

**Question No. 9:** Did American Airlines prove by a preponderance of the evidence that Skiplagged acted willfully when it used American Airlines' trademarks?

Answer "Yes" or "No."

Answer: _____

***If you answered "Yes" to Question 7 and you answered "No" to Question 8, then answer Question 10. Otherwise stop.***

**Question No. 10:** What amount of actual damages did American prove, by a preponderance of the evidence, that it is entitled to recover as a result of Skiplagged's trademark infringement? Please answer in dollars and cents.

Answer: $_____

***If you answer Question 10 with an amount greater than $0 then answer Question 11. If not stop.***

**Question No. 11:** Did Skiplagged prove by a preponderance of the evidence that American Airlines failed to mitigate its trademark infringement actual damages?

Answer "Yes" or "No": _____

***If you answer "Yes" to Question 11 then answer Question 12. If not stop.***

**Question No. 12:** What amount of trademark infringement actual damages did American Airlines fail to mitigate through the exercise of reasonable diligence? Please answer in dollars and cents.

Answer: $_____

Signed: October 11, 2024
at 12:43 P.M

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

31

## CERTIFICATION

We, the jury, unanimously agree to the foregoing questions and return this form as our verdict in this case.

*The Foreperson must sign and date this Verdict Form and inform the bailiff that the jury has reached a verdict. The verdict is not final until accepted by the Court.*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮            10/15/2024
Signature of Foreperson            Date

32